1  DANIEL M. PETROCELLI (S.B. #97802)
   dpetrocelli@omm.com
2  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars
3  Los Angeles, California 90067-6035
   Telephone: +1 310 553 6700
4  Facsimile: +1 310 246 6779

5  STEPHEN D. BRODY (*pro hac vice*)
   sbrody@omm.com
6  O'MELVENY & MYERS LLP
   1625 Eye Street, NW
7  Washington, D.C. 20006-4001
   Telephone: +1 202 383 5300
8  Facsimile: +1 202 383 5414

9  MATTHEW D. POWERS (S.B. #212682)
   mpowers@omm.com
10 O'MELVENY & MYERS LLP
   Two Embarcadero Center
11 San Francisco, CA 94111
   Telephone: +1 415 984 8700
12 Facsimile: +1 415 984 8701

13 *Attorneys for Defendants ByteDance Ltd.,
   ByteDance Inc., TikTok Ltd., TikTok Inc.,*
14 *TikTok LLC, TikTok Pte. Ltd., and*
   *TikTok U.S. Data Security Inc.*

15

16                    **UNITED STATES DISTRICT COURT**

17                    **CENTRAL DISTRICT OF CALIFORNIA**

18

19

20  In Re: TikTok, Inc. Minor Privacy    Case No. 2:25-ml-03144-GW-RAO
21  Litigation
                                          **DECLARATION OF NOREEN**
22                                        **YEH IN SUPPORT OF**
                                          **DEFENDANTS' OPPOSED EX**
23                                        **PARTE APPLICATION FOR**
                                          **TEMPORARY SUSPENSION OF**
24                                        **PRESERVATION ORDER**

25

26

27

28

# DECLARATION

I, Noreen Yeh, declare as follows:

1. I am currently employed as an eDiscovery Analyst at TikTok Inc. I have been in my current role for two years, and prior to that, I worked for law firms in the eDiscovery and litigation support departments. Because of my work in those roles, I have become familiar with the company's systems and practices related to user data.

2. I have personal knowledge of the facts stated in this declaration, except for those matters stated on information and belief, and if called upon to do so, I could and would so testify.

3. I understand that Plaintiffs have filed putative class action complaints against Defendants ByteDance Ltd., ByteDance Inc., TikTok Ltd., TikTok Inc., TikTok LLC, TikTok Pte. Ltd., and TikTok U.S. Data Security Inc. (collectively, "Defendants" or "TikTok"). I submit this declaration in support of Defendants' Opposed Ex Parte Application for Temporary Suspension of this Court's Preservation Order.

## I. The TikTok Platform

4. The TikTok platform is an online entertainment media platform.

5. The TikTok platform has accumulated over 170 million users in the United States and more than one billion users worldwide. Billions of videos are uploaded to the TikTok platform every year.

6. TikTok collects certain information from users when they engage with the regular TikTok platform (the "13+ Experience"). That information can include data that the user provides (e.g., username, email, and user-generated content) and information automatically collected (e.g., usage information).[1]

---

[1] *See* TikTok, *Privacy Policy* (Aug. 19, 2024), https://www.tiktok.com/legal/page/us/privacy-policy/en.

7. Only users over the age of 13 are permitted to access the 13+ Experience. Before creating a TikTok account, each new user must enter his or her date of birth—a feature known as an "age gate." In the United States, users who indicate that they are under the age of 13 are directed to a separate experience, sometimes referred to as "Kids Mode."

8. TikTok employs content moderation systems and processes, like keyword matching and human review, to identify under-13 accounts that belong to users who have misstated their date of birth at the age gate and gained access to the 13+ Experience.

9. Once TikTok determines a user is under-13 on the 13+ Experience, the typical practice is to use the account's user identifiers, including user identification number ("UID"), to locate and delete nearly all data associated with the account (hereinafter, the "Underage User Data").

10. Based on a preliminary review of recent and reasonably accessible data, TikTok deletes Underage User Data from thousands of identified under-13 accounts in the United States on a daily basis.

## II. The Court's Order

11. I have been informed that, on April 28, 2025, the Court issued an order requiring that TikTok "preserve data" relevant to this litigation (the "Order"). Based on my knowledge and experience, additional time is required to analyze and investigate the TikTok systems and processes to determine the nature and extent of Underage User Data that can be preserved and whether and how it can be preserved with proper access control and processing limitations.

12. For example, I am not aware of any mechanism to simply pause deletion of all Underage User Data. User data is generally stored in hundreds of thousands of data tables, where Underage User Data is commingled with other user data. As a general matter, when a user is determined to be under 13 on the 13+ Experience, TikTok uses the particular users' identifiers, primarily UIDs, to scan

for their data in those tables and proceeds with a targeted deletion. But this process is complicated. Obtaining a fulsome understanding of how user identifiers are used to scan for and locate Underage User Data will require investigation with multiple TikTok teams.

13. Another issue is that there are other deletion policies that TikTok implements that would have to be paused to ensure that Underage User Data is preserved. For instance, TikTok has "rolling deletion" policies in which certain types of data retained past a specified time frame is automatically deleted, in part, to comply with legal requirements and other privacy principles. And because it is possible that Underage User Data is commingled with other user data, this means that sets of Underage User Data are likely automatically deleted every day. If a given set of data is flagged for deletion, it may be difficult to disaggregate Underage User Data from other user data and prevent deletion.

14. Assuming that it is technically possible to stop deletion of Underage User Data from occurring, it is possible that the undeleted data would remain in the data tables. In this posture, the preservation of under 13 data that I understand the Court ordered could result in accessing and processing of that data. The only way to limit the processing of Underage User Data would be to create a new process to extract that data from the data tables and preserve it in a segregated and forensically sound manner. And even if the data is extracted, it may be that additional steps are necessary to create a secure storage environment and/or location to protect the data from access, processing, and use.

15. Finally, additional investigation is also necessary to determine whether it is possible to extract and protect Underage User Data, and even if possible, how burdensome that process might be, including in terms of storage space and cost.

I declare under penalty of perjury that the foregoing is true and correct.

1  Executed April 30, 2025 in New York, New York.

By: *Noreen Yeh*
Noreen Yeh