Eric Kafka (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
ekafka@cohenmilstein.com

***Attorneys for J.C. et al and the Putative Classes***
[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In re TikTok Inc. Minor Privacy Litigation**<br><br>**ALL ACTIONS** | MDL No. 3144<br><br>Case No: 2:25-ml-03144-GW (RAOx)<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' EX PARTE MOTION** |

# INTRODUCTION

TikTok's *ex parte* application seeking relief from the Court's preservation order admits that it is deleting relevant evidence every day. *See* Declaration of Noreen Yeh ("Yeh Decl."), ECF 19-2 at ¶ 10. Despite this stunning admission, TikTok asks the Court to suspend its preservation order and authorize TikTok to keep deleting data at the core of this case because, as TikTok claims, it needs "additional time to investigate a number of issues essential to establishing workable preservation measures." ECF 19 at 5. But Plaintiffs filed their complaint more than eight months ago and TikTok has been on notice of its obligation to preserve this data. After eight months, TikTok cannot blame its own lack of diligence in adhering to its presentation obligations (which are at odds with its public statements about its data preservation capabilities) for deleting this data.

TikTok's deletion has already prejudiced the Plaintiffs and cannot be permitted to continue. The Court should deny TikTok's *ex parte* application.

# BACKGROUND

On August 2, 2024, the United States Department of Justice ("DOJ") filed an action in the Central District of California based on TikTok's continued violations of the Children's Online Privacy Protection Act ("COPPA") and failure to abide by the terms of a 2019 Permanent Injunction. *See* Complaint, 2:24-cv-06535, ECF 1. The DOJ Action alleges that TikTok continues to collect extensive data from millions of American children younger than 13, knowingly allows children under 13 to create and use TikTok accounts without their parents' knowledge or consent.

Days after the DOJ Action was filed, on August 9, 2024, plaintiffs filed *A.A. v. ByteDance Ltd.*, 2:24-cv-06784 (C.D. Cal.), asserting claims under state privacy and consumer protection laws and for unjust enrichment arising out of TikTok's collection and commercial exploitation of the personal information of children under 13 in violation of COPPA. *See* Complaint, 2:24-cv-06784, ECF 1. Plaintiffs allege that TikTok collected personal information of children under 13 in violation of COPPA

1

both for (i) children with regular TikTok accounts and (ii) children with "Kids Mode" accounts. *Id.* at ¶¶ 38-49. TikTok understands that "the COPPA Actions center on Defendants' alleged 'conduct in collecting and using minor children's PII without parental consent.'" TikTok JPML Br. 10.

In December 2024, the related class actions were sent to the Judicial Panel on Multidistrict Litigation ("JPML") and ultimately consolidated before Judge George H. Wu in the Central District of California. While the consolidation was pending, on March 14, 2025, Counsel for TikTok emailed Plaintiffs' counsel asking counsel to provide "the TikTok usernames of all accounts associated with Plaintiffs," and noting that "[t]his information is necessary to identify any accounts and potentially preserve associated data that may be relevant to Plaintiffs' claims." Declaration of Eric Kafka ¶ 3 ("Kafka Decl."); Ex. A, Email from A.Formella to E.Kafka (Mar. 14, 2025).

Counsel for Plaintiffs responded to TikTok on March 26, 2026. *See* Kafka Decl. ¶ 4; Ex. B, Email from E.Kafka to A.Formella (Mar. 26, 2025). Counsel noted that it would consider TikTok's request once a Protective Order was put in place. And Plaintiffs' Counsel reminded TikTok that it should be preserving all data for putative class members regardless of whether it had the Named Plaintiffs' usernames in its possession. Plaintiffs' Counsel stated the following:

> [W]e do not believe Plaintiffs' individual usernames are necessary for preservation because Defendants should be preserving data associated with all putative class members. Please confirm that TikTok has preserved records for the class since the time Defendants' preservation obligations arose. Please also reply by Monday, March 31 with times you are available to meet-and-confer next week regarding the steps that Defendants have taken to preserve relevant information, including user data.

*Id.* Counsel for TikTok responded on March 31, 2025, and rejected Plaintiffs' request to meet-and-confer. Instead, TikTok represented that it would "respond separately regarding preservations"—which it never did—and stated that "we do think it makes sense to wait to commence discovery until after the JPML has made its decision."

Kafka Decl. ¶ 5; Ex. C, Email from A.Formella to E.Kafka (Mar. 31, 2025).

After the cases were consolidated before the Honorable George H. Wu, the Court held its initial status conference on April 14, 2025. At the April 14 status conference, Plaintiffs' Counsel expressed concern that TikTok was not adequately preserving data. Kafka Decl. ¶ 6. At the status conference, Judge Wu directed Plaintiffs' Counsel to send Defendants a letter with categories of information that TikTok should preserve. *Id*.

Pursuant to the Court's direction, on April 22, 2025, Plaintiffs' counsel sent TikTok a detailed Preservation Letter, listing twenty-five categories of information that TikTok must preserve. Kafka Decl. ¶ 7; Ex. D, Plaintiffs' Preservation Letter (Apr. 22, 2025).

On April 24, 2025, the parties filed a Joint Status Report setting forth the parties' positions on various aspects of the case. *See* Joint Status Report ("JSR"), ECF 10. Plaintiffs explained its concern regarding TikTok's representation that it was deleting important evidence, and reiterated its expectation that Defendants preserve the data regarding what it collected from each TikTok account and the revenue that TikTok earned from each account. *Id*. at 4. Plaintiffs emphasized that "[t]his evidence will demonstrate the breadth of Defendants' collection and use of children's personal information and the unjust enrichment that Defendants earned." *Id*.

In response, TikTok represented that it was taking "reasonable steps to preserve relevant documents and data," but that *one* of Plaintiffs' requests in the April 22 preservation letter was unduly burdensome. *See* JSR at 5. TikTok explained that it "delete[d] most of the data associated with [under 13] account[s]," and that "[a]bsent an order by this Court, Defendants do not intend to modify their existing account deletion practices." *Id*. at 6.

On April 28, 2025, the Court issued a clear order, both orally and in writing, requiring TikTok to preserve all relevant data. *See* Civil Minutes, ECF 11; Kafka

3

1  Decl. ¶ 8; Ex. E, Transcript of April 28, 2025 Status Conference at 17:6-19:13; 18:9-
2  13; 18:17-20; 24:19-23.

## ARGUMENT

Defendants "have a duty to preserve evidence that kicks in once a party has 'some notice' that evidence will be 'potentially relevant to the litigation.'" *Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.*, 2023 WL 6866273, at *2 (9th Cir. Oct. 18, 2023) (quoting *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 766 (9th Cir. 2015)). This duty to preserve evidence includes taking "reasonable steps to preserve it," Fed. R. Civ. P. 37(e), which "extends to the suspension of document destruction policies." *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 342 F.R.D. 461, 505 (C.D. Cal. 2022). "A litigation hold, or preservation order, is often the most appropriate mechanism to ensure potentially relevant documents and information are not lost deliberately or unintentionally." *Colonies Partners, L.P. v. Cnty. of San Bernardino*, 2020 WL 1496444, at *8 (C.D. Cal. Feb. 27, 2020).

A party seeking destruction of relevant evidence is "required to show good cause before destruction is permitted." Manual Complex Lit. § 11.442 (4th ed.). Defendants have not come close to meeting this standard. TikTok has merely alleged that it "need[s] time to investigate what types of data preservation are possible." ECF 19 at 6. But TikTok's obligation to investigate the available preservation options arose more than eight months ago, "at the latest … when it was served with Plaintiffs' complaint." *Lopez v. Apple, Inc.*, 2024 WL 4561320, at *6 (N.D. Cal. July 17, 2024). TikTok has (apparently, knowingly) been deleting relevant evidence for eight months. Simply put, TikTok cannot be permitted to rely on its own lack of diligence—or willful disregard—in establishing appropriate measures to prevent the destruction of relevant evidence to establish a good cause basis to continue to delete relevant evidence.

4

**A. TikTok had a Legal Obligation to Preserve this Information Since At Least the Day this Case was Filed.**

TikTok's obligation to preserve evidence arose no later than August 9, 2024, when the first private plaintiffs filed their class action complaint. As soon as TikTok received notice of the allegations in the complaint, it was under an obligation to investigate the relevant evidence, including how its own systems work, to ensure "the suspension of document destruction policies" *RG Abrams*, 342 F.R.D. at 505, through "[a] litigation hold, or preservation order," *Colonies Partners*, 2020 WL 1496444, at *8. At that point, TikTok's preservation efforts should have been *overinclusive* to include all evidence "potentially relevant to the litigation." *Dickinson Frozen Foods*, 2023 WL 6866273, at *2. After that, "[a]s issues in the case are narrowed, the court may reduce the scope of the order." Manual Complex Lit. § 11.442 (4th ed.).

TikTok instead seeks to create its own rules for litigation. Rather than seeking the Court's permission—upon a showing of good cause—to destroy relevant evidence, it now represents that it has already failed to preserve evidence since the inception of this case. Specifically, TikTok states that "there are multiple technical barriers to doing so, and it will take time for Defendants to analyze their systems and processes in order to propose a preservation plan that is technically feasible and that accounts for the potentially extreme burdens of preserving certain types of user data." ECF 19 at 5. This echoes previous correspondence from TikTok's counsel that "it is not feasible to immediately preserve information, materials, and data related to users on the 13+ platform that TikTok's systems and processes have identified are under the age of 13." Kafka Decl. ¶ 9; Ex. F, Email from D.Petrocelli to Plaintiffs' Counsel (Apr. 29, 2025).

TikTok's blatant disregard for its preservation obligations is deeply concerning. As a highly sophisticated technology company, TikTok cannot credibly claim that its inability to retain this data is due to technical incompetence or logistical infeasibility. The platform operates on a global scale, is routinely involved in legal proceedings,

5

1  and has both the resources and institutional knowledge to retain critical data—
2  particularly when litigation is foreseeable. Attempting to invoke automatic deletion
3  policies as a justification is unacceptable; such policies cannot—and do not—override
4  the legal duty to preserve evidence. "Once the duty to preserve evidence has been
5  triggered, then parties must suspend any automatic deletion protocols and implement a
6  'litigation hold' to ensure the preservation of relevant documents." *Aramark Mgmt.,*
7  *LLC v. Borgquist*, 2021 WL 864067, at *13 (C.D. Cal. Jan. 27, 2021). TikTok's
8  failure to do so is inexcusable.

### B. TikTok Has Not Put Forth Evidence That Preservation Is Infeasible.

TikTok has failed to provide competent evidence that preserving data of users under 13 is infeasible. Rather, its current justification relies heavily on a declaration of a TikTok employee who lacks the technical expertise required to make such a claim. *See* Yeh Decl. Ms. Yeh is an eDiscovery analyst whose background is working "for law firms in the eDiscovery and litigation support departments." Yeh Decl. ¶ 2. Ms. Yeh is not in TikTok's engineering department and is thus not qualified to attest to the technical feasibility of data preservation at TikTok. Therefore, it is not surprising that *the Yeh Declaration never states that data preservation is infeasible.* Instead, TikTok's counsel makes this claim without any evidence to support that assessment. *See* Petrocelli Decl. ¶ 8, ECF 19-1.

The Yeh Declaration also highlights several flaws in TikTok's argument. First, the fact that "Underage User Data is commingled with other user data" is not a valid reason to avoid preservation. Yeh Decl. ¶ 13. In fact, it reinforces the need for TikTok to be overinclusive in its preservation efforts, which is standard practice to avoid the risk of spoliation until a court narrows the scope of its preservation order. Second, Ms. Yeh states that preservation would require TikTok to create a new process to extract and preserve the relevant data "in a segregated and forensically sound manner." Yeh Decl. ¶ 14. But, as discussed below, based upon TikTok's public statements, it already has developed methods to segregate and preserve data for accounts.

Lastly, TikTok entirely avoids discussing data for children who use "Kids Mode." Since the initial complaint in this action, Plaintiffs have alleged that Defendants collect personal information from "Kids Mode" accounts for children under the age of 13, in violation of COPPA. Complaint at ¶¶ 49-55, 2:24-cv-06784, ECF 1. Defendants' silence regarding preservation of this subset of the data pertaining to different types of accounts that could presumably be easily segregated is notable. Defendants' excuses regarding the commingling of children's data with adult data do not apply to Kids Mode, where all the accounts are children under 13. TikTok should have preserved all the "Kids Mode" data no later than August 2024.

### C. TikTok Is Able to Segregate and Preserve Data for Accounts

Because TikTok failed to meet the "good cause" standard to stop preserving data, TikTok's *ex parte* application should be denied. *See* Manual Complex Lit. § 11.442 (4th ed.) (A party seeking destruction of relevant evidence is "required to show good cause before destruction is permitted.").

But here, TikTok's unsupported excuse—that it does not know how it currently locates and segregates accounts for preservation, *see* Yeh Decl. ¶¶ 12-14—is contradicted by TikTok's public statements. Notably, the company has stated that when an account is flagged for violating its rules—*i.e.*, when it detects that a user is under 13—the account enters a "probationary period," which TikTok calls "an appeal period." *See* Ex. E, Tr. at 16:18-25 (Apr. 28, 2025) (explaining that "the practice is *after* brief appeal period, to ban the account, *and then* delete the data associated with that account" (emphasis added)). During this time, TikTok continues to retain the associated data, even if the account or content is eventually subject to deletion. This probationary period clearly demonstrates that TikTok has both the technical infrastructure and established protocols to retain specific data for a period of time it deems necessary—particularly where the user's age is in question.

TikTok also discusses on its public website that it "will honor formal requests" by law enforcement to preserve user data.[1] Furthermore, TikTok's counsel stated at the April 28 status conference that, if the named plaintiffs identified their usernames, TikTok would preserve those named plaintiffs' data. Ex. E, Tr. at 23:18-20. TikTok's counsel told Plaintiffs the same in March 2025. Ex. A. When Plaintiffs' counsel informed TikTok's counsel that TikTok should be preserving all putative class member accounts, TikTok avoided responding. Exs. B-C. And, in its *ex parte* application, TikTok fails to explain why it is only able to preserve the accounts of the Named Plaintiffs.

Given these public statements, TikTok's position that it is infeasible to promptly retain the relevant data is implausible. The company has demonstrated, both in policy and in practice, that it has the systems and procedures to preserve relevant data when it serves its interests. It cannot now selectively argue that its preservation obligations are infeasible.

## CONCLUSION

For the foregoing reasons, the Court should deny TikTok's Ex Parte Application.

Pursuant to Local Rule 5-4.3.4, by my signature below, I, Eric Kafka, attest that all other signatories concur in the filing's content and have authorized this filing.

Dated: May 1, 2025

By: */s/ Eric Kafka*

Eric Kafka (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005

---

[1] TikTok, *TikTok Law Enforcement Guidelines*, available at https://www.tiktok.com/legal/page/global/law-enforcement/en.

Telephone: (212) 838-7797
Facsimile: (212) 838-7745
ekafka@cohenmilstein.com

Karina Puttieva (SBN 317702)
Jenna Waldman (SBN 341491)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Suite 800
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
kputtieva@cohenmilstein.com
jwaldman@cohenmilstein.com

PAUL HOFFMAN (SBN 71244)
**SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES LLP**
200 Pier Ave., Suite 226
Hermosa Beach, CA 90254
Telephone: (424) 297-0114
Facsimile: (310) 399-7040
hoffpaul@aol.com

*/s/ Steven L. Bloch*

David S. Golub, (*pro hac vice*)
Steven L. Bloch, (*pro hac vice pending*)
Ian W. Sloss, (*pro hac vice*)
Jennifer Sclar, (*pro hac vice*)
John Seredynski, (*pro hac vice*)
**SILVER GOLUB & TEITELL LLP**
One Landmark Square, 15th Floor
Stamford, Connecticut 06901
Telephone: (203) 325-4491
David S. Golub, (pro hac vice)
dgolub@sgtlaw.com
sbloch@sgtlaw.com

Patrick Carey, (Bar No. 308623)
Mark Todzo, (Bar No. 168389)
**LEXINGTON LAW GROUP, LLP**
503 Divisadero Street
San Francisco, California 94105
Telephone: (415) 913-7800
pcarey@lexlawgroup.com
mtodzo@lexlawgroup.com

***Attorneys for J.C. et al and the Putative Classes***

*/s/ Beena McDonald*
Beena M. McDonald

9

MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' EX PARTE MOTION

**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Tel: 610-649-1497
bmm@chimicles.com
SteveSchwartz@chimicles.com

James J. Rosemergy
**CAREY DANIS & LOWE**
8235 Forsyth Blvd.
Suite 1100
St. Louis, MO 63105
Tel: 314-725-7700
jrosemergy@careydanis.com

*Counsel for Plaintiffs*
*Ryan Armbruster as parent and guardian of his minor child, C.A.;*
*Yolanda Berry as parent and guardian of her minor child C.C.*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for the Plaintiffs, certifies that this brief contains 2,488 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 1, 2025                    Respectfully Submitted,

COHEN MILSTEIN SELLERS & TOLL PLLC

By:   */s/ Eric Kafka*
    Eric Kafka
    Attorney for Plaintiffs and Putative Class