Eric Kafka (*pro hac vice*)
**COHEN MILSTEIN**
**SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
ekafka@cohenmilstein.com

Karina Puttieva (SBN 317702)
Jenna Waldman (SBN 341491)
**COHEN MILSTEIN SELLERS & TOLL**
**PLLC**
1100 New York Ave. NW, Suite 800
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
kputtieva@cohenmilstein.com
jwaldman@cohenmilstein.com

PAUL HOFFMAN (SBN 71244)
**SCHONBRUN SEPLOW HARRIS**
**HOFFMAN & ZELDES LLP**
200 Pier Ave., Suite 226
Hermosa Beach, CA 90254
Telephone: (424) 297-0114
Facsimile: (310) 399-7040
hoffpaul@aol.com

Patrick Carey, (Bar No. 308623)
Mark Todzo, (Bar No. 168389)
**LEXINGTON LAW GROUP, LLP**
503 Divisadero Street
San Francisco, California 94105
Telephone: (415) 913-7800
pcarey@lexlawgroup.com
mtodzo@lexlawgroup.com

David S. Golub, (*pro hac vice*)
Steven L. Bloch, (*pro hac vice pending*)
Ian W. Sloss, (*pro hac vice*)
Jennifer Sclar, (*pro hac vice*)
John Seredynski, (*pro hac vice*)
**SILVER GOLUB & TEITELL LLP**
One Landmark Square, 15th Floor
Stamford, Connecticut 06901
Telephone: (203) 325-4491
dgolub@sgtlaw.com

*Attorneys for J.C., et al. and the Putative*
*Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In re TikTok Inc. Minor Privacy Litigation** | MDL No. 3144 |
| | Case No: 2:25-ml-03144-GW (RAOx) |
| | <u>**CLASS ACTION**</u> |
| **ALL ACTIONS** | **DECLARATION OF ERIC KAFKA IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION** |

# **DECLARATION**

I, Eric Kafka, declare as follows:

1.        I am an active member of the Bar of the State of New York and a partner at the law firm Cohen Milstein Sellers & Toll PLLC, counsel for Plaintiffs and the Putative Class in the case captioned *J.C., et al. v. ByteDance, et al.*, 2:25-cv-6784-ODW-RAOx, which has been consolidated in the MDL, *In re TikTok Inc. Minor Privacy Litigation*, 2:25-ml-03144-GW-RAOx.

2.        I have personal knowledge of the facts stated in this declaration, and if called upon to do so, I could and would so testify. I submit this declaration in support of Plaintiffs' Opposition to Defendants' Ex Parte Application for Temporary Suspension of this Court's Preservation Order.

3.        On March 14, 2025, in correspondence attached hereto as **Exhibit A**, Defendants' counsel contacted me asking Plaintiffs to provide "the TikTok usernames of all accounts associated with Plaintiffs," and noting that "[t]his information is necessary to identify any accounts and potentially preserve associated data that may be relevant to Plaintiffs' claims."

4.        I responded to Defendants' counsel on March 26, 2026, in correspondence attached hereto as **Exhibit B**. I stated that Plaintiffs would consider TikTok's request once a Protective Order was put in place. I reminded TikTok that it should be preserving all data for putative class members regardless of whether it had the Named Plaintiffs' usernames in its possession, and I requested a meet-and-confer to discuss the steps that Defendants had taken to preserve relevant information, including user data.

5.        Counsel for TikTok responded on March 31, 2025, in correspondence attached hereto as **Exhibit C**. Counsel rejected Plaintiffs' request to meet-and-confer and represented that it would "respond separately regarding preservations. Counsel further stated that it "makes sense to wait to commence discovery until after the JPML has made its decision."

6.  At the April 14, 2025 status conference, I expressed concern that TikTok was not adequately preserving data. In response, Judge Wu directed Plaintiffs' Counsel to send Defendants a letter with categories of information that TikTok should preserve.

7.  Pursuant to the Court's direction, on April 22, 2025, in correspondence attached hereto as **Exhibit D**, I sent TikTok a detailed Preservation Letter on behalf of all Plaintiffs, listing twenty-five categories of information that TikTok must preserve.

8.  At the April 28, 2025 status conference, a transcript of which is attached hereto as **Exhibit E**, the Court ordered Defendants to preserve account data related to users under 13 "until the Court orders further." Tr. 18:17-20. TikTok's counsel clarified with the Court that it was "ordering [TikTok] to preserve that data we are deleting from users we identify as under 13," and stated on the record that counsel would "communicate to my client promptly after the hearing." *Id.* 18:9-13.

9.  On April 29, 2025, in correspondence attached hereto as **Exhibit F**, TikTok's counsel wrote that, "defendants intend to file an ex parte application tomorrow to temporarily suspend the Court's preservation order yesterday." TikTok's counsel asserted that "it is not feasible to immediately preserve information, materials, and data related to users on the 13+ platform that TikTok's systems and processes have identified are under the age of 13." TikTok asked for the position of Plaintiffs' Counsel on TikTok's ex parte application. That same day, I wrote TikTok's counsel and informed him that Plaintiffs' Counsel would oppose TikTok's forthcoming ex parte application.

I declare under penalty of perjury that the foregoing is true and correct.

Executed May 1, 2025 in New York, New York.

By:  */s/ Eric Kafka*
Eric Kafka

DECLARATION OF ERIC KAFKA IN SUPPORT OF
PLAINTIFFS' OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION

# EXHIBIT A

Subject: J.C. v. ByteDance: Plaintiffs' data

Date: 3/14/2025 2:37 PM

From: "Formella, Abby" <aformella@omm.com>

To: "ekafka@cohenmilstein.com"
<ekafka@cohenmilstein.com>, "kputtieva@cohenmilstein.com"
<kputtieva@cohenmilstein.com>, "jwaldman@cohenmilstein.com"
<jwaldman@cohenmilstein.com>, "dgolub@sgtlaw.com"
<dgolub@sgtlaw.com>, "sbloch@sgtlaw.com"
<sbloch@sgtlaw.com>, "pcarey@lexlawgroup.com"
<pcarey@lexlawgroup.com>, "mtodzo@lexlawgroup.com" <mtodzo@lexlawgroup.com>

Cc: "Powers, Matt" <mpowers@omm.com>

---

Counsel,

To assist Defendants' investigation into Plaintiffs' allegations, please provide the TikTok usernames of
all accounts associated with Plaintiffs.  This information is necessary to identify any accounts and
potentially preserve associated data that may be relevant to Plaintiffs' claims, especially given that
Plaintiffs brought this action anonymously.  Additionally, Defendants ask Plaintiffs to use
TikTok's "Download Your Data" feature to preserve Plaintiffs' data associated with their TikTok
accounts.

Thanks,
Abby

**O'Melveny**

**Abby Formella**
Counsel
aformella@omm.com
O: +1-213-430-8271

---

O'Melveny & Myers LLP

400 South Hope Street, 19th Floor
Los Angeles, CA  90071
Website | LinkedIn | Twitter

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be
confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If
you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

# EXHIBIT B

Subject: RE: J.C. v. ByteDance: Plaintiffs' data

Date:    3/26/2025 11:02 PM

From:    "Eric Kafka" <EKafka@cohenmilstein.com>

To:      "Formella, Abby" <aformella@omm.com>, "Karina Puttieva"
         <KPuttieva@cohenmilstein.com>, "Jenna Waldman"
         <jwaldman@cohenmilstein.com>, "dgolub@sgtlaw.com"
         <dgolub@sgtlaw.com>, "sbloch@sgtlaw.com"
         <sbloch@sgtlaw.com>, "pcarey@lexlawgroup.com"
         <pcarey@lexlawgroup.com>, "mtodzo@lexlawgroup.com" <mtodzo@lexlawgroup.com>

Cc:      "Powers, Matt" <mpowers@omm.com>

---

Counsel,

Thank you for your note. We will consider your request to provide Plaintiffs' TikTok usernames, but we
would like to enter a Protective Order for this litigation first. Please let us know if you would like to
provide an initial draft for Plaintiffs' consideration, or if we should get started on putting that together.

Separately, we do not believe Plaintiffs' individual usernames are necessary for preservation because
Defendants should be preserving data associated with all putative class members. Please confirm that
TikTok has preserved records for the class since the time Defendants' preservation obligations arose.
Please also reply by Monday, March 31 with times you are available to meet-and-confer next week
regarding the steps that Defendants have taken to preserve relevant information, including user data.

Lastly, we would like to hold an initial Rule 26(f) conference and begin discovery, though we
understand that you may prefer to wait until the JPML has made its decision. Either way, please reply
by Monday, March 31 with times you are available to meet-and-confer next week regarding
commencing discovery in this action.

Thank you,
Eric

**Eric Kafka**
Partner

# COHENMILSTEIN

**Cohen Milstein Sellers & Toll PLLC**
88 Pine Street | 14th Floor
New York, NY 10005
phone 212.838.7797

---

*This e-mail was sent from Cohen Milstein Sellers & Toll PLLC. It may contain information that is privileged and confidential. If you suspect that you were not
intended to receive it, please delete it and notify us as soon as possible.*

---

**From:** Formella, Abby <aformella@omm.com>
**Sent:** Friday, March 14, 2025 2:37 PM
**To:** Eric Kafka <EKafka@cohenmilstein.com>; Karina Puttieva <KPuttieva@cohenmilstein.com>; Jenna Waldman
<jwaldman@cohenmilstein.com>; dgolub@sgtlaw.com; sbloch@sgtlaw.com; pcarey@lexlawgroup.com;
mtodzo@lexlawgroup.com
**Cc:** Powers, Matt <mpowers@omm.com>
**Subject:** J.C. v. ByteDance: Plaintiffs' data

Counsel,

To assist Defendants' investigation into Plaintiffs' allegations, please provide the TikTok usernames of all accounts associated with Plaintiffs.  This information is necessary to identify any accounts and potentially preserve associated data that may be relevant to Plaintiffs' claims, especially given that Plaintiffs brought this action anonymously.  Additionally, Defendants ask Plaintiffs to use TikTok's "Download Your Data" feature to preserve Plaintiffs' data associated with their TikTok accounts.

Thanks,
Abby

## O'Melveny

**Abby Formella**
Counsel
aformella@omm.com
O: +1-213-430-8271
_____

O'Melveny & Myers LLP
400 South Hope Street, 19th Floor
Los Angeles, CA  90071
Website | LinkedIn | Twitter

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

# EXHIBIT C

Subject: RE: J.C. v. ByteDance: Plaintiffs' data

Date:    3/31/2025 4:36 PM

From:    "Formella, Abby" <aformella@omm.com>

To:      "Eric Kafka" <EKafka@cohenmilstein.com>, "Karina Puttieva"
         <KPuttieva@cohenmilstein.com>, "Jenna Waldman"
         <jwaldman@cohenmilstein.com>, "dgolub@sgtlaw.com"
         <dgolub@sgtlaw.com>, "sbloch@sgtlaw.com"
         <sbloch@sgtlaw.com>, "pcarey@lexlawgroup.com"
         <pcarey@lexlawgroup.com>, "mtodzo@lexlawgroup.com" <mtodzo@lexlawgroup.com>

Cc:      "Powers, Matt" <mpowers@omm.com>

---

Hi Eric,  given that a decision by the JPML is expected soon, we don't think it's necessary at this
juncture to negotiate and enter a protective order.  Instead of entering a protective order now, we
would of course agree to keep Plaintiffs' information confidential and not disclose it to anyone.  Please
let us know if you are agreeable to that solution.

I will respond separately regarding preservations, but we do think it makes sense to wait to commence
discovery until after the JPML has made its decision.

Thanks,
Abby

---

**From:** Eric Kafka <EKafka@cohenmilstein.com>
**Sent:** Wednesday, March 26, 2025 8:02 PM
**To:** Formella, Abby <aformella@omm.com>; Karina Puttieva <KPuttieva@cohenmilstein.com>; Jenna Waldman
<jwaldman@cohenmilstein.com>; dgolub@sgtlaw.com; sbloch@sgtlaw.com; pcarey@lexlawgroup.com;
mtodzo@lexlawgroup.com
**Cc:** Powers, Matt <mpowers@omm.com>
**Subject:** RE: J.C. v. ByteDance: Plaintiffs' data

Counsel,

Thank you for your note. We will consider your request to provide Plaintiffs' TikTok usernames, but we
would like to enter a Protective Order for this litigation first. Please let us know if you would like to
provide an initial draft for Plaintiffs' consideration, or if we should get started on putting that together.

Separately, we do not believe Plaintiffs' individual usernames are necessary for preservation because
Defendants should be preserving data associated with all putative class members. Please confirm that
TikTok has preserved records for the class since the time Defendants' preservation obligations arose.
Please also reply by Monday, March 31 with times you are available to meet-and-confer next week
regarding the steps that Defendants have taken to preserve relevant information, including user data.

Lastly, we would like to hold an initial Rule 26(f) conference and begin discovery, though we
understand that you may prefer to wait until the JPML has made its decision. Either way, please reply
by Monday, March 31 with times you are available to meet-and-confer next week regarding
commencing discovery in this action.

Thank you,
Eric

**Eric Kafka**

**Cohen Milstein Sellers & Toll PLLC**

Partner

# COHEN MILSTEIN

88 Pine Street | 14th Floor
New York, NY 10005
phone 212.838.7797

*This e-mail was sent from Cohen Milstein Sellers & Toll PLLC. It may contain information that is privileged and confidential. If you suspect that you were not intended to receive it, please delete it and notify us as soon as possible.*

**From:** Formella, Abby <aformella@omm.com>
**Sent:** Friday, March 14, 2025 2:37 PM
**To:** Eric Kafka <EKafka@cohenmilstein.com>; Karina Puttieva <KPuttieva@cohenmilstein.com>; Jenna Waldman <jwaldman@cohenmilstein.com>; dgolub@sgtlaw.com; sbloch@sgtlaw.com; pcarey@lexlawgroup.com; mtodzo@lexlawgroup.com
**Cc:** Powers, Matt <mpowers@omm.com>
**Subject:** J.C. v. ByteDance: Plaintiffs' data

Counsel,

To assist Defendants' investigation into Plaintiffs' allegations, please provide the TikTok usernames of all accounts associated with Plaintiffs.  This information is necessary to identify any accounts and potentially preserve associated data that may be relevant to Plaintiffs' claims, especially given that Plaintiffs brought this action anonymously.  Additionally, Defendants ask Plaintiffs to use TikTok's "Download Your Data" feature to preserve Plaintiffs' data associated with their TikTok accounts.

Thanks,
Abby

## O'Melveny

**Abby Formella**
Counsel
aformella@omm.com
O: +1-213-430-8271

_____

O'Melveny & Myers LLP
400 South Hope Street, 19th Floor
Los Angeles, CA  90071
Website | LinkedIn | Twitter

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

# EXHIBIT D

Plaintiffs' Counsel in MDL 3144 write regarding Defendants' preservation obligations in MDL 3144.[1] Defendants have "a duty to preserve evidence that kick[ed] in once [TikTok had] some notice that evidence will be potentially relevant to the litigation." *Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.*, No. 22-35832, 2023 WL 6866273, at *2 (9th Cir. Oct. 18, 2023) (quoting *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 766 (9th Cir. 2015)). Plaintiffs' counsel thus expects that Defendants long ago preserved evidence relevant to claims and defenses in this litigation. However, out of an abundance of caution, Plaintiffs' counsel provide an illustrative list of categories of relevant evidence that Plaintiffs seek to discuss with Defendants' counsel to confirm that Defendants/all TikTok entities preserved them. For avoidance of doubt, this list does not limit or cabin Defendants' preservation obligations in any way – Defendants must continue to preserve all documents in its possession, custody, or control that are potentially relevant to the claims or defenses in MDL 3144.

1. Documents and Communications regarding children's[2] creation of accounts on TikTok and their use of the TikTok platform;

2. Documents and Communications regarding the creation of accounts on TikTok;

3. Documents and Communications regarding TikTok's knowledge that children create TikTok accounts and use the TikTok platform;

4. Documents and Communications regarding TikTok targeting its platform towards children, including Documents and Communications regarding content directed towards children;

5. Documents and Communications regarding identifying children's accounts on TikTok;

6. Documents and Communications regarding calculating or estimating the number of children's accounts on TikTok;

---

[1] The term "Defendants" as used herein refers to Bytedance, Inc., Bytedane, Ltd., TikTok, Ltd., TikTok, Inc., TikTok PTE. LTD., TikTok U.S. Data Security, Inc., and any other already-named Defendants in the referenced matter.

[2] The term "children" as used herein refers to any individual under the age of 18, including persons TikTok has referred to or may refer to as "youth" or "young people," including those who are under the age of 13. *See* Community Guidelines | TikTok, last accessed April 18, 2024.

7.  Documents and Communications regarding TikTok's internal analyses and classifications of TikTok users as children;

8.  Documents and Communications regarding TikTok's age-determining technology or grade level;

9.  Documents and Communications regarding TikTok Kid's Mode or Under-13, including the types of data collected from TikTok Kid's Mode or Under-13 accounts;[3]

10. Documents and Communications regarding the process through which users create/sign-up for TikTok accounts, including inputting their date of birth;

11. Documents and Communications regarding TikTok's process to verify the age of TikTok users, including but not limited to keyword matching and accounts referred from moderation queues;

12. Documents and Communications regarding the collection of TikTok user data, including the type of data collected, the manner in which that data is collected, and the manner in which that data is stored;

13. Documents and Communications regarding the sale, distribution, or disclosure of TikTok user data to third parties;

14. Documents and Communications regarding notice(s) that TikTok provides to parents about what information TikTok collects from children, how TikTok uses such information, and TikTok's disclosure practices for such information;

15. Documents and Communications regarding obtaining parents' consent to TikTok's collection of child user data;

16. Documents and Communications regarding the process for parents to request deletion of their child's user data;

17. Documents and Communications regarding TikTok accounts and content that contains child-oriented subject matter;

18. Documents and Communications regarding how TikTok uses the data that it collects from TikTok to feature advertisements and for non-advertising purposes;

19. Documents and Communications regarding any methods that TikTok uses to identify children's TikTok accounts, including technology, user reports, and human moderation;

20. Documents and Communications regarding TikTok's advertising revenue;

21. Documents and Communications regarding the TikTok accounts of Named Plaintiffs in matters transferred to MDL 3144;

---

[3] This category encompasses any separate under-13 TikTok experience options.

22. Documents required to have been preserved pursuant to the prior consent decree and/or any agreement with the Department of Justice;

23. For every TikTok account,

   a. The data that TikTok collected from the account, including but not limited to, the first and last name, age, email address, phone number, persistent identifiers for the device(s) used to access TikTok, social media account information, and all profile image(s), as well as photographs, videos, and audio files containing the user's image and voice and the metadata associated with such media (such as when, where, and by whom the content was created), usage information, device information, location data, image and audio information, metadata, and data from cookies and similar technologies that track user across different websites and platform;

   b. How and where the account data is stored;

   c. The revenue that TikTok earned from the account on a monthly, quarterly, and annual basis;

   d. The advertisements that were shown to the account.

24. Documents and Communications regarding how TikTok values user data, including user data from children; and

25. TikTok's source code.


From: Plaintiffs' Counsel in MDL 3144

# EXHIBIT E

1          UNITED STATES DISTRICT COURT

2     CENTRAL DISTRICT OF CALIFORNIA - CENTRAL DIVISION

3        HONORABLE GEORGE H. WU, U.S. DISTRICT JUDGE

4

5   IN RE: TIKTOK, INC.,
    MINOR PRIVACY LITIGATION,
6
                                    Case No.
7                                   25-ML-3144-GW

8

9

10              REPORTER'S TRANSCRIPT OF
          STATUS CONFERENCE RE MDL Motion for 3144
11              Monday, April 28, 2025
                    10:00 a.m.
12            LOS ANGELES, CALIFORNIA

13

14

15

16

17

18

19   _____

20        TERRI A. HOURIGAN, CSR NO. 3838, CCRR
            FEDERAL OFFICIAL COURT REPORTER
21        350 WEST FIRST STREET, ROOM 4311
            LOS ANGELES, CALIFORNIA  90012
22                (213) 894-2849

23

24

25

APPEARANCES OF COUNSEL:


FOR PLAINTIFFS:  A.A., A.B., A.C., JODY VILLANUEVA,
ANGELA FAUCETT, LAMARTINE PIERRE, JR.

     COHEN MILSTEIN SELLERS and TOLL PLLC
     BY:  ERIC A. KAFKA
          Attorney at Law
     88 Pine Street, 14th Floor
     New York, New York  10005

FOR THE PLAINTIFF:  CHRISTINA MIDDLETON

     WAGSTAFF and CARTMELL LLP
     BY:  TYLER W. HUDSON (appearing telephonically)
          Attorney at Law
     470 Grand Avenue, Suite 300
     Kansas City, Missouri  64112

FOR THE PLAINTIFF:  KILEY LYNN GROMBACHER

     BRADLEY GROMBACHER LLP
     BY:  KILEY LYNN GROMBACHER
          Attorney at Law
     31365 Oak Creek Drive, Suite 240
     Westlake Village, California 91361

FOR THE PLAINTIFF:  RYAN ARMBRUSTER

     LAW OFFICE OF FRANCIS J. FLYNN JR.
     BY:  FRANCIS J. FLYNN, JR. (Appearing telephonically)
          Attorney at Law
     6057 Metropolitan Plaza
     Los Angeles, California  90036

FOR THE PLAINTIFF:  H.T., J.O.

     KOPELOWITZ OSTROW PA
     BY:  KRISTEN CARDOSO  (appearing telephonically)
          Attorney at Law
     One West Las Olas Boulevard, Suite 500
     Fort Lauderdale, Florida  33322


UNITED STATES DISTRICT COURT

```
 1   APPEARANCES OF COUNSEL:

 2   FOR THE PLAINTIFF:  CHANTELL MARTIN, JACQUELYN WILLIAMS

 3       DUGAN LAW FIRM APLC
         BY:  JAMES R. DUGAN, II  (appearing telephonically)
 4            DAVID SCOTT SCALIA
              Attorneys at Law
 5       One Canal Place
         365 Canal Street, Suite 1000
 6       New Orleans, Louisiana  70130

 7

     FOR THE PLAINTIFF:  SCOTT HUMBERT
 8
         AYLSTOCK WOITKIN KREIS and OVERHOLTZ
 9       BY:  BRYAN F. AYLSTOCK
              Attorney at Law
10       17 East Main Street, Suite 200
         Pensacola, Florida  32502
11

12   FOR THE PLAINTIFF:  J.R.

13       CARELLA BRYNE BAIN GILFILLAN
         BY:  JAMES E. CECCHI
14            Attorney at Law
         5 Becker Farm Road
15       Roseland, New Jersey  07068

16       KOPELOWITZ OSTROW PA
         BY:  JEFF M. OSTROW
17            Attorney at Law
         One West Las Olas Boulevard, Suite 500
18       Fort Lauderdale, Florida  33301

19   FOR THE PLAINTIFF:  A.C.

20       SILVER GOLUB and TIETELL LLP
         BY:  STEVEN L. BLOCH
21            Attorney at Law
         One Landmark Square 15th Floor
22       Stamford, Connecticut

23

24

25
```

UNITED STATES DISTRICT COURT

```
 1   APPEARANCES OF COUNSEL

 2   FOR THE PLAINTIFF:

 3       KELLER ROHRBACK LLP
         BY:  DEREK LOESER
 4            Attorney at Law
         1201 Third Avenue, Suite 3400
 5       Seattle, Washington  98101

 6
     FOR THE PLAINTIFF:
 7
         GIBBS MURA LLP
 8       BY:  ERIC HOWARD GIBBS
              Attorney at Law
 9       1111 Broadway, Suite 2100
         Oakland, California  94607
10

11    FOR THE DEFENDANT:

12       O'MELVENY and MYERS LLP
         BY:  DANIEL M. PETROCELLI
13            MATTHEW DAVID POWERS
              Attorneys at Law
14       Two Embarcadero Center
         San Francisco, California  94111
15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

```
 1              LOS ANGELES, CALIFORNIA; Monday, April 28, 2025

 2

 3                        10:00 a.m.

 4                         --oOo--

 5

 6

 7              THE COURT:  Let me call the matter of In re: TikTok

 8   Private Litigation.

 9              THE COURT:  My clerk has indicated to me he has

10   already taken the appearances, so I'm not going to have

11   everybody announce their appearances.

12              The only one thing I ask, if you are going to speak,

13   identify yourselves for purposes of my reporter, so she can

14   take down who is speaking, and we will do it in that fashion.

15              Let me indicate, we have a lot of stuff to go over.

16              I don't know how long -- it shouldn't take too long.

17              It's based upon the joint status report, which is Docket

18   No. 10 that has been filed.

19              Just a couple of preliminary matters.  First of all, I

20   want to instruct all of the parties and counsel, that if you

21   file anything in this case, file it in the MDL docket, which is

22   the 25 ML 3144, so if that's done, we can look at one spot for

23   all of the filings, and we don't have to look at individual

24   cases and that is going to save a lot of time.

25              The second thing, I generally do not entertain oral
```

6

```
 1   motions, so if you want to request something from the Court,
 2   you are going to have to file papers for it, unless it's
 3   something that has arisen in the course of a preset hearing
 4   date or something like that, then maybe I will entertain that.
 5   Generally, I don't rule on oral motions.
 6        Okay.  What I'm going to do at this point in time, I'm
 7   going to go over the items that are listed on the joint status
 8   report, page by page, and then once that is done, if anybody
 9   else has some stuff they want to bring to the Court's
10   attention, feel free to do so at that point in time.
11        First of all, insofar as the issue in regards to
12   plaintiff's leadership -- first of all, just as an aside, I
13   once did a case -- how many of you were in front of Denise Coat
14   on the Southern District of New York case?
15        So I had a case years ago with her that was -- I don't
16   know why -- I can't remember why it became joint with her, but
17   there were three cases, one in Los Angeles, one in New York,
18   and one, I keep on thinking it's Kansas or maybe Illinois, but
19   three judges had to get together because of three cases arose
20   in various parts of the country, and for some reason, Judge
21   Coat took the laboring oar.  I think it was her personality and
22   stuff like that.
23        I was shocked that she would do these things, she would
24   have counsel, and she would tell counsel, they would say
25   something that they wanted to do some motions, and she said, I
```

```
 1   will give you five pages to brief it, and I will limit it to

 2   three pages.

 3          That was on stuff that was -- I was shocked, it was

 4   major motions that I would never have thought -- but she did it

 5   and the attorneys didn't seem to -- I don't know if they bit

 6   the bullet or what they said behind her back, but they didn't

 7   say anything in front of her.

 8          I just point that out, it was a learning experience for

 9   me, not that I would do it with you folks, but I just throw

10   that out as an aside.

11          The leadership structure, have the plaintiffs all agreed

12   upon a leadership structure?

13          MR. BLOCH:  Your Honor.  Stephen Bloch, from Silver

14   Golub.

15          We have not, though, we have made efforts to do so, but

16   we have not agreed and come to consensus on that.

17          THE COURT:  This is what I will do, I want the

18   briefs, insofar as leadership positions, of any of the -- any

19   party, I want all of those filings.  They can be separately

20   filed, I don't really care, or they can be jointly filed, if

21   you want, I don't care one way or the other, but that will have

22   to be filed 14 days from today's date.

23          Then I will give it ten days after that date for a

24   response.

25          In other words, I don't care how many plaintiff's
```

8

1    counsel file, I don't care how many plaintiff's counsel

2    respond, I just want those two dates, so 14 days after today's

3    date, which would be the 12th of May, and then ten days,

4    approximately, for the response; I will put it for May

5    the 22nd.

6         I will put the matter back on calendar for June the 2nd.

7         I will make a ruling on that -- obviously, I will allow

8    any further arguments that is necessary, but I will make a

9    ruling on that date.

10        I want the leadership structure to be decided as soon as

11   possible, okay?

12        MR. GIBBS:  Your Honor, will you entertain slates

13   with those motions?

14        THE COURT:  I don't care how it's done.  I'm open to

15   pretty much anything.

16        As I said, I had one case, I have had a number of MDLs,

17   but I had one MDL where there were 40 or some-odd different

18   individual class actions were filed to consolidate into it.

19        That one I did have -- I think there were two firms that

20   were the leadership, and then there was another attorney that

21   was, kind of, like -- when you get old, you forget the terms,

22   for things basically the intermediary between all of the

23   other --

24        MR. GIBBS:  Was that the IKEA matter?

25        THE COURT:  It was the IKEA matter.  Were you the

```
 1   person on that matter?
 2             MR. GIBBS:  I was the person who coordinated all of
 3   those.
 4             THE COURT:  So I already gave you a ruling --
 5             MR. GIBBS:  We were both younger.
 6             THE COURT:  We both had hair.  It was that long ago.
 7             MR. GIBBS:  I don't think I had hair.
 8             THE COURT:  But I will entertain slates as well.
 9   But hopefully you can agree on something.  It would be faster
10   and easier, and no hard feelings if you all agree.
11        All right --
12             MR. AYLSTOCK:  Your Honor, Bryan Aylstock on behalf
13   of plaintiff, Humbert.
14        If I could indulge the Court, I have a preplanned family
15   trip overseas on -- we leave on the 1st.  Would it be possible
16   to do it the Thursday before?
17             THE COURT:  First of what?
18             MR. AYLSTOCK:  The 1st of June.
19             THE COURT:  You want to do it on the 29th?  I will
20   do it on the 29th.
21             MR. AYLSTOCK:  Thank you, Judge.
22             MR. LOESER:  Your Honor, are you going to order
23   three pages for all three?
24             THE REPORTER:  Please identify who is speaking.
25             THE COURT:  You need to identify yourself.
```

1          MR. LOESER:  Derek Loeser.  The comment is not worth

2    writing down.

3          THE COURT:  No, if it's said by you, definitely, if

4    for nothing else, potential sanctions motions thereafter.

5          MR. LOESER:  That is wonderful, thank you, Your

6    Honor.

7          MR. BLOCH:  This is Stephen Bloch.  If I can just

8    request, I think what the parties have, at least on the

9    plaintiff's side, reached consensus.  If it's acceptable to the

10   Court is 20 pages for the opening brief, and five pages for the

11   response?

12         THE COURT:  How many papers are going to be filed,

13   do you think?

14         MR. BLOCH:  My sense is there are two, maybe, three,

15   at most.

16         THE COURT:  That's fine, 20 pages and 5 pages.

17         Also, what I will do is I will stay this case pending my

18   determination, certainly as to my determination of leadership

19   structure.

20         Again, I don't want to put it to the defense to respond

21   to multiple inquiries or anything like that, I will allow for

22   them to inquire solely as to the person or persons I choose for

23   a leadership position.

24         Then the next issue is I'm still on page 1, is the

25   status of transfer of cases.

```
 1            I saw the cases that are on the list.  Are there any
 2    other cases other than the ones on this list that the parties
 3    are aware of?
 4            MR. AYLSTOCK:  Bryan Aylstock on behalf of the
 5    plaintiffs, not that we're aware of.
 6            I will note that not every case on this case has a
 7    transfer date that is officially on the docket.
 8            THE COURT:  Let me ask, Javier.
 9            THE COURTROOM DEPUTY:  There is one left.
10            THE COURT:  The Green case is.  I was going to ask
11    about that, the Green case.  Is there any problem with me -- I
12    think that is a case in front of Judge Hwang at this point in
13    time.  Is there any problem with me putting that case in here?
14            MR. GIBBS:  Gary Gibbs, Your Honor.  No problem.
15            THE COURT:  I will order the Green case be
16    transferred to me.
17            What happened -- I am not sure I pronounced that
18    correctly, "Mam Lowly," a Benton case, that was vacated.  There
19    is a 1404 transfer.  When was that matter?
20            MR. AYLSTOCK:  Yes, Your Honor.  That was a Southern
21    District of Florida matter.
22            And the Court, there was a pending 1404 transfer.  The
23    Court ruled upon it pending the CTO from the 1407 transfer.  I
24    believe it's here.
25            THE COURT:  It is transferred here?
```

```
 1          MR. AYLSTOCK:  Yes, Your Honor.

 2          THE COURT:  When it said "vacated," I thought

 3  something happened in the case, but that case is here now?

 4          MR. AYLSTOCK:  The CTO was vacated, but the 1404

 5  transferred.

 6          THE COURT:  That's fine.  Then once the leadership

 7  is finalized -- before, I finish on the status of transferring

 8  cases, there is no state cases anybody is aware of?

 9          MR. AYLSTOCK:  No, Your Honor.

10          THE COURT:  Other than the J.C. case, where there

11  was some activity, are any of the other cases -- was there any

12  substantial activity at all?

13          MR. AYLSTOCK:  No, Your Honor.  There was no

14  oppositions to the CTOs.

15          THE COURT:  Great.  Then on page 2, once the

16  leadership is determined, I would require the master

17  consolidated complaint to be filed within 21 days of that.

18          I don't think it should be too hard.  This is not

19  anything particularly new.

20          Then on page 3, if the defense files -- decides to file

21  a motion rather than filing an answer, I want the motion to be

22  filed 30 days after the filing of the consolidated complaint.

23          Actually, let me take that back.

24          I would want the -- if there is an answer, I will allow

25  30 days for an answer, and if it's going to be a motion, the
```

1    motion has to be filed in 21 days.

2            And then I want from 20 days of the filing of the

3    consolidated complaint, then -- maybe I should be nicer.

4            I will give you guys 30 days.  I will give you 30 days;

5    in other words, after the consolidated complaint is filed,

6    30 days to file the motion; 21 days after that filing for the

7    opposition, and then ten days after that for the response, and

8    then ten days after the response is filed, I will hear the

9    matter.

10           But I hear matters only on Mondays and Thursdays, so

11   it's the closest Monday or Thursday after ten days.

12           Then on page 3, the discovery plan portion.  Obviously,

13   until there is a consolidated complaint, it's somewhat

14   difficult to do the status of these other things, although,

15   generally I want you to talk about -- once the leadership is

16   selected, talk generally about protective orders.  This is

17   standard stuff.

18           The preservation stuff, this is what I will do at this

19   point in time, even though there is not anything -- we don't

20   have a consolidated complaint filed.

21           I do think this, if the defendants have received a

22   request from any plaintiff's counsel for the preservation of

23   documents, I would want those documents to be preserved with

24   the following proviso:

25           I will allow the defendants to make a request to -- you

1  can do it on *ex parte* basis, a shorter basis than the normal

2  time, for a request that you be allowed to destroy documents,

3  but obviously, I want to know what the documents are that you

4  plan to destroy or get rid of, and stuff like that.

5        But also, if a request has just been made for general,

6  like, blunder bust, keep every record, no, I would say that is

7  not sufficient.

8        If you receive a request for specific documents, for

9  example, all records TikTok has as to minors and purchases by

10  minors, stuff of that sort, then I would say, yeah, keep them

11  until I tell you that you can get rid of them.

12              MR. POWERS:  May I be heard, Your Honor?

13              THE COURT:  Yes.

14              MR. POWERS:  Matt Powers for the defendants.

15        As we put in the papers, Your Honor, the concern is

16  preserving or identifying information for minors is against the

17  law.  And we have ongoing -- our client --

18              THE COURT:  Let me just say, yes and no, but at some

19  point, you know, I can always issue an order at this point in

20  time.  Once I have issued an order, you have to follow it.

21              MR. POWERS:  We would absolutely.  We're sort of

22  between a rock and a hard place, a bit.

23        I believe the government attorneys for the DOJ are on

24  the phone.  We want to make sure we are complying.

25              THE COURT:  Okay.  Let me ask the representatives

15

```
 1   from DOJ, do you have a position on this issue?
 2                    (Voice not detectable.)
 3              THE COURT:  You are breaking up.  Can you speak
 4   louder?
 5              MR. SMITH:  I hear an echo.
 6              THE COURT:  Are you on a land line or are you on,
 7   like, a iPad thing?
 8              MR. SMITH:  I'm on a cellular phone, but I don't
 9   think that is contributing to the feedback.
10        I think someone on the line needs to mute their phone,
11   because I'm hearing an echo.
12              THE COURT:  Right now, you are coming in fine.
13              MR. SMITH:  Okay.  I think the muting was done.  I
14   think the problem is solved, but I can hear you all clearly as
15   well.
16              THE COURT:  Great.
17         Just a second, can you identify yourself again?
18              MR. SMITH:  Sure.  Marcus Smith Consumer Protection
19   Brands, Department of Justice, on behalf of the United States.
20         Our position is that the defendants should comply with
21   KOPPA and the obligation to whatever COPPA requires them to do,
22   that's what they should be doing.
23         They also need to comply with their document
24   preservation obligations.
25         To the extent those two things are intentioned, I think
```

```
1   we need more specific information about what exactly is being

2   deleted versus what is being preserved.

3         It's difficult -- so, in short, it's difficult to take a

4   position, Your Honor, in the abstract.

5         I think we need more detail.

6         THE COURT:  Let me stop.  That's what I wanted,

7   because in fact, it seems to me I'm going to order the

8   preservation insofar as specifically requested documents, not a

9   blunderbuss, but specifically request of documents, but I leave

10  it up to the defendant to move, even on an ex parte basis, if

11  it feels that it can't comply with my request.

12        MR. POWERS:  I can give the Court and the parties

13  more clarity here.

14        THE COURT:  I don't want it orally, I want it in

15  writing.

16        MR. POWERS:  I wasn't going to make a motion.  I was

17  going to explain the nature of the situation.

18        The ongoing process is that when defendants identify a

19  user on the above 13 experience, that is in fact under 13,

20  through a variety of mechanisms, some of which are described in

21  some of the complaints, the practice is after brief appeal

22  period, to ban the account, and then delete the data associated

23  with that account.

24        There is a record of the deletion, but the data

25  associated with that account is deleted.
```

1          That is my client's understanding of how to comply with

2     their obligations, both under the consent decree, and COPPA

3     generally.

4          It is -- we could pause that process, but that is the

5     deletion that is occurring that we are concerned about.

6               THE COURT:  Why don't we do this, my proposal would

7     be not to have you delete it until such time I permit you to

8     delete it.  Because in that way, you could justify what you are

9     doing in saying this was an order from this Court that -- I

10    presume the statute will allow the retention of those materials

11    for purposes of litigation.

12              MR. POWERS:  If the Court orders us to do that, we

13    will comply.

14              THE COURT:  Let me ask plaintiff's counsel, I

15    presume you have no problem with that.

16         It's not turned over to you guys yet, it's just

17    preservation.

18              MR. KAFKA:  Your Honor, Eric Kafka for the

19    plaintiffs.

20         We appreciate your order for them to not delete the

21    data.

22         The one thing, I think, we would ask is that the motion

23    not be *ex parte*, because this is an important issue.

24              THE COURT:  Well no, when I say *ex parte*, it doesn't

25    mean I will make a ruling without hearing from the plaintiff's

**UNITED STATES DISTRICT COURT**

1   side.

2         If it's something that is so obvious, I might do so, but

3   for the most part, I am only saying I'm doing *ex parte*, because

4   it doesn't do the standard three weeks of 28 days or whatever

5   it is, but whatever it is, I will allow it to be done on a

6   quicker basis.

7               MR. KAFKA:  Thank you, Your Honor.

8               THE COURT:  So that is understood by everybody?

9               MR. POWERS:  Yes.  So just to be clear the Court is

10  ordering us to preserve that data we are deleting from the

11  users we identify as under 13?

12        We will communicate to my client promptly after the

13  hearing.

14              THE COURT:  Okay.

15              MR. KAFKA:  They should still ban those users from

16  the platform.

17              THE COURT:  I'm not requiring them not to comply

18  with the other requirements, banning, et cetera, I'm just

19  requiring them to preserve those documents until the Court

20  orders further.

21              MR. POWERS:  The only other piece under

22  preservation, Your Honor --

23              THE COURT:  Let me ask -- so was that Mr. Smith?

24              MR. SMITH:  Marcus Smith, on behalf of the

25  government.  I just wanted to clarify that, Your Honor, in

```
 1   ordering them to preserve this data, while the issue is briefed

 2   in writing; is that correct?

 3               THE COURT:  No.  I'm now issuing a order requiring

 4   them to preserve the items, that information.  I'm allowing

 5   them, the defendant, if the defendant wants to make a motion of

 6   some sort to allow them to continue to delete those items, then

 7   I will entertain it on an ex parte basis, but obviously,

 8   allowing time for the plaintiffs to respond to that request, if

 9   made.

10         And I leave it up to the defense at any point in time

11   you want to do that, you are free to do that, but until such

12   time as you do that, I will order that you maintain the records

13   that are out there.

14               MR. PETROCELLI:  Your Honor, Mr. Petrocelli for the

15   record.

16         If we file an ex parte application and following receipt

17   of any opposition, does Your Honor hold a hearing?

18               THE COURT:  I will hold a hearing, yes.

19               MR. PETROCELLI:  Thank you.

20               THE COURT:  Let me ask the government counsel, you

21   have no problem with what I'm doing, right?

22               MR. SMITH:  Well, Your Honor, I can't -- I'm not

23   certain -- we might, because to the extent that this order

24   requires them to retain documents indefinitely, that might be

25   in violation of a regulation -- that might be something that we
```

1    take issue with.

2            THE COURT:  Let me put it this way, I will allow the

3    government -- you are not going to be joining this case, but I

4    will allow you, if you, the government wants me to modify my

5    order in this case, I will allow you to make a special

6    appearance to do so.

7            MR. SMITH:  That's what I was going to ask.  Thank

8    you, Your Honor.

9            THE COURT:  Again, I don't envision this -- let's

10   put it this way, this order I'm issuing today, I presume is

11   going to be changed or modified somewhat in the future, once

12   some more of the dust settles down.

13       At this point in time, I'm only doing this to preserve

14   evidence, but not necessarily to put it in stone, so that would

15   be that.

16           MR. POWERS:  Your Honor, one other quick point.

17       We had asked -- because the plaintiffs are anonymous in

18   this case, their minor children are anonymous, we don't know

19   what their user names are or what their accounts are, so

20   normally, we would add those names to a preservation process,

21   but we can't do that here.

22       So if the plaintiffs would identify them, we're happy to

23   add their minor children --

24           THE COURT:  Why don't you -- don't identify them,

25   just identify them by initials.

**UNITED STATES DISTRICT COURT**

```
 1          MR. POWERS:  Correct.  We don't know what accounts
 2   are associated with them.  So we can't preserve their own
 3   clients' accounts specifically.
 4          We would be happy to do that, but absent identification
 5   of who they are, what their account names are, we can't do
 6   that.
 7          THE COURT:  Is that page 5 of your joint report, it
 8   mentions the fact because the plaintiffs are bringing their
 9   claims anonymously; in other words, the plaintiffs at this
10   point in time, my understanding can preserve their own stuff,
11   right?
12          MR. POWERS:  That's correct, they can.
13          THE COURT:  I presume they're going to do that.
14          You are indicating you can't do that for them, they
15   understand that hopefully, so therefore -- you could, if they
16   identified them to you.
17          MR. POWERS:  Correct.
18          THE COURT:  So far they have not identified them to
19   you, in which case, they are going to have to preserve it
20   themselves at this point in time, unless they want to give the
21   information to your client for your client to preserve it.
22          That is my understanding of the situation at this point.
23          MR. LOESER:  That is correct, Your Honor.  What the
24   plaintiffs have said -- Derek Loeser -- what the plaintiffs
25   have said is that they don't have a problem providing this
```

```
 1    information, but there should be reciprocity so the defendant

 2    should produce the information that they have collected.

 3              THE COURT:  You mean, their underage defendants?

 4              MR. LOESER:  The plaintiffs.

 5              THE COURT:  No, the plaintiffs are going to

 6    identify.

 7              MR. LOESER:  They have information and records and

 8    knowledge that we don't have about what they do with the data

 9    they collect from our plaintiffs.  So we would like a

10    reciprocal obligation for them to provide information.

11              THE COURT:  Well, let me ask, is there any problem

12    for you providing that information in the near issue?

13              MR. POWERS:  All we're trying to preserve, if they

14    have downloaded their data.

15              THE COURT:  No, what he is saying, he doesn't

16    understand necessarily what your client does in terms of

17    preservation.

18              MR. POWERS:  Now, I'm not understanding.

19         I'm not sure, Your Honor, if there is data other than

20    what would be available in the download your data process.

21         I don't know if there is anything to provide, I don't

22    know, I have to say if there is anything to provide, other than

23    that data.

24              MR. LOESER:  Your Honor, I have had a fair amount of

25    experience litigating against social media companies.
```

1           There is a tremendous amount of data, typically, that

2    the company collects and obtains with regard to users,

3    including the minor plaintiffs in this case.

4           One of the things that would be helpful for the

5    litigation, would be once we have identified by name of the

6    plaintiffs, they then search their records to provide the

7    information, certainly preserve it, and also produce

8    information that the plaintiffs don't have that they have

9    collected with regard to the plaintiffs.

10             MR. POWERS:  So we are talking about preservation.

11   If we get to discovery, then obviously this information is

12   going to be subject to discovery.

13          But at this stage, all we're asking is to preserve,

14   that's it.  We're talking about preservation, not production.

15             THE COURT:  Well, let just stop.

16          That stuff, which counsel is talking about, will be

17   preserved, assuming their clients have been identified.

18             MR. POWERS:  If they were identified, we would

19   certainly preserve any data associated with their clients,

20   correct.

21             THE COURT:  Let me ask, you have a choice now,

22   again, I'm not ordering discovery at this stage.

23          But if the plaintiffs turn over the identity of their

24   clients to defense counsel, subject to a standard protective

25   order, at this point in time, then they will tell you what they

```
 1   have -- you will tell them what they have as to their clients,
 2   right?
 3             MR. POWERS:  As opposed to producing it?
 4             THE COURT:  You don't have to produce it, just
 5   identify what you have.
 6             MR. POWERS:  Yes.  I'm sure we can identify, at
 7   least, conceptionally what data we had, to the extent there is
 8   data beyond the downloaded data.
 9             MR. LOESER:  That's fine, Your Honor.
10             THE COURT:  I can see this case settling in the very
11   near future at this point.
12             MR. LOESER:  Once that data is provided, probably.
13        Your Honor, there is an issue, I think you are probably
14   getting to it, the stay after.
15             THE COURT:  I will get to that stuff in a moment.
16        Again, a lot of the stuff you have brought out is
17   referenced during the status report.  And I appreciate that the
18   joint status is very thorough.  Thank you.
19        It says, for example, to be clear the defendants should
20   continue to remove childrens' TikTok accounts from their
21   platform, but the defendants need to preserve data regarding
22   those accounts.  And I agree with that, both sides agree with
23   that as well.
24        So I have addressed the stuff, I had on pages 4 and 5.
25        Then as to a 26(f) -- sorry, the 26(f) conference
```

1   scheduling.

2           There are three points.  This is on page 6, by the MDL

3   plaintiffs, by the government, also by the defense.  Actually,

4   I agree with all three points, because again, the plaintiffs

5   say that the 26(f) should be scheduled promptly, et cetera, I

6   agree with that 100 percent.

7           The government's position is that 26(f) has already been

8   conducted in its case, so therefore, the government is not

9   consolidated with this case, I understand that as well.

10          Then the defendants say that it would be most efficient

11  to wait until the -- don't do a 26(f) until leadership has been

12  determined and a consolidated complaint has been filed.

13          I agree with that as well.

14          I agree with everybody.

15          All we need to do is we need to choose the leadership,

16  we need to file the consolidated complaint, and thereafter, I

17  will, once that is in, I will set a date for 26(f).

18          Now, if a motion to dismiss has been filed, I may or may

19  not continue the 26(f) that I originally scheduled, and that

20  depends upon the nature of the motion and things of that sort.

21          But there is a possibility that I would, if a motion has

22  been filed, rather than simply an answer.

23          But I would have to look at the stuff at that point in

24  time.

25          So I will set a 26(f) once a consolidated complaint has

26

```
 1    been filed.
 2         This is subject to obviously any sort of motion to
 3    continue it if a motion dismiss has been filed.
 4         Then as to the next topic is DOJ coordination.
 5         I understand the MDL plaintiff's position is you think
 6    in Heckman I took a position that the materials that have
 7    previously been produced by the defendants to prior
 8    governmental investigations and litigation be turned over.
 9         I think I did that, but I thought that one of the
10    reasons I did that, because there was a request and nobody was
11    really objecting to it, so I just did it.
12         If somebody is objecting to it, then I will have to see
13    what my response would be.
14         MR. LOESER:  Your Honor, I read the order, and I
15    tried to find the briefing that predated the order.
16         I believe the defendant did object to that.
17         I could be wrong, but judging from the amount of words
18    that the plaintiffs devoted in the status report to arguing for
19    that information, I suspected --
20         THE COURT:  Well, they are particularly loquacious
21    on that side.
22         MR. LOESER:  I think it would make sense here.
23         THE COURT:  Let me put it this way, at this point in
24    time, I'm staying everything, though, at this point in time,
25    until such time as the leadership and the consolidated
```

1  complaint is filed.

2        Frankly, I think at some point in time there is going to

3  have to be a fair amount of coordination with the DOJ

4  litigation.

5        But the extent of that coordination depends upon a lot

6  of different things that are up in the air at this point in

7  time, but I envision it being coordinated.

8        MR. LOESER:  Understood, Your Honor.

9        I would just emphasize that the defendants, themselves,

10  identified relationship between the government case and the MDL

11  plaintiff's case.  The defendants, themselves, urge close

12  coordination.

13        I would like -- if possible, we could revisit the stay

14  issue on government production and production in other cases,

15  after leadership, because I think it is important that we get

16  the already produced documents produced quickly.

17        THE COURT:  I agree.  What you are talking about is

18  stuff was talked about on page 9 of the joint status report,

19  again, the pages is actually 8 and 9.

20        There is -- as I said, there is going to have to be

21  coordination.  The extent of it, certainly by the time of

22  depositions it pretty much has to be, because again, I don't

23  want to have multiple depositions, if possible.

24        But the other problem I think -- let me ask, looking

25  somewhat into the future, assuming the case is not dismissed

28

```
 1   out, and assuming it is not settled, after -- if there is a
 2   12(b) motion practice, assuming that I don't dismiss out the
 3   case, after that point in time, the next major step, I presume,
 4   for the plaintiffs would be a motion of some sort for class
 5   cert; is that correct?
 6               MR. LOESER:  Yes, Your Honor.  Although, typically
 7   because of the overlap between merits and class cert discovery,
 8   discovery is open for all.
 9               THE COURT:  Well, yes and no.
10          Some judges open it for all.  I usually don't.  I
11   usually limit it to class cert stuff.
12          I may not in this case, because of the fact there is
13   going to be substantive discovery going to in the government
14   case.
15          So it may not -- any savings of time and money won't
16   probably be achieved.
17          So, yeah, I would think that -- the question, however,
18   is the government obviously is not going to be certifying
19   class, the government is going to be arguing the merits, and
20   stuff of that sort.
21          So the question is what period of time are we going to
22   be doing -- in this case, they were prepping for a motion for
23   class cert.  Is everything pretty much going to be
24   simultaneously litigated during that point in time?
25               MR. LOESER:  In my experience, that is smoothest
```

```
 1   operation.  There is not fights over what is class discovery

 2   and merits discovery.

 3        The plaintiffs will move for class cert as soon as they

 4   can, based on the information that has been obtained.

 5        There is often pretty significant expert reports and

 6   expert discovery these days that relates to class cert, so it

 7   takes some time to put it together.

 8        We would be firing on all cylinders to do both merits

 9   and class discovery and moving swiftly.

10        THE COURT:  I envision, obviously, there would be

11   some period of discovery.

12        I guess at this point for the case, I may not limit it

13   to just class cert discovery, but just across the board

14   discovery.

15        MR. POWERS:  Your Honor, I agree partially with

16   plaintiff's counsel.

17        Often merits issues do bleed into class cert, and

18   obviously there is a bit of different circumstance by -- Matt

19   Powers for defendants.

20        THE COURT:  By now she knows.

21        MR. POWERS:  It is a different circumstance with the

22   DOJ case.

23        I will just say that if we get to that stage, there may

24   certainly be topics that we think are inappropriate for

25   discovery prior to class certification.
```

 1          Maybe not, maybe we won't have those areas of

 2   disagreement, but I think that issue should wait.

 3          THE COURT:  Again, I'm at this point in time, I am

 4   not deciding anything finally.  I'm indicating my response to

 5   stuff on the joint report.

 6          So yeah, obviously, there is going to be have to be

 7   coordination, et cetera.

 8          Let's see what else, on page 11, again, discovery

 9   pending the motion for 12(b)(6) motion, you know, I think it

10   really depends on what is the -- if there is a 12(b)(6) motion,

11   you know, what is the nature of the motion, because sometimes

12   even though, obviously, 12(b)(6) motions are not supposed to be

13   resolved on facts, there might be certain types of arguments

14   that are made, even under 12(b)(6) that might warrant some

15   opportunity for discovery of some sort or another by one side

16   or the other; it really depends.

17          Until I see the 12(b)(6) motion, I can't say one way or

18   the other.

19          Generally, I do understand there might be some hesitancy

20   of allowing discovery, but conversely, however, I can also see

21   a situation where I would allow discovery, it just depends on

22   the motion, finally what the consolidated complaint looks like

23   and things like that.

24          So I'm not going to say I will issue a decision or, you

25   know, a position at this point in time, I will have to see what

```
 1    happens.
 2              MR. BLOCH:  Your Honor, Steven Bloch, if I could
 3    offer a little bit of commentary.
 4         I think, while this may not be dispositive, the motion
 5    to dismiss in the J.C. action, the initial consolidated action
 6    was fully briefed, and I think that provides a lot of guidance
 7    here.
 8              THE COURT:  I think it is, but again, until I see
 9    the consolidated complaint here, I don't know if it's exactly
10    on all fours, et cetera, et cetera.
11         Let me put it this way, if I haven't made a ruling that
12    stays discovery, and if the plaintiffs serve discovery on the
13    defendants, I will obviously allow defendants to make a motion,
14    either to stay that production of that discovery or whatever.
15         I mean, I will give you the opportunity, but at this
16    point in time, I'm not saying you are barred from submitting
17    discovery, once the leadership is decided, and once the
18    consolidated complaint has been filed.
19              MR. BLOCH:  Thank you.
20              MR. LOESER:  On that point, if I may, the discussion
21    in the status report circles back to the limited production of
22    documents produced to the government already.
23         It's that limited discovery that we think would make
24    sense.
25              THE COURT:  I thought we already discussed that to
```

 1  some extent, and we kind of reached sort of an initial

 2  tentative position on that somewhat?

 3          MR. LOESER:  I think so.

 4      I guess it comes together with this issue of when a

 5  motion is pending and whether discovery should go forward or

 6  not.

 7          It sound like Your Honor is reserving judgment.

 8          THE COURT:  Once -- I have set a firm date that both

 9  leadership selection and filing of a consolidated complaint.

10          Once that is done, I'm not going to forbid discovery,

11  but obviously, you know, if you file something right away, I

12  can understand the defendant's position somewhat, especially,

13  if it's an onerous discovery, that hey, we haven't even decided

14  what this case is about yet.

15          Although, we have a general idea, we haven't decided

16  firmly, so I would let them make a -- file a motion to stay

17  their response, pending some other date.

18          If they convince me, then I will stay, if they don't

19  convince me, then they will produce.

20          MR. LOESER:  The burden is obviously on them.

21          THE COURT:  Yeah, the burden would be on them.

22          MR. LOESER:  I have taken a peek at the motion the

23  filed before.

24      I think Your Honor will find it interesting that they

25  are arguing that the plaintiffs aren't specific enough about

```
 1    what information has been taken and inappropriately been used.
 2         Based upon the motion I have seen -- again, we're going
 3    to get to this later, that discovery would be quite useful on
 4    that.
 5         THE COURT:  Well, let me indicate to the defendant,
 6    not to prejudge anything, because I haven't read the motions,
 7    I'm relying on what he said.
 8         If that is the nature of your argument, you know, well
 9    unless if you are going to argue that there is no -- it would
10    have no basis for arguing some sort of improper, either
11    retention or obtaining information, et cetera.
12         It would seem to me that under the 12(b)(6) standard for
13    me to grant a dismissal, you know, without leave to amend, it
14    would have to be a situation where they could not, foreseeably
15    amend to state a claim.
16         Given the fact that what they pled so far --
17         MR. PETROCELLI:  I think it's a fair balance and
18    accurate description, Your Honor.
19         THE COURT:  I think they are much more complicated
20    than you think they are.
21         So I would say to give their arguments their due, and at
22    this point in time, we don't know.
23         We haven't seen the consolidated complaint, and we
24    haven't seen the defense's response.
25         Once we do that, then we will see.
```

34

```
 1              MR. LOESER:  Thank you, Your Honor.

 2              THE COURT:  Let's see, what else?

 3         Do I have any other comments on the motion -- sorry, the

 4    joint status report.

 5              That's pretty much it.  The only thing I would also ask

 6    the parties, again, it's never too early to discuss mediation.

 7              I presume that if once the parties feel comfortable

 8    going into mediation, you guys are probably going to go to

 9    private mediation, or would you want to do it in front of a

10    Magistrate Judge?

11              MR. BLOCH:  Yes, Your Honor.  Steven Bloch.

12              THE COURT:  The Magistrate Judges are free.  I know

13    how much these -- a lot of my colleagues are doing this stuff,

14    I know how much they charge, I'm going, wow.

15              MR. BLOCH:  Well, we appreciate the offer for

16    Magistrate Judge's guidance, I think private mediation is

17    probably appropriate.

18              THE COURT:  Defense probably concurs, you are going

19    to go private?

20              MR. PETROCELLI:  That's fine, Your Honor.

21              THE COURT:  I want you guys to talk about some

22    dates, if not specific dates, some, like, event dates; in other

23    words, if I deny the motion to dismiss, you know, would the

24    parties feel comfortable at that point in time, do you the

25    parties want to see if I grant the motion for class cert, then
```

 1    at that point in time?  In other words, I want you guys to give

 2    me some clues as to when both sides feel comfortable going to

 3    mediation.

 4          I understand it would be private, but give me some dates

 5    or events that you think would be most appropriate to start

 6    serious mediation talks.

 7          All right.  Let's see, I think that is all I have.

 8          Let me ask counsel, does either side want to bring

 9    anything to my attention at this point in time?

10          MR. LOESER:  From the fact that -- Derek Loeser, no

11    one is standing up, so the answer is no.

12          THE COURT:  We don't know is the government counsel

13    standing up?

14          MR. SMITH:  Marcus Smith for the government.  There

15    was one outstanding issue from our last conference, Your Honor.

16          Your Honor was entertaining staying written discovery in

17    the government's case, while certain other issues were being

18    sorted out.

19          I want to confirm that the Court does not have a problem

20    with us going forward with --

21          THE COURT:  I would agree.  At this point in time, I

22    would agree, I would say the government is free to do whatever

23    discovery it wants.

24          If there is any party in this case that wants to either

25    object or seek a stay or protective order or whatever, they

36

```
 1    will have to file something, because again, I'm not
 2    entertaining oral motions.
 3            So, the government is free to litigate its case.
 4            And if some party in this case or any other party, third
 5    party or whatever, has objections, they can come to this Court
 6    and seek some sort of protective order or some other form of
 7    motion, okay?
 8                MR. SMITH:  Thank you, Your Honor.
 9                THE COURT:  Anything else with that?
10                MR. KAFKA:  Nothing further for the plaintiffs.
11                THE COURT:  All right.
12                MR. PETROCELLI:  Thank you, Your Honor.  Nothing
13    from us.
14                THE COURTROOM DEPUTY:  Any follow-up status
15    conferences?
16                THE COURT:  Let me just -- well, I thought I had set
17    some dates, haven't I?
18                THE COURTROOM DEPUTY:  There is a hearing on the
19    motion on the response.
20                THE COURT:  Yeah, that is right.
21            All right.  Everybody, have very nice week.
22                MR. KAFKA:  Thank you, Your Honor.
23                MR. PETROCELLI:  Thank you, Your Honor.
24                (The proceedings concluded at 10:53 a.m.)
25                              * * *
```

1                    **CERTIFICATE OF OFFICIAL REPORTER**

2

3    COUNTY OF LOS ANGELES    )
                              )
4    STATE OF CALIFORNIA      )

5

6            I, TERRI A. HOURIGAN, Federal Official Realtime

7    Court Reporter, in and for the United States District Court for

8    the Central District of California, do hereby certify that

9    pursuant to Section 753, Title 28, United States Code that the

10   foregoing is a true and correct transcript of the

11   stenographically reported proceedings held in the

12   above-entitled matter and that the transcript page format is in

13   conformance with the regulations of the judicial conference of

14   the United States.

15

16   Date: 28th day of April, 2025.

17

18

19                              /s/ TERRI A. HOURIGAN

20            _____
                 TERRI A. HOURIGAN, CSR NO. 3838, RPR, CRR
21                      Federal Court Reporter

22

23

24

25

| / | 4311 [1] - 1:24 | 2:17 | areas [1] - 33:7 | Benton [1] - 15:13 |
|---|---|---|---|---|

**/s** [1] - 41:19

**5**

5 [3] - 14:12, 24:21, 28:9

**1**

1 [1] - 14:19
10 [1] - 9:17
100 [1] - 28:16
10:00 [1] - 9:2
10:53 [1] - 40:1
11 [1] - 33:14
12(b [1] - 31:10
12(b)(6 [6] - 33:15, 33:16, 33:18, 33:20, 33:23, 36:15
12th [1] - 12:1
13 [3] - 20:11, 22:2
14 [2] - 11:20, 11:25
1404 [3] - 15:13, 15:17, 15:23
1407 [1] - 15:18
1st [2] - 13:11, 13:14

**2**

2 [1] - 16:9
20 [3] - 14:6, 14:12, 16:21
2025 [3] - 1:14, 9:1, 41:16
21 [3] - 16:11, 16:20, 16:25
213 [1] - 1:25
22nd [1] - 12:2
25 [1] - 9:21
26(f [7] - 28:10, 28:15, 28:17, 28:21, 29:4, 29:10
26(f) [1] - 29:2
28 [4] - 1:14, 9:1, 21:20, 41:9
28th [1] - 41:16
29th [2] - 13:15, 13:16
2nd [1] - 12:3

**3**

3 [2] - 16:14, 17:6
30 [5] - 16:16, 16:19, 16:23, 16:25
3144 [1] - 9:21
350 [1] - 1:24
3838 [2] - 1:23, 41:20

**4**

4 [1] - 28:9
40 [1] - 12:14

**6**

6 [1] - 28:12

**7**

753 [1] - 41:9

**8**

8 [1] - 31:2
894-2849 [1] - 1:25

**9**

9 [2] - 31:1, 31:2
90012 [1] - 1:24

**A**

a.m [2] - 9:2, 40:1
A1 [1] - 2:5
A2 [1] - 2:11
A3 [1] - 2:17
A4 [1] - 2:23
above-entitled [1] - 41:12
absent [1] - 24:18
absolutely [1] - 18:14
abstract [1] - 19:21
acceptable [1] - 14:5
account [4] - 20:14, 20:15, 20:17, 24:19
accounts [4] - 24:8, 24:15, 24:17, 28:7
accurate [1] - 36:21
achieved [1] - 31:24
action [2] - 34:10, 34:11
actions [1] - 12:15
activity [2] - 16:5, 16:6
add [2] - 24:9, 24:12
address [1] - 28:9
ADDRESS [8] - 2:5, 2:5, 2:11, 2:11, 2:17, 2:17, 2:23, 2:23
ADDRESS-A1 [1] - 2:5
ADDRESS-A2 [1] - 2:11
ADDRESS-A3 -

ADDRESS-A4 [1] - 2:23
ADDRESS-B1 [1] - 2:5
ADDRESS-B2 [1] - 2:11
ADDRESS-B3 [1] - 2:17
ADDRESS-B4 [1] - 2:23
ago [2] - 10:14, 13:2
agree [12] - 13:5, 13:6, 28:8, 28:14, 28:15, 28:23, 28:24, 30:25, 32:23, 38:23, 38:24
agreed [2] - 11:9, 11:14
air [1] - 30:15
allow [12] - 12:4, 14:17, 16:18, 17:19, 21:2, 21:21, 22:21, 23:16, 23:18, 23:19, 34:2, 34:18
allowed [1] - 17:21
allowing [3] - 22:19, 22:23, 34:1
amend [2] - 36:16, 36:18
amount [4] - 26:10, 26:12, 30:2, 30:12
ANGELES [4] - 1:15, 1:24, 9:1, 41:3
Angeles [1] - 10:16
announce [1] - 9:10
anonymous [2] - 24:6, 24:7
anonymously [1] - 24:23
answer [5] - 16:15, 16:18, 16:19, 29:7, 38:13
APP02 [1] - 2:9
APP03 [1] - 2:15
APP04 [1] - 2:21
appeal [1] - 20:13
appearance [1] - 23:20
appearances [2] - 9:9, 9:10
APPEARANCES [1] - 2:1
application [1] - 23:5
appreciate [3] - 21:11, 28:3, 37:17
appropriate [2] - 37:19, 38:7
April [3] - 1:14, 9:1, 41:16

argue [1] - 36:12
arguing [4] - 30:3, 32:2, 36:3, 36:13
argument [1] - 36:11
arguments [3] - 12:5, 33:19, 36:24
arisen [1] - 10:2
arose [1] - 10:18
aside [2] - 10:11, 11:8
associated [4] - 20:14, 20:17, 24:16, 27:5
assuming [4] - 27:2, 31:8, 31:9, 31:10
attention [2] - 10:8, 38:11
Attorney [4] - 2:4, 2:10, 2:16, 2:22
attorney [1] - 12:4
ATTORNEY1 [1] - 2:4
ATTORNEY2 [1] - 2:10
ATTORNEY3 [1] - 2:16
ATTORNEY4 [1] - 2:22
attorneys [2] - 11:3, 18:16
available [1] - 26:7
aware [3] - 14:23, 14:25, 16:2
AYLSTOCK [9] - 13:8, 13:14, 13:17, 14:24, 15:15, 15:20, 15:23, 16:3, 16:7
Aylstock [2] - 13:8, 14:24

**B**

B1 [1] - 2:5
B2 [1] - 2:11
B3 [1] - 2:17
B4 [1] - 2:23
balance [1] - 36:20
ban [2] - 20:14, 22:5
banning [1] - 22:8
barred [1] - 34:21
based [3] - 9:16, 32:12, 36:5
basis [6] - 17:20, 20:2, 21:22, 22:22, 36:13
became [1] - 10:15
behalf [4] - 13:8, 14:24, 19:12, 22:14
behind [1] - 11:4

between [4] - 12:19, 18:15, 30:19, 31:15
beyond [1] - 27:19
bit [4] - 11:3, 18:15, 32:25, 34:9
bleed [1] - 32:24
BLOCH [7] - 11:11, 14:3, 14:10, 34:8, 34:24, 37:13, 37:17
Bloch [4] - 11:11, 14:3, 34:8, 37:13
blunder [2] - 17:25, 20:1
board [1] - 32:21
Brands [1] - 19:11
breaking [1] - 18:21
brief [3] - 10:25, 14:6, 20:13
briefed [2] - 22:16, 34:11
briefing [1] - 29:25
briefs [1] - 11:16
bring [2] - 10:8, 38:10
bringing [1] - 24:22
brought [1] - 28:2
Bryan [2] - 13:8, 14:24
bullet [1] - 11:4
burden [2] - 35:23, 35:24
bust [2] - 17:25, 20:1
BY [4] - 2:4, 2:10, 2:16, 2:22

**C**

calendar [1] - 12:3
California [1] - 41:8
CALIFORNIA [5] - 1:2, 1:15, 1:24, 9:1, 41:4
care [5] - 11:18, 11:19, 11:23, 11:24, 12:11
case [39] - 9:20, 10:12, 10:13, 10:14, 12:13, 14:13, 15:1, 15:5, 15:6, 15:7, 15:8, 15:10, 15:13, 15:22, 16:4, 23:17, 23:19, 24:7, 25:8, 26:14, 27:21, 28:18, 28:19, 30:19, 30:20, 31:8, 31:11, 31:20, 31:22, 32:5, 32:20, 33:4, 35:18, 38:19, 39:1, 39:5, 39:6
Case [1] - 1:7

**CASENUM** [1] - 1:7
**cases** [10] - 9:23, 10:16, 10:18, 14:20, 14:21, 14:22, 16:2, 16:5, 30:23
**CCRR** [1] - 1:23
**cellular** [1] - 19:1
**Central** [1] - 41:8
**CENTRAL** [2] - 1:2
**cert** [9] - 31:13, 31:15, 31:18, 32:6, 32:11, 32:14, 32:21, 32:24, 38:2
**certain** [3] - 23:12, 33:19, 38:19
**certainly** [5] - 14:14, 26:18, 27:5, 31:4, 33:5
**CERTIFICATE** [1] - 41:1
**certification** [1] - 33:6
**certify** [1] - 41:8
**certifying** [1] - 32:1
**cetera** [6] - 22:8, 28:15, 33:13, 34:15, 36:14
**changed** [1] - 23:25
**charge** [1] - 37:16
**check** [1] - 13:9
**children** [1] - 24:7
**childrens** [1] - 24:12
**childrens'** [1] - 28:6
**choice** [1] - 27:7
**choose** [2] - 14:18, 28:25
**circles** [1] - 35:1
**circumstance** [2] - 32:25, 33:3
**CITY1** [1] - 2:6
**CITY2** [1] - 2:12
**CITY3** [1] - 2:18
**CITY4** [1] - 2:24
**claim** [1] - 36:18
**claims** [1] - 24:23
**clarify** [1] - 22:15
**clarity** [1] - 20:5
**class** [14] - 12:15, 31:12, 31:15, 31:18, 32:1, 32:6, 32:9, 32:11, 32:14, 32:17, 32:21, 32:24, 33:6, 38:2
**clear** [2] - 21:25, 28:5
**clearly** [1] - 19:7
**clerk** [1] - 9:8
**client** [5] - 18:10, 22:3, 25:10, 26:3
**client's** [1] - 20:18

**clients** [4] - 27:3, 27:5, 27:10, 27:12
**clients'** [1] - 24:17
**close** [1] - 30:20
**closest** [1] - 17:5
**clues** [1] - 38:4
**Coat** [2] - 10:12, 10:20
**Code** [1] - 41:9
**colleagues** [1] - 37:15
**collect** [1] - 25:22
**collected** [2] - 25:16, 26:20
**collects** [1] - 26:13
**comfortable** [3] - 37:9, 38:1, 38:4
**coming** [1] - 19:5
**comment** [1] - 13:22
**commentary** [1] - 34:9
**comments** [1] - 37:6
**communicate** [1] - 22:3
**companies** [1] - 26:11
**company** [1] - 26:13
**complaint** [15] - 16:11, 16:16, 16:22, 16:24, 17:7, 17:14, 28:22, 29:1, 29:10, 30:10, 34:4, 34:14, 34:23, 35:13, 37:1
**complaints** [1] - 20:13
**complicated** [1] - 36:22
**comply** [6] - 19:13, 19:16, 20:3, 20:18, 21:5, 22:7
**complying** [1] - 18:17
**conceptionally** [1] - 27:18
**concern** [1] - 18:8
**concerned** [1] - 20:22
**concluded** [1] - 40:1
**concurs** [1] - 37:20
**conducted** [1] - 28:18
**Conference** [1] - 1:13
**conference** [3] - 28:10, 38:17, 41:13
**Conference/ Sentencing** [1] - 1:13
**conferences** [1] - 39:17
**confirm** [1] - 38:21

**conformance** [1] - 41:13
**consensus** [2] - 11:14, 14:5
**consent** [1] - 20:19
**consolidate** [2] - 12:15, 16:24
**consolidated** [16] - 16:11, 16:16, 16:22, 17:7, 17:14, 28:19, 28:22, 28:25, 29:10, 30:10, 34:4, 34:11, 34:14, 34:23, 35:13, 37:1
**Consumer** [1] - 19:11
**continue** [4] - 22:21, 28:6, 29:4, 29:12
**contributing** [1] - 19:2
**conversely** [1] - 34:1
**convince** [2] - 35:21, 35:22
**coordinated** [2] - 12:23, 30:16
**coordination** [6] - 29:14, 30:12, 30:14, 30:21, 31:4, 33:13
**COPPA** [2] - 19:14, 20:19
**correct** [8] - 22:17, 24:15, 25:1, 25:6, 25:12, 27:6, 31:13, 41:10
**correctly** [1] - 15:12
**counsel** [13] - 9:19, 10:23, 11:24, 17:16, 21:6, 23:9, 27:2, 27:10, 32:24, 38:10, 38:14
**COUNSEL** [1] - 2:1
**country** [1] - 10:19
**COUNTY** [1] - 41:3
**couple** [1] - 9:18
**course** [1] - 10:2
**court** [1] - 21:25
**COURT** [80] - 1:1, 1:23, 9:6, 9:8, 11:15, 12:11, 12:21, 12:25, 13:2, 13:4, 13:13, 13:15, 13:21, 13:24, 14:8, 14:12, 15:3, 15:5, 15:10, 15:19, 15:21, 15:25, 16:4, 16:9, 18:6, 18:11, 18:18, 18:21, 18:24, 19:5, 19:9, 19:23, 20:6, 20:23, 21:6, 21:15, 21:24, 22:7, 22:13, 22:18, 23:7,

23:9, 23:16, 23:23, 24:13, 24:21, 25:2, 25:7, 25:17, 25:19, 25:24, 26:3, 27:1, 27:7, 27:15, 27:21, 28:1, 30:5, 30:8, 30:25, 31:17, 32:18, 33:2, 33:9, 34:13, 35:5, 35:12, 35:24, 36:8, 36:22, 37:5, 37:14, 37:20, 37:23, 38:14, 38:23, 39:11, 39:13, 39:18, 39:22
**Court** [14] - 9:25, 13:10, 14:6, 15:16, 15:17, 20:4, 21:1, 21:4, 22:9, 38:21, 39:7, 41:7, 41:20
**Court's** [1] - 10:8
**COURTROOM** [3] - 15:4, 39:16, 39:20
**CRR** [1] - 41:20
**CSR** [2] - 1:23, 41:20
**CTO** [2] - 15:17, 15:23
**CTOs** [1] - 16:8
**cylinders** [1] - 32:16

**D**

**data** [17] - 20:14, 20:16, 21:12, 22:1, 22:16, 25:21, 26:2, 26:6, 26:7, 26:9, 26:12, 27:5, 27:18, 27:19, 27:23, 28:7
**date** [9] - 10:3, 11:20, 11:21, 12:1, 12:6, 15:1, 29:2, 35:12, 35:20
**Date** [1] - 41:16
**dates** [6] - 11:25, 37:24, 38:6, 39:19
**days** [18] - 11:20, 11:21, 11:25, 12:1, 16:11, 16:16, 16:19, 16:20, 16:21, 16:23, 16:25, 17:1, 17:2, 17:5, 21:20, 32:14
**decided** [4] - 12:7, 34:22, 35:17, 35:19
**decides** [1] - 16:14
**deciding** [1] - 33:10
**decision** [1] - 34:6
**decree** [1] - 20:19
**DEFENDANT** [4] - 1:8, 2:9, 2:15, 2:21
**defendant** [6] - 20:2, 22:20, 25:15, 30:1, 36:8

**defendant's** [1] - 35:16
**Defendants** [1] - 1:9
**defendants** [14] - 17:15, 17:19, 19:13, 20:10, 25:17, 28:5, 28:7, 28:20, 29:17, 30:18, 30:20, 33:1, 34:18
**defense** [6] - 14:15, 16:14, 18:7, 22:25, 27:10, 28:13
**Defense** [1] - 37:20
**defense's** [1] - 37:2
**definitely** [1] - 13:24
**delete** [5] - 20:14, 20:24, 20:25, 21:11, 22:21
**deleted** [2] - 19:19, 20:17
**deleting** [1] - 22:1
**deletion** [2] - 20:16, 20:22
**Denise** [1] - 10:12
**deny** [1] - 37:25
**Department** [1] - 19:12
**deposition** [1] - 31:5
**depositions** [1] - 31:6
**DEPUTY** [3] - 15:4, 39:16, 39:20
**Derrick** [2] - 13:22, 38:12
**described** [1] - 20:12
**description** [1] - 36:21
**destroy** [2] - 17:21, 17:23
**detail** [1] - 19:22
**detectable** [1] - 18:20
**determination** [2] - 14:14
**determined** [2] - 16:10, 28:22
**devoted** [1] - 30:3
**different** [4] - 12:14, 30:15, 32:25, 33:3
**difficult** [3] - 17:8, 19:20
**disagreement** [1] - 33:8
**discovery** [30] - 17:6, 26:22, 26:23, 27:8, 31:15, 31:16, 31:21, 32:9, 32:10, 32:14, 32:17, 32:19, 32:21, 32:22, 33:6, 33:14, 33:21, 34:1, 34:2,

34:17, 34:19, 34:22,
35:3, 35:10, 35:14,
35:17, 36:6, 38:18,
38:24
   **discuss** [1] - 37:8
   **discussed** [1] - 35:5
   **discussion** [1] -
34:25
   **dismiss** [5] - 29:3,
29:13, 31:10, 34:10,
37:25
   **dismissal** [1] - 36:16
   **dismissed** [1] - 31:8
   **dispositive** [1] - 34:9
   **DISTRICT** [3] - 1:1,
1:2, 1:3
   **District** [4] - 10:13,
15:16, 41:7, 41:8
   **DIVISION** [1] - 1:2
   **Docket** [1] - 9:16
   **docket** [2] - 9:20,
15:2
   **document** [1] - 19:16
   **documents** [11] -
17:17, 17:21, 17:22,
18:1, 19:25, 20:1,
22:9, 23:13, 30:24,
35:2
   **DOJ** [5] - 18:16,
18:18, 29:14, 30:12,
33:4
   **done** [6] - 9:21, 10:7,
12:11, 19:6, 21:21,
35:14
   **down** [3] - 9:13,
13:23, 24:1
   **download** [1] - 26:7
   **downloaded** [2] -
26:2, 27:19
   **due** [1] - 36:24
   **during** [2] - 28:3,
32:7
   **dust** [1] - 24:1

**E**

   **E-MAIL1** [1] - 2:7
   **E-MAIL2** [1] - 2:13
   **E-MAIL3** [1] - 2:19
   **E-MAIL4** [1] - 2:25
   **early** [1] - 37:8
   **easier** [1] - 13:6
   **echo** [2] - 18:23,
19:4
   **efficient** [1] - 28:20
   **efforts** [1] - 11:13
   **either** [4] - 34:19,
36:13, 38:10, 39:1
   **emphasize** [1] -
30:18

   **entertain** [5] - 9:24,
10:3, 12:9, 13:4,
22:22
   **entertaining** [2] -
38:18, 39:4
   **entitled** [1] - 41:12
   **envision** [2] - 23:23,
30:16
   **especially** [1] - 35:16
   **et** [6] - 22:8, 28:15,
33:13, 34:15, 36:14
   **event** [1] - 37:24
   **events** [1] - 38:7
   **evidence** [1] - 24:3
   **ex** [7] - 17:20, 20:2,
21:14, 21:15, 21:19,
22:22, 23:5
   **exactly** [2] - 19:19,
34:14
   **example** [2] - 18:2,
28:5
   **experience** [4] -
11:6, 20:11, 26:11,
32:8
   **expert** [2] - 32:13,
32:14
   **explain** [1] - 20:9
   **extent** [6] - 19:17,
23:12, 27:18, 30:14,
31:4, 35:6

**F**

   **fact** [6] - 19:24,
20:11, 24:22, 31:20,
36:19, 38:12
   **facts** [1] - 33:19
   **fair** [3] - 26:10,
30:12, 36:20
   **family** [1] - 13:10
   **far** [2] - 25:7, 36:19
   **fashion** [1] - 9:13
   **faster** [1] - 13:5
   **FEDERAL** [1] - 1:23
   **Federal** [2] - 41:6,
41:20
   **feedback** [1] - 19:2
   **feelings** [1] - 13:6
   **fights** [1] - 32:9
   **file** [10] - 9:20, 10:1,
11:24, 16:14, 16:25,
23:5, 28:25, 35:15,
39:3
   **filed** [20] - 9:17,
11:18, 11:20, 12:15,
14:8, 16:11, 16:16,
16:20, 16:24, 17:2,
17:14, 28:22, 29:3,
29:7, 29:11, 29:13,
30:10, 34:23, 36:1

   **files** [1] - 16:14
   **filing** [5] - 16:15,
16:16, 16:21, 16:25,
35:13
   **filings** [2] - 9:22,
11:17
   **finalized** [1] - 16:1
   **finally** [2] - 33:10,
34:4
   **fine** [5] - 14:12,
15:25, 19:5, 27:20,
37:22
   **finish** [1] - 16:1
   **firing** [1] - 32:16
   **firm** [1] - 35:12
   **FIRM1** [1] - 2:3
   **FIRM2** [1] - 2:9
   **FIRM3** [1] - 2:15
   **FIRM4** [1] - 2:21
   **firmly** [1] - 35:19
   **firms** [1] - 12:16
   **FIRST** [1] - 1:24
   **first** [4] - 9:18, 10:10,
10:11, 13:13
   **five** [2] - 10:25, 14:6
   **Florida** [1] - 15:16
   **folks** [1] - 11:7
   **follow** [2] - 18:13,
39:16
   **follow-up** [1] - 39:16
   **following** [2] - 17:18,
23:5
   **FOR** [4] - 2:3, 2:9,
2:15, 2:21
   **forbid** [1] - 35:14
   **foregoing** [1] - 41:10
   **foreseeably** [1] -
36:18
   **forget** [1] - 12:18
   **form** [1] - 39:8
   **format** [1] - 41:12
   **forward** [2] - 35:10,
38:22
   **fours** [1] - 34:15
   **frankly** [1] - 30:11
   **free** [5] - 10:9, 23:1,
37:14, 38:24, 39:5
   **front** [4] - 10:12,
11:5, 15:7, 37:11
   **fully** [1] - 34:11
   **future** [3] - 23:25,
27:22, 31:8

**G**

   **Gary** [1] - 15:9
   **general** [2] - 17:24,
35:18
   **generally** [6] - 9:24,
10:4, 17:9, 17:10,

20:20, 33:25
   **GEORGE** [1] - 1:3
   **GIBBS** [6] - 12:9,
12:20, 12:23, 13:1,
13:3, 15:9
   **Gibbs** [1] - 15:9
   **given** [1] - 36:19
   **government** [17] -
18:16, 22:15, 23:9,
23:17, 23:18, 28:13,
28:18, 30:19, 30:22,
31:21, 32:1, 32:2,
35:2, 38:14, 38:16,
38:24, 39:5
   **government's** [2] -
28:17, 38:19
   **governmental** [1] -
29:18
   **grant** [2] - 36:16,
38:2
   **great** [2] - 16:9, 19:9
   **Green** [3] - 15:5,
15:6, 15:10
   **guess** [1] - 32:20
   **guidance** [2] - 34:12,
37:18
   **guys** [5] - 16:23,
21:8, 37:10, 37:23,
38:3

**H**

   **hair** [2] - 13:2, 13:3
   **happy** [2] - 24:11,
24:18
   **hard** [3] - 13:6,
16:12, 18:15
   **hear** [4] - 17:2, 17:4,
18:23, 19:7
   **heard** [1] - 18:5
   **hearing** [7] - 10:2,
19:4, 21:16, 22:4,
23:6, 23:7, 39:20
   **Hearing** [1] - 1:13
   **Heckman** [1] - 29:16
   **held** [1] - 41:11
   **helpful** [1] - 26:15
   **hereby** [1] - 41:8
   **hesitancy** [1] - 33:25
   **hold** [2] - 23:6, 23:7
   **Honor** [42] - 11:11,
12:9, 13:8, 13:18,
14:2, 15:9, 15:15,
15:20, 16:3, 16:7,
18:5, 18:8, 19:21,
21:10, 21:23, 21:25,
22:12, 22:15, 23:3,
23:6, 23:11, 23:22,
24:5, 25:12, 26:6,
26:10, 27:20, 27:24,

29:24, 30:17, 31:14,
35:11, 36:2, 37:4,
37:13, 37:22, 38:17,
38:18, 39:10, 39:14,
39:24, 39:25
   **HONORABLE** [1] -
1:3
   **hopefully** [2] - 13:5,
25:4
   **HOURIGAN** [4] -
1:23, 41:6, 41:19,
41:20
   **Humbert** [1] - 13:9
   **Hwang** [1] - 15:7

**I**

   **idea** [1] - 35:18
   **identification** [1] -
24:18
   **identified** [6] - 25:5,
25:7, 26:16, 27:3,
27:4, 30:19
   **identify** [12] - 9:12,
13:20, 13:21, 19:10,
20:10, 22:2, 24:11,
24:13, 24:14, 25:19,
27:16, 27:17
   **identifying** [1] - 18:9
   **identity** [1] - 27:9
   **IKEA** [2] - 12:20,
12:21
   **Illinois** [1] - 10:17
   **important** [2] -
21:14, 30:23
   **improper** [1] - 36:13
   **inappropriate** [1] -
33:5
   **inappropriately** [1] -
36:4
   **including** [1] - 26:14
   **indefinitely** [1] -
23:13
   **indicate** [2] - 9:14,
36:8
   **indicated** [1] - 9:8
   **indicating** [2] - 25:3,
33:10
   **individual** [2] - 9:22,
12:15
   **indulge** [1] - 13:10
   **information** [16] -
18:9, 19:18, 22:19,
25:10, 25:14, 25:15,
25:20, 25:23, 25:25,
26:18, 26:19, 26:22,
30:4, 32:12, 36:4,
36:14
   **initial** [2] - 34:10,
35:6

initials's [1] - 24:14
inquire [1] - 14:17
inquiries [1] - 14:16
insofar [3] - 10:10,
11:16, 19:25
instruct [1] - 9:19
intentioned [1] -
19:18
interesting [1] - 36:2
intermediary [1] -
12:19
investigations [1] -
29:18
iPad [1] - 18:25
issue [14] - 10:10,
14:19, 18:12, 18:19,
21:14, 22:16, 23:15,
25:25, 27:24, 30:22,
33:8, 34:5, 35:9,
38:17
issued [1] - 18:13
issues [2] - 32:24,
38:19
issuing [2] - 22:18,
23:24
items [3] - 10:6,
22:19, 22:21

**J**

Javier [1] - 15:3
JC [2] - 16:4, 34:10
JOB [1] - 1:14
joining [1] - 23:17
joint [8] - 9:16, 10:6,
10:15, 24:21, 28:4,
31:1, 33:11, 37:6
jointly [1] - 11:18
JUDGE [1] - 1:3
Judge [4] - 10:19,
13:17, 15:7, 37:12
Judge's [1] - 37:18
judges [2] - 10:18,
31:17
Judges [1] - 37:14
judging [1] - 30:2
judgment [1] - 35:11
judicial [1] - 41:13
June [2] - 12:3,
13:14
Justice [1] - 19:12
justify [1] - 20:25

**K**

KAFKA [5] - 21:10,
21:23, 22:5, 39:12,
39:24
Kafka [1] - 21:10
Kansas [1] - 10:17

keep [3] - 10:17,
17:25, 18:3
kind [2] - 12:18, 35:6
knowledge [1] -
25:21
knows [1] - 33:2
KOPPA [1] - 19:14

**L**

laboring [1] - 10:20
land [1] - 18:24
last [1] - 38:17
law [1] - 18:10
Law [4] - 2:4, 2:10,
2:16, 2:22
leadership [17] -
10:11, 11:9, 11:10,
11:16, 12:7, 12:17,
14:14, 14:18, 15:25,
16:10, 17:9, 28:21,
28:25, 30:10, 30:23,
34:22, 35:13
learning [1] - 11:6
least [2] - 14:4, 27:18
leave [4] - 13:11,
20:2, 22:25, 36:16
left [1] - 15:4
limit [3] - 10:25,
31:18, 32:20
limited [2] - 35:1,
35:3
line [2] - 18:24, 19:3
list [2] - 14:21, 14:22
listed [1] - 10:6
litigate [1] - 39:5
litigated [1] - 32:7
litigating [1] - 26:11
litigation [4] - 21:3,
26:16, 29:18, 30:13
Litigation [1] - 9:7
LOESER [20] -
13:18, 13:22, 14:1,
25:12, 25:18, 25:20,
26:10, 27:20, 27:23,
29:24, 30:7, 30:17,
31:14, 32:8, 34:25,
35:8, 35:23, 35:25,
37:4, 38:12
Loeser [2] - 13:22,
38:12
look [3] - 9:21, 9:22,
29:8
looking [1] - 31:7
looks [1] - 34:4
loquacious [1] - 30:5
Los [1] - 10:16
LOS [4] - 1:15, 1:24,
9:1, 41:3
louder [1] - 18:22

Lowly [1] - 15:13

**M**

Magistrate [3] -
37:12, 37:14, 37:18
MAIL1 [1] - 2:7
MAIL2 [1] - 2:13
MAIL3 [1] - 2:19
MAIL4 [1] - 2:25
maintain [1] - 23:2
major [2] - 11:2,
31:11
Mam [1] - 15:12
Marcus [3] - 19:11,
22:14, 38:16
master [1] - 16:10
materials [2] - 21:2,
29:16
Matt [2] - 18:7, 32:25
matter [9] - 9:6, 12:3,
12:20, 12:21, 12:22,
15:14, 15:16, 17:3,
41:12
matters [2] - 9:18,
17:4
MDL [5] - 9:20,
12:14, 28:12, 29:15,
30:19
MDLs [1] - 12:13
mean [3] - 21:16,
25:17, 34:20
mechanisms [1] -
20:12
media [1] - 26:11
mediation [6] - 37:8,
37:10, 37:11, 37:18,
38:5, 38:8
mentions [1] - 24:22
merits [5] - 31:15,
32:2, 32:10, 32:16,
32:24
might [7] - 21:18,
23:12, 23:13, 23:14,
33:19, 33:20, 33:25
minor [3] - 24:7,
24:12, 26:14
minors [3] - 18:2,
18:3, 18:9
ML [1] - 9:21
modified [1] - 23:25
modify [1] - 23:18
moment [1] - 28:1
Monday [3] - 1:14,
9:1, 17:5
Mondays [1] - 17:4
money [1] - 31:23
most [4] - 14:11,
21:19, 28:20, 38:7
Motion [1] - 1:13

motion [33] - 16:15,
16:19, 16:25, 20:8,
21:13, 22:20, 29:3,
29:5, 29:6, 29:12,
29:13, 31:10, 31:12,
32:5, 33:15, 33:16,
33:17, 33:23, 34:3,
34:10, 34:18, 35:9,
35:20, 35:25, 36:5,
37:6, 37:25, 38:2,
39:8, 39:21
motions [9] - 9:25,
10:4, 10:24, 11:2,
12:10, 13:25, 33:18,
36:9, 39:4
move [2] - 20:2,
32:11
moving [1] - 32:17
MR [82] - 11:11, 12:9,
12:20, 12:23, 13:1,
13:3, 13:8, 13:14,
13:17, 13:18, 13:22,
14:1, 14:3, 14:10,
14:24, 15:9, 15:15,
15:20, 15:23, 16:3,
16:7, 18:5, 18:7,
18:14, 18:23, 19:1,
19:6, 19:11, 20:4,
20:8, 21:4, 21:10,
21:23, 21:25, 22:5,
22:11, 22:14, 23:3,
23:8, 23:11, 23:21,
24:5, 24:15, 25:1,
25:6, 25:12, 25:18,
25:20, 26:1, 26:5,
26:10, 26:21, 27:4,
27:14, 27:17, 27:20,
27:23, 29:24, 30:7,
30:17, 31:14, 32:8,
32:23, 33:3, 34:8,
34:24, 34:25, 35:8,
35:23, 35:25, 36:20,
37:4, 37:13, 37:17,
37:22, 38:12, 38:16,
39:10, 39:12, 39:14,
39:24, 39:25
multiple [2] - 14:16,
31:6
mute [1] - 19:3
muting [1] - 19:6

**N**

name [1] - 26:16
names [3] - 24:8,
24:9, 24:19
nature [4] - 20:9,
29:5, 33:17, 36:11
near [2] - 25:25,
27:22

necessarily [1] -
24:3
necessary [1] - 12:5
need [8] - 13:21,
19:16, 19:18, 19:21,
28:7, 28:24, 28:25
needs [1] - 19:3
never [2] - 11:2, 37:8
new [1] - 16:13
New [2] - 10:13,
10:16
next [3] - 14:19,
29:14, 31:11
nice [1] - 39:23
nicer [1] - 16:22
NO [2] - 1:23, 41:20
nobody [1] - 29:20
normal [1] - 17:20
normally [1] - 24:9
note [1] - 14:25
nothing [3] - 13:25,
39:12, 39:14
number [1] - 12:13
NUMBER1 [1] - 2:6
NUMBER2 [1] - 2:12
NUMBER3 [1] - 2:18
NUMBER4 [1] - 2:24

**O**

oar [1] - 10:20
object [2] - 30:1,
39:2
objecting [2] - 29:21,
29:22
objections [1] - 39:7
obligation [2] -
19:14, 25:23
obligations [2] -
19:17, 20:19
obtained [1] - 32:12
obtaining [1] - 36:14
obtains [1] - 26:13
obvious [1] - 21:18
obviously [13] - 12:4,
17:6, 17:22, 22:22,
26:22, 29:12, 32:1,
32:18, 32:25, 33:12,
33:18, 34:18, 35:15
occurring [1] - 20:22
odd [1] - 12:14
OF [6] - 1:2, 1:12,
2:1, 41:1, 41:3, 41:4
offer [2] - 34:8, 37:17
Official [1] - 41:6
OFFICIAL [2] - 1:23,
41:1
officially [1] - 15:1
often [2] - 32:13,
32:24

**old** [1] - 12:18
**older** [1] - 13:1
**once** [17] - 10:7, 10:11, 15:25, 16:9, 17:9, 18:13, 23:25, 26:16, 27:23, 29:1, 29:10, 34:22, 35:12, 35:14, 37:3, 37:9
**one** [18] - 9:11, 9:21, 10:16, 10:17, 11:19, 12:13, 12:14, 12:16, 15:4, 21:13, 24:5, 26:15, 29:19, 33:21, 33:23, 38:12, 38:17
**onerous** [1] - 35:17
**ones** [1] - 14:22
**ongoing** [2] - 18:10, 20:10
**oOo** [1] - 9:3
**open** [3] - 12:11, 31:16, 31:17
**opening** [1] - 14:6
**operation** [1] - 32:9
**opportunity** [2] - 33:21, 34:20
**opposed** [1] - 27:14
**opposition** [2] - 17:1, 23:6
**oppositions** [1] - 16:8
**oral** [3] - 9:24, 10:4, 39:4
**orally** [1] - 20:6
**order** [17] - 13:18, 15:10, 18:12, 18:13, 19:24, 21:1, 21:11, 22:18, 23:2, 23:12, 23:19, 23:24, 27:11, 29:24, 29:25, 39:2, 39:8
**ordering** [3] - 22:1, 22:16, 27:8
**orders** [3] - 17:10, 21:4, 22:10
**originally** [1] - 29:4
**outstanding** [1] - 38:17
**overlap** [1] - 31:15
**overseas** [1] - 13:11
**own** [2] - 24:16, 24:24

## P

**page** [11] - 10:7, 14:19, 16:9, 16:14, 17:6, 24:21, 28:12, 31:1, 33:14, 41:12
**pages** [9] - 10:25, 13:19, 14:6, 14:12,

28:9, 31:2
**papers** [3] - 10:1, 14:8, 18:8
**part** [1] - 21:19
**parte** [7] - 17:20, 20:2, 21:14, 21:15, 21:19, 22:22, 23:5
**partially** [1] - 32:23
**particularly** [2] - 16:13, 30:5
**parties** [8] - 9:19, 14:4, 14:22, 20:4, 37:8, 37:9, 38:1, 38:2
**parts** [1] - 10:19
**party** [5] - 11:17, 39:1, 39:6
**pause** [1] - 20:21
**peek** [1] - 35:25
**pending** [6] - 14:13, 15:16, 15:17, 33:15, 35:10, 35:20
**percent** [1] - 28:16
**period** [3] - 20:14, 32:4, 32:19
**permit** [1] - 20:24
**person** [3] - 12:22, 12:23, 14:17
**personality** [1] - 10:20
**persons** [1] - 14:17
**PETROCELLI** [6] - 23:3, 23:8, 36:20, 37:22, 39:14, 39:25
**Petrocelli** [1] - 23:3
**PHONE** [4] - 2:6, 2:12, 2:18, 2:24
**phone** [3] - 18:17, 19:1, 19:3
**piece** [1] - 22:11
**place** [1] - 18:15
**PLAINTIFF** [2] - 1:5, 2:3
**plaintiff** [1] - 13:9
**plaintiff's** [10] - 10:10, 11:23, 11:24, 14:5, 17:16, 21:6, 21:16, 29:15, 30:20, 32:23
**Plaintiffs** [1] - 1:6
**plaintiffs** [25] - 11:9, 14:25, 21:11, 22:23, 24:6, 24:11, 24:22, 24:23, 25:13, 25:18, 25:19, 25:22, 26:14, 26:17, 26:19, 26:20, 27:9, 28:13, 28:14, 30:3, 31:12, 32:11, 34:17, 36:3, 39:12
**plan** [2] - 17:6, 17:22
**platform** [2] - 22:6,

28:6
**pled** [1] - 36:19
**point** [32] - 10:5, 10:9, 11:6, 15:7, 17:13, 18:12, 22:25, 24:2, 24:5, 24:24, 25:9, 25:11, 27:11, 27:22, 29:8, 30:8, 30:9, 30:11, 30:15, 31:11, 32:7, 32:20, 33:9, 34:6, 34:21, 34:25, 36:25, 38:1, 38:3, 38:11, 38:23
**points** [2] - 28:12, 28:14
**portion** [1] - 17:6
**position** [10] - 14:18, 18:19, 19:13, 19:21, 28:17, 29:15, 29:16, 34:6, 35:7, 35:16
**positions** [1] - 11:16
**possibility** [1] - 29:6
**possible** [4] - 12:8, 13:11, 30:21, 31:6
**potential** [1] - 13:25
**POWERS** [20] - 18:5, 18:7, 18:14, 20:4, 20:8, 21:4, 21:25, 22:11, 24:5, 24:15, 25:1, 25:6, 26:1, 26:5, 26:21, 27:4, 27:14, 27:17, 32:23, 33:3
**Powers** [2] - 18:7, 33:1
**practice** [2] - 20:13, 31:10
**predated** [1] - 29:25
**prejudge** [1] - 36:9
**preliminary** [1] - 9:18
**preplanned** [1] - 13:10
**prepping** [1] - 32:5
**preservation** [10] - 17:12, 17:16, 19:17, 19:25, 21:9, 22:12, 24:9, 26:4, 26:21, 26:25
**preserve** [14] - 22:1, 22:9, 22:16, 22:19, 24:2, 24:16, 24:24, 25:8, 25:10, 26:1, 26:18, 26:24, 27:5, 28:7
**preserved** [3] - 17:17, 19:19, 27:2
**preserving** [1] - 18:9
**preset** [1] - 10:2
**presume** [6] - 21:2, 21:7, 23:24, 25:2,

31:11, 37:9
**pretty** [5] - 12:12, 31:5, 32:6, 32:13, 37:7
**previously** [1] - 29:17
**private** [4] - 37:11, 37:18, 37:21, 38:6
**Private** [1] - 9:7
**problem** [10] - 15:6, 15:8, 15:9, 19:7, 21:7, 23:10, 25:13, 25:24, 31:7, 38:21
**proceedings** [2] - 40:1, 41:11
**process** [4] - 20:10, 20:21, 24:9, 26:7
**produce** [4] - 25:15, 26:18, 27:15, 35:22
**produced** [4] - 29:17, 30:24, 35:2
**producing** [1] - 27:14
**production** [5] - 26:25, 30:22, 34:19, 35:1
**promptly** [2] - 22:3, 28:15
**pronounce** [1] - 15:12
**proposal** [1] - 20:23
**Protection** [1] - 19:11
**protective** [4] - 17:10, 27:10, 39:2, 39:8
**provide** [3] - 25:23, 26:8, 26:17
**provided** [1] - 27:23
**provides** [1] - 34:11
**providing** [2] - 25:13, 25:25
**proviso** [1] - 17:18
**purchases** [1] - 18:2
**purposes** [2] - 9:12, 21:3
**pursuant** [1] - 41:9
**put** [9] - 12:2, 12:3, 14:15, 18:8, 23:16, 23:24, 24:3, 32:15, 34:16
**putting** [1] - 15:8

## Q

**quick** [1] - 24:5
**quicker** [1] - 21:22
**quickly** [1] - 30:24
**quite** [1] - 36:6

## R

**rather** [2] - 16:15, 29:7
**re** [1] - 9:6
**reached** [2] - 14:5, 35:6
**read** [2] - 29:24, 36:9
**really** [4] - 11:18, 29:21, 33:16, 33:22
**Realtime** [1] - 41:6
**reason** [1] - 10:19
**reasons** [1] - 29:20
**receipt** [1] - 23:5
**receive** [1] - 18:1
**received** [1] - 17:15
**reciprocal** [1] - 25:22
**reciprocity** [1] - 25:14
**record** [3] - 17:25, 20:16, 23:4
**records** [4] - 18:2, 23:2, 25:20, 26:17
**referenced** [1] - 28:3
**regard** [2] - 26:13, 26:20
**regarding** [1] - 28:7
**regards** [1] - 10:10
**regulation** [1] - 23:14
**regulations** [1] - 41:13
**relates** [1] - 32:14
**relationship** [1] - 30:19
**relying** [1] - 36:10
**remember** [1] - 10:15
**remove** [1] - 28:6
**report** [9] - 9:16, 10:7, 24:21, 28:3, 30:3, 31:1, 33:11, 35:1, 37:6
**reported** [1] - 41:11
**reporter** [1] - 10:3
**Reporter** [2] - 41:7, 41:20
**REPORTER** [3] - 1:23, 13:20, 41:1
**REPORTER'S** [1] - 1:12
**reports** [1] - 32:13
**representatives** [1] - 18:18
**request** [11] - 9:25, 14:4, 17:16, 17:19, 17:21, 17:24, 18:1, 20:1, 20:3, 22:23, 29:20
**requested** [1] - 19:25
**require** [1] - 16:10

requirements [1] - 22:8
requires [2] - 19:14, 23:13
requiring [3] - 22:7, 22:9, 22:18
reserving [1] - 35:11
resolve [1] - 33:19
respond [3] - 11:25, 14:16, 22:23
response [10] - 11:22, 12:2, 14:7, 17:1, 17:2, 29:23, 33:10, 35:20, 37:2, 39:21
retain [1] - 23:13
retention [2] - 21:2, 36:14
revisit [1] - 30:21
rid [2] - 17:23, 18:4
rock [1] - 18:15
ROOM [1] - 1:24
RPR [1] - 41:20
rule [1] - 10:4
ruled [1] - 15:17
ruling [5] - 12:4, 12:6, 12:25, 21:16, 34:16

**S**

sanctions [1] - 13:25
save [1] - 9:23
savings [1] - 31:23
saw [1] - 14:21
scheduled [2] - 28:15, 29:4
scheduling [1] - 28:11
search [1] - 26:17
second [2] - 9:24, 19:10
Section [1] - 41:9
see [11] - 27:21, 29:22, 33:14, 33:23, 34:1, 34:7, 34:13, 37:3, 37:5, 38:2, 38:9
seek [2] - 39:2, 39:7
seem [2] - 11:3, 36:15
selected [1] - 17:10
selection [1] - 35:13
sense [3] - 14:10, 30:7, 35:4
separately [1] - 11:17
serious [1] - 38:7
serve [1] - 34:17
set [4] - 29:1, 29:10, 35:12, 39:18

settled [1] - 31:9
settles [1] - 24:1
settling [1] - 27:21
shocked [2] - 10:22, 11:1
short [1] - 19:20
shorter [1] - 17:20
side [5] - 14:5, 21:17, 30:6, 33:21, 38:10
sides [2] - 28:8, 38:4
significant [1] - 32:13
Silver [1] - 11:11
simply [1] - 29:7
simultaneously [1] - 32:7
situation [4] - 20:9, 25:11, 34:2, 36:17
slates [2] - 12:9, 13:4
SMITH [9] - 18:23, 19:1, 19:6, 19:11, 22:14, 23:11, 23:21, 38:16, 39:10
Smith [4] - 19:11, 22:13, 22:14, 38:16
smoothest [1] - 32:8
social [1] - 26:11
solely [1] - 14:17
solved [1] - 19:7
some-odd [1] - 12:14
someone [1] - 19:3
sometimes [1] - 33:17
somewhat [5] - 17:7, 23:25, 31:8, 35:7, 35:16
soon [2] - 12:7, 32:11
sorry [2] - 28:10, 37:6
sort [11] - 18:3, 18:14, 22:21, 29:5, 29:12, 31:12, 32:3, 33:21, 35:6, 36:13, 39:8
sorted [1] - 38:19
sound [1] - 35:11
Southern [2] - 10:13, 15:15
speaking [2] - 9:13, 13:20
special [1] - 23:19
specific [4] - 18:1, 19:18, 36:3, 37:24
specifically [3] - 19:25, 20:1, 24:17
spot [1] - 9:21
stage [3] - 26:24, 27:8, 33:4
standard [4] - 17:11,

21:20, 27:10, 36:15
standing [2] - 38:13, 38:15
START [1] - 1:14
start [1] - 38:7
state [2] - 16:2, 36:18
STATE [1] - 41:4
STATE1 [1] - 2:6
STATE2 [1] - 2:12
STATE3 [1] - 2:18
STATE4 [1] - 2:24
States [4] - 19:12, 41:7, 41:9, 41:14
STATES [1] - 1:1
status [12] - 9:16, 10:6, 14:20, 16:1, 17:8, 28:3, 28:4, 30:3, 31:1, 35:1, 37:6, 39:16
Status [2] - 1:13
statute [1] - 21:2
stay [7] - 14:13, 27:25, 30:22, 34:19, 35:20, 35:21, 39:2
staying [2] - 30:8, 38:18
stays [1] - 34:17
stenographically [1] - 41:11
step [1] - 31:11
Stephen [2] - 11:11, 14:3
Steven [2] - 34:8, 37:13
still [2] - 14:19, 22:5
stone [1] - 24:3
stop [2] - 19:23, 27:1
STREET [1] - 1:24
structure [4] - 11:9, 11:10, 12:7, 14:15
stuff [19] - 9:14, 10:8, 10:21, 11:1, 17:11, 17:12, 17:23, 18:3, 24:25, 27:1, 28:1, 28:2, 28:9, 29:8, 30:25, 31:19, 32:2, 33:10, 37:15
subject [3] - 26:23, 27:10, 29:12
submitting [1] - 34:21
substantial [1] - 16:6
substantive [1] - 31:21
sufficient [1] - 17:25
supposed [1] - 33:18
suspected [1] - 30:4
swiftly [1] - 32:17

**T**

talks [1] - 38:8
ten [5] - 11:21, 12:1, 17:1, 17:2, 17:5
tentative [1] - 35:7
terms [2] - 12:18, 26:4
TERRI [4] - 1:23, 41:6, 41:19, 41:20
THE [86] - 2:3, 2:9, 2:15, 2:21, 9:6, 9:8, 11:15, 12:11, 12:21, 12:25, 13:2, 13:4, 13:13, 13:15, 13:20, 13:21, 13:24, 14:8, 14:12, 15:3, 15:4, 15:5, 15:10, 15:19, 15:21, 15:25, 16:4, 16:9, 18:6, 18:11, 18:18, 18:21, 18:24, 19:5, 19:9, 19:23, 20:6, 20:23, 21:6, 21:15, 21:24, 22:7, 22:13, 22:18, 23:7, 23:9, 23:16, 23:23, 24:13, 24:21, 25:2, 25:7, 25:17, 25:19, 25:24, 26:3, 27:1, 27:7, 27:15, 27:21, 28:1, 30:5, 30:8, 30:25, 31:17, 32:18, 33:2, 33:9, 34:13, 35:5, 35:12, 35:24, 36:8, 36:22, 37:5, 37:14, 37:20, 37:23, 38:14, 38:23, 39:11, 39:13, 39:16, 39:18, 39:20, 39:22
themselves [3] - 25:9, 30:18, 30:20
thereafter [2] - 13:25, 29:1
therefore [2] - 25:4, 28:18
thinking [1] - 10:17
third [1] - 39:6
thorough [1] - 28:4
three [10] - 10:16, 10:18, 10:25, 13:19, 14:10, 21:20, 28:12, 28:14
throw [1] - 11:7
Thursday [2] - 13:12, 17:5
Thursdays [1] - 17:4
TikTok [3] - 9:6, 18:2, 28:6
TIME [1] - 1:14
Title [1] - 41:9

today [1] - 23:24
today's [2] - 11:20, 11:25
together [3] - 10:18, 32:15, 35:9
took [2] - 10:20, 29:16
topic [1] - 29:14
topics [1] - 33:5
TRANSCRIPT [1] - 1:12
transcript [2] - 41:10, 41:12
transfer [5] - 14:20, 15:1, 15:14, 15:17, 15:18
transferred [3] - 15:11, 15:19, 15:24
transferring [1] - 16:1
tremendous [1] - 26:12
tried [1] - 29:25
trip [1] - 13:11
true [1] - 41:10
trying [1] - 26:1
turn [1] - 27:9
turned [2] - 21:8, 29:18
two [4] - 11:25, 12:16, 14:10, 19:17
types [1] - 33:19
typically [2] - 26:12, 31:14

**U**

U.S [1] - 1:3
under [6] - 20:11, 20:19, 22:2, 22:11, 33:20, 36:15
underage [1] - 25:17
understood [2] - 21:24, 30:17
United [4] - 19:12, 41:7, 41:9, 41:14
UNITED [1] - 1:1
unless [3] - 10:1, 25:9, 36:12
up [7] - 18:21, 20:2, 22:25, 30:15, 38:13, 38:15, 39:16
urge [1] - 30:20
useful [1] - 36:6
user [2] - 20:11, 24:8
users [3] - 22:2, 22:5, 26:13

## V

**vacated** [3] - 15:13,
15:21, 15:23
**variety** [1] - 20:12
**various** [1] - 10:19
**versus** [1] - 19:19
**violation** [1] - 23:14
**voice** [1] - 18:20
**vs** [1] - 1:7

## W

**wait** [2] - 28:21, 33:8
**wants** [4] - 22:20,
23:18, 38:25, 39:1
**warrant** [1] - 33:20
**week** [1] - 39:23
**weeks** [1] - 21:20
**WEST** [1] - 1:24
**wonderful** [1] - 14:1
**words** [6] - 11:23,
16:24, 24:23, 30:2,
37:25, 38:3
**worth** [1] - 13:23
**wow** [1] - 37:16
**writing** [3] - 13:23,
20:7, 22:17
**written** [1] - 38:18
**WU** [1] - 1:3

## X

**XYZ** [1] - 1:13

## Y

**years** [1] - 10:14
**York** [2] - 10:13,
10:16
**yourself** [2] - 13:21,
19:10
**yourselves** [1] - 9:12

## Z

**ZIP1** [1] - 2:6
**ZIP2** [1] - 2:12
**ZIP3** [1] - 2:18
**ZIP4** [1] - 2:24

UNITED STATES DISTRICT COURT

# EXHIBIT F

| | |
|---|---|
| **From:** | Eric Kafka <EKafka@cohenmilstein.com> |
| **Sent:** | Tuesday, April 29, 2025 4:24 PM |
| **To:** | Petrocelli, Daniel M. |
| **Cc:** | Formella, Abby; Bryan Aylstock; Powers, Matt; Zachary L. Cowan; Kiley Grombacher; Maria Valle-Lomeli; Marcus P. Smith; tomp@lpm-triallaw.com; Tom P. Cartmell; Eric Barton; Christopher Seeger; John Nelson; Gary Klinger; Kristen Lake Cardoso; Jeff Ostrow; Heather M. McElroy; Michael Sacchet; cspringer@kellerrohrback.com; Cari Laufenberg; casey@lawofficeflynn.com; matt@thewvlawfirm.com; troy@thewvlawfirm.com; James Dugan; David Scalia; cmc@westconlaw.com; phil@askalawyerfirst.com; rmayfield@gorilaw.com; Joseph Osborne; Justin Parafinczuk; James Cecchi; jalperstein@carellabyrne.com; Karina Puttieva; Jenna Waldman; dgolub@sgtlaw.com; sbloch@sgtlaw.com; pcarey@lexlawgroup.com; Brody, Steve; mtodzo@lexlawgroup.com; caspar@kjtlawgroup.com; Jennifer Sclar Silver Golub Teitell; hoffpaul; Tyler Hudson; cayers@seegerweiss.com; Jennifer Scullion; JParafinczuk@pwslawfirm.com; monica@dugan-lawfirm.com; Rico Alvendia; dloeser@kellerrohrback.com; Stodder, Hana; Andre Mura; ehg@classlawgroup.com; Hillary Fidler |
| **Subject:** | RE: J.C. v. ByteDance:  Plaintiffs' data |

Thank you, Dan. Pursuant to the Court's guidance, Plaintiffs will respond in opposition to TikTok's application.

---

**From:** Petrocelli, Daniel M. <dpetrocelli@omm.com>
**Sent:** Tuesday, April 29, 2025 4:22 PM
**To:** Eric Kafka <EKafka@cohenmilstein.com>
**Cc:** Formella, Abby <aformella@omm.com>; Bryan Aylstock <BAylstock@awkolaw.com>; Powers, Matt <mpowers@omm.com>; Zachary L. Cowan <Zachary.L.Cowan@usdoj.gov>; Kiley Grombacher <kgrombacher@bradleygrombacher.com>; Maria Valle-Lomeli <mvalle@bradleygrombacher.com>; Marcus P. Smith <Marcus.P.Smith@usdoj.gov>; tomp@lpm-triallaw.com; Tom P. Cartmell <tcartmell@wcllp.com>; Eric Barton <ebarton@wcllp.com>; Christopher Seeger <cseeger@seegerweiss.com>; John Nelson <jnelson@milberg.com>; Gary Klinger <GKlinger@milberg.com>; Kristen Lake Cardoso <cardoso@kolawyers.com>; Jeff Ostrow <ostrow@kolawyers.com>; Heather M. McElroy <HMM@ciresiconlin.com>; Michael Sacchet <MAS@ciresiconlin.com>; cspringer@kellerrohrback.com; Cari Laufenberg <claufenberg@kellerrohrback.com>; casey@lawofficeflynn.com; matt@thewvlawfirm.com; troy@thewvlawfirm.com; James Dugan <jdugan@dugan-lawfirm.com>; David Scalia <dscalia@dugan-lawfirm.com>; cmc@westconlaw.com; phil@askalawyerfirst.com; rmayfield@gorilaw.com; Joseph Osborne <josborne@realtoughlawyers.com>; Justin Parafinczuk <JParafinczuk@parawolf.com>; James Cecchi <JCecchi@carellabyrne.com>; jalperstein@carellabyrne.com; Karina Puttieva <KPuttieva@cohenmilstein.com>; Jenna Waldman <jwaldman@cohenmilstein.com>; dgolub@sgtlaw.com; sbloch@sgtlaw.com; pcarey@lexlawgroup.com; Brody, Steve <sbrody@omm.com>; mtodzo@lexlawgroup.com; caspar@kjtlawgroup.com; Jennifer Sclar Silver Golub Teitell <jsclar@sgtlaw.com>; hoffpaul <hoffpaul@aol.com>; Tyler Hudson <thudson@wcllp.com>; cayers@seegerweiss.com; Jennifer Scullion <JScullion@seegerweiss.com>; JParafinczuk@pwslawfirm.com; monica@dugan-lawfirm.com; Rico Alvendia <rico@akdlalaw.com>; dloeser@kellerrohrback.com; Stodder, Hana <hstodder@omm.com>; Andre Mura <amm@classlawgroup.com>; ehg@classlawgroup.com; Hillary Fidler <HFidler@seegerweiss.com>
**Subject:** Re: J.C. v. ByteDance: Plaintiffs' data

As stated in my email, the application will seek to suspend yesterday's preservation order until we can agree on preservation measures or the Court can address the matter on May 29.  We will note that plaintiffs' counsel do not consent.
Dan

On Apr 29, 2025, at 4:11 PM, Eric Kafka <EKafka@cohenmilstein.com> wrote:

Hi Dan,

Plaintiffs' counsel do not consent to the suspension of the preservation order.

As discussed at the hearing, the Court expects that Plaintiffs' counsel (and the DOJ) will have an opportunity to respond to any motion filed by TikTok regarding preservation. Thus, could you explain what you mean by an "ex parte application"?

Thank you,
Eric

**Eric Kafka**
Partner

**Cohen Milstein Sellers & Toll PLLC**
88 Pine Street  |  14th Floor
New York, NY 10005
phone 212.838.7797

*This e-mail was sent from Cohen Milstein Sellers & Toll PLLC. It may contain information that is privileged and confidential. If you suspect that you were not intended to receive it, please delete it and notify us as soon as possible.*

**From:** Petrocelli, Daniel M. <dpetrocelli@omm.com>
**Sent:** Tuesday, April 29, 2025 1:35 PM
**To:** Formella, Abby <aformella@omm.com>; Bryan Aylstock <BAylstock@awkolaw.com>; Powers, Matt <mpowers@omm.com>; Cowan, Zachary L. <Zachary.L.Cowan@usdoj.gov>; Kiley Grombacher (External) <kgrombacher@bradleygrombacher.com>; Maria Valle-Lomeli (External) <mvalle@bradleygrombacher.com>
**Cc:** Smith, Marcus P. <Marcus.P.Smith@usdoj.gov>; tomp@lpm-triallaw.com; Tom P. Cartmell <tcartmell@wcllp.com>; Eric Barton <ebarton@wcllp.com>; Christopher Seeger (External) <cseeger@seegerweiss.com>; John Nelson <jnelson@milberg.com>; Gary Klinger <GKlinger@milberg.com>; Kristen Lake Cardoso <cardoso@kolawyers.com>; Jeff Ostrow <ostrow@kolawyers.com>; Heather M. McElroy <HMM@ciresiconlin.com>; Michael Sacchet (External) <MAS@ciresiconlin.com>; cspringer@KellerRohrback.com; Cari Laufenberg (External) <claufenberg@kellerrohrback.com>; casey@lawofficeflynn.com; matt@thewvlawfirm.com; troy@thewvlawfirm.com; James Dugan (External) <jdugan@dugan-lawfirm.com>; David Scalia (External) <dscalia@dugan-lawfirm.com>; cmc@westconlaw.com; phil@askalawyerfirst.com; rmayfield@gorilaw.com; Joseph Osborne <josborne@realtoughlawyers.com>; Justin Parafinczuk <JParafinczuk@parawolf.com>; James Cecchi (External) <JCecchi@carellabyrne.com>; jalperstein@carellabyrne.com; Eric Kafka <EKafka@cohenmilstein.com>; Karina Puttieva <KPuttieva@cohenmilstein.com>; Jenna Waldman <jwaldman@cohenmilstein.com>; dgolub@sgtlaw.com; sbloch@sgtlaw.com; pcarey@lexlawgroup.com; Brody, Steve <sbrody@omm.com>; mtodzo@lexlawgroup.com; caspar@KJTlawgroup.com; Jennifer Sclar Silver Golub Teitell <jsclar@sgtlaw.com>; hoffpaul@aol.com; Tyler Hudson (External) <thudson@wcllp.com>; cayers@seegerweiss.com; Jennifer Scullion <JScullion@seegerweiss.com>; JParafinczuk@pwslawfirm.com; monica@dugan-lawfirm.com; Rico Alvendia <rico@akdlalaw.com>; dloeser@kellerrohrback.com; Stodder, Hana <hstodder@omm.com>; Andre Mura

<amm@classlawgroup.com>; ehg@classlawgroup.com; Hillary Fidler <HFidler@SeegerWeiss.com>

**Subject:** RE: J.C. v. ByteDance: Plaintiffs' data


Counsel, defendants intend to file an ex parte application tomorrow to temporarily suspend the Court's preservation order yesterday.  Based on discussions with our clients ("TikTok") after yesterday's hearing we have learned it is not feasible to immediately preserve information, materials, and data related to users on the 13+ platform that TikTok's systems and processes have identified are under the age of 13 ("herein "underage data").  Among other reasons, to comply with legal requirements TikTok's operational systems are designed to identify and delete not only underage data, but also older data and related to other impermissible uses.  We are still investigating whether and to what extent it is feasible to identify and segregate underage data from this larger data set, including whether we can do so in a way that preserves the data but also prevents further access and use.  In addition, it is necessary to ascertain the nature and extent of the underage data required to be preserved, including, for example, video material viewed or shared by an identified underage user on the 13+ platform.  There are practical limitations to storing all such data.

Given these constraints, TikTok requires additional time to investigate and establish appropriate preservation measures.  To that end, once we have obtained additional information we would like to meet and confer with you to discuss these issues, with the hope of reaching agreement on proposed preservation measures to submit to the Court in advance of the next scheduled hearing on May 29.   In the interim, please let us know today if you will consent to a suspension of yesterday's preservation order through and including May 29, 2025.

Many thanks, Dan.