DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California 90067-6035
Telephone:  +1 310 553 6700
Facsimile:   +1 310 246 6779

STEPHEN D. BRODY (*pro hac vice*)
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone:  +1 202 383 5300
Facsimile:   +1 202 383 5414

MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
San Francisco, CA 94111
Telephone:  +1 415 984 8700
Facsimile:   +1 415 984 8701

*Attorneys for Defendants ByteDance Ltd., ByteDance Inc., TikTok Ltd., TikTok Inc., TikTok LLC, TikTok Pte. Ltd., and TikTok U.S. Data Security Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In Re: TikTok, Inc. Minor Privacy Litigation | Case No. 2:25-ml-03144-GW-RAO<br><br>**DEFENDANTS' PROPOSAL REGARDING PRESERVATION OF DATA**<br><br>**[REDACTED VERSION OF DOCUMENT FILED UNDER SEAL]** |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................1

II. FACTUAL BACKGROUND ................................................................................2

    A. Defendants' Existing Systems for Identifying And Deleting Underage User Data ........................................................................................2

        1. Identification of Under-13 Users ..............................................................3

        2. Deletion of Underage User Data ..............................................................4

    B. Challenges to Preservation in This Case.......................................................5

        1. Pausing Data Deletion ..............................................................................5

        2. Isolating and Securing Data .....................................................................6

        3. Storing Data .............................................................................................7

III. LEGAL STANDARD ............................................................................................7

IV. PROPOSED PRESERVATION PLAN .................................................................9

    A. Current Preservation Efforts .......................................................................10

        1. Hive Approach .......................................................................................11

        2. DYD Approach ......................................................................................13

        3. User-Generated Videos ..........................................................................14

    B. Ongoing Preservation Efforts .....................................................................15

V. CONCLUSION ....................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Al Otro Lado, Inc. v. Nielsen*,
  328 F.R.D. 408 (S.D. Cal. 2018) ...................................................................... 8

*Doe LS 340 v. Uber Techs., Inc.*,
  710 F. Supp. 3d 794 (N.D. Cal. 2024) .............................................................. 8

*Javo Beverage Co. v. Cal. Extraction Ventures, Inc.*,
  2020 WL 2062146 (S.D. Cal. Apr. 29, 2020) ................................................... 8

*Larsen v. Coldwell Banker Real Est. Corp.*,
  2012 WL 359466 (C.D. Cal. Feb. 2, 2012) ....................................................... 8

*Rodriguez v. Google LLC*,
  2021 WL 8085492 (N.D. Cal. 2021) .............................................................8, 9

*U.S. ex rel. Carter*,
  305 F.R.D. 225 (S.D. Cal. 2015) ....................................................................... 8

**Statutes and Regulations**

15 U.S.C. § 6502(a)(1) ............................................................................................ 3

16 C.F.R. § 312.10 .................................................................................................. 6

**Rules**

Fed. R. Civ. P. 26(b) ............................................................................................... 8

Fed. R. Civ. P. 37(e) ............................................................................................... 8

# I. INTRODUCTION

Defendants[1] have made significant efforts to preserve data potentially relevant to this case. Pursuant to the Court's order, ECF No. 25, and as addressed in Defendants' *ex parte* application, ECF No. 19, Defendants have continued to investigate and implement measures to preserve data associated with accounts on the TikTok platform identified as belonging to U.S. users under the age of 13 years old ("Underage User Data"). Specifically, as set out in more detail below, Defendants' teams are designing and developing new methods to identify, copy, and preserve broad categories of potentially relevant Underage User Data, including registration email address, registration phone number, profile photos, user-generated videos, and user activity data, such as video views, likes, and comments. These efforts were not without difficulty: Defendants' teams had to work around systems that were specifically designed to delete Underage User Data and develop creative solutions for preserving that Data on an unprecedented scale. Further complicating those challenges, Defendants are endeavoring to preserve the data in a manner that will prevent it from improperly being accessed and used by the TikTok platform's systems—to avoid potentially violating the Children's Online Privacy Protection Act of 1998 ("COPPA"). Despite these hurdles, Defendants have already preserved significant categories of data and are engineering new methods of preserving additional data going forward.

To be clear, Defendants cannot preserve all "data that TikTok collected" from "every TikTok account," as Plaintiffs requested in their April 22, 2025 letter.[2] That is not proportional, or even possible. Preservation obligations are not boundless, and the Court has already admonished against such "blunderbuss" preservation requests. *See* ECF No. 19-1, Ex. A at 16:6-11. What is required is

---

[1] "Defendants" refers to ByteDance Inc., ByteDance Ltd., TikTok Ltd., TikTok Inc., TikTok LLC, TikTok Pte. Ltd., and TikTok U.S. Data Security Inc.

[2] *See* Exhibit A to the Declaration of Daniel M. Petrocelli ("Petrocelli Decl.").

taking proportional and good faith steps to identify and preserve data reasonably related to Plaintiffs' claims. And that is exactly what Defendants are doing here.

## II. FACTUAL BACKGROUND

### A. Defendants' Existing Systems for Identifying And Deleting Underage User Data

The TikTok platform is an online entertainment media platform with over 170 million users in the United States and more than a billion users worldwide. ECF No. 19-2 ¶¶ 4-5. The TikTok platform provides a creative forum where users can share their skills, passions, and ideas.[3] Users can combine video, music, and graphics to create everything "from dance challenges to lip-syncing to DIY tutorials, to historical parodies to internet memes."[4] Billions of videos are uploaded to the TikTok platform every year. *Id.* ¶ 5.

Like most internet platforms, TikTok collects information from users whenever they engage with the portion of the TikTok platform designed for users over the age of 13, sometimes called "the 13+ Experience." *Id.* ¶ 6. That information can include data that the user provides (e.g., username, registration email, and user-generated content) and information automatically collected (e.g., usage information). *Id.*[5] To ensure that the collection of this data does not violate COPPA, only users over the age of 13 are permitted to access the 13+ Experience. *Id.* ¶ 7. Before creating a TikTok account, each new user must enter his or her date of birth—a feature known as an "age gate." *Id.* Users in the United States who indicate that they are under the age of 13 are directed to a separate experience, sometimes referred to as "Kids Mode." *Id.*

---

[3] New User Guide, https://www.tiktok.com/safety/en/new-user-guide (under "What is TikTok?" heading).

[4] New User Guide (under "TikTok basics" heading).

[5] *See also* TikTok, U.S. Privacy Policy (Aug. 19, 2024), https://www.tiktok.com/legal/page/us/privacy-policy/en.

As Plaintiffs have recognized, "age-gates are not fool-proof,"[6] and some users lie about their age to enter the 13+ Experience.  Website operators throughout the industry wrestle with this issue.  That is why the Federal Trade Commission has recognized that online service operators do not violate COPPA when they "rely on the age gate information [their] users enter, even if that information is not accurate."[7]  Indeed, COPPA does not require online service operators to remove under-13 users from the 13+ Experience unless they have actual knowledge the under-13 users are on the platform.  *Cf.* 15 U.S.C. § 6502(a)(1) ("It is unlawful for … any operator that has *actual knowledge* that it is collecting personal information from a child, to collect personal information from a child in a manner that violates [the COPPA Rule]." (emphasis added)).  Nevertheless, Defendants have spent years developing systems and processes that are aimed at identifying under-13 users who misrepresent their ages to gain access to the 13+ Experience, that ban their accounts, and that delete data associated with those accounts.

### 1. Identification of Under-13 Users

Defendants have built a comprehensive underage moderation process designed to identify under-13 users and their data.  In fact, the Complaints filed by the Department of Justice ("DOJ") and Plaintiffs themselves confirm that Defendants employ a number of strategies to find potential under-13 accounts among the millions of TikTok users.  For example, Defendants use "keyword matching," to search users' profiles for words likely to correspond to under-13 accounts, like "9 years old" and "4th grade."[8]  Defendants also rely on reporting

---

[6] Corrected Consolidated Class Action Compl., *J.C. v. ByteDance Inc.*, No. 2:24-cv-06784-ODW-RAO (C.D. Cal. Jan. 15, 2025), ECF No. 73 ("*J.C.* Compl.") ¶ 93.

[7] FTC, Complying With COPPA: Frequently Asked Questions (July 2020), https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions.

[8] *See* Complaint for Permanent Injunction, Civil Penalty Judgment, and Other Relief, *United States v. ByteDance Ltd.*, No. 2:24-cv-06535-GW-RAO ¶ 78 (C.D. Cal. Aug. 2024), ECF No. 1 ("DOJ Compl."); *J.C.* Compl. ¶ 122.

mechanisms, including reports made by parents to delete their children's account and reports from other users.[9] Once an account is flagged as potentially belonging to a user under the age of 13, it enters an underage moderation process conducted by human moderators who use objective criteria to evaluate the account and make a determination about whether the user is under 13.[10]

### 2. Deletion of Underage User Data

After Defendants determine an account belongs to someone under the age of 13, the account is banned and the data associated with that account is deleted. Declaration of Ethan Spector ("Spector Decl.") ¶ 5. Every day, approximately ▮▮▮▮▮▮▮▮ U.S. accounts are deleted through this under-13 account deletion process. *Id.*

Defendants have spent years designing deletion processes to remove data associated with an identified under-13 account from Defendants' systems. *Id.* ¶ 8. To locate and delete Underage User Data, Defendants developed and continue to enhance sophisticated tools to navigate and scan the platform's complex data systems. User data is kept in ▮▮▮▮▮▮▮▮ of dynamic tables in different data storage systems. *Id.* ¶ 6. Tables are structured collections of related data, typically organized into columns and rows, that can contain thousands of individual data points. *Id.* Depending on how much they interact with the platform, users of the 13+ Experience can generate a wide variety of data associated with their account. That includes both the user-generated data that Defendants collect and data automatically generated for Defendants' business purposes. *Id.* ¶ 7. And different data points for the same user can be stored across different tables. *Id.* A user's registration email, for example, can be in a different table than a video that they post. *Id.*[11]

---

[9] *See* DOJ Compl. ¶¶ 62, 86; *J.C.* Compl. ¶ 129.
[10] *See* DOJ Compl. ¶ 79; *J.C.* Compl. ¶ 129.
[11] These processes delete all data associated with an under-13 account, with a few limited exceptions such as: (1) deletion records required by the stipulated order

B.  **Challenges to Preservation in This Case**

Because Defendants' existing systems are designed to delete—not preserve—Underage User Data, preservation in this case poses several challenges. Defendants identified three potential challenges in their *ex parte* application: (1) pausing deletion policies, (2) extracting and securing Underage User Data, and (3) storing data for the life of the case. ECF No. 19 at 5-6.

1.  **Pausing Data Deletion**

The first challenge is that it is not possible to "flip a switch" and pause deletion of all Underage User Data. No such switch exists. Deletion of Underage User Data is just one of many deletion policies that apply to all user data stored in Defendants' systems. Spector Decl. ¶ 9. Because Underage User Data is spread across many tables and not stored separately, different deletion policies could trigger deletion of that Data stored in different tables. *Id*. For example, Defendants have "rolling deletion" policies that automatically delete data in a table after a certain time period. *Id.* ¶ 10. Different tables have different time periods—i.e., one table's data might be deleted after 18 months, while another's might be deleted after only 30 days, and possibly more quickly. *Id*. So even if Defendants could simply "turn off" the Underage User Data deletion trigger, that very same data might be deleted through rolling deletion under other deletion policies. *Id*. These other deletion policies serve practical and important purposes—including complying with other laws, maintaining a safe platform, and allowing users to have control over their own data. *Id.* ¶ 11. Identifying and then pausing every overlapping deletion policy would go far beyond what is reasonable and proportionate for this case and, based on Defendants' current understanding, would

---

entered in *United States v. Musical.ly*, No. 2:19-cv-01439-ODW-RAO (C.D. Cal. Mar. 27, 2019), ECF No. 10 ("2019 Stipulated Order"); (2) moderation records related to identifying under-13 accounts, and (3) if the account made purchases on the platform, records of those purchases. Spector Decl. ¶ 8.

likely be impossible in any reasonable timeframe, and may be impossible altogether.

### 2. Isolating and Securing Data

Another challenge is ensuring that the Underage User Data is isolated while it is being preserved to prevent that Data from being accessed and processed as part of Defendants' normal business operations. In the ordinary course, Defendants use the data in these tables for business purposes, including to improve, support, and administer the TikTok platform. Spector Decl.¶ 12. If the deletion processes are paused, but the Underage User Data is not isolated from its existing locations in tables, that Data will be accessed for processing as usual, *id.*—risking potential violations of COPPA[12] and doing what Plaintiffs claim violates state law.[13] Any preservation solution for this case requires Defendants to isolate Underage User Data and prevent its access—either by moving the Data out of its table into a secure location or creating a method of isolating the Data by blocking access to it in its existing location. *Id.* ¶ 13.

Moreover, since 2022, Defendants have partnered with Oracle Corporation on the migration of the U.S. TikTok platform and protected U.S. user data to Oracle's cloud environment—an initiative known as "Project Texas." *Id.* ¶ 14.[14]

---

[12] *See* 16 C.F.R. § 312.10 ("To the extent any website operator obtains personal information from an under-13 user, it "must delete [that] information using reasonable measures to protect against unauthorized access to, or use of, the information in connection with its deletion.")

[13] *See, e.g.*, *J.C.* Compl. ¶¶ 129-36 (alleging that Defendants engaged in "unlawful collection *and use* of the Personal Information of children under 13" (emphasis added)); Class Action Compl., *Armbruster v. ByteDance Inc.*, No. 2:25-cv-03338-GW-RAO (C.D. Cal. Mar. 4, 2025), ECF No. 1 ¶ 1 (alleging that plaintiffs "highly sensitive and personally identifiable information … was collected and used by the Defendants without consent of the minors or their parents, in violation of [COPPA]").

[14] *See also* Appx. To Br. of Pet., Vol. III, *TikTok Inc. v. Garland*, No. 24-1113 (U.S. June 20, 2024) at AP-823 ("*TikTok Inc.* Appx."), https://sf16-va.tiktokcdn.com/obj/eden-va2/hkluhazhjeh7jr/2024.06.20%20-%20TT%20v.%20Garland%20-%20%5B2060757%5D%20-%20TikTok%20Petitioners'%20Appendix%20Vol.%20III.pdf?x-resource-account=public; *see also* About Project Texas, https://usds.tiktok.com/usds-about

1  Defendants created a special purpose subsidiary of TikTok Inc., Defendant TikTok
2  U.S. Data Security Inc., to control access to protected U.S. user data and to monitor
3  the security of the platform. *Id.*[15] Generally speaking, access to the Oracle
4  environment is limited to only TikTok U.S. Data Security Inc. select personnel. *Id.*
5  Because of this increased security, only certain employees are approved to access
6  the Oracle environment. *Id.* ¶ 15. That restricted access provides another layer of
7  complication to finding secure solutions for isolating and preserving Underage User
8  Data.

### 3. Storing Data

10  Finally, Defendants cannot simply store "all" data—there must be limits on
11  the scope of data preserved, and Plaintiffs' request to preserve "every TikTok
12  account"[16] is not remotely feasible. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
13  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
14  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
15  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
16  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
17  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ "All" data from the platform could run into the
18  exabytes (i.e., millions of terabytes). *Id*. To put that in perspective, that's over
19  38,000 Wikipedias, including the content of all of its pages and revision histories.

### III. LEGAL STANDARD

21  This Court has already made clear that Defendants are not required to comply
22  with "blunderbuss" preservation requests. ECF No. 19-1, Ex. A at 16:6-11.
23  Preservation obligations do not extend to "every shred of paper, every e-mail or
24  electronic document, and every backup tape." *Javo Beverage Co. v. Cal.*

---

(under "Independent Governance" and "Data Protection and Access Control" headings).
[15] *See also TikTok Inc.* Appx. AP-822.
[16] Petrocelli Decl. Ex. A.

*Extraction Ventures, Inc.*, 2020 WL 2062146, at *10 (S.D. Cal. Apr. 29, 2020); *see also Doe LS 340 v. Uber Techs., Inc.*, 710 F. Supp. 3d 794, 804 (N.D. Cal. 2024) ("[L]itigants are not generally required to preserve all electronic records."). Indeed, a party's preservation obligations reflect the reality that "perfection in preserving all relevant electronically stored information is often impossible." Fed. R. Civ. P. 37(e) Adv. Comm. Notes (2015).

Instead, Defendants' preservation obligations are governed by "reasonableness." *See Al Otro Lado, Inc. v. Nielsen*, 328 F.R.D. 408, 416-18 (S.D. Cal. 2018) (emphasis omitted). The scope of a party's duty to preserve is evaluated by the same standard of reasonableness found in Rule 26(b)(1): matters that are "relevant to the party's claim or defense and proportional to the needs of the case." *Id.* (quoting Fed. R. Civ. P. 26(B)(1)); *see also Rodriguez v. Google LLC*, 2021 WL 8085492, at *2 (N.D. Cal. 2021) ("[W]hether preservation is reasonable 'depends on whether what was done—or not done—was proportional to [the] case.'"). Proportionality is measured by whether the "burden or expense" outweighs the likely benefit, the needs of the case, the amount in controversy, the parties' resources, the importance of the issues, and the importance of the discovery in resolving those issues. *See Larsen v. Coldwell Banker Real Est. Corp.*, 2012 WL 359466, at *7 (C.D. Cal. Feb. 2, 2012) (quoting Fed. R. Civ. P. 26(b)(2)(C)(iii)).

In the context of data preservation, "a frequent issue is its accessibility." *Al Otro Lado*, 328 F.R.D. at 417. "The linchpin of accessibility analysis is the effort or expenditure of resources required to access and/or produce relevant ESI." *Id.* While accessible data—i.e., data that is "readily visible to the operating system" and "immediately accessible"—may generally be preserved, *id.* at 417 n.11, a party is not required to preserve "inaccessible" data for which the "expenditure of resources required to access the contents is itself unreasonable," *U.S. ex rel. Carter*, 305 F.R.D. 225, 238 (S.D. Cal. 2015). For example, courts have found parties do

not have to preserve data that requires companywide suspension of deletion policies. *See Doe LS 340*, 710 F. Supp. 3d at 804; *Rodriguez*, 2021 WL 8085492, at *1 (declining to "require Google to start saving petabytes of data per day, indefinitely, without a more compelling showing of need").[17]

## IV.  PROPOSED PRESERVATION PLAN

Defendants have already taken multiple, proportionate steps to preserve relevant information for this case. Prior to this Court's April 28, 2025 order, Defendants had a litigation hold in place for all of the private class actions that preserves broad categories of documents for custodians across the company and covers relevant policies, emails, and Lark chats.[18] And although Defendants have been deleting Underage User Data when they identify under-13 accounts,[19] Defendants have also maintained a record of those deletions pursuant to Section VIII of the 2019 Stipulated Order. ECF No. 24-1 ¶ 5. To the extent deletion of an under-13 account is the result of underage moderation, Defendants also maintain records of the moderation decision. Spector Decl. ¶ 8.

Since the Court's April 28, 2025 order, Defendants have worked quickly and diligently to investigate the feasibility of preserving Underage User Data relevant to this case. Much like what a large company does when they conduct a custodial search for documents relevant to a litigation, Defendants here have worked to

---

[17] *See also* The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 15 Sedona Conf. J. 171, 199 (2014) ("Absent a specific showing of need, a requesting party is entitled only to database fields that contain relevant information, and give context to such information, and not to the entire database in which the information resides or the underlying database application or database engine.").

[18] Lark is an internal communications platform used by Defendants. Email is not typically used for communication within the company.

[19] As explained in Defendants' *ex parte* application briefing, ECF No. 24 at 2-4, Defendants did not preserve—and were not required to preserve—Underage User Data prior to the Court's April 28, 2025 order because they were required to delete it under COPPA and the 2019 Stipulated Order.

identify key categories of data related to under-13 user behavior on the platform and investigated whether it is possible to preserve it.

As of the date of this brief, Defendants have developed a new process and already begun preserving a broad set of Underage User Data extracted from Defendants' Hive storage system, including user account registration information (like email and phone number), user historical details (like total likes and views on the For You page), and user video details (like titles, descriptions, creation times, and performance metrics for user-generated videos). *Id.* ¶ 21.

In addition, since the Court's order, Defendants have been developing two other methods that will allow them to preserve additional categories of information over the next few weeks as Defendants' engineers build out new systems. First, by the end of next week, Defendants expect to be able to preserve data categories from the existing app-side Download Your Data ("DYD") product feature for identified under-13 users, which includes additional profile and settings data (like profile photos), data from the user's posts (like settings for who is allowed to view them), direct messages, additional user activity data (including likes, comments, and favorites), and data from TikTok Shop (like purchase information) and TikTok LIVE (like TikTok LIVE settings). Declaration of Tianyu Zhao ("Zhao Decl.") ¶ 7. Second, Defendants are in the process of developing and implementing a method that will isolate and preserve user-generated videos from identified under-13 accounts, and do so in a way that prevents those videos from being accessed by Defendants' normal business processes. *Id.* ¶¶ 9-10.

In short, Defendants have preserved significant data categories and are continuing to explore ways to preserve even more.

### A.   Current Preservation Efforts

As explained below, Defendants are developing three overlapping methods for preserving data categories from the key categories that they identified: (1) copying and segregating data from Hive tables that are commonly used for

business purposes; (2) using the existing app-side DYD product feature to design and build a modified implementation to preserve user data; and (3) implementing a protocol that preserves and isolates user-generated videos in their existing location.[20]

### 1. Hive Approach

First, to identify and preserve potentially relevant data categories, Defendants developed and are continuing to refine a code that can pull and preserve data categories from tables stored in Hive. Spector Decl. ¶ 16.[21] Hive is a data warehouse system that is designed to facilitate storage and analytics of massive amounts of data. *Id.* ¶ 17. Defendants focused on data stored in Hive as part of their preservation efforts because it is often used for business analytics. *See id.*

Hive contains numerous data tables, and here Defendants have made a good faith determination about which data tables stored in Hive were potentially relevant to the claims to this case. To do so, Defendants worked with data scientists to identify categories of data that are most likely to be relevant to this case, including: (1) data that could potentially be used to identify members of the putative class (registration phone number, email, or both) and (2) data most commonly used by Defendants for business purposes. *Id.* ¶ 18. After conducting that assessment, the

---

[20] Defendants investigated the possibility of preserving data categories available through Defendants' law enforcement response tool ("LERT"). Spector Decl. ¶ 26. LERT was designed to respond to inquiries by law enforcement for discrete data sets related to a few users. *Id.* However, Defendants cannot use LERT to preserve data here because it cannot accommodate the data volume at issue in this case. *Id.* ¶ 27.

[redacted]

[21] Defendants began implementing this preservation method on May 9, 2025. Spector Decl. ¶ 22. At that point, the Data Science Team was able to copy and securely preserve the specified subset of Hive data from all banned accounts that had not yet reached the end of the appeal process, when deletion typically begins. This allowed Defendants to preserve that subset of Hive data for under-13 users going back to April 9, 2025. *Id.*

data scientists identified which categories from them Defendants were capable of preserving. *Id.* ¶ 19. The data scientists then began to develop new code specifically for this case to copy those data categories from Hive tables and isolate them in a way that prevents them from being accessed or processed. *Id.* This newly engineered solution was not previously available and took ▓ data scientists ▓ to implement. The data categories that are currently being preserved include:

- Account registration information, such as email, phone number, and user-entered birthday;
- List of accounts followed;
- Total number of videos liked;
- Predicted age range;
- Predicted gender;
- Title, description, creation times, and performance metrics of user-generated videos; and
- Historical views on the For You Page.

*Id.* ¶ 21.

The Hive approach does not support preservation of certain data categories because of the significant technological difficulty of doing so. *Id.* ¶ 23. These categories include a user's daily usage metrics, such as daily session duration (how long a user spends on the platform on a particular day), session start time (when a user started using the platform on a particular day), and daily consumption metrics (like the number of video views on a particular day). *Id.* Preserving each of these data categories is infeasible because of the way this data is stored. *Id.* ¶ 24. Specifically, in order to pull and preserve that information for each daily batch of ▓ newly banned under-13 users would require TikTok's U.S. data science team to devote *all* of their computing resources capable of processing this information to only that task for ▓. *Id.* And during that ▓ period, all of

their processing capabilities would be fully occupied, meaning that they could not accept a new request for ███████. *Id.* In short, Defendants could never keep up with requests to pull these data categories.

Beyond infeasibility, it is not reasonable or proportionate to obtain these additional data categories because they overlap with other data Defendants are preserving. *See id.* ¶ 25. For example, a user's watch history (which will be preserved using the DYD implementation discussed below) overlaps with the number of videos that they have viewed. *Id*. Even if the data categories above could be obtained by expending all available resources (they cannot), expending those resources would not be proportionate where the data categories are duplicative. Moreover, Plaintiffs broadly allege that Defendants collected COPPA-protected personal information from under-13 users. But those general allegations have not established a particular need for every conceivable piece of Underage User Data, and Defendants are working on preserving many other data categories using the DYD implementation and Hive. It would not be reasonable or proportional to the needs of the case to preserve these difficult-to-obtain data categories.

### 2. DYD Approach

Second, Defendants are developing a method that will be able to preserve several data categories by modifying the user-facing DYD product feature. DYD is a product feature that was implemented approximately five years ago and allows any user to download their own data from the TikTok platform and save it on their device. Zhao Decl. ¶ 2. Defendants identified the existing DYD product feature as potentially helpful for data preservation in this case because it already aggregates a significant number of data categories for each individual user in a downloadable format. *Id.* ¶ 5. However, the DYD product was designed for individual users, not bulk preservation. *Id.* ¶ 2.

Over the last few weeks, Defendants' software engineers have been working on modifying the DYD implementation and integrating it with other systems so that

it can be used to preserve data potentially relevant to this case. *Id.* ¶ 6. This work has required coordination among multiple teams at TikTok. *Id.* Once complete, the modified DYD implementation will be able to copy and isolate DYD data categories for users that Defendants identify as under-13. *Id.*[22] The data that will be preserved when the implementation is complete include, among other things:

- Account registration information, such as email, phone number, profile photo, and profile settings;
- The user's likes, comments, and favorites;
- Lists of followers and accounts followed;
- Title, description, and creation times of posted videos;
- Watch histories;
- Direct messages; and
- TikTok Shop and TikTok Live usage information.[23]

*Id.* ¶ 7. This modified DYD implementation will copy DYD data categories for each banned under-13 account subject to deletion and isolate them so that the data will not be accessed or processed by the TikTok platform. *Id.* ¶ 8. Defendants expect that they will be able to start preserving the DYD data categories by the end of next week. *Id.*

### 3. User-Generated Videos

In addition to the data preserved through the modified DYD implementation and the Hive approach, Defendants have developed a way to preserve user-generated videos (i.e., videos posted by the user) identified as being associated with

---

[22] Defendants are still confirming that the DYD data categories that are available for a banned account (i.e., an account barred from the platform for being created by an underage user) are the same as the DYD data categories for an active account. Zhao Decl. ¶ 8 n.1. Any differences are expected to be minimal, and to the extent this process identifies additional DYD data categories, Defendants will investigate whether they have been or can be preserved. *Id.*

[23] Some DYD data and Hive data overlap, such that Defendants' preservation processes will result in the preservation of two sets of the same kinds of data. Spector Decl. ¶ 25.

an under-13 user. Zhao Decl. ¶ 9. Defendants' software engineers are developing a method that preserves user-generated videos in their original data storage location, but prevents Defendants' systems from accessing or processing the video for business purposes. *Id.* ¶ 10. Defendants expect that they will be able to extract user-generated videos by the end of next week. *Id*.

### B. Ongoing Preservation Efforts

Defendants will continue to investigate the feasibility of preserving other types of data not encompassed in the DYD, Hive, or user-generated video datasets. Defendants are investigating whether there are other data categories that may be relevant to this litigation, and whether Defendants are capable of preserving any such data using proportionate efforts. Should additional data categories be discovered as relevant to this litigation, whether through Defendants' own preservation investigation or through inquiries by Plaintiffs, Defendants will diligently explore the feasibility of preserving such data.

## V. CONCLUSION

Defendants respectfully request that the Court modify its April 28, 2025 order to find that Defendants' proposal for preserving Underage User Data is reasonable and proportional to the needs of this case.

Specifically, it is reasonable and proportional for Defendants to preserve Underage User Data that:

1. Can reasonably be identified and extracted using Defendants' Hive approach;
2. Can reasonably be identified and extracted using Defendants' Download Your Data approach; and
3. Can reasonably be identified and preserved using Defendants' method for preserving user-generated videos.

| | | |
|---|---|---|
| 1 | Dated: May 21, 2025 | Respectfully submitted, |

By:  /s/ *Daniel M. Petrocelli*
     Daniel M. Petrocelli

DANIEL M. PETROCELLI
dpetrocelli@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California 90067-6035
Telephone:  +1 310 553 6700
Facsimile:   +1 310 246 6779

STEPHEN D. BRODY
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone:  +1 202 383 5300
Facsimile:   +1 202 383 5414

MATTHEW D. POWERS
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3832
Telephone: +1 415 984-8700
Facsimile: +1 415 984-8700

*Attorneys for Defendants ByteDance Ltd., ByteDance Inc., TikTok Ltd., TikTok Inc., TikTok LLC, TikTok Pte. Ltd., and TikTok U.S. Data Security Inc.*

**CERTIFICATE OF SERVICE**

I certify that on May 21, 2025, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which automatically services all counsel of record for the parties who have appeared.

Dated: May 21, 2025                                     */s/ Daniel M. Petrocelli*
                                                                            Daniel M. Petrocelli