| | |
|---|---|
| 1 | DANIEL M. PETROCELLI (S.B. #97802) |
| 2 | dpetrocelli@omm.com<br>O'MELVENY & MYERS LLP |
| 3 | 1999 Avenue of the Stars<br>Los Angeles, California 90067-6035 |
| 4 | Telephone: +1 310 553 6700<br>Facsimile: +1 310 246 6779 |
| 5 | STEPHEN D. BRODY (*pro hac vice*) |
| 6 | sbrody@omm.com<br>O'MELVENY & MYERS LLP |
| 7 | 1625 Eye Street, NW<br>Washington, D.C. 20006-4001 |
| 8 | Telephone: +1 202 383 5300<br>Facsimile: +1 202 383 5414 |
| 9 | MATTHEW D. POWERS (S.B. #212682) |
| 10 | mpowers@omm.com<br>O'MELVENY & MYERS LLP |
| 11 | Two Embarcadero Center<br>San Francisco, CA 94111 |
| 12 | Telephone: +1 415 984 8700<br>Facsimile: +1 415 984 8701 |
| 13 | *Attorneys for Defendants ByteDance Ltd.,* |
| 14 | *ByteDance Inc., TikTok Ltd., TikTok Inc.,*<br>*TikTok LLC, TikTok Pte. Ltd., and* |
| 15 | *TikTok U.S. Data Security Inc.* |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In Re: TikTok, Inc. Minor Privacy Litigation | Case No. 2:25-ml-03144-GW-RAO<br><br>**DECLARATION OF ETHAN SPECTOR IN SUPPORT OF DEFENDANTS' PROPOSAL REGARDING PRESERVATION OF DATA**<br><br>**[REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL]** |

# DECLARATION

I, Ethan Spector, declare as follows:

1. I am Senior Data Science Manager on TikTok U.S. Data Security Inc.'s User Business Operations team. I have served in my current role since June of last year and have worked at the company since December 2022. Prior to working at the company, I held a similar role leading data scientists and engineers at a major telecommunications company.

2. In my current position, I work with data scientists to provide technical guidance on complex data projects, manage data pipelines, and report on data analytics to multiple business teams at the executive level to assist the company in analyzing various aspects of user data on the platform. Through my work at the company, I have become familiar with a data storage system used by the company known as "Hive." My team and I regularly use Hive to analyze user data as part of our work for the company. I have personal knowledge of the facts stated in this declaration, except for those matters stated on information and belief, and if called upon to do so, I could and would so testify.

3. I understand that lawsuits have been filed against Defendants ByteDance Ltd., ByteDance Inc., TikTok Ltd., TikTok Inc., TikTok LLC, TikTok Pte. Ltd., and TikTok U.S. Data Security Inc. (collectively, "Defendants" or "TikTok") that involve claims that TikTok improperly collected data from under-13 users. I submit this declaration in support of Defendants' Proposal Regarding Preservation of Data.

## I.  DELETION OF UNDERAGE USER DATA

4. I have been informed that, on April 28, 2025, the Court issued an order requiring that TikTok "preserve data" relevant to this litigation (the "Order"). I understand that data potentially relevant to this litigation includes at least some data associated with accounts from the TikTok platform designed for users over the age

of 13 (sometimes called the "13+ Experience") that TikTok has identified as belonging to users under the age of 13 (hereinafter "Underage User Data").

5. I understand that once TikTok determines an account belongs to a user under the age of 13, the account is banned and the data associated with that account is deleted. I understand that every day, approximately ▮▮▮▮▮▮▮▮ U.S. accounts are deleted through this under-13 user deletion process.

6. To locate and delete Underage User Data, I understand that TikTok developed and continues to enhance sophisticated tools to navigate the platform's complex data systems. User data is kept in ▮▮▮▮▮▮▮▮ of dynamic tables in different data storage systems. Tables are structured collections of related data, typically organized into columns and rows, that can contain thousands of individual data points.

7. Depending on how much they interact with the platform, users of the 13+ Experience can generate a wide variety of data associated with their account. That includes both the user-generated data that TikTok collects and data automatically generated for TikTok's business purposes. Different data points for the same user can be stored across different tables. A user's email, for example, can be in a different table than a video that they post.

8. It is my understanding that TikTok has spent years designing triggered deletion processes to remove data associated with an identified under-13 account from TikTok's systems. These processes are designed to delete all data associated with an under-13 account, with a few limited exceptions such as: (1) deletion records; (2) moderation records related to identifying under-13 accounts, and (3) if the account made purchases on the platform, records of those purchases.

II. **CHALLENGES TO PRESERVATION IN THIS CASE**

9. It is my understanding that deletion of Underage User Data is just one of many deletion policies that apply to all user data stored in TikTok's systems.

Because Underage User Data is spread across tables and not stored separately, another deletion policy could trigger deletion of that Data.

10. For example, TikTok has "rolling deletion" policies that automatically delete data in a table after a certain time period. The time period is not consistent across all of the data tables—i.e., one table's data might be deleted after 18 months, while another's might be deleted after only 30 days, and possibly more quickly. Even if the Underage User Data trigger were "turned off," the very same data might be deleted through rolling deletion.

11. TikTok has other deletion policies that serve important and practical purposes, including complying with other laws, maintaining a safe platform, and allowing users to have control over their own data. Pausing all of these deletion policies would significantly disrupt business operations and, based on my current understanding, would likely be impossible in any reasonable time frame, and may be impossible all together. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ "All data" from the platform can run into the exabytes (i.e., millions of terabytes).

12. It is my understanding that, in the ordinary course, TikTok uses data to improve, support, and administer the TikTok platform. If TikTok's deletion processes are paused but the Underage User Data is not isolated from its existing location in tables, that data will be accessed for this analysis and processing.

13. In order to isolate Underage User Data so that it cannot be accessed or processed in the ordinary course of TikTok's business operations, that data must either be moved out of its table into a secure location or isolated in some other way

that will block access to the Data in its existing location.

14. In addition, since 2022, Defendants have partnered with Oracle Corporation on the migration of the U.S. TikTok platform and protected U.S. user data to Oracle's cloud environment—an initiative known as "Project Texas." TikTok created the special purpose subsidiary I work for, TikTok U.S. Data Security Inc., to control access to protected U.S. user data and to monitor the security of the platform. Generally speaking, access to the Oracle environment is limited to only select TikTok U.S. Data Security Inc. personnel.

15. Because of this increased security, only certain employees, like me and my team, are approved to access the Oracle environment. This provides an extra layer of complication to finding secure solutions for isolating and preserving U.S. user data.

### III. DATA AVAILABLE THROUGH HIVE TABLES

16. My team assisted in developing and is continuing to refine a code that can pull and preserve data categories from the tables stored in Hive.

17. Hive is a data warehouse system that is designed to facilitate storage and analytics of massive amounts of data. Since Hive is often used for business analysis, it is also a potentially useful system for identifying and preserving information related to user analytics.

18. Hive contains numerous data categories. My team worked to identify categories of data that are most likely to be relevant to this case, including: (1) data that could can potentially be used to identify members of the putative class (registration phone number, email, or both) and (2) data most commonly used by TikTok for business purposes.

19. After identifying these categories, we identified which data categories from them TikTok was capable of preserving. We were then able to develop a new code specifically for this case that allows us to copy those data categories from the

Hive tables and isolate them in a way that prevents them from being accessed or processed.

20. This engineered solution was not previously available and took ▮ data scientists on my team ▮ to implement.

21. The categories of data preserved include:

   a. Account registration information, such as email, phone number, and user-entered birthday;
   b. List of accounts followed;
   c. Total number of videos liked;
   d. Predicted age range;
   e. Predicted gender;
   f. Title, description, creation times, and performance metrics for user-generated videos; and
   g. Historical views on the For You Page.

22. Defendants began implementing this preservation method on May 9, 2025. At that point, my team was able to copy and securely preserve the specified subset of Hive data from banned accounts that had not yet reached the end of the appeal process, when deletion typically begins. This allowed preservation of a subset of Hive data for under-13 users going back to April 9, 2025.

23. Certain data categories are not able to be preserved through this Hive tool because of the significant technological difficulty of doing so. These categories include a user's daily usage metrics, such as daily session duration (how long a user spends on the platform on a particular day), session start time (when a user started using the platform on a particular day), and daily consumption metrics (like the number of video views on a particular day).

24. Preserving each of these data categories is infeasible because of the way this data is stored. Specifically, pulling and preserving these data categories

1  for each daily batch of ▮▮▮ newly banned under-13 users would require my
2  team to devote *all* of their computing resources capable of processing this
3  information to only that task for ▮▮▮. And during that ▮▮▮ period, all of
4  their processing capabilities would be fully occupied, meaning that they could not
5  accept a new request for ▮▮▮.

6  25.  I understand that TikTok teams are developing a method of preserving
7  data categories typically available through the Download Your Data ("DYD")
8  product feature. Some of the data categories unavailable through our Hive
9  approach are duplicative of data categories available through DYD. For example, a
10 user's watch history (which is available through the DYD product feature) overlaps
11 with the numbers of videos that they have viewed (which is available through our
12 Hive approach).

### IV. DATA AVAILABLE THROUGH LERT

14 26.  I understand that TikTok investigated the possibility of preserving data
15 categories available through TikTok's law enforcement response tool ("LERT").
16 The LERT tool was designed to respond to inquiries by law enforcement for
17 discrete data sets related to a few users.

18 27.  I understand that LERT cannot be used to preserve data in this case
19 because it cannot accommodate the data volume at issue. ▮▮▮
20 ▮▮▮
21 ▮▮▮
22 28. ▮▮▮
23 ▮▮▮
24 ▮▮▮
25 ▮▮▮

* * *

27 29.  I understand that investigation into the feasibility of preserving other

types of data not captured by the Hive approach is ongoing. I understand that Defendants will continue to engage in discussions with data scientists, like myself, to understand whether there are other data categories that may be relevant to this litigation and can be preserved.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 21st day of May, 2025 in Studio City, California.

Signed by:

3B72AD92199E4AF...

Ethan Spector