UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 3144-GW-RAOx | Date | May 23, 2025 |
|---|---|---|---|
| Title | *In Re: Tiktok, Inc., Minor Privacy Litigation* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |
|---|---|

| Javier Gonzalez | None Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** IN CHAMBERS - TENTATIVE RULING ON PLAINTIFFS' MOTION FOR APPOINTMENT OF INTERIM LEAD CLASS COUNSEL [29]; and THE HUMBERT PLAINTIFFS' MOTION FOR APPOINTMENT OF INTERIM CLASS COUNSEL [30]

Attached hereto is the Court's Tentative Ruling on the above-entitled Motions [29, 30], set for hearing on May 29, 2025 at 10:00 a.m.

:

Initials of Preparer  JG

<u>*In Re: Tiktok, Inc., Minor Privacy Litigation*</u>; 2:25-ml-03144-GW-(RAOx)
Tentative Ruling on Motions for Appointment of Interim Lead Class Counsel

Before the Court are competing motions for appointment of "interim" lead class counsel.[1] The first proposed slate is Steven Bloch of Silver Golub & Teitell LLP ("Silver Golub") and Eric Kafka of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") (collectively, "J.C. Slate"). *See* J.C. Motion, Docket No. 29. The second slate consists of Kiley Grombacher of Bradley/Grombacher LLP, Derek Loeser of Keller Rohrback LLP, and Andre Mura of Gibbs Mura LLP (collectively, "Humbert Slate"). *See* Humbert Motion, Docket No. 30. Humbert Plaintiffs additionally seek an appointment of an Executive Committee comprised of Bryan Aylstock (Aylstock Witkin Kreis Overholtz), James Cecchi (Carella, Byrne, Cecchi, Brody & Agnello), Tyler Hudson (Wagstaff & Cartmell), and Christopher Seeger (Seeger Weiss).[2] *Id*.

The Court has carefully considered the Motions, various declarations submitted in support, and reply briefs. Both proposed slates are well-qualified to competently serve as interim lead counsel and each would offer distinct benefits to the proposed class. The Court has identified the particular strengths of each below. Given these findings, the Court is considering drawing from both slates to craft its own slate and would like proposed counsel to address their amenability to this approach.

**I.      Background**

This litigation concerns allegations that TikTok collects and sells the personal information of minors without the notice or consent required by the Children's Online Privacy Protection Act of 1998 ("COPPA"). *See* Docket No. 1 at 1. Various class actions predicated on these allegations were filed and subsequently transferred to this Court for pretrial proceedings by the United States

---

[1] The Court had initially inquired of the various Plaintiffs' counsel whether there was a consensus as to the Plaintiffs' side leadership structure. *See* Docket No. 10 at 1-2. After discussions amongst Plaintiffs' counsel, the two competing slates emerged.
   Additionally, the position is designated as "interim" lead class counsel because it is expected that litigation would proceed as a consolidated class action which will require an eventual application for class certification which will, in turn, include the consideration of adequacy of representation which will, in turn, raise the issue of competency of counsel before the final appointment of class counsel. *See generally*, Fed. R. Civ. P. 23(g)(3). Conceivably (although perhaps somewhat unlikely), the attorneys who are ultimately appointed as class counsel at class certification could be different than those selected as interim class counsel.

[2] In the Humbert Slate's Reply, Docket No. 46 at 1 n.1, Christopher Seeger indicated he is no longer seeking appointment to the proposed Executive Committee.

Judicial Panel on Multidistrict Litigation. *See id*.

At the April 28, 2025 status conference, Plaintiffs' counsel informed the Court that they had not reached consensus on an interim lead counsel and the Court directed plaintiffs' counsel to file motions concerning a proposed leadership structure. *See* Docket No. 11.

## II.     Legal Standard

Under Federal Rule of Civil Procedure 23(g)(3), "[t]he court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). "In cases such as this, where multiple overlapping and duplicative class actions have been transferred to a single district for the coordination of pretrial proceedings, designation of interim class counsel is encouraged, and indeed is probably essential for efficient case management." *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006); *see also White v. TransUnion, LLC*, 239 F.R.D. 681, 683 (C.D. Cal. 2006) ("Instances in which interim class counsel is appointed are those in which overlapping, duplicative, or competing class suits are pending before a court, so that appointment of interim counsel is necessary to protect the interests of class members.").

"Candidates for interim class counsel are evaluated under the same rubric as potential counsel for certified classes." *Deangelis v. Corzine*, 286 F.R.D. 220, 223 (S.D.N.Y. 2012). "Class counsel must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). A court "must consider" certain factors in the appointment of class counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

A court may only appoint class counsel "if the applicant is adequate under Rule 23(g)(1) and (4)," and "[i]f more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2).

## III.    Discussion

### A. Rule 23(g)(1) Factors

1. Work Done Identifying or Investigating Claims

Silver Golub filed the first private action among the various cases in this multidistrict litigation. *See* J.C. Motion at 3; *A.A. v. ByteDance Inc.*, 2:24-cv-06784 (C.D. Cal.), Docket No. 1.[3] Cohen Milstein filed a complaint in a separate action shortly thereafter, which incorporated its "independent research." *See* J.C. Motion at 3; *Villanueva v. Bytedance Inc.*, 2:24-cv-07922 (C.D. Cal.), Docket No. 1. Those two actions were consolidated into *J.C. v. ByteDance, Ltd.*, 2:24-cv-06784 (C.D. Cal.). The J.C. Slate prevented consolidation of this data privacy action with the related DOJ action and multidistrict litigation pertaining to social media addiction. J.C. Motion at 9-10. In the *J.C.* action, the J.C. Slate briefed an opposition to TikTok's motion to dismiss that "involved significant legal research and analysis of complex issues." Declaration of Eric Kafka ("Kafka Decl."), Docket No. 29-2, ¶ 6; J.C. Motion at 10-11. Mr. Kafka has also proactively led data preservation efforts. J.C. Motion at 11-12.

In all, the J.C. Slate has spent nine months devoting time and resources to the claims at issue. *Id*. at 8. The Court also notes that many plaintiffs have benefitted from Cohen Milstein's initial work specifically by adopting and incorporating the factual allegations within the *Villanueva* complaint into their own. *Id*. at 9.

The Humbert Slate has done comparatively less work on the claims thus far, although Ms. Grombacher attests that the Humbert Slate has engaged in some investigative efforts, developed case strategy, assessed different prospective plaintiffs and the merits of class claims, and worked with experts. Declaration of Kiley Grombacher ("Grombacher Decl."), Docket No. 30-1, ¶¶ 22-25.

The Court would also note that both slates filed comprehensive and well-crafted oppositions to TikTok's *ex parte* application for temporary suspension of the preservation order, offering distinct arguments and evidence that were useful to the Court in reaching its decision.

However, given Cohen Milstein's investigatory development of the facts within the *Villanueva* complaint and initiative taken on data preservation as well as the J.C. Slate's groundwork opposing a TikTok motion to dismiss, the first factor tips in favor of the J.C. Slate.

---

[3] *A.A.* was filed on August 9, 2024. Prior thereto, on August 2, 2024, the Consumer Protection Branch, Civil Division of the U.S. Department of Justice had filed an action against TikToK raising similar claims as involved in this MDL, which is currently pending. *See United States v. ByteDance Ltd*, No. 2:24-cv-06535-ODW-(RAOx) (C.D. Cal.). Additionally, there was a much earlier case filed in this District which raised related causes of action and which was resolved relatively quickly. *See United States v. Musicial.ly*, No. 2:19-cv-01439-ODW-(RAOx) (C.D. Cal.) – case filed on 2/27/2019 (Docket No. 1) and judgment entered on 3/27/2019 (Docket No. 10).

2. <u>Experience of Counsel</u>

The candidates all bring a wealth of experience in class actions and complex litigation. With respect to privacy litigation and experience with sophisticated social media companies specifically, Mr. Kafka and Mr. Loeser's respective experience stands out to the Court. Mr. Kafka has litigated three class actions against a social media company and his significant involvement in the discovery process in those cases would no doubt be beneficial in developing plaintiffs' claims. Kafka Decl. ¶ 13. Mr. Loeser served as co-lead counsel in a protracted consumer privacy class action against a social media company that achieved "the largest civil privacy class action settlement in the United States." Declaration of Derek Loeser ("Loeser Decl."), Docket No. 30-2, ¶ 6. Mr. Loeser's firm also has particularly extensive expertise in data privacy consumer class actions. *See* Loeser Decl. ¶¶ 12-13; Loeser Decl., Ex. 1.

The Court also notes that Mr. Bloch currently "play[s] a leading role" in two data privacy cases involving COPPA violations, and Silver Golub recently achieved a settlement in an action involving similar allegations as this case. *See* Declaration of Steven L. Bloch ("Bloch Decl."), ¶ 7. Mr. Mura's experience is also impressive, serving as co-lead counsel for a settlement class in a data privacy action and as class counsel or on plaintiffs' executive committee in other data privacy actions. *See* Declaration of Andre Mura ("Mura Decl."), Docket No. 30-3, ¶¶ 4-8.

Ms. Grombacher brings "considerable experience handling significant and complex consumer litigation in this District." Grombacher Decl. ¶ 10. Counsel's "presence in this District" is a relevant form of experience that makes an application to serve as lead counsel more "compelling." *In re Ring LLC Priv. Litig.*, No. 19-cv-10899-MWF-(RAOx), 2020 WL 9763065, at *2 (C.D. Cal. Nov. 13, 2020).

With particularly useful experiences noted accordingly, the Court finds each slate to be highly qualified and capable of ably serving as lead class counsel. Therefore, this factor does not tip strongly in any direction.

3. <u>Knowledge of Counsel</u>

Given their extensive experience already highlighted by the Court, both proposed slates no doubt have sufficient knowledge of the relevant law to adequately serve as lead counsel. Therefore, this factor is also neutral as to both slates.

4. <u>Resources</u>

Both slates assert that their resources are sufficient to effectively represent the class. Cohen

Milstein is evidently the largest plaintiffs' firm involved in this case. *See* J.C. Motion at 7. However, the Court is satisfied that both slates are equipped to devote the necessary financial and staffing resources.

  5. Other Pertinent Matters

The Court finds relevant that "counsel for plaintiffs in 17 of the 20 related class actions" support the Humbert Slate. *See* Humbert Motion at 5. The support of other counsel indicates the Humbert Slate's ability to achieve consensus and suggests that they will be able to work cordially and collaboratively as lead counsel to promote the best interests of the class. Therefore, this consideration tips in favor of the Humbert Slate. However, while a consideration, the Court agrees with the J.C. Slate that the appointment of counsel is "'not supposed to be a popularity contest.'"[4] *See* J.C. Reply, Docket No. 45, at 3 (quoting *In re Nelnet Servicing, LLC*, No. 22-cv-3181, 2023 WL 1108253, at *5 (D. Neb. Jan. 30, 2023)).

The Court also notes that the Humbert Slate has "diverse membership" and has demonstrated a "commitment to fostering the next generation of lawyers." *See* Humbert Motion at 17-18. This consideration tips in the Humbert Slate's favor. *See In re Stubhub Refund Litig.*, No. 20-md-02951-HSG, 2020 WL 8669823, at *1 (N.D. Cal. Nov. 18, 2020) (noting that appointed lead counsel had "demonstrated careful attention to creating a diverse team"); *In re Robinhood Outage Ligitation*, No. 20-cv-01626-JD, 2020 WL 7330596, at *2 (N.D. Cal. July 14, 2020) ("[L]eadership roles should be made available to newer and less experienced lawyers, and the attorneys running this litigation should reflect the diversity of the proposed national class."). While important, diversity considerations do not outweigh the other Rule 23(g)(1) factors, however. *See In re Meta Pixel Healthcare Litig.*, No. 22-cv-03580-WHO, 2022 WL 18399978, at *4 (N.D. Cal. Dec. 21, 2022) (finding that "the [Rule 23(g)(1)] factors are not equal" and refusing to "emphasize diversity to the exclusion of . . . the other Rule 23(g)(1) factors.").

---

[4] Moreover, the Court understands that the Humbert Slate overlaps with counsel representing plaintiffs in the multidistrict litigation against TikTok concerning social media addiction. *See In re Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.* ("*Addiction MDL*"), No. 4:22-md-3047 (N.D. Cal.). The J.C. Slate contends that six of the seven counsel on the Humbert Slate represent plaintiffs in *Addiction MDL*, *see* J.C. Reply at 4, although it appears to the Court as though Mr. Mura is the only member of the proposed Humbert Slate appointed to a position within the *Addiction MDL* leadership structure (besides Mr. Seeger, now moot as he has taken himself out of consideration). *See Addiction MDL*, Docket Nos. 75, 588. The Court would agree with the J.C. Slate that it is likely within the best interests of Plaintiffs for leadership in this case not to overlap with leadership in *Addiction MDL*.

### B. Executive Committee

The Humbert Slate has proposed the appointment of an Executive Committee given the complexity of the case, averring that the "skills, resources, and manpower" of additional law firms, as well as the geographic diversity they bring, will benefit the class. Humbert Motion at 2, 16. However, the Court is unsure why the Humbert Slate requires the structure of an Executive Committee to "assign tasks" such as research, briefing, depositions, document review, and expert testimony development to fellow counsel. *Id*. at 2. "Courts within this circuit routinely deny requests for appointment of executive committees where a plaintiff fails to demonstrate that such an appointment is necessary." *Aberin v. Am. Honda Motor Co., Inc.*, No. 16-cv-04384-JST, 2017 WL 3641793, at *2 (N.D. Cal. Aug. 24, 2017) (collecting cases). The addition of firms beyond an already multi-firm lead counsel can create "organizational difficulties and leadership issues." *Cooperman v. Galeos LLC*, No. 10-cv-01815-JVS-(FFMx), 2011 WL 13227858, at *2 (C.D. Cal. Apr. 18, 2011). The Court is inclined to deny the appointment of an Executive Committee, although counsel may argue otherwise at the hearing.

However, the Court has, in the past, appointed a liaison counsel. "Liaison counsel generally assists lead counsel with administrative matters, such as filings, communications with the court and other counsel, convening meetings of counsel, assuring compliance with local rules, and attending hearings." *Rubenstein v. Scripps Health*, No. 21-cv-1135-GPC-(MSB), 2021 WL 4554569, at *4 (S.D. Cal. Oct. 5, 2021). Liaison counsel may be particularly useful if the lead counsel that the Court appoints are not based in or experienced litigating in this District. Proposed lead counsel may discuss at the hearing their position on the appointment of a liaison counsel.

### IV. Conclusion

In consideration of all the factors and the best interests of the class, the Court may "appoint its own 'slate.'" *See In re Ring*, 2020 WL 9763065, at *2. Given the previous analysis and the distinct benefits counsel from both proposed slates offer, the Court is strongly considering doing so.[5] Counsel seeking appointment shall discuss at the hearing to what extent they are prepared to cooperate if appointed to work with counsel from the other slate instead of their preferred lineup.

Additionally, neither Motion proposed fee arrangements. *See* Fed. R. Civ. P. 23(g)(1)(D). The Court expects proposed interim lead counsel to discuss proposals for fees and associated

---

[5] At this point, the Court envisions the selection of attorneys from two law firms as interim lead counsel and perhaps one liaison counsel.

recordkeeping at the hearing.

Further, perhaps it is naivete on the Court's part, but it is expected that this litigation will ultimately be resolved through mediation rather than extensive litigation. Counsel should be expected to discuss their approaches on that topic.

Finally, the Court will apprise the parties that it will conduct portions of the selection process under seal, including the exclusion of defense counsel, when discussing potential litigation strategies with Plaintiffs' attorneys.