DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California 90067-6035
Telephone: +1 310 553 6700
Facsimile: +1 310 246 6779

STEPHEN D. BRODY (*pro hac vice*)
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone: +1 202 383 5300
Facsimile: +1 202 383 5414

MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
San Francisco, CA 94111
Telephone: +1 415 984 8700
Facsimile: +1 415 984 8701

*Attorneys for Defendants ByteDance Ltd., ByteDance Inc., TikTok Ltd., TikTok Inc., TikTok LLC, TikTok Pte. Ltd., and TikTok U.S. Data Security Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: TikTok, Inc. Minor Privacy Litigation | Case No. 2:25-ml-03144-GW-RAO<br><br>**REPLY IN SUPPORT OF DEFENDANTS' PROPOSAL REGARDING PRESERVATION OF DATA**<br><br>**[REDACTED VERSION OF DOCUMENT FILED UNDER SEAL]** |

# TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | ARGUMENT | | 3 |
| | A. | Plaintiffs Misstate the Record and Their Arguments Should be Rejected | 3 |
| | B. | Plaintiffs Are Not Entitled To Additional Discovery At This Stage Of The Case | 7 |
| | | 1. Plaintiffs' demand for premature written discovery should be denied | 8 |
| | | 2. Plaintiffs' demand for a Rule 30(b)(6) deposition is unfounded | 10 |
| III. | CONCLUSION | | 12 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Doe LS 340 v. Uber Techs., Inc.*,
    710 F. Supp. 3d 794 (N.D. Cal. 2024)..................................................................4

*Rodriguez v. Google LLC*,
    2021 WL 8085492 (N.D. Cal. 2021)....................................................................4

**Statutes**

16 C.F.R. § 312.2 ......................................................................................................4

16 C.F.R. § 312.5 ......................................................................................................4

## I. INTRODUCTION

Plaintiffs' response to Defendants' preservation submission is nothing more than an unabashed attempt to misuse the preservation process and the Court's orders to extract far-reaching and wholly unwarranted litigation advantages. It is misguided in every material respect and should not be countenanced.

- Contrary to Plaintiffs' opening salvo, Defendants have not admitted a failure to preserve evidence—they have complied with federal COPPA law and the Court's prior injunction to delete evidence related to underage users—users under 13 years who misstate their ages to evade Defendants' age gate and access to the 13+ Experience.

- Since the Court's recent orders, Defendants' preservation measures to date capture and preserve far more information than would be discoverable, much less relevant to the issues in this case. There is no credible argument that preservation obligations require more.

- Plaintiffs' position that yet additional information should be preserved is vacuous—indeed, nonsensical—claiming that every single bit of data for every single TikTok user regardless of age must be preserved. That is irrational and tantamount to saying everything on the internet must be preserved.

- Plaintiffs accuse Defendants of failing to preserve information related to Kids Mode users—users under the age of 13 years who honestly state their age and gain access to this specialized, highly-restricted kids' experience. Yet Plaintiffs' complaints do not allege that their class representatives include Kids Mode users—the gist of the complaints concerns the 13+ experience that underage users are accessing by misrepresenting their ages. Nevertheless, and now that Plaintiffs seek to make a preservation issue out of Kids Mode, Defendants are implementing additional measures to preserve the very limited

information generated by Kids Mode users.

- Plaintiffs seek merits discovery under the guise of inquiring about preservation, even though discovery has not commenced, Plaintiffs have yet to be file a master complaint, and Defendants have yet to move to dismiss it. Even so, through Defendants' Court filings and the Court-ordered deposition testimony, plaintiffs have received vastly more information about Defendants' evidence preservation than typically occurs at the outset of litigation.

- Plaintiffs have inexcusably misrepresented the record. As just one example, Plaintiffs assert that Mr. Spector's knowledge about the matters in his declaration came strictly from conversations with attorneys and other TikTok employees. That is demonstrably and knowingly false. Mr. Spector's testimony is clear that it is based on his extensive personal knowledge and the team he supervises. We have attached the complete rough deposition transcripts of Mr. Spector and Mr. Zhou so the Court can see for itself.

In short, as previously explained and further amplified below, Defendants have undertaken exhaustive and burdensome efforts to preserve information and data relevant to underage users. In its May 5, 2025 order, the Court made clear that "Defendants must do their best to comply with the preservation order, but are not expected to accomplish something truly infeasible." ECF No. 25 at 2. Defendants have taken substantial steps to preserve data and have presented those steps to both Plaintiffs and the Court in a detailed preservation proposal, two supporting declarations describing Defendants' preservation efforts, and deposition testimony of two witnesses with extensive knowledge about Defendants' data systems. Based on their experience working with user data from the TikTok platform on a daily basis, both witnesses provided Plaintiffs with significant insight into Defendants'

storage systems, the types of user data Defendants collect, and what Defendants have done to preserve that data when it is associated with a banned under-13 account.

There are approximately ▮▮▮ underage users who wrongly access the 13+ Experience each and every day. Given this massive scale, Plaintiffs have never provided a reasonable, sensible list of potentially relevant information, and their current position that virtually everything for all users must be preserved is alien to the law of preservation, the practical limits of technology, and common sense. And it defies the Court's admonition against "blunderbuss" approach and acknowledgement that Defendants are not required to do what is "infeasible."

## II.   ARGUMENT

### A.   Plaintiffs Misstate the Record and Their Arguments Should be Rejected.

Plaintiffs argue that Defendants' proposal is deficient in three ways: (1) it is limited to the preservation of "*identified* under-13 users"; (2) it omits discussion of preservation of user data from the TikTok platform's under-13 experience ("Kids Mode"); and (3) it fails to account for a handful of data categories Plaintiffs believe are relevant. Resp. 1, 4-6. All of these arguments are misguided.

**Unidentified Under-13 Users.** Plaintiffs claim that Defendants' proposal is inadequate because it does not account for "data belonging to under-13 users on the 13+ Experience whom Defendants *have not identified* as under-13." Resp. 4 (emphasis added). According to Plaintiffs, Defendants must "address the rolling deletion of unidentified under-13 user data" for the Court to approve their proposal. *Id.* But preservation of *unidentified* under-13 user data makes no sense: because they are by definition unidentified, Defendants cannot target, isolate, and preserve data for those under-13 users. In effect, Plaintiffs are asking that Defendants are required to pause rolling deletion for all TikTok user accounts *just in case* some of

those surreptitiously created accounts belong to under-13 users that Defendants have been unable to identify.

Plaintiffs are well aware that saving data from "every TikTok account" is not possible. *See* Resp. 4. As Defendants explained in their preservation proposal, storing all user data could run into the *exa*bytes,[1] and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id.* Nor is it proportional to the needs of the case. Reconfiguring all of Defendants' storage systems to potentially preserve marginal under-13 accounts that may not even exist is beyond unreasonable. The Court has already rejected these kinds of imprecise, "blunderbuss" preservation requests, ECF No. 19-1, Ex. A at 16:6-11, and Defendants should not be required to comply with them. *See, e.g.*, *Doe LS 340 v. Uber Techs., Inc.*, 710 F. Supp. 3d 794, 804 (N.D. Cal. 2024) (finding that data did not have to be preserved where it would require companywide suspension of deletion policies); *Rodriguez v. Google LLC*, 2021 WL 8085492, at *2 (N.D. Cal. 2021) (declining to "require Google to start saving petabytes of data per day, indefinitely, without a more compelling showing of need").[2]

**Kids Mode.** Next, Plaintiffs claim that Defendants' preservation proposal should be rejected because it does not discuss preservation of data collected from Kids Mode. Resp. 5-6. Any data Defendants collect from Kids Mode is extremely limited—Defendants collect only information that is within COPPA's exception for internal operations. *See* 16 C.F.R. §§ 312.2, 312.5.[3] At this stage, Defendants do

---

[1] Again, an exabyte is 1 million terabytes and 1 billion gigabytes—the storage capacity of over 7.8 million entry-level iPhones.

[2] Plaintiffs elsewhere suggest that because Defendants' systems are set up to *delete* certain data, their systems can just as easily *preserve* it. Resp. 2. As Defendants have repeatedly explained, that is simply not the case: because user data is subject to several other deletion policies and needs to be isolated for secure preservation, Defendants cannot just flip a switch from "delete" to "preserve." Prop. 5-7.

[3] *See also* Federal Trade Commission, Complying with COPPA: Frequently Asked Questions (July 2020), https://www.ftc.gov/business-

not believe that preserving Kids Mode data is reasonable or relevant. None of Plaintiffs' complaints allege that any of the named Plaintiffs—who purport to be representatives of the putative classes—allege that they ever created a Kids Mode account, and some of the named Plaintiffs specifically state that they *did not* use Kids Mode at all.[4] Indeed, Plaintiffs did not raise Kids Mode data in their April 22, 2025 preservation letter. *See generally* ECF No. 43-4, Ex. A at 4-6. Defendants' position is that the named Plaintiffs do not have standing to bring claims based on Kids Mode for that very reason. In short, Kids Mode data is outside the scope of this case. Nevertheless, in order to avoid a dispute, Defendants will take steps to preserve the data collected from Kids Mode users.

**Additional Data Categories.** Lastly, Plaintiffs identify a handful of data categories that they believe are missing from Defendants' preservation proposal. Resp. 6. Plaintiffs' data categories are vague, overlapping, and unhelpful. "[P]ersistent identifiers," "other device information," and "usage information," for example, are incredibly overbroad and could be read to include a variety of data. *See id.* But more importantly, Defendants are in the process of preserving—or have already explained or determined that they cannot preserve—data in each of the categories Plaintiffs identify:

---

guidance/resources/complying-coppa-frequently-asked-questions ("Persistent identifiers collected for the sole purpose of providing support for the internal operations of the website or online service do not require parental notice or consent.").

[4] *See* Compl., *Green v. ByteDance Ltd.*, No. 2:25-cv-03527 (C.D. Cal. Apr. 21, 2025), ECF No. 1, ¶¶ 21 ("[W]hen S.V. was approximately nine years old, S.V. created and used a TikTok account and viewed content on the TikTok platform. S.V. created a regular TikTok profile and login—not an "Under 13" or "Kids Mode" account."), 26 (similar).

| Plaintiffs' Data Category | Defendants' Response |
|---|---|
| Persistent identifiers for the device(s) used to access TikTok | Defendants are already preserving identifiers for the devices of banned under-13 users, including, among other things, IP addresses, device IDs, and device iOS (information about the device's operating system). |
| IP addresses and other device information | Defendants are already preserving IP addresses, as well as the device information listed above. |
| Metadata associated with video, voice, and audio media | Defendants already explained that they are preserving, among other things, titles, descriptions, creation times, and performance metrics (i.e., "metadata") for user-generated videos. Prop. 12. |
| Usage information | Defendants are already preserving or will begin preserving usage information across several metrics, including watch histories; direct messages; the user's likes, comments, and favorites; and lifetime session information (e.g., how many hours a user has spent on the platform over the lifetime of their account). Prop. 12, 15. And Defendants already explained to Plaintiffs why preserving *daily* usage information is totally infeasible. Prop. 12-13. |
| Location data | Plaintiffs already know that location data does not exist. Mr. Spector testified in his deposition that Defendants do not collect specific location data. *See* Supplemental Declaration of Daniel M. Petrocelli ("Petrocelli Decl."), Ex. B at 97:25-98:2 ("Q: So you are not capturing GPS data through your app? A: Not that I'm aware of, no."). In fact, he stated that his team—whose primary purpose is analyzing user data for the business—has worked on projects that would benefit from location data, and has found that precise location data is not available. *See id.* at 98:3-21. Rather, any location information for a user is only a proxy derived |

| | using an IP address, *id.*, which, as explained, Defendants are already preserving. |
|---|---|
| Data from cookies and similar technologies that track users across different websites and platforms | Defendants are already preserving data from technologies that track users across different websites and platforms, including Identifier for Advertisers or "IDFA" (a unique identifier assigned to each iOS device by Apple) and Google Advertising ID or "GAID" (a unique identifier assigned to Android devices for advertising purposes). |
| Data related to revenue that TikTok earned from a user's account on a monthly, quarterly, and annual basis | Defendants are still investigating, but they are not currently aware of a table in their systems that tracks revenue associated with individual users on a monthly, quarterly, or annual basis in the normal course of business. |
| Advertisements that were shown to a user's account | Defendants are in the process of developing a solution that will preserve data from this category. |

### B. Plaintiffs Are Not Entitled To Additional Discovery At This Stage Of The Case.

Plaintiffs also argue that alleged "opacity regarding the scope of data collected, data storage sources and capacity, and preservation capabilities" entitle Plaintiffs to sweeping written discovery and additional deposition testimony. Resp. 6-8. But that is not how preservation obligations work: Under normal circumstances, Defendants would be permitted to determine for themselves where relevant data is stored and preserve data that Defendants determine is potentially relevant. Defendants have complied with both Plaintiffs' and the Court's requests to provide insight into the steps that they have taken for preserving data in this case on a rapid timeline. Defendants' preservation efforts are ongoing, and will proceed apace as they would in any other matter. The Court has stayed merits discovery in this case. ECF No. 11 at 1-2. Plaintiffs are not entitled to dig through Defendants' proprietary and sensitive systems, investigating data types and storage systems

without even trying to argue that Defendants' preservation efforts are inadequate or justifying that the information that they are accessing satisfies the relevance and proportionality requirements of Rule 26.[5] Plaintiffs' requests for additional discovery on preservation should be rejected as an unnecessary and poorly disguised attempt to proceed to merits discovery before an appropriate stage of this case.[6]

### 1. Plaintiffs' demand for premature written discovery should be denied.

First, Plaintiffs demand written discovery into seven broad topics, some having little to do with preservation, and most of which are based on mischaracterizations of Mr. Spector's deposition testimony. Resp. 7-8. For example, Plaintiffs argue that they should be permitted to take written discovery into details related to storage sources, asserting that Mr. Spector was unable to identify all of the storage sources other than those from which Defendants' preservation proposal affirms that Defendants are preserving data. Resp. 7. But Mr. Zhao was extensively questioned about storage sources, and provided extensive testimony about the exact topics on which Plaintiffs seek discovery. Petrocelli Decl., Ex. B at 15:18-21:22, 26:19-33:25 (discussing the different types of online and offline data sources and the types of data contained in those data sources). That

---

[5] Instead of arguing that Defendants' preservation efforts are inadequate, Plaintiffs argue that they do not know what is being preserved because Mr. Spector testified that there are "over a thousand" data categories included in Defendants' Hive preservation efforts. Resp. 7. But as Mr. Spector already explained in his declaration, the data that Defendants are preserving through the Hive preservation efforts are (1) data that could potentially be used to identify members of the putative class and (2) data most commonly used by TikTok for business purposes. ECF No. 41-1 ¶ 18. The preservation of that data is resulting in "over a thousand" data categories being preserved through just Defendants' Hive preservation efforts. Petrocelli Decl., Ex. B at 90:10-11.

[6] Plaintiffs' motivation to proceed to merits discovery was repeatedly made clear through various questioning during the depositions of Mr. Spector and Mr. Zhao. For example, Plaintiffs' counsel repeatedly asked questions about Defendants' monetization efforts, Petrocelli Decl., Ex. B at 49:17-51:2, 55:2-11, and what is at "the heart" of the TikTok platform's algorithm, *id.* at 92:23-94:19.

1  Mr. Spector was unsure about other sources of data beyond the data he and his team
2  regularly work with and developed a solution for preserving is irrelevant—
3  Plaintiffs were able to (and did) question Mr. Zhao about data sources beyond those
4  available to Mr. Spector and his team. *See id.*

Plaintiffs also argue that they need discovery into the identification and storage of Kids Mode data and clarification regarding Hive tables that contain Kids Mode data, relying again on Mr. Spector's deposition testimony about his lack of awareness regarding Kids Mode data collection and storage. But as Mr. Spector explained, Kids Mode data is not "relevant to any of … the business questions that … [Mr. Spector's] team looks at"—whether he was personally aware of Kids Mode data is not relevant to the preservation efforts his team is undertaking. Petrocelli Decl., Ex. B at 86:10-13.[7] And, in any event, as explained above, Defendants will take steps to preserve the data collected from Kids Mode users. *Supra* at 5.

Plaintiffs' other requests for written discovery should be rejected out of hand. For example, there is no conceivable basis to permit discovery into the "[i]dentity of advertisers and number of advertisements," unrelated to under-13 user data or their other claims in this case. Plaintiffs likewise do not offer any reason that discovery into "[w]hether additional relevant information related to usage, metadata, or cookies and tracking data needs to be isolated and preserved," "the database administrators of Hive," or "[c]onfirmation that Defendants are preserving deletion logs" is necessary when Defendants have already provided information about their preservation efforts in these areas. Resp. 7-8. Plaintiffs asked no questions during the deposition about cookies or tracking information. And despite asking whether there are database administrators of Hive, Plaintiffs failed to ask what or who those administrators are. Petrocelli Decl., Ex. B at 20:9-12. And Plaintiffs already received confirmation from Mr. Spector that Defendants already

---

[7] Plaintiffs did not bother asking Mr. Zhao about Kids Mode data collection and storage.

preserve deletion logs. *Id.* at 37:23-38:13.

Finally, Plaintiffs suggest that Defendants should "promptly furnish" to Plaintiffs a host of information about Defendants' tables and storage systems, based on Mr. Spector's purported testimony that doing so "is a matter of simple coding and would not impose a burden." Resp. 8. But Mr. Spector's testimony was that it is possible to write code to pull certain information from a single table, not that the burden for doing so with regard to a single table is a minimal, and much less that the burden is minimal for doing so with regard to the of tables that Plaintiffs seek information about. Petrocelli Decl., Ex. B at 24:13-25:2.

This Court has already stayed merits discovery. Plaintiffs should not be permitted to evade that court order by conducting merits discovery under the guise of discovery into preservation.

### 2. Plaintiffs' demand for a Rule 30(b)(6) deposition is unfounded.

Plaintiffs also claim that additional discovery is required because they were entitled to a 30(b)(6) witness that Defendants refused to provide. Resp. 9-11. As a preliminary matter, the Court's order did not specify whether the 3-hour deposition would be a formal 30(b)(6) deposition with negotiated topics or the deposition of knowledgeable witnesses, and just ordered "one deposition of Defendants on the subject of Electronically Stored Information preservation for no longer than three hours." ECF No. 25. But more importantly, Defendants made available both Mr. Spector and Mr. Zhao—two witnesses with extensive knowledge on Defendants' preservation efforts and the two individuals whose teams are responsible for implementing the key aspects of Defendants' preservation efforts. In their response, Plaintiffs claim that an additional deposition is necessary because both witnesses "lacked even personal knowledge" of the topics that they testified to. Resp. 8-10. The implication that Defendants' witnesses were not prepared to testify about Defendants' systems and preservation efforts is simply false, and Plaintiffs cite

1  nothing in support of that assertion. To the contrary, Mr. Zhao and Mr. Spector
2  have extensive personal knowledge about Defendants' preservation efforts in this
3  case.
4       Mr. Spector runs a team of data scientists and analysts tasked with "help[ing]
5  the business understand … the user base and mak[ing] strategic decisions."
6  Petrocelli Decl., Ex. B at 11:10-19. With that knowledge and experience, Mr.
7  Spector's team developed and is continuing to refine code that can pull and
8  preserve data categories from the tables stored in Hive that are used for business
9  analysis of users' interactions with the Defendants' platform. ECF No. 41-1 ¶¶ 16-
10 17. Mr. Spector's team identified categories of data that would be useful to this case
11 and then identified which of those data categories TikTok is capable of preserving.
12 *Id.* ¶¶ 18-19. Once that work on the front end was achieved, Mr. Spector's team
13 was able to implement a solution for copying those data categories from the Hive
14 tables and isolating them in a way that prevents them from being accessed or
15 processed. *Id.* ¶ 19.
16      In their brief, Plaintiffs contend that Mr. Spector's knowledge is based on
17 "conversations with attorneys" and other people that Mr. Spector spoke to in
18 preparing his declaration. Resp. 8-10. That is a blatant mischaracterization of Mr.
19 Spector's testimony. As Mr. Spector made clear at his deposition, he was testifying
20 from his personal knowledge for the vast majority of the topics covered in his
21 declaration. *See, e.g.*, Petrocelli Decl., Ex. B at 50:23-59:6, 18:17-20:8, 48:2-49:16.
22 He spoke only to two specific TikTok employees, ▮▮▮▮▮ and ▮▮▮▮▮
23 ▮▮▮, and did so for limited purposes. Petrocelli Decl., Ex. B at 14:3-15:10.
24 Specifically, ▮▮▮▮▮ team is responsible for identifying users who are under 13
25 years old on the 13+ Experience and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
26 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Cf.* Petrocelli Decl., Ex. B at 14:17-
27 15:10 (▮▮▮▮), 64:1-11 (▮▮▮▮). Plaintiffs' assertion that Mr. Spector's
28 knowledge "to support th[e] critical testimony in his declaration … was provided to

him through 'conversations with attorneys'" is also wrong. Resp. 9. Mr. Spector testified only that information about a potential preservation tool that Defendants investigated and determined was not viable was made known to him through conversations with attorneys and other TikTok employees. Petrocelli Decl., Ex. B at 45:10-24.

Mr. Zhao is likewise knowledgeable about Defendants' preservation efforts in this case. Mr. Zhao's role at the company is to improve the quality of DYD, including by adding new features for user download to give the feature "better user value." Petrocelli Decl., Ex. C at 6:10-18. Mr. Zhao used his position and experience to "modify[] the DYD implementation and integrat[e] it with other systems so that it can be used to preserve data related to this litigation." ECF No. 41-2 ¶ 6. Mr. Zhao's solution will be able to preserve "everything that's currently captured in the DYD feature," including, for example, followers, following hashtags, a like list, login history, among other data points discussed in Mr. Zhao's declaration. Petrocelli Decl., Ex. C at 37:13-39:4, 9:24-13:15; ECF No. 41-2 ¶ 7. These various data types are pulled from "various data sources." Petrocelli Decl., Ex. C at 37:13-38:25, 9:24-18:14. Mr. Zhao is also responsible for preserving videos with a different preservation system. *Id.* at 37:13-38:25.

Plaintiffs' attempt to distort the deposition testimony of Mr. Spector and Mr. Zhao should be rejected, and the Court should not permit Plaintiffs to seek another deposition on preservation.

## III. CONCLUSION

For the reasons above, Defendants respectfully request that the Court modify its April 28, 2025 order to find that Defendants' proposal for preserving Underage User Data is reasonable and proportional to the needs of this case.

| | |
|---|---|
| Dated: May 28, 2025 | Respectfully submitted, |
| | By: */s/ Daniel M. Petrocelli* |
| |     Daniel M. Petrocelli |
| | DANIEL M. PETROCELLI |
| | dpetrocelli@omm.com |
| | O'MELVENY & MYERS LLP |
| | 1999 Avenue of the Stars |
| | Los Angeles, California 90067-6035 |
| | Telephone:  +1 310 553 6700 |
| | Facsimile:   +1 310 246 6779 |
| | |
| | STEPHEN D. BRODY |
| | sbrody@omm.com |
| | O'MELVENY & MYERS LLP |
| | 1625 Eye Street, NW |
| | Washington, D.C. 20006-4001 |
| | Telephone:  +1 202 383 5300 |
| | Facsimile:   +1 202 383 5414 |
| | |
| | MATTHEW D. POWERS |
| | mpowers@omm.com |
| | O'MELVENY & MYERS LLP |
| | Two Embarcadero Center, 28th Floor |
| | San Francisco, California 94111-3832 |
| | Telephone: +1 415 984-8700 |
| | Facsimile: +1 415 984-8700 |
| | |
| | *Attorneys for Defendants ByteDance Ltd., ByteDance Inc., TikTok Ltd., TikTok Inc., TikTok LLC, TikTok Pte. Ltd., and TikTok U.S. Data Security Inc.* |

**CERTIFICATE OF SERVICE**

I certify that on May 28, 2025, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which automatically services all counsel of record for the parties who have appeared.

Dated: May 28, 2025                               */s/ Daniel M. Petrocelli*
                                                  Daniel M. Petrocelli