DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California 90067-6035
Telephone:  +1 310 553 6700
Facsimile:   +1 310 246 6779

STEPHEN D. BRODY (*pro hac vice*)
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone:  +1 202 383 5300
Facsimile:   +1 202 383 5414

MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
San Francisco, CA 94111
Telephone:  +1 415 984 8700
Facsimile:   +1 415 984 8701

*Attorneys for Defendants ByteDance Ltd.,*
*ByteDance Inc., TikTok Ltd., TikTok Inc.,*
*TikTok LLC, TikTok Pte. Ltd., and*
*TikTok U.S. Data Security Inc.*

[Additional Parties and Counsel on Signature Page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: TikTok, Inc. Minor Privacy Litigation | Case No. 2:25-ml-03144-GW-RAO<br><br>**JOINT STATEMENT REGARDING THE COURT'S PRESERVATION ORDER** |

1    Pursuant to the Court's May 29, 2025 order, ECF No. 62, the MDL Plaintiffs

2    and Defendants (collectively, "the parties") jointly submit this single document

3    regarding the Court's April 28, 2025 preservation order, ECF No. 11.

## I.    DATA PRESERVATION EFFORTS

5    **Defendants' Position:**  As set out below, Defendants are preserving an

6    enormous amount of user data that goes far beyond what will be discoverable or

7    probative in this case. To be clear, Defendants are not required to preserve every

8    piece of user data generated on the TikTok platform and could never actually do so.

9    *See Doe LS 340 v. Uber Techs., Inc.*, 710 F. Supp. 3d 794, 804 (N.D. Cal. 2024)

10   ("[L]itigants are not generally required to preserve all electronic records.").[1]

11   Rather, Defendants are required to preserve what is reasonable: matters that are

12   "relevant to the party's claim and proportional to the needs of the case."  *See Al*

13   *Otro Lado, Inc. v. Nielsen*, 328 F.R.D. 408, 416-18 (S.D. Cal. 2018).  Adhering to

14   this reasonableness standard is critical in cases involving vast amounts of data.

15   Parties are not required to preserve data when the "expenditure of resources

16   required to access [it] is itself unreasonable."  *United States ex rel. Carter*, 305

17   F.R.D. 225, 238 (S.D. Cal. 2015).  For example, courts have found parties do not

18   have to preserve information that would require "saving petabytes of data per day,

19   indefinitely, without a more compelling showing of need."  *Rodriguez v. Google*

20   *LLC*, 2021 WL 8085492, at *2 (N.D. Cal. 2021).

21   Defendants have satisfied those standards here.  Since the Court's recent

22   orders,[2] Defendants have taken extraordinary—much less reasonable and

---

[1] *See also* The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 15 Sedona Conf. J. 171, 199 (2014) ("Absent a specific showing of need, a requesting party is entitled only to database fields that contain relevant information, and give context to such information, and not to the entire database in which the information resides or the underlying database application or database engine.").

[2] Plaintiffs claim that Defendants had an obligation to begin preserving underage user data beginning in February 2019 (when the Federal Trade Commission brought suit against Defendants' predecessor entity, Musical.ly), and at the latest,

proportionate—steps to preserve data from users that Defendants have identified as under-13.  Like any company tasked with preserving large amounts of electronically stored information potentially relevant to a litigation, Defendants have worked to identify key categories of data related to user behavior on the TikTok platform and investigated the feasibility of preserving those categories for banned under-13 users.

Specifically, Defendants have been able to preserve, among other things, the following data categories for users that Defendants have identified as under-13:

| Data Category | Description |
| --- | --- |
| Account and Profile Information | Information related to a user's account, including:<br>– Username<br>– Email<br>– Phone number<br>– User-entered birthday<br>– Registration IP address<br>– Registration state<br>– Profile photos or videos<br>– Bio<br>– Linked third-party platform name<br>– Linked third-party account profile photo<br>– Linked third-party account name<br>– Linked third-party account description |
| Device and | Information about the device a user uses to access the |

August 2024 (when Plaintiffs' first lawsuit was filed).  This is wrong.  As explained in Defendants' *ex parte* application briefing, Defendants were required to delete data from under-13 users prior to the Court's April 28, 2025 order under the Children's Online Privacy Protection Act of 1998 ("COPPA") and the Stipulated Order for Civil Penalties, Permanent Injunction, and Other Relief entered in *United States v. Musical.ly*, No. 2:19-cv-01439-ODW-RAO (C.D. Cal. Mar. 27, 2019), ECF No. 10 ("2019 Stipulated Order").  ECF No. 24 at 2-4.  And as Defendants also explained at length, none of the past lawsuits that Plaintiffs identify—the *Musical.ly* action, DOJ's civil case, the social media addiction MDL, or the New Hampshire AG's case—imposed anything like the sweeping preservation obligations Plaintiffs now claim.  ECF No. 24 at 5.

JOINT STATEMENT REGARDING
PRESERVATION ORDER
NO. 2:25-ML-03144-GW-RAO

| Network Information | TikTok platform, including:<br>– IP address<br>– Device ID<br>– Device model<br>– Device operating system<br>– Network type<br>– Carrier<br>– Identifier for Advertisers or "IDFA" (a unique identifier assigned to each iOS device by Apple)<br>– Google Advertising ID or "GAID" (a unique identifier assigned to Android devices for advertising purposes) |
|---|---|
| App Settings | A user's selections for settings on the TikTok app, including:<br>– Content preferences (e.g., interests, languages)<br>– Push notification settings<br>– Whether the account is public or private<br>– Who can comment on the user's videos<br>– Who can view the user's liked videos<br>– Who can Duet with the user's videos<br>– Who can Stitch with the user<br>– Who can send the user direct messages<br>– List of who the user blocks<br>– Whether the user receives personalized ads<br>– Whether the user receives ads based on data received from TikTok partners<br>– Whether the user receives ads from third-party ad networks |
| Post Metadata | Information about a user's posts on the TikTok platform, including:<br>– Title of the post<br>– Who created the post<br>– Creation date of the post<br>– User-selected location of the post<br>– Text on the post<br>– Sound for the post<br>– Download link for videos posted |

3

| | |
|---|---|
| | – Performance of videos posted<br>– Internal business labels for video (e.g., the video's content category)<br>– Post settings (e.g., who can view, whether it allows comments) |
| User-generated Videos | Videos that a user posts on the TikTok platform |
| Direct messages | Direct messages a user sends or receives on the TikTok platform |
| Comments | Comments the user posts on the TikTok platform |
| User Activity Information | Information about the user's activity on the platform, including:<br>– Watch history, including which videos the user watched and when<br>– Login history<br>– Search history<br>– Purchase history<br>– Likes and favorites history<br>– List of followers<br>– Accounts followed<br>– TikTok Shop usage information (e.g., product browsing history, order history)<br>– TikTok LIVE usage information (e.g., duration of LIVE session, total views, total likes)<br>– Historical views on the For You page |
| Inferred Information | Information the TikTok platform's systems are able to infer about a user, including:<br>– Predicted age range<br>– Predicted gender |
| Advertising Information | Information related to the advertising that a user receives, including:<br>– Ads-related interactions, including information about ads that were shown to a user<br>– Ad interest categories |
| Kids Mode | Information collected from users on Kids Mode, including: |

| Information[3] | – Username |
| | – User-entered birthday |
| | – Kids Mode settings |
| | – Device information (e.g., operating system, device model) |

With these preservation efforts, there is no real difference between the parties' positions. The above list captures data from all of the categories that Plaintiffs identified in their response to Defendants' preservation proposal, ECF No. 51, to the extent that it exists,[4] save one exception[5]: Plaintiffs' request to preserve data from **all** users on the speculation that Defendants are failing to capture and ban all under-13 users on the 13+ Experience. *See id.* at 4. Recognizing the plain error of this position, the day before this filing Plaintiffs finally abandoned it. They now propose that Defendants save a 30-day snapshot of

---

[3] Defendants are preserving Kids Mode data at Plaintiffs' request. As Defendants explained in their reply in support of their preservation proposal, Defendants do not believe that Kids Mode data is relevant to this case because none of the named Plaintiffs—who purport to be representatives of the putative classes—ever created a Kids Mode account, and some of the named Plaintiffs specifically state that they did not use Kids Mode at all. ECF No. 56 at 4-5.

[4] There are two data categories Plaintiffs requested that do not exist. Plaintiffs requested data "related to revenue that TikTok earned from a user's account on a monthly, quarterly, and annual basis." ECF No. 51 at 6. Defendants are not currently aware of a table in their systems that tracks total revenue associated with individual users on a monthly, quarterly, or annual basis in the normal course of business. Plaintiffs also requested "location data," which, as Mr. Ethan Spector explained during his deposition, is not collected from U.S. users. ECF No. 56-1, Ex. B at 97:25-98:2 ("Q: So you are not capturing GPS data through your app? A: Not that I'm aware of, no.").

[5] In their preservation proposal, Defendants explained that they are not preserving *daily* usage metrics—i.e., data that shows how a user is spending their time on the platform on a particular day—because it is technologically infeasible for Defendants to do so through the Hive approach. *See* ECF No. 41 at 12-13. After further investigation, Defendants were able to preserve daily usage information through the DYD approach, including time-stamped watch history lists indicating the date and time the user watched each video, which can be used to identify how many videos a user watched on a given day and when, as well as login history indicating the date and time a user logged in to the platform, which can be used to identify when a user started using the platform on a given day. So data about what each user did on a particular day is already being preserved (on top of a variety of other user activity information).

JOINT STATEMENT REGARDING
PRESERVATION ORDER
NO. 2:25-ML-03144-GW-RAO

all account level data and metadata for all current TikTok users in the United States.
*See infra* at 13-14.  Given this new position, Defendants will investigate its
viability.

In their section below, Plaintiffs attempt to manufacture additional
preservation issues where there are none.  For weeks, Defendants have asked
Plaintiffs to identify any categories of data that they believe Defendants are not
preserving—including during calls on June 5 and June 12 and in follow-up emails
on June 17 and 18.  Instead of promptly responding and allowing the parties to meet
and confer, Plaintiffs waited until just two days before the deadline for this
submission to respond, and when they did, they introduced six data categories they
claimed Defendants were not preserving.  And the very next day, they more than
doubled their list.  Given Plaintiffs' timing, Defendants have not had time to fully
investigate all fourteen categories, but have confirmed to Plaintiffs that most of
those categories are already being preserved, *see infra* at 12 n.10,[6] and as reflected
below, are confirming whether Defendants can preserve the other categories, to the
extent they collect them:

| Plaintiffs' Request | Defendants' Response |
| --- | --- |
| Account display names for deleted accounts | Defendants will preserve account display names for banned under-13 accounts. |
| Social data (e.g., accounts that a user followed or liked, likes / reactions to specific content, and comments on content made by a user or received on content posted by a user) | As stated above, *supra* at 4, Defendants are preserving accounts a user follows, a user's likes, and a user's comments, and comments on a user's posts. |

---

[6] In note 10, Plaintiffs refer to the fact that Defendants are preserving "all data
included in users' DYD files."  Defendants clarify that user accounts do not have
"DYD files."  Instead, the DYD feature allows users to request data associated with
their account, and that data is pulled once it is requested.  Defendants are preserving
all data that might be available to a user when they request their data through the
platform's DYD feature.

| Biometric information for deleted accounts (including faceprints and voiceprints) | Defendants do not believe that they collect biometric information (including faceprints or voiceprints). Since Plaintiffs did not raise this category until late at night on June 18, Defendants have not yet confirmed that understanding but will do so. |
|---|---|
| Data indicating whether a user clicked on an ad and/or purchased an advertised item after view an ad (for cost per click or cost per conversion ads) | Since Plaintiffs did not raise this category until June 19, Defendants are still confirming that this is included in the advertising data that Defendants are already preserving. |
| Ad Targeting Profiles | Since Plaintiffs did not raise this category until June 19, Defendants are still confirming that this is included in the advertising data that Defendants are already preserving. |
| User data related to other e-commerce sites (e.g., clicks on links to affiliates and any data they have regarding conversions on e-commerce sites) | Since Plaintiffs did not raise this category until June 19, Defendants are still confirming that this is included in the data that Defendants are already preserving. |
| Revenue that TikTok earned from a user's account | As explained, *supra* at 5 n.4, Defendants are not currently aware of a table in their systems that tracks total revenue associated with individual users on a monthly, quarterly, or annual basis in the normal course of business. |

Failing to find any real issues with Defendants' preservation efforts, Plaintiffs claim that they cannot "fully assess the adequacy of Defendants' preservation plan" without further discovery from Defendants. That demand should be rejected. Defendants have already explained the categories of data that they collect, Plaintiffs already had a chance to depose two different witnesses on that topic, and Defendants have repeatedly confirmed that they are preserving the data categories that Plaintiffs have requested (to the extent Defendants collect it) and more. Plaintiffs are effectively asking for merits discovery into the kinds of information that Defendants collect. But the Court stayed discovery in this case,

ECF No. 11 at 2, and the parties stipulated that stay would remain in place, ECF
No. 74 at 2.

So-called "discovery on discovery"—i.e., "discovery of another party's
evidence of preservation and collection efforts"—is generally "disfavored." *Taylor
v. Google LLC*, 2024 WL 4947270, at *2 (N.D. Cal. Dec. 3, 2024).  To justify it,
"the party seeking [such] discovery must provide an adequate factual basis" that
relevant evidence is not being preserved, and "the Court must closely scrutinize the
request in light of the danger of extending the already costly and time-consuming
discovery process ad infinitum." *Perez v. DirectTV Grp. Holdings, LLC*, 2020 WL
5875026 (C.D. Cal. Aug. 17, 2020) (quotations omitted); *see Gage v. Midwestern
Univ.*, 2025 WL 1284131, at *5 (D. Ariz. May 2, 2025) ("[T]he moving party bears
the burden of producing specific and tangible evidence of a material failure of an
opponent's obligation[s]." (quotations omitted)).  Defendants have demonstrated
that they are preserving copious amounts of potentially relevant evidence.
Plaintiffs have not demonstrated otherwise. *See, e.g., Taylor*, 2024 WL 4947270, at
*2-3 (refusing to allow discovery into whether Google preserved chat messages
because Plaintiffs failed to meet their "burden to show that there is some factual
basis to conclude that relevant evidence was not preserved"); *Jensen v. BMW of N.
Am.*, LLC, 328 F.R.D. 557, 566 (S.D. Cal. 2019) (refusing to permit discovery on
preservation issues because "Plaintiff provide[d] no particularized reason
whatsoever for why such discovery should be ordered").

In short, the Court should not permit Plaintiffs to transform this preservation
process into merits discovery, especially when they have not even filed their
consolidated master complaint and demonstrated that they can survive Defendants'
motion to dismiss it.  Plaintiffs do not need to "assess whether and to what extent
the appropriate categories of data are being preserved" at this stage. *Infra* at 11.
Defendants are not asking Plaintiffs to certify that all appropriate data is being
preserved.  Rather, given that Defendants are "preserv[ing] data" pursuant to the

JOINT STATEMENT REGARDING
PRESERVATION ORDER
NO. 2:25-ML-03144-GW-RAO

Court's order, ECF No. 11 at 2, preservation issues should proceed as they would in any other case: Defendants will continue to comply with their obligations to take reasonable and proportionate steps to preserve data pursuant to the Court's order, and Plaintiffs can reserve their right (as they state in their section) to later claim that Defendants should have preserved more.[7]

**MDL Plaintiffs' Position:** Normally, when a case commences, Defendants confirm that they are preserving relevant documents. That is not what has happened here – to the contrary, when reminded of their obligation to preserve relevant documents, Defendants informed the Court that they had been and wanted to continue deleting relevant documents. That is the somewhat unique position Plaintiffs find themselves in now. Plaintiffs appreciate Defendants' efforts to improve their preservation plan. But contrary to Defendants' assertion that "there is no real difference between the parties' positions," *supra* at 5, there remain significant deficiencies that should be addressed.

"A party must preserve evidence it knows or should know is relevant to a claim or defense of any party, or that may lead to the discovery of relevant evidence." *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1051 (S.D. Cal. 2015) (citing *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002)). The obligation to preserve evidence arises from the moment that litigation is reasonably anticipated. *See Sanders v. Los Angeles Cnty.*, 2019 WL 12831725 at *2 (C.D. Cal. Aug. 1, 2019). Rule 37(e) requires a party under a duty to preserve electronically stored information ("ESI") to take reasonable steps to preserve it. *See* Fed. R. Civ. P. 37(e). This duty extends to the suspension of document destruction policies, where appropriate, and the preservation of all documents relevant to the litigation. *See Apple Inc. v. Samsung*

---

[7] Plaintiffs also have preservation obligations, including using the "Download Your Data" tool to preserve data from the named Plaintiffs' accounts and taking appropriate steps to preserve the devices that their clients used to access the TikTok platform.

JOINT STATEMENT REGARDING
PRESERVATION ORDER
NO. 2:25-ML-03144-GW-RAO

*Elecs. Co., Ltd.*, 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012).

A party seeking to destroy relevant evidence is "required to show good cause before destruction is permitted." Manual for Complex Litig., Fourth, § 11.442. "Whether preservation or discovery conduct is acceptable in a case depends on what is *reasonable*, and that in turn depends on whether what was done—or not done—was *proportional* to that case and consistent with clearly established applicable standards." *Starline Windows Inc. v. Quanex Bldg. Prods. Corp.*, 2016 WL 4485568, at *9 (S.D. Cal. Aug. 19, 2016) (citation omitted). The Court should consider a party's sophistication and resources in determining whether the party took reasonable steps to preserve ESI. *See* Fed. R. Civ. P. 37(a) Advisory Committee Note to 2015 Amendment.

As an initial matter, Defendants incorrectly assert that their preservation obligation did not arise until the Court's order on April 28, 2025. *See supra* at 1 n.2. As acknowledged by Defendants below, *see infra* Section II, Defendants have been the target of numerous litigations since at least February 2019, when the Federal Trade Commission brought an enforcement action against ByteDance involving allegations that are strikingly similar to those in this litigation.[8] Even if that litigation were not enough, this MDL is only the most recent entry in a years-long set of lawsuits regarding Defendants' alleged violations of COPPA, each of which also suffice to demonstrate Defendants' actual knowledge of anticipated litigation over this same data.[9] Defendants were thus on notice of their preservation obligations since at least February 2019, and no later than August 2024.

---

[8] *Compare United States v. Musical.ly*, No. 2:19-cv-01439-ODW-RAO, Dkt. No. 1 ¶¶ 24–29, 31 (C.D. Cal. Feb. 27, 2019), *with Green v. ByteDance Ltd.*, No. 2:25-cv-03527, Dkt. No. 1 ¶¶ 59–81 (C.D. Cal. Apr. 21, 2025).

[9] *See, e.g.*, *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, No. 4:22-md-3047, Dkt. No. 136 ¶¶ 1009–1010 (N.D. Cal. Feb. 14, 2023); *United States v. ByteDance Ltd.*, No. 2:24-cv-06535, Dkt. No. 1 (C.D. Cal. Aug. 2, 2024); *New Hampshire v. TikTok Inc.*, No. 217-2024-CV-00399, Dkt. No. 1 ¶¶ 340–347 (N.H. Sup. Ct., June 25, 2024).

JOINT STATEMENT REGARDING
PRESERVATION ORDER
NO. 2:25-ML-03144-GW-RAO

As to the categories of data currently being preserved—which are only for
"users that Defendants have identified as under-13" and thus deleted—there are
foundational issues that can and should be resolved so that Plaintiffs and this Court
can fully assess the adequacy of Defendants' preservation plan. In short,
Defendants have still not identified all categories of data that they collect from
users or stores about users, nor have Defendants identified the specific tables or
fields they are preserving. This information is not "discovery on discovery," as
Defendants complain. *Supra* at 8. Instead, this information is required for Plaintiffs
to assess whether and to what extent the appropriate categories of data are being
preserved. The devil, of course, is in the details. The information should be
provided to the Court and Plaintiffs so that it is clear to all what is being preserved
and is not being preserved—and, as reflected herein, this exchange of information
is fruitful and has revealed categories of data preservation that are no longer in
dispute as well as significant categories of data preservation that remain unresolved.

At present, without this information, Plaintiffs are not in a position to know
what relevant data or information Defendants are not currently preserving. This is
easy for Defendants to fix: they merely have to say, specifically, what categories of
data they are not preserving. Plaintiffs reserve all rights to challenge the destruction
of any such data or information and to assert spoliation as necessary and
appropriate. Indeed, Defendants acknowledged these rights at the May 29 hearing,
stating that "in any case, a party has an obligation to preserve evidence," and "[i]f it
turns out . . . that the Court has ordered the discovery of certain information that we
did not preserve . . . we're acting at our own peril." Tr. at 19:22–23, 20:7–9.

Putting aside the information gap and the challenge this presents for
Plaintiffs, Plaintiffs have identified the following categories of data or information
that should be preserved in addition to the information identified in Defendants'

JOINT STATEMENT REGARDING
PRESERVATION ORDER
NO. 2:25-ML-03144-GW-RAO

proposed preservation plan:[10]

- Account display name
- Social data (*e.g.*, accounts that a user followed or liked, likes / reactions to specific content, and comments on content made by a user or received on content posted by a user)
- Biometric information (including faceprints and voiceprints)
- Data indicating whether a user clicked on an ad and/or purchased an advertised item after view an ad (for cost per click or cost per conversion ads)
- Ad Targeting Profiles
- User data related to other e-commerce sites (*e.g.*, clicks on links to affiliates and any data they have regarding conversions on e-commerce sites)
- Revenue earned from a user's account

Defendants make various complaints regarding the timing of the Parties' discussions, including Plaintiffs' identification of additional data categories. *See supra* at 6. Such ad hominem attacks are unhelpful. Plaintiffs are working in good faith to identify and understand the scope of preservation in this case and to reduce the issues before the Court. In this regard, Plaintiffs are working as quickly as they can, including consulting with experts as information is presented to Plaintiffs. Likewise, as reflected herein, Plaintiffs are adjusting their requests as they receive information from Defendants and are endeavoring to communicate with Defendants so as to narrow the issues before the Court as much as possible.

---

[10] In response to Plaintiffs' initial requests, Defendants confirmed that the following categories were being collected: direct messages (sent or received by a user); data collected from Kids Mode users; data related to advertisements shown to a user's account; and data related to visits to the TikTok Shop. Defendants also clarified that they are preserving data for all deleted accounts, not just a subset of them, and that they are preserving all data included in users' DYD files. Plaintiffs appreciate receiving these points of confirmation and clarification from Defendants and have accordingly removed these items from their requests.

JOINT STATEMENT REGARDING
PRESERVATION ORDER
NO. 2:25-ML-03144-GW-RAO

Further, as raised in prior briefing, *see* ECF 51 at 7, Defendants also are required to preserve data or information collected from *regular* accounts, including but not limited to: first and last name, age, email address, phone number, persistent identifiers for the device(s) used to access TikTok, social media account information, display names, usernames, bios, and profile image(s), as well as photographs, videos, and audio files containing the user's image and voice and the metadata associated with such media, usage information, device information, location data, image and audio information, metadata, and data from cookies and similar technologies that track users across the internet.

This information from regular accounts is critical and highly relevant because it enables the identification of users on the regular platform who are, *in fact*, under the age of 13 and yet still permitted by Defendants to remain on the platform. This information lies at the heart of this litigation, creating a compelling need for its preservation. Yet Defendants' preservation plan does not address this category at all; instead, Defendants protest that Plaintiffs are effectively requesting the preservation of *all* data created on the platform, which they cannot do. *See supra* at 5–6. This exaggerates what Plaintiffs are seeking and ignores that the failure to preserve this information would create a significant spoliation issue that can and should be addressed now.

At the May 29 hearing, the Court suggested one possible approach for the information from regular accounts (that have neither been identified as potentially under-13 accounts by TikTok nor have signed up as Kids Mode accounts): a snapshot in time of the full platform, wherein Defendants would preserve all data for a "representative period" and then again preserve data for another representative period "sometime in the litigation future." Tr. at 11:17–12:3. Plaintiffs agree with this approach. Specifically, on account of the large number of putative class members that TikTok is currently unable to identify, TikTok should preserve a limited snapshot of all account level data and metadata for all current TikTok users

13

in the United States for a 30 day period.  For purposes of illustration, this snapshot would include, but would not be limited to, the data categories described above by TikTok.

Plaintiffs propose that the Parties meet and confer regarding the specific parameters of the snapshot, with the goal of appropriately balancing the obvious need for this discovery with any reasonable concerns regarding the burden of producing such a snapshot. For instance, Plaintiffs are willing to meet and confer regarding potential alternatives to including user-generated videos in the snapshot, so as to limit the burden associated with the preservation of such materials. To facilitate these meet and confer discussions, Plaintiffs request that the Court order TikTok to provide a list of all data and metadata fields associated with user accounts and content as a starting point for these discussions. Since this snapshot would likely be largely limited to capturing text fields, Plaintiffs believe that the burden associated with such preservation is limited, reasonable, and proportionate to the needs of the litigation.

In contrast to Defendants' assertion that Plaintiffs have "[r]ecogniz[ed] the plain error" of requesting the preservation of data from all users and have thus "abandoned" that request in favor of the snapshot approach, Plaintiffs do not make any concession as to Defendants' preservation obligations with respect to the data and metadata of the likely millions of underage putative class members that Defendants have not identified and are wrongfully treating as adults. *Cf. supra* at 5. Instead, Plaintiffs are indicating that they are agreeable to considering an approach suggested by the Court that would address any reasonable concerns regarding the burden of preservation on Defendants. Plaintiffs encourage Defendants to engage in good faith negotiations with Plaintiffs on this issue, instead of distracting from the effort with baseless attacks and distortion of Plaintiffs' positions.

JOINT STATEMENT REGARDING
PRESERVATION ORDER
NO. 2:25-ML-03144-GW-RAO

## II.    PRESERVATION ORDERS FROM OTHER CASES

**Defendants' Position.**  During the Court's May 29, 2025 hearing, the Court requested information about preservation and destruction orders from other related cases, including *United States v. Musical.ly*, No. 2:19-cv-01439-ODW-RAO (C.D. Cal.), *United States v. ByteDance Ltd.*, No. 2:24-cv-06535-GW-RAO (C.D. Cal.), *In re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*, No. 22-md-03047-YGR (N.D. Cal.), and any actions brought by State Attorneys General.[11]  Defendants have reviewed the orders in these cases and briefly summarize their findings here.  Plaintiffs claim that Defendants are required to "fully explain[], with detail, what they are doing to preserve data in these other litigations." *Infra* at 21.  That request is far outside the scope of Defendants' preservation obligations here and the Court's order to provide preservation orders in other cases, if any.  As set forth below, and in Defendants' reply to their *ex parte* application briefing, ECF No. 24 at 5, these cases involve different facts, different claims, and an entirely different scope—the data preservation at issue in this case far exceeds the preservation efforts in any of the cases discussed.

*United States v. Musical.ly.*  The 2019 Stipulated Order resolving the *Musical.ly* litigation required preservation and destruction of certain information related to under-13 users, albeit as a result of settlement negotiations, not common-law preservation obligations.  The Order enjoins Defendants from violating COPPA,[12] which encompasses an obligation to delete personal information it obtains from a known under-13 user.[13]  The Order further required that Defendants comply with a one-time obligation to "[d]estroy all personal information" from

---

[11] *See* Declaration of Daniel M. Petrocelli ("Petrocelli Decl."), Ex. A, Reporter's Tr. of Status Conf. re MDL Motion for 3144 (May 29, 2025) ("Tr.") at 24:12-25:8.

[12] *See* 2019 Stipulated Order at 8.

[13] *See* 16 C.F.R. § 312.10; FTC, Complying With COPPA: Frequently Asked Questions (July 2020), https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions.

JOINT STATEMENT REGARDING
PRESERVATION ORDER
NO. 2:25-ML-03144-GW-RAO

accounts belonging to users who were under 13 at the time of the Order's entry or at the time Defendants collected their personal information.[14]  For users whose age could not be identified within 45 days of the Order, the Court required Defendants to remove those users' personal information from the platform, refrain from disclosing or using that information, and destroy that information within 12 months after the entry of the Order.[15]  Any preservation order entered in this case should make clear that Defendants do not violate COPPA or the Order by preserving under-13 data for this litigation.[16]

The Order also requires that Defendants create and retain (i) "records necessary to demonstrate full compliance with each provision of [the] Order, including all submissions to [the FTC]"; (ii) "copies of all consumer complaints relating to Defendants' information practices, including its collection, use, maintenance, or disclosure of personal information, and any response"; and (iii) "[a] copy of each materially different form, page, or screen created, maintained, or otherwise provided by Defendants through which personal information is collected from a child, and a copy of each materially different document containing any representation regarding collection, use, maintenance or disclosure practices pertaining to personal information from children."[17] Defendants are preserving records in accordance with these obligations.

_United States v. ByteDance Ltd._  No preservation or destruction orders have been issued in this case.  The government has known about Defendants' efforts to identify and remove under-13 users from the TikTok platform for years and has

---

[14] 2019 Stipulated Order at 8-9.

[15] 2019 Stipulated Order at 8.

[16] Plaintiffs do not disagree with this characterization of the 2019 Stipulated Order—indeed, the parties agree that any preservation order should clarify that Defendants do not violate COPPA by preserving data for this litigation.  _Infra_ at 20-21.

[17] 2019 Stipulated Order at 14.

JOINT STATEMENT REGARDING
PRESERVATION ORDER
NO. 2:25-ML-03144-GW-RAO

never suggested that Defendants should stop deleting the data from under-13 users that it identifies.

Social Media Addiction MDL.  The parties and the court abandoned the idea of entering a comprehensive preservation order in the social media addiction MDL. At the outset of the MDL, the court issued an order that "reminded [parties] of their duty to preserve evidence that may be relevant to [the] action, including electronically stored information."[18]  After negotiating a potential preservation order for over a year, the parties ultimately determined that they were too far apart on numerous issues and suspended any further discussions about a comprehensive preservation order.[19]  Instead, the parties agreed to seek targeted preservation orders or agreements on particular topics, such as the identification of user accounts associated with each plaintiff and issues related to the preservation of child sexual abuse material ("CSAM").[20]  The court did not issue its own comprehensive preservation order after being informed of the parties' impasse.[21]

In any event, approaches to data preservation in the social media addiction MDL are largely uninformative here.  The vast majority of the allegations in that

[18] Order Setting Initial Conf., *In re: Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, No. 4:22-md-03047-YGR (N.D. Cal. Oct. 11, 2022), ECF No. 2 at 6.

[19] Joint Status Rpt. Regarding Preservation Order, *In re: Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, No. 4:22-md-03047-YGR (N.D. Cal. Dec. 11, 2023), ECF No. 470 ("Preservation Status Rpt.") at 2.

[20] Preservation Status Rpt. at 2; *see also* Order Governing Preservation of CSAM, *In re: Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, No. 4:22-md-03047-YGR (N.D. Cal. Dec. 12, 2023), ECF No. 475 (detailing instructions for preserving information related to CSAM); User Account Information Order, *In re: Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, No. 4:22-md-03047-YGR (N.D. Cal. Jan. 29, 2024), ECF No. 616 (setting procedure for identifying plaintiffs' user accounts for preservation).

[21] *See* Discovery Mgmt. Order No. 1,  *In re: Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, No. 4:22-md-03047-YGR (N.D. Cal. Dec. 11, 2023), ECF No. 503 at 2.

JOINT STATEMENT REGARDING
PRESERVATION ORDER
NO. 2:25-ML-03144-GW-RAO

litigation have nothing to do with COPPA.[22]  Just two of twenty total causes of action are premised on alleged COPPA violations.[23]  In complaints over 1,000 paragraphs long, the plaintiffs devote just 10 paragraphs (or fewer) specifically to Defendants' age gate,[24] and no more than a few paragraphs to Defendants' supposed knowledge of users under age 13.[25]  And the limited sets of user data that Defendants have been preserving in that MDL (1) applied only to ~4,800 accounts, (2) regarded only specific types of data, not all user data, and (3) with perhaps only a handful of exceptions, applied to accounts from users over 13 whose data were not subject to COPPA's requirements for mandatory deletion and preservation of further access or use.  ECF No. 24-1 ¶¶ 6-7.

State Attorney General Actions.  At the May 29, 2025 hearing, Plaintiffs' counsel stated that Defendants have "preservation obligations stemming from other cases that are related, including other State Attorney General actions involving COPPA,"[26] and specifically mentioned a State Attorney General action in New Jersey.[27]  As Defendants explained at the hearing,[28] and as detailed below, that was incorrect.  The State Attorney General actions focus on different issues and are not related to these actions.  And there are no preservation orders entered in any of these actions, which are still in their early stages.

---

[22] *See* Pls.' Second Am. Master Compl. (Personal Injury), *In re: Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, No. 4:22-md-03047-YGR (N.D. Cal. Dec. 15, 2023), ECF No. 494 ("MDL Master PI Compl."); Pls.' First Am. Master Compl. (Local Gov't & Sch. Dist.), *In re: Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, No. 4:22-md-03047-YGR (N.D. Cal. Mar. 27, 2024), ECF No. 729 ("MDL Master LG/SD Compl.").

[23] MDL Master PI Compl. ¶¶ 962.d, 1010.

[24] MDL Master PI Compl. ¶¶ 567-76; MDL Master LG/SD Compl. ¶¶ 712-19.

[25] MDL Master PI Compl. ¶ 555; MDL Master LG/SD Compl. ¶¶ 684, 706-07, 716.

[26] Tr. 12:5-9, 25:12-14 (Mr. Mura).

[27] Tr. 24:22-24 (Mr. Cecchi).

[28] Tr. 25:17-19 (Mr. Petrocelli).

JOINT STATEMENT REGARDING
PRESERVATION ORDER
NO. 2:25-ML-03144-GW-RAO

Over two dozen State Attorneys General have filed civil enforcement actions against Defendants and, in some cases, related entities.  These enforcement actions center on allegations that the defendants violated state consumer-protection laws by (i) unfairly or unconscionably designing the TikTok Platform in a way that addicts and harms youth, and by (ii) misrepresenting or omitting information about the Platform's features and alleged risks.  The actions are similar but not identical.  Some cases include additional claims alongside consumer-protection claims—such as product-liability claims—and additional theories alongside the "addiction theory," such as claims about the platform's alleged relationship with the Chinese government and claims about alleged "money transmission" activities.

The vast majority of the State Attorney General enforcement actions mention COPPA only in passing, if at all.  For example, the Complaint filed by the State of Washington's Attorney General references COPPA in just three of its 356 paragraphs, with each instance merely describing *other* actions involving COPPA, such as the *Musical.ly* action.[29]  Other complaints make reference to minor privacy or concepts related to COPPA, but do not mention COPPA, much less bring claims based on COPPA.  For example, although Plaintiffs' counsel specifically referenced the New Jersey action during the May 29, 2025 hearing,[30] the closest that complaint comes to discussing COPPA is a passing reference to the *Musical.ly* action.[31]  Other cases, such as Arkansas, Iowa, Kansas, Louisiana, Montana, and Oregon, contain no reference to COPPA at all.

Only four cases—those brought by the New York, New Hampshire, California, and Alabama Attorneys General—have pleaded claims predicated on alleged COPPA violations.  And those claims are not viable.  In New York, the Attorney General's COPPA claims were recently dismissed under COPPA's

---

[29] Petrocelli Decl., Ex. B, Wash. Compl. ¶¶ 31, 33, 332.

[30] Tr. 24:22-24 (Mr. Mura).

[31] Petrocelli Decl., Ex. C, N.J. Am. Compl. ¶ 32.

express preemption provision (15 U.S.C. § 6502(d)) because the claims violated

COPPA's comprehensive scheme governing state-law civil enforcement actions

predicated on alleged COPPA violations (*see id.* § 6504).[32]  In New Hampshire,

Defendant moved to dismiss the COPPA claim as preempted in December 2024.[33]

That motion remains under submission.  In California and Alabama, Defendants

have not yet filed their motions to dismiss, but anticipate moving to dismiss the

COPPA-based claims as preempted.

No preservation orders have been negotiated, ordered, or entered in any of

these State Attorney General actions.  However, Defendants are aware of, and

intend to comply with, preservation obligations in connection with these actions.

Additional Cases.  Defendants have identified one other lawsuit that provides

insight into the preservation issues in this case.  In *Griffith v. TikTok Inc.*, the

plaintiffs brought suit challenging the practice of websites using pixel software to

share information about their visitors with TikTok Inc. and ByteDance Inc. as it

relates to non-TikTok users.  2024 WL 4308813, at *1 (C.D. Cal. Sept. 9, 2024).

Like Plaintiffs' allegations here, the allegations in *Griffith* implicated vast amounts

of data—potentially from tens of millions of visitors to thousands of websites

across the internet, including Rite Aid, Hulu, and Etsy.  *Id.* at *2.  Nevertheless,

another court in this District concluded that preserving a one-day "sample" of a

subset of that user-data, not all data collected, was "relevant and proportional to the

needs of the case."[34]  The court later denied Plaintiffs' motion for sanctions for

---

[32] *See* Petrocelli Ex. D, Order on Motion to Dismiss, *New York v. TikTok Inc.*, Index No. 452749/2024 (N.Y. Sup. Ct. May 29, 2025), Doc. No. 128 at 1.

[33] *See* Petrocelli Ex. E, Motion to Dismiss, *New Hampshire v. TikTok Inc.*, Case No. 217-2024-CV-00399 (N.H. Super. Ct. Dec. 16, 2024), at 44-47.

[34] Minutes in Chambers, *Griffith v. TikTok, Inc.*, No. 5:23-cv-00964-SB-E (C.D. Cal. Nov. 27, 2023), ECF No. 78 at 1; *see also* Order Striking Mot. for Discovery Sanctions, *Griffith v. TikTok, Inc.*, No. 5:23-cv-00964-SB-E (C.D. Cal. Oct. 10, 2024), ECF No. 283 ("Sanctions Order") at 1-2 ("[A] one-day sample—not, as Plaintiffs now suggest, all data collected from non[-TikTok]-users—was 'relevant and proportional to the needs of the case.'").

deletion of other pixel data, noting that "the data preservation Plaintiffs sought would have cost millions of dollars," and therefore "the cost of preserving the data [was] vastly disproportionate to the value of their claims."[35]

**MDL Plaintiffs' Position.** While Plaintiffs do not take issue with the general description of the other cases against TikTok discussed herein, the conclusions Defendants draw from the description are dubious.

First, the 2019 Stipulated Order in *United States v. Musical.ly* also contains the following provision: "Personal information [associated with user accounts existing at the time of the order] need not be destroyed, and may be disclosed, to the extent requested by a government agency or as required by a law, regulation, or *court order*."[36] Therefore, any preservation order issued by this Court could also make clear that Defendants do not violate COPPA by preserving data for this litigation pursuant to a court order.

Second, Defendants acknowledge that at least four State Attorney General enforcement actions expressly alleged COPPA violations. *See supra* at 19–20. While Defendants believe that those claims are "not viable," that belief is not a basis to relieve Defendants of their preservation obligations. Moreover, Defendants acknowledge that other cases mention COPPA or related concepts, as well as issues about minor privacy. *See supra* at 18–19. Regardless of how frequently or in depth these issues were raised in those other cases, Defendants' duty to preserve data and information related to minors on their platform was still triggered.

Third, a significant portion of the Social Media Addiction MDL concerns the defendants' failures of age verification of their users, including but not limited to Defendants here. Those issues require overlapping discovery with this matter and further trigger Defendants' preservation duties.

---

[35] Sanctions Order at 4.

[36] 2019 Stipulated Order at 10 (emphasis added).

21

1    Finally, Defendants have not fully explained, with detail, what they are doing

2 to preserve data in these other litigations. Defendants should explain precisely what

3 they are doing to preserve data in those other litigations, as the data is likely

4 relevant to this matter as well, and their approach to satisfying their preservation

5 obligation in those cases obviously is relevant to these proceedings.

6                                    * * *

7    Pursuant to Local Rule 5-4.3.4(a)(2), by my signature below, I, Daniel M.

8 Petrocelli, attest that all other signatories concur in the filing's content and have

9 authorized the filing.

10

11 Dated:      June 20, 2025              Respectfully submitted,

12

13                                       By: */s/ Daniel M. Petrocelli*
                                             Daniel M. Petrocelli

14
                                         DANIEL M. PETROCELLI
15                                       dpetrocelli@omm.com
                                         O'MELVENY & MYERS LLP
16                                       1999 Avenue of the Stars
                                         Los Angeles, California 90067-6035
17                                       Telephone:  +1 310 553 6700
                                         Facsimile:   +1 310 246 6779

18                                       STEPHEN D. BRODY
19                                       sbrody@omm.com
                                         O'MELVENY & MYERS LLP
20                                       1625 Eye Street, NW
                                         Washington, D.C. 20006-4001
21                                       Telephone:  +1 202 383 5300
                                         Facsimile:   +1 202 383 5414

22                                       MATTHEW D. POWERS
23                                       mpowers@omm.com
                                         O'MELVENY & MYERS LLP
24                                       Two Embarcadero Center, 28th Floor
                                         San Francisco, California 94111-3832
25                                       Telephone: +1 415 984-8700
                                         Facsimile: +1 415 984-8700

26                                       *Attorneys for Defendants ByteDance Ltd.,*
27                                       *ByteDance Inc., TikTok Ltd., TikTok Inc.,*
                                         *TikTok LLC, TikTok Pte. Ltd., and TikTok*
28                                       *U.S. Data Security Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: /s/ Derek W. Loeser
        DEREK W. LOESER (*pro hac vice*)
        dloeser@kellerrohrback.com
        KELLER ROHRBACK L.L.P.
        1201 Third Avenue, Suite 3400
        Seattle, WA 98101
        (206) 623-1900, Fax (206) 623-3384

        *Interim Lead Counsel for Plaintiffs*

By: /s/ Eric A. Kafka
        ERIC A. KAFKA
        ekafka@cohenmilstein.com
        COHEN MILSTEIN SELLERS AND
        TOLL PLLC
        88 Pine Street, 14th Floor
        New York, NY 10005
        212-838-7797
        212-838-7745 (fax)

        *Interim Lead Counsel for Plaintiffs*

1

### CERTIFICATE OF SERVICE

2   I certify that on June 20, 2025, I electronically filed the foregoing with the

3   Clerk of Court using CM/ECF, which automatically services all counsel of record

4   for the parties who have appeared.

5

6   Dated: June 20, 2025                          */s/ Daniel M. Petrocelli*
                                                   Daniel M. Petrocelli

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STATEMENT REGARDING
PRESERVATION ORDER
NO. 2:25-ML-03144-GW-RAO