# EXHIBIT A

1            UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA - CENTRAL DIVISION

3          HONORABLE GEORGE H. WU, U.S. DISTRICT JUDGE

4

5   IN RE: TIKTOK, INC.,
    MINOR PRIVACY LITIGATION,

6
                                    Case No.
7                                   25-ML-3144-GW

8

9

10              REPORTER'S TRANSCRIPT OF
        STATUS CONFERENCE RE MDL Motion for 3144
11              Thursday, May 29, 2025
                     10:00 a.m.
12            LOS ANGELES, CALIFORNIA

13

14

15

16

17

18

19   _____

20        TERRI A. HOURIGAN, CSR NO. 3838, CCRR
             FEDERAL OFFICIAL COURT REPORTER
21         350 WEST FIRST STREET, ROOM 4311
             LOS ANGELES, CALIFORNIA  90012
22                  (213) 894-2849

23

24

25

```
 1                    APPEARANCES OF COUNSEL:

 2

 3   FOR PLAINTIFFS:  A.A., A.B., A.C., JODY VILLANUEVA,
     ANGELA FAUCETT, LAMARTINE PIERRE, JR.
 4
         COHEN MILSTEIN SELLERS and TOLL PLLC
 5       BY:  ERIC A. KAFKA
             Attorney at Law
 6       88 Pine Street, 14th Floor
         New York, New York  10005
 7
     FOR THE PLAINTIFF:  CHRISTINA MIDDLETON
 8
         WAGSTAFF and CARTMELL LLP
 9       BY:  TYLER W. HUDSON
             Attorney at Law
10       470 Grand Avenue, Suite 300
         Kansas City, Missouri  64112
11
     FOR THE PLAINTIFF:
12
         BRADLEY GROMBACHER LLP
13       BY:  KILEY LYNN GROMBACHER
             Attorney at Law
14       31365 Oak Creek Drive, Suite 240
         Westlake Village, California 91361
15
     FOR THE PLAINTIFF:  RYAN ARMBRUSTER
16
         LAW OFFICE OF FRANCIS J. FLYNN JR.
17       BY:  FRANCIS J. FLYNN, JR.
         Attorney at Law
18       6057 Metropolitan Plaza
         Los Angeles, California  90036
19
     FOR THE PLAINTIFF:  H.T., J.O.
20
         KOPELOWITZ OSTROW PA
21       BY:  KRISTEN L. CARDOSO
             Attorney at Law
22       One West Las Olas Boulevard, Suite 500
         Fort Lauderdale, Florida  33322
23

24

25
```

```
 1   APPEARANCES OF COUNSEL:

 2   FOR THE PLAINTIFF:  CHANTELL MARTIN, JACQUELYN WILLIAMS

 3        DUGAN LAW FIRM APLC
          BY:  JAMES R. DUGAN, II
 4             DAVID SCOTT SCALIA
               MONICA M. VELA-VICK
 5             Attorneys at Law
          One Canal Place
 6        365 Canal Street, Suite 1000
          New Orleans, Louisiana  70130
 7

 8   FOR THE PLAINTIFF:  SCOTT HUMBERT

 9        AYLSTOCK WOITKIN KREIS and OVERHOLTZ
          BY:  BRYAN F. AYLSTOCK
10             Attorney at Law
          17 East Main Street, Suite 200
11        Pensacola, Florida  32502

12
     FOR THE PLAINTIFF:  J.R.
13
          CARELLA BRYNE BAIN GILFILLAN
14        BY:  JAMES E. CECCHI
               Attorney at Law
15        5 Becker Farm Road
          Roseland, New Jersey  07068
16

17   FOR THE PLAINTIFF:  A.C.

18        SILVER GOLUB and TIETELL LLP
          BY:  STEVEN L. BLOCH
19             Attorney at Law
          One Landmark Square 15th Floor
20        Stamford, Connecticut

21

22

23

24

25
```

```
 1   APPEARANCES OF COUNSEL

 2   FOR THE PLAINTIFF:

 3       KELLER ROHRBACK LLP
         BY:  DEREK LOESER
 4           Attorney at Law
         1201 Third Avenue, Suite 3400
 5       Seattle, Washington  98101

 6
     FOR THE PLAINTIFF:
 7
         GIBBS MURA LLP
 8       BY:  ANDRE MURA
             Attorney at Law
 9       1111 Broadway, Suite 2100
         Oakland, California  94607
10
     FOR THE PLAINTIFF:   KATHLEEN LANSER
11
         SEEGER WEISS LLP
12       BY:  CHRISTOPHER A. SEEGER
             DAVID R. BUCHANAN
13           Attorneys at Law
         55 Challenger Road, 6th Floor
14       Ridgefield Park, New Jersey  07660

15
     FOR THE DEFENDANT:
16
         O'MELVENY and MYERS LLP
17       BY:  DANIEL M. PETROCELLI
             MATTHEW DAVID POWERS
18           Attorneys at Law
         Two Embarcadero Center
19       San Francisco, California  94111

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

1              **LOS ANGELES, CALIFORNIA, THURSDAY, MAY 29, 2025**

2                              **10:00 A.M.**

3                                **\* \* \***

4

5

6              THE COURTROOM DEPUTY:  Please remain seated and come

7    to order.  This United States District Court is again in

8    session.

9              THE COURT:  All right.  Let me call the matter of --

10   well, since -- let me actually call the matter of *United States*

11   *versus ByteDance*, just because there are fewer counsel that

12   might be here.

13         Is there counsel?

14         On the telephone, we have on that matter?

15             MR. SMITH:  Marcus Smith.  On the phone is Marcus

16   Smith, U.S. Department of Justice, Consumer Protection Branch

17   on behalf of the government.

18             THE COURT:  Anybody else?

19             THE COURTROOM DEPUTY:  No, sir.

20             THE COURT:  For the defense on that one?

21             MR. PETROCELLI:  Daniel Petrocelli and Matt Powers.

22             THE COURT:  Thank you.  And then in the *In Re:*

23   *Tiktok, Inc., Minor Privacy Litigation*.

24         How should we do this?  Let me just

25   ask --

```
 1            THE COURTROOM DEPUTY:  I took all of the defense
 2   counsels' appearances.
 3            THE COURT:  I won't make you stand up and do it
 4   formally.
 5        Let me ask, when you do speak for the first time, say
 6   who you are, so my reporter can figure out who is talking.
 7        We are here on -- two primary matters:  The first one is
 8   selection of lead counsel, and also then the second issue is
 9   this issue in regards to preservation of material.
10            MR. PETROCELLI:  Your Honor, I have a two o'clock
11   flight, and I'm wondering if the Court plans to go past noon.
12        By any chance, I would ask we do the preservation issue
13   first, and Mr. Powers can remain here, dealing with the other
14   issue, but that's only if you think we're going to go past
15   noon, otherwise, I will be okay.
16            THE COURT:  I can't say one way or the other, to be
17   frank, but let's do the preservation first, because it might be
18   just faster anyway in terms of time-wise.
19        Let me indicate this, I think I sort of generally
20   understand the position of the parties, although, actually one
21   other thing, if I don't choose the counsel, I don't know who is
22   going to speak for the plaintiffs.
23        But I think all of the plaintiffs are united in terms of
24   their position, so hopefully we will see what happens.
25            One of the things that strikes me is this is one of
```

those situations, because I'm really not that familiar with the
technology that is involved, and so when people say, you know,
can or cannot do this, I don't know whether or not it's
necessarily true or not true.

I'm willing to do one thing that I have done which is I
usually wind up doing in patent cases, and I'm going to ask for
tutorial on the technology in the very near future, so I can
sort of understand what we're talking about in terms of how
TikTok operates.

And so I want you guys to talk about how that is going
to be done, who each side is going to call to present that, and
again, it's not -- I will indicate at this point in time the
purposes are not evidentiary, the purposes are instruction for
me.

I will probably make an order that what is said in that
presentation is not going to be binding, unless I find that it
was deliberately false, then I would do something, but if it's
-- just, I expect this to be primarily educational.  I don't
expect this to be determinative of any particular issue.

So I do want that in the immediate future when you can
do it, a tutorial on how this stuff operates, especially, like,
about kid mode and stuff of that sort, I want that stuff.

Also, that will reflect in large part how I treat the
preservation issues, because frankly, I don't know why certain
things -- it seems to me that possibly they could be done, but

```
 1   maybe that is because I'm not familiar enough with the

 2   technology, so that is one of the things I will require.

 3          I would like that to be done within -- well, let me ask

 4   the parties, do you think something like that could be arranged

 5   within two weeks?

 6          MR. LOESER:  Derek Loeser, I think so.

 7          THE COURT:  Please use any microphone, that will do.

 8          MR. LOESER:  I have never thought myself as tall.

 9   The microphone is --

10          THE COURT:  You are still not tall.

11          MR. LOESER:  I think it's imperative to do it

12   quickly.

13          The relief the defendants are seeking is pretty

14   extraordinary, so I think two weeks, yes.

15          THE COURT:  Okay.  Let me ask counsel.

16          MR. PETROCELLI:  I don't think that is feasible,

17   Your Honor.

18          THE COURT:  Why not?

19          MR. PETROCELLI:  Because of the complexity.  It's

20   going to take a while just to figure out who's going to be able

21   to do that, whether it's one person, it's multiple people.  I

22   think Your Honor may have gotten an understanding of that

23   perhaps from the submissions.

24          But we could do it in a month, let's say, but I don't

25   believe there is any prejudice, because we're complying with
```

```
1    our preservation obligations pursuant to the Court's orders.

2              THE COURT:  In other words, but the plaintiffs are

3    making the assertions that -- well, I think -- I want to say

4    they don't know whether or not you are, because of the fact

5    that --

6              MR. PETROCELLI:  That is true in any case, I'm

7    prepared to go through --

8              THE COURT:  But the question is usually sometimes

9    what happens is this:  Usually there are situations where it is

10   -- you can say whether or not stuff was properly preserved or

11   was not properly preserved, but with this type of technology, I

12   don't know how one can say that the stuff, if it was preserved

13   or was not preserved, should have been preserved, how it was

14   preserved, and things of that sort, it's kind of, like, up

15   there in the ether.

16             MR. PETROCELLI:  To your specific question, Your

17   Honor, and I would like to address what we have been doing and

18   are doing if you want to hear that, but we need about one month

19   before we can come back in here with appropriate people, and do

20   the tutorial.

21             There is no prejudice at all in the 30-day time period,

22   given the massive preservation efforts that are underway and in

23   place.

24             THE COURT:  Let me hear from the plaintiff's

25   counsel.
```

1      MR. LOESER:  I wish we knew if that were true or

2  not.

3      The problem is cases typically start -- the defendant

4  has a preservation obligation and tells the Court, yes, I'm

5  preserving everything.

6      This case has started with the Court saying, I'm going

7  to remind you that you have a preservation obligations and say,

8  well, you are actually destroying all of these things, because

9  we can't preserve them.

10      We think it's important to get quickly to an answer,

11  because once it's gone, it's gone.

12      There may be a spoliation issue down the road here and

13  the last thing we want is defendants pointing back to us,

14  saying, yeah, we did destroy it all, but the judge told us it

15  was okay.

16      So I think it is important to get the answer quickly,

17  figure it out, and make a reasoned decision based on evidence.

18      THE COURT:  Also, I want the parties to do, for

19  example, obviously, it doesn't relate to the particular facts

20  of this case, but the case in San Francisco, I presume there is

21  a preservation order in that case, isn't there?

22      MR. PETROCELLI:  There are 4800 accounts, Your

23  Honor, that is not 30,000 a day.

24      So this is the issue that we are confronting, okay?

25      THE COURT:  I understand that, but again, what I

**UNITED STATES DISTRICT COURT**

1    would be proposing, for example; in other words, let's put it

2    this way:  There are a number of different reasons why

3    evidence, you know, we want the evidence preserved.

4         And it seems to me that it's unclear, for example, to

5    the Court, if the plaintiffs, at some point in time, are going

6    to be asking for some sort of monetary damages based upon

7    individual accounts, or is it -- something of that sort, then

8    the fact that there is 30,000 a day or something of that sort,

9    I mean, what -- I understand the defendant's position it may be

10   more than the service can retain or something like that, and it

11   would be violating prior other Court orders, et cetera, et

12   cetera.

13        Although frankly, if I issue an order in my case, it's

14   an offset, potentially.

15             MR. PETROCELLI:  We have abided by that, Your Honor.

16             THE COURT:  Yes, but the question is there is that

17   situation.  So what I was thinking about doing, if the parties

18   could agree, there would be, kind of, like, a representative

19   period of, let's say, three months, where you just take, for

20   example, what is currently available now, and just preserve

21   that, and then maybe take another three-month period sometime

22   in the litigation future, and would take a look at that and

23   preserve that.

24        I don't know if that would be helpful or not, but I was

25   thinking of something along those lines, as to whether or not

1    something of that sort, so the defendant does not have to say

2    what you are saying, the 30,000, you know, a day doing

3    something of that sort.

4        And you are?

5            MR. MURA:  My name is Andre Mura.  I was going to

6    address your question about preservation orders.  There are

7    preservation obligations stemming from other cases that are

8    related, including other State Attorney General actions

9    involving COPPA.

10            THE COURT:  You need to speak into a microphone.

11    Don't stand up, you can sit down and speak, you don't have to

12    look tall.  I don't want to besmirch other attorneys.

13            MR. MURA:  Yes, Your Honor.  I was referencing other

14    obligations in other related actions with respect to

15    preservation.

16        I think there are all sorts of creative ways if we have

17    a dialog, and there is evidence of infeasibility with respect

18    to any information that is central to our claims, then we

19    certainly would discuss that with our experts, with their

20    experts, and we could sit down and have that negotiation.  We

21    have not had that negotiation.

22        So, you offered two weeks.  The defendants ask for four

23    weeks, and perhaps there is some way we can meet in the middle

24    with three weeks?

25            MR. PETROCELLI:  I don't know if that is possible.

```
 1              THE COURT:  I don't care, you will make it so.  I
 2    have had these cases -- these types of situations with
 3    technology.
 4              MR. PETROCELLI:  There is a lack of understanding,
 5    though, about the way the systems and companies operate.
 6          There is not one person who can come in here and cover
 7    everything, Your Honor.
 8              THE COURT:  Well, let's put it this way, again, this
 9    is --
10              MR. PETROCELLI:  If you give us specific points you
11    want to cover, that would be very helpful.
12              THE COURT:  For example, if you are saying that
13    there are 30,000 -- you are not talking about 30,000 minors,
14    you are talking about 30,000 individuals who go to TikTok and
15    open a accounts each day?
16              MR. PETROCELLI:  No, Your Honor, each day.  Because
17    of very elaborate sophisticated systems in place, TikTok
18    identifies through different clues and trails, users on the
19    main platform who they believe, and conclude, based on the
20    evidence, are actually under the age of 13 and not allowed to
21    be on that platform.
22          So, therefore, in order to comply with COPPA, which
23    prohibits them from being on that platform, they are banned and
24    their data is deleted.
25          Now, since the Court's orders -- and by the way, as I
```

**UNITED STATES DISTRICT COURT**

1    indicated previously in our papers, in order to comply not only

2    with COPPA, but in particular with the Court's prior

3    injunction, back in 2019, which mandated compliance with COPPA,

4    the deletion activity has been documented.

5        So we have kept records of all of these deletions, but

6    what we can't keep -- because we're not allowed to, is the

7    information.

8        Now, there is some other materials that we also keep,

9    including the materials that, for lack of a better word, they

10   are called moderation materials by which the company makes the

11   assessment that this user lied to get it past the age gate

12   where you have to put your age in.

13       And what happens is people who are 11 and 12 or 10, say

14   they are 14, 15, or 16.

15       But then the algorithms and the processes can detect

16   sometimes by the videos that are posted by the comments that

17   are made, by things that are interacted on the platform, hey,

18   this person is not 12 or -- excuse me, 13 or 14, they are 10 or

19   9, so they tag that account.

20       There is a 30-day period for an appeal to occur.  They

21   notify that user.  There is a 30-day period for appeal to

22   occur, and after that appeal period, all of that information

23   gets deleted and we're required to do that.

24       So in addition to all of the materials that we have been

25   saving with respect to the deletion activity, once Your Honor

```
 1   issued that order on April 28th, which simply said, quote,
 2   preserve data, end of quote, and then on May 5th, added a
 3   little bit more color to it in response to our ex-parte
 4   application by making clear that we need to do our best to
 5   comply with the order, but obviously, if something -- we're not
 6   truly able to do it, because it's infeasible, then so be it,
 7   and that is not a violation.
 8                  THE COURT:  Let me stop you.  Your discussion, I
 9   mean, that which you are talking about; in other words, that --
10   well, a couple of things.
11        There are, I guess, the kid mode.  Obviously, in kid
12   mode, is there a presumption that everybody that is on there is
13   13 or below?
14                  MR. PETROCELLI:  Under 13.
15                  THE COURT:  Under 13.
16                  MR. PETROCELLI:  Kids mode, that recently came up.
17        The plaintiffs gave us a letter on April 22, shortly
18   before our conference on April 28th, that had 25 categories of
19   things that they thought we should preserve.  It was incredibly
20   overbroad, but it didn't include kids mode.
21        Kids mode came up at the deposition.
22        Another thing came out in the deposition, ads and
23   advertising that these impermissible users are being served or
24   seen.
25        Since that deposition, as we put in our reply
```

submission, we are now preserving the ad information and we're now preserving the kids mode information.

On kids mode, I will tell you, Your Honor, because these are people who honestly state their age under 13, they are under a very restricted platform in which extremely limited information is retained pursuant COPPA.

COPPA does not allow the company to retain personal information on kids mode.

We're not allowed to collect it, it doesn't exist ever, like videos or audios or names or addresses, things that would identify the kid.  They are not allowed.

Only certain information is allowed from order for the system to operate.  That is retained, Your Honor.

THE COURT:  Let me ask you this question:  Insofar as the users that are flagged on the adult or standard portion that are tagged as being potentially underage, and if they don't appeal at that point in time, is there an actual human person that reviews that stuff or is it automatically just --

MR. PETROCELLI:  There are human moderators whose assessment leads to the conclusion that these accounts should be tagged.

THE COURT:  But that human assessment is done prior to being tagged?

MR. PETROCELLI:  Yes.

THE COURT:  In other words, the algorithm will bing

1    certain accounts, and human reviewers will review it to make a

2    determination as to whether or not those particular accounts

3    should be --

4            MR. PETROCELLI:  Then they make a record of certain

5    of the evidence on which they made that determination, and that

6    is preserved under the injunction.

7            THE COURT:  Okay.

8            MR. PETROCELLI:  But, Your Honor, there is actually

9    very little disagreement between the parties right now as to

10    what they think we should be preserving, and what we are not

11    preserving.

12        For most of the things they have identified, we are

13    preserving them.

14            THE COURT:  Well, let me stop.

15            MR. PETROCELLI:  There are a couple of categories,

16    like, I gave you, kids mode and advertising, we're preserving

17    that now.

18            THE COURT:  I understand that is your point.

19        I don't understand why you are saying you can't even

20    figure out what you would need to present at this tutorial,

21    because you know you are already covering the stuff.

22            MR. PETROCELLI:  I have spent with my colleagues,

23    including two of the inhouse lawyers sitting in the back of the

24    courtroom, Your Honor, basically full-time since April 28th

25    to --

1          THE COURT:  Well, let me stop you.  Maybe you should

2     be doing it with plaintiff's counsel, although there is not a

3     lead counsel.

4          MR. PETROCELLI:  There are rules of the road here,

5     they are putting the cart before the horse.

6          They are using this as an opportunity to force us to

7     provide discovery that they are not even entitled to.

8          THE COURT:  Well, there is a difference between an

9     order preserving data, and actually requiring the production of

10    that data.

11         MR. PETROCELLI:  Well, let me tell you about the

12    production of that data, we're going to get there.

13         We are in the business of protecting minors.  We're

14    talking about data that belongs to minors.

15         THE COURT:  I'm not a jury, you don't need to make

16    that type of argument before me.

17         MR. PETROCELLI:  My point is that they may not be

18    entitled to production of this data.

19         THE COURT:  That might very well be.

20         MR. PETROCELLI:  Their parents may need to consent.

21    So this is going to be a very significant issue about whether

22    they can even stand up a class of minors with a handful of

23    representatives.

24         THE COURT:  That might be a different issue.

25         MR. PETROCELLI:  And whether they are entitled to

1  the disclosure of this evidence relating to minors.

2      But for purposes of preservation, Your Honor, I mean, we

3  are fully cognizant of our obligations under the law and under

4  the Court's order.

5      We have made exhaustive efforts, and there is very

6  little gaps between the parties right now, and we're happy to

7  give you the tutorial.

8      I don't want to be incomplete, I don't want it to be

9  rushed.

10      THE COURT:  Let me put it this way, if I set a date

11  for it, if it is rushed, I only have myself to blame.

12      MR. PETROCELLI:  Fair enough.  I'm happy to go over

13  some of the other points if you want to entertain argument or

14  if you want to put this off until the tutorial.

15      THE COURT:  My problem is without a tutorial, I

16  don't know exactly how I'm going to rule on and what basis I

17  would rule, because again, I'm not familiar with what exactly

18  is going on and how much is or is not being preserved.

19      So that is why I would want that.

20      MR. PETROCELLI:  Your Honor, if I can just --

21      THE COURT:  Sure.

22      MR. PETROCELLI:  -- look, in any case, a party has

23  an obligation to preserve evidence.

24      Your order doesn't change the law.  Your order is

25  enforcing that law.

```
 1          If a party, once discovery proceeds, assuming we ever
 2   get to discovery in this case, they will make discovery
 3   requests.
 4          If -- we may object to the scope of those requests and
 5   we will have to have motions and then the Court will rule on
 6   what is discoverable and what is not discoverable.
 7          If it turns out, Your Honor, that the Court has ordered
 8   the discovery of certain information that we did not preserve,
 9   right, we're acting at our own peril.
10          But that is true about this case, there is nothing
11   different about this case.  We are fully aware of our
12   obligations.
13          We are preserving infinitely more than whatever will see
14   the light of day in discovery in this case.
15               THE COURT:  I understand your position.
16               MR. PETROCELLI:  So, there is really no --
17               THE COURT:  Let me stop.  What I may require within
18   some point in time, you guys just give me a single document
19   which lists precisely those things that are being preserved.
20          In addition, what the plaintiff wants in addition to
21   what is already being preserved, and then a response from the
22   defense side as to whether or not that can be done or can't be
23   done.
24               MR. PETROCELLI:  To us, that is a sensible way to
25   take the next step, Your Honor, because it's a distillation of
```

**UNITED STATES DISTRICT COURT**

```
 1    the papers.
 2              THE COURT:  You happen to agree with me.
 3              MR. PETROCELLI:  It's a distillation of what is in
 4    the papers.  I can prepare that.
 5              THE COURT:  I would like a single format because
 6    that way I don't have to look all over the place.
 7              MR. PETROCELLI:  We could present a chart, right?
 8              THE COURT:  And also, what I would want is prior to
 9    the tutorial, I would want each side to submit to me, not a
10    joint document, but each side submit their own document and I
11    would allow it to be produced under seal or in camera, so to
12    speak, so each side will talk to me about their understanding
13    as to how TikTok operates.
14              MR. PETROCELLI:  We're exchanging the documents.
15              THE COURT:  No, you are not exchanging the
16    documents.
17              MR. PETROCELLI:  Oh.
18              THE COURT:  Just in camera.  Each side submits to me
19    separately, so that when we have the tutorial, and I will also
20    limit it to 20 pages.
21              MR. PETROCELLI:  Are those part of the, like, the
22    safe harbor issue that you --
23              THE COURT:  I'm not saying what I want it for.  I
24    want -- all of this stuff is educational at this stage of the
25    game.
```

1          MR. PETROCELLI:  You want a reporter at the

2     tutorial?

3          THE COURT:  I will have a reporter at the tutorial,

4     but it might very well be a situation that I will have it under

5     seal.

6          In a way, it may also get into some confidential

7     operations of TikTok, which I could understand you not wanting

8     to release to the public.

9          For that reason, all of the stuff on the tutorial stuff,

10    again, is not going to be binding, because I'm not going to be

11    allowed to utilize it, unless I find somebody has made an

12    intentionally false statement, then I might have it as a

13    consequence, but even that, I wouldn't necessarily allow it to

14    be released, but I would want to record of what was being said.

15          MR. PETROCELLI:  Given the nature of that kind of

16    presentation, can we seal the courtroom?

17          THE COURT:  Sure, yeah.  For that portion of it.

18          MR. LOESER:  We have to turn out the lights?

19          THE COURT:  You want to turn out the lights?  Do you

20    want to set the mood or something like that with candles?

21          MR. PETROCELLI:  It's going to be romantic.

22          THE COURT:  One or the other, romantic, maybe both.

23    Let's do this, let me set the date three weeks from today's

24    date.  Well, it can't be the 19th, that's a holiday.  How about

25    we put it for the 23rd of June?

1          MR. BLOCH:  Your Honor, I'm putting the cart before

2    the horse.

3        I have a conflict on the 23rd, if the Court will

4    consider that?

5          THE COURT:  How about the 16th?

6          MR. PETROCELLI:  That doesn't work for me.  Could we

7    do the 25th or 24th?

8          THE COURT:  How about -- let me ask, am I going to

9    be in trial during the week of 16th?

10          THE COURTROOM DEPUTY:  No.

11          THE COURT:  How about if I put it on the 18th?

12          MR. PETROCELLI:  Can we do the 19th?

13          THE COURT:  19th is a holiday.  I would do it myself

14    but I can't force my staff to come in.

15        It's called Juneteenth.

16          MR. PETROCELLI:  I would ask the Court to consider

17    at least the 24th or 25th to give us a more breathing room.

18          THE COURT:  What about the 20th?

19          MR. PETROCELLI:  That is a Saturday.

20          THE COURT:  No.  20th of June is a Friday.

21          MR. PETROCELLI:  That is fine.

22          THE COURT:  20th, it shall be -- we will start at

23    9:30.

24          MR. PETROCELLI:  Thank you.

25          THE COURT:  What I want is that each sides' position

1   on that will be provided to the Court by the 13th of June.

2          Also, by the 13th of June, I also want the joint

3   document in regards to, you know, what preservation stuff that

4   has already been agreed to and is being kept, and then what --

5   if the plaintiff wants additional stuff, what the plaintiffs

6   want and response from the defendant.

7          Obviously, if you guys agree on additional preservation

8   stuff, just include it in the stuff that is being preserved.

9          And then, so in the end, I will know what is being

10  preserved, and also what the plaintiffs want in addition, and

11  what the defendant's objections are to that.

12         Also in this document, is I want to know the

13  preservation orders, just briefly summarized from the other

14  cases, and also if there are destruction orders, I want to know

15  those as well, so I get a better sense of what is being

16  required to be destroyed, what is required to be kept in other

17  cases, and then how it affects this case as well.

18         And let me just ask, those other cases would be other

19  than musically, and maybe the government's case in here, what

20  other preservation or destruction orders are there that would

21  affect this case, the *Social Media* cases?

22             MR. CECCHI:  There is an AG case, Attorney General

23  case, in New Jersey.  I have the complaint, I don't have the

24  preservation orders, but I can pull them up.

25             THE COURT:  When was that case?

1          MR. CECCHI:  It's not part of the MDL, but I can

2     find it.

3          THE COURT:  Let me ask defense counsel, are you

4     aware of what that case is?

5          MR. PETROCELLI:  I think our firm is handling most

6     of these AG cases, but I don't believe the preservation orders

7     are anything like what we're dealing here, but I will check.

8          THE COURT:  You guys talk about it.

9          MR. PETROCELLI:  I will check, Your Honor.

10         THE COURT:  Let me ask, what are those AG cases.

11    Are those AG cases specifically minor information cases?

12         MR. MURA:  Yes, Your Honor.  There are a series of

13    State Attorney General cases in various state courts related to

14    COPPA.

15         THE COURT:  I thought everybody indicated there

16    weren't any related state cases.

17         MR. PETROCELLI:  I don't know if that is accurate.

18    There are many of these AG cases around the country that have

19    little, if anything, to do with COPPA.

20         THE COURT:  Well, let me just ask, but are the bases

21    of those cases still minor information?

22         MR. PETROCELLI:  That's what I'm saying.  I think

23    most of it has to do with alleged misrepresentations on the

24    platform to users, like misbranding cases, under unfair

25    competition.

```
 1              THE COURT:  Sure.  Obviously, I agree with defense

 2    counsel.  I presume plaintiff's counsel -- those cases aren't

 3    particularly relevant if there are cases that have been brought

 4    by the AGs or anybody else, which obviously relate to

 5    information from or about minors, vis a vis --

 6              MR. PETROCELLI:  We will do a deep dive on that,

 7    Your Honor.

 8              THE COURT:  Give those to me to as well.

 9              MR. PETROCELLI:  When you say give them to you --

10              THE COURT:  This would be part of the stuff you are

11    going to be giving to me.  You guys are -- in another words,

12    you guys are going to be filing on the -- what did I state --

13    June 13th, your positions insofar as the tutorial is concerned,

14    background information I would need.

15         Why don't we have the other one filed by the 11th of

16    June, and that one is a joint document.

17         In other words, that is the one where you are talking

18    about, what is being preserved, what the prior orders are, and

19    what all of this other stuff is, you will file on the 11th of

20    June, the other one you will file on the 13th of June, then we

21    will hold the tutorial.

22              MR. PETROCELLI:  What is the June 13th document

23    again?

24              THE COURT:  The tutorial.  I want -- that was the

25    thing you are going to -- each side files in camera their
```

```
 1   positions, to give me the information as to how the system
 2   operates, especially in regards to -- I don't need to know all
 3   of the stuff, especially in regards to how minors are dealt
 4   with, but some had background information, for example, does
 5   TikTok also do any sort of -- maybe this is the subject of the
 6   thing in San Francisco, do they maintain any records of what
 7   people are looking at and stuff like that?
 8           They do it for purposes of generating advertising, stuff
 9   like that?
10               MR. PETROCELLI:  Yes.
11               THE COURT:  You said yes, he said no.
12               MR. PETROCELLI:  Viewing history, we have that, Your
13   Honor.
14               MR. POWERS:  My understanding, Your Honor, this is
15   something we can confirm.  There is no advertising to people in
16   the under-13 experience.
17               THE COURT:  But the question as to adults.
18               MR. PETROCELLI:  Yes.
19               THE COURT:  I also want to know how that is done,
20   it's just interesting background information.
21               MR. PETROCELLI:  We are preserving that too.
22               MR. KAFKA:  Your Honor, I want to make a few points
23   initially.  Thank you so much for setting the tutorial, which
24   will be wonderful in moving the parties forward.
25               THE COURT:  You don't have to kiss my butt.
```

UNITED STATES DISTRICT COURT

1            MR. KAFKA:  Our letter to them about preservation

2    did discuss the under-13 experience.

3            And so I don't know what led them to the impression and

4    in our complaint also discusses the under-13 experience, also

5    kids mode.

6            THE COURT:  He may be referring to the kids mode.

7            MR. KAFKA:  That is the same thing.  When we call it

8    the kids mode or 13 experience, the preservation discussed

9    both.  I don't know what the basis was for not believing that

10   was something we wanted preserved.

11           Let me also take a step back to a comment that was made

12   that there was no one person at Tiktok who knows where all of

13   this data is stored.

14           They use a -- primarily as we understand now a hive

15   database system.  They may use other databases in the hive.

16   They are going to have STEMA (phonetic) and they are going to

17   have documents that show what fields are in each table, which

18   means what types of data are stored in each table.

19           So even if they have hundreds or thousands of tables,

20   whether through production of documents or some other format,

21   that is information that they have available and to provide to

22   us, so that we can have an informed conversation, particularly

23   if they are saying nobody could ever learn this without looking

24   at those documents.

25           THE COURT:  All right.  I understand your position,

29

1    I think, but I will confirm that in the tutorial.

2              MR. PETROCELLI:  I don't think he understands how

3    the system works.  We will address that.

4         Can I ask the question about a tutorial, please.

5         Some judges operate them differently in these hot tub

6    things.

7              THE COURT:  I usually refer to them as Australian

8    hot tubs.

9              MR. PETROCELLI:  I never heard about Australia.

10             MS. GROMBACHER:  I thought it was another thing.

11             THE COURT:  When I first got introduced to patent

12   stuff, and this was maybe in 2008, they were talking about

13   other judges talking about how they do Markmans, and what they

14   said was sometimes they told what I understood to be a hot tub

15   or referred to at that point in time as a Australian hot tub.

16   It was primarily experts that would come in and they would talk

17   with each other.

18        And sometimes the judge would ask questions, but it was

19   primarily the experts talking with each other, and we sit there

20   and listen.

21             MR. PETROCELLI:  How would you like this person or

22   persons to be presented, by Q and A?

23             THE COURT:  I think what -- you know, well, let's

24   put it this way, both sides will be presenting me with the in

25   camera explanation as to how the system operates limited to 20

30

```
 1   pages.
 2         And I may have some questions to start off with, but
 3   otherwise, I would ask insofar as -- well, let me take a step
 4   back.
 5         At some point in time, I'm going to have to get a better
 6   understanding of -- I think understand generally what the
 7   plaintiffs in this case want, but I don't really understand as
 8   to the exact scope of what they want.
 9         The primary problem -- obviously, injunctive relief and
10   stuff like that is easy.  If there is a finding of liability,
11   the injunctive stuff is going to be easy.
12         The major problem is if there is any sort of civil
13   penalties or things of that sort or if there is actual damages
14   or something of that sort, especially as to actual damages, I
15   don't understand how exactly that would possibly come into
16   play.
17         But, you know, obviously, you guys will educate me in
18   that regard, so it seems to me, that depending upon what
19   transpires, is what transpires.
20         Let me ask, is the persons on the phone -- can they hear
21   me?
22              THE COURTROOM DEPUTY:  Yes.
23              THE COURT:  Did I hear somebody make a comment or
24   try to make a comment on the phone?
25              THE COURTROOM DEPUTY:  No.
```

**UNITED STATES DISTRICT COURT**

```
 1              MR. SMITH:  This is Marcus Smith on behalf of
 2    government.  I just had a question about whether the government
 3    is invited to participate in this tutorial and to what extent
 4    that might be helpful, but I can hold that until Your Honor is
 5    finished with this.
 6              THE COURT:  That is a good question.  Let's put the
 7    cards on the table now.  Let me ask, I think the defense
 8    primarily would have a position on that.
 9         What is defense's position on the government's
10    participation?
11              MR. PETROCELLI:  We have no objection.
12              THE COURT:  That was a surprise.  They have no
13    objection.  Come on down.
14              MR. SMITH:  I'm trying to determine whether is the
15    presentation going to be something that involves visuals, will
16    we be able to participate by phone and understand what is being
17    presented?
18              THE COURT:  I think -- let's put it this way, what
19    I -- let me ask Javier, could we do this by zoom?
20              THE COURTROOM DEPUTY:  Sure.
21              THE COURT:  In other words, you guys, if you don't
22    want to fly out, I can understand the cost.
23         If you guys want to participate via by Zoom, I would
24    think there would not be a problem with that.
25         And I presume, when you say "participate," you are
```

     1   primarily talking about sitting and looking and listening

     2   rather than actually --

     3            MR. SMITH:  I don't think we would have much to say,

     4   that's right, Your Honor.

     5            THE COURT:  I would allow your participation through

     6   Zoom.  And we will try to accommodate as much as we can in

     7   terms of any sort of slide shows and stuff like that on the

     8   Zoom.

     9            MR. PETROCELLI:  We do have a --

    10            MR. SMITH:  That is our preference, very helpful.

    11            MR. PETROCELLI:  We have made arrangements with all

    12   of the counsel to abide by effectively a protective order

    13   maintaining the confidentiality of this information.

    14            THE COURT:  Yes.  Obviously, and I presume the

    15   government signed off on that?

    16            MR. PETROCELLI:  Yes.

    17            THE COURT:  Great.  So, as to the preservation, I

    18   don't think I'm going to be issuing anything today, unless one

    19   side or the other thinks I have to -- it's urgent that I say

    20   something at this point in time.

    21        Is there something I should be saying now or what?

    22            MR. PETROCELLI:  We don't think so, Your Honor.

    23            THE COURT:  Let me ask the plaintiffs, does the

    24   plaintiffs want something specifically for me to say, and if

    25   so, what?

1          MR. AYLSTOCK:  Good morning, Your Honor.  Brian

2    Aylstock on behalf of the plaintiffs.

3          I don't think anything specific.  I was happy to see and

4    hear Mr. Petrocelli reinforce --

5          THE COURT:  Well, when he agrees with your position,

6    it's always nice.

7          MR. AYLSTOCK:  With that, I don't think we have any

8    need for any order.

9          MR. PETROCELLI:  I thought I disagreed with some of

10   their positions, Your Honor, for the record.

11         I don't want somebody to read this back one day --

12         MR. AYLSTOCK:  Very well done, Mr. Petrocelli.  I

13   was talking about the common law preservation obligation.

14         THE COURT:  All right, okay.  So, I guess that takes

15   care of the preservation discussion.

16         Let me ask, Javier, I thought you said I have something

17   at 11?

18         THE COURTROOM DEPUTY:  We have something at 1:30.

19         THE COURT:  Nothing at 11, so let's go into the next

20   item, which is the -- for lack of better term -- the beauty

21   contest.

22         MR. SMITH:  Your Honor, Marcus Smith, DOJ.  May I be

23   excused?  I don't think we have any interest in that aspect of

24   the today's hearing.

25         THE COURT:  You wouldn't find it entertaining at

```
 1    all?  All right.
 2              MR. SMITH:  Entertainment is not an issue.
 3              THE COURT:  Have a very nice day in DC.  Thank you.
 4              MR. SMITH:  Thank you very much.
 5              THE COURT:  All right.
 6         Okay.  Insofar as the beauty contest is concerned, I
 7    have a couple questions, just preliminary questions, then I
 8    will talk about it.
 9         And I may want to also talk with some of the counsel --
10    competing counsel in camera, so I basically have you guys go
11    back to my chambers and we can talk about some things.
12         First of all, I presume -- let me just be honest, I have
13    had a number of MDLs and tons of class action cases, but I have
14    never had a situation where there was competing other than what
15    you saw this morning competing, but it's really simple and
16    easy, insofar as lead counsel is concerned.
17         So, it's a little bit of a different type of format for
18    me.
19         Let me just ask this first question, when I choose lead
20    counsel, the counsel, themselves, have been proffering
21    themselves, but I presume if I choose a lead counsel, their
22    firm, kind of, like, tags along.
23         I presume -- that is not the case?
24              MS. GROMBACHER:  Not necessarily, Your Honor.
25         Typically under the guidelines, it is a personal
```

```
 1   appointment.
 2            THE COURT:  But let me ask this, for example, if
 3   there is, like, the defense is asked to produce something, they
 4   wind up producing, let's assume, modestly a billion pages of
 5   potential responsive, I don't presume the person I have chosen
 6   is going to be going through that themselves.
 7        I presume they are going to be turning to their
 8   colleagues to process that stuff?
 9            MR. BLOCH:  Your Honor, as a practical matter, I
10   think it's unrealistic to view the appointment as solely
11   personal in that counsel and that counsel only would be doing
12   all the work in that case.
13        Obviously, that counsel's firm would also be
14   participating.
15            THE COURT:  That is my understanding as well.
16   Obviously, the lead counsel gets appointed, and it is under
17   their discretion as to the use of other persons within their
18   firm, but that is my first question.
19        The second question I have is I indicated in my
20   tentative, and I presume both sides -- I issued a tentative on
21   the issue of appointment of interim lead counsel, I presume
22   both those sides got that tentative order?
23            MR. BLOCH:  Yes, Your Honor.
24            THE COURT:  I indicated that I might choose my own
25   slate.
```

 1          If I choose my own slate, is any one of you say, oh,

 2     it's either me and mine or nothing.

 3          Does anybody feel that way?

 4          It won't change my decision on who I appoint,

 5     necessarily, but I'm just curious.

 6          MR. LOESER:  There has been lots of conversation

 7     about that within our group, for example, and the answer is no.

 8          It's your discretion to choose a slate, should you

 9     choose a different one that is proposed, that is your

10     discretion.

11          In terms of the ability of these groups to work

12     together, the devil is in the details on the structure of the

13     slate, and obviously, we have strongly held views on who should

14     be in charge and who should be on the team and the like.

15          But we defer to Your Honor's decision as to who should

16     run this case.

17          THE COURT:  I am inclined to create my own slate.

18          I want to make sure that nobody has a major objection,

19     and you can say it now or hold your peace.

20          In other words, is there anybody who hates somebody so

21     much that they are going to make an objection?

22          No one?

23          MR. AYLSTOCK:  Brian Aylstock.  I'm happy to get

24     into this a little bit further, either in open court or in

25     camera.

1          THE COURT:  I will go in camera if you want me to.

2     We're not in camera at this point in time.  I will go in camera

3     if someone asks me to, but at this point in time, we're not in

4     camera.

5          MR. AYLSTOCK:  Understood, Your Honor.  All I would

6     say is based upon the history of this case, thus far, the devil

7     is in the details with me, personally, I will speak for myself

8     as far as just whether I'm able to have a productive role in

9     the case.

10         I'm not seeking to be lead counsel, in fact, I'm

11    prepared to even back out completely.

12         THE COURT:  What are the areas, though, you would

13    say are potentially problematic?

14         MR. AYLSTOCK:  Well, I think we do have different

15    views; for example, on the preservation obligation, we

16    submitted different briefs, and we believe strongly that we

17    should not send a preservation letter early on, because there

18    was an existing obligation to preserve, and that can be fraught

19    with peril as we have seen.

20         So there are certain aspects to this case, and frankly,

21    when this case first started, I reached out to the other side,

22    and asked not to be lead, but I can participate meaningfully in

23    this case and was basically told no.

24         And so I wouldn't want an appointment where if in fact I

25    was appointed in a subservient role, I'm not asking for lead,

```
 1   but I'm simply a wall flower.  That is my point.

 2              THE COURT:  I understand that.  Anybody else feel

 3   the same way?

 4              MR. CECCHI:  Judge, James Cecchi.  I echo Mr.

 5   Aylstock's comments as well.

 6        An important consideration here is you are appointing

 7   lead counsel and that is about leadership.

 8        In this case, we would submit that the Humbert group has

 9   demonstrated leadership by inspiring people to compromise.

10        Every lawyer in this case in the Humbert group and our

11   adversaries believe they are qualified to be lead in this case.

12              THE COURT:  Actually, as I have indicated in my

13   humble opinion, any of you are qualified.

14              MR. CECCHI:  Right, and what leadership is is

15   inspiring people to compromise their egos, make compromises,

16   and frankly, we should have had a consensus slate.

17        We have been reaching out, as Mr. Aylstock indicated,

18   from the very beginning to try to put something together.

19              THE COURT:  Except the slate that was proposed by

20   Humbert, et al, included the executive committee which I didn't

21   understand the purpose of that.

22        Let's put it this way, this case is not so big that it

23   requires many, many, many lead counsel.

24        I envision basically appointing two counsel and

25   concomitant firms, and maybe a liaison counsel, because I will
```

```
 1   not do an executive committee, because I just don't understand

 2   how that would function in a case of this sort.

 3              MR. CECCHI:  Can I take a swing at that, Judge?

 4              THE COURT:  Sure.

 5              MR. CECCHI:  This case is, in fact, perhaps not

 6   existential both monetarily and injunctive relief-wise highly

 7   consequential for this defendant.

 8        First, Mr. Petrocelli explained the complexities of

 9   their system, their preservation efforts, their back-end

10   systems.

11        The injunctive relief we will seek is on the front end.

12   We will ask them to implement sophisticated systems to verify

13   the age of people signing up for this platform, which they

14   don't do for right now, they don't do for a reason, because

15   they monetize all of these people that come to the platform.

16   They will resist that, and that will give battle.

17        The damages in this case are potentially consequential.

18              THE COURT:  No offense, something of that sort, it

19   is what it is.

20        If there is a basis for the plaintiffs to ask for

21   something of that sort, and, you know, the Court exercises its

22   discretion in that regard, and if there is a basis for it, I

23   will impose it.

24        If there is not a bases for it, or if the bases for it

25   is outweighed by certain aspects of the defense's operations or
```

1   business or whatever, then it won't be imposed.

2        I mean, I don't view that as necessarily -- ofttimes

3   there are lots of arguments that can be made about anything.

4        MR. CECCHI:  But from the Point A to Point B, my

5   point is we need the resources and the team and the troops who

6   are prepared to compromise and to sacrifice their own desire to

7   lead this case.

8        That is how an executive committee functions.  If you

9   appoint good leaders in an executive committee, an MDL history

10  is filled with executive committees under effective leadership

11  who have people who are --

12       THE COURT:  Again, I don't understand what the

13  difference is between executive committee and if I appoint

14  liaison counsel.  The liaison would be all of the other --

15  including those who wanted to be originally on the executive

16  committee.

17       Obviously, ofttimes what it is, is the liaison may wind

18  up presenting like not necessarily a third lead counsel, but

19  would state a position that is in disagreement what the lead

20  counsel wants to do.  Obviously, I would take that into

21  consideration as well.

22       MR. CECCHI:  I certainly agree with Your Honor, you

23  should have an odd number in the decision-making category.

24       THE COURT:  I would still only have two, but I would

25  have a liaison counsel, which liaison counsel is not to

1   interject his or her position, but is to discuss with the other

2   plaintiff attorneys as to whether or not, if there is some

3   issue that comes up or if there is a big disagreement.

4       In other words, let's assume that the lead counsel

5   wanted to take a position as to, like, for example, the

6   preservation letter or something of that sort, and the liaison

7   counsel would contact the other attorneys and indicate if there

8   is anybody who has a major problem with that, and if there is a

9   major, major problem, they would potentially present that to

10   the Court.

11       MR. CECCHI:  Let me take one final swing at why an

12   appointed PSC or EZ is important in this case.

13       The plaintiffs are from around the country, all 50

14   states.  They are parents and their minor children who have

15   essentially in terms of the Humbert group voted they want their

16   lawyers involved, they want to be able to pick up the phone and

17   say, hey John, Jim, Kiley, everyone else, what is going on.

18       THE COURT:  I appreciate that.  That actually leads

19   to another question I had -- well, I will throw the question

20   out now, but after that, I will allow you to complete your

21   thought.

22       The other question I had is will the selection of the

23   lead counsel affect who are the named plaintiffs in this

24   matter, or is it a situation; in other words, if I choose this

25   person from this slate and that person from this other slate,

```
1   with those named plaintiffs that those attorneys are

2   representing the named plaintiffs in this case for purposes of

3   the Rule 23 stuff, or is it a situation where we may mix and

4   match the named plaintiff as well?

5          MR. CECCHI:  I can only speak to the efforts

6   undertaken by the Humbert group.  We are actively engaging

7   named plaintiffs.  Our objective is to have named plaintiffs

8   willing to serve in this important case in every state of the

9   union.

10         We have the majority of the states covered right now.  I

11  have no idea what the intention of the other moving group would

12  be, but if a component part of our team is appointed, we will

13  in fact have plaintiffs.

14         They are being vetted at this very moment in every state

15  of the union.  That is important going back --

16         THE COURT:  Let me take a step back.  The question

17  is whether or not the selection of the lead counsel will also

18  make a determination as to who the named plaintiffs are.

19         In other words, you are saying basically if your slate

20  is appointed, you will have lead plaintiffs?

21         MR. CECCHI:  We would invite all qualified

22  plaintiffs who want to serve to be named plaintiffs in the

23  consolidated amended complaint.

24         Whether it's their team or our team, typically that is

25  what we would do, we would vet all of the plaintiffs and they
```

1    would all be invited to serve.

2         We don't always know what happens at that point, but yes

3    we would endeavor to do that.

4         THE COURT:  Let me ask this question:  Sometimes as

5    it happens where there is just talk about the class action

6    situations, sometimes if there is class action situations and

7    there are class members of various states, so let's assume for

8    purposes of arguments, it is all 50 states.

9         Sometimes there is a question that is choice of law, and

10   things of that sort, and so, at some point in time the

11   attorneys will have to get together and present to the Court

12   their position as to whether or not the laws of each state are

13   so different or whether or not the laws of the states can be

14   categorized, saying, well this state, and this state, would be

15   considered the California approach to these issues, or is this

16   state, this state, and this state, take what would be --

17   considered to be the Georgia state of approach to these issues.

18        In other words, there is a choice of law and potential

19   conflict of law issue that also needs to be resolved.

20        So, that does also come into play in terms of selection

21   potentially of class representatives and things of that sort.

22        MR. CECCHI:  Right.  It would certainly inform our

23   analysis of the appropriate class and/or classes that we

24   ultimately present to Your Honor for certification.

25        What we have done in other cases of this nature where

```
 1   there are 50 states, we have grouped states together that

 2   follow the same principles of choice of law, significant

 3   relationship, like SLOKI (phonetic).

 4        We will have to sort that all out and present it to Your

 5   Honor.  I can assure you this, we will present it to Your Honor

 6   in a coherent sensible way that makes sense to move the case

 7   forward in a manageable way.

 8        That is our objective of the class action to get to

 9   trial in a manageable way, so we will do that.

10             THE COURT:  When I'm talking to the two slates that

11   are going to be competing at this point in time, I would be

12   basically talking with Mr. Bloch and Mr. Kafka as to what I

13   have referred to as the JC slate.

14        Then I would be talking to Grombacher, Loeser, and Mura

15   insofar as the Humbert slate.  That would be how I would do

16   this.

17             MR. CECCHI:  Those would be proposed leads.

18   Although, Mr. Aylstock and I have done a little bit of talking

19   today.

20             THE COURT:  Just because people can't shut you up.

21             MR. CECCHI:  Thank you, Judge.

22             THE COURT:  Then the other thing I also want to get

23   from counsel is the fees.

24        I want that submitted in camera, obviously.  I want to

25   know what -- the named attorneys, in other words, the lead
```

1    counsel would be charging for purposes of their hours.

2        I want to know what otherwise would be charged by other

3    persons in the law firm, paralegals, administrators, low level

4    associates, middle associates, high level associates, junior

5    partners, you know, of counsel partners, whatever.

6        Also, let me advise both sides at this point in time, if

7    anybody submits at any point in time anything regarding

8    attorney's fees, do not block bill.

9        If I see block billing, I will tell you now, I will

10   discount it automatically by 50 percent.

11       I just had a case where I had 31,000 entries, 40 percent

12   of which were block billed, I will not go through that again.

13       MR. LOESER:  Your Honor, one of the things that

14   pretty much everyone at this table has been involved with is

15   MDLs and class actions and so many judges have made that point,

16   but also the more general point about what are the protocols

17   you are going to put in place for fees.

18       We are already very good at this point, and we will

19   submit to the Court -- anybody who gets appointed is going to

20   submit to the Court, a billing protocol that will have, among

21   other requirements, no block billing.

22       The time will be collected from any counsel

23   participating.

24       It will audited regularly, and we are willing to provide

25   the Court quarterly with time reports for the Court to review.

**UNITED STATES DISTRICT COURT**

1           The hourly rates typically does not end up on that time

2    report, but we can certainly provide what those rates are.

3           THE COURT:  I want to know.  It's come to my

4    attention that -- I saw this article that said -- I don't know

5    if I should say this on the record, but I will -- there was

6    something for the charges for senior associates $2,000 an hour

7    for a senior associate.

8           MR. LOESER:  That is probably a defense firm, Your

9    Honor.

10          THE COURT:  I know it's not them.  I think it's one

11   of the east coast firms and/or a particular patent firm, but I

12   was shocked.

13          MR. LOESER:  We often, when we are preparing our fee

14   petition, it's good for us to know what the defense firms are

15   charging, and they publish that often in bankruptcy filings.

16          So we can see plaintiffs by and large charge lower rates

17   than defense counsel.

18          THE COURT:  Yes and no, but because of the fact that

19   sometimes, in other words, it's a contingency fee basis,

20   sometimes the contingency fees winds up being a lot larger than

21   the defense fees, if there is a high success, but then again,

22   if there is a high success.

23          MR. LOESER:  Your Honor, the typical expression that

24   answers that is that defense counsel gets paid per hour, and we

25   get paid perhaps.

1          MR. BLOCH:  Your Honor, when would you like those in

2   camera submissions about fee schedules?

3          THE COURT:  I presume you can get that to me within

4   a week.  It's in camera, so just lodge it.

5          Now, the other thing is that -- let me ask, did I ask

6   this question, I think I did, but to make sure, does anybody

7   not want to be liaison counsel?

8          MS. GROMBACHER:  No.  I know I'm the only person in

9   this district, but it seems administrative, and for a lot of

10  reasons, I would rather stand on the bona fides and seek a lead

11  role that, to me, relegated to what seems to be more

12  administrative.

13         THE COURT:  Okay.  Also, I want to talk with the

14  parties, but I probably will do it in camera about how the

15  parties are going to go -- at least plaintiffs' counsel are

16  going to approach mediation.

17         These types of cases -- rarely are these cases tried,

18  and when they are tried, they are a mess.

19         And you get a messy verdict and you get messy appeals.

20         So I presume that the parties are going to be seriously

21  discussing mediation on this fairly early on.

22         I want to talk with the slates about that topic.

23         Let me ask, is there anything else that either side want

24  to present to me before I start?

25         MR. BLOCH:  I would, Your Honor, Steven Bloch.

1  Whether that is Your Honor's discretion, whether that is

2  presented in camera or in open court, I'm happy to do either.

3            THE COURT:  I prefer it to be in camera, simply for

4  the fact that there is a strategy to mediation as well.

5            MR. BLOCH:  No, I was referring to the leadership.

6            THE COURT:  Whatever else anybody wants to present

7  to me, because this is the only time I'm going to be

8  considering the aspects of leadership.

9       Although, I may not make a decision today, I hopefully

10  will make a decision certainly after no later than when I get

11  the figures for the charges of attorney's fees and stuff like

12  that.

13            MR. AYLSTOCK:  Your Honor, Brian Aylstock, may I

14  take another swing at the executive committee?

15            THE COURT:  You can attempt to do it, it's too many

16  cooks spoiling the broth.

17       How would the executive committee present stuff?  In

18  other words, anybody in the executive committee can seek to do

19  something, or are they going to have to talk to one person, and

20  if they talk to one person, that is the liaison counsel.

21            MS. GROMBACHER:  Your Honor, I think what we had

22  proposed on our side was that there would be three leads, and

23  the executive committee would be essentially a bench to draw

24  from.

25       Frankly, everyone on our group, but their group as well,

 1    has particularly strikes or things that they do better than

 2    other people.

 3          So the ability to come to somebody and say, look, you

 4    have done this before, you do it better than anybody else, it's

 5    in the best interests for the class that you handle this.

 6          So the work would be regulated and delegated by lead

 7    counsel as necessary.

 8          If not necessary, it wouldn't be done.  And that's like

 9    what Mr. Cecchi said, largely, an function of lead counsel

10    working appropriately.

11          THE COURT:  That's like saying, let's let everybody

12    be counsel and just hire a leader that delegates, which I don't

13    think it quite works that way.

14          MR. AYLSTOCK:  It's really not, Your Honor.  I have

15    led two of the largest MDLs in history.

16          Each had about one-third of the civil docket, and they

17    had a leadership structure, where lead counsel had to assign

18    the hours.  You had to get approved by lead counsel.

19          THE COURT:  Is that a mass tort?

20          MR. AYLSTOCK:  It is a mass tort, and I have also

21    led class actions.

22          THE COURT:  Mass torts are different.

23          MR. AYLSTOCK:  Here is how it works, because you

24    asked the question if you are appointed does your firm

25    supplement you.

 1          I worked at big firms and sometimes what happens in big

 2   firms is that there is red tape, there is other shiny objects,

 3   other cases, and sometimes you get into this group thing where

 4   you are always going to do it the same way.

 5          What we have tried to do with our group is present a

 6   diversity of geography, ideas, and it shouldn't always be old

 7   white men like me, which is why I stepped back.

 8          I feel certainly competent, and I wanted to lead this

 9   case, Mr. Cecchi did, Mr. Hudson did, Mr. *Segar did, but we

10   stepped back and said, we will take a subservient role because

11   we saw the leads in the Humbert group were willing to recognize

12   the strengths that we have, and we have demonstrated that in

13   this very case by being able to get experts.

14          We were able -- my firm was able to procure an expert

15   and have it in 24 hours, because it was available, and I was

16   able to do that.

17          Ms. Grombacher's firm was able to come over the weekend

18   and take the lead on the brief, the reply brief.

19          When it came time for discovery, Mr. Seeger's firm and

20   we have Mr. Seeger in the court, Mr. Seeger is the best

21   settlement counsel in the world, I would submit.

22          THE COURT:  Let me hear that one again.

23          MR. AYLSTOCK:  Mr. Seeger, I believe, is the best

24   settlement counsel in the world.

25          I have settled billions of dollars of cases with him,

1    and I think he has demonstrated -- look, he has confidence in

2    our team, and when that time comes, Mr. Seeger will be

3    available on our team.

4         When the time came to take the deposition of their

5    witnesses, Mr. Buchanan, with Mr. Seeger, stepping back, came

6    in he's also the best to take an ESI deposition in the world.

7         THE COURT:  Not that this is particularly relevant,

8    did you go to the MDL conference in West Palm Beach?

9         MR. AYLSTOCK:  I did not.  I think Mr. Seeger was

10   there.

11        MR. CECCHI:  I was there, Your Honor.

12        THE COURT:  But the way it actually works, Your

13   Honor, is a virtual law firm.  That's the way it should work,

14   because we do have different strengths and weaknesses, and when

15   it came time for different inputs, everybody on our team had

16   something meaningful to contribute.

17        And what I have seen in other contexts is lead counsel

18   not drawing upon the wisdom, the experience, the qualities of

19   everybody, and frankly, keeping it within their firm to the

20   detriment of the class.

21        What I think Your Honor is trying to do and should do is

22   appoint the best team -- they have the best lawyers, I have

23   settled ten figure cases with his firm.

24        We need the best lawyers and the best team, and it

25   functions like a firm, only better, if it's done right with the

**UNITED STATES DISTRICT COURT**

1    right lead counsel.

2         THE COURT:  I understand your position.  I will

3    think about it.

4         MR. HUDSON:  If I could make one more point.  Ty

5    Hudson.  I haven't spoken yet.

6         THE COURT:  You have gestured a lot.

7         MR. HUDSON:  I have gestured.  I have a lot of

8    yeses, a lot of what you say makes sense.

9         On this point, I want to make you understand the

10   difference between a nationwide case, for example, the

11   securities case that you saw before, there is one lead

12   plaintiff here with a multi-state class, you are going to have

13   a plaintiff in every state.

14        One of the big things you are going to hear at class

15   certification --

16        THE COURT:  Not necessarily.

17        MR. HUDSON:  I think that is going to be a disputed

18   issue.

19        In the order for the class to be best protected, we want

20   to have a plaintiff in every state.

21        That is one of the things we have done in a group, it's

22   a lot more effort.

23        THE COURT:  Why would you think you would have to

24   have a named representative from every state unless there is

25   something unique about something -- in other words, I presume

```
 1  TikTok operates the same in every state.

 2        Let me ask defense counsel, does TikTok operate

 3  differently in any state; in other words, I presume what

 4  happens in Alaska is the same thing that happens in Florida?

 5             MR. PETROCELLI:  I believe that is correct, Your

 6  Honor.

 7             THE COURT:  So if there is not a difference in terms

 8  of operation -- now, I do understand perhaps there might be

 9  situations where there is a difference of law.

10        Again, the question really is, it depends on the

11  question of whether or not -- as long as those are issues of

12  conflict of choice of law, but I don't necessarily feel that

13  you really need -- although, maybe the argument is well, it

14  can't hurt to have a representative from every state, but I

15  don't necessarily think that you would be required to have a

16  representative from every state.

17             MR. HUDSON:  Judge, I certainly hope that is how it

18  ends up, but as representing all of the plaintiffs, we can't

19  take that risk to sit back and wait, and that's why, as a

20  group, because we can't anticipate what defendants are going to

21  argue.

22        You have seen today, they have put a vigorous defense of

23  this case, and we anticipate they are going to.

24        That's why over the last months --

25             THE COURT:  That is why they get hired by their
```

54

```
 1   clients, to present a vigorous defense.
 2             MR. HUDSON:  Absolutely.
 3             THE COURT:  So what can I say?
 4        I really appreciate it.  It's really unfortunate,
 5   because frankly, as I said in my tentative, I think you guys
 6   are all great, and so, it's a difficult choice.
 7        I like to say, well, all of my children are wonderful.
 8   But I guess, I would have to choose some as opposed to the
 9   others.
10        All right.  Before I talk to you guys individually about
11   mediation stuff, is there anything else that any side wants to
12   present to me in open court?
13             MR. BLOCH:  Again, if it's your preference to hear
14   -- we have kind of woven in in the context and the guise of
15   talking about collaboration and choice of law between the
16   states, and leadership and a need for executive committee.
17        We seem to have woven in lots of comments, innuendos as
18   well, about leadership and the points that go to each side or
19   not.
20        If Your Honor wants to hear substantive points about
21   leadership of this case in open court, I'm happy to step up to
22   the podium and do that, or in camera.
23             THE COURT:  What would you be presenting to me other
24   than what you have already presented to me in your papers,
25   which I have read.
```

UNITED STATES DISTRICT COURT

1          MR. BLOCH:  I fear and think what needs to happen is

2     for there to be a little bit of a reorientation of the facts

3     here, because I think certain things have gotten missed or

4     misperceived.

5          That's through no fault of the Court, obviously, and

6     maybe through no fault of anyone else.

7          But, my firm's experience in private COPPA based

8     litigation, and our knowledge of the law, is unmatched by any

9     firm in this case.

10          THE COURT:  Didn't I say something to that effect on

11     page 4 of the tentative?

12          MR. BLOCH:  It is, Your Honor, but further to that

13     point --

14          THE COURT:  Do you want more praise than I gave you

15     there?

16          MR. BLOCH:  No.  I don't want more praise, I have

17     maybe to my detriment, sometimes I hold back and restrain --

18          THE COURT:  Nobody ever accused you of holding back.

19          MR. BLOCH:  We're responsible for the very decisions

20     that this case is centered on, both in the Ninth Circuit and in

21     the decision in the *Turner* case, which upheld all of our

22     claims, invasion of privacy, unjust enrichment, consumer

23     protection acts, and we're now proceeding apace with extensive

24     discovery in that case as well.

25          And we know that that is the fact, because defendants

1    have already made their motion to dismiss our consolidated

2    amended complaint, and we have already fully briefed it, and no

3    surprise to us, all of those same issues were raised by the

4    defendants in that case, and that's why we were well prepared

5    to combat it.

6         And our experience and our knowledge is why our firm was

7    the one that was well-positioned at the time this investigation

8    occurred, and the first action was filed, which we did well

9    before any other firms, certainly, it was staggered in terms of

10   timing.

11        THE COURT:  I noted that too.

12        MR. BLOCH:  Yes, but those all feed into the factors

13   that are at play here.

14        And I don't -- I understand that there may be a

15   deference to the size of certain firms and the like, but I

16   think the overwhelming, if not all of the factors under 23(g)

17   favor the participation of our firm in a leading role, and I

18   think it would be doing a disservice to the class to not

19   include our firm in some leading role in this case.

20        That's whether the case gets litigated, which I think is

21   going to happen.  I know maybe we're not as sanguine that Your

22   Honor that the case is going to be resolved quickly through

23   mediation, maybe it will be, but whether it's through

24   litigation or through settlement, it would be a disservice not

25   to have us here.

1       We were at the table and resolved the Google case just

2   recently on a class-wide basis, involving all of these issues

3   of choice of law and the like and are well-equipped to handle

4   all of these things.

5           THE COURT:  All right.

6           MR. BLOCH:  I want to make sure that that didn't get

7   diluted in the papers that Your Honor is studiously reviewing.

8       The other thing I will note is there are certain others

9   that have been called out by the Court, and as all counsel here

10  have said, and is undisputable, everybody here is imminently

11  talented and highly capable and qualified of handling this case

12  and participating in this case.

13      But I will note that Your Honor wanted this case

14  independent, including its leadership from the *Social Media*

15  *Addiction* MDL.

16          THE COURT:  I wanted -- no, let me -- it was that,

17  it came to me after that a determination was made.

18          MR. BLOCH:  That's right.  I personally argued and

19  briefed the opposition to that to have it consolidated and

20  become a vestige or an appendage of the *Social Media Addiction*

21  MDL.

22      Regrettably, Mr. Loeser and Keller Warback are

23  leadership appointed by the Court in the *Social Media* MDL.

24          MR. LOESER:  That's not true, Your Honor.

25          THE COURT:  We have a crack in the unanimity?

1              MR. BLOCH:  My apologies.

2              MR. LOESER:  From one end to the table to other.

3              MR. BLOCH:  To clarify, Mr. Loeser's firm, members

4    of Mr. Loeser's firm are appointed in a leadership position on

5    the plaintiff's steering committee in the *Social Media*

6    *Addiction* MDL.

7          If we're going to keep this case separate and

8    independent, as it deserves, and I think the Court has

9    recognized the need for that, I think we need to be mindful of

10   who it is that is independent from that particular MDL.

11             THE COURT:  All right.

12             MR. LOESER:  That seems like a bit of a hand

13   grenade, if I may respond, Your Honor?

14             MS. GROMBACHER:  Yeah.  I wanted to say something

15   too, because I'm not in *Social Media,* so I can also speak to

16   that.

17          I was the one who filed the petition to the JPML,

18   because frankly there is some overlap, I mean, you can keep the

19   cases separate, and we will keep the cases separate, but there

20   is no one on this team who is appointed a leader, co-lead in

21   any social media.

22          I mean, that is correct, right, none of you.  They might

23   have a position where they contribute in some, but from leads,

24   nobody has a leadership position.

25          They are just not in a position to take over this case

```
 1   on behalf of Social Media.  Nor are any of you appointed to be

 2   settlement counsel in those cases.

 3            MR. BLOCH:  Correct.

 4            MR. LOESER:  Correct.

 5            MS. GROMBACHER:  So this idea that this is some

 6   surreptitious effort for Social Media to come in and take over

 7   and control, I find offensive on behalf of these people.

 8        In fact, I don't even think this counsel believes that,

 9   because they asked Mr. Mura to join their group.

10        If they really wanted to keep separate --

11            THE COURT:  All of these cracks are appearing.

12            MS. GROMBACHER:  They wouldn't have invited him.

13            MR. LOESER:  Your Honor, discretion being the better

14   part of valor, there were things that were just said that I

15   think are unfortunately misleading and untrue.

16        It is important to note that when you have an executive

17   committee, the executive committee does the work that lead

18   counsel is assigned.

19        Social Media MDL, the lead counsel is -- there is a

20   lawyer from my firm, a junior partner, who is a member of the

21   steering committee and is assigned work to do and does work.

22        To suggest that -- I'm not working on that case, I have

23   no ability to influence or control what happens in that case,

24   so my leadership application is to this case, because I want to

25   help lead this case for the reasons I have put in my
```

1   declaration.

2          I will say, that one of the challenges, and it is sort

3   of frankly embarrassing, we're here in front of you with this

4   many lawyers and we don't have an agreement.

5          I think it's important to understand that we don't have

6   an agreement because the people we were talking to, neither one

7   was willing to step back and support a role less than lead

8   counsel.

9          Your Honor issued guidance in the tentative.  We took

10  that guidance to heart.

11         Your Honor made it clear what you intended to do, you

12  intended to pick one from each slate, and so we thought that

13  the guidance would resolve this, frankly.

14         And it didn't, which is really unfortunate, because when

15  Your Honor is suggesting that there will be two lead counsel or

16  small number, and you are choosing from both slates and you are

17  talking to people who refuse to negotiate in any way back from

18  what they proposed in their application, it makes it very hard

19  to reach a deal.

20         I have been involved in that a lot of leadership

21  application and fights, if that's what you want to call them,

22  and, you know, normally they are resolved before this happens,

23  but sometimes it's up to the Court.

24         Here, we're in a situation where the parties,

25  unfortunately, haven't been able to resolve their differences,

```
 1   though, I will say I spent a lot of my time on the phone trying
 2   to get this thing resolved in a way, most recently consistent
 3   with the guidance that you gave, and unfortunately, that wasn't
 4   successful.
 5         MR. BLOCH:  I will just note, Your Honor, even as late
 6   as last night, we reached out to the other, to the Humbert
 7   group to suggest a potential resolution of this, and that was
 8   -- my understanding is that was rejected.
 9         So to say that these conversations or the attitude has
10   been one-sided, I think is unfortunate.
11         THE COURT:  If I told you guys to go back in the
12   attorney room now, do you think you guys, in five minutes,
13   could come back with a slate that you all agree to, and I might
14   sweeten the deal by saying that if you guys want an executive
15   committee, although, not quite the size of what you originally
16   proposed as well, I would consider it.
17         But this is not to force anything on anyone, if you
18   don't think it can be done, then that is it.
19         MR. CECCHI:  I think we should take you up on your
20   offer, you have given more guidance today.
21         THE COURT:  One thing I will say is this:  I'm
22   notoriously cheap.
23         If you guys think you are going to get a lot of
24   attorney's fees, I'm one of the cheapest judges -- although --
25         MR. CECCHI:  We have found that out.
```

```
 1              THE COURT:  -- I did grant an incredibly large

 2   attorney's fees --

 3              MR. CECCHI:  Small percentage of large numbers.

 4              THE COURT:  It was a situation where the lawsuit had

 5   lasted 12 years, then they fought over everything.

 6              MR. LOESER:  Your Honor, I have spent a lot of time

 7   talking to folks here, and the reason why there isn't a deal is

 8   because Mr. Kafka and Mr. Bloch insisted they both be lead

 9   counsel in this case.

10         The guidance -- I read your tentative to suggest that

11   Your Honor intended to pick lead counsel from both slates.

12         If the guidance is go back in that room and do what I

13   said, I think there is likely -- people are willing to listen

14   to that and pick one, you know, then I think we would have had

15   frankly, we would have a deal a long time ago.

16         If Your Honor makes clearer that the guidance is

17   guidance and it should be followed, and then if we can put

18   together --

19              THE COURT:  Let me give you a hint.  The selection

20   slate I had in mind when I wrote this, although I'm not

21   necessarily saying I would do it, was attorneys from both

22   slates.  It wasn't from one slate, obviously.

23              MR. LOESER:  Right.  It's been little frustrating

24   even with that guidance we faced a pretty stubborn reaction.

25         If we go back in that room, and people understand you
```

```
 1   have got to pick one, and we will pick one, then we will have a
 2   small executive committee that picks some other folks to help
 3   this effort, we would fully support that.
 4           THE COURT:  Again, I'm not going to insist.
 5           I gave the parties an opportunity initially, and if it
 6   can be done now, it would great, because that way I won't have
 7   to make a hard decision.
 8           What judge wants to make hard decisions, but if you can
 9   agree, that is fine, if you can't agree, you can't agree, I
10   perfectly accept that.  But it is what it is.
11           MR. PETROCELLI:  Can we deal with any other issue
12   that involves us.  I have to leave by noon.  If you want to
13   discussion mediation?
14           THE COURT:  No.  Mediation will -- let me put it
15   this way, I mean, I will take a quick look at mediation.
16           I presume you guys would be going to a private
17   mediation.  You wouldn't be using a judge or a Magistrate
18   Judge, or obviously, nobody from the Court's panel, you would
19   be going to --
20           MR. PETROCELLI:  In all likelihood, yes.
21           THE COURT:  Is it a situation where you guys think
22   there will be a problem selecting the private mediator?
23           MR. PETROCELLI:  I doubt it.
24           MR. LOESER:  Usually, it's one of four people in the
25   entire country.
```

```
 1            THE COURT:  Somebody in the Phillips firm?  Is that
 2   the new one at the Phillips firm, Ghandi went there.
 3            MR. BLOCH:  Ghandi just went there.  Their fees are
 4   not under the discretion of anyone.
 5            THE COURT:  I know that.  Somebody told me what they
 6   charge per day, I was thinking --
 7            MR. LOESER:  You don't want to do that in open
 8   court.
 9            THE COURT:  But conversely, these cases that go
10   there, I mean, there is so much money involved, it's a blink of
11   the eye.
12            MR. LOESER:  They do a masterful job.
13            MR. KAFKA:  Let me step back.  I think that the
14   reason that there are so many attorneys eager to work this case
15   as it is truly an important case, so I want to step back.  This
16   is a very important case, that's why so many people are
17   jostling over getting it.  I don't want that to be lost.
18        The other thing I think has been somewhat different
19   views on whether an executive committee is appropriate and the
20   number of firms that should be involved.
21        And I will say, to prepare you, my firm has somewhat
22   higher rates than other firms for as partners, partly because
23   we're in New York and Washington D.C.
24        One way we have compensated that is we have excellent
25   senior associates who were trained in that next generation of
```

**UNITED STATES DISTRICT COURT**

1    leadership.

2        So what happens when you have a group with seven to nine

3    firms or a large number of firms, the partners end up doing

4    higher percentage of that work, so it may look as though those

5    rates are lower, but it doesn't end up being that way.

6        Furthermore, that model that we have developed of having

7    highly qualified senior associates who can really work the case

8    is consistent with having fewer firms and consistent with

9    developing that next generation of leadership.

10        That being said, I guess for the purposes of these

11    conversations, what are you now contemplating in terms of the

12    number of executive committee members?

13        I think that would inform the conversation, if any, in

14    understanding, we had argued against having the executive

15    committee, but it would be good to get that thought from you

16    before we try to negotiate this.

17            THE COURT:  At this point in time, the executive

18    committee was one, two -- there were four on the executive

19    committee, although, one person dropped out.  It's now three.

20            MR. AYLSTOCK:  Well, Mr. Segar.

21            THE COURT:  Executive committee of three, I could

22    see that.

23            MR. KAFKA:  You would accept that with two leads?

24            THE COURT:  I would accept that with two leads.  In

25    other words, executive committee with two leads or three leads,

```
 1    I would consider that.

 2          So, let me ask, do you want to take about ten-minute

 3    break and have you guys come back at 12, and we can let

 4    Mr. Petrocelli go and catch his plane.

 5          Where are you going?

 6                MR. PETROCELLI:  Palo Alto.

 7                THE COURT:  Oh.

 8                MR. KAFKA:  Could you give us 20 minutes, actually?

 9                THE COURT:  Sure.  I will give you as much time as

10    want.  If you think you can do it 20 minutes, that would be

11    fine.

12                MR. PETROCELLI:  Did we set a time for the 20th?

13                THE COURT:  How long it's going to take?

14                MR. PETROCELLI:  What time do we have to appear?

15                THE COURT:  I thought I said 9:30.  I would be

16    giving you, certainly, the morning.  If I don't have anything

17    else, I would give you the rest of the day as well.

18                MR. PETROCELLI:  Thank you very much, Your Honor.

19                THE COURT:  Have that nice time.  What are you going

20    to be doing in Palo Alto?

21                MR. PETROCELLI:  My son goes to school there, it's

22    his birthday.  I'm taking him out to dinner.

23                THE COURT:  Okay.  If you are doing family things,

24    what can I say?  He's not going to go to law school, is he?

25                MR. PETROCELLI:  I hope not.
```

```
 1              THE COURT:  I was going to say, 20 minutes, then.

 2                        (Off the record.)

 3                        (Recess.)

 4              THE COURTROOM DEPUTY:  Please remain seated and come

 5   to order.

 6              THE COURT:  All right.  Back on the record.  Let me

 7   ask counsel, did you guys decide something?

 8              MR. KAFKA:  Your Honor, this is Eric Kafka.  We do

 9   not have an agreement, but we have a proposal, which is let the

10   parties and let the attorneys continue to speak by noon Pacific

11   on Monday.

12        We either have an agreement or we won't, and if we don't

13   have an agreement, you will understand the two slates that we

14   had before.

15        I think a little bit distance from the hearing and

16   weekend, those kind of conversations, we might get there but we

17   might not.  Let's make that final drop, that deadline.  If you

18   don't receive anything by noon Pacific, you will know there is

19   no agreement.

20              THE COURT:  I want you to actually contact me.  So I

21   don't have to sit by my phone.

22        But you will contact my clerk by noon on Monday, as to

23   whether or not -- which would be nine o'clock, your time in New

24   York, right?

25              MR. KAFKA:  Yes.  This is Eric Kafka, it would be
```

UNITED STATES DISTRICT COURT

 1   3:00 in New York.

 2            MR. LOESER:  Noon, right.

 3            THE COURT:  They are ahead.

 4            MR. LOESER:  In many ways, they are behind.

 5            THE COURT:  They don't think so.

 6        Let me ask, then, should I do an inquiry, because I

 7   still didn't talk to you guys about the mediation stuff.

 8            MS. GROMBACHER:  We would like to do whatever Your

 9   Honor needs on your end, so you are prepared to make a ruling.

10            THE COURT:  Let me talk with the two slates, so as

11   to slate number -- with the JC slate, so let me see Mr. Bloch

12   and Mr. Kafka.

13            MR. POWERS:  Your Honor, I'm happy to stay if you

14   are going to conduct discussions in camera.  Should I be here

15   waiting?

16            THE COURT:  You are billing anyway, right?

17            MR. POWERS:  I'm happy to stay if Your Honor would

18   like me to.

19            THE COURT:  Your client is going to pay.  They are

20   willing to stay.  They are going to take you out to a nice

21   lunch.

22            MR. POWERS:  I am taking them out to a nice lunch.

23            THE COURT:  Where are you going to go?

24        Let's go off the record.

25                    (Off the record discussion.)

1        THE COURT:  Let me just indicate at this point in

2   time, the rest of the discussions are going to be in camera, so

3   I'm not going to put anything else on the record.

4            (The proceedings concluded at 12:14 p.m.)

5                              *  *  *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

1          **CERTIFICATE OF OFFICIAL REPORTER**

2

3    COUNTY OF LOS ANGELES    )
                              )
4    STATE OF CALIFORNIA      )

5

6          I, TERRI A. HOURIGAN, Federal Official Realtime

7    Court Reporter, in and for the United States District Court for

8    the Central District of California, do hereby certify that

9    pursuant to Section 753, Title 28, United States Code that the

10   foregoing is a true and correct transcript of the

11   stenographically reported proceedings held in the

12   above-entitled matter and that the transcript page format is in

13   conformance with the regulations of the judicial conference of

14   the United States.

15

16   Date: 1st day of June, 2025.

17

18

19                           /s/ TERRI A. HOURIGAN

20                  _____
                    TERRI A. HOURIGAN, CSR NO. 3838, RPR, CRR
21                         Federal Court Reporter

22

23

24

25

**$**

**$2,000** [1] - 46:5

**/**

**/KHRAOE** [1] - 24:18
**/s** [1] - 70:19

**0**

**07068** [1] - 3:15

**1**

**10** [2] - 14:13, 14:18
**1000** [1] - 3:5
**10005** [1] - 2:6
**10:00** [2] - 1:11, 5:2
**11** [3] - 14:13, 33:16, 33:18
**1111** [1] - 4:9
**11th** [2] - 26:14, 26:18
**12** [4] - 14:13, 14:18, 62:4, 66:2
**1201** [1] - 4:4
**12:14** [1] - 69:2
**13** [7] - 13:20, 14:18, 15:13, 15:14, 15:15, 16:4, 28:7
**13th** [5] - 23:25, 24:1, 26:12, 26:19, 26:21
**14** [2] - 14:14, 14:18
**14th** [1] - 2:6
**15** [1] - 14:14
**15th** [1] - 3:21
**16** [1] - 14:14
**16th** [2] - 23:4, 23:8
**17** [1] - 3:10
**18th** [1] - 23:10
**19th** [3] - 22:23, 23:11, 23:12
**1:30** [1] - 33:17
**1st** [1] - 70:16

**2**

**20** [5] - 21:19, 29:24, 66:7, 66:9, 66:25
**200** [1] - 3:10
**2008** [1] - 29:11
**2019** [1] - 14:3
**2025** [3] - 1:11, 5:1, 70:16
**20th** [2] - 23:17, 23:19, 23:21, 66:11
**2100** [1] - 4:9
**213** [1] - 1:22

**22** [1] - 15:17
**23** [1] - 42:2
**23(g** [1] - 56:15
**23rd** [2] - 22:24, 23:2
**24** [1] - 50:14
**240** [1] - 2:14
**24th** [2] - 23:6, 23:16
**25** [1] - 15:18
**25-ML-3144-GW** [1] - 1:7
**25th** [2] - 23:6, 23:16
**28** [1] - 70:9
**28th** [3] - 15:1, 15:18, 17:24
**29** [2] - 1:11, 5:1

**3**

**30,000** [6] - 10:23, 11:8, 12:2, 13:13, 13:14
**30-day** [3] - 9:21, 14:20, 14:21
**300** [1] - 2:10
**31,000** [1] - 45:10
**31365** [1] - 2:14
**3144** [1] - 1:10
**32502** [1] - 3:10
**33301** [1] - 3:18
**33322** [1] - 2:22
**3400** [1] - 4:4
**350** [1] - 1:21
**365** [1] - 3:5
**3838** [2] - 1:20, 70:20
**3:00** [1] - 67:25

**4**

**4** [1] - 55:10
**40** [1] - 45:10
**4311** [1] - 1:21
**470** [1] - 2:10
**4800** [1] - 10:22

**5**

**5** [1] - 3:14
**50** [4] - 41:12, 43:7, 43:25, 45:9
**500** [2] - 2:22, 3:17
**5th** [1] - 15:2

**6**

**6057** [1] - 2:18
**64112** [1] - 2:10

**7**

**70130** [1] - 3:6

**753** [1] - 70:9

**8**

**88** [1] - 2:6
**894-2849** [1] - 1:22

**9**

**9** [1] - 14:19
**90012** [1] - 1:21
**90036** [1] - 2:18
**91361** [1] - 2:14
**94111** [1] - 4:14
**94607** [1] - 4:9
**98101** [1] - 4:5
**9:30** [2] - 23:22, 66:14

**A**

**A.A** [1] - 2:3
**A.B** [1] - 2:3
**a.C** [1] - 3:19
**A.C** [1] - 2:3
**A.M** [1] - 5:2
**a.m** [1] - 1:11
**abide** [1] - 32:11
**abided** [1] - 11:15
**ability** [3] - 36:10, 49:2, 59:22
**able** [11] - 8:20, 15:6, 16:15, 37:7, 41:15, 50:12, 50:13, 50:15, 50:16, 60:24
**above-entitled** [1] - 70:12
**absolutely** [1] - 54:1
**accept** [3] - 63:9, 65:22, 65:23
**accommodate** [1] - 32:5
**account** [1] - 14:19
**accounts** [6] - 10:22, 11:7, 13:15, 16:20, 17:1, 17:2
**accurate** [1] - 25:16
**accused** [1] - 55:17
**acting** [1] - 20:9
**action** [5] - 34:12, 43:4, 43:5, 44:7, 56:7
**actions** [4] - 12:8, 12:14, 45:14, 49:20
**actively** [1] - 42:5
**activity** [2] - 14:4, 14:25
**acts** [1] - 55:22
**actual** [1] - 16:17, 30:12, 30:13
**ad** [1] - 16:1

**added** [1] - 15:2
**Addiction** [3] - 57:14, 57:19, 58:5
**addition** [4] - 14:24, 20:20, 24:9
**additional** [2] - 24:4, 24:6
**address** [3] - 9:17, 12:6, 29:2
**addresses** [1] - 16:10
**administrative** [2] - 47:8, 47:11
**administrators** [1] - 45:2
**ads** [1] - 15:22
**adult** [1] - 16:15
**adults** [1] - 27:16
**adversaries** [1] - 38:10
**advertising** [4] - 15:23, 17:16, 27:7, 27:14
**advise** [1] - 45:5
**affect** [2] - 24:20, 41:22
**affects** [1] - 24:16
**AG** [5] - 24:21, 25:5, 25:9, 25:10, 25:17
**age** [5] - 13:20, 14:11, 14:12, 16:4, 39:12
**ago** [1] - 62:14
**agree** [9] - 11:18, 21:2, 24:6, 25:25, 40:21, 61:12, 63:8
**agreed** [1] - 24:3
**agreement** [6] - 60:3, 60:5, 67:8, 67:11, 67:12, 67:18
**agrees** [1] - 33:4
**AGs** [1] - 26:3
**ahead** [1] - 68:2
**al** [1] - 38:19
**Alaska** [1] - 53:3
**algorithm** [1] - 16:25
**algorithms** [1] - 14:15
**alleged** [1] - 25:22
**allow** [5] - 16:7, 21:11, 22:12, 32:4, 41:19
**allowed** [6] - 13:20, 14:6, 16:9, 16:11, 16:12, 22:10
**Alto** [2] - 66:5, 66:19
**amended** [2] - 42:22, 56:1
**analysis** [1] - 43:22
**Andre** [1] - 12:5

**ANGELA** [1] - 2:3
**Angeles** [1] - 2:18
**ANGELES** [4] - 1:12, 1:21, 5:1, 70:3
**answer** [3] - 10:10, 10:16, 36:6
**answers** [1] - 46:23
**anticipate** [2] - 53:19, 53:22
**anyway** [2] - 6:18, 68:15
**apace** [1] - 55:22
**APLC** [1] - 3:3
**apologies** [1] - 57:25
**appeal** [4] - 14:20, 14:21, 14:22, 16:17
**appeals** [1] - 47:18
**appear** [1] - 66:13
**APPEARANCES** [3] - 2:1, 3:1, 4:1
**appearances** [1] - 6:2
**appearing** [2] - 2:17, 59:10
**appendage** [1] - 57:19
**application** [4] - 15:4, 59:23, 60:17, 60:20
**appoint** [4] - 36:3, 40:8, 40:12, 51:21
**appointed** [11] - 35:15, 37:24, 41:11, 42:11, 42:19, 45:18, 49:23, 57:22, 58:3, 58:19, 58:25
**appointing** [2] - 38:5, 38:23
**appointment** [4] - 34:25, 35:9, 35:20, 37:23
**appreciate** [2] - 41:17, 54:3
**approach** [3] - 43:14, 43:16, 47:15
**appropriate** [3] - 9:19, 43:22, 64:18
**appropriately** [1] - 49:9
**approved** [1] - 49:17
**April** [4] - 15:1, 15:17, 15:18, 17:24
**areas** [1] - 37:11
**argue** [1] - 53:20
**argued** [2] - 57:17, 65:13
**argument** [3] - 18:16, 19:13, 53:12
**arguments** [2] - 40:2, 43:7

**ARMBRUSTER** [1] - 2:15
**arranged** [1] - 8:4
**arrangements** [1] - 32:10
**article** [1] - 46:3
**aspect** [1] - 33:22
**aspects** [3] - 37:19, 39:24, 48:7
**assertions** [1] - 9:3
**assessment** [3] - 14:11, 16:20, 16:22
**assign** [1] - 49:16
**assigned** [2] - 59:17, 59:20
**associate** [1] - 46:6
**associates** [6] - 45:3, 46:5, 64:24, 65:6
**assume** [3] - 35:3, 41:3, 43:6
**assuming** [1] - 20:1
**assure** [1] - 44:4
**attempt** [1] - 48:14
**attention** [1] - 46:3
**attitude** [1] - 61:8
**Attorney** [14] - 2:5, 2:9, 2:13, 2:17, 2:21, 3:9, 3:14, 3:17, 3:21, 4:4, 4:8, 12:8, 24:21, 25:12
**attorney** [1] - 61:11
**attorney's** [4] - 45:7, 48:10, 61:23, 62:1
**Attorneys** [2] - 3:4, 4:13
**attorneys** [9] - 12:12, 41:1, 41:6, 41:25, 43:10, 44:24, 62:20, 64:13, 67:9
**audios** [1] - 16:10
**audited** [1] - 45:23
**Australia** [1] - 29:8
**Australian** [2] - 29:6, 29:14
**automatically** [2] - 16:18, 45:9
**available** [4] - 11:20, 28:20, 50:14, 51:1
**Avenue** [2] - 2:10, 4:4
**aware** [2] - 20:11, 25:3
**Aylstock** [5] - 33:1, 36:22, 38:16, 44:17, 48:12
**AYLSTOCK** [15] - 3:8, 3:9, 32:25, 33:6, 33:11, 36:22, 37:4, 37:13, 48:12, 49:13,

49:19, 49:22, 50:22, 51:8, 65:19
**Aylstock's** [1] - 38:4

# B

**back-end** [1] - 39:8
**background** [3] - 26:13, 27:3, 27:19
**BAIN** [1] - 3:13
**bankruptcy** [1] - 46:14
**banned** [1] - 13:23
**based** [5] - 10:17, 11:6, 13:19, 37:5, 55:6
**bases** [3] - 25:19, 39:23
**basis** [6] - 19:16, 28:8, 39:19, 39:21, 46:18, 57:1
**battle** [1] - 39:15
**Beach** [1] - 51:7
**beauty** [2] - 33:19, 34:5
**Becker** [1] - 3:14
**become** [1] - 57:19
**beginning** [1] - 38:17
**behalf** [5] - 5:17, 30:25, 33:1, 58:25, 59:6
**behind** [1] - 68:3
**believes** [1] - 59:7
**belongs** [1] - 18:14
**below** [1] - 15:13
**bench** [1] - 48:22
**besmirch** [1] - 12:12
**best** [10] - 15:4, 49:4, 50:19, 50:22, 51:5, 51:21, 51:23, 52:18
**better** [8] - 14:9, 24:14, 30:4, 33:19, 48:25, 49:3, 51:24, 59:12
**between** [6] - 17:9, 18:8, 19:6, 40:12, 52:9, 54:14
**big** [5] - 38:21, 41:2, 49:25, 52:13
**bill** [1] - 45:7
**billed** [1] - 45:11
**billing** [4] - 45:8, 45:19, 45:20, 68:15
**billion** [1] - 35:3
**billions** [1] - 50:24
**binding** [2] - 7:16, 22:9
**bing** [1] - 16:25
**birthday** [1] - 66:21
**bit** [7] - 15:3, 34:16,

36:23, 44:17, 55:1, 58:11, 67:14
**blame** [1] - 19:11
**blink** [1] - 64:9
**BLOCH** [20] - 3:20, 22:25, 35:8, 35:22, 46:25, 47:24, 48:4, 54:12, 54:25, 55:11, 55:15, 55:18, 56:11, 57:5, 57:17, 57:25, 58:2, 59:2, 61:4, 64:2
**bloch** [1] - 44:11
**Bloch** [3] - 47:24, 62:7, 68:10
**block** [4] - 45:7, 45:8, 45:11, 45:20
**bona** [1] - 47:9
**Boulevard** [2] - 2:22, 3:17
**BRADLEY** [1] - 2:12
**Branch** [1] - 5:16
**break** [1] - 66:2
**breathing** [1] - 23:16
**Brian** [3] - 32:25, 36:22, 48:12
**brief** [2] - 50:17
**briefed** [2] - 56:1, 57:18
**briefly** [1] - 24:12
**briefs** [1] - 37:15
**Broadway** [1] - 4:9
**broth** [1] - 48:15
**brought** [1] - 26:2
**BRYAN** [1] - 3:9
**BRYNE** [1] - 3:13
**Buchanan** [1] - 51:4
**business** [2] - 18:13, 39:25
**butt** [1] - 27:24
**BY** [13] - 2:5, 2:9, 2:13, 2:17, 2:21, 3:3, 3:9, 3:13, 3:16, 3:20, 4:3, 4:8, 4:12
**ByteDance** [1] - 5:11

# C

**CALIFORNIA** [5] - 1:2, 1:12, 1:21, 5:1, 70:4
**California** [6] - 2:14, 2:18, 4:9, 4:14, 43:14, 70:8
**camera** [19] - 21:11, 21:17, 26:24, 29:24, 34:9, 36:24, 36:25, 37:1, 37:3, 44:23, 47:1, 47:3, 47:13, 48:1, 48:2, 54:21, 68:13, 68:25

**Canal** [2] - 3:5, 3:5
**candles** [1] - 22:19
**cannot** [1] - 7:3
**capable** [1] - 57:10
**CARDOSO** [1] - 2:21
**cards** [1] - 31:6
**care** [2] - 13:1, 33:14
**CARELLA** [1] - 3:13
**cart** [2] - 18:5, 22:25
**CARTMELL** [1] - 2:8
**case** [69] - 9:6, 10:6, 10:20, 10:21, 11:13, 19:22, 20:2, 20:10, 20:11, 20:14, 24:16, 24:18, 24:20, 24:21, 24:22, 24:24, 25:3, 30:6, 34:22, 35:11, 36:15, 37:5, 37:8, 37:19, 37:20, 37:22, 38:7, 38:9, 38:10, 38:21, 39:1, 39:4, 39:16, 40:6, 41:11, 42:1, 42:7, 44:5, 45:10, 50:8, 50:12, 52:9, 52:10, 53:22, 54:20, 55:8, 55:19, 55:20, 55:23, 56:3, 56:18, 56:19, 56:21, 56:25, 57:10, 57:11, 57:12, 58:6, 58:24, 59:21, 59:22, 59:24, 62:8, 64:13, 64:14, 64:15, 65:6
**Case** [1] - 1:6
**cases** [30] - 7:6, 10:3, 12:7, 13:2, 24:13, 24:16, 24:17, 24:20, 25:5, 25:9, 25:10, 25:12, 25:15, 25:17, 25:20, 25:23, 26:1, 26:2, 34:12, 43:24, 47:16, 50:2, 50:24, 51:22, 58:18, 59:1, 64:8
**catch** [1] - 66:3
**categories** [2] - 15:18, 17:15
**categorized** [1] - 43:13
**category** [1] - 40:22
**CCRR** [1] - 1:20
**CECCHI** [19] - 3:13, 24:21, 24:25, 38:3, 38:13, 39:2, 39:4, 40:3, 40:21, 41:10, 42:4, 42:20, 43:21, 44:16, 44:20, 51:10, 61:18, 61:24, 62:2
**Cecchi** [1] - 38:3
**Center** [1] - 4:14

**centered** [1] - 55:19
**CENTRAL** [2] - 1:2
**Central** [1] - 70:8
**central** [1] - 12:18
**certain** [10] - 7:24, 16:12, 17:1, 17:4, 20:8, 37:19, 39:24, 55:2, 56:14, 57:7
**certainly** [9] - 12:19, 40:21, 43:21, 46:1, 48:9, 50:7, 53:16, 56:8, 66:15
**CERTIFICATE** [1] - 70:1
**certification** [2] - 43:23, 52:14
**certify** [1] - 70:8
**cetera** [1] - 11:11, 11:12
**challenges** [1] - 60:1
**chambers** [1] - 34:10
**chance** [1] - 6:12
**change** [2] - 19:24, 36:3
**CHANTELL** [1] - 3:2
**charge** [3] - 36:13, 46:15, 64:5
**charged** [1] - 45:1
**charges** [2] - 46:5, 48:10
**charging** [2] - 44:25, 46:14
**chart** [1] - 21:7
**cheap** [1] - 61:21
**cheapest** [1] - 61:23
**Checci** [2] - 49:8, 50:8
**check** [2] - 25:6, 25:8
**children** [2] - 41:13, 54:6
**choice** [7] - 43:8, 43:17, 44:1, 53:11, 54:5, 54:14, 57:2
**choose** [9] - 6:21, 34:18, 34:20, 35:23, 35:25, 36:7, 36:8, 41:23, 54:7
**choosing** [1] - 60:15
**chosen** [1] - 35:4
**CHRISTINA** [1] - 2:7
**Circuit** [1] - 55:19
**City** [1] - 2:10
**civil** [2] - 30:11, 49:15
**claims** [2] - 12:18, 55:21
**clarify** [1] - 58:2
**class** [17] - 18:22, 34:12, 43:4, 43:5, 43:6, 43:20, 43:22,

44:7, 45:14, 49:4,
49:20, 51:19, 52:11,
52:13, 52:18, 56:17,
57:1
  **class-wide** [1] - 57:1
  **classes** [1] - 43:22
  **clear** [2] - 15:4,
60:10
  **clearer** [1] - 62:15
  **clerk** [1] - 67:21
  **client** [1] - 68:18
  **clients** [1] - 53:25
  **clues** [1] - 13:18
  **co** [1] - 58:19
  **co-lead** [1] - 58:19
  **coast** [1] - 46:10
  **Code** [1] - 70:9
  **cognizant** [1] - 19:3
  **COHEN** [1] - 2:4
  **coherent** [1] - 44:5
  **collaboration** [1] -
54:14
  **colleagues** [2] -
17:22, 35:7
  **collect** [1] - 16:9
  **collected** [1] - 45:21
  **color** [1] - 15:3
  **combat** [1] - 56:4
  **comment** [3] - 28:10,
30:22, 30:23
  **comments** [3] -
14:16, 38:4, 54:16
  **committee** [24] -
38:19, 38:25, 40:7,
40:8, 40:12, 40:15,
48:13, 48:16, 48:17,
48:22, 54:15, 58:4,
59:16, 59:20, 61:14,
63:1, 64:18, 65:11,
65:14, 65:17, 65:18,
65:20, 65:24
  **committees** [1] -
40:9
  **common** [1] - 33:12
  **companies** [1] - 13:5
  **company** [2] - 14:10,
16:7
  **compensated** [1] -
64:23
  **competent** [1] - 50:7
  **competing** [4] - 34:9,
34:13, 34:14, 44:10
  **competition** [1] -
25:24
  **complaint** [4] -
24:22, 28:3, 42:22,
56:1
  **complete** [1] - 41:19
  **completely** [1] -
37:10

  **complexities** [1] -
39:7
  **complexity** [1] - 8:19
  **compliance** [1] -
14:3
  **comply** [3] - 13:22,
14:1, 15:5
  **complying** [1] - 8:25
  **component** [1] -
42:11
  **compromise** [3] -
38:8, 38:14, 40:5
  **compromises** [1] -
38:14
  **concerned** [3] -
26:12, 34:5, 34:15
  **conclude** [1] - 13:19
  **concluded** [1] - 69:2
  **conclusion** [1] -
16:20
  **concomitant** [1] -
38:24
  **conduct** [1] - 68:13
  **conference** [3] -
15:18, 51:7, 70:13
  **CONFERENCE** [1] -
1:10
  **confidence** [1] -
50:25
  **confidential** [1] -
22:5
  **confidentiality** [1] -
32:12
  **confirm** [2] - 27:14,
28:25
  **conflict** [3] - 23:2,
43:18, 53:11
  **conformance** [1] -
70:13
  **confronting** [1] -
10:24
  **Connecticut** [1] -
3:22
  **consensus** [1] -
38:15
  **consent** [1] - 18:20
  **consequence** [1] -
22:12
  **consequential** [2] -
39:6, 39:16
  **consider** [4] - 23:3,
23:15, 61:15, 65:25
  **consideration** [2] -
38:5, 40:20
  **considered** [2] -
43:14, 43:16
  **considering** [1] -
48:7
  **consistent** [3] - 61:1,
65:7

  **consolidated** [3] -
42:22, 55:25, 57:18
  **Consumer** [1] - 5:16
  **consumer** [1] - 55:21
  **contact** [3] - 41:6,
67:19, 67:21
  **contemplating** [1] -
65:10
  **contest** [2] - 33:20,
34:5
  **context** [1] - 54:13
  **contexts** [1] - 51:16
  **contingency** [2] -
46:18, 46:19
  **continue** [1] - 67:9
  **contribute** [2] -
51:15, 58:22
  **control** [2] - 59:6,
59:22
  **conversation** [3] -
28:21, 36:5, 65:12
  **conversations** [3] -
61:8, 65:10, 67:15
  **conversely** [1] - 64:8
  **cooks** [1] - 48:15
  **COPPA** [9] - 12:9,
13:22, 14:2, 14:3,
16:6, 16:7, 25:13,
25:18, 55:6
  **correct** [5] - 53:4,
58:21, 59:2, 59:3,
70:10
  **cost** [1] - 31:21
  **counsel** [65] - 5:11,
5:13, 6:8, 6:21, 8:15,
9:25, 18:2, 18:3, 25:2,
26:1, 32:11, 34:8,
34:9, 34:15, 34:19,
34:20, 35:10, 35:15,
35:20, 37:9, 38:6,
38:22, 38:23, 38:24,
40:13, 40:17, 40:19,
40:24, 41:3, 41:6,
41:22, 42:16, 44:22,
44:25, 45:4, 45:21,
46:16, 46:23, 47:6,
47:14, 48:19, 49:6,
49:8, 49:11, 49:16,
49:17, 50:20, 50:23,
51:16, 51:25, 53:1,
57:8, 59:1, 59:7,
59:17, 59:18, 60:7,
60:14, 62:8, 62:10,
67:6
  **COUNSEL** [3] - 2:1,
3:1, 4:1
  **counsel's** [1] - 35:12
  **counsels'** [1] - 6:2
  **country** [2] - 25:17,
41:12, 63:24

  **COUNTY** [1] - 70:3
  **couple** [3] - 15:10,
17:15, 34:6
  **Court** [26] - 5:7, 6:11,
10:4, 10:6, 11:5,
11:11, 20:5, 20:7,
23:2, 23:15, 23:25,
39:20, 41:9, 43:10,
45:18, 45:19, 45:24,
55:4, 57:8, 57:22,
58:7, 60:22, 70:7,
70:20
  **court** [6] - 36:23,
48:1, 50:19, 54:11,
54:20, 64:7
  **COURT** [172] - 1:1,
1:20, 5:9, 5:18, 5:20,
5:22, 5:24, 6:3, 6:16,
8:7, 8:10, 8:15, 8:18,
9:2, 9:8, 9:24, 10:18,
10:25, 11:16, 12:10,
13:1, 13:8, 13:12,
15:8, 15:15, 16:14,
16:22, 16:25, 17:7,
17:14, 17:18, 18:1,
18:8, 18:15, 18:19,
18:24, 19:10, 19:15,
19:21, 20:15, 20:17,
21:2, 21:5, 21:8,
21:15, 21:22, 22:2,
22:16, 22:18, 22:21,
23:4, 23:7, 23:10,
23:12, 23:17, 23:19,
23:21, 23:24, 24:24,
25:2, 25:7, 25:9,
25:14, 25:19, 25:25,
26:7, 26:9, 26:23,
27:10, 27:16, 27:18,
27:24, 28:5, 28:24,
29:6, 29:10, 29:22,
30:22, 31:5, 31:11,
31:17, 31:20, 32:4,
32:13, 32:16, 32:22,
33:4, 33:13, 33:18,
33:24, 34:2, 34:4,
35:1, 35:14, 35:23,
36:16, 36:25, 37:11,
38:1, 38:11, 38:18,
39:3, 39:17, 40:11,
40:23, 41:17, 42:15,
43:3, 44:9, 44:19,
44:21, 46:2, 46:9,
46:17, 47:2, 47:12,
48:2, 48:5, 48:14,
49:10, 49:18, 49:21,
50:21, 51:6, 51:11,
52:1, 52:5, 52:15,
52:22, 53:6, 53:24,
54:2, 54:22, 55:9,
55:13, 55:17, 56:10,

  **COUNTY** [1] - 70:3
  57:4, 57:15, 57:24,
58:10, 59:10, 61:10,
62:10, 61:25, 62:3,
62:18, 63:3, 63:13,
63:20, 63:25, 64:4,
64:8, 65:16, 65:20,
65:23, 66:6, 66:8,
66:12, 66:14, 66:18,
66:22, 66:25, 67:5,
67:19, 68:2, 68:4,
68:9, 68:15, 68:18,
68:22, 68:23
  **Court's** [5] - 9:1,
13:25, 14:2, 19:4,
63:17
  **courtroom** [2] -
17:24, 22:15
  **COURTROOM** [9] -
5:6, 5:19, 6:1, 23:9,
30:21, 30:24, 31:19,
33:17, 67:3
  **courts** [1] - 25:12
  **cover** [2] - 13:6,
13:11
  **covered** [1] - 42:9
  **covering** [1] - 17:21
  **crack** [1] - 57:24
  **cracks** [1] - 59:10
  **create** [1] - 36:16
  **creative** [1] - 12:16
  **Creek** [1] - 2:14
  **CRR** [1] - 70:20
  **CSR** [2] - 1:20, 70:20
  **curious** [1] - 36:4

## D

  **D.C** [1] - 64:22
  **damages** [4] - 11:6,
30:12, 30:13, 39:16
  **DANIEL** [1] - 4:12
  **Daniel** [1] - 5:21
  **data** [9] - 13:24,
15:2, 18:9, 18:10,
18:12, 18:14, 18:18,
28:12, 28:17
  **database** [1] - 28:14
  **databases** [1] -
28:14
  **date** [3] - 19:10,
22:22, 22:23
  **Date** [1] - 70:16
  **DAVID** [2] - 3:4, 4:13
  **DC** [1] - 34:2
  **deadline** [1] - 67:16
  **deal** [5] - 60:18,
61:13, 62:6, 62:14,
63:10
  **dealing** [2] - 6:13,
25:6

dealt [1] - 27:2
decide [1] - 67:6
decision [8] - 10:17, 36:3, 36:14, 40:22, 48:8, 48:9, 55:20, 63:6
decision-making [1] - 40:22
decisions [2] - 55:18, 63:7
declaration [1] - 59:25
deep [1] - 26:5
defendant [4] - 10:3, 12:1, 24:5, 39:6
DEFENDANT [1] - 4:11
defendant's [2] - 11:9, 24:10
defendants [6] - 8:13, 10:13, 12:22, 53:19, 55:24, 56:3
defense [15] - 5:20, 6:1, 20:22, 25:2, 25:25, 31:6, 35:2, 46:7, 46:13, 46:16, 46:20, 46:23, 53:1, 53:21, 53:25
defense's [2] - 31:8, 39:24
defer [1] - 36:14
deference [1] - 56:14
delegated [1] - 49:5
delegates [1] - 49:11
deleted [2] - 13:24, 14:23
deletion [2] - 14:4, 14:25
deletions [1] - 14:5
deliberately [1] - 7:17
demonstrated [3] - 38:8, 50:11, 50:25
Department [1] - 5:16
deposition [5] - 15:21, 15:22, 15:25, 51:3, 51:5
DEPUTY [9] - 5:6, 5:19, 6:1, 23:9, 30:21, 30:24, 31:19, 33:17, 67:3
Derek [1] - 8:6
DEREK [1] - 4:3
deserves [1] - 58:7
desire [1] - 40:5
destroy [1] - 10:14
destroyed [1] - 24:15
destroying [1] - 10:8
destruction [2] -

24:13, 24:19
details [2] - 36:11, 37:6
detect [1] - 14:15
determination [4] - 17:2, 17:5, 42:17, 57:16
determinative [1] - 7:19
determine [1] - 31:13
detriment [2] - 51:19, 55:16
developed [1] - 65:5
developing [1] - 65:8
devil [2] - 36:11, 37:5
dialog [1] - 12:17
difference [5] - 18:8, 40:12, 52:9, 53:6, 53:8
differences [1] - 60:24
different [13] - 11:2, 13:18, 18:24, 20:11, 34:16, 36:8, 37:13, 37:15, 43:12, 49:21, 51:13, 51:14, 64:17
differently [2] - 29:4, 53:2
difficult [1] - 54:5
diluted [1] - 57:6
dinner [1] - 66:21
disagreed [1] - 33:8
disagreement [3] - 17:9, 40:18, 41:2
disclosure [1] - 19:1
discount [1] - 45:9
discoverable [2] - 20:6
discovery [8] - 18:7, 20:1, 20:2, 20:8, 20:14, 50:18, 55:23
discretion [7] - 35:16, 36:7, 36:9, 39:21, 47:25, 59:12, 64:3
discuss [3] - 12:19, 28:1, 40:25
discussed [1] - 28:7
discusses [1] - 28:3
discussing [1] - 47:20
discussion [3] - 15:8, 33:14, 63:12
discussions [2] - 68:13, 68:25
dismiss [1] - 55:25
disputed [1] - 52:16
disservice [2] - 56:17, 56:23
distance [1] - 67:14

distillation [2] - 20:25, 21:3
District [3] - 5:7, 70:7, 70:8
DISTRICT [3] - 1:1, 1:2, 1:3
district [1] - 47:8
dive [1] - 26:5
diversity [1] - 50:5
DIVISION [1] - 1:2
docket [1] - 49:15
document [7] - 20:18, 21:10, 24:2, 24:11, 26:15, 26:21
documented [1] - 14:4
documents [5] - 21:14, 21:16, 28:16, 28:19, 28:23
DOJ [1] - 33:21
dollars [1] - 50:24
done [17] - 7:5, 7:11, 7:25, 8:3, 16:22, 20:22, 20:23, 27:18, 33:11, 43:24, 44:17, 49:3, 49:7, 51:24, 52:20, 61:17, 63:5
doubt [1] - 63:22
down [4] - 10:12, 12:11, 12:20, 31:12
draw [1] - 48:22
drawing [1] - 51:17
Drive [1] - 2:14
drop [1] - 67:16
dropped [1] - 65:18
DUGAN [2] - 3:3, 3:3
during [1] - 23:8

## E

eager [1] - 64:13
early [2] - 37:16, 47:20
East [1] - 3:10
east [1] - 46:10
easy [3] - 30:9, 30:10, 34:15
echo [1] - 38:3
educate [1] - 30:16
educational [2] - 7:18, 21:23
effect [1] - 55:9
effective [1] - 40:9
effectively [1] - 32:11
effort [2] - 52:21, 59:5, 63:2
efforts [4] - 9:22, 19:5, 39:8, 42:4
egos [1] - 38:14

either [5] - 36:1, 36:23, 47:22, 48:1, 67:11
elaborate [1] - 13:17
Embarcadero [1] - 4:14
embarrassing [1] - 60:2
end [9] - 15:2, 24:8, 39:8, 39:10, 45:25, 58:1, 65:2, 65:4, 68:8
endeavor [1] - 43:2
ends [1] - 53:17
enforcing [1] - 19:25
engaging [1] - 42:5
enrichment [1] - 55:21
entertain [1] - 19:13
entertaining [1] - 33:24
entertainment [1] - 34:1
entire [1] - 63:24
entitled [4] - 18:7, 18:18, 18:25, 70:12
entries [1] - 45:10
envision [1] - 38:23
equipped [1] - 57:2
ERIC [2] - 2:5, 4:8
Eric [2] - 67:7, 67:24
ESI [1] - 51:5
especially [4] - 7:21, 27:1, 27:2, 30:13
essentially [2] - 41:14, 48:22
et [3] - 11:11, 38:19
ether [1] - 9:15
evidence [8] - 10:17, 11:3, 12:17, 13:20, 17:5, 19:1, 19:23
evidentiary [1] - 7:13
ex [1] - 15:3
ex-parte [1] - 15:3
exact [1] - 30:7
exactly [3] - 19:16, 19:17, 30:14
example [11] - 10:19, 11:1, 11:4, 11:20, 13:12, 27:3, 35:1, 36:6, 37:14, 41:4, 52:9
excellent [1] - 64:23
except [1] - 38:18
exchanging [2] - 21:14, 21:15
excuse [1] - 14:18
excused [1] - 33:22
executive [23] - 38:19, 38:25, 40:7, 40:8, 40:9, 40:12,

40:14, 48:13, 48:16, 48:17, 48:22, 54:15, 59:15, 59:16, 61:13, 63:1, 64:18, 65:11, 65:13, 65:16, 65:17, 65:20, 65:24
exercises [1] - 39:20
exhaustive [1] - 19:5
exist [1] - 16:9
existential [1] - 39:5
existing [1] - 37:17
expect [2] - 7:18, 7:19
experience [7] - 27:15, 28:1, 28:3, 28:7, 51:17, 55:6, 56:5
expert [1] - 50:13
experts [5] - 12:19, 12:20, 29:15, 29:18, 50:12
explained [1] - 39:7
explanation [1] - 29:24
expression [1] - 46:22
extensive [1] - 55:22
extent [1] - 31:2
extraordinary [1] - 8:14
extremely [1] - 16:5
eye [1] - 64:10
EZ [1] - 41:11

## F

faced [1] - 62:23
fact [10] - 9:4, 11:8, 37:9, 37:23, 39:4, 42:12, 46:17, 48:3, 55:24, 59:7
factors [2] - 56:11, 56:15
facts [2] - 10:19, 55:1
fair [1] - 19:12
fairly [1] - 47:20
false [2] - 7:17, 22:11
familiar [3] - 7:1, 8:1, 19:17
family [1] - 66:22
far [2] - 37:5, 37:7
Farm [1] - 3:14
faster [1] - 6:18
FAUCETT [1] - 2:3
fault [2] - 55:4, 55:5
favor [1] - 56:16
fear [1] - 54:25
feasible [1] - 8:16
Federal [1] - 70:6,

70:20

**FEDERAL** [1] - 1:20
**fee** [3] - 46:12, 46:18, 47:1
**feed** [1] - 56:11
**fees** [9] - 44:22, 45:7, 45:16, 46:19, 46:20, 48:10, 61:23, 62:1, 64:2
**few** [1] - 27:21
**fewer** [2] - 5:11, 65:7
**fides** [1] - 47:9
**fields** [1] - 28:16
**fights** [1] - 60:20
**figure** [5] - 6:6, 8:20, 10:17, 17:20, 51:22
**figures** [1] - 48:10
**file** [2] - 26:18, 26:19
**filed** [3] - 26:14, 56:7, 58:16
**files** [1] - 26:24
**filing** [1] - 26:11
**filings** [1] - 46:14
**filled** [1] - 40:9
**final** [2] - 41:10, 67:16
**fine** [3] - 23:20, 63:8, 66:10
**finished** [1] - 31:4
**firm** [25] - 25:4, 34:21, 35:12, 35:17, 45:2, 46:7, 46:10, 49:23, 50:13, 50:16, 50:18, 51:12, 51:18, 51:22, 51:24, 55:8, 56:5, 56:16, 56:18, 58:2, 58:3, 59:19, 63:25, 64:1, 64:20
**FIRM** [1] - 3:3
**firm's** [1] - 55:6
**firms** [12] - 38:24, 46:10, 46:13, 49:25, 50:1, 56:8, 56:14, 64:19, 64:21, 65:2, 65:7
**FIRST** [1] - 1:21
**first** [11] - 6:5, 6:7, 6:13, 6:17, 29:10, 34:11, 34:18, 35:17, 37:20, 39:7, 56:7
**five** [1] - 61:11
**flagged** [1] - 16:15
**flight** [1] - 6:11
**Floor** [2] - 2:6, 3:21
**Florida** [4] - 2:22, 3:10, 3:18, 53:3
**flower** [1] - 37:25
**fly** [1] - 31:21
**FLYNN** [2] - 2:16, 2:17

**folks** [2] - 62:6, 63:1
**follow** [1] - 44:1
**followed** [1] - 62:16
**FOR** [12] - 2:3, 2:7, 2:11, 2:15, 2:19, 3:2, 3:7, 3:12, 3:19, 4:2, 4:6, 4:11
**force** [3] - 18:6, 23:13, 61:16
**foregoing** [1] - 70:10
**formally** [1] - 6:4
**format** [4] - 21:5, 28:19, 34:16, 70:12
**Fort** [2] - 2:22, 3:18
**forward** [2] - 27:23, 44:6
**fought** [1] - 62:4
**four** [3] - 12:22, 63:23, 65:17
**FRANCIS** [2] - 2:16, 2:17
**Francisco** [3] - 4:14, 10:20, 27:5
**frank** [1] - 6:17
**frankly** [11] - 7:24, 11:13, 37:19, 38:15, 48:24, 51:18, 54:4, 58:17, 60:2, 60:12, 62:14
**fraught** [1] - 37:17
**Friday** [1] - 23:19
**front** [2] - 39:10, 60:2
**frustrating** [1] - 62:22
**full** [1] - 17:24
**full-time** [1] - 17:24
**fully** [4] - 19:3, 20:11, 56:1, 63:2
**function** [2] - 39:1, 49:8
**functions** [2] - 40:7, 51:24
**furthermore** [1] - 65:5
**future** [3] - 7:7, 7:20, 11:22

## G

**game** [1] - 21:24
**gaps** [1] - 19:6
**gate** [1] - 14:11
**general** [1] - 45:15
**General** [3] - 12:8, 24:21, 25:12
**generally** [2] - 6:19, 30:5
**generating** [1] - 27:7
**generation** [2] - 64:24, 65:8

**geography** [1] - 50:5
**GEORGE** [1] - 1:3
**Georgia** [1] - 43:16
**gestured** [2] - 52:5, 52:6
**Ghandi** [2] - 64:1, 64:2
**GIBBS** [2] - 4:7, 4:8
**GILFILLAN** [1] - 3:13
**given** [3] - 9:22, 22:14, 61:19
**GOLUB** [1] - 3:20
**Google** [1] - 56:25
**government** [4] - 5:17, 31:1, 32:14
**government's** [2] - 24:18, 31:8
**Grand** [1] - 2:10
**grant** [1] - 61:25
**great** [3] - 32:16, 54:5, 63:5
**grenade** [1] - 58:12
**GROMBACHER** [10] - 2:12, 2:13, 29:9, 34:23, 47:7, 48:20, 58:13, 59:4, 59:11, 68:7
**Grombacher** [1] - 44:13
**Grombacher's** [1] - 50:16
**group** [16] - 36:6, 38:7, 38:9, 41:14, 42:5, 42:10, 48:24, 50:2, 50:4, 50:10, 52:20, 53:19, 59:8, 61:6, 65:1
**grouped** [1] - 43:25
**groups** [1] - 36:10
**guess** [4] - 15:11, 33:13, 54:7, 65:9
**guidance** [10] - 60:8, 60:9, 60:12, 61:2, 61:19, 62:9, 62:11, 62:15, 62:16, 62:23
**guidelines** [1] - 34:24
**guise** [1] - 54:13
**guys** [21] - 7:10, 20:18, 24:6, 25:7, 26:10, 26:11, 30:16, 31:20, 31:22, 34:9, 54:4, 54:9, 61:10, 61:11, 61:13, 61:22, 63:15, 63:20, 66:2, 67:6, 68:6

## H

**H.T** [1] - 2:19

**hand** [1] - 58:11
**handful** [1] - 18:22
**handle** [2] - 49:4, 57:2
**handling** [2] - 25:4, 57:10
**happy** [8] - 19:6, 19:12, 33:2, 36:22, 48:1, 54:20, 68:12, 68:16
**harbor** [1] - 21:21
**hard** [3] - 60:17, 63:6, 63:7
**hates** [1] - 36:19
**hear** [9] - 9:18, 9:24, 30:19, 30:22, 33:3, 50:21, 52:13, 54:12, 54:19
**heard** [1] - 29:8
**hearing** [2] - 33:23, 67:14
**heart** [1] - 60:9
**held** [2] - 36:12, 70:11
**help** [2] - 59:24, 63:1
**helpful** [4] - 11:24, 13:11, 31:3, 32:9
**hereby** [1] - 70:8
**high** [3] - 45:3, 46:20, 46:21
**higher** [2] - 64:21, 65:3
**highly** [3] - 39:5, 57:10, 65:6
**hint** [1] - 62:18
**hire** [1] - 49:11
**hired** [1] - 53:24
**history** [4] - 27:11, 37:5, 40:8, 49:14
**hive** [2] - 28:13, 28:14
**hold** [4] - 26:20, 31:3, 36:18, 55:16
**holding** [1] - 55:17
**holiday** [2] - 22:23, 23:12
**honest** [1] - 34:11
**honestly** [1] - 16:4
**Honor** [71] - 6:10, 8:17, 8:22, 9:17, 10:23, 11:15, 12:13, 13:7, 13:16, 14:25, 16:3, 16:13, 17:8, 17:24, 19:2, 19:20, 20:7, 20:25, 22:25, 25:8, 25:11, 26:6, 27:12, 27:13, 27:21, 31:3, 32:3, 32:21, 32:25, 33:9, 33:21, 34:23, 35:8, 35:22,

37:4, 40:21, 43:23, 44:4, 45:12, 46:8, 46:22, 46:25, 47:24, 48:12, 48:20, 49:13, 51:10, 51:12, 51:20, 53:5, 54:19, 55:11, 56:21, 57:6, 57:12, 57:23, 58:12, 59:12, 60:8, 60:10, 60:14, 61:4, 62:5, 62:10, 62:15, 66:17, 67:7, 68:8, 68:12, 68:16
**Honor's** [2] - 36:14, 47:25
**HONORABLE** [1] - 1:3
**hope** [2] - 53:16, 66:24
**hopefully** [2] - 6:24, 48:8
**horse** [2] - 18:5, 23:1
**hot** [4] - 29:4, 29:7, 29:13, 29:14
**hour** [2] - 46:5, 46:23
**HOURIGAN** [4] - 1:20, 70:6, 70:19, 70:20
**hourly** [1] - 45:25
**hours** [3] - 44:25, 49:17, 50:14
**HOWARD** [1] - 4:8
**Hudson** [2] - 50:8, 52:4
**HUDSON** [6] - 2:9, 52:3, 52:6, 52:16, 53:16, 54:1
**human** [4] - 16:17, 16:19, 16:22, 17:1
**HUMBERT** [1] - 3:7
**Humbert** [8] - 38:7, 38:9, 38:19, 41:14, 42:5, 44:14, 50:10, 61:5
**humble** [1] - 38:12
**hundreds** [1] - 28:18
**hurt** [1] - 53:13

## I

**idea** [2] - 42:10, 59:4
**ideas** [1] - 50:5
**identified** [1] - 17:12
**identifies** [1] - 13:18
**identify** [1] - 16:11
**II** [1] - 3:3
**immediate** [1] - 7:20
**imminently** [1] - 57:9
**imperative** [1] - 8:11
**impermissible** [1] - 15:23

**implement** [1] - 39:11
**important** [10] - 10:10, 10:16, 38:5, 41:11, 42:7, 42:14, 59:15, 60:4, 64:14, 64:15
**impose** [1] - 39:22
**imposed** [1] - 39:25
**impression** [1] - 28:2
**IN** [1] - 1:5
**Inc** [1] - 5:23
**INC** [1] - 1:5
**inclined** [1] - 36:16
**include** [3] - 15:20, 24:7, 56:18
**included** [1] - 38:19
**including** [5] - 12:8, 14:9, 17:23, 40:14, 57:13
**incomplete** [1] - 19:8
**incredibly** [2] - 15:19, 61:25
**independent** [3] - 57:13, 58:7, 58:9
**indicate** [4] - 6:19, 7:12, 41:6, 68:24
**indicated** [6] - 14:1, 25:14, 35:18, 35:23, 38:11, 38:16
**individual** [1] - 11:7
**individually** [1] - 54:9
**individuals** [1] - 13:14
**infeasibility** [1] - 12:17
**infeasible** [1] - 15:6
**infinitely** [1] - 20:13
**influence** [1] - 59:22
**inform** [2] - 43:21, 65:12
**information** [18] - 12:18, 14:7, 14:22, 16:1, 16:2, 16:6, 16:8, 16:12, 20:8, 25:10, 25:20, 26:4, 26:13, 26:25, 27:3, 27:19, 28:20, 32:12
**informed** [1] - 28:21
**inhouse** [1] - 17:23
**injunction** [2] - 14:3, 17:6
**injunctive** [4] - 30:8, 30:10, 39:5, 39:10
**innuendos** [1] - 54:16
**inputs** [1] - 51:14
**inquiry** [1] - 68:5
**insist** [1] - 63:3

**insisted** [1] - 62:7
**insofar** [6] - 16:14, 26:12, 30:2, 34:5, 34:15, 44:14
**inspiring** [2] - 38:8, 38:14
**instruction** [1] - 7:13
**intended** [3] - 60:10, 60:11, 62:10
**intention** [1] - 42:10
**intentionally** [1] - 22:11
**interacted** [1] - 14:17
**interest** [1] - 33:22
**interesting** [1] - 27:19
**interests** [1] - 49:4
**interim** [1] - 35:20
**interject** [1] - 40:25
**introduced** [1] - 29:10
**invasion** [1] - 55:21
**investigation** [1] - 56:6
**invite** [1] - 42:20
**invited** [3] - 31:2, 42:25, 59:11
**involved** [6] - 7:2, 41:15, 45:13, 60:19, 64:9, 64:19
**involves** [2] - 31:14, 63:11
**involving** [2] - 12:9, 57:1
**issue** [17] - 6:8, 6:9, 6:12, 6:14, 7:19, 10:12, 10:24, 11:13, 18:21, 18:24, 21:21, 34:1, 35:20, 41:2, 43:18, 52:17, 63:10
**issued** [3] - 15:1, 35:19, 60:8
**issues** [6] - 7:24, 43:14, 43:16, 53:10, 56:2, 57:1
**issuing** [1] - 32:17
**item** [1] - 33:19

**J**

**J.O** [1] - 2:19
**J.R** [1] - 3:12
**JACQUELYN** [1] - 3:2
**James** [1] - 38:3
**JAMES** [2] - 3:3, 3:13
**Javier** [2] - 31:18, 33:15
**JC** [2] - 44:12, 68:10
**JEFF** [1] - 3:16

**Jersey** [2] - 3:15, 24:22
**Jim** [1] - 41:16
**job** [1] - 64:11
**JODY** [1] - 2:3
**John** [1] - 41:16
**join** [1] - 59:8
**joint** [3] - 21:10, 24:1, 26:15
**jostling** [1] - 64:16
**JPML** [1] - 58:16
**JR** [3] - 2:3, 2:16, 2:17
**Judge** [4] - 38:3, 39:2, 44:20, 63:17
**judge** [5] - 10:14, 29:17, 53:16, 63:7, 63:16
**JUDGE** [1] - 1:3
**judges** [4] - 29:4, 29:12, 45:14, 61:23
**judicial** [1] - 70:13
**June** [10] - 22:24, 23:19, 23:25, 24:1, 26:12, 26:15, 26:19, 26:21, 70:16
**Juneteenth** [1] - 23:14
**junior** [2] - 45:3, 59:19
**jury** [1] - 18:15
**Justice** [1] - 5:16

**K**

**KAFKA** [9] - 2:5, 27:21, 27:25, 28:6, 64:12, 65:22, 66:7, 67:6, 67:24
**Kafka** [5] - 44:11, 62:7, 67:7, 67:24, 68:11
**Kansas** [1] - 2:10
**keep** [6] - 14:6, 14:8, 58:6, 58:17, 58:18, 59:9
**keeping** [1] - 51:18
**KELLER** [1] - 4:3
**Keller** [1] - 57:21
**kept** [3] - 14:5, 24:3, 24:15
**kid** [4] - 7:22, 15:11, 16:11
**kids** [10] - 15:16, 15:20, 15:21, 16:2, 16:3, 16:8, 17:16, 28:4, 28:5, 28:7
**Kiley** [1] - 41:16
**KILEY** [1] - 2:13
**kind** [6] - 9:14,

11:18, 22:14, 34:21, 54:13, 67:15
**kiss** [1] - 27:24
**knowledge** [2] - 55:7, 56:5
**knows** [1] - 28:11
**KOPELOWITZ** [2] - 2:20, 3:16
**KREIS** [1] - 3:8
**KRISTEN** [1] - 2:21

**L**

**lack** [3] - 13:4, 14:9, 33:19
**LAMARTINE** [1] - 2:3
**Landmark** [1] - 3:21
**large** [5] - 7:23, 46:15, 61:25, 62:2, 65:2
**largely** [1] - 49:8
**larger** [1] - 46:19
**largest** [1] - 49:14
**Las** [2] - 2:22, 3:17
**last** [3] - 10:13, 53:23, 61:5
**lasted** [1] - 62:4
**late** [1] - 61:4
**Lauderdale** [2] - 2:22, 3:18
**law** [16] - 19:3, 19:24, 19:25, 33:12, 43:8, 43:17, 43:18, 44:1, 45:2, 51:12, 53:8, 53:11, 54:14, 55:7, 57:2, 66:23
**Law** [13] - 2:5, 2:9, 2:13, 2:17, 2:21, 3:4, 3:9, 3:14, 3:17, 3:21, 4:4, 4:8, 4:13
**LAW** [2] - 2:16, 3:3
**laws** [2] - 43:11, 43:12
**lawsuit** [1] - 62:3
**lawyer** [2] - 38:9, 59:19
**lawyers** [5] - 17:23, 41:15, 51:21, 51:23, 60:3
**lead** [39] - 6:8, 18:3, 34:15, 34:18, 34:20, 35:15, 35:20, 37:9, 37:21, 37:24, 38:6, 38:10, 38:22, 40:6, 40:17, 40:18, 41:3, 41:22, 42:16, 42:19, 44:24, 47:9, 49:5, 49:8, 49:16, 49:17, 50:7, 50:17, 51:16, 51:25, 52:10, 58:19,

59:16, 59:18, 59:24, 60:6, 60:14, 62:7, 62:10
**leader** [2] - 49:11, 58:19
**leaders** [1] - 40:8
**leadership** [18] - 38:6, 38:8, 38:13, 40:9, 48:4, 48:7, 49:16, 54:15, 54:17, 54:20, 57:13, 57:22, 58:3, 58:23, 59:23, 60:19, 64:25, 65:8
**leading** [2] - 56:16, 56:18
**leads** [10] - 16:20, 41:17, 44:16, 48:21, 50:10, 58:22, 65:22, 65:23, 65:24
**learn** [1] - 28:22
**least** [2] - 23:16, 47:14
**leave** [1] - 63:11
**led** [3] - 28:2, 49:14, 49:20
**less** [1] - 60:6
**letter** [4] - 15:17, 27:25, 37:16, 41:5
**level** [2] - 45:2, 45:3
**liability** [1] - 30:9
**liaison** [9] - 38:24, 40:13, 40:16, 40:24, 41:5, 47:6, 48:19
**lied** [1] - 14:11
**light** [1] - 20:14
**lights** [2] - 22:17, 22:18
**likelihood** [1] - 63:19
**likely** [1] - 62:12
**limit** [1] - 21:19
**limited** [2] - 16:5, 29:24
**lines** [1] - 11:25
**listen** [2] - 29:19, 62:12
**listening** [1] - 31:25
**lists** [1] - 20:19
**litigated** [1] - 56:19
**LITIGATION** [1] - 1:5
**Litigation** [1] - 5:23
**litigation** [3] - 11:22, 55:7, 56:23
**LLP** [6] - 2:8, 2:12, 3:20, 4:3, 4:7, 4:12
**lodge** [1] - 47:3
**Loeser** [3] - 8:6, 44:13, 57:21
**LOESER** [23] - 4:3, 8:6, 8:8, 8:11, 10:1, 22:17, 36:5, 45:12,

46:7, 46:12, 46:22, 57:23, 58:1, 58:11, 59:3, 59:12, 62:5, 62:22, 63:23, 64:6, 64:11, 68:1, 68:3
**Loeser's** [2] - 58:2, 58:3
**look** [8] - 11:22, 12:12, 19:22, 21:6, 49:2, 50:25, 63:14, 65:3
**looking** [3] - 27:6, 28:22, 31:25
**Los** [1] - 2:18
**LOS** [4] - 1:12, 1:21, 5:1, 70:3
**lost** [1] - 64:16
**Louisiana** [1] - 3:6
**low** [1] - 45:2
**lower** [2] - 46:15, 65:4
**lunch** [2] - 68:20, 68:21
**LYNN** [1] - 2:13

## M

**Magistrate** [1] - 63:16
**Main** [1] - 3:10
**main** [1] - 13:19
**maintain** [1] - 27:5
**maintaining** [1] - 32:12
**major** [5] - 30:11, 36:17, 41:7, 41:8
**majority** [1] - 42:9
**manageable** [2] - 44:6, 44:8
**mandated** [1] - 14:3
**Marcus** [4] - 5:15, 30:25, 33:21
**Markmans** [1] - 29:12
**MARTIN** [1] - 3:2
**mass** [2] - 49:18, 49:19
**massive** [1] - 9:22
**Massorts** [1] - 49:21
**masterful** [1] - 64:11
**match** [1] - 42:3
**material** [1] - 6:9
**materials** [4] - 14:8, 14:9, 14:10, 14:24
**Matt** [1] - 5:21
**matter** [6] - 5:9, 5:10, 5:14, 35:8, 41:23, 70:12
**matters** [1] - 6:7
**MATTHEW** [1] - 4:13

**MAY** [1] - 5:1
**MDL** [10] - 1:10, 24:25, 40:8, 51:7, 57:14, 57:20, 57:22, 58:5, 58:9, 59:18
**MDLs** [3] - 34:12, 45:14, 49:14
**mean** [8] - 11:9, 15:9, 19:2, 40:1, 58:17, 58:21, 63:14, 64:9
**meaningful** [1] - 51:15
**meaningfully** [1] - 37:21
**means** [1] - 28:16
**media** [1] - 58:20
**Media** [9] - 24:20, 57:13, 57:19, 57:22, 58:4, 58:14, 58:25, 59:5, 59:18
**mediation** [10] - 47:15, 47:20, 48:3, 54:10, 56:22, 63:12, 63:13, 63:14, 63:16, 68:6
**mediator** [1] - 63:21
**meet** [1] - 12:23
**member** [1] - 59:19
**members** [3] - 43:6, 58:2, 65:11
**men** [1] - 50:6
**mess** [1] - 47:17
**messy** [2] - 47:18
**Metropolitan** [1] - 2:18
**microphone** [3] - 8:7, 8:9, 12:10
**middle** [2] - 12:23, 45:3
**MIDDLETON** [1] - 2:7
**might** [13] - 5:12, 6:17, 18:19, 18:24, 22:3, 22:11, 31:3, 35:23, 53:7, 58:21, 61:12, 67:15, 67:16
**MILSTEIN** [1] - 2:4
**mind** [1] - 62:19
**mindful** [1] - 58:8
**mine** [1] - 36:1
**Minor** [1] - 5:23
**minor** [3] - 25:10, 25:20, 41:13
**MINOR** [1] - 1:5
**minors** [7] - 13:13, 18:13, 18:14, 18:22, 19:1, 26:4, 27:2
**minute** [1] - 66:1
**minutes** [4] - 61:11,

66:7, 66:9, 66:25
**misbranding** [1] - 25:23
**misleading** [1] - 59:14
**misperceived** [1] - 55:3
**misrepresentations** [1] - 25:22
**missed** [1] - 55:2
**Missouri** [1] - 2:10
**mix** [1] - 42:2
**mode** [13] - 7:22, 15:11, 15:12, 15:16, 15:20, 15:21, 16:2, 16:3, 16:8, 17:16, 28:4, 28:5, 28:7
**model** [1] - 65:5
**moderation** [1] - 14:10
**moderators** [1] - 16:19
**modestly** [1] - 35:3
**moment** [1] - 42:13
**Monday** [2] - 67:10, 67:21
**monetarily** [1] - 39:5
**monetary** [1] - 11:6
**monetize** [1] - 39:14
**money** [1] - 64:9
**month** [2] - 8:24, 9:18, 11:21
**months** [2] - 11:19, 53:23
**mood** [1] - 22:19
**morning** [3] - 32:25, 34:14, 66:15
**most** [4] - 17:12, 25:4, 25:22, 61:1
**motion** [1] - 55:25
**Motion** [1] - 1:10
**motions** [1] - 20:5
**move** [1] - 44:5
**moving** [2] - 27:23, 42:10
**MR** [174] - 5:15, 5:21, 6:10, 8:6, 8:8, 8:11, 8:16, 8:19, 9:6, 9:16, 10:1, 10:22, 11:15, 12:5, 12:13, 12:25, 13:4, 13:10, 13:16, 15:14, 15:16, 16:19, 16:24, 17:4, 17:8, 17:15, 17:22, 18:4, 18:11, 18:17, 18:20, 18:25, 19:12, 19:20, 19:22, 20:16, 20:24, 21:3, 21:7, 21:14, 21:17, 21:20, 21:25, 22:14, 22:17, 22:20,

22:25, 23:5, 23:11, 23:15, 23:18, 23:20, 23:23, 24:21, 24:25, 25:4, 25:8, 25:11, 25:16, 25:21, 26:5, 26:8, 26:21, 27:9, 27:11, 27:13, 27:17, 27:20, 27:21, 27:25, 28:6, 29:1, 29:8, 29:20, 30:25, 31:10, 31:13, 32:2, 32:8, 32:9, 32:10, 32:15, 32:21, 32:25, 33:6, 33:8, 33:11, 33:21, 34:1, 34:3, 35:8, 35:22, 36:5, 36:22, 37:4, 37:13, 38:3, 38:13, 39:2, 39:4, 40:3, 40:21, 41:10, 42:4, 42:20, 43:21, 44:16, 44:20, 45:12, 46:7, 46:12, 46:22, 46:25, 47:24, 48:4, 48:12, 49:13, 49:19, 49:22, 50:22, 51:8, 51:10, 52:3, 52:6, 52:16, 53:4, 53:16, 54:1, 54:12, 54:25, 55:11, 55:15, 55:18, 56:11, 57:5, 57:17, 57:23, 57:25, 58:1, 58:2, 58:11, 59:2, 59:3, 59:12, 61:4, 61:18, 61:24, 62:2, 62:5, 62:22, 63:10, 63:19, 63:22, 63:23, 64:2, 64:6, 64:11, 64:12, 65:19, 65:22, 66:5, 66:7, 66:11, 66:13, 66:17, 66:20, 66:24, 67:7, 67:24, 68:1, 68:3, 68:12, 68:16, 68:21
**MS** [8] - 29:9, 34:23, 47:7, 48:20, 58:13, 59:4, 59:11, 68:7
**multi** [1] - 52:11
**multi-state** [1] - 52:11
**multiple** [1] - 8:21
**Mura** [2] - 12:5, 44:13
**MURA** [4] - 4:7, 12:5, 12:13, 25:11
**mura** [1] - 59:8
**music** [1] - 24:18
**MYERS** [1] - 4:12

## N

**name** [1] - 12:5
**named** [10] - 41:22, 41:25, 42:1, 42:3, 42:6, 42:17, 42:21, 44:24, 52:23
**names** [1] - 16:10
**nationwide** [1] - 52:9
**nature** [2] - 22:14, 43:24
**near** [1] - 7:7
**necessarily** [10] - 7:4, 22:12, 34:23, 36:4, 40:1, 40:17, 52:15, 53:11, 53:14, 62:20
**necessary** [2] - 49:6, 49:7
**need** [15] - 9:18, 12:10, 15:4, 17:20, 18:15, 18:20, 26:13, 27:1, 33:7, 40:4, 51:23, 53:12, 54:15, 58:8
**needs** [3] - 43:18, 54:25, 68:8
**negotiate** [2] - 60:16, 65:15
**negotiation** [2] - 12:20, 12:21
**never** [3] - 8:8, 29:8, 34:13
**New** [8] - 2:6, 3:6, 3:15, 24:22, 64:22, 67:22, 67:25
**new** [1] - 64:1
**next** [4] - 20:25, 33:18, 64:24, 65:8
**nice** [5] - 33:5, 34:2, 66:18, 68:19, 68:21
**night** [1] - 61:5
**nine** [2] - 65:1, 67:22
**Ninth** [1] - 55:19
**NO** [2] - 1:20, 70:20
**nobody** [5] - 28:22, 36:17, 55:17, 58:23, 63:17
**none** [1] - 58:21
**noon** [7] - 6:11, 6:15, 63:11, 67:9, 67:17, 67:21, 68:1
**normally** [1] - 60:21
**note** [4] - 57:7, 57:12, 59:15, 61:4
**noted** [1] - 56:10
**nothing** [3] - 20:10, 33:18, 36:1
**notify** [1] - 14:21
**notoriously** [1] -

61:21
  **number** [8] - 11:2, 34:12, 40:22, 60:15, 64:19, 65:2, 65:11, 68:10
  **numbers** [1] - 62:2

## O

  **o'clock** [2] - 6:10, 67:22
  **O'MELVENY** [1] - 4:12
  **Oak** [1] - 2:14
  **Oakland** [1] - 4:9
  **object** [1] - 20:4
  **objection** [4] - 31:10, 31:12, 36:17, 36:20
  **objections** [1] - 24:10
  **objective** [2] - 42:6, 44:7
  **objects** [1] - 50:1
  **obligation** [5] - 10:4, 19:23, 33:12, 37:14, 37:17
  **obligations** [6] - 9:1, 10:7, 12:7, 12:14, 19:3, 20:12
  **obviously** [18] - 10:19, 15:5, 15:11, 24:6, 25:25, 26:3, 30:8, 30:16, 32:13, 35:12, 35:15, 36:12, 40:16, 40:19, 44:23, 55:4, 62:21, 63:17
  **occur** [2] - 14:20, 14:22
  **occurred** [1] - 56:7
  **odd** [1] - 40:22
  **OF** [9] - 1:2, 1:10, 2:1, 2:16, 3:1, 4:1, 70:1, 70:3, 70:4
  **offense** [1] - 39:17
  **offensive** [1] - 59:6
  **offer** [1] - 61:19
  **offered** [1] - 12:22
  **OFFICE** [1] - 2:16
  **Official** [1] - 70:6
  **OFFICIAL** [2] - 1:20, 70:1
  **offset** [1] - 11:14
  **often** [2] - 46:12, 46:14
  **ofttimes** [2] - 40:1, 40:16
  **Olas** [2] - 2:22, 3:17
  **old** [1] - 50:5
  **once** [3] - 10:11, 14:25, 20:1

  **One** [4] - 2:22, 3:5, 3:17, 3:21
  **one** [53] - 5:20, 6:7, 6:16, 6:20, 6:25, 7:5, 8:2, 8:21, 9:12, 9:18, 13:6, 22:21, 26:14, 26:15, 26:16, 26:19, 28:11, 32:17, 33:10, 35:25, 36:8, 36:21, 41:10, 45:12, 46:9, 48:18, 48:19, 49:15, 50:21, 52:3, 52:10, 52:13, 52:20, 56:6, 58:1, 58:16, 58:19, 60:1, 60:5, 60:11, 61:9, 61:20, 61:23, 62:13, 62:21, 62:25, 63:23, 64:1, 64:23, 65:17, 65:18
  **one-sided** [1] - 61:9
  **one-third** [1] - 49:15
  **open** [6] - 13:15, 36:23, 48:1, 54:11, 54:20, 64:6
  **operate** [4] - 13:5, 16:13, 29:4, 53:1
  **operates** [6] - 7:9, 7:21, 21:13, 27:1, 29:24, 52:25
  **operation** [1] - 53:7
  **operations** [2] - 22:6, 39:24
  **opinion** [1] - 38:12
  **opportunity** [2] - 18:6, 63:4
  **opposed** [1] - 54:7
  **opposition** [1] - 57:18
  **order** [18] - 5:7, 7:15, 10:21, 11:13, 13:22, 14:1, 15:1, 15:5, 16:12, 18:9, 19:4, 19:24, 32:11, 33:7, 35:21, 52:18, 67:4
  **ordered** [1] - 20:7
  **orders** [10] - 9:1, 11:11, 12:6, 13:25, 24:12, 24:13, 24:19, 24:23, 25:5, 26:17
  **originally** [2] - 40:14, 61:14
  **Orleans** [1] - 3:6
  **OSTROW** [3] - 2:20, 3:16, 3:16
  **otherwise** [3] - 6:15, 30:2, 45:1
  **outweighed** [1] - 39:24
  **overbroad** [1] - 15:20

  **OVERHOLTZ** [1] - 3:8
  **overlap** [1] - 58:17
  **overwhelming** [1] - 56:15
  **own** [6] - 20:9, 21:10, 35:23, 35:25, 36:16, 40:5

## P

  **p.m** [1] - 69:2
  **PA** [2] - 2:20, 3:16
  **Pacific** [2] - 67:9, 67:17
  **page** [2] - 55:10, 70:12
  **pages** [3] - 21:19, 29:25, 35:3
  **paid** [2] - 46:23, 46:24
  **Palm** [1] - 51:7
  **Palo** [2] - 66:5, 66:19
  **panel** [1] - 63:17
  **papers** [5] - 14:1, 21:1, 21:4, 54:23, 57:6
  **paralegals** [1] - 45:2
  **parents** [2] - 18:20, 41:13
  **part** [6] - 7:23, 21:20, 24:25, 26:9, 42:11, 59:13
  **parte** [1] - 15:3
  **participate** [5] - 31:2, 31:15, 31:22, 31:24, 37:21
  **participating** [3] - 35:13, 45:22, 57:11
  **participation** [3] - 31:9, 32:4, 56:16
  **particular** [6] - 7:19, 10:19, 14:2, 17:2, 46:10, 58:9
  **particularly** [4] - 26:2, 28:21, 48:25, 51:6
  **parties** [13] - 6:20, 8:4, 10:18, 11:17, 17:9, 19:6, 27:23, 47:13, 47:14, 47:19, 60:23, 63:4, 67:9
  **partly** [1] - 64:21
  **partner** [1] - 59:19
  **partners** [4] - 45:4, 64:21, 65:2
  **party** [2] - 19:22, 20:1
  **past** [3] - 6:11, 6:14, 14:11

  **patent** [3] - 7:6, 29:10, 46:10
  **pay** [1] - 68:18
  **peace** [1] - 36:18
  **penalties** [1] - 30:12
  **Pensacola** [1] - 3:10
  **people** [21] - 7:2, 8:21, 9:19, 14:13, 16:4, 27:6, 27:14, 38:8, 38:14, 39:12, 39:14, 40:10, 44:19, 49:1, 59:6, 60:5, 60:16, 62:12, 62:24, 63:23, 64:15
  **per** [2] - 46:23, 64:5
  **percent** [2] - 45:9, 45:10
  **percentage** [2] - 62:2, 65:3
  **perfectly** [1] - 63:9
  **perhaps** [5] - 8:23, 12:23, 39:4, 46:24, 53:7
  **peril** [2] - 20:9, 37:18
  **period** [6] - 9:21, 11:19, 11:21, 14:20, 14:21, 14:22
  **person** [13] - 8:21, 13:6, 14:18, 16:18, 28:11, 29:20, 35:4, 41:24, 47:7, 48:18, 48:19, 65:18
  **personal** [3] - 16:7, 34:24, 35:10
  **personally** [2] - 37:6, 57:17
  **persons** [4] - 29:21, 30:19, 35:16, 45:2
  **petition** [2] - 46:13, 58:16
  **PETROCELLI** [75] - 4:12, 5:21, 6:10, 8:16, 8:19, 9:6, 9:16, 10:22, 11:15, 12:25, 13:4, 13:10, 13:16, 15:14, 15:16, 16:19, 16:24, 17:4, 17:8, 17:15, 17:22, 18:4, 18:11, 18:17, 18:20, 18:25, 19:12, 19:20, 19:22, 20:16, 20:24, 21:3, 21:7, 21:14, 21:17, 21:20, 21:25, 22:14, 22:20, 23:5, 23:11, 23:15, 23:18, 23:20, 23:23, 25:4, 25:8, 25:16, 25:21, 26:5, 26:8, 26:21, 27:9, 27:11, 27:17, 27:20, 29:1, 29:8, 29:20,

31:10, 32:8, 32:10, 32:15, 32:21, 33:8, 53:4, 63:10, 63:19, 63:22, 66:5, 66:11, 66:13, 66:17, 66:20, 66:24
  **Petrocelli** [5] - 5:21, 33:3, 33:11, 39:7, 66:3
  **Phillips** [2] - 63:25, 64:1
  **phone** [7] - 5:15, 30:19, 30:23, 31:15, 41:15, 60:25, 67:20
  **pick** [6] - 41:15, 60:11, 62:10, 62:13, 62:25
  **picks** [1] - 63:1
  **PIERRE** [1] - 2:3
  **Pine** [1] - 2:6
  **Place** [1] - 3:5
  **place** [4] - 9:23, 13:17, 21:6, 45:16
  **PLAINTIFF** [10] - 2:7, 2:11, 2:15, 2:19, 3:2, 3:7, 3:12, 3:19, 4:2, 4:6
  **plaintiff** [7] - 20:20, 24:4, 41:1, 42:3, 52:11, 52:12, 52:19
  **plaintiff's** [4] - 9:24, 18:2, 26:1, 58:4
  **PLAINTIFFS** [1] - 2:3
  **plaintiffs** [26] - 6:22, 6:23, 9:2, 11:5, 15:17, 24:4, 24:9, 30:6, 32:22, 32:23, 33:1, 39:19, 41:12, 41:22, 41:25, 42:1, 42:6, 42:12, 42:17, 42:19, 42:21, 42:24, 46:15, 53:17
  **plaintiffs'** [1] - 47:14
  **plane** [1] - 66:3
  **plans** [1] - 6:11
  **platform** [8] - 13:19, 13:21, 13:23, 14:17, 16:5, 25:23, 39:12, 39:14
  **play** [3] - 30:15, 43:19, 56:12
  **Plaza** [1] - 2:18
  **PLLC** [1] - 2:4
  **podium** [1] - 54:21
  **Point** [2] - 40:3
  **point** [26] - 7:12, 11:5, 16:17, 17:18, 18:17, 20:18, 29:14, 30:4, 32:19, 37:1, 37:2, 37:25, 40:4,

43:1, 43:9, 44:10, 45:5, 45:6, 45:14, 45:15, 45:17, 52:3, 52:8, 55:12, 65:16, 68:24

**pointing** [1] - 10:13

**points** [5] - 13:10, 19:13, 27:21, 54:17, 54:19

**portion** [2] - 16:15, 22:16

**position** [18] - 6:20, 6:24, 11:9, 20:15, 23:24, 28:24, 31:7, 31:8, 33:4, 40:18, 40:25, 41:4, 43:11, 52:1, 58:3, 58:22, 58:23, 58:24

**positioned** [1] - 56:6

**positions** [3] - 26:12, 26:25, 33:9

**possible** [1] - 12:25

**possibly** [2] - 7:25, 30:14

**posted** [1] - 14:16

**potential** [3] - 35:4, 43:17, 61:6

**potentially** [6] - 11:14, 16:16, 37:12, 39:16, 41:8, 43:20

**POWERS** [5] - 4:13, 27:13, 68:12, 68:16, 68:21

**Powers** [1] - 5:21

**powers** [1] - 6:13

**practical** [1] - 35:8

**praise** [2] - 55:13, 55:15

**precisely** [1] - 20:19

**prefer** [1] - 48:2

**preference** [2] - 32:9, 54:12

**prejudice** [2] - 8:25, 9:21

**preliminary** [1] - 34:6

**prepare** [2] - 21:4, 64:20

**prepared** [5] - 9:7, 37:10, 40:5, 56:3, 68:8

**preparing** [1] - 46:12

**present** [14] - 7:11, 17:20, 21:7, 41:8, 43:10, 43:23, 44:3, 44:4, 47:23, 48:5, 48:16, 50:4, 53:25, 54:11

**presentation** [3] - 7:16, 22:15, 31:14

**presented** [4] - 29:21, 31:16, 48:1, 54:23

**presenting** [3] - 29:23, 40:17, 54:22

**preservation** [28] - 6:9, 6:12, 6:17, 7:24, 9:1, 9:22, 10:4, 10:7, 10:21, 12:6, 12:7, 12:15, 19:2, 24:2, 24:6, 24:12, 24:19, 24:23, 25:5, 27:25, 28:7, 32:16, 33:12, 33:14, 37:14, 37:16, 39:8, 41:5

**preserve** [8] - 10:9, 11:20, 11:23, 15:2, 15:19, 19:23, 20:8, 37:17

**preserved** [15] - 9:10, 9:11, 9:12, 9:13, 9:14, 11:3, 17:6, 19:18, 20:19, 20:21, 24:7, 24:9, 26:17, 28:9

**preserving** [10] - 10:5, 16:1, 16:2, 17:10, 17:11, 17:13, 17:16, 18:9, 20:13, 27:20

**presume** [16] - 10:20, 26:1, 31:24, 32:13, 34:11, 34:20, 34:22, 35:4, 35:6, 35:19, 35:20, 47:2, 47:19, 52:24, 53:2, 63:15

**presumption** [1] - 15:12

**pretty** [3] - 8:13, 45:13, 62:23

**previously** [1] - 14:1

**primarily** [6] - 7:18, 28:13, 29:15, 29:18, 31:7, 31:25

**primary** [2] - 6:7, 30:8

**principles** [1] - 44:1

**privacy** [1] - 55:21

**PRIVACY** [1] - 1:5

**Privacy** [1] - 5:23

**private** [3] - 55:6, 63:15, 63:21

**problem** [8] - 10:3, 19:15, 30:8, 30:11, 31:23, 41:7, 41:8, 63:21

**problematic** [1] - 37:12

**proceeding** [1] -

55:22

**proceedings** [2] - 69:2, 70:11

**proceeds** [1] - 20:1

**process** [1] - 35:7

**processes** [1] - 14:15

**procure** [1] - 50:13

**produce** [1] - 35:2

**produced** [1] - 21:11

**producing** [1] - 35:3

**production** [4] - 18:9, 18:12, 18:18, 28:19

**productive** [1] - 37:7

**proffering** [1] - 34:19

**prohibits** [1] - 13:23

**properly** [2] - 9:10, 9:11

**proposal** [1] - 67:8

**proposed** [6] - 36:8, 38:18, 44:16, 48:21, 60:17, 61:15

**proposing** [1] - 11:1

**protected** [1] - 52:18

**protecting** [1] - 18:13

**protection** [1] - 55:22

**Protection** [1] - 5:16

**protective** [1] - 32:11

**protocol** [1] - 45:19

**protocols** [1] - 45:15

**provide** [4] - 18:7, 28:20, 45:23, 46:1

**provided** [1] - 23:25

**PSC** [1] - 41:11

**public** [1] - 22:7

**publish** [1] - 46:14

**pull** [1] - 24:23

**purpose** [1] - 38:20

**purposes** [8] - 7:13, 19:2, 27:7, 42:1, 43:7, 44:25, 65:9

**pursuant** [3] - 9:1, 16:6, 70:9

**put** [19] - 11:1, 13:8, 14:12, 15:25, 19:10, 19:14, 22:24, 23:10, 29:23, 31:5, 31:17, 38:17, 38:21, 45:16, 53:21, 59:24, 62:16, 63:13, 69:1

**putting** [2] - 18:5, 22:25

---

# Q

**qualified** [5] - 38:10, 38:12, 42:20, 57:10,

65:6

**qualities** [1] - 51:17

**quarterly** [1] - 45:24

**questions** [4] - 29:17, 30:1, 34:6

**quick** [1] - 63:14

**quickly** [4] - 8:12, 10:10, 10:16, 56:21

**quite** [2] - 49:12, 61:14

**quote** [2] - 15:1, 15:2

---

# R

**raised** [1] - 56:2

**rarely** [1] - 47:16

**rates** [5] - 45:25, 46:1, 46:15, 64:21, 65:4

**rather** [2] - 32:1, 47:9

**RE** [2] - 1:5, 1:10

**Re** [1] - 5:22

**reach** [1] - 60:18

**reached** [2] - 37:20, 61:5

**reaching** [1] - 38:16

**reaction** [1] - 62:23

**read** [3] - 33:10, 54:24, 62:9

**really** [12] - 7:1, 20:16, 30:6, 34:14, 49:13, 53:9, 53:12, 54:3, 59:9, 60:13, 65:6

**Realtime** [1] - 70:6

**reason** [4] - 22:8, 39:13, 62:6, 64:13

**reasoned** [1] - 10:17

**reasons** [3] - 11:2, 47:9, 59:24

**receive** [1] - 67:17

**recently** [3] - 15:16, 57:1, 61:1

**recess** [1] - 67:2

**recognize** [1] - 50:10

**recognized** [1] - 58:8

**record** [8] - 17:4, 22:13, 33:9, 46:4, 67:1, 67:5, 68:23, 69:1

**records** [2] - 14:5, 27:5

**red** [1] - 50:1

**refer** [1] - 29:6

**referencing** [1] - 12:13

**referred** [2] - 29:14, 44:12

**referring** [2] - 28:5, 48:4

**reflect** [1] - 7:23

**refuse** [1] - 60:16

**regard** [2] - 30:17, 39:21

**regarding** [1] - 45:6

**regards** [4] - 6:9, 24:2, 27:1, 27:2

**regrettably** [1] - 57:21

**regularly** [1] - 45:23

**regulated** [1] - 49:5

**regulations** [1] - 70:13

**reinforce** [1] - 33:3

**rejected** [1] - 61:7

**relate** [2] - 10:19, 26:3

**related** [4] - 12:8, 12:14, 25:12, 25:15

**relating** [1] - 19:1

**relationship** [1] - 44:2

**release** [1] - 22:7

**released** [1] - 22:13

**relegated** [1] - 47:10

**relevant** [2] - 26:2, 51:6

**relief** [4] - 8:13, 30:8, 39:5, 39:10

**relief-wise** [1] - 39:5

**remain** [3] - 5:6, 6:13, 67:3

**remind** [1] - 10:7

**reorientation** [1] - 55:1

**reply** [2] - 15:25, 50:17

**report** [1] - 46:1

**reported** [1] - 70:11

**reporter** [3] - 6:6, 21:25, 22:2

**Reporter** [2] - 70:7, 70:20

**REPORTER** [2] - 1:20, 70:1

**REPORTER'S** [1] - 1:10

**reports** [1] - 45:24

**representative** [4] - 11:18, 52:23, 53:13, 53:15

**representatives** [2] - 18:23, 43:20

**representing** [2] - 42:1, 53:17

**requests** [2] - 20:3, 20:4

**require** [2] - 8:2, 20:17

**required** [4] - 14:23,

24:15, 53:14
**requirements** [1] - 45:20
**requires** [1] - 38:22
**requiring** [1] - 18:9
**resist** [1] - 39:15
**resolution** [1] - 61:6
**resolve** [2] - 60:12, 60:24
**resolved** [5] - 43:18, 56:21, 56:25, 60:21, 61:1
**resources** [1] - 40:4
**respect** [3] - 12:14, 12:17, 14:25
**respond** [1] - 58:12
**response** [3] - 15:3, 20:21, 24:5
**responsible** [1] - 55:18
**responsive** [1] - 35:4
**rest** [2] - 66:16, 68:24
**restrain** [1] - 55:16
**restricted** [1] - 16:5
**retain** [2] - 11:10, 16:7
**retained** [2] - 16:6, 16:13
**review** [2] - 17:1, 45:24
**reviewers** [1] - 17:1
**reviewing** [1] - 57:6
**reviews** [1] - 16:18
**risk** [1] - 53:18
**Road** [1] - 3:14
**road** [2] - 10:12, 18:4
**ROHRBACK** [1] - 4:3
**role** [7] - 37:7, 37:24, 47:10, 50:9, 56:16, 56:18, 60:6
**romantic** [2] - 22:20, 22:21
**ROOM** [1] - 1:21
**room** [4] - 23:16, 61:11, 62:11, 62:24
**Roseland** [1] - 3:15
**RPR** [1] - 70:20
**Rule** [1] - 42:2
**rule** [3] - 19:16, 19:17, 20:5
**rules** [1] - 18:4
**ruling** [1] - 68:8
**run** [1] - 36:15
**rushed** [2] - 19:9, 19:11
**RYAN** [1] - 2:15

# S

**sacrifice** [1] - 40:5
**safe** [1] - 21:21
**San** [3] - 4:14, 10:20, 27:5
**sanguine** [1] - 56:20
**Saturday** [1] - 23:18
**saving** [1] - 14:25
**saw** [4] - 34:14, 46:3, 50:10, 52:10
**SCALIA** [1] - 3:4
**schedules** [1] - 47:1
**school** [2] - 66:20, 66:23
**scope** [2] - 20:4, 30:7
**SCOTT** [2] - 3:4, 3:7
**Seagar** [1] - 50:22
**seal** [3] - 21:11, 22:4, 22:15
**seated** [2] - 5:6, 67:3
**Seattle** [1] - 4:5
**second** [2] - 6:8, 35:18
**Section** [1] - 70:9
**securities** [1] - 52:10
**see** [7] - 6:24, 20:13, 33:2, 45:8, 46:15, 65:21, 68:10
**seek** [3] - 39:10, 47:9, 48:17
**seeking** [2] - 8:13, 37:9
**seem** [1] - 54:16
**Segar** [7] - 50:8, 50:19, 51:1, 51:4, 51:8, 65:19
**SEgar's** [1] - 50:18
**selecting** [1] - 63:21
**selection** [5] - 6:8, 41:21, 42:16, 43:19, 62:18
**SELLERS** [1] - 2:4
**send** [1] - 37:16
**senior** [4] - 46:5, 46:6, 64:24, 65:6
**sense** [3] - 24:14, 44:5, 52:7
**sensible** [2] - 20:24, 44:5
**separate** [4] - 58:6, 58:18, 59:9
**separately** [1] - 21:18
**series** [1] - 25:11
**seriously** [1] - 47:19
**serve** [3] - 42:7, 42:21, 42:25

**served** [1] - 15:23
**service** [1] - 11:10
**session** [1] - 5:8
**set** [4] - 19:10, 22:19, 22:22, 66:11
**setting** [1] - 27:22
**settled** [2] - 50:24, 51:22
**settlement** [4] - 50:19, 50:23, 56:23, 59:1
**seven** [1] - 65:1
**shall** [1] - 23:21
**shiny** [1] - 50:1
**shocked** [1] - 46:11
**shortly** [1] - 15:17
**show** [1] - 28:16
**shows** [1] - 32:6
**shut** [1] - 44:19
**side** [13] - 7:11, 20:22, 21:9, 21:10, 21:12, 21:17, 26:24, 32:18, 37:20, 47:22, 48:21, 54:10, 54:17
**sided** [1] - 61:9
**sides** [4] - 29:23, 35:19, 35:21, 45:5
**sides'** [1] - 23:24
**signed** [1] - 32:14
**significant** [2] - 18:21, 44:1
**signing** [1] - 39:12
**SILVER** [1] - 3:20
**simple** [1] - 34:14
**simply** [3] - 15:1, 37:25, 48:2
**single** [2] - 20:18, 21:5
**sit** [5] - 12:11, 12:20, 29:18, 53:18, 67:20
**sitting** [2] - 17:23, 31:25
**situation** [8] - 11:17, 22:3, 34:13, 41:23, 42:2, 60:23, 62:3, 63:20
**situations** [6] - 7:1, 9:9, 13:2, 43:5, 53:8
**size** [2] - 56:14, 61:14
**Skema** [1] - 28:15
**slate** [18] - 35:24, 35:25, 36:7, 36:12, 36:16, 38:15, 38:18, 41:24, 42:18, 44:12, 44:14, 60:11, 61:12, 62:19, 62:21, 68:10
**slates** [1] - 44:9, 47:21, 60:15, 62:10, 62:21, 67:12, 68:9

**slide** [1] - 32:6
**SLOKI** [1] - 44:2
**small** [3] - 60:15, 62:2, 63:1
**SMITH** [8] - 5:15, 30:25, 31:13, 32:2, 32:9, 33:21, 34:1, 34:3
**Smith** [4] - 5:15, 5:16, 30:25, 33:21
**Social** [8] - 24:20, 57:13, 57:19, 57:22, 58:4, 58:14, 58:25, 59:5
**social** [2] - 58:20, 59:18
**solely** [1] - 35:9
**someone** [1] - 37:2
**sometime** [1] - 11:21
**sometimes** [13] - 9:8, 14:16, 29:13, 29:17, 43:3, 43:5, 43:8, 46:18, 46:19, 49:25, 50:2, 55:16, 60:22
**somewhat** [2] - 64:17, 64:20
**son** [1] - 66:20
**sophisticated** [2] - 13:17, 39:11
**sort** [22] - 6:19, 7:8, 7:22, 9:14, 11:6, 11:7, 11:8, 12:1, 12:3, 27:4, 30:11, 30:12, 30:13, 32:6, 39:1, 39:17, 39:20, 41:5, 43:9, 43:20, 44:3, 60:1
**sorts** [1] - 12:16
**specific** [3] - 9:16, 13:10, 33:2
**specifically** [2] - 25:10, 32:23
**spent** [3] - 17:22, 60:25, 62:5
**spoiling** [1] - 48:15
**spoken** [1] - 52:4
**spoliation** [1] - 10:12
**Square** [1] - 3:21
**staff** [1] - 23:13
**stage** [1] - 21:23
**staggered** [1] - 56:8
**Stamford** [1] - 3:22
**stand** [4] - 6:3, 12:11, 18:22, 47:9
**standard** [1] - 16:15
**start** [4] - 10:3, 23:21, 30:1, 47:23
**started** [2] - 10:6, 37:20
**STATE** [1] - 70:4
**state** [22] - 16:4,

25:12, 25:15, 26:11, 40:18, 42:7, 42:13, 43:11, 43:13, 43:15, 43:16, 52:11, 52:12, 52:19, 52:23, 52:25, 53:2, 53:13, 53:15
**State** [2] - 12:8, 25:12
**statement** [1] - 22:11
**states** [8] - 41:13, 42:9, 43:6, 43:7, 43:12, 43:25, 54:15
**STATES** [1] - 1:1
**States** [5] - 5:7, 5:10, 70:7, 70:9, 70:14
**STATUS** [1] - 1:10
**stay** [3] - 68:12, 68:16, 68:19
**steering** [1] - 58:4, 59:20
**stemming** [1] - 12:7
**stenographically** [1] - 70:11
**step** [8] - 20:25, 28:10, 30:2, 42:15, 54:20, 60:6, 64:12, 64:14
**stepped** [2] - 50:6, 50:9
**stepping** [1] - 51:4
**STEVEN** [1] - 3:20
**Steven** [1] - 47:24
**still** [4] - 8:10, 25:20, 40:23, 68:6
**stop** [4] - 15:8, 17:14, 18:1, 20:17
**stored** [2] - 28:12, 28:17
**strategy** [1] - 48:3
**STREET** [1] - 1:21
**Street** [3] - 2:6, 3:5, 3:10
**strengths** [2] - 50:11, 51:13
**strikes** [2] - 6:25, 48:25
**strongly** [2] - 36:12, 37:15
**structure** [2] - 36:11, 49:16
**stubborn** [1] - 62:23
**studiously** [1] - 57:6
**stuff** [29] - 7:21, 7:22, 9:10, 9:12, 16:18, 17:21, 21:23, 22:8, 24:2, 24:4, 24:7, 26:9, 26:18, 27:2, 27:6, 27:7, 29:11, 30:9, 30:10, 32:6, 35:7, 42:2, 48:10,

48:16, 54:10, 68:6
**subject** [1] - 27:4
**submission** [1] - 16:1
**submissions** [2] - 8:23, 47:1
**submit** [6] - 21:9, 21:10, 38:7, 45:18, 45:19, 50:20
**submits** [2] - 21:18, 45:6
**submitted** [2] - 37:15, 44:23
**subservient** [2] - 37:24, 50:9
**substantive** [1] - 54:19
**success** [2] - 46:20, 46:21
**successful** [1] - 61:3
**suggest** [3] - 59:21, 61:6, 62:9
**suggesting** [1] - 60:14
**Suite** [8] - 2:10, 2:14, 2:22, 3:5, 3:10, 3:17, 4:4, 4:9
**summarized** [1] - 24:12
**supplement** [1] - 49:24
**support** [2] - 60:6, 63:2
**surprise** [2] - 31:11, 56:2
**surreptitious** [1] - 59:5
**sweeten** [1] - 61:13
**swing** [3] - 39:2, 41:10, 48:13
**system** [5] - 16:13, 26:25, 28:14, 29:2, 29:24, 39:8
**systems** [4] - 13:5, 13:17, 39:9, 39:11

## T

**table** [6] - 28:16, 28:17, 31:6, 45:13, 56:25, 58:1
**tables** [1] - 28:18
**tag** [1] - 14:19
**tagged** [3] - 16:16, 16:21, 16:23
**tags** [1] - 34:21
**talented** [1] - 57:10
**tall** [3] - 8:8, 8:10, 12:12
**tape** [1] - 50:1

**team** [11] - 36:13, 40:4, 42:11, 42:23, 51:1, 51:2, 51:14, 51:21, 51:23, 58:19
**technology** [5] - 7:2, 7:7, 8:2, 9:11, 13:3
**telephone** [1] - 5:14
**telephonically** [1] - 2:17
**ten** [2] - 51:22, 66:1
**ten-minute** [1] - 66:1
**tentative** [7] - 35:19, 35:21, 54:4, 55:10, 60:8, 62:9
**term** [1] - 33:19
**terms** [10] - 6:18, 6:23, 7:8, 32:6, 36:10, 41:14, 43:19, 53:6, 56:8, 65:10
**TERRI** [4] - 1:20, 70:6, 70:19, 70:20
**THE** [190] - 2:7, 2:11, 2:15, 2:19, 3:2, 3:7, 3:12, 3:19, 4:2, 4:6, 4:11, 5:6, 5:9, 5:18, 5:19, 5:20, 5:22, 5:24, 6:1, 6:3, 6:16, 8:7, 8:10, 8:15, 8:18, 9:2, 9:8, 9:24, 10:18, 10:25, 11:16, 12:10, 13:1, 13:8, 13:12, 15:8, 15:15, 16:14, 16:22, 16:25, 17:7, 17:14, 17:18, 18:1, 18:8, 18:15, 18:19, 18:24, 19:10, 19:15, 19:21, 20:15, 20:17, 21:2, 21:5, 21:8, 21:15, 21:22, 22:2, 22:16, 22:18, 22:21, 23:4, 23:7, 23:9, 23:10, 23:12, 23:17, 23:19, 23:21, 23:24, 24:24, 25:2, 25:7, 25:9, 25:14, 25:19, 25:25, 26:7, 26:9, 26:23, 27:10, 27:16, 27:18, 27:24, 28:5, 28:24, 29:6, 29:10, 29:22, 30:21, 30:22, 30:24, 31:5, 31:11, 31:17, 31:19, 31:20, 32:4, 32:13, 32:16, 32:22, 33:4, 33:13, 33:17, 33:18, 33:24, 34:2, 34:4, 35:1, 35:14, 35:23, 36:16, 36:25, 37:11, 38:1, 38:11, 38:18, 39:3, 39:17, 40:11, 40:23,

41:17, 42:15, 43:3, 44:9, 44:19, 44:21, 46:2, 46:9, 46:17, 47:2, 47:12, 48:2, 48:5, 48:14, 49:10, 49:18, 49:21, 50:21, 51:6, 51:11, 52:1, 52:5, 52:15, 52:22, 53:6, 53:24, 54:2, 54:22, 55:9, 55:13, 55:17, 56:10, 57:4, 57:15, 57:24, 58:10, 59:10, 61:10, 61:20, 61:25, 62:3, 62:18, 63:3, 63:13, 63:20, 63:25, 64:4, 64:8, 65:16, 65:20, 65:23, 66:6, 66:8, 66:12, 66:14, 66:18, 66:22, 66:25, 67:3, 67:5, 67:19, 68:2, 68:4, 68:9, 68:15, 68:18, 68:22, 68:23
**themselves** [3] - 34:19, 34:20, 35:5
**therefore** [1] - 13:22
**thinking** [3] - 11:17, 11:25, 64:5
**thinks** [1] - 32:18
**third** [2] - 40:17, 49:15
**Third** [1] - 4:4
**thousands** [1] - 28:18
**three** [8] - 11:19, 11:21, 12:24, 22:22, 48:21, 65:18, 65:20, 65:24
**three-month** [1] - 11:21
**throw** [1] - 41:18
**THURSDAY** [1] - 5:1
**Thursday** [1] - 1:11
**TIETELL** [1] - 3:20
**Tiktok** [10] - 5:23, 7:9, 13:14, 13:17, 21:13, 22:6, 27:4, 28:11, 52:25, 53:1
**TIKTOK** [1] - 1:5
**time-wise** [1] - 6:18
**timing** [1] - 56:9
**Title** [1] - 70:9
**today** [5] - 32:17, 44:18, 48:8, 53:21, 61:19
**today's** [2] - 22:22, 33:23
**together** [5] - 36:11, 38:17, 43:10, 43:25, 62:17

**TOLL** [1] - 2:4
**tons** [1] - 34:12
**took** [2] - 6:1, 60:8
**topic** [1] - 47:21
**tort** [2] - 49:18, 49:19
**trails** [1] - 63:18
**trained** [1] - 64:24
**TRANSCRIPT** [1] - 1:10
**transcript** [2] - 70:10, 70:12
**transpires** [1] - 30:18
**treat** [1] - 7:23
**trial** [2] - 23:8, 44:8
**tried** [3] - 47:16, 47:17, 50:4
**troops** [1] - 40:4
**true** [7] - 7:4, 9:6, 10:1, 20:10, 57:23, 70:10
**truly** [2] - 15:6, 64:14
**try** [4] - 30:23, 32:5, 38:17, 65:15
**trying** [3] - 31:13, 51:20, 60:25
**tub** [3] - 29:4, 29:13, 29:14
**tubs** [1] - 29:7
**turn** [2] - 22:17, 22:18
**Turner** [1] - 55:20
**turning** [1] - 35:6
**turns** [1] - 20:7
**tutorial** [19] - 7:7, 7:21, 9:20, 17:20, 19:7, 19:14, 19:15, 21:9, 21:18, 22:1, 22:2, 22:8, 26:12, 26:20, 26:23, 27:22, 28:25, 29:3, 31:2
**Two** [1] - 4:14
**two** [17] - 6:7, 6:10, 8:5, 8:14, 12:22, 17:23, 38:23, 40:23, 44:9, 49:14, 60:14, 65:17, 65:22, 65:23, 65:24, 67:12, 68:9
**Ty** [1] - 52:3
**TYLER** [1] - 2:9
**type** [3] - 9:11, 18:16, 34:16
**types** [2] - 13:2, 28:17, 47:16
**typical** [1] - 46:22
**typically** [4] - 10:3, 34:24, 42:23, 45:25

## U

**U.S** [2] - 1:3, 5:16
**ultimately** [1] - 43:23
**unanimity** [1] - 57:24
**unclear** [1] - 11:4
**under** [16] - 13:20, 15:14, 15:15, 16:4, 16:5, 17:6, 19:3, 21:11, 22:3, 25:23, 34:24, 35:15, 40:9, 56:15, 64:3
**under-13** [3] - 27:15, 28:1, 28:3
**underage** [1] - 16:16
**understood** [2] - 29:13, 37:4
**undertaken** [1] - 42:5
**underway** [1] - 9:22
**undisputable** [1] - 57:9
**unfair** [1] - 25:23
**unfortunate** [3] - 54:3, 60:13, 61:9
**unfortunately** [3] - 59:14, 60:24, 61:2
**union** [2] - 42:8, 42:14
**unique** [1] - 52:24
**united** [1] - 6:23
**United** [5] - 5:7, 5:10, 70:7, 70:9, 70:14
**UNITED** [1] - 1:1
**unjust** [1] - 55:21
**unless** [4] - 7:16, 22:10, 32:17, 52:23
**unmatched** [1] - 55:7
**unrealistic** [1] - 35:9
**untrue** [1] - 59:14
**up** [22] - 6:3, 7:6, 9:14, 12:11, 15:16, 15:21, 18:22, 24:23, 35:3, 39:12, 40:17, 41:2, 41:15, 44:19, 45:25, 46:19, 53:17, 54:20, 60:22, 61:18, 65:2, 65:4
**upheld** [1] - 55:20
**urgent** [1] - 32:18
**user** [2] - 14:11, 14:21
**users** [4] - 13:18, 15:23, 16:15, 25:23
**utilize** [1] - 22:10

## V

**valor** [1] - 59:13
**various** [2] - 25:12,

43:6
**verdict** [1] - 47:18
**verify** [1] - 39:11
**versus** [1] - 5:11
**vestige** [1] - 57:19
**vet** [1] - 42:24
**vetted** [1] - 42:13
**via** [1] - 31:22
**videos** [2] - 14:16, 16:10
**view** [2] - 35:9, 40:1
**viewing** [1] - 27:11
**views** [3] - 36:12, 37:14, 64:18
**vigorous** [2] - 53:21, 53:25
**Village** [1] - 2:14
**VILLANUEVA** [1] - 2:3
**violating** [1] - 11:11
**violation** [1] - 15:7
**virtual** [1] - 51:12
**vis** [2] - 26:4
**visuals** [1] - 31:14
**voted** [1] - 41:14

### W

**WAGSTAFF** [1] - 2:8
**wait** [1] - 53:18
**waiting** [1] - 68:14
**wall** [1] - 37:25
**wants** [7] - 20:20, 24:4, 40:19, 48:5, 54:10, 54:19, 63:7
**Warback** [1] - 57:21
**Washington** [2] - 4:5, 64:22
**ways** [2] - 12:16, 68:3
**weaknesses** [1] - 51:13
**week** [2] - 23:8, 47:3
**weekend** [2] - 50:16, 67:15
**weeks** [6] - 8:5, 8:14, 12:22, 12:23, 12:24, 22:22
**well-equipped** [1] - 57:2
**well-positioned** [1] - 56:6
**WEST** [1] - 1:21
**West** [3] - 2:22, 3:17, 51:7
**Westlake** [1] - 2:14
**white** [1] - 50:6
**wide** [1] - 57:1
**WILLIAMS** [1] - 3:2
**willing** [7] - 7:5,

42:7, 45:23, 50:10, 60:6, 62:12, 68:19
**wind** [3] - 7:6, 35:3, 40:16
**winds** [1] - 46:19
**wisdom** [1] - 51:17
**wise** [2] - 6:18, 39:5
**wish** [1] - 10:1
**witnesses** [1] - 51:4
**WOITKIN** [1] - 3:8
**wonderful** [2] - 27:23, 54:6
**wondering** [1] - 6:11
**word** [1] - 14:9
**words** [18] - 9:2, 11:1, 15:9, 16:25, 26:10, 26:16, 31:20, 36:19, 41:3, 41:23, 42:18, 43:17, 44:24, 46:18, 48:17, 52:24, 53:2, 65:24
**works** [4] - 29:2, 49:12, 49:22, 51:11
**world** [3] - 50:20, 50:23, 51:5
**woven** [2] - 54:13, 54:16
**wrote** [1] - 62:19
**WU** [1] - 1:3

### Y

**years** [1] - 62:4
**yeses** [1] - 52:7
**York** [5] - 2:6, 64:22, 67:23, 67:25

### Z

**zoom** [1] - 31:18
**Zoom** [3] - 31:22, 32:5, 32:7