DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California 90067-6035
Telephone:  +1 310 553 6700
Facsimile:   +1 310 246 6779

STEPHEN D. BRODY (*pro hac vice*)
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone:  +1 202 383 5300
Facsimile:   +1 202 383 5414

MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
San Francisco, CA 94111
Telephone:  +1 415 984 8700
Facsimile:   +1 415 984 8701

*Attorneys for Defendants ByteDance Ltd.,*
*ByteDance Inc., TikTok Ltd., TikTok Inc.,*
*TikTok LLC, TikTok Pte. Ltd., and*
*TikTok U.S. Data Security Inc.*

[Additional Parties and Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: TikTok, Inc. Minor Privacy Litigation | Case No. 2:25-ml-03144-GW-RAO |
| | **STATUS REPORT REGARDING OUTSTANDING PRESERVATION ISSUES** |

Pursuant to the Court's June 23, 2025 order, ECF No. 79, the MDL Plaintiffs and Defendants (collectively, "the parties") jointly submit this status report detailing outstanding preservation issues.

## I.    PRESERVATION EFFORTS TO DATE AND PLAINTIFFS' OUTSTANDING PRESERVATION REQUESTS

**Defendants' Position:**  As previously explained, Defendants are preserving vast amounts of information from underage users.  This preservation effort encompasses data categories from all aspects of user behavior on the platform, extending beyond what might be potentially relevant in this litigation.  These data categories include:

- Account and profile information,
- Device and network information,
- App settings,
- Post metadata,
- User-generated videos,
- Direct messages,
- Comments,
- User activity information,
- Inferred information,
- Advertising information, and
- Kids Mode information.

*See* ECF No. 78 at 2-5.

As part of this preservation effort, Defendants have accommodated all of Plaintiffs' requests to preserve additional categories of data, even though many of those categories are not relevant to Plaintiffs claims.  These include the data categories identified in the parties' June 20, 2025 joint statement, such as account

display names,[1] social data (such as likes and comments), data indicating whether a

user clicked on an ad and/or purchased an advertised item after viewing an ad, ad

revenue information,[2] information used for advertising,[3] and user data related to

third-party e-commerce sites.[4]  The day before this filing, Plaintiffs also asked

Defendants to preserve Pixel data.[5]  Since Plaintiffs again waited until the last

minute to raise a new category of data, Defendants are still investigating, but have

confirmed they are already preserving at least some Pixel data.

Defendants' preservation efforts include over a thousand data fields for every

banned under-13 user account.  Except for the "30-day snapshot" request discussed

below, Plaintiffs have not identified any other categories of user data  they believe

should be preserved.

**MDL Plaintiffs' Position.** In the parties' joint statement on preservation,

Plaintiffs identified certain categories of data or information that Defendants should

preserve in addition to the information they already identified. *See* ECF No. 78 at

13. Defendants stated they would preserve those categories or otherwise confirm

their collection or non-collection. *See id.* at 7–8.

Defendants now confirm they are preserving most of those categories, to the

---

[1] Account display names (referred to in the app as "name" or "nickname") are not necessarily a user's first and last name—users are free to set their display name to whatever name they prefer.

[2] There are several ways a user could generate revenue on Defendants' platform, and as Defendants have explained, ECF No. 78 at 5, after a reasonable investigation they have not identified any table in their systems that tracks *all* revenue associated with individual users.  However, Defendants have been able to preserve *ad* revenue information for banned under-13 users.

[3] Plaintiffs requested "ad targeting profiles," ECF No. 78 at 8, but Defendants do not maintain "profiles" for users.  That said, Defendants will preserve (and have already been preserving) the data it maintains regarding users that is used to inform the advertising shown to users on the platform.

[4] Defendants do not control information obtained by third-party websites, but third parties may share e-commerce information with the TikTok platform.  To the extent that information was shared with the platform,  Defendants will preserve it.

[5] "Pixel" is a piece of code that allows a business to share website events with TikTok. *See* TikTok, "About TikTok Pixel," https://ads.tiktok.com/help/article/tiktok-pixel.

STATUS REPORT REGARDING
PRESERVATION ISSUES
NO. 2:25-ML-03144-GW-RAO

extent they exist; where the *precise* category requested does not exist, Defendants represent that they are preserving the existing equivalent (*e.g.*, ad targeting information). *See supra* at 1–2. In an email on July 9, 2025, Defendants also represented that although TikTok's Privacy Policy states that biometric information "may" be collected,[6] the platform does not *currently* collect it. Finally, Defendants have stated that they believe "at least some" Pixel[7] tracking data is also being preserved, though they will need more time to confirm how much is being preserved. Plaintiffs await further details of the Pixel data preservation.

## II.    PLAINTIFFS' 30-DAY SNAPSHOT PROPOSAL

**Defendants' Position.**  Plaintiffs have requested that Defendants preserve a "snapshot" of *all* data for *all* 170 million users in the United States.  *See* ECF No. 79 at 1.  Preserving *all* data for *all* users, even for a 30-day period, is patently unreasonable, and not even possible.  As Defendants have repeatedly explained in their filings, the burden of storing data from *all* users is enormous and not proportional to the needs of this case.  *See* ECF No. 41 at 7; ECF No. 56 at 4. Nevertheless, Defendants have proposed an alternative whereby Defendants *could* preserve a 30-day snapshot of all categories of user data that are available through the Hive preservation approach described in the parties' prior filings.  ECF Nos. 41, 56.  However, doing so would cost approximately $2 million per year to store the data, and if Plaintiffs are prepared to pay that cost, Defendants will agree to implement this additional preservation method.[8]  At least one court in this district has found that spoliation arguments fail where the party requesting extensive data

---

[6] TikTok, "Privacy Policy," https://www.tiktok.com/legal/page/us/privacy-policy/en (last updated Aug. 19, 2024).

[7] "Pixel" is a piece of code that allows a business to send tracking data from its website to TikTok. *See* TikTok, "About TikTok Pixel," https://ads.tiktok.com/help/article/tiktok-pixel (last accessed July 9, 2025).

[8] The Download Your Data ("DYD") approach is not capable of preserving data at the scale required here.  Although that approach can preserve the thousands of accounts that are deleted daily, preserving data from TikTok's 170 million U.S. users is many,  orders of magnitude beyond its capacity.

STATUS REPORT REGARDING
PRESERVATION ISSUES
NO. 2:25-ML-03144-GW-RAO

preservation refuses to pay the cost. *See Griffith v. TikTok, Inc.*, No. 5:23-cv-00964-SB-E (C.D. Cal. Oct. 10, 2024), ECF No. 283 at 2, 4 (denying spoliation motion where "Plaintiffs were unwilling to pay" for data storage that would have cost $2.6 million).

**MDL Plaintiffs' Position.** Defendants' preservations efforts relate solely to "deleted" accounts – that is, accounts for children under age 13 that purportedly have been identified and removed from the platform. Defendants are not currently undertaking any effort to preserve data for active users on the platform, from which Plaintiffs could identify children under age 13. That is a problem that, as noted previously, could result in significant spoliation issues. Plaintiffs appreciate that TikTok collects an enormous amount of data from and about users on the platform. That is why Plaintiffs proposed a "snapshot" approach to preservation, as suggested by the Court at the May 29 hearing, which would capture *all* platform data, but for a discrete period only. *See* ECF No. 78 at 14–15. Defendants complain that this proposal is "patently unreasonable, and not even possible," *see supra* at 3, yet they offer no explanation for why this is impractical or impossible for a 30-day period, or some other appropriate time period. This is conclusory and insufficient in light of the importance of this data to Plaintiffs' claims. Defendants complain that preserving a snapshot of the information necessary to identify under age 13 users on the main platform is not "proportional to the needs of this case," yet, this is undeniably critical discovery for a case about TikTok's unlawful collection of personal information from *under age 13 users on the TikTok platform.*

Moreover, Defendants ignore that during the Parties' meet and confer, Plaintiffs invited Defendants to identify the categories of data TikTok collects and generates so that Plaintiffs could zero in on the particular categories most relevant to this litigation. This would reduce even further the purported burden of preservation. Defendants have declined to do so, which, given their complaints about burden, is nonsensical.

STATUS REPORT REGARDING
PRESERVATION ISSUES
NO. 2:25-ML-03144-GW-RAO

In the alternative, Defendants propose preserving user data "available" through Hive and making Plaintiffs pay for it. *See supra* at 3. This proposal suffers from at least two significant problems. First, as discussed below, *see infra* at 7–8, Defendants refuse to identify all the categories of data they collect and store, which makes it impossible for Plaintiffs to assess any subset of categories Defendants might offer to preserve through this approach. Second, Plaintiffs will not agree to pay for Defendants to preserve data they are legally obligated to preserve, particularly since Defendants refuse to provide Plaintiffs with the information that would allow Plaintiffs to narrow the preservation obligation down to specific categories most relevant to this litigation. *See, e.g.*, *Nehad v. Browder*, 2016 WL 3769807, at *4 (S.D. Cal. July 15, 2016) (denying defendants' request to shift costs to plaintiffs where, among other factors, the issues at stake were important to litigation and the benefits were not minimal). Accordingly, Plaintiffs expect motion practice on these issues. *See infra* at 9.

## III.    PLAINTIFFS' REQUEST FOR DEFENDANTS TO IDENTIFY DATA PRESERVED AND COLLECTED

**Defendants' Position:**  Plaintiffs' have requested that Defendants also identify two lists of information: "specific tables or fields they are preserving"; and "all categories of data that they collect from users or store[] about users."  *See* ECF No. 79 at 1.  As to the first, Defendants have agreed to provide Plaintiffs with a list of specific tables and fields containing the data Defendants are preserving. Together, these data tables include over a thousand different data fields for each banned under-13 user and encompass both the Hive and DYD approaches.

As to the second request, Defendants have already identified numerous categories of data they collect or store and are preserving for this litigation.  *See supra* at 1-2.  To the extent Plaintiffs also seek identification of data categories not subject to Defendants' preservation efforts—no matter how irrelevant to this litigation—that is wholly unwarranted.  Defendants collect data on all of their

users' activities on their platform, and the numerous categories Defendants are preserving are sufficient to document users' behavior and their characteristics. Plaintiffs' request is also infeasible.  User data does not appear one place or format—it is decentralized across a complex web of databases, repositories, and real-time pipelines, often duplicated across multiple systems to support different business, analytical, and operational needs.  While this storage approach is designed for efficiency and scalability, it results in a user's data being distributed across a decentralized network of storage systems.

Moreover, much of that data is unlikely to be relevant or useful to this lawsuit.  Much of the data in Defendants' systems is a duplicative or modified version of other data.  For example, a single data point (like a user's IP address) might be replicated across many different storage systems (and then across hundreds or thousands of tables within those systems), because each of the tables and systems is used for different analytics or business purposes, and the data point is relevant to each.  And some of the data is merely engineering information, such as data about whether the TikTok app is operating properly for a given user or data that is necessary to take a user from one page of the TikTok platform to another. This has no conceivable relevance to this case.

Under these circumstances, creating the list Plaintiffs request is like asking a Fortune 50 company to identify and catalogue every single document, across the entire company, that has ever existed, regardless of whether it is relevant to the lawsuit.  Here, it would be impossible to scour every system and identify every server, employee, computer, table and possible file location across dozens of physical offices to locate every type of user data that might exist in each and every system of Defendants' platform.  Rule 26 counsels that no preservation obligation extends so far.

Plaintiffs raise two arguments in response.  Both are unavailing.  First, Plaintiffs protest that Defendants' position forces them to "trust" their preservation

efforts. *Infra* at 8. But that is exactly how preservation obligations work in every case, including this one—Defendants also have to "trust" that Plaintiffs are preserving the named Plaintiffs' devices, downloading their data, and saving any other relevant information (which Defendants have had no insight into in the case thus far). Plaintiffs accuse Defendants of actively deleting information, but Defendants have at every turn agreed to preserve relevant user data, including the data that Plaintiffs have requested. Defendants have repeatedly accommodated Plaintiffs' additional preservation requests, and Plaintiffs have no ground whatsoever to insinuate that Defendants cannot be trusted to comply with their preservation obligations.

Second, Plaintiffs contend that Defendants should just "cut to the chase" and identify what they are "not preserving." *Infra* at 8. But it is they who have not cut to the chase. Despite purportedly having a factual basis for alleging Defendants' systems for identifying under 13 users are supposedly inadequate, Plaintiffs have never plainly explained what data they believe should be preserved and why. Instead, they add new categories piecemeal, such as Pixel data, without regard to burden or proportionality or any explanation as to how that data has a reasonable chance of yielding relevant evidence. Worse, Plaintiffs' argument makes no sense. By definition, information Defendants are "not preserving" is everything Defendants collect besides the data that they are preserving. And as just explained, identifying that data is both unwarranted and infeasible. No additional information is required.

**MDL Plaintiffs' Position.** While Defendants have agreed to provide a list of specific tables and fields for deleted under-13 accounts, the gesture is incomplete.

Without knowledge of *all* categories of data that Defendants collect and store about users, Plaintiffs cannot assess whether the categories that *are* being preserved for under-13 accounts—and the categories that *would* be preserved in a snapshot approach or other full-platform effort—represent the totality of Defendants'

1    knowledge about its users' age, or whether undisclosed categories of data would

2    help identify unknown under-13 users. In essence, Defendants are asking

3    Plaintiffs—and the Court—to trust their category selections and to analyze only the

4    universe of data they choose to disclose, even as they hold all the information.

5    Tellingly, Defendants refuse to identify the categories of information they are not

6    preserving. Defendants should not be allowed to judge their own case.

7    Some of Defendants' concerns might be reasonably addressed. For example,

8    if a data point is duplicated across different systems because it is used for different

9    purposes, Defendants need not restate that category. And to the extent Defendants

10   identify types of information that they believe "have no conceivable relevance" to

11   this case, they can identify those categories in sufficient detail such that Plaintiffs

12   may agree to exclude them from being preserved. Defendants could also simply

13   identify the categories of information they are not preserving so that Plaintiffs could

14   assess whether something highly relevant is being deleted.

15   But to date, Defendants have refused to provide the full and accurate

16   universe of their data categories. Defendants protest that this request "is like asking

17   a Fortune 50 company to identify and catalogue every single document, across the

18   entire company, that has ever existed," *see supra* at 6, but that goes too far.

19   Plaintiffs have asked for only a list of data *categories* to assess the proper scope of

20   preservation, not a copy of every data point across the company that has ever

21   existed. If the list of categories is somehow too enormous to describe, as noted,

22   Defendants could cut to the chase and identify the categories of information they

23   have decided not to preserve. Plaintiffs maintain that the nature and scope of this

24   case obligate Defendants to disclose these categories.

25   Defendants continue to pretend that the preservation situation in this case is

26   normal and, like in any other case, Plaintiffs must trust that Defendants are

27   fulfilling their preservation obligations. But this preservation dispute started with

28   Defendants telling the Court that they did not intend to preserve relevant

STATUS REPORT REGARDING
PRESERVATION ISSUES
NO. 2:25-ML-03144-GW-RAO

information, and, to the contrary, were actively deleting the information. There is nothing normal about that, and Plaintiffs' effort to ensure that appropriate actions are taken to preserve relevant information is entirely reasonable under these unusual circumstances.

Finally, Defendants' complaint that Plaintiffs have not identified additional date that they believe Defendants should preserve is circular and nonsensical. Only Defendants know what they are not preserving, and it is troubling that they refuse to provide this information to Plaintiffs and the Court.

## IV.    MOTIONS PRACTICE

**Defendants' Position.**  Defendants do not currently intend to file any additional motions on preservation.[9]  The Court clarified in its May 5, 2025 order that Defendants are required to "do their best to comply with the preservation order, but are not expected to accomplish something truly infeasible."  ECF No. 25 at 2. Given that clarification, Defendants do not believe that further modification to the Court's preservation order is necessary at this time.  *See* Fed. R. Civ. P. 26, advisory committee's notes to 2006 amendment ("The requirement that parties discuss preservation does not imply that courts should routinely enter preservation orders.").  As explained, Defendants' position is that the best course of action at this point is to let the case proceed in the ordinary course without any further delay or burden on Defendants.  Defendants will continue to comply with their obligations to take reasonable and proportionate steps to preserve data pursuant to the Court's order.

**MDL Plaintiffs' Position.** Given the unusual circumstances of this case in which Defendants have made clear that they do not intend to preserve relevant information, Plaintiffs intend to file motions on preservation related to (1) Defendants' obligation to disclose the categories of data it collects and stores

---

[9] Defendants reserve the right to seek to shift costs as the case progresses.

STATUS REPORT REGARDING
PRESERVATION ISSUES
NO. 2:25-ML-03144-GW-RAO

1    about its users, or in the alternative, categories of data Defendants have elected not

2    to preserve, and (2) Plaintiffs' snapshot proposal. While conversations with

3    Defendants have been productive, these issues remain unresolved.

4                                    * * *

5            Pursuant to Local Rule 5-4.3.4(a)(2), by my signature below, I, Daniel M.

6    Petrocelli, attest that all other signatories concur in the filing's content and have

7    authorized the filing.

8

9    Dated:        July 9, 2025                Respectfully submitted,

10

11                                            By:  */s/ Daniel M. Petrocelli*
                                                   Daniel M. Petrocelli

12                                            DANIEL M. PETROCELLI
13                                            dpetrocelli@omm.com
                                             O'MELVENY & MYERS LLP
14                                            1999 Avenue of the Stars
                                             Los Angeles, California 90067-6035
15                                            Telephone:  +1 310 553 6700
                                             Facsimile:   +1 310 246 6779

16                                            STEPHEN D. BRODY
17                                            sbrody@omm.com
                                             O'MELVENY & MYERS LLP
18                                            1625 Eye Street, NW
                                             Washington, D.C. 20006-4001
19                                            Telephone:  +1 202 383 5300
                                             Facsimile:   +1 202 383 5414

20                                            MATTHEW D. POWERS
21                                            mpowers@omm.com
                                             O'MELVENY & MYERS LLP
22                                            Two Embarcadero Center, 28th Floor
                                             San Francisco, California 94111-3832
23                                            Telephone: +1 415 984-8700
                                             Facsimile: +1 415 984-8700

24                                            *Attorneys for Defendants ByteDance Ltd.,*
25                                            *ByteDance Inc., TikTok Ltd., TikTok Inc.,*
                                             *TikTok LLC, TikTok Pte. Ltd., and TikTok*
26                                            *U.S. Data Security Inc.*

27

28

                                                10

By: /s/ Derek W. Loeser
　　DEREK W. LOESER (*pro hac vice*)
　　dloeser@kellerrohrback.com
　　KELLER ROHRBACK L.L.P.
　　1201 Third Avenue, Suite 3400
　　Seattle, WA 98101
　　(206) 623-1900, Fax (206) 623-3384

　　*Interim Lead Counsel for Plaintiffs*

By: /s/ Eric A. Kafka
　　ERIC A. KAFKA
　　ekafka@cohenmilstein.com
　　COHEN MILSTEIN SELLERS AND
　　TOLL PLLC
　　88 Pine Street, 14th Floor
　　New York, NY 10005
　　212-838-7797
　　212-838-7745 (fax)

　　*Interim Lead Counsel for Plaintiffs*

11

1

## CERTIFICATE OF SERVICE

2          I certify that on July 9, 2025, I electronically filed the foregoing with the

3   Clerk of Court using CM/ECF, which automatically services all counsel of record

4   for the parties who have appeared.

5

6   Dated: July 9, 2025                          */s/ Daniel M. Petrocelli*
                                                  Daniel M. Petrocelli

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12