DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, Suite 800
Los Angeles, California 90067-6035
Telephone:   +1 310 553 6700
Facsimile:    +1 310 246 6779

STEPHEN D. BRODY (*pro hac vice*)
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone:   +1 202 383 5300
Facsimile:    +1 202 383 5414

MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
San Francisco, CA 94111
Telephone:   +1 415 984 8700
Facsimile:    +1 415 984 8701

*Attorneys for Defendants ByteDance Ltd.,
ByteDance Inc., TikTok Ltd., TikTok Inc.,
TikTok LLC, TikTok Pte. Ltd., and
TikTok U.S. Data Security Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TIKTOK INC., MINOR PRIVACY LITIGATION | MDL NO. 3144 |
| | 2:25-ml-03144-GW-RAO |
| | **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)** |
| | Hon. George H. Wu |
| | Hearing Date: November 6, 2025 |
| | Time: 8:30 a.m. |
| | Courtroom: 9D |

1

# TABLE OF CONTENTS

2

Page

3    I.    INTRODUCTION ....................................................................................... 1

4    II.    FACTUAL BACKGROUND ....................................................................... 3

5          A.    Defendants Operate An Online Entertainment Media Platform. .......... 3

6          B.    Defendants Take Affirmative Steps To Protect Children And
                Families. .............................................................................................. 3

7    III.    LEGAL STANDARD ................................................................................. 5

8    IV.    ARGUMENT ............................................................................................. 5

9          A.    The Court Should Dismiss, Or At Minimum Stay, This Case
                Because Allowing Plaintiffs' Claims To Proceed Is Inconsistent
10               With COPPA. ........................................................................................ 5

11          B.    Plaintiffs Lack Standing To Bring Claims Under The Laws Of
                States Where They Do Not Reside. ....................................................... 8

12
             C.    The Court Should Dismiss Plaintiffs' Privacy Claims. ......................... 9
13
                   1.    Plaintiffs fail to state claims for intrusion upon seclusion
14                       or violation of the right to privacy. .......................................... 9

15                 2.    Plaintiffs fail to state a claim under the New York Civil
                        Rights Law. ............................................................................ 15
16
             D.    The Court Should Dismiss Plaintiffs' Unfair-Competition
17                Claims. ............................................................................................... 16

18          E.    The Court Should Dismiss Plaintiffs' Unjust-Enrichment
                Claims. ............................................................................................... 24
19
                   1.    Plaintiffs do not plausibly allege that Defendants profited
20                       at *their* expense. ...................................................................... 24

21                 2.    Plaintiffs do not plausibly allege that Defendants unjustly
                        retained a benefit. .................................................................. 26
22
             F.    The Court Should Dismiss Plaintiffs' Negligence Claims. ................. 26
23
      V.    CONCLUSION ........................................................................................ 27
24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B. ex rel. Turner v. Google LLC*,
737 F. Supp. 3d 869 (N.D. Cal. 2024)................................................................14

*Aguilar v. Coast to Coast Comput. Prods., Inc.*,
2024 WL 635314 (C.D. Cal. Jan. 8, 2024)...........................................................5

*Ahringer v. LoanDepot, Inc.*,
715 F. Supp. 3d 1274 (C.D. Cal. 2024)..............................................................20

*Alderson v. United States*,
718 F. Supp. 2d 1186 (C.D. Cal. 2010) *aff'd*, 686 F.3d 791 (9th Cir.
2012)....................................................................................................................22

*Am. Apparel & Footwear Ass'n v. Baden*,
107 F.4th 934 (9th Cir. 2024)...............................................................................5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..............................................................................................5

*Autumn Lakes Ass'n v. Tran*,
655 S.W.3d 442 (Mo. Ct. App. 2022) .................................................................24

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019)..............................................................19

*Baughman v. Baughman*,
2025 WL 890418 (Pa. Super. Ct. 2025) .............................................................24

*Benson v. Perris Elementary Sch. Dist.*,
2022 WL 3574290 (C.D. Cal. July 1, 2022) ........................................................6

*Best Carpet Values, Inc. v. Google, LLC*,
90 F.4th 962 (9th Cir. 2024)..........................................................................22, 23

*Beverley v. Choices Women's Med. Ctr., Inc.*,
78 N.Y.2d 745 (1991).........................................................................................15

*Blanks v. Fluor Corp.*,
450 S.W.3d 308 (Mo. Ct. App. 2014) .................................................................26

*Brown v. Google LLC*,
2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ...................................................20

*Burns v. Mammoth Media, Inc.*,
2023 WL 5608389 (C.D. Cal. Aug. 29, 2023) ...................................................17

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*Cappello v. Walmart Inc.*,
   394 F. Supp. 3d 1015 (N.D. Cal. 2019)................................................21

*Casey v. Mistral Condo. Ass'n*,
   380 So. 3d 1278 (Fla. Dist. Ct. App. 2024)........................................26

*Claridge v. RockYou, Inc.*,
   785 F. Supp. 2d 855 (N.D. Cal. 2011)................................................18

*Coffee v. Google, LLC*,
   2022 WL 94986 (N.D. Cal. Jan. 10, 2022) .........................................26

*Cousin v. Sharp Healthcare*,
   681 F. Supp. 3d 1117 (S.D. Cal. 2023) ..............................................14

*Crook v. Foster*,
   333 Ga. App. 36 (Ga. Ct. App. 2015) .................................................24

*Curtis v. City of New York*,
   195 N.Y.S.3d 592 (N.Y. Sup. Ct. 2023).........................................15, 16

*Daniel v. Goodyear Tire/CBSD*,
   2017 WL 9472892 (E.D. Mich. July 27, 2017)..................................13

*Demello v. Lakeside Club, Inc.*,
   2024 WL 11716874 (Conn. Super. Ct. Mar. 12, 2024)......................26

*Doe I v. Google LLC*,
   741 F. Supp. 3d 828 (N.D. Cal. 2024)................................................23

*Doe I v. Sutter Health*,
   2020 WL 1331948 (Cal. Super. Ct. Jan. 29, 2020) ...........................22

*Doe v. Post Acute Med., LLC*,
   2025 WL 511069 (M.D. Pa. Feb. 14, 2025).......................................19

*Drake v. Toyota Motor Corp.*,
   2020 WL 7040125 (C.D. Cal. Nov. 23, 2020) .....................................8

*Duty Free World, Inc. v. Miami Perfume Junction, Inc.*,
   253 So. 3d 689 (Fla. Dist. Ct. App. 2018)..........................................24

*Edelman v. Starwood Cap. Grp., LLC*,
   70 A.D.3d 246 (N.Y. App. Div. 2009) ................................................24

*Escarcega v. Verdugo Vista Operating Co.*,
   2020 WL 1703181 (C.D. Cal. Apr. 8, 2020).........................................7

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Esparza v. Kohl's Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) ................................................................. 14

*Est. of Selander v. Pierce Cnty.*,
32 Wash. App. 2d 1036 (2024) ........................................................................... 26

*Friedlander v. PDK Labs, Inc.*,
465 S.E.2d 670 (Ga. 1996) ................................................................................. 17

*Gallaher v. U.S. Bank Nat'l Ass'n*,
2017 WL 2111593 (D. Conn. May 15, 2017) ..................................................... 13

*George v. Hercules Real Est. Servs., Inc.*,
795 S.E.2d 81 (Ga. Ct. App. 2016) .................................................................... 26

*Granite Commc'n, Inc. v. One Commc'ns Corp.*,
2008 WL 479372 (D. Conn. Oct. 31, 2008) ....................................................... 25

*Greenley v. Kochava*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .............................................................. 20

*Greenstein v. Noblr Reciprocal Exch.*,
585 F. Supp. 3d 1220 (N.D. Cal. 2022) .............................................................. 17

*Griffith v. TikTok Inc.*,
2023 WL 9019035 (C.D. Cal. Dec. 13, 2023) .................................................... 24

*Griffith v. TikTok, Inc.*,
697 F. Supp. 3d 963 (C.D. Cal. 2023) ...................................................... 17, 19, 20

*Hadi v. Toyota Motor Corp.*,
2025 WL 841804 (C.D. Cal. Jan. 6, 2025) ........................................................... 8

*Hammerling v. Google LLC*,
2022 WL 17365255 (N.D. Cal. Dec. 1, 2022), *aff'd*, 2024 WL
937247 (9th Cir. Mar. 5, 2024) ........................................................................... 14

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2019) ........................................... 10, 12, 13, 14

*Harris v. CVS Pharmacy, Inc.*,
2015 WL 4694047 (C.D. Cal. Aug. 6, 2015) ....................................................... 8

*Hazel v. Prudential Fin., Inc.*,
2023 WL 3933073 (N.D. Cal. June 9, 2023) ...................................................... 20

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Hernandez v. Hillsides, Inc.*,
  47 Cal. 4th 272 (2009) ........................................................................... 9

*Howell v. N.Y. Post Co.*,
  81 N.Y.2d 115 (1993) ........................................................................... 15

*Hubbard v. Google LLC*,
  2025 WL 82211 (N.D. Cal. Jan. 13, 2025) ............................................. 14

*I.C. v. Zynga, Inc.*,
  600 F. Supp. 3d 1034 (N.D. Cal. 2022) ................................................. 12

*In re BPS Direct, LLC*,
  705 F. Supp. 3d 333 (E.D. Pa. 2023) ..................................................... 12

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ......................................................... passim

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019) ................................................... 20

*In re Google Assistant Priv. Litig.*,
  457 F. Supp. 3d 797 (N.D. Cal. 2020) ................................................... 25

*In re Google Cookie Placement Consumer Priv. Litig.*,
  806 F.3d 125 (3d Cir. 2015) ................................................................ 12

*In re Google Location History Litig.*,
  428 F. Supp. 3d 185 (N.D Cal. 2019) ...................................................... 9

*In re Google, Inc. Priv. Policy Litig.*,
  50 F. Supp. 3d 968 (N.D. Cal. 2014) ..................................................... 14

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...................................... 14, 26, 27

*In re Nickelodeon Consumer Priv. Litig.*,
  827 F.3d 262 (3d Cir. 2016) ................................................................ 15

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  903 F. Supp. 2d 942 (S.D. Cal. 2012) ................................................... 26

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  996 F. Supp. 2d 942 (S.D. Cal. 2014) ................................................... 19

*Jones v. Google LLC*,
  73 F.4th 636 (9th Cir. 2023) ................................................................ 7

MEM. ISO MOT. TO DISMISS
MDL No. 3144
No. 2:25-ml-03144-GW-RAO

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Knuttel v. Omaze, Inc.*,
  2022 WL 1843138 (C.D. Cal. Feb. 22, 2022) .......................................................24

*Kwikset Corp. v. Superior Ct.*,
  51 Cal. 4th 310 (2011) ...........................................................................................17

*Ladd v. County of San Mateo*,
  12 Cal. 4th 913 (1996) ...........................................................................................26

*Lau v. Gen Digit. Inc.*,
  2024 WL 1880161 (N.D. Cal. Apr. 3, 2024) .................................................21, 22

*Lemelson v. Wells Fargo Bank, N.A.*,
  641 F. Supp. 3d 1005 (W.D. Wash. 2022) .............................................................17

*Low v. LinkedIn*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) .................................................................23

*Mack v. Amazon.com, Inc.*,
  2023 WL 2538706 (W.D. Wash. Mar. 16, 2023) ...................................................21

*Mai v. Supercell Oy*,
  2021 WL 4267487 (N.D. Cal. Sept. 20, 2021) ......................................................24

*Manigault-Johnson v. Google, LLC*,
  2019 WL 3006646 (D.S.C. Mar. 31, 2019) ....................................................10, 15

*Michel v. Yale Univ.*,
  2023 WL 1350220 (D. Conn. Jan. 30, 2023), *aff'd*, 110 F.4th 551
  (2d Cir. 2024) .........................................................................................................24

*Muy v. Int'l Bus. Machs. Corp.*,
  2019 WL 8161747 (N.D. Fla. June 5, 2019) ..........................................................17

*Park S. LLC v. Denali Constr. LLC*,
  29 Wash. App. 2d 1026, *review denied*, 3 Wash. 3d 1013 (2024) .......................24

*Perkins v. WellDyneRx, LLC*,
  2023 WL 2610157 (M.D. Fla. Mar. 23, 2023) .......................................................25

*Phillips v. U.S. Customs & Border Prot.*,
  74 F.4th 986 (9th Cir. 2023) ............................................................................12, 13

*R.W. v. Manzek*,
  585 Pa. 335 (2005) .................................................................................................26

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Rosal v. First Fed. Bank of Cal.*,
  671 F. Supp. 2d 1111 (N.D. Cal. 2009)..................................................26

*Rynasko v. N.Y. Univ.*,
  63 F.4th 186 (2d Cir. 2023) ...................................................................25

*Smith v. Chase Manhattan Bank, USA*,
  293 A.D.2d 598 (N.Y. App. Div. 2002) ................................................16

*Smith v. Facebook, Inc.*,
  745 F. App'x 8 (9th Cir. 2018)........................................................11, 12

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ..............................................................................16

*Svenson v. Google Inc.*,
  65 F. Supp. 3d 717 (N.D. Cal. 2014)....................................................20

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) .............................................................3, 11

*Taylor v. Google LLC*,
  2021 WL 4503459 (N.D. Cal. Oct. 1, 2021)........................................25

*Tripolskiy v. Bos. Sci. Corp.*,
  2023 WL 5440783 (C.D. Cal. June 23, 2023)........................................7

*United States v. Forrester*,
  512 F.3d 500 (9th Cir. 2008) ................................................................13

*Vance v. Amazon.com Inc.*,
  525 F. Supp. 3d 1301 (W.D. Wash. 2021)............................................24

*Walker v. Thompson*,
  404 F. Supp. 3d 819 (S.D.N.Y. 2019) ..................................................15

*Wallace v. Health Quest Sys., Inc.*,
  2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021) ................................19, 20

*Ward v. W. Cnty. Motor Co.*,
  403 S.W.3d 82 (Mo. 2013)....................................................................17

*Weinstock v. ABP Corp.*,
  2021 WL 698905 (N.Y. Sup. Ct. Feb. 23, 2021) .................................26

*Wesch v. Yodlee, Inc.*,
  2021 WL 1399291 (N.D. Cal. Feb. 16, 2021).................................21, 22

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Wesch v. Yodlee, Inc.*,
   2021 WL 6206644 (N.D. Cal. July 19, 2021) ......................................................19

**Statutes**

15 U.S.C. § 6502(a) ................................................................................................9

15 U.S.C. § 6502(c) ................................................................................................6

15 U.S.C. § 6502(d) ........................................................................................5, 6, 7

15 U.S.C. § 6504(a) ................................................................................................6

15 U.S.C. § 6504(d) ...........................................................................................6, 7

15 U.S.C. § 6505(d) ................................................................................................6

73 Pa. Stat. § 201-9.2 ..........................................................................................17

Cal. Bus. & Prof. Code § 17204 ..........................................................................17

Cal. Civ. Code § 1798.105 ...................................................................................18

Cal. Civ. Code § 3517...........................................................................................22

Conn. Gen. Stat. § 42-110g(a) .............................................................................17

Fla. Stat. § 501.705(c) ..........................................................................................18

**Other Authorities**

Children's Privacy Policy, TikTok,
   https://www.tiktok.com/legal/page/global/childrens-privacy-
   policy/en [https://perma.cc/CPB3-U9QA] ...............................................11, 12

FTC, Complying With COPPA: Frequently Asked Questions (July
   2020), https://www.ftc.gov/business-
   guidance/resources/complying-coppa-frequently-asked-questions
   [https://perma.cc/U6CM-JKL4] ..........................................................................4

New User Guide, TikTok, https://www.tiktok.com/safety/en/new-user-
   guide [https://perma.cc/E6KE-YJ5R] ..................................................................3

Privacy Policy, TikTok, https://www.tiktok.com/legal/page/us/privacy-
   policy/en [https://perma.cc/FTH2-J6HC].............................................................11

**Regulations**

16 C.F.R. § 312 ........................................................................................................9

MEM. ISO MOT. TO DISMISS
MDL No. 3144
No. 2:25-ml-03144-GW-RAO

## I.    INTRODUCTION

Plaintiffs are children who, in all but one case, misrepresented their age to create accounts on the TikTok platform. After falsely claiming to be 13 or older to access the "13+ Experience"—that is, the main TikTok platform—Plaintiffs are suing because they contend Defendants[1] collected various categories of "Private Information" from them without parental consent.[2] But the information Plaintiffs complain about is the same information that Defendants collect from *all* 13+ Experience users, as disclosed in the platform's publicly available privacy policy. In contrast, the Plaintiff who indicated they were under-13 was placed into "Kids Mode," a section of the platform designed for children under age 13. Defendants likewise disclosed that they collect more limited information from Kids Mode users. Yet Plaintiffs are suing precisely because Defendants collected the very information they said they would collect.

Plaintiffs' Complaint attempts to frame this routine data collection as improper by predicating it on the assertion that Defendants violated the federal Children's Online Privacy Protection Act of 1998 ("COPPA"). *See, e.g.*, Compl. ¶ 14. But Plaintiffs concede that "COPPA does not itself provide a private right of action … to seek redress for harms arising from COPPA violations." *Id.* ¶ 196. Unable to sue under COPPA, Plaintiffs assert four categories of state-law claims on

---

[1] "Complaint" or "Compl." refers to Plaintiffs' Consolidated Class Action Complaint, ECF No. 94.  Plaintiffs' Complaint generally does not distinguish between Defendants ByteDance Inc., ByteDance Ltd., TikTok Inc., TikTok Ltd., TikTok LLC, TikTok Pte. Ltd., and TikTok U.S. Data Security Inc., instead referring to them in the aggregate. While this brief also refers to Defendants in the aggregate, should this case proceed, Defendants reserve the right to show that they are in fact differently situated with respect to these claims.  Unless otherwise noted, all alterations, citations, and quotations are omitted, and all emphases are added.

[2] One plaintiff ("S.T.") claims to have created and used a "Kids Mode" account, but Defendants' arguments for dismissal apply equally to that plaintiff as well. Compl. ¶¶ 370-72.

behalf of various purported classes:

- **Invasion of privacy.** Plaintiffs allege claims for intrusion upon seclusion under the laws of 38 different states. Plaintiffs have also alleged invasion-of-privacy claims under the California Constitution and New York's Civil Rights statute on behalf of purported class members in those states.

- **Unfair competition.** Plaintiffs allege unfair competition claims under the laws of eight states: California, Connecticut, Florida, Georgia, Missouri, New York, Pennsylvania, and Washington.

- **Unjust enrichment.** Plaintiffs allege claims for unjust enrichment under the laws of 44 states.

- **Negligence.** Plaintiffs allege negligence claims under the laws of the same eight states as Plaintiffs' unfair competition claims.

As explained below, the Court should dismiss the Complaint for several reasons. At the threshold, dismissal of Plaintiffs' claims is warranted because they seek to prosecute this case while the U.S. Department of Justice's Consumer Protection Branch ("DOJ") is pursuing its own enforcement action against Defendants,[3] which is inconsistent with, and thus preempted by, COPPA. The statute is clear that DOJ's enforcement efforts take precedence over similar efforts, including state actions to enforce COPPA. Allowing this case to go forward while DOJ continues to actively litigate Defendants' liability under COPPA is directly contrary to Congress's intent that the federal government maintain priority over such matters, and that other pending litigation not proceed pending completion of those federal efforts. And even if the Court were to permit Plaintiffs' claims to proceed, Plaintiffs—residents of eight states—lack standing to bring intrusion-upon-seclusion and unjust-enrichment claims for the dozens of states in which they admittedly do not reside and were not injured in.

---

[3] *See United States v. ByteDance Ltd.*, No. 2:24-cv-06535-GW-RAO (C.D. Cal. Aug. 2, 2024), ECF No. 1.

On the merits, Plaintiffs' privacy claims fail because they had no reasonable expectation of privacy in data that Defendants expressly informed all platform users they would collect and use, and collection of that data was not highly offensive. Plaintiffs' unfair-competition, unjust-enrichment, and negligence claims fail for much the same reason—Plaintiffs nowhere identify how Defendants' alleged collection of personal information harmed them. That omission is critical, because courts have repeatedly held that, to state a cognizable injury or a claim for relief, a plaintiff must plead facts demonstrating that the information collected was economically valuable, and show how he or she was harmed by its collection. The absence of those essential allegations dooms Plaintiffs' claims. The Court should grant Defendants' motion and dismiss the Complaint in its entirety.

## II.    FACTUAL BACKGROUND

### A.    Defendants Operate An Online Entertainment Media Platform.

The TikTok platform is an online entertainment media platform that users can access via a web browser or a downloadable mobile app. Compl. ¶ 82. In keeping with its mission "to inspire creativity and bring joy,"[4] the TikTok platform provides a creative forum in which users can share their skills, passions, and ideas. *Id.* Users can combine video, music, and graphics to create everything "from dance challenges to lip-syncing to DIY tutorials to historical parodies to internet memes."[5]

### B.    Defendants Take Affirmative Steps To Protect Children And Families.

Defendants take seriously their responsibility to protect children and their families. To that end, Defendants have implemented comprehensive systems and

---

[4] New User Guide, TikTok, https://www.tiktok.com/safety/en/new-user-guide [https://perma.cc/E6KE-YJ5R] (under "What is TikTok?" heading) (cited in Compl. ¶ 133 n.66). Because the Complaint references these materials, the Court can consider them at this stage. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

[5] New User Guide (under "TikTok basics" heading).

processes to screen for children under 13, and to identify and remove such users who accessed the 13+ Experience in violation of TikTok's policies. Before creating a TikTok account, for example, every user must first enter his or her birthdate—a feature known as an "age gate." Compl. ¶¶ 103-04. Only users who identify themselves as 13 or older can create a TikTok account with access to the 13+ Experience. *Id.* ¶ 105.

Any user who indicates that he or she is under 13 is automatically directed to a separate experience, sometimes referred to as "Kids Mode." *Id.* Kids Mode is a distinct portion of the TikTok platform that is specifically designed to allow users under 13 to experience the platform in an age-appropriate manner. *Id.* ¶¶ 106-07. For instance, users in Kids Mode can view videos from other creators, but "cannot upload videos, post information publicly, or message other users." *Id.* ¶ 106.

The Federal Trade Commission ("FTC") has recognized that online service operators "may rely on the age information [their] users enter, even if that age information is not accurate."[6] Defendants nevertheless take affirmative steps to identify and remove children who gain access to the 13+ Experience by misrepresenting their ages. For example, Defendants use "keyword matching" to help identify accounts that potentially belong to children. *Id.* ¶ 145. Human moderators review these accounts and their content to determine whether they likely belong to children. *Id.* ¶ 146. Defendants also conduct "quality assurance reviews" in which content moderators "re-review a subset of previously reviewed accounts" with the goal of identifying any errors. *Id.* ¶ 154.

In addition to instituting these processes for flagging and removing underage accounts, Defendants enable parents and guardians to request the deletion of an

---

[6] FTC, Complying With COPPA: Frequently Asked Questions (July 2020), https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions [https://perma.cc/U6CM-JKL4].

account their child has created on the 13+ Experience. *Id.* ¶ 134. Parents or guardians can submit deletion requests through a web form. *Id.* ¶¶ 132-33.

*    *    *

In short, Defendants' policies are designed to protect children under 13, with the goal of providing a safe environment for users and their families.

## III.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard "appl[ies] with equal force to Article III standing when it is being challenged on the face of the complaint." *Aguilar v. Coast to Coast Comput. Prods., Inc.*, 2024 WL 635314, at *1 (C.D. Cal. Jan. 8, 2024).

## IV.    ARGUMENT

### A.    The Court Should Dismiss, Or At Minimum Stay, This Case Because Allowing Plaintiffs' Claims To Proceed Is Inconsistent With COPPA.

As an initial matter, dismissal of all of Plaintiffs' claims is warranted because prosecution of this case while the DOJ's separate enforcement action is pending is preempted by COPPA. State-law claims are preempted when they "interfere with, or are contrary to, federal law." *Am. Apparel & Footwear Ass'n v. Baden*, 107 F.4th 934, 938 (9th Cir. 2024). COPPA contains an express preemption clause, which provides that "[n]o State or local government may impose any liability" in a way that is "inconsistent with" COPPA. 15 U.S.C. § 6502(d).

Every one of Plaintiffs' claims is based on alleged COPPA violations.[7] Yet Plaintiffs have no private right of action to enforce the statute. *See Benson v. Perris Elementary Sch. Dist.*, 2022 WL 3574290, at *5 (C.D. Cal. July 1, 2022). Instead, the federal government has primary enforcement authority over COPPA violations. *See* 15 U.S.C. §§ 6502(c), 6505(d). And while states have limited authority to bring their own enforcement actions, COPPA flatly prohibits states from "institut[ing]" state enforcement "during the pendency of" any parallel federal proceedings brought against the same defendant, *id.* §§ 6504(a)(1), (d).

Plaintiffs' complaint is plainly "inconsistent with" these provisions. *Id.* § 6502(d). In direct tension with COPPA's statutory scheme, Plaintiffs are attempting to litigate their state-law claims while the DOJ is actively enforcing its own separate action against Defendants for alleged COPPA violations. To allow them to do so would create a scenario where states acting in their *parens patriae* capacity are barred from initiating their own COPPA enforcement action, but private plaintiffs are not. That result is the exact opposite of what Congress intended—namely, that the federal government have priority over COPPA-related matters, and that other pending litigation cede and yield to those federal efforts.

As explained in Defendants' concurrently filed motion to stay, COPPA affords the federal government enforcement priority for good reason. Dismissal of Plaintiffs' claims will avoid the significant risk of inconsistent judgments. Defs.'

---

[7] *See, e.g.*, Compl. ¶¶ 433-36 (multi-state intrusion upon seclusion), 443-45 (multi-state unjust enrichment), 454-59 (California constitutional right to privacy), 467-68 (California negligence), 506 (California unfair competition), 537-38 (Connecticut negligence), 581-82 (Connecticut unfair competition), 602-03 (Florida unfair competition), 620-21 (Florida negligence), 656-57 (Georgia negligence), 697-700 (Georgia unfair competition), 717-18 (Missouri negligence), 758-61 (Missouri unfair competition), 780 (New York Civil Rights Law), 790-91 (New York negligence), 834-42 (Pennsylvania negligence), 868-71 (Pennsylvania unfair competition), 904 (Washington negligence), 929 (Washington unfair competition). *See also* Defs.' Memo. ISO Mot. to Stay at § IV.A.

MEM. ISO MOT. TO DISMISS
MDL No. 3144
No. 2:25-ml-03144-GW-RAO

Memo. ISO Mot. to Stay at § IV.A. Plaintiffs' claims will be adjudicated by different triers of fact than DOJ's case. *Id*. And while Plaintiffs' claims are based on the identical factual allegations in DOJ's complaint, Plaintiffs have taken different positions compared to DOJ, including on matters like the adequacy of TikTok's "age gate" as well as preservation issues. *Id.* Litigation of both cases simultaneously could thus result in completely divergent outcomes based on the same facts. *Id*. Both COPPA and common sense dictate that Plaintiffs' state claims should only continue (if it all) *after* the DOJ action is resolved. *See Tripolskiy v. Bos. Sci. Corp.*, 2023 WL 5440783, at *5 (C.D. Cal. June 23, 2023) (dismissing state claims preempted by federal statute); *Escarcega v. Verdugo Vista Operating Co.*, 2020 WL 1703181, at *13 (C.D. Cal. Apr. 8, 2020) (Wu, J.) (same).

*Jones v. Google LLC*, 73 F.4th 636 (9th Cir. 2023), does not preclude the relief sought here. In *Jones*, the Ninth Circuit held that COPPA's preemption clause "does not bar state-law causes of action that are parallel to, or proscribe the same conduct forbidden by, COPPA," allowing a set of private plaintiffs' state-law claims based on COPPA against Google to proceed. 73 F.4th at 644. But *Jones* is distinguishable because there the federal enforcement action against Google settled *before* the private plaintiffs ever filed their state-law claims.[8] By contrast, Plaintiffs seek to litigate their private action *simultaneously* with DOJ's action, which is directly "inconsistent with" COPPA's limitations on other enforcement after a DOJ action has been filed. *See* 15 U.S.C. §§ 6502(d), 6504(d). *Jones* is no bar to application of COPPA's express preemption clause here.[9]

---

[8] *See* Compl., *Hubbard v. Google LLC*, No. 5:19-cv-07016 (C.D. Cal. Oct. 25, 2019), ECF 1; Stip. Order for Permanent Injunction & Civil Penalty Judgment, *FTC v. Google LLC*, No. 1:19-cv-02642 (D.D.C. Sept. 10, 2019), ECF 5.

[9] For the same reasons, Plaintiffs' claims are impliedly preempted by COPPA. *See Jones*, 73 F.4th at 644 ("Although express and conflict preemption are different inquiries, they effectively collapse into one when the preemption clause uses the term 'inconsistent.'").

Alternatively, the Court should stay Plaintiffs' case to avoid this conflict with COPPA and the risk of inconsistent judgments. For the reasons stated in Defendants' motion to stay, a stay is consistent with the orderly course of justice, will avoid harm to Defendants, and will not prejudice Plaintiffs. Defs.' Memo. ISO Mot. to Stay at § IV.

## B.    Plaintiffs Lack Standing To Bring Claims Under The Laws Of States Where They Do Not Reside.

Courts in this circuit have "overwhelmingly ruled" plaintiffs lack Article III standing "to assert claims from states in which they neither reside nor suffered an injury." *Drake v. Toyota Motor Corp.*, 2020 WL 7040125, at *3 (C.D. Cal. Nov. 23, 2020). California district courts thus "routinely dismiss claims for lack of subject-matter jurisdiction where no plaintiff is alleged to reside in a state whose laws the class seeks to enforce." *Harris v. CVS Pharmacy, Inc.*, 2015 WL 4694047, at *4 (C.D. Cal. Aug. 6, 2015) (collecting cases and dismissing out-of-state claims); *see also Hadi v. Toyota Motor Corp.*, 2025 WL 841804, at *2-3 (C.D. Cal. Jan. 6, 2025) (same).

Plaintiffs allege intrusion-upon-seclusion and unjust-enrichment claims under the laws of dozens of states, and on behalf of putative classes of "persons residing in" those states. Compl. ¶¶ 407, 409. But Plaintiffs admittedly reside in only eight states: California, Connecticut, Florida, Georgia, Missouri, New York, Pennsylvania, and Washington. *Id*. ¶¶ 22-37. Nor do Plaintiffs allege they were injured anywhere other than where they reside, which means they lack standing to assert claims arising under these other states' laws. Those claims should all be dismissed.[10]

---

[10] If granted, this would result in dismissal of Plaintiffs' (i) intrusion-upon-seclusion and unjust-enrichment claims under the laws of Alabama, Alaska, Arkansas, Colorado, Delaware, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Maine, Maryland, Minnesota, Mississippi, Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, Ohio, Oklahoma, Oregon, South Dakota, Tennessee, Utah,

### C.    The Court Should Dismiss Plaintiffs' Privacy Claims.

Plaintiffs have asserted claims for intrusion upon seclusion under the laws of 38 states,[11] as well as claims for violations of the California Constitution's right to privacy and Sections 50 and 51 of the New York Civil Rights Law. *Id.* ¶¶ 429-40, 451-63, 775-86. But they do not allege facts required to state a plausible claim for relief under any of these state laws.

### 1.    Plaintiffs fail to state claims for intrusion upon seclusion or violation of the right to privacy.

Plaintiffs' theory is that Defendants violated COPPA and thereby intruded upon their seclusion and violated their right to privacy. Compl. ¶¶ 429-40, 451-63. But simply parroting the DOJ's allegations of a purported COPPA violation is not sufficient. A COPPA violation requires proof that a covered operator collects personal information from a child in a manner that violates specific regulations the FTC issues under the COPPA statute governing, for example, parental notice and consent, parental rights of access and deletion, and data security. *See* 15 U.S.C. § 6502(a)(1); 16 C.F.R. § 312. By contrast, generally speaking, a claim for intrusion upon seclusion or a privacy violation under California's Constitution requires the plaintiff to plausibly allege that defendant (1) intruded on "a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy" and (2) the intrusion "occur[red] in a manner highly offensive to a

---

Vermont, and West Virginia; (ii) intrusion-upon-seclusion claims under the laws of Arizona, Louisiana, Texas, and Wyoming; and (iii) unjust-enrichment claims under the laws of Indiana, Massachusetts, Michigan, Montana, Nebraska, Rhode Island, South Carolina, Virginia, and Wisconsin.

[11] Compl. ¶ 430. Because Plaintiffs concede their claims are "substantially similar" in each state, *id.* ¶ 407, this motion focuses on representative state laws as discussed herein. For the Court's convenience, Defendants have prepared a brief summary of the various state intrusion-upon-seclusion laws in the attached Index A.

MEM. ISO MOT. TO DISMISS
MDL No. 3144
No. 2:25-ml-03144-GW-RAO

reasonable person." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009).[12] Because state law has separate and distinct elements compared to COPPA, courts have dismissed similar claims that, although "frame[d] … as arising under state law, … are predicated on alleged violations of COPPA rather than on additional activity that violates state law." *Manigault-Johnson v. Google, LLC*, 2019 WL 3006646, at *6 (D.S.C. Mar. 31, 2019). This Court should do the same here.

Moreover, and as discussed below, Plaintiffs' intrusion-upon-seclusion and privacy claims also fail because they do not plausibly allege the required elements. Plaintiffs are children who, in all but one instance, misrepresented their age to gain access to the 13+ Experience. Regardless, for all Plaintiffs—both the 13+ Experience users and the single Kids Mode user—the TikTok platform privacy policies plainly and expressly disclosed that Defendants would collect all the information Plaintiffs now claim was private and that they would use it in the precise ways Plaintiffs challenge. Nor do many of the types of information Plaintiffs claim was private implicate state-law privacy interests. Plaintiffs therefore had no reasonable expectation of privacy in that information, and its collection was not highly offensive.

***Reasonable expectation of privacy.*** Plaintiffs assert they reasonably expected that "Defendants would not collect and/or use" their private information when Plaintiffs were "using TikTok." Compl. ¶¶ 431-32. This theory fails for two reasons. First, Defendants' privacy policies expressly disclose that they collect all the information Plaintiffs now claim was private, for the precise uses Plaintiffs challenge. Second, much of the information at issue does not implicate a state-law privacy interest at all.

---

[12] *See also* Index A (summarizing other 37 states' laws); *In re Google Location History Litig.*, 428 F. Supp. 3d 185, 196 (N.D. Cal. 2019) (same elements for California constitutional privacy claims and intrusion upon seclusion).

To determine whether a plaintiff has a legally protected privacy interest, "courts consider a variety of factors, including the customs, practices, and circumstances surrounding a defendant's particular activities." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 602 (9th Cir. 2020). This inquiry reduces to "whether a user would reasonably expect that [the online platform] would have access to" the data at issue. *Id*. In other words, "there is no reasonable expectation of privacy when the data collection is within users' common-sense expectation." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1089 (N.D. Cal. 2019); *see Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (affirming dismissal of intrusion-upon-seclusion claim because "Plaintiffs consented to Facebook's data tracking and collection practices").

Here, Plaintiffs could not have reasonably expected their information would be private because TikTok's Privacy Policy (for the 13+ Experience) and Children's Privacy Policy (for Kids Mode) expressly discloses that Defendants would collect and use this very information.[13] Indeed, Plaintiffs cite to and quote from these very same policies when identifying the categories of allegedly private information Defendants supposedly collected. *See* Compl. ¶¶ 96-101 & nn.49-52 (citing Privacy Policy); *id.*¶ 124 & nn.59-60 (citing Children's Privacy Policy).[14] Plaintiffs in the 13+ Experience cannot have reasonably expected Defendants to refrain from using this data to "target[] … them with behavioral advertising," Compl. ¶ 437, when the Privacy Policy for the 13+ Experience specifically states

---

[13] Privacy Policy, TikTok, https://www.tiktok.com/legal/page/us/privacy-policy/en ("Privacy Policy") [https://perma.cc/FTH2-J6HC] (cited in Compl. ¶¶ 96-101); Children's Privacy Policy, TikTok, https://www.tiktok.com/legal/page/global/childrens-privacy-policy/en ("*Children's* Privacy Policy") [https://perma.cc/CPB3-U9QA] (cited in Compl. ¶ 124). Because Plaintiffs reference these materials in their Complaint, the Court can consider them in connection with this motion. *Swartz*, 476 F.3d at 763.

[14] *Compare also*, *e.g.*, Compl. ¶ 96 to Privacy Policy (under "What Information We Collect" heading).

that the platform "generally use[s]" collected information to "deliver advertising, including targeted advertising, to you on the Platform."[15] Likewise, the Plaintiff who joined Kids Mode cannot have reasonably expected Defendants not to "collect device information," *id.* ¶ 124, when the Children's Privacy Policy expressly states that the platform "may … collect certain information automatically from the Child's device."[16] Common sense dictates that Defendants would "collect and/or use" the very information they told Plaintiffs they would collect, and use it in a way the policies stated they would. *See Hammerling*, 615 F. Supp. at 1089; *Smith*, 745 F. App'x at 9.

The case law confirms this result. Courts that have allowed intrusion-upon-seclusion claims to proceed have required something more to establish a reasonable expectation of privacy, such as collecting data while the user was logged out where the privacy policy did not disclose such collection, *In re Facebook*, 956 F.3d at 602, or a misrepresentation about what data is being collected, *In re Google Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 151 (3d Cir. 2015) (reasonable expectation of privacy in browsing histories when Google tracked URLs after the users affirmatively denied consent for such tracking). Those circumstances are not present here, and Plaintiffs' allegations that Defendants collected the very data described in their privacy policies does not suffice.

Plaintiffs have failed to allege a reasonable expectation of privacy for another independent reason: many kinds of personal information identified in the Complaint—including names, email addresses, phone numbers, persistent identifiers, and IP addresses, *see* Compl. ¶¶ 96-97—do not implicate privacy interests under state law at all. *See Phillips v. U.S. Customs & Border Prot.,* 74 F.4th 986, 995-96 (9th Cir. 2023) (holding that "names, birthdays, social security

---

[15] Privacy Policy (under "How We Use Your Information" heading).

[16] Children's Privacy Policy (under "What Information We Collect from Children" heading).

MEM. ISO MOT. TO DISMISS
MDL No. 3144
No. 2:25-ml-03144-GW-RAO

numbers, occupations, addresses, social media profiles, and political views and

associations" are not "generally considered private");[17] *United States v. Forrester*,

512 F.3d 500, 510 (9th Cir. 2008) (concluding that "users have no expectation of

privacy in the to/from addresses of their messages or the IP addresses of the

websites they visit"). Indeed, courts have held that accessing even more sensitive

personal information, like credit reports, does not amount to intrusion upon

seclusion. *See, e.g.*, *Daniel v. Goodyear Tire/CBSD*, 2017 WL 9472892, at *6-7

(E.D. Mich. July 27, 2017) ("Obtaining a credit report is rarely an actionable

intrusion.") (collecting cases); *Gallaher v. U.S. Bank Nat'l Ass'n*, 2017 WL

2111593, at *10 (D. Conn. May 15, 2017) (similar).

    ***Highly offensive.*** Plaintiffs' privacy claims also fail the second element of

their privacy and intrusion-upon-seclusion claims: the manner in which Defendants

allegedly collected Plaintiffs' information is not "highly offensive."

    *Hammerling* is instructive. There, users asserted various claims alleging that

Google invaded their privacy by collecting "usage and engagement data" that

revealed "intimate details about users," like "their religious and political

affiliations," their "sleep schedule," and "other habits and preferences." 615 F.

Supp. 3d at 1078. The court rejected the users' privacy and intrusion-upon-

seclusion claims as a matter of law, explaining that "data collection and disclosure

to third parties that is 'routine commercial behavior' is not a 'highly offensive'

intrusion of privacy." *Id.* at 1089. Only when a privacy violation arises from

"surreptitious" conduct, like secretly "recording … people's voices and

---

[17] *See also I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022)
(collecting "one's email address, phone number, or [social media] username" is not
a legally-cognizable privacy harm); *In re BPS Direct, LLC*, 705 F. Supp. 3d 333,
355-56 (E.D. Pa. 2023) ("Website Users who d[o] not disclose highly sensitive
personal information such as medical diagnosis information or financial data from
banks or credit cards cannot establish concrete harm"). While these cases arise in
the Article III standing context, they stand equally for the proposition that Plaintiffs
have not suffered any privacy harm. *See Phillips*, 74 F.4th at 992.

conversations," does a privacy harm arise. *Id.* at 1091. Collecting "general
information" about a user "does not suffice." *Id.*

The same analysis applies here. Collecting data of internet users is of course
entirely routine commercial behavior, and courts have "consistently refused to
characterize the disclosure of common, basic digital information to third parties as
serious or egregious violations of social norms." *In re Google, Inc. Priv. Policy
Litig.*, 58 F. Supp. 3d 968, 985 (N.D. Cal. 2014); *see also Esparza v. Kohl's Inc*.,
723 F. Supp. 3d 934, 946 (S.D. Cal. 2024) ("Courts have been hesitant to extend
the tort of invasion of privacy to the routine collection of personally identifiable
information as part of electronic communications."). Nor did Defendants collect
Plaintiffs' data in any "surreptitious" way, *Hammerling*, 615 F. Supp. 3d at 1091—
again, Plaintiffs do not allege that Defendants misrepresented the data collection
practices of the 13+ Experience that Plaintiffs affirmatively chose to access. As in
*Hammerling* and other cases, Plaintiffs' allegations "are better characterized as data
collection of routine commercial behavior," not "a highly offensive intrusion of
privacy." *Hammerling v. Google LLC*, 2022 WL 17365255, at *9 (N.D. Cal. Dec.
1, 2022), *aff'd*, 2024 WL 937247 (9th Cir. Mar. 5, 2024).[18]

Consistent with *Hammerling*, courts that have found an online platform's
data collection was "highly offensive" have required "plus factors" above and
beyond "ubiquitous, commercial" data collection. *See Hubbard v. Google LLC*,
2025 WL 82211, at *2, *4-5 (N.D. Cal. Jan. 13, 2025)*. For example, that an app
store "surreptitiously collect[ed] data" from under-13 users of apps that it
affirmatively represented were meant for children under 13, *A.B. ex rel. Turner v.
Google LLC*, 737 F. Supp. 3d 869, 875-76, 884-85 (N.D. Cal. 2024), or that a
platform "targeted children," *Hubbard*, 2025 WL 82211, at *4. Here, in contrast,

---

[18] *Accord Esparza*, 723 F. Supp. 3d at 946; *Cousin v. Sharp Healthcare*, 681 F.
Supp. 3d 1117, 1126 (S.D. Cal. 2023); *In re iPhone Application Litig.*, 844 F. Supp.
2d 1040, 1064 (N.D. Cal. 2012).

MEM. ISO MOT. TO DISMISS
MDL No. 3144
No. 2:25-ml-03144-GW-RAO

Defendants never claimed that the *13+* Experience was appropriate for under-13 users, but rather placed users who identified themselves as under-13 into the separate "Kids Mode" experience that *was* specifically "designed" for them. Compl. ¶¶ 3, 123-24. And Plaintiffs do not allege that Defendants "targeted children"; rather, they allege that the 13+ Experience collects data from "each user" regardless of age. *Id*. ¶ 96.

That Defendants allegedly collected personal information from children does not change the analysis. *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 294 (3d Cir. 2016) (rejecting argument that "the use of cookies to track children is particularly odious" because "Google used third-party cookies on Nick.com in the same way that it deploys cookies on myriad other[] websites"). And as discussed, *supra* § IV.A, Plaintiffs' allegations that Defendants violated COPPA do not matter for purposes of this analysis. *See Manigault-Johnson*, 2019 WL 3006646, at *6-7 (dismissing intrusion-upon-seclusion claim "based on nothing more than alleged violations of COPPA").

For these reasons, the Court should dismiss Plaintiffs' intrusion-upon-seclusion claims in all 38 states and Plaintiffs' California constitutional privacy claims.

## 2. Plaintiffs fail to state a claim under the New York Civil Rights Law.

In New York, "the right to privacy is governed exclusively by [S]ections 50 and 51 of the [New York] Civil Rights Law." *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 123 (1993). To state a claim under these sections, Plaintiffs must demonstrate, among other things, use of their name or likeness "for purposes of advertising or trade." *Walker v. Thompson*, 404 F. Supp. 3d 819, 824 (S.D.N.Y. 2019). Use of one's likeness must "appear[] in … an advertisement." *Beverley v. Choices Women's Med. Ctr., Inc.*, 78 N.Y.2d 745, 751 (1991). New York courts have "repeated[ly] admoni[shed]" Sections 50 and 51 "are to be strictly limited to …

1  [use] to promote a particular good or service." *Curtis v. City of New York*, 195

2  N.Y.S.3d 592, 598 (N.Y. Sup. Ct. 2023).

3      Plaintiffs do not meet this requirement. Plaintiffs allege that Defendants used

4  "identities, photographs, likenesses, or personal information of children under the

5  age of 13 to build profiles *and target advertisements to those children*" and

6  "received revenues and profits" by using Plaintiffs' likenesses "in connection with

7  [their] business for the purposes of trade." Compl. ¶ 782. But using one's likeness

8  to target advertisements *to* them is not the same as using Plaintiffs (or any other

9  children) *in* an advertisement promoting, for example, the TikTok platform. And

10  New York courts have dismissed claims alleging merely that a defendant "received

11  revenues and profits" by using or selling allegedly private consumer electronic data.

12  *E.g.*, *Smith v. Chase Manhattan Bank, USA*, 293 A.D.2d 598, 598 (N.Y. App. Div.

13  2002) (sale of names, addresses, phone numbers, account numbers, credit-card

14  usage, and other financial information to third-party vendors); *Curtis*, 195 N.Y.S.3d

15  at 598 (use of customer electronic data obtained from online food delivery system

16  to "market the restaurant to them through generic mailings and promotions").

17  Plaintiffs' New York Civil Rights Law claim fails.

18      **D.    The Court Should Dismiss Plaintiffs' Unfair-Competition Claims.**

19      Plaintiffs contend that Defendants' alleged collection and use of their

20  information without parental consent violates unfair competition statutes in the

21  eight states in which they purportedly reside: California's Unfair Competition Law

22  ("UCL"), the Connecticut Unfair Trade Practices Act ("CUTPA"), the Florida

23  Deceptive and Unfair Trade Practices Act ("FDUTPA"), the Georgia Fair Business

24  Practices Act ("GFBPA"), the Missouri Merchandising Practices Act ("MMPA"),

25  the Pennsylvania Unfair Trade Practices and Consumer Protection Law

26  ("UTPCPL"), and the Washington Consumer Protection Act ("WCPA"). Plaintiffs

27  have not plausibly alleged any concrete or ascertainable injury from Defendants'

28  conduct, and therefore lack Article III and statutory standing and fail to state their

16

1    unfair-competition claims.

2        To satisfy Article III, Plaintiffs must adequately allege a "concrete" injury—

3    "that is, it must actually exist." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). In

4    other words, the injury must be "real, and not abstract." *Id*. The unfair-competition

5    statutes also impose a "substantially narrower" standing requirement of

6    ascertainable—and, in most cases, economic—injury. *E.g.*, *Griffith v. TikTok, Inc*.,

7    697 F. Supp. 3d 963, 976-77 (C.D. Cal. 2023) (citing *Kwikset Corp. v. Superior Ct*.,

8    51 Cal. 4th 310, 323 (2011)) (UCL standing "requir[es] … economic injury").

9    Thus, to state a claim under each of the unfair-competition statutes, Plaintiffs must

10   allege that they sustained an ascertainable injury. *See* Cal. Bus. & Prof. Code

11   § 17204 (UCL requires "injury in fact" and "lost money or property").[19] For all the

12   statutes except Georgia's, that injury must be economic. *See id.* & n.19.

13       Here, Plaintiffs have not adequately alleged a cognizable unfair-competition

14   injury because they do not allege that they ever paid Defendants for their services

15   or otherwise lost money or property as a result of Defendants' alleged conduct.

16   Instead, Plaintiffs assert four abstract theories of economic injury.[20] Each is

17

18   _____

19   [19] *See also* Conn. Gen. Stat. § 42-110g(a) (CUTPA requires "ascertainable loss of
     money or property"); 73 Pa. Stat. § 201-9.2 (UTPCPA requires "ascertainable loss

20   of money or property"); *Lemelson v. Wells Fargo Bank, N.A.*, 641 F. Supp. 3d
     1005, 1012-13 (W.D. Wash. 2022) (WCPA requires injury to "plaintiff's business

21   or property"); *Muy v. Int'l Bus. Machs. Corp.*, 2019 WL 8161747, at *2 (N.D. Fla.
     June 5, 2019) (FDUTPA requires plaintiff to be "financially deprived"); *Ward v. W.*

22   *Cnty. Motor Co.*, 403 S.W.3d 82, 84 (Mo. 2013) (MMPA requires that plaintiff

23   "suffered an ascertainable loss of money or property"); *Friedlander v. PDK Labs,*
     *Inc.*, 465 S.E.2d 670, 671 (Ga. 1996) (GFBPA requires that plaintiff "suffer[ed]

24   injury or damages").

25   [20] Plaintiffs assert different combinations of injury theories for each state. For

26   example, some Plaintiffs claim they were injured for purposes of California's UCL
     because they lost control of their information, their information lost value, they

27   were deprived of the "benefit of the bargain," and their right to exclude was
     infringed upon. Compl. ¶¶ 519, 522. By contrast, the Georgia Plaintiffs allege only

28

                                      17

insufficient to establish standing[21] or to state an unfair-competition claim.

    ***Loss-of-control.*** In support of their unfair-competition claims, Plaintiffs allege that they were injured because they lost "the ability to control the use of their Personal Information." Compl. ¶¶ 519, 612, 709, 770, 785, 880. But the Complaint is devoid of any factual allegations indicating that Plaintiffs' personal information no longer belongs to them or is no longer in their "control." Plaintiffs have not, for example, alleged that any of their parents attempted to regain "control" of their personal data by submitting a deletion request—let alone that Defendants failed to comply with such a request. *See id.* ¶¶ 242-395; *see also*, *e.g.*, Cal. Civ. Code § 1798.105 (consumer may request deletion of "any personal information about the consumer which [a] business has collected from the consumer"); Fla. Stat. § 501.705(c) (similar). These missing factual allegations are fatal to and dispositive of Plaintiffs' loss-of-control theory. *See Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 862-63 (N.D. Cal. 2011) (dismissing unfair-competition claim for failure to plead injury where plaintiff's personal information "did not cease to belong to him, or pass beyond his control" as a result of defendant's alleged actions).

    Plaintiffs' loss-of-control theory cannot support their unfair-competition claims in California, Connecticut, Florida, Missouri, Pennsylvania, or Washington for a separate reason: even if Plaintiffs *had* plausibly alleged that transmitting unspecified personal information to Defendants caused Plaintiffs to lose control of that information, loss of control does not amount to an *economic* injury, which is required to state a claim under each of those states' statutes. Plaintiffs simply do not point to any financial harm that could have resulted from losing their ability to

---

that they lost control of their information and that their information lost value. *Id.* ¶ 709.

[21] *See, e.g.*, *Burns v. Mammoth Media, Inc.*, 2023 WL 5608389, at *4 (C.D. Cal. Aug. 29, 2023) (collecting cases) (no Article III standing for similar theories of injury); *Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1229 (N.D. Cal. 2022) (same).

MEM. ISO MOT. TO DISMISS
MDL No. 3144
No. 2:25-ml-03144-GW-RAO

1    control their personal information.

2    ***Loss-of-value.*** Plaintiffs' "loss-of-value" theory fares no better. Plaintiffs

3    claim they suffered an injury under California, Florida, Georgia, Missouri, and

4    Pennsylvania unfair-competition law because they experienced a "loss of the value

5    and/or diminishment in value of their [P]ersonal [I]nformation." Compl. ¶¶ 519,

6    612, 709, 770, 785, 880. But general allegations concerning the "lost value of a

7    plaintiff's personal information" are insufficient to state a cognizable injury under

8    the unfair-competition laws. *Wesch v. Yodlee, Inc.*, 2021 WL 6206644, at *4 (N.D.

9    Cal. July 19, 2021) (cleaned up) (UCL); *see Doe v. Post Acute Med., LLC*, 2025

10   WL 511069, at *6 (M.D. Pa. Feb. 14, 2025) (dismissing UTPCPL claim premised

11   on alleged failure to "keep … information private"); *In re Sony Gaming Networks*

12   *& Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 992-93 (S.D. Cal. 2014)

13   ("value of [plaintiffs'] personal information" insufficient to sustain FDUTPA

14   claim).

15   To plead an unfair-competition injury, a plaintiff must allege something more

16   concrete—for example, that plaintiffs "wished to sell [their] browsing data but

17   [were] unable to do so or would be paid less for the data." *Griffith*, 697 F. Supp. 3d

18   at 978; *see Wallace v. Health Quest Sys., Inc.*, 2021 WL 1109727, at *8 (S.D.N.Y.

19   Mar. 23, 2021) ("lost value" theory insufficient where plaintiffs failed to "allege

20   they could have monetized their private information" or that "their private

21   information was actually monetized on the black market"); *Doe*, 2025 WL 511069,

22   at *6 (dismissing UTPCPL claim based on alleged failure to "keep … information

23   private" where complaint contained only "conclusory allegations of damages,

24   including monetary damages; loss of privacy; unauthorized disclosure of private

25   information; [and] use of private information for advertising purposes"). A plaintiff

26   cannot "merely say the information was taken and therefore it has lost value"—he

27   must allege facts showing that the "information has economic value *to him*." *Bass v.*

28   *Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019).

Plaintiffs' Complaint is devoid of any such facts here. All Plaintiffs say is that they suffered a "diminution in value of their [P]ersonal [I]nformation" and that they have "lost the opportunity to receive value in exchange for" that information. Compl. ¶¶ 519, 526, 612-13, 709-10, 770-71, 785, 880-81. These conclusory allegations are untethered to any alleged facts showing that Defendants' alleged conduct caused any diminution in value. Plaintiffs do not allege that there is a market for children's data—a theory that COPPA makes implausible. Nor do they allege that they planned to sell their data, let alone that they were unable to sell the information for the same value as before. *Contra Brown v. Google LLC*, 2021 WL 6064009, at *15 (N.D. Cal. Dec. 22, 2021) (plaintiffs adequately alleged unfair-competition injury where Google had previously paid individuals for their browsing histories and where plaintiffs were "aware of" other platforms that would have paid for their data). And Plaintiffs provide no other explanation of what the value of their personal information might be.

Plaintiffs cannot save this theory of injury by alleging that "Private Information and Kids Mode Private Information" have "economic value" and citing studies in support. *See* Compl. ¶¶ 212-26. None of those studies pertain to sale of *children*'s personal information, which would be impermissible under COPPA. And, in any event, "courts have consistently found that alleging the economic value of data is not enough" to establish an unfair-competition injury. *Greenley v. Kochava*, 684 F. Supp. 3d 1024, 1054 (S.D. Cal. 2023). Even if Plaintiffs' personal information had *some* value—which the Complaint's allegations do not demonstrate—that "does not mean that they lost money or property because [Defendants collected] their information." *Ahringer v. LoanDepot, Inc.*, 715 F. Supp. 3d 1274, 1284 (C.D. Cal. 2024); *see Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023) ("just because Plaintiffs' data is [allegedly] valuable in the abstract … does not mean that Plaintiffs have 'lost money or property' as a result" of that value); *In re Facebook, Inc., Consumer Priv. User*

*Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019) (although "each user's information is worth a certain amount of money to Facebook and the companies Facebook gave it to, it does not follow that the same information … has independent economic value to an individual user").

Ultimately, without alleging facts showing their data actually lost value, Plaintiffs' loss-of-value theory cannot support their unfair-competition claims. *See Griffith*, 697 F. Supp. 3d at 978; *Wallace*, 2021 WL 1109727, at \*8; *Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 730 (N.D. Cal. 2014) (unfair-competition claim dismissed because plaintiff had "not alleged any facts showing that [d]efendants' business practice—disclosing users' Contact Information to third-party App vendors—changed her economic position at all").

***Benefit-of-the-bargain.*** The "benefit-of-the-bargain" theory Plaintiffs offer in support of their California and Washington unfair-competition claims is no more viable. The "benefit-of-the-bargain" approach is rooted in the principle "that a plaintiff may demonstrate economic injury from unfair competition by establishing he or she surrender[ed] in a transaction more, or acquire[d] in a transaction less, than he or she otherwise would have." *Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1019-20 (N.D. Cal. 2019); *cf. Mack v. Amazon.com, Inc.*, 2023 WL 2538706, at \*2 & n.1 (W.D. Wash. Mar. 16, 2023) (similar). The theory is premised on the idea that a plaintiff "would not have paid for" the defendant's services "had [he] known about the defendant's [misconduct]." *Wesch v. Yodlee, Inc.* ("*Wesch I*"), 2021 WL 1399291, at \*6 (N.D. Cal. Feb. 16, 2021).

Plaintiffs, however, cannot claim that they lost the benefit of the bargain where they did not pay for the goods or services offered. Plaintiffs allege that Defendants deprived them of the "benefit-of-the-bargain" because they "received services from [Defendants] that were less valuable than the services they would have received if [Defendants] had abided by COPPA." Compl. ¶¶ 519-20, 935. But as explained, Plaintiffs never paid for their use of the TikTok platform—which is

offered for free to users—and they never plead what "value" they lost from their use of the platform. It is common sense that a plaintiff has not demonstrated that he "surrender[ed] more or acquir[ed] less in a transaction than [he] otherwise would have" where he has not paid anything to the defendant. *See Wesch I*, 2021 WL 1399291, at *6 ("[B]ecause Plaintiffs have not paid [defendant] any money" they "have not alleged how they lost money or property" under a benefit-of-the-bargain theory.); *Lau v. Gen Digit. Inc.*, 2024 WL 1880161, at *4 (N.D. Cal. Apr. 3, 2024) ("plaintiffs' benefit-of-the-bargain theory fails because AOSP was free").

Worse, any purported "bargain" was likely based on Plaintiffs' misrepresentation—namely, that Plaintiffs lied about the fact that they were old enough to access the 13+ Experience. Plaintiffs likewise cannot claim that they lost the benefit of the bargain that is premised on a lie. *See* Cal. Civ. Code § 3517 ("No one can take advantage of their own wrong."). Because Plaintiffs' "bargain" with Defendants did not involve Plaintiffs forfeiting anything of monetary value, they cannot make a colorable argument that they suffered a "benefit-of-the-bargain" injury. *Lau*, 2024 WL 1880161, at *4; *Wesch I*, 2021 WL 1399291, at *6.

***Right-to-exclude.*** The "right-to-exclude" theory Plaintiffs assert in support of their California and Washington unfair-competition claims is not a cognizable injury either. Plaintiffs allege that they suffered an unfair-competition injury because they "have a property interest in the Personal Information collected by [Defendants]," and Defendants "deprived [them] of their right to exclude TikTok" from that information. Compl. ¶¶ 523, 938. This theory fails because no such property right exists.

The Ninth Circuit has established a three-part test for determining whether a property right exists: "First, there must be an interest capable of precise definition; second, it must be capable of exclusive possession or control; and third, the putative owner must have established a legitimate claim to exclusivity." *Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 968-69 (9th Cir. 2024). "Although this test is

derived from California state law, it is based on well-established principles that are fundamental to the common law conception of property." *Alderson v. United States*, 718 F. Supp. 2d 1186, 1196 (C.D. Cal. 2010), *aff'd*, 686 F.3d 791 (9th Cir. 2012).

Plaintiffs flunk this threshold test. Their broad definition of "Private Information" is not sufficiently definite to establish a property right. *See Doe I v. Sutter Health*, 2020 WL 1331948, at *13-15 (Cal. Super. Jan. 29, 2020) (refusing to recognize property right in "personally identifiable information," including cookies, IP addresses, and device identifiers, because it was not "sufficiently certain"). And, more importantly, online information is not "capable of exclusive possession or control." *Best Carpet*, 90 F.4th at 969. Because the personal information at issue here, like persistent identifiers or social media information, is "generated *by*" or *with* the website a user visits, users are not the sole owners of that information. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1030 (N.D. Cal. 2012). Indeed, courts have rejected the argument that users have a property right in "personal information" that would trigger a right to exclude. *See id.* (collecting cases); *see also Doe I v. Google LLC*, 741 F. Supp. 3d 828, 845 (N.D. Cal. 2024).

Moreover, even if Plaintiffs could establish a property right in their personal information, their allegations do not plausibly show that Defendants "deprived" Plaintiffs of their right to exclude others from that information. To the contrary, Plaintiffs voluntarily joined the TikTok platform, and only were able to do so because they misrepresented their ages when making accounts.

\*        \*        \*

Because Plaintiffs do not plausibly allege that they suffered any tangible injury as a result of Defendants' alleged conduct, the Court must dismiss their unfair-competition claims.

**E.      The Court Should Dismiss Plaintiffs' Unjust-Enrichment Claims.**

Plaintiffs assert claims for unjust enrichment under the laws of 44 states.[22] In general, to state a claim for unjust enrichment, a plaintiff must allege that the (1) defendant received a benefit and (2) unjustly retained that benefit (3) at the plaintiff's expense. *Best Carpet*, 90 F.4th at 973.[23] The Court should dismiss these claims because Plaintiffs do not plausibly allege that Defendants profited at *Plaintiffs'* expense or that Defendants retained any unjust benefit by collecting Plaintiffs' information.[24]

**1.      Plaintiffs do not plausibly allege that Defendants profited at *their* expense.**

Plaintiffs have not plausibly alleged that Defendants were unjustly enriched at *Plaintiffs' expense* because they have not alleged that their data has any value that Defendants caused them to lose. To show unjust enrichment at the "plaintiff's expense," Plaintiffs must allege "some tangible economic loss to [the] plaintiff."

---

[22] *See* Index B (identifying and summarizing the 44 state unjust-enrichment laws). Again, Plaintiffs concede these states' unjust-enrichment laws are all "substantially similar." Compl. ¶ 409.

[23] *See also* Index B (summarizing other 43 states' laws).  Though some jurisdictions "recognize[] a right to disgorgement of profits resulting from unjust enrichment, even where [the plaintiff] has not suffered a corresponding loss," *In re Facebook*, 956 F.3d at 599, Plaintiffs still must establish Article III standing to bring any claim in federal court. *See id*. As explained herein, dismissal of each of Plaintiffs' unjust-enrichment claims is warranted because they cannot demonstrate any actionable injury, regardless of whether each of those states requires plaintiff to demonstrate that they suffered a loss. *Supra* § V.E.1.

[24] Plaintiffs' California unjust-enrichment claim fails for the separate reason that "California does not recognize a cause of action for unjust enrichment." *Knuttel v. Omaze, Inc.*, 2022 WL 1843138, at *13 (C.D. Cal. Feb. 22, 2022). Any distinct California unjust-enrichment claim can be dismissed because it depends on Plaintiffs' other claims, which fail for the reasons already stated. *See Griffith v. TikTok Inc.*, 2023 WL 9019035, at *7 (C.D. Cal. Dec. 13, 2023).

*Vance v. Amazon.com Inc.*, 525 F. Supp. 3d 1301, 1315 (W.D. Wash. 2021).[25] As explained with respect to Plaintiffs' unfair-competition claims, Plaintiffs have not adequately alleged that they lost any economic value. Their deficient injury allegations are no more viable when it comes to unjust enrichment. *See, e.g.*, *Mai v. Supercell Oy*, 2021 WL 4267487, at *3 (N.D. Cal. Sept. 20, 2021) ("plaintiffs [who] lack[] standing on their [unfair competition] claim … thus also [lack standing to pursue] unjust enrichment claims").

Indeed, Plaintiffs do not even bother to plead any distinct injuries for their unjust-enrichment claims. *See* Compl. ¶¶ 441-50. Rather, the Complaint merely alleges that Defendants "realized … revenue from their collection and use of … Private Information." *Id*. ¶ 443. But without alleging facts demonstrating that such information had financial value or showing how Plaintiffs lost that value, Plaintiffs cannot show that Defendants were unjustly enriched at Plaintiffs' expense. Absent this showing, Plaintiffs lack standing to assert their unjust-enrichment claim, *see Taylor v. Google LLC*, 2021 WL 4503459, at *4 (N.D. Cal. Oct. 1, 2021) ("[S]imply alleging … an unjust enrichment theory" is not "sufficient to establish Article III standing."),[26] and have failed to state their claim on the merits. *See, e.g.*, *In re*

---

[25] *See also, e.g.*, *Michel v. Yale Univ.*, 2023 WL 1350220, at *6 (D. Conn. Jan. 30, 2023), *aff'd*, 110 F.4th 551 (2d Cir. 2024) (Connecticut); *Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So. 3d 689, 694 (Fla. 3d DCA 2018) (Florida); *Crook v. Foster*, 775 S.E.2d 286, 289 (Ga. Ct. App. 2015) (Georgia); *Edelman v. Starwood Cap. Grp., LLC*, 70 A.D.3d 246, 249-50 (N.Y. App. Div. 2009) (New York); *Autumn Lakes Ass'n v. Tran*, 655 S.W.3d 442, 449 (Mo. Ct. App. 2022) (Missouri); *Baughman v. Baughman*, 2025 WL 890418, at *11 (Pa. Super. Ct. 2025) (Pennsylvania); *Park S. LLC v. Denali Constr. LLC*, 29 Wash. App. 2d 1026, *review denied*, 3 Wash. 3d 1013 (2024) (Washington).

[26] *See also, e.g.*, *In re Facebook*, 956 F.3d at 600; *Rynasko v. N.Y. Univ.*, 63 F.4th 186, 195 (2d Cir. 2023) (no unjust-enrichment standing where plaintiff did not suffer "an injury to her legally protected interest"); *Perkins v. WellDyneRx, LLC*, 2023 WL 2610157, at *1-3 (M.D. Fla. Mar. 23, 2023) (similar); *Granite Commc'n, Inc. v. One Commc'ns Corp.*, 2008 WL 4793729, at *7 (D. Conn. Oct. 31, 2008) (similar).

*Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 834-35 (N.D. Cal. 2020)
(dismissal where plaintiffs failed to allege that their "'personal information' ha[d]
financial value or that Defendants … profited from the information").

### 2. Plaintiffs do not plausibly allege that Defendants unjustly retained a benefit.

Plaintiffs' unjust-enrichment claims should be dismissed for another,
independent reason: the Complaint does not plausibly allege that Defendants
obtained unjustly earned profits from Plaintiffs. Plaintiffs state in conclusory terms
that Defendants collect and exploit children's personal information to "increase
their profits." *E.g.*, Compl. ¶ 1. But the Complaint provides no basis for
determining whether or how Defendants profited from the alleged collection of
*Plaintiffs'* personal information, let alone how they profited *unjustly*. *Supra*
§ V.E.1. As courts in this Circuit have explained, "conclusory allegation[s]" that
defendants "retain[ed] profits, income[,] and ill-gotten gains at the expense of
plaintiff" are not enough to establish unjust enrichment. *Rosal v. First Fed. Bank of
Cal.*, 671 F. Supp. 2d 1111, 1133 (N.D. Cal. 2009); *see also Coffee v. Google, LLC*,
2022 WL 94986, at *11 (N.D. Cal. Jan. 10, 2022) (dismissing unjust-enrichment
claim where plaintiffs had "not alleged facts showing that Google … profited from"
the transactions in issue).

### F. The Court Should Dismiss Plaintiffs' Negligence Claims.

To state their negligence claims, Plaintiffs must adequately allege facts
showing that they sustained an "appreciable, nonspeculative, present injury." *Ladd
v. County of San Mateo*, 12 Cal. 4th 913, 917 (1996); *see In re iPhone App. Litig.*,
844 F. Supp. 2d 1040, 1064 (N.D. Cal. 2012).[27] Plaintiffs have not done so here.

---

[27] *See also Demello v. Lakeside Club, Inc.*, 2024 WL 1171687, at *4 (Conn. Super.
Ct. Mar. 12, 2024) (Connecticut); *Casey v. Mistral Condo. Ass'n*, 380 So. 3d 1278,
1283-84 (Fla. Dist. Ct. App. 2024) (Florida); *George v. Hercules Real Est. Servs.,
Inc.*, 795 S.E.2d 81, 85 (Ga. Ct. App. 2016) (Georgia); *Blanks v. Fluor Corp.*, 450
S.W.3d 308, 370 (Mo. Ct. App. 2014) (Missouri); *Weinstock v. ABP Corp.*, 2021

Plaintiffs allege that they were harmed by "Defendants' violation of [their] privacy and the loss of control over when, how, and for what purpose their personal information is collected, used, and disclosed." Compl. ¶¶ 492, 564, 646, 683, 744, 817, 854, 915. Beyond this threadbare allegation, however, Plaintiffs have not identified what the "appreciable, nonspeculative, present injury" is. Plaintiffs do not, for example, identify specific present or future risks that their data will be "misused." *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 951 (S.D. Cal. Oct. 11, 2012) (in data breach case, "without specific factual statements that Plaintiffs' Personal Information has been misused, in the form of an open bank account, or un-reimbursed charges, the mere danger of future harm, unaccompanied by present damage, will not support a negligence action"). Plaintiffs expressly disavow "any harm or injury constituting a personal injury or emotional distress." Compl. ¶¶ 494, 556, 648, 685, 746, 819, 856, 917. And they have not alleged any economic injury, for the reasons already discussed. *Supra* § IV.B. The vague harm Plaintiffs allege is thus "either too speculative to support a claim for negligence … or … stem[s] from disappointed expectations from a commercial transaction and thus do[es] not form the basis of a negligence claim." *In re iPhone App. Litig.*, 844 F. Supp. 2d at 1064 (dismissing negligence claim because "increased, unexpected, and unreasonable risk to the security of sensitive personal information" was "too speculative to support a claim for negligence under California law").

The Court should dismiss Plaintiffs' negligence claims.

## V.    CONCLUSION

For all the foregoing reasons, the Court should grant Defendants' motion and dismiss the Complaint.

---

WL 698905, at *5 (N.Y. Sup. Ct. Feb. 23, 2021) (New York); *R.W. v. Manzek*, 585 Pa. 335, 346 (2005) (Pennsylvania); *Est. of Selander v. Pierce Cnty.*, 32 Wash. App. 2d 1036 (2024) (Washington).

MEM. ISO MOT. TO DISMISS
MDL No. 3144
No. 2:25-ml-03144-GW-RAO

Dated: August 25, 2025

Respectfully submitted,

By:    */s/ Daniel M. Petrocelli*
       Daniel M. Petrocelli

DANIEL M. PETROCELLI
dpetrocelli@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California 90067-6035
Telephone:  +1 310 553 6700
Facsimile:   +1 310 246 6779

STEPHEN D. BRODY
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone:  +1 202 383 5300
Facsimile:   +1 202 383 5414

MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
San Francisco, CA 94111
Telephone:  +1 415 984 8700
Facsimile:   +1 415 984 8701

*Attorneys for Defendants ByteDance Ltd.,
ByteDance Inc., TikTok Ltd., TikTok Inc.,
TikTok LLC, TikTok Pte. Ltd., and TikTok
U.S. Data Security Inc.*

# INDEX A

State Intrusion Upon Seclusion Laws[28]

| Jurisdiction | Citation |
|---|---|
| Alabama | "[I]ntentional interference with another's interest in solitude or seclusion, either as to his person or to his private affairs or concerns," and "the intrusion must be something which would be offensive or objectionable to a reasonable person."<br><br>*Myrick v. Barron*, 820 So. 2d 81, 85 (Ala. 2001). |
| Alaska | "Two elements are required: (1) that plaintiff had a reasonable expectation of privacy, and (2) that defendant intruded in a manner highly offensive to a reasonable person."<br><br>*Greywolf v. Carroll*, 151 P.3d 1234, 1245 (Alaska 2007). |
| Arizona | "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."<br><br>*Hart v. Seven Resorts Inc.*, 947 P.2d 846, 853 (Ariz. Ct. App. 1997). |
| Arkansas | "The tort consists of three parts: (1) an intrusion; (2) that is highly offensive; (3) into some matter in which a person has a legitimate expectation of privacy."<br><br>*Addington v. Wal-Mart Stores, Inc.*, 105 S.W.3d 369, 379 (Ark. Ct. App. 2003). |
| California | "The common law tort of invasion of privacy by intrusion has two elements: (1) intrusion into a private place, conversation, or matter, (2) in a manner highly offensive to a reasonable person." |

---

[28] Unless otherwise indicated, all internal quotation marks, citations, and alterations in original are omitted.

| Jurisdiction | Citation |
|---|---|
| | *Belen v. Ryan Seacrest Prods., LLC*, 65 Cal. App. 5th 1145, 1163 (Cal. Ct. App. 2021). |
| Colorado | "[Plaintiff must] show that another has intentionally intruded, physically or otherwise, upon her seclusion or solitude, and that such intrusion would be considered offensive by a reasonable person." <br><br> *Alonzo v. Marquesan Cross LLC*, 2022 WL 22925161, at *5 (Colo. App. July 28, 2022). |
| Connecticut | "[A] plaintiff must prove three elements: (1) an intentional intrusion, physical or otherwise, (2) upon the plaintiff's solitude or seclusion or private affairs or concerns, (3) which would be highly offensive to a reasonable person." <br><br> *Parnoff v. Aquarion Water Co. of Conn.*, 204 A.3d 717, 731 (Conn. App. Ct. 2019). |
| Delaware | Plaintiff must show "(1) that an intentional intrusion, physical or otherwise …; (2) that the intrusion is upon the solitude or seclusion of another person or his or her private affairs or concerns; and (3) that the intrusion would be highly offensive to a reasonable person." <br><br> *Liggett Grp. Inc. v. Affiliated FM Ins. Co.*, 2001 WL 1456995, at *8 (Del. Super. Ct. 2001), *aff'd sub nom. Liggett Grp., Inc. v. Ace Prop. & Cas. Ins. Co.*, 798 A.2d 1024 (Del. 2002). |
| Georgia | "[C]onduct actionable as an intrusion involves a prying or intrusion, which would be offensive or objectionable to a reasonable person, into a person's private concerns." <br><br> *Benedict v. State Farm Bank, FSB*, 709 S.E.2d 314, 317 (Ga. Ct. App. 2011). |
| Hawaii | "One is liable for intrusion into another's seclusion if one intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns ... if the intrusion would be highly offensive to a reasonable person." |

| Jurisdiction | Citation |
|---|---|
| | *Black v. City & Cnty. of Honolulu*, 112 F. Supp. 2d 1041, 1052 (D. Haw. 2000). |
| Idaho | "Liability for a claim of invasion of privacy by intrusion requires: (1) an intentional intrusion by the defendant; (2) into a matter, which the plaintiff has a right to keep private; (3) by the use of a method, which is objectionable to the reasonable person."<br><br>*Berian v. Berberian*, 483 P.3d 937, 949 (Idaho 2020). |
| Illinois | "The elements required to prove intrusion upon seclusion are (1) an unauthorized intrusion or prying into the plaintiff's seclusion; (2) an intrusion that is highly offensive or objectionable to a reasonable person; (3) that the matter upon which the intrusion occurs is private; and (4) the intrusion causes anguish and suffering."<br><br>*Jacobson v. CBS Broad., Inc.*, 19 N.E.3d 1165, 1180 (Ill. App. Ct. 2014). |
| Iowa | "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person."<br><br>*In re Marriage of Tigges*, 758 N.W.2d 824, 829 (Iowa 2008). |
| Kansas | "Proof of invasion of privacy by intrusion on seclusion requires only proof of an intentional interference with the solitude or seclusion of a person's physical being or prying into a person's private affairs and concerns and proof that a reasonable person would be highly offended by the intrusion."<br><br>*Valadez v. Emmis Commc'ns*, 229 P.3d 389, 396 (Kan. 2010). |
| Kentucky | "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." |

| Jurisdiction | Citation |
|---|---|
| | *Pearce v. Whitenack*, 440 S.W.3d 392, 400-01 (Ky. Ct. App. 2014). |
| Louisiana | "A tort of invasion of privacy can occur … by unreasonably intruding on physical solitude or seclusion."<br><br>*Tate v. Women's Hosp. Found.*, 56 So. 3d 194, 197 (La. 2011). |
| Maine | Plaintiff must show "(1) intentional, (2) intrusion, (3) upon premises occupied privately by him for purposes of seclusion, and (4) the intrusion must be highly offensive to a reasonable person."<br><br>*Cap. City Renewables, Inc. v. Piel*, 335 A.3d 588, 598 (Me. 2025). |
| Maryland | "Intrusion upon seclusion is the intentional intrusion upon the solitude or seclusion of another or his private affairs or concerns that would be highly offensive to a reasonable person."<br><br>*Shapiro v. Hyperheal Hyperbarics, Inc.*, 323 A.3d 1202, 1229 (Md. App. Ct. 2024), *aff'd*, 2025 WL 1982318 (Md. July 17, 2025). |
| Minnesota | "Intrusion upon seclusion occurs when one intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns * * * if the intrusion would be highly offensive to a reasonable person."<br><br>*Lake v. Wal-mart Stores, Inc.*, 582 N.W.2d 231, 233-35 (Minn. 1998). |
| Mississippi | Plaintiff must show a "substantial interference with his seclusion of a kind that would be highly offensive to the ordinary, reasonable man, as the result of conduct to which the reasonable man would strongly object."<br><br>*Plaxico v. Michael*, 735 So. 2d 1036, 1039 (Miss. 1999). |
| Missouri | "Three elements encompass the claim for unreasonable intrusion upon the seclusion of another: (1) the existence of a secret and private subject matter; (2) a right in the plaintiff to keep that subject matter private; and (3) the obtaining by the defendant of |

| Jurisdiction | Citation |
|---|---|
| | information about that subject matter through unreasonable means."<br><br>*Crow v. Crawford & Co.*, 259 S.W.3d 104, 120 (Mo. Ct. App. 2008). |
| Nevada | "To recover for invasion of privacy based upon intrusion upon seclusion, the plaintiff must show: 1) an intentional intrusion (physical or otherwise); 2) on the solitude or seclusion of another; 3) that would be highly offensive to a reasonable person."<br><br>*Norberg v. Nev. Ctr. for Dermatology*, 490 P.3d 125 (Nev. Ct. App. 2021). |
| New Hampshire | Plaintiff must show intrusion upon "something secret, secluded or private" that would be "offensive to persons of ordinary sensibilities ... beyond the limits of decency."<br><br>*Remsburg v. Docusearch, Inc.*, 816 A.2d 1001, 1008 (N.H. 2003). |
| New Jersey | "[I]ntrusion upon seclusion, which can be found in the Restatement (Second) of Torts § 652B (1977) ... provides that [o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person. A high threshold must be cleared to assert a cause of action based on that tort. A plaintiff must establish that the intrusion would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object."<br><br>*Stengart v. Loving Care Agency, Inc.*, 990 A.2d 650, 660 (N.J. 2010). |
| New Mexico | "Intrusion. This tort, distinct from but related to trespass, involves an invasion of the plaintiff's private space or solitude— eavesdropping on private conversations or peeping through the bedroom window, for example."<br><br>*Moore v. Sun Publ'g Corp.*, 881 P.2d 735, 743 (N.M. Ct. App. 1994). |

| Jurisdiction | Citation |
|---|---|
| North Carolina | "The tort of invasion of privacy by intrusion into seclusion is defined as the intentional intrusion physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns ... where the intrusion would be highly offensive to a reasonable person.... The kinds of intrusions that have been recognized under this tort include physically invading a person's home or other private place, eavesdropping by wiretapping or microphones, peering through windows, persistent telephoning, unauthorized prying into a bank account, and opening personal mail of another."<br><br>*Maynard v. Crook*, 890 S.E.2d 164, 170 (N.C. 2023). |
| Ohio | "A claim for intrusion upon seclusion is defined as follows: One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person."<br><br>*Mangelluzzi v. Morley*, 40 N.E.3d 588, 594 (Ohio 2015). |
| Oklahoma | "Intrusion upon seclusion has been defined by the Restatement (Second) of Torts as one who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another, or his private affairs or concerns … if the intrusion would be highly offensive to a reasonable person."<br><br>*Orthman v. Premiere Pediatrics, PLLC*, 545 P.3d 124, 135 (Okla. Civ. App. 2024). |
| Oregon | To establish an intrusion-upon-seclusion claim, "a plaintiff must prove three elements: (1) an intentional intrusion, physical or otherwise, (2) upon the plaintiff's solitude or seclusion or private affairs or concerns, (3) which would be highly offensive to a reasonable person."<br><br>*Mauri v. Smith*, 929 P.2d 307, 310 (Or. 1996). |
| Pennsylvania | "To state a cause of action for the tort of invasion of privacy in Pennsylvania, a plaintiff must aver that there was an intentional intrusion on the seclusion of their private concerns which was substantial and highly offensive to a reasonable person, and aver |

| Jurisdiction | Citation |
|---|---|
| | sufficient facts to establish that the information disclosed would have caused mental suffering, shame or humiliation to a person of ordinary sensibilities." <br><br> *Pro Golf Mfg., Inc. v. Trib. Rev. Newspaper Co.*, 809 A.2d 243, 247 (Pa. 2002). |
| South Dakota | "To recover for invasion of the right to privacy, a party must prove an unreasonable, unwarranted, serious and offensive intrusion upon the seclusion of another. The invasion must be one which would be offensive and objectionable to a reasonable man of ordinary sensibilities." <br><br> *Gantvoort v. Ranschau*, 973 N.W.2d 225, 233 (S.D. 2022). |
| Tennessee | Tort for invasion of privacy lies when one "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." <br><br> *Roberts v. Essex Microtel Assocs., II, L.P.*, 46 S.W.3d 205, 210 (Tenn. Ct. App. 2000). |
| Texas | "To establish ... intrusion-upon-seclusion ... a plaintiff must show (1) an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs or concerns, which (2) would be highly offensive to a reasonable person." <br><br> *Moore v. Bushman*, 559 S.W.3d 645, 649 (Tex. Ct. App. 2018). |
| Utah | "A cause of action for intrusion upon seclusion requires the plaintiff to demonstrate (1) an intentional substantial intrusion, physical or otherwise, upon the plaintiff's solitude (2) that would be highly offensive to the reasonable person." <br><br> *Judge v. Saltz Plastic Surgery, PC*, 330 P.3d 126, 136 (Utah Ct. App. 2014). |
| Vermont | "In order to succeed in a claim for intrusion upon seclusion, a plaintiff must show an intentional interference with her interest in solitude or seclusion, either as to her person or as to her private |

| Jurisdiction | Citation |
|---|---|
| | affairs or concerns, of a kind that would be highly offensive to a reasonable person." *Weinstein v. Leonard*, 134 A.3d 547, 556-57 (Vt. 2015). |
| Washington | To establish a claim for invasion of privacy, a plaintiff must show "1. An intentional intrusion, physically or otherwise, upon the solitude or seclusion of plaintiff or his private affairs; 2. With respect to the matter or affair which plaintiff claims is invaded, that plaintiff had a legitimate and reasonable expectation of privacy; 3. The intrusion would be highly offensive to a reasonable person; and 4. That the defendant's conduct was a proximate cause of damage to plaintiff." *Doe v. Gonzaga Univ.*, 24 P.3d 390, 399 (Wash. 2001) (en banc), *rev'd on other grounds*, 536 U.S. 273 (2002). |
| West Virginia | A claim for invasion of privacy requires "an unreasonable inclusion upon the seclusion of another." *State ex rel. W. Va. Univ. Hosps. – E., Inc. v. Hammer*, 866 S.E.2d 187, 190 (W. Va. 2021); *see also Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 83 (W. Va. 1983) (adopting elements from Restatement (Second) of Torts). |
| Wyoming | "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Howard v. Aspen Way Enters., Inc.*, 406 P.3d 1271, 1274 (Wyo. 2017). |

# INDEX B

State Unjust Enrichment Laws[29]

| Jurisdiction | Citation |
| --- | --- |
| Alabama | "In order for a plaintiff to prevail on a claim of unjust enrichment, a plaintiff must show that the defendant holds money which, in equity and good conscience, belongs to the plaintiff or holds money which was improperly paid to the defendant because of mistake or fraud. … One is unjustly enriched if his retention of a benefit would be unjust.  The retention of a benefit is unjust if (1) the donor of the benefit … acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit … engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship.  In the absence of mistake or misreliance by the donor or wrongful conduct by the recipient, the recipient may have been enriched, but he is not deemed to have been *unjustly* enriched."<br><br>*Hattaway v. Coulter*, 360 So. 3d 1047, 1056 (Ala. 2021). |
| Alaska | Unjust enrichment has "three essential elements": "(1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance and retention by the defendant of such benefit under such circumstances that it would be inequitable … to retain it without paying the value thereof."<br><br>*ResQSoft, Inc. v. Protech Sols., Inc.*, 488 P.3d 979, 989-90 (Alaska 2021). |
| Arkansas | To show unjust enrichment, (1) a defendant "must have received something of value, (2) to which it was not entitled and which it must restore to [plaintiffs], and (3) there was some operative act, intent, or situation that make the alleged enrichment of the [defendant] unjust and inequitable."<br><br>*Ark. Dev. Fin. Auth. v. Wiley*, 611 S.W.3d 493, 499 (Ark. 2020). |

---

[29] Unless otherwise indicated, all internal quotation marks, citations, and alterations in original are omitted.

MEM. ISO MOT. TO DISMISS
MDL No. 3144
No. 2:25-ml-03144-GW-RAO

| Jurisdiction | Citation |
|---|---|
| California | "The elements of a cause of action for unjust enrichment are simply stated as the receipt of a benefit and unjust retention of the benefit at the expense of another."<br><br>*Tulfeld Corp. v. Beverly Hills Gateway, L.P.*, 86 Cal. App. 5th 12, 31-32 (Cal. Ct. App. 2022). |
| Colorado | "To recover under an unjust-enrichment theory, a plaintiff must prove three elements: (1) [T]he defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation."<br><br>*City of Arvada ex rel. Arvada Police Dep't v. Denver Health & Hosp. Auth.*, 403 P.3d 609, 616 (Colo. 2017). |
| Connecticut | A plaintiff seeking to recover for unjust enrichment "must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment."<br><br>*Vertex, Inc. v. City of Waterbury*, 898 A.2d 178, 190 (Conn. 2006). |
| Florida | "The elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to plaintiff."<br><br>*Pincus v. Am. Traffic Sols., Inc.*, 333 So. 3d 1095, 1097 (Fla. 2022). |
| Georgia | "A claim of unjust enrichment will lie if there is no legal contract and the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefited party equitably ought to return or compensate for." |

| Jurisdiction | Citation |
|---|---|
| | *Reynolds v. CB&T*, 805 S.E.2d 472, 479 (Ga. Ct. App. 2017). |
| Hawaii | "A valid claim for unjust enrichment requires only that a plaintiff prove that he or she conferred a benefit upon the opposing party and that the retention of that benefit would be unjust." <br><br> *Combs v. Case Bigelow & Lombardi*, 222 P.3d 465, at *17 (Haw. Ct. App. 2010). |
| Idaho | "To establish a claim for unjust enrichment, a plaintiff must prove: (1) there was a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain the benefit without payment to the plaintiff for the value thereof." <br><br> *Lincoln Land Co. v. LP Broadband, Inc.*, 408 P.3d 465, 469 (Idaho 2017). |
| Illinois | "To state a cause of action based on unjust enrichment, plaintiffs must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." <br><br> *Toushin v. Ruggiero*, 189 N.E.3d 1012, 1033 (Ill. App. Ct. 2021). |
| Indiana | "To recover under an unjust enrichment claim, a plaintiff must show that (1) he rendered a benefit to the defendant at the defendant's express or implied request, (2) the plaintiff expected payment from the defendant, and (3) allowing the defendant to retain the benefit without restitution would be unjust." <br><br> *Estate of Sain v. Sain*, 254 N.E.3d 1136, 1140 (Ind. Ct. App. 2025). |
| Iowa | "The elements of unjust enrichment are (1) enrichment of the defendant, (2) at the expense of the plaintiff, (3) under circumstances that make it unjust for the defendant to retain the benefit." |

| Jurisdiction | Citation |
|---|---|
| | *Behm v. City of Cedar Rapids*, 922 N.W.2d 524, 577 (Iowa 2019). |
| Kansas | "In Kansas, the elements of unjust enrichment are: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation of such benefit; and (3) acceptance and retention of the benefit under circumstances that without payment would be inequitable." <br><br> *Jones v. Culver*, 329 P.3d 511, 514 (Kan. Ct. App. 2014). |
| Kentucky | "To recover on a claim for unjust enrichment a plaintiff is required to prove the following three elements: (1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of that benefit without payment for its value." <br><br> *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 777-78 (Ky. 2017). |
| Maine | "A claimant for unjust enrichment must prove that (1) it conferred a benefit on the other party; (2) the other party had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value." <br><br> *E. Me. Med. Ctr. v. Walgreen Co.*, 331 A.3d 380, 390 (Me. 2025). |
| Maryland | The elements of unjust enrichment in Maryland are: "1) A benefit conferred upon the defendant by the plaintiff; 2) An appreciation or knowledge by the defendant of the benefit; and 3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." <br><br> *Clark Office Bldg., LLC v. MCM Cap. Partners, LLLP*, 245 A.3d 186, 191 (Md. Ct. Spec. App. 2021). |
| Massachusetts | "To succeed on an unjust enrichment claim, a plaintiff must establish that (1) it conferred a measurable benefit on the |

| Jurisdiction | Citation |
|---|---|
|  | defendant, (2) it reasonably expected compensation, and (3) the defendant accepted the benefit with knowledge of that reasonable expectation."<br><br>*Tody's Serv., Inc. v. Liberty Mut. Ins. Co.*, 260 N.E.3d 309, 313 (Mass. 2025). |
| Michigan | "A claim alleging unjust enrichment requires that a plaintiff establish (1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant."<br><br>*Landstar Express Am., Inc. v. Nexteer Auto. Corp.*, 900 N.W.2d 650, 657 (Mich. Ct. App. 2017). |
| Minnesota | "To succeed on a claim of unjust enrichment, the evidence must show that [defendants] knowingly received something of value to which they were not entitled, and that the circumstances are such that it would be unjust for that entity to retain the benefit."<br><br>*Metro. Transp. Network, Inc. v. Collaborative Student Transp. of Minn., LLC*, 6 N.W.3d 771, 786 (Minn. Ct. App. 2024), *review denied* (2024). |
| Mississippi | "Unjust enrichment applies to situations where there is no legal contract and the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another.… An unjust enrichment action is based on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another."<br><br>*Beasley v. Sutton*, 192 So. 3d 325, 332 (Miss. 2015). |
| Missouri | "The elements of unjust enrichment are: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation of such benefit; and (3) acceptance and retention of the benefit under circumstances that without payment would be inequitable." |

| Jurisdiction | Citation |
|---|---|
| | *Nationwide Transfer LLC v. Neally L., LLC*, 674 S.W.3d 488, 491 (Mo. Ct. App. 2023). |
| Montana | "To prevail on a claim of unjust enrichment, the aggrieved party must establish that: (1) a benefit was conferred upon the recipient by the claimant; (2) the recipient knew about or appreciated the benefit; and (3) the recipient accepted or retained the benefit under circumstances rendering it inequitable for the recipient to do so without compensating the claimant for the value of the benefit." <br><br> *Beck v. Dimar*, 554 P.3d 130, 138 (Mont. 2024). |
| Nebraska | "To recover on a claim for unjust enrichment, the plaintiff must show that (1) the defendant received money, (2) the defendant retained possession of the money, and (3) the defendant in justice and fairness ought to pay the money to the plaintiff." <br><br> *Zook v. Zook*, 978 N.W.2d 156, 161 (Neb. 2022). |
| Nevada | "Unjust enrichment exists when (1) the plaintiff confers a benefit on the defendant, (2) the defendant appreciates the benefit, and (3) there is acceptance and retention by the defendant of the benefit under circumstances where it would be inequitable for him to retain it without payment." <br><br> *Christopherson v. Sullivan*, 545 P.3d 121 (Nev. Ct. App. 2024). |
| New Hampshire | "To state a claim [for unjust enrichment], a plaintiff must sufficiently allege that the defendant was enriched at the plaintiff's expense through either: (1) wrongful acts; or (2) passive acceptance of a benefit that would be unconscionable to retain." <br><br> *Est. of Mortner v. Thompson*, 182 A.3d 1260, 1265 (N.H. 2018). |
| New Jersey | "To prove a claim for unjust enrichment, a party must demonstrate that the opposing party received a benefit and that retention of that benefit without payment would be unjust. That quasi-contract doctrine also requires that plaintiff show that it expected remuneration from the defendant at the time it |

| Jurisdiction | Citation |
|---|---|
| | performed or conferred a benefit on defendant and that the failure of remuneration enriched the defendant beyond its contractual rights." <br><br> *Thieme v. Aucoin-Thieme*, 151 A.3d 545, 557 (N.J. 2016). |
| New Mexico | "A plaintiff claiming unjust enrichment must show that (1) another has been knowingly benefit[ing] at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust." <br><br> *Buke, LLC v. Cross Country Auto Sales, LLC*, 331 P.3d 942, 953 (N.M. Ct. App. 2014). |
| New York | Unjust enrichment "requires allegations that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." <br><br> *Rosenfeld v. Brody*, 238 A.D.3d 1084, 1087 (N.Y. App. Div. 2025). |
| North Carolina | "A prima facie claim for unjust enrichment has five elements. First, one party must confer a benefit upon the other party. Second, the benefit must not have been conferred officiously, that is it must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances. Third, the benefit must not be gratuitous. Fourth, the benefit must be measurable. Last, the defendant must have consciously accepted the benefit." <br><br> *JPMorgan Chase Bank, Nat'l Ass'n v. Browning*, 750 S.E.2d 555, 559 (N.C. Ct. App. 2013). |
| Ohio | "A successful claim of unjust enrichment requires showing that (1) a benefit was conferred by the plaintiff on the defendant, (2) the defendant had knowledge of the benefit, and (3) the defendant retained a benefit under circumstances in which it was unjust to do so without payment." |

| Jurisdiction | Citation |
|---|---|
| | *Madyda v. Ohio Dep't of Pub. Safety*, 252 N.E.3d 196, 201 (Ohio 2024). |
| Oklahoma | "[T]he nature of an unjust enrichment claim primarily exists where an exchange or transaction occurs resulting in one party substantially and unjustly benefitting at the expense of another."<br><br>*Randle v. City of Tulsa*, 556 P.3d 612, 620 (Okla. 2024). |
| Oregon | "[T]he [Oregon] Supreme Court [has] directed that unjust enrichment claims should be decided on a case-by-case basis. … Oregon courts should examine the established legal categories of unjust enrichment as reflected in Oregon case law and other authorities to determine whether any particular enrichment is unjust."<br><br>*Alexander Loop, LLC v. City of Eugene*, 444 P.3d 1116, 1125 (Or. Ct. App. 2019). |
| Pennsylvania | "To succeed on an unjust enrichment claim, the plaintiff must prove: (1) benefits were conferred on the defendant by the plaintiff; (2) appreciation of such benefits by the defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for the defendant to retain the benefit without payment of value."<br><br>*Robins v. Robins*, 338 A.3d 184, 189 (Pa. Super. Ct. 2025). |
| Rhode Island | "In order to recover for unjust enrichment, a claimant must prove: (1) that he or she conferred a benefit upon the party from whom relief is sought; (2) that the recipient appreciated the benefit; and (3) that the recipient accepted the benefit under such circumstances that it would be inequitable for the recipient to retain the benefit without paying the value thereof."<br><br>*IDC Clambakes, Inc. v. Carney as Tr. of Goat Island Realty Tr.*, 246 A.3d 927, 933 (R.I. 2021). |
| South Carolina | "The elements to recover for unjust enrichment based on quantum meruit, quasi-contract, or implied by law contract, which are equivalent terms for equitable relief, are: (1) a benefit conferred |

| Jurisdiction | Citation |
|---|---|
| | by the plaintiff upon the defendant; (2) realization of that benefit by the defendant; and (3) retention of the benefit by the defendant under circumstances that make it inequitable for him to retain it without paying its value." *Regions Bank v. Wingard Props., Inc.*, 715 S.E.2d 348, 356 (S.C. Ct. App. 2011). |
| South Dakota | "Unjust enrichment occurs when one confers a benefit upon another who accepts or acquiesces in that benefit, making it inequitable to retain that benefit without paying." *Dowling Fam. P'ship v. Midland Farms*, 865 N.W.2d 854, 862 (S.D. 2015). |
| Tennessee | "[T]he elements of an unjust enrichment claim are (1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of such benefit, and (3) acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Fam. Tr. Servs. LLC v. Green Wise Homes LLC*, 693 S.W.3d 284, 304 (Tenn. 2024). |
| Utah | "To succeed on a claim for unjust enrichment, a party must show that a benefit has been conferred by one party on another, the conferee must appreciate or have knowledge of the benefit, and there must be acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." *Hillcrest Inv. Co. v. Dep't of Transp.*, 352 P.3d 128, 133 (Utah Ct. App. 2015). |
| Vermont | "To support a claim for unjust enrichment, plaintiff must show that: (1) a benefit was conferred on defendant; (2) defendant accepted that benefit; and (3) it would be inequitable for defendant not to compensate plaintiff for the value of the benefit." |

| Jurisdiction | Citation |
|---|---|
| | *Pettersen v. Monaghan Safar Ducham PLLC*, 256 A.3d 604, 610 (Vt. 2021). |
| Virginia | "To state a cause of action for unjust enrichment, a plaintiff must allege that: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant knew of the benefit and should reasonably have expected to repay the plaintiff; and (3) the defendant accepted or retained the benefit without paying for its value."<br><br>*Arch Ins. Co. v. FVCbank*, 881 S.E.2d 785, 795 (Va. 2022). |
| Washington | "The defendant must (1) receive a benefit (2) at the plaintiff's expense, and (3) the circumstances must be such that it would be unjust for the defendant to retain the benefit without payment."<br><br>*Park S. LLC v. Denali Constr. LLC*, 29 Wash. App. 2d 1026 (Wash. Ct. App. 2024), *review denied*, 554 P.3d 1228 (2024). |
| West Virginia | "Any right of recovery under the doctrine of unjust enrichment is essentially equitable; its basis being that in a given situation it is contrary to equity and good conscience for the defendant to retain a benefit which has come to him at the expense of the plaintiff."<br><br>*Carbon Energy Corp. v. Shonk Land Co., LLC*, 2025 WL 1466164, at *10 (W. Va. Ct. App. 2025). |
| Wisconsin | "Unjust enrichment requires proof of three elements: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable to do so."<br><br>*Sands v. Menard*, 904 N.W.2d 789, 798 (Wis. 2017). |

1

## CERTIFICATE OF SERVICE

2       I certify that on August 25, 2025, I electronically filed the foregoing with the

3  Clerk of Court using CM/ECF, which automatically serves all counsel of record for

4  the parties who have appeared.

5

6  Dated: August 25, 2025                    */s/ Daniel M. Petrocelli*
                                             Daniel M. Petrocelli

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing memorandum of law contains 8,713 words, which complies with the word limit set forth in the parties' stipulation to, with the Court's permission, increase the word limit of Defendants' memorandum of law and Plaintiffs' opposition to no more than 9,000 words apiece. *See* ECF No. 103.

Dated: August 25, 2025                                  */s/ Daniel M. Petrocelli*
                                                         Daniel M. Petrocelli