DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, Suite 800
Los Angeles, California 90067-6035
Telephone:  +1 310 553 6700
Facsimile:   +1 310 246 6779

STEPHEN D. BRODY (*pro hac vice*)
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone:  +1 202 383 5300
Facsimile:   +1 202 383 5414

MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
San Francisco, CA 94111
Telephone:  +1 415 984 8700
Facsimile:   +1 415 984 8701

*Attorneys for Defendants ByteDance Ltd.,*
*ByteDance Inc., TikTok Ltd., TikTok Inc.,*
*TikTok LLC, TikTok Pte. Ltd., and*
*TikTok U.S. Data Security Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TIKTOK INC., MINOR PRIVACY LITIGATION | MDL NO. 3144 |
| | 2:25-ml-03144-GW-RAO |
| | **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO STAY** |
| | Hon. George H. Wu |
| | Hearing Date: November 6, 2025 |
| | Time: 8:30 a.m. |
| | Courtroom: 9D |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................... 1

II.   FACTUAL BACKGROUND ..................................................................... 3

   A.   DOJ and Two of Defendants' Predecessor Entities Stipulate to a Permanent Injunction in 2019. ........................................................ 3

   B.   DOJ Initiates Civil Proceedings Against Defendants for Alleged Violations of COPPA. ..................................................................... 4

   C.   Private Plaintiffs File Tag-Along Class Actions Based on the Same Conduct Alleged in the DOJ Action. ..................................... 4

III.  LEGAL STANDARD .............................................................................. 5

IV.   ARGUMENT ........................................................................................... 6

   A.   The Orderly Course of Justice Weighs in Favor of a Stay for Several Reasons. ............................................................................... 6

   B.   Defendants Will Suffer Considerable Hardship and Inequity Absent a Stay. ................................................................................. 15

   C.   A Stay Will Not Harm Plaintiffs. ................................................... 16

V.    CONCLUSION ...................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ball ex rel. Regeneron Pharms., Inc. v. Baker*,
  2022 WL 17808785 (S.D.N.Y. Dec. 18, 2022)....................................13, 14, 18

*Benson v. Perris Elementary Sch. Dist.*,
  2022 WL 3574290 (C.D. Cal. July 1, 2022) ........................................................7

*Blue Cross & Blue Shield of Mass., Inc. v. Regeneron Pharms., Inc.*,
  633 F. Supp. 3d 385 (D. Mass. 2022)..........................................................passim

*Ceron v. Brinks Inc.*,
  2015 WL 13764941 (C.D. Cal. July 7, 2015) ....................................................5

*Clark v. Time Warner Cable*,
  523 F.3d 1110 (9th Cir. 2008)...........................................................................10

*Clayborn v. Amazon.com Servs. LLC*,
  2021 WL 7707763 (C.D. Cal. Nov. 9, 2021) ....................................................15

*CMAX, Inc. v. Hall*,
  300 F.2d 265 (9th Cir. 1962) ..............................................................................6

*Figueroa v. Autozoners, LLC*,
  2019 WL 11023547 (C.D. Cal. Jan. 31, 2019)....................................................2

*Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharms.
  Indus. Ltd.*,
  2022 WL 3042768 (E.D. Pa. Aug. 2, 2022)..................................................passim

*HMT, Inc. v. Bell BCI Co.*,
  2007 WL 295328 (W.D.N.Y. Jan. 30, 2007) ....................................................16

*Houseton v. Kirk*,
  2024 WL 3051057 (C.D. Cal. 2024) ..................................................................16

*J.W. v. Pfizer, Inc.*,
  2013 WL 1402962 (N.D. Cal. Apr. 5, 2013) ....................................................15

*Jones v. Google LLC*,
  73 F.4th 636 (9th Cir. 2023)..............................................................................12

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ............................................................................................5

*Levya v. Certified Grocers of Cal., Ltd.*,
  593 F.2d 857 (9th Cir. 1979)..........................................................................5, 13

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Licea v. Rest. Leadership Grp., LLC,*
  2020 WL 6114919 (C.D. Cal. Apr. 10, 2020) ......................................... 6

*Patton v. DePuy Orthopedics, Inc.,*
  2019 WL 851933 (C.D. Cal. Feb. 21, 2019) ........................................... 5

*Simms v. Philip Morris, Inc.,*
  2003 WL 27394525 (D.D.C. July 7, 2003) ............................... 14, 17, 18

*Smith v. City of Berkeley,*
  2014 WL 1230692 (N.D. Cal. Mar. 21, 2014) ...................................... 10

*Syntek Semiconductor Co. v. Microchip Tech. Inc.,*
  307 F.3d 775 (9th Cir. 2002) ................................................................ 10

*Tortilla Factory, LLC v. Rowdy Mermaid Kombucha LLC,*
  2018 WL 9802099 (C.D. Cal. Sept. 11, 2018) ...................................... 10

*UnitedHealthcare Ins. Co. v. Regeneron Pharms., Inc.,*
  2021 WL 6137097 (S.D.N.Y. Dec. 29, 2021) ............................ 13, 16, 17, 18

**Statutes**

15 U.S.C. § 6502(c) ................................................................................... 7

15 U.S.C. § 6502(d) ................................................................................. 11

15 U.S.C. § 6504(a) ................................................................................... 7

15 U.S.C. § 6504(b) ................................................................................... 7

15 U.S.C. § 6504(d) ................................................................................... 7

15 U.S.C. § 6505(a) ................................................................................... 7

15 U.S.C. § 6505(d) ................................................................................... 7

Cal. Bus. & Prof. Code § 17204 ............................................................... 8

**Other Authorities**

FTC, Complying With COPPA: Frequently Asked Questions (July
  2020), https://www.ftc.gov/business-guidance/resources/
  complying-coppa-frequently-asked-questions#A.%20General
  %20Questions [https://perma.cc/9VE6-AJA8] .................................... 11

**Regulations**

16 C.F.R. § 312 ......................................................................................... 3

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

16 C.F.R. § 312.10 ................................................................................................ 12

## I.    INTRODUCTION

As the Court knows, Defendants have separately moved to dismiss Plaintiffs' Complaint[1] on the grounds that Plaintiffs have failed to plead essential facts which plausibly demonstrate that Defendants' alleged collection of personal information caused them any harm, and Plaintiffs thus lack standing and have failed to state a cognizable injury or a claim for relief. *See* Defs.' Mem. ISO of Mot. to Dismiss ("Mot. to Dismiss") § IV.  In the event the Court declines to grant that motion, Defendants hereby request in the alternative that the Court stay Plaintiffs' case pending resolution of the related and parallel civil action brought by the U.S. Department of Justice's Consumer Protection Bureau ("DOJ") against Defendants. *See United States v. ByteDance Ltd*., No. 2:24-cv-06535-GW-RAO (C.D. Cal. Aug. 2, 2024) ("DOJ Action").

Both Plaintiffs' case and the DOJ Action rest on an identical core issue— namely, whether Defendants violated the Children's Online Privacy Protection Act of 1998 ("COPPA"). But the federal government, not Plaintiffs, has primary authority to enforce COPPA, which does not provide for a private cause of action. The statutory framework enacted by Congress makes clear that the federal government has priority over competing COPPA enforcement actions brought by states, and that state enforcement efforts are *barred* from proceeding where litigation is already being pursued by the federal agencies. These facts lie at the core of the fundamental problem presented here: private plaintiffs, who have *no*

---

[1] "Complaint" or "Compl." refers to Plaintiffs' Consolidated Class Action Complaint, ECF No. 94. Plaintiffs' Complaint generally does not distinguish between Defendants ByteDance Inc., ByteDance Ltd., TikTok Inc., TikTok Ltd., TikTok LLC, TikTok Pte. Ltd., and TikTok U.S. Data Security Inc., instead referring to them in the aggregate. While this brief also refers to Defendants in the aggregate, should this case proceed, Defendants reserve the right to show that they are in fact differently situated with respect to these claims. Unless otherwise noted, all alterations, citations, and quotations are omitted, and all emphases are added.

right or ability to enforce COPPA, are seeking to advance claims expressly
predicated on alleged COPPA violations at the same time DOJ is exercising its
statutory authority to enforce COPPA—even though COPPA makes clear that other
actions cannot and should not be filed while a federal enforcement action is already
pending.

This puts Defendants—and the Court—in an untenable position. As
explained herein, absent a stay Defendants will be forced to litigate the DOJ Action
and Plaintiffs' case at the same time. Allowing the DOJ Action to proceed in
parallel with Plaintiffs' private claims would directly undermine the carefully
calibrated framework and enforcement structure of COPPA. Congress's decision to
not provide for a private right of action under COPPA, and its determination that
state actions cannot proceed while a parallel federal COPPA enforcement
proceeding is pending, apply with equal, if not greater, force to Plaintiffs here, and
demonstrates why a stay of this matter is appropriate.

A stay is also warranted because Defendants will be at risk of inconsistent
judgments by different triers of fact if Plaintiffs are allowed to prosecute their
claims in tandem with DOJ. There is no basis to subject Defendants to this
considerable risk or force them to participate in and defend against unnecessary
piecemeal litigation. It will be far more efficient for the Court to resolve the DOJ
Action—including the threshold issue of whether Defendants violated COPPA—
before Plaintiffs' case proceeds further, as that will help simplify and streamline the
issues, proof, and questions of law. *See Blue Cross & Blue Shield of Mass., Inc. v.
Regeneron Pharms., Inc.*, 633 F. Supp. 3d 385, 392 (D. Mass. 2022) (granting stay
of private plaintiff cases because "[t]here is no need for a headlong race to resolve
substantially the same issues under contention in the DOJ action"); *see also
Figueroa v. Autozoners, LLC*, 2019 WL 11023547, at *2 (C.D. Cal. Jan. 31, 2019)

("Efficiency is lost, and judicial resources are wasted where multiple actions, comprised of substantially similar claims and parties, continue simultaneously.").

Nor is there any conceivable prejudice to Plaintiffs. Their master complaint was only filed approximately six weeks ago, and discovery is currently stayed. To avoid these inefficiencies and maintain the orderly course of justice, Defendants respectfully request that the Court stay Plaintiffs' case pending resolution of the DOJ Action.

## II.    FACTUAL BACKGROUND

### A.    DOJ and Two of Defendants' Predecessor Entities Stipulate to a Permanent Injunction in 2019.

In February 2019, DOJ, acting on behalf of the Federal Trade Commission ("FTC"), filed a complaint against Defendants' predecessor entities, Musical.ly and Musical.ly, Inc., alleging violations of COPPA and the FTC's "COPPA Rule," 16 C.F.R. § 312.[2] Simultaneously with the filing of the complaint, DOJ submitted a Stipulated Order for Civil Penalties, Permanent Injunction, and Other Relief.[3] On March 27, 2019, this Court entered the parties' Stipulated Order (the "2019 Permanent Injunction") which, among other things, "permanently restrain[s] and enjoin[s]" Musical.ly and Musical.ly, Inc., as well as their successors and assigns, "from violating the [COPPA] Rule."[4]

---

[2] Compl., *United States v. Musical.ly*, No. 2:19-cv-01439-ODW-RAO (C.D. Cal. Feb. 27, 2019), ECF No. 1.

[3] [Proposed] Stipulated Order for Civil Penalties, Permanent Injunction, and Other Relief, *United States v. Musical.ly*, No. 2:19-cv-01439-ODW-RAO (C.D. Cal. Feb. 27, 2019), ECF No. 1-1.

[4] Stipulated Order for Civil Penalties, Permanent Injunction, and Other Relief, *United States v. Musical.ly*, No. 2:19-cv-01439-ODW-RAO (C.D. Cal. Mar. 27, 2019), ECF No. 10 at 3, 7-10.

**B.    DOJ Initiates Civil Proceedings Against Defendants for Alleged Violations of COPPA.**

In May and July 2020, the FTC issued demand letters to Defendants concerning their compliance with the 2019 Permanent Injunction. Decl. of Daniel M. Petrocelli ISO Mot. to Stay ("Petrocelli Decl.") ¶ 5. The FTC subsequently referred the matter to DOJ for investigation and potential enforcement action. *Id.* ¶ 6. Beginning in August 2020, DOJ propounded written, documentary, and deposition discovery from Defendants pursuant to the 2019 Permanent Injunction's discovery provisions. *Id.*

On August 2, 2024, DOJ filed a civil action against ByteDance Ltd., ByteDance Inc., TikTok Ltd., TikTok Inc., TikTok Pte. Ltd., and TikTok U.S. Data Security Inc.[5] DOJ's complaint contains a single cause of action, and alleges that Defendants violated COPPA and the COPPA Rule by "knowingly allow[ing] children under 13 to create and use TikTok accounts without their parents' knowledge or consent" and "def[ying]" the 2019 Permanent Injunction.[6] DOJ's complaint also requests trial by jury.[7]

On October 7, 2024, Defendants filed an answer and affirmative defenses to DOJ's complaint. ECF No. 32. The parties have already conducted their Rule 26(f) conference, and discovery has commenced. The Court has also entered a full case schedule, and trial is currently scheduled for May 11, 2027. ECF No. 63.

**C.    Private Plaintiffs File Tag-Along Class Actions Based on the Same Conduct Alleged in the DOJ Action.**

Within a week of the DOJ filing suit, private plaintiffs across the country began filing class actions against Defendants that copied and/or directly referred to

---

[5] Complaint, *United States v. ByteDance Ltd.*, No. 2:24-cv-06535-ODW-RAO (C.D. Cal. Aug. 2, 2024), ECF No. 1 ("DOJ Compl.").

[6] *Id.* ¶¶ 1-3, 38.

[7] *Id.* at 1.

the factual allegations in DOJ's complaint.[8] The private plaintiff class action cases asserted that Defendants' purported violations of COPPA also violated various state consumer protection, privacy, and other laws.[9]

On April 3, 2025, all of the private plaintiff cases were consolidated into the multi-district litigation ("MDL") before this Court. *See* ECF No. 1; *see also* ECF Nos. 4-7. Plaintiffs filed their master Class Action Consolidated Complaint on July 11, 2025, and demanded a trial by jury. *See* ECF No. 94. As before, the Complaint relies heavily on the allegations in the DOJ Action, and asserts that the identical conduct complained of by the DOJ purportedly violates the privacy, unfair competition, unjust enrichment, and negligence laws of dozens of states. *Id*.

### III.    LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition and causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Patton v. DePuy Orthopedics, Inc.*, 2019 WL 851933, at *3 (C.D. Cal. Feb. 21, 2019) ("District courts have the discretion to stay proceedings pending before them."). Courts often grant a stay "pending the outcome of other legal proceedings related to the case" for "the sake of judicial economy." *Ceron v. Brinks Inc.*, 2015 WL 13764941, at *2 (C.D. Cal. July 7, 2015); *see also Levya v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). Notably, granting a stay does *not* turn on whether decisions in the DOJ Action are legally dispositive of issues or claims in this matter: issuing a stay "does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Levya*, 593 F.2d at 863-64.

---

[8] *Compare, e.g.*, DOJ Compl. ¶¶ 53-60, *with* Corrected Consolidated Complaint, *J.C. v. ByteDance, Inc.*, No. 2:24-cv-06784-ODW-RAO (C.D. Cal. Jan. 15, 2025), ECF No. 73 ("*J.C.* Compl.") ¶¶ 102-08.

[9] *See, e.g.*, *J.C.* Compl. ¶¶ 334-603.

1    To determine whether a stay is appropriate, courts in this circuit consider

2 three "competing interests": (1) "the orderly course of justice measured in terms of

3 the simplifying or complicating of issues, proof, and questions of law which could

4 be expected to result from a stay," (2) "the hardship or inequity which a party may

5 suffer in being required to go forward," and (3) "the possible damage which may

6 result from the granting of a stay." *Licea v. Rest. Leadership Grp., LLC*, 2020 WL

7 6114919, at *1 (C.D. Cal. Apr. 10, 2020) (Wu, J.) (quoting *CMAX, Inc. v. Hall*, 300

8 F.2d 265, 268 (9th Cir. 1962)).

9 **IV.    ARGUMENT**

10    The Court should stay this matter pending resolution of the DOJ Action.

11 Each of the stay factors weighs in Defendants' favor. Continuing to proceed with

12 Plaintiffs' case will disrupt the orderly course of justice because it contradicts

13 COPPA's statutory scheme and will waste the parties' and the Court's resources by

14 adjudicating issues that can and should be resolved in the DOJ Action in the first

15 instance. Defendants will suffer hardship if they are required to defend against both

16 actions simultaneously, including the risk of inconsistent judgments or outcomes.

17 And at the same time, a stay will not prevent the issues in Plaintiffs' case from

18 moving forward (because they overlap with the issues in the DOJ Action), nor will

19 a stay undermine Plaintiffs' case. For all of these reasons, the Court should grant

20 this Motion.

21    **A.    The Orderly Course of Justice Weighs in Favor of a Stay for**

22    **Several Reasons.**

23    *First*, a stay is warranted because Congress has mandated that the federal

24 government—not any other entity, much less private plaintiffs—is the primary

25 enforcer of alleged COPPA violations, and that first-filed federal enforcement

26 efforts take priority over other enforcement actions, such as state attorney general

27 lawsuits. For example:

28

DEFS.' MEM. ISO STAY
MDL No. 3144
No. 2:25-ml-03144-GW-RAO

- Section 6502(c) of COPPA is entitled "Enforcement" and states: "Subject to [15 U.S.C. §§ 6503 and 6505], a violation of a regulation prescribed under subsection (a) of this section shall be treated as a violation of a rule defining an unfair or deceptive act or practice prescribed under [15 U.S.C. § 57a(a)(1)(B)]." 15 U.S.C. § 6502(c).

- Section 6505(a) of COPPA states: "Except as otherwise provided, this chapter shall be enforced by the [Federal Trade] Commission under the Federal Trade Commission Act (15 U.S.C. 41 et seq.)." 15 U.S.C. § 6505(a).

- Section 6505(d) of COPPA provides that the federal government "shall prevent any person from violating" the COPPA Rule, and that any such violation "shall be subject to the penalties … provided in the Federal Trade Commission Act." 15 U.S.C. § 6505(d).

Critically, COPPA does not provide for a private right of action. *See Benson v. Perris Elementary Sch. Dist.*, 2022 WL 3574290, at *5 (C.D. Cal. July 1, 2022). And while states can bring their own COPPA enforcement actions, 15 U.S.C. § 6504(a)(1), Congress has placed significant checks and limitations on that process—most notably by *barring* states from "institut[ing]" enforcement actions "during the pendency of" any first-filed, parallel federal proceedings brought against the same defendant. *Id.* § 6504(d).[10] The Court should stay Plaintiffs' case "during the pendency of" the DOJ Action in accordance with COPPA's statutory

---

[10] Even when no parallel federal enforcement proceeding exists, COPPA places additional restrictions on state attorney general actions, including by (1) requiring that they be filed in federal, not state, court; (2) requiring that the state attorney general first provide written notice of the action and a copy of the proposed complaint to the federal government or, alternatively, establish that it is "exempt" from these notice requirements; and (3) affording the federal government the right to intervene in the proposed state attorney general action, as well as the right "to be heard with respect to any matter that arises in that action" and to "file a petition for appeal." 15 U.S.C. §§ 6504(a)(1), (a)(2), (b)(1)-(2).

text. To allow Plaintiffs' case to proceed would create a scenario where states acting in their *parens patriae* capacity are prevented from initiating an action to enforce COPPA's rules, but private plaintiffs are not. That result is inconsistent with COPPA's text and structure. Staying the case avoids that inconsistency.[11]

*Second*, as the Court has observed, Plaintiffs' state law claims are based on the same conduct and purported COPPA violations alleged in DOJ's complaint. *See* ECF No. 2 at 2-3 ("There is a pending lawsuit brought in the Central District of California by the Consumer Protection Branch, Civil Division of the U.S. Department of Justice against ByteDance LTD and TikTok LTD [the DOJ Action], *which appears to raise similar causes of action and/or claims as involved in this MDL*."). Indeed, the Master Complaint references the DOJ Action at least *30 times*, and contains extensive discussion of COPPA, the COPPA Rule, the 2019 Permanent Injunction, and DOJ's complaint in both the opening paragraphs and throughout the rest of the pleading. *See*, *e.g.*, Compl. ¶¶ 2, 6-8, 12-13, 114-16, 118, 129, 131-32, 134-37, 141-42, 145, 147, 149, 150, 152-53, 155, 156, 158-60, 236; *Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*, 2022 WL 3042768, at *5 (E.D. Pa. Aug. 2, 2022) (staying plaintiffs' class claims pending resolution of related DOJ action over alleged violations of False Claims

---

[11] The fact that Plaintiffs have asserted various state law claims, as opposed to a formal claim for violation of COPPA, is irrelevant because, as explained herein, Plaintiffs' claims are based on the exact same conduct at issue in the DOJ Action. For instance, California law authorizes that state's attorney general to pursue violations of California's unfair competition statute. *See* Cal. Bus. & Prof. Code § 17204. It cannot be that California's attorney general is barred from initiating a COPPA enforcement action under 15 U.S.C. § 6504(d), but can end run that prohibition by filing unfair competition claims based on the exact same alleged COPPA violations. By the same token, Plaintiffs should not be permitted to evade Congress's intent that the federal government have priority over COPPA enforcement efforts by filing COPPA-based claims masquerading as privacy, unfair competition, and other state law claims.

Act where a "side-by-side comparison" of both pleadings showed "over 30 overlapping allegations").

The below chart demonstrates how Plaintiffs' factual allegations about Defendants' conduct borrow from and are substantively identical to those identified in the DOJ Action:

| Issue | Summary of Allegation | DOJ Compl. | Plfs.' Compl. |
|---|---|---|---|
| Age Gate | Defendants permitted underage users to circumvent the TikTok platform's age gate. | ¶¶ 45-51 | ¶¶ 109, 117-120 |
| Kids Mode | Defendants collected personal information from underage users using Kids Mode in violation of COPPA. | ¶¶ 52-60 | ¶¶ 124, 126-31 |
| Parental Deletion Requests | Defendants failed to provide a simple process for parents to submit a deletion request. | ¶¶ 64-72 | ¶¶ 133-40 |
| | Defendants failed to delete underage users' data and process parental deletion requests. | ¶¶ 73-76 | ¶¶ 141-143 |
| Deficient Processes and Failure to Delete Children's Information | Defendants' moderation processes were deficient and failed to flag underage accounts for deletion. | ¶¶ 78-89 | ¶¶ 144-55 |
| | Defendants failed to delete underage accounts that were marked for deletion. | ¶ 90, 93-98 | ¶ 156. 158-61 |
| Actual Knowledge of Under-13 Users | Defendants had actual knowledge that underage users were on the platform. | ¶¶ 101-03 | ¶¶ 113-15 |

These facts—the absence of any private right of action under COPPA, the prohibition against filing state actions while parallel federal COPPA enforcement proceedings are ongoing, and the nearly verbatim overlap between Plaintiffs' allegations and the DOJ Action—demonstrate why a stay of this matter is

appropriate. Congress has made clear the federal government has hegemony over COPPA enforcement, and that other enforcement actions (if even permitted) should yield to those federal efforts. Those principles apply with equal, if not greater, force here, where Plaintiffs—who agree that they have no private cause of action under COPPA—are seeking to prosecute dozens of state laws on behalf of multiple different proposed classes, all of which are expressly predicated on the same underlying COPPA violations alleged in the DOJ Action. Proceeding with the DOJ Action first thus best serves the orderly course of justice because it is consistent with COPPA's statutory framework and aligns with Congress's intent for the federal government take the lead with respect to these enforcement issues.

The circumstances here are analogous to how courts address stay requests invoking the doctrine of primary jurisdiction. Under that doctrine, courts will dismiss or stay "an otherwise cognizable claim" that "should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). While the government enforcement action at issue here is a lawsuit filed by DOJ, rather than an administrative agency proceeding, the same fundamental principles apply because Congress has given DOJ primary enforcement authority: "protection of the integrity of a regulatory scheme dictates preliminary resort to the [government entity] which administers the scheme." *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir. 2002).[12]

---

[12] *See also Tortilla Factory, LLC v. Rowdy Mermaid Kombucha LLC*, 2018 WL 9802099, at *2 (C.D. Cal. Sept. 11, 2018) (dismissing case where "Congress gave exclusive authority" to government agency to regulate subject of lawsuit); *Smith v. City of Berkeley*, 2014 WL 1230692, at *6 (N.D. Cal. Mar. 21, 2014) (granting stay because "allowing the case to go forward before the administrative proceeding … has been resolved would complicate the issues, proof, and questions of law").

*Third*, a stay avoids the risk of inconsistent judgments or outcomes by having to try the same issues twice. Staying private litigation is appropriate where a "[r]isk of inconsistent judgments" in a federal action is a "genuine concern." *Blue Cross*, 633 F. Supp. 3d at 392. Although the Court is currently coordinating the DOJ Action with these consolidated cases, they are separate and distinct legal proceedings. Plaintiffs' claims will be adjudicated by different factfinders compared to the DOJ Action, which opens the door for completely different outcomes in each case.

Consider, for example, Plaintiffs' age-gate allegations. The FTC has issued guidance that "sophisticated systems" for age verification are not required under COPPA, and that online providers "that choose[] to screen its users for age in a neutral fashion may rely on the age information its users enter, even if that age information is not accurate."[13] If this case is stayed and the Court later determines in the DOJ Action that, consistent with the FTC's guidance, TikTok's age gate was not deficient, that would bear directly on, and likely resolve, Plaintiffs' claims that Defendants were negligent under state law and engaged in unfair competition by "implement[ing] a particularly flimsy age gate that ultimately continued to permit children to create full access TikTok accounts." Compl. ¶¶ 109, 480, 533, 551, 634, 670, 731, 804, 841, 902.

By contrast, if Plaintiffs' case is allowed to proceed in parallel with the DOJ Action, one jury could deem the TikTok age gate sufficient in the DOJ Action, while another could deem it insufficient in Plaintiffs' case. This, in turn, could lead to different substantive outcomes based on the same factual allegations, including more onerous injunctive relief in Plaintiffs' case compared to the DOJ Action. Indeed, Plaintiffs have already claimed that they are seeking "sophisticated systems

---

[13] *See* FTC, Complying With COPPA: Frequently Asked Questions (July 2020), https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions#A.%20General%20Questions [https://perma.cc/9VE6-AJA8].

to verify the age of people signing up for [the] platform," notwithstanding the FTC's guidance to the contrary. *See* ECF No. 78-2 (May 29, 2025 Hr'g Tr.) at 39:11-16. And if relief obtained in Plaintiffs' case is "inconsistent with" the relief sought in the DOJ Action or FTC guidance, it could run afoul of COPPA's express preemption provision. *See* 15 U.S.C. § 6502(d); *see also* Mot. to Dismiss § IV.A. After all, the Ninth Circuit held in *Jones v. Google LLC*, 73 F.4th 636 (9th Cir. 2023), that private plaintiffs' causes of action were not preempted because they "proscribe[d] the same conduct forbidden by … COPPA." *Id*. at 644. To the extent that holding suggests that inconsistent results in federal and private actions *are* forbidden, it favors staying the action here until the federal action is resolved, to avoid that potentially impermissible outcome.[14]

The parties' preservation dispute is yet another example. As the Court knows, Defendants have been engaging with Plaintiffs in a four-month-long dispute over preservation of under-13 data. To date, this process has required expenditure of significant amounts of time and money, including three rounds of briefing, two depositions, a tutorial to the Court, and multiple meet-and-confers between counsel. At the same time, DOJ has taken a dramatically different approach to preservation issues because, as it has recognized, COPPA requires Defendants to *delete and destroy*, not maintain, user data. DOJ Compl. ¶ 118(h) (accusing Defendants of "failing to timely delete personal information collected from children"); *see also* 16 C.F.R. § 312.10. Defendants should not be forced to continue to spend further time

---

[14] As explained in Defendants' concurrently filed motion to dismiss, Mot. to Dismiss § IV.A, *Jones* did not address the relief sought here. Defendants are seeking a stay so that Plaintiffs' case is not litigated *simultaneously* with DOJ's federal enforcement action in line with prudential stay principles. This issue did not arise in *Jones*, as the federal COPPA enforcement action settled *before* the private plaintiffs even filed their lawsuit. *See* Complaint, *Hubbard v. Google LLC*, No. 5:19-cv-07016 (C.D. Cal. Oct. 25, 2019), ECF No. 1; Stip. Order for Permanent Injunction & Civil Penalty Judgment, *FTC v. Google LLC*, No. 1:19-cv-02642 (D.D.C. Sept. 10, 2019), ECF No. 5.

1  and effort preserving user data for Plaintiffs' case when doing so directly conflicts

2  with COPPA and DOJ's approach to enforcing it. Defendants—and the Court's—

3  time is better served by putting these issues to the side until the DOJ Action is

4  resolved.

5      A stay of Plaintiffs' case pending resolution of the DOJ Action avoids the

6  risk of these or other conflicts. For precisely that reason, courts have granted stays

7  where, as here, the claims asserted in a DOJ action and private plaintiffs' claims

8  both "hinge[] on an adjudication" that the defendant engaged in an illegal scheme

9  and "the two courts could potentially come to different conclusions."

10  *UnitedHealthcare Ins. Co. v. Regeneron Pharms., Inc.*, 2021 WL 6137097, at *4

11  (S.D.N.Y. Dec. 29, 2021); *see Ball ex rel. Regeneron Pharms., Inc. v. Baker*, 2022

12  WL 17808785, at *6 (S.D.N.Y. Dec. 18, 2022) (noting how "[f]ederal courts

13  disfavor duplicative litigation" and "[w]ithout staying the case at bar, this Court's

14  adjudication of [the significantly overlapping] issues inevitably risks inconsistent

15  rulings against the District Court of Massachusetts"); *Halman*, 2022 WL 3042768,

16  at *5 (granting stay given the "risks of inconsistent adjudication").

17      Nor does it matter whether a finding in the DOJ Action has formal preclusive

18  effect on Plaintiffs, as a stay "does not require that the issues in such proceedings

19  are necessarily controlling of the action before the court." *Levya*, 593 F.2d at 863-

20  64. To the contrary, courts often stay private litigation where, as here, substantial

21  factual overlap exists with the competing federal enforcement action precisely

22  because it avoids the risk of different outcomes and can help narrow the issues to be

23  resolved. For instance, in *Halman*, the court granted a stay where plaintiff's claims

24  were "based on the same underlying activity" as the DOJ's case and "resolution of

25  certain issues in the DOJ Action could affect the adjudication of [the private]

26  matter." 2022 WL 3042768, at *5. The court noted that a stay was proper because,

27  "if [the defendant] is found 'not liable' in the DOJ Action," the plaintiff "may be

28

foreclosed from" making certain arguments about liability. *Id*.[15]

*Fourth*, a stay will help promote judicial efficiency. Plaintiffs have collectively alleged 19 different claims, brought on behalf of 10 different proposed classes under the laws of 49 different states. *See* Compl. ¶¶ 429-940. But Plaintiffs' claims are all predicated on the same COPPA violations alleged by DOJ. *See supra* at § IV.A. Given the significant overlap between the two cases, it will be far more efficient for the Court to resolve the DOJ Action before Plaintiffs' case proceeds, as resolution of the core issues in the DOJ Action will help simplify and streamline the issues, proof, and questions of law in the MDL proceedings. Resolution of the DOJ Action may also help facilitate settlement of Plaintiffs' claims. *See Halman*, 2022 WL 2042768, at *6 ("In addition to avoiding inconsistent rulings, the outcome of the DOJ Action … may incentivize Defendants to settle this action, which further weighs in favor of granting the stay."). Additionally, if a stay is granted, the Court will no longer have to coordinate between a national MDL and a government enforcement action at the same time, and will not have to align case schedules, rulings on discovery disputes, and any other issues where the government and Plaintiffs' interests diverge. A stay also avoids the Court and the parties having to spend more time addressing a myriad of other complex issues, including with respect to class certification. And, as explained above, a stay is consistent with and

---

[15] *See also, e.g.*, *Baker*, 2022 WL 17808785, at *6 (granting stay and rejecting plaintiff's argument that "the DOJ action will not resolve or dispose of [plaintiff's] case" because plaintiff's case "arises from the same nucleus of facts as the DOJ action" and "resolution of the DOJ action will thus substantially simplify the instant case for both Regeneron and [p]laintiff"); *Simms v. Philip Morris, Inc.*, 2003 WL 27394525, at *2 (D.D.C. July 7, 2003) (granting stay where there was "substantial overlap of both factual and legal issues between the two cases" and because "rulings in the DOJ case are virtually certain to illuminate or resolve many issues which will arise in" the private case); *Blue Cross*, 633 F. Supp. 3d at 392 ("If the DOJ action vindicates Blue Cross's position that Regeneron engaged in an illegal kickback scheme, this [private] action will likely proceed more quickly.").

preserves Congress's mandate that the federal government maintain primary responsibility for enforcing COPPA violations, and affords priority to the DOJ which has investigated and engaged with Defendants over these issues for more than five years.

### B. Defendants Will Suffer Considerable Hardship and Inequity Absent a Stay.

A stay is also warranted because Defendants will be significantly prejudiced if Plaintiffs' case is allowed to further proceed in parallel with the DOJ Action. As explained above, litigating the DOJ Action at the same time as this matter could lead to inconsistent rulings in a variety of ways. This risk is more than sufficient hardship to justify a stay of this case. *See supra* § IV.A; *see also Clayborn v. Amazon.com Servs. LLC*, 2021 WL 7707763, at *6 (C.D. Cal. Nov. 9, 2021) (granting stay when "allowing the cases to proceed simultaneously risks the possibility of inconsistent outcomes, and thus considerable hardship to [the defendant]"); *J.W. v. Pfizer, Inc.*, 2013 WL 1402962, at *4 (N.D. Cal. Apr. 5, 2013) (finding that defendants "risk considerable hardship" when they "risk the possibility of inconsistent outcomes").

Defendants will also be prejudiced by having to contend with dueling discovery processes. *See Halman,* 2022 WL 3042768 at *4 (defendant was "likely to face a great burden if this case proceeds prior to the resolution of the DOJ Action," including because "[b]oth cases will require broad discovery" and defendant may be "force[d] . . . to undergo two parallel discovery processes"). Discovery has already commenced in the DOJ Action. While discovery is currently stayed in this matter, ECF No. 11, it is clear from the parties' voluminous briefing and ongoing and extensive discussions about preservation issues that Plaintiffs intend to pursue scorched-earth discovery once the stay is lifted. Defendants should not be forced to spend further time and effort litigating Plaintiffs' claims until the

core issues which Plaintiffs' claims admittedly depend on—namely, whether
Defendants violated COPPA and the COPPA Rule—are first resolved in
the DOJ Action.

### C.    A Stay Will Not Harm Plaintiffs.

Nor will Plaintiffs suffer any material harm in the event of a stay. "[T]his
case has not been languishing on the Court's docket." *Houseton v. Kirk*, 2024 WL
3051057, at *2 (C.D. Cal. May 6, 2024). The Complaint was only recently filed on
July 11, 2025—approximately six weeks ago—and the parties have yet to engage in
any discovery. Courts have granted stays at similar stages of the dispute,
contrasting it to situations "where substantial amounts of time and expense have
been invested in preparation by the parties." *HMT, Inc. v. Bell BCI Co.*, 2007 WL
295328, at *2 (W.D.N.Y. Jan. 30, 2007); *see also UnitedHealthcare*, 2021 WL
6137097, at *3, *5 (granting stay where "no discovery has been taken in the instant
cases, meaning plaintiffs will not be prejudiced by the suspension of any discovery
efforts," even though the "DOJ Action may not conclude for years"); *Blue Cross*,
*id.* at 392 (granting stay where plaintiff's action "is in its earliest stages" and
"neither party has expended resources and attention on discovery").

Indeed, courts "may insist that a plaintiff establish more 'prejudice' than
simply the right to pursue his case and vindicate his claim expeditiously." *Halman*,
2022 WL 2042768, at *4. Mere delay in litigating Plaintiffs' claims is not a
sufficient basis to justify denial of a stay, even of over a year—particularly given
the risk of inconsistent judgments. *See id.*(granting stay where DOJ action was not
scheduled to commence until more than a year later). Any alleged harm from
pausing this litigation will be more than offset by the efficiencies realized from
litigating the DOJ Action first. *See UnitedHealthcare*, 2021 WL 6137097 at *5
("[T]he public interest in prompt adjudication is counterbalanced by its interest in
conserving judicial resources."). Moreover, the DOJ Action is a civil enforcement

1    proceeding brought by the government on behalf of consumers, so there is little, if

2    any, concern that Plaintiffs' interests would not be "protected in the DOJ action."

3    *Id.*; *see also Simms*, 2003 WL 27394525, at *2 (same).

4                              *       *       *       *       *

5           In sum, a stay is the proper course of action in this case. Courts routinely stay

6    private litigation in circumstances like those presented here. In *Blue Cross*, for

7    example, Blue Cross brought a private civil action against Regeneron, alleging that

8    the company engaged in an illegal kickback scheme to boost sales of an eye

9    medication in violation of federal anti-kickback laws and state unfair-competition,

10   fraud, tortious interference, and unjust-enrichment law. 633 F. Supp. 3d at 387-88.

11   Blue Cross's complaint dovetailed off a separate DOJ enforcement action that

12   alleged the same conduct by Regeneron violated the False Claims Act, 31 U.S.C.

13   § 3729, *et seq.*, and which was pending before the same court and same judicial

14   officer as Blue Cross's action. *Id.* at 387-89.

15          The court granted Regeneron's motion and stayed Blue Cross's case pending

16   resolution of the DOJ action. *Id.* at 393. The court noted that "the underlying factual

17   dispute is essentially the same: whether Regeneron, CDF, and Lash worked

18   together to boost [their eye medication] Eylea unlawfully." *Id*. at 392. A stay of

19   Blue Cross's case thus would help "ensure efficient procedure by allowing the DOJ

20   action to establish factual issues central to [the private] action." *Id.* (cleaned up).

21   Moreover, "[w]ithout a stay," Regeneron would suffer hardship because it would

22   "face multiple private civil actions and government civil enforcement action at the

23   same time, based on the same basic set of facts, which conceivably could lead to

24   inconsistent outcomes." *Id.* By contrast, Blue Cross would suffer no prejudice

25   because its action was "in its earliest stages"—"neither party has expended

26   resources and attention on discovery," whereas the DOJ action was "well

27   underway" and would "likely resolve whether Regeneron's actions violate[d]

28

DEFS.' MEM. ISO STAY
MDL No. 3144
No. 2:25-ml-03144-GW-RAO

federal law substantially faster than the private action." *Id.* As explained above, other courts have also granted stays based on similar facts and reasoning. *See*, *e.g.*, *Baker*, 2022 WL 17808785, at *6; *UnitedHealthcare*, 2021 WL 6137097, at *6; *Halman*, 2022 WL 3042768, at *6; *Simms*, 2003 WL 27394525, at *2. The Court should do the same here.

## V.    CONCLUSION

For all the foregoing reasons, the Court should stay Plaintiffs' case pending resolution of the DOJ Action.

Dated: August 25, 2025

Respectfully submitted,

By:     */s/ Daniel M. Petrocelli*
           Daniel M. Petrocelli

DANIEL M. PETROCELLI
dpetrocelli@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, Suite 800
Los Angeles, California 90067-6035
Telephone:  +1 310 553 6700
Facsimile:   +1 310 246 6779

STEPHEN D. BRODY
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone:  +1 202 383 5300
Facsimile:   +1 202 383 5414

MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
San Francisco, CA 94111
Telephone:  +1 415 984 8700
Facsimile:   +1 415 984 8701

*Attorneys for Defendants ByteDance Ltd.,
ByteDance Inc., TikTok Ltd., TikTok Inc.,
TikTok LLC, TikTok Pte. Ltd., and TikTok
U.S. Data Security Inc.*

1

## CERTIFICATE OF SERVICE

I certify that on August 25, 2025, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which automatically services all counsel of record for the parties who have appeared.

Dated: August 25, 2025                                   */s/ Daniel M. Petrocelli*
                                                        Daniel M. Petrocelli

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing memorandum of law contains 5,532 words, which complies with the word limit set by Local Rule 11-6.1.

Dated: August 25, 2025                                   */s/ Daniel M. Petrocelli*
                                                        Daniel M. Petrocelli