Derek W. Loeser (*pro hac vice*)
dloeser@kellerrohrback.com
Cari Campen Laufenberg (*pro hac vice*)
claufenberg@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101
(206) 623-1900, Fax: (206) 623-3384

Eric Kafka (*pro hac vice*)
ekafka@cohenmilstein.com
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
(212) 838-7797, Fax: (212) 838-7745

*Interim Lead Counsel*

Steven Bloch (*pro hac vice*)
sbloch@sgtlaw.com
**SILVER GOLUB & TEITELL LLP**
One Landmark Square, 15th Floor
Stamford, CT 06901
(203) 325-4491

*Executive Committee*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| IN RE: TIKTOK, INC., MINOR PRIVACY LITIGATION | MDL NO. 3144<br><br>2:25-ml-03144-GW-RAO<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY** |

# TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................1

II.   LEGAL STANDARD............................................................................1

III.  ARGUMENT..........................................................................................3

  A.   It is likely that irreparable damage to Plaintiffs would result from a
       stay because evidence will be lost and Defendants will destroy
       relevant evidence. ........................................................................3

  B.   Defendants cannot establish *any* hardship or inequity, let alone a
       "clear case" of either, in being required to go forward with both cases. ..7

  C.   A stay would not serve the orderly course of justice because it would
       not simplify the issues before the Court or help the Court resolve
       those issues. ...............................................................................11

    1.   COPPA does not suggest, much less require, that private cases
         based on underlying COPPA violations should be stayed
         pending a government enforcement action. .................................11

    2.   There is little risk of inconsistent judgments because the cases
         are pending before the same court.............................................14

    3.   A stay would not promote judicial efficiency because the Court
         will not avoid any issues. .........................................................17

IV.   CONCLUSION .....................................................................................19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.A. v. ByteDance Inc.*,
　　No. 2:24-cv-06784-GW-RAO ...................................................................... 5, 8, 10

*A.M. v. ByteDance, Inc.*,
　　No. 3:24-cv-08051-JD (N.D. Cal. Jan. 17, 2025) ................................................. 9

*Blue Cross and Blue Shield of Massachusetts, Inc. v. Regeneron
　　Pharmaceuticals, Inc.*,
　　633 F. Supp. 3d 385 (D. Mass. 2022) ............................................................. 16, 17

*Blue Cross*, No. 1:21-cv-12094-FDS (D. Mass. Dec. 20, 2021) ............................... 16

*Cal. Sea Urchin Comm'n v. Jacobson*,
　　No. CV13-5517-DMG, 2016 WL 11785449 (C.D. Cal. Nov. 3, 2016) ............ 5, 18

*Cheverez v. Plains All Am. Pipeline, LP*,
　　No. CV15-4113, PSG (JEMx), 2016 WL 4942328 (C.D. Cal. Feb. 25, 2016) ..... 10

*In re Clean Water Act Rulemaking*,
　　60 F.4th 583 (9th Cir. 2023) ............................................................................... 13

*Clinton v. Jones*,
　　520 U.S. 681 (1997) ............................................................................ 2, 12, 13, 14

*CMAX, Inc. v. Hall*,
　　300 F.2d 265 (9th Cir. 1962) ............................................................................... 15

*Delisle v. Speedy Cash*,
　　No. 18-cv-2042-GPC-RBB, 2021 WL 7711287 (S.D. Cal. Feb. 16, 2021) ........... 4

*Dependable Highway Exp., Inc., v. Navigators Ins. Co.*,
　　498 F.3d 1059 (9th Cir. 2007) ..................................................................... 2, 5, 17

*Ernest Bock, LLC v. Steelman*,
　　76 F.4th 827 (9th Cir. 2023) ................................................................................. 2

*Flores v. Bennett*,
　　675 F. Supp. 3d 1052 (E.D. Cal. 2023) ................................................................ 2

*Grimm v. APN, Inc.*,
   No. CV17-00356 JVS, 2018 WL 4793088 (C.D. Cal. Jan. 8, 2018)......................4

*Hooks v. Kitsap Tenant Support Servs., Inc.*,
   816 F.3d 550 (9th Cir. 2016)...................................................................13

*Intex Recreation Corp. v. Bestway USA, Inc.*,
   No. CV19-08596 JAK (Ex), 2024 WL 4404982 (C.D. Cal. Sept. 6, 2024) ..........15

*Jenam Tech, LLC v. Google LLC*,
   630 F. Supp. 3d 1208 (N.D. Cal. 2022)...............................................10

*Jones v. Google LLC*,
   73 F.4th 636 (9th Cir. 2023)........................................................11, 12, 14

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936)..............................................................*passim*

*Levya v. Certified Grocers of Cal., Ltd.*,
   593 F.2d 857 (9th Cir. 1979)...........................................................2

*Lockyer v. Mirant Corp.*,
   398 F.3d 1098 (9th Cir. 2005)......................................................8, 16

*Mt. Hawley Ins. Co. v. Icon W., Inc.*,
   No. 2:23-cv-03905-SVW-MAR, 2023 WL 9419127 (C.D. Cal. Dec. 26, 2023) ....5

*In re PG&E Corp. Secs. Litig.*,
   100 F.4th 1076 (9th Cir. 2024)........................................................15

*Quinones v. Ocwen Loan Servicing, LLC*,
   No. 17-03526 DDP-PLAx, 2017 WL 4641078 (C.D. Cal. Oct. 16, 2017) .............4

*Ramos v. Cap. One, N.A.*,
   No. 17-cv-00435-BLF, 2017 WL 895635 (N.D. Cal. Mar. 7, 2017).......................4

*Reed v. Autonation, Inc.*,
   CV16-08916-BRO (AGRx), 2017 WL 10592157 (C.D. Cal. Mar. 6, 2017);..........4

*Ball ex rel. Regeneron Pharms., Inc., v. Baker*,
   2022 WL 17808785 (S.D.N.Y. Dec. 18, 2022) ......................................17

*Richards v. Ernst & Young LLP*,
   No. C-08-04988 RMW, 2012 WL 92738 (N.D. Cal. Jan. 11, 2012).......................4

iii

*Rodriguez v. Cleansource, Inc.*,
    No. 14-CV-0789-L(DHB), 2015 WL 12434307 (S.D. Cal. Feb. 26, 2015) ..........10

*Smith v. Experian Info. Sols., Inc.*,
    No. CV17-00629-CJC, 2018 WL 1427162 (C.D. Cal. Jan. 19, 2018) .................14

*Starks v. County of Los Angeles*,
    No. 2:21-cv-05209-ODW, 2022 WL 159729 (C.D. Cal. Jan. 18, 2022) ..............14

*In re TikTok, Inc., Minor Priv. Litig.*,
    MDL 3144 (Dec. 5, 2024)..........................................................................6, 9, 15

*Tubio v. Adidas Am., Inc.*,
    No. CV22-6424-GW-PVCx, 2023 WL 5505892 (C.D. Cal. July 5, 2023) .........2, 7

*United States v. ByteDance Ltd.*,
    No. 2:24-cv-06535-GW-RAO (C.D. Cal. Aug. 2, 2024) ...........................1, 4, 16

*United States v. Regeneron Pharms., Inc.*,
    No. 1:20-cv-11217-FDS (D. Mass. June 24, 2020) ...............................................16

*United States v. Vandewater Int'l, Inc.*,
    No. 2:17-cv-04393-RGK-KS, 2020 WL 4380951 (C.D. Cal. June 23, 2020).......14

*UnitedHealthcare Ins. Co. v. Regeneron Pharms., Inc.*,
    No. CV20-10664 (VB) et al., 2021 WL 6137097 (S.D.N.Y. Dec. 29, 2021)........17

*Wilson v. Odwalla, Inc.*,
    No. CV17-2763 DSF, 2017 WL 3084278 (C.D. Cal. June 28, 2017) ....................5

*Yong v. I.N.S.*,
    208 F.3d 1116 (9th Cir. 2000)..........................................................................2, 5

**Statutes**

15 U.S.C. § 45(m) .......................................................................................................7

15 U.S.C. § 6502(d) ..............................................................................................12, 13

15 U.S.C. § 6504(d) ..................................................................................................12

iv

# I.    INTRODUCTION

Defendants propose a solution in search of a problem. Current litigation over Defendants' alleged violations of the Children's Online Privacy Protection Act ("COPPA") began on August 2, 2024, when the United States Department of Justice ("DOJ") filed a civil enforcement action. *See United States v. ByteDance Ltd.*, No. 2:24-cv-06535-GW-RAO (C.D. Cal. Aug. 2, 2024) ("DOJ Action" or "*ByteDance*"). Just one week later, on August 9, 2024, the first related private action was filed. For more than one year—between August 9, 2024, and August 25, 2025, when Defendants' Motion to Stay was filed—Defendants said nothing to *any* court or tribunal, let alone *this* Court, about their need for a stay of any of the many private cases that followed the DOJ Action. On the contrary, Defendants advocated before the district court for "close coordination" between the private cases and the DOJ Action. And when briefing before the Judicial Panel on Multidistrict Litigation ("JPML") in early 2025, Defendants praised the benefits of transfer and consolidation, specifically noting the efficiencies for Defendants in discovery and motion practice.

On this contradictory record, Defendants' motivation is now clear. Tired of Plaintiffs' zealous data-preservation efforts as well as this Court's interest in reaching a resolution, and standing on the doorstep of discovery, Defendants seek to avoid this action entirely. Defendants plainly state that if a stay is issued, they will continue their blanket destruction of relevant evidence, indefinitely. This Court should take Defendants at their word and see this motion for what it is: a transparent effort to avoid preservation obligations and gain a tactical advantage in a manner that would be highly prejudicial to Plaintiffs. Moreover, Defendants fail to meet their burden of establishing that a stay is necessary or even appropriate in this case. Defendants' motion should be denied.

# II.    LEGAL STANDARD

When considering whether to stay proceedings, courts "weigh the 'competing interests' that will be affected by the granting or refusal of a stay, including: '[1] the possible damage which may result from the granting of a stay, [2] the hardship or

inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.'" *Tubio v. Adidas Am., Inc.*, No. CV22-6424-GW-PVCx, 2023 WL 5505892, at *1 (C.D. Cal. July 5, 2023) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)) (the "*Landis* factors"). However, "if there is even a fair possibility that the stay . . . will work damage to someone else, the stay may be inappropriate absent a showing by the moving party of hardship or inequity." *Dependable Highway Exp., Inc., v. Navigators Ins. Co*., 498 F.3d 1059, 1066 (9th Cir. 2007) (internal quotations omitted). "Only in rare circumstances will a litigant in one case be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936); *see also Dependable Highway*, 498 F.3d at 1066.

The party seeking a stay bears the burden of establishing its need. *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis*, 299 U.S. at 255). The proponent of a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay . . . will work damage to some one else." *Tubio*, 2023 WL 5505892, at *1 (quoting *Landis*, 299 U.S. at 255).

In addition, a court should "balance the length of the stay against the strength of the justification for it." *Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000). "If a stay is especially long or its term is indefinite, [a court] require[s] a greater showing to justify it." *Id.* "A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Levya v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979). These factors are "non-exclusive." *Ernest Bock, LLC v. Steelman*, 76 F.4th 827, 842 (9th Cir. 2023). They also "typically appl[y] to stays of proceedings pending the resolution of a related action *in another court*." *Flores v. Bennett*, 675 F. Supp. 3d 1052, 1056 (E.D. Cal. 2023) (emphasis added).

# III.  ARGUMENT

Defendants have not satisfied their burden to establish the need for a stay, and each of the *Landis* factors weighs against a stay. First, there is more than a fair possibility that Plaintiffs would be damaged if a stay is granted, as Defendants have stated their intention to destroy relevant evidence if a stay is issued. Second, Defendants cannot establish *any* hardship or inequity, let alone a "clear case," that would result from allowing this litigation to go forward. And third, Defendants have not demonstrated how a stay would simplify the issues before the Court or otherwise help the Court resolve those issues. For all these reasons, the Court should deny the motion.

**A.    It is likely that irreparable damage to Plaintiffs would result from a stay because evidence will be lost and Defendants will destroy relevant evidence.**

Defendants argue that Plaintiffs will not "suffer any material harm in the event of a stay." ECF No. 105-1 at 21. But there is more than a fair possibility of damage to Plaintiffs: Defendants have stated their intention to destroy relevant evidence if a stay is issued, other evidence will be irretrievably lost, and delay will undermine Plaintiffs' efforts in this litigation. Moreover, Defendants' arguments are unpersuasive and overlook other risks to Plaintiffs.

First, there is an explicit danger of lost evidence. In their motion, Defendants announce their intention to cease any data preservation efforts after a stay is issued:

> ***Defendants should not be forced to continue to spend further time and effort preserving user data for Plaintiffs' case*** when doing so directly conflicts with COPPA and DOJ's approach to enforcing it. Defendants—and the Court's—time is better served by putting these issues to the side until the DOJ Action is resolved.

ECF No. 105-1 at 17–18 (emphasis added); *see also id.* at 20–21 (arguing that "Defendants should not be forced to spend further time and effort litigating Plaintiffs' claims" until DOJ case resolves). In other words, Defendants admit that they are seeking permission to delete swaths of evidence that are central to Plaintiffs' case. This argument flies in the face of Defendants' preservation obligations as well as the

significant amounts of time and money that the Parties and the Court have invested in understanding and resolving the Parties' preservation disputes.

Issuing a stay will prevent Plaintiffs from obtaining evidence central to their case and will palpably risk the total loss of that evidence. Courts routinely deny stays when there is a nonspeculative risk of evidence destruction. *See, e.g.*, *Delisle v. Speedy Cash*, No. 18-cv-2042-GPC-RBB, 2021 WL 7711287, at *5 (S.D. Cal. Feb. 16, 2021) (denying stay pending appeal where "Plaintiffs have [] articulated a specific and particular harm," namely, "potential loss of relevant evidence due to the passage of time"); *Richards v. Ernst & Young LLP*, No. C-08-04988 RMW, 2012 WL 92738, at *4 (N.D. Cal. Jan. 11, 2012) (noting that "loss of evidence" qualifies as a "specific harm[]"); *Ramos v. Cap. One, N.A.*, No. 17-cv-00435-BLF, 2017 WL 895635, at *3 (N.D. Cal. Mar. 7, 2017) ("[T]he Court finds that with passing time, there remains a risk of lost and destroyed evidence, as well as fading witness memories."). Courts grant motions to stay only where "there is no reason to think that [a defendant] will not comply with the law and the rules of this Court and destroy or intentionally lose evidence." *Grimm v. APN, Inc.*, No. CV17-00356 JVS (JCGx), 2018 WL 4793088, at *4 (C.D. Cal. Jan. 8, 2018).

Second, an indefinite stay pending resolution of the DOJ case "would harm [Plaintiffs'] ability to contact class members and secure the evidence that is essential to their claims." *Reed v. Autonation, Inc.*, CV16-08916-BRO (AGRx), 2017 WL 10592157, at *3 (C.D. Cal. Mar. 6, 2017); *see also Quinones v. Ocwen Loan Servicing, LLC*, No. 17-03526 DDP-PLAx, 2017 WL 4641078, at *2 (C.D. Cal. Oct. 16, 2017) ("Inherent in a delay is the risk of prejudice to a party's ability to obtain documentary and testimonial evidence, as memories fade and witnesses are less likely to 'recall specific facts.'" (quoting *Clinton*, 520 U.S. at 708)). Plaintiffs are likely to lose important deposition evidence due to witnesses forgetting important facts. Plus, the trial schedule in the DOJ Action has already been continued once and may be pushed again. *See ByteDance*, Dkt. No. 63 (Aug. 7, 2025) (order extending case schedule). And it

remains to be seen whether the DOJ Action is delayed—or even survives—in light of the announced deal to create a new American TikTok.[1]

Because the Parties cannot be certain when the stay will be lifted, a greater showing from Defendants is required to justify the stay. *See Yong*, 208 F.3d at 1119 ("If a stay is especially long or its term is indefinite, we require a greater showing to justify it."). For example, courts deny stays where "staying this case until the resolution of [another case] would be an indefinite stay that could last for years." *Mt. Hawley Ins. Co. v. Icon W., Inc.*, No. 2:23-cv-03905-SVW-MAR, 2023 WL 9419127, at *4 (C.D. Cal. Dec. 26, 2023); *see also Wilson v. Odwalla, Inc.*, No. CV17-2763 DSF (FFMx), 2017 WL 3084278, at *4 (C.D. Cal. June 28, 2017); *Cal. Sea Urchin Comm'n v. Jacobson*, No. CV13-5517-DMG (CWx), 2016 WL 11785449, at *3 (C.D. Cal. Nov. 3, 2016) (rejecting the argument that "a year's wait (at minimum) is a reasonable time in relation to the urgency of the claims presented" (internal quotations omitted)). "Generally, stays should not be indefinite in nature." *Dependable Highway*, 498 F.3d at 1066.

Defendants' contrary arguments are unpersuasive. For example, Defendants mischaracterize the progress of Plaintiffs' case. Defendants argue that Plaintiffs have not invested "substantial amounts of time and expense" by pointing to the filing of the Consolidated Complaint on July 11, 2025, and the lack of formal discovery. *See* ECF No. 105-1 at 21 (quoting *HMT, Inc. v. Bell BCI Co.*, No. 06-CV-6193T, 2007 WL 295328, at *2 (W.D.N.Y. Jan. 30, 2007)). But Defendants grossly minimize the work that the Parties, this Court, and other courts have already invested in Plaintiffs' case. The first private case was filed on August 9, 2024, within one week of the DOJ case, which was over a year ago.[2] Since that time, the Parties spent four months briefing

---

[1] *See* Lauren Hirsch, Tripp Mickle & Emmett Lindner, *Trump Clears Way for American-Owned TikTok Valued at $14 Billion*, N.Y. TIMES (Sept. 25, 2025), https://www.nytimes.com/2025/09/25/technology/trump-tiktok-ban-deal.html.

[2] *See A.A. v. ByteDance Inc.*, No. 2:24-cv-06784-GW-RAO, Dkt. No. 1 (C.D. Cal. Aug. 9, 2024) (complaint).

issues before the JPML,[3] and almost six months litigating before this Court. This time
has included extensive motions practice on leadership and preservation of evidence; a
full-day technology tutorial on TikTok's systems and preservation, complete with
briefing and expert presentations; drafting the Consolidated Complaint; vetting
plaintiffs; and soliciting expert opinions. Moreover, the pending Motion to Dismiss will
be fully briefed by the time the instant motion is heard. And yet, even as Defendants
understate the extent of this work, they complain elsewhere that Plaintiffs' case "has
required expenditure of *significant amounts of time and money*, including three rounds
of briefing, two depositions, a tutorial to the Court, and multiple meet-and-confers
between counsel," mostly due to the Parties' preservation disputes. ECF No. 105-1 at 17
(emphasis added). Defendants cannot have it both ways. The record indeed reflects
"substantial amounts of time and expense" already invested by the Parties and the
Court—time and expense that would be undermined by a stay.

Defendants' remaining arguments are thin and inapposite. For example,
Defendants complain that "[m]ere delay in litigating Plaintiffs' claims is not a sufficient
basis to justify denial of a stay." ECF No. 105-1 at 21. But *Defendants* have the burden
to justify granting a stay—and, regardless, Plaintiffs have demonstrated significantly
more harm than mere delay. Defendants also contend that any alleged harm from delay
"will be more than offset by the efficiencies realized from litigating the DOJ Action
first." *Id.* But as explained below, any purported "efficiencies" are vastly overstated, if
they exist at all, because the case will not be simplified by a judgment in the DOJ
Action. *See infra* Section III.C. As Defendants themselves acknowledged in their
briefing to the JPML, inefficiencies will likely result from separate discovery processes.
*See infra* Section III.B; *In re TikTok,* Dkt. No. 78 at 6 (Mar. 24, 2025).

Finally, Defendants assert that "there is little, if any, concern that Plaintiffs'
interests would not be 'protected in the DOJ action.'" ECF No. 105-1 at 22 (quoting

---

[3] *See In re TikTok, Inc., Minor Priv. Litig.*, MDL 3144, Dkt. No. 1 (Dec. 5, 2024)
(motion to transfer); *id.*, Dkt No. 83 (Apr. 3, 2025) (transfer order).

*UnitedHealthcare Ins. Co. v. Regeneron Pharms., Inc.*, No. CV20-10664 (VB) et al.,
2021 WL 6137097, at *5 (S.D.N.Y. Dec. 29, 2021)). But "[o]nly in rare circumstances
will a litigant in one case be compelled to stand aside while a litigant in another settles
the rule of law that will define the rights of both." *Tubio*, 2023 WL 5505892, at *1
(quoting *Landis*, 299 U.S. at 255). Defendants have not shown any "rare circumstances"
that would justify preventing Plaintiffs from protecting their own interests. To the
contrary, they acknowledge that there may be "other issues where the government and
Plaintiffs' interests diverge." ECF No. 105-1 at 19. Although the factual allegations are
similar between the cases, Plaintiffs bring different claims and seek different relief.
Specifically, the DOJ Action seeks civil penalties, *see* 15 U.S.C. § 45(m), while the
private MDL plaintiffs seek damages that will be calculated based on forthcoming class-
wide damages models.

Furthermore, Plaintiffs represent the interests of multiple putative classes,
whereas Defendants cite cases involving just two individual plaintiffs. *See* ECF No.
105-1 at 21–22 (citing *UnitedHealthcare*, 2021 WL 6137097, at *1 (noting two plaintiff
insurance companies); *Simms v. Phillip Morris, Inc.*, No. C01-1107 (GK), 2003 WL
27394525, at *2 (D.D.C. July 7, 2003) ("Simms, on the other hand, represents the
private interests of two individual smokers.")). As such, Plaintiffs bring a variety of
state-law claims that will require overlapping, but not identical, discovery to that in the
DOJ Action. Plaintiffs have vigorously pursued preservation from Defendants that will
result in important discovery being preserved that would not be in the absence of
Plaintiffs' case—and avoiding those preservation obligations is at the heart of
Defendants' motion.

Therefore, as there is more a fair possibility that a stay would damage Plaintiffs,
this factor weighs against a stay.

**B.     Defendants cannot establish *any* hardship or inequity, let alone a "clear
        case" of either, in being required to go forward with both cases.**

Defendants argue that they "will be significantly prejudiced if Plaintiffs' case is

7

allowed to further proceed in parallel with the DOJ Action." ECF No. 105-1 at 20. Defendants articulate two purported sources of prejudice: (1) a risk of "inconsistent rulings"; and (2) "having to contend with dueling discovery processes." *Id.* But Defendants' own actions and prior statements demonstrate a lack of hardship or inequity, and Defendants' claim of "prejudice" is unpersuasive.

As an initial matter, "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005). The mere fact that Defendants would have to face both DOJ and Plaintiffs in the absence of a stay is not sufficient to meet Defendants' burden to justify a stay.

Defendants' own actions and prior statements—in which they have repeatedly extolled the benefits of coordination—rebut this contention. In November 2024, a court in this District ordered the parties in two private cases and the DOJ Action to show cause why the three actions should not be consolidated. *See, e.g.*, *A.A.*, Dkt. No. 44 (Nov. 14, 2024). In response, Defendants opposed consolidation but supported coordination between the private cases and the DOJ Action, stating that "[b]ecause the Government's action and the class actions are premised on substantially similar factual allegations, closely coordinating the actions under the Court's direction is warranted." *Id.*, Dkt. No. 48, at 3. Defendants further explained:

> Because the actions are related, Defendants propose that they be closely coordinated under the Court's direction, particularly with respect to fact discovery—assuming the class actions survive motions to dismiss and proceed to discovery. Among other benefits, ***coordinating discovery could eliminate the need for the same witnesses to sit for deposition more than once, reduce the likelihood of redundant document productions and written discovery responses, and avoid duplicative briefing of common issues***. Though some discovery may be unique to the class actions or to the Government action—for example, discovery relating to the named Plaintiffs or to class certification would not be relevant to the Government's action—***close coordination would reduce costs and promote efficiency***.

*Id.* at 6–7 (emphases added). This passage could have been lifted directly from

Plaintiffs' brief to oppose the stay that Defendants now seek.

Later, in March 2025, in a brief to the JPML, Defendants stated that the cases should be centralized in the Central District of California:

> Because the underlying DOJ civil action is exempt from transfer, transferring the private class actions to any district other than the Central District of California would mean that the actions will be litigated in at least two separate districts, creating obvious risks of inconsistent rulings and overlapping and inefficient discovery efforts. And if the actions are centralized in the Central District of California, Defendants would be relieved of having to engage in costly and time-consuming discovery and motion practice in two different districts.

*In re TikTok,* Dkt. No. 78 at 6 (Mar. 24, 2025). In its transfer order on April 3, the JPML also recognized these benefits, observing that "centralization in the Central District of California will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation." Dkt. No. 83 at 1; 776 F. Supp. 3d 1349, 1350 (2025). The JPML also noted that "[t]he government action, which overlaps considerably with the [private cases], was filed in this district." Dkt. No. 83 at 2; 776 F. Supp. 3d at 1351.

Further, Defendants' delay in filing this motion—more than a year since the first private case was filed—is objective evidence that Defendants have not experienced a "clear case" of hardship or inequity. For over a year, Defendants never moved to stay any of the private cases in light of the already-pending DOJ Action. This included the four-month briefing period before the JPML (between January and April 2025), when Defendants had another opportunity to move to stay the private cases pending resolution of the DOJ Action.[4] In their repeated briefing, however, Defendants did not indicate any intent to seek a stay of the consolidated cases, *see id.*, Dkt. No. 26 (Jan. 3, 2025), and later supported transfer to this Court with no discussion of a stay, *see id.*, Dkt. No. 78 (Mar. 24, 2025).

Even after the JPML consolidated the private litigation and sent the consolidated

---

[4] At least some of the private cases were stayed during the JPML briefing. *See, e.g.*, *A.M. v. ByteDance, Inc.*, No. 3:24-cv-08051-JD, Dkt. No. 25 (N.D. Cal. Jan. 17, 2025).

cases to this Court, Defendants did not promptly seek a stay. To the contrary, they
agreed to a schedule in which the Parties discussed coordinated discovery with the DOJ,
submitted status reports, and engaged in extensive litigation over data preservation.
During this time, Defendants never expressed concern about the impact of the DOJ
Action and never mentioned the possibility of moving for a stay until after Plaintiffs
filed the Consolidated Complaint. Defendants do not explain why the motion to stay
was filed over a year after the first private case was filed, nor why they did not raise this
motion *at any prior time*. Nor do Defendants explain why they did not move for their
motion to be heard on an expedited basis, given the looming expense of briefing a
motion to dismiss. Their silence and delay demonstrate that their motion is motivated by
strategic concerns, not legitimate concerns about hardship or need. *Cf. Rodriguez v.
Cleansource, Inc.*, No. 14-CV-0789-L(DHB), 2015 WL 12434307, at *3 (S.D. Cal. Feb.
26, 2015) (considering whether movant sought *Landis* stay "as a dilatory tactic"); *Jenam
Tech, LLC v. Google LLC*, 630 F. Supp. 3d 1208, 1215 (N.D. Cal. 2022) (in patent
litigation, finding that movant was motivated by gamesmanship to seek a stay).

      Defendants' specific complaints of prejudice are also unpersuasive. First, as
explained below, there is little risk of "inconsistent rulings" when both cases are before
this Court, which can take all necessary steps to efficiently coordinate the cases and
dispose of common issues in a consistent way. *See infra* Section III.C. Second,
Defendants' argument that a discovery problem will result without a stay is completely
the wrong way around. It is a stay—rather than coordination—that would create
"dueling discovery processes." ECF No. 105-1 at 20. Hearing the cases together,
coordinated by one court, will make discovery *more* efficient, not less, for the Parties
and the Court given that the cases are "premised on substantially similar factual
allegations." *A.A.*, Dkt. No. 48 at 3. There is no meaningful reason why conducting
discovery and litigating the DOJ Action first will meaningfully reduce Defendants'
burden in Plaintiffs' case. *See Cheverez v. Plains All Am. Pipeline, LP*, No. CV15-4113,
PSG (JEMx), 2016 WL 4942328, at *4 (C.D. Cal. Feb. 25, 2016) (noting defendants'

"cursory and unconvincing explanation" of hardship and finding it "uncertain whether [the parallel proceeding] will significantly decrease Defendants' burden with respect to the current litigation"). Indeed, the way to reduce burden is to coordinate the proceedings so that overlapping issues can be addressed at one time, as Defendants themselves urged until filing the instant motion.

Ultimately, Defendants' self-serving change in position is essentially unexplained and should not be credited. Rather, Defendants' true interest is transparent: it would be more "efficient" not to have to defend against this litigation at all. Because Defendants have not established a "clear case" of hardship or inequity in being required to go forward, this factor weighs against a stay.

**C.     A stay would not serve the orderly course of justice because it would not simplify the issues before the Court or help the Court resolve those issues.**

Defendants' final argument is that proceeding with Plaintiffs' case "will disrupt the orderly course of justice because it contradicts COPPA's statutory scheme and will waste the parties' and the Court's resources." ECF No. 105-1 at 11. This argument is also without merit.

**1.     COPPA does not suggest, much less require, that private cases based on underlying COPPA violations should be stayed pending a government enforcement action.**

Defendants argue that the "first-filed federal enforcement efforts take priority over other enforcement actions" because "the federal government—not any other entity, much less private plaintiffs—is the primary enforcer of alleged COPPA violations." ECF No. 105-1 at 11. Defendants further argue that "the nearly verbatim overlap between Plaintiffs' allegations and the DOJ Action" merit a stay. *Id.* at 14–15. But Defendants ignore *Jones v. Google LLC*, 73 F.4th 636 (9th Cir. 2023), and distort COPPA's textual mandate.[5]

---

[5] Plaintiffs respectfully refer the Court to, and incorporate by reference, their Opposition to Defendants' Motion to Dismiss at Section IV.A.

In *Jones*, private plaintiffs (on behalf of a putative class) brought state-law claims like the ones Plaintiffs bring here: "invasion of privacy, unjust enrichment, consumer protection violations, and unfair business practices" under the laws of multiple states.[6] 73 F.4th at 640. The Ninth Circuit addressed "whether COPPA preempts state law claims based on underlying conduct that also violates COPPA's regulations." *Id.* at 641. The court held that it does not: "COPPA's preemption clause [15 U.S.C. § 6502(d)] does not bar state-law causes of action that are parallel to, or proscribe the same conduct forbidden by, COPPA." *Id.* at 644. To reach this holding, the court noted that it did not find "clear congressional intent to create an *exclusive* remedial scheme for enforcement of COPPA requirements." *Id.* at 643. And the court noted that its holding was endorsed by the Federal Trade Commission, which had written in an amicus brief that "Congress did not intend to wholly foreclose state protection of children's online privacy" and that Google's contrary interpretation "would have the extreme effect of providing immunity from a wide swath of traditional state law claims that were never discussed in COPPA's legislative history, much less swept aside altogether." *Id.*

Faced with the binding precedent in *Jones*, Defendants now seek to invoke congressional intent as expressed through other provisions of COPPA. *See* ECF No. 105-1 at 12–13. But these provisions are irrelevant to Plaintiffs' case—and, at any rate, Defendants blatantly misconstrue them. First, Defendants appear to put the most weight on 15 U.S.C. § 6504(d), which bars a "State" from bringing a COPPA enforcement action "during the pendency of" a federal enforcement action. *See* ECF No. 105-1 at 12–13 (arguing that "[t]he Court should stay Plaintiffs' case 'during the pendency of' the DOJ Action in accordance with COPPA's statutory text"). But Section 6504 speaks only to the primacy afforded to the FTC *vis-à-vis* the states and relates only to actions by State attorneys general to enforce the COPPA Rule. It says nothing about private actions or their relationship to actions by the states or the FTC. Similarly,

---

[6] Before the *Jones* case, in the fall of 2019, Google had previously settled COPPA litigation with the Federal Trade Commission and the New York Attorney General. *Jones*, 73 F.4th at 640.

Section 6505, which Defendants also cite (*see* ECF No. 105-1 at 12), details the enforcement authority of the FTC; it, too, says nothing about private actions. Private actions are therefore excluded from the statute's ambit, which "follows from the basic canon of construction establishing that an explicit listing of some things should be understood as an *exclusion of others* not listed—even when a statute does not say expressly that *only* the listed things are included." *In re Clean Water Act Rulemaking*, 60 F.4th 583, 595 (9th Cir. 2023) (internal quotations omitted) (emphasis in original).

Defendants nevertheless protest that "[t]o allow Plaintiffs' case to proceed would create a scenario where states acting in their *parens patriae* capacity are prevented from initiating an action to enforce COPPA's rules, but private plaintiffs are not." ECF No. 105-1 at 13. But coordinating Plaintiffs' case with the DOJ Action is entirely consistent with COPPA. As explained in *Jones*, there is nothing in COPPA's text or structure that preempts private actions entirely. And as discussed above, there is nothing in COPPA's text or structure that defers private actions until after a government enforcement action has concluded. On the contrary, COPPA's preemption clause preserves the ability of private plaintiffs to bring state-law claims that are not "inconsistent with the treatment of those activities or actions" prohibited by COPPA. 15 U.S.C. § 6502(d); *see also Jones*, 73 F.4th at 642–43. If Congress wanted to prohibit or defer private actions, it could have said so in COPPA's text. It did not. Instead, Congress cabined the scope of COPPA's preemption clause to allow certain private actions to go forward. This is definitive. *See Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 562 (9th Cir. 2016) ("It is our judicial function to apply statutes on the basis of what Congress has written, not what Congress might have written." (quoting *United States v. Great N. Ry. Co.*, 343 U.S. 562, 575 (1952))).

Defendants' remaining arguments also lack merit. Defendants argue that a stay is warranted because "Plaintiffs' state law claims are based on the same conduct and purported COPPA violations alleged in DOJ's complaint." ECF No. 105-1 at 13. But again, *Jones* makes clear that COPPA itself permits "state law claims based on

13

underlying conduct that also violates COPPA's regulations." 73 F.4th at 641. To the extent that a similarity in allegations is relevant to a *Landis* stay, it weighs *against* a stay here; any common issues can be addressed together, efficiently and with one voice, by this Court. *See infra* Sections III.C.2–3.

Defendants also make a strained analogy to the primary jurisdiction doctrine, which requires certain administrative agencies to address claims before federal courts. *See* ECF No. 105-1 at 15. But there is no technical or policy question to be determined by the FTC—or any other agency—that warrants deference by this Court. The FTC has already referred Defendants' COPPA violations to the DOJ for an enforcement action. And FTC has already expressed its position in *Jones* that private actions like this one, that bring state-law claims concerning children's online privacy, can proceed in parallel to COPPA enforcement actions brought by the government. *See* 73 F.4th at 643.

### 2. There is little risk of inconsistent judgments because the cases are pending before the same court.

Defendants next argue that "a stay avoids the risk of inconsistent judgments or outcomes by having to try the same issues twice." ECF No. 105-1 at 16. From the outset, Defendants' argument suffers from a fundamental flaw: the DOJ case and Plaintiffs' case are *in the same court*. An argument about a risk of inconsistent judgments typically carries weight when the cases are in separate courts or other fora. *See, e.g.*, *Starks v. County of Los Angeles*, No. 2:21-cv-05209-ODW (GJSx), 2022 WL 159729, at *5 (C.D. Cal. Jan. 18, 2022) (weighing risk of inconsistent judgments between district court and state court); *United States v. Vandewater Int'l, Inc.*, No. 2:17-cv-04393-RGK-KS, 2020 WL 4380951, at *2 (C.D. Cal. June 23, 2020) (weighing risk of inconsistent judgments between district court and Court of International Trade); *Smith v. Experian Info. Sols., Inc.*, No. CV17-00629-CJC (AFMx), 2018 WL 1427162, at *3 (C.D. Cal. Jan. 19, 2018) (weighing risk of inconsistent judgments where appellate decision was expected in a related action). Here, because both cases are before this Court, the Court can take all necessary steps to efficiently coordinate the cases and

dispose of common issues in a consistent way. *See Intex Recreation Corp. v. Bestway USA, Inc.*, No. CV19-08596 JAK (Ex), 2024 WL 4404982, at *6 (C.D. Cal. Sept. 6, 2024) ("[B]oth cases are before the same bench officer, which reduces the risk of inconsistent decisions.").

Defendants' past briefing to the JPML again belies their argument. There, Defendants noted the "obvious risks of inconsistent rulings" if Plaintiffs' case had been heard in "any district *other than* the Central District of California," where the DOJ case was already located. *In re TikTok*, Dkt. No. 78 at 6 (emphasis added). Defendants' own prior statements make clear that there is no risk of inconsistency now that the DOJ Action and the private actions are before the same court.

Defendants double down and cite Plaintiffs' "age-gate allegations" as an issue that could be judged inconsistently by two different juries. *See* ECF No. 105-1 at 16–17. This concern is speculative: there is no guarantee that either matter will go to trial. Until then, *every other stage* of the litigation—pleadings, discovery, summary judgment, and more—would be coordinated and addressed consistently by this Court, which would speak with one voice on any common issues. Moreover, even if both matters reach the trial stage, the trials would be held sequentially, not simultaneously, and a victorious party in the first trial would be free to move at that time for any appropriate forms of estoppel in the second trial—though even that motion is not guaranteed success. As a result, there is very little risk of inconsistent judgments that could not be managed by the Court and the Parties during litigation.

Defendants also point out that a stay "does not require that the issues in [a separate proceeding] be necessarily controlling of the action before the court." ECF No. 105-1 at 18 (quoting *Levya*, 593 F.2d at 863–64). But Defendants miss the import of this principle. Courts find it useful to wait for a separate proceeding if another authority will have had a prior opportunity to develop evidence and apply its relative expertise to issues raised in both proceedings—thereby informing and assisting the court's own work. *See In re PG&E Corp. Secs. Litig.*, 100 F.4th 1076, 1086 (9th Cir. 2024); *CMAX*,

300 F.2d at 269 (noting that administrative proceeding would "provide a means of developing comprehensive evidence bearing upon the highly technical tariff questions which are likely to arise in the district court case"); *but see Lockyer*, 398 F.3d at 1113 (vacating stay "where the proceeding in the bankruptcy court is unlikely to decide, or to contribute to the decision of, the factual and legal issues before the district court"). Here, in contrast, there is no administrative body, arbitrator, bankruptcy court, or other authority that will develop evidence or bring its expertise to bear on the DOJ Action such that the Court will be informed or assisted with resolving the issues in Plaintiffs' case. Even if a stay is issued, the Court will have to decide those issues itself.

Defendants' cases are inapposite. For example, in *Blue Cross and Blue Shield of Massachusetts, Inc. v. Regeneron Pharmaceuticals, Inc.*, the court stayed a private action pending resolution of a DOJ action against the same defendant. 633 F. Supp. 3d 385, 392–93 (D. Mass. 2022). But there, the private action was filed almost a year and a half after the DOJ action.[7] And the court noted that "the DOJ action against [defendant] is *well underway*" and "will likely resolve whether [defendant's] actions violate federal law *substantially faster* than this action." *Id.* at 392 (emphases added); *see also id.* ("[T]he DOJ action is substantially farther along than this action and is likely to be resolved more quickly."). The court also observed that two other private cases—pending in another district—were already stayed, so "[a] stay in this case will also complement the stay" of those actions. *Id.* at 393.

Here, in contrast, the DOJ Action is in its early stages, and there are no other pending cases. While "discovery has commenced" in the DOJ Action, ECF No. 105-1 at 9, it has barely progressed: it appears DOJ served only its First Set of Requests for Production on July 3, 2025, which Defendants are still working on responding to. *See ByteDance*, Dkt. No. 62-1 ¶¶ 8–11 (Aug. 6, 2025) (Petrocelli Declaration). Moreover,

---

[7] The DOJ action was filed in June 2020 while *Blue Cross* was not filed until December 2021. *Compare United States v. Regeneron Pharms., Inc.*, No. 1:20-cv-11217-FDS, Dkt. No. 1 (D. Mass. June 24, 2020), *with Blue Cross*, No. 1:21-cv-12094-FDS, Dkt. No. 1 (D. Mass. Dec. 20, 2021).

fact discovery in the DOJ Action does not close until January 2027; expert discovery does not close until February 2027, and trial is scheduled for May 2027. *See id.*, Dkt. No. 63 at 2. This timeline shows that the DOJ Action is not "substantially farther along" than Plaintiffs' case and is not likely to be resolved more quickly such that inconsistent judgments are likely to result. There is no demonstrable reason that the two cases cannot proceed together.

Defendants' other cases are similarly unpersuasive. Defendants cite two decisions staying private cases in New York related to the *Blue Cross* case and its related DOJ case. *See UnitedHealthcare*, No. 21-CV-6418 (NSR), 2021 WL 6137097; *Ball ex rel. Regeneron Pharms., Inc., v. Baker*, 2022 WL 17808785 (S.D.N.Y. Dec. 18, 2022). But those cases were before two different courts in a different district (and a different circuit), which substantially increased the likelihood of inconsistent judgments—a fact that both courts weighed in favor of a stay. *See UnitedHealthcare,* 2021 WL 6137097, at *5; *Baker*, 2022 WL 17808785, at *6. Similarly, in *Halman Aldubi Provident and Pension Funds Limited v. Teva Pharmaceuticals Industries Limited*—which relies heavily on *UnitedHealthcare*—the related DOJ case was pending in a different district (in a different circuit) than the private case, thus presenting a much greater risk of inconsistent judgments. *See* No. 20-CV-4660-KSM, 2022 WL 3042768 (E.D. Pa. Aug. 2, 2022).

### 3.    A stay would not promote judicial efficiency because the Court will not avoid any issues.

Finally, Defendants argue that "a stay will help promote judicial efficiency." ECF No. 105-1 at 19. As an initial matter, "[w]hile it is the prerogative of the district court to manage its workload, case management standing alone is not necessarily a sufficient ground to stay proceedings." *Dependable Highway*, 498 F.3d at 1066 (citing *Lockyer*, 398 F.3d at 1112).

Crucially, Defendants do not establish how a stay would, in fact, promote judicial efficiency. For example, Defendants argue that a stay "will help simplify and streamline

17

the issues, proof, and questions of law in the MDL proceedings," ECF No. 105-1 at 19, but do not explain why a stay is more efficient than coordinating the cases simultaneously. To the contrary, because there is "significant overlap between the two cases," *id.*, the Court can most efficiently address common issues together. And as discussed above, the Court will not be informed or otherwise assisted in its work by allowing the DOJ Action to go forward alone because both cases are in the same tribunal. *See supra* Section III.C.2. The Court will have to confront the same issues regardless. Also, "the merits questions presented in the two cases are somewhat distinct, which lessens the risk of hindering the 'orderly course of justice.'" *See Jacobson*, 2016 WL 11785449, at *3.

Defendants' other arguments are similarly unavailing. Defendants argue that "[r]esolution of the DOJ Action may also help facilitate settlement of Plaintiffs' claims." ECF No. 105-1 at 19 (citing *Halman*, 2022 WL 3042768, at *6). But this suggestion is speculative at best, and Defendants do not explain why proceeding with the DOJ Action first would impact settlement. Defendants also argue that with a stay, "the Court will no longer have to coordinate between a national MDL and a government enforcement action at the same time." ECF No. 105-1 at 19. But this concern is baseless. This Court has been ably coordinating the two cases for almost six months, and there is no demonstrated reason why coordination should not continue. Finally, Defendants argue that a stay "avoids the Court and the parties having to spend more time addressing a myriad of other complex issues, including with respect to class certification." *Id.* But a stay only *postpones* the Court's encounter with class certification, which the Court is fully competent to address. There is no guarantee, or even demonstrated likelihood, that a stay would eliminate any specific issues altogether.

\*    \*    \*

Therefore, as Defendants have not demonstrated how a stay would benefit the orderly course of justice, this factor weighs against a stay. Because all three *Landis* factors weigh against a stay, Defendants' motion should be denied.

## IV.    CONCLUSION

For all the above reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to stay.

DATED this 29th day of September, 2025.

KELLER ROHRBACK L.L.P.


By: */s/ Derek W. Loeser*
    Derek W. Loeser (*pro hac vice*)
    dloeser@kellerrohrback.com
    Cari Campen Laufenberg (*pro hac vice*)
    claufenberg@kellerrohrback.com
    1201 Third Avenue, Suite 3400
    Seattle, WA 98101
    (206) 623-1900, Fax (206) 623-3384

    *Interim Lead Counsel*

COHEN MILSTEIN SELLERS AND TOLL PLLC


By: */s/ Eric A. Kafka*
    Eric A. Kafka (*pro hac vice*)
    ekafka@cohenmilstein.com
    Cohen Milstein Sellers and Toll PLLC
    88 Pine Street, 14th Floor
    New York, NY 10005
    212-838-7797
    212-838-7745 (fax)

    *Interim Lead Counsel*

SILVER GOLUB & TEITELL LLP


    Steven L. Bloch (*pro hac vice*)
    sbloch@sgtlaw.com
    One Landmark Square, 15th Floor

19

Stamford, Connecticut 06901
Telephone: (203) 325-4491

*Executive Committee*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-4.3.4(a)(2)**

I, Derek W. Loeser, attest that all other signatories listed, and on whose behalf the filing is submitted, have concurred in the filing's content and have authorized the e-filing of the foregoing document in compliance with Local Rule 5-4.3.4(a)(2).

Executed this 29th day of September, 2025, at Seattle, Washington.

*/s/ Derek W. Loeser*
signature

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,565 words, which [choose one]:

X complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated August 25, 2025.

Executed this 29th day of September, 2025, at Seattle, Washington.

*/s/ Derek W. Loeser*
Derek W. Loeser

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CERTIFICATE OF SERVICE

I, Sarah Skaggs, hereby certify that on September 29, 2025, I electronically filed the foregoing with the Clerk of the United States District Court for the Central District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

*/s/ Sarah Skaggs*
Sarah Skaggs