Derek W. Loeser (*pro hac vice*)
dloeser@kellerrohrback.com
Cari Campen Laufenberg (*pro hac vice*)
claufenberg@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101
(206) 623-1900, Fax: (206) 623-3384

Eric Kafka (*pro hac vice*)
ekafka@cohenmilstein.com
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
(212) 838-7797, Fax: (212) 838-7745

*Interim Lead Counsel*

Steven Bloch (*pro hac vice*)
sbloch@sgtlaw.com
**SILVER GOLUB & TEITELL LLP**
One Landmark Square, 15th Floor
Stamford, CT 06901
(203) 325-4491

*Executive Committee*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| IN RE: TIKTOK, INC., MINOR PRIVACY LITIGATION | MDL NO. 3144<br><br>2:25-ml-03144-GW-RAO<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)** |

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................1

II.     FACTS .........................................................................................................1

III.    LEGAL STANDARD ..................................................................................3

IV.     ARGUMENT................................................................................................3

        A.     COPPA does not mandate dismissal (or warrant a stay) of Plaintiffs'
               claims. ..............................................................................................3

        B.     Whether a plaintiff can adequately represent a multi-state class should
               be addressed at class certification, not on a motion to dismiss. ..............5

        C.     Plaintiffs sufficiently allege their privacy claims....................................7

               1.     Plaintiffs sufficiently allege claims of intrusion upon seclusion
                      and violation of the California Constitution. ...................................7

               2.     Plaintiffs sufficiently allege a claim under the New York Civil
                      Rights Law ("NYCRL"). ..........................................................12

        D.     Plaintiffs sufficiently allege their unfair-competition claims. ...............13

               1.     Plaintiffs sufficiently allege multiple cognizable theories of
                      concrete economic injury. .........................................................14

               2.     Plaintiffs sufficiently allege economic injury under California's
                      Unfair Competition Law ("UCL"). .............................................17

               3.     Plaintiffs sufficiently allege losses under the consumer
                      protection laws of Connecticut, Florida, Georgia, Missouri,
                      Pennsylvania, and Washington....................................................19

        E.     Plaintiffs sufficiently allege their unjust enrichment claims. ................21

               1.     Plaintiffs sufficiently allege that Defendants earned unjust
                      profits. ...................................................................................21

               2.     Plaintiffs sufficiently allege that Defendants unjustly retained a
                      benefit......................................................................................23

        F.     Plaintiffs sufficiently allege their negligence claims. ...........................24

V.      CONCLUSION ...........................................................................................26

i

1
2

# TABLE OF AUTHORITIES

3
4

**Cases**                                                                 **Page(s)**

5
6

*A.B. by & through Turner v. Google LLC*,
    737 F. Supp. 3d 869 (N.D. Cal. 2024)...........................................*passim*

7
8

*Alvarez v. NBTY, Inc.*,
    No. 17-cv-00567-BAS-BGS, 2017 WL 6059159 (S.D. Cal. Dec. 6, 2017) ...........6

9
10

*Amusement Indus., Inc. v. Stern*,
    693 F. Supp. 2d 301 (S.D.N.Y. 2010) ...................................................13

11
12

*In re Anthem, Inc. Data Breach Litig.*,
    No. 15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016).............17

13

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015)...................................................................23

14
15

*Bd. of Trs. of Galveston Wharves v. Trelleborg, AB*,
    No. CV 10-2319-GW, 2010 WL 11508414 (C.D. Cal. Nov. 22, 2010) .................6

16
17

*Best Carpet Values, Inc. v. Google LLC*,
    90 F.4th 962 (9th Cir. 2024).................................................................17

18
19

*Boyd v. SunButter, LLC*,
    762 F. Supp. 3d 931 (C.D. Cal. 2025) (Wu, J.) .........................................3

20
21

*Brown v. Google LLC*,
    No. 20-CV-03664-LHK, 2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) .......*passim*

22
23

*Brown v. MedScope Am. Corp.*,
    No. 4:21-CV-71 (CDL), 2024 WL 666495 (M.D. Ga. Feb. 16, 2024).................20

24

*Calhoun v. Google LLC*,
    526 F. Supp. 3d 605 (N.D. Cal. 2021)...........................................*passim*

25
26

*In re Carrier IQ, Inc.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015).................................................5

27
28

*Castillo v. Costco Wholesale Corp.*,
    No. 2:23-cv-01548-JHC, 2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) .........21

*Claridge v. RockYou, Inc.*,
    785 F. Supp. 2d 855 (N.D. Cal. 2011) ...................................................................14

*In re Clearview AI, Inc., Consumer Priv. Litig.*,
    585 F. Supp. 3d 1111 (N.D. Ill. 2022) ..............................................................13

*Cnty. of San Bernardino v. Walsh*,
    69 Cal. Rptr. 3d 848 (Cal. App. 2d Dist. 2007) .........................................22

*Coffee v. Google, LLC*,
    No. 20-cv-03901-BLF, 2022 WL 94986 (N.D. Cal. Jan. 10, 2022) .....................24

*CTC Real Est. Servs. v. Lepe*,
    44 Cal. Rptr. 3d 823 (Cal. Ct. App. 2006) ...........................................13

*Curtis v. City of New York*,
    195 N.Y.S.3d 592 (N.Y. Sup. Ct. 2023) ...........................................13

*In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*,
    No. 2:23-CV-01447-ART-BNW, 2025 WL 2393024 (D. Nev. Aug. 15, 2025)....14

*Doe I v. Wal-Mart Stores, Inc.*,
    572 F.3d 677 (9th Cir. 2009) ...........................................................23

*Doe v. Kaiser Found. Health Plan, Inc.*,
    No. 23-cv-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ...............21

*Doe v. N. Cal. Fertility Ctr.*,
    No. 22-cv-01861-DAD-JDP, 2024 WL 246178 (E.D. Cal. Jan. 23, 2024) ..........25

*Effinger v. Ancient Organics LLC*,
    657 F. Supp. 3d 190 (N.D. Cal. 2023) ...................................................7

*In re Experian Data Breach Litig.*,
    No. SACV 15-1592 AG (DFMx), 2016 WL 7973595 (C.D. Cal. Dec. 29,
    2016) ............................................................................................14

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) ...................................................8, 22, 24

*In re Facebook, Inc., Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ...........................................................*passim*

*In re Fawcett*,
    664 B.R. 748 (Bankr. E.D. Mo. 2024) ...................................................20

*Griffith v. TikTok, Inc.*,
    697 F. Supp. 3d 963 (C.D. Cal. 2023) ..........................................................15, 18

*Guy v. Convergent Outsourcing, Inc.*,
    No. C22-1558 MJP, 2023 WL 4637318 (W.D. Wash. July 20, 2023) .................21

*Hammerling v. Google LLC*,
    615 F. Supp. 3d 1069 (N.D. Cal. 2022) .................................................................11

*Harris v. CVS Pharmacy, Inc.*,
    2015 WL 4694047 (C.D. Cal. Aug. 6, 2015)..........................................................6

*Hernandez v. Hillsides, Inc.*,
    211 P.3d 1063 (Cal. 2009) .............................................................................7, 10

*Howell v. N.Y. Post Co.*,
    81 N.Y.2d 115 (N.Y. 1993).....................................................................................12

*Hubbard v. Google*,
    No. 19-cv-07016-SVK, 2025 WL 82211 (N.D. Cal. Jan. 13, 2025) ..............*passim*

*In re Hydroxycut Marketing and Sales Practices Litig.*,
    801 F. Supp. 2d 993 (S.D. Cal. 2011) ................................................................5, 6

*In re iPhone Application Litigation*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012)................................................................25

*Jepson v. Ticor Title Ins. Co.*,
    No. C06-1723-JCC, 2007 WL 2060856 (W.D. Wash. May 1, 2007) .....................5

*Jones v. Google LLC*,
    73 F.4th 636 (9th Cir. 2023).............................................................................3, 4

*Kamen v. Lindly*,
    114 Cal. Rptr. 2d 127 (Cal. Ct. App. 2001) .........................................................23

*Kwikset Corp. v. Superior Ct.*,
    246 P.3d 877 (Cal. 2011) ......................................................................................18

*Love & War, LLC v. Wild Bunch A.G.*,
    No. CV18-3773-DMG, 2018 WL 7501286 (C.D. Cal. Dec. 21, 2018).................23

*Manigault-Johnson v. Google, LLC*,
    No. 2:18-cv-1032-BHH, 2019 WL 3006646 (D.S.C. Mar. 31, 2019) ............11, 12

iv

*McDonald v. Kiloo ApS*,
    385 F. Supp. 3d 1022 (N.D. Cal. 2019) .......................................................... 10, 12

*McKinney v. Corsair Gaming, Inc.*,
    No. 22-cv-00312-CRB, 2022 WL 2820097 (N.D. Cal. Jul. 19, 2022) ...................6

*In re Mednax Svcs., Inc. Customer Data Sec. Breach Litig.*,
    603 F. Supp. 3d 1183 (S.D. Fla. 2022) ...................................................................21

*Melendres v. Arpaio*,
    784 F.3d 1254 (9th Cir. 2015) .................................................................................6

*In re Meta Pixel Tax Filing Cases*,
    724 F. Supp. 3d 987 (N.D. Cal. 2024) ....................................... 15, 16, 17, 18

*In re Moveit Customer Data Sec. Breach Litig.*,
    No. 23-md-3083-ADB-PGL, 2025 WL 2176590 (D. Mass. July 31, 2025) ..........19

*Nayab v. Capital One Bank (USA), N.A.*,
    942 F.3d 480 (9th Cir. 2019) .................................................................................25

*In re Nickelodeon Consumer Priv. Litig.*,
    827 F.3d 262 (3d Cir. 2016) ..................................................................................11

*Rosal v. First Fed. Bank of Cal.*,
    671 F. Supp. 2d 1111 (N.D. Cal. 2009) ................................................................24

*Senne v. Kan. City Royals Baseball Corp.*,
    114 F. Supp. 3d 906 (N.D. Cal. 2015) ....................................................................5

*Smith v. Chase Manhattan Bank*,
    741 N.Y.S.2d 100 (N.Y. App. Div. 2002) .............................................................13

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
    613 F. Supp. 3d 1284 (S.D. Cal. 2020) ..................................................... 19, 20, 21

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    903 F. Supp. 2d 942 (S.D. Cal. 2012) ...................................................................25

*Sunset Pools of St. Louis, Inc. v. Schaefer*,
    869 S.W.2d 883 (Mo. Ct. App. 1994) ...................................................................20

*Svenson v. Google Inc.*,
    65 F. Supp. 3d 717 (N.D. Cal. 2014) ....................................................................15

v

*United States of America v. Musical.ly*,
    No. 2:19-cv-1439, Dkt. No. 10 (C.D. Cal. Mar. 27, 2019) ......................................3

*Walker v. Thompson*,
    404 F. Supp. 3d 819 (S.D.N.Y. 2019) ....................................................................12

*Wesch v. Yodlee, Inc.*,
    No. 20-cv-05991-SK, 2021 WL 6206644 (N.D. Cal. July 19, 2021) ...................15

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) .............14

**Statutes**

15 U.S.C. § 6502(d) ....................................................................................................4

15 U.S.C. § 6504(d) ....................................................................................................4

**Other Authorities**

16 C.F.R. § 312.2 ........................................................................................................8

16 C.F.R. § 312.4 ........................................................................................................8

Fed. R. Civ. P. 12(b)(6) ..............................................................................................3

Restatement (Third) of Restitution and Unjust Enrichment ....................................22

# I.     INTRODUCTION

TikTok has profited off the systemic invasion of privacy of millions of children in the United States under the age of 13. This conduct violates privacy rights and economic interests that Plaintiffs and absent class members have over their Private Information,[1] TikTok's duty of reasonable care to protect its under-13 users' Private Information, and numerous statutes that protect individuals from unfair business practices. Plaintiffs have alleged sufficient facts to proceed with each of their causes of action.

# II.     FACTS

Defendants (collectively, "TikTok") operate one of the world's largest social media platforms that reaches millions of Americans under the age of 13. ECF No. 94 ¶ 4. TikTok knowingly permitted and encouraged children under the age of 13 to create user accounts on the TikTok app and collected their Private Information without parental notice or consent. *Id.* ¶¶ 103–22. TikTok unlawfully collected the following Private Information from child-users of TikTok:

> name, age, email address, phone number, persistent identifiers for the device(s) used to access TikTok, social media account information, profile image, as well as photographs, videos, and audio files containing the user's image and voice and the metadata associated with such media (such as when, where, and by whom the content was created), usage information, device information, location data, image and audio information, metadata, and data from cookies and similar technologies that track user across different websites and platforms.

*Id.* ¶ 1; *see also id.* ¶¶ 74–75. This information was collected from each named plaintiff. *Id.* ¶¶ 245, 257, 269, 278, 287, 296, 304, 312, 321, 332, 340, 349, 361. And Defendants collected this information without providing parental notice and obtaining consent. *Id.* ¶¶ 107, 120, 124, 128, 190-194, 251, 263, 272, 281, 290, 299, 307, 315, 327, 335, 343, 355, 366, 375, 384, 393. Defendants profit enormously from this unlawfully collected

---

[1] "Private Information" or "PI" means the categories of data TikTok collects from its users as alleged and defined in ¶¶ 74–75 of the Consolidated Complaint. *See* ECF No. 94.

information by selling access to it through, among other things, targeted behavioral advertising. *Id.* ¶¶ 96–102.

TikTok further intentionally targeted children to use its app, and thus the platform is directed at children under age 13. *Id.* ¶¶ 89–95. TikTok has grown its child audience by publicly hosting thousands of accounts that feature content from well-known child brands, which contain child-oriented subject matter, characters, activities, music and other content. *Id.* ¶ 92. Additionally, TikTok hosts, maintains, and promotes thousands of accounts that are dedicated to child models as well as child celebrities and influencers. *Id.* ¶ 94.

Accordingly, TikTok knew it was collecting children's data in violation of the Children's Online Privacy Protection Act ("COPPA"). It knowingly created accounts for children and collected children's data without parental notice or consent (*id.* ¶¶ 103–22), including from "Kids Mode" accounts (*id.* ¶¶ 123–31). TikTok also ignored parents' requests to delete child users' data (*id.* ¶¶ 132–43) and failed to delete children's accounts that were identified by its own systems (*id.* ¶¶ 144–51). As such, TikTok had actual knowledge that it was collecting, storing and using the Private Information of children under the age of 13 (*id.* ¶¶ 152–63) yet failed to comply with its COPPA obligations (*id.* ¶¶ 144–51, 156–57). Plaintiffs' posts and activity on the TikTok platform also apprised Defendants that Plaintiffs were under 13 years old. *See e.g.*, *id.* ¶ 353 ("I'm 11 years old"); *id.* ¶ 249 ("Search Term: 12 year old girl trends.").

Defendants engaged in this unlawful behavior for one reason: profit. TikTok's primary revenue source is its advertising income from third-party advertisements to the 49 million daily users on its platform, one-third of which are 14 or younger. *Id.* ¶¶ 83–84, 91. In fact, TikTok's U.S. revenue hit a record $16 billion in 2023, and researchers estimate that 35% of TikTok's 2022 ad revenue was derived from children and teenagers. *Id.* ¶¶ 86–87. Because children are so integral to TikTok's profitability, TikTok failed to cease its unlawful business practices even in the face of a Permanent Injunction and Civil Penalty that it entered into with the United States Federal Trade Commission ("FTC") on

March 27, 2019 (the "2019 Permanent Injunction"). *See United States of America v. Musical.ly*, No. 2:19-cv-1439, Dkt. No. 10 (C.D. Cal. Mar. 27, 2019).

As a result of all its alleged conduct, TikTok has invaded the privacy of class members and been unjustly enriched. ECF No. 94 ¶¶ 429–40 (intrusion-upon-seclusion claim), 441–50 (unjust-enrichment claim), 451–63 (California privacy claim), 775–86 (New York privacy claim). TikTok also negligently violated its duty of reasonable care to protect its under-13 users' personal information, as well as the consumer protection statutes of California, Connecticut, Florida, Georgia, Missouri, New York, Pennsylvania, and Washington. *Id.* ¶¶ 464–774, 787–940 (negligence and consumer-protection claims).

## III.    LEGAL STANDARD

To establish Article III standing, "a plaintiff must show he has '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Boyd v. SunButter, LLC*, 762 F. Supp. 3d 931, 938 (C.D. Cal. 2025) (Wu, J.) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

In evaluating a motion to dismiss under Rule 12(b)(6), a court must: "(1) construe the complaint in the light most favorable to Plaintiff, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them." *Id.* (citations omitted). "Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

## IV.    ARGUMENT

### A.    COPPA does not mandate dismissal (or warrant a stay) of Plaintiffs' claims.

Defendants first argue that "prosecution of this case while the DOJ's separate enforcement action is pending is preempted by COPPA." ECF No. 104-1 at 14. But Defendants' argument is foreclosed by *Jones v. Google LLC*, 73 F.4th 636 (9th Cir.

1   2023) and is without any basis in COPPA's text.

2       First, *Jones* forecloses TikTok's argument rooted in COPPA's preemption clause,

3   15 U.S.C. § 6502(d). There, private plaintiffs (on behalf of a putative class) brought

4   state-law claims like the ones Plaintiffs bring here under the laws of multiple states.[2] *See*

5   73 F.4th at 640. The Ninth Circuit held that "COPPA's preemption clause does not bar

6   state-law causes of action that are parallel to, or proscribe the same conduct forbidden

7   by, COPPA." *Id.* at 644. The court did not find "clear congressional intent to create an

8   *exclusive* remedial scheme for enforcement of COPPA requirements." *Id.* at 643

9   (emphasis in original). The court also noted that its holding was endorsed by the FTC,

10  which had stated in an amicus brief that "Congress did not intend to wholly foreclose

11  state protection of children's online privacy" and that Google's contrary interpretation

12  "would have the extreme effect of providing immunity from a wide swath of traditional

13  state law claims that were never discussed in COPPA's legislative history, much less

14  swept aside altogether." *Id.* at 643.

15      Defendants briefly attempt to distinguish *Jones* by inventing a new "simultaneous

16  preemption" rule, arguing that, in *Jones*, the government actions settled before the

17  private cases began, whereas here the DOJ case and Plaintiffs' case are being litigated

18  "*simultaneously.*" *See* ECF No. 104-1 at 16 (emphasis in original). This proposed

19  "simultaneous preemption" rule has no basis in COPPA's text, in caselaw, or in any

20  preemption doctrine identified by Defendants. Instead, *Jones* plainly confirms that

21  Section 6502(d) does not preempt Plaintiffs' state-law claims based on underlying

22  COPPA violations, regardless of the timing of the actions. *See* 73 F.4th at 644. While

23  Section 6504(d) announces the FTC's superior enforcement role *vis-à-vis* the states, it is

24  distinctly silent with respect to private actions and their relationship to COPPA

25  enforcement actions by the FTC or the states. *See* 15 U.S.C. § 6504(d). There is nothing

26  in the text of Section 6504 which precludes Plaintiffs' action.

27
28
---
[2] Before the *Jones* case, in the fall of 2019, Google had previously settled COPPA
litigation with the Federal Trade Commission and the New York Attorney General.
*Jones*, 73 F.4th at 640.

Finally, Defendants move in the alternative for a stay of Plaintiffs' case "to avoid this conflict with COPPA and the risk of inconsistent judgments." ECF No. 104-1 at 17. For the reasons stated in Plaintiffs' opposition to Defendants' motion to stay, a stay is unwarranted because Plaintiffs are likely to suffer harm, Defendants have not demonstrated *any* hardship or inequity in going forward with Plaintiffs' case, and a stay will not serve the orderly course of justice. *See* Plaintiffs' Opposition to Defendants' Motion to Stay, Section III. As such, Defendants' manufactured arguments about preemption have no basis in law and should be rejected.

**B.    Whether a plaintiff can adequately represent a multi-state class should be addressed at class certification, not on a motion to dismiss.**

Defendants move to dismiss all state law claims outside of California, Connecticut, Florida, Georgia, Missouri, New York, Pennsylvania, and Washington because Plaintiffs "lack standing" to bring claims under the laws of states where they do not reside. *See* ECF No. 104-1 at 17. This attack on "standing" is misguided.

At the outset, courts have "discretion to defer questions of standing until after class certification" when plaintiffs assert claims under state laws where they do not reside. *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1074 (N.D. Cal. 2015) (collecting cases); *see also id.* at 1071 ("[T]he Supreme Court held that the lower courts had properly addressed class certification first prior to Article III standing questions."). Standing in such cases is best addressed after class certification. *See Senne v. Kan. City Royals Baseball Corp.*, 114 F. Supp. 3d 906, 921–22 (N.D. Cal. 2015). This is because class certification is a logical antecedent to standing where "there is no question that the proposed class would have standing to assert [other state] claims if it were certified." *Jepson v. Ticor Title Ins. Co.*, No. C06-1723-JCC, 2007 WL 2060856, at *1 (W.D. Wash. May 1, 2007).

Instead of grappling with the interplay between class certification and standing for a multi-state class, Defendants conflate the issues. But "[t]he constitutional issue of standing should not be conflated with Rule 23 class action requirements." *In re*

*Hydroxycut Marketing and Sales Practices Litig.*, 801 F. Supp. 2d 993, 1005 (S.D. Cal. 2011). Instead, where named plaintiffs have standing, the question is whether "their injuries are sufficiently similar to those of the purported Class." *Id.* Indeed, "the only question" at the pleading stage is whether the individual plaintiff has standing, not whether the plaintiff is a proper class representative. *Bd. of Trs. of Galveston Wharves v. Trelleborg, AB*, No. CV 10-2319-GW (FFMx), 2010 WL 11508414, at *6 (C.D. Cal. Nov. 22, 2010); *see also Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015); *Alvarez v. NBTY, Inc.*, No. 17-cv-00567-BAS-BGS, 2017 WL 6059159, at *8 (S.D. Cal. Dec. 6, 2017).

There are also pragmatic reasons to defer addressing whether Plaintiffs can adequately represent multi-state classes. First, Defendants raise cross-cutting issues as to the viability of Plaintiffs' claims, as opposed to idiosyncrasies in state law. Resolving these pleading issues will clarify the scope of the litigation and streamline potential amendments to the complaint or class definitions. Second, the time spent adjudicating whether the existing plaintiffs have standing to assert claims on behalf of persons from other states will be for naught if Plaintiffs amend their complaint and add representatives from other states. Lastly, Plaintiffs seek only to represent multi-state classes for common-law claims. Thus, *Harris v. CVS Pharmacy, Inc.* is inapposite, since it notes that a plaintiff cannot invoke a foreign statute where they do not reside in that state. No. CV13-02329-AB (AGRx), 2015 WL 4694047, at *4 (C.D. Cal. Aug. 6, 2015).

Even if the Court considers Defendants' standing challenge, these arguments should be rejected. The multi-state classes comprise state laws that are not materially different from the states where Plaintiffs reside. Indeed, Defendants fail to articulate any variations in state law that preclude using a multi-state class. *See McKinney v. Corsair Gaming, Inc.*, No. 22-cv-00312-CRB, 2022 WL 2820097, at *13 (N.D. Cal. Jul. 19, 2022) (explaining defendant "has not provided a sufficient description of other state laws to meet its burden of showing that Plaintiffs lack standing to bring claims under

6

1    these other states' laws.").[3] Far from disputing Plaintiffs' multistate groupings,

2    Defendants acknowledge the similarities among the state laws at issue. *See* ECF No.

3    104-1 at 38–55 (Indexes A & B).

4    **C.     Plaintiffs sufficiently allege their privacy claims.**

5          **1.    Plaintiffs sufficiently allege claims of intrusion upon seclusion and
              violation of the California Constitution.**

6

7          Plaintiffs satisfy the elements of intrusion upon seclusion and a violation of the

8    California Constitution. Plaintiffs allege that (1) TikTok intruded on "a place,

9    conversation, or matter as to which the plaintiff has a reasonable expectation of privacy"

10   and (2) the intrusion "occur[red] in a manner highly offensive to a reasonable person."

11   *Hernandez v. Hillsides, Inc.*, 211 P.3d 1063, 1072 (Cal. 2009) (citations omitted).

12   Courts determine whether a defendant's actions are "highly offensive to a reasonable

13   person" through a "holistic consideration of factors such as the likelihood of serious

14   harm to the victim, the degree and setting of the intrusion, the intruder's motives and

15   objectives, and whether countervailing interests or social norms render the intrusion

16   inoffensive." *In re Facebook, Inc., Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir.

17   2020) ("*Facebook Tracking*").

18          **a.    Plaintiffs have a reasonable expectation of privacy in their
              Private Information.**

19

20         Defendants argue that their privacy policy defeats any reasonable expectation of

21   privacy. *See* ECF No. 104-1 at 20–21. This argument fails for three reasons.

22         First, COPPA, not TikTok's privacy policy, governs consent to collect Plaintiffs'

23   data, and COPPA plainly prohibits website operators from collecting children's personal

24   information without verifiable parental notice and consent. *See A.B. by & through*

25   ─────────────────

26   [3] If the Court considers Defendants' standing arguments now and finds that Plaintiffs
      cannot represent class members bringing claims under other state laws, Plaintiffs
27    request leave to amend to add other named class representatives from other states. *See
      Effinger v. Ancient Organics LLC*, 657 F. Supp. 3d 190, 1301 (N.D. Cal. 2023)
28    (allowing plaintiffs to add other class representatives).

*Turner v. Google LLC*, 737 F. Supp. 3d 869, 884 (N.D. Cal. 2024) (holding plaintiffs adequately pleaded they had a reasonable expectation of privacy given the "legal bar" under COPPA on interest-based advertising); 16 C.F.R. §§ 312.2, 312.4. COPPA confirms the commonsense notion that children lack an adult capacity to understand the risks of sharing their personal information online. Defendants' argument would turn COPPA on its head—allowing a company to collect data solely because it "disclosed" that collection *to children* would render COPPA's notice-and-consent framework with respect *to parents* meaningless. And Plaintiffs adequately allege that Defendants failed to obtain consent from any of Plaintiffs' parents. ECF No. 94 ¶¶ 251, 263, 272, 281, 290, 299, 307, 315, 327, 335, 343, 355, 366, 375, 384, 393. It is not unreasonable for Plaintiffs—who were children when they joined TikTok—or their parents to believe that TikTok would abide by the law.

Second, even if TikTok's privacy policy had any bearing on Plaintiffs' reasonable expectation of privacy, the policy itself acknowledges that it only governs the collection of "the personal information of users and other individuals *age 13 and over*."[4] Thus, the policy does not put children under the age of 13—the children on whose behalf this action is brought—on any form of notice about the data TikTok collects from them. Further, TikTok's under-13 privacy policy lists a vastly more limited collection of users' Private Information.[5] Defendants cannot pretend that child users had the wherewithal as a matter of law to appreciate the significance of a policy that does not, on its face, apply to them. And to the extent that the Court finds the privacy policy ambiguous, Defendants cannot obtain dismissal on any purported consent. *See In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 789–90 (N.D. Cal. 2019) ("*Facebook Profile*").

---

[4] *Privacy Policy,* TikTok, https://www.tiktok.com/legal/page/us/privacy-policy/en (last updated Aug. 19, 2024) (emphasis added).

[5] ECF No. 94 ¶¶ 123–31; *see also Children's Privacy Policy,* TikTok, https://www.tiktok.com/legal/page/global/childrens-privacy-policy/en (last updated Oct. 1, 2024).

Defendants' counter that children misreport their age is a red herring. The Consolidated Complaint alleges that TikTok knowingly collects data from children under 13. *See* ECF No. 94 ¶¶ 152–63. As such, statements by Plaintiffs when they were *children* has no bearing on the reasonableness of Plaintiffs' expectation of privacy, *i.e.*, the expectation that TikTok would not violate COPPA.

Third, nothing in the Consolidated Complaint states that Plaintiffs or their parents ever saw, let alone affirmatively consented, to TikTok's privacy policies. Nor do Defendants provide any support for this assertion, stating merely that the policies disclose the data collection. But courts have rejected such arguments where defendants fail to "explain whether these terms would have been conspicuously presented to [p]laintiffs or provide any reason for the [c]ourt to accept at the pleading stage that [p]laintiffs were on notice of these terms." *Hubbard v. Google*, No. 19-cv-07016-SVK, 2025 WL 82211, at *5 (N.D. Cal. Jan. 13, 2025). Under such circumstances, "the [c]ourt will not presume awareness or notice (concerning minor children under the age of 13, no less) merely because these terms existed." *Id.* Here, where Defendants "cannot establish, for purposes of this motion [to dismiss], that [P]laintiffs actually saw or agreed to [Defendants'] general terms and policies," the mere existence of such policies does not undermine Plaintiffs' reasonable expectation of privacy. *Turner*, 737 F. Supp. 3d at 884.

Defendants also contend that "many kinds of personal information identified in the Complaint—including names, email addresses, phone numbers, persistent identifiers, and IP addresses—do not implicate privacy interests under state law at all." ECF No. 104-1 at 21–22. But Plaintiffs allege that TikTok collected a broad swath of their Private Information, including videos watched, time spent watching videos, and time spent on the TikTok platform. ECF No. 94 ¶¶ 1, 74–75, 187, 245–49, 257–60, 269–70, 278–79, 287–88, 296–97, 304–305, 312–13, 321–25, 340–41, 349–53, 361–64. And this information is of a type that courts have repeatedly found gives rise to a reasonable expectation of privacy. *See, e.g.*, *Facebook Tracking*, 956 F.3d at 604 (reasonable expectation of privacy that "broad swaths of personal information" cannot be collected absent consent);

*Hubbard*, 2025 WL 82211, at *2 (denying motion to dismiss intrusion upon seclusion claim where similar information was alleged to be collected from children under 13 who watch YouTube videos, including which videos were viewed and "duration of video views). Plaintiffs' reasonable expectation of privacy is also informed by COPPA's privacy protections. *Hernandez*, 211 P.3d at 1072 (defendant violates reasonable expectation of privacy when they commit "violation of the law or social norms.").

Lastly, Defendants also cite a series of inapposite cases about Article III for the proposition that the information collected here is insufficiently private. *See* ECF No. 104-1 at 21–22. However, none of the cases involve the personal information collected from children under 13 when using social media. *See Facebook Tracking*, 956 F.3d at 601–606; *Hubbard*, 2025 WL 82211, at *2.

### b. TikTok's collection of Plaintiffs' Private Information is highly offensive.

Defendants argue that "the manner in which Defendants allegedly collected Plaintiffs' information is not 'highly offensive.'" ECF No. 104-1 at 22–24. But courts have consistently rejected such arguments in cases involving minors alleging COPPA violations.

In *Turner*, the court denied the defendants' motion to dismiss that asserted the exact challenge raised here by TikTok. *See* 737 F. Supp. 3d at 884. The court held that "[a] violation of federal law is generally considered egregious, and because COPPA prohibits such data collection from minors to protect their privacy, plaintiffs have adequately pleaded an egregious intrusion into the minors' expectation of privacy." *Id.* This intrusion was highly offensive "[n]o matter how un-sensitive or un-intimate the personal information collected here was." *Id.*

Similarly, in *Hubbard*, the court held that plaintiffs adequately alleged that defendants' conduct "constituted a highly offensive intrusion into an area where Plaintiffs maintained a reasonable expectation of privacy" due to two "plus factors." 2025 WL 82211, at *3–4; *see also McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1035 (N.D. Cal. 2019). First, plaintiffs alleged that Google "*targeted* children" in a way that

"extend[ed] beyond routine behavior that merely 'happens' to impact children in some instances." 2025 WL 82211, at *4 (emphasis added) (citation omitted). Second, plaintiffs alleged that Google "*knew* it was collecting *children's* data through YouTube in violation of the COPPA" because Google had been notified of "concerns that YouTube did not comply with the COPPA" and Google "understood that young children regularly used YouTube." *Id.* at *5 (emphases added) (citations omitted).

Here, as in *Hubbard* and *Turner*, Plaintiffs have sufficiently alleged highly offensive conduct, based on TikTok's targeting of children, ECF No. 94 ¶¶ 89–99, and knowingly violating COPPA. TikTok hosts and promotes accounts that feature content from children's brands, child models, child influencers, and more. *Id.* ¶¶ 92, 94. Plaintiffs further allege that TikTok knew it was collecting children's data in violation of COPPA after a 2019 settlement with the FTC. *Id.* ¶ 8. Plaintiffs cite TikTok's failure to delete underage accounts, *id.* ¶¶ 155–57, and that TikTok ignored parents' requests to delete child users' data, *id.* ¶¶ 132–43. And TikTok had actual knowledge that it was collecting, storing and using the Private Information of children, *id.* ¶¶ 152–63, yet failed to comply with its COPPA obligations, *id.* ¶¶ 144–51, 156–57.

Defendants cite *Hammerling* for the proposition that "data collection and disclosure to third parties that is 'routine commercial behavior'" is not highly offensive. ECF No. 104-1 at 22 (citing *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1089 (N.D. Cal. 2022)). But *Hammerling* dealt with *adults* and did not address the collection of children's information or raise a violation of COPPA.

*In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262 (3d Cir. 2016), and *Manigault-Johnson v. Google, LLC*, No. 2:18-cv-1032-BHH, 2019 WL 3006646 (D.S.C. Mar. 31, 2019), likewise do not support TikTok's position. In those cases, there were no "plus factors" as there are here. The court in *Nickelodeon* allowed plaintiffs' invasion-of-privacy claim to proceed based on one defendant's "duplicitous tactics" regarding its collection of children's information. 827 F.3d at 295. And in *Manigault-Johnson*, the plaintiffs "fail[ed] to show that Defendants' alleged intrusion in any way

harmed or injured Plaintiffs"—unlike here, where Plaintiffs allege that they suffered harm to their privacy and economic interests when TikTok collected and misused their Private Information for its own financial benefit. *Cf.* 2019 WL 3006646, at *6 ("Plaintiffs allege no *facts* to support their alleged harm").

\*   \*   \*

At bottom, the crux of Defendants' challenge to Plaintiffs' privacy claims is a factual dispute. Contrary to what is alleged in the Consolidated Complaint, Defendants contend that the expectation of privacy is unreasonable, and the data collection inoffensive. Now is not the time to resolve these disputes. *See Hubbard*, 2025 WL 82211, at *4; *Facebook Tracking*, 956 F.3d at 606. Because "'each case must be taken on its facts' on the question of offensiveness," plaintiffs are entitled to develop an adequate factual record. *McDonald*, 385 F. Supp. 3d at 1035–36 (quoting *Shulman v. Group W Productions, Inc.*, 955 P.2d 469, 494 (Cal. 1998)); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 631 (N.D. Cal. 2021).

## 2. Plaintiffs sufficiently allege a claim under the New York Civil Rights Law ("NYCRL").

As Defendants acknowledge, "the right to privacy is governed exclusively by [S]ections 50 and 51 of the [New York] Civil Rights Law." *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 123 (N.Y. 1993); *see also Walker v. Thompson*, 404 F. Supp. 3d 819, 824 (S.D.N.Y. 2019).

Defendants only challenge the third element of this claim—that Plaintiffs' information was used for "advertising or trade." ECF No. 104-1 at 24–25. But Plaintiffs allege that "TikTok used the identities, photographs, likenesses, and personal information of the New York Plaintiffs or members of the New York Class in connection with its business for the purposes of trade," specifically "to build profiles and target advertisements to those children." ECF No. 94 ¶ 782. By using Plaintiffs' data in this way, TikTok profited greatly. *See id.* ¶ 783. These allegations demonstrate that Plaintiffs' Private Information "'would draw trade to the firm' or 'use for the

purpose of making profit.'" *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 314 (S.D.N.Y. 2010) (citations omitted); *see also In re Clearview AI, Inc., Consumer Priv. Litig.*, 585 F. Supp. 3d 1111, 1130 (N.D. Ill. 2022).

Defendants' narrow reading is not supported by case law. First, Defendants omit the key "admonition" in *Curtis v. City of New York* (ECF No. 104-1 at 24–25) that the NYCRL is "to be strictly limited to *nonconsensual commercial appropriations of the name, portrait or picture of a living person*." 195 N.Y.S.3d 592, 598 (N.Y. Sup. Ct. 2023) (emphasis added). That is exactly what Plaintiffs allege here. Second, the claims in *Smith v. Chase Manhattan Bank*, 741 N.Y.S.2d 100 (N.Y. App. Div. 2002) were dismissed for failure to allege "actual injury." *Id.* at 102; ECF No. 104-1 at 25. Here, Plaintiffs allege they were injured by Defendants' data collection. *See infra* Section D.

**D.    Plaintiffs sufficiently allege their unfair-competition claims.**

As an initial matter, courts recognize that users of online technology (like TikTok) have a property interest in their personal information, and thus, that personal information is an asset with economic value. The Ninth Circuit held that the plaintiffs sufficiently alleged "entitlement to Facebook's profits from users' personal data" where plaintiffs alleged that "their browsing histories carry financial value." *Facebook Tracking*, 956 F.3d at 600. To establish this value, plaintiffs pointed to "a study that values users' browsing histories at $52 per year, as well as research panels that pay participants for access to their browsing histories." *Id.* Plaintiffs also alleged that "Facebook profited from this valuable data" because it "sold user data to advertisers in order to generate revenue"—ad sales that "constituted over 90% of the social media platform's revenue" during the relevant period. *Id.*; *see also CTC Real Est. Servs. v. Lepe*, 44 Cal. Rptr. 3d 823, 825 (Cal. Ct. App. 2006) (holding that "[a] person's identifying information is a valuable asset").

In addition, courts have held that diminishment of an individual's property interest in their personal information and the lost value of that information constitute economic injury under the UCL and other state consumer-protection acts. *See, e.g.*,

*Turner*, 737 F. Supp. 3d at 881–82 (finding economic injury where plaintiffs could "no longer realize the full economic value of their Personal Information" due to Google's collection and use of children's personal information in violation of COPPA); *Calhoun*, 526 F. Supp. 3d at 636 ("[T]he Ninth Circuit and a number of district courts, including this Court, have concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had standing."); *Brown v. Google LLC*, No. 20-CV-03664-LHK, 2021 WL 6064009, at *15–16 (N.D. Cal. Dec. 22, 2021) (holding plaintiffs alleged "at least two cognizable theories of economic injury" from Google's data collection and monetization practices).[6]

### 1. Plaintiffs sufficiently allege multiple cognizable theories of concrete economic injury.

#### a. Loss of Control Over Personal Information

Plaintiffs allege that TikTok collected a broad range of personal information from children under 13 without consent, on TikTok and other online platforms, and ignored both parental deletion requests and accounts flagged by its own systems as underage. *See* ECF No. 94 ¶¶ 73–75, 96–97, 99, 132–51. These allegations establish a loss of control of personal information.[7]

Defendants contend that Plaintiffs do not allege "that any of their parents attempted to regain 'control' of their personal data by submitting a deletion request." ECF No. 104-1 at 27. But none of the statutes invoked by Plaintiffs require this step— and notably, Defendants cite no such requirement. Equally meritless is Defendants'

---

[6] *See also In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *13–14 (N.D. Cal. Aug. 30, 2017); *In re Experian Data Breach Litig.,* No. SACV 15-1592 AG (DFMx), 2016 WL 7973595, at *5 (C.D. Cal. Dec. 29, 2016); *In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*, No. 2:23-CV-01447-ART-BNW, 2025 WL 2393024, at *5 (D. Nev. Aug. 15, 2025).

[7] Defendants' sole case, *Claridge v. RockYou, Inc.,* 785 F. Supp. 2d 855 (N.D. Cal. 2011), is inapposite. There, because "plaintiff's PII—e.g., his login and password information—did not cease to belong to him, or pass beyond his control," the court found no UCL injury. *Id.* at 862-63. Notably, unlike here, there were no allegations that such information could be monetized by the plaintiff. *See* ECF No. 94 ¶¶ 212–14.

14

broad contention that a loss-of-control theory fails because "economic injury . . . is required to state a claim." *Id.* As Defendants acknowledge, the unfair-competition statutes require "ascertainable loss of money or property." *Id.* at 26 & n.19. Plaintiffs have alleged a cognizable injury through the loss of control of their Private Information. *See infra* Section D.3.

**b.    Loss of and/or Diminishment in Value of Personal Information**

Under a "diminished value" theory, Plaintiffs allege concrete economic injury because their Private Information has value on the marketplace, and they either "attempted or intended to participate" in the market or otherwise "derive economic value from their [personal information]." *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1024 (N.D. Cal. 2024); *see also Turner*, 737 F. Supp. 3d at 881–82.

Defendants contend Plaintiffs' complaint is "devoid" of concrete allegations of loss of and/or diminishment of value of their Private Information or that "Defendants' alleged conduct caused any diminishment in value." ECF No. 104-1 at 29. But this is demonstrably false. Plaintiffs allege that "Private Information and Kids Mode Private Information are assets that have economic value," *see* ECF No. 94 ¶¶ 212–26, and that TikTok enriched itself by monetizing children's data through targeted advertising, *see id.* ¶¶ 76–88. Defendants cite cases where courts indeed recognized these allegations are sufficient to plead economic injury under the UCL but found that plaintiffs in those cases failed to do so.[8] And Defendants' argument that Plaintiffs' personal information has no independent economic value (*see* ECF No. 104-1 at 29–30) has been rejected. *See Brown,* 2021 WL 6064009, at *15; *Calhoun,* 526 F. Supp. 3d at 636; *Turner,* 737 F. Supp. 3d at 882–83.

Defendants also claim that the studies cited by Plaintiffs to bolster their harm allegations (*see* ECF No. 94 ¶¶ 216–26) are irrelevant because the sale of children's data would be "impermissible under COPPA." ECF No. 104-1 at 29. But the illegality of the practice does not negate the value of the information; it underscores it. As Plaintiffs

---

[8] *See, e.g., Wesch v. Yodlee, Inc.*, No. 20-cv-05991-SK, 2021 WL 6206644, at *4–5 (N.D. Cal. July 19, 2021); *Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 978 (C.D. Cal. 2023); *Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 730 (N.D. Cal. 2014).

15

allege, TikTok profited enormously by exploiting children's personal information precisely because of its market value. ECF No. 94 ¶¶ 227–34.

### c. Benefit of the Bargain

Defendants argue that Plaintiffs' benefit-of-the-bargain theory fails because Plaintiffs "never paid for their use of the TikTok platform." ECF No. 104-1 at 30–31. But Plaintiffs allege that they paid with their data and attention—the very commodities TikTok monetizes. *See* ECF No. 94 ¶¶ 76–88. As the court found in *Brown*, the benefit-of-the-bargain theory applies to plaintiffs "who have provided valuable data to [Defendants] and have received *no* money in return." 2021 WL 6064009, at \*17; *see Meta Pixel,* 724 F. Supp. 3d at 1024. This occurs where "a user transacts with a business or other entity and their expectations regarding their personal data are not met as a result of conduct alleged to violate the UCL." *Meta Pixel*, 724 F. Supp. 3d at 1024. The plaintiff therefore had to "surrender . . . more, or acquire . . . less" than they otherwise would have in the transaction. *Id.* (citation omitted).

Defendants also assert that "any purported 'bargain' was likely based on Plaintiffs' misrepresentation"—namely, that Plaintiffs lied about their age. ECF No. 104-1 at 31. As Plaintiffs have alleged, however, TikTok induced children to bypass age restrictions and then harvested their data without parental consent. ECF No. 94 ¶¶ 89–95, 103–22, 179–97. After creating what is effectively an attractive nuisance, TikTok cannot now reasonably suggest that the very children they enticed into the adult experience on its platform are also the ones to blame.[9]

### d. Right to Exclude

Under a "right to exclude" theory, plaintiffs allege concrete economic injury where a plaintiff's right to exclude a company from access to their personal information is violated, constituting the diminishment of a "present or future property interest."

---

[9] *See, e.g.*, ECF No. 94 ¶ 516 ("Defendants each took advantage of the lack of knowledge, ability, experience, and/or capacity of consumers—in this case children under 13 years old—to their detriment.").

*Meta Pixel*, 724 F. Supp. 3d at 1024–25. Numerous courts have recognized a property interest in personal information. *See supra* Section D.1. And Plaintiffs have plausibly alleged that Defendants deprived Plaintiffs of their right to exclude others from accessing their Private Information: after TikTok appropriated unique identifiers such as faceprints, voiceprints, and persistent device identifiers—which are inherently exclusive and were not voluntarily shared—Plaintiffs could not exclude others from them. ECF No. 94 ¶¶ 72–75, 212–26. Plaintiffs' Private Information is therefore "sufficiently definite to establish a property right." ECF No. 104-1 at 32.

Defendants also wrongly contend that Plaintiffs' "right to exclude" theory of harm is not cognizable because "no such property right exists" in their Private Information. *See* ECF No. 104-1 at 31–32. But this form of economic harm was upheld in *Meta Pixel*, *see* 724 F. Supp. 3d at 1025, and TikTok's argument was expressly rejected in *Brown*, *see* 2021 WL 6064009, at *16. *See also Calhoun*, 526 F. Supp. 3d at 635–36. Defendants' citation to *Best Carpet Values, Inc. v. Google LLC*, 90 F.4th 962, 969 (9th Cir. 2024), is inapposite: there, the court considered the right to exclude fair use of website copy, not personal information prohibited from collection by statute.

## 2. Plaintiffs sufficiently allege economic injury under California's Unfair Competition Law ("UCL").

To establish standing under the UCL, "a plaintiff must make a twofold showing: he or she must demonstrate injury in fact and a loss of money or property caused by unfair competition." *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *29 (N.D. Cal. May 27, 2016) (quoting *Susilo v. Wells Fargo Bank, N.A.*, 796 F. Supp. 2d 1177, 1195–96 (C.D. Cal. 2011)).

As discussed above, *see supra* Section D.1, courts have recognized that diminished value of an individual's personal information constitutes economic injury under the UCL. *See, e.g.*, *Calhoun*, 526 F. Supp. 3d at 636; *Brown*, 2021 WL 6064009, at *15–16; *Turner*, 737 F. Supp. 3d at 881–82. While it is true that district courts within the Ninth Circuit have come to differing conclusions about whether the

misappropriation and exploitation of personal information satisfies the standing requirements of the UCL, *see Griffith*, 697 F. Supp. 3d at 976–78 (collecting cases), courts that decline to recognize standing have done so based on a misreading of *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877 (Cal. 2011). Conversely, courts have correctly held that "there is no precedent that suggests that economic injury has a different meaning in the UCL context than it does in the Article III context," and thus, "cases discussing economic injury in the context of Article III have full application to a court's analysis of UCL standing." *Brown*, 2021 WL 6064009, at *16–17 (cleaned up).

In *Brown*, for example, the plaintiffs alleged that there was an "active market" to "monetize" the data, and that plaintiffs could quantify its "value." 2021 WL 6064009, at *15. These allegations established "at least two cognizable theories of economic injury." *Id.* First, "had [p]laintiffs been aware of Google's data collection, they would have demanded payment for their data." *Id.* (citation omitted). Second, "because there are several browsers and platforms willing to pay individuals for data," Google "diminished [p]laintiffs' future property interest." *Id.* (cleaned up) (citation omitted), *aff'd at summary judgment*, *Brown v. Google LLC*, 685 F. Supp. 3d 909, 942 (N.D. Cal. 2023); *see also Turner*, 737 F. Supp. 3d at 881–82 (finding diminished value because plaintiffs could "no longer realize the full economic value of their Personal Information") The fact that plaintiffs did not pay to use TikTok does not foreclose economic injury under the UCL. *See Turner*, 737 F. Supp. 3d at 881–82; *see also Brown*, 2021 WL 6064009, at *15–17; *Calhoun*, 526 F. Supp. 3d at 636; *Meta Pixel*, 724 F. Supp. 3d at 1024; *Guy v. Convergent Outsourcing, Inc.,* No. C22-1558 MJP, 2023 WL 4637318, at *10 (W.D. Wash. July 20, 2023) ("Plaintiffs['] . . . PII has lost value by virtue of the breach," which "is an economic injury sufficient under the UCL.").[10]

Plaintiffs' allegations align with those sustained in *Brown* and *Turner*. *See, e.g.*, ECF No. 94 ¶ 220 (cash value of PI can be quantified, with one study placing a value in

---

[10] Further, though Defendants have given short shrift to discussion of Article III standing (if any, for that matter), for all the reasons Plaintiffs have established economic injury, they have also established Article III standing.

excess of $200 on an individual's PI and valuing web browsing histories at $52/year);
*id.* ¶¶ 223–24 (platforms allow consumers to directly monetize their own data and
prevent tech companies from targeting them absent their express consent); *id.* ¶¶ 215–
18, 223–25 (PI has financial value, which companies can monetize); *id.* ¶¶ 212–14,
233–34, 519–23, 935–38 (Plaintiffs suffered "benefit-of-the-bargain" damages; right to
exclude; the loss of the value and/or diminishment in value; and the loss of the ability to
control use of PI).

### 3. Plaintiffs sufficiently allege losses under the consumer protection laws of Connecticut, Florida, Georgia, Missouri, Pennsylvania, and Washington.

***Connecticut Unfair Trade Practices Act ("CUTPA")*.** Plaintiffs allege that
Defendants' acts and practices have caused Plaintiffs "to suffer losses of money and
property." ECF No. 94 ¶ 590. Both loss-of-control and loss-of-value theories are
cognizable harms under CUTPA, which is broad enough that "'[w]henever a consumer
has received something other than what he bargained for, he has suffered a loss of
money or property.'" *In re Solara Med. Supplies, LLC Customer Data Sec. Breach
Litig.*, 613 F. Supp. 3d 1284, 1304–05 (S.D. Cal. 2020) (quoting *Hinchliffe v. American
Motors Corp.*, 440 A.2d 810, 814 (Conn. 1981)) (finding violation of CUTPA arising
out of allegations of compromised Personal Information); *see also In re Moveit
Customer Data Sec. Breach Litig.*, No. 23-md-3083-ADB-PGL, 2025 WL 2176590, at
*24–25 (D. Mass. July 31, 2025).

***Florida Deceptive and Unfair Trade Practices Act ("FDUPTA")*.** Plaintiffs
allege loss of control (ECF No. 94 ¶ 612) and loss of value (*id.* ¶¶ 612–14) of Private
Information, which are sufficient allegations under FDUTPA. *See Turner*, 737 F. Supp.
3d at 883. Defendants assert that the "value of [plaintiffs'] personal information" is
insufficient to sustain FDUTPA claim. *See* ECF No. 104-1 at 28 (citing *In re Sony
Gaming Networks & Customer Data Sec. Breach Litig.,* 996 F. Supp. 2d 942, 992–93
(S.D. Cal. 2014)). But even if Plaintiffs did not suffer economic injury, their FDUTPA

19

1    claim still survives because "[i]n the absence of actual damages, the FDUTPA permits

2    any 'aggrieved party' to pursue injunctive relief." *Farmer v. Humana, Inc.,* 582 F. Supp.

3    3d 1176, 1191 (M.D. Fla. 2022) (quoting *In re Am. Med. Collection Agency, Inc.*

4    *Customer Data Sec. Breach Litig.*, No. 19-md-2904, 2021 WL 5937742, at *29 (D.N.J.

5    Dec. 16, 2021)).

6        ***Georgia Fair Business Practices Act ("GFBPA").*** Defendants concede that the

7    GFBPA does not require economic injury. *See* ECF No. 104-1 at 26. The GFBPA's

8    measure of damages is "actual injury suffered." *Williams v. Jet One Jets, Inc.,* 755 F.

9    Supp. 2d 1281, 1289 (N.D. Ga. 2010) (quoting *Small v. Savannah Int'l Motors, Inc.*,

10   619 S.E.2d 738, 743 (Ga. Ct. App. 2005)). This broadly includes "relief *other* than the

11   refund of the purchase price and restitution." *Id.* (emphasis added). Even "emotional

12   distress is an actual injury resulting in actual damages, and proof of that injury can

13   support an award of actual damages." *Brown v. MedScope Am. Corp.*, No. 4:21-CV-71

14   (CDL), 2024 WL 666495, at *1 (M.D. Ga. Feb. 16, 2024) (citing *Cross v.*

15   *Equityexperts.org, LLC*, 2021 WL 5279412 at *9 (11th Cir. 2021)).

16       ***Missouri Merchandising Practices Act ("MMPA").*** Plaintiffs allege loss of control

17   (ECF No. 94 ¶ 770) and loss of value (*id.* ¶¶ 770–772) under the MMPA. "In Missouri,

18   courts use the 'benefit of the bargain' rule to determine whether an ascertainable loss

19   occurred under the statute." *In re Fawcett,* 664 B.R. 748, 780 (Bankr. E.D. Mo. 2024)

20   (citing *Vitello v. Natrol, LLC*, 50 F.4th 689, 693 (8th Cir. 2022)); *Sunset Pools of St. Louis,*

21   *Inc. v. Schaefer*, 869 S.W.2d 883, 886 (Mo. Ct. App. 1994)). This rule "awards a prevailing

22   party the difference between the value of the product as represented and the actual value of

23   the product as received." *Vitello*, 50 F.4th at 693 (citation omitted).

24       ***Pennsylvania Unfair Trade Practices and Consumer Protection Law***

25   ***("UTPCPL")***. Plaintiffs allege loss of control (ECF No. 94 ¶ 880) and loss of value (*id.*

26   ¶¶ 880–882) under the UTPCPL. "Pennsylvania courts have found that the lost benefit

27   of the bargain can satisfy the 'ascertainable loss' element of a UTPCPL claim." *In re*

28   *Solara*, 613 F. Supp. 3d at 1308 (citing *Dibish v. Ameriprise Fin., Inc.,* 134 A.3d 1079,

1089 (Pa. Super. Ct. 2016)). Plaintiffs may properly allege an ascertainable loss in the diminution in value or loss of control of their personal information. *Id.*; *see also Opris v. Sincera Reprod. Med.,* No. CV 21-3072, 2022 WL 1639417, at *8, *13 (E.D. Pa. May 24, 2022) (citations omitted).

*Washington Consumer Protection Act ("WCPA")*. Plaintiffs allege "benefit-of-the-bargain" injuries (ECF No. 94 ¶¶ 935–36) and "right to exclude" injuries (*id.* ¶¶ 937–38). These are recognized injuries under the WCPA. *See, e.g.*, *Guy*, 2023 WL 4637318, at *8 ("Plaintiffs have alleged an injury from the lost value of the PII and this satisfies both the CPA element and Article III standing . . . ."); *see also In re Mednax Svcs., Inc. Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1217–18 (S.D. Fla. 2022); *Castillo v. Costco Wholesale Corp.,* No. 2:23-cv-01548-JHC, 2024 WL 4785136, at *8 (W.D. Wash. Nov. 14, 2024); *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-cv-02865-EMC, 2024 WL 1589982, at *36 (N.D. Cal. Apr. 11, 2024).

**E.    Plaintiffs sufficiently allege their unjust enrichment claims.**

Plaintiffs plead unjust enrichment claims for disgorgement of gains realized by unlawfully collecting and profiting from Plaintiffs' Private Information in violation of COPPA. Each of Defendants' arguments are without merit.

**1.    Plaintiffs sufficiently allege that Defendants earned unjust profits.**

Defendants argue that "Plaintiffs have not plausibly alleged that Defendants were unjustly enriched *at Plaintiffs' expense* because they have not alleged that their data has any value that Defendants caused them to lose." ECF No. 104-1 at 33 (emphasis in original). Although unclear, it appears that Defendants are arguing that Plaintiffs fail to show that data from children under age 13 has any value. But Defendants ignore pages of the Consolidated Complaint that allege just this. *See, e.g.*, ECF No. 94 ¶¶ 212–34. Advertisers pay TikTok billions of dollars to leverage this and other data about users collected by TikTok. *Id.* ¶¶ 86–87. At this stage, it is not necessary for Plaintiffs to specify the exact value of the data, which will be subject to expert testimony and evidentiary discovery. Even if Defendants take the unlikely position that the data they

illegally harvest has no value, this is inconsistent with the Consolidated Complaint and is a factual dispute that cannot be resolved now.

Defendants also appear to argue that unjust profits earned by Defendants must come directly out of Plaintiffs' pockets to be actionable. Yet Defendants concede that some jurisdictions, including California, "recognize[] a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss." *Facebook Tracking*, 956 F.3d at 599–600 (citations omitted); ECF No. 104-1 at 33 n.23. Further, where "the enrichment of the defendant would be unjust" but "the plaintiff has not suffered a corresponding loss or, in some cases, any loss, . . . [t]he defendant may be under a duty to give to the plaintiff the amount by which [the defendant] has been enriched." *Cnty. of San Bernardino v. Walsh*, 69 Cal. Rptr. 3d 848, 856 (Cal. App. 2d Dist. 2007) (quoting Restatement (First) of Restitution § 1, cmt. e), *as modified on denial of reh'g* (Jan. 25, 2008), *as modified* (Jan. 28, 2008); Restatement (Third) of Restitution and Unjust Enrichment § 1, cmt. a; *id.* § 3, cmt. a ("[T]here can be restitution of wrongful gain in cases where the plaintiff has suffered an interference with protected interests but no measurable loss whatsoever."). Plaintiffs have only pursued this claim on behalf of the 44 states where the law is sufficiently similar to be grouped under the multistate unjust enrichment class. *See* ECF No. 94 ¶¶ 409–10. And Defendants do not identify any states where the law is different.

Next, Defendants fault Plaintiffs for purportedly failing to allege any "distinct injuries for their unjust enrichment claims." ECF No. 104-1 at 34. According to Defendants, to have "standing" Plaintiffs must allege facts showing that the illegally harvested information had "value" that "Plaintiffs lost." *Id.* But again, the Consolidated Complaint articulates exactly why the information has value and how the value was lost. *See* ECF No. 94 ¶¶ 215–25, 229, 231 (describing "the market for personal information" and ways in which value can be calculated); *id.* ¶¶ 212–14 (describing a "loss of control" over personal information). Defendants cannot defeat standing by willfully ignoring the well-pled allegations of the Consolidated Complaint. *See Facebook Profile*, 402 F. Supp.

3d at 803 ("[E]ven if the plaintiffs suffered no economic loss from the disclosure of their information, they may proceed at this stage on a claim for unjust enrichment to recover the gains that [the defendant] realized from its allegedly improper conduct.").

Last, Defendants suggest that "California does not recognize a cause of action for unjust enrichment." ECF No. 104-1 at 33 n.24 (citation omitted). This is wrong. Although not uniform, many courts allow a distinct claim for unjust enrichment. *See Love & War, LLC v. Wild Bunch A.G.,* No. CV18-3773-DMG, 2018 WL 7501286, at *5 (C.D. Cal. Dec. 21, 2018). Likewise, the Ninth Circuit has not provided clarity on this question for district courts.[11]

Thus, the relevant question is not the academic one raised by Defendants over whether unjust enrichment is a stand-alone claim, but whether the factual allegations in the Consolidated Complaint adequately allege that Defendants were unjustly enriched as a result of their conduct. Here, the answer to this question is yes. "Regardless of the labels attached by the pleader to any alleged cause of action, the court examines the factual allegations of the complaint, to determine whether they state a cause of action on any available legal theory." *Kamen v. Lindly*, 114 Cal. Rptr. 2d 127, 130 (Cal. Ct. App. 2001); *see also Astiana*, 783 F.3d at 762 (concluding that "unjust enrichment" claims in California are "synonymous with 'restitution'" and underlie a claim where the "defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request'").

### 2. Plaintiffs sufficiently allege that Defendants unjustly retained a benefit.

Defendants contend that the Consolidated Complaint fails to plausibly allege that Defendants "obtained unjustly earned profits from Plaintiffs." ECF No. 104-1 at 35. While again not entirely clear, Defendants appear to argue that Plaintiffs must allege

---

[11] *Compare Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 684 (9th Cir. 2009) ("Unjust enrichment is commonly understood as a theory upon which the remedy of restitution may be granted. California's approach to unjust enrichment is consistent with this general understanding"), *with Astiana v. Hain Celestial Grp., Inc*., 783 F.3d 753, 762 (9th Cir. 2015) ("[I]n California, there is not a standalone cause of action for 'unjust enrichment.'").

23

more specific facts about how Defendants profited from the data they harvested from Plaintiffs. But here again Defendants ignore numerous allegations to this effect in the Consolidated Complaint. *See* ECF No. 94 ¶¶ 1, 3, 87, 96–102, 122, 151, 207–08, 227–28, 232–39. At this early stage of the case, Plaintiffs are not required to specifically allege the amount of their damages. What matters is that Plaintiffs allege in sufficient detail that their data was harvested illegally by Defendants, that the data has value, and that the means by which the data was acquired were unjust. *See id.*

Plaintiffs' allegations are at least as strong as those in other cases where unjust enrichment claims were upheld against social media companies for unlawfully harvesting data. *See, e.g.*, *Turner*, 737 F. Supp. 3d at 885 ("[P]laintiffs have adequately pleaded that defendants were unjustly enriched by collecting plaintiffs' personal information and employing it to target advertisements to children."); *Facebook Profile*, 402 F. Supp. 3d at 803 (denying motion to dismiss unjust enrichment claim for the sharing of users' personal information with third parties).

Defendants' cited cases are inapt. *See Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1133 (N.D. Cal. 2009) (dismissing unjust enrichment claim that "merely incorporates the other facts of the [complaint] by reference and makes a conclusory allegation"); *Coffee v. Google, LLC*, No. 20-cv-03901-BLF, 2022 WL 94986, at *11 (N.D. Cal. Jan. 10, 2022) (dismissing unjust enrichment claim where plaintiffs alleged that they received exactly what they paid for through the Google Play Store and did not allege that Google was involved in or profited from alleged transactions). Here, Plaintiffs' allegations are more detailed and directly implicate Defendants' conduct.

## F. Plaintiffs sufficiently allege their negligence claims.

Finally, Defendants claim Plaintiffs fail to allege facts showing they sustained an appreciable, nonspeculative, and present injury. *See* ECF No. 104-1 at 35–36. But Plaintiffs allege that Defendants violated COPPA by collecting their Private Information and that this, in turn, violated their privacy and caused the loss of control over their Private Information. ECF No. 94 ¶¶ 492, 564, 646, 683, 744, 817, 854, 915. These

allegations are more than sufficient to plead an injury. *See Doe v. N. Cal. Fertility Ctr.*,
No. 22-cv-01861-DAD-JDP, 2024 WL 246178, at *5 n.4 (E.D. Cal. Jan. 23, 2024)
(finding the injuries underlying negligence, invasion of privacy, CMIA, and UCL
claims were all based on the "same harm that forms the basis for the tort of intrusion
upon seclusion" and provided the plaintiff with "standing with respect to each of her
claims"); *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 491–92 (9th Cir.
2019) (acknowledging the release of highly personal information can both violate
FCRA and be the basis of an intrusion-upon-seclusion claim).

Further, alleging that targeting children with a website that will collect their data
in violation of COPPA is sufficient to allege a privacy injury, which underlies Plaintiffs'
negligence claims. *See Hubbard*, 2025 WL 82211, at *4–5; *Turner*, 737 F. Supp. 3d at
884 (finding that "surreptitiously collecting data from minors under the age of 13 after
representing [] apps were child-directed" violated COPPA and that a violating federal
law is sufficiently "egregious" to make out a claim for intrusion upon seclusion); *N.
Cal. Fertility Ctr.*, 2024 WL 246178, at *5 n.4. Moreover, this injury is neither
speculative nor a future harm, since Defendants already collected Plaintiffs' data in
violation of COPPA.

Defendants' remaining cites are inapposite. Plaintiffs need not identify present or
future risks that their data will be misused because this is not a data breach case. *See In
re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942,
963 (S.D. Cal. 2012) (noting that a data breach case requires specific statements of
misused data like opening a bank account). Instead, the collection of children's private
information in the first instance—in violation of COPPA—is the harm. *See Hubbard*,
2025 WL 82211 at *4–5; *Turner*, 737 F. Supp. 3d at 884. For example, *In re iPhone
Application Litigation* involved the collection of device identifiers, personal data, and
geolocation information from *adult* iPhone users, not an alleged COPPA violation for
collecting information from *children*. *See* 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012).

Similarly, Defendants complain that Plaintiffs do not allege an economic injury. *See* ECF No. 104-1 at 36. But the Private Information TikTok collected represents assets that have economic value and Defendants have been enriched by taking possession of and misusing this information. *See* ECF No. 94 ¶¶ 212–34; *Facebook Tracking*, 956 F.3d at 600 (finding standing where plaintiffs alleged their browsing histories "carry financial value," pointed to studies on the value of browsing history data, and alleged that Facebook sold this data to advertisers to generate revenue).

## V.    CONCLUSION

For all the above reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss.

DATED this 29th day of September, 2025.

KELLER ROHRBACK L.L.P.


By */s/ Derek W. Loeser*
    Derek W. Loeser (*pro hac vice*)
    dloeser@kellerrohrback.com
    Cari Campen Laufenberg (*pro hac vice*)
    claufenberg@kellerrohrback.com
    1201 Third Avenue, Suite 3400
    Seattle, WA 98101
    (206) 623-1900, Fax (206) 623-3384

    *Interim Lead Counsel*



COHEN MILSTEIN SELLERS AND TOLL PLLC


By: */s/ Eric A. Kafka*
    Eric A. Kafka (*pro hac vice*)
    ekafka@cohenmilstein.com
    Cohen Milstein Sellers and Toll PLLC
    88 Pine Street, 14th Floor

New York, NY 10005
212-838-7797
212-838-7745 (fax)

*Interim Lead Counsel*

SILVER GOLUB & TEITELL LLP


Steven L. Bloch (*pro hac vice*)
sbloch@sgtlaw.com
One Landmark Square, 15th Floor
Stamford, Connecticut 06901
Telephone: (203) 325-4491

*Executive Committee*

1

2

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-4.3.4(a)(2)

3

4    I, Derek W. Loeser, attest that all other signatories listed, and on whose behalf the

5    filing is submitted, have concurred in the filing's content and have authorized the e-

6    filing of the foregoing document in compliance with Local Rule 5-4.3.4(a)(2).

7

8    Executed this 29th day of September, 2025, at Seattle, Washington.

9

10                          */s/ Derek W. Loeser*_____
                            Derek W. Loeser

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 8,997 words, which [choose one]:

___ complies with the word limit of L.R. 11-6.1.

<u>X</u>  complies with the word limit set by court order dated August 25, 2025.

Executed this 29th day of September, 2025, at Seattle, Washington.

*/s/ Derek W. Loeser*
Derek W. Loeser

1

## CERTIFICATE OF SERVICE

2      I, Sarah Skaggs, hereby certify that on September 29, 2025, I electronically filed

3 the foregoing with the Clerk of the United States District Court for the Central District

4 of California using the CM/ECF system, which shall send electronic notification to all

5 counsel of record.

6                   */s/ Sarah Skaggs*

                  Sarah Skaggs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28