Derek W. Loeser (*pro hac vice*)
dloeser@kellerrohrback.com
Cari Campen Laufenberg (*pro hac vice*)
claufenberg@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101
(206) 623-1900, Fax: (206) 623-3384

Eric Kafka (*pro hac vice*)
ekafka@cohenmilstein.com
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
(212) 838-7797, Fax: (212) 838-7745

*Interim Lead Counsel*

Steven Bloch (*pro hac vice*)
sbloch@sgtlaw.com
**SILVER GOLUB & TEITELL LLP**
One Landmark Square, 15th Floor
Stamford, CT 06901
(203) 325-4491
sbloch@sgtlaw.com

*Executive Committee*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| IN RE: TIKTOK, INC., MINOR PRIVACY LITIGATION | MDL NO. 3144 <br><br> 2:25-ml-03144-GW-RAO <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO COMPEL PRODUCTION OF EXEMPLAR DATA FOR PURPOSES OF PRESERVATION DISPUTE** <br><br> Hon. George H. Wu <br> Hearing Date: November 6, 2025 <br> Time: 8:30 am <br> Courtroom: 9D |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................1

II.     FACTUAL BACKGROUND ...............................................................1

        A.      The Court ordered TikTok to preserve user data. ...............1

        B.      The Court ordered the Parties to negotiate production of
                named Plaintiff data. ...........................................................3

        C.      TikTok demanded that Plaintiffs sign broad consent forms or
                TikTok would otherwise delete Plaintiffs' data. ...............5

        D.      TikTok now contends that this Court does not have the
                authority to require TikTok to preserve COPPA-protected
                data. .....................................................................................7

III.    ARGUMENT........................................................................................7

        A.      TikTok must preserve the named Plaintiffs' data. .............7

                1.      Data that TikTok collects and uses about the named
                        Plaintiffs is at the core of the case. ..........................8

                2.      COPPA does not override TikTok's preservation
                        obligations. ...............................................................10

        B.      TikTok should immediately produce exemplar data for the
                named Plaintiffs and 34 randomized additional users, as well
                as a data dictionary or other documentation to decipher the
                data. .....................................................................................12

IV.     CONCLUSION ..................................................................................14

## I.    INTRODUCTION

For almost six months, Plaintiffs have pressed TikTok to comply with its obligation to preserve the data that lies at the heart of this case. In July, ████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████

Yet, TikTok has repeatedly shifted its position—first claiming that it needed to investigate technological feasibility, then insisting that it would preserve data only if parents signed sweeping "consent" forms, and now asserting for the first time that the Court lacks authority to order preservation of data subject to the Children's Online Privacy Protection Act ("COPPA"). These evolving and contradictory positions have obstructed preservation efforts and contravened the Court's prior orders. At bottom, TikTok's position is that COPPA is a self-defeating statute, turning a law intended to protect children's privacy into a shield to protect corporations who violate COPPA from having to preserve evidence of their misconduct. TikTok's self-serving distortion of COPPA should be rejected.

Plaintiffs now move to compel TikTok to preserve and produce the data associated with the named Plaintiffs and 34 random users, along with a data dictionary or other documentation necessary to decipher the data. After months of delay, inconsistency, and noncompliance, judicial intervention is necessary to ensure that critical evidence is not destroyed. Once this information is produced, the Parties finally will be in a position to have a meaningful and productive conversation about precisely what data TikTok must preserve for this litigation.

## II.    FACTUAL BACKGROUND

### A.    The Court ordered TikTok to preserve user data.

From the very beginning of this litigation, TikTok has failed to meet its preservation obligations. In the Parties' April 24, 2025, Joint Status Report, TikTok

argued that they were prohibited by COPPA from preserving underage TikTok accounts and, "*[a]bsent an order by this Court*, Defendants do not intend to modify their existing account deletion practices." ECF No. 10 at 6:13–7:7 (emphasis added). Plaintiffs disagreed, arguing that COPPA did not undermine TikTok's legal obligation to preserve relevant evidence. *Id.* at 5:9–19. Plaintiffs identified the relevant provision in TikTok's 2019 Stipulated Order with the DOJ: "Personal information need not be destroyed, and may be disclosed, to the extent requested by a government agency or required by a law, regulation, or court order." *Id.* at 5:11–14 (citing *United States v. Musical.ly*, No. 2:19-cv-01439-ODW-RAO, Dkt. No. 10 at 10 (C.D. Cal. Mar. 27, 2019)).

After a hearing on April 28, the Court ordered Defendants to "preserve data until the Court orders further unless the parties make a request on an ex parte basis." ECF No. 11 at 2. At the hearing, TikTok again argued that preserving user data could violate COPPA. Declaration of Eric Kafka ¶ 3 ("Kafka Decl."); Ex. A, Hearing Transcript ("Apr. 28 Tr."), at 14:15-17. The Court explained that it would order the preservation of user data, and that "I presume the statute will allow the retention of those materials for purposes of litigation." *Id.* at 17:10-11. Defense counsel responded, "If the Court orders us to do that, we will comply." *Id.* at 17:12-13. Counsel also told the Court that, if the named Plaintiffs identified themselves, "we would certainly preserve any data associated with their clients, correct." *Id.* at 23:18-20.

Two days later, TikTok filed a motion to suspend the Court's preservation order. *See* ECF No. 19. The Court denied the motion, holding that "Defendants have not established that they cannot comply with the Court's preservation order," which "does not justify setting aside the preservation order, particularly given the risk of prejudice to Plaintiffs of lost evidence." ECF No. 25 at 2.

On May 21, TikTok submitted a new preservation proposal under which it would preserve unspecified portions of the data from under-13 users on its Full Access Platform. *See* ECF No. 41. At the May 29 hearing, the Court did not adopt TikTok's preservation plan or limit TikTok's preservation obligations. Defense counsel told the

Court that there were "massive preservations efforts that are underway and in place." Kafka Decl. ¶ 4; Ex. B, Hearing Transcript ("May 29 Tr.") at 9:22-23. The Court ordered the parties to submit a joint document about preservation and to prepare a tutorial. *See* ECF No. 62.

**B.    The Court ordered the Parties to negotiate production of named Plaintiff data.**

In July, Plaintiffs told the Court that they could not agree to narrow TikTok's preservation obligations because Plaintiffs did not know the full scope of the data that TikTok collects and stores about users. *See* ECF No. 93 at 8-10. When discussing the Parties' Joint Status Report regarding the preservation dispute at the July 14 hearing, █

████████████████████████████████████████████████████

████████████████████████████████████████████

Kafka Decl. ¶ 5; Ex. C, Hearing Transcript (July 14 Tr.") at 111:17-19. ███████

████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████ :

██████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

███████████████████

████████████████████████████████████████████

███████████████████████████████████████████

██████████████████

On July 17, Plaintiffs' counsel proposed that TikTok produce the following information:

(1) The account level data and metadata TikTok possesses from 50 current TikTok users in the United States, which should include:

- The 16 class representatives
- 24 random users with full access accounts
- 10 random users with Kids Mode accounts.[1]

(2) A full and complete list of every repository (such as a Hive table) and the associated fields where TikTok stores user data for current TikTok users in the United States

(3) Documents sufficient to describe the data contained in each respective repository and field that stores user data for current TikTok users in the United States.

Kafka Decl. ¶ 6; Ex. D, Email from E. Kafka to TikTok's Counsel (July 17, 2025). On July 25, TikTok's counsel stated that it was "continuing the investigate the feasibility of providing exemplar data for the 16 named Plaintiffs." Kafka Decl. ¶ 7; Ex. E, Email from H. Stodder to Plaintiffs' Counsel (July 25, 2025).

On July 29, the Parties filed a stipulation informing the Court that "Defendants are investigating whether providing Plaintiffs with exemplar data is technologically feasible, as well as when such data might be made available to Plaintiffs, but expect that identifying and producing such data will require Defendants to develop new solutions that will take significant time and effort to implement." ECF No. 99 at 3. The Parties also noted that, "in the absence of resolution," they would "file briefing so that any remaining preservation disputes could be heard simultaneously with the motion to

---

[1] Plaintiffs proposed the inclusion of random users to allow Plaintiffs to see a slightly wider variety of data sets to ensure that the data fields TikTok provides for the named Plaintiffs are representative of what is collected for *all* users. To resolve any privacy concerns with regard to this data, Plaintiffs propose that the data be anonymized.

dismiss." *Id.* The briefing deadlines were "tied to Defendants' production of the
exemplar data." *Id.*

**C.     TikTok demanded that Plaintiffs sign broad consent forms or TikTok would
otherwise delete Plaintiffs' data.**

During an August 5, 2025 meet-and-confer, TikTok stated that it would only
produce exemplars from the named plaintiffs if the plaintiffs executed a consent form.
Kafka Decl. ¶ 8; Ex. F, Email from E. Kafka (Aug. 5, 2025). With respect to the 34
random user accounts, TikTok refused to produce data "due to privacy and relevancy
concerns for non-plaintiff users." Kafka Decl. ¶ 9; Ex. G, Email from H. Stodder (Aug.
8, 2025). And, finally, TikTok refused to provide a complete list of the platform's
repositories and data because, according to TikTok, it "serve[d] the same purpose" as
the exemplars. *Id.*

On August 25, TikTok sent its proposed consent form for the named plaintiffs.
Kafka Decl. ¶ 10; Ex. H, Email from M. Powers (Aug. 25, 2025). TikTok's proposed
consent forms would require Plaintiffs to consent to the very misconduct they allege is
at issue. Kafka Decl. ¶ 10; Ex. I. Among other things, TikTok's proposed consent form
would have required Plaintiffs to agree to the following provisions:

- "I understand that, unless my child's account is in Kids Mode (the
experience on the Platform for users under 13), TikTok's Privacy Policy
that is applicable to users over the age of 13 will apply to my child's
account and Defendants' collection, use, and disclosure of my child's
information."

- "I understand that, unless my child's account is in Kids Mode, Defendants
will collect and retain any of the information described in TikTok's Privacy
Policy that is associated with my child's account, . . . ."

- "I understand that, unless my child's account is in Kids Mode, Defendants
intend to use information collected about my child for purposes of this
litigation and, by allowing my child's account to remain on the Platform,
may also use information collected about my child for the purposes that
Defendants disclose in their Privacy Policy, . . . ."

- "I understand that, unless my child's account is in Kids Mode, my child's information may be shared with third parties in the same way that data of other users of the Platform is shared with third parties, . . . ."

Kafka Decl. ¶ 10; Ex. I. Plaintiffs explained that such consent was unnecessary and inappropriate, and instead offered to agree that TikTok could use their data for preservation-related purposes. Kafka Decl. ¶ 11; Ex. J, Email from E. Kafka (Sept. 5, 2010). Plaintiffs provided TikTok with a proposed consent form to that effect. Kafka Decl. ¶ 11; Ex. K. Counsel for TikTok responded that it would not produce exemplars from the named Plaintiffs unless each signed a "consent/waiver form" that "mirror[s] the statute and regulations" to "ensure that this consent form satisfies COPPA's notice and consent requirements." Kafka Decl. ¶ 12; Ex. L, Email from M. Powers (Sept. 10, 2025). TikTok told Plaintiffs that if TikTok disabled the Plaintiffs accounts, then "we can't guarantee that those data pulls will include literally all data in defendants' systems associated with the plaintiffs' accounts." Kafka Decl. ¶ 13; Ex. M, Email from M. Powers (Sept. 23, 2025); Kafka Decl. ¶ 13; Ex. N, Email from E. Kafka (Sept. 25, 2025). Upon further conferral, TikTok took the position that unless Plaintiffs signed TikTok's proposed consent form and kept their accounts on the platform, relevant portions of Plaintiffs' data could be destroyed. Kafka Decl. ¶ 14. TikTok sought to force Plaintiffs into an unfair choice: either consent to let TikTok violate their privacy *or* allow TikTok to destroy relevant data that should be preserved for this litigation.

TikTok did not say anything about needing sweeping—or any—consent—from Plaintiffs in the July 29 stipulation regarding the production of exemplar data. Instead, the only issue it raised in those contexts was "whether providing Plaintiffs with exemplar data is technologically feasible." ECF No. 99 at 3. Tellingly, when Plaintiffs asked counsel for TikTok to look into whether it had obtained COPPA-compliant consent forms from minor plaintiffs in the social media addiction litigation,[2] counsel for

---

[2] *In Re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*, No. 4:22-md-03047-YGR (N.D. Cal.), and *Social Media Cases*, Judicial Council Coordination Proceeding No. 5255 (Cal. Sup. Ct.).

TikTok did not provide an answer. Kafka Decl. ¶ 15. Based on Plaintiffs' review of case filings in those proceedings, it appears that TikTok preserved and produced data from plaintiffs in the social media addiction litigation without requiring that they first sign COPPA-compliant consent forms. Kafka Decl. ¶ 16; *see* Jt. Status Conf. Statement for Oct. 3, 2024 Conf. at 18-20, *Social Media Cases*, No. 22STCV21355 (Cal. Sup. Ct. Oct. 2, 2024); Jt. Status Conf. Statement for Oct. 10, 2024 Conf. at 3-4, *id.* (Oct. 9, 2024).

**D.    TikTok now contends that this Court does not have the authority to require TikTok to preserve COPPA-protected data.**

During the Parties' final meet-and-confer on October 6, TikTok asserted that it could not preserve any underage user data because it would violate COPPA to do so. Kafka Decl. ¶ 18. Moreover, TikTok trotted out a new and even bolder argument: the Court *does not have the authority* to order TikTok to preserve data for users under the age of 13 because doing so would violate COPPA. Kafka Decl. ¶ 17. TikTok took this position even though TikTok's counsel previously told the Court that Defendants would "modify their existing account deletion practices" pursuant to "an order by this Court." ECF No. 10 at 6:13-7:7.

## III.    ARGUMENT

**A.    TikTok must preserve the named Plaintiffs' data.**

Defendants "have a duty to preserve evidence that kicks in once a party has 'some notice' that evidence will be 'potentially relevant to the litigation.'" *Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.*, No. 22-35832, 2023 WL 6866273, at *2 (9th Cir. Oct. 18, 2023) (quoting *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 766 (9th Cir. 2015)). TikTok's obligation to preserve evidence arose no later than August 9, 2024, when the first private plaintiffs filed their class action complaint. *See A.A. v. ByteDance Inc.*, No. 2:24-cv-06784-GW-RAO, Dkt. No. 1 (C.D. Cal. Aug. 9, 2024). As soon as TikTok received notice of the allegations in that complaint, it was under an obligation to investigate the relevant evidence, including how its own systems work, and to ensure "the suspension of document destruction policies," *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 342 F.R.D. 461, 505 (C.D. Cal. 2022), through "[a] litigation

hold, or preservation order," *Colonies Partners, L.P. v. Cnty. of San Bernardino*, 2020 WL 1496444, at *8 (C.D. Cal. Feb. 27, 2020). A party seeking destruction of relevant evidence is "required to show good cause before destruction is permitted." Manual Complex Lit. § 11.442 (4th ed.).

TikTok's duty to preserve evidence also includes taking "reasonable steps to preserve it," Fed. R. Civ. P. 37(e), which "extends to the suspension of document destruction policies." *RG Abrams*, 342 F.R.D. at 505; *Colonies Partners*, 2020 WL 1496444, at *8. To fulfill this duty, TikTok is fully capable of developing and maintaining processes that allow it to comply simultaneously with COPPA and the Federal Rules of Civil Procedure. In other words, as a sophisticated technology company that manages massive volumes of user data, TikTok can—and must—determine a way to segregate, secure, and preserve relevant data even after accounts are deleted from the platform. TikTok cannot evade its preservation duties by invoking COPPA, privacy concerns, or technological difficulties as a pretext for destroying relevant evidence.

### 1. Data that TikTok collects and uses about the named Plaintiffs is at the core of the case.

Plaintiffs' core allegation in this case is that TikTok has knowingly permitted and encouraged children under the age of 13 to create user accounts on the TikTok app and collected their Private Information without parental notice or consent. ECF No. 94 ¶¶ 103–22.[3] Consistent with this allegation, Plaintiffs assert that TikTok profited off the collection of specific Private Information from the named Plaintiffs in this action, and

---

[3] Plaintiffs allege that TikTok unlawfully collected the following Private Information from child-users of TikTok: "name, age, email address, phone number, persistent identifiers for the device(s) used to access TikTok, social media account information, profile image, as well as photographs, videos, and audio files containing the user's image and voice and the metadata associated with such media (such as when, where, and by whom the content was created), usage information, device information, location data, image and audio information, metadata, and data from cookies and similar technologies that track user across different websites and platforms." ECF No. 94 ¶ 1; *see also id*. ¶¶ 74–75.

that TikTok collected this information without providing parental notice and obtaining consent. *See id.* ¶¶ 242–395 Plaintiffs further allege that TikTok is a platform directed to children and that TikTok had actual knowledge that it was collecting, storing and using the Private Information of children under the age of 13, *id.* ¶¶ 152–63, and specifically, that Plaintiffs' posts and activity on the TikTok platform apprised Defendants that Plaintiffs were under 13 years old. *See, e.g., id.* ¶ 353 ("I'm 11 years old"); *id.* ¶ 249 ("Search Term: 12 year old girl trends.").

Once discovery in this case begins, Plaintiffs will be entitled to the named Plaintiffs' data as well as other documents and information relevant to these allegations. This data will show the nature and extent of TikTok's data collection, the ways in which TikTok used or monetized that information, the child-directed nature of TikTok's platform, and proof that TikTok's own systems and employees were on notice of the named Plaintiffs' ages based on their activities on the platform. Discovery into TikTok user data will be necessary to demonstrate TikTok's knowledge, intent, and conduct, as well as to quantify and qualify the scope of TikTok's unlawful data collection and use. Put simply, TikTok user data is not just relevant; it is the central to the claims and defenses in this action. *See* Fed. R. Civ. P. 26(b)(1).

Unsurprisingly, caselaw makes clear that plaintiff data is highly relevant to the allegations in privacy class actions. *See, e.g., In re Facebook, Inc. Consumer Priv. User Profile Litig.* ("*Facebook Profile*"), No. 3:18-MD-02843-VC-JSC, 2021 WL 10282172, at *8 (N.D. Cal. Oct. 11, 2021) ("[D]iscoverable named plaintiffs' data includes data collected from their on-platform activities, data obtained from third parties regarding the named plaintiffs' off-platform activities, and data inferred from their on-or off-platform activities."); *In re TikTok, Inc. In-App Browser Priv. Litig.*, No. 24 C 2110, 2024 WL 4367849, at *5 (N.D. Ill. Oct. 1, 2024) (describing the "'chicken and the egg' problem that frequently arises in data-privacy cases, in which plaintiffs often lack knowledge of when or how their data is being used by the defendant's platform and can find out only through discovery"); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1040 (S.D. Cal.

2023) ("[I]t is Defendant's interception, packaging, and reselling of Plaintiff's data that constitute the privacy violations in this case.").

For example, in *Facebook Profile*, the court sanctioned both the defendant and its counsel for "misconduct as it relates to the named plaintiff's information," including destruction of "evidence about the information Facebook collected about them." *See* 655 F. Supp. 3d 899, 928–29 (N.D. Cal. 2023). First, the court emphasized that "th[e] whole case involved accusations that Facebook disclosed personal information about users to third parties surreptitiously, indiscriminately, and without permission." *Id.* at 929, Thus, "[t]he first step in getting to the bottom of those accusations was to figure out what information Facebook collected on the named plaintiffs, as a means to figuring out which pieces of information Facebook actually disclosed." *Id.* And second, the court sanctioned the defendant's unfounded assertion that "additional named plaintiff data would create a major burden," stating that "[i]t was not for Facebook and [its counsel] to unilaterally decide the scope and extent of discovery." *Id.* at 930. The same is true here. TikTok and its counsel "cannot resist the disclosure of obviously discoverable information, . . . ignore potential sources of evidence, . . . [or] encourage their client's obstinance—no matter how difficult the subject matter." *Id.* at 933.

## 2. COPPA does not override TikTok's preservation obligations.

### a. TikTok is violating multiple court orders by refusing to preserve named Plaintiffs' data and other data of class members.

TikTok's suggestion that COPPA somehow overrides a court's inherent authority to order preservation and production of data in this case is outrageous. TikTok never raised this argument in the Parties' April 24 Joint Status Report, when it first attempted to avoid its preservation obligations by arguing that TikTok is prohibited by COPPA from preserving under 13 TikTok accounts— instead, it acknowledged that Defendants would "modify their existing account deletion practices" pursuant to "an order by this Court." *See* ECF No. 10 at 6:13-7:7. And TikTok never raised this argument after the Court ordered that "Defendants will preserve data until the Court orders further unless the parties make a request on an ex parte basis." ECF No. 11 at 2; *see also* Ex. A, Apr.

28 Tr., at 17:10-11 (stating the Court's presumption that "the statute will allow the retention of those materials for purposes of litigation"). Even when TikTok filed its motion to suspend the Court's preservation order, it did not raise this argument that the Court's authority to order it to preserve documents and information relevant this litigation is superseded by COPPA. *See* ECF No. 19 at 2 (arguing that "good cause exists for this request because it is ***not feasible*** to comply with the Court's Order" (emphasis added)).

Not only does this argument fly in the face of this Court's repeated prior preservation orders and its Article III power, but also in the context of TikTok's stay motion it may be seen as simply one more of many increasingly desperate attempts to avoid its discovery obligations in this litigation. *See Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1071 (C.D. Cal. 2009) ("Federal courts have the implied or inherent power to issue preservation orders as part of their general authority 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" (quoting *Pueblo of Laguna v. United States,* 60 Fed. Cl. 133, 135–36 (2004)).

### b.    Named Plaintiffs are not required to sign COPPA consent forms for TikTok to preserve their data.

Before TikTok changed its position regarding its obligation to preserve children's data, it initially conditioned its preservation of the named Plaintiffs' data on Plaintiffs' execution of "consent" forms. These forms sought to obtain blanket parental consent for the very conduct that Plaintiffs allege is unlawful—*i.e.*, its collection, storage, and use of children's personal information. But COPPA expressly contains carveouts permitting the preservation and production of children's data in connection with litigation, and nothing in the statute requires parental "consent" to comply with those obligations.

COPPA itself clearly envisions exceptions permitting the collection, use, and preservation of children's data absent parental consent. Section 6502(b)(2)(E) explicitly authorizes website operators to disclose or retain such information where necessary to "respond to judicial process" or "to the extent permitted under other provisions of law." 15 U.S.C. § 6502(b)(2)(E)(iii)–(iv). The statute demonstrates Congress's anticipation

that certain circumstances, including legal process, would necessarily take precedence over the need for parental consent.

Moreover, as discussed above, this Court has already issued a preservation order in this case, *see* ECF No. 11, and denied TikTok's attempt to modify that order, *see* ECF No. 25. In addition, TikTok is bound by the 2019 Stipulated Order entered by a prior federal court, which provides that "[p]ersonal information need not be destroyed, and may be disclosed, to the extent requested by a government agency or required by a law, regulation, or court order." *United States v. Musical.ly*, No. 2:19-cv-01439-ODW-RAO, Dkt. No. 10 at 10 (C.D. Cal. Mar. 27, 2019). In fact, TikTok's counsel attached the 2019 Stipulated Order to their declaration in support of TikTok's application to suspend the preservation order, ECF No. 24-1 at Ex. D, while confusingly arguing that the Order requires it to delete data.

**B.    TikTok should immediately produce exemplar data for the named Plaintiffs and 34 randomized additional users, as well as a data dictionary or other documentation to decipher the data.**

As discussed above, user data is highly relevant to this matter; indeed, it is at the heart of both the merits and the instant dispute. *See supra* Section II. Production of the exemplar data for the named Plaintiffs and 34 randomized additional users must occur *now* to resolve the Parties' preservation dispute. Exemplar data, along with a data dictionary, will enable Plaintiffs to determine what data fields are relevant to the case and therefore must be preserved—thus narrowing TikTok's preservation burden and easing cost concerns. This is the process the Court set in motion when it instructed the Parties on July 14 to meet and confer regarding the production of exemplar data, *see* Ex. C at 111:17-19, and the Parties reaffirmed that process in their July 29, 2025, stipulation, *see* ECF No. 99. Defendants' bald efforts to derail this process represent yet another improper attempt to avoid their discovery obligations under this Court's Order and the Federal Rules of Civil Procedure. It should be rejected.

TikTok previously expressed concerns about the technological feasibility of producing the exemplar data and agreed to investigate the problem. For example, in the July 29 stipulation, TikTok reported:

> Defendants are investigating whether providing Plaintiffs with exemplar data is technologically feasible, as well as when such data might be made available to Plaintiffs, but expect that identifying and producing such data will require Defendants to develop new solutions that will take significant time and effort to implement.

ECF No. 99 at 3. But across numerous emails and multiple meet-and-confers on preservation since the July 14 tutorial, TikTok has *never* asserted that providing the exemplar data was not technologically feasible, nor has it described any "new solutions" needed to implement production or any further extension of the timeline to do so. *See generally* Kafka Decl. Instead, TikTok has obfuscated and delayed. As a result, no progress has been made on the Parties' preservation dispute. It is now abundantly clear that the only way TikTok will provide Plaintiffs with even a limited amount of exemplar data is if the Court orders it to do so. Then, TikTok can determine whether it will comply with the order or contend that the Court lacks authority to enforce it.

Likewise, Plaintiffs have repeatedly requested that TikTok produce its data dictionaries and/or other documentation sufficient to describe each of the fields of data produced in the exemplars. Such data dictionaries and other documentation would describe the components of the databases and/or data sets produced as exemplars, providing the necessary information about tables, fields, data types, relationships, and rules impacting this information, so that Plaintiffs can adequately understand the information produced and evaluate whether it should be included in the information preserved by TikTok. To date, TikTok has refused to produce data dictionaries and/or other such documentation on the basis that the exemplar data would provide Plaintiffs with the same information. But this objection, too, is meritless. It is highly likely that some, if not most, of the data samples will be unintelligible without additional description, which would add further negotiations and delay to a process that TikTok

has already drawn out beyond the point of reason. As such, TikTok should also be ordered to produce data dictionaries and/or other documentation sufficient to describe each of the fields of data produced in the exemplars.

## IV.   CONCLUSION

For all the reasons stated above, Plaintiffs respectfully request that the Court order Defendants preserve and produce all data for the named Plaintiffs and 34 randomized additional users (24 randomized/anonymized users with Full Access accounts and 10 randomized/anonymized users with Kids Mode accounts), along with data dictionaries and/or other such documentation sufficient to describe the data contained in each field or other repository that stores user data for current TikTok users in the United States, in order to help resolve the Parties' preservation dispute.

DATED this 9th day of October, 2025.

KELLER ROHRBACK L.L.P.


By */s/ Derek W. Loeser*
    Derek W. Loeser (*pro hac vice*)
    dloeser@kellerrohrback.com
    Cari Campen Laufenberg (*pro hac vice*)
    claufenberg@kellerrohrback.com
    1201 Third Avenue, Suite 3400
    Seattle, WA 98101
    (206) 623-1900
    (206) 623-3384 (fax)

    *Interim Lead Counsel*

COHEN MILSTEIN SELLERS AND TOLL PLLC


By: */s/ Eric A. Kafka*
Eric A. Kafka (*pro hac vice*)
ekafka@cohenmilstein.com
Cohen Milstein Sellers and Toll PLLC
88 Pine Street, 14th Floor

New York, NY 10005
(212) 838-7797
(212) 838-7745 (fax)

*Interim Lead Counsel*

SILVER GOLUB & TEITELL LLP


Steven L. Bloch (*pro hac vice*)
sbloch@sgtlaw.com
One Landmark Square, 15th Floor
Stamford, CT 06901
(203) 325-4491

*Executive Committee*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-4.3.4(a)(2)**

I, Derek W. Loeser, attest that all other signatories listed, and on whose behalf the filing is submitted, have concurred in the filing's content and have authorized the e-filing of the foregoing document in compliance with Local Rule 5-4.3.4(a)(2).

Executed this 9th day of October, 2025, at Seattle, Washington.

*/s/ Derek W. Loeser*
signature

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs [or role of party, if unrepresented], certifies that this brief contains 4,765 words, which [choose one]:

x complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated [date]."

Executed this 9th day of October, 2025, at Seattle, Washington.

/s/ Derek W. Loeser
Derek W. Loeser

1

**CERTIFICATE OF SERVICE**

2   I, Sarah Skaggs, hereby certify that on October 9, 2025, I electronically filed the

3 foregoing with the Clerk of the United States District Court for the Central District of

4 California using the CM/ECF system, which shall send electronic notification to all

5 counsel of record.

6          */s/ Sarah Skaggs*
           Sarah Skaggs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28