DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, Suite 800
Los Angeles, California 90067-6035
Telephone:  +1 310 553 6700
Facsimile:    +1 310 246 6779

STEPHEN D. BRODY (*pro hac vice*)
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone:  +1 202 383 5300
Facsimile:    +1 202 383 5414

MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
San Francisco, CA 94111
Telephone:  +1 415 984 8700
Facsimile:    +1 415 984 8701

*Attorneys for Defendants ByteDance Ltd.,
ByteDance Inc., TikTok Ltd., TikTok Inc.,
TikTok LLC, TikTok Pte. Ltd., and
TikTok U.S. Data Security Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TIKTOK INC., MINOR PRIVACY LITIGATION | MDL NO. 3144<br><br>2:25-ml-03144-GW-RAO<br><br>**DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**<br><br>Hon. George H. Wu<br>Hearing Date: November 6, 2025<br>Time: 8:30 a.m.<br>Courtroom: 9D |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   ARGUMENT ................................................................................................. 2

      A.    Allowing Plaintiffs' Claims to Proceed Is Inconsistent with COPPA. .......................................................................................... 2

      B.    Plaintiffs Lack Standing to Bring Most of their Claims Because They Do Not Reside and Were Not Injured in Those States. ............... 3

      C.    The Court Should Dismiss Plaintiffs' Privacy Claims. ...................... 6

            1.    Plaintiffs fail to state a claim for intrusion upon seclusion or a violation of the California Constitution............................ 6

            2.    Plaintiffs fail to state a claim under the New York Civil Rights Law. ...................................................................... 13

      D.    The Court Should Dismiss Plaintiffs' Unfair-Competition Claims. ........................................................................................ 14

      E.    The Court Should Dismiss Plaintiffs' Unjust-Enrichment Claims. ........................................................................................ 18

            1.    Plaintiffs do not plausibly allege that Defendants profited at *their* expense.......................................................... 18

            2.    Plaintiffs do not plausibly allege that Defendants unjustly retained a benefit from use of *Plaintiffs'* data. ................... 19

      F.    The Court Should Dismiss Plaintiffs' Negligence Claims. ............... 21

III.  CONCLUSION ........................................................................................... 21

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B. by and through Turner v. Google LLC*,
   737 F. Supp. 3d 869 (N.D. Cal. 2024)..........................................8, 11, 12, 16, 20

*Adler v. Altsleep, LLC*,
   2023 WL 3080757 (C.D. Cal. Feb. 7, 2023) ......................................................3

*Alvarez v. NBTY, Inc.*,
   2017 WL 6059159 (S.D. Cal. Dec. 6, 2017) ......................................................4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................................20

*Babaian v. Dunkin' Brands Grp., Inc.*,
   2018 WL 11445614 (C.D. Cal. Feb. 16, 2018) ..................................................4

*Bass v. Facebook, Inc.*,
   394 F. Supp. 3d 1024 (N.D. Cal. 2019)............................................................15

*Bd. of Trs. of Galveston Wharves v. Trelleborg*,
   2010 WL 11508414 (C.D. Cal. Nov. 22, 2010) ................................................4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................6, 8

*Beverley v. Choices Women's Med. Ctr., Inc.*,
   78 N.Y.2d 745 (1991) ...................................................................................13

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009)..........................................................................17

*Brown v. Google LLC*,
   2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) .......................................16, 17, 18

*Calhoun v. Google LLC*,
   526 F. Supp. 3d 605 (N.D. Cal. 2021).......................................................15, 16

*Cappello v. Walmart Inc.*,
   394 F. Supp. 3d 1015 (N.D. Cal. 2019)............................................................17

*Carpenter v. PetSmart, Inc.*,
   441 F. Supp. 3d 1028 (S.D. Cal. 2020) ..............................................................3

*Claridge v. RockYou, Inc.*,
   785 F. Supp. 2d 855 (N.D. Cal. 2011)..............................................................15

1

## TABLE OF AUTHORITIES
(continued)

2

**Page(s)**

3

*Coffee v. Google, LLC,*
4      2022 WL 94986 (N.D. Cal. Jan. 10, 2022) ................................................. 20, 21

5 *Cook v. GameStop, Inc.,*
     689 F. Supp. 3d 58 (E.D. Pa. 2023), *aff'd* 148 F.4th 153 (3d Cir.
6      2025) ........................................................................................................... 11

7 *Corcoran v. CVS Health Corp.,*
     169 F. Supp. 3d 970 (N.D. Cal. 2016) ......................................................... 4
8

9 *Cousin v. Sharp Healthcare,*
     681 F. Supp. 3d 1117 (S.D. Cal. 2023) ....................................................... 11
10

11 *Curtis v. City of New York,*
     195 N.Y.S.3d 592 (N.Y. Sup. Ct. 2023) ................................................ 13, 14

12 *D'Angelo v. FCA U.S., LLC,*
     726 F. Supp. 3d 1179 (S.D. Cal. 2024) ....................................................... 9
13

14 *Doe I v. Google LLC,*
     741 F. Supp. 3d 828 (N.D. Cal. 2024) ....................................................... 18

15 *Drake v. Toyota Motor Corp.,*
     2020 WL 7040125 (C.D. Cal. Nov. 23, 2020) ........................................ 3, 4
16

17 *Escarcega v. Verdugo Vista Operating Co.,*
     2020 WL 1703181 (C.D. Cal. Apr. 8, 2020) ............................................... 2

18 *Greenley v. Kochava,*
     684 F. Supp. 3d 1024 (S.D. Cal. 2023) ..................................................... 16
19

20 *Griffith v. TikTok,*
     697 F. Supp. 3d 963 (C.D. Cal. 2023) ....................................................... 16

21 *Hadi v. Toyota Motor Corp.,*
     2025 WL 841804 (C.D. Cal. Jan. 6, 2025) .............................................. 3, 5
22

23 *Hammerling v. Google LLC,*
     615 F. Supp. 3d 1069 (N.D. Cal. 2022) .................................................. 7, 10
24

25 *Hazel v. Prudential Fin., Inc.,*
     2023 WL 3933073 (N.D. Cal. June 9, 2023) ............................................. 16

26 *Hill v. Nat'l Collegiate Athletic Ass'n,*
     7 Cal. 4th 1 (Cal. 1994) .............................................................................. 6
27

28

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Hubbard v. Google LLC*,

4
    2024 WL 3302066 (N.D. Cal. July 1, 2024) ................................................... 10, 12

5
*Hubbard v. Google LLC*,
    2025 WL 82211 (N.D. Cal. Jan. 13, 2025) ......................................................... 12

6

*In re Alphabet Derivative Stockholder Litig.*,

7
    2022 WL 1045642 (N.D. Cal. 2022) ..................................................................... 8

8

*In re Carrier IQ, Inc.*,

9
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) ................................................................... 4

10

*In re Ditropan XL Antitrust Litig.*,
    529 F. Supp. 2d 1098 (N.D. Cal. 2007) ................................................................. 4

11

*In re Facebook, Inc. Internet Tracking Litig.*,

12
    956 F.3d 589 (9th Cir. 2020) ................................................................................. 7

13
*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) ................................................................. 20

14

*In re Google, Inc. Priv. Policy Litig.*,

15
    58 F. Supp. 3d 968 (N.D. Cal. 2014) ................................................................... 10

16

*In re Hydroxycut Mktg. & Sales Pracs. Litig.*,

17
    801 F. Supp. 2d 993 (S.D. Cal. 2011) ................................................................... 4

18

*In re iPhone Application Litigation*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................................................... 21

19

*In re Meta Pixel Tax Filing Cases*,

20
    724 F. Supp. 3d 987 (N.D. Cal. 2024) ............................................................ 17, 18

21

*In re Nickelodeon Consumer Priv. Litig.*,
    827 F.3d 262 (3d Cir. 2016) ............................................................................ 12, 21

22

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,

23
    903 F. Supp. 2d 942 (S.D. Cal. 2012) ................................................................. 21

24

*Jepson v. Ticor Title Ins. Co.*,
    2007 WL 2060856 (W.D. Wash. May 1, 2007) ..................................................... 4

25

*Jones v. Google LLC*,

26
    73 F.4th 636 (9th Cir. 2023) .................................................................................. 2

27

*Jones v. Micron Tech. Inc.*,

28
    400 F. Supp. 3d 897 (N.D. Cal. 2019) ................................................................... 3

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Jones v. Peloton Interactive, Inc.*,

4

720 F. Supp. 3d 940 (S.D. Cal. 2024) ................................................................. 11

5

*Kim v. Walmart, Inc.*,
2023 WL 4316786 (C.D. Cal. Mar. 14, 2023) ...................................................... 3

6

*Lewis v. Casey*,

7

518 U.S. 343 (1996) ............................................................................................... 3

8

*Libman v. Apple, Inc.*,
2024 WL 4314791 (N.D. Cal. Sept. 26, 2024)..................................................... 10

9

*Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*,

10

2014 WL 4774611 (N.D. Cal. Sept. 22, 2014)...................................................... 3

11

*Mai v. Supercell Oy*,

12

2021 WL 4267487 (N.D. Cal. Sept. 20, 2021).................................................... 19

13

*Manigault-Johnson v. Google, LLC*,
2019 WL 3006646 (D.S.C. Mar. 31, 2019)........................................................... 8

14

*Marks v. United Parks & Resorts, Inc.*,

15

2025 WL 2767941 (S.D. Cal. Sept. 26, 2025) .................................................. 3, 5

16

*Med. Lab'y Mgmt. Consultants v. Am. Broad. Cos., Inc.*,
306 F.3d 806 (9th Cir. 2002) ................................................................................ 6

17

*Melendres v. Arpaio*,

18

784 F.3d 1254 (9th Cir. 2015) ............................................................................... 4

19

*Morales v. Unilever U.S., Inc.*,

20

2014 WL 1389613 (E.D. Cal. Apr. 9, 2014) ......................................................... 4

21

*Osuna v. LaVoice*,
2025 WL 2636267 (E.D. Cal. Sept. 12, 2025) ..................................................... 9

22

*Popa v. Microsoft Corp.*,

23

2025 WL 2448824 (9th Cir. Aug. 26, 2025) ................................................. 10, 11

24

*Posadas v. Goodyear Tire & Rubber Co.*,

25

2024 WL 5114133 (S.D. Cal. Dec. 13, 2024) ............................................... 10, 11

26

*Pour v. Wells Fargo Bank*,
2020 WL 12893826 (N.D. Cal. Dec. 1, 2020) ...................................................... 9

27

*Rivers v. Skate Warehouse, LLC*,

28

2013 WL 12128800 (C.D. Cal. Apr. 15, 2013)..................................................... 9

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Rosal v. First Fed. Bank*,

4

671 F. Supp. 2d 1111 (N.D. Cal. 2009).........................................................20, 21

5

*Saleh v. Nike, Inc.*,

562 F. Supp. 3d 503 (C.D. Cal. 2021)..............................................................9, 11

6

*Schertzer v. Bank of Am., N.A.*,

7

445 F. Supp. 3d 1058 (S.D. Cal. 2020) .................................................................3

8

*Senne v. Kansas City Royals Baseball Corp.*,

114 F. Supp. 3d 906 (N.D. Cal. 2015).................................................................4

9

*Smith v. Chase Manhattan Bank*,

10

741 N.Y.S.2d 100 (N.Y. App. Div. 2002).....................................................13, 14

11

*Thomas v. Papa Johns Int'l, Inc.*,

12

2024 WL 2060140 (S.D. Cal. May 8, 2024), *aff'd*, 2025 WL
1704437 (9th Cir. June 18, 2025)........................................................................10

13

*TransUnion LLC v. Ramirez*,

14

594 U.S. 413 (2021) ..............................................................................................4

15

*Villanueva v. Am. Honda Motor Co.*,

2019 WL 8112467 (C.D. Cal. Oct. 10, 2019) ......................................................4

16

*Vitiosus v. Alani Nutrition, LLC*,

17

2022 WL 2441303 (S.D. Cal. July 5, 2022)..........................................................3

18

*Walker v. Thompson*,

19

404 F. Supp. 3d 819 (S.D.N.Y. 2019) ................................................................13

20

*Wong v. Am. Honda Motor Co., Inc.*,
2022 WL 3696616 (C.D. Cal. June 21, 2022), *aff'd*, 2024 WL

21

612939 (9th Cir. Feb. 14, 2024) ...........................................................................3

22

*Yantha v. Omni*,

2013 WL 5327516 (E.D.N.Y. Sept. 20, 2013).....................................................13

23

**Statutes**

24

15 U.S.C. § 6502..........................................................................................................2

25

15 U.S.C. § 6504..........................................................................................................2

26

27

28

Case 2:25-ml-03144-GW-RAO    Document 118    Filed 10/13/25    Page 8 of 32    Page ID
#:3398

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Other Authorities**

*Complying with COPPA: Frequently Asked Questions* (July 2020),
https://www.ftc.gov/business-guidance/resources/complying-
coppa-frequently-asked-questions ......................................................................... 7

1    **I.    INTRODUCTION**

2         Plaintiffs' opposition only confirms the Court should dismiss the Complaint.

3 Plaintiffs have asserted state-law claims predicated on a federal statute that gives

4 the federal government, not private plaintiffs, primary enforcement authority over

5 alleged violations—authority the U.S. Department of Justice ("DOJ") is currently

6 exercising in a separate matter.  The Children's Online Privacy Protection Act of

7 1998 ("COPPA") thus preempts every one of Plaintiffs' state-law claims because

8 simultaneous enforcement by the federal government and private plaintiffs is

9 inconsistent with COPPA's statutory scheme.

10         Even if the Court concludes COPPA allows Plaintiffs to file a COPPA-based

11 class action after DOJ already filed its own complaint based on the same conduct,

12 dismissal of Plaintiffs' Complaint is warranted for several other reasons.  Plaintiffs

13 admit they do not reside in a vast majority of the 40+ states whose laws they seek to

14 invoke, which means Plaintiffs have no standing to assert claims in those states in

15 the first instance.  Plaintiffs have also failed to comply with basic federal pleading

16 standards requiring them to identify sufficient factual matter to render their claims

17 plausible.  None of the harms Plaintiffs allege are specific enough to plausibly infer

18 they were injured by Defendants' purported COPPA violations.  For example,

19 Plaintiffs allege invasions of privacy based on routine data collection on the

20 internet, but fail to provide any facts demonstrating their own data was collected

21 and used.  Plaintiffs' unfair competition, unjust enrichment, and negligence claims

22 all suffer from a similar defect.  The 175-page Complaint offers only generalized

23 assertions of harm, but no specific facts concerning use of the Named Plaintiffs'

24 own data and the specific harm they supposedly suffered.  These conclusory

25 assertions are pure speculation, and require dismissal of Plaintiffs' claims both for

26 lack of standing and on the merits.[1]

27

28 

---

[1] All emphases have been added, and all quotations, citations, and alterations have been omitted.

1    **II.    ARGUMENT**

2        **A.    Allowing Plaintiffs' Claims to Proceed Is Inconsistent with**
3               **COPPA.**

4        Plaintiffs insist that Defendants' preemption argument is "foreclosed by

5    *Jones v. Google LLC*, 73 F.4th 636 (9th Cir. 2023)."  Opp. 4.  As Plaintiffs

6    acknowledge, however, in *Jones*, Google settled COPPA enforcement actions

7    brought by federal and state authorities *before* the private plaintiffs brought their

8    state law claims.  *Id.* 4 n.2; *see* Mot. 7 & n.8.  *Jones* thus did not address, much less

9    decide, the issue presented here—whether private plaintiffs should be permitted to

10   litigate state law claims that depend on COPPA violations at the same time the

11   federal government is actively pursuing analogous COPPA enforcement efforts

12   against Defendants.  In contrast to the subsequent private claims at issue in *Jones*,

13   Plaintiffs' simultaneous private claims are "inconsistent with" COPPA, 15 U.S.C.

14   § 6502(d), and must be dismissed at this stage.  Mot. 6-7; *Escarcega v. Verdugo*

15   *Vista Operating Co*., 2020 WL 1703181, at *13 (C.D. Cal. Apr. 8, 2020) (Wu, J.).

16       Nor is COPPA's text "silent" on the issue of enforcement priority.  Opp. 4.

17   Congress granted clear priority to the federal government over COPPA

18   enforcement actions, and the statute expressly prohibits simultaneous enforcement

19   actions by states.  15 U.S.C. § 6504(d).  Allowing private plaintiffs to effectively

20   leapfrog that prohibition by asserting state-law claims based on conduct identical to

21   that alleged by DOJ would directly undermine Congress's intent that the federal

22   government lead on COPPA-related matters, and also give rise to a significant risk

23   of inconsistent judgments and outcomes.  Mot. 7-8.  Plaintiffs' claims are thus

24   expressly preempted.

25       At minimum, a stay is warranted because allowing the federal government to

26   litigate its COPPA claims first is more efficient, will not prejudice Plaintiffs, and

27   avoids the risk of inconsistent judgments.  *See* ECF No. 105-1.  For all the reasons

28

REPLY ISO MOT. TO DISMISS
MDL No. 3144
NO. 2:25-ML-03144-GW-RAO

1  stated in Defendants' reply in support of their motion to stay, Plaintiffs' arguments

2  to the contrary are unavailing.  *See* Defs.' Reply ISO of Mot. to Stay (filed

3  concurrently).

4     **B.    Plaintiffs Lack Standing to Bring Most of their Claims Because
             They Do Not Reside and Were Not Injured in Those States.**
5

6     Tellingly, Plaintiffs never claim to possess Article III standing to assert

7  dozens of the state law claims alleged in their Complaint.  Nor could they—it is

8  common sense that a "named plaintiff whose injuries have no causal relation to, or

9  cannot be redressed by, the legal basis for a claim does not have standing to assert

10 that claim." *Drake v. Toyota Motor Corp.*, 2020 WL 7040125, at *4 (C.D. Cal.

11 Nov. 23, 2020); *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996).  Because "at

12 least one named class representative must have Article III standing to raise each

13 claim," *Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*, 2014 WL

14 4774611, at *4 (N.D. Cal. Sept. 22, 2014), every claim based on state laws where

15 Plaintiffs admittedly do not reside must be dismissed.  *See Marks v. United Parks &

16 Resorts, Inc.*, 2025 WL 2767941, at *4 (S.D. Cal. Sept. 26, 2025); *Vitiosus v. Alani

17 Nutrition, LLC*, 2022 WL 2441303, at *10 (S.D. Cal. July 5, 2022).

18    Unable to demonstrate standing, Plaintiffs instead argue the Court should

19 "defer addressing" this issue until after class certification.  Opp. 5-6.  That position

20 has been resoundingly rejected: "Courts in this circuit have *overwhelmingly* ruled

21 that plaintiffs do not have standing to assert claims from states in which they do not

22 reside and that it is appropriate to … address standing *in advance of class

23 certification*." *Drake*, 2020 WL 7040125, at *3.[2]  This is because standing requires

24 [2] *See, e.g.*, *Marks*, 2025 WL 2767941, at *3; *Hadi v. Toyota Motor Corp.*, 2025 WL
   841804, at *2-3 (C.D. Cal. Jan. 6, 2025); *Kim v. Walmart, Inc.*, 2023 WL 4316786,
25 at *3-4 (C.D. Cal. Mar. 14, 2023); *Adler v. Altsleep, LLC*, 2023 WL 3080757, at *3
   (C.D. Cal. Feb. 7, 2023); *Vitiosus*, 2022 WL 2441303, at *10; *Wong v. Am. Honda
26 Motor Co., Inc.*, 2022 WL 3696616, at *4-5 (C.D. Cal. June 21, 2022), *aff'd*, 2024
   WL 612939 (9th Cir. Feb. 14, 2024); *Schertzer v. Bank of Am., N.A.*, 445 F. Supp.
27 3d 1058, 1072 (S.D. Cal. 2020); *Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028,
   1039 (S.D. Cal. 2020); *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 908-11
28 (N.D. Cal. 2019); *Villanueva v. Am. Honda Motor Co.*, 2019 WL 8112467, at *14

"Plaintiffs [to] maintain their personal interest in the dispute at all stages of litigation." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).  Contrary to Plaintiffs' suggestion, "Defendants need not wait until the certification stage to address this deficiency." *Drake*, 2020 WL 7040125, at *4.

Plaintiffs' legal authorities do not support departing from these established principles.  For example, in *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015), the court declined to "defer questions of standing until after class certification" and "require[d] the Plaintiffs to present a named class member who possesse[d] individual standing to assert each state law's claims against Defendants." *Id.* at 1074.  In *Senne v. Kansas City Royals Baseball Corp.*, 114 F. Supp. 3d 906 (N.D. Cal. 2015), "there [was] at least one named Plaintiff who [was] alleged to have been employed in every state whose laws [were] invoked," *id.* at 924-25, unlike here, where Plaintiffs reside in only 8 of the 49 states underlying their claims.  In *Bd. of Trs. of Galveston Wharves v. Trelleborg*, 2010 WL 11508414, *6 (C.D. Cal. Nov. 22, 2010), the defendant "effectively conceded" that plaintiff possessed Article III standing and instead argued Louisiana law did not authorize plaintiff to represent the proposed class, an issue not present here.  As for *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015), that opinion "did not involve the application of multiple states' laws and thus has little bearing in this context." *Drake*, 2020 WL 7040125, at *3.  And Plaintiffs' other cases[3] are out-of-date decisions that have been invalidated by the "clear trend among district courts in this

---

(C.D. Cal. Oct. 10, 2019); *Babaian v. Dunkin' Brands Grp.*, Inc., 2018 WL 11445614, at *4-5 (C.D. Cal. Feb. 16, 2018); *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 990 (N.D. Cal. 2016); *Morales v. Unilever U.S., Inc.*, 2014 WL 1389613, at *5 (E.D. Cal. Apr. 9, 2014); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007).

[3] *Alvarez v. NBTY, Inc.*, 2017 WL 6059159, at *8 (S.D. Cal. Dec. 6, 2017); *In re Hydroxycut Mktg. & Sales Pracs. Litig.*, 801 F. Supp. 2d 993, 1005 (S.D. Cal. 2011); *Jepson v. Ticor Title Ins. Co.*, 2007 WL 2060856, at *1 (W.D. Wash. May 1, 2007).

1   Circuit to address class standing issues at the pleading stage." *Marks*, 2025 WL
2   2767941, at *3.

3       Courts have likewise rejected the "pragmatic reasons" Plaintiffs offer for
4   deferring dismissal.  Opp. 6.  Rather than "streamlin[ing]" the litigation as Plaintiffs
5   suggest, *id.*, "[t]here is significant risk of wasted effort and resources by the Court
6   and the parties should Plaintiffs be permitted to proceed to class discovery with a
7   putative nationwide class, when Plaintiffs can only plead [certain] state law
8   claims." *Marks*, 2025 WL 2767941, at *4.  "There is simply nothing of legal
9   substance to permit such a putative class to proceed," so "it is neither prudent nor
10  necessary to defer until class certification."  *Id.*  Similarly, Plaintiffs' suggestion
11  they may "add representatives from other states" as the case progresses, Opp. 6, is
12  "based on nothing more than … speculation" and will simply lead to further delay.[4]
13  *Hadi*, 2025 WL 841804, at *2-3.

14      The Court should decline Plaintiffs' footnote request to amend their
15  Complaint to cure this defect.  Opp. 7 n.3.  Plaintiffs provide no explanation for
16  why they failed to add the requisite named representatives from other states when
17  they prepared and filed their Complaint in July, nearly a year after the first private
18  action was filed.  *See Hadi*, 2025 WL 841804, at *2-3 (dismissing similar claims
19  without leave to amend where plaintiffs "had more than a year to find additional
20  class representatives").  Plaintiffs' request also fails to comply with the Court's
21  rules for amending their Complaint.  *See* C.D. Cal. L.R. 6-1 (requiring written
22  notice of motion); *id.* 7-5 (requiring memorandum in support of motion); *id.* 15-1
23

24  _____
    [4] Plaintiffs' remaining standing arguments lack merit.  Plaintiffs posit that
25  Defendants are conflating standing "with Rule 23 class action requirements."  Opp.
    5.  But Defendants' argument is that dismissal must be granted because Plaintiffs
26  do not reside and were not injured in the various states identified in the Complaint,
    not that Plaintiffs' injuries are atypical compared to the proposed class.  Likewise,
27  the fact that some states have similar legal elements for invasion of privacy, unfair
    competition, and unjust enrichment, Opp. 6, does not absolve Plaintiffs of
28  demonstrating they possess Article III standing to assert those claims in the first
    place.

("[a]ny proposed amended pleading must be filed as an attachment to the related
motion"); *see also id.* 7-4 ("[t]he Court may decline to consider a motion unless it
meets [local rule] requirements").

### C.    The Court Should Dismiss Plaintiffs' Privacy Claims.

#### 1.    Plaintiffs fail to state a claim for intrusion upon seclusion or a violation of the California Constitution.

Plaintiffs assert that only "factual disputes" exist with respect to whether they
have adequately stated claims for intrusion upon seclusion and violation of the
California Constitution.  Opp. 7-12.  Not so.  To survive dismissal, Plaintiffs bear
the burden of pleading "enough facts" to "nudge[] their claims across the line from
conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
Plaintiffs' privacy allegations fall well short of this standard.

***Reasonable expectation of privacy.***  Plaintiffs offer three reasons why they
purportedly retained a "reasonable expectation of privacy" in their personal
information.  Opp. 7-10.  Each lacks merit.

First, Plaintiffs claim they thought their personal information would remain
private because they "believe[d] that TikTok would abide by" COPPA's prohibition
on the collection of children's personal information absent parental notice and
consent. *Id.* at 7-8.  But to survive dismissal, Plaintiffs must plead facts
demonstrating they had an "expectation of privacy in a specific context" that is
"objectively reasonable under the circumstances, especially in light of the
competing social interests involved." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal.
4th 1, 26-27 (Cal. 1994); *see also Med. Lab'y Mgmt. Consultants v. Am. Broad.
Cos.*, 306 F.3d 806, 812-13 (9th Cir. 2002).  "[T]he relevant question … is whether
a user would reasonably expect that [Defendants] would have access to the … data"
collected.  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 602 (9th Cir.

2020); *see also Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022) (courts also consider "defendant's representations to its customers").

It is undisputed that (a) Defendants disclosed in TikTok's Privacy Policy that the "13+ Experience" version of the platform would collect data from users over the age of 13, Compl. ¶ 1; (b) consistent with COPPA,[5] Defendants implemented an age gate to screen out under-13 users and direct them to Kids Mode to avoid collecting data prohibited by COPPA, Compl. ¶¶ 103-04; and (c) Plaintiffs[6] nonetheless voluntarily joined the 13+ Experience by intentionally evading Defendants' age gate and deliberately misrepresenting their ages to access the platform, *id.* ¶¶ 243, 255, 267, 276, 285, 294, 303, 311, 319, 331, 339, 347, 359, 379, 388.  Given these facts, Plaintiffs cannot reasonably expect that Defendants would refrain from collecting and using their data when Plaintiffs were told the exact opposite, then still took deliberate steps to circumvent the age-gate protections Defendants implemented.  This is particularly so given the absence of any allegations that Plaintiffs' parents did not know about or encourage their children to join or use the 13+ Experience.  Put differently, it is not unreasonable for Defendants to believe Plaintiffs were exactly who they said they were—users aged 13 or older.  Any different result would run counter to the FTC's guidance that website operators "may rely on the age information users enter" in the age gate, "even if that age information is not accurate."[7]

In any event, Plaintiffs cannot rely solely on an alleged COPPA violation to sustain their privacy claims.  State-law claims based on COPPA require alleging

---

[5] Federal Trade Commission, *Complying with COPPA: Frequently Asked Questions* (July 2020), https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions at D.4, H.3.

[6] Although one Plaintiff joined Kids Mode, that Plaintiff still lacked any reasonable expectation of privacy because Defendants' Children's Privacy Policy disclosed any data collected in Kids Mode.  Mot. 11-12; *see infra* pp. 11-13.  His or her privacy claim also fails because Defendants' conduct was not highly offensive.  *See infra* pp. 11-13.

[7] *See supra* note 5 at A.12.

more than a bare statutory violation—Plaintiffs must adequately allege the elements underlying their privacy claims have been met. Mot. 9-10. This is precisely why courts have dismissed intrusion-upon-seclusion claims "based on nothing more than alleged violations of COPPA." *Manigault-Johnson v. Google, LLC*, 2019 WL 3006646, at *6 (D.S.C. Mar. 31, 2019).

This case is unlike *A.B. by and through Turner v. Google LLC*, 737 F. Supp. 3d 869 (N.D. Cal. 2024), where plaintiffs signed up for and used "children's apps" from the Google Play store and believed those applications would not collect their information for behavioral advertising, *id.* at 871. Here, Plaintiffs intentionally joined a platform that is specifically *not* meant for children. Plaintiffs claim that "misreport[ing of] their age is a red herring," and cite to generalized allegations which they say demonstrate "TikTok knowingly collects data from children under 13." Opp. 9. But Plaintiffs cannot rely on general allegations about the TikTok platform as a whole to infer that Defendants specifically knew the 17 Named Plaintiffs were underage notwithstanding their misrepresentations to the contrary. *See*, *e.g.*, Compl. ¶¶ 152-54; *cf. also In re Alphabet Derivative Stockholder Litig.*, 2022 WL 1045642, at *1 (N.D. Cal. 2022) (an operator is subject to COPPA when it "learns [that] an *individual user* is a child"). Indeed, the only specific facts alleged vis-à-vis the Named Plaintiffs are that one Plaintiff supposedly searched for "12 yr old" [sic] makeup and trends in November 2024, after filing suit, *id.* ¶ 249, and another Plaintiff left a single comment about her purported age, *id.* ¶ 353. These bare-bones allegations of conduct that occurred, if at all, after those Plaintiffs knowingly joined the 13+ Experience are not sufficient factual content to render Plaintiffs' purported expectation of privacy plausible, much less reasonable, given their explicit representations that they were 13 or older. *Twombly*, 550 U.S. at 570.

Next, Plaintiffs contend Defendants' Privacy Policy is inapposite because it discloses that Defendants will collect "personal information of users and other

individuals age 13 and over."  Opp. 8.  This is precisely Defendants' point.
Plaintiffs told Defendants they were 13 or over and therefore should have known
their data would be collected.  They cannot turn around and simply assert, without
alleging supporting facts, that they expected their data would not be collected in
order to survive a motion to dismiss.  *See, e.g.*, *Rivers v. Skate Warehouse*, LLC,
2013 WL 12128800, at *12 n.66 (C.D. Cal. Apr. 15, 2013) (allegations that a
plaintiff had an agreement with defendant and also that plaintiff did not consent to
the terms of the agreement were "inconsistent facts" requiring dismissal).  Given
these circumstances, Plaintiffs should reasonably expect they would be treated
consistent with the age they represented to the platform—*i.e.*, "13 and over."  *See*
*Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 525 (C.D. Cal. 2021) ("[T]he plaintiff in
an invasion of privacy case must have conducted himself or herself in a manner
consistent with an actual expectation of privacy.").

Plaintiffs' related argument—that Defendants cannot rely on their Privacy
Policy because the Complaint deliberately omits any allegation that Plaintiffs "saw,
let alone affirmatively consented" to that policy—also fails.  Opp. 9; *see also*
*D'Angelo v. FCA U.S., LLC*, 726 F. Supp. 3d 1179, 1206 (S.D. Cal. 2024) (holding
"allegations that a plaintiff did not consent to data collection practices, without
more, does not support a reasonable expectation of privacy").  First, "[a] party
cannot avoid dismissal simply by omitting facts essential to his causes of action."
*Pour v. Wells Fargo Bank*, 2020 WL 12893826, at *4 n.4 (N.D. Cal. Dec. 1, 2020).
If seeing the Privacy Policy is material to Plaintiffs' claims one way or another,
they must allege that.  Moreover, Plaintiffs repeatedly rely on and cite to this very
same policy throughout the Complaint.  Compl. ¶¶ 1 n.3, 74 n.26, 84 n.33, 97 n.49,
99 n.51, 124 n.59, 130 n.64.  And whether a plaintiff has a reasonable expectation
of privacy is an "objective[]" test.  *Osuna v. LaVoice*, 2025 WL 2636267, at *9
(E.D. Cal. Sept. 12, 2025).  It is an objective reality that "[c]ontemporary internet

browsing involves the collection of users' data, including by tracking users across the internet, and a reasonable user should expect as much." *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024); *see also Libman v. Apple, Inc.*, 2024 WL 4314791, at *15 (N.D. Cal. Sept. 26, 2024) (no reasonable expectation of privacy where "Apple collected data from Plaintiffs' interactions with Apple's own apps" because "[n]o reasonable consumer would expect to engage in a transaction with Apple without some data being collected from Apple to process that transaction").

Plaintiffs also claim they reasonably expected that data concerning the videos they watched on TikTok, as well as the amount of time spent watching those videos and on the platform overall, would remain private. Opp. 9-10. Again, courts have repeatedly confirmed "the internet is not a place where users have a reasonable expectation of privacy." *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *1-2 (S.D. Cal. May 8, 2024) (collecting cases), *aff'd*, 2025 WL 1704437 (9th Cir. June 18, 2025); *see Posadas v. Goodyear Tire & Rubber Co.*, 2024 WL 5114133, at *6 (S.D. Cal. Dec. 13, 2024). It defies reason that Plaintiffs believed an app designed to suggest new content that might interest a user would not use video watch history to make such content suggestions.

**Highly Offensive.** Defendants' alleged collection of data from Plaintiffs is not the kind of "highly offensive" conduct required to state a privacy claim. To the contrary, courts have recognized that "data collection and disclosure" is better characterized as "routine commercial behavior" than a "highly offensive intrusion of privacy." *Hammerling*, 615 F. Supp. 3d at 1090-91 & n.11 (collecting cases); *see also In re Google, Inc. Priv. Policy Litig.*, 58 F. Supp. 3d 968, 985 (N.D. Cal. 2014); *Popa v. Microsoft Corp.*, 2025 WL 2448824, at *5 (9th Cir. Aug. 26, 2025) (data collection was not highly offensive where plaintiff identified "no embarrassing, invasive, or otherwise private information" that was collected, such

as "sensitive medical or financial information").  Indeed, collection of data as
varied as a "replay of the user's behavior on [a] website," "mouse clicks,"
"keystrokes," "the user's payment card information," "IP address," "location at the
time of the visit," browsing and viewing history, and "the user's browser type and
operating system on their devices" has all been deemed not highly offensive.  *Saleh*,
562 F. Supp. 3d at 525; *see also, e.g.*, *Posadas*, 2024 WL 5114133, at *6 (personal
information entered into search bar); *Popa*, 2025 WL 2448824, at *2, *5 (behavior
replay and information about what user viewed on a website); *Jones v. Peloton
Interactive, Inc.*, 720 F. Supp. 3d 940 (S.D. Cal. 2024) (chat communications);
*Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1126-27 (S.D. Cal. 2023)
(name, emails, phone numbers, addresses, social security numbers, browsing
histories, and user locations); *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 72 (E.D.
Pa. 2023) (website activity), *aff'd* 148 F.4th 153 (3d Cir. 2025).

Plaintiffs rely on two district court decisions featuring "surreptitious"
conduct and "plus factors" not present here.  For example, Plaintiffs cite *Turner*,
but that opinion involved the *opposite* of their allegations.  In *Turner*, Google
misrepresented that certain applications were meant for children under 13, but then
"surreptitiously collect[ed] data" from users of those apps.  *Id.* at 875-76, 884-85.
The court held that Google's conduct amounted to an "egregious intrusion into
minors' expectation of privacy."  *Id.* at 884-85.  Here, by contrast, Defendants
never claimed the 13+ Experience was appropriate for under-13 users, and their
conduct was completely transparent.  Defendants told Plaintiffs the 13+ Experience
was for users aged 13 or older, disclosed that data would be collected from users of
the 13+ Experience, and implemented an age gate, an age-sorting tool approved by
the FTC, which directed underage users to Kids Mode—unless, as here, Plaintiffs
evaded the age gate by lying about their age.  Thus, and unlike in *Turner*, the
misrepresentations were by Plaintiffs, not Defendants.  *Turner*, 737 F. Supp. 3d at

875-76; *see also In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 295 (3d
Cir. 2016) (only permitting privacy claim to proceed where plaintiffs sufficiently
alleged "duplicitous tactics").

  *Hubbard v. Google LLC*, 2025 WL 82211 (N.D. Cal. Jan. 13, 2025), is also
distinguishable.  That case involved Google's collection of data from under-13
children who used YouTube.  *Id.* at *2.  After dismissing the complaint three times,
the court finally allowed plaintiffs' privacy claims to proceed because they alleged
two "plus factors" rendering Google's data collection something more than
"ubiquitous, commercial behavior": (1) "target[ing] children" on YouTube, as
demonstrated by Google's "develop[ment] and circulat[ion] [of] an internal
narrative explaining that 'YouTube is a MUST buy for kids 6-11,'" and
(2) "knowing" violations of COPPA, evidenced by "several content creators
notif[ying] Google" about potential violations.  *Id.* at *4-5.

  Plaintiffs have not alleged sufficient facts demonstrating such "plus factors"
are present here.  For example, Plaintiffs assert that Defendants "target[ed]
children" because the platform "hosts and promotes accounts that feature content
from children's brands, child models, [and] child influencers."  Opp. 11.  But
allowing *users* to post content that might appeal to children on the platform is a far
cry from the "internal narrative" about using advertising to draw in underage users
in *Hubbard,* and Plaintiffs' Complaint is devoid of any similar facts.  Plaintiffs also
argue Defendants' conduct was highly offensive because they "knew" they were
"collecting children's data in violation of COPPA" following the 2019 settlement
with the FTC.  *Id.*  But Plaintiffs elsewhere acknowledge that Defendants undertake
extensive efforts to prevent, detect, and remove under-13 users from the 13+
Experience.  Mot. 3-5.  And for all of Plaintiffs' general allegations about
Defendants' supposed "knowledge" of under-13 users on the platform, Plaintiffs do
not contend that Defendants possessed any specific knowledge about *Plaintiffs'*

1  accounts on the platform.  Indeed, to this day, Defendants have been unable to

2  confirm the identity of Plaintiffs' TikTok accounts because Plaintiffs sued

3  anonymously and have refused to share their account information.  Absent any

4  indication that Defendants "knowingly" violated COPPA by collecting personal

5  information specifically *from Plaintiffs*, they cannot identify any "plus factor"

6  which could qualify Defendants' conduct as highly offensive.

7              **2.    Plaintiffs fail to state a claim under the New York Civil
                      Rights Law.**

8

9        Plaintiffs' defense of their New York Civil Rights Law claim misses the

10 mark.  Plaintiffs concede they must demonstrate use of their "name, portrait,

11 picture, or voice" for "purposes of advertising or trade."  *Walker v. Thompson*, 404

12 F. Supp. 3d 819, 824 (S.D.N.Y. 2019).  But courts have construed the "advertising-

13 or-trade" requirement as satisfied only where a plaintiff's identity is used to suggest

14 approval of the goods or services to the public—for example, where one's identity

15 "appears *in* … an advertisement," *Beverley v. Choices Women's Med. Ctr., Inc.*, 78

16 N.Y.2d 745, 751 (1991), or where there is an "*endorsement* of the publication in

17 question." *Yantha v. Omni*, 2013 WL 5327516, at *9 (E.D.N.Y. Sept. 20, 2013).

18 Use of Plaintiffs' identity to "*target* advertisements" to them is not an

19 "endorsement" by Plaintiffs of the products featured in those ads.  Opp. 12-13

20 (alleging Defendants used Plaintiffs' personal information "to build profiles and

21 target advertisements to those children").  Plaintiffs do not identify a single New

22 York case where a court has interpreted New York's Civil Rights Law in such a

23 sweepingly broad fashion.

24       Plaintiffs also misread *Curtis v. City of New York*, 195 N.Y.S.3d 592 (N.Y.

25 App. Div. 2023), and *Smith v. Chase Manhattan Bank*, 741 N.Y.S.2d 100 (N.Y.

26 App. Div. 2002), both of which are directly on point.  Opp. 13.  In *Curtis*, the court

27 granted dismissal because "a restaurant's use of customers' names and addresses"

28

REPLY ISO MOT. TO DISMISS
MDL No. 3144
NO. 2:25-ML-03144-GW-RAO

for "market[ing]" purposes did not involve "appropriat[ing]" the plaintiff's identity "to the public to promote a particular good or service." 195 N.Y.S.3d at 598. While Plaintiffs accuse Defendants of "omit[ting] the key admonition" in *Curtis*, Opp. 13, the last part of the sentence Plaintiffs quote directly underscores Defendants' point—the New York statute is meant to protect against "a business's dissemination of an individual's name and/or likeness *to the public* to promote a particular good or service or its commercial enterprise." *Id.* Likewise, in *Smith* the court affirmed dismissal where Chase Bank sold the plaintiffs' personal information to a third-party that provided their information to telemarketers because the statute was "never intended to address the wrongs complained of by plaintiffs." 741 N.Y.S.2d at 103. So too here. Plaintiffs' allegation that Defendants used Plaintiffs' information to target them with marketing is the exact conduct the court held was not actionable in *Smith*.

### D.    The Court Should Dismiss Plaintiffs' Unfair-Competition Claims.

Plaintiffs devote page-after-page to formulaic recitations of the legal elements of the various state's unfair-competition laws, as if to suggest the sheer number of recitations is sufficient to allege a plausible claim for relief. Opp. 17-21. Yet nowhere in their brief do Plaintiffs answer the critical question raised by Defendants' motion—namely, the complete absence of any specific facts demonstrating that Plaintiffs themselves suffered a concrete injury by virtue of Defendants' alleged data collection. As explained in Defendants' motion and below, dismissal of the unfair-competition claims is warranted under each of the theories of injury Plaintiffs advance, regardless of whether a state's law requires "lost money or property" (California), an "ascertainable loss of money or property" (Connecticut, Pennsylvania, and Missouri), or some other "loss" (Florida, Georgia, and Washington). Mot. 17 & n.19.[8]

---

[8] Plaintiffs suggest that Florida's unfair-competition statute has a minimal injury requirement when seeking injunctive relief. Opp. 19-20. Regardless, that claim still fails for lack of Article III standing because Plaintiffs do not plausibly allege

REPLY ISO MOT. TO DISMISS
MDL No. 3144
NO. 2:25-ML-03144-GW-RAO

***Loss-of-Control.***  Plaintiffs fail to specifically allege any plausible facts demonstrating they "lost control" of their personal information.  All Plaintiffs say is Defendants "collected a broad range of personal information from children under 13 without consent" and "ignored both parental deletion requests and accounts flagged by [their] own systems as underage."  Opp. 14-15.  But generic allegations concerning Defendants' supposed conduct vis-à-vis the proposed class are no substitute for pleading facts demonstrating that *Plaintiffs'* personal information went "beyond [their] control."  *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 862-63 (N.D. Cal. 2011).  As explained, Plaintiffs or their parents could have easily deleted their accounts or requested deletion of their data any time pursuant to TikTok's policies, COPPA, or state law.  *See* Mot. 18.  Plaintiffs' allegations simply do not demonstrate that Defendants caused Plaintiffs to relinquish control over their personal information.

***Loss-of-Value.***  Plaintiffs also fail to identify any specific facts demonstrating their personal information had any monetary value "to *[them]*."  *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019); *see* Mot. 20-21.  Again, the only allegations cited by Plaintiffs are generalized assertions that personal information is an "asset that [has] economic value."  Opp. 15.  That is not sufficient to avoid dismissal.

Plaintiffs' legal authorities are distinguishable, either because they were wrongly decided or involved different facts.  For example, in *Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021), the court relied on three unpublished opinions and a District of Maryland decision to conclude that alleging a "loss of … personal information" alone was sufficient to establish a cognizable injury.  *Id.* at 636.  But "courts have consistently found that alleging the economic value of data is not enough" to establish an unfair-competition injury.  *Greenley v. Kochava*, 684

that they suffered—or will suffer—any harm from Defendants' conduct.  Mot. 18 & n.21.

1    F. Supp. 3d 1024, 1054 (S.D. Cal. 2023).  Rather, to avoid dismissal Plaintiffs must

2    allege facts showing the data has "economic value *to [them]*,"—*i.e.*, that they

3    "wished to sell [their] browsing data but [were] unable to do so or would be paid

4    less for the data." *Griffith v. TikTok*, 697 F. Supp. 3d 963, 978 (C.D. Cal. 2023).

5    Plaintiffs' Complaint is completely devoid of any such facts.

6        *Brown v. Google LLC*, 2021 WL 6064009 (N.D. Cal. Dec. 22, 2021), is

7    likewise distinguishable.  There, the court denied dismissal of unfair competition

8    claims for two reasons.  First, Google had previously paid adults for their browsing

9    histories, so it was plausible that plaintiffs would have demanded payment for their

10   data. *Id.* at *15.  Second, each adult plaintiff "alleged that he or she [was] aware

11   of" other platforms that would have paid for their data, making it "plausible that

12   Plaintiffs [would] decide to sell their data at some point." *Id.*  Of course, no similar

13   facts exist here.  Plaintiffs do not claim that Defendants would have paid for their

14   personal information, or that Plaintiffs were "aware" of platforms that would have

15   done so.  Nor could they—Plaintiffs are minor children and concede that buying

16   and selling their data would be an "illegal[] … practice" under COPPA.  Opp. 15.

17   And while Plaintiffs say in passing that a "market" exists, that allegation is not

18   credible, much less plausible, given that Plaintiffs' information could never be

19   legally sold.  That Plaintiffs could *theoretically* sell their personal information

20   "does not mean that [they] have lost money or property as a result." *Hazel v.*

21   *Prudential Fin., Inc.*, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023).

22       *Turner* was wrongly decided.  There, the court relied on *Calhoun* and *Brown*

23   to conclude that merely alleging a "market for their data" was enough for under-13

24   plaintiffs to demonstrate an unfair-competition injury.  737 F. Supp. 3d at 881-82.

25   As explained, other courts have reached the opposite conclusion. *See supra* at 16-

26   17.  Nor is the reasoning in *Brown* and *Calhoun* applicable in cases like this and

27   *Turner*, where the plaintiffs are children.  The whole premise of Plaintiffs' lawsuit

28

1  is that monetization of their personal information is illegal.  Plaintiffs' assertion that

2  they were injured because they or their parents supposedly would have sold

3  Plaintiffs' personal information despite COPPA's restrictions and but for

4  Defendants' alleged conduct is fundamentally at odds with that position and not

5  remotely plausible.  Mot. 20; *see Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th

6  Cir. 2009) ("no standing" to bring unfair-competition claim because plaintiffs'

7  theory of injury "rest[ed] on a hypothetical risk").

8      ***Benefit-of-the-Bargain***.  Plaintiffs admit they paid nothing to use TikTok's

9  free platform, but nonetheless contend they failed to receive the "benefit of the

10  bargain" because they "paid with their data and attention" and received nothing in

11  return.  Opp. 16.  That does not qualify as an "economic injury" in which Plaintiffs

12  "surrender[ed] in a transaction more" or "acquired … less" than they would

13  have.  *Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1019-20 (N.D. Cal. 2019).

14  As explained, the Complaint contains no facts showing that Plaintiffs' "data and

15  attention" have any economic value to them.  *See supra* at 16-17.  Nor have

16  Plaintiffs adequately pled their data was somehow worth "more" than what they

17  received from the TikTok platform in return: the ability to use a widely popular

18  entertainment platform without paying a dime, and which they were only able to

19  fully access in the first instance by misrepresenting their age.

20      Plaintiffs' citations to *Brown* and *In re Meta Pixel Tax Filing Cases*, 724 F.

21  Supp. 3d 987 (N.D. Cal. 2024), are unavailing.  *Brown* is inapposite for the reasons

22  previously stated: Plaintiffs have not sufficiently pled they "provided valuable data

23  to [TikTok.]"  *See supra* at 16-17.  As for *Meta Pixel*, the court found the plaintiffs'

24  allegations concerning a free tax service were plausible because users "provide[d]

25  certain information with expectations of security."  *Id.* at 1024.  Here, users who

26  enter the TikTok platform by misrepresenting their age cannot legitimately expect

27  the platform will be designed for their age group, so any analogous expectation of

28

REPLY ISO MOT. TO DISMISS
MDL No. 3144
NO. 2:25-ML-03144-GW-RAO

security is implausible.  *See supra* Section C.1.  Plaintiffs' bare assertion that the

platform "induced" under-13 users "to bypass age restrictions" to join is pure

rhetoric, and also wrong.  Opp. 16.  Plaintiffs plead no specific facts alleging, for

example, that the platform encouraged children to falsely enter an age of 13 or

older.

     ***Right-to-Exclude.***  Plaintiffs agree their "right to exclude" theory of injury is

wholly contingent on demonstrating a property right in their data.  Opp. 17.  As

support, Plaintiffs assert that *Brown* "expressly rejected" the argument that no

property right in private information exists.  *Id*.  Not so.  The *Brown* court expressly

declined to reach that issue and held it "need not determine whether data constitutes

property."  2021 WL 6064009, at *16.  Likewise, *Meta Pixel* endorsed a right-to-

exclude theory but completely bypassed the Ninth Circuit's well-established test for

determining whether a property right exists.  724 F. Supp. 3d at 1024.  *Meta Pixel*

instead relied on *Calhoun* to recognize a property right in personal information—a

conclusion other courts have criticized as "tenuous."  *Doe I v. Google LLC*, 741 F.

Supp. 3d 828, 845 (N.D. Cal. 2024).  Courts applying the correct test have

repeatedly confirmed there is no property right in personal information.  *See* Mot.

15-16 (collecting cases).  The Court should do the same here.

     **E.    The Court Should Dismiss Plaintiffs' Unjust-Enrichment Claims.**

     Plaintiffs fail to plead essential facts linking Defendants' purported

enrichment to any specific and tangible loss by Plaintiffs, or that any such

enrichment was unjust.  The unjust enrichment claims should be dismissed.

     **1.    Plaintiffs do not plausibly allege that Defendants profited at
*their* expense.**

     Plaintiffs say they have sufficiently demonstrated that Defendants profited at

their expense because "pages of the Consolidated Complaint" recite how "data from

children under age 13 has … value."  Opp. 21.  That argument fails, for the reasons

already stated:  Plaintiffs have not plausibly alleged their information has any independent value to them personally.  *See supra* at 16-17.  It also misses the point. Even if vague allegations concerning the hypothetical value of under-13 users' data were sufficient—a proposition which is both implausible and nonsensical because the sale of such data would be illegal—the Complaint is devoid of any facts suggesting Plaintiffs attempted to sell that information or Defendants' conduct prevented them from selling it at a higher price.  Such bare-bones allegations are not enough to adequately allege an unjust-enrichment claim.  *See Mai v. Supercell Oy*, 2021 WL 4267487, at *3 (N.D. Cal. Sept. 20, 2021) ("plaintiffs [who] lack[] standing on their [unfair competition] claim … thus also [lack standing to pursue] unjust enrichment claims").

Plaintiffs' assertions that "some jurisdictions, including California, recognize[] a right to … unjust enrichment, even where an individual has not suffered a corresponding loss" is wrong.  Opp. 22.  Most states do require the plaintiff to plead facts demonstrating loss at their expense.  *See* Mot. Index B.  And for outlier states like California, where the authorities are split on whether a standalone claim for unjust enrichment even exists,[9] Article III still applies and requires that Plaintiffs demonstrate *some* injury to have standing to bring their claims.

### 2. Plaintiffs do not plausibly allege that Defendants unjustly retained a benefit from use of *Plaintiffs'* data.

Plaintiffs likewise cannot demonstrate Defendants unjustly retained any benefit by collecting and using Plaintiffs' data.  To plausibly allege that Defendants' advertising revenue and profits are directly tied to the imagined sale of Plaintiffs' own data, Plaintiffs must plead facts demonstrating *their* personal

---

[9] Plaintiffs concede that courts are split on whether California recognizes a cause of action for unjust enrichment.  Opp. 23.  Defendants submit that the authorities declining to recognize a distinct cause of action are better reasoned.  *See* Mot. 24.

information was (a) collected while they were under 13; and (b) sold for a profit. The Complaint does not come close to satisfying this standard. To the contrary, the allegations Plaintiffs cite are general assertions that TikTok "profits" from targeted advertising to "child-users," and do not establish that those profits were directly generated by sale or use of *Plaintiffs'* personal information. *See* Opp. 24; *see also* Compl. ¶ 1 (Defendants collect private information "to increase their profits"), ¶ 3 (TikTok "[is] driven by profit"); ¶ 87 ("TikTok profits enormously from children"); ¶ 228 (Defendants gained a "significant economic benefit" from use of private information "of children under 13").

Plaintiffs' assertion that they are not required to specifically quantify their damages at "this early stage of the case" misses the point. Opp. 24. Defendants are merely asking that Plaintiffs comply with federal pleading standards, which require them to "plead [sufficient] *factual matter* that, if taken as true, states a claim." *Ashcroft v. Iqbal*, 556 U.S. 663, 666 (2009). Plaintiffs' "conclusory allegation[s]" are thus insufficient. *Rosal v. First Fed. Bank*, 671 F. Supp. 2d 1111, 1133 (N.D. Cal. 2009); *see also Coffee v. Google, LLC*, 2022 WL 94986, at *11 (N.D. Cal. Jan. 10, 2022).

Plaintiffs' discussion of the case law is unpersuasive. For instance, Plaintiffs say their unjust enrichment allegations "are at least as strong" as those in *Turner* and *In re Facebook, Inc., Consumer Privacy User Profile Litigation*, 402 F. Supp. 3d 767, 808 (N.D. Cal. 2019). But *Turner* offered little-to-no reasoning for its decision, and the plaintiffs there specifically alleged the "defendants … collect[ed] *plaintiffs'* personal information and employ[ed] *it* to target advertisements to children." 737 F. Supp. 3d at 885. Similarly, in *In re Facebook*, plaintiffs alleged that Facebook "improperly disseminat[ed] *their* information." 402 F. Supp. 3d at 803. Plaintiffs also assert that *Rosal* and *Coffee* are "inapt." Opp. 24. But they never explain why, and both opinions plainly demonstrate that general allegations

REPLY ISO MOT. TO DISMISS
MDL No. 3144
NO. 2:25-ML-03144-GW-RAO

1  about "retaining profits … at the expense of plaintiff[s]" are insufficient to state a

2  claim.  *Rosal*, 671 F. Supp. 2d at 1133; *see Coffee*, 2022 WL 94986, at \*11.

3          **F.     The Court Should Dismiss Plaintiffs' Negligence Claims.**

4          Plaintiffs' defense of their negligence claims simply repeat the exact same

5  injury arguments addressed *ad nauseum*.  Opp. 24-26.  Plaintiffs are required to

6  plead sufficient facts demonstrating an injury to state a claim for negligence.  Their

7  bare allegation that Defendants' conduct "violat[ed] … [their] privacy" and caused

8  them to "los[e] control over when, how, and for what purpose their personal

9  information is collected, used, and disclosed," Compl. ¶¶ 492, 564, 646, 683, 744,

10  817, 854, 915, is not sufficient factual content to establish Plaintiffs suffered an

11  "appreciable, nonspeculative, present injury," *In re Sony Gaming Networks &*

12  *Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 962 (S.D. Cal. 2012).

13  Moreover, *In re iPhone Application Litigation*, 844 F. Supp. 2d 1040, 1063 (N.D.

14  Cal. 2012), is material and controlling, despite the fact that it involved adults rather

15  than children.  *Cf. Nickelodeon*, 827 F.3d at 294-95 (finding "use of cookies to

16  track *children* [was not] particularly odious" or different from collection of data

17  from adults).  Like their other claims, Plaintiffs' negligence claims fail for lack of a

18  cognizable injury.

19  **III.   CONCLUSION**

20          For all the foregoing reasons, the Court should dismiss the Complaint.

21

22

23

24

25

26

27

28

REPLY ISO MOT. TO DISMISS
MDL No. 3144
NO. 2:25-ML-03144-GW-RAO

Dated: October 13, 2025                    Respectfully submitted,


                                           By:    */s/ Daniel M. Petrocelli*
                                                  Daniel M. Petrocelli

                                           DANIEL M. PETROCELLI
                                           dpetrocelli@omm.com
                                           O'MELVENY & MYERS LLP
                                           1999 Avenue of the Stars
                                           Los Angeles, California 90067-6035
                                           Telephone:  +1 310 553 6700
                                           Facsimile:   +1 310 246 6779

                                           STEPHEN D. BRODY
                                           sbrody@omm.com
                                           O'MELVENY & MYERS LLP
                                           1625 Eye Street, NW
                                           Washington, D.C. 20006-4001
                                           Telephone:  +1 202 383 5300
                                           Facsimile:   +1 202 383 5414

                                           MATTHEW D. POWERS (S.B.
                                           #212682)
                                           mpowers@omm.com
                                           O'MELVENY & MYERS LLP
                                           Two Embarcadero Center
                                           San Francisco, CA 94111
                                           Telephone:  +1 415 984 8700
                                           Facsimile:   +1 415 984 8701

                                           *Attorneys for Defendants ByteDance Ltd.,
                                           ByteDance Inc., TikTok Ltd., TikTok Inc.,
                                           TikTok LLC, TikTok Pte. Ltd., and TikTok
                                           U.S. Data Security Inc.*

REPLY ISO MOT. TO DISMISS
MDL No. 3144
NO. 2:25-ML-03144-GW-RAO

**CERTIFICATE OF SERVICE**

I certify that on October 13, 2025, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which automatically services all counsel of record for the parties who have appeared.

Dated:  October 13, 2025                    */s/ Daniel M. Petrocelli*
                                             Daniel M. Petrocelli

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing memorandum of law contains 6,826 words, which complies with the word limit set by Local Rule 11-6.1.


Dated: October 13, 2025                    */s/ Daniel M. Petrocelli*
                                            Daniel M. Petrocelli

REPLY ISO MOT. TO DISMISS
MDL No. 3144
NO. 2:25-ML-03144-GW-RAO