DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, Suite 800
Los Angeles, California 90067-6035
Telephone: +1 310 553 6700
Facsimile: +1 310 246 6779

STEPHEN D. BRODY (*pro hac vice*)
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone: +1 202 383 5300
Facsimile: +1 202 383 5414

MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
San Francisco, CA 94111
Telephone: +1 415 984 8700
Facsimile: +1 415 984 8701

*Attorneys for Defendants ByteDance Ltd.,
ByteDance Inc., TikTok Ltd., TikTok Inc.,
TikTok LLC, TikTok Pte. Ltd., and
TikTok U.S. Data Security Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TIKTOK INC., MINOR PRIVACY LITIGATION | MDL NO. 3144 |
| | 2:25-ml-03144-GW-RAO |
| | **DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO STAY** |
| | Hon. George H. Wu |
| | Hearing Date: November 6, 2025 |
| | Time: 8:30 a.m. |
| | Courtroom: 9D |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................ 1

II.    ARGUMENT ........................................................... 2

    A.    The Orderly Course of Justice Weighs in Favor of a Stay. .................. 2

        1.    A Stay Is Consistent with COPPA and Congress's Determination that the Federal Government Is the Primary Enforcer of the Statute. ................................. 3

        2.    A Stay Avoids the Risk of Inconsistent Judgments. ................. 5

        3.    A Stay Will Promote Judicial Efficiency. .................................. 9

    B.    Defendants Will Suffer Considerable Hardship and Inequity Absent a Stay. ..................................................... 11

    C.    Plaintiffs Will Not Be Prejudiced By a Stay ....................................... 13

III.    CONCLUSION ......................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arroyo v. DTPS C-12, LLC*,
2022 WL 17224717 (C.D. Cal. Jan. 31, 2022)......................................................15

*Ball ex rel. Regeneron Pharmaceuticals, Inc., v. Baker*,
2022 WL 17808785 (S.D.N.Y. Dec. 18, 2022).................................................8, 9

*Blue Cross & Blue Shield of Mass., Inc. v. Regeneron Pharms., Inc.*,
633 F. Supp. 3d 385 (D. Mass. 2022) .........................................................6, 9, 15

*Briggs v. Merck Sharp & Dohme*,
796 F.3d 1038 (9th Cir. 2015) ...............................................................................10

*Clayborn v. Amazon.com Servs. LLC*,
2021 WL 7707763 (C.D. Cal. Nov. 9, 2021) ..........................................................6

*Evolutionary Intelligence, LLC v. Millenial Media, Inc.*,
2014 WL 2738501 (N.D. Cal. June 11, 2014) .................................................14, 15

*Grimm v. APN, Inc.*,
2018 WL 4793088 (C.D. Cal. Jan. 8, 2018).........................................................14

*Halman Aldubi Provident and Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*,
2022 WL 3042768 (E.D. Pa. Aug. 2, 2022).............................................8, 10, 15

*Hopgood v. Experian Info. Sols., Inc.*,
716 F. Supp. 3d 845 (C.D. Cal. 2024)...................................................................15

*In re Abbott Lab'ys. Preterm Infant Nutrition Prods. Liab. Litig.*,
2025 WL 1282749 (N.D. Ill. May 2, 2025) ..........................................................10

*In re Generic Pharms. Pricing Antitrust Litig.*,
2024 WL 2977896 (E.D. Pa. May 22, 2024) .........................................................10

*In re Mut. Fund Sales Antitrust Litig.*,
361 F. Supp. 638 (J.P.M.L. 1973) .........................................................................12

*In re Webvention LLC '294 Patent Litig.*,
868 F. Supp. 2d 500 (D. Md. 2012) ......................................................................15

*Intex v. Recreation Corp. v. Bestway USA, Inc.*,
2024 WL 4404982 (C.D. Cal. Sept. 6, 2024)...........................................................7

*Jones v. Google*,
73 F.4th 636 (9th Cir. 2023) .......................................................................3, 4, 8

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Kokoszka v. Belford*,
    417 U.S. 642 (1974) ...........................................................................................4

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) .........................................................................................12

*Locata LBS, LLC v. Yellowpages.com, LLC*,
    2014 WL 8103949 (C.D. Cal. July 11, 2014) ...................................................13

*PepperBall Techs., Inc. v. Sec. with Advanced Tech., Inc.*,
    2008 WL 11508688 (S.D. Cal. Feb. 14, 2008) .................................................15

*Simms v. Philip Morris, Inc.*,
    2003 WL 27394525 (D.D.C. July 7, 2003) .....................................................6, 9

*Smith v. Experian Info. Sols., Inc.*,
    2018 WL 1427162 (C.D. Cal. Jan. 19, 2018)..................................................7, 14

*Starks v. Cnty. of Los Angeles*,
    2022 WL 159729 (C.D. Cal. Jan. 18, 2022)...................................................6, 15

*United States v. Vandewater Int'l, Inc.*,
    2020 WL 4380951 (C.D. Cal. June 23, 2020)......................................................7

*UnitedHealthcare Co. v. Regeneron Pharmaceuticals, Inc.*,
    2021 WL 6137097 (S.D.N.Y. Dec. 29, 2021)........................................8, 15, 16

*Yong v. INS*,
    208 F.3d 1116 (9th Cir. 2000) ........................................................................15

**Statutes**

15 U.S.C. § 6502.......................................................................................................4

15 U.S.C. § 6504.......................................................................................................3

15 U.S.C. § 6505.......................................................................................................3

**Regulations**

16 C.F.R. § 312.5......................................................................................................8

78 Fed. Reg. 3972 (2013) .......................................................................................16

## I.    INTRODUCTION

Plaintiffs' position depends on a narrow reading of COPPA's statutory scheme—it both fights Congress's plain intent to give the federal government primary enforcement authority over COPPA violations, and ignores COPPA's explicit bar on state attorneys general actions from proceeding once the DOJ files a complaint.  Plaintiffs' argument, in essence, is that COPPA should be read to prioritize their private claims, which are not provided for in the statute, even over state attorney general enforcement actions, which the statute *does* permit.  Plaintiffs cannot rely on COPPA as the basis for all their claims but then avoid COPPA's express prohibition on competing attempts to enforce that statute once the DOJ has acted.  And while Plaintiffs claim that there is no risk of inconsistent judgments or judicial inefficiency here, Opp. 14-18, that argument is plainly wrong: Plaintiffs are seeking to litigate claims that are virtually identical to the claims in the DOJ Action and have already taken positions that are inconsistent with those expressed by the federal government.

Plaintiffs' remaining arguments are largely based on Plaintiffs' misreading of sentences in Defendants' prior briefs.  Specifically, Plaintiffs assert that Defendants' stay arguments are inconsistent with Defendants' prior arguments that the DOJ Action and the private class actions should be "coordinated."  Opp. 8-11.  That fails: the entire point of coordination is that these kinds of decisions—including whether the private cases should be stayed—will be decided by a single court, and pointing out that coordination will be more efficient than having these cases proceed in multiple courts has nothing to do with whether COPPA requires the DOJ Action to proceed first—or even whether it makes sense as a matter of fairness and judicial economy.  Requiring Defendants to litigate the private cases and the DOJ Action simultaneously will obviously increase Defendants' costs and impose burdens on Defendants' employees and witnesses.  In contrast, allowing the

REPLY ISO MOT. TO STAY
MDL No. 3144
NO. 2:25-ML-03144-GW-RAO

DOJ Action to proceed first gives effect to COPPA, will avoid a significant risk of
inconsistent judgments, and will streamline the issues, proof, and questions of law
for everyone involved.

Plaintiffs' assertions concerning their own hardship are also unfounded
exaggerations. Plaintiffs claim that Defendants want a stay so they can "delete
swaths of evidence that are central to Plaintiffs' case." Opp. 3. But that is false. A
stay would have no impact on Defendants' preservation efforts—as the Court is
aware, preservation has been a hotly contested issue that has been the subject of
multiple rounds of motion practice, and Defendants will of course comply with the
Court's rulings on those issues. Plaintiffs' contention that a stay would somehow
allow Defendants to evade those rulings and delete data is completely baseless.

If the Court declines to dismiss Plaintiffs' Complaint, *see* ECF No. 104-1, it
should grant Defendants' motion to stay.

## II.    ARGUMENT

### A.    The Orderly Course of Justice Weighs in Favor of a Stay.

Plaintiffs offer three reasons why a stay supposedly would not serve the
orderly course of justice: (1) COPPA does not expressly state that private plaintiff
cases should be stayed, (2) the DOJ Action and the MDL are both pending before
the same court, and (3) litigating the DOJ Action first is less efficient than litigating
both cases together. Opp. 11-18. Plaintiffs are wrong on all counts. If the Court
does not grant Defendants' pending motion to dismiss on preemption grounds,
staying this case is the next best alternative to give effect to COPPA's plain text
requiring the DOJ's action to proceed first. Moreover, allowing the DOJ's case to
proceed first will also help avoid inconsistencies and promote judicial efficiencies.

REPLY ISO MOT. TO STAY
MDL No. 3144
NO. 2:25-ML-03144-GW-RAO

1. **A Stay Is Consistent with COPPA and Congress's Determination that the Federal Government Is the Primary Enforcer of the Statute.**

Plaintiffs do not dispute that their claims are all based on the same purported COPPA violations which are the subject of the DOJ's separate enforcement action. Plaintiffs nonetheless assert the Court should deny Defendants' motion because COPPA does not specifically "require [] that private cases based on underlying COPPA violations should be stayed pending a government enforcement action" and Section 6504(d) of COPPA  is "irrelevant."  Opp. 11-12; *see also* 15 U.S.C. § 6504(d) (barring states from "institut[ing]" enforcement actions "during the pendency of" any first-filed federal proceedings against the same defendant).

This argument proves too much.  Plaintiffs cannot infer, based on the absence of any express mention of a stay of private claims in Section 6504(d), that their claims can proceed in parallel with the DOJ Action when COPPA does not even mention, let alone provide for, a private right of action in the first instance.  *See Jones v. Google*, 73 F.4th 636, 641 (9th Cir. 2023) ("COPPA does not authorize a private right of action.").  This is particularly so when COPPA is explicit that the federal government has primary authority over enforcing COPPA violations, and that those efforts take priority over all other enforcement actions, such as state attorney general lawsuits.  *See* Mot. 6-7; *see also* 15 U.S.C. § 6505(a) ("Except as otherwise provided, this chapter shall be enforced by the [Federal Trade] Commission….").

These undisputed facts lie at the core of this motion.  Plaintiffs have no private cause of action under COPPA, yet want to pursue state-law class action claims based on the same COPPA violations alleged in the DOJ Action.  If state COPPA actions are required to be stayed pending federal enforcement efforts, it follows that Plaintiffs, who have no private cause of action under COPPA, must likewise yield to the DOJ Action.  Allowing Plaintiffs to leapfrog those federal

REPLY ISO MOT. TO STAY
MDL No. 3144
NO. 2:25-ML-03144-GW-RAO

enforcement efforts and cut to the front of the line is directly at odds with COPPA's statutory framework, and contrary to Congress's desire that the federal government lead the way on issues relating to COPPA.[1]  *See* 15 U.S.C. § 6502(d) ("No state … may impose any liability for commercial activities … that is inconsistent with the treatment of those activities or actions under this section."); *Kokoszka v. Belford*, 417 U.S. 642, 650 (1974) ("When interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute (or statutes on the same subject) and the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the Legislature.").

Plaintiffs' assertion that *Jones* is "binding precedent" and forecloses a stay is wrong.  Opp. 11-12.  *Jones* is a preemption case, not a motion to stay case, and held only that private plaintiffs can bring what the FTC in that case called "fully stand-alone causes of action under state law" without facing categorical COPPA preemption.  73 F.4th at 643 (noting Congress did not "inten[d] to create an *exclusive* remedial scheme for enforcement of COPPA requirements").  In addition to not addressing state law claims premised on COPPA violations, like Plaintiffs', *Jones* did not hold that state law actions involving minor's data would never face preemption—to the contrary, *Jones* recognizes that COPPA preempts state law theories that are "inconsistent" with federal law or that impose "requirements that stand as obstacles to federal objectives."[2]  *See id.* at 642.  Nor did it address the timing of private plaintiff claims and whether they can proceed simultaneously with other government enforcement claims—likely because Google settled the COPPA

---

[1] Plaintiffs' position would effectively allow a state attorney general to evade COPPA's enforcement priorities if the state attorney general brought a state law claim premised on COPPA violations, which would render the DOJ's primary enforcement authority under COPPA illusory.

[2] As explained herein, Plaintiffs' position on preservation demonstrates how and why their state-law claims are "inconsistent with" COPPA and implicate preemption concerns.  *See infra* note 5.

REPLY ISO MOT. TO STAY
MDL No. 3144
NO. 2:25-ML-03144-GW-RAO

enforcement actions brought by federal and state authorities *before* the private plaintiffs brought their state law claims.[3]  *See* Compl., *Hubbard v. Google LLC*, No. 5:19-cv-07016 (N.D. Cal. Oct. 25, 2019), ECF No. 1; Stip. Order for Permanent Injunction & Civil Penalty Judgment, *FTC v. Google LLC*, No. 1:19-cv-02642 (D.D.C. Sept. 10, 2019), ECF No. 5.  And *Jones* did not deal with private causes of action that were admittedly based entirely on COPPA, as Plaintiffs have brought here.  In any event, Defendants' position is not that Plaintiffs can *never* bring their COPPA-based claims.  Rather, Defendants' position is that private plaintiff claims should cede to pending federal enforcement efforts, just like state attorney generals must do.  Mot. 16-17.  No court has decided this precise issue, and *Jones* is not dispositive here.

Plaintiffs also contend that Defendants' analogy to the primary jurisdiction doctrine is "strained" because "there is no technical or policy question" at issue.  Opp. 14.  But this case involves complicated and technical issues concerning Defendants' data collection practices, which to date have required a technology tutorial and multiple rounds of briefing about how Defendants' systems work and other issues.  Whether Defendants' data collection practices are a violation of federal law is a question better decided in the DOJ Action, given that agency's expertise and resources to properly litigate these issues and properly present them to the Court.

## 2.    A Stay Avoids the Risk of Inconsistent Judgments.

Plaintiffs try to downplay the serious risk of inconsistent judgments by asserting that stays are typically granted "when the cases are in separate courts or other fora."  Opp. 14-15.  But Defendants cited multiple legal authorities where the

---

[3] Contrary to Plaintiffs' assertions, the FTC's amicus brief in *Jones* does not argue that private actions can "proceed in parallel" to federal enforcement actions.  Like the decision itself, the FTC's brief does not address whether federal enforcement actions and private actions can proceed at the same time.  Br. for Amicus Curiae FTC ISO Neither Party, *Jones v. Google LLC*, No. 21-16281 (9th Cir. May 20, 2023), ECF No. 76.

REPLY ISO MOT. TO STAY
MDL No. 3144
NO. 2:25-ML-03144-GW-RAO

related actions which necessitated grant of a stay were pending before the same
judicial officer.  *See*, *e.g.*, *Simms v. Philip Morris, Inc.*, 2003 WL 27394525, at *2
(D.D.C. July 7, 2003) (staying private plaintiffs' case in favor of DOJ action in
same court); *Blue Cross & Blue Shield of Mass., Inc. v. Regeneron Pharms., Inc.*,
633 F. Supp. 3d 385, 387-89 (D. Mass. 2022) (same); *Clayborn v. Amazon.com
Servs. LLC*, 2021 WL 7707763, at *2, *6-7 (C.D. Cal. Nov. 9, 2021) (same).
*Simms*, for example, is directly on point.  There, private plaintiffs alleged the same
conspiracy as the DOJ, with "whole portions of Plaintiffs' … Complaint [being]
virtually identical to the … DOJ case," and both cases were filed and pending in
front of the same judge.  *Simms*, 2003 WL 27394525, at *1.  Given the "substantial
overlap of both factual and legal issues between the two cases," the court granted a
stay to "avoid duplicative litigation because rulings in the DOJ case [we]re virtually
certain to 'illuminate or resolve' many issues" in the private plaintiffs' case.  *Id.*
These are the exact circumstances present here.[4]

     Plaintiffs' legal authorities are largely inapposite.  None of those cases hold
that the presence of the same judicial officer in related matters eliminates *all* risk of
inconsistent judgments.  In fact, most of the opinions Plaintiffs cite do not even
mention this issue as a relevant factor in the legal analysis.  *See*, *e.g.*, *Starks v.
County of Los Angeles*, 2022 WL 159729, at *5 (C.D. Cal. Jan. 18, 2022) (holding
only that "staying a case when a prior case is likely to have preclusive effect
advances the orderly administration of justice because it avoids the risk of
inconsistent judgments"); *United States v. Vandewater Int'l, Inc.*, 2020 WL

---

[4] Defendants' prior statement to the Judicial Panel on Multidistrict Litigation
("JPML") that Plaintiffs' case could not proceed in "any district other than the
Central District of California" is irrelevant and no bar to a stay here.  Opp. 15; *see
also infra* Section II.B.  The risk of inconsistent judgments would plainly be even
more acute if Plaintiffs' case were pending in some other court before a completely
different judicial officer.  Nor does the fact that this Court is presiding over both
Plaintiffs' claims and the DOJ Action mean the risk of inconsistent judgments has
been neutralized, including because both cases will be decided by completely
different juries if tried.

REPLY ISO MOT. TO STAY
MDL No. 3144
NO. 2:25-ML-03144-GW-RAO

4380951, at *2 (C.D. Cal. June 23, 2020) (no express mention of identity of presiding judges); *Smith v. Experian Info. Sols., Inc.*, 2018 WL 1427162, at *3 (C.D. Cal. Jan. 19, 2018) (same).  And while *Intex v. Recreation Corp. v. Bestway USA, Inc.*, 2024 WL 4404982, at *6 (C.D. Cal. Sept. 6, 2024), makes passing reference to how "both cases are before the same bench officer," the court held this would merely "reduce"—not eliminate entirely—the "risk of inconsistent decisions." *Id.*

Plaintiffs also claim that Defendants' concern about inconsistencies is "speculative" because the Court will coordinate pre-trial matters, and trial in both cases will be "held sequentially, not simultaneously."  Opp. at 15.  Defendants' concerns are far from speculative.  Several inconsistencies have already emerged, even though Plaintiffs only recently filed their Complaint and the pleadings are not yet at issue.  For example, Defendants explained at length how Plaintiffs' age-gate allegations could lead to inconsistent results in the two cases.  Mot. 12-13.  But Plaintiffs' only response—"there is no guarantee that either matter will go to trial"—largely avoids the issue and is little comfort given the significant risks at stake here.  Opp. 15.  Plaintiffs' response also ignores the possibility that settlement of the DOJ's case could lead to the same inconsistencies if Plaintiffs seek relief that is contrary to or beyond the terms the DOJ agreed to settle its case—or that Plaintiffs' litigation strategy could frustrate potential settlement discussions between Defendants and the DOJ.

Likewise, Defendants identified how Plaintiffs and DOJ have taken dramatically different positions on document preservation, an issue Plaintiffs never squarely address.  Mot. 12-13.  Specifically, DOJ alleges that COPPA requires Defendants to *delete and destroy* any personal information collected from under-13 users.  *Id.* (citing DOJ Compl. ¶ 118(h)).  Thus, under DOJ's view and a straightforward reading of the statute, the knowing preservation of *any* under-13

data violates COPPA unless an exception applies or parental notice and consent is

obtained.[5]  But Plaintiffs vehemently disagree with that proposition.  Among other

things, Plaintiffs contend that Defendants must retain and preserve all under-13

data—millions upon millions of accounts that COPPA unequivocally commands

Defendants to delete—and that parental notice and consent is not required.[6]

Plaintiffs are also seeking to compel Defendants to produce broad categories of data

for the Named Plaintiffs, as well as data for more than 30 randomly identified

TikTok users not party to this litigation.  ECF No. 114-1.  These are real and

ongoing, not speculative, inconsistencies.

Plaintiffs' attempt to distinguish Defendants' legal authorities fails.  For

instance, Plaintiffs say that *UnitedHealthcare Co. v. Regeneron Pharmaceuticals,*

*Inc.*, 2021 WL 6137097 (S.D.N.Y. Dec. 29, 2021), *Ball ex rel. Regeneron*

*Pharmaceuticals, Inc., v. Baker*, 2022 WL 17808785 (S.D.N.Y. Dec. 18, 2022), and

*Halman Aldubi Provident and Pension Funds Limited v. Teva Pharmaceuticals*

*Industries Limited*, 2022 WL 3042768 (E.D. Pa. Aug. 2, 2022), are distinguishable

because they involved two different courts.  As just explained, however, courts

routinely grant stays where the related case is pending before the same judicial

officer.  *See supra* pp. 5-6.  Plaintiffs also suggest that *Blue Cross* is distinguishable

because, there, the DOJ action was "well underway" and "likely" to "resolve …

substantially faster" than the private action, whereas here, the DOJ Action has

"barely progressed."  Opp. 16-17.  That is not remotely accurate.  Discovery has

already commenced in the DOJ Action, and the Court has entered a full case

---

[5] As explained in Defendants' motion for protective order, COPPA's "judicial
process" and internal operations" exceptions permit website operators to preserve
names, online contact information, and persistent identifiers of users identified as
under 13 years old for purposes of litigation.  *See* 16 C.F.R. § 312.5(c)(6), (7); ECF
No. 113-1 at 6-7.

[6] Indeed, Plaintiffs' position on preservation of under-13 data and parental consent
only underscores how they are seeking to impose "requirements that stand as
obstacles to federal objectives" that under-13 data is deleted and thus raises
preemption concerns.  *Jones*, 73 F.4th at 642.

schedule with trial set for May 2027.  Here, by contrast, the pleadings are not at issue and Defendants' motion to dismiss is still pending.[7]  Additionally, a new complaint was recently filed[8] which may result in amended pleadings and additional Rule 12 motion practice.  The parties are also still litigating preservation issues with additional motions set to be heard this fall.  Nor has any case schedule been entered, much less any class certified.

### 3.    A Stay Will Promote Judicial Efficiency.

Plaintiffs admit there is "significant overlap between" their case and the DOJ Action, but insist that a stay will be inefficient because "the Court will have to confront the same issues regardless" of whether the two cases proceed sequentially or simultaneously.  Opp. 18.  But that is precisely Defendants' point.  Because the Court will have to address the same issues, it should not duplicate efforts and allow itself and the parties to benefit from the DOJ Action being tried first.  Multiple courts have determined that where, as here, the plaintiff's claims "arise[] from the same nucleus of facts as the DOJ action," "resolution of the DOJ action will …substantially simplify the instant case for both [defendant] and [p]laintiff." *Baker*, 2022 WL 17808785, at *6; *see also Blue Cross*, 633 F. Supp. 3d at 392 ("If the DOJ action vindicates Blue Cross's position that Regeneron engaged in an illegal kickback scheme, this [private] action will likely proceed more quickly."); *Simms*, 2003 WL 27394525, at *2.  This approach also has the added benefit of complying with Congress's mandate that the federal government assume primary responsibility for enforcing COPPA violations, and affords priority to the DOJ which has investigated these matters and engaged with Defendants for years over these issues.

---

[7] Indeed, Plaintiffs have signaled an intent to amend their Complaint if the Court dismisses on standing grounds the claims from states where Plaintiffs do not reside.

[8] Compl., *Robinson v. TikTok Inc.*, No. 2:25-cv-08813 (C.D. Cal. Sept. 16, 2025), ECF No. 1.

1      Defendants' proposal is not dissimilar to how courts manage bellwether cases

2  in MDL proceedings.  "The purpose of selecting a bellwether case is to provide

3  information helpful to the resolution of all cases in the MDL" by litigating a single

4  case first.  *In re Abbott Lab'ys. Preterm Infant Nutrition Prods. Liab. Litig.*, 2025

5  WL 1282749, at *10 (N.D. Ill. May 2, 2025) (granting summary judgment in

6  bellwether case and noting how the court's evidentiary rulings would be helpful in

7  resolving the remaining non-bellwether cases); *In re Generic Pharms. Pricing*

8  *Antitrust Litig.*, 2024 WL 2977896, at *2 (E.D. Pa. May 22, 2024) (similar).  MDL

9  courts recognize that affording priority to one case that presents issues similar, if

10  not identical, to other cases is an effective means of case management.  This

11  rationale applies equally here.  Resolution of the common issues underlying both

12  cases in the DOJ Action first will "provide information helpful to the resolution of"

13  Plaintiffs' claims, *In re Abbott Lab'ys.*, 2025 WL 128749, at *10, thereby

14  increasing judicial efficiency and minimizing the risk of inconsistent rulings.

15      Plaintiffs' other rebuttals are easily dismissed.  It is not "speculative" to

16  suggest that litigating the DOJ Action first could help facilitate settlement, Opp. 18,

17  especially when other courts have reached the same conclusion.  *See*, *e.g.*, *Halman*,

18  2022 WL 3042768, at *6; *Briggs v. Merck Sharp & Dohme*, 796 F.3d 1038, 1051

19  (9th Cir. 2015) (bellwether approach helps "demonstrat[e] the likely value of a

20  claim or by aiding in predicting the outcome of tricky questions of causation or

21  liability").  Likewise, a stay will not merely "postpone[]" resolution of Plaintiffs'

22  case.  Opp. 18.  Staying this case is not a zero sum outcome, and granting

23  Defendants' motion will be more efficient by helping to narrow and simplify the

24  issues, proof, and questions of law in the MDL proceedings.

25

26

27

28

REPLY ISO MOT. TO STAY
MDL No. 3144
NO. 2:25-ML-03144-GW-RAO

**B.    Defendants Will Suffer Considerable Hardship and Inequity
Absent a Stay.**

Plaintiffs' chief argument on prejudice appears to be that Defendants are supposedly precluded from seeking a stay now because, last year, Defendants sought coordination instead of consolidation of two private plaintiff cases and the DOJ Action. Opp. 8-9. Of course, Plaintiffs cite no legal authority supporting this position. More importantly, the statements quoted from Defendants' prior briefing—which were made in a completely different context and before these cases exploded into a national MDL spanning more than a dozen private plaintiffs—are not contradictory and do not "rebut [Defendants'] contention" that they will suffer prejudice absent a stay. *Id*. Both statements are true: it was more efficient last year to keep the DOJ Action separate from the two private plaintiff cases pending at that time, than to consolidate all three cases. Likewise, now that a national MDL has formed it is more efficient to stay those cases pending disposition of the DOJ Action. Plaintiffs also ignore that DOJ opposed consolidation last year as well, and that circumstances have materially changed as demonstrated by the many new private plaintiff claims which have now been consolidated in this Court as part of a national MDL.

The same holds with respect to the statements Plaintiffs quote from Defendants' JPML briefing. Opp. 9. The issue there was whether the various private plaintiff cases filed around the country should be centralized in this Court, the Northern District of California, or the Southern District of Florida. Defendants told the JPML that "transferring the private class actions to any district other than the Central District of California would mean that the actions will be litigated in at least two separate districts, creating obvious risks of inconsistent rulings and overlapping and inefficient discovery efforts." *In re TikTok, Inc. Minor Priv. Litig.*, MDL No. 3144 (J.P.M.L. Mar. 24, 2025), ECF No. 78 at 5. That statement remains

REPLY ISO MOT. TO STAY
MDL No. 3144
NO. 2:25-ML-03144-GW-RAO

1   accurate today, and the fact that Defendants would suffer *greater* hardship if the

2   DOJ Action and the MDL were litigated in different districts does not mean no

3   hardship will ensue if Plaintiffs are allowed to litigate their claims in this Court at

4   the same time as the DOJ Action.  *See supra* Section II.A.2; *see also In re Mut.*

5   *Fund Sales Antitrust Litig.*, 361 F. Supp. 638, 640 (J.P.M.L. 1973) ("[W]e think

6   that judicial efficiency would be promoted by having [the government's action and

7   the private plaintiffs' MDL] under the supervision of the same judge.").

8       Plaintiffs' assertion that no hardship exists because Defendants "delay[ed] in

9   filing this motion" is also wrong.  Opp. 9-10.  Regardless of when this motion was

10  brought, in the absence of dismissal, COPPA requires a stay here.  Staying a

11  litigation is also within the sound discretion of this Court, *Landis v. N. Am. Co.*, 299

12  U.S. 248, 254 (1936), and courts can grant a stay at any time, including just before

13  trial.  Nor did Defendants delay in seeking relief.  Defendants filed their motion to

14  stay only six weeks after Plaintiffs' Complaint was filed in July 2025.  ECF No. 94;

15  ECF No. 105.  Plaintiffs would have undoubtedly responded to an earlier-filed

16  motion with the argument that the motion was premature because issues concerning

17  centralization had not been settled and Defendants did not have clarity on which

18  parties would remain in the case and which claims and allegations Plaintiffs would

19  raise in their Complaint.

20       Plaintiffs also claim coordination will be "*more* efficient" than a stay, Opp.

21  10-11, but they never explain why that is supposedly true.  Moreover, recent

22  developments in this case belie their claims.  As Plaintiffs' and DOJ's differing

23  positions on preservation illustrate, coordination of both actions will require

24  Defendants and the Court to needlessly litigate discovery dispute after discovery

25  dispute when many of these issues could be resolved in the DOJ Action if that

26  matter proceeds first.  Again, coordination may be preferable to nothing, but it does

27  not eliminate the clear hardship to Defendants and the serious risk of inconsistent

28

REPLY ISO MOT. TO STAY
MDL No. 3144
NO. 2:25-ML-03144-GW-RAO

judgments.  *Cf. Locata LBS, LLC v. Yellowpages.com, LLC*, 2014 WL 8103949, at *4 (C.D. Cal. July 11, 2014) (rejecting plaintiff's argument that staying the case will "disrupt the coordinated discovery planned for the pending cases, resulting in the likelihood of duplicative discovery and/or pretrial efforts").

### C.    Plaintiffs Will Not Be Prejudiced By a Stay.

Plaintiffs' claims of prejudice should be rejected out of hand.  To establish prejudice, Plaintiffs point to a single passage in Defendants' motion discussing the different positions DOJ and Plaintiffs have taken on document preservation issues, and from there conclude that "Defendants have stated their intention to destroy relevant evidence if a stay is issued."  Opp. 3; *see also* Mot. 12-13 ("Defendants should not be forced to continue to spend further time and effort preserving user data for Plaintiffs' case when doing so directly conflicts with COPPA and DOJ's approach to enforcing it.  Defendants—and the Court's—time is better served by putting these issues to the side until the DOJ Action is resolved.").

This is baseless.  Defendants' statement refers to *preservation*, not spoliation, of user data, and the purpose here was to demonstrate how letting Plaintiffs' claims continue in parallel with the DOJ Action risks inconsistent judgments and outcomes.  Specifically, and as explained at length in Defendants' pending motion for protective order, Plaintiffs are claiming that Defendants must preserve voluminous categories of data for underage users of TikTok, even though COPPA commands website operators to delete and not retain that data.  Plaintiffs are also refusing to provide signed parental notice and consent forms, which COPPA requires in order for Defendants to preserve this data.  ECF No. 113-1.  That Defendants have been forced to seek formal relief from the Court—to vindicate a position at odds with how DOJ has litigated its case—only underscores why a stay is necessary here.

REPLY ISO MOT. TO STAY
MDL No. 3144
NO. 2:25-ML-03144-GW-RAO

1    Plaintiffs' assertion that Defendants intend to spoliate evidence if a stay is

2  granted is also plainly wrong, and the complete opposite of what has transpired

3  here. Defendants have preserved broad categories of data for millions of underage

4  users, all because of Plaintiffs' overzealous and mistaken views on what materials

5  COPPA permits website operators to preserve for litigation purposes. Defendants

6  obviously have no intention of destroying relevant evidence, and will continue to

7  preserve relevant categories of user data—as they have been doing for months, and

8  at great expense—pending full and complete resolution of their protective order

9  motion. Any suggestion that Plaintiffs will be harmed here is speculative, and

10  provides no basis to deny Defendants' request to stay this case. *See* Opp. 4 (denial

11  of stay is only proper where there is a "nonspeculative risk of evidence

12  destruction"); *Grimm v. APN, Inc.*, 2018 WL 4793088, at *4-5 (C.D. Cal. Jan. 8,

13  2018) ("grant[ing] [Defendants] motion[] to stay" because "there is no reason to

14  think that [a defendant] will not comply with the law and the rules of this Court and

15  destroy or intentionally lose evidence.").[9]

16    None of Plaintiffs' remaining prejudice arguments have any merit:

17    •    Plaintiffs say memories will fade and witnesses will forget important

18  facts if the Court stays the case. Opp. 4-5. Nonsense. Plaintiffs' claims are

19  predicated on the same COPPA violations alleged in the DOJ Action, and there is

20  significant, if not identical, factual overlap between the two matters. DOJ will thus

21  have ample opportunity to depose company witnesses with relevant knowledge in

22  that matter. *See Evolutionary Intelligence, LLC v. Millenial Media, Inc.*, 2014 WL

23  2738501, at *6 (N.D. Cal. June 11, 2014) ("Speculation that evidence will be lost,

24  without more, is insufficient to demonstrate undue prejudice.").

---

[9] Absent parental consent, COPPA only permits preservation of three categories of
under-13 data for litigation purposes—name, online contact information, and
persistent identifiers. *See* ECF No. 113-1 at 6. If Defendants prevail on their
protective order motion, they will continue to preserve those three categories of
data while this case is stayed. Needless to say, Defendants understand that grant of
a stay does not give them free license to stop preserving relevant evidence.

REPLY ISO MOT. TO STAY
MDL No. 3144
NO. 2:25-ML-03144-GW-RAO

1        •       Plaintiffs claim a heightened risk of lost evidence exists because it is

2   "uncertain" when the stay will be lifted, Opp. 5, but that is not correct either.

3   Defendants have only requested a stay pending resolution of the DOJ Action and,

4   as explained earlier,  materials relevant to this action will be preserved in the DOJ's

5   case, given the overlapping factual and legal issues.  Plaintiffs are also free to ask to

6   lift the stay "at any time," provided, of course, they can actually identify concrete

7   harms.  *Arroyo v. DTPS C-12, LLC*, 2022 WL 17224717, at *2 (C.D. Cal. Jan. 31,

8   2022); *see also Hopgood v. Experian Info. Sols., Inc.*, 716 F. Supp. 3d 845, 851

9   (C.D. Cal. 2024).[10]

10        •       Plaintiffs complain that they have invested significant time and effort

11   into this case.  Opp. 5-6.  Even if true, this case is still in its infancy and Plaintiffs'

12   supposed investments will merely be deferred, not lost forever.  *See, e.g.*,

13   *Evolutionary Intelligence*, 2014 WL 2738501, at *3 (staying case, despite discovery

14   having commenced, because "the bulk of the time and expense lies ahead");

15   *PepperBall Techs., Inc. v. Sec. with Advanced Tech., Inc.*, 2008 WL 11508688, at

16   *2-3 (S.D. Cal. Feb. 14, 2008) (the "early stage of the proceedings" weighed

17   against a finding of prejudice to plaintiff if a stay issued where motion to dismiss

18   complaint and motion to stay were filed simultaneously); *In re Webvention LLC

19   '294 Patent Litig.*, 868 F. Supp. 2d 500, 504 (D. Md. 2012) (post-MDL

20   consolidation was "early stage of proceedings" weighing in favor of granting a

21   stay); *Halman*, 2022 WL 3042768, at *4 (court "may insist that a plaintiff establish

22   more 'prejudice' than simply the right to pursue his case and vindicate his claim

23   expeditiously").

24   ─────────────
     [10] Plaintiffs' authorities holding that a "greater showing" is required to justify an
25   "indefinite stay" are likewise inapposite.  Opp. 4-5.  *Yong v. INS*, and many cases
     which rely on it, involve criminal proceedings and thus implicate completely
26   different concerns than are present here.  208 F.3d 1116, 1119-20 (9th Cir. 2000).
     Nor do any of the other cases cited in the parties' briefing impose a "greater
27   showing" requirement. *See, e.g.*, *Starks*, 2022 WL 159729; *Smith.*, 2018 WL
     1427162, at *3; *Blue Cross*, 633 F. Supp. 3d 385; *UnitedHealthcare*, 2021 WL
28   6137097.

1    •      Plaintiffs assert that the DOJ will not adequately protect their interests.

2    Opp. 6-7.  But Congress expressly determined that federal agencies like the DOJ

3    have primary responsibility to enforce COPPA, and to protect children by

4    "minimiz[ing] the collection of personal information from children and creat[ing] a

5    safer, more secure online experience for them, even as online technologies, and

6    children's uses of such technologies, evolve."  78 Fed. Reg. 3972, 3972 (2013).

7    Any suggestion that Plaintiffs' interests are at risk and will not be protected if the

8    DOJ Action proceeds first rings hollow and signals that the inconsistencies already

9    identified between this case and the DOJ Action are just the tip of the iceberg.  *See*,

10   *e.g.*, *UnitedHealthcare*, 2021 WL 6137097 at *5 (holding "plaintiffs' interests will

11   likely be protected in the DOJ action" because it "is a civil enforcement proceeding

12   brought by the government, which represents the public interest").

13                      *        *        *

14        If this Court does not grant Defendants' motion to dismiss, this case should

15   be stayed under COPPA's framework which requires courts to hear first-filed DOJ

16   actions first.  Even absent COPPA's framework, a stay is warranted because it

17   would promote efficiencies and avoid the risk of inconsistent outcomes, it will

18   prevent harm to Defendants, and Plaintiffs have failed to articulate any meaningful

19   way they would be prejudiced by a stay.

20   **III.    CONCLUSION**

21        For all the foregoing reasons, as well as the reasons set forth in Defendants'

22   moving papers, the Court should grant Defendants' motion to stay this case pending

23   resolution of the DOJ Action.

24

25

26

27

28

REPLY ISO MOT. TO STAY
MDL No. 3144
NO. 2:25-ML-03144-GW-RAO

Dated: October 13, 2025                    Respectfully submitted,


                                           By:    /s/ Daniel M. Petrocelli
                                                  Daniel M. Petrocelli

                                           DANIEL M. PETROCELLI
                                           dpetrocelli@omm.com
                                           O'MELVENY & MYERS LLP
                                           1999 Avenue of the Stars
                                           Los Angeles, California 90067-6035
                                           Telephone:  +1 310 553 6700
                                           Facsimile:   +1 310 246 6779

                                           STEPHEN D. BRODY
                                           sbrody@omm.com
                                           O'MELVENY & MYERS LLP
                                           1625 Eye Street, NW
                                           Washington, D.C. 20006-4001
                                           Telephone:  +1 202 383 5300
                                           Facsimile:   +1 202 383 5414

                                           MATTHEW D. POWERS (S.B. #212682)
                                           mpowers@omm.com
                                           O'MELVENY & MYERS LLP
                                           Two Embarcadero Center
                                           San Francisco, CA 94111
                                           Telephone:  +1 415 984 8700
                                           Facsimile:   +1 415 984 8701

                                           *Attorneys for Defendants ByteDance Ltd.,
                                           ByteDance Inc., TikTok Ltd., TikTok Inc.,
                                           TikTok LLC, TikTok Pte. Ltd., and TikTok
                                           U.S. Data Security Inc.*

REPLY ISO MOT. TO STAY
MDL No. 3144
NO. 2:25-ML-03144-GW-RAO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I certify that on October 13, 2025, I electronically filed the foregoing with
the Clerk of Court using CM/ECF, which automatically services all counsel of
record for the parties who have appeared.

Dated: October 13, 2025                */s/ Daniel M. Petrocelli*
                                        Daniel M. Petrocelli

REPLY ISO MOT. TO STAY
MDL No. 3144
NO. 2:25-ML-03144-GW-RAO

1

### CERTIFICATE OF COMPLIANCE

I certify that the foregoing memorandum of law contains 5,256 words, which complies with the word limit set by the Court.

Dated: October 13, 2025                    */s/ Daniel M. Petrocelli*
                                            Daniel M. Petrocelli