DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, Suite 800
Los Angeles, California 90067-6035
Telephone: (310) 553-6700
Facsimile: (310) 246-6779

STEPHEN D. BRODY (*pro hac vice*)
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
San Francisco, CA 94111
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

*Attorneys for Defendants ByteDance Ltd.,
ByteDance Inc., TikTok Ltd., TikTok Inc.,
TikTok LLC, TikTok Pte. Ltd., and
TikTok U.S. Data Security Inc.*

Derek W. Loeser (*pro hac vice*)
dloeser@kellerrohrback.com
Cari Campen Laufenberg (*pro hac vice*)
claufenberg@kellerrohrback.com
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384

Eric Kafka (*pro hac vice*)
ekafka@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL
PLLC
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745

*Plaintiffs' Interim Co-Lead Counsel*

Steven Bloch (*pro hac vice*)
sbloch@sgtlaw.com
SILVER GOLUB & TEITELL LLP
One Landmark Square, 15th Floor
Stamford, CT 06901
Telephone: (203) 325-4491
Facsimile: (203) 325-3769
sbloch@sgtlaw.com

*Plaintiffs' Executive Committee*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TIKTOK INC., MINOR PRIVACY LITIGATION | MDL NO. 3144 |
| | 2:25-ml-03144-GW-RAO |
| | **STIPULATED PROTECTIVE ORDER** |
| | Hon. George H. Wu<br>Courtroom: 9D |

1.    <u>A. PURPOSES AND LIMITATIONS</u>

Discovery in this action is likely to involve production of confidential, proprietary or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted.  Accordingly, the parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order.  The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under applicable legal principles.

<u>B. GOOD CAUSE STATEMENT</u>

This action is likely to involve confidential, strategic, research, development, commercial, or technical information, or private or personal information, for which special protection from public disclosure and from use for any purpose other than prosecution of this action is warranted.  Such materials and information consist of, among other things, (1) proprietary or commercially sensitive information, such as financial, technical, business, and organizational information, including business contracts, customer and pricing information, insurance coverage, and internal processes or procedures; (2) "personal identifying information," including but not limited to Social Security numbers, individual taxpayer-identification numbers, driver's license numbers, financial account numbers, debit and credit card numbers, or similar information that is used for financial transactions and must be kept confidential; (3) trade secrets, copyrighted materials, or other confidential research and related communications, development, or commercial information; (4) personnel or employment records;  (5) information implicating privacy rights of third parties; (6) information otherwise generally unavailable to the public; (7) information which may be privileged or otherwise protected from disclosure under

2

state or federal statutes, court rules, case decisions, or common law; or (8) any other
information the disclosure of which would breach a legal or contractual obligation.
Accordingly, to expedite the flow of information, to facilitate the prompt resolution
of disputes over confidentiality of discovery materials, to adequately protect
information the parties are entitled to keep confidential, to ensure that the parties are
permitted reasonable necessary uses of such material in preparation for and in the
conduct of trial, to address their handling at the end of the litigation, and serve the
ends of justice, a protective order for such information is justified in this matter.  It
is the intent of the parties that information will not be designated as confidential for
tactical reasons and that nothing be so designated without a good faith belief that it
has been maintained in a confidential, non-public manner and there is good cause
why it should not be part of the public record of this case.

### C. ACKNOWLEDGMENT OF PROCEDURE FOR FILING UNDER SEAL

The parties further acknowledge, as set forth in Section 13.3, below, that this
Stipulated Protective Order does not entitle them to file confidential information
under seal; Local Civil Rule 79-5 sets forth the procedures that must be followed
and the standards that will be applied when a party seeks permission from the court
to file material under seal.

There is a strong presumption that the public has a right of access to judicial
proceedings and records in civil cases.  In connection with non-dispositive motions,
good cause must be shown to support a filing under seal.  *See Kamakana v. City and
County of Honolulu*, 447 F.3d 1172, 1176 (9th Cir. 2006); *Phillips v. Gen. Motors
Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002). Also, a specific showing of good
cause or compelling reasons, with proper evidentiary support and legal justification,
must be made with respect to Protected Material that a party seeks to file under seal.
The parties' mere designation of Disclosure or Discovery Material as
CONFIDENTIAL does not—without the submission of competent evidence by

3

declaration, establishing that the material sought to be filed under seal qualifies as confidential, privileged, or otherwise protectable—constitute good cause.

Further, if a party requests sealing related to a dispositive motion or trial, then compelling reasons, not only good cause, for the sealing must be shown, and the relief sought shall be narrowly tailored to serve the specific interest to be protected. *See Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665, 677-79 (9th Cir. 2010).  For each item or type of information, document, or thing sought to be filed or introduced under seal in connection with a dispositive motion or trial, the party seeking protection must articulate compelling reasons, supported by specific facts and legal justification, for the requested sealing order.  Again, competent evidence supporting the application to file documents under seal must be provided by declaration.

Any document that is not confidential, privileged, or otherwise protectable in its entirety will not be filed under seal if the confidential portions can be redacted. If documents can be redacted, then a redacted version for public viewing, omitting only the confidential, privileged, or otherwise protectable portions of the document shall be filed.  Any application that seeks to file documents under seal in their entirety should include an explanation of why redaction is not feasible.

2.    <u>DEFINITIONS</u>

2.1    <u>Action</u>: Refers to this pending federal action, *In re TikTok Inc., Minor Privacy Litigation*.

2.2    <u>Challenging Party</u>:  a Party or Non-Party that challenges the designation of information or items under this Order.

2.3    <u>"CONFIDENTIAL" Information or Items</u>:  information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c), and as specified above in the Good Cause Statement.

2.4    <u>Counsel</u>:  Outside Counsel of Record and House Counsel (as well as

their support staff).

2.5    Designating Party:  a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL."

2.6    Disclosure or Discovery Material:  all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things) that are produced or generated in disclosures or responses to discovery in this matter.

2.7    Expert:  a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this Action, including support staff.

2.8    HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY Information or Items: Any Protected Material, in whatever form, which is considered by the producing party or non-party to contain highly sensitive commercial, proprietary or trade secret information, or information concerning minors, which if disclosed could cause the Designating Party competitive harm, or disclose highly sensitive private or personal information of the Designating Party, Receiving Party, or Non-Party.

2.9    House Counsel:  attorneys who are employees of a party to this Action. House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.10    Investigation: The pre-complaint inquiry by the Federal Trade Commission into alleged Children's Online Privacy Protection Act ("COPPA") violations by Defendants.

2. 11    Investigation Materials: Documents or other materials provided to the Federal Trade Commission relating to the Investigation.

2.12    Non-Party:  any natural person, partnership, corporation, association or other legal entity not named as a Party to this action.

2.13   <u>Outside Counsel of Record</u>:  attorneys who are not employees of a party to this Action but are retained to represent or advise a party to this Action and have appeared in this Action on behalf of that party or are affiliated with a law firm that has appeared on behalf of that party, including support staff.

2.14   <u>Party</u>:  any party to this Action, including all of its officers, directors, employees, consultants, retained experts (including support staff), and Outside Counsel of Record (including support staff).

2.15   <u>Producing Party</u>:  a Party or Non-Party that produces Disclosure or Discovery Material in this Action.

2.16   <u>Professional Vendors</u>:  persons or entities that provide litigation support services (e.g., court reporting services, photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.17   <u>Protected Material</u>:  any Disclosure or Discovery Material that is designated as "CONFIDENTIAL" or HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

2.18   <u>Receiving Party</u>:  a Party that receives Disclosure or Discovery Material from a Producing Party.

2.19   <u>Source Code</u>: any collection of text, with or without comments, written using a programming language, whether or not it is a human-readable programming language, such as though not limited to C, C++, or Assembly that has not already been previously publicly disclosed by the Producing Party.

3.   <u>SCOPE</u>

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or

6

compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material.

Any use of Protected Material at trial shall be governed by the orders of the trial judge.  This Order does not govern the use of Protected Material at trial.

4.    <u>DURATION</u>

Once a case proceeds to trial, information that was designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY or maintained pursuant to this protective order used or introduced as an exhibit at trial becomes public and will be presumptively available to all members of the public, including the press, unless compelling reasons supported by specific factual findings to proceed otherwise are made to the trial judge in advance of the trial.  *See Kamakana*, 447 F.3d at 1180-81 (distinguishing "good cause" showing for sealing documents produced in discovery from "compelling reasons" standard when merits-related documents are part of court record).  Accordingly, the terms of this protective order do not extend beyond the commencement of the trial.

5.    <u>DESIGNATING PROTECTED MATERIAL</u>

5.1    <u>Exercise of Restraint and Care in Designating Material for Protection</u>. Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards.  The Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

Indiscriminate or routinized designations are prohibited.  Designations that are shown to be clearly unjustified or that have been made for an improper purpose

(e.g., to unnecessarily encumber the case development process or to impose unnecessary expenses and burdens on other parties) may expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, that Designating Party must promptly notify all other Parties that it is withdrawing the inapplicable designation.

5.2     <u>Manner and Timing of Designations</u>.  Except as otherwise provided in this Order (*see*, *e.g.*, second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a)  for information in documentary form (*e.g.*, paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix at a minimum, the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" (hereinafter "PROTECTED MATERIAL legend") to each page that contains protected material.  If only a portion of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (*e.g.*, by making appropriate markings in the margins).

(b)  for testimony given in depositions, that the Designating Party either (1) identifies on the record or (2) identifies, in writing, within 21 calendar days of receipt of the final transcript, that the transcript must be treated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY.

(c)  for information produced in some form other than documentary form and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information is stored the PROTECTED MATERIAL legend.

5.3    <u>Failures to Designate</u>.   A failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order. Any production of Investigation Materials not designated as Confidential during the Investigation will not be deemed waiver of any future claim of confidentiality concerning such information if it is later designated as CONFIDENTIAL OR HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY information.

6.    <u>CHALLENGING CONFIDENTIALITY DESIGNATIONS</u>

6.1    <u>Timing of Challenges</u>.  Any Party or Non-Party may challenge a designation of confidentiality at any time that is consistent with the Court's Scheduling Order.

6.2    <u>Meet and Confer</u>.  The Challenging Party shall initiate the dispute resolution process under Local Rule 37.1 et seq.

6.3    The burden of persuasion in any such challenge proceeding shall be on the Designating Party.  Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions.  Unless the Designating Party has waived or withdrawn the confidentiality designation, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Court rules on the challenge.

7.    <u>ACCESS TO AND USE OF PROTECTED MATERIAL</u>

7.1    <u>Basic Principles</u>.  A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this

Action only for prosecuting, defending or attempting to settle this Action.  Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order.  When the Action has been terminated, a Receiving Party must comply with the provisions of Section 13 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order. Protected Material in electronic form shall be maintained in a secure litigation support site that applies standard industry data security practices.

If a data breach that included Protected Material occurs or a Receiving Party reasonably believes such a breach may have occurred, the Receiving Party shall immediately report such incident to the Producing Entity, describe the Protected Material accessed without authorization.  In such event, the Receiving Party shall immediately take such reasonable actions to remediate the breach, to preclude further breaches, and in any event take such actions as required by applicable laws, including privacy laws.  After notification, the Receiving Party shall keep the Producing Party reasonably informed of remediation efforts.

7.2    Disclosure of "CONFIDENTIAL" Information or Items.  Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a)  the Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this Action;

(b)  the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this Action;

(c)  Experts (as defined in this Order) of the Receiving Party to whom

1    disclosure is reasonably necessary for this Action and who have signed the

2    "Acknowledgment and Agreement to Be Bound" (Exhibit A);

3            (d)  the court and its personnel;

4            (e)  court reporters and their staff;

5            (f)  professional jury or trial consultants, mock jurors, and Professional

6    Vendors to whom disclosure is reasonably necessary for this Action and who have

7    signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

8            (g)  the author or recipient of a document containing the information or a

9    custodian or other person who otherwise possessed or knew the information;

10           (h)  during their depositions, witnesses, and attorneys for witnesses, in the

11   Action to whom disclosure is reasonably necessary provided: (1) the deposing party

12   requests that the witness sign the form attached as Exhibit A hereto; and (2) they

13   will not be permitted to keep any confidential information unless they sign the

14   "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise

15   agreed by the Designating Party or ordered by the court.  Pages of transcribed

16   deposition testimony or exhibits to depositions that reveal Protected Material may

17   be separately bound by the court reporter and may not be disclosed to anyone except

18   as permitted under this Stipulated Protective Order;

19           (i)  any mediator or settlement officer, and their supporting personnel,

20   mutually agreed upon by any of the parties engaged in settlement discussions;

21           (j)  any other person as to whom the Designating Party has consented to

22   disclosure in advance; and

23           (k) such other persons as the Parties may agree or as may be ordered by

24   the Court who have signed the "Acknowledgement and Agreement to Be Bound"

25   (Exhibit A).

26           7.3    Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS'

27   EYES ONLY" Information or Items.  Unless otherwise ordered by the court or

28   permitted in writing by the Designating Party, a Receiving Party may disclose any

11

information or item designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" only to:

(a)  the Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this Action;

(b)  House Counsel (including members of the in-house legal team such as paralegals and e-discovery experts) of the Receiving Party to whom disclosure is reasonably necessary for this Action;

(c) Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d)  the court and its personnel;

(e)  court reporters and their staff;

(f)  professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(g)  the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information;

(h)  during their depositions, witnesses, and attorneys for witnesses, in the Action to whom disclosure is reasonably necessary provided: (1) the deposing party requests that the witness sign the form attached as Exhibit A hereto; and (2) they will not be permitted to keep any confidential information, unless otherwise agreed by the Designating Party or ordered by the court.  Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material may be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulated Protective Order;

(i)  any other person as to whom the Designating Party has consented to disclosure in advance;

(j)  any mediator or settlement officer, and their supporting personnel who have signed the "Acknowledgement and Agreement to Be Bound" (Exhibit A), mutually agreed upon by any of the parties engaged in settlement discussions.

(k) such other persons as the Parties may agree or as may be ordered by the Court and who have signed the "Acknowledgement and Agreement to Be Bound" (Exhibit A).

### 7.4    Disclosure of "HIGHLY CONFIDENTIAL – SOURCE CODE"

7.4.1  Access to Producing Party's Source Code shall be provided for inspection in electronic form only in Defendant's Los Angeles Transparency Center, subject to the selection of a mutually agreeable alternative location should a Party raise a good faith basis for such. Each computer on which Source Code information is made available for inspection by a Party or Third Party shall be known as a "Source Code Computer."  Access is to be made available on a "stand-alone" computer(s) (that is, computer not linked to any network, including a local area network ("LAN"), an intranet or the Internet). The stand-alone computer(s) shall have the ability for a Receiving Party to identify the Source Code the Receiving Party wants printed and produced by printing the requested lines to Adobe (or other suitable software identified and agreed upon by the Parties) for collection, review, and production by the Producing Party. The Producing Party shall provide a 27-inch external monitor or next best available size and external mouse connected to the Source Code Computer. The Receiving Party, including its outside counsel and outside consultants or experts, may not connect any device to the stand-alone computer(s). The Receiving Party also may not take into the Source Code Room any electronic input/output device, or any device that can access the Internet or any other network or external system; however, to the extent the Receiving Party desires to take notes electronically, the Producing Party shall provide a notetaking computer (e.g., a computer, which is distinct from the Source Code Computer, that is not linked to any network, including a local area network ("LAN"), an intranet, or the

Internet, and has image making functionality of any type disabled, including but not limited to camera and video functionality) ("note-taking computer") with a current, widely used word processing program in the Source Code review room for the Receiving Party's use in taking such notes. The note-taking computer shall have diskencryption and be password protected. The note-taking computer shall be used for the sole purpose of note-taking and shall be retained by the Producing Party. The Producing Party will instruct the Receiving Party on how to start, log on to, and operate the notetaking computer. The Receiving Party will save any notes taken on the note-taking computer to a folder labeled "Source Code Notes." All notes relating to Source Code created as provided in this section shall be designated as and treated as HIGHLY CONFIDENTIAL – SOURCE CODE material, and shall be treated as copies of Source Code except that for electronic notes relating to Source Code at the end of each day of Source Code inspection, under the supervision of the Producing Party, such notes shall be printed in hard copy by the Producing Party and given to the Receiving Party to retain.  The Receiving Party will thereafter delete or destroy the electronic notes on the note-taking computer and show the Producing Party the empty "Source Code Notes" folder on the note-taking computer to confirm the electronic notes on the note-taking computer have been deleted or destroyed.  The Receiving Party's representatives will be provided a separate secure room with a table and chairs (separate from the room with the Source Code Computer) at the Transparency Center or other mutually agreeable alternative location where the Source Code review occurs, where the Receiving Party's representatives will be able to work outside of the room with the Source Code Computer and store their belongings;

7.4.2  The Receiving Party shall request access to the Source Code Room to inspect Source Code at least ten (10) business days prior to the first review and three (3) business days prior for any subsequent review session, and such requests shall not be unreasonably refused. The Receiving Party shall make reasonable efforts to

restrict its requests for such access to the Source Code Room to normal business hours, which for purposes of this section shall be on Monday – Friday from 9:00 am to 5:00 pm. However, upon reasonable notice from the Receiving Party, the Producing Party shall make reasonable efforts to accommodate the Receiving Party's request for access to the Source Code Room outside of the normal business hours.

7.4.3  The Producing Party shall install tools that are sufficient for viewing the Source Code produced for inspection on the Source Code Computer. The Receiving Party may request that additional source code analysis and/or emulator tools be loaded onto the Source Code Computer to facilitate its review. At least seven (7) business days in advance of the date upon which the Receiving Party wishes to access the Source Code Room, the Receiving Party shall identify licensed software tools it wishes to have installed and made available for use on the stand-alone computer(s). The Producing Party will make reasonable attempts to install the requested tools provided that: 1) there is an appropriate license to such a software tool, to be provided by the Receiving Party; 2) such tools are reasonably necessary for the Receiving Party's review; and 3) the Receiving Party provides the Producing Party with the CD, DVD, file path, or Advanced Package Tool package containing such licensed software tool(s) at least five (5) business days in advance of the inspection so the Producing Party can make sure they do not contain viruses or otherwise cause any issues. Any costs associated with acquiring licenses to additional requested software tools shall be borne by the Receiving Party. The Producing Party may object to the use of any tool provided by the Receiving Party pursuant to this paragraph, but must do so by notifying the Receiving Party of its objections and the reasons for its objections at least five (5) business days before the scheduled inspection of a Source Code Computer. The parties shall endeavor to resolve any dispute regarding tools to be loaded onto the Source Code Computer within ten (10) business days of any objection being made by the Producing Party. If

the parties cannot resolve the dispute within such time, the Receiving Party may petition the Court for resolution of the matter.;

7.4.4  Except for the notetaking computer, no electronic devices are permitted in the Source Code Room, including but not limited to any laptops, floppy drives, zip drives, cellular telephones, personal digital assistants, tablets, smartwatches, cameras, voice recorders, telephone jacks or other hardware. Photograph or electronic reproduction/transmission of contents displayed on the stand-alone computer(s) are prohibited. Handwritten notes relating to the source code may be taken only in permanently bound notebooks or notes may be typed on the note taking computer.  However, the source code may not be copied into notes taken by the Receiving Party or a representative thereof. The Receiving Party or a representative may identify source code they want printed and produced through the handwritten notes by file name and line range of relevant source code. Notwithstanding this provision, file name and location (i.e., directory path), as well as names of functions, data structures, or the like, may be copied into notes taken by the Receiving Party or a representative thereof. The Producing Party may visually monitor the activities of the Receiving Party's representatives during any review, using in-person observation or other non-video means, but only to ensure that no unauthorized electronic records of the source code and no information concerning the source code are being transmitted in violation of these restrictions;

7.4.5  The Receiving Party may request from the Producing Party printed copies of portions of the Source Code believed to be reasonably necessary for the preparation of court filings, pleadings, expert reports or other papers or for deposition or trial. The Producing Party will collect any electronically printed versions of the source code created in Adobe Acrobat (or other software of similar functionality as the producing Party may provide), and Bates number, copy, and label them "HIGHLY CONFIDENTIAL - SOURCE CODE." Within seven (7) business days, the Producing Party must either (1) deliver two sets of such pages to

16

outside counsel and/or experts for the Receiving Party; or (2) provide notice that the printed portions are excessive or were not requested for a permitted purpose. If the Producing Party objects that the printed portions are excessive and/or not reasonably necessary to any case preparation activity, the Producing Party shall make such objection known to the Receiving Party within ten (10) business days of the Receiving Party's request for printed copies. If, after meeting and conferring, the Producing Party and the Receiving Party cannot resolve the objection within ten (10) business days, the Receiving Party shall be entitled to seek a Court resolution of whether the printed source code in question is proportional to any case preparation activity as provided herein;

7.4.6  The Producing Party shall provide the Receiving Party with information explaining how to start, log on to, and operate the stand-alone computer(s) in order to access the produced Source Code on the stand-alone computer(s);

7.4.7  The Producing Party will make Source Code available for inspection in computer searchable format on the stand-alone computer(s) as described above. The Source Code will be made available for inspection in original and native format, and in a format where versions of the Source Code can be extracted. The Receiving Party shall be entitled to a specific identification (e.g., by name, version number, and date of release) of the Source Code being made available for inspection, if reasonably available.  To the extent the Producing Party contends this procedure becomes impracticable or unreasonable, the parties will meet and confer;

7.4.8  Access to Protected Material designated HIGHLY CONFIDENTIAL - SOURCE CODE shall be limited to:

(a)    the Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this Action (i.e., not existing or past employees or

affiliates of a Party or an affiliate of a Party, and not anticipated to become such employees or affiliates at the time of retention);

(b)    up to three (3) outside consultants or experts retained for the purpose of this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c)    the court and its personnel;

(d)    court reporters and their staff; ;

(e)    the author or recipient of a document containing the Protected Material or a custodian who otherwise possessed or knew the Protected Material.[1]

7.4.9    No electronic copies of Source Code shall be made without prior written consent of the Producing Party, except as necessary to create documents which, pursuant to the Court's rules, procedures and order, must be filed or served electronically;

7.4.10    The Receiving Party shall be permitted to make thirty-five (35) copies of printouts and photocopies of Source Code, all of which shall be designated and clearly labeled "HIGHLY CONFIDENTIAL - SOURCE CODE," and the Receiving Party shall maintain a log of all such files that are printed or photocopied; the Receiving Party shall make such log available to the Producing Party upon request.

7.4.11    Should such printouts or photocopies be transferred back to electronic media, such media shall be labeled "HIGHLY CONFIDENTIAL - SOURCE CODE" and shall continue to be treated as such;

7.4.12    If the Receiving Party's outside counsel, consultants, or experts obtain printouts or photocopies of Source Code, the Receiving Party shall ensure that such outside counsel, consultants, or experts keep the printouts or photocopies

---

[1] The Parties will meet and confer in the event Receiving Party requests to share Source Code with other individuals not otherwise authorized to receive Source Code under this Order.  If the Parties are unable to resolve any disagreement after meet and confer, Receiving Party may submit the issue to the Court for a determination.

in a secured locked area in the offices of such outside counsel, consultants, or expert that applies standard industry practices regarding data security, including but not limited to application of auditable access control rights to those persons entitled to access Source Code under this Order. The Receiving Party may also temporarily keep the printouts or photocopies at: (i) the Court for any proceedings(s) relating to the Source Code, for the dates associated with the proceeding(s); (ii) the sites where any deposition(s) relating to the Source Code are taken, for the dates associated with the deposition(s); and (iii) any intermediate location reasonably necessary to transport the printouts or photocopies (e.g., a hotel prior to a Court proceeding or deposition); and

7.4.13    A Producing Party's Source Code may only be transported by the Receiving Party at the direction of a person authorized under this Order above to another person authorized under this Order, on paper or removable electronic media (e.g., a DVD, CD-ROM, or flash memory "stick") via hand carry, Federal Express or other similarly reliable courier, with tracking abilities. Source Code may not be transported or transmitted electronically over a network of any kind, including a LAN, an intranet, or the Internet. Source Code may only be transported electronically for the purpose of Court proceeding(s) or deposition(s) as set forth in by the Receiving Party at the direction of a person authorized under this Order above to another person authorized under this Order, on paper or removable electronic media (e.g., a DVD, CD-ROM, or flash memory "stick") via hand carry, Federal Express or other similarly reliable courier, with tracking abilities.

7.4.14    The Receiving Party shall omit Source Code in any form from Court submissions whenever possible, and when not possible, shall petition the Court for permission to file such documents under seal.  To the extent portions of Source Code are quoted in any Court submission, either (1) the submission will be stamped and treated as HIGHLY CONFIDENTIAL - SOURCE CODE or (2) those

pages containing quoted Source Code will be separately stamped and treated as
HIGHLY CONFIDENTIAL - SOURCE CODE.

8.    PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED
       IN OTHER LITIGATION

       If a Party is served with a subpoena or a court order issued in other litigation
that compels disclosure of any information or items designated in this Action as
"CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES
ONLY," that Party must:

       (a)  promptly notify in writing the Designating Party.  Such notification
shall include a copy of the subpoena or court order;

       (b)  promptly notify in writing the party who caused the subpoena or order
to issue in the other litigation that some or all of the material covered by the
subpoena or order is subject to this Protective Order.  Such notification shall include
a copy of this Stipulated Protective Order; and

       (c)  cooperate with respect to all reasonable procedures sought to be
pursued by the Designating Party whose Protected Material may be affected.

       If the Designating Party timely seeks a protective order, the Party served with
the subpoena or court order shall not produce any information designated in this
action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS'
EYES ONLY" before a determination by the court from which the subpoena or
order issued, unless the Party has obtained the Designating Party's permission.  The
Designating Party shall bear the burden and expense of seeking protection in that
court of its confidential material, and nothing in these provisions should be
construed as authorizing or encouraging a Receiving Party in this Action to disobey
a lawful directive from another court.

9.    A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE

PRODUCED IN THIS LITIGATION

(a)  The terms of this Order are applicable to information produced by a Non-Party in this Action and designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."  Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order.  Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b)  In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

(1)  promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

(2)  promptly provide the Non-Party with a copy of the Stipulated Protective Order in this Action, the relevant discovery request(s), and a reasonably specific description of the information requested; and

(3)  make the information requested available for inspection by the Non-Party, if requested.

(c)  If the Non-Party fails to seek a protective order from this court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request.  If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court.  Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

21

10.    UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

11.    PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

11.1    Format and Contents of Privilege Logs

(a)    General. Documents that a Party withholds, entirely or in part by redaction, on the basis of the attorney-client privilege, the work product doctrine, or any other discovery protection shall be logged on a privilege log on a document-by-document basis. Communications involving trial counsel of record that post-date the filing of the initial class action complaint (August 9, 2024) need not be placed on a privilege log.

(b)    Initial and Subsequent Privilege Logs. The Parties agree to furnish logs that comply with Fed. R. Civ. P. 26(b)(5) and any other legal requirements for all documents withheld or redacted on the basis of privilege, attorney work product, or similar doctrines.  Privilege logs will be produced in Microsoft Excel. Document productions in this Action shall be rolling.  The parties shall provide privilege logs describing the documents from a production no later than sixty (60) days after the party's transmission to the Receiving Party of that production absent agreement by the parties based on a good cause showing of a need for additional time to complete the log.

(c)    After the initial privilege log is served, each subsequent privilege

log will be an "amended" privilege log as it will log all documents withheld
(entirely or in part) from any of the Producing Party's document productions
completed before the date on which the amended privilege log is served (including
all entries from any previously served log(s), so that each amended privilege log
supersedes all previously served privilege logs).

       (d)    Contents of Privilege Log Entries. Consistent with Federal Rule
of Civil Procedure 26(b)(5), the following information shall be provided (as
applicable and reasonably available) in the privilege log for each document:  (1)
unique identifier; (2) Bates-number range or if no Bates-number range, a unique
document identification number range, such that the Producing Party provides the
number of pages in the withheld or redacted document; (3) group identifier; (4)
document type; (5) document subject or title or LARK conversation name; (6)
document date; (7) author or email sender and recipients, including copyees and
blind copyees (including identifying all individuals who received an e-mail from an
e-mail list upon reasonable request), or LARK sender or reactor participants with
attorneys and their staff denoted by an asterisk (*) on the log; (8) custodian(s); (9)
basis of the privilege(s) or protection(s) claimed; and (10) description of the subject
matter of the withheld Document or electronically stored information sufficient to
enable the Requesting Party to assess the validity of the privilege claim.  For hard
copy documents, the Producing Party need only provide items (1), (2), (9), (10), and
(11).

       (e)    Email Strings. If the Producing Party is withholding any part of
an email thread based on a claim of privilege or other protection, that party must
produce all parts of the thread that are not privileged. Each withheld communication
in an email string shall be separately logged as described above.

    11.2   Challenges to Privilege Log Entries

       (a)    Challenging a Privilege Log Entry. If a Requesting Party
believes that one or more items in a Producing Party's privilege log should be

23

produced, then it shall raise the issue in writing as to each log entry or category of log entries with the Producing Party with reasonably sufficient detail so that the Producing Party may understand the Requesting Party's position.

(b)    Responding to a Challenge. The Producing Party shall then respond to the challenge in writing within ten (10) business days unless otherwise agreed by the Parties, and must either state that the Producing Party will produce the document in full or explain the grounds for disagreement with the challenge. If the Producing Party disagrees with the challenge, it must explain the basis for its designation with reasonably sufficient detail so that the Requesting Party understands its position.

(c)    Resolving Disputes. If the Producing Party's written response does not satisfy the Requesting Party, the Parties shall meet and confer within 10 business days of the Producing Party's written response to try to reach a mutually agreeable solution. If the Parties remain at impasse after meeting and conferring, the challenging party must file any motion to compel within 10 business days, unless the Parties agree to a different schedule. If the challenge(s) involve multiple issues, the Parties will meet and confer to propose a reasonable briefing schedule.

11.3    502(d) Clawback Order

(a)    Purpose. Pursuant to Federal Rules of Evidence 502(d) the production or disclosure of any documents protected from discovery, including under the attorney-client privilege, work product doctrine, the joint defense or common interest privilege, privacy laws and regulations, or any other immunity from discovery (collectively "privilege or protection"), and accompanying metadata ("Protected Documents"), does not, alone, result in the waiver of any privilege or protection, including subject matter waiver, associated with such Protected Documents as to the Receiving Party or any third parties in this or in any other state or federal proceeding regardless of the circumstances of the disclosure. Federal Rule of Evidence 502(b) does not apply and instead this Stipulated 502(d) Order governs.

Nothing contained herein requires the production of Protected Documents, and no
party is required to undertake a "quick peek" process under Fed. R. Civ. P. 26(b)(5).
Nothing contained herein is intended to or shall serve to limit a Party's right to
conduct a review of material for relevance, responsiveness, and/or segregation of
privileged and/or protected information before production.

    (b) Clawback Agreement. In the event that a Producing Party
discovers that it produced Protected Document(s), it shall provide written notice of
the claim of privilege or protection to the Receiving Party (a "Clawback Notice"),
sufficiently identifying the Protected Document(s) within ten (10) business days
after discovery. Within ten (10) business days following the production of the
Clawback Notice, the Producing Party shall provide (i) if only a portion of the
document contains privileged or protected material, a new copy of the document
utilizing the same bates number(s) as the original that has been redacted to protect
the privilege or protected material; or (ii) if the entire document is privileged or
protected, a slip sheet identifying the same bates number(s) as the original noting
that the document has been withheld. Any Protected Document that is the subject of
a Clawback Notice will be included on a privilege log if and as required by the
privilege-logging procedures agreed to by the parties or ordered by the Court.

    (c) Procedures Following Clawback Notice.

     i. Within ten (10) business days of receipt of a Clawback
Notice (unless the Receiving Party plans to challenge the Producing Party's claim of
privilege or protection), the Receiving Party must promptly return, sequester, or
destroy the Protected Document(s) and all copies thereof ("the Clawed Back
Material")  and sequester any work product that reproduces, copies, or otherwise
discloses the substance of the Protected Documents ("Sequestered Work Product")
and certify to the Producing Party when this destruction and sequestration is
complete.

     ii. If a Receiving Party challenges a claim that a Protected

Document specified in a Clawback Notice is privileged or protected, the Receiving Party shall notify the Producing Party of its challenge within fourteen (14) business days of receiving the Clawback Notice. Within ten (10) business days of the Producing Party receiving notification of the challenge, the parties shall meet and confer in an effort to resolve their disagreement.

iii.    If the Receiving Party objects, until the challenge is resolved, the Receiving Party is not permitted to use the Clawed Back Material.  The Receiving Party may, however, sequester (rather than destroy) the Sequestered Work Product during the meet and confer process but may not use or disclose the Sequestered Work Product unless and until the Court orders the production of the Clawed Back Material or the Producing Party withdraws its Clawback Notice.  If the Parties are unable to resolve any disagreement regarding a Clawback Notice after meet and confer, either Party may submit the issue to the Court for a determination, and the parties agree that the Court may review the challenged documents *in camera* to resolve the dispute.

iv.    If the Producing Party's challenged clawback is ultimately successful or the Receiving Party withdraws or fails to pursue its challenge to the Clawback Notice, the Receiving Party must promptly destroy the Clawed Back Material and Sequestered Work Product and certify in writing to the Producing Party when this destruction is complete.

v.    In the event that a Receiving Party discovers that it has received or examined document(s) that are or reasonably appear to be subject to a claim of privilege by a Producing Party ("Potentially Privileged Material"), the Receiving Party promptly shall (1) return, sequester, or destroy the document(s), and (2) within ten (10) business days of such discovery, notify the Producing Party of the production of Potentially Privileged Material by identifying the Bates range(s) of the document(s) at issue (a "Potentially Privileged Material Production Notice").   Upon the Producing Party receiving a Potentially Privileged Material

Production Notice, the Producing Party shall have ten (10) business days to assert a claim of privilege over the identified information and provide a Clawback Notice (thereby invoking the Clawback process set forth above).

(d)     Procedure for Briefing and Hearings. In a submission to the Court or at a hearing, if a Receiving Party uses discovery materials in a submission to the Court or at a hearing, and the Producing Party has not served a Clawback Notice as to those materials in advance of the submission to the Court or hearing, the Producing Party must serve a Clawback Notice within thirty (30) calendar days of its receipt of the submission to the Court or the hearing; otherwise, the information shall be deemed not to be privileged or protected, unless the Producing Party demonstrates good cause for failing to clawback the document sooner.  If the Producing Party serves a Clawback Notice, the procedures set forth in Section 11 shall apply.   To the extent any Privileged Material is placed into the public record in connection with briefing or a hearing, the Receiving Party shall (1) withdraw the portion of the briefing and exhibits that contain the assertedly Privileged Material, (2) request the Court seal that material, and/or (c) join or not oppose a motion to seal the assertedly Privileged Material.

(e)     Procedure for Depositions. If, during a deposition, a Producing Party claims that documents being used in the deposition (e.g., marked as an exhibit, shown to the witness, or made the subject of examination) are or contain Privileged Material, the Producing Party may state such claim on the record and may, in its sole discretion, do one or more of the following: (1) allow questioning about the Privileged Material but instruct the witness not to answer questions concerning the portions of the documents constituting Privileged Material or (2) object to the use of the Privileged Material at the deposition, in which case no questions may be asked and no testimony may be given relating to the Privileged Material until the matter has been resolved by agreement or by the Court.  In the event the Court resolves any dispute over Privileged Material in the Receiving Party's favor and the Receiving

27

Party was denied the opportunity to examine a witness as to the materials at issue, the witness shall be made available as soon as practicable after the Court's decision. In all events, once the Privileged Material is no longer in use at the deposition, the Receiving Party shall immediately destroy, sequester, or return all copies of the Privileged Material.  Whether or not the Producing Party stated its claim on the record during the deposition, as to any testimony or exhibit subject to a claim of privilege or protection, the Producing Party shall serve a Clawback Notice within thirty (30) calendar days after receipt of the final transcript of the deposition, after which the Parties shall follow the procedures set forth above, as applicable. If the Producing Party does not serve a Clawback Notice within thirty (30) calendar days, the deposition testimony and exhibits used at the deposition shall be deemed not to be privileged or protected, unless the Producing Party demonstrates good cause for failing to clawback the document sooner. Pending determination of any challenge to such a Clawback Notice, all Parties with access to the deposition transcript shall treat the relevant testimony in accordance with this section.

12.    GENERATIVE ARTIFICIAL INTELLIGENCE

12.1   "Artificial Intelligence" or "AI Models" refers to a collection of technologies that emulate human intelligence by performing cognitive tasks, e.g., perceiving, learning, reasoning, problem solving, and understanding and generating language. The Parties agree that any documents, electronically stored information, or other materials produced or exchanged in the course of this action, including but not limited to those designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY under this Order, shall not be used, in whole or in part, for prompts (inputs), completions (outputs), or embeddings that are used to train, improve, re-train, or otherwise develop AI Models. This prohibition does not preclude the use of AI tools, APIs, or enterprise services that are developed or used solely for this case or any related appellate proceeding and all information

developed by such a model(s) is quarantined while it exists and destroyed after its use. No Protected Material shall be submitted, uploaded, or otherwise provided to any AI or machine learning service—whether public, commercial, or third-party—if such submission would result in use, potential access, or disclosure of the Protected Material to any individual not entitled to receive the Protected Material under this Order.

12.2   Consistent with this Order, AI outputs based on Protected Material shall be treated as CONFIDENTIAL or HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY to the same extent as the most restrictive underlying inputs. AI-generated output or system prompts or logs that reveal Protected Material may only be shared with persons authorized to receive Protected Materials within the limitations of this Order. Furthermore, any AI that retains data for any purpose, including for model training, training of public or generally available models, or that otherwise uses or stores data beyond temporary storage or processing, shall be maintained in a secure litigation support site that applies standard industry practices regarding data security, including but not limited to application of auditable access control rights to those persons entitled to access Protected Material under this Order. Any models trained on Discovery Material must be destroyed in the same manner as Discovery Material under Part 14: Final Disposition of this Order.

12.3   The Parties further agree to take reasonable steps to ensure that their employees, counsel, agents, consultants, contractors, and any other persons or entities who may have access to such materials comply with this provision. Any violation of this provision may be addressed by the Court through appropriate remedies, including but not limited to sanctions. For the avoidance of doubt, nothing in this paragraph restricts the use of eDiscovery tools that operate solely to assist with document review and production in this Action, including Technology Assisted Review ("TAR") and Continuous Active Learning ("CAL"), provided such tools do not train or contribute to the training, improvement, or development of AI Models.

29

Furthermore, nothing in this Order restricts use of AI Models with information that is publicly available and not designated under this Order, provided such use does not combine or correlate such information with Confidential Material in a manner that would reveal or derive Confidential Material.

13.   MISCELLANEOUS

13.1   Right to Further Relief.  Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

13.2   Right to Assert Other Objections.  By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order.  Similarly, no Party waives any right to object on any ground to the use in evidence of any of the material covered by this Protective Order.

13.3   Filing Protected Material.  A Party that seeks to file under seal any Protected Material must comply with Local Civil Rule 79-5.  Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue.  If a Party's request to file Protected Material under seal is denied by the court, then the Receiving Party may file the information in the public record unless otherwise instructed by the court.

14.   FINAL DISPOSITION

After the final disposition of this Action, as defined in paragraph 4, within 60 days of a written request by the Designating Party, each Receiving Party must destroy all Protected Material.  As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material.  The Receiving Party must submit a written certification to the Producing Party (and, if not the same person or

entity, to the Designating Party) by the 60 day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material.  Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4 (DURATION).

15.    <u>VIOLATION</u>

Any violation of this Order may be punished by appropriate measures including, without limitation, contempt proceedings and/or monetary sanctions.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

DATED:  December 11, 2025

By:   */s/ Derek W. Loeser*
Derek W. Loeser (*pro hac vice*)
dloeser@kellerrohrback.com
Cari Campen Laufenberg (*pro hac vice*)
claufenberg@kellerrohrback.com
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101
Telephone:  (206) 623-1900
Facsimile:   (206) 623-3384

*Plaintiffs' Interim Co-Lead Counsel*

By:  */s/ Eric A. Kafka*
Eric Kafka (*pro hac vice*)
ekafka@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL PLLC
88 Pine Street, 14th Floor
New York, NY 10005
Telephone:  (212) 838-7797
Facsimile:   (212) 838-7745

*Plaintiffs' Interim Co-Lead Counsel*

Steven L. Bloch (*pro hac vice*)
sbloch@sgtlaw.com
SILVER GOLUB & TEITELL LLP
One Landmark Square, 15th Floor
Stamford, CT 06901
Telephone:  (203) 325-4491
Facsimile:   (203) 325-3769

*Plaintiffs' Executive Committee*

By:  */s/ Daniel M. Petrocelli*
DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, Suite 800
Los Angeles, California 90067-6035
Telephone:  (310) 553-6700
Facsimile:   (310) 246-6779

1   STEPHEN D. BRODY (*pro hac vice*)
  sbrody@omm.com
2   O'MELVENY & MYERS LLP
  1625 Eye Street, NW
3   Washington, D.C. 20006-4001
  Telephone:  (202) 383-5300
4   Facsimile:   (202) 383-5414

5   MATTHEW D. POWERS (S.B. #212682)
  mpowers@omm.com
6   O'MELVENY & MYERS LLP
  Two Embarcadero Center
7   San Francisco, CA 94111
  Telephone:  (415) 984-8700
8   Facsimile:   (415) 984-8701

9
10 *Attorneys for Defendants ByteDance Ltd.,
ByteDance Inc., TikTok Ltd., TikTok Inc.,
TikTok LLC, TikTok Pte. Ltd., and
11 TikTok U.S. Data Security Inc.*

12
13 FOR GOOD CAUSE SHOWN, IT IS SO ORDERED.

14

15

16 DATED: December 11, 2025

17                        HON. GEORGE H. WU,
                       United States District Judge

18

33

## EXHIBIT A

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [print or type full name], of

_____ [print or type full address], declare under penalty of perjury

that I have read in its entirety and understand the Stipulated Protective Order that

was issued by the United States District Court for the Central District of California

on [date] in the case of *In Re: TikTok Inc., Minor Privacy Litigation*, MDL No.

3144, 2:25-ml-03144-GW-RAO.  I agree to comply with and to be bound by all the

terms of this Stipulated Protective Order, and I understand and acknowledge that

failure to so comply could expose me to sanctions and punishment in the nature of

contempt.  I solemnly promise that I will not disclose in any manner any

information or item that is subject to this Stipulated Protective Order to any person

or entity except in strict compliance with the provisions of this Order. I further agree

to submit to the jurisdiction of the United States District Court for the Central

District of California for enforcing the terms of this Stipulated Protective Order,

even if such enforcement proceedings occur after termination of this action.  I

hereby appoint _____ [print or type full name] of

_____ [print or type full address and

telephone number] as my California agent for service of process in connection with

this action or any proceedings related to enforcement of this Stipulated Protective

Order.

Date: _____

City and State where sworn and signed: _____

Printed name: _____

Signature: _____

34