Derek W. Loeser (*pro hac vice*)
Cari Campen Laufenberg (*pro hac vice*)
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101
Telephone: (206) 623-1900,
Facsimile: (206) 623-3384
dloeser@kellerrohrback.com
claufenberg@kellerrohrback.com

Eric Kafka (*pro hac vice*)
**COHEN MILSTEIN SELLERS &
TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
ekafka@cohenmilstein.com

Steven Bloch (*pro hac vice*)
**SILVER GOLUB & TEITELL LLP**
One Landmark Square, 15th Floor
Stamford, CT 06901
Telephone: (203) 325-4491
sbloch@sgtlaw.com

*Attorneys for Plaintiffs and Putative Classes*

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: TIKTOK, INC., MINOR PRIVACY LITIGATION | MDL NO. 3144 |
| | 2:25-ml-03144-GW-RAO |
| | <u>CLASS ACTION</u> |
| | **REVISED AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** |
| | DEMAND FOR JURY TRIAL |

# TABLE OF CONTENTS

I.    NATURE OF THE ACTION ...................................................................................2

II.   PARTIES ..............................................................................................................8

    A.    Plaintiffs ..................................................................................................8

    B.    Defendants ..............................................................................................13

    C.    Common Enterprise..................................................................................14

III.  JURISDICTION AND VENUE...........................................................................17

IV.   SUBSTANTIVE ALLEGATIONS ......................................................................19

    A.    TikTok Collects and Exploits the Private Information and Kids Mode
        Private Information of Children Under Age 13. .....................................20

        1.    Private Information Defined. .......................................................20

        2.    The TikTok Platform. ..................................................................22

        3.    TikTok Knowingly Promotes Content to Under 13 Users on Its
            Full Access Platform.....................................................................24

        4.    TikTok Amasses Data to Build Profiles and Target Advertising
            to Under 13 Users ........................................................................27

        5.    Defendants Knowingly Creates Accounts for Children Under
            13 and Collects Their Data without Parental Notice or Consent..33

        6.    Defendants Collected Personal Information from "Kids Mode"
            Accounts......................................................................................36

        7.    Defendants Ignored Parents' Requests to Delete Child Users'
            Data ...........................................................................................38

        8.    Defendants Have Failed To Delete Children's Accounts and
            Information Identified By Their Own Systems. ...........................41

        9.    TikTok Had Actual Knowledge That It Was Collecting, Storing
            and Using the Personal Information of Children Under the Age
            of 13. .........................................................................................42

i

B.    Defendants Knowingly Collected and Exploited the Personal Information of Children Without Parental Consent In Violation of COPPA. ..................................................................................45

    1.    The Children's Online Privacy Protection Act of 1998...............45

    2.    TikTok unlawfully collects personal information from under age 13 users on the Full Access and Kids Mode Platforms..........49

    3.    Defendants' Actions Violated Class Members' Reasonable Expectations of Privacy and Are Highly Offensive. ....................53

    4.    Defendants' Actions Targeting Children in Violation of COPPA and the 2019 Permanent Injunction Are Highly Offensive and Egregious. ..............................................................55

C.    Plaintiffs and Members of the Classes Have Suffered Economic Injury While Defendants Have Been Enriched....................................56

    1.    Private Information and Kids Mode Private Information Are Assets That Have Economic Value. ..............................................57

    2.    Defendants Have Been Enriched by Taking Possession of and Using the Private Information and Kids Mode Private Information of Plaintiffs and the Class. ......................................62

D.    Equitable Relief is Necessary to Protect the Rights of the Class and Prevent Defendants from Profiting from their Wrongful Conduct.........63

V.    ALLEGATIONS RELATING TO PLAINTIFFS.............................................64

A.    Plaintiffs G.K. and D.K., minors, by and through their parent Karin Robinson.........................................................................................64

B.    Plaintiff A.J., a minor, by and through their parent and guardian ad litem, Alexis Douglas..................................................................65

C.    Plaintiff B.M., a minor, by and through their parent and guardian ad litem, Marcelo Muto.................................................................67

D.    Plaintiff S.T., a minor, by and through their parent, Samuel Tsou.........67

E.    Plaintiff J.C., a minor, by and through their parent and guardian ad litem, Jody Villanueva.................................................................68

F.    Plaintiff L.F., a minor, by and through their parent and guardian ad litem, Heather Bresette ...................................................................70

G.    Plaintiff D.G., a minor, by and through their parent, Kristy Bradley .....71

H.    Plaintiff D.M., a minor, by and through their parent and guardian ad litem, Darryl Maultsby .....................................................................71

I.    Plaintiff E.B., a minor, by and through their parent, Ebony Baker ........72

J.    Plaintiff A.K., a minor, by and through their parent, Katherine Knight.73

K.    Plaintiff J.S., a minor, by and through their parent, Kiara Dennis..........74

L.    Plaintiff T.W., a minor, by and through their parent, Rachel Smith.......75

M.    Plaintiff G.A., a minor, by and through their parent, Leyna Midkiff .....76

N.    Plaintiff C.H., a minor, by and through their parent, Arthur Henry .......77

O.    Plaintiff M.B., a minor, by and through their parent, Lynette Bouie......77

P.    Plaintiff J.H., a minor, by and through their parent, Tranay Holloway ..78

Q.    Plaintiffs A.A.A., A.B.A., and E.A., minors, by and through their parent, Kelly Lynn Addis ........................................................................79

R.    Plaintiff K.M., a minor, by and through their parent, Dakota Moody....80

S.    Plaintiff A.L., a minor, by and through their parent, Tatum Dunne .......81

T.    Plaintiff A.B., a minor, by and through their parent, Christina Middleton .........................................................................................82

U.    Plaintiffs H.J. and N.J., minors, by and through their parent, Amatullah Allen .................................................................................83

V.    Plaintiff I.T., a minor, by and through their parent, Yeni Castro............84

W.    Plaintiff M.G., a minor, by and through their parent and guardian ad litem, Valerie Gates..........................................................................84

X.    Plaintiff V.M., a minor, by and through their parent, Ebony Nielsen ....86

Y.    Plaintiff D.P., a minor, by and through their parent, Tammy Padgett....86

Z.    Plaintiffs P.B., J.S., and J.F., minors, by and through their parent, Brittany Santisi ...................................................................................87

AA.   Plaintiffs Z.B. and I.B. minors, by and through their parent, Steven Burda ......................................................................................................88

BB.   Plaintiff E.J., a minor, by and through their parent, Elizabeth Jacob .....89

CC.   Plaintiffs R.C., B.L.J., and B.R.J., minors, by and through their grandparent and guardian, Shirley Reed-Stallings..................................90

DD.   Plaintiff K.F., a minor, by and through their parent and guardian ad litem, Angela Faucett ...................................................................................91

EE.   Plaintiff J.W., a minor, by and through their parent and guardian ad litem, Kayla Jaramillo .................................................................................92

FF.   Plaintiffs B.S. and A.S., minors, by and through their parent and guardian ad litem, Jennifer Seputis .........................................................93

VI.   TOLLING, ESTOPPEL AND RELATION BACK...........................................94

A.    Discovery Rule Tolling .................................................................................94

B.    Tolling of Statute of Limitations..................................................................95

C.    Estoppel ........................................................................................................95

VII.  CLASS ACTION ALLEGATIONS...................................................................96

A.    Multistate Intrusion Upon Seclusion Class ................................................96

B.    Multistate Unjust Enrichment Class............................................................97

C.    State Classes: ...............................................................................................98

      1.    The California Class ...........................................................................98

      2.    The Connecticut Class .......................................................................98

      3.    The Florida Class ...............................................................................98

      4.    The Georgia Class..............................................................................98

      5.    The Missouri Class.............................................................................99

6.    The New York Class ........................................................99

7.    The Pennsylvania Class ...................................................99

8.    The Washington Class .....................................................100

VIII. CLAIMS FOR RELIEF................................................................103

Claim 1 — MULTISTATE INTRUSION UPON SECLUSION .........103

Claim 2 — MULTISTATE UNJUST ENRICHMENT CLAIM..........106

A.   CALIFORNIA CLAIMS....................................................................108

Claim 3 — CALIFORNIA CONSTITUTIONAL RIGHT TO PRIVACY, CAL. CONST. ART. 1, § 1...................................108

Claim 4 — CALIFORNIA NEGLIGENCE .........................................110

Claim 5 — CALIFORNIA UNFAIR COMPETITION LAW (UCL), CAL. BUS. & PROF. CODE § 17200 ET SEQ. ........................115

B.   CONNECTICUT CLAIMS.................................................................122

Claim 6 — CONNECTICUT NEGLIGENCE ....................................122

Claim 7 — CONNECTICUT UNFAIR TRADE PRACTICES ACT, CONN. GEN. STAT. § 42-110A ET SEQ. ...............................127

C.   FLORIDA CLAIMS ..........................................................................131

Claim 8 — FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUTPA), FLA. STAT. ANN. § 501.201 ET SEQ. ..............................................................................131

Claim 9 — FLORIDA NEGLIGENCE ...............................................136

D.   GEORGIA CLAIMS...........................................................................141

Claim 10 — GEORGIA NEGLIGENCE..............................................141

Claim 11 — GEORGIA FAIR BUSINESS PRACTICES ACT, GA. CODE ANN. § 10-1-390 ET SEQ.............................................146

E.   MISSOURI CLAIMS...........................................................................151

Claim 12 — MISSOURI NEGLIGENCE..............................................151

Claim 13 — MISSOURI MERCHANDISING PRACTICES ACT (MMPA), MO. REV. STAT. ANN. CH. 407............................156

F.     NEW YORK CLAIMS ................................................................161

Claim 14 — NEW YORK CIVIL RIGHTS LAW §§ 50-51................161

Claim 15 — NEW YORK NEGLIGENCE .........................................163

G.     PENNSYLVANIA CLAIMS........................................................168

Claim 16 — PENNSYLVANIA NEGLIGENCE.................................168

Claim 17 — PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (UTPCPL), PA. STAT. ANN. TIT. 73 § 210-1 ET SEQ.......................................173

H.     WASHINGTON CLAIMS............................................................178

Claim 18 — WASHINGTON NEGLIGENCE....................................178

Claim 19 — WASHINGTON CONSUMER PROTECTION ACT, WASH. REV. CODE. § 19.86.010 ET SEQ. ...........................183

IX.     PRAYER FOR RELIEF ........................................................................185

X.     DEMAND FOR JURY TRIAL ..............................................................186

Plaintiffs G.K. and D.K., minors, by and through their parent, Karin Robinson; A.J., a minor, by and through their parent and guardian ad litem, Alexis Douglas; B.M., a minor, by and through their parent and guardian ad litem, Marcelo Muto; S.T., a minor, by and through their parent Samuel Tsou; J.C., a minor, by and through their parent and guardian ad litem, Jody Villanueva; L.F., a minor, by and through their parent and guardian ad litem, Heather Bresette; D.G., a minor, by and through their parent, Kristy Bradley; D.M., a minor, by and through their parent and guardian ad litem, Darryl Maultsby; E.B., a minor, by and through their parent, Ebony Baker; A.K., a minor, by and through their parent, Katherine Knight; J.S., a minor, by and through their parent, Kiara Dennis; T.W., a minor, by and through their parent, Rachel Smith; G.A., a minor, by and through their parent, Leyna Midkiff; C.H., a minor, by and through their parent, Arthur Henry; M.B., a minor, by and through their parent, Lynette Bouie; J.H., a minor, by and through their parent, Tranay Holloway; A.A.A., A.B.A., and E.A., minors, by and through their parent, Kelly Lynn Addis; K.M., a minor, by and through their parent, Dakota Moody; A.L., a minor, by and through their parent, Tatum Dunne; A.B., a minor, by and through their parent, Christina Middleton; H.J. and N.J., minors, by and through their parent, Amatullah Allen; I.T., a minor, by and through their parent, Yeni Castro; M.G., a minor, by and through their parent and guardian ad litem, Valerie Gates; V.M., a minor, by and through their parent, Ebony Nielsen; D.P., a minor, by and through their parent, Tammy Padgett; P.B., J.S., and J.F., minors, by and through their parent, Brittany Santisi; Z.B. and I.B., minors, by and through their parent, Steven Burda; E.J., a minor, by and through their parent, Elizabeth Jacob; R.C., B.L.J., and B.R.J., minors, by and through their grandparent and guardian, Shirley Reed-Stallings; K.F., a minor, by and through their parent and guardian ad litem, Angela Faucett; J.W., a minor, by and through their parent and guardian ad litem, Kayla Jaramillo; and B.S. and A.S., minors, by and through their parent Jennifer Seputis, individually, and on behalf of all others similarly situated, hereby file suit against the

1

Defendants listed below and allege the following based on personal knowledge, information and belief, the investigation of counsel, and public sources:

## I.  NATURE OF THE ACTION

1.  This action arises out of Defendants' invasion of privacy and unfair business practices directed toward millions of children in the United States under the age of 13 in violation of the law and societal norms. Specifically, from March 28, 2019 to the present (the "Class Period"), Defendants have knowingly permitted and encouraged children under the age of 13 to create user accounts on the TikTok full access platform ("Full Access Platform")[1] for the purpose of collecting intimate, deeply intrusive data points about them and their online behavior without notice and parental consent. TikTok collects information from users that it knows are under 13, including name, age, email address, phone number, persistent identifiers[2] for the device(s) used to access TikTok, social media account information, profile image, as well as photographs, videos, and audio files containing the user's image and voice and the metadata associated with such media (such as when, where, and by whom the content was created), usage information, device information, location data, image and audio information, metadata, and data from cookies and similar technologies that track user across different websites and platforms (collectively, as set forth in ¶ 75, "Private Information").[3] Defendants use this unlawfully collected Private Information to increase their profits by providing personally curated content that increases user engagement, to target and serve copious amounts of behavioral advertising, and/or to share users' information with third parties for advertising and other purposes. Defendants engaged in

---

[1] Colloquially, the "Full Access Platform" is often referred to as the main TikTok app or the Platform.

[2] A "persistent identifier" is a piece of information "that can be used to recognize a user over time and across different web sites or online services," such as "a cookie, an internet protocol (IP) address, a processor or device serial number, or unique device identifier." 16 C.F.R. 312.2.

[3] *Privacy Policy*, TikTok, https://www.tiktok.com/legal/page/us/privacy-policy/en (last updated Aug. 19, 2024).

this unlawful behavior for one reason—profit.

2.    Indeed, children are so integral to Defendants' profitability, that Defendants were unwilling to cease their unlawful business practices despite a Permanent Injunction, entered into with the United States Government on March 27, 2019 (the "2019 Permanent Injunction").[4] The 2019 Permanent Injunction enjoined TikTok from, among other things, violating the Commission's Children's Online Privacy Protection Act Rule ("COPPA Rule")[5]—prohibiting Defendants from their continued collection and use of the Private Information of children under the age of 13 without notice and verifiable parental consent.

3.    In addition to directing its Full Access Platform to, among others, children under the age of 13, TikTok provides a modified platform purportedly for children under the age of 13, called "Kids Mode." This platform restricts user activity and prevents users from posting, messaging, or using features like commenting or sharing. But TikTok knows that children under the age of 13 can and routinely gain access to the Full Access Platform by merely indicating they are over age 13 when they create an account. TikTok could use effective age-gating, but, here, as well, they are driven by profit. They collect more data and earn more money by knowingly allowing children under the age of 13 on the Full Access Platform.

4.    Defendants ByteDance Ltd., ByteDance, Inc.; TikTok Inc., TikTok LLC, TikTok Ltd., TikTok Pte Ltd., and TikTok U.S. Data Security Inc. (collectively, "TikTok") operate one of the world's largest social media platforms that reaches millions of Americans under the age of 13.

5.    TikTok's user base is disproportionately made up of children. From the outset, Defendants considered U.S. teens a "golden audience."[6]

---

[4] Stipulated Order Civil Penalties, Permanent Inj., & Other Relief, *United States v. Musical.ly*, No. 19-cv-01439 (C.D. Cal. Mar. 27, 2019), ECF No. 10.

[5] 16 C.F.R. Part 312.

[6] Paul Mozur, *Chinese Tech Firms Forced to Choose Market: Home or Everywhere Else*, N.Y. Times (Aug. 9, 2016),

3

6.      Defendants know that TikTok is an attractive social media destination for children. Nonetheless, Defendants have a history of knowingly allowing children under 13 years of age to create and use TikTok accounts without their parents' knowledge or consent, collecting extensive data from those children, and failing to comply with parents' requests to delete their children's accounts and personal information.

7.      On February 27, 2019, the United States filed a Complaint against Musical.ly and Musical.ly, Inc., companies that had been acquired by TikTok in 2017[7], alleging that Defendants were unlawfully collecting and using the personal information of children, as defined by Children's Online Privacy Protection Act ("COPPA"),[8] in the operation of their free online video-sharing app.[9]

8.      One month later, on March 27, 2019, the 2019 Permanent Injunction was entered and imposed a then record $5.7 million civil penalty for violations of COPPA Rule, 16 C.F.R. Part 312, and Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45; required Defendants to destroy personal information of users under the age of 13; required Defendants to remove accounts of users whose age could not be identified; enjoined Defendants from violating the COPPA Rule; and required Defendants to retain certain records related to compliance with the COPPA Rule and the 2019 Permanent Injunction.[10]

9.      When the United States brought its Complaint against Musical.ly in 2019, it alleged that the app had 65 million registered accounts in the United States.[11] As of

---

https://www.nytimes.com/2016/08/10/technology/china-homegrown-internet-companies-rest-of-the-world.html.

[7] Musical.ly and Musical.ly, Inc., (respectively renamed TikTok Ltd. and TikTok Inc. in April 2019).

[8] 15 U.S.C. §§ 6502(c) and 6505(d).

[9] Compl., *United States v. Musical.ly*, No. 2:19-cv-1439 (C.D. Cal. Feb. 27, 2019), ECF No. 1.

[10] Stipulated Order Civil Penalties, Permanent Inj., & Other Relief, *United States v. Musical.ly*, No. 19-cv-01439 (C.D. Cal. Mar. 27, 2019), ECF No. 10.

[11] Compl. at 5, *United States v. Musical.ly*, No. 2:19-cv-1439 (C.D. Cal. Feb. 27, 2019), ECF No. 1.

2024, there are more than 170 million TikTok users in the United States.[12] TikTok continues to grow.[13]

10.    More specifically, TikTok continues to grow its audience of children. In July 2020, TikTok estimated that more than one-third of its 49 million daily users in the United States were 14 or younger.[14]

11.    Though TikTok purports to require users creating accounts to report their birthdates, it has consistently and knowingly allowed children to bypass or evade the "age gate" and has continued to impermissibly collect, use, and share data from children who self-identify as being below the age of 13.

12.    As a result of its continued violations of COPPA and its failure to abide by the terms of the 2019 Permanent Injunction, the United States Department of Justice ("DOJ") filed a complaint on August 2, 2024 against TikTok, complaining of TikTok's continued wrongful collection and misuse of the personal information (as defined by COPPA) of children under 13 without parental consent in violation of COPPA and its obligations under the 2019 Permanent Injunction.[15]

13.    The DOJ Complaint alleges that throughout the Class Period, Defendants have: (1) provided services directed to children that collect personal information from their users; (2) knowingly created accounts for children and collected data from those children without first notifying their parents and obtaining verifiable parental consent; (3) failed to honor parents' requests to delete their children's accounts and information;

---

[12] *Year on TikTok 2024: A little creativity sparks a lot of impact*, TikTok (Dec. 4, 2024), https://newsroom.tiktok.com/en-us/year-on-tiktok-2024/?ref=tos.gg.

[13] Erin Griffith, *U.S. Ban of TikTok Is Set to Deal a Major Blow to ByteDance, Its Chinese Owner*, N.Y. Times (Jan. 17, 2025), https://www.nytimes.com/2025/01/17/technology/tiktok-ban-bytedance.html.

[14] Raymond Zhong & Sheera Frenkel, *A Third of TikTok's U.S. Users May Be 14 or Under, Raising Safety Questions*, N.Y. Times (Sept. 17, 2020), https://www.nytimes.com/2020/08/14/technology/tiktok-underage-users-ftc.html.

[15] Compl. Permanent Inj., Civil Penalty J., & Other Relief ("DOJ Complaint") at ¶¶ 37-38, *United States v. ByteDance Ltd.*, No. 2:24-cv-06535 (C.D. Cal. Aug. 2, 2024), ECF No. 1.

and (4) failed to delete the accounts and information of users they know are children.[16] The DOJ Complaint further alleges that its ability to assess the precise magnitude of Defendants' violations has been stymied by Defendants' failure to keep records demonstrating its COPPA compliance, as required by the terms of the 2019 Permanent Injunction.[17]

14.    The Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. §6501 *et seq.*, protects children under 13 years old from having their personal information (as defined in 16 C.F.R. § 312.2) collected by operators of websites or online services directed to children, or operators with actual knowledge that they are collecting personal information online from children under 13 years old, unless their parent has first given verifiable consent. Each time Defendants have collected a child's personal information without parental notice or verifiable consent or have failed to delete that information at the request of the child's parents or upon learning it was collected from a child whose parents were not notified or did not provide verifiable consent, Defendants violated COPPA.

15.    COPPA violations "shall be treated as a violation of a rule defining an unfair . . . act or practice prescribed under section 57a(a)(1)(B) of [FTC Act]."[18] In other words, a violation of COPPA constitutes an unfair trade practice under Section 5 of the FTC Act. 15 U.S.C. § 45(a).

16.    A majority of states, including but not limited to California, Connecticut, Florida, Georgia, Missouri, Pennsylvania and Washington, have enacted laws prohibiting unfair and/or unlawful business practices that are modeled after the FTC Act. These state laws take interpretive guidance from the FTC Act. Defendants, by their unlawful collection and use of the personal information of children under the age of 13 without parental notice or consent have violated these state laws.

17.    Additionally, the conduct of TikTok constitutes unwarranted invasions of

---

[16] *Id.* ¶¶ 39-96.
[17] *Id.* ¶ 38.
[18] 15 U.S.C. § 6502(c).

privacy in violation of the substantial protections that numerous states, including but not limited to, California, Connecticut, Georgia, Missouri, Pennsylvania, and Washington provide to their citizens. These states recognize the common law right to be free from intrusion upon seclusion, as formulated by § 652B of the Restatement (Second) of Torts, which prohibits intentional intrusion upon the solitude or seclusion of another or his or her private affairs or concerns. In addition, the California Constitution provides California citizens and residents an enumerated right to privacy.

18.   Further, Defendants conduct has resulted in unjust enrichment under the law of various states, including but not limited to, California, Connecticut, Florida, Georgia, Missouri, New York, Pennsylvania and Washington.

19.   Moreover, Defendants conduct constitutes negligence under the common of numerous states including California, Connecticut, Florida, Georgia, Missouri, New York, Pennsylvania, and Washington.

20.   Defendants' conduct (a) violates the Unfair Business Practices Acts of California, Connecticut, Florida, Georgia, Missouri, Pennsylvania, and Washington, as well as numerous other states with materially similar consumer protection laws; (b) violates the common law right to be free from intrusion upon seclusion in California, Connecticut, Georgia, Missouri, Pennsylvania, and Washington, as well as New York Civil Rights Law §§ 50-51 and numerous other states with materially similar common law; (c); has resulted in Defendants' unjust enrichment at the expense of minor children in California, Connecticut, Florida, Georgia, Missouri, New York, Pennsylvania and Washington, and numerous other states with materially similar unjust enrichment common law; (d) constitutes negligence under the laws of California, Connecticut, Florida, Georgia, Missouri, New York, Pennsylvania, and Washington; and (e) violates the right to privacy enumerated in the California Constitution.

21.   Accordingly, Plaintiffs, through their parents and guardians, bring this action for the relief asserted herein, on behalf of themselves and the Classes of similarly-situated minors whose privacy rights have, like Plaintiffs, been violated by

7

Defendants, for damages, restitution, unjust enrichment, and appropriate injunctive and/or equitable relief to address Defendants' unlawful practices.

## II.    PARTIES

**A.    Plaintiffs**

22.    Plaintiffs G.K. and D.K., minors, by and through their parent, Karin Robinson. Plaintiffs G.K., D.K., and Karin Robinson are natural persons and residents of the State of Arizona. During the Class Period, G.K. and D.K. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

23.    Plaintiff A.J., a minor, by and through their parent and guardian ad litem, Alexis Douglas. Plaintiff A.J. and Alexis Douglas are natural persons and residents and citizens of the State of California. During the Class Period A.J. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

24.    Plaintiff B.M., a minor, by and through their parent and guardian ad litem, Marcelo Muto. Plaintiff B.M. and Marcelo Muto are natural persons and are residents and citizens of the State of California. During the Class Period, B.M. created and used a Musical.ly account and TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

25.    Plaintiff S.T., a minor, by and through their parent, Samuel Tsou. Plaintiff S.T. and Samuel Tsou are natural persons and residents of the State of California. During the Class Period, S.T. created and used a Kids Mode account (while under the age of 13) and regularly viewed content on the TikTok platform.

26.    Plaintiff J.C., a minor, by and through their parent and guardian ad litem, Jody Villanueva. Plaintiff J.C. and Jody Villanueva are residents and citizens of the State of California and natural persons. During the Class Period, J.C. created and used TikTok accounts (while under the age of 13) and regularly viewed content on the TikTok platform.

27. Plaintiff L.F., a minor, by and through their parent and guardian ad litem, Heather Bresette. Plaintiff L.F. and Heather Bresette are natural persons and residents and citizens of the State of Connecticut. During the Class Period, L.F. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

28. Plaintiff D.G., a minor, by and through their parent, Kristy Bradley. Plaintiff D.G. and Kristy Bradley are natural persons and residents and citizens of the State of Florida. During the Class Period, D.G. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

29. Plaintiff D.M., a minor, by and through their parent and guardian ad litem, Darryl Maultsby. Plaintiff D.M. and Darryl Maultsby are natural persons and residents and citizens of the State of Florida. During the Class Period, D.M. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

30. Plaintiff E.B., a minor by and through their parent, Ebony Baker. Plaintiff E.B. and Ebony Baker are natural persons and residents of the State of Georgia. During the Class Period, E.B. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

31. Plaintiff A.K., a minor, by and through their parent, Katherine Knight. Plaintiff A.K. and Katherine Knight are natural persons and residents of the State of Georgia. During the Class Period, A.K. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

32. Plaintiff J.S., a minor, by and through their parent, Kiara Dennis. Plaintiff J.S. and Kiara Dennis are natural persons and residents of the State of Illinois. During the Class Period, J.S. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

33. Plaintiff T.W., a minor, by and through their parent, Rachel Smith. Plaintiff T.W. and Rachel Smith are natural persons and residents of the State of Illinois. During

the Class Period, T.W. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

34. Plaintiff G.A., a minor, by and through their parent, Leyna Midkiff. Plaintiff G.A. and Leyna Midkiff are natural persons and residents of the State of Indiana. During the Class Period, G.A. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

35. Plaintiff C.H., a minor, by and through their parent, Arthur Henry. Plaintiff C.H. and Arthur Henry are natural persons and residents of the State of Louisiana. During the Class Period, C.H. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

36. Plaintiff M.B., a minor, by and through their parent, Lynette Bouie. Plaintiff M.B. and Lynette Bouie are natural persons and residents of the State of Maryland. During the Class Period, M.B. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

37. Plaintiff J.H., a minor, by and through their parent, Tranay Holloway. Plaintiff J.H. and Tranay Holloway are natural persons and residents of the State of Massachusetts. During the Class Period, J.H. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

38. Plaintiffs A.A.A., A.B.A., and E.A., minors, by and through their parent, Kelly Lynn Addis. Plaintiffs A.A.A., A.B.A., E.A., and Kelly Lynn Addis are natural persons and residents of the State of Michigan. During the Class Period, A.A.A., A.B.A., and E.A. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

39. Plaintiff K.M., a minor, by and through their parent, Dakota Moody. Plaintiff K.M. and Dakota Moody are natural persons and residents of the State of Minnesota. During the Class Period, K.M. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

40. Plaintiff A.L., a minor, by and through their parent, Tatum Dunne. Plaintiff

10

A.L. and Tatum Dunne are natural persons and residents and citizens of the State of Missouri. During the Class Period, A.L. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

41.   Plaintiff A.B., a minor, by and through their parent, Christina Middleton. Plaintiff A.B. and Christina Middleton are natural persons and residents and citizens of the State of Missouri. During the Class Period, A.B. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

42.   Plaintiff H.J. and N.J., minors, by and through their parent, Amatullah Allen. Plaintiffs H.J., N.J., and Amatullah Allen are natural persons and residents of the State of New Jersey. During the Class Period, H.J. and N.J. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

43.   Plaintiff I.T., a minor, by and through their parent, Yeni Castro. Plaintiff I.T. and Yeni Castro are natural persons and residents of the State of New York. During the Class Period, I.T. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

44.   Plaintiff M.G., a minor, by and through their parent and guardian ad litem, Valerie Gates. Plaintiff M.G. and Valerie Gates are natural persons and residents and citizens of the State of New York. During the Class Period, M.G. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

45.   Plaintiff V.M., a minor, by and through their parent, Ebony Nielsen. Plaintiff V.M. and Ebony Nielsen are natural persons and residents and citizens of the State of New York. During the Class Period, V.M. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

46.   Plaintiff D.P., a minor, by and through their parent, Tammy Padgett. Plaintiff D.P. and Tammy Padgett are natural persons and residents of the State of North Carolina. During the Class Period, D.P. created and used a TikTok account (while under

11

the age of 13) and regularly viewed content on the TikTok platform.

47.     Plaintiffs P.B., J.S., and J.F., minors, by and through their parent, Brittany Santisi. Plaintiffs P.B., J.S., J.F., and Brittany Santisi are natural persons and residents of the State of Ohio. During the Class Period, P.B., J.S., and J.F. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

48.     Plaintiffs Z.B. and I.B., minors, by and through their parent, Steven Burda. Plaintiffs Z.B., I.B., and Steven Burda are natural persons and residents and citizens of the State of Pennsylvania. During the Class Period, Z.B. and I.B. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

49.     Plaintiff E.J., a minor, by and through their parent, Elizabeth Jacob. Plaintiff E.J. and Elizabeth Jacob are natural persons and residents of the State of Tennessee. During the Class Period, E.J. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

50.     Plaintiffs R.C., B.L.J., and B.R.J., minors, by and through their grandparent and guardian, Shirley Reed-Stallings. Plaintiffs R.C., B.L.J., B.R.J., and Shirley Reed-Stallings are natural persons and residents of the State of Texas. During the Class Period, R.C., B.L.J., and B.R.J. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

51.     Plaintiff K.F., a minor, by and through their parent and guardian ad litem, Angela Faucett. Plaintiff K.F. and Angela Faucett are natural persons and residents and citizens of the State of Washington. During the Class Period, K.F. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

52.     Plaintiff J.W., a minor, by and through their parent and guardian ad litem, Kayla Jaramillo. Plaintiff J.W. and Kayla Jaramillo are natural persons and residents and citizens of the State of Washington. During the Class Period J.W. created and used

a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

53.    Plaintiffs B.S. and A.S., minors, by and through their parent, Jennifer Seputis. Plaintiffs B.S., A.S., and Jennifer Seputis are natural persons and residents and citizens of the State of Wisconsin. During the Class Period, B.S. and A.S. created and used a TikTok account (while under the age of 13) and regularly viewed content on the TikTok platform.

**B.    Defendants**

54.    Defendant TikTok Inc. is a California corporation with its principal place of business at 5800 Bristol Parkway, Suite 100, Culver City, California 90230. TikTok Inc. transacts or has transacted business in this District and throughout the United States.

55.    Defendant TikTok LLC is a Delaware limited liability company with its headquarters at 5800 Bristol Parkway, Culver City, California 90230. TikTok LLC wholly owns TikTok Inc.

56.    Defendant TikTok U.S. Data Security Inc. is a Delaware corporation with its principal place of business shared with TikTok Inc and TikTok LLC. Tik Tok U.S. Data Security Inc. is a subsidiary TikTok Inc. and is described as the entity that "controls access to protected U.S. user data, content recommendation, and moderation systems" for U.S. consumers on the TikTok platform. As such, TikTok U.S. Data Security Inc. transacts or has transacted business in this District and throughout the United States.

57.    Defendant ByteDance Ltd. is a Cayman Islands company with its headquarters in Beijing, China. ByteDance Ltd. created and owns the proprietary algorithm that underlies TikTok's "For You" feed. It has had offices in the United States and in other countries. ByteDance Ltd. transacts or has transacted business in this District and throughout the United States.

58.    Defendant ByteDance Inc. is a Delaware corporation with its principal

13

place of business at 1199 Coleman Avenue, San Jose, California 95110. ByteDance, Inc. is wholly owned by ByteDance, Ltd. ByteDance Inc. transacts or has transacted business in this District and throughout the United States.

59.     Defendant TikTok Pte. Ltd. is a Singapore company with its principal place of business at 1 Raffles Quay, #26-10, South Singapore 04583. Tik Tok Pte Ltd. Is the listed "seller" of the Tik Tok app in the Apple App Store, the Google Play Store and the Microsoft Store. A such, TikTok Pte. Ltd. transacts or has transacted business in this District and throughout the United States.

60.     Defendant TikTok Ltd. is a Cayman Islands company with its principal place of business in Singapore or Shanghai, China. TikTok Ltd. wholly owns TikTok LLC and TikTok Pte. Ltd. and is listed in the Apple App Store as the "developer" of the TikTok app. TikTok Ltd. transacts or has transacted business in this District and throughout the United States.

61.     Collectively, Plaintiffs refer to Defendants TikTok Inc., TikTok LLC, TikTok U.S. Data Security Inc., TikTok Pte. Ltd., TikTok Ltd., ByteDance Ltd., and ByteDance Inc., as "Defendants' or "TikTok".

## C.     Common Enterprise

62.     Defendant ByteDance Ltd. is the parent and owner of ByteDance, Inc. and TikTok, Ltd. TikTok Ltd. owns TikTok LLC and TikTok Pte. Ltd. TikTok LLC owns TikTok Inc., which owns TikTok U.S. Data Security, Inc.

63.     ByteDance Ltd. and TikTok Inc. executives, including Zhang Yiming, Liang Rubo, Zhao Pengyuan, and Zhu Wenjia, direct and control the company. Since 2019, ByteDance Ltd. and TikTok Inc. have supported and marketed the app in California and throughout the United States, including through the Apple App Store and the Google Play Store.

64.     TikTok Pte. Ltd. serves the U.S. distributor of TikTok through the Apple App Store and the Google Play Store. TikTok, Ltd. is listed as the developer of the app in the Apple App Store and TikTok Pte. Ltd. is listed as the developer of the app in the

14

Google Play Store.

65. ByteDance Ltd. created the algorithm that drives the video recommendation engine on TikTok and maintains ownership of it.

66. The TikTok website is accessed through the tiktok.com domain, which is registered to TikTok, Ltd.

67. Since 2023, TikTok Inc. has transferred Private Information and Kids Mode Private Information of children under 13 to TikTok U.S. Data Security, Inc., which has maintained that data.

68. TikTok Inc.'s Chief Executive Officers ("CEOs" or "CEO") between 2020 and the present (Kevin Mayer, V. Pappas, and Shou Zi Chew), have simultaneously held senior positions at ByteDance Ltd., and ByteDance Ltd.'s CEOs (Zhang Yiming and Liang Rubo) have simultaneously served as directors of TikTok, Ltd. TikTok Inc.'s Global Chief Security Officer, Roland Cloutier, also served as cyber risk and data security support for ByteDance Ltd. ByteDance Inc. and TikTok Pte. Ltd.'s officers and directors have also overlapped with each other, and with officers and directors of TikTok Inc.

69. In April 2021, when Shou Chew was named CEO of TikTok Inc., he was serving as Chief Financial Officer of ByteDance Ltd. As CEO of TikTok Inc., Chew reports to the CEO of ByteDance Ltd. and is also paid by ByteDance Ltd. ByteDance Ltd. provides compensation and benefits to TikTok Inc.'s CEO and TikTok Inc. employees participate in ByteDance Ltd.'s stock option plan.

70. ByteDance Ltd. and TikTok, Ltd. retain authority to approve or deny implementation of TikTok's "safety features." ByteDance Ltd. and TikTok, Ltd. employees also routinely sign contracts on behalf of TikTok Inc. ByteDance Ltd. controls TikTok Inc.'s e-commerce operations, and the leaders of TikTok Inc.'s e-commerce operations report directly to ByteDance Ltd.'s executives rather than TikTok Inc.'s own CEO. Further, TikTok Inc.'s head of human resources reports to ByteDance Ltd.'s head of human resources.

71.    Prominent leaders of TikTok Inc. even state on their public LinkedIn profiles that they are employed by "ByteDance/TikTok."[19]

72.    Upon information and belief, TikTok operates on a "shared services" model in which ByteDance Ltd. provides legal, safety, and privacy resources, including personnel. For instance, ByteDance Ltd. controls legal compliance and oversight at TikTok Inc. ByteDance Ltd.'s Global General Counsel, who reports to ByteDance Ltd.'s CEO, also oversees TikTok Inc.'s legal issues.[20] ByteDance Ltd.'s Director of Legal Affairs was designated as the point of contact along with outside counsel for the Federal Trade Commission ("FTC") to communicate with TikTok Ltd. and/or TikTok Inc. regarding TikTok's compliance with the 2019 Permanent Injunction, involving the app that later became TikTok.

73.    Further, all of Defendants' employees use a shared internal messaging system, Lark, where they can engage in chats and group chats with each other regardless of their formal company affiliation.

74.    TikTok Inc. CEO Chew stated to Congress on March 23, 2023, that employees of ByteDance Ltd. work on the TikTok platform and that he personally uses Lark to communicate "with employees at ByteDance [Ltd.]."[21]

75.    According to a 2023 report prepared for the Australian Select Committee on Foreign Interference through Social Media, one ByteDance Ltd. insider has described TikTok Inc. as "not developed enough to be a self-contained business unit.

---

[19] Rachel Lee *et al.*, *TikTok, ByteDance, and their ties to the Chinese Communist Party: Submission to the Senate Select Committee on Foreign Interference through Social Media* [Submission 34] at 43, Austl. S. Select Comm. on Foreign Interference Through Soc. Media (Mar. 14, 2023), https://t.co/ROPtMMud89.

[20] *ByteDance Appoints John Rogovin as Global General Counsel*, TikTok (June 3, 2024), https://newsroom.tiktok.com/en-us/bytedance-appoints-john-rogovin-as-global-general-counsel.

[21] *See TikTok: How Congress Can Safeguard American Data Privacy and Protect Children from Online Harms: Hearing Before H. Comm. on Energy & Com,* 118th Cong. 1, 96 (2023), https://www.congress.gov/118/chrg/CHRG-118hhrg53839/CHRG-118hhrg53839.pdf (testimony of Shou Chew, CEO, TikTok, Inc.).

Therefore, . . . TikTok draws on personnel, experience, and methods of ByteDance's Douyin app, software, and commercial model to achieve 'technology accumulation and business breakthroughs.'"[22]

76.     This same report gives examples of cross-hiring and concludes that ByteDance Ltd. Management considers TikTok to be interchangeable.[23]

77.     Upon information and belief, TikTok maintains one centralized bank account for ByteDance Ltd.'s products, including TikTok.

78.     At all relevant times, each Defendant acted individually and jointly with every other named Defendant committing all acts alleged in this Consolidated Class Action Complaint. At all relevant times, each Defendant acted: (a) as a principal; (b) under express or implied agency; and/or (c) with actual or ostensible authority to perform the acts alleged in this Consolidated Class Action Complaint on behalf of every other named Defendant.

79.     Each Defendant knew, or should have known, that the other Defendants were engaging in or planned to engage in the violations of law alleged in this Consolidated Class Action Complaint; facilitated the commission of hose unlawful acts; and intended to and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other Defendants in the unlawful conduct.

80.     Defendants have engaged in a conspiracy, common enterprise, and common course of conduct, the purpose of which is and was to engage in the violations of law alleged in this Consolidated Class Action Complaint. The conspiracy, common enterprise, and common course of conduct continue to the present.

### III.    JURISDICTION AND VENUE

81.     This Court has general personal jurisdiction over Defendants TikTok, Inc.,

---

[22] Rachel Lee et al., *TikTok, ByteDance, and their ties to the Chinese Communist Party: Submission to the Senate Select Committee on Foreign Interference through Social Media* [Submission 34] at 42, Austl. S. Select Comm. on Foreign Interference through Soc. Media (Mar. 14, 2023), https://t.co/ROPtMMud89.

[23] *Id.*

TikTok LLC, TikTok U.S. Data Security, Inc., and ByteDance, Inc. because their principal places of business are in California and because a substantial part of the events and conduct giving rise to Plaintiffs' claims occurred in this State.

82. TikTok carries out business activities and operations that are relevant to the conduct alleged in this Consolidated Class Action Complaint within California. Over the course of the Class Period, TikTok has held out its operations in Los Angeles as both its global headquarters and its headquarters for operations in the United States.

83. As of March 2024, 16 million people and 890,000 businesses in California actively use TikTok.[24]

84. Each of the Defendants, while pursuing a common course of conduct and enterprise, has jointly engaged in actionable conduct in the State of California throughout the Class Period including, *inter alia*:

    a. The conduct alleged in this Consolidated Class Action Complaint was developed and emanated from the Central District of California;

    b. Los Angeles is one of TikTok's dual global headquarters;

    c. Defendants TikTok Inc. and TikTok LLC are California corporations with their principal place of business at 5800 Bristol Parkway, Suite 100, Culver City, California 90230.

    d. TikTok's Chief Operating Officer, who was responsible for the content, marketing, business intelligence, distribution partnerships, and user operations during most of the Class Period, was based in TikTok's Culver City, California office;[25]

---

[24] *TikTok: THE VALUE OF THE APP FOR CONSUMERS AND BUSINESS LEADERS IN CALIFORNIA*, Oxford Econ. (Mar. 2024), https://a-us.storyblok.com/f/1018266/x/2ecc5c0ed3/tiktok_factsheet_ca.pdf.

[25] Dolores Quintana, *TikTok's Soaring Ambitions: Expanding Culver City HQ Amidst Global Growth*, WestsideToday (Aug. 13, 2023), https://westsidetoday.com/2023/08/13/tiktoks-soaring-ambitions-expanding-culver-city-hq-amidst-global-growth/; *LA500 2023: Vanessa Pappas*, L.A. Bus. J. (June 5, 2023), https://labusinessjournal.com/special-editions/la500/2023-la500/technology-2023/la500-2023-vanessa-pappas/.

e.  Defendants have marketed and promoted the TikTok app and platform to residents of California who are under 13 years of age, and continue to do so;

f.  Defendants have exploited the data of residents of California who are under 13 years of age, to sell advertising and increase revenue, and continue to do so;

g.  Defendants have sold and continue to serve ads on residents of California who are under 13 years of age, based on data Defendants unlawfully collected, and continue to do so;

h.  Defendants have made misrepresentations to residents of California who are under 13 years of age about TikTok's data collection including but not limited to misrepresentations about "TikTok for Younger Users" or "Kids Mode" (hereinafter, "Kids Mode"); and

i.  Defendants have provided tools to California-based businesses to advertise and market to children under 13 using behavioral advertising.

85.    This Court has subject-matter jurisdiction over various constituent cases in this multidistrict litigation pursuant to 28 U.S.C. § 1332(a) because Plaintiffs and Defendants in such cases are residents of different states, and the amount in controversy exceeds $75,000.

86.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §1332(d) under the Class Action Fairness Act ("CAFA") because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, there are more than 100 potential Class Members, defined supra, and the class includes plaintiffs from different states than Defendants.

87.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the conduct described in this Consolidated Class Action Complaint was carried out in this District.

## IV.    SUBSTANTIVE ALLEGATIONS
### FACTUAL BACKGROUND

19

**A.    TikTok Collects and Exploits the Private Information and Kids Mode Private Information of Children Under Age 13.**

**1.    Private Information Defined.**

88.    This case concerns the unlawful collection of personal information from which TikTok is able to personally identify its users. COPPA, as discussed herein, prohibits the collection of this information from children under the age of 13 without appropriate notice and consent of parents.

89.    COPPA generally defines personal information "as individually identifiable information about an individual collected online." 15 U.S.C. § 6501(8). COPPA lists numerous categories of information that it "includes" in this definition. Id. The list is not exclusive. The full list of personal information under COPPA is provided in Para. 176, below.

90.    The information collected by TikTok from under age 13 users on the Full Access Platform includes these categories, as well as a plethora of other categories of personally identifying information collected online, including the following:

a.  Account and profile information: name, age, username, password, language, email, phone number, social media account information, profile image;

b.  User-generated content and metadata: comments, photos, livestreams, videos, audio recordings, text, hashtags, virtual item videos, creation time/location, and creator identity;

c.  Pre-uploaded content: versions of content created or imported before posting, including versions without effects;

d.  Messages: message content, timestamps (sent, received, read), and participant information;

e.  Clipboard content (with user permission): text, images, and videos copied to your device clipboard;

f.  Purchase information: payment card details, third-party payment information (e.g., PayPal), billing and shipping address, warranty info, purchase history (purchase made, time, amount spent);

20

g.  Phone and social network contacts (with user permission): names, phone numbers, email addresses, public profile information of contacts;

h.  Choices and communication preferences;

i.  Unspecified information used to verify identity or age;

j.  Correspondence: information shared when contacting TikTok;

k.  Survey and promotion data: gender, age, likeness, preferences, and participation details;

l.  Third-party service data: public profile info, email, contact lists from platforms like Facebook, Twitter, Instagram, Google;

m.  Partner and advertiser data: activities on other websites/apps/stores, purchase history, mobile ad IDs, hashed contact info, cookie IDs;

n.  Affiliated entities data: activity on related platforms;

o.  Information from others: mentions in User Content/messages, contact details submitted by third parties;

p.  Public and institutional sources: data from public sources, governments, organizations, and charities;

q.  Internet/network activity: IP address, geolocation, device identifiers, browsing/search history, cookies;

r.  Usage information: activity on the platform, content interactions;

s.  Device information: device type/model, IP address, carrier, OS, screen resolution, file/app types, keystroke patterns, audio settings, battery state, advertising IDs;

t.  Location data: approximate location via IP or SIM, location tags in content;

u.  Image and audio analysis: object/scene detection, facial/body features, spoken text, faceprints, voiceprints;

v.  Metadata: timestamps, content creation details, content formatting, account links, hashtags, captions;

w.  Cookies and tracking technologies: for analytics, functionality, advertising,

21

and cross-device tracking;

    x.  Linked identifiers: cross-device and cross-platform activity via account/device info.[26]

91.    The above categories, together with the categories of personal information listed in COPPA as set forth in ¶ 176 constitute "Private Information."

### 2. The TikTok Platform.

92.    TikTok's predecessor, Musical.ly, a social media platform where users could create and share short lip-sync videos, was launched in 2014.

93.    By 2016, it became apparent that many of Musical.ly's users where children under 13 years old when the New York Times reported:

> The app does not collect or show the age of its users, but some of its top-ranked users, whose posts routinely collect millions of likes, called hearts, appear from their videos and profile photos to be in grade-school. Until recently, the app had a feature that suggested users to follow based on their location. In New York, that feature revealed a list composed largely not just of teenagers, but of children.[27]

94.    The CEO of a social media advertising agency told the New York Times that with Muscial.ly users, "you're talking about first, second, third grade."[28]

95.    By 2017, Musical.ly had 60 million users, most of whom were in the United States.[29] Around that time, a significant portion of Muscial.ly's users were

---

[26] TikTok Inc., Privacy Policy (U.S.) (Aug. 19, 2024), https://www.tiktok.com/legal/page/us/privacy-policy/en.

[27] John Herrman, *Who's Too Young for an App? Musical.ly Tests the Limits,* N.Y. Times (Sept. 16, 2016), https://www.nytimes.com/2016/09/17/business/media/a-social-network-frequented-by-children-tests-the-limits-of-online-regulation.html.

[28] *Id.*

[29] *See* Jon Russell & Katie Roof, *China's Bytedance is buying Musical.ly in a deal worth $800M-$1B,* TechCrunch (Nov. 9, 2017, 6:54 PM), https://techcrunch.com/2017/11/09/chinas-toutiao-is-buying-musical-ly-in-a-deal-worth-800m-1b/#:~:text=The%20deal%20is%20undisclosed%20but,are%20based%20in%20the%20U.S.

children under the age of 13.[30]

96.    As Musical.ly was gaining popularity among elementary school kids in the United States, Beijing-based ByteDance Ltd. created TikTok in 2017.

97.    On November 9, 2017, ByteDance Ltd. purchased Musical.ly for almost $1 billion. On August 2, 2018, TikTok merged with Muiscal.ly, consolidating the accounts and data into one application.

98.    The TikTok platform allows users to create, upload, and share shortform videos. The TikTok app is free to download. It generates revenue for Defendants through advertising and eCommerce, including through the TikTok for Business platform, as well as in-app purchases of TikTok "coins" through the TikTok Shop.

99.    TikTok primarily generates revenue by showing third-party advertisements to users on its platform.[31]

100.    TikTok targets users with specific advertisements by collecting persistent identifiers about the users and combining those identifiers with other information about the users.[32] This information is comprised of data TikTok collects from its platform including account and profile information, user-generated content, such as videos viewed, videos "liked," accounts followed, content viewed, content created, messages, purchase information, usage information, as well as location data, device information, image and audio information, metadata, and data from cookies and similar technologies that track users across different websites and platforms.[33]

101.    Having more users on its platform enables TikTok to collect more data which it can then use to more successfully target users with "relevant" advertising,

[30] Compl. ¶ 19, *United States v. Musical.ly*, No. 2:19-cv-1439 (C.D. Cal. Feb. 27, 2019), ECF No. 1.

[31] *See* Lydia Kibet, *How Does TikTok Make Money?*, GoBankingRates (Apr. 23, 2021), https://www.gobankingrates.com/money/business/how-does-tiktok-make-money/.

[32] *See About Ad Targeting in TikTok Ads Manager*, TikTok, https://ads.tiktok.com/help/article/ad-targeting?lang=en (last updated May 2025).

[33] *Privacy Policy*, TikTok, https://www.tiktok.com/legal/page/us/privacy-policy/en (last updated Aug. 19, 2024).

increasing TikTok's revenue.[34]

102.   TikTok's ability to exploit users on its platform for these purposes, by using their Private Information, has been a resounding success. In 2023, TikTok reported record earnings of $16 billion in the U.S.[35]

103.   This success has come at the expense of users who are children under 13. Although TikTok intentionally obscures the amount of money it makes from the data it collects from users under 13 by generally not providing statistics for that specific age group, it is abundantly clear from the data that is publicly available that TikTok profits enormously from children and many of those children are under age 13. For example, researchers estimate that 35% of TikTok's 2022 U.S. ad revenue was derived from users under age 18.[36]

104.   In January 2024, TikTok reported that it had more than 170 million monthly active users in the United States—more than half the population of the United States.[37]

### 3.   TikTok Knowingly Promotes Content to Under 13 Users on Its Full Access Platform

105.   As defined by COPPA, TikTok is an operator of a website and online

---

[34] *See* Zheping Huang, *TikTok Has a Few Main Ingredients for Making Money*, Bloomberg (June 28, 2022, 3:45 AM), https://www.bloomberg.com/news/newsletters/2022-06-28/how-does-tiktok-make-money-app-relies-on-a-few-main-ingredients (TikTok's algorithm helps it serve better targeted ads that have tripled its revenue).

[35] *TikTok's US revenue hits $16bln as Washington threatens ban, FT reports,* Reuters (Mar. 15, 2024) https://www.reuters.com/technology/tiktoks-us-revenue-hits-16-bln-washington-threatens-ban-ft-reports-2024-03-15/.

[36] Maya Brownstein, *Social media platforms generate billions in annual ad revenue from U.S. youth*, Harv. T.H. Chan Sch. Pub. Health (Dec. 27, 2023), https://hsph.harvard.edu/news/social-media-platforms-generate-billions-in-annual-ad-revenue-from-u-s-youth.

[37] *Testimony Before the US Senate Committee on the Judiciary Written Statement of Shou Chew Chief Executive Officer, TikTok Inc.* (Jan. 31 2024), https://www.judiciary.senate.gov/imo/media/doc/2024-01-31_-_testimony_-_chew.pdf.

service that is directed in part at children.[38]

106.    TikTok was, at all times throughout the Class Period, aware that children under age 13 accessed and engaged with the Full Access Platform and actively sought to increase viewing and engagement by children under 13 through content directed at those children, while publicly representing that such children were not permitted to access TikTok's Full Access Platform and were protected by TikTok Kid's Mode.

107.    Over the past five years, multiple public reports, as well as TikTok's internal metrics, demonstrate that young children are using the Full Access Platform. According to TikTok, in 2020, more than one-third of its 49 million daily users in the United States were under 14 years old.[39] As documented in a 2021 internal presentation, TikTok estimated that 95 percent of smartphone users under 17 use the app.[40] Further, a 2022 Pew Research Center survey reported that 67 percent of American teenagers (ages 13 to 17) use TikTok, with most (58 percent) using the platform daily.[41] According to a survey conducted in the United States in 2022, 47 percent of respondents ages 11 to 12 years were using TikTok.[42] Researchers estimate that in 2022, TikTok had over 3 million users ages 0-12 years old.[43] And a 2025 published study found that among the

---

[38] *See* 16 C.F.R. § 312.2.

[39] Raymond Zhong & Sheera Frenkel, *A Third of TikTok's U.S. Users May Be 14 or Under, Raising Safety Questions,* N.Y. Times (Sept. 17, 2020), https://www.nytimes.com/2020/08/14/technology/tiktok-underage-users-ftc.html.

[40] Bobby Allyn *et al.*, *TikTok executives know about app's effect on teens, lawsuit documents allege*, NPR (Oct. 11, 2024, 5:30 AM), https://www.npr.org/2024/10/11/g-s1-27676/tiktok-redacted-documents-in-teen-safety-lawsuit-revealed.

[41] Emily A. Vogels *et al.*, *Teens, Social Media and Technology 2022*, Pew Rsch. Ctr. (Aug. 10, 2022), https://www.pewresearch.org/internet/2022/08/10/teens-social-media-and-technology-2022/.

[42] Stacy Jo Dixon, *Social Media Usage of Pre-Teens in the United States as of November 2022*, Statista (Dec. 4, 2023).

[43] Amanda Raffoul *et al.*, *Social media platforms generate billions of dollars in revenue from U.S. youth: Findings from a simulated revenue model*, 18 PLOS One e0295337, 4 tbl. 1 (2023), https://doi.org/10.1371/journal.pone.0295337 (estimating the 2022 total number of U.S.-based youth users of TikTok ages 0-12 years old to be 3,041,000, with a range of 2,860,000–3,221,000).

nearly 70 percent of American children (ages 11 to 15) who have at least one social media account, the most common platform was TikTok; and for the under 13 year olds in that group, over 68 percent had TikTok accounts.[44]



Figure 1[45]

108.   TikTok's child audience is something the company has worked diligently to grow by publicly hosting thousands of accounts that feature content from well-known children's brands such as My Little Pony, Pokémon, Cartoon Network, Bluey, and Kidzbop. Each of these accounts contains subject matter, characters, activities, music and other content knowingly and purposefully directed at children.

109.   For example, the My Little Pony TikTok account includes videos featuring animated ponies in bright colors interacting with other characters in ways that are

[44] *See generally* Jason M. Nagata *et al.*, *Prevalence and Patterns of Social Media Use in Early Adolescents*, 25 Acad. Pediatrics 102784, 1 (May–June 2025), https://www.academicpedsjnl.net/action/showPdf?pii=S1876-2859%2825%2900009-9.

[45] Jared Marsh, *How Many Children Use TikTok Against the Rules? Most, Study Finds*, Univ. Cal. S.F. (Jan. 10, 2025), https://www.ucsf.edu/news/2025/01/429296/many-children-use-tiktok-against-rules.

designed to appeal to children. The account proclaims that "[e]very pony is encouraged to share [t]heir sparkle."[46] Other videos have pony dolls that play with each other, often with "My Little Pony" songs playing in the background. Given these elements, it is clear that the primary intended audience of child content engagement campaigns like this is children is under 13 audience. Thus, TikTok is operating a website and online service that, in this respect, is directed to children.

110.    TikTok also works to grow its child audience by hosting, maintaining, and promoting thousands of accounts on TikTok that are dedicated to child models, celebrities and influencers. For example, TikTok currently hosts an account for Eva Diana Kidisyuk, a 10-year-old child influencer.[47] Her videos feature herself and her brother and include children's songs and unboxing videos. This content is intended for and directed at an under 13 audience.

111.    TikTok knows that child-directed content, as described above and much more, is on its platform. Each of the TikTok accounts described above is a "verified" account, which means that TikTok independently reviewed the account upon receipt of an application, determined the account to be "[n]otable," and "confirmed the account belongs to the person or brand it represents."[48]

### 4.    TikTok Amasses Data to Build Profiles and Target Advertising to Under 13 Users

112.    TikTok's Full Access Platform collects an enormous amount of data from each user, both from on and off its platform, including:

- User Provided Information:
    - Account and profile information, such as name, age, username, password,

[46] My Little Pony (Mylittlepony.us:), TikTok, https://www.tiktok.com/@mylittlepony.us (last visited July 10, 2025).

[47] *See* Kids Diana Show (Mylittlepony.us), TikTok, https://www.tiktok.com/@kids.diana.show?lang=en (last visited July 10, 2025).

[48] *Verified accounts on TikTok*, TikTok, https://support.tiktok.com/en/using-tiktok/growing-your-audience/how-to-tell-if-an-account-is-verified-on-tiktok (last visited July 10, 2025).

language, email, phone number, social media account information, and profile image.

- o User-generated content, including comments, photographs, livestreams, audio recordings, videos, text, hashtags, and virtual item videos that a user creates or uploads ("User Content") and the associated metadata, such as when, where, and by whom the content was created.

- o Messages, which include information provided when users compose, send, or receive messages through TikTok's messaging functionalities, through the chat functionality when communicating with sellers, or through use of virtual assistants when purchasing items via TikTok. That information includes the content of the message and information about the message, such as when it was sent, received, or read, and message participants.

- o Information, including text, images, and videos, found in a user's device's clipboard, with user permission.

- o Purchase information, including payment card numbers or other third-party payment information (such as PayPal) where required for the purpose of payment, and billing and shipping address.

- o Phone and social network contacts, with a user's permission.

- o Choices and communication preferences.

- o Information to verify an account such as proof of identity or age.

- o Information shared through surveys or participation in challenges, research, promotions, marketing campaigns, events, or contests such as your gender, age, likeness, and preferences.

- Device Information:

- o IP address, user agent, mobile carrier, time zone settings, identifiers for advertising purposes, model of device, the device system, network type, device IDs, screen resolution and operating system, app and file names and types, keystroke patterns or rhythms, battery state, audio settings and

28

connected audio devices.

- o A device ID and user ID are automatically assigned such that if a user logs-in from multiple devices, TikTok can identify a user's activity across devices, including devices other than those the user uses to log-in to TikTok.

- Location Data:
  - o Approximate location, including location information based on user's SIM card and/or IP address.
  - o Location information (such as tourist attractions, shops, or other points of interest) if you added to User Content.
  - o Older versions allowed for collection of precise or approximate GPS information (last release in August 2020).

- Image and Audio Information:
  - o Information about the videos, images and audio that are a part of User Content, such as identifying the objects and scenery that appear, the existence and location within an image of face and body features and attributes, the nature of the audio, and the text of the words spoken in your User Content. This information is collected to enable special video effects, for content moderation, for demographic classification, for content and ad recommendations, and for other non-personally-identifying operations.
  - o Biometric identifiers and biometric information as defined under U.S. laws, such as faceprints and voiceprints, from your User Content, subject to any legal requirements for collection.

- Metadata:
  - o When users upload or create User Content, certain metadata is automatically uploaded to the User Content. For example, metadata can describe how, when, where, and by whom the piece of User Content was created, collected, or modified and how that content is formatted. It also

29

includes information, such as account name, that enables other users to trace back the User Content to a specific user account. Additionally, metadata includes data that users choose to provide with User Content, e.g., any hashtags used to mark keywords to the video and captions.

- Cookies:
  - o TikTok, its service providers and business partners use cookies and other similar technologies (e.g., web beacons, flash cookies, etc.) ("Cookies") to automatically collect information, measure and analyze how users use the platform, including which pages are viewed most often and how users interact with content, enhance user experience using the platform, improve the platform, provide users with advertising, and measure the effectiveness of advertisements and other content.
  - o TikTok and its partners also use Cookies to promote the platform on other platforms and websites. Cookies enable the platform to provide certain features and functionality. Web beacons are very small images or small pieces of data embedded in images, also known as "pixel tags" or "clear GIFs," that can recognize Cookies, the time and date a page is viewed, a description of the page where the pixel tag is placed, and similar information from your computer or device.

113. TikTok also collects information about its users from other sources, including:

- If a user signs-up or logs-in to the platform using a third-party service such as Facebook, Twitter, Instagram, or Google, or links a TikTok account to a third-party service, information from that service is collected including a user's public profile information (such as nickname), email, and contact list.
- Advertisers, measurement and other partners share information with TikTok about users and the actions users have taken outside of the platform, such as user activities on other websites and apps or in stores, including the products

30

or services users have purchased, online or in person. These partners also share information with TikTok, such as mobile identifiers for advertising, hashed email addresses and phone numbers, and cookie identifiers, which are used to help match users and users' actions outside of the platform with their TikTok accounts. Some of advertisers and other partners enable TikTok to collect similar information directly from websites or apps by integrating TikTok Advertiser Tools (such as TikTok Pixel).

- TikTok may obtain information about users from certain affiliated entities within TikTok's corporate group, including about activities on other platforms.

- TikTok may receive information about users from others, including where users are included or mentioned in User Content, direct messages, in a complaint, appeal, request or feedback submitted to TikTok, or if user's contact information is provided to TikTok.

- TikTok may also collect or receive information about users from organizations, businesses, people, and others, including, for example, publicly available sources, government authorities, professional organizations, and charity groups.[49]

114.   Defendants provide all users the option to download data associated with their TikTok account in what is known as a "Download your data" ("DYD") file.[50] This DYD file contains part, but not all, of the information that TikTok collects about each user.

115.   TikTok uses the copious amounts of data it collects from users via the platform and third-party sources to: (1) amass profiles of its users and feed them

---

[49] Privacy Policy, TikTok, https://www.tiktok.com/legal/page/us/privacy-policy/en (last updated Aug. 19, 2024).

[50] *See Requesting your data*, TikTok, https://support.tiktok.com/en/account-and-privacy/personalized-ads-and-data/requesting-your-data (last accessed July 10, 2025).

targeted, behavioral advertisements; and (2) train its powerful algorithm[51] to learn users' preferences and provide a personalized curated content feed that extends users' time on the platform. The vast quantity of data TikTok collects from its users provides it with extremely detailed information about the users, including their age. Indeed, TikTok is able to and does factor age into account when determining what personalized content to provide to users.

116.   Therefore, TikTok collected personal information from users under the age of 13 for the purpose of profiling the users and serving them age-based, behavioral advertising and contextualized advertising targeted to children.

117.   TikTok serves ads which are "tailored" to the user's "interests, preferences, and characteristics" based on the user's data profile.[52] Here, TikTok takes into account the age of its users. For example, some of the advertisers and advertisements that are shown on TikTok include advertisements that promote products and services for children under 13 years old. For example, an advertisement promoting a theatrical adaptation of the children's show, Bluey, an advertisement promoting a videogame adaption of the children's animated television show, SpongeBob Square Pants, and an advertisement for the video game Roblox, a game that is immensely popular among children. As of April 2020, Roblox claimed that two-thirds of all U.S. children between the ages of 9 and 12 years old played Roblox. TikTok knows this content is intended for and directed at children under the age of 13.

118.   Companies that sell media and merchandise to children are willing to pay TikTok enormous sums of money to advertise on its platform because they know they can effectively reach their target audience there. Indeed, TikTok estimates that 95% of smartphone users under 17 use the app. Thus, it is not surprising that TikTok's internal research show that "across most engagement metrics, the younger the user, the better the

---

[51] *See Privacy Policy*, TikTok, https://www.tiktok.com/legal/page/us/privacy-policy/en (last updated Aug. 19, 2024) (explaining TikTok users user information to "train and improve our technology, such as our machine learning models and algorithms").
[52] *Id.*

performance[.]"[53]

### 5. Defendants Knowingly Creates Accounts for Children Under 13 and Collects Their Data without Parental Notice or Consent.

119. Since at least March 2019, Defendants have required that users input a birthdate (day, month, and year) when creating a TikTok account.

120. This is also known as an "age gate." The purpose of an age gate is to direct a user to the version and features of TikTok that are deemed appropriate for their age.

121. Children who self-identify as under the age of 13 in the United States are offered Kids Mode.

122. In Kids Mode, a user can view videos, but cannot upload videos, post information publicly, or message other users. Thus, young children have an incentive to sign up as an adult, as it enables them to upload videos, post information publicly, or send messages.[54] TikTok encourages this result by making available on the Full Access Platform copious content intended for and directed at children under the age of 13.

123. Parents are neither notified nor asked to consent to the creation of a TikTok account in Kids Mode. Further, TikTok does not use any method to verify that users who acknowledge they are under 13 years old have the consent of their parents or legal guardians to use the platform.

124. Children who are under 13 years old that want to use the Full Access Platform can easily avoid TikTok's age gating by using a birthdate that indicates they are over 13. TikTok fails to take meaningful steps to verify a user's age when the user signs up for an account.

---

[53] Bobby Allyn *et al.*, *TikTok executives know about app's effect on teens, lawsuit documents allege*, NPR (Oct. 11, 2024, 5:30 AM), https://www.npr.org/2024/10/11/g-s1-27676/tiktok-redacted-documents-in-teen-safety-lawsuit-revealed.

[54] Research suggests that Kids Mode's "lack of child-directed content" and "frequent content repetition" may further "incentivize" children to abandon Kids Mode and sign up as an adult. *See* Olivia Figueira *et al.*, *When Kids Mode Isn't for Kids: Investigating TikTok's "Under 13" Experience*, arXiv:2507.00299v1 (2025), https://arxiv.org/html/2507.00299v1.

125.    Despite the 2019 Permanent Injunction, TikTok implemented a particularly flimsy age gate that ultimately continued to permit children to create full access TikTok accounts. For instance, the age gate allowed children to make multiple attempts at creating an account. Until at least late 2020, a child who input an age below 13 could restart the account creation process to create a new account with a different age. Thus, even though Defendants had actual knowledge of a child-user's age based on prior attempts to create an account, Defendants permitted children to restart the account process and create an account on the Full Access Platform.

126.    TikTok and its employees have long known that children (including children under 13 years old) misrepresent their age to bypass TikTok's age gate. TikTok and its employees know that despite other purported efforts to remove children under 13 from the Full Access Platform, users who are children under 13 are ubiquitous.

127.    In December 2016, one of TikTok's founders, Alex Zhi, confirmed the company had knowledge that "a lot of users, especially top users, they are under 13."[55]

128.    TikTok's internal data confirms the young age of many of its users. TikTok's records classified 18 million of its 49 million daily users in the U.S. in 2020 as 14 years or younger.[56]

129.    A former TikTok employee said although TikTok employees flagged videos from children who appeared to be younger than 13, they were allowed to remain on the Full Access Platform for weeks.[57]

130.    According to the DOJ Complaint, the existence of under 13 users on the Full Access Platform is also known to TikTok's human moderators who review flagged

---

[55] TechCrunch, *From Brush to Canvas with Alex Zhu of Musical.ly* at 8:58-11:12, YouTube (Dec. 6, 2016) https://www.youtube.com/watch?v=ey15v81pwII; *see also* Jon Russell, *Musical.ly defends its handling of young users, as it races past 40M MAUS*, TechCrunch (Dec. 6, 2016, 8:12 AM), https://techcrunch.com/2016/12/06/musically-techcrunch-disrupt-london/.

[56] Raymond Zhong & Sheera Frenkel, *A Third of TikTok's U.S. Users May be 14 or Under, Raising Safety Questions*, N.Y. Times (Sept. 17, 2020), https://www.nytimes.com/2020/08/14/technology/tiktok-underage-users-ftc.html.

[57] *Id.*

accounts that they suspect may belong to children under 13.[58]

131.   TikTok has other available methods to identify users who are under 13 years old and remove them from the Full Access Platform. According to allegations in the DOJ Complaint, TikTok has age-determining technology which can determine the grade level of a user using an algorithm. The algorithm is based on a user's behavior and other metrics. As such, this method does not rely solely on a user's self-reported age but instead the user's observable behaviors. TikTok commonly uses this technology in targeting advertising to certain age groups. Nonetheless, TikTok has intentionally refused to use its age-prediction algorithm to identify children under 13 years old and remove them from the Full Access Platform.

132.   Defendants have actual knowledge of the age of users on its platform and uses that knowledge to target under age 13 users with under age 13 content. But for purposes of kicking under age 13 users off the platform, TikTok has historically detuned its detection systems specifically to avoid identifying under age 13 users. For example, as alleged in the DOJ Complaint, Defendants programmed the algorithm it used to determine the age of users to identify users under age 15, rather than under age 13. Defendants later revised this age cutoff so that the lowest age segment was under 16.

133.   In some instances, TikTok allowed users to create accounts on the Full Access Platform without ever inputting a birthdate. From March 2019 to at least May 2022, TikTok allowed users to avoid its age gate when creating an account by allowing users to login in with credentials from third-party online services such as Instagram and Google which also did not require them to provide a birthdate. As such, children under 13 years old were allowed to create TikTok accounts without entering their birthdate if they used other login credentials.

134.   Defendants internally identified these TikTok accounts created with third-

---

[58] *See also* Bobby Allyn *et al.*, *TikTok executives know about app's effect on teens, lawsuit documents allege*, NPR (Oct. 11, 2024, 5:30 AM), https://www.npr.org/2024/10/11/g-s1-27676/tiktok-redacted-documents-in-teen-safety-lawsuit-revealed.

party login credentials as "age unknown." According to the DOJ Complaint, this practice persisted until at least May 2022—more than three years after TikTok entered into the 2019 Permanent Injunction designed to prevent its collection and use of the personal information of children. As a result, millions of children gained access to the Full Access Platform without making any representation about their age and Defendants knowingly permitted this to occur.

135.   Users may still sign up for TikTok through Instagram or Google but are now required to pass through an age gate via Instagram or Google.

136.   Defendants' practice of allowing children to sign up for a TikTok account using third-party credentials allowed children to create a TikTok account, gaining access to the Full Access Platform without providing age information. Without parental notice or consent, Defendants then collected and maintained vast amounts of Private Information from the children who created and used these TikTok accounts.

137.   TikTok's ineffective age-gating allows it to perpetuate the unlawful collection of Private Information from children without parental consent.

138.   Over time, Defendants have collected substantial Private Information from these child-users, including user provided information, device information, location data, image and audio information, including metadata, and data from cookies and similar technologies that track users' online behavior across different websites and platforms as well as data from other third parties. Once collected, this information has been used by TikTok to earn substantial profits through targeted advertising, and other TikTok practices.

**6.      Defendants Collected Personal Information from "Kids Mode" Accounts.**

139.   Since at least March 2019, Defendants have offered in the United States Kids Mode to children who identify themselves as being under 13 years old when they create an account. When a child inputs a birthdate on the account creation screen that indicates that they are under 13 years old, the platform states that the user is "about to

access a TikTok experience designed just for you," and a Kids Mode account is created.

140.    Despite representing that Kids Mode is "designed" for children under 13 years old, Defendants collect and maintain a Kids Mode user's username, password, birthdate (day, month, and year), and in some instances email address.[59] TikTok may also collect device information, including the type of device used, including IP address, unique device identifiers such as device ID, web browser type and version, country-level location, certain app activity information, such as videos watched, time on the platform, and general usage information (collectively "Kids Mode Private Information").[60] Kids Mode Private Information is collected without notifying parents or obtaining their consent.

141.    In addition to using this information to support use of the platform, TikTok uses Kids Mode Private Information to provide kids with personalized content, serve contextualized advertising, as well as to perform analytics.[61]

142.    The COPPA Rule permits operators to collect a persistent identifier from children under certain circumstances without first obtaining verifiable parental consent, but only if no other personal information is collected and the identifier is used for the sole purpose of providing support for the online service's internal operations. See 16 C.F.R. § 312.4(c)(1)(vi) and (vii). Defendants' collection and use of persistent identifiers from Kids Mode users did not comply with this provision and went well beyond what was necessary to operate the platform.

143.    During the Class Period, Defendants additionally collected dozens of other types of information concerning child users with Kids Mode accounts—including app activity data, device information, mobile carrier information, and app information— which they combine with persistent identifiers and used to amass profiles on children.

---

[59] *Children's Privacy Policy*, TikTok, https://www.tiktok.com/legal/page/global/privacy-policy-for-younger-users/en (last updated Oct. 1, 2024).
[60] *Id.*
[61] *Id.*

144.   Defendants shared Kids Mode Private Information they collected from children under 13 in Kids Mode, including persistent identifiers, with third parties without parental consent.

145.   For example, according to the DOJ Complaint, Defendants shared this information with Facebook and AppsFlyer, a marketing analytics firm, in part to encourage existing Kids Mode users whose use had declined or ceased to use Kids Mode more frequently.[62] Defendants called this process "retargeting less active users."[63] This practice used children's personal information for reasons beyond support for the internal operations of Kids Mode and thus was not permitted by the COPPA Rule.

146.   Separately, users in Kids Mode can send feedback to TikTok using the "in-app feedback form[.]"[64] When doing so, Defendants "collect the email address that the [c]hild provides[.]"[65]

147.   According to the DOJ Complaint, between February 2019 and July 2022, for example, Defendants collected over 300,000 problem reports from users in Kids Mode that included children's email addresses. And Defendants did not delete these children's email addresses after processing the reports, and thus retained these email addresses longer than reasonably necessary to fulfill the purpose for which the information was collected, in violation of the COPPA Rule. See 16 C.F.R. § 312.10. Defendants did not notify parents of this ongoing practice.

**7.   Defendants Ignored Parents' Requests to Delete Child Users' Data**

148.   As alleged in the DOJ Complaint, despite regulations and the 2019 Permanent Injunction, which require Defendants to delete personal information

---

[62] Compl. Permanent Inj., Civil Penalty J., & Other Relief ("DOJ Complaint") at ¶ 57, *United States v. ByteDance Ltd.*, No. 2:24-cv-06535 (C.D. Cal. Aug. 2, 2024), ECF No. 1.

[63] *Id.*

[64] *Children's Privacy Policy*, TikTok, https://www.tiktok.com/legal/page/global/privacy-policy-for-younger-users/en (last updated Oct. 1, 2024).

[65] *Id.*

38

collected from children upon a parents' request, in many instances Defendants have obstructed parents' ability to make such requests and have failed to comply with these requests.

149.   However, Defendants failed to create a straightforward process for parents to submit a deletion request. For example, the word "delete" does not appear in many of Defendants' online parental guidance materials, such as TikTok's "Guardian's guide,"[66] the "Privacy and security on TikTok"[67] page, and TikTok's "New user guide."[68]

150.   Moreover, according to the DOJ Complaint, TikTok required parents to navigate a byzantine process to request deletion of their child's account and information. For example, as recently as 2023, a parent visiting tiktok.com to request deletion of their child's TikTok account and information had to scroll through multiple webpages to find and click on a series of links and menu options that gave no clear indication they apply to such a request. Parents then had to explain in a text box that they are a parent who wanted their child's account and data to be deleted.

151.   At times, Defendants also directed parents to send their requests to delete their children's accounts and personal information to an email address, then simply failed to respond in a timely manner to these requests, or simply failed to respond to them at all, per the DOJ Complaint.

152.   Thus, according to the DOJ Complaint, even if a parent succeeded in submitting a request to delete their child's account and information, Defendants often did not honor that request. In response to each request, Defendants' staff would review the account for "objective indicators" that the account holder was under 13 years old, or "underage," based on the user's handle, biography or "bio." Under Defendants' policy, an account would be identified as an underage account and deleted only if the reviewed

---

[66] *Guardian's guide*, TikTok (June 25, 2025), https://www.tiktok.com/safety/en/guardians-guide.

[67] *Privacy and security on TikTok*, TikTok (June 25, 2025), https://www.tiktok.com/safety/en/privacy-and-security-on-tiktok.

[68] *New user guide*, TikTok (June 25, 2025), https://www.tiktok.com/safety/en/new-user-guide.

elements contained an explicit admission that the user was under 13 years old—for example, "I am in first grade" or "I am 9 years old"—to determine whether a child was younger than 13 years old.

153.   The DOJ Complaint alleges that if the account failed to meet Defendants' rigid criteria, Defendants' policy until recently was to require parents to complete and sign an additional form confirming their relationship to the child and certifying under penalty of perjury that they were the parent or guardian of the account user. If this secondary form was not completed, Defendants would not delete the child's data.

154.   Defendants' policies and practices subverted parents' efforts to delete their children's accounts and resulted in Defendants retaining children's account—and personal information—even though parents had identified the account users as children under 13 years of age and requested deletion of the accounts.

155.   Defendants were aware that their flawed deletion process was resulting in children's accounts remaining on the Full Access Platform despite actual knowledge that the accounts users were children under age 13.

156.   Despite Defendants' awareness that they were failing to respect parents' deletion requests, Defendants continued using this flawed process through 2023.

157.   Moreover, as alleged in the DOJ Complaint, Defendants in many cases did not respond to parents' requests at all. As of late December 2020, Defendants had a backlog of thousands of emails dating back months requesting that TikTok delete individual children's accounts.

158.   Defendants' inadequate policies and inaction led to numerous children continuing to maintain TikTok accounts even though their parents had asked Defendants to delete those accounts. As alleged in the DOJ Complaint, in a sample of approximately 1,700 children's TikTok accounts about which Defendants received complaints and deletion requests between March 21, 2019 and December 14, 2020, approximately 500 (30%) remained active as of November 1, 2021. Several hundred of these accounts are likely still active and represent only a small fraction of the thousands

40

of deletion requests Defendants received and failed to act on.

159. Compounding these problems, even when Defendants did delete a child's account and personal information at their parent's request, at least until recently, Defendants did nothing to prevent the same child from re-creating their account with the same device, persistent identifiers, and email address or phone number as before. This means that a child whose account has been removed could simply create a new account.

### 8. Defendants Have Failed To Delete Children's Accounts and Information Identified By Their Own Systems.

160. Defendants purport to use technology, user reports, and human moderation to identify children's TikTok accounts so that those accounts and the information collected from them can be deleted. But Defendants know their processes and policies are deficient, and they fail to delete accounts and information that even their own employees and systems identify as belonging to children.

161. As alleged in the DOJ Complaint, since approximately 2020, Defendants have used "keyword matching" purportedly to identify children's accounts for deletion. Defendants' keyword matching process searches users' profiles for terms deemed likely to correspond to child accounts—for example, "4th grade" and "9 years old"—and submits accounts that include those terms for review and potential removal. Defendants' keyword matching practices have proven woefully deficient.

162. Defendants' human content moderators review accounts flagged as potentially belonging to children by the keyword matching process or by other methods. Similar to Defendants' restrictive approach to parental deletion requests, the content moderators who review accounts may delete them as belonging to children only if rigid criteria are satisfied.

163. According to allegations in the DOJ Complaint, earlier versions of the policy were even more restrictive. For example, to mark and delete an account as underage, the policy between the spring of 2020 and early 2021 required an explicit admission of age, regardless of what videos the account had posted.

164.    Additionally, Defendants' content moderators are not told why an account was flagged as possibly underage. If the policy's rigid criteria are not met, content moderators have no discretion to designate an account as underage; they must allow any such account to remain on the Full Access Platform even if they know the account holder is in fact a child.

165.    As alleged in the DOJ Complaint, Defendants have also failed to allow content moderators sufficient time to conduct even the limited review they permit. TikTok often has tens of millions of monthly active users in the United States. Meanwhile, TikTok Inc.'s content moderation team included fewer than two dozen full-time human moderators responsible for identifying and removing material that violated all of its content-related policies, including identifying and deleting accounts of unauthorized users under age 13. At some points, TikTok's human moderators spend an average of less than 10 seconds on each review.

166.    The deficiency of Defendants' policies is shown by the fact that Full Access Platform TikTok accounts belonging to children can be easily found by searching for the same basic terms and variations used by Defendants' keyword matching algorithm, per the DOJ Complaint. Some of these accounts have existed for long periods—able to garner hundreds of followers and hundreds or even thousands of "likes," a sign of approval by other TikTok users.

167.    By adhering to these deficient policies, Defendants knowingly avoided deleting the accounts of users they knew to be children under 13. Instead, Defendants continue collecting and profiting from the personal information of children under 13.

### 9.    TikTok Had Actual Knowledge That It Was Collecting, Storing and Using the Personal Information of Children Under the Age of 13.

168.    Accounts that belong to children may also come to Defendants' attention when one user reports another user's video as violating one of Defendants' policies. According to the DOJ Complaint, those videos are then added to "video queues" and reviewed by human content moderators who review the videos to determine whether

they comply with Defendants' policies. If those content moderators encounter a video that depicts a child under 13 years old, they can apply labels to designate suspected child users, such as "Content Depicting Under the Age of Admission" or "Suspected Underaged User." These moderators can remove a specific video from TikTok, but they lack authority to delete or remove the account even if it is clearly the account of a child. Instead, by applying the labels, they refer the video to the separate content moderation team that assesses whether accounts belong to underage users (the "underage queue").

169.    As alleged in the DOJ Complaint, during the Class Period, this process has been effective. Despite Defendants' moderators tagging specific videos as depicting a child under 13 years old, the associated accounts were not actually referred to the team authorized to delete the associated account. Instead, those accounts remained live, and Defendants continued to collect and retain those children's personal information and to show them videos and messages from adult TikTok users.

170.    Defendants conduct quality assurance reviews of the content moderation processes described above. The quality assurance reviews require content moderators to re-review a subset of previously reviewed accounts or videos. This process aims to identify instances in which TikTok content moderators incorrectly applied company policies to those accounts or videos.

171.    As alleged in the DOJ Complaint, until at least September 2022, however, when Defendants' quality assurance analysts identified a specific account that a moderator incorrectly failed to flag for deletion as belonging to a child, Defendants did not then go back and delete the account. Instead, the account remained live. Accordingly, Defendants failed to delete numerous children's accounts that their own quality assurance team specifically identified as belonging to children.

172.    As alleged in the DOJ Complaint, even where accounts that satisfied Defendants' rigid criteria were identified as belonging to children and were marked for deletion, Defendants failed to delete many of the accounts.

173.    As such, although Defendants were unquestionably aware of the problem

and the 2019 Permanent Injunction required them to keep records of their COPPA compliance, they failed to do so.

174.   In addition to Defendants' unlawful collection and use of the personal information of children under 13 years old, as alleged in the DOJ Complaint, Defendants retain children's personal information long after they identify an account as belonging to a child and determine they should delete information related to the account. For example, Defendants retain app activity log data related to children for 18 months.

175.   As alleged in the DOJ Complaint, Defendants have retained children's personal information in numerous database locations long after purportedly deleting their accounts.

176.   As alleged in the DOJ Complaint, Defendants retained profile photographs of users that Defendants knew to be children. For example, TikTok allows users to include in their videos another user's comment, which is displayed alongside the commenter's photograph and username. When Defendants did "delete" the account of a child, that child's comments remained in other users' posts, along with their photograph and username. These images had unique identifiers that tied each child's photograph, username, and comment to an account that Defendants knew had been deleted because it belonged to a child.

177.   As alleged in the DOJ Complaint, Defendants' internal analyses show that millions of TikTok's U.S. users are children under the age of 13. For example, the number of U.S. TikTok users that Defendants classified as age 14 or younger in 2020 was millions higher than the U.S. Census Bureau's estimate of the total number of 13 and 14 year olds in the United States, suggesting that many of those users were children younger than 13.

178.   Upon information and belief, Defendants only classify users as age 14 and under in internal metrics, as noted above, to obscure from disclosure the number of children under the age of 13 on TikTok.

179. TikTok had actual knowledge that children under 13 were and are using TikTok yet did not obtain verifiable parental consent before collecting the personal information of those children in violation of COPPA, the FTC Act, and the consumer protection laws of many states. These acts also constituted an intrusion upon the seclusion of children under 13 as well as a violation of their reasonable expectation of privacy.

**B. Defendants Knowingly Collected and Exploited the Personal Information of Children Without Parental Consent In Violation of COPPA.**

**1. The Children's Online Privacy Protection Act of 1998.**

180. Congress passed COPPA, codified at 15 U.S.C. § 6501 *et seq.*, in 1998 in response to concerns that children's online activities were being tracked by operators of websites and online services. COPPA is intended to "maintain the security of personally identifiable information of children collected online" and to "protect children's privacy by limiting the collection of personal information from children without parental consent."[69] The standards in COPPA have given rise to, and correlate with, accepted norms throughout society for defining the expectations of privacy for minor children.

181. COPPA "prohibits unfair… acts or practices in connection with the collection, use, and/or disclosure of personal information from and about children on the Internet."[70]

182. COPPA applies to any operator of a commercial website or online service directed to children under 13 years of age that collects, uses, and/or discloses personal information from children. Pursuant to COPPA, "Website or online service directed to children means a commercial website or online service, or portion thereof, that is targeted to children." 6 C.F.R. § 312.2.

183. Operators of websites or online services directed to children that collect personal information from their users must comply with COPPA regardless of whether

---

[69] 114 Cong. Rec. S125787 (daily ed. Oct. 21, 1998) (statement of Mr. Bryan).
[70] 16 C.F.R. § 312.1.

they have actual knowledge that a particular user is, in fact, a child. Accordingly, as a practical matter, operators of child-directed sites and services must presume that all users are children.[71]

184.   In order to determine whether a website or online service is "directed to children" the FTC will:

> [C]onsider [the website's or online service's] subject matter, visual content, use of animated characters or child-oriented activities and incentives, music or other audio content, age of models, presence of child celebrities or celebrities who appeal to children, language or other characteristics of the Web site or online service, as well as whether advertising promoting or appearing on the Web site or online service is directed to children.[72]

185.   More specifically, as set forth in 16 C.F.R. § 312.2 (definition of "Web site or online service directed to children," paragraph (1)), factors indicating whether a website or online service is directed to children include:

- the subject matter;
- visual content;
- the use of animated characters or child-oriented activities and incentives;
- music or other audio content;
- age of models;
- presence of child celebrities or celebrities who appeal to children;
- language or other characteristics of the website or online service;
- whether advertising promoting or appearing on the website or online service is directed to children;
- competent and reliable empirical evidence regarding audience composition; and
- evidence regarding the intended audience of the site or service.

---

[71] *Complying with COPPA: Frequently Asked Questions*, Federal Trade Commission, https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions (last accessed Jul. 11, 2025).

[72] 16 CFR § 312.2.

186. COPPA also applies to "operators of websites or online services that have actual knowledge that they are collecting personal information online from a child under 13 years of age." 16 C.F.R. § 312.1. Thus, there are two types of websites or online services defined as Operators under COPPA: operators that directed at children that collect personal information about their users, and any other operator that has actual knowledge that the personal information they are collecting is from users under the age of 13.

187. COPPA provides, in pertinent part, that:

It is unlawful for an operator of a website or online service directed to children, or any operator that has actual knowledge that it is collecting personal information from a child, to collect personal information from a child in a manner that violates the regulations prescribed [by the FTC]. 15 U.S.C. § 6502(a).

188. COPPA thus prohibits, inter alia, the collection of persistent identifiers for behavioral advertising absent notice and verifiable parental consent. 16 C.F.R. §§ 312.5(c)(7), 312.2.

189. COPPA specifically requires an "operator" covered by COPPA to give notice to parents and obtain their verifiable consent before collecting children's personal information online. 16 C.F.R. §§ 312.4 and 312.5. This includes but is not limited to:

- Posting a privacy policy on its website or online service providing clear, understandable, and complete notice of its information practices, including what information the website operator collects from children online, how it uses such information, its disclosure practices for such information, and other specific disclosures set forth by COPPA;

- Providing clear, understandable, and complete notice of its information practices, including specific disclosures directly to parents; and

- Obtaining verifiable parental consent prior to collecting, using, and/or disclosing personal information from children.

190. The FTC has interpreted "operators of website or online services directed to children" and "operators with actual knowledge that they are collecting personal

47

information online from children under 13" "subject to strict liability for COPPA violations."[73]

191.   Websites or online services that collect personal information from users of other child-directed websites or online services are deemed as "child-oriented" if the website or online service "has actual knowledge that it is collecting personal information directly from users of another website or online service directed to children." 16 C.F.R. § 312.2.

192.   COPPA defines personal information "as individually identifiable information about an individual collected online." 15 U.S.C. § 6501(8). In 2013, COPPA was enhanced (the "2013 COPPA Enhancement") to provide further protection for children against online tracking and to "giv[e] parents greater control over the online collection of their children's personal information."[74] The 2013 enhancement widened the definition of children's personal information to include "persistent identifiers" such as cookies that track a child's activity online, geolocation information, photos, videos, and audio recordings.

Thus, the COPPA Enhancement defines "personal information" to include:

1.   A first and last name;

2.   A home or other physical address including street name and name of a city or town;

3.   Online contact information as defined in this section;

4.   A screen or user name where it functions in the same manner as online contact information, as defined in this section;

---

[73] Statement of Joseph J. Simons & Christine S. Wilson, *Regarding FTC and People of the State of New York v. Google LLC and YouTube, LLC*, Fed. Trade Comm'n (Sept. 4, 2019), https://www.ftc.gov/system/files/documents/public_statements/1542922/simons_wilson_google_youtube_statement.pdf.

[74] *Revised Children's Online Privacy Protection Rules Goes Into Effect Today: FTC Continues Safe Harbor Programs, Expands Business and Parental Education Efforts*, Fed. Trade Comm'n, (July 1, 2013), https://www.ftc.gov/news-events/news/press-releases/2013/07/revised-childrens-online-privacy-protection-rule-goes-effect-today.

5.      A telephone number;

6.      A Social Security number;

7.      A persistent identifier that can be used to recognize a user over time and across different Web sites or online services. Such persistent identifier includes, but is not limited to, a customer number held in a cookie, an Internet Protocol (IP) address, a processor or device serial number, or unique device identifier;

8.      A photograph, video, or audio file where such file contains a child's image or voice;

9.      Geolocation information sufficient to identify street name and name of a city or town; or

10.     Information concerning the child or the parents of that child that the operator collects online from the child and combines with an identifier described in this definition."

COPPA Rule, 16 C.F.R. § 312.2.

193.    The 2013 COPPA Enhancement was the culmination of two years of rulemaking by the FTC and reflected society's growing recognition of the surreptitious surveillance tactics used by advertising companies to track children online and advertise to them while using the internet.

194.    By expressly including persistent identifiers and geolocation data in COPPA's definition of personal information, the FTC intended to deter advertising companies and internet operators such as TikTok from exploiting young children via tracking, profiling, and advertising online.

**2.      TikTok unlawfully collects personal information from under age 13 users on the Full Access and Kids Mode Platforms.**

195.    TikTok, as an operator defined by COPPA, has for years violated COPPA by collecting personal information without parental consent from children under the age of 13 on the Full Access Platform that TikTok knows are under 13. These users include

49

Plaintiffs and the classes they seek to represent.

196.    TikTok is directed to children, in part, as evident from the plethora of child-related content that TikTok serves to children on the platform under the age of 13 through the users' TikTok feeds, age-specific targeted advertising, and other content and information intended to serve an under age 13 audience. TikTok purports to avoid targeting children through its age-gating, however, these efforts have been knowingly and intentionally ineffective.

197.    In addition, TikTok has actual knowledge that it is collecting personal information from users who are under the age of 13. The personally identifying information collected online by TikTok from these users includes the categories of information listed in COPPA's definition of personal information and categories of Private Information collected online that also are personally identifying.

198.    For users with a self-reported age of under 13 (on Kids Mode), TikTok collects Kids Mode Private Information without obtaining, or even attempting to obtain, prior parental permission.

199.    TikTok uses Kids Mode Private Information to serve contextual advertisements, even though TikTok has actual knowledge that millions of these users are below the age of 13.

200.    Some or all of the Kids Mode Private Information is "information concerning [a] child"[75] regulated by the COPPA Rule. TikTok combines this Kids Mode Private Information with at least one persistent identifier that it collects from that same child.

201.    Upon information and belief, to create a TikTok account, all TikTok users (including Plaintiffs) provide TikTok with a phone number, e-mail address, Gmail account identifier, Facebook account identifier, and/or Apple account identifier. All TikTok users (including Plaintiffs) create a personal profile that includes a unique username. TikTok collects and maintains this information.

---

[75] 16 C.F.R. § 312.2.

202.   Upon information and belief, for all TikTok users (including Plaintiffs), immediately upon creating an account, TikTok collects and maintains the users' device information including the type of device used, including IP address, unique device identifiers such as device ID, web browser type and version, country-level location, app activity information, such as videos watched, time on the Platform, and general usage information.

203.   Upon information and belief, for all TikTok users (including Plaintiffs), once a user signs in to the TikTok platform, TikTok immediately shows videos to the user. TikTok collects and maintains which videos all TikTok users (including Plaintiffs) watched, the time the user spent watching each video, and the users' time spent on the TikTok platform.

204.   Upon information and belief, for all TikTok users (including Plaintiffs), TikTok combines the Personal Information that it collects from users with persistent identifiers to create profiles about the users. Among the information that TikTok combines with persistent identifiers to create profiles is which videos the user watched, the time the user spent watching each video, and the users' time spent on the TikTok platform.

205.   Upon information and belief, for all TikTok users with Full Access (including Plaintiffs with Full Access), TikTok serves targeted behavioral advertising to the users based on the users' profile, their persistent identifiers, and the Personal Information that TikTok has collected from them and that third parties have collected from them, including which videos the user watched on TikTok, the time the user spent watching each video on TikTok, and the users' time spent on the TikTok platform.

206.   By combining this "information concerning [a] child" with a persistent identifier collected by TikTok, that information becomes "personal information" under the COPPA Rule, and that information must be treated in compliance with the COPPA Rule. 16 C.F.R. § 312.3. In violation of COPPA, TikTok does not request or obtain parental consent prior to collecting this personal information from users under the age of

51

13.

207.    TikTok provides insufficient notice on its website and app about the information it collects from children, how it uses that information, its disclosure practices and parents' rights to review or delete their children's information.

208.    Despite the fact that TikTok is "directed to children," and TikTok's "actual knowledge" that it is collecting personal information form users under the age of 13, TikTok does not obtain verifiable parental consent before collecting, using, or disclosing the personal information of its child users (including users in "Kids Mode" and the 13+ experience). This violates COPPA.

209.    COPPA and the COPPA Rule enumerate the minimum methods by which TikTok is required to obtain verifiable consent. See 15 U.S.C. § 6501(9) and 16 C.F.R. § 312.5(b)(2).

210.    TikTok adheres to none of the rules and requirements with respect to parental consent.

211.    Pursuant to Section 1303(c) of COPPA, 15 U.S.C. § 6502(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of COPPA constitutes an unfair … act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

212.    While COPPA does not itself provide a private right of action for individuals to seek redress for harms arising from COPPA violations, and contains a limited preemption clause barring the imposition of liability by states and local governments "inconsistent" with COPPA (15 U.S.C. § 6502(d)), the United States Court of Appeals for the Ninth Circuit has held that "COPPA's preemption clause does not bar state-law causes of action that are parallel to, or proscribe the same conduct forbidden by, COPPA." Jones v. Google LLC, 73 F.4th 636, 644 (9th Cir. 2023).

213.    Therefore, individuals harmed by conduct which violates COPPA such as the conduct described herein may seek redress for harms via state law causes of action.

52

**3.      Defendants' Actions Violated Class Members' Reasonable Expectations of Privacy and Are Highly Offensive.**

214.   TikTok's conduct in violating the privacy rights and reasonable expectations of privacy of Plaintiffs and Class Members by implementing a knowingly insufficient age-gating system is particularly egregious because TikTok agreed to cease this behavior in the 2019 Permanent Injunction but failed to do so. Defendants' actions have violated norms and laws designed to protect children – a group that society has long recognized is vulnerable to exploitation and manipulation.

215.   Parents' interest in the care, custody, and control of their children is one of the most fundamental liberty interests recognized by society. It has long been recognized that parents should maintain control over who interacts with their children and how.

216.   Because children are more susceptible to exploitation than adults, society has recognized the importance of providing added legal protections for children, often in the form of parental consent requirements.

217.   COPPA reflects this recognition. As a June 1998 report by the FTC observed, "[t]he immediacy and ease with which personal information can be collected from children online, combined with the limited capacity of children to understand fully the potentially serious safety and privacy implications of providing that information, have created deep concerns about current information practices involving children online."[76]

218.   Similarly, the FTC's enhancements of COPPA in 2013 reflect a specific concern with mobile app tracking and tracking internet users via persistent identifiers and reflect the offensiveness with which society regards this behavior.

219.   Almost every family with a child younger than eight in America has a

---

[76] *Privacy Online: A Report to Congress, Federal Trade Commission* (1998) at 13. https://www.ftc.gov/sites/default/files/documents/reports/privacy-online-report-congress/priv-23a.pdf.

53

smartphone and/or tablet in the household.[77] Moreover, most children are given their own devices by the age of four: "75 percent of children had their own tablet, smartphone, or iPod."[78] And most children under 13 years of age use online apps, including video streaming (64 percent), video gaming (58 percent) and show/movie streaming (58 percent).[79]

220.    Polling also reveals that a majority of parents (80 percent) whose children are under 13 years of age and use online apps say they worry about their children's privacy when using those apps,[80] with the top concern (69 percent) being data tracking.[81]

221.    Additionally, a survey conducted by the Center for Digital Democracy ("CDD") and Common Sense Media of more than 2,000 adults found overwhelming support for the basic principles of privacy embedded in the California Constitution, state common law, as well as federal law.[82] The parents polled overwhelmingly responded that they disagreed with advertisers collecting and tracking information about their

[77] Victoria Rideout, *The Common Sense Census: Media Use By Kids Age Zero To Eight* at 3, Common Sense Media (2017), https://cdn.cnn.com/cnn/2017/images/11/07/csm_zerotoeight_full.report.final.2017.pdf (last visited July 10, 2025).

[78] Alexis C. Madrigal, *Raised By YouTube*, The Atlantic (Nov. 2018), ("[A] team of pediatricians at Einstein Medical Center, in Philadelphia, found that YouTube was popular among device-using children under the age of 2. Oh, and 97 percent of the kids in the study had used a mobile device. By age 4, 75 percent of the children in the study had their own tablet, smartphone, or iPod. And that was in 2015").

[79] *Pixalate's Harris Poll Survey Recap: Children's Privacy in Mobile Apps*, Pixalate (Mar. 1, 2022, 4:30 PM), https://www.pixalate.com/blog/childrens-online-privacy-harris-poll-recap.

[80] *Id.*

[81] *Children's Privacy: Data tracking is a big concern for parents - and trust levels in companies are low*, CDP Institute (Jan. 24, 2023), https://www.cdpinstitute.org/news/childrens-privacy-data-tracking-is-a-big-concern-for-parents-and-trust-levels-in-companies-are-low/.

[82] *Survey on Children and Online Privacy, Summary of Methods and Findings*, Center for Digital Democracy, https://democraticmedia.org/assets/resources/COPPA-Executive-Summary-and-Findings-1635879421.pdf (last visited July 10, 2025).

54

children online.

222. Given the proliferation of internet-connected device usage by children under 13 years of age, coupled with parents' privacy concerns for their children, Defendants past acknowledgment of its failure to adequately protect children including its Court Ordered promise to remediate its practices, renders Defendants' conduct highly offensive and an egregious breach of social norms.

223. By failing to (i) obtain parental consent, (ii) disclose to parents the nature and purpose of their data collection practices (and use of that data), (iii) take other steps to preclude the capture of children's personal information, and (iv) by manipulating and exploiting the habits of children under 13 for their economic gain, Defendants have breached the privacy rights and reasonable expectations of privacy of Plaintiffs' and the millions of children in the Classes who have used TikTok's platform, in contravention of privacy norms that are reflected in consumer surveys, centuries of common law, state and federal statutes, legislative commentaries, industry standards and guidelines.

### 4. Defendants' Actions Targeting Children in Violation of COPPA and the 2019 Permanent Injunction Are Highly Offensive and Egregious.

224. Defendants' abject and intentional failure to abide by the terms of the 2019 Permanent Injunction to ensure its compliance with COPPA has resulted in the continued collection and exploitation of the personal information of children for profit and represents a stark departure from long-standing societal and legal traditions that are designed to protect children under 13 from exposure to harmful and addictive activities and/or products. For decades, the United States has recognized the inherent vulnerability of children and has instituted robust regulatory frameworks to shield them from the harms associated with addictive substances and behaviors, such as tobacco, firearms, alcohol, and gambling.

225. These protections include age restrictions on the use of addictive or dangerous products such as tobacco, firearms, alcohol, and gambling and restrictions on advertising directed towards young children concerning the same. This dual pronged

approach of restricting access/use and advertising is rooted in societal consensus that children, by virtue of their developmental stage, require heightened safeguards to ensure their health, well-being, and future potential.[83]

226.  Defendants' conduct is egregious in that they knowingly and intentionally instituted an insufficient age-gating system that was designed to be readily by-passed by children under the age of 13, implemented policies and procedures that made it extremely difficult for parents to delete their children's personal information from TikTok, failed to use readily available tools to monitor the presence of underage users.

227.  Defendants took affirmative steps to avoid the specific obligations they undertook to protect children as part of the resolution of a previous government complaint. Their deliberate and unlawful actions have caused substantial harm to plaintiffs for which they deserve compensation and injunctive relief that will require Defendants to (finally) comply with their obligations under COPPA.

**C.  Plaintiffs and Members of the Classes Have Suffered Economic Injury While Defendants Have Been Enriched.**

228.  Plaintiffs and the Members of the Classes have suffered economic injuries which include, but are not limited to, loss of control over their own personal property which has a market value.

229.  Plaintiffs and the Members of the Classes suffered economic injury when Defendants unlawfully took possession of and commercially exploited their Private Information and Kids Mode Private Information and were unjustly enriched by doing so, causing Plaintiffs and the Members of the Classes to suffer loss of control over their own information—property which has value to them.

---

[83] *See, e.g. Family Smoking Prevention and Tobacco Control Act*, 21 U.S.C. §§ 387a-387u (restricting manufacture, marketing, and distribution of tobacco products to protect the public health generally and to reduce tobacco use by minors); *Stop Tobacco Access to Kids Enforcement (STAKE) Act*, Cal. Bus. & Prof. Code § 22958 (West 2016) (restricting sale of tobacco products in California to people 21 years of age or older); *National Minimum Drinking Age Act of 1984*, 23 U.S.C. § 158 (1984) (establishing minimum age requirement of 21 years old to drink alcohol).

230.    Defendants' unlawful collection and exploitation of the Private Information and Kids Mode Private Information of Plaintiffs and the Members of the Classes have destroyed the private quality of the Private Information and Kids Mode Private Information and have deprived Plaintiffs and the Members of the Classes of the ability to determine whether or not to keep their Private Information and Kids Mode Private Information private and when or if to sell their Private Information and Kids Mode Private Information —valuable aspects of their rights of ownership that were of paramount importance to Plaintiffs and the Members of the Classes in this case – and, thus, diminished the value of the Private Information and Kids Mode Private Information.

**1.    Private Information and Kids Mode Private Information Are Assets That Have Economic Value.**

231.    The Private Information and Kids Mode Private Information TikTok collects and uses had, and continues to have, massive economic value. This value is well understood in the e-commerce industry, and personal information is now viewed as a form of currency.

232.    Research on the market for personal information dates back well before the Class Period,[84] and demonstrates a growing consensus that consumers' sensitive and valuable personal information would become the new frontier of financial exploit.

233.    Professor Paul M. Schwartz noted in the Harvard Law Review:

Personal information is an important currency in the new millennium. The monetary value of personal data is large and still growing, and corporate America is moving quickly to profit from the trend. Companies view this information as a corporate asset and have invested heavily in software that facilitates the collection of consumer information.[85]

234.    Likewise, in The Wall Street Journal, former fellow at the Open Society

---

[84] Kenneth C. Laudon, *Markets and Privacy*, Int'l Conf. on Info. System. (Revised Draft Version July 1993), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=1284878.

[85] Paul M. Schwartz, *Property, Privacy and Personal Data*, 117 Harv. L. Rev. 2055, 2056–57 (2004).

Institute (and current principal technologist at the ACLU) Christopher Soghoian noted:

> The dirty secret of the Web is that the "free" content and services that consumers enjoy come with a hidden price: their own private data. Many of the major online advertising companies are not interested in the data that we knowingly and willingly share. Instead, these parasitic firms covertly track our web-browsing activities, search behavior and geolocation information. Once collected, this mountain of data is analyzed to build digital dossiers on millions of consumers, in some cases identifying us by name, gender, age as well as the medical conditions and political issues we have researched online.[86]

235.   As the thirst has grown for personal information,[87] it has become apparent that the world's most valuable resource is no longer oil, but instead consumers' data in the form of their personal information.[88]

236.   The cash value of the personal information unlawfully collected by TikTok during the Class Period can be quantified. For example, in a study authored by Tim Morey, researchers studied the value that 180 internet users placed on keeping personal

---

[86] Julia Angwin, *How Much Should People Worry About the Loss of Online Privacy?*, Wall St. J. (Nov. 15, 2011), https://www.wsj.com/articles/SB10001424052970204190704577024262567105738.

[87] *Exploring the Economic of Personal Data: A Survey of Methodologies for Measuring Monetary Value* at 7, OECD Digital Economy Paper No. 220 (Apr. 2, 2013), http://dx.doi.org/10.1787/5k486qtxldmq-en; *Supporting Investment in Knowledge Capital, Growth and Innovation* at 319, OECD, (Oct. 10, 2013), https://doi.org/10.1787/9789264193307-en; Pauline Glickman & Nicolas Glady, *What's the Value of Your Data?*, TechCrunch (Oct. 13, 2015) https://techcrunch.com/2015/10/13/whats-the-value-of-your-data/; Paul Lewis & Paul Hilder, *Former Cambridge Analytica exec says she wants lies to stop*, The Guardian (March 23, 2018) https://www.theguardian.com/uk-news/2018/mar/23/former-cambridge-analytica-executive-brittany-kaiser-wants-to-stop-lies; Shoshanna Zuboff, *The Age of Surveillance Capitalism, The Fight for a Human Future at the New Frontier of Power*, Hachette Book Group (2019).

[88] *The world's most valuable resource is no longer oil, but data: The data economy demands a new approach to antitrust rules*, The Economist (May 6, 2017), https://www.economist.com/leaders/2017/05/06/the-worlds-most-valuable-resource-is-no-longer-oil-but-data.

data secure.[89] Contact information of the sort that TikTok requires was valued by the study participants at approximately $4.20 per year. Demographic information was valued at approximately $3.00 per year. However, web browsing histories were valued at a much higher rate: $52.00 per year. The chart below summarizes the findings:



237.   Similarly, another study employed a detailed methodology to understand how users value their personal information in exchange for internet-based services.[90] Participants installed a browser plugin that logged their web browsing activities, including the URLs visited and the time of access.[91] The plugin also categorized the websites into eight predefined categories: Email, Entertainment, Finance, News, Search, Shopping, Social, and Health and asked participants questions designed to gather information about their perceptions of privacy, their knowledge of how their personal information might be monetized, and their valuation of specific pieces of PI as they visited certain websites.[92] To calculate the value users placed on their personal

[89] Tim Morey, *What's Your Personal Data Worth?*, Design Mind (Jan. 18, 2011), https://web.archive.org/web/20131206000037/http://designmind.frogdesign.com/blog/what039s-your-personal-data-worth.html.

[90] Juan Pablo Carrascal *et al.*, *Your browsing behavior for a Big Mac: Economics of Personal Information Online*, (Dec. 28, 2011), https://arxiv.org/pdf/1112.6098.

[91] *Id.*

[92] *Id.*

information, the researchers employed a reverse second-price auction mechanism in which participants bid on the minimum amount of money they would accept to sell specific pieces of their personal information in exchange for internet-based services they were using.[93]

238.    The results of the study were the following personal information valuations:

- Offline information (age address, economic stats): €25 (~$29.44)

- Browsing History: €7 (~$8.24)

- Interactions on social networks: €12 (~14.13)

- Search History: €2 (~$2.36)

- Shopping Activity: €5 (~$5.89)

- What these studies, and others[94] show is that individuals place an economic value on their personal information and are willing to engage in economic transactions in which they grant access to their personal information in exchange for internet-based services. Defendants' unauthorized collection of personal information of Plaintiffs and Members of the Classes deprived them of this opportunity.

239.    Similarly, BIGtoken "is a platform to own and earn from your data. You can use the BIGtoken application to manage your digital data and identity and earn rewards when your data is purchased."[95]

---

[93] *Id.*

[94] Jacopo Staiano *et al.*, *Money walks: a human-centric study on the economics of personal mobile data*, arXiv preprint arXiv:1407.0566 (Sept. 13, 2014), https://arxiv.org/abs/1407.0566 (finding that location information is the most valued type of personal data, with a median value of approximately €25, and that participants showed significant sensitivity towards monetizing their personal information collected via mobile phones).

[95] *FAQ*, BIGtoken, https://web.archive.org/web/20201230225507/https://bigtoken.com/faq (Accessed Dec. 16, 2024) ("Third-party applications and sites access BIGtoken to learn more about their consumers and earn revenue from data sales made through their platforms.

60

240.    The Nielsen Company, famous for tracking the behavior of television viewers' habits, has extended its reach to computers and mobile devices through the Nielsen Computer and Mobile Panel. By installing the application on a consumer's computer, phone, tablet, e-reader, or other mobile device, Nielsen tracks the user's activity, enters that user into sweepstakes with monetary benefits, and allows the user to earn points worth up to $50 per month.[96]

241.    Technology companies recognize the monetary value of users' personal information, insofar as they encourage users to install applications explicitly for the purpose of selling that information to technology companies in exchange for monetary benefits.[97]

242.    The California Consumer Protection Act ("CCPA") recognizes that consumers' personal data is a property right. Not only does the CCPA prohibit covered businesses from discriminating against consumers that opt-out of data collection, the CCPA also expressly provides that: "[a] business may offer financial incentives, including payments to consumers as compensation, for the collection of personal information, the sale of personal information, or the deletion of personal information." Cal. Civ. Code § 1798.125(b)(1). The CCPA provides that, "[a] business shall not use financial incentive practices that are unjust, unreasonable, coercive, or usurious in

Our BIG promise: all data acquisition is secure and transparent, with consumers made fully aware of how their data is used and who has access to it.").

[96] Kevin Mercandante, *10 Apps for Selling Your Data for Cash*, Best Wallet Hacks (Nov. 18, 2023), https://wallethacks.com/apps-for-selling-your-data/.

[97] Kari Paul, *Google launches app that will pay users for their data*, The Guardian (June 11, 2019), https://www.theguardian.com/technology/2019/jun/11/facebook-user-data-app-privacy-study;
Saheli Roy Choudhury & Ryan Browne, *Facebook pays teens to install an app that could collect all kinds of data*, CNBC (Jan. 30, 2019), https://www.cnbc.com/2019/01/29/facebook-paying-users-to-install-app-to-collect-data-techcrunch.html; Jay Peters, *Facebook will now pay you for your voice recordings*, The Verge (Feb. 20, 2020), https://www.theverge.com/2020/2/20/21145584/facebook-pay-record-voice-speech-recognition-viewpoints-pronunciations-app.

nature." Cal. Civ. Code § 1798.125(b)(4).

**2.    Defendants Have Been Enriched by Taking Possession of and Using the Private Information and Kids Mode Private Information of Plaintiffs and the Class.**

243.    Defendants have unlawfully taken possession of and commercially exploited the Private Information and Kids Mode Private Information of Plaintiffs and Class Members without their permission and without compensating them for the use of their assets.

244.    Defendants' illegal and improper collection, use and retention of Private Information and Kids Mode Private Information of children under 13 also has given them a significant economic benefit cannot be undone.

245.    As alleged above, Plaintiffs and Class Members data has massive economic value.

246.    By collecting Plaintiffs and Class Members valuable data for free, Defendants have been enriched.

247.    As a result of TikTok's unlawful data collection, TikTok's algorithms now incorporate ill-gotten valuable data from millions of children's accounts. The insights Defendants glean from users' viewing sessions will enable TikTok to use the Private Information and Kids Mode Private Information of children under 13 to target them for potentially the duration of their lives and will solidify TikTok's market dominance in providing child-directed content.

248.    Further, Defendants use and will continue to use their trove of user data, including Plaintiffs' and Class Members' data, to attract third party advertisers. In turn, Defendants will profit from Plaintiffs' and Class Members' data by selling advertising space to third parties and leveraging Plaintiffs' and Class Members' data for targeted advertisements.

249.    The economic value of the Private Information and Kids Mode Private Information has been undermined by Defendants' collection and use of it, including sharing that information with third parties.

62

250.    Defendants' unlawful exploitation of the Private Information and Kids Mode Private Information of Plaintiffs and Class Members has, thus, diminished the value of that information, causing Plaintiffs and Class Members to suffer economic loss and injury for which Plaintiffs and Class Members can never be made whole.

**D.    Equitable Relief is Necessary to Protect the Rights of the Class and Prevent Defendants from Profiting from their Wrongful Conduct.**

251.    Throughout the Class Period TikTok collected, used and stored COPPA-protected personal information from Plaintiffs and Class Members without obtaining the verified parental consent required by COPPA for such collection and use.

252.    As a result of TikTok's refusal to abide by the terms of the 2019 Permanent Injunction, as demonstrated by the DOJ Complaint, TikTok continues to profit off its unlawful business practices at the expense of the privacy of children. Among other facts alleged in the DOJ Complaint, TikTok has failed to implement effective age gates, to identify and remove underage users of non-Kids Mode accounts, to delete data, even upon parental request, instead, taking steps to make deletion requests onerous, and has continued to collect data from purportedly deleted accounts.

253.    Because of TikTok's continued unlawful conduct in collecting, using and storing the personal information of children under the age of 13, Plaintiffs and Class Members are not only vulnerable to TikTok's ongoing violations, but their previously collected data remains vulnerable to misuse by Defendants. These continuing harms have no adequate remedy at law.

254.    Plaintiffs and Class Members are likely to use TikTok in the future and seek protection from Defendants continued violations of COPPA protections.

255.    Furthermore, the 2019 Permanent Injunction does not require TikTok to forfeit the profits it has realized from its wrongful exploitation of Plaintiffs' and Class Members' personal information, thus allowing TikTok to retain the enormous profits it obtained through its illegal use of Plaintiffs' and Class Members' personal information. No remedy at law available to Plaintiffs and Class Members affects these profits or is

available to prevent TikTok from retaining such profits. The law requires imposition of equitable orders of non-restitutionary disgorgement to prevent TikTok from profiting from its misconduct.

256.   Money damages alone will not protect Plaintiffs and the Class Members from the non-economic harms posed by the misuse of their personal information in violation of COPPA nor from TikTok's impermissible profit from this misconduct. Thus, Plaintiffs and Class Members have no adequate remedy at law. To the extent that money damages, if available, would constitute an adequate remedy at law barring recovery, Plaintiffs and Class Members assert their claims for the equitable relief set forth herein as an alternative remedy pending a final determination of the availability of a remedy at law.

257.   For these reasons, Plaintiffs and Class Members seek entry of a permanent injunction (a) requiring TikTok to destroy all personal information of Plaintiffs and Class Members in its possession that was collected in violation of COPPA; (b) requiring TikTok to notify each Plaintiff and Class member that his or her personal information was collected and has been destroyed; (c) restraining TikTok from directly or indirectly using or benefitting from the personal information of Plaintiffs and Class Members that it wrongly collected, including precluding the use of any Plaintiff's or Class Member's data profile developed, in whole or in part, on such improperly collected information for the purpose of serving targeted or behavioral advertising; and (d) requiring TikTok to relinquish all ill-gotten gains.

## V.    ALLEGATIONS RELATING TO PLAINTIFFS

**A.    Plaintiffs G.K. and D.K., minors, by and through their parent Karin Robinson**

258.   This action is brought on G.K. and D.K.'s behalf by Plaintiff Karin Robinson.

259.   During the Class Period, G.K. and D.K. created and used TikTok accounts (while under the age of 13) and viewed content on the TikTok platform.

260. G.K. created a TikTok account when G.K. was approximately 9 years old. D.K. created a TikTok account when D.K. was approximately 12 years old.

261. During the Class Period, Defendants collected G.K. and D.K.'s Private Information for the purpose of tracking G.K. and D.K.'s activity and utilizing targeted advertisements.

262. During the Class Period, the information that Defendants collected for the purpose of tracking G.K. and D.K.'s activity and utilizing targeted advertisements included the videos G.K. and D.K. watched on the TikTok platform, the time G.K. and D.K. spent watching each video, and G.K. and D.K.'s time spent on the TikTok platform. TikTok combined this information with persistent identifiers as part of G.K. and D.K.'s user profile.

263. Defendants are maintaining or are able to generate DYD files containing part, but not all, of the information they collect about G.K. and D.K.

264. Defendants never obtained consent from nor notified G.K. and D.K.'s parent, Karin Robinson, at any point prior to or during their collection and use of G.K. and D.K.'s Private Information.

265. Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting personal information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

266. G.K. and D.K. are likely to use TikTok in the future and seeks protection from Defendants' continuing violations of COPPA protections.

**B.    Plaintiff A.J., a minor, by and through their parent and guardian ad litem, Alexis Douglas**

267. This action is brought on A.J.'s behalf by Plaintiff Alexis Douglas.

268. During the Class Period, A.J. created and used a TikTok account (while under the age of 13) and viewed content on the TikTok platform.

269. A.J. created a TikTok account when A.J. was approximately 10 years old.

65

270. During the Class Period, Defendants collected A.J.'s Private Information for the purpose of tracking A.J.'s activity and utilizing targeted advertisements.

271. During the Class Period, the information that Defendants collected for the purpose of tracking A.J.'s activity and utilizing targeted advertisements included the videos A.J. watched on the TikTok platform, the time A.J. spent watching each video, and A.J.'s time spent on the TikTok platform. TikTok combined this information with persistent identifiers as part of A.J.'s user profile.

272. TikTok collected A.J.'s activity on the platform, including A.J.'s comments, direct messages, "likes and favorites", posts, recently deleted posts, login history, search history, share history, watch history, and browsing history on TikTok Shop. TikTok also collected A.J.'s "Off TikTok Activity".

273. TikTok collected information about A.J.'s profile, including A.J.'s name, followers list, following list, profile photo, username, telephone number, and "bio description."

274. TikTok collected information from A.J.'s account that made it clear that A.J. was under 13 years old.

275. Defendants are maintaining or are able to generate a DYD file containing part, but not all, of the information they collect about A.J.

276. Defendants never obtained consent from nor notified A.J.'s parent and legal guardian, Alexis Douglas, at any point prior to or during their collection and use of A.J.'s Private Information.

277. Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting personal information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

278. A.J. is likely to use TikTok in the future and seeks protection from Defendants' continuing violations of COPPA protections.

**C.    Plaintiff B.M., a minor, by and through their parent and guardian ad litem, Marcelo Muto**

279.    This action is brought on B.M.'s behalf by Plaintiff Marcelo Muto.

280.    During the Class Period, B.M. created and used a Musical.ly account (while under the age of 13) that was later transferred to a TikTok account. B.M. viewed content on the TikTok platform.

281.    B.M. created a TikTok account when B.M. was no older than 12 years old.

282.    During the Class Period, Defendants collected B.M.'s Private Information for the purpose of tracking B.M.'s activity and utilizing targeted advertisements.

283.    During the Class Period, the information that Defendants collected for the purpose of tracking B.M.'s activity and utilizing targeted advertisements included the videos B.M. watched on the TikTok platform, the time B.M. spent watching each video, and B.M.'s time spent on the TikTok platform. TikTok combined this information with persistent identifiers as part of B.M.'s user profile.

284.    Defendants are maintaining or are able to generate a DYD file containing part, but not all, of the information they collect about B.M.

285.    Defendants never obtained consent from nor notified B.M.'s parent and legal guardian, Marcelo Muto, at any point prior to or during their collection and use of B.M.'s Private Information.

286.    Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting personal information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

287.    B.M. is likely to use TikTok in the future and seeks protection from Defendants' continuing violations of COPPA protections.

**D.    Plaintiff S.T., a minor, by and through their parent, Samuel Tsou**

288.    This action is brought on S.T.'s behalf by Plaintiff Samuel Tsou.

289.    During the Class Period, S.T. created and used a Kids Mode account (while under the age of 13). S.T. viewed content on the TikTok platform authorized for users

under 13.

290.   S.T. created a Kids Mode TikTok account when S.T. was 12 years old.

291.   During the Class Period, Defendants collected S.T.'s Kids Mode Private Information for the purpose of tracking S.T.'s activity.

292.   During the Class Period, the information that Defendants collected for the purpose of tracking S.T.'s activity and utilizing targeted advertisements included the videos S.T. watched on the TikTok platform, the time S.T. spent watching each video, and S.T.'s time spent on the TikTok platform. TikTok combined this information with persistent identifiers as part of S.T.'s user profile.

293.   Defendants are maintaining or are able to generate a DYD file containing part, but not all, of the information they collect about S.T.

294.   Defendants never obtained consent from nor notified S.T.'s parent, Samuel Tsou, at any point prior to or during their collection and use of S.T.'s Kids Mode Private Information.

295.   Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting personal information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

296.   S.T. is likely to use TikTok in the future and seeks protection from Defendants' continuing violations of COPPA protections.

**E.    Plaintiff J.C., a minor, by and through their parent and guardian ad litem, Jody Villanueva**

297.   This action is brought on J.C.'s behalf by Plaintiff Jody Villanueva.

298.   During the Class Period, J.C. created and used TikTok accounts (while under the age of 13) and viewed content on the TikTok platform.

299.   J.C. created a TikTok account when J.C. was approximately 8 years old.

300.   During the Class Period, Defendants collected J.C.'s Private Information for the purpose of tracking J.C.'s activity and utilizing targeted advertisements.

301.   During the Class Period, the information that Defendants collected for the purpose of tracking J.C.'s activity and utilizing targeted advertisements included the videos B.M. watched on the TikTok platform, the time J.C. spent watching each video, and J.C.'s time spent on the TikTok platform. TikTok combined this information with persistent identifiers as part of J.C.'s user profile.

302.   TikTok collected J.C.'s activity on the platform, including J.C.'s comments, direct messages, "likes and favorites", posts, recently deleted posts, login history, search history, share history, and watch history.

303.   TikTok also collected information about J.C.'s profile, including J.C.'s blocked users list, followers list, following list, profile photo, username, telephone number, and "bio description."

304.   TikTok collected information from J.C.'s account that made it clear that J.C. was under 13 years old, including the following search history:

```
Date: 2024-11-29 22:30:14
Search Term: 12 tou old makesup

Date: 2024-11-29 22:29:17
Search Term: 12 tou old makesup

Date: 2024-11-29 22:28:49
Search Term: 12 yr old girl trends

Date: 2024-11-29 22:28:34
Search Term: 12 yr old firl frends
```

305.   Defendants are maintaining or are able to generate a DYD file containing part, but not all, of the information they collect about J.C.

306.   Defendants never obtained consent from nor notified J.C.'s parent and legal guardian, Jody Villanueva, at any point prior to or during their collection and use of J.C.'s Private Information.

307.   Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting personal information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through

investigation.

308. J.C. is likely to use TikTok in the future and seeks protection from Defendants' continuing violations of COPPA protections.

**F.    Plaintiff L.F., a minor, by and through their parent and guardian ad litem, Heather Bresette**

309. This action is brought on L.F.'s behalf by Plaintiff Heather Bresette.

310. During the Class Period, L.F. created and used a TikTok Account (while under the age of 13) and viewed content on the TikTok platform.

311. L.F. created a TikTok account when L.F. was approximately 11 or 12 years old.

312. During the Class Period, Defendants collected L.F.'s Private Information for the purpose of tracking L.F.'s activity and utilizing targeted advertisements.

313. During the Class Period, the information that Defendants collected for the purpose of tracking L.F.'s activity and utilizing targeted advertisements included the videos L.F. watched on the TikTok platform, the time L.F. spent watching each video, and L.F.'s time spent on the TikTok platform. TikTok combined this information with persistent identifiers as part of J.C.'s user profile.

314. Defendants are maintaining or are able to generate a DYD file containing part, but not all, of the information they collect about L.F.

315. Defendants never obtained consent from nor notified L.F.'s parent and legal guardian, Heather Bresette, at any point prior to or during their collection and use of L.F.'s Private Information.

316. Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting personal information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

317. L.F. is likely to use TikTok in the future and seeks protection from Defendants' continuing violations of COPPA protections.

**G.      Plaintiff D.G., a minor, by and through their parent, Kristy Bradley**

318.    This action is brought on D.G.'s behalf by Plaintiff Kristy Bradley.

319.    During the Class Period, D.G. created and used a Musical.ly Account (while under the age of 13) that was later transferred to a TikTok account. D.G. viewed content on the TikTok platform.

320.    D.G. created a Musical.ly account when D.G. was approximately 3 or 4 years old.

321.    During the Class Period, Defendants collected D.G.'s Private Information for the purpose of tracking D.G.'s activity and utilizing targeted advertisements.

322.    During the Class Period, the information that Defendants collected for the purpose of tracking D.G.'s activity and utilizing targeted advertisements included the videos D.G. watched on the TikTok platform, the time D.G. spent watching each video, and D.G.'s time spent on the TikTok platform. TikTok combined this information with persistent identifiers as part of D.G.'s user profile.

323.    Defendants are maintaining or are able to generate a DYD file containing part, but not all, of the information they collect about D.G.

324.    Defendants never obtained consent from nor notified D.G.'s parent and legal guardian, Kristy Bradley, at any point prior to or during their collection and use of D.G.'s Private Information.

325.    Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting personal information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

326.    D.G. is likely to use TikTok in the future and seeks protection from Defendants' continuing violations of COPPA protections.

**H.      Plaintiff D.M., a minor, by and through their parent and guardian ad litem, Darryl Maultsby**

327.    This action is brought on D.M.'s behalf by Plaintiff Darryl Maultsby.

71

328.    During the Class Period, D.M. created and used a TikTok Account (while under the age of 13) and viewed content on the TikTok platform.

329.    D.M. created a TikTok account when D.M. was under 11 years old.

330.    During the Class Period, Defendants collected D.M.'s Private Information for the purpose of tracking D.M.'s activity and utilizing targeted advertisements.

331.    During the Class Period, the information that Defendants collected for the purpose of tracking D.M.'s activity and utilizing targeted advertisements included the videos D.M. watched on the TikTok platform, the time D.M. spent watching each video, and D.M.'s time spent on the TikTok platform. TikTok combined this information with persistent identifiers as part of D.M.'s user profile.

332.    Defendants are maintaining or are able to generate a DYD file containing part, but not all, of the information they collect about D.M.

333.    Defendants never obtained consent from nor notified D.M.'s parent and legal guardian, Darryl Maultsby, at any point prior to or during their collection and use of D.M.'s Private Information.

334.    Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting personal information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

335.    D.M. is likely to use TikTok in the future and seeks protection from Defendants' continuing violations of COPPA protections.

**I.    Plaintiff E.B., a minor, by and through their parent, Ebony Baker**

336.    This action is brought on E.B.'s behalf by Plaintiff Ebony Baker.

337.    During the Class Period, E.B. created and used a TikTok account (while under the age of 13) and viewed content on the TikTok platform.

338.    E.B. created a TikTok account when E.B. was approximately 6 years old.

339.    During the Class Period, Defendants collected E.B.'s Private Information for the purpose of tracking E.B.'s activity.

340. During the Class Period, the information that Defendants collected for the purpose of tracking E.B.'s activity and utilizing targeted advertisements included the videos E.B. watched on the TikTok platform, the time E.B. spent watching each video, and E.B.'s time spent on the TikTok platform. TikTok combined this information with persistent identifiers as part of E.B.'s user profile.

341. Defendants are maintaining or are able to generate a DYD file containing part, but not all, of the information they collect about E.B.

342. Defendants never obtained consent from nor notified E.B.'s parent, Ebony Baker, at any point prior to or during their collection and use of E.B.'s Private Information.

343. Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting personal information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

344. E.B. is likely to use TikTok in the future and seeks protection from Defendants' continuing violations of COPPA protections.

**J.      Plaintiff A.K., a minor, by and through their parent, Katherine Knight**

345. This action is brought on A.K.'s behalf by Plaintiff Katherine Knight.

346. During the Class Period, A.K. created and used a TikTok account (while under the age of 13) and viewed content on the TikTok platform.

347. A.K. created a TikTok account when A.K. was approximately 6 years old.

348. During the Class Period, Defendants collected A.K.'s Private Information for the purpose of tracking A.K.'s activity.

349. During the Class Period, the information that Defendants collected for the purpose of tracking A.K.'s activity and utilizing targeted advertisements included the videos A.K. watched on the TikTok platform, the time A.K. spent watching each video, and A.K.'s time spent on the TikTok platform. TikTok combined this information with persistent identifiers as part of A.K.'s user profile.

73

350. Defendants are maintaining or are able to generate a DYD file containing part, but not all, of the information they collect about A.K.

351. Defendants never obtained consent from nor notified A.K.'s parent, Katherine Knight, at any point prior to or during their collection and use of A.K.'s Private Information.

352. Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting personal information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

353. A.K. is likely to use TikTok in the future and seeks protection from Defendants' continuing violations of COPPA protections.

**K.     Plaintiff J.S., a minor, by and through their parent, Kiara Dennis**

354. This action is brought on J.S.'s behalf by Plaintiff Kiara Dennis.

355. During the Class Period, J.S. created and used a TikTok account (while under the age of 13) and viewed content on the TikTok platform.

356. J.S. created a TikTok account when J.S. was approximately 11 years old.

357. During the Class Period, Defendants collected J.S.'s Private Information for the purpose of tracking J.S.'s activity.

358. During the Class Period, the information that Defendants collected for the purpose of tracking J.S.'s activity and utilizing targeted advertisements included the videos J.S. watched on the TikTok platform, the time J.S. spent watching each video, and J.S.'s time spent on the TikTok platform. TikTok combined this information with persistent identifiers as part of J.S.'s user profile.

359. TikTok collected J.S.'s activity on the platform, including J.S.'s comments, direct messages, "likes and favorites", posts, recently deleted posts, login history, search history, share history, watch history, and browsing history on TikTok Shop.

360. TikTok collected information about J.S.'s profile, including J.S.'s followers list, following list, profile photo, username, and email address.

74

361. Defendants are maintaining or are able to generate a DYD file containing part, but not all, of the information they collect about J.S.

362. Defendants never obtained consent from nor notified J.S.'s parent, Kiara Dennis, at any point prior to or during their collection and use of J.S.'s Private Information.

363. Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting personal information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

364. J.S. is likely to use TikTok in the future and seeks protection from Defendants' continuing violations of COPPA protections.

**L.     Plaintiff T.W., a minor, by and through their parent, Rachel Smith**

365. This action is brought on T.W.'s behalf by Plaintiff Rachel Smith.

366. During the Class Period, T.W. created and used a TikTok account (while under the age of 13) and viewed content on the TikTok platform.

367. T.W. created a TikTok account when T.W. was approximately 9 years old.

368. During the Class Period, Defendants collected D.P.'s Private Information for the purpose of tracking T.W.'s activity.

369. During the Class Period, the information that Defendants collected for the purpose of tracking T.W.'s activity and utilizing targeted advertisements included the videos T.W. watched on the TikTok platform, the time T.W. spent watching each video, and T.W.'s time spent on the TikTok platform. TikTok combined this information with persistent identifiers as part of T.W.'s user profile.

370. Defendants are maintaining or are able to generate a DYD file containing part, but not all, of the information they collect about T.W.

371. Defendants never obtained consent from nor notified T.W.'s parent, Rachel Smith, at any point prior to or during their collection and use of T.W.'s Private Information.

372. Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting personal information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

373. T.W. is likely to use TikTok in the future and seeks protection from Defendants' continuing violations of COPPA protections.

**M.     Plaintiff G.A., a minor, by and through their parent, Leyna Midkiff**

374. This action is brought on G.A.'s behalf by Plaintiff Leyna Midkiff.

375. During the Class Period, G.A. created and used a TikTok account (while under the age of 13) and viewed content on the TikTok platform.

376. G.A. created a TikTok account when G.A. was approximately 12 years old.

377. During the Class Period, Defendants collected G.A.'s Private Information for the purpose of tracking G.A.'s activity and utilizing targeted advertisements.

378. During the Class Period, the information that Defendants collected for the purpose of tracking G.A.'s activity and utilizing targeted advertisements included the videos G.A. watched on the TikTok platform, the time G.A. spent watching each video, and G.A.'s time spent on the TikTok platform. TikTok combined this information with persistent identifiers as part of G.A.'s user profile.

379. Defendants are maintaining or are able to generate a DYD file containing part, but not all, of the information they collect about G.A.

380. Defendants never obtained consent from nor notified G.A.'s parent, Leyna Midkiff, at any point prior to or during their collection and use of G.A.'s Private Information.

381. Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting personal information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

382. G.A. is likely to use TikTok in the future and seeks protection from

Defendants' continuing violations of COPPA protections.

**N.      Plaintiff C.H., a minor, by and through their parent, Arthur Henry**

383.    This action is brought on C.H.'s behalf by Plaintiff Arthur Henry.

384.    During the Class Period, C.H. created and used a TikTok account (while under the age of 13) and viewed content on the TikTok platform.

385.    C.H. created a TikTok account when C.H. was approximately 9 years old.

386.    During the Class Period, Defendants collected D.P.'s Private Information for the purpose of tracking C.H.'s activity.

387.    During the Class Period, the information that Defendants collected for the purpose of tracking C.H.'s activity and utilizing targeted advertisements included the videos C.H. watched on the TikTok platform, the time C.H. spent watching each video, and C.H.'s time spent on the TikTok platform. TikTok combined this information with persistent identifiers as part of C.H.'s user profile.

388.    Defendants are maintaining or are able to generate a DYD file containing part, but not all, of the information they collect about C.H.

389.    Defendants never obtained consent from nor notified C.H.'s parent, Arthur Henry, at any point prior to or during their collection and use of C.H.'s Private Information.

390.    Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting personal information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

391.    C.H. is likely to use TikTok in the future and seeks protection from Defendants' continuing violations of COPPA protections.

**O.      Plaintiff M.B., a minor, by and through their parent, Lynette Bouie**

392.    This action is brought on M.B.'s behalf by Plaintiff Lynette Bouie.

393.    During the Class Period, M.B. created and used a TikTok account (while under the age of 13) and viewed content on the TikTok platform.

394. M.B. created a TikTok account when M.B. was approximately 10 years old.

395. During the Class Period, Defendants collected M.B.'s Private Information for the purpose of tracking M.B.'s activity and utilizing targeted advertisements.

396. During the Class Period, the information that Defendants collected for the purpose of tracking M.B.'s activity and utilizing targeted advertisements included the videos M.B. watched on the TikTok platform, the time M.B. spent watching each video, and M.B.'s time spent on the TikTok platform. TikTok combined this information with persistent identifiers as part of M.B.'s user profile.

397. Defendants are maintaining or are able to generate a DYD file containing part, but not all, of the information they collect about M.B.

398. Defendants never obtained consent from nor notified M.B.'s parent, Lynette Bouie, at any point prior to or during their collection and use of M.B.'s Private Information.

399. Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting personal information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

400. M.B. is likely to use TikTok in the future and seeks protection from Defendants' continuing violations of COPPA protections.

**P.    Plaintiff J.H., a minor, by and through their parent, Tranay Holloway**

401. This action is brought on J.H.'s behalf by Plaintiff Tranay Holloway.

402. During the Class Period, J.H. created and used a TikTok account (while under the age of 13) and viewed content on the TikTok platform.

403. J.H. created a TikTok account when J.H. was approximately 8 years old.

404. During the Class Period, Defendants collected J.H.'s Private Information for the purpose of tracking J.H.'s activity and utilizing targeted advertisements.

405. During the Class Period, the information that Defendants collected for the

78

purpose of tracking J.H.'s activity and utilizing targeted advertisements included the videos J.H. watched on the TikTok platform, the time J.H. spent watching each video, and J.H.'s time spent on the TikTok platform. TikTok combined this information with persistent identifiers as part of J.H.'s user profile.

406. Defendants are maintaining or are able to generate a DYD file containing part, but not all, of the information they collect about J.H.

407. Defendants never obtained consent from nor notified J.H.'s parent, Tranay Holloway, at any point prior to or during their collection and use of J.H.'s Private Information.

408. Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting personal information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

409. J.H. is likely to use TikTok in the future and seeks protection from Defendants' continuing violations of COPPA protections.

**Q.    Plaintiffs A.A.A., A.B.A., and E.A., minors, by and through their parent, Kelly Lynn Addis**

410. This is brought on A.A.A., A.B.A., and E.A.'s behalf by Plaintiff Kelly Lynn Addis.

411. During the Class Period, A.A.A., A.B.A., and E.A. created and used TikTok accounts (while under the age of 13) and viewed content on the TikTok platform.

412. A.A.A. created a TikTok account when A.A.A. was approximately 11 years old. A.B.A. created a TikTok account when A.B.A. was approximately 9 years old. E.A. created a TikTok account when E.A. was approximately 9 years old.

413. During the Class Period, Defendants collected A.A.A., A.B.A., and E.A.'s Private Information for the purpose of tracking A.A.A., A.B.A., and E.A.'s activity and utilizing targeted advertisements.

414.    During the Class Period, the information that Defendants collected for the purpose of tracking A.A.A., A.B.A., and E.A.'s activity and utilizing targeted advertisements included the videos A.A.A., A.B.A., and E.A. watched on the TikTok platform, the time A.A.A., A.B.A., and E.A. spent watching each video, and A.A.A., A.B.A., and E.A.'s time spent on the TikTok platform. TikTok combined this information with persistent identifiers as part of A.A.A., A.B.A., and E.A.'s user profiles.

415.    Defendants are maintaining or are able to generate DYD files containing part, but not all, of the information they collect about A.A.A., A.B.A., and E.A.

416.    Defendants never obtained consent from nor notified A.A.A., A.B.A., and E.A.'s parent, Kelly Lynn Addis, at any point prior to or during their collection and use of A.A.A., A.B.A., and E.A.'s Private Information.

417.    Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting personal information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

418.    A.A.A., A.B.A., and E.A. are likely to use TikTok in the future and seek protection from Defendants' continuing violations of COPPA protections.

**R.    Plaintiff K.M., a minor, by and through their parent, Dakota Moody**

419.    This action is brought on K.M.'s behalf by Plaintiff Dakota Moody.

420.    During the Class Period, K.M. created and used a TikTok account (while under the age of 13) and viewed content on the TikTok platform.

421.    K.M. created a TikTok account when K.M. was approximately 10 years old.

422.    During the Class Period, Defendants collected K.M.'s Private Information for the purpose of tracking K.M.'s activity and utilizing targeted advertisements.

423.    During the Class Period, the information that Defendants collected for the purpose of tracking K.M.'s activity and utilizing targeted advertisements included the

80

videos K.M. watched on the TikTok platform, the time K.M. spent watching each video, and K.M.'s time spent on the TikTok platform. TikTok combined this information with persistent identifiers as part of K.M.'s user profile.

424. Defendants are maintaining or are able to generate a DYD file containing part, but not all, of the information they collect about K.M.

425. Defendants never obtained consent from nor notified K.M.'s parent, Dakota Moody, at any point prior to or during their collection and use of K.M.'s Private Information.

426. Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting personal information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

427. K.M. is likely to use TikTok in the future and seeks protection from Defendants' continuing violations of COPPA protections.

**S.    Plaintiff A.L., a minor, by and through their parent, Tatum Dunne**

428. This action is brought on A.L.'s behalf by Plaintiff Tatum Dunne.

429. A.L. created a TikTok account when A.L. was approximately 7 or 8 years old.

430. During the Class Period, Defendants collected A.L.'s Private Information for the purpose of tracking A.L.'s activity and utilizing targeted advertisements.

431. During the Class Period, the information that Defendants collected for the purpose of tracking A.L.'s activity and utilizing targeted advertisements included the videos A.L. watched on the TikTok platform, the time A.L. spent watching each video, and A.L.'s time spent on the TikTok platform. TikTok combined this information with persistent identifiers as part of A.L.'s user profile.

432. Defendants are maintaining or are able to generate a DYD file containing part, but not all, of the information they collect about A.L.

433. Defendants never obtained consent from nor notified A.L.'s parent, Tatum

Dunne, at any point prior to or during their collection and use of A.L.'s Private Information.

434. Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting personal information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

435. A.L. is likely to use TikTok in the future and seeks protection from Defendants' continuing violations of COPPA protections.

**T.    Plaintiff A.B., a minor, by and through their parent, Christina Middleton**

436. This action is brought on A.B.'s behalf by Plaintiff Christina Middleton.

437. A.B. created a TikTok account when A.B. was approximately 7 or 8 years old.

438. During the Class Period, Defendants collected A.B.'s Private Information for the purpose of tracking A.B.'s activity and utilizing targeted advertisements.

439. During the Class Period, the information that Defendants collected for the purpose of tracking A.B.'s activity and utilizing targeted advertisements included the videos A.B. watched on the TikTok platform, the time A.B. spent watching each video, and A.B.'s time spent on the TikTok platform. TikTok combined this information with persistent identifiers as part of A.B.'s user profile.

440. Defendants are maintaining or are able to generate a DYD file containing part, but not all, of the information they collect about A.B.

441. Defendants never obtained consent from nor notified A.B.'s parent and legal guardian, Christina Middleton, at any point prior to or during their collection and use of A.B.'s Private Information.

442. Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting personal information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

82

443.    A.B. is likely to use TikTok in the future and seeks protection from Defendants' continuing violations of COPPA protections.

**U.    Plaintiffs H.J. and N.J., minors, by and through their parent, Amatullah Allen**

444.    This action is brought on H.J. and N.J.'s behalf by Plaintiff Amatullah Allen.

445.    During the Class Period, H.J. and N.J. created and used TikTok accounts (while under the age of 13) and viewed content on the TikTok platform.

446.    H.J. created a TikTok account when H.J. was approximately 10 years old. N.J. created a TikTok account when N.J. was approximately 8 years old.

447.    During the Class Period, Defendants collected H.J. and N.J.'s Private Information for the purpose of tracking H.J. and N.J.'s activity and utilizing targeted advertisements.

448.    During the Class Period, the information that Defendants collected for the purpose of tracking H.J. and N.J.'s activity and utilizing targeted advertisements included the videos H.J. and N.J. watched on the TikTok platform, the time H.J. and N.J. spent watching each video, and H.J. and N.J.'s time spent on the TikTok platform. TikTok combined this information with persistent identifiers as part of H.J. and N.J.'s user profile.

449.    Defendants are maintaining or are able to generate DYD files containing part, but not all, of the information they collect about H.J. and N.J.

450.    Defendants never obtained consent from nor notified H.J. and N.J.'s parent, Amatullah Allen, at any point prior to or during their collection and use of H.J. and N.J.'s Private Information.

451.    Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting personal information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

452.    H.J. and N.J. are likely to use TikTok in the future and seeks protection

from Defendants' continuing violations of COPPA protections.

**V.    Plaintiff I.T., a minor, by and through their parent, Yeni Castro**

453.   This action is brought on I.T.'s behalf by Plaintiff Yeni Castro.

454.   During the Class Period, I.T. created and used a TikTok account (while under the age of 13) and viewed content on the TikTok platform.

455.   I.T. created a TikTok account when I.T. was 7 years old.

456.   During the Class Period, Defendants collected I.T.'s Private Information for the purpose of tracking I.T.'s activity.

457.   During the Class Period, the information that Defendants collected for the purpose of tracking I.T.'s activity and utilizing targeted advertisements included the videos I.T. watched on the TikTok platform, the time I.T. spent watching each video, and I.T.'s time spent on the TikTok platform. TikTok combined this information with persistent identifiers as part of I.T.'s user profile.

458.   Defendants are maintaining or are able to generate a DYD file containing part, but not all, of the information they collect about I.T.

459.   Defendants never obtained consent from nor notified I.T.'s parent, Yeni Castro, at any point prior to or during their collection and use of I.T.'s Private Information.

460.   Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting personal information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

461.   I.T. is likely to use TikTok in the future and seeks protection from Defendants' continuing violations of COPPA protections.

**W.    Plaintiff M.G., a minor, by and through their parent and guardian ad litem, Valerie Gates**

462.   This action is brought on M.G.'s behalf by Plaintiff Valerie Gates.

463.   During the Class Period, M.G. created and used a TikTok account (while

under the age of 13) and viewed content on the TikTok platform.

464.   M.G. created a TikTok account when M.G. was approximately 11 years old.

465.   During the Class Period, Defendants collected M.G.'s Private Information for the purpose of tracking M.G.'s activity and utilizing targeted advertisements.

466.   During the Class Period, the information that Defendants collected for the purpose of tracking M.G.'s activity and utilizing targeted advertisements included the videos M.G. watched on the TikTok platform, the time M.G. spent watching each video, and M.G.'s time spent on the TikTok platform. TikTok combined this information with persistent identifiers as part of M.G.'s user profile.

467.   TikTok collected M.G.'s activity on the platform, including M.G.'s comments, direct messages, "likes and favorites", posts, login history, search history, share history, watch history, and browsing history on TikTok Shop.

468.   TikTok collected information about M.G.'s profile, including M.G.'s followers list, following list, username, email address, telephone number, and "bio description."

469.   TikTok collected information from M.G.'s account that made it clear that M.G. was under 13 years old, including the following search history:

```
{
  "browsing_date": "2025-03-08 15:40:26",
  "shop_name": "kiidcoffee",
  "product_name": "Kiid Coffee Organic Decaf Latte For Kids - No Sugar, Prebiotic Fiber, Vitamins & Minerals - Chocolate, Caramel,
Original - Just Add Milk"
},
{
```

470.   Defendants are maintaining or are able to generate a DYD file containing part, but not all, of the information they collect about M.G.

471.   Defendants never obtained consent from nor notified M.G.'s parent and legal guardian, Valerie Gates, at any point prior to or during their collection and use of M.G.'s Private Information.

472.   Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting personal information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through

investigation.

473.    M.G. is likely to use TikTok in the future and seeks protection from Defendants' continuing violations of COPPA protections.

**X.    Plaintiff V.M., a minor, by and through their parent, Ebony Nielsen**

474.    This action is brought on V.M.'s behalf by Plaintiff Ebony Nielsen.

475.    V.M. created a TikTok account when V.M. was approximately 8 years old.

476.    During the Class Period, Defendants collected V.M.'s Private Information for the purpose of tracking V.M.'s activity and utilizing targeted advertisements.

477.    During the Class Period, the information that Defendants collected for the purpose of tracking V.M.'s activity and utilizing targeted advertisements included the videos V.M. watched on the TikTok platform, the time V.M. spent watching each video, and V.M.'s time spent on the TikTok platform. TikTok combined this information with persistent identifiers as part of V.M.'s user profile.

478.    Defendants are maintaining or are able to generate a DYD file containing part, but not all, of the information they collect about V.M.

479.    Defendants never obtained consent from nor notified V.M.'s parent and legal guardian, Ebony Nielsen, at any point prior to or during their collection and use of V.M.'s Private Information.

480.    Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting personal information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

481.    V.M. is likely to use TikTok in the future and seeks protection from Defendants' continuing violations of COPPA protections.

**Y.    Plaintiff D.P., a minor, by and through their parent, Tammy Padgett**

482.    This action is brought on D.P.'s behalf by Plaintiff Tammy Padgett.

483.    During the Class Period, D.P. created and used a TikTok account (while under the age of 13) and viewed content on the TikTok platform.

86

484.   D.P. created a TikTok account when D.P. was approximately 11 years old.

485.   During the Class Period, Defendants collected D.P.'s Private Information for the purpose of tracking D.P.'s activity.

486.   During the Class Period, the information that Defendants collected for the purpose of tracking D.P.'s activity and utilizing targeted advertisements included the videos D.P. watched on the TikTok platform, the time D.P. spent watching each video, and D.P.'s time spent on the TikTok platform. TikTok combined this information with persistent identifiers as part of D.P.'s user profile.

487.   Defendants are maintaining or are able to generate a DYD file containing part, but not all, of the information they collect about D.P.

488.   Defendants never obtained consent from nor notified D.P.'s parent, Tammy Padgett, at any point prior to or during their collection and use of D.P.'s Private Information.

489.   Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting personal information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

490.   D.P. is likely to use TikTok in the future and seeks protection from Defendants' continuing violations of COPPA protections.

**Z.     Plaintiffs P.B., J.S., and J.F., minors, by and through their parent, Brittany Santisi**

491.   This action is brought on P.B., J.S., and J.F.'s behalf by Plaintiff Brittany Santisi.

492.   During the Class Period, P.B., J.S., and J.F. created and used TikTok accounts (while under the age of 13) and viewed content on the TikTok platform.

493.   P.B. created a TikTok account when P.B. was approximately 11 years old. J.S. created a TikTok account when J.S. was approximately 11 years old. J.F. created a TikTok account when J.F. was approximately 10 years old.

87

494.    During the Class Period, Defendants collected P.B., J.S., and J.F.'s Private Information for the purpose of tracking P.B., J.S., and J.F.'s activity and utilizing targeted advertisements.

495.    During the Class Period, the information that Defendants collected for the purpose of tracking P.B., J.S., and J.F.'s activity and utilizing targeted advertisements included the videos P.B., J.S., and J.F. watched on the TikTok platform, the time P.B., J.S., and J.F. spent watching each video, and P.B., J.S., and J.F.'s time spent on the TikTok platform. TikTok combined this information with persistent identifiers as part of P.B., J.S., and J.F.'s user profiles.

496.    Defendants are maintaining or are able to generate DYD files containing part, but not all, of the information they collect about P.B., J.S., and J.F.

497.    Defendants never obtained consent from nor notified P.B., J.S., and J.F.'s parent and legal guardian, Brittany Santisi, at any point prior to or during their collection and use of P.B., J.S., and J.F.'s Private Information.

498.    Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting personal information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

499.    P.B., J.S., and J.F. are likely to use TikTok in the future and seek protection from Defendants' continuing violations of COPPA protections.

**AA.    Plaintiffs Z.B. and I.B. minors, by and through their parent, Steven Burda**

500.    This action is brought on Z.B. and I.B. behalf by Plaintiff Steven Burda.

501.    Z.B. created a TikTok account when Z.B. was approximately 6 years old. I.B. created a TikTok account when I.B. was approximately 6 years old.

502.    During the Class Period, Defendants collected Z.B. and I.B.'s Private Information for the purpose of tracking Z.B. and I.B. activity and utilizing targeted advertisements.

503.    During the Class Period, the information that Defendants collected for the

88

purpose of tracking Z.B. and I.B.'s activity and utilizing targeted advertisements included the videos Z.B. and I.B. watched on the TikTok platform, the time Z.B. and I.B. spent watching each video, and Z.B. and I.B.'s time spent on the TikTok platform. TikTok combined this information with persistent identifiers as part of Z.B. and I.B.'s user profiles.

504. Defendants are maintaining or are able to generate DYD files containing part, but not all, of the information they collect about Z.B. and I.B.

505. Defendants never obtained consent from nor notified Z.B. and I.B.'s parent and legal guardian, Steven Burda, at any point prior to or during their collection and use of Z.B. and I.B.'s Private Information.

506. Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting personal information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

507. Z.B. and I.B. are likely to use TikTok in the future and seek protection from Defendants' continuing violations of COPPA protections.

**BB.    Plaintiff E.J., a minor, by and through their parent, Elizabeth Jacob**

508. This action is brought on E.J.'s behalf by Plaintiff Elizabeth Jacob.

509. During the Class Period, E.J. created and used a TikTok account (while under the age of 13) and viewed content on the TikTok platform.

510. E.J. created a TikTok account when E.J. was approximately 10 years old.

511. During the Class Period, Defendants collected E.J.'s Private Information for the purpose of tracking E.J.'s activity and utilizing targeted advertisements.

512. During the Class Period, the information that Defendants collected for the purpose of tracking E.J.'s activity and utilizing targeted advertisements included the videos E.J. watched on the TikTok platform, the time E.J. spent watching each video, and E.J.'s time spent on the TikTok platform. TikTok combined this information with persistent identifiers as part of E.J.'s user profile.

513. Defendants are maintaining or are able to generate a DYD file containing part, but not all, of the information they collect about E.J.

514. Defendants never obtained consent from nor notified E.J.'s parent, Elizabeth Jacob, at any point prior to or during their collection and use of E.J.'s Private Information.

515. Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting personal information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

516. E.J. is likely to use TikTok in the future and seeks protection from Defendants' continuing violations of COPPA protections.

**CC. Plaintiffs R.C., B.L.J., and B.R.J., minors, by and through their grandparent and guardian, Shirley Reed-Stallings**

517. This action is brought on R.C., B.L.J., and B.R.J.'s behalf by Plaintiff Shirley Reed-Stallings.

518. During the Class Period, R.C., B.L.J., and B.R.J. created and used TikTok accounts (while under the age of 13) and viewed content on the TikTok platform.

519. R.C. created a TikTok account when R.C. was approximately 7 or 8 years old. B.L.J. created a TikTok account when B.L.J. was approximately 8 or 9 years old. B.R.J. created a TikTok account when B.R.J. was approximately 6 years old.

520. During the Class Period, Defendants collected R.C., B.L.J., and B.R.J.'s Private Information for the purpose of tracking R.C., B.L.J., and B.R.J.'s activity and utilizing targeted advertisements.

521. During the Class Period, the information that Defendants collected for the purpose of tracking R.C., B.L.J., and B.R.J.'s activity and utilizing targeted advertisements included the videos R.C., B.L.J., and B.R.J. watched on the TikTok platform, the time R.C., B.L.J., and B.R.J. spent watching each video, and R.C., B.L.J., and B.R.J.'s time spent on the TikTok platform. TikTok combined this information with

90

persistent identifiers as part of R.C., B.L.J., and B.R.J.'s user profiles.

522.    Defendants are maintaining or are able to generate DYD files containing part, but not all, of the information they collect about R.C., B.L.J., and B.R.J.

523.    Defendants never obtained consent from nor notified R.C., B.L.J., and B.R.J.'s grandparent and legal guardian, Shirley Reed-Stallings, at any point prior to or during their collection and use of R.C., B.L.J., and B.R.J.'s Private Information.

524.    Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting personal information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

525.    R.C., B.L.J., and B.R.J. are likely to use TikTok in the future and seek protection from Defendants' continuing violations of COPPA protections.

**DD.    Plaintiff K.F., a minor, by and through their parent and guardian ad litem, Angela Faucett**

526.    This action is brought on K.F.'s behalf by Plaintiff Angela Faucett.

527.    During the Class Period, K.F. created and used a TikTok account (while under the age of 13) and viewed content on the TikTok platform.

528.    K.F. created a TikTok account when K.F. was approximately 9 or 10 years old.

529.    During the Class Period, Defendants collected K.F.'s Private Information for the purpose of tracking K.F.'s activity and utilizing targeted advertisements.

530.    During the Class Period, the information that Defendants collected for the purpose of tracking K.F.'s activity and utilizing targeted advertisements included the videos K.F. watched on the TikTok platform, the time K.F. spent watching each video, and K.F.'s time spent on the TikTok platform. TikTok combined this information with persistent identifiers as part of K.F.'s user profile.

531.    TikTok collected K.F.'s activity on the platform, including K.F.'s comments, direct messages, "likes and favorites", posts, login history, search history,

share history, watch history, and browsing history on TikTok Shop. TikTok also collected K.F.'s "Off TikTok Activity".

532. TikTok collected information about K.F.'s profile, including K.F.'s name, followers list, following list, profile photo, username, telephone number, email address, and "bio description."

533. TikTok collected information from K.F.'s account that made it clear that K.F. was under 13 years old, including the following comment:

```
        },
        {
          "date": "2021-11-25 08:45:55",
          "comment": "be my bestay I love charli I have my own fp in fact my @chrz...br0wni3 and I'm 11 years old and I love the show and movies
Chucky :)",
          "photo": "N/A",
          "url": ""
        },
```

534. Defendants are maintaining or are able to generate a DYD file containing part, but not all, of the information they collect about K.F.

535. Defendants never obtained consent from nor notified K.F.'s parent and legal guardian, Angela Faucett, at any point prior to or during their collection and use of K.F.'s Private Information.

536. Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting personal information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

537. K.F. is likely to use TikTok in the future and seeks protection from Defendants' continuing violations of COPPA protections.

**EE.  Plaintiff J.W., a minor, by and through their parent and guardian ad litem, Kayla Jaramillo**

538. This action is brought on J.W.'s behalf by Plaintiff Kayla Jaramillo.

539. During the Class Period, J.W. created and used TikTok accounts (while under the age of 13) and viewed content on the TikTok platform.

540. J.W. created a TikTok account when J.W. was approximately 10 years old.

541. During the Class Period, Defendants collected J.W.'s Private Information for the purpose of tracking J.W.'s activity and utilizing targeted advertisements.

92

542.   During the Class Period, the information that Defendants collected for the purpose of tracking J.W.'s activity and utilizing targeted advertisements included the videos J.W. watched on the TikTok platform, the time J.W. spent watching each video, and J.W.'s time spent on the TikTok platform. TikTok combined this information with persistent identifiers as part of J.W.'s user profile.

543.   TikTok collected J.W.'s activity on the platform, including J.W.'s comments, direct messages, "likes and favorites", posts, recently deleted posts, login history, search history, share history, watch history, and browsing history on TikTok Shop. TikTok also collected J.W.'s "Off TikTok Activity".

544.   TikTok collected information about J.W.'s profile, including J.W.'s followers list, following list, profile photo, username, email address, and "bio description."

545.   Defendants are maintaining or are able to generate a DYD file containing part, but not all, of the information they collect about J.W.

546.   Defendants never obtained consent from nor notified J.W.'s parent and legal guardian, Kayla Jaramillo, at any point prior to or during their collection and use of J.W.'s Private Information.

547.   Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting personal information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

548.   J.W. is likely to use TikTok in the future and seeks protection from Defendants' continuing violations of COPPA protections.

**FF.   Plaintiffs B.S. and A.S., minors, by and through their parent and guardian ad litem, Jennifer Seputis**

549.   This action is brought on B.S. and A.S.'s behalf by Plaintiff Jennifer Seputis.

550.   During the Class Period, B.S. and A.S. created and used TikTok accounts

(while under the age of 13) and viewed content on the TikTok platform.

551. B.S. created a TikTok account when B.S. was approximately 10 years old. A.S. created a TikTok account when A.S. was approximately 8 years old.

552. During the Class Period, Defendants collected B.S. and A.S.'s Private Information for the purpose of tracking B.S. and A.S.'s activity.

553. During the Class Period, the information that Defendants collected for the purpose of tracking B.S. and A.S.'s activity and utilizing targeted advertisements included the videos B.S. and A.S. watched on the TikTok platform, the time B.S. and A.S. spent watching each video, and B.S. and A.S.'s time spent on the TikTok platform. TikTok combined this information with persistent identifiers as part of B.S. and A.S.'s user profiles.

554. Defendants are maintaining or are able to generate DYD files containing part, but not all, of the information they collect about B.S. and A.S.

555. Defendants never obtained consent from nor notified B.S. and A.S.'s parent and legal guardian, Jennifer Seputis, at any point prior to or during their collection and use of B.S. and A.S.'s Private Information.

556. Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from collecting personal information from children under the age of 13, and therefore this conduct could not have reasonably been discovered earlier through investigation.

557. B.S. and A.S. are likely to use TikTok in the future and seek protection from Defendants' continuing violations of COPPA protections.

## VI. TOLLING, ESTOPPEL AND RELATION BACK

### A. Discovery Rule Tolling

558. Plaintiffs and the Classes had no way of knowing about Defendants' conduct with respect to the collection and impermissible and unauthorized use of, and profit from, the Private Information and Kids Mode Private Information of Plaintiffs and the Members of the Classes.

94

559. Neither Plaintiffs nor any other Members of the Classes, through the exercise of reasonable diligence, could have discovered the conduct alleged herein as Defendants purported to be abiding by the terms of a Permanent Injunction that prohibited the subject conduct. Further, Plaintiffs and the Members of the Classes did not discover and did not know of facts that would have caused a reasonable person to suspect that Defendants were engaged in the conduct alleged herein.

560. For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims asserted by Plaintiffs and the Classes.

**B.    Tolling of Statute of Limitations**

561. By failing to provide notice of the collection and use of the Private Information and Kids Mode Private Information and obtain verifiable consent, in violation of COPPA and societal norms and conventions, Defendants concealed their conduct and the existence of the claims asserted herein from Plaintiffs and the Members of the Classes.

562. Upon information and belief, Defendants intended by their acts to conceal the facts and claims from Plaintiffs and Members of the Classes. Plaintiffs and the Members of the Classes were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendants' conduct. For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiffs or Members of the Classes should be tolled.

**C.    Estoppel**

563. Despite their duties and obligations under COPPA and the 2019 Permanent Injunction, Defendants failed to provide notice of the collection and use of the personal information and obtain verifiable consent in breach and violation thereof.

564. Defendants therefore are estopped from relying on any statutes of limitations in defense of this action.

95

## VII.   CLASS ACTION ALLEGATIONS

565.   Plaintiffs re-allege and incorporate by reference all of the above allegations.

566.   The Class Period is defined as March 28, 2019 to the present.

567.   Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) with respect to the following Classes.

568.   Excluded from the Classes are: (a) any Judge or Magistrate Judge presiding over this action and Members of their staff, as well as Members of their families; (b) Defendants and Defendants' predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendant or its parents have a controlling interest, as well as Defendants' current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Class; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) counsel for Plaintiffs and Defendants; and (f) the legal representatives, successors, and assigns of any such excluded persons.

### A.   Multistate Intrusion Upon Seclusion Class

569.   Plaintiffs G.K., D.K., A.J., B.M., S.T., J.C., L.F., E.B., A.K., J.S., T.W., C.H., M.B., K.M., A.L., A.B., H.J., N.J., D.P., P.B., J.S., J.F., Z.B., I.B., E.J., R.C., B.L.J., B.R.J., K.F., and J.W., by and through their respective parents and guardians ("Multistate Intrusion Upon Seclusion Plaintiffs"), seek class certification for the common law claim of intrusion upon seclusion under the substantially similar laws of Arizona, California, Connecticut, Georgia, Illinois, Louisiana, Maryland, Minnesota, Missouri, New Jersey, North Carolina, Ohio, Pennsylvania, Tennessee, Texas,  and Washington, on behalf of a Multistate Intrusion Upon Seclusion Class defined as follows:

> All persons residing in Arizona, California, Connecticut, Georgia, Illinois, Louisiana, Maryland, Minnesota, Missouri, New Jersey, North Carolina, Ohio, Pennsylvania, Tennessee, Texas,  and Washington (who were younger than 13 years old when they used TikTok) from whom Defendants collected and/or used Private Information and Kids Mode Private Information during the Class Period

without first notifying their parents and obtaining verified parental consent beforehand.

570. Alternatively, Plaintiffs G.K., D.K., A.J., B.M., S.T., J.C., L.F., E.B., A.K., J.S., T.W., C.H., M.B., K.M., A.L., A.B., H.J., N.J., D.P., P.B., J.S., J.F., Z.B., I.B., E.J., R.C., B.L.J., B.R.J., K.F., and J.W., through their respective parents and guardians, seek class certification for the common law claim of intrusion upon seclusion under the law in the state in which they reside.

**B.    Multistate Unjust Enrichment Class**

571. Plaintiffs G.K., D.K., A.J., B.M., S.T., J.C., L.F., D.G., D.M., E.B., A.K., J.S., T.W., G.A., M.B., J.H., A.A.A., A.B.A., E.A., K.M., A.L., A.B., H.J., N.J., I.T., M.G., V.M., D.P., P.B., J.S., J.F., Z.B., I.B., E.J., K.F., and J.W., by and through their respective parents and guardians ("Multistate Unjust Enrichment Plaintiffs") seek class certification of an unjust enrichment class under the substantially similar laws of Arizona, California, Connecticut, Florida, Georgia, Illinois, Indiana, Maryland, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Tennessee, Washington, and Wisconsin, on behalf of a Multistate Unjust Enrichment Class defined as follows:

> All persons residing in Arizona, California, Connecticut, Florida, Georgia, Illinois, Indiana, Maryland, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Tennessee, Washington, and Wisconsin, (who were younger than 13 years old when they used TikTok) from whom Defendants collected and/or used Private Information and Kids Mode Private Information during the Class Period without first notifying their parents and obtaining verified parental consent beforehand.

572. Alternatively, Plaintiffs G.K., D.K., A.J., B.M., S.T., J.C., L.F., D.G., D.M., E.B., A.K., J.S., T.W., G.A., M.B., J.H., A.A.A., A.B.A., E.A., K.M., A.L., A.B., H.J., N.J., I.T., M.G., V.M., D.P., P.B., J.S., J.F., Z.B., I.B., E.J., K.F., and J.W., by and through their respective parents and guardians, seek class certification for unjust enrichment under the law in the state in which they reside.

97

## C.    State Classes:

### 1.    The California Class

573.    Plaintiffs A.J., B.M., S.T., and J.C., through their respective parents and guardians, seek class certification of a claim for violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, a claim for violation of the State of California Constitution Right to Privacy, as well as a common law claims of negligence, on behalf of a California class defined as follows:

> All persons residing in the State of California (who were younger than 13 years old when they used TikTok) from whom Defendants collected and/or used Private Information and Kids Mode Private Information during the Class Period without first notifying their parents and obtaining verified parental consent beforehand.

### 2.    The Connecticut Class

574.    Plaintiff L.F., through their parent and guardian, seeks class certification for the violation of Connecticut Unfair Trade Practices Act ("CUTPA"), CONN. GEN. STAT. § 42-110b(a) *et seq.*, as well as a common law claim for negligence, on behalf of a Connecticut class defined as follows:

> All persons residing in the State of Connecticut (who were younger than 13 years old when they used TikTok) from whom Defendants collected and/or used Private Information and Kids Mode Private Information during the Class Period without first notifying their parents and obtaining verified parental consent beforehand.

### 3.    The Florida Class

575.    Plaintiffs D.G. and D.M., through their respective parents and guardians, seek class certification for the violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. Ann. § 501.201 *et seq.*, as well as a common law claim of negligence, on behalf of a Florida class defined as follows:

> All persons residing in the State of Florida (who were younger than 13 years old when they used TikTok) from whom Defendants collected and/or used Private Information and Kids Mode Private Information during the Class Period without first notifying their parents and obtaining verified parental consent beforehand.

### 4.    The Georgia Class

576.    Plaintiffs E.B. and A.K., through their respective parents and guardians,

98

seek class certification for the violation of the Georgia Fair Business Practices Act, Ga. Code Ann. § 10-1-390 *et seq.*, as well as a common law claim of negligence, on behalf of a Georgia class defined as follows:

> All persons residing in the State of Georgia (who were younger than 13 years old when they used TikTok) from whom Defendants collected and/or used Private Information and Kids Mode Private Information during the Class Period without first notifying their parents and obtaining verified parental consent beforehand.

### 5.    The Missouri Class

577.    Plaintiffs A.L. and A.B., through their respective parents and guardians, seek class certification for the violation of the Missouri Merchandising Practices Act, as well as a common law claims of negligence, on behalf of a Missouri class defined as follows:

> All persons residing in the State of Missouri (who were younger than 13 years old when they used TikTok) from whom Defendants collected and/or used Private Information and Kids Mode Private Information during the Class Period without first notifying their parents and obtaining verified parental consent beforehand.

### 6.    The New York Class

578.    Plaintiffs I.T., M.G., and V.M., through their respective parents and guardians, seek class certification for the violation of the New York Civil Rights Law §§ 50-51, as well as a common law claim of negligence on behalf of a New York class defined as follows:

> All persons residing in the State of New York (who were younger than 13 years old when they used TikTok) from whom Defendants collected and/or used Private Information and Kids Mode Private Information during the Class Period without first notifying their parents and obtaining verified parental consent beforehand.

### 7.    The Pennsylvania Class

579.    Plaintiffs Z.B. and I.B., through their parent Steven Burda, seek class certification for the violation of the Pennsylvania Unfair Trade Practices Act, as well as a common law claim of negligence, on behalf of a Pennsylvania class defined as follows:

> All persons residing in the State of Pennsylvania (who were younger than 13 years old when they used TikTok) from whom Defendants collected and/or used Private Information and Kids Mode Private Information during the Class Period without first notifying their parents and obtaining verified parental consent beforehand.

### 8.    The Washington Class

580.    Plaintiffs K.F. and J.W., through their respective parents and guardians, seek class certification for the violation of the Washington Consumer Protection Act ("CPA"), Wash. Rev. Code. § 19.86.010 et seq, as well as a common law claim of negligence, on behalf of a Washington class defined as follows:

> All persons residing in the State of Washington (who were younger than 13 years old when they used TikTok) from whom Defendants collected and/or used Private Information and Kids Mode Private Information during the Class Period without first notifying their parents and obtaining verified parental consent beforehand.

581.    Plaintiffs reserve the right to modify or refine any of the Class definitions based upon discovery of new information and in order to accommodate any of the Court's manageability concerns.

582.    Ascertainability. The proposed Classes are readily ascertainable because they are defined using objective criteria so as to allow class Members to determine if they are part of a Class. Further, the Classes can be identified through records maintained by Defendants.

583.    Numerosity (Rule 23(a)(1)). The Classes are so numerous that joinder of individual Members herein is impracticable. The exact number of Members of the Classes, as herein identified and described, is not known, but all public estimates confirm that TikTok has collected information on millions of children.

584.    **Commonality (Rule 23(a)(2)).** Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class Members, including the following:

   a.   Whether Defendants collected the Private Information and Kids Mode Private Information of children under 13;

100

b. Whether Defendants operate a website or online service directed at children under the age of 13 as defined by COPPA;

c. Whether Defendants had knowledge they were collecting the Private Information and Kids Mode Private Information of children under 13;

d. Whether Defendants notified parents as required by COPPA prior to collecting the Private Information and Kids Mode Private Information of children under 13;

e. Whether Defendants obtained verifiable parental consent as required by COPPA prior to collecting the Private Information and Kids Mode Private Information of children under 13;

f. Whether the collection of Private Information and Kids Mode Private Information of children is highly offensive to a reasonable person;

g. Whether the collection of Private Information and Kids Mode Private Information of children without parental consent is sufficiently serious and unwarranted as to constitute an egregious breach of social norms;

h. Whether Defendants' conduct constituted an invasion of privacy based on common law protection against intrusion upon seclusion under the laws of the Multistate Intrusion Upon Seclusion Class.

i. Whether Defendants' conduct constituted a violation of the California Constitution right to privacy;

j. Whether Defendants' conduct constituted a violation of Section 51 of the New York Civil Rights Law;

k. Whether Defendants' conduct was unfair;

l. Whether Defendants' conduct was unlawful;

m. Whether Defendants' conduct violated the consumer protection acts of California, Connecticut, Florida, Georgia, Missouri, Pennsylvania and Washington;

n. Whether Plaintiffs and the Class are entitled to monetary damages and the

measure of those damages;

o. Whether the California Class is entitled to restitution and disgorgement;

p. Whether Defendants were unjustly enriched by their conduct under the laws in the Multistate Unjust Enrichment Class;

q. Whether Plaintiffs are entitled to non-restitutionary disgorgement based on Defendants' unjust enrichment; and

r. Whether Plaintiffs and the Class are entitled to injunctive or other equitable relief.

585. **Typicality (Rule 23(a)(3)).** Plaintiffs' claims are typical of the claims of the other Members of the proposed Classes. Plaintiffs and Members of the Classes (as applicable) suffered an invasion of privacy and injuries as a result of Defendants' wrongful conduct that is uniform across the Classes.

586. **Adequacy (Rule 23(a)(4)).** Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Classes. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interest that is antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Members of the Classes, and they have the resources to do so. Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other Members of the Classes.

587. **Substantial Benefits.** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all Members of the Classes is impracticable. The prosecution of separate actions by individual Members of the Classes would impose heavy burdens upon the Courts and Defendants, would create a risk of inconsistent or varying adjudications of the questions of law and fact common to Members of the Classes, and would be dispositive of the interests of the other Members not parties to the individual adjudications or would substantially impair or impede their

ability to protect their interests. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

588.    Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual Members of the Classes, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

589.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Classes, so that final injunctive relief or corresponding declaratory relief, if any, that may be awarded by the Court is appropriate as to the Classes as a whole. Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

590.    Collectively, the Multistate Intrusion Upon Seclusion Class, the Multistate Unjust Enrichment Class and the State Classes are referred to herein as "the Classes" and their collective membership as the "Members of the Classes."

## VIII.  CLAIMS FOR RELIEF

### CLAIM 1 — MULTISTATE INTRUSION UPON SECLUSION
**(Against All Defendants by Multistate Intrusion Upon Seclusion Plaintiffs)**

591.    The Multistate Intrusion Upon Seclusion Plaintiffs and Members of the Multistate Intrusion Upon Seclusion Class re-allege the foregoing allegations as if fully set forth herein.

592.    Under the laws of the States of Arizona, California, Connecticut, Georgia, Illinois, Louisiana, Maryland, Minnesota, Missouri, New Jersey, North Carolina, Ohio, Pennsylvania, Tennessee, Texas, and Washington, the Multistate Intrusion Upon

Seclusion Plaintiffs and Members of the Multistate Intrusion Upon Seclusion Class assert a claim for intrusion upon seclusion.

593. The Multistate Intrusion Upon Seclusion Plaintiffs and Members of the Multistate Intrusion Upon Seclusion Class possess a legally protected interest in their Private Information and Kids Mode Private Information, including their personal information as defined by COPPA, which includes first and last name, age, email address, phone number, persistent identifiers for the device(s) used to access TikTok, social media account information, and profile image(s), as well as photographs, videos, and audio files containing the user's image and voice and the metadata associated with such media (such as when, where, and by whom the content was created), usage information, device information, location data, image and audio information, metadata, and data from cookies and similar technologies that track users across different websites and platforms.

594. The Multistate Intrusion Upon Seclusion Plaintiffs and Members of the Multistate Intrusion Upon Seclusion Class, maintained a reasonable expectation that when using TikTok, Defendants would not collect and/or use their Private Information and Kids Mode Private Information.

595. The Multistate Intrusion Upon Seclusion Plaintiffs' and Members of the Multistate Intrusion Upon Seclusion Class's reasonable expectation of privacy was supported by COPPA's prohibition on TikTok collecting and/or using personal information from children under 13 years of age unless TikTok directly notified their parents and obtained verifiable parental consent.

596. Defendants intentionally intruded upon the seclusion of the Multistate Intrusion Upon Seclusion Plaintiffs and Members of the Multistate Intrusion Upon Seclusion Class by improperly collecting and using their personal information without obtaining consent.

597. Defendants intentionally intruded upon the Multistate Intrusion Upon Seclusion Plaintiffs' and Members of the Multistate Intrusion Upon Seclusion Class's

seclusion by improperly collecting and using their personal information, without providing direct notice to their parents or obtaining verifiable parental consent, as required by COPPA.

598. Defendants' intrusion upon the seclusion of the Multistate Intrusion Upon Seclusion Plaintiffs and Members of the Multistate Intrusion Upon Seclusion Class was substantial, and would be highly offensive to a reasonable person, constituting an egregious breach of social norms, as is evidenced by consumer surveys, and academic studies detailing the harms of tracking children online, centuries of common law, state and federal statutes and regulations including COPPA and FTC regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, scholarly literature on consumers' reasonable expectations, the fines imposed on TikTok by the FTC, as well as the reforms required by the 2019 Permanent Injunction entered into by TikTok, which it has now been accused of violating.

599. Defendants' intrusion upon the seclusion of the Multistate Intrusion Upon Seclusion Plaintiffs and Members of the Multistate Intrusion Upon Seclusion Class was also substantial and highly offensive to a reasonable person, constituting an egregious breach of social norms because TikTok uses the collected personal information for an improper purpose, including by targeting the Multistate Intrusion Upon Seclusion Plaintiffs and Members of the Multistate Intrusion Upon Seclusion Class with behavioral advertising.

600. None of the Multistate Intrusion Upon Seclusion Plaintiffs, Members of the Multistate Intrusion Upon Seclusion Class, nor their parents and/or guardians consented to Defendants' collection and use of their personal information.

601. The Multistate Intrusion Upon Seclusion Plaintiffs and Members of the Multistate Intrusion Upon Seclusion Class suffered actual and concrete injury as a result of Defendants' intrusion upon their seclusion.

602. The Multistate Intrusion Upon Seclusion Plaintiffs and Members of the Multistate Intrusion Upon Seclusion Class seek appropriate relief for that injury,

including but not limited to damages that will reasonably compensate them for the harm to their privacy interests, risk of future invasions of privacy, restitution, disgorgement of profits made by Defendants as a result of their invasion of the Multistate Intrusion Upon Seclusion Plaintiffs' and Members of the Multistate Intrusion Upon Seclusion Class's privacy, punitive damages, and any other relief that the Court may deem just and proper.

## CLAIM 2 — MULTISTATE UNJUST ENRICHMENT CLAIM
### (Against All Defendants by Multistate Unjust Enrichment Plaintiffs)

603.    The Multistate Unjust Enrichment Plaintiffs and Members of the Multistate Unjust Enrichment Class incorporate and reallege all allegations set forth above.

604.    Under the laws of the States of Arizona, California, Connecticut, Florida, Georgia, Illinois, Indiana, Maryland, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Tennessee, Washington, and Wisconsin, the Multistate Unjust Enrichment Plaintiffs and Members of the Multistate Unjust Enrichment Class assert a claim for unjust enrichment.

605.    By virtue of the unlawful and unfair conduct alleged herein, Defendants have realized millions of dollars in revenue from their collection and use of the Private Information of the Multistate Unjust Enrichment Plaintiffs and Members of the Multistate Unjust Enrichment Class through behavioral advertising and commercialization of Plaintiffs' personal information.

606.    Defendants' ill-gotten gains were monetary benefits conferred upon Defendants by the Multistate Unjust Enrichment Plaintiffs and Members of the Multistate Unjust Enrichment Class. It would be inequitable and unjust to permit any of the Defendants to retain the economic benefits they have obtained through advertising and commercialization derived from the Private Information of the Multistate Unjust Enrichment Plaintiffs and Members of the Multistate Unjust Enrichment Class.

607.    Defendants will be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by the Multistate Unjust Enrichment Plaintiffs and Members of the Multistate Unjust Enrichment Class through their unlawful, unfair,

106

unauthorized, and impermissible use of the Private Information of the Multistate Unjust Enrichment Plaintiffs and Members of the Multistate Unjust Enrichment Class, and allowing Defendants to retain the profits from their unlawful, unauthorized, and impermissible use of the Private Information of the Multistate Unjust Enrichment Plaintiffs and Members of the Multistate Unjust Enrichment Class would be unjust and contrary to public policy.

608. The Multistate Unjust Enrichment Plaintiffs and Members of the Multistate Unjust Enrichment Class are therefore entitled to recover the amounts realized by the Defendants at the expense of the Multistate Unjust Enrichment Plaintiffs and Members of the Multistate Unjust Enrichment Class.

609. Defendants knew and appreciated that they were receiving monetary benefits due to the Multistate Unjust Enrichment Plaintiffs and Members of the Multistate Unjust Enrichment Class having TikTok accounts. Defendants' business model is to monetize TikTok accounts by serving them with targeted behavioral advertising.

610. The Multistate Unjust Enrichment Plaintiffs and Members of the Multistate Unjust Enrichment Class have no adequate remedy at law. They do not seek to recover in this claim for their own economic harm and have no adequate remedy at law that would divest Defendants of their ill-gotten and unjust profits. Furthermore, unjust enrichment is more prompt, efficient, and certain than the monetary damages that Plaintiffs seek.

611. To the extent that money damages, if available, would constitute an adequate remedy at law barring recovery under this claim, the Multistate Unjust Enrichment Plaintiffs and Members of the Multistate Unjust Enrichment Class assert their claim for non-restitutionary disgorgement as an alternative remedy.

612. The Multistate Unjust Enrichment Plaintiffs and Members of the Multistate Unjust Enrichment Class are entitled to non-restitutionary disgorgement of Defendants' ill-gotten gains, and/or the imposition of a constructive trust to recover the amount of

107

Defendants' ill-gotten gains.

## A.    CALIFORNIA CLAIMS

### CLAIM 3 — CALIFORNIA CONSTITUTIONAL RIGHT TO PRIVACY, CAL. CONST. ART. 1, § 1.
### (Against All Defendants by Plaintiffs A.J., B.M., S.T., and J.C., by and through their parents and guardians ad litem, and the California Class)

613.    Plaintiff A.J., a minor, by and through their guardian ad litem, Alexis Douglas, Plaintiff B.M., a minor, by and through their guardian ad litem, Marcelo Muto, S.T., by and through their parent Samuel Tsou, and Plaintiff J.C., a minor, by and through their parent and guardian ad litem, Jody Villanueva and ("California Plaintiffs"), and Members of the California Class re-allege the foregoing allegations as if fully set forth herein.

614.    The California constitution's right to privacy confers a privacy right of action to California Plaintiffs and California Class Members against private entities, such as Defendants.

615.    Article, 1, section 1 of the California Constitution states: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property and pursuing and obtaining safety, happiness, *and privacy*."

616.    The California Plaintiffs and Members of the California Class possess a legally protected interest in their personal information as defined by COPPA, which includes, but is not limited to, first and last name, age, email address, phone number, persistent identifiers for the device(s) used to access TikTok, social media account information, and profile image(s), as well as photographs, videos, and audio files containing the user's image and voice and the metadata associated with such media (such as when, where, and by whom the content was created), usage information, device information, location data, image and audio information, metadata, and data from cookies and similar technologies that track users across different websites and platforms.

108

617.    The California Plaintiffs and Members of the California Class maintained a reasonable expectation of privacy that when using TikTok the Defendants would not collect and/or use their personal information.

618.    The California Plaintiffs and Members of the California Class's reasonable expectation of privacy was supported by COPPA's prohibition on TikTok collecting and/or using personal information from children under 13 years of age unless TikTok directly notified their parents and obtained verifiable parental consent.

619.    Defendants intentionally invaded the California Plaintiffs' and California Class Members' privacy by improperly collecting and using the California Plaintiffs' and California Class Members' personal information, without obtaining consent from the California Plaintiffs and California Class Members.

620.    Defendants intentionally invaded the California Plaintiffs' and California Class Members' privacy by improperly collecting and using the California Plaintiffs' and California Class Members' personal information, without providing direct notice to their parents or obtaining verifiable parental consent, as required by COPPA.

621.    Defendants' invasion of the privacy of the California Plaintiffs and California Class Members was substantial, and would be highly offensive to a reasonable person, constituting an egregious breach of social norms, as is evidenced by consumer surveys, and academic studies detailing the harms of tracking children online, centuries of common law, state and federal statutes and regulations including COPPA and FTC regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, scholarly literature on consumers' reasonable expectations, the fines imposed on TikTok by the FTC, as well as the reforms required by the 2019 Permanent Injunction entered into by TikTok, which it has now been accused of violating.

622.    Defendants' invasion of the privacy of the California Plaintiffs and California Class Members was also substantial and highly offensive to a reasonable person, constituting an egregious breach of social norms because TikTok uses the

collected personal information for an improper purpose, including by targeting California Plaintiffs and California Class Members with behavioral advertising.

623.  None of the California Plaintiffs, Members of the California Class, nor their parents and/or guardians consented to Defendants' collection and use of their personal information.

624.  The California Plaintiffs and Members of the California Class suffered actual and concrete injury as a result of Defendants' invasion of their privacy.

625.  The California Plaintiffs and Members of the California Class seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests, risk of future invasions of privacy, restitution, disgorgement of profits made by Defendants as a result of their invasion of the California Plaintiffs and California Class Members' privacy, punitive damages, and any other relief that the Court may deem just and proper.

## CLAIM 4 — CALIFORNIA NEGLIGENCE
**(Against All Defendants by Plaintiffs A.J., B.M., S.T., and J.C., by and through their parents and guardians ad litem, and the California Class)**

626.  The California Plaintiffs and California Class Members incorporate the foregoing allegations as if fully set forth herein.

627.  At all relevant times, Defendants developed, set up, managed, maintained, operated, supervised, controlled, and benefited from California Plaintiffs' and California Class Members' use of TikTok.

628.  Defendants owed California Plaintiffs and California Class Members a duty to exercise reasonable care in TikTok's development, setup, management, maintenance, operation, supervision, and control to protect its under-13 users' personal information.

629.  Defendants also owed California Plaintiffs and California Class Members a duty under COPPA not to collect, use, or disclose under-13 users' personal information without notifying parents and obtaining verifiable parental consent.

630.  California Plaintiffs and California Class Members are within the class of

110

persons that COPPA was intended to protect.

631.    Defendants also owed a special relationship duty to California Plaintiffs and California Class Members to protect them against harm caused by TikTok. California Plaintiffs and California Class Members, as children, are comparatively vulnerable and depend on Defendants for a safe and age-appropriate environment on TikTok, and Defendants have the superior ability and control over TikTok to provide both safety and an age-appropriate environment on its app. The special relationship California Plaintiffs and California Class Members have with Defendants substantially benefits Defendants through profits and growth in users and user activity.

632.    Defendants created TikTok and directed its activity through advertisements to minor users, including users under 13 years old. This created a special duty to exercise reasonable care to protect the minors from foreseeable harm while the minors were on TikTok.

633.    Defendants have voluntarily undertaken a responsibility to keep children safe on TikTok.

634.    Defendants are responsible not only for the result of their willful acts, but also for injuries occasioned to California Plaintiffs and California Members by Defendants' want of ordinary care and/or skill in the management of their property.

635.    Defendants operate a website or online service directed at children under the age of 13, as defined by COPPA.

636.    Defendants had actual knowledge that children under 13, such as California Plaintiffs and California Class Members, were using and would use the Full Access Platform.

637.    Defendants invited, solicited, and encouraged the fact, extent, and manner of California Plaintiffs' and California Class Members' use of TikTok.

638.    Defendants had actual knowledge that the use of TikTok (as developed, set up, managed, maintained, supervised, and operated by Defendants) would result in Defendants collecting and using California Plaintiffs' and California Class Members'

111

personal information.

639. At all relevant times, Defendants had actual knowledge that TikTok (as developed, setup, managed, maintained, supervised, and operated by that Defendant) posed unreasonable risks of harm to youth such as California Plaintiffs and California Class Members through the collection, use, and/or disclosure of their personal information. Those risks were known and knowable, including in light of the multiple previous violations of minor children's privacy on TikTok in the last decade.

640. Defendants had actual knowledge that their under-13 users would attempt to create regular accounts instead of only trying to create Kids Mode accounts.

641. Defendants had actual knowledge that when under-13 users created regular accounts instead of Kids Mode accounts, their personal information would be treated without the adequate protections warranted for personal information of under-13 users online.

642. Defendants had actual knowledge that its "age gate" features were not reasonably adequate to protect the privacy of children's information on TikTok.

643. Due to Defendants' control over how youth set up accounts on TikTok, Defendants injured California Plaintiffs and California Class Members by violating their privacy.

644. Defendants could have avoided California Plaintiffs' and California Class Members' injuries with minimal cost, including, for example, by providing direct parental notice and requiring verifiable parental consent for its users.

645. Imposing a duty on Defendants would benefit the community at large.

646. Imposing a duty on Defendants would not be burdensome to them because they have the technological and financial means to avoid the risks of harm to California Plaintiffs and California Class Members.

647. Defendants owed a heightened duty of care to under 13 users of TikTok because children have a diminished capacity to understand how companies collect and use their personal information and for what purpose. Additionally, Defendants owed a

112

heightened duty of care to under 13 users of TikTok because it interacts directly with children out of the immediate oversight of their parents. Defendants were at all times the more sophisticated party and better positioned to understand children's privacy rights and their obligations to protect those rights adequately.

648. Defendants breached their duty of care that they owed California Plaintiffs and California Class Members through their affirmative malfeasance, actions, business decisions, and policies in TikTok's development, setup, management, maintenance, operation, supervision, and control. These breaches are based on Defendants' own actions in managing their own property—TikTok—that they made available to the public, independent of any actions taken by a third party. Those breaches include, but are not limited to:

a. Facilitating use of TikTok by youth under the age of 13, including by adopting protocols that do not adequately verify the age or identity of users or by adopting ineffective age and identity verification protocols,

b. Knowingly collecting personal information from youth under the age of 13 in knowing or reckless disregard of the fact that direct notice had not been provided to parents and verifiable consent had not been obtained from parents,

c. Willfully ignoring that significant numbers of under-13 users were maintaining regular TikTok accounts in violation of TikTok's policies and the 2019 Consent Decree, and

d. Instructing employees not to take action to disable regular TikTok accounts for users whom employees reasonably believed were under 13 years old.

649. Defendants have breached their duty of care that they owed to California Plaintiffs and California Class Members through their non-feasance, failure to act, and omissions in the development, setup, management, maintenance, operation, supervision, and control of TikTok. These breaches are based on the Defendants' actions in managing their property—TikTok—that they made available to the public, independent of any actions taken by a third party. Those breaches include:

a. Failing to implement effective protocols to block users under the age of 13,

b. Failing to implement effective protocols to prevent the collecting, sharing, and selling of the personal information of users under the age of 13 without prior affirmative authorization, and

c. Failing to implement effective parental controls.

650. These breaches also violate COPPA since Defendants collect, use, and disclose under-13 users' personal information without notifying parents and obtaining verifiable parental consent.

651. Defendants' violation of COPPA constitutes negligence per se.

652. A reasonable company under the same or similar circumstances as Defendants would have developed, set up, managed, maintained, supervised, and operated its platforms in a manner that is safer for and more protective of youth users like California Plaintiffs.

653. At all relevant times, California Plaintiffs and California Class Members used TikTok in the manner it was intended to be used.

654. As a direct and proximate result of Defendants' breach of one or more of its duties, California Plaintiffs and California Class Members were harmed by Defendants' violation of California Plaintiffs' and California Class Members' privacy and the loss of control over when, how, and for what purpose their personal information is collected, used, and disclosed.

655. The harm to the California Plaintiffs and California Class Members is the type of harm that COPPA was intended to prevent.

656. The California Plaintiffs and California Class Members do not allege any harm or injury constituting a personal injury or emotional distress and do not seek damages based on those types of injuries.

657. Defendants' breach of one or more of their duties was a substantial factor in causing harms and injuries to California Plaintiffs and California Class Members.

658. But for Defendants' violation of the applicable laws and regulations related

114

to COPPA, California Plaintiffs' and California Class Members' personal information would not have been used, collected, or disclosed to third parties.

659.    As a direct and proximate result of Defendants' negligence per se, California Plaintiffs and California Class Members have been injured and are entitled to damages in an amount to be proven at trial.

660.    California Plaintiffs demand judgment against Defendants for injunctive relief and for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**CLAIM 5 — CALIFORNIA UNFAIR COMPETITION LAW (UCL), CAL. BUS. & PROF. CODE § 17200 *ET SEQ.***
**(Against All Defendants by Plaintiffs A.J., B.M., S.T., and J.C., by and through their parents and guardians ad litem, and the California Class)**

661.    The California Plaintiffs and Members of the California Class incorporate the foregoing allegations as if fully set forth herein.

662.    The California Plaintiffs and Members of the California Class are or were residents of California.

663.    At all times mentioned herein, Defendants each engaged in "trade" or "commerce" in California in that they each engaged in the advertising, offering for sale, sale, and distribution of property or any other articles, commodities, or things of value in California.

664.    Defendants each engaged in consumer-oriented acts through the offering, promotion, and/or distribution of the TikTok, which significantly impacted the public because TikTok is used nationwide, including in California, and there are millions of users, including the California Plaintiffs and Members of the California Class.

665.    Cal. Bus. & Prof. Code § 17200 *et seq.* (the "UCL") broadly prohibits "unfair competition," which the UCL defines as including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising[.]"

666.    California courts have noted that "the differences [between the UCL and

115

FTC Act] are not of a degree to impair comparison" and that unfair acts respectively proscribed in the two statutes "appear practically synonymous." *People ex rel. Mosk v. Nat'l Rsch. Co. of Cal.*, 201 Cal. App. 2d 765, 773, 20 Cal. Rptr. 516, 521 (Ct. App. 1962). As a result, California courts deem "decisions of the federal court [construing the FTC Act] on the subject are more than ordinarily persuasive." Id.

667. Defendants violated Cal. Bus. & Prof. Code § 17200 *et seq.* by engaging in the "unlawful" and "unfair" business acts and practices proscribed by Cal. Bus. & Prof. Code § 17200 *et seq.* outlined herein.

668. Defendants engaged in "unlawful" business acts and/or practices by violating COPPA and the COPPA Rule. Defendants engaged in "unfair" business acts and/or practices. Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the personal information of the California Plaintiffs and Members of the California Class without notifying their parents and obtaining verifiable parental consent and by tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain despite Defendants' actual knowledge about these users being under 13. These practices are unethical, unscrupulous, and substantially injurious to children, and thus constitutes an unfair practice under the UCL. The harm these practices caused to the California Plaintiffs and California Class Members outweigh their utility, if any.

669. As outlined herein, TikTok represented that TikTok Kids Mode was designed for children under 13 years old by representing to children who identified themselves as being under 13 years of age that the child is "about to access a TikTok experience designed just for you." In Kids Mode, a user can view videos, but cannot upload videos, post information publicly, or message other users.

670. TikTok Kids Mode is not designed to be legally appropriate for children under 13 years old. In fact, TikTok Kids Mode violates COPPA and the privacy rights of children under 13 years of age, including by collecting and using their personal information without providing direct notice to their parents or obtaining parental

116

consent.

671. As outlined herein, Defendants at all times had actual knowledge of their own non-compliance with COPPA and other applicable privacy-related laws. Further, Defendants at all times had actual knowledge that they were collecting Private Information from users under the age of 13 including the California Plaintiffs and California Class Members for purposes of tracking, profiling, and targeting of those children for lucrative behavioral advertising.

672. As outlined herein, Defendants intentionally designed TikTok to, among other things, attract children under 13 by making child-directed content available to them so that TikTok could collect the personal information of those children for substantial commercial gain.

673. TikTok was aware at all times that a significant portion of its users were under the age of 13 and nonetheless collected the personal information of those children for the purpose of serving those children behavioral advertising for substantial commercial gain. After entering into a Permanent Injunction with the United States in 2019 intended to prohibit Defendants from their continued collection or use of the personal information of children under the age of 13, Defendants purposefully sought to undermine their compliance through, among other practices, implementation of a woefully inadequate age-gating system, and monitoring policies and procedures designed to allow them to continue knowingly collecting and using the personal information of children.

674. Defendants are considered by the FTC to be "operators" as defined under COPPA and FTC regulations.

675. In particular, Defendants systematically collected and used personal information from children that they knew were under 13 in violation of COPPA, and therefore the FTC Act, to serve them targeted, behavioral advertising by inter alia:

    a. Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children

117

under 13 years old, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

b.  Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13 years old, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(b) and (c) of COPPA, 16 C.F.R. § 312.4(b)-(c);

c.  Failing to obtain verifiable parental consent before any collection or use of personal information from children under 13 years old, in violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

d.  Failing to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of personal information collected from children under 13 years old, in violation of Section 312.8 of COPPA, 16 C.F.R. § 312.8.

676.   Violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair … act or practice prescribed under 15 U.S.C. § 57a(a)(1)(B)." 15 U.S.C. § 6502(c). These rules define unfair acts or practices in or affecting commerce within the meaning of 15 U.S.C. § 45(a)(1), which is the model for the various consumer protection statutes in the several states, including the Cal. Bus. & Prof. Code § 17200 *et seq.*[98]

677.   Accordingly, Defendants engaged in unfair and unlawful trade acts or practices in violation of Cal. Bus. & Prof. Code § 17200 *et seq.*, which is modeled after, proscribes the same conduct as, and gives deference to the definitions of the FTC Act.

678.   Defendants' conduct is unfair, immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, and there are no greater

---

[98] *See* 16 C.F.R. § 312.1 (COPPA "prohibits unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure of personal information from and about children on the internet.").

countervailing benefits to consumers or competition. Further, the California Plaintiffs and Members of the California Class could not have reasonably avoided injury because Defendants each took advantage of the lack of knowledge, ability, experience, and/or capacity of consumers—in this case children under 13 years old—to their detriment.

679. Defendants willfully engaged in the unfair and unlawful acts described herein and knew or recklessly disregarded the fact that they violated Cal. Bus. & Prof. Code § 17200 *et seq.*

680. The California Plaintiffs and Members of the California Class were harmed by Defendants' practices described herein, which were a substantial factor and caused injury in fact and actual damages to the California Plaintiffs and Members of the California Class.

681. California Plaintiffs have standing to bring these claims under the UCL. As a direct and proximate result of Defendants' unfair and unlawful acts and practices in violation of Cal. Bus. & Prof. Code § 17200 *et seq.*, the California Plaintiffs and Members of the California Class have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described herein, including, inter alia, "benefit-of-the-bargain" damages, the loss of the value and/or diminishment in value of their personal information, and the loss of the ability to control the use of their personal information.

682. As a direct and proximate result of TikTok's unlawful and unfair business acts and practices, California Plaintiffs and Members of the California Class suffered "benefit-of-the-bargain" injuries and damages. The California Plaintiffs and Members of the California Class did not receive the full benefit of the bargain, and instead received services from TikTok that were less valuable than the services they would have received if TikTok had abided by COPPA.

683. The California Plaintiffs and Members of the California Class, therefore, were damaged in an amount at least equal to the difference in value of the TikTok service that the California Plaintiffs and Members of the California Class received (for

example. where TikTok collected and used children's personal information without notifying their parents or gaining their parents' consent) and the value of the TikTok service that California Plaintiffs' and California Class Members would have received if TikTok had abided by COPPA (and, for example, not collected and used children's personal information without notifying their parents or gaining their parents' consent).

684. As a direct and proximate result of TikTok's unlawful and unfair business acts and practices, California Plaintiffs and California Class Members also suffered "right to exclude" injuries and damages.

685. The California Plaintiffs and Members of the California Class have a property interest in the personal information collected by TikTok. California Plaintiffs Class Members suffered an economic injury because they were deprived of their right to exclude TikTok from their personal information.

686. The California Plaintiffs and Members of the California Class's damages may also be measured by the amount of monetary compensation that TikTok would have to provide to parents to gain their consent to collect and use their children's personal information.

687. The California Plaintiffs and Members of the California Class also suffered damages because the Defendants' unfair and unlawful acts and practices diminished the value of their personal information.

688. As outlined herein, there is tangible value in the California Plaintiffs' and Members of the California Class's personal information. The California Plaintiffs and Members of the California class have lost the opportunity to receive value in exchange for their personal information.

689. Defendants' monetization of the California Plaintiffs' and Members of the California Class's personal information demonstrates that there is a market for their personal information.

690. The California Plaintiffs' and Members of the California Class's personal information is now in the possession of Defendants, who have used and will use it for

120

their financial gain.

691.   Pursuant to Cal. Bus. & Prof. Code § 17203, California Plaintiffs seek equitable relief to enjoin TikTok from continuing its unlawful and unfair practices and any other equitable relief necessary to secure the interests of the Class Members.

692.   Pursuant to Cal. Bus. & Prof. Code § 17203, California Plaintiffs request that the Court restore to Plaintiffs and the Class, in the form of restitution, all money TikTok may have acquired as result of its unlawful and unfair business practices.

693.   Defendants' retention of the California Plaintiffs' and Members of the California Class's personal information presents a continuing risk to them as well as the general public. The California Plaintiffs and Members of the California Class seek relief for the injuries they have suffered as a result of Defendants' unfair and unlawful acts and practices, as provided by Cal. Bus. & Prof. Code § 17200 *et seq.* and applicable law, including restitution and attorneys' fees, as well as an injunction requiring Defendants to permanently delete, destroy or otherwise sequester the personal information collected without parental consent, requiring Defendants to provide a complete audit and accounting of the uses of the personal information by them and any other third parties, and other appropriate injunctive and/or declaratory relief.

694.   California Plaintiffs lack an adequate remedy at law. It is unclear whether an award of damages can or will adequately remedy the California Plaintiffs' monetary losses. The restitution that California Plaintiffs seek under the UCL is not the same remedy as disgorgement for unjust enrichment. Furthermore, restitution under the UCL is more prompt, efficient, and certain than the monetary damages that Plaintiffs seek.

695.   California Plaintiffs also lack an adequate remedy at law because TikTok's refusal to abide by the 2019 Permanent Injunction is a future harm. Namely, TikTok continues to profit from its unlawful business practices at the expense of the privacy of children, and TikTok has failed to implement adequate age gates, to identify and remove underage users of non-Kids Mode accounts, to delete data, even upon parental request, has taken steps to make deletion requests onerous, and has continued to collect data

from purportedly deleted accounts.

## B.    CONNECTICUT CLAIMS

### CLAIM 6 — CONNECTICUT NEGLIGENCE
#### (Against All Defendants by Plaintiff L.F. by and through their parent and guardian ad litem, Heather Bresette, and the Connecticut Class)

696.    Plaintiff L.F. by and through their parent and guardian ad litem, Heather Bresette (the "Connecticut Plaintiffs") and Connecticut Class Members incorporate the foregoing allegations as if fully set forth herein.

697.    At all relevant times, Defendants developed, set up, managed, maintained, operated, supervised, controlled, and benefited from Connecticut Plaintiffs' and Connecticut Class Members' use of TikTok.

698.    Defendants owed Connecticut Plaintiffs and Connecticut Class Members a duty to exercise reasonable care in TikTok's development, setup, management, maintenance, operation, supervision, and control to protect its under-13 users' personal information.

699.    Defendants also owed Connecticut Plaintiffs and Connecticut Class Members a duty under COPPA not to collect, use, or disclose under-13 users' personal information without notifying parents and obtaining verifiable parental consent.

700.    Connecticut Plaintiffs and Connecticut Class Members are within the class of persons that COPPA was intended to protect.

701.    Defendants also owed a special relationship duty to Connecticut Plaintiffs and Connecticut Class Members to protect them against harm caused by TikTok. Connecticut Plaintiffs and Connecticut Class Members, as children, are comparatively vulnerable and depend on Defendants for a safe environment on TikTok, and Defendants have the superior ability and control over TikTok to provide that safety on its app. The special relationship Connecticut Plaintiffs and Connecticut Class Members have with Defendants substantially benefits Defendants through profits and growth in users and user activity. Defendants could not successfully operate without the increase in users and user activity generated by children.

122

702.    Defendants created TikTok and directed its activity through advertisements to minor users, including users under 13 years old. This created a special duty to exercise reasonable care to protect the minors from foreseeable harm while the minors were on TikTok.

703.    Defendants have voluntarily undertaken a responsibility to keep children safe on TikTok.

704.    Defendants are responsible not only for the result of their willful acts, but also for injuries occasioned to Connecticut Plaintiffs and Connecticut Members by Defendants' want of ordinary care and/or skill in the management of their property..

705.    Connecticut Plaintiffs and Connecticut Class Members were foreseeable users of TikTok.

706.    Defendants operate a website or online service directed at children under the age of 13, as defined by COPPA.

707.    Defendants had actual knowledge that children under the age 13, such as Connecticut Plaintiffs and Connecticut Class Members, were using and would use Full Access Platform.

708.    Defendants invited, solicited, and encouraged the fact, extent, and manner of Connecticut Plaintiffs' and Connecticut Class Members' use of TikTok.

709.    Defendants had actual knowledge that the use of TikTok (as developed, set up, managed, maintained, supervised, and operated by Defendants) would result in Defendants collecting and using Connecticut Plaintiffs' and Connecticut Class Members' personal information.

710.    At all relevant times, Defendants had actual knowledge that TikTok (as developed, setup, managed, maintained, supervised, and operated by that Defendant) posed unreasonable risks of harm to youth such as Connecticut Plaintiffs and Connecticut Class Members through the collection, use, and/or disclosure of their personal information. Those risks were known and knowable, including in light of the multiple previous violations of minor children's privacy on TikTok in the last decade.

711. Defendants had actual knowledge that their under-13 users would attempt to create regular accounts instead of only trying to create Kids Mode accounts.

712. Defendants had actual knowledge when under-13 users created regular accounts instead of Kids Mode accounts, their personal information would be treated without the adequate protections warranted for personal information of under-13 users online.

713. Defendants had actual knowledge that its "age gate" features were not reasonably adequate to protect the privacy of children's information on TikTok.

714. Due to Defendants' control over how youth set up accounts on TikTok, Defendants injured Connecticut Plaintiffs and Connecticut Class Members by violating their privacy.

715. Defendants had actual knowledge that it collected personal information as defined by COPPA from users under the age of 13.

716. Defendants could have avoided Connecticut Plaintiffs' and Connecticut Class Members' injuries with minimal cost, including, for example, by providing direct parental notice and requiring verifiable parental consent for its users.

717. Imposing a duty on Defendants would benefit the community at large.

718. Imposing a duty on Defendants would not be burdensome to them because they have the technological and financial means to avoid the risks of harm to Connecticut Plaintiffs and Connecticut Class Members.

719. Defendants owed a heightened duty of care to youth users of TikTok because children have a diminished capacity to understand how companies collect and use their personal information and for what purpose. Additionally, Defendants owed a heightened duty of care to youth users of TikTok because it interacts directly with children out of the immediate oversight of their parents. Defendants were at all times the more sophisticated party and better positioned to understand children's privacy rights and their obligations to protect those rights adequately.

720. Defendants breached their duty of care that they owed Connecticut

Plaintiffs and Connecticut Class Members through their affirmative malfeasance, actions, business decisions, and policies in TikTok's development, setup, management, maintenance, operation, supervision, and control. These breaches are based on Defendants' own actions in managing their own property—TikTok—that they made available to the public, independent of any actions taken by a third party. Those breaches include, but are not limited to:

    a. Facilitating use of TikTok by youth under the age of 13, including by adopting protocols that do not ask for or verify the age or identity of users or by adopting ineffective age and identity verification protocols,

    b. Knowingly collecting personal information from youth under the age of 13 in knowing or reckless disregard of the fact that direct notice had not been provided to parents and verifiable consent had not been obtained from parents,

    c. Willfully ignoring that significant numbers of under-13 users were maintaining regular TikTok accounts in violation of TikTok's policies and the 2019 Consent Decree, and

    d. Instructing employees not to take action to disable regular TikTok accounts for users whom employees reasonably believed were under 13 years old.

721. Defendants have breached their duty of care that they owed to Connecticut Plaintiffs and Connecticut Class Members through their non-feasance, failure to act, and omissions in the development, setup, management, maintenance, operation, supervision, and control of TikTok. These breaches are based on the Defendants' actions in managing their property—TikTok—that they made available to the public, independent of any actions taken by a third party. Those breaches include:

    a. Failing to implement effective protocols to block users under the age of 13,

    b. Failing to implement effective protocols to prevent the collecting, sharing, and selling of the personal information of users under the age of 13 without prior affirmative authorization, and

    c. Failing to implement effective parental controls.

722. These breaches also violate COPPA since Defendants collect, use, and disclose under-13 users' personal information without notifying parents and obtaining verifiable parental consent.

723. Defendants' violation of COPPA constitutes negligence per se.

724. A reasonable company under the same or similar circumstances as Defendants would have developed, set up, managed, maintained, supervised, and operated its platforms in a manner that is safer for and more protective of youth users like Connecticut Plaintiffs.

725. At all relevant times, Connecticut Plaintiffs and Connecticut Class Members used TikTok in the manner it was intended to be used.

726. As a direct and proximate result of Defendants' breach of one or more of its duties, Connecticut Plaintiffs and Connecticut Class Members were harmed by Defendants' violation of Connecticut Plaintiffs' and Connecticut Class Members' privacy and the loss of control over when, how, and for what purpose their personal information is collected, used, and disclosed.

727. The harm to the Connecticut Plaintiffs and Connecticut Class Members is the type of harm that COPPA was intended to prevent.

728. The Connecticut Plaintiffs and Connecticut Class Members do not allege any harm or injury constituting a personal injury or emotional distress and do not seek damages based on those types of injuries.

729. Defendants' breach of one or more of their duties was a substantial factor in causing harms and injuries to Connecticut Plaintiffs and Connecticut Class Members.

730. But for Defendants' violation of the applicable laws and regulations related to COPPA, Connecticut Plaintiffs' and Connecticut Class Members' personal information would not have been used, collected, or disclosed to third parties.

731. As a direct and proximate result of Defendants' negligence per se, Connecticut Plaintiffs and Connecticut Class Members have been injured and are entitled to damages in an amount to be proven at trial.

126

732.    Connecticut Plaintiffs demand judgment against Defendants for injunctive relief and for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**CLAIM 7 — CONNECTICUT UNFAIR TRADE PRACTICES ACT, CONN. GEN. STAT. § 42-110A *ET SEQ.***
**(Against all Defendants by Plaintiff L.F., a minor, by and through their guardian ad litem, Heather Bresette and the Connecticut Class)**

733.    Connecticut Plaintiffs and Connecticut Class Members re-allege the foregoing allegations as if fully set forth herein.

734.    This claim is asserted against Defendants pursuant to Conn. Gen. Stat. § 42-110a, *et seq.*

735.    The Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110a *et seq.*, declares that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

736.    Pursuant to Conn. Gen. Stat. § 42-110g(a), any person who has suffered a loss as a result of a violation of CUTPA may bring an action to obtain a declaratory judgment that an act or practice violates CUTPA and to enjoin such person who has violated, is violating, or is otherwise likely to violate CUTPA.

737.    Pursuant to Conn. Gen. Stat. § 42-110g(a), any person who has suffered a loss as a result of a violation of CUTPA may bring an action for actual damages, attorneys' fees, and court costs.

738.    Connecticut Plaintiffs, Connecticut Class Members and Defendants are each a "person" within the meaning of Conn. Gen. Stat. § 42-110a(3).

739.    Defendants through their conduct as described above, engaged in unfair methods of competition and unfair acts or practices in the conduct of their trade and commerce, as defined in General Statutes § 42-110a(4), within the State of Connecticut.

740.    Connecticut courts have held that "[i]t is the intent of the legislature that in construing subsection (a) of this section, the commissioner [of consumer protection] and the courts of this state shall be guided by interpretations given by the Federal Trade

127

Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)).” *Heslin v. Connecticut L. Clinic of Trantolo & Trantolo*, 190 Conn. 510, 518, 461 A.2d 938, 942 (1983) as from time to time amended.”

741.    Defendants engaged in “unfair” business acts and/or practices. Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the personal information of L.F. and the Connecticut Class Members without notifying their parents and obtaining verifiable parental consent and by tracking, profiling, and targeting those children with behavioral advertising for Defendants’ commercial financial gain. These practices are unethical, unscrupulous, and substantially injurious to children, and thus constitutes an unfair practice. The harm these practices caused to L.F. and Connecticut Class Members outweigh their utility, if any.

742.    As outlined herein, TikTok represented that TikTok Kids Mode was designed for children under 13 years old by representing to children who identified themselves as being under 13 years old that the child is “about to access a TikTok experience designed just for you.” In Kids Mode, a user can view videos, but cannot upload videos, post information publicly, or message other users.

743.    TikTok Kids Mode is not designed to be legally appropriate for children under 13 years old. In fact, TikTok Kids Mode violates COPPA and the privacy rights of children under 13 years old, including by collecting and using their personal information without providing direct notice to their parents or obtaining parental consent.

744.    As outlined herein, Defendants at all times had actual knowledge of their non-compliance with COPPA and other applicable privacy-related laws. Further, Defendants at all times had actual knowledge that they were collecting Private Information from users under the age of 13 including L.F. and Connecticut Class Members for purposes of tracking, profiling, and targeting of those children for lucrative behavioral advertising.

745.   As outlined herein, Defendants intentionally designed TikTok to, among other things, attract children under 13 by making child-directed content available to them so that TikTok could collect the personal information of those children for substantial commercial gain.

746.   TikTok was aware at all times that a significant portion of its users were under the age of 13 and nonetheless collected the personal information of those children for the purpose of serving those children behavioral advertising for substantial commercial gain. After entering into a Permanent Injunction with the United States in 2019 intended to prohibit Defendants from their continued collection or use of the personal information of children under the age of 13, Defendants purposefully sought to undermine their compliance through, among other practices, implementation of a woefully inadequate age-gating system, and monitoring policies and procedures designed to allow them to continue knowingly collecting and using the personal information of children.

747.   Defendants are considered by the FTC to be "operators" as defined under COPPA and FTC regulations.

748.   In particular, Defendants systematically collected and/or used personal information from children under 13 in violation of COPPA, and therefore the FTC Act, to serve them targeted, behavioral advertising by *inter alia*:

a. Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13 years old, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

b. Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13 years old, how Defendants used such information, their disclosure practices, and all other required content, in violation of

Section 312.4(b) and (c) of COPPA, 16 C.F.R. § 312.4(b)-(c);

c. Failing to obtain verifiable parental consent before any collection or use of personal information from children under 13 years old, in violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

d. Failing to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of personal information collected from children under 13 years old, in violation of Section 312.8 of COPPA, 16 C.F.R. § 312.8.

749.    Violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair … act or practice prescribed under 15 U.S.C. § 57a(a)(1)(B)." 15 U.S.C. § 6502(c). These rules define unfair acts or practices in or affecting commerce within the meaning of 15 U.S.C. § 45(a)(1), which is the model for the various consumer protection statutes in the several states, including Conn. Gen. Stat. § 42-110a *et seq.*

750.    Accordingly, Defendants engaged in unfair and unlawful trade acts or practices in violation of Conn. Gen. Stat. § 42-110a *et seq.* which is modeled after, proscribes the same conduct as, and gives deference to the definitions of the FTC Act.

751.    Because Defendants knew or should have known that their conduct was unfair under Conn. Gen. Stat. § 42-110b(a), their conduct was willful under Conn. Gen. Statutes § 42-110o.

752.    These unfair acts and practices have caused Connecticut Plaintiffs and other similarly situated consumers and/or businesses to suffer losses of money and property.

753.    As a direct and proximate result of Defendants' unfair acts and practices, Connecticut Plaintiffs and other similarly situated consumers and/or businesses have suffered damages and are entitled to relief under CUTPA, including, but not limited to, actual damages, attorneys' fees, and costs.

754.    Accordingly, Connecticut Plaintiffs, individually and on behalf of all others

130

similarly situated, thus seek (a) a declaration that Defendants' acts and practices as described above violate the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.*; (b) an award of actual damages; (c) an award of attorneys' fees and costs pursuant to Conn. Gen. Stat. § 42-110g(d); (d) an order enjoining Defendants from continuing to engage in the unfair acts and practices described above; and any further relief the Court deems just and proper.

## C.    FLORIDA CLAIMS

### CLAIM 8 — FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUTPA), FLA. STAT. ANN. § 501.201 *ET SEQ.*
### (Against All Defendants by Plaintiffs D.G. and D.M., by and through their parents, and the Florida Class)

755.    Plaintiff D.G., a minor, by and through their parent, Kristy Bradley, and Plaintiff D.M., a minor, by and through their parent and guardian ad litem, Darryl Maultsby (the "Florida Plaintiffs"), and Members of the Florida Class incorporate the foregoing allegations as if fully set forth herein.

756.    D.G. and D.M. and Members of the Florida Class are or were residents of Florida and used TikTok while under the age of 13.

757.    At all times mentioned herein, Defendants each engaged in "trade" or "commerce" in Florida in that Defendants each engaged in the advertising, offering for sale, sale, and distribution of property or any other articles, commodities, or things of value in Florida.

758.    Defendants each engaged in consumer-oriented acts through the offer, promotion, and/or distribution of the TikTok app, which significantly impacted the public because TikTok is used nationwide, including in Florida, and there are millions of users, including D.M. and Members of the Florida Class.

759.    Fla. Stat. Ann. § 501.204(1) provides "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

760.    Defendants violated Fla. Stat. Ann. § 501.204 by engaging in the unfair

acts or practices proscribed by Fla. Stat. Ann. § 501.204 outlined herein.

761.    Defendants engaged in "unlawful" business acts and/or practices by violating COPPA and the COPPA Rule.

762.    Defendants engaged in "unfair" business acts and/or practices. Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the personal information of Florida Plaintiffs and Members of the Florida Class without notifying their parents and obtaining verifiable parental consent and by tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain. These practices are unethical, unscrupulous, and substantially injurious to children, and thus constitutes an unfair practice. The harm these practices caused to D.M. and D.G. and Florida Class Members outweigh their utility, if any.

763.    As outlined herein, TikTok represented that TikTok Kids Mode was designed for children under 13 years old by representing to children who identified themselves as being under 13 years old that the child is "about to access a TikTok experience designed just for you." In Kids Mode, a user can view videos, but cannot upload videos, post information publicly, or message other users.

764.    TikTok Kids Mode is not designed to be legally appropriate for children under 13 years old. In fact, TikTok Kids Mode violates COPPA and the privacy rights of children under 13 years old, including by collecting and using their personal information without providing direct notice to their parents or obtaining parental consent.

765.    As outlined herein, Defendants at all times had actual knowledge of their own non-compliance with COPPA and other applicable privacy-related laws. Further, Defendants at all times had actual knowledge that they were collecting Private Information from users under the age of 13 including Florida Plaintiffs and Florida Class Members and for purposes of tracking, profiling, and targeting of those children for lucrative behavioral advertising.

132

766.   As outlined herein, Defendants intentionally designed TikTok to, among other things, attract children under 13 by making child-directed content available to them so that TikTok could collect the personal information for substantial commercial gain.

767.   TikTok was aware at all times that a significant portion of its users were under the age of 13 and nonetheless collected the personal information of those children for the purpose of serving those children behavioral advertising for substantial commercial gain. After entering into a Permanent Injunction with the United States in 2019 intended to prohibit Defendants from their continued collection or use of the personal information of children under the age of 13, Defendants purposefully sought to undermine their compliance through, among other practices, implementation of a woefully inadequate age-gating system, and monitoring policies and procedures designed to allow them to continue knowingly collecting and using the personal information of children.

768.   In particular, systematically collected and/or used personal information from children under 13 years old in violation of COPPA, and therefore the FTC Act, by *inter alia*:

    a.  Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13 years old, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

    b.  Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13 years old, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(b) and (c) of COPPA, 16 C.F.R. § 312.4(b)-(c);

    c.  Failing to obtain verifiable parental consent before any collection or use of

personal information from children under 13 years old, in violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

d. Failing to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of personal information collected from children under 13 years old, in violation of Section 312.8 of COPPA, 16 C.F.R. § 312.8.

769. Violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair … act or practice prescribed under 15 U.S.C. § 57a(a)(1)(B)." 15 U.S.C. § 6502(c). These rules define unfair acts or practices in or affecting commerce within the meaning of 15 U.S.C. § 45(a)(1), which is the model for the various consumer protection statutes in the several states, including the Fla. Stat. Ann. § 501.201 *et seq.*[99]

770. Accordingly, Defendants engaged in unfair and unlawful trade acts or practices in violation of Fla. Stat. Ann. § 501.204 *et seq.*, which is modeled after, proscribes the same conduct as, and gives deference to the definitions of the FTC Act.

771. Defendants' conduct is unfair, immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, and there are no greater countervailing benefits to consumers or competition. Further, Florida Plaintiffs and Members of the Florida Class could not have reasonably avoided injury because Defendants each took advantage of the lack of knowledge, ability, experience, and/or capacity of consumers—in this case children under 13 years old—to their detriment.

772. Defendants willfully engaged in the unfair and unlawful acts described herein and knew or recklessly disregarded the fact that they violated Fla. Stat. Ann. § 501.204 *et seq.*

773. Florida Plaintiffs and Members of the Florida Class were harmed by Defendants' practices described herein, which were a substantial factor and caused

---

[99] *See* 16 C.F.R. § 312.1 (COPPA "prohibits unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure of personal information from and about children on the internet.").

134

injury in fact and actual damages to Florida Plaintiffs and Members of the Florida Class.

774.    As a direct and proximate result of Defendants' unfair and unlawful acts and practices in violation of Fla. Stat. Ann. § 501.204 *et seq.*, Florida Plaintiffs and Members of the Florida Class have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described herein, including, inter alia, the loss of the value and/or diminishment in value of their personal information and the loss of the ability to control the use of their personal information, which allowed Defendants to profit at the expense of Florida Plaintiffs and Members of the Florida Class.

775.    As outlined herein, there is tangible value in Florida Plaintiffs and Members of the Florida Class's personal information. Florida Plaintiffs and Members of the Florida Class have lost the opportunity to receive value in exchange for their personal information.

776.    Defendants' monetization of Florida Plaintiffs and Members of the Florida Class's personal information demonstrates that there is a market for their personal information.

777.    Florida Plaintiffs and Members of the Florida Class's personal information is now in the possession of Defendants, who have used and will use it for their financial gain.

778.    Defendants' retention of Florida Plaintiffs and Members of the Florida class's personal information presents a continuing risk to them as well as the general public. Florida Plaintiffs and Members of the Florida Class seek relief for the injuries they have suffered as a result of Defendants' unfair and unlawful acts and practices, as provided by Fla. Stat. Ann. § 501.204 *et seq.* and applicable law, including all actual damages and attorneys' fees and costs, treble damages, statutory damages, and restitution, as well as an injunction requiring Defendants to each permanently delete, destroy or otherwise sequester the personal information collected without parental consent, requiring Defendants to provide a complete audit and accounting of the uses of

135

the personal information by them and any other third parties, and other appropriate injunctive and/or declaratory relief.

## CLAIM 9 — FLORIDA NEGLIGENCE
### (Against All Defendants by Plaintiffs D.G. and D.M. by and through their parents, and the Florida Class)

779. The Florida Plaintiffs and Florida Class Members incorporate the foregoing allegations as if fully set forth herein.

780. At all relevant times, Defendants developed, set up, managed, maintained, operated, supervised, controlled, and benefited from Florida Plaintiffs' and Florida Class Members' use of TikTok.

781. Defendants owed Florida Plaintiffs and Florida Class Members a duty to exercise reasonable care in TikTok's development, setup, management, maintenance, operation, supervision, and control to protect its under-13 users' personal information.

782. Defendants also owed Florida Plaintiffs and Florida Class Members a duty under COPPA not to collect, use, or disclose under-13 users' personal information without notifying parents and obtaining verifiable parental consent.

783. Florida Plaintiffs and Florida Class Members are within the class of persons that COPPA was intended to protect.

784. Defendants also owed a special relationship duty to Florida Plaintiffs and Florida Class Members to protect them against harm caused by TikTok. Florida Plaintiffs and Florida Class Members, as children, are comparatively vulnerable and depend on Defendants for a safe environment on TikTok, and Defendants have the superior ability and control over TikTok to provide that safety on its app. The special relationship Florida Plaintiffs and Florida Class Members have with Defendants substantially benefits Defendants through profits and growth in users and user activity. Defendants could not successfully operate without the increase in users and user activity generated by children.

785. Defendants created TikTok and directed its activity through advertisements to minor users, including users under 13 years old. This created a special duty to

exercise reasonable care to protect the minors from foreseeable harm while the minors were on TikTok.

786. Defendants have voluntarily undertaken a responsibility to keep children safe on TikTok.

787. Defendants are responsible not only for the result of their willful acts, but also for injuries occasioned to Florida Plaintiffs and Florida Members by Defendants' want of ordinary care and/or skill in the management of their property..

788. Florida Plaintiffs and Florida Class Members were foreseeable users of TikTok.

789. Defendants operate a website or online service directed at children under the age of 13, as defined by COPPA.

790. Defendants had actual knowledge that children under the age of 13, such as Florida Plaintiffs and Florida Class Members, were using and would use Full Access Platform.

791. Defendants invited, solicited, and encouraged the fact, extent, and manner of Florida Plaintiffs' and Florida Class Members' use of TikTok.

792. Defendants had actual knowledge that the use of TikTok (as developed, set up, managed, maintained, supervised, and operated by Defendants) would result in Defendants collecting and using Florida Plaintiffs' and Florida Class Members' personal information.

793. At all relevant times, Defendants had actual knowledge that TikTok (as developed, setup, managed, maintained, supervised, and operated by that Defendant) posed unreasonable risks of harm to youth such as Florida Plaintiffs and Florida Class Members through the collection, use, and/or disclosure of their personal information. Those risks were known and knowable, including in light of the multiple previous violations of minor children's privacy on TikTok in the last decade.

794. Defendants had actual knowledge that their under-13 users would attempt to create regular accounts instead of only trying to create Kids Mode accounts.

137

795. Defendants had actual knowledge that when under-13 users created regular accounts instead of Kids Mode accounts, their personal information would be treated without the adequate protections warranted for personal information of under-13 users online.

796. Defendants had actual knowledge that its "age gate" features were not reasonably adequate to protect the privacy of children's information on TikTok.

797. Due to Defendants' control over how youth set up accounts on TikTok, Defendants injured Florida Plaintiffs and Florida Class Members by violating their privacy.

798. Defendants could have avoided Florida Plaintiffs' and Florida Class Members' injuries with minimal cost, including, for example, by providing direct parental notice and requiring verifiable parental consent for its users.

799. Imposing a duty on Defendants would benefit the community at large.

800. Imposing a duty on Defendants would not be burdensome to them because they have the technological and financial means to avoid the risks of harm to Florida Plaintiffs and Florida Class Members.

801. Defendants owed a heightened duty of care to youth users of TikTok because children have a diminished capacity to understand how companies collect and use their personal information and for what purpose. Additionally, Defendants owed a heightened duty of care to youth users of TikTok because it interacts directly with children out of the immediate oversight of their parents. Defendants were at all times the more sophisticated party and better positioned to understand children's privacy rights and their obligations to protect those rights adequately.

802. Defendants breached their duty of care that they owed Florida Plaintiffs and Florida Class Members through their affirmative malfeasance, actions, business decisions, and policies in TikTok's development, setup, management, maintenance, operation, supervision, and control. These breaches are based on Defendants' own actions in managing their own property—TikTok—that they made available to the

138

public, independent of any actions taken by a third party. Those breaches include, but are not limited to:

   a. Facilitating use of TikTok by youth under the age of 13, including by adopting protocols that do not ask for or verify the age or identity of users or by adopting ineffective age and identity verification protocols,

   b. Knowingly collecting personal information from youth under the age of 13 in knowing or reckless disregard of the fact that direct notice had not been provided to parents and verifiable consent had not been obtained from parents,

   c. Willfully ignoring that significant numbers of under-13 users were maintaining regular TikTok accounts in violation of TikTok's policies and the 2019 Consent Decree, and

   d. Instructing employees not to take action to disable regular TikTok accounts for users whom employees reasonably believed were under 13 years old.

803.   Defendants have breached their duty of care that they owed to Florida Plaintiffs and Florida Class Members through their non-feasance, failure to act, and omissions in the development, setup, management, maintenance, operation, supervision, and control of TikTok. These breaches are based on the Defendants' actions in managing their property—TikTok—that they made available to the public, independent of any actions taken by a third party. Those breaches include:

   a. Failing to implement effective protocols to block users under the age of 13,

   b. Failing to implement effective protocols to prevent the collecting, sharing, and selling of the personal information of users under the age of 13 without prior affirmative authorization, and

   c. Failing to implement effective parental controls.

804.   These breaches also violate COPPA since Defendants collect, use, and disclose the personal information of children under 13 without notifying parents and obtaining verifiable parental consent.

805.   Defendants' violation of COPPA constitutes negligence per se.

139

806. A reasonable company under the same or similar circumstances as Defendants would have developed, set up, managed, maintained, supervised, and operated its platforms in a manner that is safer for and more protective of youth users like Florida Plaintiffs.

807. At all relevant times, Florida Plaintiffs and Florida Class Members used TikTok in the manner it was intended to be used.

808. As a direct and proximate result of Defendants' breach of one or more of its duties, Florida Plaintiffs and Florida Class Members were harmed by Defendants' violation of Florida Plaintiffs' and Florida Class Members' privacy and the loss of control over when, how, and for what purpose their personal information is collected, used, and disclosed.

809. The harm to the Florida Plaintiffs and Florida Class Members is the type of harm that COPPA was intended to prevent.

810. The Florida Plaintiffs and Florida Class Members do not allege any harm or injury constituting a personal injury or emotional distress and do not seek damages based on those types of injuries.

811. Defendants' breach of one or more of their duties was a substantial factor in causing harms and injuries to Florida Plaintiffs and Florida Class Members.

812. But for Defendants' violation of the applicable laws and regulations related to COPPA, Florida Plaintiffs' and Florida Class Members' personal information would not have been used, collected, or disclosed to third parties.

813. As a direct and proximate result of Defendants' negligence per se, Florida Plaintiffs and Florida Class Members have been injured and are entitled to damages in an amount to be proven at trial.

814. Florida Plaintiffs demand judgment against Defendants for injunctive relief and for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## D.    GEORGIA CLAIMS

### CLAIM 10 — GEORGIA NEGLIGENCE
**(Against All Defendants by Plaintiffs E.B. and A.K., through their respective parents, and the Georgia Class)**

815.   Plaintiffs E.B. and A.K., through their respective parents ("Georgia Plaintiffs"), and Georgia Class Members incorporate the foregoing allegations as if fully set forth herein.

816.   At all relevant times, Defendants developed, set up, managed, maintained, operated, supervised, controlled, and benefited from Georgia Plaintiffs' and Georgia Class Members' use of TikTok.

817.   Defendants owed Georgia Plaintiffs and Georgia Class Members a duty to exercise reasonable care in TikTok's development, setup, management, maintenance, operation, supervision, and control to protect its under-13 users' personal information.

818.   Defendants also owed Georgia Plaintiffs and Georgia Class Members a duty under COPPA not to collect, use, or disclose under-13 users' personal information without notifying parents and obtaining verifiable parental consent.

819.   Georgia Plaintiffs and Georgia Class Members are within the class of persons that COPPA was intended to protect.

820.   Defendants also owed a special relationship duty to Georgia Plaintiffs and Georgia Class Members to protect them against harm caused by TikTok. Georgia Plaintiffs and Georgia Class Members, as children, are comparatively vulnerable and depend on Defendants for a safe environment on TikTok, and Defendants have the superior ability and control over TikTok to provide that safety on its app. The special relationship Georgia Plaintiffs and Georgia Class Members have with Defendants substantially benefits Defendants through profits and growth in users and user activity. Defendants could not successfully operate without the increase in users and user activity generated by children.

821.   Defendants created TikTok and directed its activity through advertisements to minor users, including users under 13 years old. This created a special duty to

141

exercise reasonable care to protect the minors from foreseeable harm while the minors were on TikTok.

822. Defendants have voluntarily undertaken a responsibility to keep children safe on TikTok.

823. Defendants are responsible not only for the result of their willful acts, but also for injuries occasioned to Georgia Plaintiffs and Georgia Members by Defendants' want of ordinary care and/or skill in the management of their property.

824. Georgia Plaintiffs and Georgia Class Members were foreseeable users of TikTok.

825. Defendants operate a website or online service directed at children under the age of 13, as defined by COPPA.

826. Defendants had actual knowledge that children under the age of 13, such as Georgia Plaintiffs and Georgia Class Members, were using and would use Full Access Platform.

827. Defendants invited, solicited, and encouraged the fact, extent, and manner of Georgia Plaintiffs' and Georgia Class Members' use of TikTok.

828. Defendants had actual knowledge that the use of TikTok (as developed, set up, managed, maintained, supervised, and operated by Defendants) would result in Defendants collecting and using Georgia Plaintiffs' and Georgia Class Members' personal information.

829. At all relevant times, Defendants had actual knowledge that TikTok (as developed, setup, managed, maintained, supervised, and operated by that Defendant) posed unreasonable risks of harm to youth such as Georgia Plaintiffs and Georgia Class Members through the collection, use, and/or disclosure of their personal information. Those risks were known and knowable, including in light of the multiple previous violations of minor children's privacy on TikTok in the last decade.

830. Defendants had actual knowledge that their under-13 users would attempt to create regular accounts instead of only trying to create Kids Mode accounts.

831. Defendants had actual knowledge that when under-13 users created regular accounts instead of Kids Mode accounts, their personal information would be treated without the adequate protections warranted for personal information of under-13 users online.

832. Defendants had actual knowledge that its "age gate" features were not reasonably adequate to protect the privacy of children's information on TikTok.

833. Defendants had actual knowledge that it collected personal information as defined by COPPA from users under the age of 13.

834. Due to Defendants' control over how youth set up accounts on TikTok, Defendants injured Georgia Plaintiffs and Georgia Class Members by violating their privacy.

835. Defendants could have avoided Georgia Plaintiffs' and Georgia Class Members' injuries with minimal cost, including, for example, by providing direct parental notice and requiring verifiable parental consent for its users.

836. Imposing a duty on Defendants would benefit the community at large.

837. Imposing a duty on Defendants would not be burdensome to them because they have the technological and financial means to avoid the risks of harm to Georgia Plaintiffs and Georgia Class Members.

838. Defendants owed a heightened duty of care to youth users of TikTok because children have a diminished capacity to understand how companies collect and use their personal information and for what purpose. Additionally, Defendants owed a heightened duty of care to youth users of TikTok because it interacts directly with children out of the immediate oversight of their parents. Defendants were at all times the more sophisticated party and better positioned to understand children's privacy rights and their obligations to protect those rights adequately.

839. Defendants breached their duty of care that they owed Georgia Plaintiffs and Georgia Class Members through their affirmative malfeasance, actions, business decisions, and policies in TikTok's development, setup, management, maintenance,

operation, supervision, and control. These breaches are based on Defendants' own actions in managing their own property—TikTok—that they made available to the public, independent of any actions taken by a third party. Those breaches include, but are not limited to:

a. Facilitating use of TikTok by youth under the age of 13, including by adopting protocols that do not ask for or verify the age or identity of users or by adopting ineffective age and identity verification protocols,

b. Knowingly collecting personal information from youth under the age of 13 in knowing or reckless disregard of the fact that direct notice had not been provided to parents and verifiable consent had not been obtained from parents,

c. Willfully ignoring that significant numbers of under-13 users were maintaining regular TikTok accounts in violation of TikTok's policies and the 2019 Consent Decree, and

d. Instructing employees not to take action to disable regular TikTok accounts for users whom employees reasonably believed were under 13 years old.

840. Defendants have breached their duty of care that they owed to Georgia Plaintiffs and Georgia Class Members through their non-feasance, failure to act, and omissions in the development, setup, management, maintenance, operation, supervision, and control of TikTok. These breaches are based on the Defendants' actions in managing their property—TikTok—that they made available to the public, independent of any actions taken by a third party. Those breaches include:

a. Failing to implement effective protocols to block users under the age of 13,

b. Failing to implement effective protocols to prevent the collecting, sharing, and selling of the personal information of users under the age of 13 without prior affirmative authorization, and

c. Failing to implement effective parental controls.

841. These breaches also violate COPPA since Defendants collect, use, and disclose under-13 users' personal information without notifying parents and obtaining

verifiable parental consent.

842. Defendants' violation of COPPA constitutes negligence per se.

843. A reasonable company under the same or similar circumstances as Defendants would have developed, set up, managed, maintained, supervised, and operated its platforms in a manner that is safer for and more protective of youth users like Pennsylvania Plaintiffs.

844. At all relevant times, Georgia Plaintiffs and Georgia Class Members used TikTok in the manner it was intended to be used.

845. As a direct and proximate result of Defendants' breach of one or more of its duties, Georgia Plaintiffs and Georgia Class Members were harmed by Defendants' violation of Georgia Plaintiffs' and Georgia Class Members' privacy and the loss of control over when, how, and for what purpose their personal information is collected, used, and disclosed.

846. The harm to the Georgia Plaintiffs and Georgia Class Members is the type of harm that COPPA was intended to prevent.

847. The Georgia Plaintiffs and Georgia Class Members do not allege any harm or injury constituting a personal injury or emotional distress and do not seek damages based on those types of injuries.

848. Defendants' breach of one or more of their duties was a substantial factor in causing harms and injuries to Georgia Plaintiffs and Georgia Class Members.

849. But for Defendants' violation of the applicable laws and regulations related to COPPA, Georgia Plaintiffs' and Georgia Class Members' personal information would not have been used, collected, or disclosed to third parties.

850. As a direct and proximate result of Defendants' negligence per se, Georgia Plaintiffs and Georgia Class Members have been injured and are entitled to damages in an amount to be proven at trial.

851. Georgia Plaintiffs demand judgment against Defendants for injunctive relief and for compensatory, treble, and punitive damages, together with interest, costs

of suit, attorneys' fees, and all such other relief as the Court deems proper.

**CLAIM 11 — GEORGIA FAIR BUSINESS PRACTICES ACT, GA. CODE ANN. § 10-1-390 *ET SEQ.***
**(Against All Defendants by Plaintiff E.B. and A.K., through their respective parents, and the Georgia Class)**

852.   The Georgia Plaintiffs and Members of the Georgia Class incorporate the foregoing allegations as if fully set forth herein.

853.   The Georgia Plaintiffs and Members of the Georgia Class are or were residents of Georgia and used TikTok while under the age of 13.

854.   Ga. Code Ann. § 10-1-393(a) provides that "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful."

855.   At all times mentioned herein, Defendants each engaged in "trade" or "commerce" in Georgia in that Defendants each engaged in the advertising, offering for sale, sale, and distribution of property or any other articles, commodities, or things of value in Georgia.

856.   Defendants violated Ga. Code Ann. § 10-1-390, *et seq.* by engaging in the unfair acts or practices proscribed by Ga. Code Ann. § 10-1-393 as outlined herein.

857.   Defendants engaged in "unfair" business acts and/or practices. Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the personal information of the Georgia Plaintiffs and Georgia Class Members without notifying their parents and obtaining verifiable parental consent and by tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain. These practices are unethical, unscrupulous, and substantially injurious to children, and thus constitutes an unfair practice. The harm these practices caused to the Georgia Plaintiffs and Georgia Class Members outweigh their utility, if any.

858.   As outlined herein, TikTok represented that TikTok Kids Mode was designed for children under 13 years old by representing to children who identified

146

themselves as being under 13 years old that the child is "about to access a TikTok experience designed just for you." In Kids Mode, a user can view videos, but cannot upload videos, post information publicly, or message other users.

859. TikTok Kids Mode is not designed to be legally appropriate for children under 13 years old. In fact, TikTok Kids Mode violates COPPA and the privacy rights of children under 13 years old, including by collecting and using their personal information without providing direct notice to their parents or obtaining parental consent.

860. Defendants each engaged in consumer-oriented acts through the offer, promotion, and/or distribution of the TikTok app, which significantly impacted the public because TikTok is used nationwide, including in Georgia, and there are millions of users, including the Georgia Plaintiffs and Members of the Georgia Class.

861. Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the personal information of children under 13 years old and tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain.

862. As outlined herein, Defendants at all times had actual knowledge of their own non-compliance with COPPA and other applicable privacy-related laws. Further, Defendants at all times had actual knowledge of their collection of the personal information of the Georgia Plaintiffs and the Georgia Class Members and the tracking, profiling, and targeting of those children for lucrative behavioral advertising.

863. As outlined herein, Defendants intentionally designed TikTok to, among other things, attract children under 13 by making child-directed content available to them so that TikTok could collect the personal information for substantial commercial gain.

864. TikTok was aware at all times that a significant portion of its users were under the age of 13 and nonetheless collected the personal information of those children for the purpose of serving those children behavioral advertising for substantial

147

commercial gain. After entering into a Permanent Injunction with the United States in 2019 intended to prohibit Defendants from their continued collection or use of the personal information of children under the age of 13, Defendants purposefully sought to undermine their compliance through, among other practices, implementation of a woefully inadequate age-gating system, and monitoring policies and procedures designed to allow them to continue knowingly collecting and using the personal information of children.

865.   In particular, Defendants systematically collected and/or used personal information from children under 13 years old in violation of COPPA, and therefore the FTC Act, by:

a.   Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13 years old, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

b.   b.   Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13 years old, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(b) and (c) of COPPA, 16 C.F.R. § 312.4(b)-(c);

c.   Failing to obtain verifiable parental consent before any collection or use of personal information from children under 13 years old, in violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

d.   Failing to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of personal information collected from children under 13 years old, in violation of Section 312.8 of COPPA, 16 C.F.R. § 312.8.

866.   Violations of COPPA and the accompanying FTC regulations "shall be

148

treated as a violation of a rule defining an unfair … act or practice prescribed under 15 U.S.C. § 57a(a)(1)(B).” 15 U.S.C. § 6502(c). These rules define unfair acts or practices in or affecting commerce within the meaning of 15 U.S.C. § 45(a)(1), which is the model for the various consumer protection statutes in the several states, including the Ga. Code Ann. § 10-1-390, *et seq.* Ga. Code Ann. § 10-1-391(b) states: “It is the intent of the General Assembly that this part be interpreted and construed consistently with interpretations given by the Federal Trade Commission in the federal courts pursuant to Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. Section 45(a)(1)), as from time to time amended.”

867.   Accordingly, Defendants engaged in unfair and unlawful trade acts or practices in violation of Ga. Code Ann. § 10-1-390, *et seq.*, which is modeled after, proscribes the same conduct as, and gives deference to the definitions of the FTC Act.

868.   Defendants’ conduct is unfair, immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, and there are no greater countervailing benefits to consumers or competition. Further, the Georgia Plaintiffs and Members of the Georgia Class could not have reasonably avoided injury because Defendants each took advantage of the lack of knowledge, ability, experience, and/or capacity of consumers—in this case children under 13 years old—to their detriment.

869.   Defendants willfully engaged in the unfair and unlawful acts described herein and knew or recklessly disregarded the fact that they violated Ga. Code Ann. § 10-1-390, *et seq.*

870.   The Georgia Plaintiffs and Members of the Georgia Class were harmed by Defendants’ practices described herein, which were a substantial factor and caused injury in fact and actual damages to the Georgia Plaintiffs and Members of the Georgia Class.

871.   As a direct and proximate result of Defendants’ unfair and unlawful acts and practices in violation of Ga. Code Ann. § 10-1-390, *et seq.*, the Georgia Plaintiffs and Members of the Georgia Class have suffered and will continue to suffer an

ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described herein, including, inter alia, the loss of the value and/or diminishment in value of their personal information and the loss of the ability to control the use of their personal information, which allowed Defendants to profit at the expense of the Georgia Plaintiffs and Members of the Georgia Class.

872. As outlined herein, there is tangible value in the Georgia Plaintiffs' and Members of the Georgia Class's personal information. The Georgia Plaintiffs and Members of the Georgia Class have lost the opportunity to receive value in exchange for their personal information.

873. Defendants' monetization of the Georgia Plaintiffs' and Members of the Georgia Class's personal information demonstrates that there is a market for their personal information.

874. The Georgia Plaintiffs' and Members of the Georgia Class's personal information is now in the possession of Defendants, who have used and will use it for their financial gain.

875. Defendants' retention of the Georgia Plaintiffs' and Members of the Georgia class's personal information presents a continuing risk to them as well as the general public. The Georgia Plaintiffs and Members of the Georgia Class seek relief for the injuries they have suffered as a result of Defendants' unfair and unlawful acts and practices, as provided by Ga. Code Ann. § 10-1-390, *et seq.*, and applicable law, including all actual damages and attorneys' fees and costs, treble damages, statutory damages, and restitution, as well as an injunction requiring Defendants to each permanently delete, destroy or otherwise sequester the personal information collected without parental consent, requiring Defendants to provide a complete audit and accounting of the uses of the personal information by them and any other third parties, and other appropriate injunctive and/or declaratory relief.

## E.    MISSOURI CLAIMS

### CLAIM 12 — MISSOURI NEGLIGENCE
**(Against All Defendants by Plaintiffs A.L. and A.B., by and through their parents, and the Missouri Class)**

876.    Plaintiff A.L., a minor, by and through their parent Tatum Dunne, and Plaintiff A.B., a minor, by and through their parent Christina Middleton (the "Missouri Plaintiffs"), and Missouri Class Members incorporate the foregoing allegations as if fully set forth herein.

877.    At all relevant times, Defendants developed, set up, managed, maintained, operated, supervised, controlled, and benefited from Missouri Plaintiffs' and Missouri Class Members' use of TikTok.

878.    Defendants owed Missouri Plaintiffs and Missouri Class Members a duty to exercise reasonable care in TikTok's development, setup, management, maintenance, operation, supervision, and control to protect its under-13 users' personal information.

879.    Defendants also owed Missouri Plaintiffs and Missouri Class Members a duty under COPPA not to collect, use, or disclose under-13 users' personal information without notifying parents and obtaining verifiable parental consent.

880.    Missouri Plaintiffs and Missouri Class Members are within the class of persons that COPPA was intended to protect.

881.    Defendants also owed a special relationship duty to Missouri Plaintiffs and Missouri Class Members to protect them against harm caused by TikTok. Missouri Plaintiffs and Missouri Class Members, as children, are comparatively vulnerable and depend on Defendants for a safe environment on TikTok, and Defendants have the superior ability and control over TikTok to provide that safety on its app. The special relationship Missouri Plaintiffs and Missouri Class Members have with Defendants substantially benefits Defendants through profits and growth in users and user activity. Defendants could not successfully operate without the increase in users and user activity generated by children.

882.    Defendants created TikTok and directed its activity through advertisements

151

to minor users, including users under 13 years old. This created a special duty to exercise reasonable care to protect the minors from foreseeable harm while the minors were on TikTok.

883. Defendants have voluntarily undertaken a responsibility to keep children safe on TikTok.

884. Defendants are responsible not only for the result of their willful acts, but also for injuries occasioned to Missouri Plaintiffs and Missouri Members by Defendants' want of ordinary care and/or skill in the management of their property.

885. Missouri Plaintiffs and Missouri Class Members were foreseeable users of TikTok.

886. Defendants operate a website or online service directed at children under the age of 13, as defined by COPPA.

887. Defendants had actual knowledge that children under the age of 13, such as Missouri Plaintiffs and Missouri Class Members, were using and would use Full Access Platform.

888. Defendants invited, solicited, and encouraged, the fact, extent, and manner of Missouri Plaintiffs' and Missouri Class Members' use of TikTok.

889. Defendants had actual knowledge that the use of TikTok (as developed, set up, managed, maintained, supervised, and operated by Defendants) would result in Defendants collecting and using Missouri Plaintiffs' and Missouri Class Members' personal information.

890. At all relevant times, Defendants had actual knowledge that TikTok (as developed, setup, managed, maintained, supervised, and operated by that Defendant) posed unreasonable risks of harm to youth such as Missouri Plaintiffs and Missouri Class Members through the collection, use, and/or disclosure of their personal information. Those risks were known and knowable, including in light of the multiple previous violations of minor children's privacy on TikTok in the last decade.

891. Defendants had actual knowledge that their under-13 users would attempt

152

to create regular accounts instead of only trying to create Kids Mode accounts.

892. Defendants had actual knowledge that when under-13 users created regular accounts instead of Kids Mode accounts, their personal information would be treated without the adequate protections warranted for personal information of under-13 users online.

893. Defendants had actual knowledge that its "age gate" features were not reasonably adequate to protect the privacy of children's information on TikTok.

894. Defendants had actual knowledge that it collected personal information as defined by COPPA from users under the age of 13.

895. Due to Defendants' control over how youth set up accounts on TikTok, Defendants injured Missouri Plaintiffs and Missouri Class Members by violating their privacy.

896. Defendants could have avoided Missouri Plaintiffs' and Missouri Class Members' injuries with minimal cost, including, for example, by providing direct parental notice and requiring verifiable parental consent for its users.

897. Imposing a duty on Defendants would benefit the community at large.

898. Imposing a duty on Defendants would not be burdensome to them because they have the technological and financial means to avoid the risks of harm to Missouri Plaintiffs and Missouri Class Members.

899. Defendants owed a heightened duty of care to youth users of TikTok because children have a diminished capacity to understand how companies collect and use their personal information and for what purpose. Additionally, Defendants owed a heightened duty of care to youth users of TikTok because it interacts directly with children out of the immediate oversight of their parents. Defendants were at all times the more sophisticated party and better positioned to understand children's privacy rights and their obligations to protect those rights adequately.

900. Defendants breached their duty of care that they owed Missouri Plaintiffs and Missouri Class Members through their affirmative malfeasance, actions, business

153

decisions, and policies in TikTok's development, setup, management, maintenance, operation, supervision, and control. These breaches are based on Defendants' own actions in managing their own property—TikTok—that they made available to the public, independent of any actions taken by a third party. Those breaches include, but are not limited to:

    a.  Facilitating use of TikTok by youth under the age of 13, including by adopting protocols that do not ask for or verify the age or identity of users or by adopting ineffective age and identity verification protocols,

    b.  Knowingly collecting personal information from youth under the age of 13 in knowing or reckless disregard of the fact that direct notice had not been provided to parents and verifiable consent had not been obtained from parents,

    c.  Willfully ignoring that significant numbers of under-13 users were maintaining regular TikTok accounts in violation of TikTok's policies and the 2019 Consent Decree, and

    d.  Instructing employees not to take action to disable regular TikTok accounts for users whom employees reasonably believed were under 13 years old.

901.   Defendants have breached their duty of care that they owed to Missouri Plaintiffs and Missouri Class Members through their non-feasance, failure to act, and omissions in the development, setup, management, maintenance, operation, supervision, and control of TikTok. These breaches are based on the Defendants' actions in managing their property—TikTok—that they made available to the public, independent of any actions taken by a third party. Those breaches include:

    a.  Failing to implement effective protocols to block users under the age of 13,

    b.  Failing to implement effective protocols to prevent the collecting, sharing, and selling of the personal information of users under the age of 13 without prior affirmative authorization, and

    c.  Failing to implement effective parental controls.

902.   These breaches also violate COPPA since Defendants collect, use, and

154

disclose under-13 users' personal information without notifying parents and obtaining verifiable parental consent.

903. Defendants' violation of COPPA constitutes negligence per se.

904. A reasonable company under the same or similar circumstances as Defendants would have developed, set up, managed, maintained, supervised, and operated its platforms in a manner that is safer for and more protective of youth users like Missouri Plaintiffs.

905. At all relevant times, Missouri Plaintiffs and Missouri Class Members used TikTok in the manner it was intended to be used.

906. As a direct and proximate result of Defendants' breach of one or more of its duties, Missouri Plaintiffs and Missouri Class Members were harmed by Defendants' violation of Missouri Plaintiffs' and Missouri Class Members' privacy and the loss of control over when, how, and for what purpose their personal information is collected, used, and disclosed.

907. The harm to the Missouri Plaintiffs and Missouri Class Members is the type of harm that COPPA was intended to prevent.

908. The Missouri Plaintiffs and Missouri Class Members do not allege any harm or injury constituting a personal injury or emotional distress and do not seek damages based on those types of injuries.

909. Defendants' breach of one or more of their duties was a substantial factor in causing harms and injuries to Missouri Plaintiffs and Missouri Class Members.

910. But for Defendants' violation of the applicable laws and regulations related to COPPA, Missouri Plaintiffs' and Missouri Class Members' personal information would not have been used, collected, or disclosed to third parties.

911. As a direct and proximate result of Defendants' negligence per se, Missouri Plaintiffs and Missouri Class Members have been injured and are entitled to damages in an amount to be proven at trial.

912. Missouri Plaintiffs demand judgment against Defendants for injunctive

155

relief and for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## CLAIM 13 — MISSOURI MERCHANDISING PRACTICES ACT (MMPA), MO. REV. STAT. ANN. CH. 407
### (Against All Defendants by Plaintiffs A.L. and A.B., by and through their parents, and the Missouri Class)

913.   The Missouri Plaintiffs and Members of the Missouri Class incorporate the foregoing allegations as if fully set forth herein.

914.   The Missouri Plaintiffs and Members of the Missouri Class are or were residents of Missouri and used TikTok while under the age of 13.

915.   Mo. Rev. Stat. Ann. § 407.020 provides that "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri, is declared to be an unlawful practice."

916.   At all times mentioned herein, Defendants each engaged in "trade" or "commerce" in Missouri in that Defendants each engaged in the advertising, offering for sale, sale, and distribution of property or any other articles, commodities, or things of value in Missouri.

917.   Defendants violated Mo. Rev. Stat. Ann. ch. 407 by engaging in the unfair acts or practices proscribed by Mo. Rev. Stat. Ann. § 407.020 as outlined herein.

918.   Defendants engaged in "unfair" business acts and/or practices. Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the personal information of the Missouri Plaintiffs and Missouri Class Members without notifying their parents and obtaining verifiable parental consent and by tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain. These practices are unethical, unscrupulous, and substantially injurious to children, and thus constitutes an unfair practice. The harm

156

these practices caused to the Missouri Plaintiffs and Missouri Class Members outweigh their utility, if any.

919. As outlined herein, TikTok represented that TikTok Kids Mode was designed for children under 13 years old by representing to children who identified themselves as being under 13 years old that the child is "about to access a TikTok experience designed just for you." In Kids Mode, a user can view videos, but cannot upload videos, post information publicly, or message other users.

920. TikTok Kids Mode is not designed to be legally appropriate for children under 13 years old. In fact, TikTok Kids Mode violates COPPA and the privacy rights of children under 13 years old, including by collecting and using their personal information without providing direct notice to their parents or obtaining parental consent.

921. Defendants each engaged in consumer-oriented acts through the offer, promotion, and/or distribution of the TikTok app, which significantly impacted the public because TikTok is used nationwide, including in Missouri, and there are millions of users, including the Missouri Plaintiffs and Members of the Missouri Class.

922. Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the personal information of children under 13 years old and tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain.

923. As outlined herein, Defendants at all times had actual knowledge of their own non-compliance with COPPA and other applicable privacy-related laws. Further, Defendants at all times had actual knowledge that they were collecting Private Information from users under the age of 13 including the Missouri Plaintiffs and the Missouri Class Members and for purposes of tracking, profiling, and targeting of those children for lucrative behavioral advertising.

924. As outlined herein, Defendants intentionally designed TikTok to, among other things, attract children under 13 by making child-directed content available to

them so that TikTok could collect the personal information for substantial commercial gain.

925.   TikTok was aware at all times that a significant portion of its users were under the age of 13 and nonetheless collected the personal information of those children for the purpose of serving those children behavioral advertising for substantial commercial gain. After entering into a Permanent Injunction with the United States in 2019 intended to prohibit Defendants from their continued collection or use of the personal information of children under the age of 13, Defendants purposefully sought to undermine their compliance through, among other practices, implementation of a woefully inadequate age-gating system, and monitoring policies and procedures designed to allow them to continue knowingly collecting and using the personal information of children.

926.   In particular, Defendants systematically collected and/or used personal information from children under 13 years old in violation of COPPA, and therefore the FTC Act, by:

   a. Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13 years old, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

   b. Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13 years old, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(b) and (c) of COPPA, 16 C.F.R. § 312.4(b)-(c);

   c. Failing to obtain verifiable parental consent before any collection or use of personal information from children under 13 years old, in violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

158

d. Failing to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of personal information collected from children under 13 years old, in violation of Section 312.8 of COPPA, 16 C.F.R. § 312.8.

927. Violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair … act or practice prescribed under 15 U.S.C. § 57a(a)(1)(B)." 15 U.S.C. § 6502(c). These rules define unfair acts or practices in or affecting commerce within the meaning of 15 U.S.C. § 45(a)(1), which is the model for the various consumer protection statutes in the several states.[100]

928. Accordingly, Defendants engaged in unfair and unlawful trade acts or practices in violation of Mo. Rev. Stat. Ann. ch. 407, which proscribes the similar conduct as the FTC Act.

929. Defendants' conduct is unfair, immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, and there are no greater countervailing benefits to consumers or competition. Further, the Missouri Plaintiffs and Members of the Missouri Class could not have reasonably avoided injury because Defendants each took advantage of the lack of knowledge, ability, experience, and/or capacity of consumers—in this case children under 13 years old—to their detriment.

930. Defendants willfully engaged in the unfair and unlawful acts described herein and knew or recklessly disregarded the fact that they violated Mo. Rev. Stat. Ann. ch. 407.

931. The Missouri Plaintiffs and Members of the Missouri Class were harmed by Defendants' practices described herein, which were a substantial factor and caused injury in fact and actual damages to the Missouri Plaintiffs and Members of the Missouri Class.

932. As a direct and proximate result of Defendants' unfair and unlawful acts

---

[100] *See* 16 C.F.R. § 312.1 (COPPA "prohibits unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure of personal information from and about children on the internet.").

and practices in violation of Mo. Rev. Stat. Ann. ch. 407, the Missouri Plaintiffs and Members of the Missouri Class have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described herein, including, inter alia, the loss of the value and/or diminishment in value of their personal information and the loss of the ability to control the use of their personal information, which allowed Defendants to profit at the expense of the Missouri Plaintiffs and Members of the Missouri Class.

933.   As outlined herein, there is tangible value in the Missouri Plaintiffs' and Members of the Missouri Class's personal information. The Missouri Plaintiffs and Members of the Missouri Class have lost the opportunity to receive value in exchange for their personal information.

934.   Defendants' monetization of the Missouri Plaintiffs' and Members of the Missouri Class's personal information demonstrates that there is a market for their personal information.

935.   The Missouri Plaintiffs' and Members of the Missouri Class's personal information is now in the possession of Defendants, who have used and will use it for their financial gain.

936.   Defendants' retention of the Missouri Plaintiffs' and Members of the Missouri class's personal information presents a continuing risk to them as well as the general public. The Missouri Plaintiffs and Members of the Missouri Class seek relief for the injuries they have suffered as a result of Defendants' unfair and unlawful acts and practices, as provided by Mo. Rev. Stat. Ann. ch. 407, and applicable law, including all actual damages and attorneys' fees and costs, treble damages, statutory damages, and restitution, as well as an injunction requiring Defendants to each permanently delete, destroy or otherwise sequester the personal information collected without parental consent, requiring Defendants to provide a complete audit and accounting of the uses of the personal information by them and any other third parties, and other appropriate injunctive and/or declaratory relief.

## F.    NEW YORK CLAIMS

### CLAIM 14 — NEW YORK CIVIL RIGHTS LAW §§ 50-51
**(Against All Defendants by Plaintiffs I.T., M.G., and V.M., by and through their parents, and the New York Class)**

937.    Plaintiff I.T., a minor, by and through their parent Yeni Castro; Plaintiff M.G., a minor, by and through their parent and guardian ad litem, Valerie Gates; Plaintiff V.M., a minor, by and through their parent Ebony Nielsen (the "New York Plaintiffs"); and Members of the New York Class re-allege the foregoing allegations as if fully set forth herein.

938.    The New York Plaintiffs and Members of the New York Class are or were residents of New York.

939.    TikTok has violated N.Y. Civil Rights Law §§ 50-51 by invading the privacy of the New York Plaintiffs and Members of the New York Class and misappropriating their likeness within the State of New York.

940.    At no point did TikTok receive parental permission or consent, be it written or otherwise, to use the identities, photographs, likenesses, and personal information of Plaintiffs' and Members of the New York Class in connection with TikTok's business. TikTok nonetheless collected first and last name; online contact information; screen or user name functioning in the same manner as online contact information; telephone number; persistent identifiers (including IP address and "cookies"); photo, video, and audio files containing a child's image or voice; and unique device identifiers. TikTok used the personal information it collected from children to aid in its tracking, profiling, and targeting of those children for lucrative behavioral advertising.

941.    At relevant times, TikTok was aware that it never received the permission or consent of the New York Plaintiffs and Members of the New York Class to use their identities, photographs, likenesses, and other personal information in connection with TikTok's business.

942.    As outlined herein, TikTok at all times had actual knowledge of its own non-compliance with COPPA and other applicable privacy-related laws. Further,

161

TikTok at all times had actual knowledge of its own collection of the personal information from the New York Plaintiffs and New York Class Members and the tracking, profiling, and targeting of those children for lucrative behavioral advertising for financial gain.

943. At no point did TikTok compensate the New York Plaintiffs or Members of the New York Class for the unauthorized use of the identities, photographs, likenesses, and personal information of New York Plaintiffs' and Members of the New York Class in connection with TikTok's business.

944. TikTok used the identities, photographs, likenesses, and personal information of the New York Plaintiffs or Members of the New York Class in connection with its business for the purposes of trade. TikTok has received revenues and profits from unjustly and illegally collecting and using the identities, photographs, likenesses, or personal information of children under the age of 13 to build profiles and target advertisements to those children.

945. TikTok's primary source of income is advertising revenue, earned by showing third-party advertisements to users on its platform. TikTok generates this revenue via tracking, profiling, and targeting advertising based on personal information it collects from children.

946. There is no valid privilege or authorization permitting TikTok to use the identities, photographs, likenesses, or personal information of the New York Plaintiffs or the New York Class Members in relation to its business activities.

947. As a direct and proximate result of TikTok's violation of the rights of privacy and publicity under §§ 50 and 51 of the N.Y. Civil Rights Act, the New York Plaintiffs and Members of the New York Class have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described herein, including, inter alia, the loss of the value and/or diminishment in value of their personal information and the loss of the ability to control the use of their personal information.

162

948.    In addition, and pursuant to § 51 of the N.Y. Civil Rights Act, the New York Plaintiffs and Members of the New York Class hereby request an Order permanently enjoining TikTok from violating their right to privacy and publicity.

## CLAIM 15 — NEW YORK NEGLIGENCE
### (Against All Defendants by Plaintiffs I.T., M.G., and V.M., by and through their parents, and the New York Class)

949.    The New York Plaintiffs and New York Class Members incorporate the foregoing allegations as if fully set forth herein.

950.    At all relevant times, Defendants developed, set up, managed, maintained, operated, supervised, controlled, and benefited from New York Plaintiffs' and New York Class Members' use of TikTok.

951.    Defendants owed New York Plaintiffs and New York Class Members a duty to exercise reasonable care in TikTok's development, setup, management, maintenance, operation, supervision, and control to protect its under-13 users' personal information.

952.    Defendants also owed New York Plaintiffs and New York Class Members a duty under COPPA not to collect, use, or disclose under-13 users' personal information without notifying parents and obtaining verifiable parental consent.

953.    New York Plaintiffs and New York Class Members are within the class of persons that COPPA was intended to protect.

954.    Defendants also owed a special relationship duty to New York Plaintiffs and New York Class Members to protect them against harm caused by TikTok. New York Plaintiffs and New York Class Members, as children, are comparatively vulnerable and depend on Defendants for a safe environment on TikTok, and Defendants have the superior ability and control over TikTok to provide that safety on its app. The special relationship New York Plaintiffs and New York Class Members have with Defendants substantially benefits Defendants through profits and growth in users and user activity. Defendants could not successfully operate without the increase in users and user activity generated by children.

163

955. Defendants created TikTok and directed its activity through advertisements to minor users, including users under 13 years old. This created a special duty to exercise reasonable care to protect the minors from foreseeable harm while the minors were on TikTok.

956. Defendants have voluntarily undertaken a responsibility to keep children safe on TikTok.

957. Defendants are responsible not only for the result of their willful acts, but also for injuries occasioned to New York Plaintiffs and New York Members by Defendants' want of ordinary care and/or skill in the management of their property.

958. New York Plaintiffs and New York Class Members were foreseeable users of TikTok.

959. Defendants operate a website or online service directed at children under the age of 13, as defined by COPPA.

960. Defendants had actual knowledge that children under the age of 13, such as New York Plaintiffs and New York Class Members, were using and would use Full Access Platform.

961. Defendants invited, solicited, and encouraged the fact, extent, and manner of New York Plaintiffs' and New York Class Members' use of TikTok.

962. Defendants had actual knowledge that the use of TikTok (as developed, set up, managed, maintained, supervised, and operated by Defendants) would result in Defendants collecting and using New York Plaintiffs' and New York Class Members' personal information in a reasonably foreseeable manner.

963. At all relevant times, Defendants had actual knowledge that TikTok (as developed, setup, managed, maintained, supervised, and operated by that Defendant) posed unreasonable risks of harm to youth such as New York Plaintiffs and New York Class Members through the collection, use, and/or disclosure of their personal information. Those risks were known and knowable, including in light of the multiple previous violations of minor children's privacy on TikTok in the last decade.

964. Defendants had actual knowledge that their under-13 users would attempt to create regular accounts instead of only trying to create Kids Mode accounts.

965. Defendants had actual knowledge that when under-13 users created regular accounts instead of Kids Mode accounts, their personal information would be treated without the adequate protections warranted for personal information of under-13 users online.

966. Defendants had actual knowledge that its "age gate" features were not reasonably adequate to protect the privacy of children's information on TikTok.

967. Defendants had actual knowledge that it collected personal information as defined by COPPA from users under the age of 13.

968. Due to Defendants' control over how youth set up accounts on TikTok, Defendants injured New York Plaintiffs and New York Class Members by violating their privacy.

969. Defendants could have avoided New York Plaintiffs' and New York Class Members' injuries with minimal cost, including, for example, by providing direct parental notice and requiring verifiable parental consent for its users.

970. Imposing a duty on Defendants would benefit the community at large.

971. Imposing a duty on Defendants would not be burdensome to them because they have the technological and financial means to avoid the risks of harm to New York Plaintiffs and New York Class Members.

972. Defendants owed a heightened duty of care to youth users of TikTok because children have a diminished capacity to understand how companies collect and use their personal information and for what purpose. Additionally, Defendants owed a heightened duty of care to youth users of TikTok because it interacts directly with children out of the immediate oversight of their parents. Defendants were at all times the more sophisticated party and better positioned to understand children's privacy rights and their obligations to protect those rights adequately.

973. Defendants breached their duty of care that they owed New York Plaintiffs

165

and New York Class Members through their affirmative malfeasance, actions, business decisions, and policies in TikTok's development, setup, management, maintenance, operation, supervision, and control. These breaches are based on Defendants' own actions in managing their own property—TikTok—that they made available to the public, independent of any actions taken by a third party. Those breaches include, but are not limited to:

    a. Facilitating use of TikTok by youth under the age of 13, including by adopting protocols that do not ask for or verify the age or identity of users or by adopting ineffective age and identity verification protocols,

    b. Knowingly collecting personal information from youth under the age of 13 in knowing or reckless disregard of the fact that direct notice had not been provided to parents and verifiable consent had not been obtained from parents,

    c. Willfully ignoring that significant numbers of under-13 users were maintaining regular TikTok accounts in violation of TikTok's policies and the 2019 Consent Decree, and

    d. Instructing employees not to take action to disable regular TikTok accounts for users whom employees reasonably believed were under 13 years old.

974. Defendants have breached their duty of care that they owed to New York Plaintiffs and New York Class Members through their non-feasance, failure to act, and omissions in the development, setup, management, maintenance, operation, supervision, and control of TikTok. These breaches are based on the Defendants' actions in managing their property—TikTok—that they made available to the public, independent of any actions taken by a third party. Those breaches include:

    a. Failing to implement effective protocols to block users under the age of 13,

    b. b) Failing to implement effective protocols to prevent the collecting, sharing, and selling of the personal information of users under the age of 13 without prior affirmative authorization, and

    c. Failing to implement effective parental controls.

975. These breaches also violate COPPA since Defendants collect, use, and disclose under-13 users' personal information without notifying parents and obtaining verifiable parental consent.

976. Defendants' violation of COPPA constitutes negligence per se.

977. A reasonable company under the same or similar circumstances as Defendants would have developed, set up, managed, maintained, supervised, and operated its platforms in a manner that is safer for and more protective of youth users like New York Plaintiffs.

978. At all relevant times, New York Plaintiffs and New York Class Members used TikTok in the manner it was intended to be used.

979. As a direct and proximate result of Defendants' breach of one or more of its duties, New York Plaintiffs and New York Class Members were harmed by Defendants' violation of New York Plaintiffs' and New York Class Members' privacy and the loss of control over when, how, and for what purpose their personal information is collected, used, and disclosed.

980. The harm to the New York Plaintiffs and New York Class Members is the type of harm that COPPA was intended to prevent.

981. The New York Plaintiffs and New York Class Members do not allege any harm or injury constituting a personal injury or emotional distress and do not seek damages based on those types of injuries.

982. Defendants' breach of one or more of their duties was a substantial factor in causing harms and injuries to New York Plaintiffs and New York Class Members.

983. But for Defendants' violation of the applicable laws and regulations related to COPPA, New York Plaintiffs' and New York Class Members' personal information would not have been used, collected, or disclosed to third parties.

984. As a direct and proximate result of Defendants' negligence per se, New York Plaintiffs and New York Class Members have been injured and are entitled to damages in an amount to be proven at trial.

985.   New York Plaintiffs demand judgment against Defendants for injunctive relief and for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## G.    PENNSYLVANIA CLAIMS

### CLAIM 16 — PENNSYLVANIA NEGLIGENCE
**(Against All Defendants by Plaintiffs Z.B. and I.B., minors, by and through their parent, Steven Burda, and the Pennsylvania Class)**

986.   Plaintiffs Z.N. and I.B., minors, by and through their parent Steven Burda (the "Pennsylvania Plaintiffs") and Pennsylvania Class Members incorporate the foregoing allegations as if fully set forth herein.

987.   At all relevant times, Defendants developed, set up, managed, maintained, operated, supervised, controlled, and benefited from Pennsylvania Plaintiffs' and Pennsylvania Class Members' use of TikTok.

988.   Defendants owed Pennsylvania Plaintiffs and Pennsylvania Class Members a duty to exercise reasonable care in TikTok's development, setup, management, maintenance, operation, supervision, and control to protect its under-13 users' personal information.

989.   Defendants also owed Pennsylvania Plaintiffs and Pennsylvania Class Members a duty under COPPA not to collect, use, or disclose under-13 users' personal information without notifying parents and obtaining verifiable parental consent.

990.   Pennsylvania Plaintiffs and Pennsylvania Class Members are within the class of persons that COPPA was intended to protect.

991.   Defendants also owed a special relationship duty to Pennsylvania Plaintiffs and Pennsylvania Class Members to protect them against harm caused by TikTok. Pennsylvania Plaintiffs and Pennsylvania Class Members, as children, are comparatively vulnerable and depend on Defendants for a safe environment on TikTok, and Defendants have the superior ability and control over TikTok to provide that safety on its app. The special relationship Pennsylvania Plaintiffs and Pennsylvania Class Members have with Defendants substantially benefits Defendants through profits and

growth in users and user activity. Defendants could not successfully operate without the increase in users and user activity generated by children.

992. Defendants created TikTok and directed its activity through advertisements to minor users, including users under 13 years old. This created a special duty to exercise reasonable care to protect the minors from foreseeable harm while the minors were on TikTok.

993. Defendants have voluntarily undertaken a responsibility to keep children safe on TikTok.

994. Defendants are responsible not only for the result of their willful acts, but also for injuries occasioned to Pennsylvania Plaintiffs and Pennsylvania Members by Defendants' want of ordinary care and/or skill in the management of their property.

995. Pennsylvania Plaintiffs and Pennsylvania Class Members were foreseeable users of TikTok.

996. Defendants operate a website or online service directed at children under the age of 13, as defined by COPPA.

997. Defendants had actual knowledge that children under the age of 13, such as Pennsylvania Plaintiffs and Pennsylvania Class Members, were using and would use Full Access Platform.

998. Defendants invited, solicited, and encouraged the fact, extent, and manner of Pennsylvania Plaintiffs' and Pennsylvania Class Members' use of TikTok.

999. Defendants had actual knowledge that the use of TikTok (as developed, set up, managed, maintained, supervised, and operated by Defendants) would result in Defendants collecting and using Pennsylvania Plaintiffs' and Pennsylvania Class Members' personal information.

1000. At all relevant times, Defendants had actual knowledge that TikTok (as developed, setup, managed, maintained, supervised, and operated by that Defendant) posed unreasonable risks of harm to youth such as Pennsylvania Plaintiffs and Pennsylvania Class Members through the collection, use, and/or disclosure of their

personal information. Those risks were known and knowable, including in light of the multiple previous violations of minor children's privacy on TikTok in the last decade.

1001. Defendants had actual knowledge that their under-13 users would attempt to create regular accounts instead of only trying to create Kids Mode accounts.

1002. Defendants had actual knowledge that when under-13 users created regular accounts instead of Kids Mode accounts, their personal information would be treated without the adequate protections warranted for personal information of under-13 users online.

1003. Defendants had actual knowledge that its "age gate" features were not reasonably adequate to protect the privacy of children's information on TikTok.

1004. Defendants had actual knowledge that it collected personal information as defined by COPPA from users under the age of 13.

1005. Due to Defendants' control over how youth set up accounts on TikTok, Defendants injured Pennsylvania Plaintiffs and Pennsylvania Class Members by violating their privacy.

1006. Defendants could have avoided Pennsylvania Plaintiffs' and Pennsylvania Class Members' injuries with minimal cost, including, for example, by providing direct parental notice and requiring verifiable parental consent for its users.

1007. Imposing a duty on Defendants would benefit the community at large.

1008. Imposing a duty on Defendants would not be burdensome to them because they have the technological and financial means to avoid the risks of harm to Pennsylvania Plaintiffs and Pennsylvania Class Members.

1009. Defendants owed a heightened duty of care to youth users of TikTok because children have a diminished capacity to understand how companies collect and use their personal information and for what purpose. Additionally, Defendants owed a heightened duty of care to youth users of TikTok because it interacts directly with children out of the immediate oversight of their parents. Defendants were at all times the more sophisticated party and better positioned to understand children's privacy rights

170

and their obligations to protect those rights adequately.

1010. Defendants breached their duty of care that they owed Pennsylvania Plaintiffs and Pennsylvania Class Members through their affirmative malfeasance, actions, business decisions, and policies in TikTok's development, setup, management, maintenance, operation, supervision, and control. These breaches are based on Defendants' own actions in managing their own property—TikTok—that they made available to the public, independent of any actions taken by a third party. Those breaches include, but are not limited to:

    a. Facilitating use of TikTok by youth under the age of 13, including by adopting protocols that do not ask for or verify the age or identity of users or by adopting ineffective age and identity verification protocols,

    b. Knowingly collecting personal information from youth under the age of 13 in knowing or reckless disregard of the fact that direct notice had not been provided to parents and verifiable consent had not been obtained from parents,

    c. Willfully ignoring that significant numbers of under-13 users were maintaining regular TikTok accounts in violation of TikTok's policies and the 2019 Consent Decree, and

    d. Instructing employees not to take action to disable regular TikTok accounts for users whom employees reasonably believed were under 13 years old.

1011. Defendants have breached their duty of care that they owed to Pennsylvania Plaintiffs and Pennsylvania Class Members through their non-feasance, failure to act, and omissions in the development, setup, management, maintenance, operation, supervision, and control of TikTok. These breaches are based on the Defendants' actions in managing their property—TikTok—that they made available to the public, independent of any actions taken by a third party. Those breaches include:

    a. Failing to implement effective protocols to block users under the age of 13,

    b. Failing to implement effective protocols to prevent the collecting, sharing, and selling of the personal information of users under the age of 13 without prior

171

affirmative authorization, and

c. Failing to implement effective parental controls.

1012. These breaches also violate COPPA since Defendants collect, use, and disclose under-13 users' personal information without notifying parents and obtaining verifiable parental consent.

1013. Defendants' violation of COPPA constitutes negligence per se.

1014. A reasonable company under the same or similar circumstances as Defendants would have developed, set up, managed, maintained, supervised, and operated its platforms in a manner that is safer for and more protective of youth users like Pennsylvania Plaintiffs.

1015. At all relevant times, Pennsylvania Plaintiffs and Pennsylvania Class Members used TikTok in the manner it was intended to be used.

1016. As a direct and proximate result of Defendants' breach of one or more of its duties, Pennsylvania Plaintiffs and Pennsylvania Class Members were harmed by Defendants' violation of Pennsylvania Plaintiffs' and Pennsylvania Class Members' privacy and the loss of control over when, how, and for what purpose their personal information is collected, used, and disclosed.

1017. The harm to the Pennsylvania Plaintiffs and Pennsylvania Class Members is the type of harm that COPPA was intended to prevent.

1018. The Pennsylvania Plaintiffs and Pennsylvania Class Members do not allege any harm or injury constituting a personal injury or emotional distress and do not seek damages based on those types of injuries.

1019. Defendants' breach of one or more of their duties was a substantial factor in causing harms and injuries to Pennsylvania Plaintiffs and Pennsylvania Class Members.

1020. But for Defendants' violation of the applicable laws and regulations related to COPPA, Pennsylvania Plaintiffs' and Pennsylvania Class Members' personal information would not have been used, collected, or disclosed to third parties.

1021. As a direct and proximate result of Defendants' negligence per se, Pennsylvania Plaintiffs and Pennsylvania Class Members have been injured and are entitled to damages in an amount to be proven at trial.

1022. Pennsylvania Plaintiffs demand judgment against Defendants for injunctive relief and for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**CLAIM 17 — PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (UTPCPL), PA. STAT. ANN. TIT. 73 § 210-1 ET SEQ.**
**(Against All Defendants by Plaintiffs Z.B. and I.B., minors, by and through their parent, Steven Burda, and the Pennsylvania Class)**

1023. The Pennsylvania Plaintiffs and Members of the Pennsylvania Class incorporate the foregoing allegations as if fully set forth herein.

1024. The Pennsylvania Plaintiffs and Members of the Pennsylvania Class are or were residents of Pennsylvania and used TikTok while under the age of 13.

1025. Pa. Stat. Ann. tit. 73, § 201-3 provides that "[u]nfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) of clause (4) of section 2 of this act and regulations promulgated under section 3.1 of this act are hereby unlawful."

1026. At all times mentioned herein, Defendants each engaged in "trade" or "commerce" in Pennsylvania in that Defendants each engaged in the advertising, offering for sale, sale, and distribution of property or any other articles, commodities, or things of value in Pennsylvania.

1027. Defendants violated Pa. Stat. Ann. tit. 73, § 201-1 *et seq.* by engaging in the unfair acts or practices proscribed by Pa. Stat. Ann. tit. 73, § 201-3 as outlined herein.

1028. Defendants engaged in "unfair" business acts and/or practices. Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the personal information of the Pennsylvania Plaintiffs and Pennsylvania Class Members without notifying their parents and obtaining verifiable

173

parental consent and by tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain. These practices are unethical, unscrupulous, and substantially injurious to children, and thus constitutes an unfair practice. The harm these practices caused to the Pennsylvania Plaintiffs and Pennsylvania Class Members outweigh their utility, if any.

1029. As outlined herein, TikTok represented that TikTok Kids Mode was designed for children under 13 years old by representing to children who identified themselves as being under 13 years old that the child is "about to access a TikTok experience designed just for you." In Kids Mode, a user can view videos, but cannot upload videos, post information publicly, or message other users.

1030. TikTok Kids Mode is not designed to be legally appropriate for children under 13 years old. In fact, TikTok Kids Mode violates COPPA and the privacy rights of children under 13 years old, including by collecting and using their personal information without providing direct notice to their parents or obtaining parental consent.

1031. Defendants each engaged in consumer-oriented acts through the offer, promotion, and/or distribution of the TikTok app, which significantly impacted the public because TikTok is used nationwide, including in Pennsylvania, and there are millions of users, including the Pennsylvania Plaintiffs and Members of the Pennsylvania Class.

1032. Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the personal information of children under 13 years old and tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain.

1033. As outlined herein, Defendants at all times had actual knowledge of their own non-compliance with COPPA and other applicable privacy-related laws. Further, Defendants at all times had actual knowledge that they were collecting Private Information from users under the age of 13 including the Pennsylvania Plaintiffs and the

174

Pennsylvania Class Members and for purposes of tracking, profiling, and targeting of those children for lucrative behavioral advertising.

1034. As outlined herein, Defendants intentionally designed TikTok to, among other things, attract children under 13 by making child-directed content available to them so that TikTok could collect the personal information for substantial commercial gain.

1035. TikTok was aware at all times that a significant portion of its users were under the age of 13 and nonetheless collected the personal information of those children for the purpose of serving those children behavioral advertising for substantial commercial gain. After entering into a Permanent Injunction with the United States in 2019 intended to prohibit Defendants from their continued collection or use of the personal information of children under the age of 13, Defendants purposefully sought to undermine their compliance through, among other practices, implementation of a woefully inadequate age-gating system, and monitoring policies and procedures designed to allow them to continue knowingly collecting and using the personal information of children.

1036. In particular, Defendants systematically collected and/or used personal information from children under 13 years old in violation of COPPA, and therefore the FTC Act, by inter alia:

    a. Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13 years old, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

    b. Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13 years old, how Defendants used such information, their disclosure practices, and all other required content, in violation of

Section 312.4(b) and (c) of COPPA, 16 C.F.R. § 312.4(b)-(c);

c. Failing to obtain verifiable parental consent before any collection or use of personal information from children under 13 years old, in violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

d. Failing to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of personal information collected from children under 13 years old, in violation of Section 312.8 of COPPA, 16 C.F.R. § 312.8.

1037. Violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair … act or practice prescribed under 15 U.S.C. § 57a(a)(1)(B)." 15 U.S.C. § 6502(c). These rules define unfair acts or practices in or affecting commerce within the meaning of 15 U.S.C. § 45(a)(1), which is the model for the various consumer protection statutes in the several states, including the Pa. Stat. Ann. tit. 73, § 201-1 *et seq.*[101]

1038. Accordingly, Defendants engaged in unfair and unlawful trade acts or practices in violation of Pa. Stat. Ann. tit. 73, § 201-1 *et seq.*, which proscribes the same conduct as the FTC Act.

1039. Defendants' conduct is unfair, immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, and there are no greater countervailing benefits to consumers or competition. Further, the Pennsylvania Plaintiffs and Members of the Pennsylvania Class could not have reasonably avoided injury because Defendants each took advantage of the lack of knowledge, ability, experience, and/or capacity of consumers—in this case children under 13 years old—to their detriment.

1040. Defendants willfully engaged in the unfair and unlawful acts described herein and knew or recklessly disregarded the fact that they violated Pa. Stat. Ann. tit.

---

[101] *See* 16 C.F.R. § 312.1 (COPPA "prohibits unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure of personal information from and about children on the internet.").

73, § 201-1 *et seq.*

1041. The Pennsylvania Plaintiffs and Members of the Pennsylvania Class were harmed by Defendants' practices described herein, which were a substantial factor and caused injury in fact and actual damages to the Pennsylvania Plaintiffs and Members of the Pennsylvania Class.

1042. As a direct and proximate result of Defendants' unfair and unlawful acts and practices in violation of Pa. Stat. Ann. tit. 73, § 201-1 *et seq.*, the Pennsylvania Plaintiffs and Members of the Pennsylvania Class have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described herein, including, inter alia, the loss of the value and/or diminishment in value of their personal information and the loss of the ability to control the use of their personal information, which allowed Defendants to profit at the expense of the Pennsylvania Plaintiffs and Members of the Pennsylvania Class.

1043. As outlined herein, there is tangible value in the Pennsylvania Plaintiffs' and Members of the Pennsylvania Class's personal information. The Pennsylvania Plaintiffs and Members of the Pennsylvania Class have lost the opportunity to receive value in exchange for their personal information.

1044. Defendants' monetization of the Pennsylvania Plaintiffs' and Members of the Pennsylvania Class's personal information demonstrates that there is a market for their personal information.

1045. The Pennsylvania Plaintiffs' and Members of the Pennsylvania Class's personal information is now in the possession of Defendants, who have used and will use it for their financial gain.

1046. Defendants' retention of the Pennsylvania Plaintiffs' and Members of the Pennsylvania class's personal information presents a continuing risk to them as well as the general public. The Pennsylvania Plaintiffs and Members of the Pennsylvania Class seek relief for the injuries they have suffered as a result of Defendants' unfair and unlawful acts and practices, as provided by Pa. Stat. Ann. tit. 73, § 201-1 *et seq.*, and

applicable law, including all actual damages and attorneys' fees and costs, treble damages, statutory damages, and restitution, as well as an injunction requiring Defendants to each permanently delete, destroy or otherwise sequester the personal information collected without parental consent, requiring Defendants to provide a complete audit and accounting of the uses of the personal information by them and any other third parties, and other appropriate injunctive and/or declaratory relief.

## H.    WASHINGTON CLAIMS

### CLAIM 18 — WASHINGTON NEGLIGENCE
**(Against All Defendants by Plaintiffs K.F. and J.W., minors, by and through their parents and guardians ad litem, and the Washington Class)**

1047. Plaintiff K.F., a minor, by and through their parent and guardian ad litem, Angela Facuett, and Plaintiff J.W., a minor, by and through their parent and guardian ad litem, Kayla Jaramillo (the "Washington Plaintiffs") and Washington Class Members incorporate the foregoing allegations as if fully set forth herein.

1048. At all relevant times, Defendants developed, set up, managed, maintained, operated, supervised, controlled, and benefited from Washington Plaintiffs' and Washington Class Members' use of TikTok.

1049. Defendants owed Washington Plaintiffs and Washington Class Members a duty to exercise reasonable care in TikTok's development, setup, management, maintenance, operation, supervision, and control to protect its under-13 users' personal information.

1050. Defendants also owed Washington Plaintiffs and Washington Class Members a duty under COPPA not to collect, use, or disclose under-13 users' personal information without notifying parents and obtaining verifiable parental consent.

1051. Washington Plaintiffs and Washington Class Members are within the class of persons that COPPA was intended to protect.

1052. Defendants also owed a special relationship duty to Washington Plaintiffs and Washington Class Members to protect them against harm caused by TikTok. Washington Plaintiffs and Washington Class Members, as children, are comparatively

178

vulnerable and depend on Defendants for a safe environment on TikTok, and Defendants have the superior ability and control over TikTok to provide that safety on its app. The special relationship Washington Plaintiffs and Washington Class Members have with Defendants substantially benefits Defendants through profits and growth in users and user activity. Defendants could not successfully operate without the increase in users and user activity generated by children.

1053. Defendants created TikTok and directed its activity through advertisements to minor users, including users under 13 years old. This created a special duty to exercise reasonable care to protect the minors from foreseeable harm while the minors were on TikTok.

1054. Defendants have voluntarily undertaken a responsibility to keep children safe on TikTok.

1055. Defendants are responsible not only for the result of their willful acts, but also for injuries occasioned to Washington Plaintiffs and Washington Members by Defendants' want of ordinary care and/or skill in the management of their property.

1056. Washington Plaintiffs and Washington Class Members were foreseeable users of TikTok.

1057. Defendants operate a website or online service directed at children under the age of 13, as defined by COPPA.

1058. Defendants had actual knowledge that children under the age of 13, such as Washington Plaintiffs and Washington Class Members, were using and would use Full Access Platform.

1059. Defendants invited, solicited, and encouraged fact, extent, and manner of Washington Plaintiffs' and Washington Class Members' use of TikTok.

1060. Defendants had actual knowledge that the use of TikTok (as developed, set up, managed, maintained, supervised, and operated by Defendants) would result in Defendants collecting and using Washington Plaintiffs' and Washington Class Members' personal information.

1061. At all relevant times, Defendants had actual knowledge that TikTok (as developed, setup, managed, maintained, supervised, and operated by that Defendant) posed unreasonable risks of harm to youth such as Washington Plaintiffs and Washington Class Members through the collection, use, and/or disclosure of their personal information. Those risks were known and knowable, including in light of the multiple previous violations of minor children's privacy on TikTok in the last decade.

1062. Defendants had actual knowledge that their under-13 users would attempt to create regular accounts instead of only trying to create Kids Mode accounts.

1063. Defendants had actual knowledge that when under-13 users created regular accounts instead of Kids Mode accounts, their personal information would be treated without the adequate protections warranted for personal information of under-13 users online.

1064. Defendants had actual knowledge that its "age gate" features were not reasonably adequate to protect the privacy of children's information on TikTok.

1065. Due to Defendants' control over how youth set up accounts on TikTok, Defendants injured Washington Plaintiffs and Washington Class Members by violating their privacy.

1066. Defendants had actual knowledge that it collected personal information as defined by COPPA from users under the age of 13.

1067. Defendants could have avoided Washington Plaintiffs' and Washington Class Members' injuries with minimal cost, including, for example, by providing direct parental notice and requiring verifiable parental consent for its users.

1068. Imposing a duty on Defendants would benefit the community at large.

1069. Imposing a duty on Defendants would not be burdensome to them because they have the technological and financial means to avoid the risks of harm to Washington Plaintiffs and Washington Class Members.

1070. Defendants owed a heightened duty of care to youth users of TikTok because children have a diminished capacity to understand how companies collect and

use their personal information and for what purpose. Additionally, Defendants owed a heightened duty of care to youth users of TikTok because it interacts directly with children out of the immediate oversight of their parents. Defendants were at all times the more sophisticated party and better positioned to understand children's privacy rights and their obligations to protect those rights adequately.

1071. Defendants breached their duty of care that they owed Washington Plaintiffs and Washington Class Members through their affirmative malfeasance, actions, business decisions, and policies in TikTok's development, setup, management, maintenance, operation, supervision, and control. These breaches are based on Defendants' own actions in managing their own property—TikTok—that they made available to the public, independent of any actions taken by a third party. Those breaches include, but are not limited to:

    a. Facilitating use of TikTok by youth under the age of 13, including by adopting protocols that do not ask for or verify the age or identity of users or by adopting ineffective age and identity verification protocols,

    b. Knowingly collecting personal information from youth under the age of 13 in knowing or reckless disregard of the fact that direct notice had not been provided to parents and verifiable consent had not been obtained from parents,

    c. Willfully ignoring that significant numbers of under-13 users were maintaining regular TikTok accounts in violation of TikToks policies and the 2019 Consent Decree, and

    d. Instructing employees not to take action to disable regular TikTok accounts for users whom employees reasonably believed were under 13 years old.

1072. Defendants have breached their duty of care that they owed to Washington Plaintiffs and Washington Class Members through their non-feasance, failure to act, and omissions in the development, setup, management, maintenance, operation, supervision, and control of TikTok. These breaches are based on the Defendants' actions in managing their property—TikTok—that they made available to the public, independent

181

of any actions taken by a third party. Those breaches include:

    a. Failing to implement effective protocols to block users under the age of 13,

    b. Failing to implement effective protocols to prevent the collecting, sharing, and selling of the personal information of users under the age of 13 without prior affirmative authorization, and

    c. Failing to implement effective parental controls.

1073. These breaches also violate COPPA since Defendants collect, use, and disclose under-13 users' personal information without notifying parents and obtaining verifiable parental consent.

1074. Defendants' violation of COPPA constitutes negligence per se.

1075. A reasonable company under the same or similar circumstances as Defendants would have developed, set up, managed, maintained, supervised, and operated its platforms in a manner that is safer for and more protective of youth users like Washington Plaintiffs.

1076. At all relevant times, Washington Plaintiffs and Washington Class Members used TikTok in the manner it was intended to be used.

1077. As a direct and proximate result of Defendants' breach of one or more of its duties, Washington Plaintiffs and Washington Class Members were harmed by Defendants' violation of Washington Plaintiffs' and Washington Class Members' privacy and the loss of control over when, how, and for what purpose their personal information is collected, used, and disclosed.

1078. The harm to the Washington Plaintiffs and Washington Class Members is the type of harm that COPPA was intended to prevent.

1079. The Washington Plaintiffs and Washington Class Members do not allege any harm or injury constituting a personal injury or emotional distress and do not seek damages based on those types of injuries.

1080. Defendants' breach of one or more of their duties was a substantial factor in causing harms and injuries to Washington Plaintiffs and Washington Class Members.

182

1081. But for Defendants' violation of the applicable laws and regulations related to COPPA, Washington Plaintiffs' and Washington Class Members' personal information would not have been used, collected, or disclosed to third parties.

1082. As a direct and proximate result of Defendants' negligence per se, Washington Plaintiffs and Washington Class Members have been injured and are entitled to damages in an amount to be proven at trial.

1083. Washington Plaintiffs demand judgment against Defendants for injunctive relief and for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**CLAIM 19 — WASHINGTON CONSUMER PROTECTION ACT, WASH. REV. CODE. § 19.86.010 *ET SEQ.***
**(Against All Defendants by Plaintiffs K.F. and J.W., minors, by and through their parents and guardians ad litem, and the Washington Class)**

1084. The Washington Plaintiffs re-allege and incorporate by reference herein all of the allegations contained above.

1085. The Washington Plaintiffs, the Washington Class Members, and TikTok are "persons" within the meaning of Wash. Rev. Code § 19.86.010(2).

1086. TikTok committed the acts complained of herein in the course of "trade" or "commerce" within the meaning of Wash. Rev. Code § 19.96.010.

1087. TikTok engaged in consumer-oriented conduct by offering and promoting its TikTok social media platform.

1088. Washington's Consumer Protection Act, Wash. Rev. Code § 19.86.010 *et seq.* ("CPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020.

1089. The Washington CPA instructs that, in construing the Washington CPA, the courts will be "guided by final decisions of the federal courts and final orders of the federal trade commission interpreting the various federal statutes dealing with the same or similar matters." Wash. Rev. Code § 19.86.920.

1090. TikTok violated the Washington CPA by engaging in the "unlawful"

business acts and practices alleged previously, and as further specified below.

1091. TikTok engaged in "unfair" business acts and/or practices by violating COPPA and the COPPA Rule.

1092. As outlined herein, TikTok represented that TikTok Kids Mode was designed for children under 13 years old by representing to children who identified themselves as being under 13 years old that the child is "about to access a TikTok experience designed just for you." In Kids Mode, a user can view videos, but cannot upload videos, post information publicly, or message other users.

1093. Kids Mode is not designed to be legally appropriate for children under 13 years old. In fact, TikTok Kids Mode violates COPPA and the privacy rights of children under 13 years old, including by collecting and using their personal information without providing direct notice to their parents or obtaining parental consent.

1094. TikTok violated Sections 312.3, 312.4, and 312.5 of COPPA, 16 C.F.R. §§ 312.3-5, by collecting and using personal information from Washington Plaintiffs' and Washington Class Members without notifying their parents and obtaining verifiable parental consent.

1095. TikTok's business practices alleged herein are unethical, unscrupulous, and substantially injurious to children, and thus constitute an unfair practice under the Washington CPA. The harm these practices caused to Washington Plaintiffs' and Washington Class Members outweigh their utility, if any.

1096. As a direct and proximate result of TikTok's unfair business acts and practices, Washington Plaintiffs' and Washington Class Members were injured and lost money or property.

1097. First, as a direct and proximate result of TikTok's unfair business acts and practices, Washington Plaintiffs' and Washington Class Members suffered "benefit-of-the-bargain" injuries and damages. Washington Plaintiffs' and Washington Class Members did not receive the full benefit of the bargain, and instead received services from TikTok that were less valuable than the services they would have received if

184

TikTok had abided by COPPA.

1098. Washington Plaintiffs' and Washington Class Members, therefore, were damaged in an amount at least equal to the difference in value of the TikTok service that Washington Plaintiffs' and Washington Class Members received (where TikTok collected and used children's personal information without notifying parents or gaining their parents' consent) and the value of the TikTok service that Washington Plaintiffs' and Washington Class Members would have received if TikTok had abided by COPPA (and not collected and used children's personal information without notifying parents or gaining their parents' consent).

1099. Second, as a direct and proximate result of TikTok's unlawful and unfair business acts and practices, Washington Plaintiffs' and Washington Class Members suffered "right to exclude" injuries and damages.

1100. Washington Plaintiffs' and Washington Class Members have a property interest in the personal information collected by TikTok. Washington Plaintiffs' and Washington Class Members suffered an economic injury because they were deprived of their right to exclude TikTok from their personal information.

1101. Washington Plaintiffs' and Washington Class Members' damages may also be measured by the amount of monetary compensation that TikTok would have to provide to parents to gain their consent to collect and use their children's personal information.

1102. Washington Plaintiffs' and Washington Class Members seek restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief, actual damages, treble damages, attorney's fees and other relief allowable under Wash. Rev. Code § 19.86.090.

## IX.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of themselves and the proposed Classes, respectfully request relief as follows:

A. An order certifying this action as a class action, and certifying the Classes defined herein, designating Plaintiffs, as described above, as the representatives of the respective Classes defined herein, and appointing Plaintiffs' counsel as counsel for the Classes;

B. An order declaring that Defendants' actions, as described above constitute: (i) breaches of the common law claims of intrusion upon seclusion and negligence set forth above; (ii) violations of the state consumer protection statutes set forth above; (iii) a violation of the right to privacy under the California Constitution, Article I, Section 1; and (iv) that Defendants were unjustly enriched as a result of their actions.

C. A judgment awarding Plaintiffs and the Members of the Classes appropriate relief, including actual, compensatory, and/or statutory damages, and punitive damages (as permitted by law), in an amount to be determined at trial;

D. A judgment awarding any and all equitable, injunctive, and declaratory relief as may be appropriate, including orders of disgorgement of Defendants' unlawful gains, and restitution;

E. A judgment awarding injunctive relief as set forth above, non-restitutionary disgorgement of profits and unlawful gains, and such other equitable relief as the Court may deem proper;

F. A judgment awarding all costs, including experts' fees, attorneys' fees, and the costs of prosecuting this action, and other relief as permitted by law;

G. Pre-judgment and post-judgment interest, as permitted by law; and

H. Grant such other legal and equitable relief as the Court may deem appropriate.

## X.    DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.

Pursuant to Local Rule 5-4.3.4, by my signature below, I, Eric A. Kafka, attest that all other signatories concur in the filing's content and have authorized this filing.

186

DATED this 23rd day of December, 2025.

By: */s/ Derek W. Loeser*
Derek W. Loeser (*pro hac vice*)
Cari Campen Laufenberg (*pro hac vice*)
Nicandro Iannacci (*pro hac vice*)
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384
dloeser@kellerrohrback.com
claufenberg@kellerrohrback.com
niannacci@kellerrohrback.com

Christopher L. Springer (SBN 291180)
**KELLER ROHRBACK L.L.P.**
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Telephone: (805) 456-1496
cspringer@kellerrohrback.com

By: */s/ Eric A. Kafka*
Eric Kafka (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
ekafka@cohenmilstein.com

Karina Puttieva (SBN 317702)
Jenna Waldman (SBN 341491)
Laura Roberts (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Suite 800
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
kputtieva@cohenmilstein.com
jwaldman@cohenmilstein.com
lroberts@cohenmilstein.com

Steven L. Bloch (*pro hac vice*)

187

David S. Golub (*pro hac vice*)
Ian W. Sloss (*pro hac vice*)
Jennifer Sclar (*pro hac vice*)
John Seredynski (*pro hac vice*)
**SILVER GOLUB & TEITELL LLP**
One Landmark Square, 15th Floor
Stamford, CT 06901
Telephone: (203) 325-4491
sbloch@sgtlaw.com
dgolub@sgtlaw.com
isloss@sgtlaw.com
jsclar@sgtlaw.com
jseredynski@sgtlaw.com

188