DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, Suite 800
Los Angeles, California 90067-6035
Telephone: +1 310 553 6700
Facsimile: +1 310 246 6779

STEPHEN D. BRODY (*pro hac vice*)
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone: +1 202 383 5300
Facsimile: +1 202 383 5414

MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
San Francisco, CA 94111
Telephone: +1 415 984 8700
Facsimile: +1 415 984 8701

*Attorneys for Defendants ByteDance Ltd., ByteDance Inc., TikTok Ltd., TikTok Inc., TikTok LLC, TikTok Pte. Ltd., and TikTok U.S. Data Security Inc.*

DEREK W. LOESER (*pro hac vice*)
dloeser@kellerrohrback.com
CARI CAMPEN LAUFENBERG (*pro hac vice*)
claufenberg@kellerrohrback.com
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101
(206) 623-1900, Fax: (206) 623-3384

ERIC KAFKA (*pro hac vice*)
ekafka@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL PLLC
88 Pine Street, 14th Floor
New York, NY 10005
(212) 838-7797, Fax: (212) 838-7745

*Plaintiffs' Interim Lead Counsel*

STEVEN BLOCH (*pro hac vice*)
sbloch@sgtlaw.com
SILVER GOLUB & TEITELL LLP
One Landmark Square, 15th Floor
Stamford, CT 06901
(203) 325-4491
sbloch@sgtlaw.com

*Plaintiffs' Executive Committee*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: TIKTOK, INC. MINOR PRIVACY LITIGATION | Case No. 2:25-ml-03144-GW-RAO<br><br>**JOINT REPORT ON TIKTOK'S OPERATIONS AND INITIAL DISCOVERY PROFFER**<br><br>Hon. George H. Wu<br>Courtroom: 9D<br>Status Conference: Jan. 22, 2026 |

**JOINT REPORT**

Pursuant to the Court's November 10, 2025 Order, ECF No. 137, Plaintiffs and Defendants ByteDance Ltd., ByteDance Inc., TikTok Ltd., TikTok Inc., TikTok LLC, TikTok Pte. Ltd., and TikTok U.S. Data Security Inc. (collectively, the "Parties") hereby submit this Joint Report on TikTok's operations and initial discovery. Attached hereto is TikTok's Statement and Plaintiffs' Responses Regarding the TikTok Platform's Operations (the "Operations Report"), *see* Ex. 1, the Declaration of Daniel M. Petrocelli in Support of Defendants' Positions in the Operations Report, *see* Ex. 2, and Plaintiffs' December 10, 2025 Proffer of Initial Discovery, which includes Plaintiffs' First Set of Requests for Production, *see* Ex. 3, Plaintiffs' First Set of Interrogatories, *see* Ex. 4, and TikTok's December 19, 2025 Letter in Response to Plaintiffs' Initial Discovery Proffer, *see* Ex. 5.

## I.   TIKTOK'S OPERATIONS

**Plaintiffs' Statement:**

Plaintiffs do not believe that TikTok's Operations Report, as constructed by TikTok, presents a helpful way to narrow the scope of discovery in this case. As an initial matter, despite the touted length of the report, much of what it details has no bearing on the allegations in this case and instead consists of self-serving statements without material application to Plaintiffs' claims. At the same time, the Operations Report addresses numerous issues only in broad strokes, leaving significant gaps in the information available to Plaintiffs, including how TikTok's age-gating system actually operates, what alternative approaches TikTok has evaluated or considered, and whether its current practices are sufficient—issues that can be resolved only through discovery and that present core disputes the Court will ultimately be asked to decide.

Plaintiffs' follow-up questions were not intended to broaden the scope of the Court's request, but, rather, to facilitate Plaintiffs' evaluation of the completeness

and truthfulness of Defendants' statements; because TikTok exclusively controls the information available about its systems and practices, Plaintiffs cannot meaningfully assess the many statements in the Operations Report without additional information or clarification. Plaintiffs' follow-up questions were aimed at identifying gaps and ambiguities with the goal of streamlining the discovery process.

Plaintiffs further identify four primary issues with the bulk of TikTok's statements in the report. First, TikTok's statements are incomplete, particularly insofar as they (a) fail to identify the time at which certain functionalities described in the report were implemented, and (b) fail to describe the previous functionalities in effect during the Class Period before TikTok implemented changes to its systems. Plaintiffs therefore need discovery into when certain functionalities were implemented, as well as the previous functionalities during the remainder of the class period (from March 2019 to the present). Second, TikTok's statements fail to reference or meaningfully address information or allegations that have been revealed in related litigation and/or governmental investigations, including information related to TikTok's insufficient age gate, age detection systems, and data collection practices. Third, without the benefit of formal discovery, Plaintiffs are unable to test the accuracy of most of TikTok's statements and are therefore unable to provide a fulsome response as to whether such statements are accurate. Fourth, based on limited information available from public sources, Plaintiffs have identified certain statements by TikTok with which they disagree.

To remedy these concerns, Plaintiffs' responses throughout the Operations Report indicate the specific discovery Plaintiffs seek on relevant topics. They are not intended as formal discovery requests but to indicate the additional discovery Plaintiffs believe is necessary and to ensure the Operations Report adequately informs the Court of the relevant issues in dispute. Moreover, Plaintiffs are also

willing to continue to negotiate the scope of discovery as TikTok produces documents that may help illuminate the relevant issues in this case.

**Defendants' Statement:**

Following the November 10, 2025 hearing, the Court ordered Defendants to prepare a statement in response to various questions the Court has raised regarding the TikTok platform's operations. ECF No. 137. Defendants prepared that statement and submit that it reflects information about a platform with complex, multi-faceted systems, dynamic data that is constantly changing, and operations that are constantly being refined and updated, and balances the complexities of these issues with presenting this information to the Court in an understandable and digestible format. Defendants reserve all rights and objections, including to provide additional and/or updated information as circumstances may warrant.

Consistent with the Court's order, ECF No. 137, Defendants provided a draft of the Operations Report to Plaintiffs on December 10, 2025. On December 19, 2025, Plaintiffs responded with a redline that, contrary to the Court's instructions,[1] declined to identify specific areas of agreement with Defendants' answers to the Court's questions, which Defendants estimate numbered less than 100. Instead, Plaintiffs' redline contained dozens of argumentative assertions concerning the merits of their claims and sought answers to approximately *400* new questions not posed by the Court and which Defendants submit, in most cases, go well beyond the scope of the Court's inquiry. For example, in Section I.A of the Operations Report, Defendants directly answer the two specific questions the Court raised about creating an account on the TikTok platform. In response, Plaintiffs provided a six-page insert that, among other things, lists nearly 50 brand new and overbroad

---

[1] Nov. 6 Tr. 6:20-8:2 ("I want this information, to the extent it can be agreed upon, then I want the agreements to the extent they cannot be agreed upon. I want to know what exactly the nature of the disputes are insofar as operations of TikTok.").

questions, including demands that Defendants identify "evidence," provide "research, knowledge, information, and surveys" behind their statements, and supply "data to support the[] effectiveness" of other platforms' "use of the date [sic] of birth at account creation."

    Plaintiffs seem to think that Defendants were supposed to put forward all the evidence that could support Plaintiffs' claims—and that Defendants were supposed to know what that evidence is, what it isn't, and what level of detail to provide. That unreasonable position and general refusal to find areas of agreement create new disputes and avoid agreement.  As a result, Defendants object to Plaintiffs' response as set forth in the Operations Report because it has created a burden without any benefit of advancing the process.  Ordinarily, the Federal Rules govern how the parties exchange information with the goal of "secur[ing] the just, speedy, and inexpensive determination of [an] action[.]" Fed. R. Civ. P. 1.  The rules limit the amount of information parties can seek from each other and the amount of information they must provide.  *See, e.g.*, *id.* 26(b) (requiring discovery to be "relevant … and proportional"); *id.* 30(a)(2) (limiting scope of depositions); *id.* 33(a)(1) (limiting parties to "no more than 25 written interrogatories"). Importantly, the Rules also afford all parties the same tools to collect the evidence they need to present their claims and defenses.  But here, Defendants are the only side that has been directed to undertake the asymmetrical burden of this searching (and costly) pre-discovery inquiry.  Moreover, Defendants compiled nearly a hundred pages of detailed information for the Court on an accelerated timeline.  In contrast, Plaintiffs provided at least a deposition's worth of questions, making it difficult, if not impossible, to discern areas of common ground.  While Defendants have endeavored where possible to respond to some of Plaintiffs' new questions, the vast majority are extremely overbroad and far exceed the scope anticipated by the Federal Rules: discovery that is reasonable, proportionate, and efficient.

## II. INITIAL DISCOVERY

**Plaintiffs' Statement:**

*Plaintiffs' Proffer of Initial Discovery*

On December 10, 2025, Plaintiffs served TikTok with a proffer of initial discovery, including Plaintiffs' first set of Requests for Production and Plaintiffs' first set of Interrogatories. *See* Exs. 3-4. Plaintiffs' objective in serving the initial discovery proffer was straightforward: to facilitate TikTok's identification of the core information needed to advance the merits of this case and reach agreement on the scope and sequencing of discovery. And, proportional to the breadth of issues the Operations Report purports to cover, Plaintiffs appropriately cast a broad net in identifying discovery necessary to assess the merits of this case.

Furthermore, Plaintiffs' discovery requests are targeted at the core issues in this case, including how TikTok age-gates and verifies users; how it detects, infers, or otherwise identifies under-age users; what data TikTok collects, retains, infers, or uses from those users; what alternative age-gating options TikTok considered or rejected; and how these topics affect data practices and advertising. By contrast, the Operations Report largely consists of generalized, self-serving descriptions of platform features and policies that are, in many instances, untethered from the specific claims at issue.

*Proposed Next Steps*

TikTok has refused to identify what categories of documents or data it will produce in response to Plaintiffs' requests. In lieu of engaging fully with Plaintiffs regarding their initial discovery proffer, TikTok offered the documents produced in connection with the pre-suit investigation in the Department of Justice action. *See United States v. ByteDance Ltd.*, No. 2:24- cv-06535-GW-RAO (C.D. Cal. Aug. 2, 2024). While a good start, it is far from sufficient. Plaintiffs agree that these documents are relevant, should be produced promptly, and that TikTok should

provide a date certain for their production. However, TikTok's production of the DOJ documents is only a narrow component of needed discovery and should not prevent Plaintiffs from promptly taking additional highly relevant discovery.

As an initial matter, consistent with the ESI Protocol entered in this case, ECF No. 156, TikTok should disclose the parameters that were used to collect the DOJ production. Specifically, TikTok should disclose the discovery requests and/or investigative demands to which the production was responsive, the time periods covered by the production, document types, custodians, data sources and repositories searched, date ranges, and any search terms and/or filtering criteria used to generate the production. This information is necessary for Plaintiffs to promptly understand the parameters of the production, assess its completeness, and evaluate how it fits within the broader discovery obligations in this case.

The pre-suit production in the DOJ action will necessarily be narrower than the discovery to which Plaintiffs are entitled here, including with respect to the time periods covered by the production. Unlike the DOJ action, the private Plaintiffs here will need discovery about class certification, damages, named plaintiff data, and their state-law privacy, unjust enrichment, unfair competition, and negligence claims. Furthermore, because the DOJ takes discovery in a civil action after it files a complaint, the DOJ pre-suit materials are unlikely to replicate the complete set of discovery the DOJ would have sought for summary judgment or trial. And based on TikTok's limited description of its DOJ production, the production lacks entire categories of documents which are highly relevant here. For example, it appears that TikTok did not produce any source code (the computer instructions that determines how TikTok's technical systems operate).

To ensure that this limited DOJ production moves the case forward, rather than slowing its progress, Plaintiffs propose that discovery operate in two phases. In the first phrase, TikTok will produce the DOJ documents, while the Parties also

proceed on discovery for certain categories of core materials which are not included in the DOJ documents. Plaintiffs ask that, as part of the first phrase, the parties proceed with the following categories of discovery:

a. The value of user data and revenue generated by the use of user data. *See* RFP Nos. 14-15. Because the DOJ seeks civil penalties rather than damages, this discovery is unlikely to be part of the DOJ production.

b. Source code. *See* RFP Nos. 40-42. TikTok's source code comprises the computer instructions for TikTok's systems and will be critical evidence about how TikTok's technical systems operate. It appears that the source code was not produced in the DOJ materials.

c. Named plaintiff data, data dictionaries, preservation, and structured data. The parties should continue to work together on these topics, and TikTok should make the productions ordered by the Court promptly. *See* ECF No. 137.

d. Plaintiffs should be permitted to serve written discovery, including interrogatories and requests for admission. Additionally, TikTok should be required to indicate in response to Plaintiffs' initial discovery proffer which documents they are willing produce. *See* Ex. 3.

e. Documents produced in response to discovery requests in the *In Re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation,* No. 4:22-md-03076-YGR (PHK) (N.D. Cal.) ("Social Media Addiction MDL") that are limited to those relevant to the claims at issue in this litigation, pursuant to RFP No. 4. As specifically set forth in the Plaintiffs' Omnibus Opposition to Defendants' Motion for Summary Judgment in that matter, Social Media Addiction MDL Dkt. No. 2480 at 77-116, these documents are directly relevant to a number of key issues in this litigation, including:

- TikTok's targeting children as a "core audience";
- TikTok's research regarding the use of TikTok by school children, including surveys and interviews of school children by TikTok;
- TikTok's marketing and advertising to school children, including through its partnership with the PTA;
- TikTok's marketing to advertisers promoting TikTok as a platform for advertising to school children;
- TikTok's age gating, including the implementation of age gating in February 2019;
- TikTok's age gating for the Chinese version of TikTok (Douyin), including Douyin's Age Model (Age Assurance) program;
- TikTok's internal estimates of the number of under 13 users;
- TikTok's Minor Safety and Privacy program;
- TikTok's Project M ("Minor");
- TikTok's discussions about the importance and/or profitability of under 13 users to TikTok, including with respect to growth and advertising;
- TikTok's age inference model, including the use of inferred age for purposes of targeted advertising, including communications with regulators about its age modeling capabilities;
- TikTok's communications regarding COPPA;
- Account deletion requests by parents or guardians;
- TikTok's deletion of more than 20 million underage accounts in 2024; and

- TikTok's communications regarding age gating and engagement metrics and advertising revenue.

Like the DOJ documents, the Social Media Addiction MDL documents represent a defined universe of documents that are highly relevant to the issues in this litigation, and their production at an early stage of this litigation will help to inform the discovery process going forward and avoid duplicative discovery efforts.

In the second phase, the Parties will engage in broader discovery, informed by the DOJ and Social Media Addiction MDL productions. While Plaintiffs review the DOJ and Social Media Addiction MDL productions upon receipt from TikTok, the Parties will confer regarding categories of documents that fall outside those productions. Plaintiffs further propose that the Court order the Parties to hold a Rule 16 scheduling conference on April 23, 2026, at which time the Parties will address a broader discovery plan and schedule informed by what has been produced.

**Defendants' Statement:**

*Plaintiffs Did Not Comply With The Court's Instructions*

Plaintiffs' December 10 initial discovery proffer (the "Proffer") does not comply with the Court's instructions and order. *See* Exs. 3-4. At the November 6, 2025 hearing, the Court made clear that Plaintiffs' Proffer should seek only information "that is really essential" and cautioned Plaintiffs not to "go overboard on this." Nov. 6 Tr. at 46:10-16. But Plaintiffs' Proffer "go[es] overboard" in every possible respect, seeking broad discovery of nearly 50 categories of documents and information from March 2014 through present, a span of almost 12 years and going back more than 4 years before the TikTok platform even existed, covering nearly every aspect of the TikTok platform and its operations. A few examples are illustrative. Interrogatory No. 3 demands that Defendants identify *every* user who has claimed to be over the age of 13 but was determined not to be

and how and when that determination was made. Ex. 4 at 7. Even assuming that responding to this request was technically feasible, it would require accessing data across numerous different systems, all with different retention policies. RFP No. 5 seeks any document that "address[] TikTok's compliance or noncompliance with COPPA," and RFP Nos. 21 and 22 relatedly seek all documents regarding measures to deter or encourage underage use of the Full Access Platform and tool used (or even proposed) to infer the age of users. Ex. 3 at 9, 12. These requests could conceivably cover every communication from the inception of TikTok that mentions age gating, underage moderation, deletion of underage accounts, and development, testing, and deployment of every internal control concerning age gating or underage use. RFP No. 8 seeks all data collected, inferred, or associated from every TikTok user under 13, which is wildly overbroad on its face. *Id.* at 10. RFP No. 28 demands documents about all the different ways that the TikTok platform uses user data without any additional detail. *Id.* at 13. In sum, Plaintiffs' Proffer makes it difficult for Defendants to distill Plaintiffs' discovery requests down to something manageable.

*Proposed Next Steps*

Notwithstanding the foregoing objections, in the interest of conserving judicial and party resources, Defendants have offered a path forward on document production. During the parties' January 8, 2026 meet and confer conference, Defendants proposed that they reproduce to Plaintiffs the documents Defendants previously produced to DOJ/FTC in the underlying COPPA investigation that preceded the 2024 COPPA litigation. *See United States v. ByteDance, et al.*, No. 2:24-cv-06535-ODW-RAO (C.D. Cal. Aug. 2, 2024). Defendants expect the DOJ investigation productions to provide a voluminous and highly relevant pool of documents.

Though not in fact required by the parties' protocol,[2] Defendants are happy to share information regarding the scope of the proposed reproduction. During the DOJ's investigation, several hundred thousand documents (over 1,000 GB) were produced in well over fifty volumes over at least a two to three year period. That production included communications between dozens of individuals, including engineers as well as current and former executives and individuals in leadership roles across e-commerce, global business solutions, regional product policies, product and user operations, and global user support. The documents include exports from the TikTok internalized privacy inquiry mailbox; over 1 million ZenDesk tickets (a platform used for external reporting of accounts); account moderation and content moderation records; internal policies, including related to retention and account moderations; training materials, including relating to account moderations; privacy policies; documents describing moderation processes; reports showing success at finding under-13 users; and Lark threads and emails discussing issues related to underage users, age gating, age modeling, minor safety, retention and deletion of underage user accounts, moderation policies for underage users, and

---

[2] The parties' ESI protocol requires the parties to meet and confer regarding custodians, sources of relevant data, search terms, and date restrictions, but these provisions were meant to address collections and productions made for the first time in this litigation — not reproductions of documents already produced to the government. *See, e.g.*, ECF No. 156 [ESI Protocol] ¶¶ IV ("The Parties agree to disclose information about custodians as well as custodial and non-custodial data sources likely to possess relevant or responsive information in accordance with Fed. R. Civ. P. 26. The Parties will meet and confer pursuant to Rule 26(f) discussions and use reasonable efforts to reach agreement regarding custodians as well as the location of relevant data sources including custodial and non-custodial sources."), VI ("The Parties agree to meet and confer and use reasonable efforts to reach agreement regarding the search methodologies to be applied, including, but not limited to, search terms and date restrictions.").

banning underage users. These types of documents are directly responsive to many of the discovery requests in Plaintiffs' Proffer, including RFP Nos. 2, 5, 11, 17, 18, 20, 21, 22, 23, 24, 27, 28, 32, 33, 34, 35, 36, 37, and 38.

Other than the time period covered, there is no discernible basis for Plaintiffs' assertion that they are entitled to broader discovery than this pre-suit production, given that Plaintiffs' claims are admittedly modeled directly on DOJ's complaint that followed the investigation in which these documents were produced. *See, e.g.*, ECF No. 94, Complaint ¶¶ 12, 13 ("The DOJ Complaint alleges that throughout the Class Period, Defendants…" have: (1) provided services directed to children that collect personal information from their users; (2) knowingly created accounts for children and collected data from those children without first notifying their parents and obtaining verifiable parental consent; (3) failed to honor parents' requests to delete their children's accounts and information; and (4) failed to delete the accounts and information of users they know are children. The DOJ Complaint further alleges that its ability to assess the precise magnitude of Defendants' violations has been stymied by Defendants' failure to keep records demonstrating its COPPA compliance, as required by the terms of the 2019 Permanent Injunction."), 114-118, 129, 131-132, 134-137, 141-142, 145, 147, 149, 152-153, 155-156, 158-161, 236 (quoting from and/or explicitly referencing allegations in DOJ Complaint). As to the time period covered, the DOJ investigation productions include documents going back to the inception of TikTok in 2018. Defendants propose that Plaintiffs review the DOJ investigation reproduction and, only thereafter, identify any discrete gaps and articulate focused follow-on requests.[3]

---

[3] Defendants disagree with Plaintiffs' proposal that certain categories of discovery should run parallel with production of the DOJ investigation materials. For example, source code (*see* Ex. 3 at 14 [RFP Nos. 40-42]) is incredibly sensitive and should only be produced if absolutely necessary. Any discussion of whether and what source code should be made available for inspection at this juncture would

This phased approach avoids duplicative burden and scattershot requests, while pointing Plaintiffs directly to the most relevant documents and preserving Plaintiffs' ability to seek additional material where necessary.

The documents Defendants propose to reproduce in this litigation are housed and/or archived in a variety of places with variable levels of accessibility. Defendants are actively assessing the logistics and timeline required to collect and reproduce these materials.

\* \* \*

Pursuant to Local Rule 5-4.3.4(a)(2), by my signature below, I, Daniel M. Petrocelli, attest that all other signatories concur in the filing's content and have authorized the filing.

---

have no utility, as it would be untethered to any specific feature or process change. Accordingly, any discussion of source code can and should be deferred until after Plaintiffs have assessed the DOJ investigation reproduction. Likewise, Plaintiffs' RFP No. 4 seeks certain documents produced in the Social Media Addiction MDL. *See* Ex. 3 at 8-9. But this litigation involves completely different claims than those at issue in this case. The Social Mediation Addiction MDL concerns claims that plaintiffs were harmed because social media is purportedly addictive, whereas this case is based exclusively on statutory claims over alleged data collection from users under the age of 13. Accordingly, production in response to RFP No. 4 would require a new relevance review of the entire 2.2 million document production MDL—an exercise that is disproportionate, unduly burdensome, and may be wholly unnecessary following Plaintiffs' review of the DOJ investigation reproduction.

Dated: January 15, 2026

Respectfully submitted,

By: */s/ Derek W. Loeser*
    Derek. W. Loeser

DEREK W. LOESER (*pro hac vice*)
dloeser@kellerrohrback.com
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101
(206) 623-1900, Fax (206) 623-3384

*Interim Lead Counsel for Plaintiffs*

By: */s/ Eric A. Kafka*
    Eric A. Kafka

ERIC A. KAFKA
ekafka@cohenmilstein.com
COHEN MILSTEIN SELLERS AND TOLL PLLC
88 Pine Street, 14th Floor
New York, NY 10005
212-838-7797
212-838-7745 (fax)

*Interim Lead Counsel for Plaintiffs*

By: */s/ Daniel M. Petrocelli*
    Daniel M. Petrocelli

DANIEL M. PETROCELLI
dpetrocelli@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California 90067-6035
Telephone:   +1 310 553 6700
Facsimile:   +1 310 246 6779

STEPHEN D. BRODY
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone:   +1 202 383 5300
Facsimile:   +1 202 383 5414

MATTHEW D. POWERS
mpowers@omm.com

| | |
|---|---|
| 1 | O'MELVENY & MYERS LLP |
| 2 | Two Embarcadero Center, 28th Floor |
| 3 | San Francisco, California 94111-3832 |
| 4 | Telephone: +1 415 984-8700<br>Facsimile: +1 415 984-8700 |
| 5 | *Attorneys for Defendants ByteDance Ltd., ByteDance Inc., TikTok Ltd.,* |
| 6 | *TikTok Inc., TikTok LLC, TikTok Pte. Ltd., and TikTok U.S. Data* |
| 7 | *Security Inc.* |

**CERTIFICATE OF SERVICE**

I certify that on January 15, 2026, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which automatically services all counsel of record for the parties who have appeared.

Dated: January 15, 2026  /s/ *Daniel M. Petrocelli*
Daniel M. Petrocelli