# EXHIBIT 2

## FILED UNDER SEAL

DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, Suite 800
Los Angeles, California  90067-6035
Telephone:  +1 310 553 6700
Facsimile:   +1 310 246 6779

STEPHEN D. BRODY (*pro hac vice*)
sbrody@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC  20006-4001
Telephone:  +1 202 383 5300
Facsimile:   +1 202 383 5414

MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
San Francisco, CA 94111
Telephone:  +1 415 984 8700
Facsimile:   +1 415 984 8701

*Attorneys for Defendants ByteDance Ltd.,
ByteDance Inc., TikTok Ltd., TikTok Inc.,
TikTok LLC, TikTok Pte. Ltd., and
TikTok U.S. Data Security Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TIKTOK INC., MINOR PRIVACY LITIGATION | Case No. 2:25-ml-03144-GW-RAO<br><br>**DECLARATION OF DANIEL M. PETROCELLI IN SUPPORT OF DEFENDANTS' STATEMENT REGARDING THE TIKTOK PLATFORM'S OPERATIONS**<br><br>**FILED UNDER SEAL** |

## DECLARATION OF DANIEL M. PETROCELLI

I, Daniel M. Petrocelli, declare as follows:

1.  I am a member of the Bar of the State of California and am admitted to practice in the United States District Court for the Central District of California.  I am a partner at the law firm of O'Melveny & Myers LLP, counsel of record for Defendants ByteDance Ltd., ByteDance Inc., TikTok Ltd., TikTok Inc., TikTok LLC, TikTok Pte. Ltd., and TikTok U.S. Data Security Inc. (collectively, "Defendants").  I submit this declaration in support of Defendants' Statement Regarding the TikTok Platform's Operations.  I have personal knowledge of the facts set forth in this declaration and, if called to testify as a witness, could and would do so under oath.

2.  Attached hereto as **Exhibit A** is a true and correct copy of the transcript from the November 6, 2025 status conference in this case.

3.  Attached hereto as **Exhibit B** is a true and correct copy of the public portion of the transcript from the November 10, 2025 status conference in this case.

4.  Attached hereto as **Exhibit C** is a true and correct copy of the sealed portion of the transcript from the November 10, 2025 status conference in this case.

5.  Attached hereto as **Exhibit D** is a true and correct copy of the TikTok platform's Community Guidelines, publicly available at TikTok, *Community Guidelines*, https://www.tiktok.com/community-guidelines/en/youth-safety (effective Sept. 13, 2025).

6.  Attached hereto as **Exhibit E** is a true and correct copy of the TikTok platform's Terms of Service, publicly available at TikTok, *Terms of Service*, https://www.tiktok.com/legal/page/us/terms-of-service/en (last updated Nov. 2023).

7.  Attached hereto as **Exhibit F** is a true and correct copy of the TikTok platform's Privacy Policy, publicly available at TikTok, *Privacy Policy*, https://www.tiktok.com/legal/page/us/privacy-policy/en (last updated Aug. 19,

2024).

8.     Attached hereto as **Exhibit G** is a true and correct copy of the TikTok platform's Children's Privacy Policy, publicly available at TikTok, *Children's Privacy Policy*, https://www.tiktok.com/legal/page/global/privacy-policy-for-younger-users/en (last updated Oct. 1, 2024).

9.     Attached hereto as **Exhibit H** is a true and correct copy of the TikTok platform's Advertising Policies, publicly available at TikTok, *Advertising Policies*, https://ads.tiktok.com/help/article/tiktok-advertising-policies (last updated Aug. 2025).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 15th day of January, 2026 in Los Angeles, California.

*/s/ Daniel M. Petrocelli*
Daniel M. Petrocelli

# EXHIBIT A

1          UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA - CENTRAL DIVISION

3         HONORABLE GEORGE H. WU, U.S. DISTRICT JUDGE

4

5   IN RE: TIKTOK, INC.,
    MINOR PRIVACY LITIGATION,

6                                    Case No.
                                     25-ML-3144-GW
7

8

9

10              REPORTER'S TRANSCRIPT OF
           STATUS CONFERENCE RE MOTION TO DISMISS
11            Thursday, November 6, 2025
                     9:26 A.M.
12            LOS ANGELES, CALIFORNIA

13

14

15

16

17

18

19   _____

20        TERRI A. HOURIGAN, CSR NO. 3838, CCRR
            FEDERAL OFFICIAL COURT REPORTER
21        350 WEST FIRST STREET, ROOM 4311
            LOS ANGELES, CALIFORNIA  90012
22               (213) 894-2849

23

24

25

```
 1                    APPEARANCES OF COUNSEL:

 2

 3   FOR PLAINTIFFS:  A.A., A.B., A.C., JODY VILLANUEVA,
     ANGELA FAUCETT, LAMARTINE PIERRE, JR.
 4
         COHEN MILSTEIN SELLERS and TOLL PLLC
 5       BY:  ERIC A. KAFKA
             Attorney at Law
 6       88 Pine Street, 14th Floor
         New York, New York  10005
 7
     FOR THE PLAINTIFF:  CHRISTINA MIDDLETON
 8
         WAGSTAFF and CARTMELL LLP
 9       BY:  TYLER W. HUDSON
             Attorney at Law
10       470 Grand Avenue, Suite 300
         Kansas City, Missouri  64112
11
     FOR THE PLAINTIFF:
12
         BRADLEY GROMBACHER LLP
13       BY:  KILEY LYNN GROMBACHER
             Attorney at Law
14       31365 Oak Creek Drive, Suite 240
         Westlake Village, California 91361
15

16   FOR THE PLAINTIFF:  CHANTELL MARTIN, JACQUELYN WILLIAMS

17       DUGAN LAW FIRM APLC
         BY:  JAMES R. DUGAN, II
18           DAVID SCOTT SCALIA
             MONICA M. VELA-VICK
19           Attorneys at Law
         One Canal Place
20       365 Canal Street, Suite 1000
         New Orleans, Louisiana  70130
21

22   FOR THE PLAINTIFF:  SCOTT HUMBERT

23       AYLSTOCK WOITKIN KREIS and OVERHOLTZ
         BY:  BRYAN F. AYLSTOCK
24           Attorney at Law
         17 East Main Street, Suite 200
25       Pensacola, Florida  32502
```

UNITED STATES DISTRICT COURT

```
 1
      FOR THE PLAINTIFF:  J.R.
 2
          CARELLA BRYNE BAIN GILFILLAN
 3        BY:  JAMES E. CECCHI
               Attorney at Law
 4        5 Becker Farm Road
          Roseland, New Jersey  07068
 5

 6    FOR THE PLAINTIFF:  A.C.

 7        SILVER GOLUB and TIETELL LLP
          BY:  STEVEN L. BLOCH
 8             Attorney at Law
          One Landmark Square 15th Floor
 9        Stamford, Connecticut

10    FOR THE PLAINTIFF:

11        KELLER ROHRBACK LLP
          BY:  DEREK LOESER
12             Attorney at Law
          1201 Third Avenue, Suite 3400
13        Seattle, Washington  98101

14
      FOR THE PLAINTIFF:
15
          GIBBS MURA LLP
16        BY:  ANDRE MURA
               Attorney at Law
17        1111 Broadway, Suite 2100
          Oakland, California  94607
18
      FOR THE PLAINTIFF:  KATHLEEN LANSER
19
          SEEGER WEISS LLP
20        BY:  CHRISTOPHER A. SEEGER
               DAVID R. BUCHANAN
21             Attorneys at Law
          55 Challenger Road, 6th Floor
22        Ridgefield Park, New Jersey  07660

23

24

25
```

1    APPEARANCES CONT.

2

     FOR THE DEFENDANT:
3
         O'MELVENY and MYERS LLP
4        BY:  DANIEL M. PETROCELLI
                MATTHEW DAVID POWERS
5               Attorneys at Law
         Two Embarcadero Center
6        San Francisco, California  94111

7    ALSO PRESENT:  Marcus Smith, present for the United
     States.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          **LOS ANGELES, CALIFORNIA, THURSDAY, NOVEMBER 6, 2025**

2                              **9:26 a.m.**

3                              **\* \* \***

4

5

6          THE COURT:  Let me call the matter of *In re: TikTok,*

7   *Minor Privacy Litigation*, and *United States versus Bytedance*.

8          As to *United States versus Bytedance*, do we have

9   plaintiff's counsel on the phone?

10         MR. SMITH:  Yes, Your Honor.  Marcus Smith on behalf

11  of the United States.

12         THE COURT:  Oh, it's just Mr. Smith, you are the

13  only one for the United States on the line?

14         MR. SMITH:  My colleague, Sarah Williams, is here as

15  well.

16         THE COURT:  Thank you.

17       And for -- on the MDL, for the plaintiffs, we have?

18         THE COURT:  Let me ask, Javier, did you take the

19  names of everybody?

20       My clerk has taken all the names of counsel beforehand.

21       All I ask, when you speak for the first time, identify

22  yourselves for the reporter.

23       We are here on the defendant's motions for stay and also

24  motions to dismiss.

25         I issued attentive on these.  I presume both sides and

1    the government has seen these tentatives.

2             If anybody hasn't, let me know now.

3             Hearing nothing, I presume everybody got copies.

4             Let me ask, starting with the motion to stay, does

5    anybody want to argue in regards to the motion to stay?

6                  MR. POWERS:  No, Your Honor.

7                  THE COURT:  That was faster than I thought.

8             Let me ask, do the plaintiffs want to grab defeat for

9    the jaws of victory.

10                 MR. LOESER:  We have learned enough not to do that,

11   Your Honor.

12                 THE COURT:  All right.  Okay.  That was a quick one,

13   quicker, than I thought.

14            Maybe I should have had those other cases who were in

15   line now, and now have to come back in the afternoon and hear

16   them.

17            As to the motions to dismiss, does somebody want to

18   argue about that?

19                 MR. POWERS:  Yes.

20                 THE COURT:  Also, before I forget, you know, at the

21   end of all of this discussion, I do want to talk with the

22   parties about how this case is proceeding.

23            I really feel -- I do understand that the parties gave

24   me a tutorial about how, kind of, like, how TikTok works, but I

25   think I don't quite understand certain things.

7

1          And the question is, is I want this stuff to be resolved

2     sooner rather than later, even though I understand the argument

3     might be made, well, you know, technically the case isn't open

4     for discovery, et cetera, et cetera.

5          I want this information, to the extent it can be agreed

6     upon, then I want the agreements to the extent they cannot be

7     agreed upon.  I want to know what exactly the nature of the

8     disputes are insofar as operations of TikTok.

9          For example, on the preservation contest, I'm having a

10     problem, because I don't think I fully understand how TikTok

11     operates.

12          To the extent the parties agree, that would be great,

13     because then you can give me a joint report as to how it

14     operates, in which case, I will rely on that.

15          But if there are things the parties can't agree on, then

16     you know, I would want discovery on those issues earlier rather

17     than later, even though the normal process will be ultimately

18     -- initially, we will have a motion -- at some point in time

19     unless I dismiss -- a motion for class certification, et

20     cetera.

21          And then normally the substantive issues would be

22     addressed after certification.

23          But again, because I feel I don't understand certain

24     things about how TikTok operates, I would want that stuff to be

25     clarified to me for purposes of my making these various rulings

```
 1    that I'm supposed to make in regards to the various points that

 2    the parties are in disagreement with.

 3            MR. PETROCELLI:  Your Honor, Mr. Petrocelli for

 4    defendants.

 5        It would be helpful if Your Honor could perhaps provide

 6    some guidance on what aspects of TikTok's operation you would

 7    like further information about.

 8            THE COURT:  I kind of have, like, a general idea

 9    of -- for example, this is something -- maybe this is so far in

10    the future -- I presume that there is some sort of algorithm or

11    something like that which directs advertisements and things

12    like that to various persons -- sorry, to the users of the

13    TikTok, I would want to know how that is done.

14        Also, for example, I presume that various ways in which

15    TikTok monetizes its operations is by offering particular

16    third-party persons who want to -- I don't know, the

17    old-fashioned word would be advertised, I don't know if that is

18    what it would be called now, in other words, to get access to

19    users -- specific users for their particular type of products.

20        For example, if it is a cereal company or if it's a

21    movie that is coming out in the future, I would want to know

22    does TikTok, for example, provide a basis whereby third parties

23    who want to communicate to users through whatever means that

24    TikTok has, I don't know if you guys have pop-ups like YouTube

25    has or something like that, I want to know how that is done.
```

1       It is these sort of things, so that in turn, goes into

2  the situation as to, for example, when this stuff is stored,

3  the means by which that is done.

4       I guess the way in which that is done by accessing

5  information such that the algorithm can be applied, and so I

6  want to know how that goes through to various -- I suppose

7  parts of TikTok where that type of information is stored such

8  that there can be a use or third-party advertisers, for lack of

9  a better term, are allowed or provided a basis upon which they

10  can get their message to particular users, stuff of that sort.

11       I just don't understand how it's done, and that's what I

12  want to know.

13       Also, it's my understanding that, obviously, that the

14  government's case has a lot of this stuff going on, but it's

15  also my understanding that similar actions are pending in

16  various jurisdictions.

17       My understanding is that there is a European case

18  involving this sort of thing.

19       There is also a Canadian one.  I want to know,

20  basically, what is going on in those other cases, things of

21  that sort, but we will discuss that at the end.

22       We don't need to discuss it now.

23       So, insofar as the motions to dismiss are concerned, the

24  TikTok wants to raise an argument.

25       Let me ask both sides, when you raise an argument or

```
 1   response, let me know the page of the tentative you are

 2   referring to, so I won't get lost.

 3              MR. POWERS:  Thank you, Your Honor.  Actually, I

 4   hope to keep this fairly short.

 5         The Court obviously spent a fair amount of time putting

 6   a very detailed order together, and although we disagree on --

 7   with the Court -- on many of the issues as they turned out in

 8   the tentative, there is only a few things I would like to see

 9   if I can convince the Court to change its mind on.

10         What I want to start with are the unfair competition

11   statutes, and particularly, the economic loss issue.

12         This is discussed at page 32 of the tentative.

13         Although, I'm going to deal less with the specific

14   language of the tentative and more with some conceptual

15   arguments, which is -- we understand the Court went through the

16   various theories of economic injury, agreed with our position

17   on some, disagreed with our position on others.

18         And I would just like to emphasize for the Court the

19   lack here of any of the kind of allegations that Judge

20   Blumenthal thought would be convincing for purposes of economic

21   loss issues in his *Griffith* decision, which is in our papers

22   also involving TikTok.

23              THE COURT:  I also supervised him.  When I was in

24   the US Attorney's Office -- and he's very, very smart.

25         In fact, I would say he's smarter than I am, but I was
```

 1   his supervisor.

 2           MR. POWERS:  Well, you should listen to his

 3   discussion in *Griffith*.

 4           With respect, you should listen to the decision in

 5   *Hubbard*, which although, it went the other way for us on a

 6   number of other issues, dealt with virtually the same kind of

 7   thing in terms of the economic loss issues, claims under COPPA

 8   about the collection of data from children.

 9           And the Court, there, earlier this year in January,

10   rejected those claims for lack of a showing of economic loss.

11           We would submit that that is a problem here as well.

12           There are plenty of allegations in the complaint or

13   plenty of allegations in complaint about data being valuable.

14           THE COURT:  This is one of the problems I have,

15   because I don't understand exactly how TikTok operates, I don't

16   know -- I don't know whether I could reach a decision on that

17   type of stuff at this point.

18           Obviously, the -- maybe, I'm talking about something

19   that is totally different from what you are talking about.  It

20   seems to me this type of information is being monetized in some

21   way, shape, or form.

22           Although I do understand the individual user cannot

23   monetize it in the same way as the platform monetizes it, the

24   question, though, is can I say with certainty that it has

25   absolutely no economic value insofar as the user is concerned.

UNITED STATES DISTRICT COURT

 1          MR. POWERS:  Well, I do think -- I don't think we're

 2   contesting the data has economic value as it's used.

 3          The question, what we think is lacking in terms of the

 4   allegations, are an allegation that that collection of data

 5   actually financially in some way, economically injured the

 6   plaintiffs.

 7          So there are a number of ways you could plead that such

 8   a thing would happen, would be the case.

 9          THE COURT:  Well, let me ask you this:  Sometimes

10   what happens, I don't want -- if this happens with TikTok, but

11   sometimes, you know, a user is asked -- not by the TikTok

12   platform, but some other type of platforms, they say, well if

13   you fill out this survey, we will give you something.

14          In that sense, there is obviously some economic value to

15   that particular user, because in exchange for providing

16   information of that sort, they are getting something, not

17   obviously a lot, but they are getting something.

18          Although, it might very well be, it's kind of a tricky

19   way of advertising in the sense that the party there is giving

20   the user supposedly something, but in effect, it's causing the

21   user to actually go to that user's site, or do something with

22   the advertiser's site or product, so it's actually not valuable

23   necessarily, but -- that's the problem I have.  I really don't

24   understand the situation.

25          MR. POWERS:  Fair enough on understanding the

1    situation.

2         I don't think the Court needs to understand all of the

3    details which I understand Your Honor is going to want to get

4    into later in the case of how TikTok monetizes user activity on

5    the platform.

6         Our position for pleading purposes, the plaintiffs have

7    to plead they suffered an economic loss.

8         They could do that in other cases.  You could plead that

9    I was going to sell this information, and I had to sell it for

10   less, or the market for it is less, but you have to plead that

11   you are going to financially somehow lose money from, as a

12   result of the collection and use of your information.

13        Just collecting information by itself, even if TikTok

14   uses it to generate revenue, doesn't mean that the person who

15   it was collected from actually suffered a loss, which is what

16   Judge Blumenthal, and the judge in the other district, both of

17   those decisions and the other decisions that we cite in our

18   papers, reach that conclusion.

19        For example, this is, again, from the *Griffith* decision

20   where Judge Blumenthal walks through what could be pled.

21        For example, I would have paid less for something, and

22   that doesn't apply here because there is no payment being made

23   for using the service, or that someone was, again, interested

24   in monetizing their own data, but unable to do so.

25             THE COURT:  The way I have written it now, I kind of

14

1   am really waffling; I'm waffling.

2          But the problem is that on a motion to dismiss, for me

3   to grant the motion to dismiss, I would have to say there is no

4   way in which they could come up with something.

5          Although, maybe your response is, well, they haven't

6   even come up with initially anything, so I would at least have

7   -- require them to give me something more of a hint.

8                  MR. POWERS:  That's correct.  That gives some fact.

9                  THE COURT:  That might be the better argument.

10                 MR. POWERS:  But that is actually the argument I'm

11  trying to make.

12                 THE COURT:  It was actually not my thought, it was

13  actually your thought.

14                 MR. POWERS:  Yes, that is right.

15                 THE COURT:  Now, he has twisted my arm, let me ask,

16  why isn't he right on that point?

17         Who is going to take this?

18                 MR. LOESER:  Your Honor, Derek Loeser for the

19  plaintiffs.

20         Counsel is not correct about that for the reasons you

21  described in your tentative.

22                 THE COURT:  What page of the tentative are you

23  referring to?

24                 MR. LOESER:  I'm referring to the discussion of the

25  four economic theories.  I think --

**UNITED STATES DISTRICT COURT**

```
1              THE COURT:  I actually want numbers, the page
2    number.
3              MR. LOESER:  I believe the discussion starts on
4    page 30, the unfair competition section of your tentative
5    starting on page 29, it covers the next multiple pages.
6         Your Honor evaluated the case law that we cited,
7    obviously, carefully read those authorities and did a thorough
8    job of discussing it.
9              THE COURT:  For example, I'm looking at page 32, it
10   says:  However, it's not clear whether the plaintiffs have
11   sufficiently articulated their loss of value theory to
12   establish an economic injury.
13        Then I go on, so I indicated there seems to be some
14   problems here.
15        The question was that maybe I should require more -- not
16   necessarily to say that there should be a basis for dismissal
17   now, but it's sort of unclear what exactly the economic injury
18   is insofar as the subparts are concerned.
19             MR. LOESER:  Right.  I, think again, Your Honor did
20   carefully go through the four different economic theories that
21   we discussed, found that as to two of them --
22             THE COURT:  I guess your response to his argument,
23   well, you know, if the Court finds there is any basis for an
24   economic injury, you know, in terms of various theories, as
25   long as the defendant has one, that is sufficient.
```

**UNITED STATES DISTRICT COURT**

         1          And if they want to attack the other things -- it's not

         2  up to you guys, at this point in time, to amend further, that

         3  there can be no economic injury.

         4          MR. LOESER:  It's a motion to dismiss.  They need to

         5  show there is no entitlement to relief.  There are four bases

         6  that --

         7          THE COURT:  The theory is where there is multiple

         8  theories, as long as any one of the theories survives, then

         9  that is sufficient.

        10          MR. LOESER:  I think that is certainly how *Quickset*,

        11  the California Supreme Court decision Your Honor cited,

        12  describes these four available theories for showing economic

        13  loss.

        14          Your Honor looked at a host of authorities and concluded

        15  as to two of them -- let me talk very briefly about those two.

        16          One was loss of control and the other is loss of right

        17  to exclude.

        18          Those, obviously, have nothing to do with whether the

        19  plaintiff intends to sell the data or not, that is simply a

        20  recognized economic value that is impacted here by TikTok

        21  hovering up this information illegally and selling access to

        22  it.

        23          I think Your Honor is clearly right in the tentative as

        24  to why -- what we have alleged is sufficient for those.

        25          Your Honor did pose some questions about two of the

1  other theories and found the benefit of the bargain theory that

2  we suggested, Your Honor didn't agree with, then as to the last

3  one on diminishment of value, really, I think what counsel is

4  arguing is the diminishment of value theory of economic loss.

5       Again, we don't need that to go forward in this case.

6  But I do think that we have alleged what the case law would

7  suggest is sufficient for that.

8       THE COURT:  So at some point in time, they are

9  entitled, maybe it's not now, but certainly for purposes of

10  discovery, et cetera, et cetera, to pin down which of the

11  various theories you are going to be going forward on.

12       You know, in other words, have you indicated you are not

13  going to be going forward on the benefit of the bargain, and

14  there is no need to do any discovery or anything else, that is

15  dead in the water.

16       In other words, it might very well be this is not

17  necessarily required to be decided now with the purpose of this

18  motion to dismiss, but certainly you are going to have to

19  resolve it really soon, because a lot of the discovery is going

20  to be premised on what the plaintiffs are going to be utilizing

21  for purposes of the theory.

22       MS. LOESER:  I think that is fair to say.  I also

23  think we are proceeding on all four of these theories.

24       If Your Honor decides we can't proceed on one of them,

25  then that theory will go away.

1          I do think it's worth commenting on the two theories

2    that Your Honor seems to be struggling or waffling on, and that

3    is diminishment of value and benefit of the bargain.

4          I think the other two theories that we have clearly pled

5    the facts necessary to show a loss of control --

6          THE COURT:  Let me ask defense, are you keeping the

7    other two theories?

8          MR. POWERS:  Absolutely, Your Honor.  We don't think

9    they pled facts to economic loss to any of them.

10         Part of the problem is there aren't facts about these

11   named plaintiffs what they would do to -- that they are unable

12   to do that would result in them suffering an economic loss.

13   Where is the economic loss?

14         THE COURT:  Well again, I have discussed the four

15   theories.

16         As plaintiffs point out as to two of those, and the

17   defense arguments I have considered and not found them to be

18   sufficient.

19         But as to the other two, I again, I'm waffling.

20         MR. POWERS:  I would also comment, I think it would

21   be helpful for the case if the Court resolved this sooner

22   rather than later.

23         THE COURT:  I can't resolve it, because I don't

24   fully understand how TikTok operates.

25         MR. LOESER:  Well, let me try to convince you as to

```
 1    why you should, at this stage of the case, simply find that we
 2    have adequately pled all four theories.
 3                THE COURT:  Why would I do that?
 4                MR. LOESER:  For fun.
 5                THE COURT:  Because for me to do that, then I would
 6    have to figure out how TikTok fully operates.
 7          I can't figure it out at this point in time, therefore,
 8    I don't feel comfortable doing that.
 9          That's the reason why I started at beginning of these
10    discussions with the fact that the parties are going to have to
11    make clearer to me the parts -- I do understand that there may
12    be parts of how TikTok operates, which are going to be the
13    essence of the case.
14          They are going to be so contested that the parties are
15    never going to be able to reach an agreement on those portions.
16          I understand that, it seems to me a lot of the other
17    stuff is background of TikTok, its platform, how it's
18    operating, and things of that sort, which the parties should be
19    able to reach an agreement on.
20                MR. LOESER:  Let me approach it this way:  These are
21    economic theories.
22          We will have economists in this case when we go to prove
23    damages and the economists will have to rely on economic
24    theories.
25          We would like to be able to have the economist --
```

1          THE COURT:  Well, again, your economic economists

2     will have to pass *Daubert* on these.

3          MR. LOESER:  For sure.  I guess my point is that we

4     think we have pled enough on a motion to dismiss, you have

5     recognized two of the theories.  We don't need any more than

6     that.

7          In terms of discovery going forward, for benefit of the

8     bargain, for example, which I can talk about, we would like to

9     obtain discovery to show why we think there is losses related

10     to benefit of the bargaining, and saying there is losses of

11     diminishment in value.

12          You don't have to decide these things now, Your Honor.

13     You we have enough to go forward.  We would like discovery to

14     go forward to be sufficient to answer whatever questions Your

15     Honor may have about these theories.

16          THE COURT:  I will not resolve the benefit of the

17     bargain argument here, but just out of curiosity, what is

18     the -- also, are you talking -- I presume you are only talking

19     about for those users who are minors?

20          You are not talking about benefit of the bargain for

21     regular users, are you?

22          MR. LOESER:  Correct.

23          THE COURT:  If you are just talking about minors, I

24     don't quite understand the benefit of the bargain, because if

25     you have a minor, can they enter into a bargain legally?

**UNITED STATES DISTRICT COURT**

1          MR. LOESER:  The fact of the matter is the minors

2     were on the platform because Tiktok allowed them to be there.

3          THE COURT:  You are talking about the benefit of the

4     bargain, I don't understand how the benefit of the bargain

5     works as far as minors are concerned.

6          MR. LOESER:  I guess I look at it as sort of a

7     practical thing.

8          The minors are on the platform and under a benefit of

9     the bargain theory, they are utilizing the platform with the

10    expectation that TikTok will operate lawfully with regard to

11    their information.  That is not what happened.

12         THE COURT:  Why can't TikTok initially assume the

13    minors are not going to be lying about their age, in which case

14    they are restricted to the kid's portion?

15         Is the benefit of the bargain being disrupted insofar as

16    the kid's portions is concerned?

17         MR. LOESER:  We allege that in the complaint.

18         Of course, we allege TikTok knows the ages of these

19    people.

20         THE COURT:  Those are allegations.  That's why --

21    the reason why the benefit of the bargain is not going to be

22    resolved today.

23         There are problems with the benefit of bargain, I don't

24    know necessarily they are insurmountable problems, but they are

25    not ones that can be resolved today.

UNITED STATES DISTRICT COURT

```
 1          MR. LOESER:  I hear Your Honor.

 2          We do not need it resolved today to move forward.  Our

 3    goal is to move forward with discovery and your tentative is

 4    very thorough and careful and allows us to do that, so on the

 5    theory of not snatching victory from the jaws of defeat or vice

 6    versa, I won't waste your time arguing.

 7          I do think as we go forward, there is a rationale for

 8    the benefit of the bargain, I think we will be able to show

 9    that.

10          Just like, I think, there is rationale for diminishment

11    of value that is recognized in the various cases that we have

12    cited.

13          THE COURT:  Well, I mean, but the problem might very

14    well be as to those latter arguments, sometimes things will

15    have a value, but they won't be valued -- in other words, each

16    individual user is not going to have a significant economic

17    value as to individual user, whereas -- to the platform, it

18    may -- the amalgamation -- if that is the right term -- of all

19    that information might have value.

20          MR. LOESER:  Your Honor, that is an argument that

21    the defendants, TikTok, and every other social media company

22    makes in every case.

23          They say the service is free, you don't pay for it,

24    therefore, this information has no value to you.

25          I think -- what the case is *Turner, Brown*, *In Re Meta*
```

1  *Pixel*, *In re: Facebook*, all of the way through, reject that

2  notion because the information is tremendously valuable.

3  There is a market for it. People pay for it, companies

4  pay to access it, so that market exists.

5  So it's just -- no longer really a viable theory in

6  social media litigation.

7  THE COURT: Let me ask you, insofar as would an

8  adult user be able to make that argument?

9  MR. LOESER: Make the argument?

10  THE COURT: You just made insofar as value is

11  concerned?

12  MR. LOESER: Yes.

13  THE COURT: Why? As long as there is sufficient

14  notice of what --

15  MR. LOESER: You are saying in TikTok could they

16  make that argument?

17  THE COURT: In other words, could they use it in

18  TikTok, my understanding is -- I may be wrong on this, but my

19  understanding is users are informed of the fact that TikTok as

20  to users, gets information, processes that information, and

21  attempts to monetize that information in various ways.

22  If that is what is happening, then how can somebody, an

23  adult user, complain?

24  MR. LOESER: I interpreted your question as

25  generally speaking, can adult users sue social media companies,

1    and they can.

2            Are we doing that here?  No.

3            Are our allegations equally applicable to adults?  No.

4            Our allegations are specific to under 13 users of the

5    platform.

6            THE COURT:  Then I guess you could argue, maybe I

7    should shut up, because I don't understand fully, I can think

8    of all of these scenarios.

9            I suppose a point can be made that the difference

10   between adult information and minor information, because minor

11   information, you can't supposedly get, unless there is a waiver

12   by an adult.

13           And so, therefore, there is a different monetization of

14   minor information as opposed to adult information, and that it

15   can't normally be gotten.

16           But the question is, does that monetize it as to the

17   individual child user as opposed to an adult user?

18           I mean, all of these questions I don't think I can

19   answer today.

20           MR. LOESER:  I think the questions you have answered

21   in your tentative are sufficient for us to go forward, which is

22   our goal.

23           I do, just very briefly, have argument is made here and

24   is made in every one of these cases, is the plaintiffs have to

25   allege they intended to sell or they paid for the services.

25

 1          That is not a necessary allegation to show diminishment
 2   of the value.
 3          THE COURT:  Well, intentionality has obviously -- is
 4   an issue as in certain areas, but I don't necessarily think it
 5   is one here.
 6          Although, one could argue there is intentionality
 7   because the information is intentionally obtained for the
 8   purposes of monetizing it.
 9          So I mean, in that aspect it, it's there.
10          MR. LOESER:  I want to make sure -- I answered --
11   you asked us one question in the tentative, and I can't leave
12   here without at least saying that I looked at your question.
13          It was on page 32 of the tentative.  It was whether
14   applicable law as to loss of value requires a showing of
15   intention to monetize their information.  And if so, whether
16   they have alleged that element.
17          My answer to that question that is not what the law
18   requires.
19          *In re Facebook*, *Internet Tracking* explicitly addressed
20   whether the plaintiff needed to show an intention to sell the
21   data or otherwise show a lost value, and concluded not.
22          There is a host of other cases that have agreed with
23   that.
24          As to what we allege in the complaint, I think we cover
25   it both ways.

1          I will read to you what we alleged, just so it's --

2              THE COURT:  No, don't.

3              MR. LOESER:  Well, we do allege that the plaintiffs

4     were aware of the market, and that the defendant interfered

5     with their ability to make an informed decision as to whether

6     to sell it or not.

7          I think under all of the authorities we have cited, we

8     have pled more than enough facts for the Court to uphold the

9     economic loss theories we have alleged.

10             MR. POWERS:  Quickly, I will turn the Court's

11    attention back to the *Griffith* case and back to the *Hubbard*

12    case, which we go directly opposite on this exact same point.

13         That some allegations --

14             THE COURT:  I'm not bound.

15             MR. POWERS:  Fair enough, but those Courts very

16    explicitly required some indication that the plaintiffs were

17    going to monetize their information.

18             THE COURT:  I understand that, and that, again,

19    that's one of the reasons I'm wavering.

20         But it's not something I'm going to be able to resolve

21    today, nor do I think I need to resolve it today.  I think even

22    though I understand the defendant objects, is going to be

23    objecting to all four theories insofar as economic loss is

24    concerned.

25         If I find one, that is sufficient, that would allow the

1   matter to go forward, and that's probably what the bottom line

2   here today is.

3        You can fight another day on all of them, but at least

4   for purposes of the motion, I would find that two of them

5   certainly will go forward, and the other two, I'm wavering

6   about, but I'm not going to decide them at this point.

7        MR. POWERS:  Fair enough.  The only other thing I

8   would point to, Your Honor, in the tentative that we would ask

9   the Court could to think more about, is the discussion of the

10  intrusion and seclusion claims that starts, I think, on page --

11  I apologize, I just had it -- it starts on page 21, and in

12  particular, the reasonable expectation of privacy prong of

13  those claims.

14       And, you know, I would understand the Court has thought

15  through these issues, but I would point the Court back to the

16  Third Circuit's decision in the *Nickelodeon* case, which

17  although, it doesn't involve COPPA, did involve what was

18  alleged to be the surreptitious collection of data from

19  children that is similar to some of the information that is at

20  issue here.

21       Although, COPPA wasn't at issue, the VPPA, the Video

22  Privacy Protection Act and some other statutes were at issue

23  involved collection of data from children watching videos on

24  Nick.com.

25       The Court there drew this distinction, which does show

1   up in some of the other cases and is discussed, although

2   negatively in the *McDonald* case that Your Honor cited, and I

3   will talk about that case in a second.

4        That there is this distinction for purposes of

5   reasonable expectations of privacy, and frankly, some of the

6   cases discuss it in the context of highly offensive behavior as

7   well.

8        Whether the defendant's collection of data is sort of

9   open and clear or whether it's surreptitious or contrary to, as

10  Your Honor described, affirmative misrepresentations or further

11  representations about what the product or service was, how it

12  worked, what kinds of data the Court was collecting.

13       And the Third Circuit, we think, forcefully, that rule

14  has been followed in other cases, including the *Manigault* case

15  that we cite from the District of South Carolina as a reason to

16  hold that even though there may be a COPPA violation, that

17  doesn't mean that someone who, here, lies about their age at an

18  age gate.

19       An age gate that -- this is on page 7 of our reply

20  brief, that the FTC has indicated is something that website

21  providers -- that platform operators can rely on, that that

22  person -- there shouldn't be a reasonable expectation that that

23  person's data in terms of what they interact with on the

24  website, their interactions with the website, there should be

25  no reasonable expectation that person's data should be private,

1    particularly where that person is being treated exactly the

2    same as all of the other users on the platform.

3          Under those circumstances, we think the Court should not

4    find a reasonable expectation of privacy for these users, given

5    the behavior that got them on to the platform and the fact that

6    there is nothing surreptitious about Tiktok's treatment of the

7    users on the regular over-13 platform.

8          The other aspect of the Court's decision that I just

9    want to maybe clarify, it seemed potentially as though the

10   Court was concerned that since there was a statutory violation,

11   that, in and of itself, was sufficient to show intrusion on

12   seclusion.  We don't think that is the law.

13         Obviously, the *Nickelodeon* case, itself, dealt with a

14   violation of federal privacy statutes.

15         There is a number of other cases where intrusion on

16   seclusion claims were rejected even though there were alleged

17   violations of privacy statutes, including -- these are in our

18   papers -- the *Cook v GameStop* case, which involved a violation

19   of Wiretape Act.  *In re:  Google, Inc.*, privacy --

20         THE COURT:  I don't think I said what you are saying

21   what I said.

22         MR. POWERS:  Then maybe you didn't.

23         I was concerned that the Court -- I don't -- that's why

24   I phrased this as a sort of clarification, because I wasn't

25   sure if the Court was treating the statutory violation itself

```
 1   as sufficient to show intrusion of seclusion, which we don't

 2   think is proper.

 3        We think a number of Courts have not -- have rejected

 4   intrusion on seclusion claims even when there is an alleged

 5   violation of federal privacy statute.

 6             THE COURT:  Let me hear a response from the

 7   plaintiffs on that point.

 8             MR. KAFKA:  Well, Your Honor, we think you have got

 9   it exactly right in your tentative.

10             THE COURT:  Obviously, if I just wanted to --

11             MR. KAFKA:  Eric Kafka for the plaintiffs.

12             THE COURT:  If I wanted you guys to say I'm right,

13   I'm right.  Why would I have a hearing?

14             MR. KAFKA:  Let me add something to that, then,

15   because I think one particular thing you got right was on

16   page 23 of your opinion, where you said the Court finds COPPA

17   relevant to the customs, practices, and circumstances

18   surrounding the data collection at issue, and therefore, in

19   setting plaintiff's reasonable expectations of privacy as to

20   how their data will be used and collected.

21        So even if -- and I will put to a side whether a

22   violation of federal law alone would be enough to make out a

23   claim for violation of reasonable expectation of privacy, I

24   think the weight of the law is in certainly in favor of that.

25             It's certainly relevant to a plaintiff's reasonable
```

1   expectation to privacy.

2          So the *Nickelodeon* case they cite is in apposite,

3   because there was no violation of COPPA there alleged.

4          In the cases where there was a violation of COPPA

5   alleged, such as *Turner*, they did find there was a violation of

6   reasonable expectation of privacy.  *Hubbard*, they found there

7   was a violation of reasonable expectation of privacy.

8          They cited the *Manigault-Johnson* case.  In that case the

9   Court never reached a decision on whether there had been a

10  violation of reasonable expectation of privacy.

11         So no case has ever found that a violation of COPPA is

12  not sufficient to make out a claim for the reasonable

13  expectation of privacy.

14         And certainly, it has been found to be at lease relevant

15  by all Courts who have addressed the issue as you have.

16         I would also note there was a case they cited *Cousin v*

17  *Sharp*, they cited an example of where they found no reasonable

18  expectation of privacy.

19         We looked that case up, since the briefs were submitted,

20  and I can give you citation, there was a later ruling in that

21  case where the plaintiffs amended their complaint, and they did

22  survive a motion to dismiss on intrusion on seclusion.

23         Here was the critical difference:  When they amended the

24  complaint, they alleged a violation of HIPPA, which is a

25  Federal Privacy Statute.

1          The Court found that that distinction because of the

2    allegations of a violation of HIPPA, Federal Privacy Statute,

3    was sufficient to both find a violation of the reasonable

4    expectation of privacy, and that the conduct was highly

5    offensive.

6          So it has certainly been, at the least found to be

7    highly relevant to the formation of reasonable expectation of

8    privacy and often found to be dispositive.

9          But you don't need to decide today whether it's relevant

10   or dispositive, and we think your decision -- I know you don't

11   want to hear it, but I think it was well reasoned.

12            THE COURT:  When he has lavished with so much

13   praise, what can I say?

14            MR. POWERS:  Your decision on standing to bring

15   claims from states the plaintiffs don't reside in is

16   wonderfully articulated and a superb piece of jurisprudence,

17   Your Honor.

18            THE COURT:  Well, I can look back and say, that's

19   just wonderful.

20            MR. POWERS:  I haven't read the subsequent decision.

21          I will just make the point that we're talking about

22   people claiming their over age, going to a social media

23   platform and interacting with a social media platform.

24          In those circumstances, there shouldn't be an

25   expectation that the social media platform isn't going to track

**UNITED STATES DISTRICT COURT**

1    their information, where people are claiming.

2         And this idea, because there is an alleged COPPA

3    violation, we're talking about an expectation of privacy with

4    people who have disclaimed coverage.  They are saying we're not

5    under 13; I am over 13.

6         THE COURT:  You are talking about minors.

7         MR. POWERS:  I understand.  The question is whether

8    those people have a reasonable expectation of privacy going to

9    a social media website.

10        The FTC says that you can rely age gate.

11        THE COURT:  But the thing about it is, though, I

12   don't see in those situations is that, even if they do what

13   they do, that they are necessarily waiving any privacy

14   concerns.

15        Their goals, at that point in time, and privacy is

16   irrelevant to their goals, at that point in time.

17        MR. POWERS:  The question, though, should be whether

18   there is an expectation of privacy in their interactions with

19   the platform.

20        THE COURT:  Well, let me put it this way, as a

21   society, one can say that information as to children, yes,

22   there is a privacy interest -- very strong privacy interest in

23   that regard.  And the fact it's been made part of certain

24   federal statutes, such as COPPA, indicates that.

25        I think that is what I have said is that -- I didn't say

 1   that a violation of COPPA in and of itself is sufficient for

 2   purposes of the privacy question, but certainly can be

 3   considered for purposes of the privacy question.

 4          MR. POWERS:  Yes, I don't think we're disputing it

 5   can be considered.

 6          You know, I could keep explaining our position, but I'm

 7   not sure that I'm going to move Your Honor.

 8          THE COURT:  Well, I don't know, what can I say.  I

 9   gave you guys some time, so you could talk to the extent that

10   at some point in time I will feel it's time for lunch.

11          MR. POWERS:  The only other thing I will cover, Your

12   Honor, is the New York civil rights law, which I understand

13   Your Honor's -- I guess this may be another waffle.

14          THE COURT:  It is a waffle.  I will agree with you

15   on that one.  It is a waffle.

16          MR. POWERS:  I would just point the Court to the

17   *Basson v Omni Childhood Center* case, which is in our papers,

18   and that is a case where the Court, the Eastern District of New

19   York, specifically held that quote:  The statute applies only

20   in cases where the defendant uses the plaintiff's identity in a

21   manner that conveys or reasonably suggests a subject's

22   endorsement of the publication in question.

23          THE COURT:  Yeah.  I mean, let me put it this way,

24   that one, I'm really on the fence on.

25          But let me hear the plaintiff's counsel opine again why

35

```
 1    I'm so right on that one.
 2              MR. POWERS:  He's from New York.
 3              MR. KAFKA:  There are two different prongs of, there
 4    is an advertising and there is a trade prong.
 5          The trade prong, itself, is a statutory interpretation,
 6    sort of step back for its principles, has to be given some
 7    meaning.
 8          And so we think that the meaning here applies, you know,
 9    quite clearly to this case, and that the law cited in those
10    cases that applied to the other prong, simply aren't applicable
11    here.
12              THE COURT:  So, sorry, there is -- what are the two
13    prongs again?
14              MR. KAFKA:  There is a trade purpose under the New
15    York civil rights law, and that is separate from a use for
16    advertising purposes.
17          It says here in the Beverly case, this is on page 28 of
18    the tentative:  Use for advertising purposes and use for
19    purposes of trade are separate and distinct statutory concepts
20    and violations.
21          And so you agreed with them that an advertising purpose
22    requires a publication, but there is also a trade purpose here,
23    and that's what we allege, or the Court found, and we allege
24    was violated.
25              THE COURT:  Yeah, but I understand what is the trade
```

UNITED STATES DISTRICT COURT

 1    purpose that you are saying is involved here?

 2              MR. KAFKA:  Well, they used the children's

 3    identities, their personas to make money to target them with

 4    advertisements.

 5         So this goes back to some of the conversation earlier,

 6    when someone goes on a platform, they can target their ads to

 7    certain types of individuals.

 8         And here, they are using the children's likeness as, in

 9    essence, a product.

10              MR. POWERS:  So, Your Honor, that reading of trade

11    would make all social media illegal in the state of New York.

12         I'm unaware of any case -- it's an incredibly broad

13    reading of trade to basically to read it as meaning any

14    commercial purpose, as opposed to some type of endorsement

15    whether --

16              THE COURT:  What he is saying, I think, he is saying

17    the use of the plaintiff's name, portrait, picture, or voice,

18    that is Element No. 1.

19         The Element No. 2 has 2 things:  Either advertising

20    purposes, which he is conceding, probably is not applicable

21    here, but for purposes of trade.

22         And without consent within the state of New York is what

23    he's arguing is that the TikTok uses minor's names or

24    identifying information for purposes of trade, which I guess is

25    the targeting, for example, of advertising to those

1      individuals.

2                  MR. POWERS:  That's his argument.

3                  THE COURT:  But let me just ask, didn't the Northern

4      District of Illinois take a particular approach to this that is

5      consistent with the plaintiff's view?

6                  MR. POWERS:  No, I don't believe so.

7                  THE COURT:  I thought it was *Clearview AI*?

8                  MR. POWERS:  I don't believe so, Your Honor.  I have

9      to admit, I'm not familiar with that case.

10                 MR. KAFKA:  I don't know if the question is to me.

11     That is our position, it's on page 29 of your tentative,

12     *Clearview AI Inc., versus Consumer Privacy Litigation*, Northern

13     District of Illinois, 2002, found the plaintiffs had

14     sufficiently alleged trade purpose to state a New York civil

15     rights claim when they previously allege the Clearview

16     defendants developed technology to invade the privacy of

17     American public for their own profit.

18                 MR. POWERS:  That portion of the decision is very

19     short.  There is no analysis or reasoning.  The Court should

20     look at that.

21           I just want to point out to be clear if the Court reads

22     that term "trade" as applying to the use of personal

23     information for advertising and social media platform, this law

24     is not directed only at minors.

25                 The New York law they cite is a general law that applies

```
 1    to everyone.
 2          It would make all social media immediately, immediately
 3    illegal in the state.
 4                THE COURT:  It wouldn't make all social media
 5    illegal.  It would certainly make -- those social media, which
 6    monetize in a particular way that is happening here.
 7                MR. POWERS:  Which is all social media.
 8                THE COURT:  Not all social media, most social media.
 9                MR. POWERS:  Yes, all of the major platforms would
10    be immediately illegal in state of New York.
11          There is no case that said that.
12          It's an incredibly broad reading of the statute.
13          It is quite surprising that enterprising plaintiffs'
14    lawyers haven't tried to bring those claims against all of the
15    major social media companies in the state of New York.
16                THE COURT:  Don't give them ideas.
17                MR. POWERS:  Yeah, it sounds like it.
18                MR. KAFKA:  I appreciate that, but here is the
19    problem, there are other elements of the claim.  So I would
20    have to be underlying privacy violations.
21          So here is the practical fact of what would happen.
22                THE COURT:  But when you phrased it as a privacy
23    claim, well, it is -- I guess -- it's not privacy, per se, it's
24    a monetization that violates their privacy.
25                MR. KAFKA:  Illegal monetization.
```

**UNITED STATES DISTRICT COURT**

1          If there was no violation of COPPA, there is no other

2     reason that the conduct isn't allowed, then -- we're not going

3     to go out and bring this claim on behalf of everyone, is what

4     I'm trying to say.

5          This isn't going to shut down TikTok, it's not going to

6     shut down any of the social media companies.

7          THE COURT:  Well, let me put it this way, normally

8     this type of situation if there is a company that uses a

9     person's name or picture or something like that for purposes of

10    advertising or something of that sort, that is known what it's

11    for, it seems to me.

12         But this situation is kind of weird, because it's not

13    that type of use, and the name is only to provide access, but

14    it's not for purposes -- in other words, it's kind of a weird

15    way of attempting to utilize the statute.

16         Although again, I'm not -- I don't feel comfortable

17    enough to preclude it entirely, but maybe if I thought about it

18    a lot and I can figure out exactly what TikTok does, I might,

19    in the end, agree and say, hey -- because again, this

20    particular statute is supposed to be somewhat narrowly applied.

21         MR. POWERS:  That's right.  The Courts in New York

22    have been very clear, it's supposed to be narrowly applied.

23         This would an incredibly broad reading of that statute.

24         THE COURT:  But again, I'm wavering on this.  I'm

25    not going to decide it today.  I have indicated I'm wavering on

```
 1    it.
 2          Once I find out how TikTok works, I might be able to, at
 3    some point, reach a more definitive conclusion as to its
 4    application.
 5          At this point in time, I'm not dismissing it, but I'm
 6    cautioning plaintiffs that it may not have a very long life in
 7    this litigation.
 8                MR. KAFKA:  Understood.
 9                THE COURT:  Anything else you want to argue?
10                MR. POWERS:  Not from our side, Your Honor.
11                THE COURT:  Gee, this was much shorter than I
12    thought.  I could have done those other cases.
13                MR. LOESER:  If Your Honor wants to have lengthy
14    conversation about standing --
15                THE REPORTER:  Please use the microphone.
16                THE COURT:  You have to speak in a microphone.
17                MR. LOESER:  The answer is no, Your Honor.
18                THE COURT:  Anything else from the defense side?
19                MR. POWERS:  No, Your Honor.
20                THE COURT:  Well, I guess I should be making my
21    tentative as my final on this.
22          Then I will make my tentative as my final on these.
23          Let's talk about just how this case is going to go
24    procedurally, addressing again -- I don't really want to ask
25    for another tutorial, I don't know if that is the best way.
```

41

```
 1              I do want you guys to -- I would want to know the extent

 2      you guys agree on how TikTok operates, and what the areas you

 3      disagree on how TikTok talks operates, vis-a-vis obviously

 4      primarily for purposes of this case with kid's mode versus

 5      adults, et cetera, et cetera, and also generally how TikTok

 6      monetizes and how TikTok operates in terms of storage of

 7      information, and how it processes things of that sort.

 8              These are things I want you guys to see how much you can

 9      agree upon, and to the extent you agree upon it, great, just

10      state what things you agree upon, et cetera.

11              MR. LOESER:  Can I ask a question about that, Your

12      Honor?  There is a bit of an information asymmetry problem

13      where we can tell you what we think.

14              THE COURT:  That's the reason why I'm saying what

15      you guys can agree upon.

16              MR. LOESER:  Why don't we just send them a discovery

17      request that says, how does TikTok monetize user information.

18              THE COURT:  Well, again --

19              MR. LOESER:  That's what I worry about.

20              THE COURT:  Let me ask, if the plaintiffs were to

21      submit an interrogatory request of that sort, what would

22      TikTok's response be?

23              MR. PETROCELLI:  You know, I don't think it's

24      appropriate for them to proceed by way of discovery.

25              The issue is the Court needs more information about how
```

```
 1   TikTok operates.

 2         I suggest, based on the guidance you give us, that we

 3   prepare a draft report and we send it to them.  They can review

 4   it, add whatever they want, or ask for additional information,

 5   within reason, but, you know, we can submit it to the Court.

 6   This is to educate the Court.

 7         THE COURT:  Yes.  Let me ask, I actually probably

 8   don't mind that, but with the proviso that that is not in any

 9   way, shape, or form a limitation on the parties to do whatever

10   else they want.

11         But, you know --

12         MR. LOESER:  We want the Court to get the

13   information the Court would find helpful in whatever way the

14   Court wants.

15         The only reservation I have about the voluntary

16   providing information in a litigation setting is plaintiffs

17   aren't inherently trustful that the information is full and

18   accurate.

19         THE COURT:  I'm not saying that you have to agree

20   upon it, I would just have them provide something and give the

21   plaintiff the opportunity to respond as to which portions they

22   agree with.

23         I'm not going to force you to agree with anything.

24   Obviously, if you feel there is an area that has to be

25   developed or you have any questions you want a further
```

explanation of, you can submit that and you can have this go
back and forth process which would kind of be outside of the
formal discovery process, but it is to provide the Court with
sufficient background information.

It seems to me that I have no objection to that.

Also, once you give some stuff to me, I can come back to
the parties and say, I still don't understand this, or I want
more information on this, but just to get the ball rolling.

The problem is that if we leave it to the discovery
process, it's going to take a lot longer, and I'm not going to
be equipped to make a lot of the decisions I need to make at
the early part of the case, for example, with the preservation
stuff and all of those other types of things.

MR. KAFKA:  Your Honor, we agree with that.

There are two tracks here, for the preservation issues
and some of the big data issues, we agree that would certainly
be productive.

But when we had -- originally got appointed, you said
you would not open discovery until at the earliest the hearing
the motion to dismiss, and now we're here.

THE COURT:  I'm indicating that might have been a
statement that I would have to backtrack on, because of the
fact that I don't understand a lot of the stuff which I need to
formulate my answers to a lot of these areas of dispute the
parties are getting into it.

          MR. KAFKA:  Right.  I'm saying separate from the

1

2   disputes.

3        For example, there will be at some point in this case,

4   we're going to ask for communications between TikTok employees.

5   To do that, discovery has to be open, so we can negotiate

6   custodians and search terms.

7        THE COURT:  That's fine.  What is the problem with

8   that?

9        MR. KAFKA:  Well, as they raised in the papers and

10  they have told us over and over discovery is not open.

11       So we would like to get guidance from you, an order or

12  something we can commence with this.

13       THE COURT:  I will allow discovery starting today,

14  but with the proviso that I will -- if the defendants are

15  indicating that they don't feel it's appropriate at this point

16  in time, I will consider that, insofar as whether or not I will

17  require them to respond.

18       But, first of all, if the defendants make a blanket --

19  we don't feel discovery should be opened now -- my response is

20  I'm going to open discovery at this point in time for the

21  purposes I have been discussing.

22       In other words, I want to get more background

23  information so I can understand how TikTok operates.

24       And that will formulate how I respond to a lot of stuff

25  that is coming up, including other discovery requests and

```
 1   things of that sort.
 2            Although to some extent, at some point I'm going to give
 3   some of the other discovery disputes to the Magistrate Judge.
 4            But at least at this point in time, where I'm required
 5   to make certain findings for purposes of initial motions, I
 6   would need more information than I have now.
 7            MR. KAFKA:  Thank you, Your Honor.
 8            MR. PETROCELLI:  Well, Your Honor, I'm not sure I
 9   understand how you want to proceed.
10            I don't think -- I can tell you right now, unless Your
11   Honor first is satisfied with what your knowledge base is about
12   TikTok, we're just going to have a bunch of discovery issues.
13            I thought it would be more efficient to first provide
14   this information.
15            THE COURT:  No, actually what I'm saying is go both
16   tracks at this point in time.  You give them that type of
17   stuff.
18            MR. PETROCELLI:  But there will be an avalanche of
19   discovery.
20            THE COURT:  Let me stop you.  If they give you an
21   avalanche of stuff, I can understand the problems you have at
22   that point in time.
23            And I will look over that discovery, and I will indicate
24   those portions, which I think could properly go forward at that
25   point in time, and stuff that I think, hey, this is premature
```

UNITED STATES DISTRICT COURT

 1    at this point.

 2         I'm not going for require the defendant to respond to

 3    that discovery, if they have objections.

 4         If they have objections, I will entertain the

 5    objections.

 6              MR. PETROCELLI:  I would think it would make sense

 7    for plaintiff's counsel to consider deferring discovery.  There

 8    is no reason why they need to do it today or tomorrow or next

 9    week.

10              THE COURT:  I will allow them to proffer, but I will

11    not require a response.

12         If the defense has objections, I will look over that

13    stuff.

14         But again, I will caution the plaintiffs, don't go

15    overboard on this, this has to be stuff that is really

16    essential.

17         And first of all, let me put it this way, I won't

18    require that stuff -- I won't allow discovery to be open until

19    the defense has proffered to the plaintiff its report as to how

20    TikTok operates, because I think it may very well be a lot of

21    stuff they would want is going to be covered under that, and/or

22    in terms of how they respond to that report, you guys can

23    formulate as to whether or not, yeah, that is stuff we should

24    reveal at this point in time, et cetera, et cetera.

25         But that is not to preclude the fact that there can be

**UNITED STATES DISTRICT COURT**

47

```
 1   discovery on that stuff later on.  And nobody is waiving any
 2   discovery at this point.
 3             MR. PETROCELLI:  Understood.  I was trying to
 4   proceed in a way the Court is in a best position to rule on the
 5   matters.
 6             THE COURT:  I think that's what I'm going to order
 7   at this point in time.
 8        How long is it going to take for you to provide that
 9   report to the plaintiffs, and the longer it takes, the more I
10   will be unhappy.
11             MR. PETROCELLI:  By the end of the month, Your
12   Honor.
13             THE COURT:  That would be fine.
14             MR. PETROCELLI:  The holidays and all.
15             MR. LOESER:  Your Honor, just, we're in the nuts and
16   bolts practicality thing here now.
17        I understand what the Court is saying, and I think we
18   look forward to receiving that proffer.
19        One of the time-consuming things that happens at the
20   beginning after a motion to dismiss is denied, is working out
21   custodians, search terms, all of the things that are necessary
22   to get underway in what is going to be a large document data
23   production.
24             THE COURT:  There was something about -- what was it
25   something index or something -- I can't remember the term you
```

**UNITED STATES DISTRICT COURT**

```
 1   were using.
 2              MR. LOESER:  The data index or data dictionary.
 3              THE COURT:  I would want -- I would think that as
 4   long as you indicate what the areas are, and assuming that in
 5   fact those terms that you want are recognizable by the defense,
 6   yeah, I would have no problem with that.
 7              MR. LOESER:  Here is where I'm going with that.
 8   Normally the way the defendants decide what terms to agree to
 9   or use and what custodians to select is based upon the
10   discovery requests.
11        One thing that might make sense here is we provide a
12   normal, what they consider overwhelming, just the breadth of
13   discovery requests, so that we can start having this
14   conversation about custodians and search terms.
15        If we parsed it, we only give a little bit now and
16   little then --
17              THE COURT:  I will require, if the report insofar as
18   how TikTok operates, will be provided to the -- I won't say to
19   the end of the month, I will require that to be provided by the
20   26th of November.
21        I will also allow the defendants to proffer, but not --
22   I won't require TikTok to respond to what you would consider to
23   be those types of initial discovery requests that go to things
24   like your index and other things of that sort.
25              MR. LOESER:  Okay.  You said defendants, and I think
```

1    you meant plaintiffs to proffer.  We will provide them.

2              THE COURT:  It will be mutual exchange at that point

3    in time.

4         Then I will give both sides two weeks to respond to the

5    proffering from both sides; in other words, I will allow the

6    plaintiffs to indicate as to the report, those portions upon

7    which you agree upon, and those portions which you either

8    disagree with, or you want more information about, so I can

9    understand where what the parties' positions are.

10        And then I will also allow the defendant to respond to

11   the discovery requests, not insofar as an actual response, but

12   to indicate, you know, what problems they have with eventually

13   responding to those requests.

14             MR. LOESER:  Or presumably to start having a

15   conversation about who are the appropriate custodians and what

16   are the appropriate search terms.

17        We are told all the time, we can't decide that until you

18   give us your discovery request.

19        Usually, we can't decide that until a motion to dismiss

20   and that happens, and then we can't decide until we get the

21   discovery requests.

22        All I'm saying is we want to get them the information

23   they need, so we can start meaningfully progressing.

24             THE COURT:  You are going to give them the discovery

25   requests, but they are not going to be obligated to respond

1    except to respond to the extent as to whether or not they're

2    going to have any objections to those discoveries, or if they

3    want clarification, things of that sort.

4          It's like an initial set of placement of discovery.

5          Also, before you talk, let me ask real quick, so the

6    defendants are going to answer the complaint by what date then?

7          MR. PETROCELLI:  Your Honor, I assume they are not

8    going to then amend -- you gave them leave to amend.  They are

9    not going to amend, and the second thing --

10         THE COURT:  At this point in time, I'm not going to

11   require them to amend, but at some point in time as to those

12   causes of action or theories, whether or not, you know, they

13   are going to still go forward with them.

14         For example, benefit of the bargain and stuff like that,

15   are they going to go forward with those?

16         MR. PETROCELLI:  We're talking about 41 states that

17   have been taken out of the case.

18         THE COURT:  That is something else.  Actually, that

19   is true, we haven't gotten to that.

20         MR. PETROCELLI:  And relatedly, there is a brand new

21   case that has been filed and tagged in the MDL, the *Robinson*

22   case that is now before Your Honor.

23         THE COURT:  Okay.

24         MR. PETROCELLI:  We have to figure out how that is

25   going to get included into this process.

1          THE COURT:  Which states are those plaintiffs?

2          MR. LOESER:  We have a variety of states.  That case

3    should be consolidated, and frankly, it's part of the amendment

4    would be --

5          THE COURT:  I presume it is part of the MDL.

6          MR. LOESER:  Yeah, it is part of the MDL.  We will

7    talk to them, but the idea would be in the amendment, we would

8    include those plaintiffs which cover additional states.

9          THE COURT:  Okay.  I presume that is a federal case,

10   not a state case?

11         MR. POWERS:  Yes.

12         MR. PETROCELLI:  It should be consolidated.

13         THE COURT:  I would agree.  I will put the burden on

14   plaintiff's counsel to effectuate that, let's put it that way.

15         I presume you can do that by the 26th of November as

16   well?

17         MR. LOESER:  We can.  I say that confidently.

18         MR. POWERS:  Just to make sure we're clear, we need

19   not respond to that?

20         THE COURT:  You need not respond, I forgot, I

21   ordered the plaintiffs leave to amend, because you need to get

22   the named plaintiffs for those states that you want to go

23   specifically on state law claims about, which was part of my

24   standing argument and ruling.

25         MR. LOESER:  Yeah, and I think there is the

1    complaint that is there that needs to be folded in, but also

2    there is our desire to simply find more plaintiffs to add more

3    states.

4        If we could have 30 days to do that.

5        THE COURT:  Yes.

6        MR. LOESER:  Then, I guess there is just one -- I

7    guess, there is what happens next.

8        So there will be another complaint that has more states.

9        I think what is a little, you know, I guess, it's

10    procedural puzzling is that the Court has upheld the claims --

11    these are common law claims, intrusion upon seclusion and

12    unjust enrichment, but dismissed the claims for the common law

13    of states where the plaintiffs don't reside.

14        And what we said in our briefing, and frankly, I don't

15    think the defendants -- I mean, they agreed in their briefing.

16    They made one argument they said applies to all states.

17        So we would like to avoid, if we can, having to do this

18    all over again.

19        They have made the same arguments that they would make

20    as they have acknowledged.  They refer to the states on which

21    they are arguing ass representative states, and so the

22    tentative would apply with equal force to other states where

23    the law is not materially different by their own likes.

24        That poses a question for the Court, when we amend to

25    add these states for these common law claims, you know, how

```
 1   does the Court want to proceed with those claims, because our
 2   view would be because the defendants have, themselves, argued
 3   they have these representative arguments that they have made
 4   that apply to those states, I don't want to have to redo all
 5   over again, come up with new arguments --
 6        THE COURT:  It really would depend upon the states'
 7   statutes that you are arguing about.
 8        I think that the defense should know that insofar as if
 9   the state statute -- in other words, if we have something
10   unique like the New York statute, those are going to come up.
11        But if they are generally the same as California,
12   Missouri or the other states we have talked about, then the
13   arguments, if they raise it, are pretty much I'm going to
14   resolve it the same way I resolved it here in the tentative.
15        So, I think that should be enough guidance.
16        MR. LOESER:  Just to be clear, we're not adding
17   anything other than plaintiffs who will have common law
18   intrusion upon seclusion and unjust enrichment claims.
19        These will be people, who, in our view, will be bringing
20   exactly the same claim where the law is exactly the same as
21   what we have already done.
22        THE COURT:  The problem, as I understand it, you
23   can't do just a similar of these states' statutes are similar,
24   and therefore, you can represent.
25        I think, as I understand the decisions, they say you
```

 1    have to have somebody from the state that, even though you say

 2    it's common law, it's still the laws of that particular state.

 3    It's that state's common law.

 4         That's what I'm saying, is that you have to have people

 5    from the state.

 6              MR. LOESER:  As, Your Honor identified, there is

 7    different ways of dealing with that issue.

 8         Your Honor has used at your discretion to deal with it a

 9    certain way, we're fine with that.

10         I just think when the defendants came before the Court

11    in their motion, and said, these are the arguments that are

12    representative and they apply to all the states, and we bring

13    in -- if we bring in a bunch of people for states where the law

14    is the same, they shouldn't be heard to come up with 19 other

15    arguments they have never raised to try to relitigate the

16    issue.

17              MR. POWERS:  The bottom line, Your Honor, is we have

18    to see what the states are.  If we think we have a valid basis,

19    we will assert those bases.  If we don't, if we think the

20    Court's ruling is just a retread, we understand the Court is

21    not going to be pleased with that, but we have to see it before

22    we make that call.

23              THE COURT:  All right.

24         Now, let me ask, let me ask the government counsel, I

25    don't want to say that you are an afterthought, because you are

**UNITED STATES DISTRICT COURT**

1  clearly not.

2       Do you have any comments or thoughts so far on the

3  things we discussed?

4          MR. SMITH:  No, Your Honor.  I mean, I think the

5  discussion highlights the fact that these class actions involve

6  a number of issues that do not overlap with the United States

7  case.

8       That is interesting as interesting as the issues may be,

9  some of these common law issues just don't arise for us.

10          THE COURT:  Okay.

11          MR. SMITH:  So, you know, we have issued discovery

12  requests, which the Court authorized us to do at our last

13  status conference.

14       We have had conversations with defendant's counsel about

15  the responses.  We are expecting those in the next few weeks.

16       We are proceeding with discovery in the ordinary course.

17       So, that is where we are, and I am tracking as best I

18  can the issues that are arising in the MDL.

19       But, as I said, a number of them don't apply to us.

20          THE COURT:  Also, let me just ask just to make sure

21  the United States doesn't feel that their case is being

22  mistreated or, you know, impacted in any way, shape, or form by

23  so far as to what has been done or being done in the MDL; is

24  that correct?

25          MR. SMITH:  That's correct, Your Honor.

56

1           THE COURT:  Great, all right.

2        Anything else from the parties?

3           MR. PETROCELLI:  No, Your Honor.

4           MR. LOESER:  Your Honor, we will be back on Monday.

5           THE COURT:  I can hardly wait.

6           MR. LOESER:  I guess, just most of us will be here

7    in person.

8        I did read in the paper today, which I think I need to

9    stop reading, that airports might start having problems with

10   air traffic controllers.

11       There may be people that would rather -- I will be here,

12   Eric will be here for sure.

13          THE COURT:  You two did most of the talking.  I

14   don't know what they are here for, other than the attorney's

15   fees.

16          MR. LOESER:  We need them, trust me.  If it would be

17   possible for them to also participate via telephone?

18          THE COURT:  I will allow it.  As long as they are

19   not doing the majority of the argument, yeah.

20       The only problem, frankly, with having telephonics is

21   half the time the people are not on land lines so you really

22   can't hear them.  And also people tend to speak over each

23   other, if they are on the telephone.

24       So, but, yeah, if they are worried about that, I don't

25   want to keep them here in Southern California, where the

```
 1    weather is so nice, where they could be in their own homes in

 2    the winter.

 3              MR. LOESER:  46 degrees and raining in Seattle.

 4        I did have somebody explain once to me why people talk

 5    over each other on cell phones.

 6        In the land line there is a built-in delay in the

 7    technology.  On a cell phone, there is not, so you are

 8    constantly stumbling over each other because of the technology.

 9              THE COURT:  No, that is not the reason.

10        The problem is not so much talking over each other, the

11    problem really is a lot of it you cannot hear when they are

12    using those iPods, the reception that we get if that's the

13    proper word, is just abysmal, and sometimes we just can't hear

14    them.

15        They sound like they are being sucked down a swamp, but

16    be that as it may.

17              MR. PETROCELLI:  Thank you, Your Honor.

18              THE COURT:  Remember, you know, it's a good time to

19    talk settlement early on.

20        I know the attorneys want to get their attorney's fees,

21    but even so, clients just think, you know, we can resolve this.

22    We have the case by the government as well, and then we have

23    all of these European and foreign thing-a-ma-jiggys, you guys

24    just settle.  That's all I can say.

25              Have a nice day, everybody.
```

1          MR. LOESER:  Thank you, Your Honor.

2          MR. PETROCELLI:  Thank you, Your Honor.

3          (The proceedings concluded at 10:35 a.m.)

4                           * * *

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

59

1      **CERTIFICATE OF OFFICIAL REPORTER**

2

3    COUNTY OF LOS ANGELES    )
                              )
4    STATE OF CALIFORNIA      )

5

6          I, TERRI A. HOURIGAN, Federal Official Realtime

7    Court Reporter, in and for the United States District Court for

8    the Central District of California, do hereby certify that

9    pursuant to Section 753, Title 28, United States Code that the

10   foregoing is a true and correct transcript of the

11   stenographically reported proceedings held in the

12   above-entitled matter and that the transcript page format is in

13   conformance with the regulations of the judicial conference of

14   the United States.

15

16   Date: 7th day of November, 2025.

17

18

19                    /s/ TERRI A. HOURIGAN
                      _____
20               TERRI A. HOURIGAN, CSR NO. 3838, RPR, CRR
                            Federal Court Reporter
21

22

23

24

25

                  **UNITED STATES DISTRICT COURT**

**/**

**/s** [1] - 54:19

**1**

**1** [1] - 32:14
**10:35** [1] - 53:22
**13** [3] - 19:25, 29:1
**19** [1] - 50:10

**2**

**2** [2] - 32:15
**2002** [1] - 33:9
**2025** [1] - 54:16
**21** [1] - 23:7
**23** [1] - 26:12
**26th** [2] - 44:16, 47:11
**28** [2] - 31:13, 54:9
**29** [2] - 11:1, 33:7

**3**

**30** [2] - 10:25, 47:25
**32** [3] - 6:8, 11:5, 21:9
**3838** [1] - 54:20

**4**

**41** [1] - 46:12
**46** [1] - 52:23

**7**

**7** [1] - 24:15
**753** [1] - 54:9
**7th** [1] - 54:16

**A**

**a.m** [1] - 53:22
**ability** [1] - 22:1
**able** [7] - 15:11, 15:15, 15:21, 18:4, 19:4, 22:16, 35:23
**above-entitled** [1] - 54:12
**absolutely** [2] - 7:21, 14:4
**abysmal** [1] - 53:8
**access** [4] - 4:14, 12:17, 18:25, 35:9
**accessing** [1] - 4:25
**accurate** [1] - 38:14
**acknowledged** [1] - 48:16
**Act** [2] - 23:18, 25:15

**action** [1] - 46:8
**actions** [2] - 5:11, 51:1
**activity** [1] - 8:25
**actual** [1] - 45:7
**add** [4] - 26:10, 37:25, 47:23, 48:21
**adding** [1] - 49:12
**additional** [2] - 37:25, 47:4
**addressed** [3] - 3:18, 21:15, 27:11
**addressing** [1] - 36:20
**adequately** [1] - 14:23
**admit** [1] - 33:5
**ads** [1] - 32:2
**adult** [7] - 19:4, 19:19, 19:21, 20:6, 20:8, 20:10, 20:13
**adults** [2] - 19:24, 37:1
**advertised** [1] - 4:13
**advertisements** [2] - 4:7, 31:25
**advertiser's** [1] - 8:18
**advertisers** [1] - 5:4
**advertising** [9] - 8:15, 30:25, 31:12, 31:14, 31:17, 32:15, 32:21, 33:19, 35:6
**afternoon** [1] - 2:11
**afterthought** [1] - 50:21
**age** [6] - 17:9, 24:13, 24:14, 24:15, 28:18, 29:6
**ages** [1] - 17:14
**agree** [18] - 3:8, 3:11, 12:23, 30:10, 35:15, 36:23, 37:5, 37:6, 37:11, 38:15, 38:18, 38:19, 39:10, 39:12, 44:4, 45:3, 47:9
**agreed** [6] - 3:1, 3:3, 6:12, 21:18, 31:17, 48:11
**agreement** [2] - 15:11, 15:15
**agreements** [1] - 3:2
**AI** [2] - 33:3, 33:8
**air** [1] - 52:5
**airports** [1] - 52:4
**algorithm** [2] - 4:6, 5:1
**allegation** [2] - 7:25, 20:22
**allegations** [9] -

6:15, 7:8, 7:9, 7:25, 17:16, 19:24, 19:25, 22:9, 27:23
**allege** [8] - 17:13, 17:14, 20:21, 21:20, 21:24, 31:19, 33:11
**alleged** [13] - 12:20, 13:2, 21:12, 21:22, 22:5, 23:14, 25:12, 25:25, 26:24, 27:1, 27:20, 28:23, 33:10
**allow** [8] - 22:21, 40:9, 42:6, 42:14, 44:17, 45:1, 45:6, 52:13
**allowed** [3] - 5:5, 16:23, 34:23
**allows** [1] - 17:25
**alone** [1] - 26:18
**amalgamation** [1] - 18:14
**amend** [7] - 11:23, 46:4, 46:5, 46:7, 47:17, 48:20
**amended** [2] - 27:17, 27:19
**amendment** [2] - 46:24, 47:3
**American** [1] - 33:13
**amount** [1] - 6:1
**analysis** [1] - 33:15
**ANGELES** [1] - 54:3
**answer** [5] - 16:10, 20:15, 21:13, 36:13, 46:2
**answered** [2] - 20:16, 21:6
**answers** [1] - 39:20
**apologize** [1] - 23:7
**applicable** [4] - 19:24, 21:10, 31:6, 32:16
**application** [1] - 35:25
**applied** [4] - 5:1, 31:6, 35:16, 35:18
**applies** [4] - 30:15, 31:4, 33:21, 48:12
**apply** [5] - 9:18, 48:18, 48:25, 50:8, 51:15
**applying** [1] - 33:18
**appointed** [1] - 39:14
**apposite** [1] - 26:23
**appreciate** [1] - 34:14
**approach** [2] - 15:16, 32:25
**appropriate** [4] - 37:20, 40:11, 45:11,

45:12
**area** [1] - 38:20
**areas** [4] - 20:25, 36:23, 39:20, 43:25
**argue** [5] - 2:1, 2:14, 20:2, 21:2, 36:5
**argued** [1] - 48:23
**arguing** [5] - 12:25, 18:2, 32:19, 48:17, 49:3
**argument** [16] - 2:23, 5:20, 5:21, 10:5, 10:6, 11:18, 16:13, 18:16, 19:4, 19:5, 19:12, 20:19, 32:23, 47:20, 48:12, 52:14
**arguments** [9] - 6:11, 14:13, 18:10, 48:15, 48:24, 49:1, 49:9, 50:7, 50:11
**arise** [1] - 51:5
**arising** [1] - 51:14
**arm** [1] - 10:11
**articulated** [2] - 11:7, 28:12
**aspect** [2] - 21:5, 25:4
**aspects** [1] - 4:2
**ass** [1] - 48:17
**assert** [1] - 50:15
**assume** [2] - 17:8, 46:3
**assuming** [1] - 43:25
**asymmetry** [1] - 37:8
**attack** [1] - 11:22
**attempting** [1] - 35:11
**attempts** [1] - 19:17
**attention** [1] - 22:7
**attentive** [1] - 1:21
**Attorney's** [1] - 6:20
**attorney's** [2] - 52:9, 53:14
**attorneys** [1] - 53:14
**authorities** [3] - 11:3, 12:10, 22:3
**authorized** [1] - 51:8
**available** [1] - 12:8
**avalanche** [2] - 41:14, 41:17
**avoid** [1] - 48:13
**aware** [1] - 21:25

**B**

**background** [3] - 15:13, 38:25, 40:18
**backtrack** [1] - 39:18
**ball** [1] - 39:4
**bargain** [16] - 12:22,

13:9, 13:24, 16:4, 16:13, 16:16, 16:20, 16:21, 16:25, 17:5, 17:11, 17:17, 17:19, 18:4, 46:10
**bargaining** [1] - 16:6
**base** [1] - 41:7
**based** [2] - 37:23, 44:5
**bases** [2] - 12:1, 50:15
**basis** [5] - 4:18, 5:5, 11:12, 11:19, 50:14
**Basson** [1] - 30:13
**beforehand** [1] - 1:16
**beginning** [2] - 15:5, 43:16
**behalf** [2] - 1:6, 34:24
**behavior** [2] - 24:2, 25:1
**benefit** [16] - 12:22, 13:9, 13:24, 16:3, 16:6, 16:12, 16:16, 16:20, 16:24, 16:25, 17:4, 17:11, 17:17, 17:19, 18:4, 46:10
**best** [3] - 36:21, 42:25, 51:13
**better** [2] - 5:5, 10:5
**between** [2] - 20:6, 39:25
**Beverly** [1] - 31:13
**big** [1] - 39:12
**bit** [2] - 37:8, 44:11
**blanket** [1] - 40:14
**Blumenthal** [3] - 6:16, 9:12, 9:16
**bolts** [1] - 43:12
**bottom** [2] - 22:22, 50:13
**bound** [1] - 22:10
**brand** [1] - 46:16
**breadth** [1] - 44:8
**brief** [1] - 24:16
**briefing** [2] - 48:10, 48:11
**briefly** [2] - 12:11, 20:19
**briefs** [1] - 27:15
**bring** [5] - 28:10, 34:10, 34:24, 50:8, 50:9
**bringing** [1] - 49:15
**broad** [3] - 32:8, 34:8, 35:19
**Brown** [1] - 18:21
**built** [1] - 53:1
**built-in** [1] - 53:1

**UNITED  STATES  DISTRICT  COURT**

**bunch** [2] - 41:8, 50:9
**burden** [1] - 47:9
**Bytedance** [2] - 1:3, 1:4

## C

**CALIFORNIA** [1] - 54:4
**California** [4] - 12:7, 49:7, 52:20, 54:8
**Canadian** [1] - 5:15
**cannot** [3] - 3:2, 7:18, 53:6
**careful** [1] - 17:25
**carefully** [2] - 11:3, 11:16
**Carolina** [1] - 24:11
**case** [52] - 2:18, 2:24, 3:10, 5:10, 5:13, 8:4, 8:25, 11:2, 13:1, 13:2, 14:17, 14:22, 15:9, 15:18, 17:9, 18:18, 18:21, 22:7, 22:8, 23:12, 23:23, 23:24, 24:10, 25:9, 25:14, 26:23, 27:4, 27:7, 27:12, 27:15, 27:17, 30:13, 30:14, 31:5, 31:13, 32:8, 33:5, 34:7, 36:19, 36:25, 39:8, 39:24, 46:13, 46:17, 46:18, 46:23, 47:5, 47:6, 51:3, 51:17, 53:16
**cases** [14] - 2:10, 5:16, 9:4, 18:7, 20:20, 21:18, 23:22, 24:2, 24:10, 25:11, 26:25, 30:16, 31:6, 36:8
**causes** [1] - 46:8
**causing** [1] - 8:16
**caution** [1] - 42:10
**cautioning** [1] - 36:2
**cell** [2] - 52:25, 53:2
**Center** [1] - 30:13
**Central** [1] - 54:8
**cereal** [1] - 4:16
**certain** [7] - 2:21, 3:19, 20:25, 29:19, 32:3, 41:1, 50:5
**certainly** [11] - 12:6, 13:5, 13:14, 23:1, 26:20, 26:21, 27:10, 28:2, 29:23, 34:1, 39:12
**certainty** [1] - 7:20
**CERTIFICATE** [1] - 54:1

**certification** [2] - 3:15, 3:18
**certify** [1] - 54:8
**cetera** [10] - 2:25, 3:16, 13:6, 37:1, 37:6, 42:20
**change** [1] - 6:5
**child** [1] - 20:13
**Childhood** [1] - 30:13
**children** [4] - 7:4, 23:15, 23:19, 29:17
**children's** [2] - 31:23, 32:4
**Circuit** [1] - 24:9
**Circuit's** [1] - 23:12
**circumstances** [3] - 24:24, 26:13, 28:20
**citation** [1] - 27:16
**cite** [4] - 9:13, 24:11, 26:23, 33:21
**cited** [9] - 11:2, 12:7, 18:8, 22:3, 23:23, 27:4, 27:12, 27:13, 31:5
**civil** [3] - 30:8, 31:11, 33:10
**claim** [7] - 26:19, 27:8, 33:11, 34:15, 34:19, 34:24, 49:16
**claiming** [2] - 28:18, 28:22
**claims** [15] - 7:3, 7:6, 23:6, 23:9, 25:12, 25:25, 28:11, 34:10, 47:19, 48:6, 48:7, 48:8, 48:21, 48:22, 49:14
**clarification** [2] - 25:20, 45:24
**clarified** [1] - 3:21
**clarify** [1] - 25:5
**class** [2] - 3:15, 51:1
**clear** [6] - 11:6, 24:5, 33:17, 35:18, 47:14, 49:12
**clearer** [1] - 15:7
**clearly** [4] - 12:19, 13:25, 31:5, 50:22
**Clearview** [3] - 33:3, 33:8, 33:11
**clerk** [1] - 1:16
**clients** [1] - 53:15
**Code** [1] - 54:9
**colleague** [1] - 1:10
**collected** [2] - 9:11, 26:16
**collecting** [1] - 9:9, 24:8
**collection** [7] - 7:4,

7:25, 9:8, 23:14, 23:19, 24:4, 26:14
**comfortable** [2] - 15:4, 35:12
**coming** [2] - 4:17, 40:21
**commence** [1] - 40:8
**comment** [1] - 14:16
**commenting** [1] - 13:22
**comments** [1] - 50:23
**commercial** [1] - 32:10
**common** [7] - 48:7, 48:8, 48:21, 49:13, 49:23, 49:24, 51:5
**communicate** [1] - 4:19
**communications** [1] - 39:25
**companies** [4] - 18:24, 19:21, 34:11, 35:2
**company** [3] - 4:16, 18:17, 35:4
**competition** [2] - 6:6, 10:25
**complain** [1] - 19:19
**complaint** [9] - 7:8, 7:9, 17:13, 21:20, 27:17, 27:20, 46:2, 47:22, 48:4
**conceding** [1] - 32:16
**concepts** [1] - 31:15
**conceptual** [1] - 6:10
**concerned** [2] - 5:19, 7:21, 11:14, 17:1, 17:12, 19:7, 22:20, 25:6, 25:19
**concerns** [1] - 29:10
**concluded** [3] - 12:10, 21:17, 53:22
**conclusion** [2] - 9:14, 35:24
**conduct** [2] - 27:25, 34:23
**conference** [2] - 51:9, 54:13
**confidently** [1] - 47:13
**conformance** [1] - 54:13
**consent** [1] - 32:18
**consider** [4] - 40:12, 42:3, 44:8, 44:18
**considered** [3] - 14:13, 29:24, 30:1
**consistent** [1] - 33:1

**consolidated** [2] - 46:24, 47:8
**constantly** [1] - 53:3
**Consumer** [1] - 33:8
**consuming** [1] - 43:15
**contest** [1] - 3:5
**contested** [1] - 15:10
**contesting** [1] - 7:23
**context** [1] - 24:2
**contrary** [1] - 24:5
**control** [2] - 12:12, 14:1
**controllers** [1] - 52:5
**conversation** [4] - 32:1, 36:10, 44:10, 45:11
**conversations** [1] - 51:10
**conveys** [1] - 30:17
**convince** [2] - 6:5, 14:21
**convincing** [1] - 6:16
**Cook** [1] - 25:14
**copies** [1] - 1:24
**COPPA** [12] - 7:3, 23:13, 23:17, 24:12, 26:12, 26:24, 26:25, 27:7, 28:23, 29:20, 29:22, 34:22
**correct** [6] - 10:4, 10:16, 16:18, 51:20, 51:21, 54:10
**counsel** [9] - 1:5, 1:16, 10:16, 12:24, 30:21, 42:3, 47:10, 50:20, 51:10
**COUNTY** [1] - 54:3
**course** [2] - 17:14, 51:12
**COURT** [108] - 1:2, 1:8, 1:12, 1:14, 2:3, 2:8, 2:16, 4:4, 6:19, 7:10, 8:5, 9:21, 10:5, 10:8, 10:11, 10:18, 10:22, 11:5, 11:18, 12:3, 13:4, 14:2, 14:10, 14:19, 14:24, 15:1, 15:22, 16:12, 16:19, 16:24, 17:8, 17:16, 18:9, 19:3, 19:6, 19:9, 19:13, 20:2, 20:24, 21:23, 22:10, 22:14, 25:16, 26:2, 26:6, 26:8, 28:8, 28:14, 29:2, 29:7, 29:16, 30:4, 30:10, 30:19, 31:8, 31:21, 32:12, 32:24, 33:3, 33:25, 34:4, 34:12,

34:18, 35:3, 35:20, 36:5, 36:7, 36:12, 36:14, 36:16, 37:10, 37:14, 37:16, 38:3, 38:15, 39:17, 40:3, 40:9, 41:11, 41:16, 42:6, 43:2, 43:9, 43:20, 43:24, 44:13, 44:23, 45:20, 46:6, 46:14, 46:19, 46:22, 47:1, 47:5, 47:9, 47:16, 48:1, 49:2, 49:18, 50:19, 51:6, 51:16, 51:22, 52:1, 52:8, 52:13, 53:4, 53:12
**Court** [46] - 6:1, 6:3, 6:5, 6:11, 6:14, 7:5, 8:23, 11:19, 12:7, 14:17, 22:4, 23:5, 23:10, 23:11, 23:21, 24:8, 24:24, 25:6, 25:19, 25:21, 26:12, 27:5, 27:22, 30:12, 30:14, 31:19, 33:15, 33:17, 37:21, 38:1, 38:2, 38:8, 38:9, 38:10, 38:24, 42:25, 43:13, 48:6, 48:20, 48:22, 50:6, 50:16, 51:8, 54:7, 54:20
**Court's** [3] - 22:6, 25:4, 50:16
**Courts** [4] - 22:11, 25:24, 27:11, 35:17
**Cousin** [1] - 27:12
**cover** [3] - 21:20, 30:7, 47:4
**coverage** [1] - 28:25
**covered** [1] - 42:17
**covers** [1] - 11:1
**critical** [1] - 27:19
**CRR** [1] - 54:20
**CSR** [1] - 54:20
**curiosity** [1] - 16:13
**custodians** [5] - 40:2, 43:17, 44:5, 44:10, 45:11
**customs** [1] - 26:13

## D

**damages** [1] - 15:19
**data** [19] - 7:4, 7:9, 7:23, 7:25, 9:20, 12:15, 21:17, 23:14, 23:19, 24:4, 24:8, 24:19, 24:21, 26:14, 26:16, 39:12, 43:18, 43:23

**Date** [1] - 54:16
**date** [1] - 46:2
**Daubert** [1] - 15:23
**days** [1] - 47:25
**dead** [1] - 13:11
**deal** [2] - 6:9, 50:4
**dealing** [1] - 50:3
**dealt** [2] - 7:2, 25:9
**decide** [8] - 16:8, 23:2, 28:5, 35:21, 44:4, 45:13, 45:15, 45:16
**decided** [1] - 13:13
**decides** [1] - 13:20
**decision** [13] - 6:17, 6:25, 7:12, 9:15, 12:7, 22:1, 23:12, 25:4, 27:5, 28:6, 28:10, 28:16, 33:14
**decisions** [4] - 9:13, 39:7, 49:21
**defeat** [2] - 2:4, 18:1
**defendant** [6] - 11:21, 21:25, 22:18, 30:16, 41:23, 45:6
**defendant's** [3] - 1:19, 24:4, 51:10
**defendants** [12] - 3:25, 18:17, 33:12, 40:10, 40:14, 44:4, 44:17, 44:21, 46:2, 48:11, 48:23, 50:6
**defense** [7] - 14:2, 14:13, 36:14, 42:8, 42:15, 44:1, 49:4
**deferring** [1] - 42:3
**definitive** [1] - 35:24
**degrees** [1] - 52:23
**delay** [1] - 53:1
**denied** [1] - 43:16
**Derrick** [1] - 10:14
**described** [2] - 10:17, 24:6
**describes** [1] - 12:8
**desire** [1] - 47:23
**detailed** [1] - 6:2
**details** [1] - 8:24
**developed** [2] - 33:12, 38:21
**dictionary** [1] - 43:23
**difference** [2] - 20:5, 27:19
**different** [6] - 7:15, 11:16, 20:9, 30:24, 48:19, 50:3
**diminishment** [6] - 12:24, 12:25, 13:24, 16:7, 18:6, 20:22
**directed** [1] - 33:20
**directly** [1] - 22:8

**directs** [1] - 4:7
**disagree** [3] - 6:2, 36:24, 45:4
**disagreed** [1] - 6:13
**disagreement** [1] - 3:23
**disclaimed** [1] - 28:25
**discoveries** [1] - 45:23
**discovery** [39] - 2:25, 3:12, 13:6, 13:10, 13:15, 16:3, 16:5, 16:9, 17:24, 37:12, 37:20, 38:24, 39:5, 39:15, 40:1, 40:6, 40:9, 40:15, 40:16, 40:21, 40:24, 41:8, 41:15, 41:19, 41:24, 42:3, 42:14, 42:22, 42:23, 44:6, 44:9, 44:19, 45:7, 45:14, 45:17, 45:20, 45:25, 51:7, 51:12
**discretion** [1] - 50:4
**discuss** [3] - 5:17, 5:18, 24:2
**discussed** [5] - 6:8, 11:17, 14:10, 23:22, 50:24
**discussing** [2] - 11:4, 40:17
**discussion** [6] - 2:17, 6:24, 10:20, 10:24, 23:5, 51:1
**discussions** [1] - 15:6
**dismiss** [13] - 1:20, 2:13, 3:15, 5:19, 9:23, 9:24, 11:25, 13:14, 15:25, 27:18, 39:16, 43:16, 45:15
**dismissal** [1] - 11:12
**dismissed** [1] - 48:8
**dismissing** [1] - 36:1
**dispositive** [2] - 28:4, 28:6
**dispute** [1] - 39:20
**disputes** [3] - 3:4, 39:23, 40:24
**disputing** [1] - 29:25
**disrupted** [1] - 17:11
**distinct** [1] - 31:15
**distinction** [3] - 23:21, 23:25, 27:22
**district** [1] - 9:12
**District** [6] - 24:11, 30:14, 32:25, 33:9, 54:7, 54:8
**document** [1] - 43:18

**done** [9] - 4:9, 4:21, 4:24, 4:25, 5:7, 36:8, 49:17, 51:19
**down** [4] - 13:6, 35:1, 35:2, 53:9
**draft** [1] - 37:24
**drew** [1] - 23:21

**E**

**earliest** [1] - 39:15
**early** [2] - 39:8, 53:13
**Eastern** [1] - 30:14
**economic** [27] - 6:7, 6:12, 6:16, 7:3, 7:6, 7:21, 7:23, 8:10, 9:3, 10:21, 11:8, 11:13, 11:16, 11:20, 11:24, 12:8, 12:16, 12:25, 14:5, 14:8, 14:9, 15:17, 15:19, 15:22, 18:12, 22:5, 22:19
**economically** [1] - 8:1
**economist** [1] - 15:21
**economists** [3] - 15:18, 15:19, 15:22
**educate** [1] - 38:2
**effect** [1] - 8:16
**effectuate** [1] - 47:10
**efficient** [1] - 41:9
**either** [2] - 32:15, 45:3
**Element** [2] - 32:14, 32:15
**element** [1] - 21:12
**elements** [1] - 34:15
**emphasize** [1] - 6:14
**employees** [1] - 39:25
**end** [5] - 2:17, 5:17, 35:15, 43:7, 44:15
**endorsement** [2] - 30:18, 32:10
**enrichment** [2] - 48:8, 49:14
**enter** [1] - 16:21
**enterprising** [1] - 34:9
**entertain** [1] - 41:25
**entirely** [1] - 35:13
**entitled** [2] - 13:5, 54:12
**entitlement** [1] - 12:1
**equal** [1] - 48:18
**equally** [1] - 19:24
**equipped** [1] - 39:7
**Eric** [2] - 26:7, 52:7
**essence** [2] - 15:9,

32:5
**essential** [1] - 42:12
**establish** [1] - 11:8
**et** [10] - 2:25, 3:15, 13:6, 37:1, 37:6, 42:20
**European** [2] - 5:13, 53:17
**evaluated** [1] - 11:2
**eventually** [1] - 45:8
**exact** [1] - 22:8
**exactly** [8] - 3:3, 7:11, 11:13, 24:22, 26:5, 35:14, 49:16
**example** [15] - 3:5, 4:5, 4:10, 4:16, 4:18, 4:23, 9:15, 9:17, 11:5, 16:4, 27:13, 32:21, 39:8, 39:24, 46:10
**except** [1] - 45:22
**exchange** [2] - 8:11, 44:23
**exclude** [1] - 12:13
**exists** [1] - 18:25
**expectation** [18] - 17:6, 23:8, 24:18, 24:21, 24:25, 26:19, 26:22, 27:2, 27:3, 27:6, 27:9, 27:14, 27:25, 28:3, 28:21, 28:24, 29:4, 29:14
**expectations** [2] - 24:1, 26:15
**expecting** [1] - 51:11
**explain** [1] - 52:24
**explaining** [1] - 30:2
**explanation** [1] - 38:22
**explicitly** [2] - 21:15, 22:12
**extent** [8] - 3:1, 3:2, 3:8, 30:5, 36:22, 37:5, 40:23, 45:22

**F**

**Facebook** [2] - 18:22, 21:15
**fact** [12] - 6:21, 10:4, 15:6, 16:22, 19:15, 25:1, 29:19, 34:17, 39:19, 42:21, 44:1, 51:1
**facts** [4] - 14:1, 14:5, 14:6, 22:4
**fair** [5] - 6:1, 8:21, 13:18, 22:11, 23:3
**fairly** [1] - 5:25
**familiar** [1] - 33:5
**far** [4] - 4:5, 17:1,

50:23, 51:19
**fashioned** [1] - 4:13
**faster** [1] - 2:3
**favor** [1] - 26:20
**federal** [5] - 25:10, 26:1, 26:18, 29:20, 47:5
**Federal** [4] - 27:21, 27:23, 54:6, 54:20
**fees** [2] - 52:10, 53:14
**fence** [1] - 30:20
**few** [2] - 6:4, 51:11
**fight** [1] - 22:24
**figure** [4] - 15:2, 15:3, 35:14, 46:20
**filed** [1] - 46:17
**fill** [1] - 8:9
**final** [2] - 36:17, 36:18
**financially** [2] - 8:1, 9:7
**findings** [1] - 41:1
**fine** [3] - 40:3, 43:9, 50:5
**first** [5] - 1:17, 40:14, 41:7, 41:9, 42:13
**folded** [1] - 47:22
**followed** [1] - 24:10
**force** [2] - 38:19, 48:18
**forcefully** [1] - 24:9
**foregoing** [1] - 54:10
**foreign** [1] - 53:17
**forget** [1] - 2:16
**forgot** [1] - 47:16
**form** [3] - 7:17, 38:5, 51:18
**formal** [1] - 38:24
**format** [1] - 54:12
**formation** [1] - 28:3
**formulate** [3] - 39:20, 40:20, 42:19
**forth** [1] - 38:23
**forward** [16] - 13:1, 13:7, 13:9, 16:3, 16:9, 16:10, 17:23, 17:24, 18:3, 20:17, 22:22, 23:1, 41:20, 43:14, 46:9, 46:11
**four** [8] - 10:21, 11:16, 12:1, 12:8, 13:19, 14:10, 14:23, 22:19
**frankly** [4] - 24:1, 46:24, 48:10, 52:15
**free** [1] - 18:19
**FTC** [2] - 24:16, 29:6
**full** [1] - 38:13
**fully** [4] - 3:6, 14:20,

15:2, 20:3
**fun** [1] - 14:25
**future** [2] - 4:6, 4:17

## G

**GameStop** [1] - 25:14
**gate** [3] - 24:14, 24:15, 29:6
**gee** [1] - 36:7
**general** [2] - 4:4, 33:21
**generally** [3] - 19:21, 37:1, 49:7
**generate** [1] - 9:10
**given** [2] - 24:25, 31:2
**goal** [2] - 17:24, 20:18
**goals** [2] - 29:11, 29:12
**Google** [1] - 25:15
**government** [3] - 1:22, 50:20, 53:16
**government's** [1] - 5:10
**grab** [1] - 2:4
**grant** [1] - 9:24
**great** [3] - 3:8, 37:5, 51:22
**Griffith** [4] - 6:17, 6:24, 9:15, 22:7
**guess** [13] - 4:25, 11:18, 15:24, 17:2, 20:2, 30:9, 32:20, 34:19, 36:16, 48:2, 48:3, 48:5, 52:2
**guidance** [4] - 4:2, 37:23, 40:7, 49:11
**guys** [10] - 4:20, 11:23, 26:8, 30:5, 36:22, 36:23, 37:4, 37:11, 42:18, 53:17

## H

**half** [1] - 52:16
**hardly** [1] - 52:1
**hear** [8] - 2:11, 17:22, 26:2, 28:7, 30:21, 52:17, 53:6, 53:8
**heard** [1] - 50:10
**hearing** [3] - 1:24, 26:9, 39:15
**held** [2] - 30:15, 54:11
**helpful** [3] - 4:1, 14:17, 38:9

**hereby** [1] - 54:8
**highlights** [1] - 51:1
**highly** [1] - 24:2, 27:25, 28:3
**hint** [1] - 10:3
**HIPPA** [2] - 27:20, 27:23
**hold** [1] - 24:12
**holidays** [1] - 43:10
**homes** [1] - 52:21
**Honor** [54] - 1:6, 2:2, 2:7, 3:24, 4:1, 5:24, 8:24, 10:14, 11:2, 11:15, 12:7, 12:10, 12:19, 12:21, 12:23, 13:20, 13:23, 14:4, 16:8, 16:11, 17:22, 18:16, 23:4, 23:23, 24:6, 26:4, 28:13, 30:3, 30:8, 32:6, 33:4, 36:6, 36:9, 36:13, 36:15, 37:8, 39:10, 41:3, 41:4, 41:7, 43:8, 43:11, 46:3, 46:18, 50:2, 50:4, 50:13, 50:25, 51:21, 51:24, 51:25, 53:11, 53:20, 53:21
**Honor's** [1] - 30:9
**hope** [1] - 5:25
**host** [2] - 12:10, 21:18
**HOURIGAN** [3] - 54:6, 54:19, 54:20
**hovering** [1] - 12:17
**Hubbard** [3] - 7:1, 22:7, 27:2

## I

**idea** [3] - 4:4, 28:23, 47:3
**ideas** [1] - 34:12
**identified** [1] - 50:2
**identify** [1] - 1:17
**identifying** [1] - 32:20
**identities** [1] - 31:24
**identity** [1] - 30:16
**illegal** [5] - 32:7, 33:24, 34:1, 34:6, 34:21
**illegally** [1] - 12:17
**Illinois** [2] - 32:25, 33:9
**immediately** [3] - 33:23, 34:6
**impacted** [2] - 12:16, 51:18
**Inc** [2] - 25:15, 33:8

**include** [1] - 47:4
**included** [1] - 46:21
**including** [3] - 24:10, 25:13, 40:21
**incredibly** [3] - 32:8, 34:8, 35:19
**index** [3] - 43:21, 43:23, 44:20
**indicate** [4] - 41:19, 43:25, 45:2, 45:8
**indicated** [4] - 11:9, 13:8, 24:16, 35:21
**indicates** [1] - 29:20
**indicating** [2] - 39:17, 40:11
**indication** [1] - 22:12
**individual** [4] - 7:18, 18:12, 18:13, 20:13
**individuals** [2] - 32:3, 32:22
**information** [45] - 3:1, 4:3, 5:1, 5:3, 7:16, 8:12, 9:5, 9:8, 9:9, 12:17, 17:7, 18:15, 18:20, 18:23, 19:16, 19:17, 20:6, 20:7, 20:10, 21:3, 21:11, 22:13, 23:15, 28:22, 29:17, 32:20, 33:19, 37:3, 37:8, 37:13, 37:21, 37:25, 38:9, 38:12, 38:13, 38:25, 39:4, 40:19, 41:2, 41:10, 45:4, 45:18
**informed** [2] - 19:15, 22:1
**inherently** [1] - 38:13
**initial** [3] - 41:1, 44:19, 45:25
**injured** [1] - 8:1
**injury** [5] - 6:12, 11:8, 11:13, 11:20, 11:24
**insofar** [12] - 3:4, 5:19, 7:21, 11:14, 17:11, 19:3, 19:6, 22:19, 40:12, 44:13, 45:7, 49:4
**insurmountable** [1] - 17:20
**intended** [1] - 20:21
**intends** [1] - 12:15
**intention** [2] - 21:11, 21:16
**intentionality** [2] - 20:24, 21:2
**intentionally** [1] - 21:3
**interact** [1] - 24:19

**interacting** [1] - 28:19
**interactions** [2] - 24:20, 29:14
**interest** [2] - 29:18
**interested** [1] - 9:19
**interesting** [2] - 51:4
**interfered** [1] - 21:25
**Internet** [1] - 21:15
**interpretation** [1] - 31:1
**interpreted** [1] - 19:20
**interrogatory** [1] - 37:17
**intrusion** [8] - 23:6, 25:7, 25:11, 25:22, 25:25, 27:18, 48:7, 49:14
**invade** [1] - 33:12
**involve** [3] - 23:13, 51:1
**involved** [3] - 23:19, 25:14, 31:22
**involving** [2] - 5:14, 6:18
**iPods** [1] - 53:7
**irrelevant** [1] - 29:12
**issue** [10] - 6:7, 20:25, 23:16, 23:17, 23:18, 26:14, 27:11, 37:21, 50:3, 50:12
**issued** [2] - 1:21, 51:7
**issues** [14] - 3:12, 3:17, 6:3, 6:17, 7:2, 7:3, 23:11, 39:11, 39:12, 41:8, 51:2, 51:4, 51:5, 51:14
**itself** [6] - 9:9, 25:7, 25:9, 25:21, 29:22, 31:1

## J

**January** [1] - 7:5
**Javier** [1] - 1:14
**jaws** [2] - 2:5, 18:1
**jiggys** [1] - 53:17
**job** [1] - 11:4
**Johnson** [1] - 27:4
**joint** [1] - 3:9
**Judge** [4] - 6:15, 9:12, 9:16, 40:24
**judge** [1] - 9:12
**judicial** [1] - 54:13
**jurisdictions** [1] - 5:12
**jurisprudence** [1] - 28:12

## K

**KAFKA** [14] - 26:4, 26:7, 26:10, 30:24, 31:10, 31:23, 33:6, 34:14, 34:21, 36:4, 39:10, 39:22, 40:5, 41:3
**Kafka** [1] - 26:7
**keep** [3] - 5:25, 30:2, 52:20
**keeping** [1] - 14:2
**kid's** [3] - 17:10, 17:12, 36:25
**kind** [9] - 2:20, 4:4, 6:15, 7:2, 8:14, 9:21, 35:8, 35:10, 38:23
**kinds** [1] - 24:8
**knowledge** [1] - 41:7
**known** [1] - 35:6
**knows** [1] - 17:14

## L

**lack** [3] - 5:4, 6:15, 7:6
**lacking** [1] - 7:24
**land** [2] - 52:16, 53:1
**language** [1] - 6:10
**large** [1] - 43:18
**last** [2] - 12:23, 51:8
**latter** [1] - 18:10
**lavished** [1] - 28:8
**law** [24] - 11:2, 13:2, 21:10, 21:13, 25:8, 26:18, 26:20, 30:8, 31:5, 31:11, 33:19, 33:21, 47:19, 48:7, 48:8, 48:19, 48:21, 49:13, 49:16, 49:23, 49:24, 50:9, 51:5
**lawfully** [1] - 17:6
**laws** [1] - 49:23
**lawyers** [1] - 34:10
**learned** [1] - 2:6
**lease** [1] - 27:10
**least** [5] - 10:2, 21:8, 22:24, 28:2, 40:25
**leave** [4] - 21:7, 39:5, 46:4, 47:17
**legally** [1] - 16:21
**lengthy** [1] - 36:9
**less** [4] - 6:9, 9:6, 9:17
**lies** [1] - 24:13
**life** [1] - 36:2
**likeness** [1] - 32:4
**limitation** [1] - 38:5
**line** [5] - 1:9, 2:11, 22:22, 50:13, 53:1

lines [1] - 52:16
listen [2] - 6:23, 6:25
litigation [3] - 19:2, 36:3, 38:12
Litigation [2] - 1:3, 33:8
Loeser [1] - 10:14
LOESER [48] - 2:6, 10:14, 10:20, 10:24, 11:15, 11:25, 12:6, 13:18, 14:21, 14:25, 15:16, 15:24, 16:18, 16:22, 17:2, 17:13, 17:22, 18:16, 19:5, 19:8, 19:11, 19:20, 20:16, 21:6, 21:24, 36:9, 36:13, 37:7, 37:12, 37:15, 38:8, 43:11, 43:23, 44:3, 47:2, 47:13, 47:21, 48:2, 49:12, 50:2, 51:25, 52:2, 52:11, 52:23, 53:20
look [6] - 17:2, 28:14, 33:16, 41:19, 42:8, 43:14
looked [3] - 12:10, 21:8, 27:15
looking [1] - 11:5
LOS [1] - 54:3
lose [1] - 9:7
loss [18] - 6:7, 6:17, 7:3, 7:6, 9:3, 9:11, 11:7, 12:9, 12:12, 12:25, 14:1, 14:5, 14:8, 14:9, 21:10, 22:5, 22:19
losses [2] - 16:5, 16:6
lost [2] - 5:23, 21:17
lunch [1] - 30:6
lying [1] - 17:9

**M**

Magistrate [1] - 40:24
major [2] - 34:5, 34:11
majority [1] - 52:14
Manigault [2] - 24:10, 27:4
Manigault-Johnson [1] - 27:4
manner [1] - 30:17
Marcus [1] - 1:6
market [4] - 9:6, 18:24, 18:25, 21:25
materially [1] - 48:19

matter [4] - 1:2, 16:22, 22:22, 54:12
matters [1] - 43:1
McDonald [1] - 23:23
MDL [6] - 1:13, 46:17, 47:1, 47:2, 51:14, 51:19
mean [8] - 9:10, 18:9, 20:14, 21:5, 24:13, 30:19, 48:11, 50:25
meaning [3] - 31:3, 31:4, 32:9
meaningfully [1] - 45:19
means [2] - 4:19, 4:24
meant [1] - 44:22
media [17] - 18:17, 19:2, 19:21, 28:18, 28:19, 28:21, 29:5, 32:7, 33:19, 33:23, 33:25, 34:1, 34:3, 34:4, 34:11, 35:2
message [1] - 5:6
Meta [1] - 18:21
microphone [2] - 36:11, 36:12
might [11] - 2:24, 8:14, 10:5, 13:12, 18:9, 18:15, 35:14, 35:23, 39:17, 44:7, 52:4
mind [2] - 6:5, 38:4
minor [4] - 16:21, 20:6, 20:10
Minor [1] - 1:3
minor's [1] - 32:19
minors [8] - 16:15, 16:19, 16:22, 17:1, 17:4, 17:9, 29:2, 33:20
misrepresentations [1] - 24:6
Missouri [1] - 49:8
mistreated [1] - 51:18
mode [1] - 36:25
Monday [1] - 51:25
monetization [3] - 20:9, 34:20, 34:21
monetize [7] - 7:19, 19:17, 20:12, 21:11, 22:13, 34:2, 37:13
monetized [1] - 7:16
monetizes [4] - 4:11, 7:19, 8:25, 37:2
monetizing [2] - 9:20, 21:4
money [2] - 9:7,

31:24
month [2] - 43:7, 44:15
most [3] - 34:4, 52:2, 52:8
motion [15] - 1:25, 2:1, 3:14, 3:15, 9:23, 9:24, 11:25, 13:14, 15:25, 22:25, 27:18, 39:16, 43:16, 45:15, 50:7
motions [5] - 1:19, 1:20, 2:13, 5:19, 41:1
move [3] - 17:23, 17:24, 30:3
movie [1] - 4:17
MR [119] - 1:6, 1:10, 2:2, 2:6, 2:15, 3:24, 5:24, 6:23, 7:22, 8:21, 10:4, 10:6, 10:10, 10:14, 10:20, 10:24, 11:15, 11:25, 12:6, 14:4, 14:16, 14:21, 14:25, 15:16, 15:24, 16:18, 16:22, 17:2, 17:13, 17:22, 18:16, 19:5, 19:8, 19:11, 19:20, 20:16, 21:6, 21:24, 22:6, 22:11, 23:3, 25:18, 26:4, 26:7, 26:10, 28:10, 28:16, 29:3, 29:13, 29:25, 30:7, 30:12, 30:23, 30:24, 31:10, 31:23, 32:6, 32:23, 33:2, 33:4, 33:6, 33:14, 34:3, 34:5, 34:13, 34:14, 34:21, 35:17, 36:4, 36:6, 36:9, 36:13, 36:15, 37:7, 37:12, 37:15, 37:19, 38:8, 39:10, 39:22, 40:5, 41:3, 41:4, 41:14, 42:2, 42:24, 43:7, 43:10, 43:11, 43:23, 44:3, 44:21, 45:10, 46:3, 46:12, 46:16, 46:20, 46:23, 47:2, 47:7, 47:8, 47:13, 47:14, 47:21, 48:2, 49:12, 50:2, 50:13, 50:25, 51:7, 51:21, 51:24, 51:25, 52:2, 52:11, 52:23, 53:11, 53:20, 53:21
MS [1] - 13:18
multiple [2] - 11:1, 12:3
mutual [1] - 44:23

**N**

name [2] - 32:13, 35:5, 35:9
named [2] - 14:7, 47:18
names [3] - 1:15, 1:16, 32:19
narrowly [2] - 35:16, 35:18
nature [1] - 3:3
necessarily [6] - 8:19, 11:12, 13:13, 17:20, 20:25, 29:9
necessary [3] - 14:1, 20:22, 43:17
need [18] - 5:18, 11:25, 13:1, 13:10, 16:1, 17:23, 22:17, 28:5, 39:7, 39:19, 41:2, 42:4, 45:19, 47:14, 47:16, 47:17, 52:3, 52:11
needed [1] - 21:16
needs [3] - 8:23, 37:21, 47:22
negatively [1] - 23:23
negotiate [1] - 40:1
never [3] - 15:11, 27:5, 50:11
New [12] - 30:8, 30:14, 30:23, 31:10, 32:7, 32:18, 33:10, 33:21, 34:6, 34:11, 35:17, 49:6
new [2] - 46:16, 49:1
next [4] - 11:1, 42:4, 48:3, 51:11
nice [2] - 52:21, 53:19
Nick.com [1] - 23:20
Nickelodeon [3] - 23:12, 25:9, 26:23
NO [1] - 54:20
nobody [1] - 42:22
normal [2] - 3:13, 44:8
normally [4] - 3:17, 20:11, 35:3, 44:4
Northern [2] - 32:24, 33:8
note [1] - 27:12
nothing [3] - 1:24, 12:14, 25:2
notice [1] - 19:10
notion [1] - 18:23
November [3] - 44:16, 47:11, 54:16
number [7] - 7:2, 8:3,

10:23, 25:11, 25:24, 51:2, 51:15
numbers [1] - 10:22
nuts [1] - 43:11

**O**

objecting [1] - 22:19
objection [1] - 39:1
objections [5] - 41:24, 41:25, 42:1, 42:8, 45:23
objects [1] - 22:18
obligated [1] - 45:21
obtain [1] - 16:5
obtained [1] - 21:3
obviously [11] - 5:9, 6:1, 7:14, 8:10, 8:13, 11:3, 12:14, 20:24, 25:9, 36:24, 38:20
Obviously [1] - 26:6
OF [3] - 54:1, 54:3, 54:4
offensive [2] - 24:2, 28:1
offering [1] - 4:11
Office [1] - 6:20
OFFICIAL [1] - 54:1
Official [1] - 54:6
often [1] - 28:4
old [1] - 4:13
old-fashioned [1] - 4:13
Omni [1] - 30:13
once [3] - 35:23, 39:2, 52:24
one [24] - 1:9, 2:8, 5:15, 7:10, 11:21, 12:4, 12:12, 12:24, 13:20, 20:20, 21:1, 21:2, 21:7, 22:15, 22:21, 26:11, 29:17, 30:11, 30:20, 30:22, 43:15, 44:7, 48:2, 48:12
ones [1] - 17:21
open [7] - 2:24, 24:5, 39:15, 40:1, 40:6, 40:16, 42:14
opened [1] - 40:15
operate [1] - 17:6
operates [14] - 3:7, 3:10, 3:20, 7:11, 14:20, 15:2, 15:8, 36:23, 36:24, 37:2, 37:22, 40:19, 42:16, 44:14
operating [1] - 15:14
operation [1] - 4:2
operations [2] - 3:4,

4:11
operators [1] - 24:17
opine [1] - 30:21
opinion [1] - 26:12
opportunity [1] - 38:17
opposed [3] - 20:10, 20:13, 32:10
opposite [1] - 22:8
order [3] - 6:2, 40:7, 43:2
ordered [1] - 47:17
ordinary [1] - 51:12
originally [1] - 39:14
otherwise [1] - 21:17
outside [1] - 38:23
over-13 [1] - 25:3
overboard [1] - 42:11
overlap [1] - 51:2
overwhelming [1] - 44:8
own [4] - 9:20, 33:13, 48:19, 52:21

**P**

page [15] - 5:22, 6:8, 10:18, 10:22, 10:25, 11:1, 11:5, 21:9, 23:6, 23:7, 24:15, 26:12, 31:13, 33:7, 54:12
pages [1] - 11:1
paid [2] - 9:17, 20:21
paper [1] - 52:3
papers [5] - 6:17, 9:14, 25:14, 30:13, 40:5
parsed [1] - 44:11
part [7] - 14:6, 29:19, 39:8, 46:24, 47:1, 47:2, 47:19
participate [1] - 52:12
particular [10] - 4:11, 4:15, 5:6, 8:11, 23:8, 26:11, 32:25, 34:2, 35:16, 49:23
particularly [2] - 6:7, 24:22
parties [13] - 2:18, 2:19, 3:8, 3:11, 3:23, 4:18, 15:6, 15:10, 15:14, 38:5, 39:3, 39:21, 51:23
parties' [1] - 45:5
parts [3] - 5:3, 15:7, 15:8
party [3] - 4:12, 5:4, 8:15

pass [1] - 15:23
pay [3] - 18:19, 18:24, 18:25
payment [1] - 9:18
pending [1] - 5:11
people [13] - 17:15, 18:24, 28:18, 28:22, 28:25, 29:4, 49:15, 49:25, 50:9, 52:6, 52:16, 52:17, 52:24
per [1] - 34:19
perhaps [1] - 4:1
person [4] - 9:10, 24:18, 24:22, 52:3
person's [3] - 24:19, 24:21, 35:5
personal [1] - 33:18
personas [1] - 31:24
persons [2] - 4:8, 4:12
PETROCELLI [16] - 3:24, 37:19, 41:4, 41:14, 42:2, 42:24, 43:7, 43:10, 46:3, 46:12, 46:16, 46:20, 47:8, 51:24, 53:11, 53:21
Petrocelli [1] - 3:24
phone [2] - 1:5, 53:2
phones [1] - 52:25
phrased [2] - 25:20, 34:18
picture [2] - 32:13, 35:5
piece [1] - 28:12
pin [1] - 13:6
Pixel [1] - 18:22
placement [1] - 45:25
plaintiff [4] - 12:15, 21:16, 38:17, 42:15
plaintiff's [9] - 1:5, 26:15, 26:21, 30:16, 30:21, 32:13, 33:1, 42:3, 47:10
plaintiffs [31] - 1:13, 2:4, 8:2, 9:2, 10:15, 11:6, 13:16, 14:7, 14:12, 20:20, 21:24, 22:12, 26:3, 26:7, 27:17, 28:11, 33:9, 36:2, 37:16, 38:12, 42:10, 43:5, 44:22, 45:2, 46:22, 47:4, 47:17, 47:18, 47:23, 48:9, 49:13
plaintiffs' [1] - 34:9
platform [19] - 7:19, 8:8, 9:1, 15:13, 16:23, 17:4, 17:5, 18:13,

20:1, 24:17, 24:23, 25:1, 25:3, 28:19, 28:21, 29:15, 32:2, 33:19
platforms [2] - 8:8, 34:5
plead [4] - 8:3, 9:3, 9:4, 9:6
pleading [1] - 9:2
pleased [1] - 50:17
pled [6] - 9:16, 13:25, 14:5, 14:23, 15:25, 22:4
plenty [2] - 7:8, 7:9
point [37] - 3:14, 7:13, 10:12, 11:23, 13:4, 14:12, 15:3, 15:24, 20:5, 22:8, 23:2, 23:4, 23:11, 26:3, 28:17, 29:11, 29:12, 30:6, 30:12, 33:17, 35:24, 36:1, 39:24, 40:11, 40:16, 40:23, 40:25, 41:12, 41:18, 41:21, 41:22, 42:20, 42:23, 43:3, 44:23, 46:6, 46:7
points [1] - 3:22
pop [1] - 4:20
pop-ups [1] - 4:20
portion [2] - 17:10, 33:14
portions [6] - 15:11, 17:12, 38:17, 41:20, 45:2, 45:3
portrait [1] - 32:13
pose [1] - 12:21
poses [1] - 48:20
position [6] - 6:12, 6:13, 9:2, 30:2, 33:7, 42:25
positions [1] - 45:5
possible [1] - 52:12
potentially [1] - 25:5
POWERS [37] - 2:2, 2:15, 5:24, 6:23, 7:22, 8:21, 10:4, 10:6, 10:10, 14:4, 14:16, 22:6, 22:11, 23:3, 25:18, 28:10, 28:16, 29:3, 29:13, 29:25, 30:7, 30:12, 30:23, 32:6, 32:23, 33:2, 33:4, 33:14, 34:3, 34:5, 34:13, 35:17, 36:6, 36:15, 47:7, 47:14, 50:13
practical [2] - 17:3, 34:17
practicality [1] -

43:12
practices [1] - 26:13
praise [1] - 28:9
preclude [2] - 35:13, 42:21
premature [1] - 41:21
premised [1] - 13:16
prepare [1] - 37:24
preservation [3] - 3:5, 39:8, 39:11
presumably [1] - 45:10
presume [8] - 1:21, 1:24, 4:6, 4:10, 16:14, 47:1, 47:5, 47:11
pretty [1] - 49:9
previously [1] - 33:11
primarily [1] - 36:25
principles [1] - 31:2
Privacy [5] - 1:3, 23:18, 27:21, 27:23, 33:8
privacy [31] - 23:8, 24:1, 24:25, 25:10, 25:13, 25:15, 26:1, 26:15, 26:19, 26:22, 27:2, 27:3, 27:6, 27:9, 27:14, 27:25, 28:4, 28:24, 29:4, 29:9, 29:11, 29:14, 29:18, 29:23, 29:24, 33:12, 34:16, 34:18, 34:19, 34:20
private [1] - 24:21
problem [15] - 3:6, 7:7, 8:19, 9:23, 14:6, 18:9, 34:15, 37:8, 39:5, 40:3, 44:2, 49:18, 52:15, 53:5, 53:6
problems [7] - 7:10, 11:10, 17:19, 17:20, 41:17, 45:8, 52:4
procedural [1] - 48:6
procedurally [1] - 36:20
proceed [5] - 13:20, 37:20, 41:5, 42:24, 48:22
proceeding [3] - 2:18, 13:19, 51:12
proceedings [2] - 53:22, 54:11
process [5] - 3:13, 38:23, 38:24, 39:6, 46:21
processes [2] - 19:16, 37:3

product [3] - 8:18, 24:7, 32:5
production [1] - 43:19
productive [1] - 39:13
products [1] - 4:15
proffer [4] - 42:6, 43:14, 44:17, 44:22
proffered [1] - 42:15
proffering [1] - 45:1
profit [1] - 33:13
progressing [1] - 45:19
prong [4] - 23:8, 30:25, 31:1, 31:6
prongs [2] - 30:24, 31:9
proper [2] - 25:23, 53:8
properly [1] - 41:20
Protection [1] - 23:18
prove [1] - 15:18
provide [9] - 4:1, 4:18, 35:9, 38:16, 38:24, 41:9, 43:4, 44:7, 44:22
provided [3] - 5:5, 44:14, 44:15
providers [1] - 24:17
providing [2] - 8:11, 38:12
proviso [2] - 38:4, 40:10
public [1] - 33:13
publication [2] - 30:18, 31:18
purpose [7] - 13:13, 31:10, 31:17, 31:18, 31:22, 32:10, 33:10
purposes [21] - 3:21, 6:16, 9:2, 13:5, 13:17, 21:4, 22:25, 23:25, 29:23, 29:24, 31:12, 31:14, 31:15, 32:16, 32:17, 32:20, 35:5, 35:10, 36:25, 40:17, 41:1
pursuant [1] - 54:9
put [7] - 26:17, 29:16, 30:19, 35:3, 42:13, 47:9, 47:10
putting [1] - 6:1
puzzling [1] - 48:6

**Q**

questions [5] - 12:21, 16:10, 20:14,

20:16, 38:21
**quick** [2] - 2:8, 46:1
**quicker** [1] - 2:9
**quickly** [1] - 22:6
**Quickset** [1] - 12:6
**quite** [4] - 2:21, 16:20, 31:5, 34:9
**quote** [1] - 30:15

## R

**raining** [1] - 52:23
**raise** [3] - 5:20, 5:21, 49:9
**raised** [2] - 40:5, 50:11
**rather** [4] - 2:23, 3:12, 14:18, 52:6
**rationale** [2] - 18:3, 18:6
**re** [4] - 1:2, 18:22, 21:15, 25:15
**Re** [1] - 18:21
**reach** [5] - 7:12, 9:14, 15:11, 15:15, 35:24
**reached** [1] - 27:5
**read** [5] - 11:3, 21:22, 28:16, 32:9, 52:3
**reading** [5] - 32:6, 32:9, 34:8, 35:19, 52:4
**reads** [1] - 33:17
**real** [1] - 46:1
**really** [12] - 2:19, 8:19, 9:22, 12:24, 13:15, 19:1, 30:20, 36:20, 42:11, 49:2, 52:16, 53:6
**Realtime** [1] - 54:6
**reason** [8] - 15:5, 17:17, 24:11, 34:23, 37:10, 38:1, 42:4, 53:4
**reasonable** [16] - 23:8, 24:1, 24:18, 24:21, 24:25, 26:15, 26:19, 26:21, 27:2, 27:3, 27:6, 27:8, 27:13, 27:24, 28:3, 29:4
**reasonably** [1] - 30:17
**reasoned** [1] - 28:7
**reasoning** [1] - 33:15
**reasons** [2] - 10:16, 22:15
**receiving** [1] - 43:14
**reception** [1] - 53:7

recognizable [1] - 44:1
**recognized** [3] - 12:16, 16:1, 18:7
**redo** [1] - 48:25
**refer** [1] - 48:16
**referring** [3] - 5:23, 10:19, 10:20
**regard** [2] - 17:6, 29:19
**regards** [2] - 2:1, 3:22
**regular** [2] - 16:17, 25:3
**regulations** [1] - 54:13
**reject** [1] - 18:22
**rejected** [3] - 7:6, 25:12, 25:24
**related** [1] - 16:5
**relatedly** [1] - 46:16
**relevant** [5] - 26:13, 26:21, 27:10, 28:3, 28:5
**relief** [1] - 12:1
**relitigate** [1] - 50:11
**rely** [4] - 3:10, 15:19, 24:17, 29:6
**remember** [2] - 43:21, 53:12
**reply** [1] - 24:15
**report** [7] - 3:9, 37:24, 42:15, 42:18, 43:5, 44:13, 45:2
**reported** [1] - 54:11
**reporter** [1] - 1:18
**Reporter** [2] - 54:7, 54:20
**REPORTER** [2] - 36:11, 54:1
**represent** [1] - 49:20
**representations** [1] - 24:7
**representative** [3] - 48:17, 48:24, 50:8
**request** [3] - 37:13, 37:17, 45:14
**requests** [9] - 40:21, 44:6, 44:9, 44:19, 45:7, 45:9, 45:17, 45:21, 51:8
**require** [10] - 10:3, 11:11, 40:13, 41:23, 42:7, 42:14, 44:13, 44:15, 44:18, 46:7
**required** [3] - 13:13, 22:12, 40:25
**requires** [3] - 21:10, 21:14, 31:18
**reservation** [1] -

38:11
**reside** [2] - 28:11, 48:9
**resolve** [7] - 13:15, 14:19, 16:12, 22:16, 22:17, 49:10, 53:15
**resolved** [6] - 2:22, 14:17, 17:18, 17:21, 17:23, 49:10
**respect** [1] - 6:25
**respond** [12] - 38:17, 40:13, 40:20, 41:23, 42:18, 44:18, 44:25, 45:6, 45:21, 45:22, 47:15, 47:16
**responding** [1] - 45:9
**response** [8] - 5:22, 10:1, 11:18, 26:2, 37:18, 40:15, 42:7, 45:7
**responses** [1] - 51:11
**restricted** [1] - 17:10
**result** [2] - 9:8, 14:8
**retread** [1] - 50:16
**reveal** [1] - 42:20
**revenue** [1] - 9:10
**review** [1] - 37:24
**rights** [3] - 30:8, 31:11, 33:11
**Robinson** [1] - 46:17
**rolling** [1] - 39:4
**RPR** [1] - 54:20
**rule** [2] - 24:9, 42:25
**ruling** [3] - 27:16, 47:20, 50:16
**rulings** [1] - 3:21

## S

**Sarah** [1] - 1:10
**satisfied** [1] - 41:7
**scenarios** [1] - 20:4
**se** [1] - 34:19
**search** [4] - 40:2, 43:17, 44:10, 45:12
**Seattle** [1] - 52:23
**seclusion** [8] - 23:6, 25:8, 25:12, 25:22, 25:25, 27:18, 48:7, 49:14
**second** [2] - 23:24, 46:5
**section** [1] - 10:25
**Section** [1] - 54:9
**see** [5] - 24, 29:8, 37:4, 50:14, 50:17
**select** [1] - 44:5
**sell** [6] - 9:5, 12:15,

20:21, 21:16, 22:2
**selling** [1] - 12:17
**send** [2] - 37:12, 37:24
**sense** [4] - 8:10, 8:15, 42:2, 44:7
**separate** [3] - 31:11, 31:15, 39:22
**service** [3] - 9:19, 18:19, 24:7
**services** [1] - 20:21
**set** [1] - 45:25
**setting** [2] - 26:15, 38:12
**settle** [1] - 53:18
**settlement** [1] - 53:13
**shape** [3] - 7:17, 38:5, 51:18
**Sharp** [1] - 27:13
**short** [2] - 5:25, 33:15
**shorter** [1] - 36:7
**show** [10] - 12:1, 14:1, 16:5, 18:4, 20:22, 21:16, 21:17, 23:21, 25:7, 25:22
**showing** [3] - 7:6, 12:8, 21:10
**shut** [3] - 20:3, 35:1, 35:2
**side** [3] - 26:17, 36:6, 36:14
**sides** [4] - 1:21, 5:21, 44:25, 45:1
**significant** [1] - 18:12
**similar** [4] - 5:11, 23:15, 49:19
**simply** [4] - 12:15, 14:22, 31:6, 47:23
**site** [2] - 8:17, 8:18
**situation** [5] - 4:23, 8:20, 8:22, 35:4, 35:8
**situations** [1] - 29:8
**smart** [1] - 6:20
**smarter** [1] - 6:21
**SMITH** [5] - 1:6, 1:10, 50:25, 51:7, 51:21
**Smith** [2] - 1:6, 1:8
**snatching** [1] - 18:1
**social** [17] - 18:17, 19:2, 19:21, 28:18, 28:19, 28:21, 29:5, 32:7, 33:19, 33:23, 33:25, 34:1, 34:3, 34:4, 34:11, 35:2
**society** [1] - 29:17
**someone** [3] - 9:19, 24:13, 32:2

**sometimes** [4] - 8:5, 8:7, 18:10, 53:8
**somewhat** [1] - 35:16
**soon** [1] - 13:15
**sooner** [2] - 2:23, 14:17
**sorry** [2] - 4:8, 31:8
**sort** [18] - 4:6, 4:22, 5:6, 5:14, 5:17, 8:12, 11:13, 15:14, 17:2, 24:4, 25:20, 31:2, 35:6, 37:3, 37:17, 40:22, 44:20, 45:24
**sound** [1] - 53:9
**sounds** [1] - 34:13
**South** [1] - 24:11
**Southern** [1] - 52:20
**speaking** [1] - 19:21
**specific** [3] - 4:15, 6:9, 19:25
**specifically** [2] - 30:15, 47:19
**spent** [1] - 6:1
**stage** [1] - 14:22
**standing** [3] - 28:10, 36:10, 47:20
**start** [5] - 6:6, 44:9, 45:10, 45:19, 52:4
**started** [1] - 15:5
**starting** [3] - 1:25, 11:1, 40:9
**starts** [3] - 10:24, 23:6, 23:7
**STATE** [1] - 54:4
**state** [13] - 32:7, 32:18, 33:10, 33:24, 34:6, 34:11, 37:6, 47:6, 47:19, 49:5, 49:22, 49:23, 50:1
**state's** [1] - 49:24
**statement** [1] - 39:18
**states** [19] - 28:11, 46:12, 46:22, 46:23, 47:4, 47:18, 47:24, 48:4, 48:9, 48:12, 48:16, 48:17, 48:18, 48:21, 48:25, 49:8, 50:8, 50:9, 50:14
**States** [9] - 1:3, 1:4, 1:7, 1:9, 51:2, 51:17, 54:7, 54:9, 54:14
**states'** [2] - 49:2, 49:19
**status** [1] - 51:9
**statute** [8] - 26:1, 30:15, 34:8, 35:11, 35:16, 35:19, 49:5, 49:6
**Statute** [2] - 27:21,

27:23
**statutes** [7] - 6:7, 23:18, 25:10, 25:13, 29:20, 49:3, 49:19
**statutory** [4] - 25:6, 25:21, 31:1, 31:15
**stay** [3] - 1:19, 1:25, 2:1
**stenographically** [1] - 54:11
**step** [1] - 31:2
**still** [3] - 39:3, 46:9, 49:23
**stop** [2] - 41:16, 52:4
**storage** [1] - 37:2
**stored** [2] - 4:23, 5:3
**strong** [1] - 29:18
**struggling** [1] - 13:23
**stuff** [21] - 2:22, 3:20, 4:23, 5:6, 5:10, 7:13, 15:13, 39:2, 39:9, 39:19, 40:20, 41:13, 41:17, 41:21, 42:9, 42:11, 42:14, 42:17, 42:19, 42:22, 46:10
**stumbling** [1] - 53:3
**subject's** [1] - 30:17
**submit** [4] - 7:7, 37:17, 38:1, 38:22
**submitted** [1] - 27:15
**subparts** [1] - 11:14
**subsequent** [1] - 28:16
**substantive** [1] - 3:17
**sucked** [1] - 53:9
**sue** [1] - 19:21
**suffered** [2] - 9:3, 9:11
**suffering** [1] - 14:8
**sufficient** [15] - 11:21, 12:5, 12:20, 13:3, 14:14, 16:10, 19:9, 20:17, 22:21, 25:7, 25:22, 27:8, 27:24, 29:22, 38:25
**sufficiently** [2] - 11:7, 33:10
**suggest** [2] - 13:3, 37:23
**suggested** [1] - 12:23
**suggests** [1] - 30:17
**superb** [1] - 28:12
**supervised** [1] - 6:19
**supervisor** [1] - 6:22
**suppose** [2] - 5:2, 20:5

**supposed** [3] - 3:22, 35:16, 35:18
**supposedly** [2] - 8:16, 20:7
**Supreme** [1] - 12:7
**surprising** [1] - 34:9
**surreptitious** [3] - 23:14, 24:5, 25:2
**surrounding** [1] - 26:14
**survey** [1] - 8:9
**survive** [1] - 27:18
**survives** [1] - 12:4
**swamp** [1] - 53:9

**T**

**tagged** [1] - 46:17
**talks** [1] - 36:24
**target** [2] - 31:24, 32:2
**targeting** [1] - 32:21
**technically** [1] - 2:24
**technology** [3] - 33:12, 53:2, 53:3
**telephone** [2] - 52:12, 52:18
**telephonics** [1] - 52:15
**tend** [1] - 52:17
**tentative** [20] - 5:22, 6:4, 6:8, 6:10, 10:17, 10:18, 10:25, 12:19, 17:24, 20:17, 21:7, 21:9, 23:4, 26:5, 31:14, 33:7, 36:17, 36:18, 48:18, 49:10
**tentatives** [1] - 1:22
**term** [4] - 5:5, 18:14, 33:18, 43:21
**terms** [13] - 7:3, 7:24, 11:20, 16:3, 24:19, 37:2, 40:2, 42:18, 43:17, 44:1, 44:4, 44:10, 45:12
**TERRI** [3] - 54:6, 54:19, 54:20
**THE** [109] - 1:2, 1:8, 1:12, 1:14, 2:3, 2:8, 2:16, 4:4, 6:19, 7:10, 8:5, 9:21, 10:5, 10:8, 10:11, 10:18, 10:22, 11:5, 11:18, 12:3, 13:4, 14:2, 14:10, 14:19, 14:24, 15:1, 15:22, 16:12, 16:19, 16:24, 17:8, 17:16, 18:9, 19:3, 19:6, 19:9, 19:13, 20:2, 20:24, 21:23, 22:10, 22:14,

25:16, 26:2, 26:6, 26:8, 28:8, 28:14, 29:2, 29:7, 29:16, 30:4, 30:10, 30:19, 31:8, 31:21, 32:12, 32:24, 33:3, 33:25, 34:4, 34:12, 34:18, 35:3, 35:20, 36:5, 36:7, 36:11, 36:12, 36:14, 36:16, 37:10, 37:14, 37:16, 38:3, 38:15, 39:17, 40:3, 40:9, 41:11, 41:16, 42:6, 43:2, 43:9, 43:20, 43:24, 44:13, 44:23, 45:20, 46:6, 46:14, 46:19, 46:22, 47:1, 47:5, 47:9, 47:16, 48:1, 49:2, 49:18, 50:19, 51:6, 51:16, 51:22, 52:1, 52:8, 52:13, 53:4, 53:12
**themselves** [1] - 48:23
**theories** [22] - 6:12, 10:21, 11:16, 11:20, 12:4, 12:8, 12:22, 13:7, 13:19, 13:22, 13:25, 14:3, 14:11, 14:23, 15:17, 15:20, 16:1, 16:11, 22:5, 22:19, 46:8
**theory** [9] - 11:7, 12:3, 12:22, 12:25, 13:17, 13:21, 17:5, 18:1, 19:1
**therefore** [5] - 15:3, 18:20, 20:9, 26:14, 49:20
**thing-a-ma-jiggys** [1] - 53:17
**Third** [2] - 23:12, 24:9
**third** [3] - 4:12, 4:18, 5:4
**third-party** [2] - 4:12, 5:4
**thorough** [2] - 11:3, 17:25
**thoughts** [1] - 50:23
**Tiktok** [46] - 1:2, 2:20, 3:4, 3:6, 3:20, 4:9, 4:11, 4:18, 4:20, 5:3, 5:20, 6:18, 7:11, 8:6, 8:7, 8:25, 9:9, 12:16, 14:20, 15:2, 15:8, 15:13, 16:23, 17:6, 17:8, 17:14, 18:17, 19:11, 19:14,

19:15, 32:19, 35:1, 35:14, 35:23, 36:23, 36:24, 37:1, 37:2, 37:13, 37:22, 39:25, 40:19, 41:8, 42:16, 44:14, 44:18
**Tiktok's** [3] - 4:2, 25:2, 37:18
**time-consuming** [1] - 43:15
**Title** [1] - 54:9
**today** [12] - 17:18, 17:21, 17:23, 20:15, 22:17, 22:23, 28:5, 35:21, 40:9, 42:4, 52:3
**together** [1] - 6:2
**tomorrow** [1] - 42:4
**totally** [1] - 7:15
**track** [1] - 28:21
**Tracking** [1] - 21:15
**tracking** [1] - 51:13
**tracks** [2] - 39:11, 41:12
**trade** [12] - 30:25, 31:1, 31:10, 31:15, 31:18, 31:21, 32:6, 32:9, 32:17, 32:20, 33:10, 33:18
**traffic** [1] - 52:5
**transcript** [2] - 54:10, 54:12
**treated** [1] - 24:22
**treating** [1] - 25:21
**treatment** [1] - 25:2
**tremendously** [1] - 18:23
**tricky** [1] - 8:14
**tried** [1] - 34:10
**true** [2] - 46:15, 54:10
**trust** [1] - 52:11
**trustful** [1] - 38:13
**try** [2] - 14:21, 50:11
**trying** [3] - 10:7, 34:25, 42:24
**turn** [2] - 4:22, 22:6
**turned** [1] - 6:3
**Turner** [1] - 18:21, 27:1
**tutorial** [2] - 2:20, 36:21
**twisted** [1] - 10:11
**two** [17] - 11:17, 12:11, 12:21, 13:22, 13:25, 14:3, 14:12, 14:15, 16:1, 22:25, 23:1, 30:24, 31:8, 39:11, 44:25, 52:8
**type** [9] - 4:15, 5:3,

7:13, 7:16, 8:8, 32:10, 35:4, 35:9, 41:12
**types** [3] - 32:3, 39:9, 44:19

**U**

**ultimately** [1] - 3:13
**unable** [2] - 9:20, 14:7
**unaware** [1] - 32:8
**unclear** [1] - 11:13
**under** [8] - 7:3, 17:4, 19:25, 22:3, 24:24, 29:1, 31:10, 42:17
**underlying** [1] - 34:16
**Understood** [1] - 42:24
**understood** [1] - 36:4
**underway** [1] - 43:18
**unfair** [2] - 6:6, 10:25
**unhappy** [1] - 43:6
**unique** [1] - 49:6
**United** [9] - 1:3, 1:4, 1:7, 1:9, 51:2, 51:17, 54:7, 54:9, 54:14
**unjust** [2] - 48:8, 49:14
**unless** [3] - 3:15, 20:7, 41:6
**up** [11] - 9:25, 10:2, 11:23, 12:17, 20:3, 23:22, 27:15, 40:21, 49:1, 49:6, 50:10
**upheld** [1] - 48:6
**uphold** [1] - 22:4
**ups** [1] - 4:20
**US** [1] - 6:20
**user** [14] - 7:18, 7:21, 8:7, 8:11, 8:16, 8:17, 8:25, 18:12, 18:13, 19:4, 19:19, 20:13, 37:13
**user's** [1] - 8:17
**users** [14] - 4:8, 4:15, 4:19, 5:6, 16:15, 16:17, 19:15, 19:16, 19:21, 19:25, 24:23, 24:25, 25:3
**uses** [4] - 9:10, 30:16, 32:19, 35:4
**utilize** [1] - 35:11
**utilizing** [2] - 13:16, 17:5

**V**

**valid** [1] - 50:14

**valuable** [3] - 7:9, 8:18, 18:23
**value** [18] - 7:21, 7:23, 8:10, 11:7, 12:16, 12:24, 12:25, 13:24, 16:7, 18:7, 18:11, 18:13, 18:15, 18:20, 19:6, 20:23, 21:10, 21:17
**valued** [1] - 18:11
**variety** [1] - 46:23
**various** [11] - 3:21, 3:22, 4:8, 4:10, 5:2, 5:12, 6:12, 11:20, 13:7, 18:7, 19:17
**versa** [1] - 18:2
**versus** [4] - 1:3, 1:4, 33:8, 36:25
**via** [1] - 52:12
**viable** [1] - 19:1
**vice** [1] - 18:1
**victory** [2] - 2:5, 18:1
**Video** [1] - 23:17
**videos** [1] - 23:19
**view** [3] - 33:1, 48:23, 49:15
**violated** [1] - 31:20
**violates** [1] - 34:20
**violation** [20] - 24:12, 25:6, 25:10, 25:14, 25:21, 26:1, 26:18, 26:19, 26:24, 26:25, 27:1, 27:3, 27:6, 27:7, 27:20, 27:23, 27:24, 28:24, 29:22, 34:22
**violations** [3] - 25:13, 31:16, 34:16
**virtually** [1] - 7:2
**vis** [2] - 36:24
**vis-a-vis** [1] - 36:24
**voice** [1] - 32:13
**voluntary** [1] - 38:11
**VPPA** [1] - 23:17

## W

**waffle** [3] - 30:9, 30:10, 30:11
**waffling** [4] - 9:22, 13:23, 14:15
**wait** [1] - 52:1
**waiver** [1] - 20:7
**waiving** [2] - 29:9, 42:22
**walks** [1] - 9:16
**wants** [3] - 5:20, 36:9, 38:10
**waste** [1] - 18:2
**watching** [1] - 23:19

**water** [1] - 13:11
**wavering** [4] - 22:15, 23:1, 35:20, 35:21
**ways** [5] - 4:10, 8:3, 19:17, 21:21, 50:3
**weather** [1] - 52:21
**website** [4] - 24:16, 24:20, 29:5
**week** [1] - 42:5
**weeks** [2] - 44:25, 51:11
**weight** [1] - 26:20
**weird** [2] - 35:8, 35:10
**whereas** [1] - 18:13
**whereby** [1] - 4:18
**Williams** [1] - 1:10
**winter** [1] - 52:22
**Wiretape** [1] - 25:15
**wonderful** [1] - 28:15
**wonderfully** [1] - 28:12
**word** [2] - 4:13, 53:8
**words** [9] - 4:14, 13:8, 13:12, 18:11, 19:13, 35:10, 40:18, 45:1, 49:5
**works** [3] - 2:20, 17:1, 35:23
**worried** [1] - 52:19
**worry** [1] - 37:15
**worth** [1] - 13:22
**written** [1] - 9:21

## Y

**year** [1] - 7:5
**York** [12] - 30:8, 30:15, 30:23, 31:11, 32:7, 32:18, 33:10, 33:21, 34:6, 34:11, 35:17, 49:6
**yourselves** [1] - 1:18
**YouTube** [1] - 4:20

# EXHIBIT B

1              UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA - CENTRAL DIVISION

3            HONORABLE GEORGE H. WU, U.S. DISTRICT JUDGE

4

5  IN RE: TIKTOK, INC.,
   MINOR PRIVACY LITIGATION,              Case No.
6                                         25-ML-3144-GW

7

8          _____

9  UNITED STATES OF AMERICA,

10                   Plaintiff,        CV 24-6535-GW
                 v
11  BYTEDANCE, LTD., et al

12                   Defendant.
           _____

13
                    REPORTER'S TRANSCRIPT OF
14                     STATUS CONFERENCE
           DEFENDANTS' MOTION FOR PROTECTIVE ORDER
15  PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF EXEMPLAR DATA
                  Monday, November 10, 2025
16                       9:05 A.M.
                  LOS ANGELES, CALIFORNIA
17

18

19

20

21

22  _____

23        TERRI A. HOURIGAN, CSR NO. 3838, CCRR
           FEDERAL OFFICIAL COURT REPORTER
           350 WEST FIRST STREET, ROOM 4311
24         LOS ANGELES, CALIFORNIA  90012
                    (213) 894-2849
25

```
 1                    APPEARANCES OF COUNSEL:

 2

 3   FOR PLAINTIFFS:  A.A., A.B., A.C., JODY VILLANUEVA,
     ANGELA FAUCETT, LAMARTINE PIERRE, JR.
 4

 5       KELLER ROHRBACK LLP
         BY:  DEREK W. LOESER
 6            NICANDRO IANNACCI
         Attorneys at Law
 7       1201 3rd Avenue, Suite 3400
         Seattle, Washington  98101
 8

 9       KELLER ROHRBACK LLP
         BY:  CHRISTOPHER L. SPRINGER
         Attorney at Law
10       801 Garden Street, Suite 301
         Santa Barbara, California  93101
11

12       COHEN MILSTEIN SELLERS and TOLL PLLC
         BY:  ERIC A. KAFKA
13            Attorney at Law
         88 Pine Street, 14th Floor
14       New York, New York  10005

15       COHEN MILSTEIN SELLERS and TOLL PLLC
         BY:  JENNA WALDMAN
16       Attorney at Law
         1100 New York Ave NW, Suite 800
17       Washington, DC  20005

18       SILVER GOLUB and TIETELL LLP
         BY:  STEVEN L. BLOCH
19            Attorney at Law
         One Landmark Square 15th Floor
20       Stamford, Connecticut

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

```
 1  APPEARANCES, (Cont.)

 2

 3  FOR THE DEFENDANT:

        O'MELVENY and MYERS LLP
 4      BY:  DANIEL M. PETROCELLI
             MATTHEW DAVID POWERS
 5           ABBY FORMELLA
             Attorneys at Law
 6      Two Embarcadero Center
        San Francisco, California  94111
 7
        O'MELVENY and MYERS LLP
 8      BY:  STEPHEN D. BRODY
        Attorney at Law
 9      1625 Eye Street, NW
        Washington, DC  20006
10

11  Also present:  Nelson Richards, representative for
    TikTok.
12

13  FOR DEFENDANT:  UNITED STATES OF AMERICA

14      U.S. ATTORNEY'S OFFICE
        CIVIL DIVISION, U.S. DEPARTMENT OF JUSTICE
15      BY:  MARCUS SMITH
             SARAH WILLIAMS
16      Attorneys at Law
        Washington, DC  20001
17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

4

```
 1            LOS ANGELES, CALIFORNIA, THURSDAY, NOVEMBER 10, 2025

 2                              9:05 a.m.

 3                                * * *

 4

 5            THE COURT:  Let me call last, but not least --

 6   certainly, not least, the In Re: TikTok matter.

 7            Let me have appearances starting with the plaintiffs'

 8   counsel first.

 9            MR. LOESER:  Derek Loeser for the plaintiffs, Your

10   Honor, good morning.

11            MR. KAFKA:  Eric Kafka for the plaintiffs, Your

12   Honor, good morning.

13            THE COURT:  All right.  I presume there are people

14   on the phone?

15            THE COURTROOM DEPUTY:  I didn't give them --

16            THE COURT:  I thought you said people are going to

17   fly back?

18            MR. LOESER:  Well, some stayed and some came home.

19            MR. KAFKA:  We did have one attorney on our team

20   that flew back, I thought he was going to dial in.

21            THE COURT:  He didn't apparently dial in.

22            THE COURTROOM DEPUTY:  I did give them the number.

23            MR. SMITH:  Okay.  Your Honor, Marcus Smith and

24   Sarah Williams for the United States on the phone.

25            THE COURT:  I know you guys are on the phone.
```

5

```
1              MR. KAFKA:  We will apprise them of what occurred.

2              THE COURT:  Okay.  For the defense.

3              MR. BLOCH:  Your Honor, this is Steven Bloch, for

4    the plaintiffs from Silver Golub and Teitell, I did dial in.

5              THE COURT:  Not a problem.  For the defense, we

6    have?

7              MR. PETROCELLI:  Good morning, Your Honor.  Daniel

8    Petrocelli for the defendants.

9              THE COURT:  All right.

10             MR. PETROCELLI:  Together with Nelson Richards, who

11   works inside our company.

12             MR. POWERS:  Matt Powers, Your Honor.

13             MR. BRODY:  Drew Brody, Your Honor.

14             MS. FORMELLA:  Abby Formella.

15             THE COURT:  All right.  We are here on the

16   defendant's motion for protective order and plaintiffs' motion

17   to compel production of exemplar data.

18         I issued a tentative on this.  I presume everybody has

19   seen it?

20             MR. PETROCELLI:  Yes, Your Honor.

21             THE COURT:  Okay.  Does somebody want to argue

22   something?

23         Also, let me just indicate, I have some questions, but I

24   will -- not so much on the motions, per se, but just on

25   TikTok's operations.
```

**UNITED STATES DISTRICT COURT**

6

1          I looked again at the slides that were provided at the

2    tutorial, and I have some questions based on those slides.

3          But obviously, I don't expect necessarily an answer

4    today, but if you can give me an answer today, that would be

5    great.  If not, obviously, you will give me an answer when you

6    provide the additional materials that I have asked you to

7    provide, okay?

8          All right.  So on the motions themselves, who wants to

9    argue?

10          MR. PETROCELLI:  Your Honor, Mr. Petrocelli, for the

11    defendants.

12          I'm not going to rehash the various legal arguments and

13    the analysis in your tentatives, I think we put our positions

14    of record, and we understand Your Honor's views.

15          I do want to make several comments about the tentative,

16    if I may, Your Honor?

17          THE COURT:  Sure.  Again, when you make these

18    comments, refer me to the page you are talking about.

19          MR. PETROCELLI:  I will.

20          Initially, I want to make sure Your Honor understands,

21    given all of the extensive proceedings that we have had so far

22    regarding these preservation issues, that we are challenged,

23    indeed, struggling, Your Honor, to reconcile the demands of

24    this litigation, including our preservation obligations,

25    including our compliance with the Court's orders, with the

 1    provisions of COPPA.

 2          And it really has sort of come to a head when we moved

 3    away from preservation into disclosure of the data.

 4          So, by way of example, when Your Honor ordered

 5    preservation of data, and we had a series of proceedings

 6    regarding that.  One of the things that I did, is I reached out

 7    to DOJ, and I got an agreement in writing that the DOJ will not

 8    hold TikTok liable for preserving data in this matter,

 9    notwithstanding the provisions of COPPA.

10          Likewise, once we got into this idea of actual turning

11    over a sample set of data, what we called the exemplars, we

12    reached out to plaintiffs' counsel and asked for parental

13    consent.

14          Initially, plaintiffs' counsel was willing to do so,

15    then we went back and forth, and we don't need to relive that

16    history, but it ended with plaintiffs' counsel declining to

17    provide parental consent.

18          To be clear, that parental consent --

19          THE COURT:  Let me stop you.  I don't understand why

20    they didn't agree to provide with you parental consent.

21          MR. PETROCELLI:  Well, Your Honor, I wanted to

22    elaborate on that, because perhaps, there is a

23    misunderstanding, but to be clear, that parental consent was

24    not intended to, nor would it have applied to shield us from

25    any liability.

8

```
 1              THE COURT:  It wouldn't apply retroactively, but it
 2    would apply prospectively, so that is the reason I don't
 3    understand why they didn't agree to it.
 4              MR. PETROCELLI:  That would solve so much of our
 5    dilemma, Your Honor, because --
 6              THE COURT:  Let me stop you.  I think you are
 7    correct on that point.
 8         Let me hear from the plaintiffs, why didn't you guys
 9    agree to provide them with the parental consent -- certainly as
10    the named plaintiffs, for sure.
11              MR. KAFKA:  Let me clarify a few things.
12         First of all, we did agree to provide them with a form
13    to consent to them to preserve the plaintiffs' data in this
14    litigation.
15         It's not necessary, but we provided them with a proposed
16    form that they would not agree to use.
17         There were a number of issues with their form, which I
18    could get into, but I think the point you are making now, about
19    it not applying retrospectively, certainly was not clear in the
20    form they provided to us.
21              THE COURT:  I can't believe that you guys, when you
22    talked about it, that wasn't popped up, and if it was popped
23    up, it would seem to me the answer to that question is so
24    obvious, it would take ten seconds.
25         I can't imagine you guys having a problem with that.
```

```
 1            MR. KAFKA:  But let me also be clear, their form has

 2   a number --

 3            THE COURT:  I'm not talking their form, I'm talking

 4   about the concept.

 5        In other words, the concept is obviously, the

 6   plaintiff's counsel -- sorry, the main plaintiffs, at least,

 7   have to provide that information, and also to agree insofar as

 8   there wouldn't be any liability insofar as continued

 9   preservations and disclosures, you know, prospectively.

10        Obviously, retrospectively, that is liability,

11   obviously, I understand plaintiffs aren't going to waive, nor

12   would this be required to waive, but certainly prospectively.

13            MR. KAFKA:  We're in complete agreement with what

14   Your Honor has said.

15            THE COURT:  The problem I am having, all of this

16   stuff could be resolved so quickly, if you guys sat down

17   rationally and discussed it with each other.

18        I can't figure out why it's taking so long to get this

19   stuff done.

20            MR. KAFKA:  Well, Your Honor -- we will certainly --

21            THE COURT:  Do better.

22            MR. KAFKA:  -- do better, right.

23            THE COURT:  All right.  Let me stop you.

24        He's going to do better in the future, and you guys are

25   going to be better in the future.
```

1          MR. PETROCELLI:  Yes, Your Honor.  I think that

2     would get us home on this issue.

3          THE COURT:  Okay.

4          MR. LOESER:  Derek Loeser, before we move on, your

5     tentative does discuss this, and I think accurately described

6     everything that was just said.

7          THE COURT:  I'm not blaming either side, per se, all

8     I'm indicating that it just seems to me these issues, they are

9     really not that -- some of them are complicated, some of these

10    issues aren't really that complicated.

11         I can't figure out why this is taking so long, it's like

12    pulling teeth from a shark which has three rows of teeth and

13    are constantly growing.

14         MR. LOESER:  I appreciate that.  And I think it's

15    not the first time in user privacy litigation that the

16    defendants have resisted so hard to producing --

17         THE COURT:  Don't put it on the defendants entirely,

18    again, it's both sides, to some extent.

19         I mean, I understand high-powered litigation, et cetera,

20    you don't want to screw up, I understand that.

21         But, you know, again, let's put it this way, if it takes

22    a minute and a half with me to resolve it, I don't understand

23    why it's taking that long for you guys to resolve that.

24         MR. LOESER:  I hear that, I appreciate that.  And I

25    think your tentative's discussion of what we should agree to

1   and what they should agree to is exactly right.

2       It is what we were attempting to agree to, which is a

3   consent that immunizes them from liability for doing what you

4   are telling them they are supposed to do, and what we are

5   asking them to do.

6       We absolutely agree they should not be liable for

7   preserving evidence.  We have tried to make that point --

8       THE COURT:  Also, for disclosing.

9       MR. LOESER:  Or for disclosing.

10      So when we offered to them what we thought accompanied

11  that, what they offered back is what you discussed in your

12  tentative.

13      THE COURT:  Have you agreed upon a protective order

14  yet?

15      MR. PETROCELLI:  Not yet.

16      THE COURT:  Why can't you agree to a protective

17  order?

18      All of this stuff that is going to be produced as to the

19  minors and TikTok's operations, all that stuff, I presume is

20  going to be under seal?

21      MR. KAFKA:  Yes.  We sent them a protective order

22  many, many months ago, and the response we got is that

23  discovery is not opened.

24      THE COURT:  Again, if that was their response, come

25  back to me and say, they are refusing to agree upon a

UNITED STATES DISTRICT COURT

1    protective order, and I will talk with them, and we will reach

2    an agreement within two minutes.  It's not that hard.

3              MR. KAFKA:  I agree.  We want to push it forward.

4              THE COURT:  Okay.  I expect you guys to have a

5    protective order accomplished before the end of this week.

6         If you guys have not done it -- provided at the end of

7    this week, I want both sides to give me a status report and

8    give me both versions red-lined as to -- in other words, a

9    single document that consists of the protective order, texts

10   you guys agree upon in one font, ones that plaintiff wants that

11   the defense is disagreeing about in a different font, and the

12   ones that defense wants and the plaintiffs are disagreeing

13   upon, in a third font.

14        And I will take a look at it, and I will resolve the

15   matter and sanction somebody at the end.

16             MR. PETROCELLI:  I think you have resolved it.

17             THE COURT:  I threw that in as a gratuitous comment,

18   because it is the holiday season.

19             MR. PETROCELLI:  Your Honor, I don't want to gild

20   the lily on this, because you have got us where we need to be,

21   parental consent for the named plaintiffs.

22        By the way, I mentioned to you on Friday that there is a

23   brand new lawsuit by a plaintiff named *Robinson*, and there are

24   five plaintiffs or six plaintiffs, as I understand it in that

25   case.

1          We haven't heard yet from plaintiff's counsel, but we

2     would expect that this would all be put together.

3               THE COURT:  Let me ask, that is filed in federal

4     court, right, the new one, *Robinson*?

5               MR. PETROCELLI:  Yes.

6               THE COURT:  Let me ask plaintiffs' counsel, what

7     steps have you taken to fold over the *Robinson* case into this

8     matter?

9               MR. LOESER:  We have started talking to them.  We

10    will do so.

11         I think our plan, as we said at the last hearing, we

12    will include their plaintiffs in the amended complaint that

13    we're going to file, provided we conclude that they are

14    appropriately added.

15              MR. PETROCELLI:  Also, parental consents.

16              THE COURT:  Obviously, the parental consents, all of

17    that stuff, you are going to be treating it all the same; in

18    other words, all named plaintiffs are going to be treated the

19    same in that regard?

20              MR. LOESER:  Yes.  You have put us in charge of this

21    case, and subsequently filed cases come in, and we view

22    everything that you do and say as applying to anyone else who

23    shows up subsequently.

24         I don't think anyone is going to disagree with that.

25              THE COURT:  Let me ask, other than the *Robinson*, are

1    there any new cases?

2         MR. LOESER:  Not to our knowledge.  We will have

3    additional plaintiffs to add, that will just, you know, be our

4    own.

5         THE COURT:  Well, obviously, the new plaintiffs,

6    obviously, for representing those states, that is to be

7    expected, because, you know, as I have indicated.

8         I presume there is going to be no new named

9    plaintiffs -- although, I guess, you can't stop people from

10   filing a suit, so things will happen, but they will be

11   processed in.

12        All right.  Let me ask defense counsel, anything else?

13        MR. PETROCELLI:  Yeah, Your Honor.  At the top of

14   page 7, and I believe Your Honor was not intending this to

15   apply toward defendants and our conduct in this case, but this

16   idea that, our interpretation of COPPA could be used as a sword

17   to shield liability.

18        Again, our disagreement with that has to do with

19   parental consent, because provided that parental consent is

20   given, then all of the information is available, and I just

21   wanted to clarify.

22        THE COURT:  I think part of the discussion here was

23   more directed towards the issue -- the way that you wanted to

24   make the language from the statute in regards to a response,

25   you had, kind of, like, a very strange way of interpreting that

1    language.

2         I didn't say that that was in bad faith or anything, I

3    thought it was a very strange way to interpret it, and I was

4    indicating my disagreement with that.

5         So that's what I was talking about here, I think my

6    emphasis wasn't really anything else other than that.

7              MR. PETROCELLI:  But I wanted the Court to be clear

8    when you are finalizing your tentative, you know, with parental

9    consent, all of this information is provided.

10             THE COURT:  Well, but, also, I'm free even without

11   parental consent to order you do these things.

12        And again, if you are following an order from the Court,

13   you are not going to be held liable.

14        If you think there is something that is so horrible or

15   something like that, you can seek immediate appeal or something

16   like that.

17        I would agree, if you want to seek an immediate appeal,

18   so long that it does not delay the case, if you want the Ninth

19   to rule on something like that, I have no problem.

20             MR. PETROCELLI:  We appreciate that, Your Honor.

21   We're going to think about that, and just to be clear --

22             THE COURT:  With the proviso that I wouldn't stay

23   anything, unless it's something that is like sacrificing

24   children around Christmastime.

25             MR. PETROCELLI:  Your Honor, I made my opening

```
 1    comment about struggling to reconcile COPPA with litigation
 2    demands.
 3          It is not lost on Your Honor that Jones v Google, only
 4    came down a couple of years ago, and indicated that state law
 5    claims, to the extent they are not inconsistent with COPPA, are
 6    not preempted, so there is no really -- no appellate guidance
 7    on the number of issues.
 8          THE COURT:  Certainly, not at the Circuit level.
 9          MR. PETROCELLI:  Excuse me?
10          THE COURT:  It's certainly not at the Circuit level.
11          MR. PETROCELLI:  Yes, not at the Circuit level.
12          Now, on the motion to compel, Your Honor, I have some
13    responses to your questions, but I also really wanted to talk
14    about how this process, providing the user information for the
15    named plaintiffs would work, Your Honor.
16          THE COURT:  What page are you talking about from the
17    tentative?
18          MR. PETROCELLI:  I'm talking about really page 10.
19          I think we have solved -- we solved the problem about
20    the named plaintiffs with respect to the parental consent
21    issue, but here is something which is not clear to me.
22          The plaintiffs know the answers; we do not.
23          THE COURT:  Well.  The shoe is on the other foot
24    now.
25          MR. PETROCELLI:  To the extent, Your Honor, that
```

there are 17 named plaintiffs, not counting the new six ones

from *Robinson*, to the extent that those plaintiffs were at some

point under the age of 13, and perhaps, some are still under

the age of 13, and their counts are active, and have not, for

some reason, been identified by our systems to be deleted,

correct, are you with me?

THE COURT:  Yes.

MR. PETROCELLI:  While we can, sort of, capture

their data as of a certain point in time, if they continue to

use the account and continue to engage on the account, there is

going to be new data being created every day.

THE COURT:  It has to be expected.

MR. PETROCELLI:  We can't be, like, every day --

THE COURT:  Obviously, not every day.  I think,

certainly, when you do a response, the response is going to be

as of that date.

MR. PETROCELLI:  Correct, Your Honor.

THE COURT:  And if they want -- I presume that they

will know as to the named plaintiff what the named plaintiffs

are doing.

If the named plaintiffs -- I presume at that point in

time, they must have parental consent to the extent that their

parents know they are on TikTok at that point in time, so, you

know, if they say they weren't aware, I would be shocked.

And as I have indicated, the prospective release of

information and things of that sort are not going to be the

subject of any liability, because it's pursuant to these

discovery requests.

So if your answer is, well, to what extent should we be

monitoring the named plaintiffs' accounts, you know, I would

say, you certainly have to monitor them when you respond

initially to the initial sets of discovery.

You can ask the plaintiff's counsel at that point in

time, how would you want us to treat the named plaintiff our

monitoring of named plaintiffs contacts with TikTok thereafter.

If they say we would want them to do it on a daily

basis, your response would be, why are you asking us to do this

on a daily basis, but if it's something that is periodic every

60 days to see what happens, then something like that would be

fine.

You guys could talk about this stuff, it's not rocket

science.

MR. PETROCELLI:  I think we have to have a

conversation to that end, because there are a lot of

complications.

THE COURT:  They really do want to have

conversations on this point, just talk to them.

MR. PETROCELLI:  For example, if they are 13 and

over now, we can just freeze those accounts, and they can open

new accounts that are not subject to COPPA.

 1              THE COURT:  Again, you need to talk with them about

 2     this stuff, just whatever you guys agree upon.

 3              I presume, if you have agreed upon it, I will agree upon

 4     it, unless it causes me to do more work.

 5              MR. PETROCELLI:  Now, this is a second point we want

 6     to raise that we should also talk about with the guidance of

 7     your tentative.

 8              That has to do with the 34 random account users that

 9     they want additional data from, Your Honor.

10              And 24 of those, as I understand, the plaintiffs'

11     position are from the 13-plus, the main platform and the other

12     ten are from --

13              THE COURT:  But now that number is going to be

14     changed because of the *Robinson* or the additional five, I

15     presume?

16              MR. PETROCELLI:  We're not talking about them.

17              THE COURT:  You are talking about just the 24

18     additional random ones?

19              MR. PETROCELLI:  Exactly, Your Honor.

20              So Your Honor correctly indicated those would have to be

21     anonymized.

22              What I don't really understand is, assume we use a

23     random number, generate a random generator process to pick

24     these accounts, if some of them are accounts that happened to

25     still be active and under the age of 13, we're going to be in a

**UNITED STATES DISTRICT COURT**

1    situation where we would need parental consent or would want

2    parental consent.

3         If it turns out that they are 13 and over, we don't need

4    parental consent, because they are not covered by COPPA, but

5    there are privacy implications we will have to anonymize that

6    data.

7         What I thought the plaintiffs were asking for was to

8    limit the 24 to non-children, to kids that were 13 and over.

9         THE COURT:  My understanding is that they are

10   random, so some of them will be adults, some of them will be

11   under 13.

12        Let me just ask, is the plaintiff going -- what date is

13   the plaintiff going to be utilizing for purposes of that?

14        Do you want the time the lawsuit was filed, do you want

15   the term as to the time of -- or you want adjustable timing,

16   the 24, how are you going to be choosing the 24?

17        MR. PETROCELLI:  We're going to have to figure out

18   how to randomly select them.

19        THE COURT:  Yes.  Random, but also you have to talk

20   about the parameters of this randomness.

21        In other words, what is the time element.  Also, when

22   you say "random," in other words, you just use the most recent

23   people?

24        MR. PETROCELLI:  Those are all good questions.

25        THE COURT:  That's what I'm saying, you should talk

**UNITED STATES DISTRICT COURT**

```
 1   about it.
 2          MR. PETROCELLI:  We will talk about it.  I don't
 3   have answers to that.
 4          THE COURT:  I don't have answers yet.  Let me put it
 5   this way, you guys will agree upon answers.  If you can't
 6   agree, you will come back to me.
 7          You guys should be talking more to each other, maybe
 8   going out to lunches and dinners.  There are lots of nice
 9   restaurants in California, especially in Los Angeles, although,
10   monumentally expensive.
11          But where you come from, it's expensive too.
12          MR. LOESER:  It is.  We're happy to talk to them.
13          THE COURT:  You will be splitting the bills, by the
14   way, without alcohol.
15          MR. LOESER:  We will take turns.
16          THE COURT:  All right.
17          MR. PETROCELLI:  That's really what I wanted to
18   address, Your Honor.
19          You also asked the question about whether the tentative
20   needed to be redacted in any way.
21          From our standpoint, we don't believe it should be, or
22   needs to be, I should say.
23          You had asked about sealing one of your questions, and
24   we're not asking the way it's currently written, it would need
25   to be sealed.
```

1          THE COURT:  In other words, you are talking about

2    the tentative.

3          At this point in time, let me ask the plaintiff's

4    counsel, is there anything in the tentative that needs to be

5    sealed?

6          MR. KAFKA:  No, Your Honor.

7          THE COURT:  So I can unseal the tentative as of

8    today's date?

9          Okay.  I will do that.

10         Let me just ask, all of the stuff that the defendants

11   are raising, you really aren't raising any points that were

12   argued for purposes of the motion?

13         You wanted clarification, but not really any points --

14         MR. PETROCELLI:  Well, I think parts of the

15   tentative.  I pointed out one example that may be misconstrued

16   to suggest we were trying to do something that was untoward, we

17   are not.

18         THE COURT:  Insofar as you thought it was too

19   negative, specifically against the defendants, don't be so

20   paranoid.  It is what it is.

21         MR. PETROCELLI:  I'm just trying to protect my

22   client's interest, Your Honor.

23         THE COURT:  You are doing a good job, I'm not

24   complaining about that.

25         Although, don't tell them I said that, I don't anybody

```
 1   using my quotes as advertisement.
 2            MR. PETROCELLI:  I am upset that you haven't told
 3   me, I haven't changed in appearance either, Your Honor.  After
 4   all of these years in front of you --
 5            THE COURT:  It was so long ago that you were
 6   initially in front of me, by then you didn't have any white
 7   hair back then.
 8            MR. PETROCELLI:  I did not.
 9            THE COURT:  No, you didn't.  The only reason he has
10   white hair now, is because he is trying to look distinguished.
11            MR. PETROCELLI:  Yes.  Not successfully, apparently.
12            THE COURT:  Who does these days?
13        A couple of things, when you use a distinction between
14   active accounts and being used, what do you mean by that?
15            MR. PETROCELLI:  Accounts that are still up and
16   running, as though they are an adult.
17            THE COURT:  All right.  I understand, in other
18   words, well, that wouldn't be a distinction between active
19   accounts and being used.
20            MR. PETROCELLI:  There are no distinctions for that.
21            THE COURT:  Okay, all right.
22        I presume the plaintiffs are not asking that -- in other
23   words, certainly as to the sampling accounts that they were
24   going to be utilizing, you don't want anything to happen as to
25   those accounts.
```

24

```
1              In other words, those accounts you are picking, there
2     won't be a notification or anything of that sort, or if it
3     turns out it concerns a minor, wouldn't the defendant, at that
4     point in time, under COPPA have a requirement of giving notice
5     to the user's parent, if they are 13 or under?
6              MR. PETROCELLI:  If it turns out one of the random
7     accounts is a minor, we would need parental consent, yes.
8              MR. KAFKA:  So a few different -- first, you asked
9     about notice, I think if it turns out one of them is under 13,
10    then notice would certainly be appropriate.
11             I think I would go back to your original statement here,
12    which is that, although, the plaintiffs agree that -- this was
13    the language that was used -- we agree no potential liability
14    attaches for use of their accounts during the process of
15    preserving and extracting their data.
16             I don't think we needed to sign additional forms.  I
17    understand that we have had this agreement on the record.
18             THE COURT:  No.  Just to make it clear, I have taken
19    the position that if the defendant is acting pursuant to a
20    Court order insofar as discovery is concerned, that they can't
21    be held liable under COPPA for that, because -- for a number of
22    reasons, I have already pretty much explained.
23             It may be different from the position that the defense
24    is taking, that is the position I'm taking.
25             MR. KAFKA:  We agree 100 percent.
```

**UNITED STATES DISTRICT COURT**

```
1          THE COURT:  But then the question becomes just to
2   make sure, however, is that if the parties can agree on some
3   issue that gets around any possible COPPA violation, then, you
4   know, I would be agreeable to that, so therefore, if it's a
5   situation that as to the exemplar sampling, I don't know if you
6   want to call them exemplar sampling, just say the sampling, for
7   24 random samples, if some of them turn out to be minors --
8   accounts that are being utilized by minors, 13 and under, once
9   both sides realized that, what happens to the defendant's
10  obligation at that point in time to notify -- to either remove
11  the account or notify the parents of the existence of the
12  account?
13          MR. KAFKA:  We hear the notification, they should
14  notify them, but there is no requirement for that point for
15  them to get consent for the data to be -- there is no
16  requirements to get additional consent from the parents at that
17  point.
18          As you just said, there is no requirement for consent
19  for data to be preserved in connection with this litigation.
20          THE COURT:  Again, I do not take a position
21  necessarily one way or the other on the point, I don't think
22  there is liability upon the defendants, but these are the
23  things you guys should talk about, because either -- if your
24  position is that once they give notice, but that's all they
25  need to do, and whatever happens thereafter, there is not going
```

1  to be prospective liability; that is fine.

2       I mean, I'm willing to take that responsibility on my

3  part, because I'm going to be ordering it.

4       But if it's a situation where you also would agree that,

5  for example, they could close the account, I'm not saying they

6  have to, I'm not saying you have to agree to that, but this is

7  stuff you should talk about so there is no problem later on

8  with what is going on.

9            MR. KAFKA:  Let me make one point quickly on the

10  account point.

11       Our position on the accounts is as far as they should be

12  taken down, they should be taken down, but only after it's been

13  verified that all of the data connected with the account can be

14  preserved in the same format, so nothing will be lost.

15       One thing they had told us was that, well, if we do take

16  down an account, some of the data will be lost.

17            THE COURT:  You guys should talk about it.  Once you

18  agree on it, that is probably fine, as long as you can reach an

19  agreement.

20       If you can't reach an agreement, then come back to me on

21  the points you can agree, and I will resolve.

22       This is something I want you to talk about.

23       The problem is once the stuff is done, if you can't go

24  backward in try to pick up stuff that has already been deleted

25  or something of that sort, this is something I want you guys to

1    talk about.

2           You guys should be spending a lot more meals together so

3    you can agree on this stuff, okay?

4           MR. PETROCELLI:  Well, what I would suggest, Your

5    Honor, is that we be ordered to meet and confer on all of this.

6           THE COURT:  You have already been ordered to meet

7    and confer.

8           MR. PETROCELLI:  Well, reorder it, and then we will

9    give you the answers to all of this, and the program in the

10   next day or two.

11          THE COURT:  All right.  Again, I said by the end of

12   this week, you are going to be meeting and conferring on a lot

13   of this stuff anyway.

14          So -- also, let me ask this, we talked about addressing

15   the anonymization of the random accounts.

16          I was trying to find what other Courts have been doing

17   in this area, and I didn't see anything, in particular.

18          For example, I tried to contact the Judge, I think,

19   Rogers, what she is doing in the minors case up there, and I

20   don't think she had an issue that is kind of like this one,

21   which I'm surprised, I thought she probably would.

22          MR. PETROCELLI:  Virtually, none of those individual

23   plaintiffs is under 13.

24          There may be just a few, Your Honor.

25          THE COURT:  Okay.  Well, even if there is a few, one

```
 1    would have thought somebody would have raised it.

 2              MR. PETROCELLI:  It has not come up.  We have

 3    checked.

 4              THE COURT:  Does anybody know of any other case that

 5    somebody is --

 6              MR. KAFKA:  Not COPPA-related, but there have

 7    privacy litigation.

 8         I'm involved in a privacy case where there have been

 9    exemplars provided, not of the named plaintiffs.

10         And the way it works in that case, is that just like

11    here, a lot of the data saved in hive, and what happens is the

12    identifiers are hashed.

13         What that means, "hashed," instead of having, say, the

14    user name, the email address, the phone number, a random number

15    letter generated.

16              THE COURT:  I have had that too, that is not

17    uncommon in privacy actions, in general.

18         That is pretty much the standard approach.

19         But the problem is with COPPA, then the problem is as

20    to, you know, what is supposed to happen, because it is a

21    minor.

22         Maybe the answer is we just treat it just like any other

23    privacy information, and just do this hashing you are talking

24    about.

25              Again, I want to find out what other Courts are doing in
```

```
 1   situations that are similar to ours.
 2            MR. KAFKA:  I do think the privacy litigation is
 3   similar, because the idea is by adding the hashing to anonymize
 4   so you know some information is taken from someone, but you
 5   don't know who it is.
 6            THE COURT:  That is fine.  Obviously, there is a
 7   master list that people will know.
 8        This is stuff you are going to talk about to see if you
 9   can resolve.
10        Let me ask defense counsel, what else do you want to
11   argue?
12            MR. PETROCELLI:  That's it, Your Honor.
13            THE COURT:  Okay.  Let me hear from the plaintiffs,
14   anything you want to argue?
15            MR. KAFKA:  We just encourage the Court to adopt the
16   tentative.  Of course, after it's adopted, we would be happy to
17   meet and confer, but I think that the papers before the Court,
18   reflect that there was a lengthy meet and confer process, and
19   the Court's guidance here is very helpful.
20            MR. PETROCELLI:  I understand, Your Honor.  You are
21   also requiring that parental consents be provided.
22            THE COURT:  Certainly for the named plaintiffs, you
23   have to provide them.
24            MR. KAFKA:  Are we talking about our -- the
25   plaintiffs' parental consent forms, or are we talking about --
```

1           THE COURT:  Don't spend a lot of time trying to

2   force one form on the other.

3       I mean, this is not rocket science, again.

4           MR. KAFKA:  We're going to intend to --

5           THE COURT:  If you can't agree, you will give me a

6   single document, which has the language that both sides agree

7   upon in one font, and the language the plaintiff wants in

8   another font, the ones that the defense wants on another font,

9   single document, and I will resolve it.

10          MR. PETROCELLI:  I'm sure we can work it out, Your

11  Honor.

12          MR. LOESER:  Just so we're clear what the guidance

13  is, Your Honor, I think what you made clear in the conversation

14  we have had, and what you indicate in your tentative is the

15  parental consent, which is a bit of a loaded term, because

16  there is a COPPA parental consent, and there is just the

17  consent that we're talking about, which is giving them

18  permission to preserve this data and not face any liability for

19  doing so --

20          MR. PETROCELLI:  And disclose it.

21          MR. LOESER:  -- and disclose it.  It's on the

22  record.  We are providing it.

23          MR. PETROCELLI:  It's not on the record, the

24  parental consent.

25          THE COURT:  Don't argue.  Let me put it this way, it

```
1    should be as complete as possible; in other words, if it folds

2    in some COPPA stuff in addition of the regular notice type

3    stuff, if there is no problem with it, just do it.

4                MR. LOESER:  Yes.  Our only reservation -- it's not

5    worth rehashing.  We will talk about it, we will get you the

6    agreement that I think Your Honor has indicated that is

7    necessary, so they don't face liability for doing what we are

8    asking them what to do, which makes all the sense in the world.

9                THE COURT:  Anything else on the motion?

10               MR. PETROCELLI:  That's it, Your Honor.

11               THE COURT:  We will adopt the tentative as the

12   final, subject, if either side has further good faith questions

13   as to meanings as to portions of it, you can raise it, if you

14   come to some language later on.

15          I will adopt it at this time, the tentative as a final,

16   it will not be subject to a sealing order at this point.

17          All right.  At this stage, I am looking at now, I guess,

18   it was the -- you don't have it in front of you, I should have

19   perhaps told you I was going to do this, but I started doing it

20   over the weekend anyway.

21          The tutorial you gave me on July 14th, at this time, I'm

22   primarily looking at the information that was provided in the

23   defendant's slides.

24                      (This portion is sealed.)

25                            *  *  *
```

32

1                    **CERTIFICATE OF OFFICIAL REPORTER**

2

3    COUNTY OF LOS ANGELES    )
                              )
4    STATE OF CALIFORNIA      )

5

6            I, TERRI A. HOURIGAN, Federal Official Realtime

7    Court Reporter, in and for the United States District Court for

8    the Central District of California, do hereby certify that

9    pursuant to Section 753, Title 28, United States Code that the

10   foregoing is a true and correct transcript of the

11   stenographically reported proceedings held in the

12   above-entitled matter and that the transcript page format is in

13   conformance with the regulations of the judicial conference of

14   the United States.

15

16   Date: 10th day of November, 2025.

17

18

19                          /s/ TERRI A. HOURIGAN
                     _____
20                   TERRI A. HOURIGAN, CSR NO. 3838, RPR, CRR
                              Federal Court Reporter
21

22

23

24

25

**UNITED STATES DISTRICT COURT**

## /

**/s** [1] - 32:19

## 1

**10** [3] - 1:15, 4:1, 16:18
**100** [1] - 24:25
**10005** [1] - 2:14
**10th** [1] - 32:16
**1100** [1] - 2:16
**1201** [1] - 2:7
**13** [11] - 17:3, 17:4, 18:23, 19:25, 20:3, 20:8, 20:11, 24:5, 24:9, 25:8, 27:23
**13-plus** [1] - 19:11
**14th** [2] - 2:13, 31:21
**15th** [1] - 2:19
**1625** [1] - 3:8
**17** [1] - 17:1

## 2

**20001** [1] - 3:16
**20005** [1] - 2:17
**20006** [1] - 3:9
**2025** [3] - 1:15, 4:1, 32:16
**213** [1] - 1:24
**24** [6] - 19:10, 19:17, 20:8, 20:16, 25:7
**24-6535-GW** [1] - 1:10
**25-ML-3144-GW** [1] - 1:6
**28** [1] - 32:9

## 3

**301** [1] - 2:10
**34** [1] - 19:8
**3400** [1] - 2:7
**350** [1] - 1:23
**3838** [2] - 21:4, 32:20
**3rd** [1] - 2:7

## 4

**4311** [1] - 1:23

## 6

**60** [1] - 18:14

## 7

**7** [1] - 14:14
**753** [1] - 32:9

## 8

**800** [1] - 2:16
**801** [1] - 2:10
**88** [1] - 2:13
**894-2849** [1] - 1:24

## 9

**90012** [1] - 1:24
**93101** [1] - 2:10
**94111** [1] - 3:6
**98101** [2] - 2:7
**9:05** [2] - 1:16, 4:2

## A

**A.A** [1] - 2:3
**A.B** [1] - 2:3
**A.C** [1] - 2:3
**a.m** [1] - 4:2
**A.M** [1] - 1:16
**Abby** [1] - 5:14
**above-entitled** [1] - 32:12
**absolutely** [1] - 11:6
**accompanied** [1] - 11:10
**accomplished** [1] - 12:5
**account** [2] - 17:10, 19:8, 25:11, 25:12, 26:5, 26:10, 26:13, 26:16
**accounts** [16] - 18:5, 18:24, 18:25, 19:24, 23:14, 23:15, 23:19, 23:23, 23:25, 24:1, 24:7, 24:14, 25:8, 26:11, 27:15
**accurately** [1] - 10:5
**acting** [1] - 24:19
**actions** [1] - 28:17
**active** [4] - 17:4, 19:25, 23:14, 23:18
**actual** [1] - 7:10
**add** [1] - 14:3
**added** [1] - 13:14
**adding** [1] - 29:3
**addition** [1] - 31:2
**additional** [7] - 6:6, 14:3, 19:9, 19:14, 19:18, 24:16, 25:16
**address** [2] - 21:18, 28:14
**addressing** [1] - 27:14
**adjustable** [1] - 20:15
**adopt** [3] - 29:15,
31:11, 31:15
**adopted** [1] - 29:16
**adult** [1] - 23:16
**adults** [1] - 20:10
**advertisement** [1] - 23:1
**age** [3] - 17:3, 17:4, 19:25
**ago** [3] - 11:22, 16:4, 23:5
**agree** [30] - 7:20, 8:3, 8:9, 8:12, 8:16, 9:7, 10:25, 11:1, 11:2, 11:6, 11:16, 11:25, 12:3, 12:10, 15:17, 19:2, 19:3, 21:5, 21:6, 24:12, 24:13, 24:25, 25:2, 26:4, 26:6, 26:18, 26:21, 27:3, 30:5, 30:6
**agreeable** [1] - 25:4
**agreed** [2] - 11:13, 19:3
**agreement** [7] - 7:7, 9:13, 12:2, 24:17, 26:19, 26:20, 31:6
**al** [1] - 1:11
**alcohol** [1] - 21:14
**amended** [1] - 13:12
**AMERICA** [2] - 1:9, 3:12
**analysis** [1] - 6:13
**ANGELA** [1] - 2:3
**Angeles** [1] - 21:9
**ANGELES** [4] - 1:16, 1:24, 4:1, 32:3
**anonymization** [1] - 27:15
**anonymize** [2] - 20:5, 29:3
**anonymized** [1] - 19:21
**answer** [6] - 6:3, 6:4, 6:5, 8:23, 18:4, 28:22
**answers** [5] - 16:22, 21:3, 21:4, 21:5, 27:9
**anyway** [2] - 27:13, 31:20
**appeal** [2] - 15:15, 15:17
**appearance** [1] - 23:3
**appearances** [1] - 4:7
**APPEARANCES** [2] - 2:1, 3:1
**appellate** [1] - 16:6
**applied** [1] - 7:24
**apply** [3] - 8:1, 8:2, 14:15
**applying** [2] - 8:19, 13:22
**appreciate** [3] - 10:14, 10:24, 15:20
**apprise** [1] - 5:1
**approach** [1] - 28:18
**appropriate** [1] - 24:10
**appropriately** [1] - 13:14
**area** [1] - 27:17
**argue** [5] - 5:21, 6:9, 29:11, 29:14, 30:25
**argued** [1] - 22:12
**arguments** [1] - 6:12
**assume** [1] - 19:22
**attaches** [1] - 24:14
**attempting** [1] - 11:2
**Attorney** [5] - 2:9, 2:13, 2:16, 2:19, 3:8
**attorney** [1] - 4:19
**ATTORNEY'S** [1] - 3:13
**Attorneys** [3] - 2:6, 3:5, 3:15
**available** [1] - 14:20
**Ave** [1] - 2:16
**Avenue** [1] - 2:7
**aware** [1] - 17:24

## B

**backward** [1] - 26:24
**bad** [1] - 15:2
**Barbara** [1] - 2:10
**based** [1] - 6:2
**basis** [2] - 18:12, 18:13
**becomes** [1] - 25:1
**better** [4] - 9:21, 9:22, 9:24, 9:25
**between** [2] - 23:13, 23:18
**bills** [1] - 21:13
**bit** [1] - 30:15
**blaming** [1] - 10:7
**BLOCH** [2] - 2:18, 5:3
**Bloch** [1] - 5:3
**brand** [1] - 12:23
**BRODY** [2] - 3:7, 5:13
**Brody** [1] - 5:13
**BY** [8] - 2:5, 2:9, 2:12, 2:15, 2:18, 3:4, 3:7, 3:14
**BYTEDANCE** [1] - 1:11

## C

**California** [4] - 2:10, 3:6, 21:9, 32:8
**CALIFORNIA** [5] - 1:2, 1:16, 1:24, 4:1, 32:4
**capture** [1] - 17:8
**Case** [1] - 1:5
**case** [9] - 12:25, 13:7, 13:21, 14:15, 15:18, 27:19, 28:4, 28:8, 28:10
**cases** [2] - 13:21, 14:1
**causes** [1] - 19:4
**CCRR** [1] - 1:22
**Center** [1] - 3:5
**Central** [1] - 32:8
**CENTRAL** [2] - 1:2
**certain** [1] - 17:9
**certainly** [12] - 4:6, 8:9, 8:19, 9:12, 9:20, 16:8, 16:10, 17:15, 18:6, 23:23, 24:10, 29:22
**CERTIFICATE** [1] - 32:1
**certify** [1] - 32:8
**cetera** [1] - 10:19
**challenged** [1] - 6:22
**changed** [2] - 19:14, 23:3
**charge** [1] - 13:20
**checked** [1] - 28:3
**children** [2] - 15:24, 20:8
**choosing** [1] - 20:16
**Christmastime** [1] - 15:24
**CHRISTOPHER** [1] - 2:9
**Circuit** [3] - 16:8, 16:10, 16:11
**CIVIL** [1] - 3:14
**claims** [1] - 16:5
**clarification** [1] - 22:13
**clarify** [2] - 8:11, 14:21
**clear** [10] - 7:18, 7:23, 8:19, 9:1, 15:7, 15:21, 16:24, 24:18, 30:12, 30:13
**client's** [1] - 22:22
**close** [1] - 26:5
**Code** [1] - 32:9
**COHEN** [2] - 2:12, 2:15
**comment** [2] - 12:17,

16:1
  comments [2] - 6:15, 6:18
  company [1] - 5:11
  COMPEL [1] - 1:15
  compel [2] - 5:17, 16:12
  complaining [1] - 22:24
  complaint [1] - 13:12
  complete [2] - 9:13, 31:1
  compliance [1] - 6:25
  complicated [2] - 10:9, 10:10
  complications [1] - 18:20
  concept [2] - 9:4, 9:5
  concerned [1] - 24:20
  concerns [1] - 24:3
  conclude [1] - 13:13
  conduct [1] - 14:15
  confer [4] - 27:5, 27:7, 29:17, 29:18
  CONFERENCE [1] - 1:14
  conference [1] - 32:13
  conferring [1] - 27:12
  conformance [1] - 32:13
  connected [1] - 26:13
  Connecticut [1] - 2:20
  connection [1] - 25:19
  consent [27] - 7:13, 7:17, 7:18, 7:20, 7:23, 8:9, 8:13, 11:3, 12:21, 14:19, 15:9, 15:11, 16:20, 17:22, 20:1, 20:2, 20:4, 24:7, 25:15, 25:16, 25:18, 29:25, 30:15, 30:16, 30:17, 30:24
  consents [3] - 13:15, 13:16, 29:21
  consists [1] - 12:9
  constantly [1] - 10:13
  Cont [1] - 3:1
  contact [1] - 27:18
  contacts [1] - 18:10
  continue [2] - 17:9, 17:10
  continued [1] - 9:8

  conversation [2] - 18:19, 30:13
  conversations [1] - 18:22
  COPPA [14] - 7:1, 7:9, 14:16, 16:1, 16:5, 18:25, 20:4, 24:4, 24:21, 25:3, 28:6, 28:19, 30:16, 31:2
  COPPA-related [1] - 28:6
  correct [4] - 8:7, 17:6, 17:17, 32:10
  correctly [1] - 19:20
  COUNSEL [1] - 2:1
  counsel [11] - 4:8, 7:12, 7:14, 7:16, 9:6, 13:1, 13:6, 14:12, 18:8, 22:4, 29:10
  counting [1] - 17:1
  counts [1] - 17:4
  COUNTY [1] - 32:3
  couple [2] - 16:4, 23:13
  course [1] - 29:16
  COURT [82] - 1:1, 1:23, 4:5, 4:13, 4:16, 4:21, 4:25, 5:2, 5:5, 5:9, 5:15, 5:21, 6:17, 7:19, 8:1, 8:6, 8:21, 9:3, 9:15, 9:21, 9:23, 10:3, 10:7, 10:17, 11:8, 11:13, 11:16, 11:24, 12:4, 12:17, 13:3, 13:6, 13:16, 13:25, 14:5, 14:22, 15:10, 15:22, 16:8, 16:10, 16:16, 16:23, 17:7, 17:12, 17:14, 17:18, 18:21, 19:1, 19:13, 19:17, 20:9, 20:19, 20:25, 21:4, 21:13, 21:16, 22:1, 22:7, 22:18, 22:23, 23:5, 23:9, 23:12, 23:17, 23:21, 24:18, 25:1, 25:20, 26:17, 27:6, 27:11, 27:25, 28:4, 28:16, 29:6, 29:13, 29:22, 30:1, 30:5, 30:25, 31:9, 31:11
  court [1] - 13:4
  Court [8] - 15:7, 15:12, 24:20, 29:15, 29:17, 32:7, 32:20
  Court's [2] - 6:25, 29:19
  COURTROOM [2] - 4:15, 4:22

  Courts [2] - 27:16, 28:25
  covered [1] - 20:4
  created [1] - 17:11
  CRR [1] - 32:20
  CSR [2] - 1:22, 32:20
  CV [1] - 1:10

### D

  daily [2] - 18:11, 18:13
  DANIEL [1] - 3:4
  Daniel [1] - 5:7
  data [17] - 5:17, 7:3, 7:5, 7:8, 7:11, 8:13, 17:9, 17:11, 19:9, 20:6, 24:15, 25:15, 25:19, 26:13, 26:16, 28:11, 30:18
  DATA [1] - 1:15
  date [3] - 17:16, 20:12, 22:8
  Date [1] - 32:16
  DAVID [1] - 3:4
  days [2] - 18:14, 23:12
  DC [3] - 2:17, 3:9, 3:16
  declining [1] - 7:16
  defendant [2] - 24:3, 24:19
  Defendant [1] - 1:12
  DEFENDANT [2] - 3:2, 3:12
  defendant's [3] - 5:16, 25:9, 31:23
  defendants [8] - 5:8, 6:11, 10:16, 10:17, 14:15, 22:10, 22:19, 25:22
  DEFENDANTS' [1] - 1:14
  defense [8] - 5:2, 5:5, 12:11, 12:12, 14:12, 24:23, 29:10, 30:8
  delay [1] - 15:18
  deleted [2] - 17:5, 26:24
  demands [2] - 6:23, 16:2
  DEPARTMENT [1] - 3:14
  DEPUTY [2] - 4:15, 4:22
  DEREK [1] - 2:5
  Derek [2] - 4:9, 10:4
  described [1] - 10:5
  dial [3] - 4:20, 4:21,

  5:4
  different [3] - 12:11, 24:8, 24:23
  dilemma [1] - 8:5
  dinners [1] - 21:8
  directed [1] - 14:23
  disagree [1] - 13:24
  disagreeing [2] - 12:11, 12:12
  disagreement [2] - 14:18, 15:4
  disclose [2] - 30:20, 30:21
  disclosing [2] - 11:8, 11:9
  disclosure [1] - 7:3
  disclosures [1] - 9:9
  discovery [4] - 11:23, 18:3, 18:7, 24:20
  discuss [1] - 10:5
  discussed [2] - 9:17, 11:11
  discussion [2] - 10:25, 14:22
  distinction [2] - 23:13, 23:18
  distinctions [1] - 23:20
  distinguished [1] - 23:10
  District [2] - 32:7, 32:8
  DISTRICT [3] - 1:1, 1:2, 1:3
  DIVISION [2] - 1:2, 3:14
  document [3] - 12:9, 30:6, 30:9
  DOJ [2] - 7:7
  done [5] - 9:19, 12:6, 26:23
  down [5] - 9:16, 16:4, 26:12, 26:16
  Drew [1] - 5:13
  during [1] - 24:14

### E

  either [5] - 10:7, 23:3, 25:10, 25:23, 31:12
  elaborate [1] - 7:22
  element [1] - 20:21
  email [1] - 28:14
  Embarcadero [1] - 3:5
  emphasis [1] - 15:6
  encourage [1] - 29:15

  end [5] - 12:5, 12:6, 12:15, 18:19, 27:11
  ended [1] - 7:16
  engage [1] - 17:10
  entirely [1] - 10:17
  entitled [2] - 32:12
  ERIC [1] - 2:12
  Eric [1] - 4:11
  especially [1] - 21:9
  et [2] - 1:11, 10:19
  evidence [1] - 11:7
  exactly [2] - 11:1, 19:19
  example [5] - 7:4, 18:23, 22:15, 26:5, 27:18
  Excuse [1] - 16:9
  EXEMPLAR [1] - 1:15
  exemplar [3] - 5:17, 25:5, 25:6
  exemplars [2] - 7:11, 28:9
  existence [1] - 25:11
  expect [3] - 6:3, 12:4, 13:2
  expected [2] - 14:7, 17:12
  expensive [2] - 21:10, 21:11
  explained [1] - 24:22
  extensive [1] - 6:21
  extent [6] - 10:18, 16:5, 16:25, 17:2, 17:22, 18:4
  extracting [1] - 24:15
  Eye [1] - 3:8

### F

  face [2] - 30:18, 31:7
  faith [2] - 15:2, 31:12
  far [2] - 6:21, 26:11
  FAUCETT [1] - 2:3
  Federal [2] - 32:6, 32:20
  FEDERAL [1] - 1:23
  federal [1] - 13:3
  few [4] - 8:11, 24:8, 27:24, 27:25
  figure [3] - 9:18, 10:11, 20:17
  file [1] - 13:13
  filed [3] - 13:3, 13:21, 20:14
  filing [1] - 14:10
  final [2] - 31:12, 31:15
  finalizing [1] - 15:8
  fine [4] - 18:15, 26:1,

26:18, 29:6
**first** [4] - 4:8, 8:12, 10:15, 24:8
**FIRST** [1] - 1:23
**five** [2] - 12:24, 19:14
**flew** [1] - 4:20
**Floor** [2] - 2:13, 2:19
**fly** [1] - 4:17
**fold** [1] - 13:7
**folds** [1] - 31:1
**following** [1] - 15:12
**font** [6] - 12:10, 12:11, 12:13, 30:7, 30:8
**foot** [1] - 16:23
**FOR** [4] - 1:14, 2:3, 3:2, 3:12
**force** [1] - 30:2
**foregoing** [1] - 32:10
**form** [7] - 8:12, 8:16, 8:17, 8:20, 9:1, 9:3, 30:2
**FORMALA** [1] - 5:14
**Formala** [1] - 5:14
**format** [2] - 26:14, 32:12
**forms** [2] - 24:16, 29:25
**forth** [1] - 7:15
**forward** [1] - 12:3
**Francisco** [1] - 3:6
**free** [1] - 15:10
**freeze** [1] - 18:24
**Friday** [1] - 12:22
**front** [3] - 23:4, 23:6, 31:18
**future** [2] - 9:24, 9:25

### G

**Garden** [1] - 2:10
**general** [1] - 28:17
**generate** [1] - 19:23
**generated** [1] - 28:15
**generator** [1] - 19:23
**GEORGE** [1] - 1:3
**given** [2] - 6:21, 14:20
**GOLUB** [1] - 2:18
**Golub** [1] - 5:4
**Google** [1] - 16:3
**gratuitous** [1] - 12:17
**great** [1] - 6:5
**growing** [1] - 10:13
**guess** [2] - 14:9, 31:17
**guidance** [4] - 16:6, 19:6, 29:19, 30:12

**guys** [18] - 4:25, 8:8, 8:21, 8:25, 9:16, 9:24, 10:23, 12:4, 12:6, 12:10, 18:16, 19:2, 21:5, 21:7, 25:23, 26:17, 26:25, 27:2

### H

**hair** [2] - 23:7, 23:10
**half** [1] - 10:22
**happy** [2] - 21:12, 29:16
**hard** [2] - 10:16, 12:2
**hashed** [2] - 28:12, 28:13
**hashing** [2] - 28:23, 29:3
**head** [1] - 7:2
**hear** [4] - 8:8, 10:24, 25:13, 29:13
**heard** [1] - 13:1
**hearing** [1] - 13:11
**held** [3] - 15:13, 24:21, 32:11
**helpful** [1] - 29:19
**hereby** [1] - 32:8
**high** [1] - 10:19
**high-powered** [1] - 10:19
**history** [1] - 7:16
**hive** [1] - 28:11
**hold** [1] - 7:8
**holiday** [1] - 12:18
**home** [2] - 4:18, 10:2
**Honor** [43] - 4:10, 4:12, 4:23, 5:3, 5:7, 5:12, 5:13, 5:20, 6:10, 6:16, 6:20, 6:23, 7:4, 7:21, 8:5, 9:14, 9:20, 10:1, 12:19, 14:13, 14:14, 15:20, 15:25, 16:3, 16:12, 16:15, 16:25, 17:17, 19:9, 19:19, 19:20, 21:18, 22:6, 22:22, 23:3, 27:5, 27:24, 29:12, 29:20, 30:11, 30:13, 31:6, 31:10
**Honor's** [1] - 6:14
**HONORABLE** [1] - 1:3
**horrible** [1] - 15:14
**HOURIGAN** [4] - 1:22, 32:6, 32:19, 32:20

### I

**IANNACCI** [1] - 2:6

**idea** [3] - 7:10, 14:16, 29:3
**identified** [1] - 17:5
**identifiers** [1] - 28:12
**imagine** [1] - 8:25
**immediate** [2] - 15:15, 15:17
**immunizes** [1] - 11:3
**implications** [1] - 20:5
**IN** [1] - 1:5
**INC** [1] - 1:5
**include** [1] - 13:12
**including** [2] - 6:24, 6:25
**inconsistent** [1] - 16:5
**indeed** [1] - 6:23
**indicate** [2] - 5:23, 30:14
**indicated** [5] - 14:7, 16:4, 17:25, 19:20, 31:6
**indicating** [2] - 10:8, 15:4
**individual** [1] - 27:22
**information** [8] - 9:7, 14:20, 15:9, 16:14, 18:1, 28:23, 29:4, 31:22
**initial** [1] - 18:7
**inside** [1] - 5:11
**insofar** [4] - 9:7, 9:8, 22:18, 24:20
**instead** [1] - 28:13
**intend** [1] - 30:4
**intended** [1] - 7:24
**intending** [1] - 14:14
**interest** [1] - 22:22
**interpret** [1] - 15:3
**interpretation** [1] - 14:16
**interpreting** [1] - 14:25
**involved** [1] - 28:8
**issue** [5] - 10:2, 14:23, 16:21, 25:3, 27:20
**issued** [1] - 5:18
**issues** [5] - 6:22, 8:17, 10:8, 10:10, 16:7

### J

**JENNA** [1] - 2:15
**job** [1] - 22:23
**JODY** [1] - 2:3
**Jones** [1] - 16:3
**JR** [1] - 2:3

**Judge** [1] - 27:18
**JUDGE** [1] - 1:3
**judicial** [1] - 32:13
**July** [1] - 31:21
**JUSTICE** [1] - 3:14

### K

**KAFKA** [21] - 2:12, 4:11, 4:19, 5:1, 8:11, 9:1, 9:13, 9:20, 9:22, 11:21, 12:3, 22:6, 24:8, 24:25, 25:13, 26:9, 28:6, 29:2, 29:15, 29:24, 30:4
**Kafka** [1] - 4:11
**KELLER** [2] - 2:5, 2:8
**kids** [1] - 20:8
**kind** [2] - 14:25, 27:20
**knowledge** [1] - 14:2

### L

**LAMARTINE** [1] - 2:3
**Landmark** [1] - 2:19
**language** [6] - 14:24, 15:1, 24:13, 30:6, 30:7, 31:14
**last** [2] - 4:5, 13:11
**law** [1] - 16:4
**Law** [8] - 2:6, 2:9, 2:13, 2:16, 2:19, 3:5, 3:8, 3:15
**lawsuit** [2] - 12:23, 20:14
**least** [3] - 4:5, 4:6, 9:6
**legal** [1] - 6:12
**lengthy** [1] - 29:18
**letter** [1] - 28:15
**level** [3] - 16:8, 16:10, 16:11
**liability** [11] - 7:25, 9:8, 9:10, 11:3, 14:17, 18:2, 24:13, 25:22, 26:1, 30:18, 31:7
**liable** [4] - 7:8, 11:6, 15:13, 24:21
**likewise** [1] - 7:10
**lily** [1] - 12:20
**limit** [1] - 20:8
**lined** [1] - 12:8
**list** [1] - 29:7
**litigation** [8] - 6:24, 8:14, 10:15, 10:19, 16:1, 25:19, 28:7, 29:2
**LITIGATION** [1] - 1:5

**LLP** [5] - 2:5, 2:8, 2:18, 3:3, 3:7
**loaded** [1] - 30:15
**Loeser** [2] - 4:9, 10:4
**LOESER** [15] - 2:5, 4:9, 4:18, 10:4, 10:14, 10:24, 11:9, 13:9, 13:20, 14:2, 21:12, 21:15, 30:12, 30:21, 31:4
**look** [2] - 12:14, 23:10
**looked** [1] - 6:1
**looking** [2] - 31:17, 31:22
**Los** [1] - 21:9
**LOS** [4] - 1:16, 1:24, 4:1, 32:3
**lost** [3] - 16:3, 26:14, 26:16
**LTD** [1] - 1:11
**lunches** [1] - 21:8

### M

**main** [2] - 9:6, 19:11
**MARCUS** [1] - 3:14
**Marcus** [1] - 4:23
**master** [1] - 29:7
**materials** [1] - 6:6
**Matt** [1] - 5:12
**matter** [5] - 4:6, 7:8, 12:15, 13:8, 32:12
**MATTHEW** [1] - 3:4
**meals** [1] - 27:2
**mean** [4] - 10:19, 23:14, 26:2, 30:3
**meanings** [1] - 31:13
**means** [1] - 28:13
**meet** [4] - 27:5, 27:6, 29:17, 29:18
**meeting** [1] - 27:12
**mentioned** [1] - 12:22
**MILSTEIN** [2] - 2:12, 2:15
**minor** [3] - 24:3, 24:7, 28:21
**MINOR** [1] - 1:5
**minors** [4] - 11:19, 25:7, 25:8, 27:19
**minute** [1] - 10:22
**minutes** [1] - 12:2
**misconstrued** [1] - 22:15
**misunderstanding** [1] - 7:23
**Monday** [1] - 1:15
**monitor** [1] - 18:6
**monitoring** [2] -

18:5, 18:10
**months** [1] - 11:22
**monumentally** [1] - 21:10
**morning** [3] - 4:10, 4:12, 5:7
**most** [1] - 20:22
**MOTION** [2] - 1:14, 1:15
**motion** [5] - 5:16, 16:12, 22:12, 31:9
**motions** [2] - 5:24, 6:8
**move** [1] - 10:4
**moved** [1] - 7:2
**MR** [89] - 4:9, 4:11, 4:18, 4:19, 4:23, 5:1, 5:3, 5:7, 5:10, 5:12, 5:13, 5:20, 6:10, 6:19, 7:21, 8:4, 8:11, 9:1, 9:13, 9:20, 9:22, 10:1, 10:4, 10:14, 10:24, 11:9, 11:15, 11:21, 12:3, 12:16, 12:19, 13:5, 13:9, 13:15, 13:20, 14:2, 14:13, 15:7, 15:20, 15:25, 16:9, 16:11, 16:18, 16:25, 17:8, 17:13, 17:17, 18:18, 18:23, 19:5, 19:16, 19:19, 20:17, 20:24, 21:2, 21:12, 21:15, 21:17, 22:6, 22:14, 22:21, 23:2, 23:8, 23:11, 23:15, 23:20, 24:6, 24:8, 24:25, 25:13, 26:9, 27:4, 27:8, 27:22, 28:2, 28:6, 29:2, 29:12, 29:15, 29:20, 29:24, 30:4, 30:10, 30:12, 30:20, 30:21, 30:23, 31:4, 31:10
**MS** [1] - 5:14
**must** [1] - 17:22
**MYERS** [2] - 3:3, 3:7

**N**

**name** [1] - 28:14
**named** [16] - 8:10, 12:21, 12:23, 13:18, 14:8, 16:15, 16:20, 17:1, 17:19, 17:21, 18:5, 18:9, 18:10, 28:9, 29:22
**necessarily** [2] - 6:3, 25:21
**necessary** [2] - 8:15,

31:7
**need** [8] - 7:15, 12:20, 19:1, 20:1, 20:3, 21:24, 24:7, 25:25
**needed** [2] - 21:20, 24:16
**needs** [2] - 21:22, 22:4
**negative** [1] - 22:19
**Nelson** [2] - 3:10, 5:10
**new** [8] - 12:23, 13:4, 14:1, 14:5, 14:8, 17:1, 17:11, 18:25
**New** [3] - 2:14, 2:16
**next** [1] - 27:10
**NICANDRO** [1] - 2:6
**nice** [1] - 21:8
**Ninth** [1] - 15:18
**NO** [2] - 1:22, 32:20
**non** [1] - 20:8
**non-children** [1] - 20:8
**none** [1] - 27:22
**nothing** [1] - 26:14
**notice** [5] - 24:4, 24:9, 24:10, 25:24, 31:2
**notification** [2] - 24:2, 25:13
**notify** [2] - 25:10, 25:11, 25:14
**notwithstanding** [1] - 7:9
**NOVEMBER** [1] - 4:1
**November** [2] - 1:15, 32:16
**number** [9] - 4:22, 8:17, 9:2, 16:7, 19:13, 19:23, 24:21, 28:14
**NW** [2] - 2:16, 3:8

**O**

**O'MELVENY** [2] - 3:3, 3:7
**obligation** [1] - 25:10
**obligations** [1] - 6:24
**obvious** [1] - 8:24
**obviously** [10] - 6:3, 6:5, 9:5, 9:10, 9:11, 13:16, 14:5, 14:6, 17:14, 29:6
**occurred** [1] - 5:1
**OF** [10] - 1:2, 1:9, 1:13, 1:15, 2:1, 3:12, 3:14, 32:1, 32:3, 32:4
**offered** [2] - 11:10, 11:11

**OFFICE** [1] - 3:13
**Official** [1] - 32:6
**OFFICIAL** [2] - 1:23, 32:1
**once** [5] - 7:10, 25:8, 25:24, 26:17, 26:23
**One** [1] - 2:19
**one** [15] - 4:19, 7:6, 12:10, 13:4, 21:23, 22:15, 24:6, 24:9, 25:21, 26:9, 26:15, 27:20, 27:25, 30:2, 30:7
**ones** [5] - 12:10, 12:12, 17:1, 19:18, 30:8
**open** [1] - 18:24
**opened** [1] - 11:23
**opening** [1] - 15:25
**operations** [2] - 5:25, 11:19
**ORDER** [1] - 1:14
**order** [11] - 5:16, 11:13, 11:17, 11:21, 12:1, 12:5, 12:9, 15:11, 15:12, 24:20, 31:16
**ordered** [3] - 7:4, 27:5, 27:6
**ordering** [1] - 26:3
**orders** [1] - 6:25
**original** [1] - 24:11
**own** [1] - 14:4

**P**

**page** [5] - 6:18, 14:14, 16:16, 16:18, 32:12
**papers** [1] - 29:17
**parameters** [1] - 20:20
**paranoid** [1] - 22:20
**parent** [1] - 24:5
**parental** [24] - 7:12, 7:17, 7:18, 7:20, 7:23, 8:9, 12:21, 13:15, 13:16, 14:19, 15:8, 15:11, 16:20, 17:22, 20:1, 20:2, 20:4, 24:7, 29:21, 29:25, 30:15, 30:16, 30:24
**parents** [3] - 17:23, 25:11, 25:16
**part** [2] - 14:22, 26:3
**particular** [1] - 27:17
**parties** [1] - 25:2
**parts** [1] - 22:14
**people** [5] - 4:13, 4:16, 14:9, 20:23,

29:7
**per** [2] - 5:24, 10:7
**percent** [1] - 24:25
**perhaps** [3] - 7:22, 17:3, 31:19
**periodic** [1] - 18:13
**permission** [1] - 30:18
**Petrocelli** [2] - 5:8, 6:10
**PETROCELLI** [52] - 3:4, 5:7, 5:10, 5:20, 6:10, 6:19, 7:21, 8:4, 10:1, 11:15, 12:16, 12:19, 13:5, 13:15, 14:13, 15:7, 15:20, 15:25, 16:9, 16:11, 16:18, 16:25, 17:8, 17:13, 17:17, 18:18, 18:23, 19:5, 19:16, 19:19, 20:17, 20:24, 21:2, 21:17, 22:14, 22:21, 23:2, 23:8, 23:11, 23:15, 23:20, 24:6, 27:4, 27:8, 27:22, 28:2, 29:12, 29:20, 30:10, 30:20, 30:23, 31:10
**phone** [4] - 4:14, 4:24, 4:25, 28:14
**pick** [2] - 19:23, 26:24
**picking** [1] - 24:1
**PIERRE** [1] - 2:3
**Pine** [1] - 2:13
**Plaintiff** [1] - 1:10
**plaintiff** [7] - 12:10, 12:23, 17:19, 18:9, 20:12, 20:13, 30:7
**plaintiff's** [4] - 9:6, 13:1, 18:8, 22:3
**PLAINTIFFS** [1] - 2:3
**plaintiffs** [31] - 4:9, 4:11, 5:4, 8:8, 8:10, 9:6, 9:11, 12:12, 12:21, 12:24, 13:12, 13:18, 14:3, 14:5, 14:9, 16:15, 16:20, 16:22, 17:1, 17:2, 17:19, 17:21, 18:10, 20:7, 23:22, 24:12, 27:23, 28:9, 29:13, 29:22
**PLAINTIFFS'** [1] - 1:15
**plaintiffs'** [10] - 4:7, 5:16, 7:12, 7:14, 7:16, 8:13, 13:6, 18:5, 19:10, 29:25
**plan** [1] - 13:11

**platform** [1] - 19:11
**PLLC** [2] - 2:12, 2:15
**point** [19] - 8:7, 8:18, 11:7, 17:3, 17:9, 17:21, 17:23, 18:8, 18:22, 19:5, 22:3, 24:4, 25:10, 25:14, 25:17, 25:21, 26:9, 26:10, 31:16
**pointed** [1] - 22:15
**points** [3] - 22:11, 22:13, 26:21
**popped** [1] - 8:22
**portion** [1] - 31:24
**portions** [1] - 31:13
**position** [7] - 19:11, 24:19, 24:23, 24:24, 25:20, 25:24, 26:11
**positions** [1] - 6:13
**possible** [2] - 25:3, 31:1
**potential** [1] - 24:13
**powered** [1] - 10:19
**Powers** [1] - 5:12
**POWERS** [2] - 3:4, 5:12
**preempted** [1] - 16:6
**present** [1] - 3:10
**preservation** [4] - 6:22, 6:24, 7:3, 7:5
**preservations** [1] - 9:9
**preserve** [2] - 8:13, 30:18
**preserved** [2] - 25:19, 26:14
**preserving** [3] - 7:8, 11:7, 24:15
**presume** [9] - 4:13, 5:18, 11:19, 14:8, 17:18, 17:21, 19:3, 19:15, 23:22
**pretty** [2] - 24:22, 28:18
**primarily** [1] - 31:22
**privacy** [7] - 10:15, 20:5, 28:7, 28:8, 28:17, 28:23, 29:2
**PRIVACY** [1] - 1:5
**problem** [10] - 5:5, 8:25, 9:15, 15:19, 16:19, 26:7, 26:23, 28:19, 31:3
**proceedings** [3] - 6:21, 7:5, 32:11
**process** [4] - 16:14, 19:23, 24:14, 29:18
**processed** [1] - 14:11
**produced** [1] - 11:18

producing [1] - 10:16
PRODUCTION [1] - 1:15
production [1] - 5:17
program [1] - 27:9
proposed [1] - 8:15
prospective [2] - 17:25, 26:1
prospectively [3] - 8:2, 9:9, 9:12
protect [1] - 22:21
PROTECTIVE [1] - 1:14
protective [7] - 5:16, 11:13, 11:16, 11:21, 12:1, 12:5, 12:9
provide [8] - 6:6, 6:7, 7:17, 7:20, 8:9, 8:12, 9:7, 29:23
provided [10] - 6:1, 8:15, 8:20, 12:6, 13:13, 14:19, 15:9, 28:9, 29:21, 31:22
providing [2] - 16:14, 30:22
provisions [2] - 7:1, 7:9
proviso [1] - 15:22
pulling [1] - 10:12
purposes [2] - 20:13, 22:12
pursuant [3] - 18:2, 24:19, 32:9
push [1] - 12:3
put [7] - 6:13, 10:17, 10:21, 13:2, 13:20, 21:4, 30:25

Q

questions [6] - 5:23, 6:2, 16:13, 20:24, 21:23, 31:12
quickly [2] - 9:16, 26:9
quotes [1] - 23:1

R

raise [2] - 19:6, 31:13
raised [1] - 28:1
raising [2] - 22:11
random [11] - 19:8, 19:18, 19:23, 20:10, 20:19, 20:22, 24:6, 25:7, 27:15, 28:14
randomly [1] - 20:18
randomness [1] -

20:20
rationally [1] - 9:17
RE [1] - 1:5
Re [1] - 4:6
reach [3] - 12:1, 26:18, 26:20
reached [2] - 7:6, 7:12
realized [1] - 25:9
really [12] - 7:2, 10:9, 10:10, 15:6, 16:6, 16:13, 16:18, 18:21, 19:22, 21:17, 22:11, 22:13
Realtime [1] - 32:6
reason [3] - 8:2, 17:5, 23:9
reasons [1] - 24:22
recent [1] - 20:22
reconcile [2] - 6:23, 16:1
record [4] - 6:14, 24:17, 30:22, 30:23
red [1] - 12:8
red-lined [1] - 12:8
redacted [1] - 21:20
refer [1] - 6:18
reflect [1] - 29:18
refusing [1] - 11:25
regard [1] - 13:19
regarding [2] - 6:22, 7:6
regards [1] - 14:24
regular [1] - 31:2
regulations [1] - 32:13
rehash [1] - 6:12
rehashing [1] - 31:5
related [1] - 28:6
release [1] - 17:25
relive [1] - 7:15
remove [1] - 25:10
reorder [1] - 27:8
report [1] - 12:7
reported [1] - 32:11
REPORTER [2] - 1:23, 32:1
Reporter [2] - 32:7, 32:20
REPORTER'S [1] - 1:13
representative [1] - 3:10
representing [1] - 14:6
requests [1] - 18:3
required [1] - 9:12
requirement [3] - 24:4, 25:14, 25:18

requirements [1] - 25:16
requiring [1] - 29:21
reservation [1] - 31:4
resisted [1] - 10:16
resolve [6] - 10:22, 10:23, 12:14, 26:21, 29:9, 30:9
resolved [2] - 9:16, 12:16
respect [1] - 16:20
respond [1] - 18:6
response [6] - 11:22, 11:24, 14:24, 17:15, 18:12
responses [1] - 16:13
responsibility [1] - 26:2
restaurants [1] - 21:9
retroactively [1] - 8:1
retrospectively [2] - 8:19, 9:10
Richards [2] - 3:10, 5:10
Robinson [6] - 12:23, 13:4, 13:7, 13:25, 17:2, 19:14
rocket [2] - 18:16, 30:3
Rogers [1] - 27:19
ROHRBACK [2] - 2:5, 2:8
ROOM [1] - 1:23
rows [1] - 10:12
RPR [1] - 32:20
rule [1] - 15:19
running [1] - 23:16

S

sacrificing [1] - 15:23
sample [1] - 7:11
samples [1] - 25:7
sampling [4] - 23:23, 25:5, 25:6
San [1] - 3:6
sanction [1] - 12:15
Santa [1] - 2:10
Sarah [1] - 4:24
SARAH [1] - 3:15
sat [1] - 9:16
saved [1] - 28:11
science [2] - 18:17, 30:3
screw [1] - 10:20
se [2] - 5:24, 10:7
seal [1] - 11:20

sealed [3] - 21:25, 22:5, 31:24
sealing [2] - 21:23, 31:16
season [1] - 12:18
Seattle [1] - 2:7
second [1] - 19:5
seconds [1] - 8:24
Section [1] - 32:9
see [3] - 18:14, 27:17, 29:8
seek [2] - 15:15, 15:17
seem [1] - 8:23
select [1] - 20:18
SELLERS [2] - 2:12, 2:15
sense [1] - 31:8
sent [1] - 11:21
series [1] - 7:5
set [1] - 7:11
sets [1] - 18:7
several [1] - 6:15
shark [1] - 10:12
shield [2] - 7:24, 14:17
shocked [1] - 17:24
shoe [1] - 16:23
shows [1] - 13:23
side [2] - 10:7, 31:12
sides [4] - 10:18, 12:7, 25:9, 30:6
sign [1] - 24:16
Silver [1] - 5:4
SILVER [1] - 2:18
similar [2] - 29:1, 29:3
single [3] - 12:9, 30:6, 30:9
situation [3] - 20:1, 25:5, 26:4
situations [1] - 29:1
six [2] - 12:24, 17:1
slides [3] - 6:1, 6:2, 31:23
SMITH [2] - 3:14, 4:23
Smith [1] - 4:23
solve [1] - 8:4
solved [2] - 16:19
someone [1] - 29:4
sorry [1] - 9:6
sort [5] - 7:2, 17:8, 18:1, 24:2, 26:25
specifically [1] - 22:19
spend [1] - 30:1
spending [1] - 27:2
splitting [1] - 21:13

SPRINGER [1] - 2:9
Square [1] - 2:19
stage [1] - 31:17
Stamford [1] - 2:20
standard [1] - 28:18
standpoint [1] - 21:21
started [2] - 13:9, 31:19
starting [1] - 4:7
STATE [1] - 32:4
state [1] - 16:4
statement [1] - 24:11
STATES [3] - 1:1, 1:9, 3:12
States [4] - 4:24, 32:7, 32:9, 32:14
states [1] - 14:6
STATUS [1] - 1:14
status [1] - 12:7
statute [1] - 14:24
stay [1] - 15:22
stayed [1] - 4:18
stenographically [1] - 32:11
STEPHEN [1] - 3:7
steps [1] - 13:7
Steven [1] - 5:3
STEVEN [1] - 2:18
still [3] - 17:3, 19:25, 23:15
stop [4] - 7:19, 8:6, 9:23, 14:9
strange [2] - 14:25, 15:3
STREET [1] - 1:23
Street [3] - 2:10, 2:13, 3:8
struggling [2] - 6:23, 16:1
stuff [16] - 9:16, 9:19, 11:18, 11:19, 13:17, 18:16, 19:2, 22:10, 26:7, 26:23, 26:24, 27:3, 27:13, 29:8, 31:2, 31:3
subject [4] - 18:2, 18:25, 31:12, 31:16
subsequently [2] - 13:21, 13:23
successfully [1] - 23:11
suggest [2] - 22:16, 27:4
suit [1] - 14:10
Suite [3] - 2:7, 2:10, 2:16
supposed [2] - 11:4, 28:20
surprised [1] - 27:21

**sword** [1] - 14:16
**systems** [1] - 17:5

## T

**team** [1] - 4:19
**teeth** [2] - 10:12
**Teitell** [1] - 5:4
**ten** [2] - 8:24, 19:12
**tentative** [16] - 5:18,
6:15, 10:5, 11:12,
15:8, 16:17, 19:7,
21:19, 22:2, 22:4,
22:7, 22:15, 29:16,
30:14, 31:11, 31:15
**tentative's** [1] -
10:25
**tentatives** [1] - 6:13
**term** [2] - 20:15,
30:15
**TERRI** [4] - 1:22,
32:6, 32:19, 32:20
**texts** [1] - 12:9
**THE** [83] - 3:2, 4:5,
4:13, 4:15, 4:16, 4:21,
4:22, 4:25, 5:2, 5:5,
5:9, 5:15, 5:21, 6:17,
7:19, 8:1, 8:6, 8:21,
9:3, 9:15, 9:21, 9:23,
10:3, 10:7, 10:17,
11:8, 11:13, 11:16,
11:24, 12:4, 12:17,
13:3, 13:6, 13:16,
13:25, 14:5, 14:22,
15:10, 15:22, 16:8,
16:10, 16:16, 16:23,
17:7, 17:12, 17:14,
17:18, 18:21, 19:1,
19:13, 19:17, 20:9,
20:19, 20:25, 21:4,
21:13, 21:16, 22:1,
22:7, 22:18, 22:23,
23:5, 23:9, 23:12,
23:17, 23:21, 24:18,
25:1, 25:20, 26:17,
27:6, 27:11, 27:25,
28:4, 28:16, 29:6,
29:13, 29:22, 30:1,
30:5, 30:25, 31:9,
31:11
**themselves** [1] - 6:8
**thereafter** [2] -
18:10, 25:25
**therefore** [1] - 25:4
**third** [1] - 12:13
**three** [1] - 10:12
**threw** [1] - 12:17
**THURSDAY** [1] - 4:1
**TIETELL** [1] - 2:18
**TIKTOK** [1] - 1:5

**TikTok** [5] - 3:11,
4:6, 7:8, 17:23, 18:10
**TikTok's** [2] - 5:25,
11:19
**timing** [1] - 20:15
**Title** [1] - 32:9
**TO** [1] - 1:15
**today** [2] - 6:4
**today's** [1] - 22:8
**together** [3] - 5:10,
13:2, 27:2
**TOLL** [2] - 2:12, 2:15
**top** [1] - 14:13
**toward** [1] - 14:15
**towards** [1] - 14:23
**transcript** [2] -
32:10, 32:12
**TRANSCRIPT** [1] -
1:13
**treat** [2] - 18:9, 28:22
**treated** [1] - 13:18
**treating** [1] - 13:17
**tried** [2] - 11:7, 27:18
**true** [1] - 32:10
**try** [1] - 26:24
**trying** [5] - 22:16,
22:21, 23:10, 27:16,
30:1
**turn** [1] - 25:7
**turning** [1] - 7:10
**turns** [5] - 20:3,
21:15, 24:3, 24:6,
24:9
**tutorial** [2] - 6:2,
31:21
**two** [2] - 12:2, 27:10
**Two** [1] - 3:5
**type** [1] - 31:2

## U

**U.S** [3] - 1:3, 3:13,
3:14
**uncommon** [1] -
28:17
**under** [11] - 11:20,
17:3, 19:25, 20:11,
24:4, 24:5, 24:9,
24:21, 25:8, 27:23
**United** [4] - 4:24,
32:7, 32:9, 32:14
**UNITED** [3] - 1:1,
1:9, 3:12
**unless** [2] - 15:23,
19:4
**unseal** [1] - 22:7
**untoward** [1] - 22:16
**up** [8] - 8:22, 8:23,
10:20, 13:23, 23:15,
26:24, 27:19, 28:2

**upset** [1] - 23:2
**user** [3] - 10:15,
16:14, 28:14
**user's** [1] - 24:5
**users** [1] - 19:8
**utilized** [1] - 25:8
**utilizing** [2] - 20:13,
23:24

## V

**various** [1] - 6:12
**verified** [1] - 26:13
**versions** [1] - 12:8
**view** [1] - 13:21
**views** [1] - 6:14
**VILLANUEVA** [1] -
2:3
**violation** [1] - 25:3
**virtually** [1] - 27:22

## W

**waive** [2] - 9:11, 9:12
**WALDMAN** [1] - 2:15
**wants** [5] - 6:8,
12:10, 12:12, 30:7,
30:8
**Washington** [4] -
2:7, 2:17, 3:9, 3:16
**week** [3] - 12:5, 12:7,
27:12
**weekend** [1] - 31:20
**WEST** [1] - 1:23
**white** [2] - 23:6,
23:10
**Williams** [1] - 4:24
**WILLIAMS** [1] - 3:15
**willing** [2] - 7:14,
26:2
**words** [10] - 9:5,
12:8, 13:18, 20:21,
20:22, 22:1, 23:18,
23:23, 24:1, 31:1
**works** [2] - 5:11,
28:10
**world** [1] - 31:8
**worth** [1] - 31:5
**writing** [1] - 7:7
**written** [1] - 21:24
**WU** [1] - 1:3

## Y

**years** [2] - 16:4, 23:4
**York** [2] - 2:14, 2:16

# EXHIBIT C

# EXHIBIT D

Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility                    ⌃

Mental and Behavioral Health           ⌃

Sensitive and Mature Themes            ⌃

Integrity and Authenticity             ⌃

Regulated Goods, Services, and
Commercial Activities

Privacy and Security                   ⌃

For You feed Eligibility Standards

Accounts and Features                  ⌃

Enforcement                            ⌃

# Community Guidelines

## Overview

Released August 14, 2025

Effective September 13, 2025

TikTok is where people discover things they love, build communities, and express themselves. Our mission is simple: we want to inspire creativity and bring joy.

We have Community Guidelines to help keep TikTok a safe and positive experience. These rules apply to everyone and everything on our platform.

You're in the right place if you're wondering:

- What's allowed on TikTok

- What's not allowed on TikTok

- What's not allowed in the For You feed (FYF)

We've organized our Community Guidelines by topic to make information easier to find. Under each category, you'll find a "More information" section. That's where we define key terms, answer common questions, and share helpful examples. These examples are meant to guide you, but they don't cover every situation.

If you're ever unsure about what to post, just remember to be kind and treat others the way you would want to be treated.

Thanks for helping to keep TikTok a welcoming space for everyone!

**Our Rules**

We strive for Community Guidelines that are easy to understand. We've created a quick summary of what we don't allow across each of the major topics covered in our Community Guidelines. If you're looking for more details, they can be found after this section.

**Safety and Civility**

- **Violent and Criminal Behavior:** We don't allow threats, encouragement or glorification of violence, promotion of crime, or instructions on how to commit harmful acts.

- **Hate Speech and Hateful Behavior:** We don't allow content that promotes hate or attacks people based on protected attributes like race, religion, gender, or sexual orientation.

- **Violent and Hateful Organizations and Individuals:** We don't allow people or groups that promote violence or hate, including violent extremists, criminal organizations, or those responsible for mass violence. Supporting, recruiting for, or promoting these entities is also prohibited.

- **Youth Sexual and Physical Abuse:** We don't allow content that shows, promotes, or facilitates the sexual abuse, exploitation, or harm of young people.

- **Adult Sexual Abuse:** We don't allow content that shows, promotes, or facilitates adult sexual abuse or exploitation.

- **Human Trafficking and Smuggling:** We don't allow content that promotes or facilitates human trafficking or smuggling.

- **Harassment and Bullying:** We don't allow content that harasses or bullies others, including degrading remarks about appearance, doxing, sexual harassment, or coordinated abuse. We allow commentary about political figures which may be critical, but remove content that crosses into severe harm.

- **Human Trafficking and Smuggling:** We don't allow content that promotes or facilitates human trafficking or smuggling.

- **Harassment and Bullying:** We don't allow content that harasses or bullies others, including degrading remarks about appearance, doxing, sexual harassment, or coordinated abuse. We allow commentary about political figures which may be critical, but remove content that crosses into severe harm.

Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility                          ⌃

Mental and Behavioral Health                 ⌃

Sensitive and Mature Themes                  ⌃

Integrity and Authenticity                   ⌃

Regulated Goods, Services, and
Commercial Activities

Privacy and Security                         ⌃

For You feed Eligibility Standards

Accounts and Features                        ⌃

Enforcement                                  ⌃

## Mental and Behavioral Health

- **Suicide and Self-Harm:** We don't allow content that shows, promotes, or provides instructions for suicide or self-harm.

- **Disordered Eating, Risky Weight Management, and Body Image:** We don't allow content that promotes disordered eating, risky weight loss or muscle gain methods, or harmful body comparisons.

- **Dangerous Activity and Challenges:** We don't allow content that shows or promotes dangerous stunts, dares, or challenges that could lead to physical harm.

## Sensitive and Mature Themes

- **Body Exposure and Sexualized Behaviors:** We don't allow some types of body exposure or sexual behavior, including nudity, sexual activity, sexual services, or any sexually suggestive behavior or significant exposure involving young people.

- **Shocking and Graphic Content:** We don't allow extremely graphic, violent, or disturbing content—especially when it could cause viewers emotional distress.

- **Animal Abuse:** We don't allow content that shows or promotes animal abuse, cruelty, neglect, or exploitation.

## Integrity and Authenticity

- **Misinformation:** We don't allow misinformation that could cause significant harm to individuals or society.

- **Civic and Election Integrity:** We don't allow content that could mislead voters or interfere with elections, including false claims about how to vote, who can vote, or the outcome of an election.

- **Edited Media and AI-Generated Content (AIGC):** We require clear labeling when AI or editing is used to realistically depict people or scenes. We don't allow AIGC that misleads about matters of public importance or that harms individuals.

- **Unoriginal Content and Intellectual Property Rights:** We don't allow content that violates intellectual property rights, including reposts of copyrighted or trademarked material without permission.

- **Deceptive Behavior & Fake Engagement:** We don't allow accounts that mislead or try to manipulate our platform, or the trade of services that artificially boost engagement or trick the recommendation system.

## Regulated Goods, Services, and Commercial Activities

- **Regulated Goods, Services, and Commercial Activities:** We don't allow the trade, marketing, or promotion of regulated, prohibited, or high-risk goods and services. Registered business accounts and verified TikTok Shop sellers may be allowed to sell or market some regulated items if they meet strict requirements.

- **Commercial Disclosure and Paid Marketing:** If you're promoting a product, brand, or business, you must use TikTok's content disclosure setting.

- **Frauds and Scams:** We don't allow content that promotes or facilitates scams, fraud, or deceptive schemes.

## Privacy and Security

- **Personal Information:** We don't allow sharing personal information that could lead to harm, such as identity theft, stalking, or fraud.

- **Platform Security:** We don't allow attempts to hack, reverse-engineer, or otherwise compromise TikTok's

Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility                                    ⌃

Mental and Behavioral Health                           ⌃

Sensitive and Mature Themes                            ⌃

Integrity and Authenticity                             ⌃

Regulated Goods, Services, and
Commercial Activities                                  ⌃

Privacy and Security                                   ⌃

For You feed Eligibility Standards

Accounts and Features                                  ⌃

Enforcement                                            ⌃

**Privacy and Security**

- **Personal Information:** We don't allow sharing personal information that could lead to harm, such as identity theft, stalking, or fraud.

- **Platform Security:** We don't allow attempts to hack, reverse-engineer, or otherwise compromise TikTok's systems.

Want a closer look at these rules, how we enforce them, and how they apply across different areas? We encourage you to keep reading.

**Content Moderation**

We want TikTok to be a safe, fun, and creative place for everyone. Here's how we support that goal:

🚫 **We Remove Content**

Everyone on TikTok can share content, but when we identify content that falls under the "Not Allowed" rules in our Community Guidelines, we'll remove it.

⛔ **We Age-Restrict Content**

Some content may not be appropriate for people under 18. When we identify content that falls under the "Age-Restricted" standards in our Community Guidelines, we make it viewable only for adults.

⚠️ **For You Feed Standards**

The For You Feed is designed to help you discover a variety of content and creators, and for creators to reach new audiences and build thriving communities. However, not all content is guaranteed to be recommended. When we identify content that falls under the "FYF Ineligible" standards in our Community Guidelines, it won't be recommended in the FYF. You can read more about what qualifies here.

📋 **We give you tools and resources to stay informed and in control**

You are empowered to manage your experience on TikTok. We provide a safety toolkit that helps you customize your content preferences and account settings, and manage interactions. In addition, for some content, you'll see opt-in screens or banners to give you more context about a post.

You can also visit our Safety Center resources for extra support.

# Was it helpful?

Yes        No

---

Next article

## Community Principles

Read next ↗

---

♪ TikTok

| Company | Programs | Resources | Legal |
|---|---|---|---|
| About TikTok | TikTok for Good | Help Center | Terms of Service |
| Newsroom | TikTok for Developers | Safety Center | Privacy Policy |



### 🚫 We Remove Content

Everyone on TikTok can share content, but when we identify content that falls under the "Not Allowed" rules in our Community Guidelines, we'll remove it.

### 🛑 We Age-Restrict Content

Some content may not be appropriate for people under 18. When we identify content that falls under the "Age-Restricted" standards in our Community Guidelines, we make it viewable only for adults.

### ⚠️ For You Feed Standards

The For You Feed is designed to help you discover a variety of content and creators, and for creators to reach new audiences and build thriving communities. However, not all content is guaranteed to be recommended. When we identify content that falls under the "FYF Ineligible" standards in our Community Guidelines, it won't be recommended in the FYF. You can read more about what qualifies here.

### 🗒 We give you tools and resources to stay informed and in control

You are empowered to manage your experience on TikTok. We provide a safety toolkit that helps you customize your content preferences and account settings, and manage interactions. In addition, for some content, you'll see opt-in screens or banners to give you more context about a post.

You can also visit our Safety Center resources for extra support.

## Was it helpful?

Yes          No

---

Next article

## Community Principles

Read next ↗



**Company**
About TikTok
Newsroom
Contact
Careers
ByteDance

**Programs**
TikTok for Good
TikTok for Developers
Effect House
Advertise on TikTok
TikTok Embeds

**Resources**
Help Center
Safety Center
Privacy Center
Creator Academy
Community Guidelines
Transparency
Accessibility

**Legal**
Terms of Service
Privacy Policy
Intellectual Property Policy
TikTok Law Enforcement Guidelines
Children's Privacy Policy

English ▼

© 2025 TikTok

Overview

**Community Principles**

Youth Safety and Well-Being

Safety and Civility ⌃

Mental and Behavioral Health ⌃

Sensitive and Mature Themes ⌃

Integrity and Authenticity ⌃

Regulated Goods, Services, and
Commercial Activities ⌃

Privacy and Security ⌃

For You feed Eligibility Standards

Accounts and Features ⌃

Enforcement ⌃

# Community Principles

Released August 14, 2025

Effective September 13, 2025

TikTok has eight core principles that guide how we develop our rules and how we make complex enforcement decisions. They're all about keeping you safe, respecting human rights, and supporting a creative and welcoming community. We developed these principles with the foundational goal of preventing harm and enabling expression.

At times, we have to make difficult tradeoffs between competing goals. When that happens, we approach the decision thoughtfully and rely on trusted guidance, including:

- Internationally recognized global human rights standards

- Feedback from our community and Advisory Councils

- Input from experts in online safety, public health, and related fields

Here are the eight principles:

1. **Prevent Harm:** Keeping TikTok safe and fun is our top priority. Harm can look different—it might be physical, emotional, or even financial. To strike the right balance with free expression, we restrict content only when necessary and in a way that seeks to minimize the impact on speech.

2. **Support Free Expression:** TikTok thrives on creativity. We honor this principle by providing the opportunity to share freely on our platform, while also proactively addressing behavior that can inhibit the speech of others. However, free expression isn't an absolute right. It's always considered in proportion to the potential harm, and can result in your content being removed or not recommended in the FYF.

3. **Encourage Kindness and Respect:** We aim to foster a space where people treat each other with empathy and dignity. Our approach is designed to help prevent content that demeans or dehumanizes others, making TikTok a safer and more welcoming place for everyone.

4. **Respect Local Cultures:** People use TikTok in over 150 countries. We work with local experts to make sure that our global approach considers the way harms are experienced across regions, and that we allow for regional applications of our guidelines while upholding human rights standards.

5. **Champion Inclusion:** We celebrate the diverse cultures and experiences that make up our TikTok community. We also recognize that some communities have historically faced barriers to participation and expression, and we're committed to reducing disproportionate harms.

6. **Protect Privacy:** We are committed to protecting the privacy of our community and anyone shown or discussed on the platform. We strive to ensure that content doesn't expose anyone's personal information or invade their intimate privacy.

7. **Be Transparent and Consistent:** We want everyone to know what our rules and standards are, and how we apply them. We seek to provide clear notice of our policies and practices, to apply them consistently, and to share our enforcement efforts at our Transparency Center.

8. **Act Fairly:** Evaluating millions of pieces of content each day is a complex effort, but we're committed to being impartial, clear, and providing opportunities to appeal.

In rare and exceptional situations—such as crises or moments of social unrest—we may adjust our usual enforcement or rules to protect our community and address emerging harms, while remaining guided by our principles.

## Was it helpful?

Yes        No

dignity. Our approach is designed to help prevent content that demeans or dehumanizes others, making TikTok a safer and more welcoming place for everyone.

4. **Respect Local Cultures:** People use TikTok in over 150 countries. We work with local experts to make sure that our global approach considers the way harms are experienced across regions, and that we allow for regional applications of our guidelines while upholding human rights standards.

5. **Champion Inclusion:** We celebrate the diverse cultures and experiences that make up our TikTok community. We also recognize that some communities have historically faced barriers to participation and expression, and we're committed to reducing disproportionate harms.

6. **Protect Privacy**: We are committed to protecting the privacy of our community and anyone shown or discussed on the platform. We strive to ensure that content doesn't expose anyone's personal information or invade their intimate privacy.

7. **Be Transparent and Consistent**: We want everyone to know what our rules and standards are, and how we apply them. We seek to provide clear notice of our policies and practices, to apply them consistently, and to share our enforcement efforts at our Transparency Center.

8. **Act Fairly:** Evaluating millions of pieces of content each day is a complex effort, but we're committed to being impartial, clear, and providing opportunities to appeal.

In rare and exceptional situations—such as crises or moments of social unrest—we may adjust our usual enforcement or rules to protect our community and address emerging harms, while remaining guided by our principles.

## Was it helpful?

Yes          No

### Next article

## Youth Safety and Well-Being

Read next ↗

Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility ^

Mental and Behavioral Health ^

Sensitive and Mature Themes ^

Integrity and Authenticity ^

Regulated Goods, Services, and
Commercial Activities

Privacy and Security ^

For You feed Eligibility Standards

Accounts and Features ^

Enforcement ^



**Company**
About TikTok
Newsroom
Contact
Careers
ByteDance

**Programs**
TikTok for Good
TikTok for Developers
Effect House
Advertise on TikTok
TikTok Embeds

**Resources**
Help Center
Safety Center
Privacy Center
Creator Academy
Community Guidelines
Transparency
Accessibility

**Legal**
Terms of Service
Privacy Policy
Intellectual Property Policy
TikTok Law Enforcement Guidelines
Children's Privacy Policy

English ▼

© 2025 TikTok

Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility                              ⌃

Mental and Behavioral Health                     ⌃

Sensitive and Mature Themes                      ⌃

Integrity and Authenticity                       ⌃

Regulated Goods, Services, and
Commercial Activities

Privacy and Security                             ⌃

For You feed Eligibility Standards

Accounts and Features                            ⌃

Enforcement                                      ⌃

# Youth Safety and Well-Being

Released August 14, 2025

Effective September 13, 2025

We're committed to making TikTok a safe and positive experience for everyone, especially for people under 18. This is who we mean when we refer to "youth" or "young people" in these Community Guidelines. To help keep the platform safer for this age group, we:

- Set age limits for certain features (like needing to be 16+ for your videos to appear in the FYF, or to use Direct Messages)
- Use more restrictive privacy settings by default for younger users
- Limit content that may not be appropriate for people under 18, with content filters and other safeguards. Learn more about this kind of content in the "Age-Restricted" sections throughout these Community Guidelines.

### Age Restrictions and Safety Features

You need to be at least 13 years old to create a TikTok account. In some countries, the minimum age may be different based on local laws. In the United States, there is a separate under-13 TikTok experience that includes extra protections like:

- Restricting interactive features that enable users to directly engage with others, such as commenting on content, messaging, sharing their videos, or maintaining an online profile
- FYF with content that's age-appropriate, as assessed by Common Sense Networks
- A dedicated Privacy Policy

If you create a new account in the United States and are under 13, you will automatically enter into this experience.

We remove accounts when we believe the user is under the minimum age required to have one. If we believe someone isn't old enough for features with a minimum age requirement, we'll restrict their access to those features. If your account was removed and you think it was a mistake, you can file an appeal. Anyone can report an account they believe belongs to someone who's too young to have an account—either in the app or online.

We know that parents sometimes post content featuring their children. If you do so, it needs to be clear that the account belongs to an adult. The bio, profile picture, or username are good places to do this.

### Youth Safety Enforcement

We don't allow content that could harm young people—physically, emotionally, or developmentally. If we become aware an account holder has committed a sexual offense against a young person, we will ban the account, as well as any other accounts belonging to that person. We report incidents of youth sexual abuse and exploitation to the National Center for Missing and Exploited Children (NCMEC). We also report to relevant law enforcement authorities when there is a specific, credible, and imminent threat to human life or serious physical injury.

Learn more at our Teen Safety Center and Guardian's Guide.

## Was it helpful?

Yes            No



content, messaging, sharing their videos, or maintaining an online profile

- FYF with content that's age-appropriate, as assessed by Common Sense Networks

- A dedicated Privacy Policy

If you create a new account in the United States and are under 13, you will automatically enter into this experience.

We remove accounts when we believe the user is under the minimum age required to have one. If we believe someone isn't old enough for features with a minimum age requirement, we'll restrict their access to those features. If your account was removed and you think it was a mistake, you can file an appeal. Anyone can report an account they believe belongs to someone who's too young to have an account—either in the app or online.

We know that parents sometimes post content featuring their children. If you do so, it needs to be clear that the account belongs to an adult. The bio, profile picture, or username are good places to do this.

**Youth Safety Enforcement**

We don't allow content that could harm young people—physically, emotionally, or developmentally. If we become aware an account holder has committed a sexual offense against a young person, we will ban the account, as well as any other accounts belonging to that person. We report incidents of youth sexual abuse and exploitation to the National Center for Missing and Exploited Children (NCMEC). We also report to relevant law enforcement authorities when there is a specific, credible, and imminent threat to human life or serious physical injury.

Learn more at our Teen Safety Center and Guardian's Guide.

## Was it helpful?

Yes          No

Next article

## Safety and Civility

Read next ↗



Overview

Community Principles

Youth Safety and Well-Being

**Safety and Civility**                    ⌄

   Violent and Criminal Behavior

   Hate Speech and Hateful Behavior

   Violent and Hateful Organizations and
   Individuals

   Youth Sexual and Physical Abuse

   Adult Sexual Abuse

   Human Trafficking and Smuggling

   Harassment and Bullying

Mental and Behavioral Health              ⌃

Sensitive and Mature Themes               ⌃

Integrity and Authenticity                ⌃

Regulated Goods, Services, and
Commercial Activities                     ⌃

Privacy and Security                      ⌃

For You feed Eligibility Standards

Accounts and Features                     ⌃

Enforcement                               ⌃

# Safety and Civility

Released August 14, 2025

Effective September 13, 2025

Feeling safe and respected is important for everyone's well-being, and treating each other with kindness and civility helps communities thrive. Being respectful doesn't mean you have to agree—it just means treating people with dignity.

## Violent and Criminal Behavior

TikTok is about bringing people together, not promoting conflict. **We don't allow threats, glorifying violence, or promoting crimes that could harm people, animals, or property.**

If there is a specific, credible, and imminent threat to human life or serious physical injury, we report it to relevant law enforcement authorities.

For details on how we approach content that shows violence without encouraging it, see our Shocking and Graphic Content section.

⌃    **More information**

🚫  **NOT ALLOWED**

- Threatening or expressing a desire to physically harm people

- Promoting or glorifying violence, such as calling for violent attacks or praising acts of violence

- Promoting theft or the destruction of property

- Sharing instructions on how to commit crimes that may harm people, animals, or property

✅  **ALLOWED**

- Documentary or educational content that raises awareness about violent and criminal behavior

- Fiction or art, unless it's intended to promote real-world violence

- Criticism of violent and criminal behavior

## Hate Speech and Hateful Behavior

TikTok is a place for diverse communities to connect—not for spreading hate. **We don't allow hate speech, hateful behavior, or promotion of hateful ideologies.** That includes content that attacks people based on protected attributes like race, religion, gender, or sexual orientation.

Discussions about social and political issues are welcome, but they must be respectful. Content that indirectly demeans or furthers exclusion of protected groups may not be eligible for the FYF.

To account for regional and cultural sensitivities, we may reduce visibility or remove content that disparages religion in regions where it has a greater chance of causing harm.

**Learn more about how we combat hate on TikTok, and how you can use tools to restrict interactions with your**

demeans or furthers exclusion of protected groups may not be eligible for the FYF.

To account for regional and cultural sensitivities, we may reduce visibility or remove content that disparages religion in regions where it has a greater chance of causing harm.

**Learn more about how we combat hate on TikTok, and how you can use tools to restrict interactions with your content and account.**

Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility                                           ⌄

    Violent and Criminal Behavior

    Hate Speech and Hateful Behavior

    Violent and Hateful Organizations and
    Individuals

    Youth Sexual and Physical Abuse

    Adult Sexual Abuse

    Human Trafficking and Smuggling

    Harassment and Bullying

Mental and Behavioral Health                    ⌃

Sensitive and Mature Themes                     ⌃

Integrity and Authenticity                            ⌃

Regulated Goods, Services, and
Commercial Activities                                   ⌃

Privacy and Security                                     ⌃

For You feed Eligibility Standards

Accounts and Features                                 ⌃

Enforcement                                                   ⌃

⌃    More information

**Hateful Ideologies:** Systems of beliefs that exclude, oppress, or otherwise discriminate against individuals based on their protected attributes.

**Protected Groups:** Individuals or communities that share protected attributes.

**Protected Attributes:** Personal characteristics that you are born with, are immutable, or would cause severe psychological harm if you were forced to change them or were attacked because of them. This includes:

- Caste
- Disability
- Ethnicity
- Gender
- Gender Identity
- Immigration Status
- National Origin
- Race
- Religion
- Serious Disease
- Sex
- Sexual Orientation
- Tribe

The attributes listed above are informed by internationally recognized global human rights standards. We also provide age-related protections, and may consider other protected attributes when we have additional context, such as specific regional information provided to us by a local non-governmental organization (NGO).

🚫 **NOT ALLOWED**

- Encouraging violence, segregation, discrimination, or other harm towards people based on protected attributes
- Supporting or spreading hateful ideologies, including:
  - Claims of supremacy over a protected group, such as white supremacy, misogyny, anti-LGBTQ+ hate, antisemitism, or Islamophobia
  - Hateful conspiracies targeting a protected group, such as the "Great Replacement Theory" or claims that Jewish people control the media
  - Symbols and imagery associated with hateful movements
  - Selling or marketing items—like books or clothing—that promote hate speech or hateful ideologies
- Denying or minimizing well-documented historical atrocities against protected groups, such as the Holocaust or the genocide against the Tutsi in Rwanda
- Dehumanizing people, including by comparing them to animals or objects

Overview

Community Principles

Youth Safety and Well-Being

**Safety and Civility** ⌄

   Violent and Criminal Behavior

   Hate Speech and Hateful Behavior

   Violent and Hateful Organizations and
   Individuals

   Youth Sexual and Physical Abuse

   Adult Sexual Abuse

   Human Trafficking and Smuggling

   Harassment and Bullying

Mental and Behavioral Health ⌃

Sensitive and Mature Themes ⌃

Integrity and Authenticity ⌃

Regulated Goods, Services, and
Commercial Activities ⌃

Privacy and Security ⌃

For You feed Eligibility Standards

Accounts and Features ⌃

Enforcement ⌃

- Selling or marketing items—like books or clothing—that promote hate speech or hateful ideologies

- Denying or minimizing well-documented historical atrocities against protected groups, such as the Holocaust or the genocide against the Tutsi in Rwanda

- Dehumanizing people, including by comparing them to animals or objects

- Portraying protected groups as inherently dangerous, such as calling them criminals or terrorists

- Blaming an entire group for actions committed by one person within that group

- Attributing illness or disease to a protected group, including describing them as contagious

- Claiming that a protected group is physically or mentally inferior to others

- Using hateful slurs associated with a protected attribute

- Deadnaming or misgendering someone by referring to them with a name or gender they don't identify with

- Promoting "conversion therapy" programs aimed at changing someone's sexual orientation or gender identity

- In some regions, insulting religion or showing the desecration of religious symbols or sites

🔴 **FYF INELIGIBLE & AGE-RESTRICTED**

- Stereotypes, generalizations, insinuations, or statements that may demean or undermine the inclusion of protected groups or identities

✅ **ALLOWED**

- Members of targeted communities reclaiming slurs or stereotypes in non-degrading ways—for example, using a slur in a song or referring to themselves using the term

- Discussing public policies that impact protected groups, as long as it does not include hateful attacks

- Documentary or educational content that raises awareness about hate

- Fiction or art, unless it promotes hate

- Criticism and satire of hateful acts or ideologies

## Violent and Hateful Organizations and Individuals

We want you to share what inspires you, but TikTok isn't a place to encourage violence or hate. That's why we don't allow the presence of **violent and hateful organizations or individuals on our platform.** This includes:

- Violent Extremist Entities

- Violent Criminal Organizations

- Violent Political Organizations

- Hateful Organizations

- Individuals who cause mass or serial violence

If we become aware that any of these actors may be on our platform, we will conduct a thorough review—including assessment of off-platform behavior—which may result in account bans.

**We also don't allow anyone to promote, support, recruit for, or help these actors in any way.** Content that may

If we become aware that any of these actors may be on our platform, we will conduct a thorough review—including assessment of off-platform behavior—which may result in account bans.

**We also don't allow anyone to promote, support, recruit for, or help these actors in any way.** Content that may appear neutral, such as featuring a quote from a hateful organization or individual, must make clear that there is no intent to promote it. We make limited exceptions for discussions about violent political organizations.

---

∧     **More information**

**Material Support:** The act of giving money, goods, services, or other help to promote violent or hateful actors. This includes fundraising, recruitment, or selling merchandise.

**Violent Extremist Entities:** Non-state groups or individuals who engage in or advocate for violence against civilians, to advance political, religious, ethnic, or ideological objectives, in ways recognized as violating international norms.

**Violent Criminal Organizations:** Transnational, national, or local groups that commit serious crimes, including violence, trafficking, and kidnapping.

**Violent Political Organizations:** Non-state actors that commit violent acts primarily against state actors (such as a national military) rather than civilians, as part of ongoing political disputes (such as territorial claims).

**Hateful Organizations:** Groups that target people based on protected attributes, dehumanize others, and promote hateful ideologies.

🚫 **NOT ALLOWED**

- Accounts run by organizations or individuals that promote violence or hateful ideologies on or off-platform

- Providing material support to Violent Political Organizations, or promoting or praising violence caused by them

- Promoting, praising, or providing material support to:

  ▫ Hateful Organizations

  ▫ Individuals who cause mass or serial violence, or promote hateful ideologies

  ▫ Violent Criminal Organizations

  ▫ Violent Extremist Entities

- Showing people, symbols, objects, speeches, or manifestos linked to:

  ▫ Hateful Organizations

  ▫ Individuals who cause mass or serial violence, or promote hateful ideologies

  ▫ Violent Criminal Organizations

  ▫ Violent Extremist Entities

✅ **ALLOWED**

- Discussing a Violent Political Organization, as long as there is no promotion of violence

- Documentary or educational content that raises awareness about violent or hateful actors

- Fiction or art, unless it promotes or is made by a violent or hateful actor

- Criticism and satire about violent or hateful actors

---

**Navigation sidebar:**

Overview

Community Principles

Youth Safety and Well-Being

**Safety and Civility**                    ⌄

　Violent and Criminal Behavior

　Hate Speech and Hateful Behavior

　Violent and Hateful Organizations and
　Individuals

　Youth Sexual and Physical Abuse

　Adult Sexual Abuse

　Human Trafficking and Smuggling

　Harassment and Bullying

Mental and Behavioral Health              ∧

Sensitive and Mature Themes               ∧

Integrity and Authenticity                ∧

Regulated Goods, Services, and
Commercial Activities                     ∧

Privacy and Security                      ∧

For You feed Eligibility Standards

Accounts and Features                     ∧

Enforcement                               ∧

Criticism and satire about violent or hateful actors

Overview

Community Principles

Youth Safety and Well-Being

**Safety and Civility**    ⌄

  Violent and Criminal Behavior

  Hate Speech and Hateful Behavior

  Violent and Hateful Organizations and
  Individuals

  Youth Sexual and Physical Abuse

  Adult Sexual Abuse

  Human Trafficking and Smuggling

  Harassment and Bullying

Mental and Behavioral Health    ⌃

Sensitive and Mature Themes    ⌃

Integrity and Authenticity    ⌃

Regulated Goods, Services, and
Commercial Activities    ⌃

Privacy and Security    ⌃

For You feed Eligibility Standards

Accounts and Features    ⌃

Enforcement    ⌃

# Youth Sexual and Physical Abuse

We're committed to making TikTok a safe and supportive space for young people. We don't allow sharing, showing, promoting, or engaging in abuse or exploitation of youth. This includes:

- Child Sexual Abuse Material (CSAM)

- Grooming

- Sextortion

- Sexual Solicitation

- Pedophilia

- Physical or Psychological Harm to young people

When we find content or accounts involved in youth sexual abuse or exploitation, we report them to the National Center for Missing and Exploited Children (NCMEC). We also report to relevant law enforcement authorities when there is a specific, credible, and imminent threat to human life or serious physical injury.

If you ever come across suspected CSAM, report it immediately in the app or on our website. **Never download, record, or share this kind of content.**

If you or someone you know has experienced abuse:

- **Call emergency services right away if someone is in immediate danger**

- **Reach out to a helpline or local support service**

- **If you think your intimate privacy has been violated on TikTok, report it to us here**

⌃    More information

**Child Sexual Abuse Material (CSAM):** Sexual content involving a young person, including anything that shows or suggests abuse or sexual activity. This covers content created by others or the young person themselves, and includes digital or AI-generated images. It also includes anything that sexualizes or fetishizes a young person's body.

**Grooming:** The act of trying to build a close or trusting relationship with a young person to later abuse or exploit them.

**Sextortion:** The act of threatening to share nude or sexual content without permission—usually to demand money, sex, or more explicit content.

🚫 **NOT ALLOWED**

- Showing, promoting, or engaging in youth sexual abuse or exploitation, including:

  ◦ CSAM, including any screenshot or clip from the original material, even if it doesn't show nudity or sexual activity

  ◦ Romantic relationships between an adult and young person, including pedophilia, or self-identifying as an adult attracted to young people

  ◦ Grooming behavior

  ◦ Sextortion

Document title: Community Guidelines | TikTok
Capture URL: https://www.tiktok.com/community-guidelines/en/safety-civility
Capture timestamp (UTC): Tue, 18 Nov 2025 06:05:24 GMT

Romantic relationships between an adult and young person, including pedophilia, or self-identifying as an adult attracted to young people

◦ Grooming behavior

◦ Sextortion

◦ Sexualizing or fetishizing a young person

◦ Sexual solicitation, including invitations to do something sexual, connect off-platform, or share explicit images—even if another young person makes the request

◦ Explicit imagery of youth sexual abuse in fiction or art

◦ Neglect, endangerment, or physical or emotional abuse of young people

◦ Sharing content that could identify a young person who has experienced abuse or exploitation

Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility ⌄

   Violent and Criminal Behavior

   Hate Speech and Hateful Behavior

   Violent and Hateful Organizations and
   Individuals

   Youth Sexual and Physical Abuse

   Adult Sexual Abuse

   Human Trafficking and Smuggling

   Harassment and Bullying

Mental and Behavioral Health ⌃

Sensitive and Mature Themes ⌃

Integrity and Authenticity ⌃

Regulated Goods, Services, and
Commercial Activities ⌃

Privacy and Security ⌃

For You feed Eligibility Standards

Accounts and Features ⌃

Enforcement ⌃

🚫 **FYF INELIGIBLE & AGE-RESTRICTED**

• Showing non-explicit imagery of youth sexual abuse in fiction or art, such as television shows with scenes of implied sexual acts

✅ **ALLOWED**

• Survivors sharing their own stories, as long as it doesn't show abuse

• Documentary or educational content that raises awareness about youth sexual and physical abuse, as long as it doesn't show the abuse

• Criticism of youth sexual and physical abuse, as long as it doesn't show the abuse

## Adult Sexual Abuse

We are committed to providing a space that embraces gender equity, supports healthy relationships, and respects intimate privacy. **We don't allow content that shows or promotes the sexual abuse or exploitation of adults.** This includes:

• Non-Consensual Sexual Acts

• Image-Based Sexual Abuse

• Sextortion

If you or someone you know has experienced abuse:

• **Call emergency services if someone is in immediate danger**

• **Reach out to a helpline or local support service**

• **If you think your intimate privacy has been violated on TikTok, report it to us here**

⌃    More information

**Sextortion**: The act of threatening to share nude or sexual content without permission—usually to demand money, sex, or more explicit content.

**Non-Consensual Sexual Acts**: Sexual contact that happens without the consent of everyone involved in the activity. This includes any non-consensual sexual contact, such as rape and molestation.

**Image-Based Sexual Abuse**: Having, sharing, or creating intimate images (real or edited) of someone without

**Sextortion:** The act of threatening to share nude or sexual content without permission—usually to demand money, sex, or more explicit content.

**Non-Consensual Sexual Acts:** Sexual contact that happens without the consent of everyone involved in the activity. This includes any non-consensual sexual contact, such as rape and molestation.

**Image-Based Sexual Abuse:** Having, sharing, or creating intimate images (real or edited) of someone without their consent, especially for sexual purposes. This includes content that seems to have been taken with consent, but is distributed without it.

🚫 **NOT ALLOWED**

- Showing, promoting, or engaging in:
  - Non-consensual sexual acts or image-based sexual abuse
  - Sextortion
- Explicit imagery of adult sexual abuse in fiction or art

❗ **FYF INELIGIBLE & AGE-RESTRICTED**

- Showing non-explicit imagery of adult sexual abuse in fiction or art, such as television shows with scenes of implied abuse

✅ **ALLOWED**

- Survivors sharing their own stories, as long as it doesn't show abuse
- Documentary or educational content that raises awareness about adult sexual abuse, as long as it doesn't show the abuse
- Criticism of adult sexual abuse, as long as it doesn't show the abuse

## Human Trafficking and Smuggling

We respect human dignity and are committed to protecting people from exploitation. That's why **we don't allow content that promotes or facilitates human trafficking or smuggling.**

When we identify human trafficking and smuggling content with a specific, credible, and imminent threat to human life or serious physical injury, we alert law enforcement. In addition, when we identify youth sex trafficking content, we report it to the National Center for Missing and Exploited Children (NCMEC).

⌃ More information

**Human Trafficking:** A form of modern slavery that can occur domestically or internationally, and involves the recruitment of victims, coordination of their transport, and their exploitation using force, fraud, coercion, or deception. It can include:

- Sex, labor, child, or organ trafficking
- Forced marriage
- Forced criminality, such as exploitative begging
- Domestic servitude
- Child soldiers

**Human Smuggling:** Earning a profit by helping a person to illegally enter another country. It can include providing

Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility                                    ⌄

    Violent and Criminal Behavior

    Hate Speech and Hateful Behavior

    Violent and Hateful Organizations and
    Individuals

    Youth Sexual and Physical Abuse

    Adult Sexual Abuse

    Human Trafficking and Smuggling

    Harassment and Bullying

Mental and Behavioral Health            ⌃

Sensitive and Mature Themes              ⌃

Integrity and Authenticity                   ⌃

Regulated Goods, Services, and          ⌃
Commercial Activities

Privacy and Security                             ⌃

For You feed Eligibility Standards

Accounts and Features                         ⌃

Enforcement                                          ⌃


Overview

Community Principles

Youth Safety and Well-Being

**Safety and Civility**                              ⌄

   Violent and Criminal Behavior

   Hate Speech and Hateful Behavior

   Violent and Hateful Organizations and
   Individuals

   Youth Sexual and Physical Abuse

   Adult Sexual Abuse

   Human Trafficking and Smuggling

   Harassment and Bullying

Mental and Behavioral Health          ⌃

Sensitive and Mature Themes          ⌃

Integrity and Authenticity          ⌃

Regulated Goods, Services, and
Commercial Activities

Privacy and Security          ⌃

For You feed Eligibility Standards

Accounts and Features          ⌃

Enforcement          ⌃

- Domestic servitude

- Child soldiers

**Human Smuggling:** Earning a profit by helping a person to illegally enter another country. It can include providing transportation and consultation, as well as identity and travel document fraud.

🚫  **NOT ALLOWED**

- Facilitating, promoting, or showing human trafficking

- Facilitating or promoting human smuggling or smuggling-related services

- Asking to be smuggled into another country, or to take part in trafficking-related activities

✅  **ALLOWED**

- Survivors sharing their own stories of human trafficking and smuggling, as long as those stories don't promote or enable smuggling or trafficking

- Expressing a desire to migrate, as long as smugglers aren't clearly involved

- Seeking help or providing information about how to safely and legally leave a country due to crisis or human rights abuses

- Documentary or educational content that raises awareness about human trafficking and smuggling

- Fiction or art, unless it promotes or enables real-world exploitation

- Criticism or satire about human trafficking and smuggling

# Harassment and Bullying

We welcome respectful discussion and believe everyone should feel safe sharing their voice. **We don't allow harassment or bullying, including when it's done in retaliation.**

Content that includes lower-severity degrading behavior may be ineligible for the FYF. In some cases, we may remove this content when additional context is available—such as when it targets someone under 18 and could contribute to more serious harm.

We recognize that public figures face greater attention and some content about them may serve the public interest. As a result, we allow more critical commentary about public figures than private figures. However, we still remove content that is most harmful—such as doxing, sexual harassment, or any other violation of our policies, including violent threats, hate speech, or sexual exploitation.

If you or someone you know is being bullied or harassed, support resources are available. You can also use our tools to restrict unwanted interactions with your content and account.

⌃    **More information**

**Doxing:** Publishing or threatening to publish personal information about someone online with malicious intent. We recognize intent can be subjective, so we use objective indicators to help us understand it, such as captions and hashtags.

**Sexual Harassment:** The sexualization or sexual degradation of an individual through language or behaviors relating to sexual activities, intimate body parts, and sexual health information.

**Public Figures:** People 18 and older with a significant public role, such as a government official, politician, business leader, or celebrity. We don't identify people under 18 as public figures.

**Sexual Harassment**: The sexualization or sexual degradation of an individual through language or behaviors relating to sexual activities, intimate body parts, and sexual health information.

**Public Figures**: People 18 and older with a significant public role, such as a government official, politician, business leader, or celebrity. We don't identify people under 18 as public figures.

**Private Figures**: All people under 18, and adults who aren't public figures.

Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility

  Violent and Criminal Behavior

  Hate Speech and Hateful Behavior

  Violent and Hateful Organizations and
  Individuals

  Youth Sexual and Physical Abuse

  Adult Sexual Abuse

  Human Trafficking and Smuggling

  Harassment and Bullying

Mental and Behavioral Health

Sensitive and Mature Themes

Integrity and Authenticity

Regulated Goods, Services, and
Commercial Activities

Privacy and Security

For You feed Eligibility Standards

Accounts and Features

Enforcement

🚫  **NOT ALLOWED**

- Making unwanted sexual comments or engaging in unwanted sexual behavior towards someone. This includes mimicking sexual acts using Duet or stickers, or making remarks about someone's intimate body parts or sexual performance
- Insulting someone's physical attributes, such as weight, facial features, or body parts
- Degrading or revictimizing people who have experienced a tragedy, including claiming they deserved it or dismissing their experience
- Wishing serious harm on someone, such as expressing a desire for them to die or contract a serious illness
- Doxing or encouraging others to do so
- Inciting harassment or promoting coordinated abuse, such as encouraging others to leave abusive comments or falsely report an account

🔴  **FYF INELIGIBLE & AGE-RESTRICTED**

- Hostile and profane language or behavior targeted at a private figure

✅  **ALLOWED**

- Criticizing an individual's content or actions
- Criticizing harassment or bullying behavior, as long as it does not involve retaliatory harassment
- Sharing some types of critical comments or images about public figures, as long as they don't constitute highly harmful forms of harassment or violate other policies
- Documentary or educational content that raises awareness about harassment and bullying
- Fiction or art, unless it's used to target or harm a real individual

## Was it helpful?

Yes    No

Next article

## Mental and Behavioral Health

Read next ↗



- Doxing or encouraging others to do so
- Inciting harassment or promoting coordinated abuse, such as encouraging others to leave abusive comments or falsely report an account

🚫 **FYF INELIGIBLE & AGE-RESTRICTED**

- Hostile and profane language or behavior targeted at a private figure

✅ **ALLOWED**

- Criticizing an individual's content or actions
- Criticizing harassment or bullying behavior, as long as it does not involve retaliatory harassment
- Sharing some types of critical comments or images about public figures, as long as they don't constitute highly harmful forms of harassment or violate other policies
- Documentary or educational content that raises awareness about harassment and bullying
- Fiction or art, unless it's used to target or harm a real individual

## Was it helpful?

Yes       No

Next article

## Mental and Behavioral Health

Read next ↗



Company
About TikTok
Newsroom
Contact
Careers
ByteDance

Programs
TikTok for Good
TikTok for Developers
Effect House
Advertise on TikTok
TikTok Embeds

Resources
Help Center
Safety Center
Privacy Center
Creator Academy
Community Guidelines
Transparency
Accessibility

Legal
Terms of Service
Privacy Policy
Intellectual Property Policy
TikTok Law Enforcement Guidelines
Children's Privacy Policy

English ▼

© 2025 TikTok



Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility                    ⌃

**Mental and Behavioral Health**       ⌄

  Suicide and Self-Harm

  Disordered Eating, Risky Weight
  Management, and Body Image

  Dangerous Activity and Challenges

Sensitive and Mature Themes            ⌃

Integrity and Authenticity             ⌃

Regulated Goods, Services, and
Commercial Activities                  ⌃

Privacy and Security                   ⌃

For You feed Eligibility Standards

Accounts and Features                  ⌄

Enforcement                            ⌃

# Mental and Behavioral Health

Released August 14, 2025

Effective September 13, 2025

We care deeply about your well-being. TikTok is a place to engage, have fun, and find a sense of belonging, while fostering both mental and physical wellness. We work hard to keep it that way.

## Suicide and Self-Harm

We want TikTok to be a place where you can discuss emotionally complex topics in a supportive way without increasing the risk of harm. **We don't allow showing, promoting, or sharing plans for suicide or self-harm.**

If you or someone you know is struggling, support is available. **Reach out to a suicide prevention** helpline **or contact emergency services.** If we see a specific, credible, and imminent threat—like someone posting a plan to hurt themselves—we may reach out to emergency services ourselves.

⌃    **More information**

    **NOT ALLOWED**

- Showing, promoting, or giving instructions for suicide or self-harm

- Sharing highly detailed descriptions of suicide or self-harm acts or methods

- Sharing or promoting hoaxes about suicide or self-harm

- Sharing plans for suicide or self-harm

🛑    **FYF INELIGIBLE & AGE-RESTRICTED**

- Descriptions of suicide and self-harm acts

- Documentary or educational content that reports on suicide or self-harm using detailed descriptions or non-graphic imagery

- Fiction or art that includes detailed descriptions or non-graphic imagery of suicide or self-harm

*Keep in mind that content with highly graphic imagery is generally not allowed, regardless of intent.*

✅    **ALLOWED**

- Sharing hopeful messages or personal stories about overcoming suicidal thoughts or self-harm, as long as there is no mention of specific methods

- Sharing information on suicide or self-harm prevention, like warning signs or where to get help

- Sharing accurate information to debunk or calm fears about suicide hoaxes

- Documentary or educational content that raises awareness about suicide and self-harm, unless it includes detailed descriptions or imagery

- Fiction or art that mentions suicide or self-harm, unless it includes detailed descriptions or imagery

• Fiction or art that mentions suicide or self-harm, unless it includes detailed descriptions or imagery



Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility                    ⌃

Mental and Behavioral Health           ⌄

  Suicide and Self-Harm

  Disordered Eating, Risky Weight
  Management, and Body Image

  Dangerous Activity and Challenges

Sensitive and Mature Themes            ⌃

Integrity and Authenticity             ⌃

Regulated Goods, Services, and         ⌃
Commercial Activities

Privacy and Security                   ⌃

For You feed Eligibility Standards

Accounts and Features                  ⌃

Enforcement                            ⌃

# Disordered Eating, Risky Weight Management, and Body Image

We want you to feel confident in creating and sharing as your authentic self, without pressure to compare your body to others. That's why **we don't allow content that promotes disordered eating and risky weight management behaviors. We also don't allow trading, marketing, or providing access to weight-related products and services that include exaggerated or harmful claims.**

In some regions, licensed and regulated medical entities with a registered business account on TikTok may be allowed to market certain health products.

If you or someone you know is experiencing concerns about body image, food, or exercise, **please reach out to a local helpline.**

⌃    **More information**

**Disordered Eating and Risky Weight Management** includes:

• Using dieting, fasting, or medication in unsafe ways

• Exercising to lose weight or build muscle when it could harm your health

• Trying to achieve fast or drastic weight or muscle changes that could cause damage

🚫   **NOT ALLOWED**

• Showing, describing, promoting, or glorifying disordered eating, including:

  ◦ Extremely low-calorie diets

  ◦ Starving, bingeing, and purging

  ◦ Participating in body comparison trends, such as comparing body parts to objects

• Trading, marketing, or providing access to:

  ◦ Products or services prone to misuse for weight loss or muscle gain, and that may pose serious health risks

  ◦ Any product or service promoted with exaggerated or harmful claims, such as unrealistic weight loss results

❗   **FYF INELIGIBLE & AGE-RESTRICTED**

• Showing, describing, or promoting:

  ◦ Diets, exercises, products, or services that include exaggerated or harmful claims, such as those promising fast or dramatic results

  ◦ Restrictive low-calorie diets, including extended intermittent fasting

  ◦ Products or services prone to misuse for weight loss or muscle gain, and that may pose serious health risks

  ◦ Medications or medical devices designed for weight loss or muscle gain

• Trading, marketing, or providing access to products or services that are promoted in the context of weight loss or muscle gain, with low associated health risks

• Promoting certain body types as "ideal" when tied to unhealthy contexts


♪ TikTok

Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility                                    ⌃

**Mental and Behavioral Health**                       ⌄

   Suicide and Self-Harm

   Disordered Eating, Risky Weight
   Management, and Body Image

   Dangerous Activity and Challenges

Sensitive and Mature Themes                            ⌃

Integrity and Authenticity                             ⌃

Regulated Goods, Services, and
Commercial Activities

Privacy and Security                                   ⌃

For You feed Eligibility Standards

Accounts and Features                                  ⌃

Enforcement                                            ⌃

   ◦ Medications or medical devices designed for weight loss or muscle gain

- Trading, marketing, or providing access to products or services that are promoted in the context of weight loss or muscle gain, with low associated health risks

- Promoting certain body types as "ideal" when tied to unhealthy contexts

- Showing or promoting cosmetic surgery, including surgery videos or referrals

- Talking about cosmetic surgery without explaining the risks

- Discussing ongoing personal struggles with disordered eating

- Documentary or educational content that reports on disordered eating using detailed descriptions or non-graphic imagery

*Keep in mind that content with highly graphic imagery is generally not allowed, regardless of intent.*

✅ **ALLOWED**

- Showing or describing:

   ◦ Competitive eating contests

   ◦ Fitness routines and nutrition focused on sports or general athleticism, not extreme weight loss

   ◦ Medically necessary surgery, such as including before-and-after images of the repair of a cleft lip, breast reconstruction after a mastectomy, or gender affirmation surgery

   ◦ Medically necessary health interventions under the guidance of a medical or health professional, such as restrictive diets before surgery

   ◦ Religious fasting or dietary practices

   ◦ Fasting for political protest or activism

   ◦ Physical disabilities or differentiy-abled bodies

## Dangerous Activity and Challenges

We welcome opportunities to participate in fun and creative trends. Most activities or challenges are suitable for everyone and bring people together, but some pose a risk of significant injury. That's why **we don't allow content that shows or promotes dangerous activities or challenges.**

We remove content that depicts activities likely to be imitated and that could cause significant physical harm. Content showing activities that may lead to moderate physical harm is ineligible for the FYF, restricted to users 18 and older, and may include a warning label. We also apply warning labels to content featuring stunts, combat sports, or extreme sports performed by professionals.

**Learn more about what to do if you see a dangerous online challenge.**

⌃   More information

**Dangerous Activity and Challenges**: Behavior done by non-professionals that carries clear risks, like dares, games, tricks, engaging in risky driving, or eating harmful items.

**Significant Physical Harm**: Injuries that usually require medical treatment and may cause temporary or lasting disability or disfigurement, such as broken bones, serious burns, poisoning, concussion, or choking.

**Moderate Physical Harm**: Minor injuries that likely don't require medical care, like small cuts with light bleeding or bruises.

🚫 **NOT ALLOWED**

disability or disfigurement, such as broken bones, serious burns, poisoning, concussion, or choking.

**Moderate Physical Harm**: Minor injuries that likely don't require medical care, like small cuts with light bleeding or bruises.

Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility                              ⌃

**Mental and Behavioral Health**                 ⌄

   Suicide and Self-Harm

   Disordered Eating, Risky Weight
   Management, and Body Image

   Dangerous Activity and Challenges

Sensitive and Mature Themes                      ⌃

Integrity and Authenticity                       ⌃

Regulated Goods, Services, and
Commercial Activities                            ⌃

Privacy and Security                             ⌃

For You feed Eligibility Standards

Accounts and Features                            ⌃

Enforcement                                      ⌃

🚫 **NOT ALLOWED**

- Showing or promoting:

   ◦ Dangerous activity that involves visible or imminent significant physical harm, like eating or drinking unsafe items

   ▫ Risky driving, such as driving under the influence

❗ **FYF INELIGIBLE & AGE-RESTRICTED**

- Showing or promoting dangerous activity that involves visible or imminent moderate physical harm

✅ **ALLOWED**

- Using weapons, such as spears and shields, in ceremonial settings, religious festivals, and cultural practices

- Showing professionals engaging in combat sports, extreme sports, or stunts

- Documentary or educational content that reports on dangerous activities and challenges, unless it enables copycat behavior

- Fiction or art, unless it promotes dangerous activities or challenges, or enables real-world behavior

## Was it helpful?

Yes      No

Next article

## Sensitive and Mature Themes

Read next ↗



**Company**
About TikTok
Newsroom
Contact
Careers
ByteDance

**Programs**
TikTok for Good
TikTok for Developers
Effect House
Advertise on TikTok
TikTok Embeds

**Resources**
Help Center
Safety Center
Privacy Center
Creator Academy
Community Guidelines
Transparency
Accessibility

**Legal**
Terms of Service
Privacy Policy
Intellectual Property Policy
TikTok Law Enforcement
Guidelines
Children's Privacy Policy



Showing or promoting:

⦿ Dangerous activity that involves visible or imminent significant physical harm, like eating or drinking unsafe items

⦿ Risky driving, such as driving under the influence

🛑 **FYF INELIGIBLE & AGE-RESTRICTED**

- Showing or promoting dangerous activity that involves visible or imminent moderate physical harm

✅ **ALLOWED**

- Using weapons, such as spears and shields, in ceremonial settings, religious festivals, and cultural practices
- Showing professionals engaging in combat sports, extreme sports, or stunts
- Documentary or educational content that reports on dangerous activities and challenges, unless it enables copycat behavior
- Fiction or art, unless it promotes dangerous activities or challenges, or enables real-world behavior

## Was it helpful?

Yes        No

Next article

# Sensitive and Mature Themes

Read next ↗



## TikTok

**Company**
About TikTok
Newsroom
Contact
Careers
ByteDance

**Programs**
TikTok for Good
TikTok for Developers
Effect House
Advertise on TikTok
TikTok Embeds

**Resources**
Help Center
Safety Center
Privacy Center
Creator Academy
Community Guidelines
Transparency
Accessibility

**Legal**
Terms of Service
Privacy Policy
Intellectual Property Policy
TikTok Law Enforcement Guidelines
Children's Privacy Policy

English ▼

© 2025 TikTok

Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility                    ⌃

Mental and Behavioral Health           ⌃

Sensitive and Mature Themes            ⌄

   Body Exposure and Sexualized
   Behaviors

   Shocking and Graphic Content

   Animal Abuse

Integrity and Authenticity             ⌃

Regulated Goods, Services, and
Commercial Activities                  ⌃

Privacy and Security                   ⌃

For You feed Eligibility Standards

Accounts and Features                  ⌃

Enforcement                            ⌃

# Sensitive and Mature Themes

Released August 14, 2025

Effective September 13, 2025

TikTok welcomes a range of content, from family-friendly to more mature. Because our community is global, we consider cultural and regional differences when handling content that may be sensitive. To respect local norms, we may apply these guidelines differently depending on the region.

## Body Exposure and Sexualized Behaviors

TikTok is a place to celebrate who you are—your identity, your body, and your culture. It's also a space where you can learn and have conversations about topics like sexuality and reproductive health. At the same time, we want to protect young people and respect diverse cultural norms. That's why **we don't allow certain types of body exposure or sexualized behavior**, including:

- Nudity or sexual activity

- Sexual Services

- Sexually suggestive acts or significant body exposure involving youth

While we generally don't allow adult nudity or sexual activity, we make limited exceptions for documentaries, sex education, fiction, and art. We also recognize that ideas about clothing and body exposure vary across cultures, and reflect local norms in how we apply these rules.

Some content, like significant adult body exposure or sexually suggestive behavior involving adults, is age-restricted and ineligible for the FYF.

⌃   **More information**

**Intent:** We don't remove content just because someone finds it sexually arousing. The creator's intent matters, which we infer by looking at context: bios, hashtags, captions, and sounds. We also understand that what's considered "suggestive" varies by region.

**Nudity:** Being unclothed and showing body parts that are typically covered based on cultural norms.

**Significant Body Exposure:** Being mostly unclothed or nearly nude. This includes implied nudity or wearing clothing that barely covers genitals, buttocks, or nipples.

**Intimate Kissing:** Kissing that suggests the start of a sexual interaction.

**Sexualized Framing:** Content that focuses on clothed intimate body parts through camera angles, editing, body positioning, or other methods and techniques.

**Sexually Suggestive Acts:** Movements or actions meant to arouse, like imitating sexual acts or highlighting intimate body parts. This includes thrusting, striptease, or licking objects with sexual expressions.

**Sexually Explicit Language:** Graphic descriptions of sexual acts, fantasies, or body parts, including kinks or fetishes.

**Sex Product:** Any object or device designed to be used for sexual pleasure, like a sex toy.

 **NOT ALLOWED**

- Showing:

    ◦ Penetrative sex, non-penetrative sex, or oral sex—including digital or illustrated images, like manga



Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility                         ︿

Mental and Behavioral Health                ︿

**Sensitive and Mature Themes**             ︿

    Body Exposure and Sexualized
    Behaviors

    Shocking and Graphic Content

    Animal Abuse

Integrity and Authenticity                  ︿

Regulated Goods, Services, and             ︿
Commercial Activities

Privacy and Security                        ︿

For You feed Eligibility Standards

Accounts and Features                       ︿

Enforcement                                 ︿

## 🚫 NOT ALLOWED

- Showing:

  - Penetrative sex, non-penetrative sex, or oral sex—including digital or illustrated images, like manga

  - Physical sexual arousal or stimulation

  - Fetish or kink behavior, such as BDSM or sexual behavior involving a focus on specific body parts

  - Nudity of adults or young people—including digital or illustrated images, like manga

  - Significant body exposure of young people, such as wearing only underwear or lingerie

- Facilitating access to sexual services, such as offering or asking for sexual acts, sexual chats or imagery, or pornography

- Showing young people engaging in intimate kissing, sexually suggestive acts, or sexualized framing

- Sexually explicit language involving or directed at young people

- In some regions, adults using sexually explicit language or showing or promoting sex products

**Learn more about CSAM in Youth Sexual and Physical Abuse**

## ❗ FYF INELIGIBLE & AGE-RESTRICTED

- Showing:

  - Significant adult body exposure, such as wearing only nipple covers or underwear that doesn't cover most of the buttocks

  - In some regions, moderate adult body exposure—such as the side breast or partial exposure of the buttocks that would be typically covered based on cultural norms

  - Adults engaging in intimate kissing, sexually suggestive acts, or sexualized framing

- In some regions, adults using sexually explicit language or showing or promoting sex products

## ⚠️ FYF INELIGIBLE

- In some regions, documentary, educational, medical, fictional, or artistic content that shows non-explicit adult sexualized behaviors or certain types of body exposure

- Showing young people in clothing that reveals cleavage or outlines intimate body parts

## ✅ ALLOWED

- Body exposure in everyday social contexts, such as wearing a swimsuit at a pool

- Nudity of infants during childbirth

- Implied nudity, partial buttocks, or bare chest or breasts of infants and toddlers under 4

- Bare breasts of men and boys, including transgender and intersex people, and non-binary people

- Kissing in non-intimate situations, such as a kiss on the cheek or quick kiss on the lips

- Documentary, educational, medical, fictional, or artistic content that includes non-explicit adult sexualized behaviors or certain types of body exposure

- Certain types of nudity and body exposure that are part of cultural behaviors and settings, like breastfeeding and traditional dress festivals (e.g. Carnival)

- Reproductive health and sex education content, including showing sexual health products like condoms or diaphragms for educational or informational purposes

Document title: Community Guidelines | TikTok
Capture URL: https://www.tiktok.com/community-guidelines/en/sensitive-mature-themes
Capture timestamp (UTC): Tue, 18 Nov 2025 06:24:25 GMT

- Certain types of nudity and body exposure that are part of cultural behaviors and settings, like breastfeeding and traditional dress festivals (e.g. Carnival)

- Reproductive health and sex education content, including showing sexual health products like condoms or diaphragms for educational or informational purposes

- Sexual language used in non-sexual contexts, such as humor or stand-up comedy

Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility                          ⌃

Mental and Behavioral Health                 ⌃

**Sensitive and Mature Themes**              ⌄

   Body Exposure and Sexualized
   Behaviors

   Shocking and Graphic Content

   Animal Abuse

Integrity and Authenticity                   ⌃

Regulated Goods, Services, and               ⌃
Commercial Activities

Privacy and Security                         ⌃

For You feed Eligibility Standards

Accounts and Features                        ⌃

Enforcement                                  ⌃

## Shocking and Graphic Content

TikTok is a place to discover content that sparks joy, not shock or disgust. That's why **we don't allow anything extremely gory, disturbing, or violent, especially when it could cause psychological harm.**

Some content that's less graphic or shared in the public interest may be allowed, but it may be viewable only for users 18 and older or ineligible for the FYF. This includes:

- Excessive blood

- Graphic physical altercations

- Graphic footage of events that would otherwise violate our rules but are in the public interest to view, such as wars and major disasters

- Graphic fictional violence

- Moments leading up to a serious accident or injury, even if the injury itself isn't shown

We may also add a warning to help you manage your experience, especially for potentially distressing scenes.

⌃    More information

🚫    **NOT ALLOWED**

- Depictions of real-world:

  ◦ Graphic incidents and violence, such as torture, the moment of someone's death, or the shooting of an individual

  ◦ Dead bodies

  ◦ Graphic injury, such as dismembered, mutilated, charred, or burned bodies

🔴    **FYF INELIGIBLE & AGE-RESTRICTED**

- Depictions of real-world:

  ◦ Bleeding that is significant or the focus of content

  ◦ Fighting between individuals that may cause physical injury

  ◦ Graphic incidents, violence, or injury in public-interest contexts, such as during war or natural disasters

*Keep in mind that some of the most graphic imagery, such as the moment of an individual's violent death or mutilation, is generally not allowed.*

⚠    **FYF INELIGIBLE**

- Showing peaceful deaths or dead bodies in traditional memorial contexts

*mutilation, is generally not allowed.*

Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility ⌃

Mental and Behavioral Health ⌃

**Sensitive and Mature Themes** ⌄

   Body Exposure and Sexualized
   Behaviors

   Shocking and Graphic Content

   Animal Abuse

Integrity and Authenticity ⌃

Regulated Goods, Services, and
Commercial Activities ⌃

Privacy and Security ⌃

For You feed Eligibility Standards

Accounts and Features ⌃

Enforcement ⌃

 **FYF INELIGIBLE**

- Showing peaceful deaths or dead bodies in traditional memorial contexts

- The build-up to a serious injury or accident, even if the injury itself isn't shown

- Fictional graphic incidents, violence, or injury

✅ **ALLOWED**

- Blood in an educational, scientific, fictional, or artistic context

- Food items made with blood, such as blood sausage, blood pudding, curd, or cake

---

## Animal Abuse

TikTok is a place that respects animals and celebrates the role they play in our lives across different cultures. **We don't allow animal abuse, cruelty, neglect, or any other form of animal exploitation.**

Learn more about <span style="color:red">animal abuse</span>, including how to contact animal welfare organizations in your region.

⌃    **More information**

**Poaching**: Wildlife hunting without clear legal permission.

**Bestiality**: Sexual activity between a human and an animal.

🚫 **NOT ALLOWED**

- Showing or promoting inhumane slaughter, mutilation, or abuse of animals, including staged animal fights

- Showing or promoting mistreatment or neglect of animals, such as malnourishment

- Showing dismembered, mutilated, charred, burned, or severely injured animals

- Poaching

- Bestiality

 **FYF INELIGIBLE**

- Showing graphic animal abuse or injury in a documentary, educational, or scientific context

- Showing the death or dismemberment of an animal in an established cultural context, such as a religious ritual

- Showing graphic animal injury or death that isn't a result of human action, such as animals preying on each other

- Showing the preparation of whole, dead, and uncooked animals. This includes skinning, cleaning, or dissecting the dead animal.

✅ **ALLOWED**

- Food-related animal body parts, including items typically available in grocery stores

- Documentary or educational content that reports on or condemns animal abuse, unless it shows graphic abuse



- Bestiality

⚠️ **FYF INELIGIBLE**

- Showing graphic animal abuse or injury in a documentary, educational, or scientific context
- Showing the death or dismemberment of an animal in an established cultural context, such as a religious ritual
- Showing graphic animal injury or death that isn't a result of human action, such as animals preying on each other
- Showing the preparation of whole, dead, and uncooked animals. This includes skinning, cleaning, or dissecting the dead animal.

✅ **ALLOWED**

- Food-related animal body parts, including items typically available in grocery stores
- Documentary or educational content that reports on or condemns animal abuse, unless it shows graphic abuse

## Was it helpful?

Yes     No

Next article

## Integrity and Authenticity

Read next ↗



© 2025 TikTok

Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility                        ^

Mental and Behavioral Health               ^

Sensitive and Mature Themes                ^

Integrity and Authenticity                 ⌄

   Misinformation

   Civic and Election Integrity

   Edited Media and AI-Generated
   Content (AIGC)

   Unoriginal Content and Intellectual
   Property Rights

   Deceptive Behaviors and Fake
   Engagement

Regulated Goods, Services, and            ^
Commercial Activities

Privacy and Security                       ^

For You feed Eligibility Standards

Accounts and Features                      ^

Enforcement                                ^

# Integrity and Authenticity

Released August 14, 2025

Effective September 13, 2025

TikTok is all about having authentic experiences—from the accounts you follow, to the content you see. We want you to feel confident that what you're watching is reliable, original, and shared by real people. This trust is what helps build strong communities both on and off-platform.

# Misinformation

In a global community, people will have different opinions—but we aim to ground those conversations in facts. That's why **we don't allow misinformation that could cause significant harm to individuals or society, no matter the intent of the person posting it.** This includes hoaxes, misleading AIGC, harmful conspiracy theories, and other false information related to public safety, crises, or major civic events—when such content may lead to violence or cause public panic. We work with independent fact-checkers and experts to assess the accuracy of content, and we factor their assessments into our moderation decisions.

Content is ineligible for the FYF if it contains misinformation that may cause moderate harm to individuals or society. To be cautious, unverified information about crises, major civic events, or content temporarily under review by fact-checkers is also ineligible for the FYF. We may also apply warning labels or prompt users to pause before sharing unconfirmed content.

⌃    **More information**

**Misinformation:** False or misleading content.

**Significant Harm**: Serious physical injury or death, severe psychological harm (such as trauma), large-scale property damage, or societal harm, including the undermining of fundamental social systems or institutions.

**Conspiracy Theories:** Beliefs about unexplained events, or claims that involve rejecting generally accepted explanations for events. This includes suggesting they were carried out by covert or powerful individuals or groups.

**Hoaxes**: False, fabricated, or misrepresented claims presented as facts.

🚫  **NOT ALLOWED**

- Misinformation that poses a risk to public safety or incites panic, including falsely presenting past crisis events as recent or claiming that critical resources are unavailable during emergencies

- Health misinformation that could cause significant harm, such as promoting unproven treatments that may be fatal, discouraging professional care for life-threatening conditions (e.g., vaccine effectiveness), or spreading false information about how such conditions are transmitted

- Misinformation that denies the existence of climate change, misrepresents its causes, or contradicts its established environmental impact

- Conspiracy theories or hoaxes that could cause significant harm, such as those that make a violent call to action or have links to previous violence

⚠️  **FYF INELIGIBLE**

- Conspiracy theories that assign blame to powerful groups or institutions, such as "the government" or a "secret society," and are likely to undermine public confidence or distort a matter of public importance

- Health misinformation that can result in moderate harm, such as false claims about treating non-life



⚠️ **FYF INELIGIBLE**

- Conspiracy theories that assign blame to powerful groups or institutions, such as "the government" or a "secret society," and are likely to undermine public confidence or distort a matter of public importance

- Health misinformation that can result in moderate harm, such as false claims about treating non-life threatening conditions like the common cold

- Sharing unedited media that is presented out of context and may mislead a person about a topic of public importance. For example, showing a crowd at a music concert and falsely calling it a political protest

- Misuse of authoritative sources to push misleading conclusions, such as selectively referencing certain scientific data to support a conclusion that is counter to the findings of the study

- Unverified claims about a crisis or major civic event

- Viral misinformation that poses an elevated risk of undermining the integrity of the information ecosystem or eroding trust in institutions, organizations, or businesses

✅ **ALLOWED**

- Personal opinions that don't include harmful misinformation

- People sharing personal medical experiences, as long as they don't promote misinformation or discourage professional care

- Conversations about climate policy, weather, or technology, as long as they don't deny or misrepresent scientific consensus

- Documentary or educational content reporting on or condemning misinformation

# Civic and Election Integrity

Elections are important events that often spark lively conversations and debate. We aim to respect these discussions while ensuring TikTok remains a space that brings people together. We welcome informed civic conversations, but draw the line at content that could mislead voters or cause real-world harm. That includes misinformation that could prevent people from voting, interfere with elections, or encourage the unlawful disruption of results.

We classify eligible political TikTok accounts as Government, Politician, and Political Party Accounts and apply a set of policies that prevent the use of certain features. These accounts aren't allowed to participate in incentive programs or creator monetization features.

We also don't allow paid political advertising. This includes creators being compensated for making branded political content, and the use of other promotional tools on the platform, such as Promote. We prohibit advertising of any kind by political figures and entities, and suspected paid political advertising is ineligible for the For You feed. However, eligible government entities may advertise in specific, approved categories—such as public health and safety information, tourism, and culture—after completing a certification process. Additionally, official electoral management bodies may run informational ads about election processes.

To help you manage your TikTok experience, we may add warning labels to content that our fact-checking partners cannot verify. **Learn more about our** election integrity **work.**

∧  More information

 🚫 **NOT ALLOWED**

- Misinformation about:

  ◦ How, when, and where to vote, or register to vote



🚫 **NOT ALLOWED**

- Misinformation about:
  - How, when, and where to vote, or register to vote
  - Voter eligibility or candidate qualifications
  - Laws or procedures for elections, referendums, ballot initiatives, or censuses
  - Election results
- Instructions or encouragement for illegal voting or electoral interference, including voter intimidation or threats to election workers and electoral observers
- Calling for unlawful disruption of a valid election outcome, such as through a coup
- Paid political advertising, whether or not it's disclosed
- Campaign fundraising by Government, Politician, or Political Party accounts

⚠️ **FYF INELIGIBLE**

- Unverified claims about an election, such as claiming all ballots are counted before a final tally
- Statements that misrepresent authoritative civic information, such as a false claim about the text of a parliamentary bill
- Suspected paid political advertising

## Edited Media and AI-Generated Content (AIGC)

We welcome creativity, including when it comes from new digital tools like generative artificial intelligence (AI). But generative AI and editing can blur the line between fact and fiction. To help keep content on TikTok trustworthy and provide people with important context about what they are viewing, **we require creators to label AI-generated or significantly edited content that shows realistic-looking scenes or people.** Unlabeled content may be removed, restricted, or labeled by our team, depending on the harm it could cause.

Even with labels, some edited or AI-generated content can still be harmful. **We don't allow content that's misleading about matters of public importance or harmful to individuals.**

∧    More information

**AI-Generated Content (AIGC):** Any image, video, or audio made or changed by AI. This can include realistic scenes or artistic styles, like anime, cartoons, or paintings.

**Significantly Edited Content:** Media that makes it seem like someone did or said something they didn't, or alters their appearance so much that they're unrecognizable. This includes:

- Cropping or cutting phrases to change meaning
- Rearranging or combining clips
- Changing speed or adding/removing audio or video parts

**Realistic-Appearing Scenes or People:** Content that looks like it could be real, such as AI-generated images that look like real photographs or footage.

**Likeness:** A recognizable image, video, or audio representation of a person, including their face, body, voice, and gestures.

Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility    ^

Mental and Behavioral Health    ^

Sensitive and Mature Themes    ^

**Integrity and Authenticity**    ⌄

   Misinformation

   Civic and Election Integrity

   Edited Media and AI-Generated
   Content (AIGC)

   Unoriginal Content and Intellectual
   Property Rights

   Deceptive Behaviors and Fake
   Engagement

Regulated Goods, Services, and    ^
Commercial Activities

Privacy and Security    ^

For You feed Eligibility Standards

Accounts and Features    ^

Enforcement    ^

**Realistic-Appearing Scenes or People:** Content that looks like it could be real, such as AI-generated images that look like real photographs or footage.

**Likeness:** A recognizable image, video, or audio representation of a person, including their face, body, voice, and gestures.

**Public Figures:** People 18 and older with a significant public role, such as a government official, politician, business leader, or celebrity. We don't identify people under 18 as public figures.

**Private Figures:** All people under 18, and adults who aren't public figures.

### 🔖 REQUIRED DISCLOSURE (using the AIGC label or a clear caption, watermark, or sticker)

You must label content that uses AI or includes significant edits to show realistic-looking people or scenes. You can add your own clear caption, sticker, or watermark. For AI-generated content, you can also use our AIGC label.

Disclosure is needed when content isn't harmful but could be confusing, including when:

- A face is replaced with someone else's

- AI tools make it look like someone said something they didn't

- A background, object, or person is added or removed in a misleading way

- AI-generated audio mimics the voice of a real person

Disclosure isn't needed when:

- Making small edits like color correction, reframing, or cropping

- Using artistic styles, like anime

- Using generic text-to-speech (TTS) narration, when the TTS isn't a recognizable voice of a known individual

### 🚫 NOT ALLOWED

- Using the likeness of private figures without consent

- Sexualized, fetishized, or victimizing depictions

- AI-created likenesses made to bully or harass

- Accounts focused on AI images of youth in clothing suited for adults, or sexualized poses or facial expressions

- AIGC or significantly edited content that misleads about a matter of public importance, such as:

  ◦ Content made to look like it comes from a real news source

  ◦ A crisis event, like a natural disaster or conflict

  ◦ A public figure being degraded, harassed, or linked to criminal behavior

  ◦ A public figure taking political stances, supporting products, or commenting on public issues they haven't actually addressed

  ◦ A political endorsement or condemnation that never happened

- Any content that breaks our Community Guidelines, including those on impersonation, misinformation, and hate speech, even if it's AI-generated

### ⚠️ FYF INELIGIBLE

- Any realistic-appearing content which isn't yet confirmed to be AIGC or significantly edited content, but presents matters of public importance in a way that could lead to misinterpretation, or cause harm to private figures



⚠ **FYF INELIGIBLE**

- Any realistic-appearing content which isn't yet confirmed to be AIGC or significantly edited content, but presents matters of public importance in a way that could lead to misinterpretation, or cause harm to private figures

✓ **ALLOWED**

- Humor or art, such as a spoof, meme, or TikTok dance

## Unoriginal Content and Intellectual Property Rights

The creativity on TikTok is what makes our community special. We want to protect that. You should only post content you created or have the right to share. **We don't allow content that violates someone else's intellectual property (IP) rights.** If we become aware of content that breaks these rules, we will remove it. **Learn more about our IP policies.**

Content is also ineligible for the FYF if it includes unoriginal or reused material without anything new.

If you think your copyright or trademark rights have been violated, you can submit a copyright or trademark report through our in-app tools.

⌃    **More information**

**Intellectual Property (IP)**: Legal rights that protect creative work you've made.

**Copyrights**: Legal protections for original works like music, videos, or artwork. They cover how the idea is expressed, not the idea or fact itself.

**Trademarks**: Words, symbols, slogans, or designs that identify and set apart a product or service from others.

🚫 **NOT ALLOWED**

- Content that violates someone else's copyrights, trademarks, or other IP rights

⚠ **FYF INELIGIBLE**

- Reused or unoriginal content posted without creative edits, such as clips that show someone else's watermark or logo
- Low-quality or minimally edited content, such as short clips made from GIFs only

## Deceptive Behaviors and Fake Engagement

We want TikTok to be a trustworthy space where people around the world can create, connect, and learn. Authentic engagement is core to that experience—it helps power the recommendations you see.

That's why we **don't allow accounts that mislead or try to manipulate our platform**, or **the trade of services that artificially boost engagement or trick the recommendation system.** This includes behaviors like covert influence operations, impersonation, spam, fake reviews, and sharing hacked materials in harmful ways. You can have multiple

We want TikTok to be a trustworthy space where people around the world can create, connect, and learn. Authentic engagement is core to that experience—it helps power the recommendations you see.

That's why we **don't allow accounts that mislead or try to manipulate our platform, or the trade of services that artificially boost engagement or trick the recommendation system**. This includes behaviors like covert influence operations, impersonation, spam, fake reviews, and sharing hacked materials in harmful ways. You can have multiple accounts—for example, for fan content or creative expression—but not to deceive others or break the rules. If we find deceptive account behavior, we may:

- Ban your account

- Ban additional or new accounts you create

- Restrict your account, which could include limiting your ability to post new content, appear in top search results, or in the FYF

We strictly prohibit automation tools, scripts, or other tricks designed to bypass our systems. These can result in content removal, account bans, or other enforcement. If your account is restricted or banned, you may not create or use another account to get around it.

If we detect accounts or content with inauthentic metrics, we'll remove fake likes, followers, or other inflated signals. Content that tries to manipulate people into giving gifts or inflating likes or follows isn't eligible for the FYF.

⌃    **More information**

**Covert Influence Operations (CIO):** Coordinated, inauthentic behaviors where networks of accounts work together to mislead people or our systems and try to strategically influence public discussion. This may include attempting to undermine the results of an election, influencing parts of an armed conflict, or shaping public discussion of social issues.

🚫  **NOT ALLOWED**

- CIO activity, including:

  - Trying to deceptively influence elections, social issues, politics, or armed conflicts, including through hiding your account's real identity or intent

  - Accounts coordinating secretly to promote a candidate or political issue

  - Posting content on behalf of foreign entities (like a government or military) without saying so. We may make it harder to find content from accounts suspected of doing this while we review them

- Hacked materials distribution, when this poses a significant risk of harm. Note that we may allow limited discussion or distribution of hacked materials if there's a clear public interest and the content follows journalistic best practices

- Spam, such as:

  - Using automation to run many accounts or send repetitive content

  - Posting a large amount of irrelevant material

  - Buying or selling followers or engagement for financial gain

- Using bots or scripts to write fake reviews or comments, or to increase likes or shares

- Impersonation by pretending to be someone else without clearly stating that the account is a fan or parody account in the display name

- Pretending to be a fake person or organization with the goal of misleading people

- Circumvention of our policies, which includes:

  - Spreading violative content across multiple accounts

  - Using a different account to continue violating policies after being banned

  - Returning to TikTok after being permanently banned for severe violations

Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility    ⌃

Mental and Behavioral Health    ⌃

Sensitive and Mature Themes    ⌃

Integrity and Authenticity    ⌄

   Misinformation

   Civic and Election Integrity

   Edited Media and AI-Generated
   Content (AIGC)

   Unoriginal Content and Intellectual
   Property Rights

   Deceptive Behaviors and Fake
   Engagement

Regulated Goods, Services, and
Commercial Activities    ⌃

Privacy and Security    ⌃

For You feed Eligibility Standards

Accounts and Features    ⌃

Enforcement    ⌃

- Circumvention of our policies, which includes:
  - Spreading violative content across multiple accounts
  - Using a different account to continue violating policies after being banned
  - Returning to TikTok after being permanently banned for severe violations
  - Using another account to avoid restrictions, such as comment blocks or FYF-ineligible content restrictions
- Trading, marketing, or providing access to services that artificially increase engagement, such as:
  - Followers or likes
  - Fake reviews
  - Using AI or bot accounts to drive traffic
- Sharing how-to guides or tips for boosting engagement in fake or deceptive ways

⚠️ **FYF INELIGIBLE**

- Tricking others into increasing engagement, such as:
  - "Like-for-like" promises
  - False incentives for gifting or following
  - Misleading claims meant to boost views or popularity

## Was it helpful?

Yes     No

---

Next article

# Regulated Goods, Services, and Commercial Activities

Read next ↗

Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility ⌄

Mental and Behavioral Health ⌄

Sensitive and Mature Themes ⌄

**Integrity and Authenticity** ⌄

Misinformation

Civic and Election Integrity

Edited Media and AI-Generated Content (AIGC)

Unoriginal Content and Intellectual Property Rights

Deceptive Behaviors and Fake Engagement

Regulated Goods, Services, and Commercial Activities ⌄

Privacy and Security ⌄

For You feed Eligibility Standards

Accounts and Features ⌄

Enforcement ⌄



♪ **TikTok**

**Company**
About TikTok
Newsroom
Contact
Careers
ByteDance

**Programs**
TikTok for Good
TikTok for Developers
Effect House
Advertise on TikTok
TikTok Embeds

**Resources**
Help Center
Safety Center
Privacy Center
Creator Academy
Community Guidelines
Transparency
Accessibility

**Legal**
Terms of Service
Privacy Policy
Intellectual Property Policy
TikTok Law Enforcement Guidelines
Children's Privacy Policy



- Using another account to avoid restrictions, such as comment blocks or FYF-ineligible content restrictions
- Trading, marketing, or providing access to services that artificially increase engagement, such as:
  - Followers or likes
  - Fake reviews
  - Using AI or bot accounts to drive traffic
- Sharing how-to guides or tips for boosting engagement in fake or deceptive ways

⚠️ **FYF INELIGIBLE**

- Tricking others into increasing engagement, such as:
  - "Like-for-like" promises
  - False incentives for gifting or following
  - Misleading claims meant to boost views or popularity

## Was it helpful?

Yes    No

---

Next article

## Regulated Goods, Services, and Commercial Activities

Read next ↗

**Left sidebar navigation:**

Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility ⌃

Mental and Behavioral Health ⌃

Sensitive and Mature Themes ⌃

**Integrity and Authenticity** ⌄

  Misinformation

  Civic and Election Integrity

  Edited Media and AI-Generated Content (AIGC)

  Unoriginal Content and Intellectual Property Rights

  Deceptive Behaviors and Fake Engagement

Regulated Goods, Services, and Commercial Activities ⌃

Privacy and Security ⌃

For You feed Eligibility Standards

Accounts and Features ⌃

Enforcement ⌃



**TikTok**

**Company**
About TikTok
Newsroom
Contact
Careers
ByteDance

**Programs**
TikTok for Good
TikTok for Developers
Effect House
Advertise on TikTok
TikTok Embeds

**Resources**
Help Center
Safety Center
Privacy Center
Creator Academy
Community Guidelines
Transparency
Accessibility

**Legal**
Terms of Service
Privacy Policy
Intellectual Property Policy
TikTok Law Enforcement Guidelines
Children's Privacy Policy

English ▼

© 2025 TikTok

Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility                    ⌃

Mental and Behavioral Health           ⌃

Sensitive and Mature Themes            ⌃

Integrity and Authenticity             ⌃

**Regulated Goods, Services, and**     ⌄
**Commercial Activities**

    Regulated Goods and Services

    Commercial Disclosure and Paid
    Marketing

    Frauds and Scams

Privacy and Security                   ⌃

For You feed Eligibility Standards

Accounts and Features                  ⌃

Enforcement                            ⌃

# Regulated Goods, Services, and Commercial Activities

Released August 14, 2025

Effective September 13, 2025

TikTok is a place to share and learn about all kinds of products and services, but some may come with higher risks—like addiction, danger, or fraud. We moderate content about regulated or commercial activities to help prevent physical or financial harm. In some cases, when potential harms can be mitigated by additional controls, we allow limited paid advertising from verified registered business accounts that meet TikTok's policies and legal requirements.

## Regulated Goods and Services

**We don't allow trading, marketing, or providing access to regulated, prohibited, or high-risk goods and services.** For the most harmful goods and services, we prohibit both promotion and showing their use. For certain products like alcohol, we allow some content, but may apply restrictions to reduce potential risks. **Learn more about substance use support** here, **and gambling resources** here.

In some regions and on LIVE, our treatment of this type of content may be different. We provide limited exceptions for registered business accounts and verified TikTok Shop sellers meeting our standards.

**Learn how to apply for registered business account authorization** here.

⌃    More information

**Trade:** The sale, purchase, exchange, giveaway, or redirection of goods or services. This includes posting links, sharing contact or location information, or directing people off-platform.

**Tobacco Products:** Vaping products, synthetic nicotine, combustible tobacco (like cigarettes), smokeless tobacco (like chewing tobacco), E-cigarettes, and other electronic nicotine delivery systems.

**Regulated Substances:** Illegal drugs, prescription or over-the-counter medications, compressed air canisters (whippets), nitrite poppers, and products marketed for weight loss or muscle gain.

**Firearms:** Professionally manufactured or improvised weapons (like ghost guns or 3D-printed guns), accessories, and ammunition.

**Gambling:** Betting money or something of value on uncertain outcomes for financial gain.

**Gambling-like activities** may not involve money, as can be the case with social casinos or mystery boxes.

**Mystery Value Products:** Goods with unknown or variable worth, including money or in-game currency.

🚫  **NOT ALLOWED**

- Trading, marketing, or providing access to (except where otherwise specified below):

    ◦ Alcohol, tobacco, drugs, or other regulated substances

    ◦ Firearms, ammunition, explosive weapons, or instructions on how to make them

    ◦ Gambling, gambling-like activities, or mystery value products

    ◦ Counterfeit or fake goods

    ◦ Fake currency, forged documents, or stolen data

    ◦ Sexual services, including solicitation or sexcamming

    ◦ Engagement services like selling likes or followers



- ○ Counterfeit or fake goods

  - ▷ Fake currency, forged documents, or stolen data

  - ○ Sexual services, including solicitation or sexcamming

  - ○ Engagement services like selling likes or followers

  - ○ Live animals, as well as endangered species or items made from them, like ivory or rhino horn

  - ○ Hate speech-related items, such as books or apparel with hate symbols

  - ○ Fireworks, cold weapons (like pepper spray), hazardous materials, body parts, or historical artifacts

- Providing instructions for making or using regulated substances, such as homemade drugs or weapons

- Showing, promoting, or using drugs or other regulated substances recreationally. In some regions, this includes cannabis

- Showing or promoting young people participating in gambling, using alcohol, tobacco, or fireworks, or having weapons

- Showing the misuse of everyday items to get intoxicated

- In some regions, showing or promoting gambling or gambling-like activities, or firearms or explosive weapons

🛑 **FYF INELIGIBLE & AGE-RESTRICTED**

- Showing or promoting cannabis or cannabis-related items, or adult tobacco use

- In some regions, showing or promoting gambling activities or gambling-like activities, or firearms or explosive weapons

⚠️ **FYF INELIGIBLE**

- In some regions, showing adults having or consuming alcohol

✅ **ALLOWED**

- In some regions, content from registered business accounts that meet our safety and eligibility standards that market prescription drugs

- In some regions, content from registered business accounts or TikTok Shop Sellers that meet our safety and eligibility standards that sell, market, or provide access to:

  - ▷ Alcohol

  - ▷ Gambling, gambling-like activities, or mystery value products

  - ▷ OTC drugs

- Discussions of substance misuse or recovery

- Advocacy around public policies, such as drug or gun regulation

- Documentary or educational content that raises awareness about regulated goods and services

- Fiction or art, unless it enables real-world access to regulated goods and services

## Commercial Disclosure and Paid Marketing

We value authentic viewpoints and want discussions on TikTok about products and services to be open and honest.

TikTok

Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility

Mental and Behavioral Health

Sensitive and Mature Themes

Integrity and Authenticity

**Regulated Goods, Services, and
Commercial Activities**

 Regulated Goods and Services

 Commercial Disclosure and Paid
 Marketing

 Frauds and Scams

Privacy and Security

For You feed Eligibility Standards

Accounts and Features

Enforcement

# Commercial Disclosure and Paid Marketing

We value authentic viewpoints and want discussions on TikTok about products and services to be open and honest.
**If you're posting commercial content on TikTok, you must clearly disclose it using the content disclosure
setting.** This helps people understand when you're marketing something.

Disclosure is required when you're:

- Promoting your own business, product, or service

- Posting branded content, including reviews or endorsements, and receiving any kind of incentive in exchange

All branded content must also follow TikTok's Branded Content Policy, Ads Creative Policy, and Industry Entry Policy.

If commercial content isn't disclosed using the content disclosure setting, it will be ineligible for the FYF. If we find
commercial content that hasn't been properly disclosed, we may apply the content disclosure setting or remove it
from the FYF. Repeated failure to make a disclosure can lead to your account being temporarily restricted from
posting content, or can lead to an account ban.

**We don't allow any form of paid political advertising on TikTok. Learn more about our policy regarding
Government, Politician and Political Party accounts.**

∧    More information

**Disclosures:** Clear statements that explain your connection to the product or service.

▣    **REQUIRED DISCLOSURE (using the content disclosure setting)**

- Marketing for your own business, product, or service

- Promotion or review of a third-party brand, product, or service in exchange for money, goods, or any other
  kind of incentive

⚠    **FYF INELIGIBLE**

- Commercial content that isn't disclosed using TikTok's content disclosure setting

# Frauds and Scams

TikTok is a place where you can learn from and engage with a wide variety of topics, and we don't want anyone to
take advantage of your desire to engage and explore new topics. **That's why we don't allow any attempts to scam,
trick or defraud people.** This includes helping with financial scams, impersonating a celebrity to sell something or
communicate with users, or fraud of any kind. **Learn more about how to identify online scams and protect
yourself.**

∧    More information

**Frauds and Scams:** Deceptive acts meant to take advantage of others, usually to steal money or personal
information.

**Money Muling:** Moving stolen or illegal money for someone else.

**Multi-level Marketing (MLM):** Recruiting people for companies that sell through a pyramid-style structure.

🚫    **NOT ALLOWED**





More information

**Frauds and Scams:** Deceptive acts meant to take advantage of others, usually to steal money or personal information.

**Money Muling:** Moving stolen or illegal money for someone else.

**Multi-level Marketing (MLM):** Recruiting people for companies that sell through a pyramid-style structure.

🚫 **NOT ALLOWED**

- Promoting or helping with scams that target individuals, including:
  - ▫ Financial scams, such as fake investment offers or "get-rich-quick" schemes
  - ▫ Phishing or identity theft
  - ▫ Job or transaction-related scams
- Teaching people how to carry out scams or fraud
- Money muling
- Multi-level marketing (MLM)
- Trading fake currency, forged documents, and stolen information

## Was it helpful?

Yes          No

---

Next article

## Privacy and Security

**Read next ↗**



**Company**
About TikTok
Newsroom
Contact
Careers
ByteDance

**Programs**
TikTok for Good
TikTok for Developers
Effect House
Advertise on TikTok
TikTok Embeds

**Resources**
Help Center
Safety Center
Privacy Center
Creator Academy
Community Guidelines
Transparency
Accessibility

**Legal**
Terms of Service
Privacy Policy
Intellectual Property Policy
TikTok Law Enforcement Guidelines
Children's Privacy Policy

English ▼

© 2025 TikTok



Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility                          ⌃

Mental and Behavioral Health                 ⌃

Sensitive and Mature Themes                  ⌃

Integrity and Authenticity                   ⌃

Regulated Goods, Services, and               ⌃
Commercial Activities

**Privacy and Security**                     ⌄

   Personal Information

   Platform Security

For You feed Eligibility Standards

Accounts and Features                        ⌃

Enforcement                                  ⌃

# Privacy and Security

Released August 14, 2025

Effective September 13, 2025

Keeping your personal information safe—and making sure TikTok stays secure—is a big part of earning your trust.

## Personal Information

What you share online can reach anyone. That's why **we don't allow content with personal information that could lead to stalking, identity theft, fraud, or other harm**. This includes content that someone has posted themselves or that they consented to being shared by others.

We may also remove moderate risk personal information shared without consent if it puts someone at risk of psychological harm. We generally require additional context to remove these types of personal information.

If you think your privacy has been violated, you can report it here.

⌃    **More information**

**High Risk Personal Information**: Information that is characterized by a heightened potential to cause physical, financial, or psychological harm to the individual. It includes:

- Home Address

- Account Login Information

- Sensitive Payment Information

- Identity Numbers

**Moderate Risk Personal Information**: Information that isn't inherently risky, but may still cause harm—like emotional distress, reputational damage, or unwanted contact—especially when combined with other data. Examples include:

- Contact details or date of birth

- Medical Information

- Image/audio likeness

- Private communications on sensitive subjects, disclosed by individuals who were not part of the exchange

🚫 **NOT ALLOWED**

- Sharing high risk personal information

- Sharing moderate risk personal information when it's likely to cause psychological harm or emotional distress for an individual. We generally require additional context to remove this information

## Platform Security

Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility                      ⌄

Mental and Behavioral Health             ⌄

Sensitive and Mature Themes              ⌄

Integrity and Authenticity               ⌄

Regulated Goods, Services, and           ⌄
Commercial Activities

**Privacy and Security**                 ⌄

   Personal Information

   Platform Security

For You feed Eligibility Standards

Accounts and Features                    ⌄

Enforcement                              ⌄

## Platform Security

We work hard to keep TikTok safe, secure, and running smoothly. That includes stopping any attempts to break into the platform, steal information, or abuse our systems.

We advise against clicking suspicious links or sharing your private account information. **Learn more about our approach to privacy and security here.**

⌃   **More information**

🚫  **NOT ALLOWED**

- Giving someone else your login information or letting them break TikTok's rules on your account

- Using unauthorized ways to access TikTok or creating fake versions of the platform

- Sharing files or messages that carry malware or other harmful software, such as viruses or worms

- Trying to steal personal information, hack accounts, or access data using tricks like phishing, smishing, or automated tools

- Trying to reverse-engineer TikTok's code, systems, or algorithms—or create your own versions based on them

## Was it helpful?

Yes        No

Next article
## For You feed Eligibility Standards

Read next ↗



**TikTok**

**Company**
About TikTok
Newsroom
Contact
Careers
ByteDance

**Programs**
TikTok for Good
TikTok for Developers
Effect House
Advertise on TikTok
TikTok Embeds

**Resources**
Help Center
Safety Center
Privacy Center
Creator Academy
Community Guidelines
Transparency
Accessibility

**Legal**
Terms of Service
Privacy Policy
Intellectual Property Policy
TikTok Law Enforcement Guidelines
Children's Privacy Policy

## Platform Security

We work hard to keep TikTok safe, secure, and running smoothly. That includes stopping any attempts to break into the platform, steal information, or abuse our systems.

We advise against clicking suspicious links or sharing your private account information. **Learn more about our approach to privacy and security here.**

∧    More information

  **NOT ALLOWED**

- Giving someone else your login information or letting them break TikTok's rules on your account

- Using unauthorized ways to access TikTok or creating fake versions of the platform

- Sharing files or messages that carry malware or other harmful software, such as viruses or worms

- Trying to steal personal information, hack accounts, or access data using tricks like phishing, smishing, or automated tools

- Trying to reverse-engineer TikTok's code, systems, or algorithms—or create your own versions based on them

## Was it helpful?

Yes        No

Next article

## For You feed Eligibility Standards

Read next ↗



**TikTok**

**Company**
About TikTok
Newsroom
Contact
Careers
ByteDance

**Programs**
TikTok for Good
TikTok for Developers
Effect House
Advertise on TikTok
TikTok Embeds

**Resources**
Help Center
Safety Center
Privacy Center
Creator Academy
Community Guidelines
Transparency
Accessibility

**Legal**
Terms of Service
Privacy Policy
Intellectual Property Policy
TikTok Law Enforcement Guidelines
Children's Privacy Policy

English ▼

© 2025 TikTok

Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility                                    ⌄

Mental and Behavioral Health                           ⌄

Sensitive and Mature Themes                            ⌄

Integrity and Authenticity                             ⌄

Regulated Goods, Services, and                         ⌄
Commercial Activities

Privacy and Security                                   ⌄

**For You feed Eligibility Standards**

Accounts and Features                                  ⌄

Enforcement                                            ⌄

# For You feed Eligibility Standards

Released August 14, 2025

Effective September 13, 2025

The FYF is the heart of the TikTok experience. It's where you can discover new interests and hobbies, and where creators build thriving new communities. It's powered by a recommendation system that helps connect you to content, creators, and topics you might enjoy. The system looks at things like what you like, share, comment on, and search for, as well as what's trending. **Learn more about the tools that help you understand and customize your recommendations.**

We maintain content eligibility standards for the FYF that prioritize safety, and are informed by the diversity of our community and cultural practices. While the spontaneity of the FYF is what makes TikTok unique, it's intended for a range of audiences that includes everyone from teenagers to great grandparents. We make ineligible for the FYF certain content that may not be suitable for a broad audience. **Learn more about the types of content we leave out from the FYF in the "FYF Ineligible" sections throughout our Community Guidelines.**

Even if a video doesn't make it to the FYF, people may still find it through search or by going to a creator's account. If a video isn't getting many views, it also doesn't necessarily mean it broke a rule. Creators can check TikTok's analytics to see how their videos are performing, including if there were any made ineligible for recommendation.

Our recommendation system is built to help people discover and enjoy a wide range of content—not just the same kinds of videos over and over. We aim to prevent our systems from repeatedly recommending content that could lead to a negative experience, such as extreme fitness or dieting, sexual suggestiveness, sadness, or overgeneralized mental health advice. During moments of crisis or unrest, we may also interrupt repetitive recommendations to help ensure people continue to see a broad mix of content, creators, and perspectives—just as the FYF is designed to do. **Learn more about our work to keep your experience safe, varied, and fun.**

## Was it helpful?

Yes          No

Next article

## Accounts and Features

Read next ↗

**TikTok**

| Company | Programs | Resources | Legal |
|---|---|---|---|
| About TikTok | TikTok for Good | Help Center | Terms of Service |
| Newsroom | TikTok for Developers | Safety Center | Privacy Policy |
| Contact | Effect House | Privacy Center | Intellectual Property Policy |
| Careers | Advertise on TikTok | Creator Academy | TikTok Law Enforcement Guidelines |
| ByteDance | TikTok Embeds | Community Guidelines | |

Document title: Community Guidelines | TikTok
Capture URL: https://www.tiktok.com/community-guidelines/en/fyf-standards
Capture timestamp (UTC): Tue, 18 Nov 2025 06:32:07 GMT

Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility                          ^

Mental and Behavioral Health                 ^

Sensitive and Mature Themes                  ^

Integrity and Authenticity                   ^

Regulated Goods, Services, and
Commercial Activities                        ^

Privacy and Security                         ^

For You feed Eligibility Standards

Accounts and Features                        ^

Enforcement                                  ^

The FYF is the heart of the TikTok experience. It's where you can discover new interests and hobbies, and where creators build thriving new communities. It's powered by a recommendation system that helps connect you to content, creators, and topics you might enjoy. The system looks at things like what you like, share, comment on, and search for, as well as what's trending. **Learn more about the** tools **that help you understand and customize your** recommendations.

We maintain content eligibility standards for the FYF that prioritize safety, and are informed by the diversity of our community and cultural practices. While the spontaneity of the FYF is what makes TikTok unique, it's intended for a range of audiences that includes everyone from teenagers to great grandparents. We make ineligible for the FYF certain content that may not be suitable for a broad audience. **Learn more about the types of content we leave out from the FYF in the "FYF Ineligible" sections throughout our Community Guidelines.**

Even if a video doesn't make it to the FYF, people may still find it through search or by going to a creator's account. If a video isn't getting many views, it also doesn't necessarily mean it broke a rule. Creators can check TikTok's analytics to see how their videos are performing, including if there were any made ineligible for recommendation.

Our recommendation system is built to help people discover and enjoy a wide range of content—not just the same kinds of videos over and over. We aim to prevent our systems from repeatedly recommending content that could lead to a negative experience, such as extreme fitness or dieting, sexual suggestiveness, sadness, or overgeneralized mental health advice. During moments of crisis or unrest, we may also interrupt repetitive recommendations to help ensure people continue to see a broad mix of content, creators, and perspectives—just as the FYF is designed to do. **Learn more about our work to keep your experience** safe, varied, and fun.

## Was it helpful?

Yes          No

Next article

## Accounts and Features

Read next ↗



### Company

About TikTok

Newsroom

Contact

Careers

ByteDance

### Programs

TikTok for Good

TikTok for Developers

Effect House

Advertise on TikTok

TikTok Embeds

### Resources

Help Center

Safety Center

Privacy Center

Creator Academy

Community Guidelines

Transparency

Accessibility

### Legal

Terms of Service

Privacy Policy

Intellectual Property Policy

TikTok Law Enforcement Guidelines

Children's Privacy Policy

English ▼

© 2025 TikTok

Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility ⌃

Mental and Behavioral Health ⌃

Sensitive and Mature Themes ⌃

Integrity and Authenticity ⌃

Regulated Goods, Services, and
Commercial Activities ⌃

Privacy and Security ⌃

For You feed Eligibility Standards

**Accounts and Features** ⌄

   Accounts

   TikTok LIVE

   Search

   External Links

   Comments

   Direct Messages

   Monetization

Enforcement ⌃

# Accounts and Features

Released August 14, 2025

Effective September 13, 2025

## Accounts

**You must be at least 13 years old to have a TikTok account**, though some places have different age restrictions. In the U.S., kids under 13 get a special TikTok experience with extra safety features, plus their own Privacy Policy. If we find that someone is too young to have an account, we will ban that account.

We'll also take action if someone breaks our Community Guidelines. That can mean a warning, a restriction, or a full ban, depending on what happened. If suspicious activity is detected, we may also require a user to complete some verification steps—such as SMS or email confirmation, CAPTCHA, or a login via a verified mobile device—to confirm that they own the account.

We may ban an account or user for:

- **Repeated rule violations**

- **A single, severe violation**

- **Trying to avoid enforcement**

- **Running accounts that are dedicated to breaking the rules, like spreading hate, the unauthorized trading of regulated, prohibited (e.g. counterfeit), or high-risk goods, or pretending to be someone else**

If someone seriously breaks the rules or tries to dodge enforcement, we may ban all of their accounts.

<u>Severe violations include:</u>

- Inciting or threatening serious violence when there's a credible risk of harm or danger to public safety

- Engaging in child sexual abuse, including sharing, helping others access, or downloading CSAM, soliciting youth, or grooming

- Sharing graphic imagery of adult sexual abuse, including non-consensual acts or image-based abuse

- Coordinating or facilitating human trafficking or smuggling

We may also restrict or ban accounts belonging to people who have engaged in egregious off-platform behaviors, when we have sufficient evidence to support enforcement. These behaviors include being the member of a violent or hateful organization, committing an act of sexual abuse against a youth or adult, promoting or engaging in severe violent crimes (like murder), or engaging in human trafficking. When assessing these cases, we consider several factors, including the time since the act occurred, whether penalties have been served, efforts toward rehabilitation, and the potential impact on public interest discussion.

Sometimes, accounts that don't break the rules still post a lot of content that's ineligible for the FYF. In those cases, we may make the account and its content ineligible for the FYF and harder to find. **Learn more about account enforcement** here, **and how to report an account** here.

<u>News and Government, Politician, and Political Party Accounts</u>

News and Government, Politician, and Political Party accounts can play important roles in civic processes and civil society. Like everyone else, the content they post must follow our rules—but we may handle account enforcement for them a little differently, to support free expression and human rights.

If one of these accounts posts something that is a severe violation, we may ban the account. For repeated, but non-

News and Government, Politician, and Political Party accounts can play important roles in civic processes and civil society. Like everyone else, the content they post must follow our rules—but we may handle account enforcement for them a little differently, to support free expression and human rights.

If one of these accounts posts something that is a severe violation, we may ban the account. For repeated, but non-severe violations, we may:

- Temporarily block their content from the FYF and appearing in followers' feeds
- In limited circumstances, also temporarily restrict the account from posting new content

**Learn more about how we handle these types of accounts here.**

∧    **More information**

**News Entities:** Organizations mainly focused on sharing news to inform or educate. To qualify as a news account, the account must be legally licensed, certified or recognized by an intergovernmental organization, regulator, or reputable press organization.

**Governments and Politicians:** These include elected officials, candidates, government agencies, cabinet ministers, and official spokespeople. You can find details about who qualifies as a government, politician and political party account here.

## TikTok LIVE

LIVE creators must maintain a safe environment. If a LIVE session includes content that violates our policies, the session may be stopped, and the creator could face temporary restrictions from going LIVE. Repeated or serious violations, including attempts to bypass restrictions, may result in an account ban. **You must be 18 and older to go LIVE and to send gifts to a creator during a LIVE session.**

If a creator repeatedly shares content that falls short of our FYF standards, then we may apply temporary restrictions, such as restricting the visibility of LIVE sessions or the use of certain LIVE features. LIVE sessions are also restricted to 18 and older when they contain content or behavior that isn't suitable for young people.

Authenticity within LIVE is essential. Pretending to be someone else or streaming someone else's content without permission may also lead to restrictions.

In multi-guest LIVE sessions, if a guest shares anything that breaks the rules, they'll be removed from the session, and the creator may lose access to guest features temporarily. In severe situations, the room may be stopped. If a guest shares content that's FYF ineligible, the LIVE will be removed from the FYF.

Lastly, LIVE creators are responsible for anything that happens during their sessions—even when it involves third-party tools like voice-to-text software, real-time translation, or on-screen comment displays. For example, if a voice-to-text tool reads out a harmful comment, the creator is still accountable for enabling that feature. Creators should actively monitor and manage any tools they use to help prevent violations. Repeated issues related to third-party tools may lead to restrictions on using LIVE or LIVE features.

**Learn more about how to report a LIVE here.**

**LIVE Features and Monetization**

LIVE is a monetizable feature through which you can earn rewards from TikTok. In addition to these Community Guidelines, in order to use LIVE to its full extent, you must comply with:

- LIVE Monetization Guidelines, in order to retain access to monetization features
- LIVE Feature Guidelines, to gain and retain access to the full suite of LIVE Features

For further details on gifting and rewards, see our Virtual Items Policy and our Rewards Policy.

**Sidebar navigation:**

Overview
Community Principles
Youth Safety and Well-Being
Safety and Civility    ∧
Mental and Behavioral Health    ∧
Sensitive and Mature Themes    ∧
Integrity and Authenticity    ∧
Regulated Goods, Services, and
Commercial Activities    ∧
Privacy and Security    ∧
For You feed Eligibility Standards
**Accounts and Features**    ∨
    Accounts
    TikTok LIVE
    Search
    External Links
    Comments
    Direct Messages
    Monetization
Enforcement    ∧

- LIVE Monetization Guidelines, in order to retain access to monetization features

- LIVE Feature Guidelines, to gain and retain access to the full suite of LIVE Features

For further details on gifting and rewards, see our Virtual Items Policy and our Rewards Policy.

**LIVE Commercial Content**

To maintain transparency for our users, commercial content on LIVE must be disclosed using the commercial disclosure toggle. **Learn more about our policy regarding Commercial Disclosure and Paid Advertising.**

In order to ensure that users have a positive experience when engaging with commercial content on our platform, we reduce visibility of content directing users to purchase products off-platform in markets where TikTok Shop is available.

**LIVE Gaming**

LIVE Gaming follows the rules in the sections above, with the important differences listed below. Eligible TikTok creators can use TikTok's LIVE Studio or third-party tools to share the device screen to showcase gameplay. We restrict mature game content that may not be suitable for young viewers.

⌃    **More information**

🚫    **NOT ALLOWED (LIVE sessions)**

- In addition to LIVE content that violates our rules (including content shared by a guest in a multi-guest LIVE):

  - LIVE content from an account holder under 18

  - LIVE gifts sent from an account holder under 18

  - In all regions, LIVE sessions that:

    - Show physical altercations, even if they aren't graphic

    - Show or promote firearms or explosive weapons

  - Participating in gambling or gambling-like activities

  - In some regions, LIVE sessions that show adults engaging in intimate kissing, sexualized framing, sexualized behavior, or sexually explicit language

🔴    **AGE-RESTRICTED (LIVE gaming)**

- In-game depictions of severely injured bodies

- In-game depictions of animal suffering, as long as there is no promotion of animal abuse

⚠️    **FYF INELIGIBLE (LIVE sessions)**

- In addition to LIVE content that does not meet our FYF eligibility standards (including content shared by a guest in a multi-guest LIVE), LIVE sessions that:

  - Direct users to purchase products off-platform, in markets where TikTok Shop is available.

  - Trick or pressure people into giving Gifts or engaging, like "like-for-like" schemes or fake incentives

  - Stream unoriginal content without new or creative edits

  - Include repeated or prolonged actions that lack clear objectives or direct interaction that keeps viewers engaged in the LIVE session

  - Show potentially distressing material that may cause anxiety or fear, such as scary make-up or visual effects

  - Contain graphic material that may cause disgust, including human and animal bodily functions and

viewers engaged in the LIVE session

- Show potentially distressing material that may cause anxiety or fear, such as scary make-up or visual effects

- Contain graphic material that may cause disgust, including human and animal bodily functions and fluids (such as urine or vomit)

- Show low quality content, such as black, blank, or blur screens

Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility                                    ⌃

Mental and Behavioral Health                           ⌃

Sensitive and Mature Themes                            ⌃

Integrity and Authenticity                             ⌃

Regulated Goods, Services, and
Commercial Activities                                  ⌃

Privacy and Security                                   ⌃

For You feed Eligibility Standards

Accounts and Features                                  ⌄

   Accounts

   TikTok LIVE

   Search

   External Links

   Comments

   Direct Messages

   Monetization

Enforcement                                            ⌃

## Search

TikTok Search helps you discover content. In some situations—such as when there's an elevated risk of harm to users or communities—we may limit visibility of certain search results.

In addition, some content that's allowed on TikTok may not be suitable for all audiences, and might not appear as a top result.

Search results and recommendations may look different for everyone. That's because we consider things like your past searches and what you've watched to help make results more relevant. We also try to highlight content from reliable sources at the top.

We recommend searches across TikTok to support discovery, learning, and exploration. To help ensure the experience remains safe and enjoyable, we prioritize entertaining and informative content in search recommendations, and don't recommend terms associated with harassment, sensationalism, or graphic and disturbing themes. If you see a search recommendation that you believe violates our Community Guidelines, report it to us here.

## External Links

Creators often share links in their bios, profiles, or videos to help you find more content. While many of these links are useful or informative, some lead to harmful content that isn't allowed on TikTok. If a link breaks our rules, we'll remove it. We may also temporarily stop you from posting links—or, for severe violations, ban your account.

## Comments

Comments let you connect with others, which is a big part of TikTok. If a comment breaks our rules, we'll remove it. If someone keeps breaking the rules, we may limit or remove their ability to comment; in more severe cases, we may ban their account.

Comments are sorted based on multiple aspects, including your past replies, likes, and reports. This helps keep the comment section relevant and engaging, and it may look different from one person to the next. Comments may be sorted lower if they don't add to the conversation, like:

- **Spam**: Random text, irrelevant promotions, or links

- **Profanity** that's non-neutral or targets others

- **Offensive Statements**: Aggressive or provocative remarks about someone

Learn more about the tools you can use to control the comments on your own videos, and how to report a comment here.

● **TikTok**

Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility ⌄

Mental and Behavioral Health ⌄

Sensitive and Mature Themes ⌄

Integrity and Authenticity ⌄

Regulated Goods, Services, and
Commercial Activities ⌄

Privacy and Security ⌄

For You feed Eligibility Standards

**Accounts and Features** ⌄

   Accounts

   TikTok LIVE

   Search

   External Links

   Comments

   Direct Messages

   Monetization

Enforcement ⌄

- **Profanity** that's non-neutral or targets others

- **Offensive Statements**: Aggressive or provocative remarks about someone

Learn more about the **tools** you can use to control the comments on your own videos, and how to report a comment here.

## Direct Messages

Direct messages (DMs) let you share videos and chat with one or more people. Some businesses also use automated tools to reply to messages. **You must be 16 and older to use DMs.**

If you violate "Not Allowed" rules, your message will be removed and you might be temporarily blocked from sending new ones. Repeat or severe violations can result in an account ban. **Learn more about how to report a direct message here.**

## Monetization

TikTok offers tools that enable creators to earn money and cash rewards, and help businesses grow. **You must be 18 and older to use monetization features.**

To be eligible, you need to meet entry criteria and follow feature-specific rules. This includes, but isn't limited to, LIVE gifting, TikTok Shop, the Creator Rewards Program, TikTok Series, TikTok Subscriptions, TikTok Location Services, and TikTok Ads. To retain access to LIVE rewards from TikTok, LIVE creators must also comply with the LIVE Monetization Guidelines. Creators participating in all monetization programs must follow the Creator Code of Conduct. If you break the rules, we may temporarily restrict your access. Repeated violations can lead to permanent loss of monetization features. Content that isn't eligible for the FYF may also be restricted from monetization.

All commercial content must be disclosed using the content disclosure setting. This applies to content that promotes your brand or involves payment or perks from a third party. Branded content must also follow our Branded Content Policy, TikTok's Ads Creative Policy, and Industry Entry Policy and—where relevant—TikTok Shop Policies.

If we find commercial content that hasn't been properly disclosed, we may apply the content disclosure setting ourselves or remove it from the FYF. Repeated issues could lead to your account being temporarily restricted from posting content, or an account ban.

## Was it helpful?

Yes     No

Next article
## Enforcement

Read next ↗

● **TikTok**

Company    Programs    Resources    Legal

Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility ^

Mental and Behavioral Health ^

Sensitive and Mature Themes ^

Integrity and Authenticity ^

Regulated Goods, Services, and
Commercial Activities ^

Privacy and Security ^

For You feed Eligibility Standards

**Accounts and Features** ⌄

Accounts

TikTok LIVE

Search

External Links

Comments

Direct Messages

Monetization

Enforcement ^

## Monetization

TikTok offers tools that enable creators to earn money and cash rewards, and help businesses grow. **You must be 18 and older to use monetization features.**

To be eligible, you need to meet entry criteria and follow feature-specific rules. This includes, but isn't limited to, LIVE gifting, TikTok Shop, the Creator Rewards Program, TikTok Series, TikTok Subscriptions, TikTok Location Services, and TikTok Ads. To retain access to LIVE rewards from TikTok, LIVE creators must also comply with the LIVE Monetization Guidelines. Creators participating in all monetization programs must follow the Creator Code of Conduct. If you break the rules, we may temporarily restrict your access. Repeated violations can lead to permanent loss of monetization features. Content that isn't eligible for the FYF may also be restricted from monetization.

All commercial content must be disclosed using the content disclosure setting. This applies to content that promotes your brand or involves payment or perks from a third party. Branded content must also follow our Branded Content Policy, TikTok's Ads Creative Policy, and Industry Entry Policy and—where relevant—TikTok Shop Policies.

If we find commercial content that hasn't been properly disclosed, we may apply the content disclosure setting ourselves or remove it from the FYF. Repeated issues could lead to your account being temporarily restricted from posting content, or an account ban.

## Was it helpful?

Yes          No

Next article

## Enforcement

Read next ↗



d TikTok

**Company**

About TikTok

Newsroom

Contact

Careers

ByteDance

**Programs**

TikTok for Good

TikTok for Developers

Effect House

Advertise on TikTok

TikTok Embeds

**Resources**

Help Center

Safety Center

Privacy Center

Creator Academy

Community Guidelines

Transparency

Accessibility

**Legal**

Terms of Service

Privacy Policy

Intellectual Property Policy

TikTok Law Enforcement
Guidelines

Children's Privacy Policy

English ▾

© 2025 TikTok

Overview

Community Principles

Youth Safety and Well-Being

Safety and Civility                              ^

Mental and Behavioral Health                     ^

Sensitive and Mature Themes                      ^

Integrity and Authenticity                       ^

Regulated Goods, Services, and
Commercial Activities                            ^

Privacy and Security                             ^

For You feed Eligibility Standards

Accounts and Features                            ^

**Enforcement**                                  ˅

  Public Interest Exceptions

  Detection and Reporting

  Notice and Appeals

# Enforcement

Released August 14, 2025

Effective September 13, 2025

## Public Interest Exceptions

We recognize that some content that would otherwise violate our rules may be in the public interest to view. Public interest refers to topics that inform, inspire, or educate the community and enhance deliberation about matters of broad collective significance. We may allow content to remain on TikTok under public interest exceptions, including:

- Documentary

- Educational

- Medical or Scientific

- Counterspeech

- Satirical

- Artistic

When reviewing content, we consider if the post raises awareness or challenges harmful behavior. If you want to post content that does this, you might consider using features like captions, stickers, or voiceover to make it clear.

Even if we allow content under a public interest exception, we might still:

- Make it ineligible for the FYF

- Add a warning screen

- Add a context label

We won't make exceptions for content that could cause extreme harm, like showing explicit imagery of abuse involving a young person.

## Detection and Reporting

We aim to remove content or accounts that violate our rules before they are viewed or shared. Content first goes through an automated review process. If content is identified as a potential violation, it will be automatically removed, or flagged for additional review by our moderators. Additional review will occur if content gains popularity or has been reported. To support moderation accuracy, we apply additional quality assurance processes to some accounts that have already gone through additional validation processes, such as verified accounts.

Even with our robust moderation measures and processes, we can't guarantee that all content complies with our Community Guidelines or Terms of Service. If you see something that seems to break the rules, you can **report it in the app or on our website.**

**Learn more about our enforcement efforts through our Transparency Center.**

involving a young person.



## Detection and Reporting

We aim to remove content or accounts that violate our rules before they are viewed or shared. Content first goes through an automated review process. If content is identified as a potential violation, it will be automatically removed, or flagged for additional review by our moderators. Additional review will occur if content gains popularity or has been reported. To support moderation accuracy, we apply additional quality assurance processes to some accounts that have already gone through additional validation processes, such as verified accounts.

Even with our robust moderation measures and processes, we can't guarantee that all content complies with our Community Guidelines or Terms of Service. If you see something that seems to break the rules, you can **report it in the app or on our website.**

**Learn more about our enforcement efforts through our Transparency Center.**

## Notice and Appeals

We believe in fairness and consistency. If your content breaks a rule, we seek to explain to you why it was removed. If your account is banned, you'll see a message in the app. If your content is made ineligible for the FYF or otherwise restricted, this information will appear in the TikTok analytics tool.

If your account was banned, or your content was removed, made ineligible for the FYF, or otherwise restricted, and you believe this was an error, you may appeal the decision. Once your appeal is filed, you can view its status in the in-app Safety Center, as well as the status of any reports you have filed about other content or accounts.

## Was it helpful?

| Yes | No |
|-----|-----|

### TikTok

**Company**
About TikTok
Newsroom
Contact
Careers
ByteDance

**Programs**
TikTok for Good
TikTok for Developers
Effect House
Advertise on TikTok
TikTok Embeds

**Resources**
Help Center
Safety Center
Privacy Center
Creator Academy
Community Guidelines
Transparency
Accessibility

**Legal**
Terms of Service
Privacy Policy
Intellectual Property Policy
TikTok Law Enforcement Guidelines
Children's Privacy Policy

English

© 2025 TikTok

# EXHIBIT E

1. Your Relationship With Us
2. Accepting the Terms
3. Changes to the Terms
4. Your Account with Us
5. Your Access to and Use of Our
Services
6. Intellectual Property Rights
7. Content
8. Indemnity
9. EXCLUSION OF WARRANTIES
10. LIMITATION OF LIABILITY
11. Other Terms
12. Dispute Resolution
13. App Stores
14. Contact Us

⊕ U.S.

# Terms of Service

*Last updated: November 2023*

(If you are a user having your usual residence in the US)

## 1. Your Relationship With Us

Welcome to TikTok (the "Platform"), which is provided by TikTok Inc. in the United States (collectively such entities will be referred to as "TikTok", "we" or "us").

You are reading the terms of service (the "Terms"), which govern the relationship and serve as an agreement between you and us and set forth the terms and conditions by which you may access and use the Platform and our related websites, services, applications, products and content (collectively, the "Services"). Access to certain Services or features of the Services (such as, by way of example and not limitation, the ability to submit or share User Content (defined below)) may be subject to age restrictions and not available to all users of the Services. Our Services are provided for private, non-commercial use. For purposes of these Terms, "you" and "your" means you as the user of the Services.

The Terms form a legally binding agreement between you and us. Please take the time to read them carefully. If you are under age 18, you may only use the Services with the consent of your parent or legal guardian. Please be sure your parent or legal guardian has reviewed and discussed these Terms with you.

## 2. Accepting the Terms

By accessing or using our Services, you confirm that you can form a binding contract with TikTok, that you accept these Terms and that you agree to comply with them. Your access to and use of our Services is also subject to our Privacy Policy ↗ and Community Guidelines ↗ , the terms of which can be found directly on the Platform, or where the Platform is made available for download, on your mobile device's applicable app store, and are incorporated herein by reference. By using the Services, you consent to the terms of the Privacy Policy ↗ .

If you are accessing or using the Services on behalf of a business or entity, then (a) "you" and "your" includes you and that business or entity, (b) you represent and warrant that you are an authorized representative of the business or entity with the authority to bind the entity to these Terms, and that you agree to these Terms on the entity's behalf, and (c) your business or entity is legally and financially responsible for your access or use of the Services as well as for the access or use of your account by others affiliated with your entity, including any employees, agents or contractors.

You can accept the Terms by accessing or using our Services. You understand and agree that we will treat your access or use of the Services as acceptance of the Terms from that point onwards.

You should print off or save a local copy of the Terms for your records.

Document title: Terms of Service | TikTok
Capture URL: https://www.tiktok.com/legal/page/us/terms-of-service/en
Capture timestamp (UTC): Tue, 09 Dec 2025 15:07:27 GMT

🎵 TikTok

1. Your Relationship With Us

2. Accepting the Terms

3. Changes to the Terms

**4. Your Account with Us**

5. Your Access to and Use of Our Services

6. Intellectual Property Rights

7. Content

8. Indemnity

9. EXCLUSION OF WARRANTIES

10. LIMITATION OF LIABILITY

11. Other Terms

12. Dispute Resolution

13. App Stores

14. Contact Us

affiliated with your entity, including any employees, agents or contractors.

You can accept the Terms by accessing or using our Services. You understand and agree that we will treat your access or use of the Services as acceptance of the Terms from that point onwards.

You should print off or save a local copy of the Terms for your records.

## 3. Changes to the Terms

We amend these Terms from time to time, for instance when we update the functionality of our Services, when we combine multiple apps or services operated by us or our affiliates into a single combined service or app, or when there are regulatory changes. We will use commercially reasonable efforts to generally notify all users of any material changes to these Terms, such as through a notice on our Platform, however, you should look at the Terms regularly to check for such changes. We will also update the "Last Updated" date at the top of these Terms, which reflect the effective date of such Terms. Your continued access or use of the Services after the date of the new Terms constitutes your acceptance of the new Terms. If you do not agree to the new Terms, you must stop accessing or using the Services.

## 4. Your Account with Us

To access or use some of our Services, you must create an account with us. When you create this account, you must provide accurate and up-to-date information. It is important that you maintain and promptly update your details and any other information you provide to us, to keep such information current and complete.

It is important that you keep your account password confidential and that you do not disclose it to any third party. If you know or suspect that any third party knows your password or has accessed your account, you must notify us immediately at: https://www.tiktok.com/legal/report/feedback ↗.

You agree that you are solely responsible (to us and to others) for the activity that occurs under your account.

We reserve the right to disable your user account at any time, including if you have failed to comply with any of the provisions of these Terms, or if activities occur on your account which, in our sole discretion, would or might cause damage to or impair the Services or infringe or violate any third party rights, or violate any applicable laws or regulations.

If you no longer want to use our Services again, and would like your account deleted, contact us at: https://www.tiktok.com/legal/report/feedback ↗. We will provide you with further assistance and guide you through the process. Once you choose to delete your account, you will not be able to reactivate your account or retrieve any of the content or information you have added.

## 5. Your Access to and Use of Our Services

1. Your Relationship With Us

2. Accepting the Terms

3. Changes to the Terms

4. Your Account with Us

**5. Your Access to and Use of Our Services**

6. Intellectual Property Rights

7. Content

8. Indemnity

9. EXCLUSION OF WARRANTIES

10. LIMITATION OF LIABILITY

11. Other Terms

12. Dispute Resolution

13. App Stores

14. Contact Us

# 5. Your Access to and Use of Our Services

Your access to and use of the Services is subject to these Terms and all applicable laws and regulations. You may not:

- access or use the Services if you are not fully able and legally competent to agree to these Terms or are authorized to use the Services by your parent or legal guardian;

- make unauthorised copies, modify, adapt, translate, reverse engineer, disassemble, decompile or create any derivative works of the Services or any content included therein, including any files, tables or documentation (or any portion thereof) or determine or attempt to determine any source code, algorithms, methods or techniques embodied by the Services or any derivative works thereof

- distribute, license, transfer, or sell, in whole or in part, any of the Services or any derivative works thereof

- market, rent or lease the Services for a fee or charge, or use the Services to advertise or perform any commercial solicitation;

- use the Services, without our express written consent, for any commercial or unauthorized purpose, including communicating or facilitating any commercial advertisement or solicitation or spamming;

- interfere with or attempt to interfere with the proper working of the Services, disrupt our website or any networks connected to the Services, or bypass any measures we may use to prevent or restrict access to the Services;

- incorporate the Services or any portion thereof into any other program or product. In such case, we reserve the right to refuse service, terminate accounts or limit access to the Services in our sole discretion;

- use automated scripts to collect information from or otherwise interact with the Services;

- impersonate any person or entity, or falsely state or otherwise misrepresent you or your affiliation with any person or entity, including giving the impression that any content you upload, post, transmit, distribute or otherwise make available emanates from the Services;

- intimidate or harass another, or promote sexually explicit material, violence or discrimination based on race, sex, religion, nationality, disability, sexual orientation or age;

- use or attempt to use another's account, service or system without authorisation from TikTok, or create a false identity on the Services;

- use the Services in a manner that may create a conflict of interest or undermine the purposes of the Services, such as trading reviews with other users or writing or soliciting fake reviews;

- use the Services to upload, transmit, distribute, store or otherwise make available in any way: files that contain viruses, trojans, worms, logic bombs or other material that is malicious or technologically harmful;

- any unsolicited or unauthorised advertising, solicitations, promotional materials, "junk mail," "spam," "chain letters," "pyramid schemes," or any other prohibited form of solicitation;

- any private information of any third party, including addresses, phone numbers, email addresses, number and feature in the personal identity document (e.g., National Insurance numbers, passport numbers) or credit card numbers;

- any material which does or may infringe any copyright, trademark or other intellectual property or privacy rights of any other person;

- any material which is defamatory of any person, obscene, offensive, pornographic, hateful or inflammatory;

- any material that would constitute, encourage or provide instructions for a criminal offence, dangerous activities or self-harm;

- any material that is deliberately designed to provoke or antagonise people, especially trolling and bullying, or is intended to harass, harm, hurt, scare, distress, embarrass or upset people;

- any material that contains a threat of any kind, including threats of physical violence;

**TikTok**

1. Your Relationship With Us

2. Accepting the Terms

3. Changes to the Terms

4. Your Account with Us

**5. Your Access to and Use of Our Services**

6. Intellectual Property Rights

7. Content

8. Indemnity

9. EXCLUSION OF WARRANTIES

10. LIMITATION OF LIABILITY

11. Other Terms

12. Dispute Resolution

13. App Stores

14. Contact Us

- any material which is defamatory of any person, obscene, offensive, pornographic, hateful or inflammatory;

- any material that would constitute, encourage or provide instructions for a criminal offence, dangerous activities or self-harm;

- any material that is deliberately designed to provoke or antagonise people, especially trolling and bullying, or is intended to harass, harm, hurt, scare, distress, embarrass or upset people;

- any material that contains a threat of any kind, including threats of physical violence;

- any material that is racist or discriminatory, including discrimination on the basis of someone's race, religion, age, gender, disability or sexuality;

- any answers, responses, comments, opinions, analysis or recommendations that you are not properly licensed or otherwise qualified to provide; or

- material that, in the sole judgment of TikTok, is objectionable or which restricts or inhibits any other person from using the Services, or which may expose TikTok, the Services or its users to any harm or liability of any type.

In addition to the above, your access to and use of the Services must, at all times, be compliant with our Community Guidelines ↗.

We reserve the right, at any time and without prior notice, to remove or disable access to content at our discretion for any reason or no reason. Some of the reasons we may remove or disable access to content may include finding the content objectionable, in violation of these Terms or our Community Policy, or otherwise harmful to the Services or our users. Our automated systems analyze your content (including emails) to provide you personally relevant product features, such as customized search results, tailored advertising, and spam and malware detection. This analysis occurs as the content is sent, received, and when it is stored.

# 6. Intellectual Property Rights

We respect intellectual property rights and ask you to do the same. As a condition of your access to and use of the Services, you agree to the terms of the Copyright Policy ↗.

# 7. Content

## TikTok Content

As between you and TikTok, all content, software, images, text, graphics, illustrations, logos, patents, trademarks, service marks, copyrights, photographs, audio, videos, music on and "look and feel" of the Services, and all intellectual property rights related thereto (the "TikTok Content"), are either owned or licensed by TikTok, it being understood that you or your licensors will own any User Content (as defined below) you upload or transmit through the Services. Use of the TikTok Content or materials on the Services for any purpose not expressly permitted by these Terms is strictly prohibited. Such content may not be downloaded, copied, reproduced, distributed, transmitted, broadcast, displayed, sold, licensed or otherwise exploited for any purpose whatsoever without our or, where applicable, our licensors' prior written consent. We and our licensors reserve all rights not expressly granted in and to their content.

You acknowledge and agree that we may generate revenues, increase goodwill or otherwise increase our value from your use of the Services, including, by way of example and not limitation, through the sale of

**d'TikTok**

1. Your Relationship With Us

2. Accepting the Terms

3. Changes to the Terms

4. Your Account with Us

**5. Your Access to and Use of Our Services**

6. Intellectual Property Rights

7. Content

8. Indemnity

9. EXCLUSION OF WARRANTIES

10. LIMITATION OF LIABILITY

11. Other Terms

12. Dispute Resolution

13. App Stores

14. Contact Us

substance, service marks, copyrights, photographs, audio, videos, music or and networks used in the Services, and all intellectual property rights related thereto (the "TikTok Content"), are either owned or licensed by TikTok, it being understood that you or your licensors will own any User Content (as defined below) you upload or transmit through the Services. Use of the TikTok Content or materials on the Services for any purpose not expressly permitted by these Terms is strictly prohibited. Such content may not be downloaded, copied, reproduced, distributed, transmitted, broadcast, displayed, sold, licensed or otherwise exploited for any purpose whatsoever without our or, where applicable, our licensors' prior written consent. We and our licensors reserve all rights not expressly granted in and to their content.

You acknowledge and agree that we may generate revenues, increase goodwill or otherwise increase our value from your use of the Services, including, by way of example and not limitation, through the sale of advertising, sponsorships, promotions, usage data and Gifts (defined below), and except as specifically permitted by us in these Terms or in another agreement you enter into with us, you will have no right to share in any such revenue, goodwill or value whatsoever. You further acknowledge that, except as specifically permitted by us in these Terms or in another agreement you enter into with us, you (i) have no right to receive any income or other consideration from any User Content (defined below) or your use of any musical works, sound recordings or audiovisual clips made available to you on or through the Services, including in any User Content created by you, and (ii) are prohibited from exercising any rights to monetize or obtain consideration from any User Content within the Services or on any third party service ( e.g. , you cannot claim User Content that has been uploaded to a social media platform such as YouTube for monetization).

Subject to the terms and conditions of the Terms, you are hereby granted a non-exclusive, limited, non-transferable, non-sublicensable, revocable, worldwide license to access and use the Services, including to download the Platform on a permitted device, and to access the TikTok Content solely for your personal, non-commercial use through your use of the Services and solely in compliance with these Terms. TikTok reserves all rights not expressly granted herein in the Services and the TikTok Content. You acknowledge and agree that TikTok may terminate this license at any time for any reason or no reason.

NO RIGHTS ARE LICENSED WITH RESPECT TO SOUND RECORDINGS AND THE MUSICAL WORKS EMBODIED THEREIN THAT ARE MADE AVAILABLE FROM OR THROUGH THE SERVICE.

You acknowledge and agree that when you view content provided by others on the Services, you are doing so at your own risk. The content on our Services is provided for general information only. It is not intended to amount to advice on which you should rely. You must obtain professional or specialist advice before taking, or refraining from, any action on the basis of the content on our Services.

We make no representations, warranties or guarantees, whether express or implied, that any TikTok Content (including User Content) is accurate, complete or up to date. Where our Services contain links to other sites and resources provided by third parties, these links are provided for your information only. We have no control over the contents of those sites or resources. Such links should not be interpreted as approval by us of those linked websites or information you may obtain from them. You acknowledge that we have no obligation to pre-screen, monitor, review, or edit any content posted by you and other users on the Services (including User Content).

## User-Generated Content

Users of the Services may be permitted to upload, post or transmit (such as via a stream) or otherwise make available content through the Services including, without limitation, any text, photographs, user videos, sound recordings and the musical works embodied therein, including videos that incorporate locally stored sound recordings from your personal music library and ambient noise ("User Content"). Users of the Services may also extract all or any portion of User Content created by another user to produce additional User Content, including collaborative User Content with other users, that combine and intersperse User Content generated by more than one user. Users of the Services may also overlay music, graphics, stickers, Virtual Items (as defined and further explained Virtual Items Policy ↗ ) and other elements provided by TikTok ("TikTok Elements") onto this User Content and transmit this User Content through the Services. The information and materials in the User Content, including User Content that includes TikTok Elements, have not been verified or approved by us. The views expressed by other users on the Services (including through use of the virtual gifts) do not represent our views or values.

Whenever you access or use a feature that allows you to upload or transmit User Content through the Services (including via certain third party social media platforms such as Instagram, Facebook, YouTube, Twitter), or to make contact with other users of the Services, you must comply with the standards set out at "Your Access to and Use of Our Services" above. You may also choose to upload or transmit your User Content, including User Content that includes TikTok Elements, on sites or platforms hosted by third parties. If you decide to do this, you must comply with their content guidelines as well as with the standards set out at "Your Access to and Use of Our Services" above. As noted above, these features may not be available to all users of the Services, and we have no liability to you for limiting your right to certain features of the Services.

You warrant that any such contribution does comply with those standards, and you will be liable to us and

Document title: Terms of Service | TikTok

Capture URL: https://www.tiktok.com/legal/page/us/terms-of-service/en

Capture timestamp (UTC): Tue, 09 Dec 2025 15:07:27 GMT

1. Your Relationship With Us

2. Accepting the Terms

3. Changes to the Terms

4. Your Account with Us

**5. Your Access to and Use of Our Services**

6. Intellectual Property Rights

7. Content

8. Indemnity

9. EXCLUSION OF WARRANTIES

10. LIMITATION OF LIABILITY

11. Other Terms

12. Dispute Resolution

13. App Stores

14. Contact Us

Services (including via certain third party social media platforms such as Instagram, Facebook, YouTube, Twitter), or to make contact with other users of the Services, you must comply with the standards set out at "Your Access to and Use of Our Services" above. You may also choose to upload or transmit your User Content, including User Content that includes TikTok Elements, on sites or platforms hosted by third parties. If you decide to do this, you must comply with their content guidelines as well as with the standards set out at "Your Access to and Use of Our Services" above. As noted above, these features may not be available to all users of the Services, and we have no liability to you for limiting your right to certain features of the Services.

You warrant that any such contribution does comply with those standards, and you will be liable to us and indemnify us for any breach of that warranty. This means you will be responsible for any loss or damage we suffer as a result of your breach of warranty.

Any User Content will be considered non-confidential and non-proprietary. You must not post any User Content on or through the Services or transmit to us any User Content that you consider to be confidential or proprietary. When you submit User Content through the Services, you agree and represent that you own that User Content, or you have received all necessary permissions, clearances from, or are authorised by, the owner of any part of the content to submit it to the Services, to transmit it from the Services to other third party platforms, and/or adopt any third party content.

If you only own the rights in and to a sound recording, but not to the underlying musical works embodied in such sound recordings, then you must not post such sound recordings to the Services unless you have all permissions, clearances from, or are authorised by, the owner of any part of the content to submit it to the Services

You or the owner of your User Content still own the copyright in User Content sent to us, but by submitting User Content via the Services, you hereby grant us an unconditional irrevocable, non-exclusive, royalty-free, fully transferable, perpetual worldwide licence to use, modify, adapt, reproduce, make derivative works of, publish and/or transmit, and/or distribute and to authorise other users of the Services and other third-parties to view, access, use, download, modify, adapt, reproduce, make derivative works of, publish and/or transmit your User Content in any format and on any platform, either now known or hereinafter invented.

You further grant us a royalty-free license to use your user name, image, voice, and likeness to identify you as the source of any of your User Content; provided, however, that your ability to provide an image, voice, and likeness may be subject to limitations due to age restrictions.

For the avoidance of doubt, the rights granted in the preceding paragraphs of this Section include, but are not limited to, the right to reproduce sound recordings (and make mechanical reproductions of the musical works embodied in such sound recordings), and publicly perform and communicate to the public sound recordings (and the musical works embodied therein), all on a royalty-free basis. This means that you are granting us the right to use your User Content without the obligation to pay royalties to any third party, including, but not limited to, a sound recording copyright owner (e.g., a record label), a musical work copyright owner (e.g., a music publisher), a performing rights organization (e.g., ASCAP, BMI, SESAC, etc.) (a "PRO"), a sound recording PRO (e.g., SoundExchange), any unions or guilds, and engineers, producers or other royalty participants involved in the creation of User Content.

**Specific Rules for Musical Works and for Recording Artists.** If you are a composer or author of a musical work and are affiliated with a PRO, then you must notify your PRO of the royalty-free license you grant through these Terms in your User Content to us. You are solely responsible for ensuring your compliance with the relevant PRO's reporting obligations. If you have assigned your rights to a music publisher, then you must obtain the consent of such music publisher to grant the royalty-free license(s) set forth in these Terms in your User Content or have such music publisher enter into these Terms with us. Just because you authored a musical work (e.g., wrote a song) does not mean you have the right to grant us the licenses in these Terms. If you are a recording artist under contract with a record label, then you are solely responsible for ensuring that your use of the Services is in compliance with any contractual obligations you may have to your record label, including if you create any new recordings through the Services that may be claimed by your label.

**Through-To-The-Audience Rights.** All of the rights you grant in your User Content in these Terms are provided on a through-to-the-audience basis, meaning the owners or operators of third party services will not have any separate liability to you or any other third party for User Content posted or used on such third party service via the Services.

**Waiver of Rights to User Content.** By posting User Content to or through the Services, you waive any rights to prior inspection or approval of any marketing or promotional materials related to such User Content. You also waive any and all rights of privacy, publicity, or any other rights of a similar nature in connection with your User Content, or any portion thereof. To the extent any moral rights are not transferable or assignable, you hereby waive and agree never to assert any and all moral rights, or to support, maintain or permit any action based on any moral rights that you may have in or with respect to any User Content you Post to or through the Services.

We also have the right to disclose your identity to any third party who is claiming that any User Content

**d** TikTok

1. Your Relationship With Us

2. Accepting the Terms

3. Changes to the Terms

4. Your Account with Us

**5. Your Access to and Use of Our Services**

6. Intellectual Property Rights

7. Content

8. Indemnity

9. EXCLUSION OF WARRANTIES

10. LIMITATION OF LIABILITY

11. Other Terms

12. Dispute Resolution

13. App Stores

14. Contact Us

party service via the Services.

**Waiver of Rights to User Content.** By posting User Content to or through the Services, you waive any rights to prior inspection or approval of any marketing or promotional materials related to such User Content. You also waive any and all rights of privacy, publicity, or any other rights of a similar nature in connection with your User Content, or any portion thereof. To the extent any moral rights are not transferable or assignable, you hereby waive and agree never to assert any and all moral rights, or to support, maintain or permit any action based on any moral rights that you may have in or with respect to any User Content you Post to or through the Services.

We also have the right to disclose your identity to any third party who is claiming that any User Content posted or uploaded by you to our Services constitutes a violation of their intellectual property rights, or of their right to privacy.

We, or authorised third parties, reserve the right to cut, crop, edit or refuse to publish, your content at our or their sole discretion. We have the right to remove, disallow, block or delete any posting you make on our Services if, in our opinion, your post does not comply with the content standards set out at "Your Access to and Use of Our Services" above. In addition, we have the right – but not the obligation – in our sole discretion to remove, disallow, block or delete any User Content (i) that we consider to violate these Terms, or (ii) in response to complaints from other users or third parties, with or without notice and without any liability to you. As a result, we recommend that you save copies of any User Content that you post to the Services on your personal device(s) in the event that you want to ensure that you have permanent access to copies of such User Content. We do not guarantee the accuracy, integrity, appropriateness or quality of any User Content, and under no circumstances will we be liable in any way for any User Content.

You control whether your User Content is made publicly available on the Services to all other users of the Services or only available to people you approve. To restrict access to your User Content, you should select the privacy setting available within the Platform.

We accept no liability in respect of any content submitted by users and published by us or by authorised third parties.

If you wish to file a complaint about information or materials uploaded by other users, contact us at: https://www.tiktok.com/legal/report/feedback ↗ .

TikTok takes reasonable measures to expeditiously remove from our Services any infringing material that we become aware of. It is TikTok's policy, in appropriate circumstances and at its discretion, to disable or terminate the accounts of users of the Services who repeatedly infringe copyrights or intellectual property rights of others.

While our own staff is continually working to develop and evaluate our own product ideas and features, we pride ourselves on paying close attention to the interests, feedback, comments, and suggestions we receive from the user community. If you choose to contribute by sending us or our employees any ideas for products, services, features, modifications, enhancements, content, refinements, technologies, content offerings (such as audio, visual, games, or other types of content), promotions, strategies, or product/feature names, or any related documentation, artwork, computer code, diagrams, or other materials (collectively "Feedback"), then regardless of what your accompanying communication may say, the following terms will apply, so that future misunderstandings can be avoided. Accordingly, by sending Feedback to us, you agree that:

TikTok has no obligation to review, consider, or implement your Feedback, or to return to you all or part of any Feedback for any reason;

Feedback is provided on a non-confidential basis, and we are not under any obligation to keep any Feedback you send confidential or to refrain from using or disclosing it in any way; and

You irrevocably grant us perpetual and unlimited permission to reproduce, distribute, create derivative works of, modify, publicly perform (including on a through-to-the-audience basis), communicate to the public, make available, publicly display, and otherwise use and exploit the Feedback and derivatives thereof for any purpose and without restriction, free of charge and without attribution of any kind, including by making, using, selling, offering for sale, importing, and promoting commercial products and services that incorporate or embody Feedback, whether in whole or in part, and whether as provided or as modified.

# 8. Indemnity

1. Your Relationship With Us

2. Accepting the Terms

3. Changes to the Terms

4. Your Account with Us

5. Your Access to and Use of Our Services

6. Intellectual Property Rights

7. Content

8. Indemnity

9. EXCLUSION OF WARRANTIES

10. LIMITATION OF LIABILITY

11. Other Terms

12. Dispute Resolution

13. App Stores

14. Contact Us

## 8. Indemnity

You agree to defend, indemnify, and hold harmless TikTok, its parents, subsidiaries, and affiliates, and each of their respective officers, directors, employees, agents and advisors from any and all claims, liabilities, costs, and expenses, including, but not limited to, attorneys' fees and expenses, arising out of a breach by you or any user of your account of these Terms or arising out of a breach of your obligations, representation and warranties under these Terms.

## 9. EXCLUSION OF WARRANTIES

NOTHING IN THESE TERMS SHALL AFFECT ANY STATUTORY RIGHTS THAT YOU CANNOT CONTRACTUALLY AGREE TO ALTER OR WAIVE AND ARE LEGALLY ALWAYS ENTITLED TO AS A CONSUMER.

THE SERVICES ARE PROVIDED "AS IS" AND WE MAKE NO WARRANTY OR REPRESENTATION TO YOU WITH RESPECT TO THEM. IN PARTICULAR WE DO NOT REPRESENT OR WARRANT TO YOU THAT:

- YOUR USE OF THE SERVICES WILL MEET YOUR REQUIREMENTS;

- YOUR USE OF THE SERVICES WILL BE UNINTERRUPTED, TIMELY, SECURE OR FREE FROM ERROR;

- ANY INFORMATION OBTAINED BY YOU AS A RESULT OF YOUR USE OF THE SERVICES WILL BE ACCURATE OR RELIABLE; AND

- DEFECTS IN THE OPERATION OR FUNCTIONALITY OF ANY SOFTWARE PROVIDED TO YOU AS PART OF THE SERVICES WILL BE CORRECTED.

NO CONDITIONS, WARRANTIES OR OTHER TERMS (INCLUDING ANY IMPLIED TERMS AS TO SATISFACTORY QUALITY, FITNESS FOR PURPOSE OR CONFORMANCE WITH DESCRIPTION) APPLY TO THE SERVICES EXCEPT TO THE EXTENT THAT THEY ARE EXPRESSLY SET OUT IN THE TERMS. WE MAY CHANGE, SUSPEND, WITHDRAW OR RESTRICT THE AVAILABILITY OF ALL OR ANY PART OF OUR PLATFORM FOR BUSINESS AND OPERATIONAL REASONS AT ANY TIME WITHOUT NOTICE

## 10. LIMITATION OF LIABILITY

NOTHING IN THESE TERMS SHALL EXCLUDE OR LIMIT OUR LIABILITY FOR LOSSES WHICH MAY NOT BE LAWFULLY EXCLUDED OR LIMITED BY APPLICABLE LAW. THIS INCLUDES LIABILITY FOR DEATH OR PERSONAL INJURY CAUSED BY OUR NEGLIGENCE OR THE NEGLIGENCE OF OUR EMPLOYEES, AGENTS OR SUBCONTRACTORS AND FOR FRAUD OR FRAUDULENT MISREPRESENTATION.

SUBJECT TO THE PARAGRAPH ABOVE, WE SHALL NOT BE LIABLE TO YOU FOR:

- (I) ANY LOSS OF PROFIT (WHETHER INCURRED DIRECTLY OR INDIRECTLY);

- (II) ANY LOSS OF GOODWILL;

**d TikTok**

1. Your Relationship With Us

2. Accepting the Terms

3. Changes to the Terms

4. Your Account with Us

5. Your Access to and Use of Our Services

6. Intellectual Property Rights

7. Content

8. Indemnity

9. EXCLUSION OF WARRANTIES

10. LIMITATION OF LIABILITY

11. Other Terms

12. Dispute Resolution

13. App Stores

14. Contact Us

NOTHING IN THESE TERMS SHALL EXCLUDE OR LIMIT OUR LIABILITY FOR LOSSES WHICH MAY NOT BE LAWFULLY EXCLUDED OR LIMITED BY APPLICABLE LAW. THIS INCLUDES LIABILITY FOR DEATH OR PERSONAL INJURY CAUSED BY OUR NEGLIGENCE OR THE NEGLIGENCE OF OUR EMPLOYEES, AGENTS OR SUBCONTRACTORS AND FOR FRAUD OR FRAUDULENT MISREPRESENTATION.

SUBJECT TO THE PARAGRAPH ABOVE, WE SHALL NOT BE LIABLE TO YOU FOR:

- (I) ANY LOSS OF PROFIT (WHETHER INCURRED DIRECTLY OR INDIRECTLY);

- (II) ANY LOSS OF GOODWILL;

- (III) ANY LOSS OF OPPORTUNITY;

- (IV) ANY LOSS OF DATA SUFFERED BY YOU; OR

- (V) ANY INDIRECT OR CONSEQUENTIAL LOSSES WHICH MAY BE INCURRED BY YOU. ANY OTHER LOSS WILL BE LIMITED TO THE AMOUNT PAID BY YOU TO TIKTOK WITHIN THE LAST 12 MONTHS.

ANY LOSS OR DAMAGE WHICH MAY BE INCURRED BY YOU AS A RESULT OF:

- ANY RELIANCE PLACED BY YOU ON THE COMPLETENESS, ACCURACY OR EXISTENCE OF ANY ADVERTISING, OR AS A RESULT OF ANY RELATIONSHIP OR TRANSACTION BETWEEN YOU AND ANY ADVERTISER OR SPONSOR WHOSE ADVERTISING APPEARS ON THE SERVICE;

- ANY CHANGES WHICH WE MAY MAKE TO THE SERVICES, OR FOR ANY PERMANENT OR TEMPORARY CESSATION IN THE PROVISION OF THE SERVICES (OR ANY FEATURES WITHIN THE SERVICES);

- THE DELETION OF, CORRUPTION OF, OR FAILURE TO STORE, ANY CONTENT AND OTHER COMMUNICATIONS DATA MAINTAINED OR TRANSMITTED BY OR THROUGH YOUR USE OF THE SERVICES;

- YOUR FAILURE TO PROVIDE US WITH ACCURATE ACCOUNT INFORMATION; OR

- YOUR FAILURE TO KEEP YOUR PASSWORD OR ACCOUNT DETAILS SECURE AND CONFIDENTIAL.

PLEASE NOTE THAT WE ONLY PROVIDE OUR PLATFORM FOR DOMESTIC AND PRIVATE USE. YOU AGREE NOT TO USE OUR PLATFORM FOR ANY COMMERCIAL OR BUSINESS PURPOSES, AND WE HAVE NO LIABILITY TO YOU FOR ANY LOSS OF PROFIT, LOSS OF BUSINESS, LOSS OF GOODWILL OR BUSINESS REPUTATION, BUSINESS INTERRUPTION, OR LOSS OF BUSINESS OPPORTUNITY.

IF DEFECTIVE DIGITAL CONTENT THAT WE HAVE SUPPLIED DAMAGES A DEVICE OR DIGITAL CONTENT BELONGING TO YOU AND THIS IS CAUSED BY OUR FAILURE TO USE REASONABLE CARE AND SKILL, WE WILL EITHER REPAIR THE DAMAGE OR PAY YOU COMPENSATION. HOWEVER, WE WILL NOT BE LIABLE FOR DAMAGE THAT YOU COULD HAVE AVOIDED BY FOLLOWING OUR ADVICE TO APPLY AN UPDATE OFFERED TO YOU FREE OF CHARGE OR FOR DAMAGE THAT WAS CAUSED BY YOU FAILING TO CORRECTLY FOLLOW INSTALLATION INSTRUCTIONS OR TO HAVE IN PLACE THE MINIMUM SYSTEM REQUIREMENTS ADVISED BY US.

THESE LIMITATIONS ON OUR LIABILITY TO YOU SHALL APPLY WHETHER OR NOT WE HAVE BEEN ADVISED OF OR SHOULD HAVE BEEN AWARE OF THE POSSIBILITY OF ANY SUCH LOSSES ARISING.

YOU ARE RESPONSIBLE FOR ANY MOBILE CHARGES THAT MAY APPLY TO YOUR USE OF OUR SERVICE, INCLUDING TEXT-MESSAGING AND DATA CHARGES. IF YOU'RE UNSURE WHAT THOSE CHARGES MAY BE, YOU SHOULD ASK YOUR SERVICE PROVIDER BEFORE USING THE SERVICE.

TO THE FULLEST EXTENT PERMITTED BY LAW, ANY DISPUTE YOU HAVE WITH ANY THIRD PARTY ARISING OUT OF YOUR USE OF THE SERVICES, INCLUDING, BY WAY OF EXAMPLE AND NOT LIMITATION, ANY CARRIER, COPYRIGHT OWNER OR OTHER USER, IS DIRECTLY BETWEEN YOU AND SUCH THIRD PARTY, AND YOU IRREVOCABLY RELEASE US AND OUR AFFILIATES FROM ANY AND ALL CLAIMS, DEMANDS AND DAMAGES (ACTUAL AND CONSEQUENTIAL) OF EVERY KIND AND NATURE, KNOWN AND UNKNOWN, ARISING OUT OF OR IN ANY WAY CONNECTED WITH SUCH DISPUTES.

## 11. Other Terms

**Open Source.** The Platform contains certain open source software. Each item of open source software is

1. Your Relationship With Us

2. Accepting the Terms

3. Changes to the Terms

4. Your Account with Us

5. Your Access to and Use of Our Services

6. Intellectual Property Rights

7. Content

8. Indemnity

9. EXCLUSION OF WARRANTIES

10. LIMITATION OF LIABILITY

11. Other Terms

12. Dispute Resolution

13. App Stores

14. Contact Us

# 11. Other Terms

**Open Source.** The Platform contains certain open source software. Each item of open source software is subject to its own applicable license terms, which can be found at Open Source Policy ↗.

**Entire Agreement.** These Terms constitute the whole legal agreement between you and TikTok and govern your use of the Services and completely replace any prior agreements between you and TikTok in relation to the Services.

**Links.** You may link to our home page, provided you do so in a way that is fair and legal and does not damage our reputation or take advantage of it. You must not establish a link in such a way as to suggest any form of association, approval or endorsement on our part where none exists. You must not establish a link to our Services in any website that is not owned by you. The website in which you are linking must comply in all respects with the content standards set out at "Your Access to and Use of Our Services" above. We reserve the right to withdraw linking permission without notice.

**No Waiver.** Our failure to insist upon or enforce any provision of these Terms shall not be construed as a waiver of any provision or right.

**Security.** We do not guarantee that our Services will be secure or free from bugs or viruses. You are responsible for configuring your information technology, computer programmes and platform to access our Services. You should use your own virus protection software.

**Severability.** If any court of law, having jurisdiction to decide on this matter, rules that any provision of these Terms is invalid, then that provision will be removed from the Terms without affecting the rest of the Terms, and the remaining provisions of the Terms will continue to be valid and enforceable.

**Counter-notice.** If a counter-notice is received by TikTok's Copyright Agent, we may send a copy of the counter-notice to the original complaining party informing that person that we may replace the removed content or cease disabling it. Unless the original complaining party files an action seeking a court order against the Content Provider, member or user, the removed content may be replaced, or access to it restored, in ten business days or more after receipt of the counter-notice, at TikTok's sole discretion.

Please understand that filing a counter-notification may lead to legal proceedings between you and the complaining party to determine ownership. Be aware that there may be adverse legal consequences in your country if you make a false or bad faith allegation by using this process.

**California Consumer Rights Notice.** Under California Civil Code Section 1789.3, California users of the Services receive the following specific consumer rights notice: The Complaint Assistance Unit of the Division of Consumer Services of the California Department of Consumer Affairs may be contacted in writing at the contact information set forth at https://www.dca.ca.gov/about_us/contactus.shtml ↗.

Users of the Services who are California residents and are under 18 years of age may request and obtain removal of User Content they posted by contacting us at: https://www.tiktok.com/legal/report/feedback ↗. All requests must be labeled "California Removal Request" on the email subject line. All requests must provide a description of the User Content you want removed and information reasonably sufficient to permit us to locate that User Content. We do not accept California Removal Requests via postal mail, telephone or facsimile. We are not responsible for notices that are not labeled or sent properly, and we may not be able to respond if you do not provide adequate information.

**Exports.** You agree that you will not export or re-export, directly or indirectly the Services and/or other information or materials provided by TikTok hereunder, to any country for which the United States or any other relevant jurisdiction requires any export license or other governmental approval at the time of export without first obtaining such license or approval. In particular, but without limitation, the Services may not be exported or re-exported (a) into any U.S. embargoed countries or any country that has been designated by the U.S. Government as a "terrorist supporting" country, or (b) to anyone listed on any U.S. Government list of prohibited or restricted parties, including the U.S. Treasury Department's list of Specially Designated Nationals or the U.S. Department of Commerce Denied Person's List or Entity List.

**U.S. Government Restricted Rights.** The Services and related documentation are "Commercial Items", as that term is defined at 48 C.F.R. §2.101, consisting of "Commercial Computer Software" and "Commercial Computer Software Documentation", as such terms are used in 48 C.F.R. §12.212 or 48 C.F.R. §227.7202, as applicable. Consistent with 48 C.F.R. §12.212 or 48 C.F.R. §227.7202-1 through 227.7202-4, as applicable, the Commercial Computer Software and Commercial Computer Software Documentation are being licensed to U.S. Government end users (a) only as Commercial Items and (b) with only those rights as are granted to all other end users pursuant to the terms and conditions herein.

1. Your Relationship With Us

2. Accepting the Terms

3. Changes to the Terms

4. Your Account with Us

5. Your Access to and Use of Our Services

6. Intellectual Property Rights

7. Content

8. Indemnity

9. EXCLUSION OF WARRANTIES

10. LIMITATION OF LIABILITY

11. Other Terms

**12. Dispute Resolution**

13. App Stores

14. Contact Us

the U.S. Government or its terrorist-supporting country, or (b) to anyone listed on any U.S. Government list of prohibited or restricted parties, including the U.S. Treasury Department's list of Specially Designated Nationals or the U.S. Department of Commerce Denied Person's List or Entity List.

**U.S. Government Restricted Rights.** The Services and related documentation are "Commercial Items", as that term is defined at 48 C.F.R. §2.101, consisting of "Commercial Computer Software" and "Commercial Computer Software Documentation", as such terms are used in 48 C.F.R. §12.212 or 48 C.F.R. §227.7202, as applicable. Consistent with 48 C.F.R. §12.212 or 48 C.F.R. §227.7202-1 through 227.7202-4, as applicable, the Commercial Computer Software and Commercial Computer Software Documentation are being licensed to U.S. Government end users (a) only as Commercial Items and (b) with only those rights as are granted to all other end users pursuant to the terms and conditions herein.

## 12. Dispute Resolution

### A. Informal resolution process first.

If we have a dispute with you relating to or arising out of these Terms, we will first try and resolve it with you amicably. You agree to do the same for us. To be clear, when we use the terms "TikTok," "we," or "us" in this Section 12.A, we mean TikTok Inc. and all of our affiliated companies and individuals.

The party raising a dispute will initiate this process by notifying the other. Whichever party receives the notice will have 60 days to respond. If the dispute has not been resolved after the response time has expired, or within 30 days after a response has been issued, whichever is earlier, either party may file legal action against the other. Engaging in this informal dispute resolution process is a requirement that must be completed before filing any legal action. You and TikTok agree that you both will make a good faith effort to resolve the dispute amicably before either you or TikTok files any legal action against the other, and that the statute of limitations and any filing fee deadlines shall be tolled while the parties engage in the informal dispute resolution process.

### B. Exclusive venue.

These Terms and any claims, causes of action, of any kind or character, or demand arising out of or relating to the Terms will be governed by the laws of the State of California. Any claim, cause of action or dispute, arising out of or relating to these Terms shall also be resolved exclusively in the U.S. District Court for the Central District of California or the Superior Court of the State of California, County of Los Angeles. You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim.

### C. One year limitation period / limitation on legal action.

YOU AND TIKTOK AGREE THAT YOU MUST INITIATE ANY PROCEEDING OR ACTION WITHIN ONE (1) YEAR OF THE DATE OF THE OCCURRENCE OF THE EVENT OR FACTS GIVING RISE TO A DISPUTE THAT IS ARISING OUT OF OR RELATED TO THESE TERMS. OTHERWISE, YOU FOREVER WAIVE THE RIGHT TO PURSUE ANY CLAIM OR CAUSE OF ACTION, OF ANY KIND OR CHARACTER, BASED ON SUCH EVENTS OR FACTS, AND SUCH CLAIM(S) OR CAUSE(S) OF ACTION ARE PERMANENTLY BARRED.

## 13. App Stores

To the extent permitted by applicable law, the following supplemental terms shall apply when accessing the Platform through specific devices:

d TikTok

1. Your Relationship With Us

2. Accepting the Terms

3. Changes to the Terms

4. Your Account with Us

5. Your Access to and Use of Our Services

6. Intellectual Property Rights

7. Content

8. Indemnity

9. EXCLUSION OF WARRANTIES

10. LIMITATION OF LIABILITY

11. Other Terms

12. Dispute Resolution

13. App Stores

14. Contact Us

# 13. App Stores

To the extent permitted by applicable law, the following supplemental terms shall apply when accessing the Platform through specific devices:

## Notice regarding Apple.

By downloading the Platform from a device made by Apple, Inc. ("Apple") or from Apple's App Store, you specifically acknowledge and agree that:

- These Terms between TikTok and you; Apple is not a party to these Terms.

- The license granted to you hereunder is limited to a personal, limited, non-exclusive, non-transferable right to install the Platform on the Apple device(s) authorised by Apple that you own or control for personal, non-commercial use, subject to the Usage Rules set forth in Apple's App Store Terms of Services.

- Apple is not responsible for the Platform or the content thereof and has no obligation whatsoever to furnish any maintenance or support services with respect to the Platform.

- In the event of any failure of the Platform to conform to any applicable warranty, you may notify Apple, and Apple will refund the purchase price for the Platform, if any, to you. To the maximum extent permitted by applicable law, Apple will have no other warranty obligation whatsoever with respect to the Platform.

- Apple is not responsible for addressing any claims by you or a third party relating to the Platform or your possession or use of the Platform, including without limitation (a) product liability claims; (b) any claim that the Platform fails to conform to any applicable legal or regulatory requirement; and (c) claims arising under consumer protection or similar legislation.

- In the event of any third party claim that the Platform or your possession and use of the Platform infringes such third party's intellectual property rights, Apple is not responsible for the investigation, defence, settlement or discharge of such intellectual property infringement claim.

- You represent and warrant that (a) you are not located in a country that is subject to a U.S. Government embargo, or that has been designated by the U.S. Government as a "terrorist supporting" country; and (b) you are not listed on any U.S. Government list of prohibited or restricted parties.

- Apple and its subsidiaries are third party beneficiaries of these Terms and upon your acceptance of the terms and conditions of these Terms, Apple will have the right (and will be deemed to have accepted the right) to enforce these Terms against you as a third party beneficiary hereof.

- TikTok expressly authorises use of the Platform by multiple users through the Family Sharing or any similar functionality provided by Apple.

## Windows Phone Store.

By downloading the Platform from the Windows Phone Store (or its successors) operated by Microsoft, Inc. or its affiliates, you specifically acknowledge and agree that:

- You may install and use one copy of the Platform on up to five (5) Windows Phone enabled devices that are affiliated with the Microsoft account you use to access the Windows Phone Store. Beyond that, we reserve the right to apply additional conditions or charge additional fees.

- You acknowledge that Microsoft Corporation, your phone manufacturer and network operator have no obligation whatsoever to furnish any maintenance and support services with respect to the Platform.

## Amazon Appstore.

By downloading the Platform from the Amazon Appstore (or its successors) operated by Amazon Digital Services, Inc. or affiliates ("Amazon"), you specifically acknowledge and agree that:

- to the extent of any conflict between (a) the Amazon Appstore Terms of Use or such other terms which

1. Your Relationship With Us
2. Accepting the Terms
3. Changes to the Terms
4. Your Account with Us
5. Your Access to and Use of Our Services
6. Intellectual Property Rights
7. Content
8. Indemnity
9. EXCLUSION OF WARRANTIES
10. LIMITATION OF LIABILITY
11. Other Terms
12. Dispute Resolution
13. App Stores
14. Contact Us

You acknowledge that Microsoft Corporation, your phone manufacturer and network operator have no obligation whatsoever to furnish any maintenance and support services with respect to the Platform.

## Amazon Appstore.

By downloading the Platform from the Amazon Appstore (or its successors) operated by Amazon Digital Services, Inc. or affiliates ("Amazon"), you specifically acknowledge and agree that:

- to the extent of any conflict between (a) the Amazon Appstore Terms of Use or such other terms which Amazon designates as default end user license terms for the Amazon Appstore ("Amazon Appstore EULA Terms"), and (b) the other terms and conditions in these Terms, the Amazon Appstore EULA Terms shall apply with respect to your use of the Platform that you download from the Amazon Appstore, and

- Amazon does not have any responsibility or liability related to compliance or non-compliance by TikTok or you (or any other user) under these Terms or the Amazon Appstore EULA Terms.

## Google Play.

By downloading the Platform from Google Play (or its successors) operated by Google, Inc. or one of its affiliates ("Google"), you specifically acknowledge and agree that:

- to the extent of any conflict between (a) the Google Play Terms of Services and the Google Play Business and Program Policies or such other terms which Google designates as default end user license terms for Google Play (all of which together are referred to as the "Google Play Terms"), and (b) the other terms and conditions in these Terms, the Google Play Terms shall apply with respect to your use of the Platform that you download from Google Play, and

- you hereby acknowledge that Google does not have any responsibility or liability related to compliance or non-compliance by TikTok or you (or any other user) under these Terms or the Google Play Terms.

## 14. Contact Us

You can reach us at: https://www.tiktok.com/legal/report/feedback ↗ or write us at TikTok Inc.: 5800 Bristol Parkway, Suite 100, Culver City, CA 90230, USA



| Company | Programs | Resources | Legal |
|---|---|---|---|
| About TikTok | TikTok for Good | Help Center | Terms of Service |
| Newsroom | TikTok for Developers | Safety Center | Privacy Policy |
| Contact | Effect House | Privacy Center | Intellectual Property Policy |
| Careers | Advertise on TikTok | Creator Academy | TikTok Law Enforcement Guidelines |
| ByteDance | TikTok Embeds | Community Guidelines | |

1. Your Relationship With Us

2. Accepting the Terms

3. Changes to the Terms

4. Your Account with Us

5. Your Access to and Use of Our Services

6. Intellectual Property Rights

7. Content

8. Indemnity

9. EXCLUSION OF WARRANTIES

10. LIMITATION OF LIABILITY

11. Other Terms

12. Dispute Resolution

13. App Stores

**14. Contact Us**

- to the extent of any conflict between (a) the Amazon Appstore Terms of Use or such other terms which Amazon designates as default end user license terms for the Amazon Appstore ("Amazon Appstore EULA Terms"), and (b) the other terms and conditions in these Terms, the Amazon Appstore EULA Terms shall apply with respect to your use of the Platform that you download from the Amazon Appstore, and

- Amazon does not have any responsibility or liability related to compliance or non-compliance by TikTok or you (or any other user) under these Terms or the Amazon Appstore EULA Terms.

## Google Play.

By downloading the Platform from Google Play (or its successors) operated by Google, Inc. or one of its affiliates ("Google"), you specifically acknowledge and agree that:

- to the extent of any conflict between (a) the Google Play Terms of Services and the Google Play Business and Program Policies or such other terms which Google designates as default end user license terms for Google Play (all of which together are referred to as the "Google Play Terms"), and (b) the other terms and conditions in these Terms, the Google Play Terms shall apply with respect to your use of the Platform that you download from Google Play, and

- you hereby acknowledge that Google does not have any responsibility or liability related to compliance or non-compliance by TikTok or you (or any other user) under these Terms or the Google Play Terms.

## 14. Contact Us

You can reach us at: https://www.tiktok.com/legal/report/feedback ↗ or write us at TikTok Inc.: 5800 Bristol Parkway, Suite 100, Culver City, CA 90230, USA

♪ TikTok

**Company**

About TikTok

Newsroom

Contact

Careers

ByteDance

**Programs**

TikTok for Good

TikTok for Developers

Effect House

Advertise on TikTok

TikTok Embeds

**Resources**

Help Center

Safety Center

Privacy Center

Creator Academy

Community Guidelines

Transparency

Accessibility

**Legal**

Terms of Service

Privacy Policy

Intellectual Property Policy

TikTok Law Enforcement Guidelines

Children's Privacy Policy

© 2025 TikTok

# EXHIBIT F

⬆ TikTok

| **What Information We Collect**
How We Use Your Information
How We Share Your Information
Your Rights
Your Choices
Data Security and Retention
Children and Teens
Other Rights
Privacy Policy Updates
Contact Us

🌐 U.S.

# Privacy Policy

*Last updated: Aug 19, 2024*

This Privacy Policy applies to TikTok services (the "Platform"), which include TikTok apps, websites, software and related services accessed via any platform or device that link to this Privacy Policy. The Platform is provided and controlled by TikTok Inc. ("TikTok", "we" or "us"). We are committed to protecting and respecting your privacy. This Privacy Policy explains how we collect, use, share, and otherwise process the personal information of users and other individuals age 13 and over in connection with our Platform. For information about how we collect, use, share, and otherwise process the personal information of users under age 13 ("Children"), please refer to our Children's Privacy Policy ↗. For information about how we collect, use, share, and otherwise process consumer health data as defined under Washington's My Health My Data Act and other similar state laws, please refer to the Consumer Health Data Privacy Policy ↗ .

Capitalized terms that are not defined in this Privacy Policy have the meaning given to them in the Terms of Service ↗.

## What Information We Collect

We may collect information from and about you, including information that you provide, information from other sources, and automatically collected information.

### Information You Provide

When you create an account, upload content, contact us directly, or otherwise use the Platform, you may provide some or all of the following information:

- Account and profile information, such as name, age, username, password, language, email, phone number, social media account information, and profile image.

- User-generated content, including comments, photographs, livestreams, audio recordings, videos, text, hashtags, and virtual item videos that you choose to create with or upload to the Platform ("User Content") and the associated metadata, such as when, where, and by whom the content was created. Even if you are not a user, information about you may appear in User Content created or published by users on the Platform. When you create User Content, we may upload or import it to the Platform before you save or post the User Content (also known as pre-uploading), for example, in order to recommend audio options, generate captions, and provide other personalized recommendations. If you apply an effect to your User Content, we may collect a version of your User Content that does not include the effect.

- Messages, which include information you provide when you compose, send, or receive messages through the Platform's messaging functionalities. They include messages you send through our chat functionality when communicating with sellers who sell goods to you, and your use of virtual assistants when purchasing items through the Platform. That information includes the content of the message and information about the message, such as when it was sent, received, or read, and message participants. Please be aware that messages you choose to send to other users of the Platform will be accessible by those users and that we are not responsible for the manner in which those users use or share the messages.

- Information, including text, images, and videos, found in your device's clipboard, with your permission. For example, if you choose to initiate information sharing with a third-party platform, or choose to paste content from the clipboard onto the Platform, we access this information stored in your clipboard in order to fulfill your request.

**What Information We Collect**

How We Use Your Information

How We Share Your Information

Your Rights

Your Choices

Data Security and Retention

Children and Teens

Other Rights

Privacy Policy Updates

Contact Us

purchasing items through the Platform. That information includes the content of the message and information about the message, such as when it was sent, received, or read, and message participants. Please be aware that messages you choose to send to other users of the Platform will be accessible by those users and that we are not responsible for the manner in which those users use or share the messages.

- Information, including text, images, and videos, found in your device's clipboard, with your permission. For example, if you choose to initiate information sharing with a third-party platform, or choose to paste content from the clipboard onto the Platform, we access this information stored in your clipboard in order to fulfill your request.

- Purchase information, including payment card numbers or other third-party payment information (such as PayPal) where required for the purpose of payment, and billing and shipping address. We also collect information that is required for extended warranty purposes and your transaction and purchase history on or through the Platform.

- Your phone and social network contacts, with your permission. If you choose to find other users through your phone contacts, we will access and collect information such as names, phone numbers, and email addresses, and match that information against existing users of the Platform. If you choose to find other users through your social network contacts, we will collect your public profile information as well as names and profiles of your social network contacts.

- Your choices and communication preferences.

- Information to verify an account such as proof of identity or age.

- Information in correspondence you send to us, including when you contact us for support.

- Information you share through surveys or your participation in challenges, research, promotions, marketing campaigns, events, or contests such as your gender, age, likeness, and preferences.

## Information From Other Sources

We may receive the information described in this Privacy Policy from other sources, such as:

- If you choose to sign-up or log-in to the Platform using a third-party service such as Facebook, Twitter, Instagram, or Google, or link your TikTok account to a third-party service, we may collect information from the service–for example, your public profile information (such as nickname), email, and contact list.

- Advertisers, measurement and other partners share information with us about you and the actions you have taken outside of the Platform, such as your activities on other websites and apps or in stores, including the products or services you purchased, online or in person. These partners also share information with us, such as mobile identifiers for advertising, hashed email addresses and phone numbers, and cookie identifiers, which we use to help match you and your actions outside of the Platform with your TikTok account. Some of our advertisers and other partners enable us to collect similar information directly from their websites or apps by integrating our TikTok Advertiser Tools ↗ (such as TikTok Pixel).

- We may obtain information about you from certain affiliated entities within our corporate group, including about your activities on their platform.

- We may receive information about you from others, including where you are included or mentioned in User Content, direct messages, in a complaint, appeal, request or feedback submitted to us, or if your contact information is provided to us.

- We may also collect or receive information about you from organizations, businesses, people, and others, including, for example, publicly available sources, government authorities, professional organizations, and charity groups.

## Automatically Collected Information

We automatically collect certain information from you when you use the Platform, including internet or other network activity information such as your IP address, geolocation-related data, unique device identifiers, browsing and search history (including content you have viewed in the Platform), and Cookies ↗ .

- **Usage Information.** We collect information regarding your use of the Platform and any other User Content that you generate through or upload to our Platform.

- **Device Information.** We collect certain information about the device you use to access the Platform, such as your IP address, user agent, mobile carrier, time zone settings, identifiers for advertising purposes, model of your device, the device system, network type, device IDs, your screen resolution and operating

**What Information We Collect**

How We Use Your Information

How We Share Your Information

Your Rights

Your Choices

Data Security and Retention

Children and Teens

Other Rights

Privacy Policy Updates

Contact Us

We automatically collect certain information from you when you use the Platform, including internet or other network activity information such as your IP address, geolocation-related data, unique device identifiers, browsing and search history (including content you have viewed in the Platform), and Cookies → .

- **Usage Information.** We collect information regarding your use of the Platform and any other User Content that you generate through or upload to our Platform.

- **Device Information.** We collect certain information about the device you use to access the Platform, such as your IP address, user agent, mobile carrier, time zone settings, identifiers for advertising purposes, model of your device, the device system, network type, device IDs, your screen resolution and operating system, app and file names and types, keystroke patterns or rhythms, battery state, audio settings and connected audio devices. We automatically assign you a device ID and user ID. Where you log-in from multiple devices, we will be able to use information such as your device ID and user ID to identify your activity across devices. We may also associate you with information collected from devices other than those you use to log-in to the Platform.

- **Location Data.** We collect information about your approximate location, including location information based on your SIM card and/or IP address. In addition, we collect location information (such as tourist attractions, shops, or other points of interest) if you choose to add the location information to your User Content. Current versions of the app do not collect precise or approximate GPS information from U.S. users. If you are still using an older version that allowed for collection of precise or approximate GPS information (last release in August 2020) and you granted us permission to do so, we may collect such information.

- **Image and Audio Information.** We may collect information about the videos, images and audio that are a part of your User Content, such as identifying the objects and scenery that appear, the existence and location within an image of face and body features and attributes, the nature of the audio, and the text of the words spoken in your User Content. We may collect this information to enable special video effects, for content moderation, for demographic classification, for content and ad recommendations, and for other non-personally-identifying operations. We may collect biometric identifiers and biometric information as defined under U.S. laws, such as faceprints and voiceprints, from your User Content. Where required by law, we will seek any required permissions from you prior to any such collection. Click here ↗ to learn more.

- **Metadata.** When you upload or create User Content, you automatically upload certain metadata that is connected to the User Content. Metadata describes other data and provides information about your User Content that will not always be evident to the viewer. For example, in connection with your User Content the metadata can describe how, when, where, and by whom the piece of User Content was created, collected, or modified and how that content is formatted. It also includes information, such as your account name, that enables other users to trace back the User Content to your user account. Additionally, metadata includes data that you choose to provide with your User Content, e.g., any hashtags used to mark keywords to the video and captions.

- **Cookies.** We and our service providers and business partners use cookies and other similar technologies (e.g., web beacons, flash cookies, etc.) ("Cookies") to automatically collect information, measure and analyze how you use the Platform, including which pages you view most often and how you interact with content, enhance your experience using the Platform, improve the Platform, provide you with advertising, and measure the effectiveness of advertisements and other content. We and our partners also use Cookies to promote the Platform on other platforms and websites. Cookies enable the Platform to provide certain features and functionality. Web beacons are very small images or small pieces of data embedded in images, also known as "pixel tags" or "clear GIFs," that can recognize Cookies, the time and date a page is viewed, a description of the page where the pixel tag is placed, and similar information from your computer or device. To learn how to disable certain Cookies, see the "Your Choices → " section below.

We may link your contact or account information with your activity on and off our Platform across all your devices, using your email or other log-in or device information. We may use this information to display advertisements on our Platform tailored to your interests, preferences, and characteristics.

We are not responsible for the privacy practices of our service providers and business partners, and the information practices of these service providers and business partners are not covered by this Privacy Policy.

We may aggregate or de-identify the information described above. Aggregated or de-identified data is not subject to this Privacy Policy.

We may aggregate or de-identify the information described above. Aggregated or de-identified data is not subject to this Privacy Policy.

What Information We Collect

**How We Use Your Information**

How We Share Your Information

Your Rights

Your Choices

Data Security and Retention

Children and Teens

Other Rights

Privacy Policy Updates

Contact Us

# How We Use Your Information

As explained below, we use your information to improve, support and administer the Platform, to allow you to use its functionalities, and to fulfill and enforce our Terms of Service. We may also use your information to, among other things, show you suggestions, promote the Platform, and customize your ad experience.

We generally use the Information We Collect → :

- To fulfill requests for products, services, Platform functionality, support and information for internal operations, including troubleshooting, data analysis, testing, research, statistical, and survey purposes and to solicit your feedback.

- To customize the content you see when you use the Platform. For example, we may provide you with services based on the country settings you have chosen or show you content that is similar to content that you have liked or interacted with.

- To send promotional materials from us or on behalf of our affiliates and trusted third parties.

- To improve and develop our Platform and conduct product development.

- To measure and understand the effectiveness of the advertisements we serve to you and others and to deliver advertising, including targeted advertising, to you on the Platform.

- To make suggestions and provide a customized ad experience.

- To support the social functions of the Platform, including to permit you and others to connect with each other (for example, through our Find Friends function), to suggest accounts to you and others, and for you and others to share, download, and otherwise interact with User Content posted through the Platform.

- To use User Content as part of our advertising and marketing campaigns to promote the Platform.

- To understand how you use the Platform, including across your devices.

- To infer additional information about you, such as your age, gender, and interests.

- To help us detect abuse, fraud, and illegal activity on the Platform.

- To promote the safety and security of the Platform, including by scanning, analyzing, and reviewing User Content, messages and associated metadata for violations of our Terms of Service, Community Guidelines, or other conditions and policies.

- To verify your identity in order to use certain features, such as livestream or verified accounts, or when you apply for a Business Account, to ensure that you are old enough to use the Platform (as required by law), or in other instances where verification may be required.

- To communicate with you, including to notify you about changes in our services.

- To announce you as a winner of our contests or promotions if permitted by the promotion rule, and to send you any applicable prizes.

- To enforce our Terms of Service, Community Guidelines, and other conditions and policies.

- Consistent with your permissions, to provide you with location-based services, such as advertising and other personalized content.

- To train and improve our technology, such as our machine learning models and algorithms.

- To combine all the Information We Collect → or receive about you for any of the foregoing purposes.

- To facilitate sales, promotion, and purchases of goods and services and to provide user support.

- For any other purposes disclosed to you at the time we collect your information or pursuant to your consent.

**TikTok**

What Information We Collect

How We Use Your Information

**How We Share Your Information**

Your Rights

Your Choices

Data Security and Retention

Children and Teens

Other Rights

Privacy Policy Updates

Contact Us

- Consistent with your permissions, to provide you with location-based services, such as advertising and other personalized content.

- To train and improve our technology, such as our machine learning models and algorithms.

- To combine all the Information We Collect → or receive about you for any of the foregoing purposes.

- To facilitate sales, promotion, and purchases of goods and services and to provide user support.

- For any other purposes disclosed to you at the time we collect your information or pursuant to your consent.

**Profiling:** We do not engage in profiling which results in legal or similarly significant effects, as defined under applicable law.

## How We Share Your Information

We are committed to maintaining your trust, and while TikTok does not sell your personal information or share your personal information with third parties for purposes of cross-context behavioral advertising where restricted by applicable law, we want you to understand when and with whom we may share the Information We Collect → for business purposes.

### Service Providers and Business Partners

We share the categories of personal information listed above with service providers and business partners to help us perform business operations and for business purposes, including research, payment processing and transaction fulfillment, database maintenance, administering contests and special offers, technology services, deliveries, sending communications, advertising and marketing services, analytics, measurement, data storage and hosting, disaster recovery, search engine optimization, and data processing. These service providers and business partners may include:

- Payment processors and transaction fulfillment providers, who may receive the Information You Provide →, Information From Other Sources →, and Automatically Collected Information → but who do not receive your message data, including, in particular, the following third-party payment providers/processors: PayPal ( https://www.paypal.com/us/webapps/mpp/ua/privacy-full ↗ ) and Stripe ( https://stripe.com/en-ie/privacy ↗ ).

- Customer and technical support providers, who may receive the Information You Provide →, Information From Other Sources →, and Automatically Collected Information →.

- Researchers who may receive the Information You Provide →, Information From Other Sources →, and Automatically Collected Information → but would not receive your payment information or message data.

- Advertising, marketing, and analytics vendors, who may receive the Information You Provide →, Information From Other Sources →, and Automatically Collected Information → but would not receive your payment information or message data.

### Within Our Corporate Group

As a global company, the Platform is supported by certain entities within our corporate group, which are given limited remote access to Information We Collect → as necessary to enable them to provide certain important functions. To learn more about how we share information with certain corporate group entities, see here ↗ .

### In Connection with a Sale, Merger, or Other Business Transfer

We may share all of the Information We Collect → in connection with a substantial corporate transaction, such as the sale of a website, a merger, consolidation, asset sales, or in the unlikely event of bankruptcy.

**TikTok**

What Information We Collect

How We Use Your Information

**How We Share Your Information**

Your Rights

Your Choices

Data Security and Retention

Children and Teens

Other Rights

Privacy Policy Updates

Contact Us

given limited remote access to Information We Collect → as necessary to enable them to provide certain important functions. To learn more about how we share information with certain corporate group entities, see here ↗.

## In Connection with a Sale, Merger, or Other Business Transfer

We may share all of the Information We Collect → in connection with a substantial corporate transaction, such as the sale of a website, a merger, consolidation, asset sales, or in the unlikely event of bankruptcy.

## For Legal Reasons

We may disclose any of the Information We Collect → to respond to subpoenas, court orders, legal process, law enforcement requests, legal claims, or government inquiries, and to protect and defend the rights, interests, safety, and security of the Platform, our affiliates, users, or the public. We may also share any of the Information We Collect → to enforce any terms applicable to the Platform, to exercise or defend any legal claims, and comply with any applicable law.

## With Your Consent

We may share your information for other purposes pursuant to your consent or at your direction.

We partner with third-party services (such as Facebook, Instagram, Twitter, and Google) to offer you a seamless sign-up, log-in, and content-sharing experience. We may share information about you with these third-party services if you choose to use these features. For example, the services may receive information about your activity on the Platform and may notify your connections on the third-party services about your use of the Platform, in accordance with their privacy policies. If you choose to allow a third-party service to access your account, we will share certain information about you with the third party. Depending on the permissions you grant, the third party may be able to obtain your account information and other information you choose to provide.

If you choose to engage in public activities on the Platform, you should be aware that any information you share may be read, collected, or used by other users. You should use caution in disclosing personal information while using the Platform. We are not responsible for the information you choose to submit.

When you make a purchase from a third party on the Platform, including from a seller selling products through our shopping features, we share the information related to the transaction with that third party and their service providers and transaction fulfillment providers. By making the purchase, you are directing us to share your information in this way. These entities may use the information shared in accordance with their privacy policies.

## Your Rights

You may submit a request to know, access, correct or delete the information we have collected from or about you at https://www.tiktok.com/legal/report/privacy ↗. You may appeal any decision we have made about your request by following the instructions in the communication you receive from us notifying you of our decision. You may also exercise your rights to know, access, correct, delete, or appeal by sending your request to the physical address provided in the "Contact Us → " section below. You can also update your account information directly through your in-app settings, as well as request a copy of your TikTok data or request to deactivate by following the instructions here ↗ or delete your account by following the instructions here ↗.

You may be entitled, in accordance with applicable law, to submit a request through an authorized agent. To designate an authorized agent to exercise choices on your behalf, please provide evidence that you have given such agent power of attorney or that the agent otherwise has valid written authority to submit requests to exercise rights on your behalf. We will respond to your request consistent with applicable law and subject to proper verification. We will verify your request by asking you to send it from the email address associated with your account or to provide information necessary to verify your account.

What Information We Collect

How We Use Your Information

How We Share Your Information

Your Rights

**Your Choices**

Data Security and Retention

Children and Teens

Other Rights

Privacy Policy Updates

Contact Us

request to deactivate by following the instructions here ↗ or delete your account by following the instructions here ↗.

You may be entitled, in accordance with applicable law, to submit a request through an authorized agent. To designate an authorized agent to exercise choices on your behalf, please provide evidence that you have given such agent power of attorney or that the agent otherwise has valid written authority to submit requests to exercise rights on your behalf. We will respond to your request consistent with applicable law and subject to proper verification. We will verify your request by asking you to send it from the email address associated with your account or to provide information necessary to verify your account.

More information about requests that we received can be found here ↗.

While some of the information that we collect, use, and disclose may constitute sensitive personal information under applicable state privacy laws, such as information from users under the relevant age threshold, information you disclose in survey responses or in your User Content about your racial or ethnic origin, national origin, religious beliefs, mental or physical health diagnosis, sexual life or sexual orientation, status as transgender or nonbinary, citizenship or immigration status, or financial information, we only process such information in order to provide the Platform and within other exemptions under applicable law. For example, we may process your financial information in order to provide you the goods or services you request from us or your driver's license number in order to verify your identity.

## Your Choices

- You may be able to control some of the Information We Collect ⇆ through your device browser settings to refuse or disable Cookies ⇆ . Because each browser is different, please consult the instructions provided by your browser. Please note that you may need to take additional steps to refuse or disable certain types of Cookies. In addition, your choice to disable Cookies is specific to the particular browser or device that you are using when you disable Cookies, so you may need to separately disable Cookies for each type of browser or device. If you choose to refuse, disable, or delete Cookies, some of the functionality of the Platform may no longer be available to you. Without this information, we are not able to provide you with all of the requested services.

- You can navigate to "Ads" in your in-app settings to opt-out of targeted advertising based on personal information about your activity on nonaffiliated apps and websites.

- You may be able to manage third-party advertising preferences for some of the third parties we work with to serve advertising across the Internet by using the choices available at https://www.networkadvertising.org/managing/opt_out.asp ↗ and https://www.aboutads.info/choices ↗ .

- Your device may have controls that determine what Information We Collect ⇆ . For example, you can control whether we can collect your mobile advertising identifier for advertising through settings on your Apple and Android devices.

- You can opt out of marketing or advertising emails by using the "unsubscribe" link or mechanism noted in marketing or advertising emails.

- Current versions of the app do not collect precise or approximate GPS information from U.S. users. If you are still using an older version that allowed for collection of precise or approximate GPS information (last release in August 2020) and you granted us permission to do so, you can prevent your device from sharing such information with the Platform at any time through your device's operating system settings.

- If you have registered for an account, you may access, review, and update certain personal information that you have provided to us by logging into your account and using available features and functionalities.

- Some browsers transmit "do-not-track" signals to websites. Because of differences in how browsers incorporate and activate this feature, we currently do not take action in response to these signals.

- Some browsers transmit "do-not-track" signals to websites. Because of differences in how browsers incorporate and activate this feature, we currently do not take action in response to these signals.

What Information We Collect

How We Use Your Information

How We Share Your Information

Your Rights

Your Choices

**Data Security and Retention**

Children and Teens

Other Rights

Privacy Policy Updates

Contact Us

## Data Security and Retention

We use reasonable measures to help protect information from loss, theft, misuse, unauthorized access, disclosure, alteration, or destruction. You should understand that no data storage system or transmission of data over the Internet or any other public network can be guaranteed to be 100 percent secure. Please note that information collected by third parties may not have the same security protections as information you submit to us, and we are not responsible for protecting the security of such information.

We retain information for as long as necessary to provide the Platform and for the other purposes set out in this Privacy Policy. We also retain information when necessary to comply with contractual and legal obligations, when we have a legitimate business interest to do so (such as improving and developing the Platform, and enhancing its safety, security and stability), and for the exercise or defense of legal claims.

The retention periods are different depending on different criteria, such as the type of information and the purposes for which we use the information. For example, when we process your information such as your profile information to provide you with the Platform, we keep this information for as long as you have an account. If you violate our Terms of Service, Community Guidelines, or other conditions or policies, we may remove your profile immediately, but may keep other information about you to process the violation.

TikTok may transmit your data to its servers or data centers outside of the United States for storage and/or processing. Other entities with whom TikTok may share your data as described herein may be located outside of the United States.

## Children and Teens

The privacy of Children is important to us. We provide a separate experience for Children in the United States, in which we collect and process only limited information. For information about how we collect, use, share, and otherwise process the personal information of Children, please refer to our Children's Privacy Policy ↗.

The Platform otherwise is not directed at Children. If we become aware that personal information has been collected on the Platform from a Child, we will delete this information and terminate the Child's account. If you believe there is a user who is below the age of 13, please contact us at: https://www.tiktok.com/legal/report/feedback ↗.

If you are a parent or guardian, our Guardian's Guide ↗ contains information and resources to help you understand the Platform and the tools and controls you can use. As a parent or guardian, you can also request the deletion of the account of your underage child or download the account data of your underage child by contacting us at https://www.tiktok.com/legal/report/privacy ↗.

If you are a parent or guardian, depending on your state of residence, you may have the ability to exercise certain rights over your child's or teen's account. For example, you may request the deletion of their accounts, download account data, or exercise other rights in connection with your child or teen by contacting us at https://www.tiktok.com/legal/report/privacy ↗ . We will address these requests in accordance with applicable law.

What Information We Collect

How We Use Your Information

How We Share Your Information

Your Rights

Your Choices

Data Security and Retention

Children and Teens

**Other Rights**

Privacy Policy Updates

Contact Us

If you are a parent or guardian, depending on your state of residence, you may have the ability to exercise certain rights over your child's or teen's account. For example, you may request the deletion of their accounts, download account data, or exercise other rights in connection with your child or teen by contacting us at https://www.tiktok.com/legal/report/privacy ↗ . We will address these requests in accordance with applicable law.

## Other Rights

### Sharing for Direct Marketing Purposes (Shine the Light)

If you are a California resident, once a calendar year, you may be entitled to obtain information about personal information that we shared, if any, with other businesses for their own direct marketing uses. To submit a request, contact us at: https://www.tiktok.com/legal/report/privacy ↗ .

### Content Removal for Users Under 18

Users of the Platform who are California residents and are under 18 years of age may request and obtain removal of User Content they posted by contacting us at: https://www.tiktok.com/legal/report/privacy ↗ . All requests must provide a description of the User Content you want removed and information reasonably sufficient to permit us to locate that User Content. We do not accept California Removal Requests via postal mail, telephone, or facsimile. We may not be able to respond if you do not provide adequate information. Please note that your request does not ensure complete or comprehensive removal of the material. For example, User Content that you have posted may be republished or reposted by another user.

Users of the Platform who are Connecticut residents and are under 18 years of age, and parents and guardians of users of the Platform who are Connecticut residents under 16 years of age, may request that we unpublish or delete their own account (for users aged 13 through 17) or their child's account (for parents and guardians with teen users under 16) by following the instructions here ↗ .

## Privacy Policy Updates

We may update this Privacy Policy from time to time. When we update the Privacy Policy, we will notify you by updating the "Last Updated" date at the top of the new Privacy Policy, posting the new Privacy Policy, or providing any other notice required by applicable law. We recommend that you review the Privacy Policy each time you visit the Platform to stay informed of our privacy practices.

## Contact Us

Questions, comments and requests regarding this Privacy Policy should be addressed to:

- Contact us: https://www.tiktok.com/legal/report/privacy ↗

we unpublish or delete their own account (for users aged 13 through 17) or their child's account (for parents and guardians with teen users under 16) by following the instructions here ↗ .

What Information We Collect
How We Use Your Information
How We Share Your Information
Your Rights
Your Choices
Data Security and Retention
Children and Teens
Other Rights
Privacy Policy Updates
Contact Us

## Privacy Policy Updates

We may update this Privacy Policy from time to time. When we update the Privacy Policy, we will notify you by updating the "Last Updated" date at the top of the new Privacy Policy, posting the new Privacy Policy, or providing any other notice required by applicable law. We recommend that you review the Privacy Policy each time you visit the Platform to stay informed of our privacy practices.

## Contact Us

Questions, comments and requests regarding this Privacy Policy should be addressed to:

- Contact us: https://www.tiktok.com/legal/report/privacy ↗
- Mailing Address: TikTok Inc., Attn: Privacy Policy Inquiry, 5800 Bristol Parkway, Suite 100, Culver City, CA 90230

♪ TikTok

**Company**
About TikTok
Newsroom
Contact
Careers
ByteDance

**Programs**
TikTok for Good
TikTok for Developers
Effect House
Advertise on TikTok
TikTok Embeds

**Resources**
Help Center
Safety Center
Privacy Center
Creator Academy
Community Guidelines
Transparency
Accessibility

**Legal**
Terms of Service
Privacy Policy
Intellectual Property Policy
TikTok Law Enforcement Guidelines
Children's Privacy Policy

© 2025 TikTok

# EXHIBIT G

**d'TikTok**

For Children

For Parents, Guardians, and Other Adults

# Children's Privacy Policy

*Last updated: October 1, 2024*

## For Children

TikTok cares about your privacy. Children under the age of 13 in the United States can use TikTok in the Under 13 Experience ("Kids Mode"). When you use Kids Mode, we collect some information from you. This page explains what information we get and how we use it.

### What Information Do We Collect from You?

When you use TikTok, we collect some information about you. For example, when you set up a TikTok account, we collect your birthday, username, and password. We also collect some information from your phone, tablet, or other device you use, such as information about what kind of device you have, and information about the videos you watch. If you contact us with feedback or questions, we may collect your email address so that we can respond to you.

### How Do We Use Your Information?

We use your information to allow you to use and enjoy TikTok. For example, we use your username and password to let you access your account. We may use information about what videos you watch to show you additional videos that we think you'll enjoy. We use information about your device to keep TikTok running smoothly.

### How Do We Share Your Information?

We may share your information with companies that provide support to TikTok.

We may share your information to keep you or others safe. We may also share your information to keep TikTok safe, protect our rights, and comply with law. We don't sell your information or share it to target ads based on your activity across the services of different businesses.

### How Do We Keep Your Information Safe?

We have appropriate security protections to help keep your information safe. These protections help stop others from stealing your information or using it in bad ways. But online security is never perfect, so be careful when using online services.

### Where and How Long Do We Keep Your Information?

Some of your information may be kept outside the U.S. How long we keep your information depends on several things, such as the type of information and the reason why we collected the information. In general, we only keep your information as long as we need it.

### What Rights Do You Have?

You have the right to know, access, correct or delete your information. You can submit a request at

d'TikTok

For Children

**For Parents, Guardians, and Other Adults**

### Where and How Long Do We Keep Your Information?

Some of your information may be kept outside the U.S. How long we keep your information depends on several things, such as the type of information and the reason why we collected the information. In general, we only keep your information as long as we need it.

## What Rights Do You Have?

You have the right to know, access, correct or delete your information. You can submit a request at https://www.tiktok.com/legal/report/privacy ↗ or by sending your request to the address provided in the " Contact Us ↗ " section below. Depending on where you live, your parent or guardian can also make these requests for you. If you, or your parent or guardian, do make such a request, we will respond appropriately and will not penalize you for it.

## Do You Ever Update This Privacy Policy?

Yes, we may update this page from time to time, so please check back.

## What If I Have Questions or Need More Information?

For more information, please review the rest of this Privacy Policy with your parent or guardian.

## *For Parents, Guardians, and Other Adults*

TikTok Inc. ("TikTok", "we" or "us") is committed to protecting the privacy of children. This Children's Privacy Policy explains how we collect, use, share, and otherwise process the personal information of users under the age of 13 ("Children") on a separate experience of the TikTok services for Children in the United States ("Kids Mode").

Kids Mode is designed for Children residing in the United States. It allows Children to engage with TikTok's fun video features while limiting the information collected from them. Children can view videos from other creators and explore their creativity by capturing their own videos with music and special effects. While Children may save these videos directly to their device, the videos will not be collected by us or viewable by other users. Children also have a more limited interactive experience, including, for example, they cannot exchange messages with other users, and other users cannot view their profiles.

## What Information We Collect from Children

When a Child registers for TikTok, we collect only limited information, including username, password, and birthday.

We may also collect certain information automatically from the Child's device, including internet or other network activity information such as device ID, IP address, web browser type and version, country-level location, as well as certain app activity information, such as video watches, time in the app, and general usage information.

If a Child reaches out to us via the in-app feedback form, we collect the email address that the Child provides solely for the purpose of responding to the inquiry.

While certain information we collect from children and subsequently use and disclose may constitute sensitive personal information under applicable state privacy laws, we only process such information in order to provide the Platform and within other exemptions under applicable law.

## How We Use Children's Information

d TikTok

For Children

**For Parents, Guardians, and Other
Adults**

If a Child reaches out to us via the in-app feedback form, we collect the email address that the Child
provides solely for the purpose of responding to the inquiry.

While certain information we collect from children and subsequently use and disclose may constitute
sensitive personal information under applicable state privacy laws, we only process such information in
order to provide the Platform and within other exemptions under applicable law.

## How We Use Children's Information

We use the information we collect to provide and support our services. For example, we use username and
password to authenticate Children. We may use the information that is collected automatically to provide
personalized content; serve contextual advertising; perform analytics and troubleshoot; protect the
security and integrity of the user and our services; and ensure legal and regulatory compliance.

Children cannot publicly share personal information, including videos or profile information.

We do not engage in profiling which results in legal or similarly significant effects, as defined under
applicable law.

## How We Share Children's Information

We may share the information that we collect with our corporate group or service providers as necessary
for them to support the internal operations of the TikTok service.

We may disclose personal information if permitted or required by law (i) in response to a court order or a
subpoena, or similar legal process; (ii) in response to a law enforcement or public agency's (including
schools or children services) request; (iii) if we believe disclosure may prevent the instigation of a crime, to
facilitate an investigation related to public safety or protect the safety of Children using our sites or
applications; (iv) to protect the security and integrity of our sites, applications, and other technology, as
well as the technology of our service providers; or (v) to enable us to take precautions against liability.

TikTok does not sell information from Children to third parties and does not share such information with
third parties for the purposes of cross-context behavioral advertising.

## Data Security and Retention

We make efforts to treat Children's information securely and in accordance with this policy. Unfortunately,
the transmission of information via the internet is not completely secure. Although we take steps to protect
this information, we cannot guarantee the security of information transmitted through the TikTok services;
any transmission is at the user's own risk.

We employ technical and organizational measures designed to achieve a level of security appropriate to
risks of varying likelihood and severity and that takes into the account the rights and freedoms of users. We
maintain these technical and organizational measures and will amend them from time to time to maintain or
improve the overall security of our systems.

We retain Children's information for as long as reasonably necessary to fulfill the purpose for which the
information was collected. The retention periods are different depending on different criteria, such as the
type of information and the purposes for which we use the information.

TikTok may transmit Children's information to its servers or data centers outside of the United States for
storage and/or processing. Other entities with whom TikTok may share Children's information as described
herein may be located outside of the United States.

## Your Rights

A parent or guardian may submit a request to access or delete the information of their Child, as well as a
request to appeal a decision we have made about such a request, by contacting us via the webform or the
physical address provided in the Contact Us section below.

Depending on your state of residence, you (as a parent or guardian) may have the ability to exercise certain
rights over your Child's account. For example, you may download account data or exercise other rights in
connection with your Child by contacting us via the webform or physical address provided in the Contact
Us section below. We will address these requests in accordance with applicable law and subject to proper
validation.

Document title: Children&#39;s Privacy Policy | TikTok
Capture URL: https://www.tiktok.com/legal/page/global/privacy-policy-for-younger-users/en
Capture timestamp (UTC): Tue, 09 Dec 2025 15:09:16 GMT

For Children

**For Parents, Guardians, and Other Adults**

TikTok may transmit Children's information to its servers or data centers outside of the United States for storage and/or processing. Other entities with whom TikTok may share Children's information as described herein may be located outside of the United States.

## Your Rights

A parent or guardian may submit a request to access or delete the information of their Child, as well as a request to appeal a decision we have made about such a request, by contacting us via the webform or the physical address provided in the Contact Us section below.

Depending on your state of residence, you (as a parent or guardian) may have the ability to exercise certain rights over your Child's account. For example, you may download account data or exercise other rights in connection with your Child by contacting us via the webform or physical address provided in the Contact Us section below. We will address these requests in accordance with applicable law and subject to proper validation.

## Privacy Policy Updates

We may update this Privacy Policy from time to time. When we update the Privacy Policy, we will notify you by updating the "Last Updated" date at the top of the new Privacy Policy, posting the new Privacy Policy, or providing any other notice required by applicable law. We recommend that you review the Privacy Policy each time you visit TikTok's services to stay informed of our privacy practices.

## Contact Us

Questions, comments and requests regarding this Privacy Policy should be addressed to:

- Contact us: https://www.tiktok.com/legal/report/privacy ↗
- Mailing Address: TikTok Inc., Attn: Privacy Policy Inquiry, 5800 Bristol Parkway, Suite 100, Culver City, CA 90230



### Company
About TikTok
Newsroom
Contact
Careers
ByteDance

### Programs
TikTok for Good
TikTok for Developers
Effect House
Advertise on TikTok
TikTok Embeds

### Resources
Help Center
Safety Center
Privacy Center
Creator Academy
Community Guidelines
Transparency
Accessibility

### Legal
Terms of Service
Privacy Policy
Intellectual Property Policy
TikTok Law Enforcement Guidelines
Children's Privacy Policy

English ▼

© 2025 TikTok