Derek W. Loeser (*pro hac vice*)
dloeser@kellerrohrback.com
Cari Campen Laufenberg (*pro hac vice*)
claufenberg@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101
(206) 623-1900, Fax (206) 623-3384

Eric Kafka (*pro hac vice*)
ekafka@cohenmilstein.com
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
(212) 838-7797, Fax: (212) 838-7745

Steven Bloch (*pro hac vice*)
sbloch@sgtlaw.com
**SILVER GOLUB & TEITELL LLP**
One Landmark Square, 15th Floor
Stamford, Connecticut 06901
Telephone: (203) 325-4491
sbloch@sgtlaw.com

*Plaintiffs Interim Co-Lead Counsel*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| IN RE: TIKTOK, INC., MINOR PRIVACY LITIGATION | MDL NO. 3144<br><br>2:25-ml-03144-GW-RAO<br><br>**PLAINTIFFS' MOTION TO ENFORCE COMPLIANCE WITH COURT ORDERS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37(B)**<br><br>Date: July 2, 2026<br>Time: 8:30 am<br>Judge: Honorable George H. Wu<br>Location: Courtroom 9D |

PLEASE TAKE NOTICE that on July 2, 2026, at 8:30 a.m., or as soon thereafter as this matter may be heard in the Courtroom of the Honorable George H. Wu of the above-titled Court, located at 350 West First Street, 9th Floor, Los Angeles, California 90012, Plaintiffs will move the Court to enforce compliance with Court orders pursuant to Federal Rule of Civil Procedure 37(b).

This motion is based on the Notice of Motion, the Memorandum of Points and Authorities in support thereof, the Declaration of Eric Kafka, the pleadings and records on file in this action, and such further evidence and argument that may be presented at the hearing for this motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on May 18, 2026.

DATED this 28th day of May, 2026.

KELLER ROHRBACK L.L.P.

By: */s/ Derek W. Loeser*
    Derek W. Loeser (*pro hac vice*)
    dloeser@kellerrohrback.com
    Cari Campen Laufenberg (*pro hac vice*)
    claufenberg@kellerrohrback.com
    1201 Third Avenue, Suite 3400
    Seattle, WA 98101
    (206) 623-1900, Fax (206) 623-3384

    *Interim Lead Counsel*

COHEN MILSTEIN SELLERS AND TOLL PLLC

By: */s/ Eric A. Kafka*
    Eric A. Kafka (*pro hac vice*)
    ekafka@cohenmilstein.com
    Cohen Milstein Sellers and Toll PLLC
    88 Pine Street, 14th Floor

New York, NY 10005
212-838-7797
212-838-7745 (fax)

*Interim Lead Counsel*

SILVER GOLUB & TEITELL LLP


Steven L. Bloch (*pro hac vice*)
sbloch@sgtlaw.com
One Landmark Square, 15th Floor
Stamford, Connecticut 06901
Telephone: (203) 325-4491

*Executive Committee*

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.A. v. ByteDance Inc.*,
No. 2:24-cv-06784-GW-RAO, Dkt. No. 1 (C.D. Cal. Aug. 9, 2024) ................11

*Colonies Partners, L.P. v. Cnty. of San Bernardino*,
2020 WL 1496444 (C.D. Cal. Feb. 27, 2020) .......................................................11

*Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.*,
2023 WL 6866273 (9th Cir. Oct. 18, 2023) .........................................................11

*Marti v. Manning*,
2025 WL 708515 (E.D. Cal. Mar. 5, 2025).............................................................6

*RG Abrams Ins. v. L. Offs. of C.R. Abrams*,
342 F.R.D. 461 (C.D. Cal. 2022)..........................................................................11

*Sali v. Corona Reg'l. Med. Ctr.*,
884 F.3d 1218 (9th Cir. 2018) ................................................................................6

*Wyle v. R.J. Reynolds Indus., Inc.*,
709 F.2d 585 (9th Cir. 1983) ..................................................................................6

**TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................1

II.     FACTS ....................................................................................................2

        A.      This Case is About the Data that TikTok Collects and Uses. .............2

        B.      The Court Ordered TikTok to Preserve User Data and to
                Produce All Data for the Named Plaintiffs and 68 Random
                Users. ..................................................................................................2

III.    LEGAL STANDARD ............................................................................6

IV.     ARGUMENT..........................................................................................7

        A.      The Court Should Enforce Its Orders That TikTok Produce All
                Data Associated with the Named Plaintiffs and 68 Random
                Users. ..................................................................................................7

        B.      TikTok Must Immediately Preserve TikTok Users' Data. ...............11

        C.      TikTok Must Identify the Scope of its Deletion of Users' Data
                Since This Action Commenced..........................................................13

V.      CONCLUSION.....................................................................................13

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Unfortunately, Plaintiffs must once again return to the Court about TikTok's production and preservation of user data. The Court's orders have been clear and should have already resolved the disputes so that the Parties can move onto other aspects of the litigation. Regrettably, TikTok has not complied with the Court orders.

First, TikTok has not produced all data associated with the Named Plaintiffs and 68 random users, despite being ordered by the Court to do so on multiple occasions. *See* Dkt. Nos. 134, 137 (Nov. 10, 2025 Order); Dkt. No. 178 (Jan. 30, 2026 minute order); Dkt. No. 191 (Mar. 13, 2026 minute order). After TikTok failed to comply with the Court's November 2025 order, the Court ordered TikTok to either "provide Plaintiffs remaining documents concerning the [N]amed Plaintiffs or an explanation of why doing so would be impossible by Thursday, March 19, 2026." Dkt. No. 191. TikTok made up its own option no. 3: produce only a subset of the Named Plaintiffs' data and claim it is impossible to locate the remainer of the data based on arguments that have already been rejected by the Court and that are contradicted by the record. TikTok's employees, Plaintiffs' expert, and TikTok's documents agree: TikTok possesses internal tools that can identify data associated with a user. The Court should order TikTok to produce the remainder of the data associated with the Named Plaintiffs and 68 random users.

Second, the Court ordered TikTok to "preserve data until the Court orders further unless the parties make a request on an ex parte basis." Dkt. No. 11 at 2. During the Parties' May 5, 2026 meet-and-confer, TikTok told Plaintiffs for the first time that TikTok was only preserving three types of data for this litigation: (1) the data that TikTok has produced that is associated with the Named Plaintiffs; (2) the data that TikTok has produced that is associated with the 68 random users; and (3) data for under-13 accounts that TikTok has banned from the platform. The Court never authorized TikTok to delete the other user data. As such, the Court should affirm that TikTok is still required to preserve user data.

1

Third, the Court should order TikTok to comply with its order that, to the extent that "there have been deletions during the pendency of this litigation," TikTok must "provide Plaintiffs with information concerning the dates of those deletions" so that the Parties and the Court can assess the extent of the data loss. Dkt. No. 134 at 11.

## II.    FACTS

### A. This Case is About the Data that TikTok Collects and Uses.

Plaintiffs' core allegation in this case is that TikTok has knowingly permitted and encouraged children under the age of 13 to create user accounts on the TikTok app and collected their Private Information without parental notice or consent. Revised Am. Compl. ¶¶ 119–38.  Plaintiffs allege that "TikTok uses the copious amounts of data it collects from users via the platform and third-party sources to: (1) amass profiles of its users and feed them targeted, behavioral advertisements; and (2) train its powerful algorithm to learn users' preferences and provide a personalized curated content feed that extends users' time on the platform." *Id.* ¶ 115. Plaintiffs further allege that "TikTok serves ads which are 'tailored' to the user's 'interests, preferences, and characteristics' based on the user's data profile." *Id.*, ¶ 117.

### B. The Court Ordered TikTok to Preserve User Data and to Produce All Data for the Named Plaintiffs and 68 Random Users.

From the outset of this litigation, TikTok has failed to meet its preservation obligations, and the Parties have now spent a year conferring regarding TikTok's preservation and production of user data.

On April 28, 2025, the Court ordered TikTok to "preserve data until the Court orders further unless the parties make a request on an ex parte basis." Dkt. No. 11 at 2. On April 30, 2025, just two days later, TikTok sought to temporarily suspend those obligations. Dkt. No. 19. On May 5, 2025, the Court denied TikTok's motion. Dkt. No. 25. At a July 14, 2025 hearing, following further meet-and-confers and briefing, the Court "requested that the parties continue to meet and confer on preservation issues, including the potential production of exemplar data, and in the absence of resolution, file briefing

2

so that any remaining preservation disputes could be heard simultaneously with the motion to dismiss." Dkt. No. 99 at 2; *see also* Dkt. No. 123-2 at 24:21–25:1, 116:17–117:5.

On October 9, 2025, Plaintiffs and TikTok both filed motions regarding TikTok's preservation and production of user data. Dkt. Nos. 113–14. TikTok moved for a protective order requesting "that Defendants' obligation to preserve data from any TikTok accounts belonging to U.S. users under the age of 13 years old [be] limited to the users' names, online contact information, and persistent identifiers[.]" Dkt. No. 113 at 1. That same day, Plaintiffs filed a motion requesting "that the Court order Defendants [to] preserve and produce all data for the [N]amed Plaintiffs and 34 randomized additional users (24 randomized/anonymized users with Full Access accounts and 10 randomized/anonymized users with Kids Mode accounts), along with data dictionaries and/or other such documentation sufficient to describe the data contained in each field or other repository that stores user data for current TikTok users in the United States[.]" Dkt. No. 114-1 at 15 (emphasis added). On October 16, 2025, TikTok filed its opposition to Plaintiffs' motion to compel, arguing it "cannot guarantee—and the Court should not require—that these comprehensive exemplars will encompass 'all' data that exists about each [N]amed Plaintiff." Dkt. No. 122 at 15. TikTok sought to support its position with two declarations from company employees, Jonthan M. Redgrave and Ethan Spector, in support of its position that TikTok would not be able to identify all data associated with a given user. See Dkt. Nos. 122-4 and 122-5. In its reply in support of its motion to compel, Plaintiffs submitted a declaration from their expert Zubair Shafiq, who explained why "TikTok can identify the full range of data for each TikTok user." Dkt. No. 125 at 1.

On November 10, 2025, the Court granted Plaintiffs' motion to compel. Dkt. Nos. 134, 137. The Court expressly rejected TikTok's argument that "Plaintiffs' request for all user data (and for the random account user data) is not reasonable or proportionate to their needs." Dkt. No. 134 at 11 (emphasis added). The Court also ordered TikTok "to immediately preserve information associated with Plaintiffs' accounts and, if there have

been deletions during the pendency of this litigation, provide Plaintiffs with information concerning the dates of those deletions to the extent such information is available." *Id.*

At the status conference held on January 30, 2026, the Parties again discussed Named Plaintiff data. The Court ordered TikTok "to provide Plaintiffs every document referencing Plaintiffs and their data within 30 days from the date of this order." Dkt. No. 178. Accordingly, pursuant to the Court's order, TikTok should have produced all data associated with the Named Plaintiffs by March 1, 2026.

On March 12, 2026, TikTok produced data that it described as "data associated with the [N]amed Plaintiffs' TikTok accounts." Ex. 1, Mar. 12, 2026 letter from M. Powers. However, TikTok did not clarify whether any deletions had occurred, nor whether it included all data associated with the Named Plaintiffs. Plaintiffs responded the same day to enquire whether TikTok had now completed production of all Named Plaintiff data pursuant to the Court's order. *See* Ex. 2, Mar. 12, 2026 e-mail from E. Kafka. On March 13, TikTok responded:

> As for … whether we have now completed production of 'all' of the [N]amed Plaintiffs' data, we've repeatedly explained how and why we cannot guarantee production of 'all' of a user's data given the manner in which data is stored at the company. While we have substantially completed our production of the [N]amed Plaintiffs' data that we were able to locate based on a reasonable search, we are checking whether there are any additional materials and, if there are, we will produce them as soon as possible.

Ex. 3, Mar. 13, 2026 e-mail from H. Stodder.

At the March 13, 2026 status conference, Plaintiffs raised TikTok's noncompliance with Court's November 10, 2025 and January 30, 2026 Orders regarding production of all Named Plaintiffs' data. After the conference, the Court directed TikTok to "to provide Plaintiffs remaining documents concerning the [N]amed Plaintiffs or an explanation of why doing so would be impossible by Thursday, March 19, 2026." Dkt. No. 191 at 1. As the Court explained:

4

> Well, you have to establish the impossibility before you say that you can't do it. I presume your response will establish whether or not that is impossible. If it's truly impossible, I agree with you, you can't do the impossible. But you haven't shown that it is impossible, then you have to do it….

Ex. 4, Mar. 13, 2026 Hrg Tr. at 8:25–9:7; 9:20–21.

On March 19, 2026, TikTok produced additional Named Plaintiff data and data dictionaries. TikTok also sent a concurrent letter that provided the same supposed explanation about why it could not identify all data for a given user, including citing the Redgrave and Spector declarations that it already submitted in October 2025 in opposition to Plaintiffs' motion to compel. *See* Ex. 5, Mar.19, 2026 Letter from M. Powers at 1–2. However, the Court has already considered these same arguments and declarations from TikTok, and yet, in November 2025 (when faced with TikTok's exact same objections) the Court ordered that TikTok needed to produce all Named Plaintiffs' user data. TikTok cannot meet its obligation to "establish the impossibility" of identifying all data associated with the Named Plaintiffs by recycling arguments that the Court rejected five months ago.

In its March 19, 2026 Letter, TikTok also stated that it had only produced 30 days of advertising data (even though it possesses at least 1,460 days of advertising data) and that it had only produced 1 day of activity data (even though it possesses at least 180 days of activity data). *See id.* at 3–4. On May 15, 2026, TikTok produced the additional days of advertising and activity data.

The next day, on March 20, 2026, Plaintiffs requested a meet-and-confer. TikTok asked to postpone the meet-and-confer to the following week following TikTok's production of random users' exemplar data on Monday, March 30. See Ex. 6, Mar. 24, 2026 e-mail from H. Stodder. On March 30, 2026, TikTok asserted that it had inadvertently produced incorrect random user data and would provide a corrected production. See Ex. 7, Mar. 30, 2026 letter from M. Powers. On April 24, 2026, TikTok represented that it produced a corrected version of the random user data. Ex. 8, Apr. 24, 2026 Letter from M. Powers.

The Parties held meet-and-confers on April 1, April 17, and May 5, 2026. During the May 5, 2026 meet-and-confer, Plaintiffs learned for the first time that TikTok had, contrary to Court order, failed to preserve any other user data in this matter save for the data associated with Named Plaintiffs, the random users, and under-13 accounts TikTok had banned from the platform. *See* Ex. 9, May 7, 2026 letter from E. Kafka. The Parties held a final meet-and-confer on the production and preservation issues on May 18, 2026. At this time, the Parties confirmed they had reached impasse. The Parties then mutually agreed to a briefing schedule according to Local Rules 6-1, 7-9, and 7-10. Plaintiffs now bring this motion pursuant to Federal Rule of Civil Procedure 37(b).

## III. LEGAL STANDARD

Courts possess broad authority under Federal Rule of Civil Procedure 37(b) to enforce their orders where a party "fails to comply with the rules of discovery or with court orders enforcing those rules." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983). While Rule 37(a) *ex ante* governs motions to compel discovery, Rule 37(b) applies after a party has violated a specific discovery order made by the court.

"[W]hen required disclosures aren't made or cooperation breaks down, Federal Rule of Civil Procedure 37 allows a party to move for an order compelling disclosures or discovery." *Sali v. Corona Reg'l. Med. Ctr.*, 884 F.3d 1218, 1219 (9th Cir. 2018). An order issued pursuant to Rule 37 may direct the responding party to comply with the original discovery. *Id.* at 1223 (explaining that a court's power under Rule 37 extends broadly to "issue orders enforcing a party's discovery obligations"). Where a court opts to enforce its discovery orders, rather than issue sanctions, pursuant to Rule 37(b), it need not reach the issue of whether a party has acted in good faith in failing to meet its discovery obligations. *See, e.g.*, *Marti v. Manning*, 2025 WL 708515, at *7 (E.D. Cal. Mar. 5, 2025) (declining to issue sanctions or hold defendants in contempt under 37(b) but instead to "enforce compliance" with the court's discovery orders).

## IV.  ARGUMENT

### A. The Court Should Enforce Its Orders That TikTok Produce All Data Associated with the Named Plaintiffs and 68 Random Users.

TikTok has not complied with *three* Court orders that require it to produce all data associated with Named Plaintiffs and/or random users. *First*, on November 10, 2025, the Court granted Plaintiffs' motion to compel the production of all data for the Named Plaintiffs and random users. Dkt. Nos. 134 at 2; 137. In their motion to compel, Plaintiffs asked the Court to order TikTok to "preserve and produce all data for the named Plaintiffs and 34 randomized additional users…"  Dkt. No. 114-2. The Court considered, and rejected, TikTok's argument that "Plaintiffs' request for all [Named Plaintiff] data (and for the random account user data) is not reasonable or proportionate to their needs." Dkt. No. 134 at 11. *Second*, after the January 30, 2026, status conference, the Court ordered TikTok "to provide Plaintiffs every document referencing Plaintiffs and their data within 30 days from the date of this order." Dkt. No. 178. Third, after the March 13, 2026 status conference, the Court ordered TikTok to "to provide Plaintiffs remaining documents concerning the [N]amed Plaintiffs or an explanation of why doing so would be impossible by Thursday, March 19, 2026." Dkt. No. 191.

TikTok has neither produced all data associated with the Named Plaintiffs and random users nor shown it would be "impossible" to do so. The Court made clear that these were TikTok's only two options. Dkt. No. 191. But instead of complying, TikTok produced a couple dozen Hive tables but, as discussed in greater detail below, failed to produce all relevant available tables or use its internal tools to identify and produce data from other data sources.

During the Parties' meet-and-confers, TikTok offered the same explanations for why it would supposedly be impossible to produce all the Named Plaintiffs' data that the Court *already rejected* in November 2025. Dkt. No. 134 at 11. On March 19, 2026, TikTok sent a letter to Plaintiffs, arguing it would be impossible to guarantee it produced all the Named Plaintiffs' data based on the Spector and Redgrave Declarations that

TikTok submitted in their unsuccessful October 2025 opposition to Plaintiffs' motion to compel. *See* Ex. 5 at 1-2. TikTok explained that they had "always maintained" that producing all data for a user was inappropriate. *Id.* a 2.[1]

TikTok's approach evinces disdain for the Court's orders. If TikTok disagreed with the Court's November 2025 order, the proper approach would have been for TikTok to file a motion for reconsideration. Instead, TikTok violated the Court's order and failed to produce all the Named Plaintiffs' data. And, after the Court provided TikTok with a second chance to show it was impossible to produce all the Named Plaintiff data, TikTok just repeated its previous insufficient arguments rather than offering anything new to substantiate their claim of impossibility.

Furthermore, there is now extensive evidence in the record that shows that TikTok can identify the data associated with each of its users. As Plaintiffs' expert Dr. Zubair Shafiq explained, TikTok developed its own internal systems to locate, compile, and manage the information of specific users across its data ecosystem. *See* Dkt. No. 125-1, Declaration of Dr. Zubair Shafiq ("Shafiq Decl.") ¶ 16. Analyzing the Spector and Redgrave Declarations, *see* Dkt. Nos. 122-4 and 122-5, and the two depositions of TikTok, Dr. Shafiq determined that TikTok's "internal tables are linked through unique user and device identifiers," suggesting that TikTok "maintains joinable keys—such as user IDs, device IDs, cookies, or session tokens—that allow TikTok to query and reconstruct user-specific records across its data ecosystem." Shafiq Decl. ¶ 22. Dr. Shafiq further identified two specific systems at TikTok that can identify where data is stored: CORAL and data inventory. *Id.* ¶¶ 19, 28.

TikTok's own employees have also admitted that TikTok is fully capable of identifying and preserving the data Plaintiffs requested. In deposition testimony, senior data science manager Ethan Spector attested that TikTok possesses a data warehouse, called "Hive," which allows for "the collection of multiple databases and the querying of

---

[1] On a follow-up meet-and-confer, TikTok confirmed that its March 19, 2026 letter provided its explanation for why it would be impossible to produce all data associated with the Named Plaintiffs.

them in ways where you can link and compare" the data therein. Dkt. No. 56-1 at 27. Mr. Spector further testified that TikTok is able to identify every "byte" or "field" of information maintained in Hive for each TikTok user, allowing TikTok to "cross-reference[] the user ID" across data tables and then "isolate[]" and "migrate[]" that user's information to new tables. *Id.* at 81. He also explained that the Hive database contains tables that collect data on children TikTok knows to be under 13. *Id.* at 28. For users under 13, TikTok is able to use their user ID to remove their data from "*wherever* it is in the Hive system." *Id.* at 126 (emphasis added). In a separate deposition, software engineer Tianyu Zhao testified that TikTok maintains another data inventory structure which is able "to capture *all* the data assets [ ] that contain[] TikTok-related data," encompassing "*everything related to TikTok.*" *Id.* at 170, 172 (emphases added). TikTok's suggestion that it is impossible to identify, preserve, and produce specific data on particular users is contradicted by the testimony of its own data scientists.

█████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ █████████ *See* Ex. 10, TTI-AG-LIT-005998114, at '116; Ex. 11, TTI-AG-LIT-001970609, at '611; Ex. 12, TTI-AG-LIT-009312002 at 27. During meet-and-confers, Plaintiffs repeatedly asked TikTok to confirm whether it utilized the Coral and data inventory functionalities to identify all user data. TikTok refused to disclose whether it used Coral or data inventory. TikTok's silence is telling: TikTok wants to evade using Coral or data inventory to search for user data, as it will demonstrate that TikTok did not produce all the data associated with the Named Plaintiffs or random users.

TikTok's document production also includes examples of specific user data that TikTok has not produced. Importantly, TikTok stores data about how it has profiled and

---

[2] If TikTok did lack the ability to find all data associated with particular users, it would be another COPPA violation; the statute requires TikTok to delete accounts and data belonging to users under 13. But if TikTok is unable to identify all data associated with every under-13 account, that data will remain on the platform, and TikTok would be in violation of COPPA. *See* 16 C.F.R. § 312.10.

categorized its users to target them with content that TikTok believes they will be most interested in. ██████████████████████████████████████████████████████ ████████████████████████████████████████.” See Dkt. No. 225-2 at '549. TikTok explained internally that:



*Id.* at '548. ███████████████████████████████████████████████ █████████████████████████████████████████████████ ██████████████████████████████████. Dkt. No. 225-3. This is evidence that TikTok is a child-directed platform under COPPA: ██████ █████████████████████████████████████████████████ █████████████████████████████████. 16 C.F.R. § 312.2. Furthermore, █████████████████████████████████████████████████ █████████████████████████████████████████████████ ████████████████. ████████████████████████████████████████. *See, e.g.*, Ex. 13, TTI-AG-LIT-002359952; Ex. 14 TTI-AG-LIT-000035881. ████████████ ███████████████████████████████████████████████████. Ex. 13 at '68 and '70. ████████████████████████. Plaintiffs are entitled to evidence of which users TikTok identified as possessing child-oriented interests and targeted with child-directed content.

In sum, the evidence shows that TikTok has not produced all the data associated with the Named Plaintiffs or the 68 random users, and that it is possible for TikTok to locate the data associated with each user. TikTok has not met the "impossibility" standard

set out by this Court and is defying the Court's prior orders to produce all data for the Named Plaintiffs and the 68 random users.

## B. TikTok Must Immediately Preserve TikTok Users' Data.

During the Parties' May 5, 2026 meet-and-confer, TikTok told Plaintiffs for the first time that TikTok was only preserving three types of data for this litigation: (1) the data that TikTok has produced that is associated with the Named Plaintiffs; (2) the data that TikTok has produced that is associated with the 68 random users; and (3) data for under-13 accounts that TikTok has banned from the platform. Ex. 9. Thus, other than the Named Plaintiffs and 68 random users, TikTok has not preserved any data for accounts that are live on TikTok's platform. Plaintiffs were deeply surprised by TikTok's admission on the May 5 meet-and-confer, given that it is inconsistent with TikTok's preservation obligations and the Court's orders.

Defendants "have a duty to preserve evidence that kicks in once a party has 'some notice' that evidence will be 'potentially relevant to the litigation.'" *Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.*, 2023 WL 6866273, at *2 (9th Cir. Oct. 18, 2023) (quoting *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 766 (9th Cir. 2015)). TikTok's obligation to preserve evidence arose no later than August 9, 2024, when the first private plaintiffs filed their class action complaint. *See A.A. v. ByteDance Inc.*, No. 2:24-cv-06784-GW-RAO, Dkt. No. 1 (C.D. Cal. Aug. 9, 2024). As soon as TikTok received notice of the allegations in the complaint, it was under an obligation to investigate the relevant evidence, including how its own systems work, and to ensure "the suspension of document destruction policies" *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 342 F.R.D. 461, 505 (C.D. Cal. 2022), through "[a] litigation hold, or preservation order," *Colonies Partners, L.P. v. Cnty. of San Bernardino*, 2020 WL 1496444, at *8 (C.D. Cal. Feb. 27, 2020). TikTok's duty to preserve evidence encompasses actively taking "reasonable steps to preserve it," Fed. R. Civ. P. 37(e), which "extends to the suspension of document destruction policies." *RG Abrams*, 342 F.R.D. at 505; *Colonies Partners*, 2020 WL 1496444, at *8.

11

Multiple orders by the Court reaffirm that TikTok is subject to an ongoing, affirmative obligation to preserve user data. From the outset of the case, the Court has imposed a preservation obligation, unequivocally directing TikTok to "preserve data until the Court orders further unless the parties make a request on an ex parte basis." Dkt. No. 11 at 2. Nothing in the Court's order suggested anything but an immediate, indefinite, and mandatory obligation to preserve such data. TikTok even went so far as to seek *ex parte* relief from its discovery obligations shortly after the Court's ruling, but the Court denied this request, confirming that potential technical difficulties did "not justify setting aside the preservation order, particularly given the risk of prejudice to Plaintiffs of lost evidence." Dkt. No. 25 at 2.

The Court has since continued to reinforce TikTok's responsibility to preserve user data obligations and reject TikTok's attempts to narrow or evade this obligation. In its November 10, 2025 order, the Court recounted that it had already "ordered Defendants in writing to preserve data until the Court orders further." Dkt. No. 134 at 3 (internal quotation omitted). And the Court also took note of TikTok's representation that it would comply with its obligation to preserve data pursuant to the Court's order. *Id*. at 6 (quoting Dkt. No. 93 at 9). In doing so, the Court reiterated that TikTok's preservation duties were not hypothetical but an ongoing directive governing TikTok's conduct throughout the pendency of this action.

On the May 5, 2026 meet-and-confer, TikTok suggested that it was permitted to delete user data because Plaintiffs and TikTok discussed a "snapshot" of the platform last summer. Kafka Decl. ¶ 3. But the parties never reached a final agreement, and neither Plaintiffs nor the Court authorized TikTok to delete relevant user data. **For avoidance of doubt, Plaintiffs would not agree to TikTok deleting any user data, absent a court order.** That said, Plaintiffs are willing to negotiate the parameters of what TikTok will produce and preserve so that TikTok will not need to preserve all user data forever. However, the first step in this process is for TikTok to identify the full scope of the data it collects and infers about users. TikTok's delay in producing all the data for the Named

Plaintiffs and 68 random users has hindered meaningful discussion about what data TikTok can stop preserving. Plaintiffs also note that, for some data, a snapshot or sample may ultimately be appropriate; although for other types of data, data for each user should be produced. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

At this time, the Court should affirm that TikTok is still required to preserve user data.

## C. TikTok Must Identify the Scope of its Deletion of Users' Data Since This Action Commenced

Finally, TikTok must identify the scope of its deletion of user data since this action commenced. From the outset of this litigation, the Court made clear that Defendants were obligated to suspend deletion practices and preserve relevant evidence, including user data already in their possession. Consistent with that obligation, the Court expressly directed that, to the extent "there have been deletions during the pendency of this litigation," Defendants must "provide Plaintiffs with information concerning the dates of those deletions" so that the Parties and the Court can assess the extent of any data loss. Dkt. No. 134 at 11. Plaintiffs ask that the Court enforce its prior order and require TikTok to provide this information to Plaintiffs.

## V.    CONCLUSION

For all the above reasons, Plaintiffs respectfully request that the Court enforce the discovery and production obligations it has ordered of TikTok.

DATED this 28th day of May, 2026.

KELLER ROHRBACK L.L.P.


By: */s/ Derek W. Loeser*
    Derek W. Loeser (*pro hac vice*)
    dloeser@kellerrohrback.com
    Cari Campen Laufenberg (*pro hac vice*)
    claufenberg@kellerrohrback.com
    1201 Third Avenue, Suite 3400
    Seattle, WA 98101
    (206) 623-1900, Fax (206) 623-3384

    *Interim Lead Counsel*

COHEN MILSTEIN SELLERS AND TOLL PLLC


By: */s/ Eric A. Kafka*
Eric A. Kafka (*pro hac vice*)
ekafka@cohenmilstein.com
Cohen Milstein Sellers and Toll PLLC
88 Pine Street, 14th Floor
New York, NY 10005
212-838-7797
212-838-7745 (fax)

*Interim Lead Counsel*

SILVER GOLUB & TEITELL LLP


Steven L. Bloch (*pro hac vice*)
sbloch@sgtlaw.com
One Landmark Square, 15th Floor
Stamford, Connecticut 06901
Telephone: (203) 325-4491

*Executive Committee*

14

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-4.3.4(a)(2)**

I, Eric. A. Kafka, attest that all other signatories listed, and on whose behalf the filing is submitted have concurred in the filings' content and have authorized the e-filing of the foregoing document in compliance with Local Rule 5-4.3.4(a)(2). Executed this 28th day of May, 2026, at New York, NY

*/s/ Eric. A. Kafka*
Eric A. Kafka

15

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 4580 words, which complies with the word limit of L.R. 11-6.1.

Executed this 28th day of May, 2026, at New York, NY

_/s/ Eric. A. Kafka_
Eric A. Kafka

16

**CERTIFICATE OF SERVICE**

I, Erin McCubbin, hereby certify that on May 28, 2026, I electronically filed the foregoing with the Clerk of the United States District Court for the Central District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

/s/ Erin McCubbin
Erin McCubbin

17