O'Melveny

O'Melveny & Myers LLP
1999 Avenue of the Stars
8th Floor
Los Angeles, CA 90067-6035

T: +1 310 553 6700
F: +1 310 246 6779
omm.com

May 29, 2026

**Drew Breuder**
D: +1 310 246 6713
dbreuder@omm.com

**VIA ECF**

The Honorable Rozella A. Oliver
Edward R. Roybal Federal Building and
United States Courthouse, Los Angeles
255 East Temple Street, Courtroom 590
Los Angeles, California 90012-3332

     Re:    *In re TikTok, Inc., Minor Privacy Litigation*, MDL No. 3144 (C.D. Cal.)
              Defendants' Reply In Support Of Informal Letter Brief to Compel Discovery

To the Honorable Magistrate Judge Oliver:

       The TikTok Defendants hereby submit this reply in support of their informal letter brief to compel discovery responses by Plaintiffs.

       We are pleased to report that the parties have further met and conferred and resolved their disputes as to the following discovery requests identified in Defendants' opening brief (ECF No. 227, "Mot."):  RFP Nos. 9, 13, 16, 18-20, 24-26, 29-31, 36, and 39-45, 47-48, 50, 70, and 80, and Interrogatory Nos. 13 and 15.[1]  We address below the discovery that remains in dispute and, per the Court's May 22, 2026 order, have included as Exhibit 11 a chart containing the text of the discovery and the parties' positions.

**I.**      **THE COURT SHOULD ORDER PLAINTIFFS TO PROVIDE FULL AND COMPLETE RESPONSES TO THE REMAINING DISCOVERY AT ISSUE.**

      **A.**      <u>**The Parties Have Largely Resolved their Disputes Concerning Category 1 Discovery, Except for Interrogatory Nos. 13 and 15.**</u>

       This category sought discovery from Plaintiffs about the TikTok Defendants and the TikTok platform, Plaintiffs' TikTok accounts and their associated data, and Plaintiffs' efforts to preserve documents.  Mot. 1-6.  As a result of Defendants' motion and the parties' further discussions, Plaintiffs have now withdrawn their objections and agreed to produce documents responsive to nearly all of the discovery in Category 1, including RFP Nos. 9, 13, 16, 18-20, 24-26, and 29.  *See* Ex. 12 (5/29/26 email from A. Wolter).  The sole remaining issue for the Court with respect to Category 1 is Plaintiffs' "compound" objection to Interrogatory Nos. 1, 3, and 12. *See* ECF No. 229 ("Opp.") at 7.  As explained in Section II, *infra*, those objections lack merit and the Court should compel responses to this discovery.[2]

---

[1] While the parties resolved Plaintiffs' "compound" objections to Interrogatory Nos. 13 and 15, Plaintiffs maintain their objection that those and other Interrogatories exceed the 25-interrogatory limit.  *See* Section II.

[2] Plaintiffs initially raised other objections to Category 1 discovery—including relevance, overbreadth, burden, equally available, vague, privilege, and legal conclusion/premature contention—but fail to specifically address them in their Opposition and thus have waived those objections.  Plaintiffs' agreement to produce the Category 1

Austin • Century City • Dallas • Houston • Los Angeles • Newport Beach • New York • San Francisco • Silicon Valley • Washington, DC
Beijing • Brussels • Hong Kong • London • Seoul • Shanghai • Singapore

B.    **The Parties Have Resolved All Disputes Concerning Category 2 Discovery.**

This category sought discovery directed to Plaintiffs' allegations that Defendants supposedly collected their personal information.  Mot. 7-8.  As a result of Defendants' motion and the parties' further discussions, Plaintiffs have now withdrawn their objections and agreed to produce all documents responsive to the discovery in Category 2, including RFP Nos. 30-31, 36, and 39-40.  *See* Ex. 12.  Nothing further remains for the Court to resolve here.

C.    **Discovery Concerning Plaintiffs' Use of and Dissemination of their Personal Information on Other Online Services Is Relevant, Not Burdensome, and Proportionate.**

The Court should overrule Plaintiffs' remaining objections to Category 3 discovery. Plaintiffs have withdrawn their objections and agreed to produce documents responsive to RFP Nos. 41-45, 47-48, and 50.  Opp. 8, 10; Ex. 12.  RFP Nos. 21-22, 27-28, 46, 51-55, and Interrogatory Nos. 2, 4-6, and 9-10 remain at issue.  Ex. 11.  As explained below, this remaining Category 3 discovery should be compelled because Plaintiffs have failed to rebut Defendants' showing of relevance, and failed to explain or substantiate why this discovery is supposedly burdensome, disproportionate, or would violate their privacy interests.

- Relevance.  In their opening papers, Defendants explained at length how and why Category 3 discovery—which is directed at Plaintiffs' use of and dissemination of their personal information on third-party Online Services—is directly relevant to test (i)  Plaintiffs' assertions that they reasonably expected their data to remain private on TikTok and that Defendants' collection of their data was highly offensive; (ii) actual knowledge; (iii) Defendants' estoppel, waiver, notice, failure to mitigate, and terms of service/consent defenses; and (iv) damages.  *See* Mot. 8-9.  Yet, Plaintiffs completely ignore and fail to respond to any of this extensive discussion of relevance—and also conveniently ignore the district judge's statements that Plaintiffs should provide this very discovery.  *See* Ex. 8 at 19:15-23 (Court: "Okay. I presume that [plaintiffs] are going to answer [the written discovery identified on page 14 of the report] … especially if you don't want the plaintiffs to be personally deposed"); Ex. 9 at 14 (noting Plaintiffs' refusal to answer Interrogatory Nos. 1-4 and 9-11, including questions about "other online and streaming services Plaintiffs used/and or provided their personal information" to).

Instead, Plaintiffs offer only vague, passing references to relevance, and largely rely on their refrain that the Category 3 discovery is "overbroad and burdensome."  *See* Opp. 8-11.  For the reasons explained, the Court should overrule Plaintiffs' relevance objections as discovery into Plaintiffs' use of and conduct on Online Platforms other than TikTok is directly probative of the claims, issues, and defenses.

- Undue Burden.  The Court should reject Plaintiffs' undue burden objections because they are vague, unsubstantiated, and legally deficient.  Just like their approach to relevance, Plaintiffs completely ignore the authorities Defendants cited about the exacting standard for proving burden and instead offer only the sweeping assertion—untethered to any specific discovery request—that collection of documents "for an online service such as Facebook or Instagram would … require many hundreds of hours review" and "would likely impose costs

---

discovery occurred only after the parties' meet and confer this week.  Mot. 1-6; Opp. 6-7; *see MarketLinx, Inc. v. Indus. Access Inc.*, 2013 WL 12133884, at *2 (C.D. Cal. Jan. 2, 2013) (objections "that were raised in response to a particular discovery request, but were not argued in the [motion], are deemed waived") (citation omitted).

2

O'Melveny

of thousands of dollars for each online service." Opp. 4-5. This is plainly deficient, as courts routinely reject similar assertions of burden because they lack sufficient specifics and details.[3]

Plaintiffs' assertions of burden also fail for the independent reason that there is no competent evidence to support them. The law is clear that allegations of burden must be supported by a sworn declaration—*ipse dixit* statements by counsel that discovery is supposedly burdensome are not enough.[4] Nor does the fact that this is an informal discovery conference change the analysis—a declaration is still required.[5]

Plaintiffs' claims of burden are also not accurate. The parties have already agreed to limit the list of Online Services to 15 specific platforms, which means this discovery does not require Plaintiffs to scour "the entire internet" as they previously claimed. In addition, Plaintiffs have made no factual showing concerning which, if any, of the Plaintiffs have accounts on these platforms, much less how much data these Online Services retain in the ordinary course. Moreover, and as explained herein, Defendants have agreed to further narrow this list from 15 to 10 Online Services, and have also clarified that they simply want Plaintiffs to use easy and readily accessible "Download Your Data" ("DYD") tools on these platforms that will permit them to obtain copies of whatever data these Online Services retain with the click of a few buttons. *See infra*. That is not remotely burdensome for Plaintiffs. Defendants' discovery pales in comparison to the scorched earth approach Plaintiffs have taken with respect to data collection vis-à-vis Defendants, and the discovery is clearly warranted in any event given the scope and magnitude of Plaintiffs' asserted claims and damages. *See Lee v. Cnty. of Los Angeles*, 2025 WL 2684029, at *14-15 (C.D. Cal. 2025) (ordering discovery, with some slight modifications, despite defendant's assertion that it would take 28 social workers more than 4,400 hours to review requested documents because the nature of the case "necessarily implicates burdensome—though not unduly burdensome—discovery"); ECF No. 233 at 6 (seeking to compel Defendants to produce all data for their TikTok accounts, as well as all account data for 68 random TikTok users); ECF No. 199-2, at 10 ("Plaintiffs anticipate that the damages at issue will be hundreds of millions (at least).").

- <u>Overbreadth and Proportionality</u>. Plaintiffs' objection that the remaining Category 3 discovery is overbroad also lacks merit. Plaintiffs argue that Defendants want "every

---

[3] *See Cory v. Aztec Steel Building., Inc*., 225 F.R.D. 667, 672 (D. Kan. 2005) (claim that discovery would require "numerous man hours" did not provide "sufficient details" to substantiate burden); *C.B. v. Moreno Valley Unified Sch. Dist*., 2022 WL 19775028, at *4 (C.D. Cal. Aug. 18, 2022) ("Defendant provides no facts in terms of time, money, or procedure required to produce the requested documents"); *In re Toys R Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 2010 WL 4942645, at *6 (C.D. Cal. 2010) (party asserting burden has "an obligation to provide sufficient detail in terms of time, money and procedure required to produce the requested documents."); *Shaw*, 306 F.R.D. 301 (holding the mere "fact that production [] will be time consuming and expensive is not ordinarily a sufficient reason to refuse to produce material").

[4] *See A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("general or boilerplate objections such as 'overly burdensome and harassing' are improper—*especially when a party fails to submit any evidentiary declarations supporting such objections*") (emphasis added); *In re Dockers Roundtrip Airfare Promotion Sales Pracs. Litig*., 2010 WL 11515318, at *6 (C.D. Cal. 2010) (same); *Shayler v. Yacoub*, 2020 WL 8812454, at *2 (C.D. Cal. Dec. 23, 2020) (same); *Aikens v. Deluxe Fin. Servs., Inc*., 217 F.R.D. 533, 537 (D. Kan. 2003) (conclusory assertion that it would cost "tens or hundreds of thousands of dollars" to comply with discovery was insufficient where no declaration was provided).

[5] *See Cardenas v. Resurgent Cap. Servs. L.P*., 2024 WL 447805, at *2 (C.D. Cal. Feb. 2, 2024) (rejecting burden arguments asserted in IDC and holding "[a]lthough Defendants state that the task would be unduly burdensome, Defendants have not articulated any details regarding the burden, *nor have they supported the objection with evidence*") (emphasis added); *Cyr v. Reliance Standard Life Ins. Co*., 2024 WL 5717158, at *4 (C.D. Cal. July 10, 2024) (finding declaration submitted in IDC proceeding was insufficient to support burden objection).

3

message ever exchanged, every post, and every video ever watched on those [Online] services." Opp. 3, 8.  This is misdirection for several reasons.  First, Defendants have offered to even further limit the Category 3 discovery to 10 Online Services, rather than 15.[6]  Second, Defendants have offered to limit the Category 3 RFPs (but not the Interrogatories) to Plaintiffs' use of and experience on those platforms—this is the exact same limitation the parties agreed in order to resolve their dispute on various Category 1 discovery.[7]  Third, and to minimize any alleged burden, Defendants clarified that they are simply looking for Plaintiffs to utilize the DYD or equivalent function available on the Online Platforms, which we understand can be quickly and easily used to obtain copies of Plaintiffs' account data.  For instance, Defendants understand that Facebook, like TikTok, has a DYD feature.  Likewise, we understand Netflix has a feature which permits account holders to "request your information" pursuant to which Netflix will provide account data to the account holder, which can be accomplished with a click of a few buttons and/or following prompts such as a two-factor authentication.  Fourth, and as for Plaintiffs' claim that this will require linear review of "every message ever exchanged" and "every video ever watched," that is not accurate, and any alleged issues can be resolved by appropriate search terms that would limit the responsive materials to the key issues in the case, including content mentioning TikTok, evasion of online platforms' age gates or security measures, the sharing of personal information on those platforms, efforts to limit or monitor use, privacy settings, parental consent, and other similar matters.

Moreover, Plaintiffs' claim of overbreadth fails because they make no attempt to address, much less respond to Defendants' position concerning, the various proportionality factors enumerated in Rule 26(b)(1).  Opp. 4; *see also Better Care Plastic Tech. Co. v. Gredale, LLC*, 2022 WL 2046206, at *3 (C.D. Cal. Mar. 4, 2022).  As explained, each of the factors—including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit"—weighs in Defendants' favor.  Mot. 4.  For example, discovery about Plaintiffs' use of and interactions with third-party Online Service platforms is important because it could help demonstrate that Plaintiffs reasonably believed and understood their data would be collected and used by TikTok, that they were aware of those platforms' privacy policies, and that their damages are limited or non-existent because they gave away the same data on these other platforms.  The amount in controversy is significant, as Plaintiffs are seeking hundreds of millions, if not more, for their claims.  The information at issue is exclusively in the possession of Plaintiffs, not Defendants.  Plaintiffs have failed to substantiate any alleged burden, and even if they had, they are part of a nationwide class action represented by sophisticated counsel with plenty of resources.  And any expense associated with providing this discovery to Defendants is outweighed by its importance and likely benefit.  *See Universal Dyeing & Printing, Inc. v. Zoetop Bus. Co.*, 2023 WL 9004983, at *2 (C.D. Cal. 2023) (objecting party has the burden of "showing that discovery should not be allowed, and also [have] the burden of clarifying, explaining, and supporting [their] objections with competent evidence").

---

[6] Under Defendants' proposal, Plaintiffs would produce their DYD or equivalent data from the first 10 of the following 15 Online Services for which Plaintiffs currently have accounts:  Snapchat, YouTube (including YouTube Kids), Netflix (including Netflix Kids), Disney+, Instagram, Hulu, Roblox, Amazon Prime Video, Discord, Facebook, Roku, Reddit, Among Us, Pinterest, Minecraft.

[7] During the meet and confer, Plaintiffs proposed and Defendants agreed that for purposes of Category 1 discovery the phrase "Plaintiffs' use of and experience on" TikTok would encompass, for example and without limitation, documents (i) about Plaintiffs' past and current accounts; (ii) mentioning the age gate, attempts to circumvent the age gate, Plaintiffs' date of birth, or how Plaintiffs managed to access the 13+ platform; (iii) relating to privacy policies; and (iv) relating to parental knowledge or consent that Plaintiffs were on the platform.  Defendants proposed a similar construct for the Category 3 RFPs, but Plaintiffs have rejected that proposal.  Ex. 12.

O'Melveny

Plaintiffs' authorities do not warrant denial of Defendants' motion. Opp. 4. *Symettrica Ent. LTD v. UMG Recording, Inc.* held that only "relevant and proportionate" discovery is permitted, but there the parties did "not dispute the potential relevance or proportionality of the information" sought. 2020 WL 13311700, at *7 (C.D. Cal. 2020). *O.L. v. City of El Monte*, is distinguishable because, unlike here, the movant failed to make "any affirmative proffer of relevance." 2021 WL 926105, at *18 (C.D. Cal. 2021). *San Diego Unified Port District v. Underwriters at Lloyd's*, stands for the unremarkable proposition that discovery must be both relevant and proportionate. 2016 WL 4496824, at *2 (S.D. Cal. 2016). *Fang v. Liu*, 2022 WL 3718507, at *3 (N.D. Cal. 2022), is inapposite because the discovery at issue there was plainly irrelevant.

• <u>Privacy</u>. Unable to seriously contest relevance or support its other objections, Plaintiffs claim for the first time the Category 3 discovery invades their "legitimate privacy interests." Opp. 4. Nonsense. First, Plaintiffs waived this objection because they did not assert it in their written discovery responses. *See* Exs. 2-4. Second, Plaintiffs' purported privacy interests are theoretical at best. If, as this discovery is designed to test, Plaintiffs shared their data with third parties such as Meta, then they have no privacy interest in that data and that evidence would be directly relevant for the reasons explained. Plaintiffs should not be allowed to put their purported privacy interests at issue and then withhold evidence about those same interests. Third, Plaintiffs are estopped from claiming any privacy objection when they have insisted on invading the privacy interests of non-Plaintiffs, whose TikTok accounts they have required Defendants to produce TikTok account data for. ECF No. 134 at 12. Fourth, any purported privacy interests can be adequately addressed by the parties' stipulated protective order. ECF No. 149 at 6; *see, e.g.*, *Thomas v. Starz Entm't, LLC*, 2017 WL 11628086, at *2 (C.D. Cal. 2017) (ordering production despite party's privacy objection, and finding "a protective order . . . assists in protecting a party's privacy rights" which "may be waived as a result of claims asserted in litigation") (citation omitted); *Salazar v. McDonald's Corp.*, 2016 WL 736213, at *5 (N.D. Cal. 2016) (ordering production of prospective class member data because it "can be sufficiently safeguarded under the parties' Protective Order").

Plaintiffs' other objections lack merit as well. For instance, Plaintiffs are refusing to produce documents sufficient to show their purchases and downloads on the Apple App Store or Google App Store (RFP No. 46). Opp. 9. But those documents are clearly relevant because, *inter alia*, they bear on whether Plaintiffs have shared their personal information with other platforms, and on damages. Likewise, discovery about Plaintiffs' parents' use of TikTok, their knowledge of Online Services' privacy policies, and whether they monitored or restricted use of personal information on Online Services (Rog Nos. 2, 4-6, 9-10; RFP Nos. 48, 51-55) is plainly relevant to show their knowledge and understanding of the TikTok platform, its age gate, and collection of personal data generally, as well as whether it was reasonable to expect that TikTok would not collect Plaintiffs' data and, if it did, whether that conduct was highly offensive. [8]

**D.** **The Court Should Compel Plaintiffs To Provide Discovery Responsive to Category 4 and Whether the TikTok Platform Is Directed To Children.**

Plaintiffs do not contest that RFP Nos. 59-60 seek plainly relevant documents, but continue to maintain this is "plainly premature contention discovery" and "the documents

---

[8] Plaintiffs have waived their vagueness (Rog No. 4), lack of access (RFP Nos. 46, 51-55), and lack of personal knowledge (Rog Nos. 2, 4-5, 9-10) objections because they fail to address them in the Opposition.

requested are already in TikTok's possession." [9]  Opp. 11.  These objections are meritless and should be overruled.

First, "premature contention discovery" is not a valid objection to document requests. Mot. 6 (citing *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 333, 341 (N.D. Cal. 1985)). Plaintiffs do not grapple with cases like *In re Convergent* that recognize this settled rule. Instead, Plaintiffs cite cases discussing contention interrogatories.  Opp. 5.  Even then, those cases merely recognize that parties "should be able to provide a response to a contention interrogatory" at a "late stage of the proceedings," *Universal Dyeing*, 2023 WL 9004983, at *8, not that parties are barred from propounding such interrogatories at an earlier stage, particularly in a case like this with a tight schedule.

Second, even if such an objection were proper, Plaintiffs concede they are "unlikely" to have any responsive documents, which renders their objection moot.  Moreover, Plaintiffs do not dispute they failed to assert this objection in their written responses and thus have waived it.  *See* Opp. 11; Mot. 11, n.12 (citing *Universal Dyeing*, 2023 WL 9004983, at *2).

Third, it is hornbook law that an "equally available" objection "is not a sufficient basis for an objection to production of documents." *Martinez v. Doe No. 1*, 2019 WL 8163482, at *4 (C.D. Cal. 2019).  Nor does the objection even make sense here.  These RFPs seek documents related to and supporting *Plaintiffs*' assertion that the TikTok platform is directed at children. Defendants are plainly entitled to know what, if any, documents Plaintiffs have to support these allegations in their complaint, regardless of what materials Defendants may have in their files.

### E.    <u>The Court Should Compel Production of Category 5 Discovery Concerning Defendants' Purported Knowledge That Plaintiffs Were Under 13 Years Old.</u>

Plaintiffs continue to resist discovery directed to Plaintiffs' own allegation that "Defendants have actual knowledge of the age of users on its platform and use[] that knowledge to target under age 13 users with under age 13 content."  Compl. ¶ 132; *see also* Mot. 11-12.  As explained below, Plaintiffs' remaining objections are meritless.[10]

- Plaintiff say RFP Nos. 32-35 and 56-57 seek "premature contention discovery requiring a legal conclusion."  Opp. 12.  Again, "premature contention" is not a valid basis to object to document requests.  *See* Section I.D., *supra.*  Moreover, "legal conclusion objections to discovery requests are frivolous." *Sec. & Exch. Comm'n v. Mazzo*, 2013 WL 12172628, at *10 (C.D. Cal. 2013).  Nor does this discovery require a "legal conclusion."  Plaintiffs have asserted that Defendants knew Plaintiffs were on the TikTok platform and were under 13.  Defendants are entitled to know what documents Plaintiffs have to support—or conversely, which refute—those allegations.  These are factual issues, not legal contentions.

- Plaintiffs claim—again, without citation to any factual or legal authority—that RFP Nos. 32-35 and 56-57 are "unduly burdensome" because they seek documents "more likely to be in TikTok's possession."  Opp. 12.  But burden objections require specific details about the nature and magnitude of the alleged burden, including the amount of time and money and process required to identify responsive documents.  Platitudes that something is burdensome

---

[9] Plaintiffs initially asserted, but do not address and thus have waived, their undue burden, privilege, and lack of access objections to RFP Nos. 59 and 60.

[10] Plaintiffs do not address and thus have waived the following Category 5 objections: undue burden (RFP No. 58), equal accessible (RFP No. 58), privilege (RFP Nos. 56-58), vagueness (Rog No. 8), legal conclusions (RFP No. 58, Rog No. 8), premature contention (RFP No. 58), Plaintiffs' lack of access (RFP No. 58, Rog Nos. 8 and 15), and Plaintiffs' lack of personal knowledge (Rog Nos. 8, 15).

O'Melveny

because one's adversary supposedly already has the same documents is not remotely sufficient. Mot. 4 (citing *Shaw v. Experian Info. Sols., Inc.*, 306 F.R.D. 293, 301 (S.D. Cal. 2015)). Nor do Plaintiffs even bother to explain why they believe Defendants supposedly possess the same documents as Plaintiffs. The bottom line is Defendants are entitled to know what, if any, documents Plaintiffs have in their files on this key issue.

- The same holds true for Plaintiffs' burden and overbreadth objections to Interrogatory Nos. 8 and 15. Plaintiffs make no attempt whatsoever to quantify the alleged burden imposed by this discovery, much less articulate why the Rule 26(b)(1) factors weigh in their favor with respect to supposed overbreadth. *See* Opp. 12-13.

- Plaintiffs' objection that RFP No. 58 seeks "premature expert discovery" is also wrong. *Id*. This request seeks documents relating to Plaintiffs' assertion that Defendants "detuned its detection systems" to "avoid identifying under age 13 users." Compl. ¶ 132. This is not a request for expert discovery "in advance of the expert disclosure deadline"—it is a request for any documents Plaintiffs currently possess that support their allegation. That Plaintiffs plan on introducing expert testimony and opinion on this issue later on is no basis to refuse to produce any non-expert materials Plaintiffs may possess now. *See Universal Dyeing*, 2023 WL 9004983, at *8 ("The requests are not improper to the extent they are only seeking facts and documents that are not part of expert disclosures.").

Plaintiffs' suggestion that Category 5 discovery, other than RFP No. 58, be limited to "exemplar documents" is not adequate. Opp. 12-13. As explained in the opening papers, actual knowledge is a critical issue in the case. Defendants are entitled to the full universe of documents Plaintiffs believe imparted actual knowledge to Defendants, not self-selected examples cherry-picked by Plaintiffs. The Court should compel full and complete responses to all Category 5 discovery.

## F.    The Court Should Compel Plaintiffs To Provide Category 6 Discovery Relating to their Alleged Damages.

Plaintiffs object to RFP Nos. 61-66 and 69 as well as Interrogatory No. 11 on the grounds that they seek "premature expert and contention discovery." Opp. 14-15. As discussed, these objections have no merit and Plaintiffs make no attempt to address, let alone distinguish, the authorities cited by Defendants. *Supra* Section I.D. (premature contention), I.E. (premature expert); *see also U.S. ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 646, 649-50 (C.D. Cal. 2007); *Dodd v. Hendrickson USA, LLC*, 349 F.R.D. 286, 296 (W.D. Ky. 2025) ("The general view is that such [contention] interrogatories are permissible.").

Plaintiffs also suggest that RFP No. 62, which seeks documents relating to any news articles, research of other information concerning Defendants' collection and use of personal information and damages, should be limited to "non-public documents" because it would be "burdensome … to collect[] publicly available information." Opp. 14. But Defendants are entitled to know what Plaintiffs may have said in emails and messages about TikTok and its data collection practices, regardless of whether those documents discuss public or non-public information. Nor are Defendants asking Plaintiffs to collect public information that is not already in their files, so their burden arguments—in addition to being unsubstantiated—make no sense. *Id.*

Interrogatory No. 7 and RFP Nos. 67, 68, and 77 are not vague. As we have explained, Defendants want to know whether Plaintiffs have received any compensation for their personal information, which bears directly on damages. Plaintiffs cannot feign ignorance to avoid plainly relevant discovery. Mot. 13; *Better Care Plastic Tech. Co.*, 2022 WL 2046206, at *3 ("[t]he party objecting to discovery . . . has the burden to show such vagueness or ambiguity by



demonstrating that more tools beyond mere reason and common sense are necessary to attribute ordinary definitions to terms and phrases").

### G.    The Court Should Compel Plaintiffs To Provide Discovery Relevant to Category 7 and Class Certification.

Plaintiffs have withdrawn their objections and agreed to produce documents responsive to RFP No. 70.  *See* Exs. 11-12.  Plaintiffs also concede that documents responsive to RFP No. 72 are "sometimes relevant" but claim no production is warranted here because "Plaintiffs' retainer agreements contain no promises regarding incentive awards or Plaintiffs' compensation, and Plaintiffs' counsel have no other agreements regarding the scope of representation with Plaintiffs."  Opp. 15 (citing *Carlin v. DairyAmerica*, 2017 WL 4224940, at *3-5 (E.D. Cal. Sept. 22, 2017) (noting the "existence of an incentive agreement seriously undermines the class representatives' ability to adequately represent the class and implicates the California ethics rules that prohibit representation of clients with conflicting interests") (internal citations and quotations omitted); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 959 (9th Cir. 2009) (retainer agreements relevant in class actions because they bear on adequacy of the class representatives).  But this presupposes that evidence of incentive awards or a conflict of interest is a necessary prerequisite to obtaining discovery of class representative retainer agreements—a proposition which several courts in this and other judicial districts have rejected.[11]

For example, in *Bolding v. Banner Bank*, 2020 WL 3667132, at *1-2 (W.D. Wash. 2020), counsel blocked deposition testimony about the contents of a fee agreement and instead provided a declaration stating the agreement contained no "conflict or improper incentive payments."  *Id.* at *2.  The court rejected the declaration because it was "effectively unchallengeable" and ordered production of the agreements or, in the alternative, deposition testimony regarding their contents.  *Id.* at *2.  The same logic applies here.  Defendants are entitled to review and confirm for themselves the propriety of the agreements and the adequacy of the class representatives, as opposed to relying on counsel's (unsworn) representation that their engagement letters and retention agreements are above board and not discoverable.[12]

With respect to RFP Nos. 73-74, this discovery is likewise relevant to whether Plaintiffs can satisfy Rule 23's requirements.  While Plaintiffs rely on several authorities denying production of litigation funding documents, they are inapposite because they did not involve class actions and thus there was no need to examine relevance vis-à-vis the lens of Rule 23's requirement that Plaintiffs be adequate class representatives.[13]  Opp. 16.

---

[11] *See Sapan v. Diamond Resort Holdings*, LLC, 2023 WL 8229984, at *6 (C.D. Cal. 2023) ("This Court chooses to follow other judges who have found retainer agreements to be relevant even absent evidence of a suspect incentive structure or conflict of interest."); *Gallegos v. Atria Mgmt. Co., LLC,* 2017 WL 11743704, at *4 (C.D. Cal. Jan. 12, 2017) (same); *compare Larsen v. Coldwell Banker Real Est. Corp.*, 2011 WL 13131127, at *3 (C.D. Cal. Oct. 4, 2011).  Plaintiffs previously claimed RFP No. 72 also sought privileged documents, but make no mention of this objection in their Opposition, which lacks merit in any event.  *See Sapan*, *id*. at *6 ("The Ninth Circuit has held that retainer agreements are not protected by attorney-client privilege.") (citations omitted).

[12] Unlike in *Carlin,* Defendants have had no opportunity to probe counsel's assertion that the retention agreements contain no incentives or provisions that may give rise to a conflict of interest.  Nor is Plaintiffs' offer of in camera review a substitute for Defendants' right to this discovery.  *See Gbarabe v. Chevron Corp.*, 2016 WL 4154849, at *2 (N.D. Cal. 2016) (rejecting "Plaintiff's proposal for in camera review of the [litigation funding] agreement by the Court [a]s inadequate because it would deprive Chevron of the ability to make its own assessment and arguments regarding the funding agreement and its impact, if any, on plaintiff's ability to adequately represent the class").

[13] Plaintiffs make no mention of and have waived their privilege and lack of access objections to RFP Nos. 73-74.

8

O'Melveny

**H.      The Court Should Overrule Plaintiffs' Remaining Objections to RFP No. 79.**

Plaintiffs have withdrawn their objections and agreed to produce documents responsive to RFP No. 80.  *See* Exs. 11-12.  As a result, the only remaining dispute with respect to Category 8 discovery is Plaintiffs' objection that RFP No. 79—documents Plaintiffs intend to rely on in this case—is supposedly burdensome and premature. [14]  Opp. 16.  Those objections lack merit.  As previously explained, Plaintiffs have wholly failed to substantiate any alleged burden, nor is this discovery premature given the expedited discovery schedule set by the Court.  *See* Section I.D., *supra*.

## II.     TIKTOK'S INTERROGATORIES ARE NOT COMPOUND AND ADDITIONAL INTERROGATORIES ARE WARRANTED IN ANY EVENT.

Plaintiffs continue to assert that Interrogatory Nos. 1-12 are compound and thus exceed the 25-interrogatory limit.

First, Plaintiffs claim that Interrogatories asking them to provide information as to each of their TikTok accounts or accounts for other Online Services are compound because they lack a primary overarching question.  Opp. 17-18.  For example, Plaintiffs point to Interrogatory No. 5 as being at least five separate Interrogatories for each Plaintiff, and potentially more for any Plaintiff with multiple Online Service accounts.  *Id*.  But Interrogatory No. 5 has a clear overarching question: it asks Plaintiffs to describe each Online Service they used while under the age of 13 during the relevant period.  Mot. 16-17.  Tellingly, Plaintiffs decline to address the various legal authorities Defendants cited where courts found that similar interrogatories directed to multiple patents, purchase orders, and cease-and-desist letters were not compound.  While Plaintiffs cite *Collaboration Props., Inc. v. Polycom*, Inc., 224 F.R.D. 473, 475 (N.D. Cal. 2004), that case is an outlier and is not persuasive given its failure to provide any substantive analysis of why identical questions about multiple products should be treated as multiple interrogatories.

Plaintiffs' assertion that Defendants "misstate[d]" the standard for whether an interrogatory is compound fails.  Opp. 19.  The law is clear that the test is whether the purported subparts of an interrogatory "are logically or factually subsumed and necessarily related to the primary question," precisely as Defendants explained in their opening motion.  *Universal Dyeing*, at *8; *see also* Mot. 16, 19-20.[15]  That is clearly the case with Defendants' Interrogatories, most of which Plaintiffs make no attempt to explain how or why they believe are compound.  *See* Opp. 19-20 (failing to address why Interrogatory Nos. 6-8 and 11 do not relate to a primary question).

Plaintiffs' attempt to rehabilitate their reliance on *Mailhoit v. Home Depot U.S.A., Inc.*, 2012 WL 12883970 (C.D. Cal. 2012), is unavailing.  *See* Opp. 19-20.  There, questions about the dates of a person's attendance, the store they managed, or their performance rating were not "logically subsume[d]" by the question of "<u>who</u> participated in the DMAC." 2012 WL 12883970, at *4.  Plaintiffs argue questions like "method of creation" are similarly "not logically subsumed by the basic details of creation." Opp. 20.  That is plainly wrong—the method of

---

[14] Again, Plaintiffs initially asserted, but do not address and therefore have waived, their relevance, overbreadth, and equal accessible objections to RFP No. 79.  *See supra*.

[15] Plaintiffs say that whether an interrogatory is directed to a "single subject matter" versus a "single question" are two very different things.  Opp. 19.  But the former language mirrors the Rule 33 Advisory Committee Notes, which prohibit parties from evading the presumptive limit by "joining as 'subparts' questions that seek information about discrete separate subjects."  Fed. R. Civ. P. 33 (Adv. Cmte. Note, 1993 Amend.).

account creation is central to account creation, eliciting core details like what age information a Plaintiff entered.

The Court should reject Plaintiffs' proposal that Interrogatory Nos. 8 and 15 be limited to "examples of posts, comments, etc. that would suffice to show the kinds of information that Plaintiffs expect to rely on" to show actual knowledge on the part of Defendants.  Opp. 12-13.  Actual knowledge is a core issue in this case, and Defendants should not have to rely on self-selected "examples."  Defendants are entitled to everything Plaintiffs have in their files now, and Plaintiffs can and must supplement their production in accordance with Rule 26(e).

Finally, the Court should reject Plaintiffs' request for additional interrogatories as premature and not warranted.  Opp. 20.  To date,  Plaintiffs have served only two interrogatories and have identified no present need for more.  The Court can address any such request if and when Plaintiffs actually approach the limit and demonstrate the requisite necessity.

***     ***     ***

For all the foregoing reasons, and for the reasons set forth in the moving papers, Defendants request that the Court overrule Plaintiffs' objections and order Plaintiffs to provide full and complete responses to Defendants' discovery.

Sincerely,

*/s/ Drew E. Breuder*

Drew E. Breuder
of O'Melveny & Myers LLP