DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
DREW E. BREUDER (S.B. #198466)
dbreuder@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California 90067-6035
Telephone:  +1 310 553 6700
Facsimile:   +1 310 246 6779

MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
San Francisco, CA 94111
Telephone:  +1 415 984 8700
Facsimile:   +1 415 984 8701

SID MODY (*pro hac vice*)
smody@omm.com
O'MELVENY & MYERS LLP
2801 North Harwood Street, Suite 1600
Dallas, TX 7501
Telephone:  +1 972-360-1900
Facsimile:   +1 972-360-1901

*Attorneys for Defendants ByteDance Ltd.,
ByteDance Inc., TikTok Ltd., TikTok Inc.,
TikTok LLC, TikTok Pte. Ltd., and
TikTok USDS Joint Venture LLC*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TIKTOK, INC. MINOR PRIVACY LITIGATION | MDL No. 3144 |
| | Case No. 2:25-ml-03144-GW-RAO |
| | **DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE COMPLIANCE WITH COURT ORDERS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37(B)** |
| | **[PUBLIC REDACTED VERSION]** |
| | [*Declarations of William Wang, Jeff Louisma, Ron Schnell, and Matt Powers filed concurrently herewith*] |
| | Courtroom:  9D (9th Floor) |
| | Date:  July 2, 2026 |
| | Time:  8:30 a.m. |

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................. 1

II.   BACKGROUND ................................................................................... 4

      A.   Defendants' Data Storage Systems, Preservation Efforts, & Production Efforts ........................................................................ 4

      B.   The Parties' Disputes Over Data Preservation & Production.............. 6

           1.   Plaintiffs Suggest, But Fail to Pursue, Preservation of a Limited 30-Day Snapshot of User Data .................................... 6

           2.   The Court Orders Plaintiffs to Provide Their Account Information, and Defendants to Provide Data Exemplars—But Not All Data—for Plaintiffs and Random Users ...................... 8

           3.   Plaintiffs Reverse Course and Claim Defendants Should Produce All of Plaintiffs' Data and Preserve the Entire Platform ................................................................................. 10

III.  LEGAL STANDARD ......................................................................... 11

IV.   ARGUMENT ..................................................................................... 11

      A.   Defendants Have Fully Complied With the Court's Orders on Data for the Named plaintiffs and Random Users ........................... 11

           1.   The Court Only Ordered Defendants to Provide Data Exemplars, Not "All Data." ...................................................... 11

           2.   Providing Literally "All Data" For a Given User Is Not Possible ................................................................................. 13

           3.   Providing "All Data" Is Not Reasonable or Proportional to the Needs of the Case ......................................................... 17

      B.   Defendants Have Complied With the Court's Preservation Orders .................................................................................................. 19

      C.   Defendants Have Complied With the Court's Order on Providing the "Dates of Data Deleted." ............................................ 21

V.    CONCLUSION ................................................................................... 22

DEFS.' OPP'N TO PLS.'
MOT. TO ENFORCE
NO. 2:25-ML-03144-GW-RAO

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Doe LS 340 v. Uber Techs., Inc.*,710 F. Supp. 3d 794 (N.D. Cal. 2024) ................19

*In re Google RTB Consumer Priv. Litig.*,
    2025 WL 28641 (N.D. Cal. Jan. 3, 2025) ..........................................................18

*In re: Social Media Adolescent Addiction/Personal Injury Prods. Liab.*
    *Litig.*,
    No. 4:22-MD-03047-YGR (N.D. Cal. Jan. 29, 2024)..........................................18

*Marti v. Manning*,
    2025 WL 708515 (E.D. Cal. Mar. 5, 2025) ........................................................11

*Martinez v. Optimus Properties*,
    2018 WL 11323387 (C.D. Cal. Mar. 20, 2018) ..................................................11

*Rodriguez v. Google LLC*,2021 WL 8085492 (N.D. Cal. Dec. 1, 2021) ................20

*Sabadash v. SARL Brevent*,
    2025 WL 2019936 (C.D. Cal. June 17, 2025).....................................................21

*Ventura Content, Ltd. v. Motherless, Inc.*,
    885 F.3d 597 (9th Cir. 2018)..............................................................................12

*Wright v. Old Gringo, Inc.*,
    2019 WL 5685203 (S.D. Cal. Nov. 1, 2019) ................................................11, 19


**Rules**

Fed. R. Civ. P. 26(b)(1) ..........................................................................................18

Fed. R. Civ. P. 37(b) ...............................................................................................11

## I.    INTRODUCTION

Plaintiffs' motion to enforce compliance, Dkt. 233 ("Mot."), is a transparent "gotcha" attempt to manufacture a basis for sanctions and other unwarranted relief. It asserts that "TikTok has not produced *all data* associated with the Named plaintiffs and 68 random users, despite being ordered by the Court to do so on multiple occasions." *Id.* at 6.[1] This patently misconstrues the Court's orders. The Court did not order Defendants to produce "all" such data, let alone on multiple occasions. Nor would such an order be capable of compliance, given the nature and structure of large-scale digital platforms generally and Defendants' specifically. User data is spread across ▮▮▮▮ repositories, across ▮▮▮▮ ▮ tables with ▮▮▮▮ data fields. Collecting "all data" for a single account would require searching each table *individually*. That is not feasible. No tool or combination of tools exists to accomplish such an enormous task.

In complying with the Court's orders and directives, Defendants have undertaken herculean efforts to identify, preserve, and produce massive amounts of user data. Their data science team has spent well over 1,000 hours on these bespoke preservation and collection efforts, resulting in preservation of data for ▮▮▮ ▮▮▮ TikTok accounts totaling over ▮ petabytes. Defendants have also produced more than 1 terabyte of data for more than 100 TikTok accounts from named plaintiffs and 68 random users, covering more than ▮▮ data fields. These data pulls encompass the data most commonly used by Defendants for business analytics and users' typical interactions on the TikTok platform, including (i) account and profile information; (ii) device information; (iii) app settings; (iv) user-generated videos and related metadata; (v) direct messages; (vi) comments; (vii) user activity information such as watch history, login history,

---

[1] Unless otherwise indicated, all emphases are added and internal citations omitted. "Ex." refers to exhibits attached to the Declaration of Matt Powers ("Powers Decl.").

search history, and likes and favorites; (viii) inferred information, such as inferred age and gender; and (ix) extensive advertising data. To our knowledge, this is the most comprehensive user data pull ever performed for litigation against TikTok or any other company, and far exceeds Defendants' preservation and discovery obligations.

As recounted below, the Court addressed Plaintiffs' request for "all data" in November 2025. Contrary to Plaintiffs' contention, the Court did not "expressly reject[] TikTok's argument that Plaintiffs' request for all user data … is not reasonable or proportionate to their needs." Mot. 3. Rather, the Court noted "there is a chicken and the egg problem that frequently arises in data privacy cases," and held it "require[d] a better understanding of the information Defendants collect, how they get that information, how they store it, and how it is shared *before* concluding that Plaintiffs' request is unreasonable or disproportionate to their needs in this case." Dkt. 134 at 12; *see also id.* (noting the Court "has taken into consideration Defendants' alleged technological constraints and their preservation undertakings thus far," but must first "prob[e] into the data Defendants collect and how they do so" before deciding "the resources required to pull the requested data are unduly burdensome relative to Plaintiffs' needs"). The Court never ordered Defendants to produce "all data" for Plaintiffs' accounts or any other accounts.[2]

[2] The Court did order (i) Plaintiffs to "provide Defendants with … information sufficient for Defendants to identify their accounts;" (ii) Plaintiffs to sign consent forms "agree[ing] that no potential liability attach [to Defendants] for use of their accounts during the process of preserving and extracting their data"; (iii) Defendants to provide "exemplar data pull[s]" for the named plaintiffs and 34 random users to help Plaintiffs assess "the data fields that TikTok collects about both under-13 and over-13 users;" and (iv) Defendants to "compile and produce some means by which Plaintiffs can understand the user data." Dkt. 134 at 11 n.10, 12-13; Ex. E, Nov. 10, 2025 Hr'g Tr., 29:20-23. In January and March 2026, the Court issued additional orders and deadlines for Plaintiffs to provide their account information so Defendants could pull and produce Plaintiffs' exemplar data. These were follow-ons to the November 10 order and designed to help advance the parties' progress—not new determinations that "all data" should be provided. Dkt. 178, 191. In any event, and as explained herein, the steps identified above are now complete, and Plaintiffs have simply reverted to their original—and indefensible—"all data" position.

As the declarations of TikTok Senior Data Scientist William Wang, TikTok Head of Security and Information Technology Jeff Louisma, and data expert Ron Schnell explain, an order compelling Defendants to preserve and produce all data for Plaintiffs would be impossible to comply with. User activity produces ███████ █ data points that generate even more data, distributed across ████████ ████████ tables and ██████████ data fields according to business use, not account profile. It would take ███████████████████████████████████ ██████████████████████████████ "all data" for a given user, not to mention the untold expense.[3] Even then, the data pull would be incomplete because, notwithstanding their claims, the named plaintiffs are still using the platform to generate new data. Plaintiffs' disregard of these realities ignores the Court's order that Defendants are not required to do the "impossible" (Dkt. 191 at 1), and cannot be squared with principles of relevance, proportionality, and undue burden.

Plaintiffs' other assertions also lack merit. Plaintiffs suggest that in addition to the ██████████ banned user accounts Defendants are preserving, they should have preserved data for hundreds of millions of active users. Mot. 11-12 ("For avoidance of doubt, Plaintiffs would not agree to TikTok deleting any user data, absent a court order."). Again, the Court never ordered Defendants to preserve all data on the entire platform, and expressly stated that Defendants are not required to do "truly infeasible." Dkt. 25 at 2.

Plaintiffs further contend Defendants failed to disclose details about deletion of Plaintiffs' account data. Mot. 1. That is more misdirection. Plaintiffs sued anonymously, meaning Defendants had no way of identifying Plaintiffs' accounts until they provided their TikTok account credentials—which did not happen until

--------

[3] ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████

February 2026. This is why Defendants asked Plaintiffs in early 2025 to preserve their own data using the "Download Your Data" ("DYD") function. Yet Plaintiffs refuse to say whether every named plaintiff availed themselves of this simple tool at any regular interval before providing their account information to Defendants.[4]

Plaintiffs' motion is wholly unwarranted and should be denied in its entirety.

## II.    BACKGROUND

### A.    Defendants' Data Storage Systems, Preservation Efforts, & Production Efforts.

The TikTok platform is massive in scale, comprising ▇▇▇ of data. Declaration of Jeff Louisma ("Louisma Decl.") ¶ 14.[5] At this magnitude, data must be stored in data centers the size of city blocks. *Id.* ¶ 3. Within each data center, data is distributed across more than ▇▇▇ storage systems with different interfaces. *Id.* ¶ 4. Within each system are ▇▇▇ repositories organizing ▇▇▇ data tables with ▇▇▇ data fields. *Id.* ¶ 5. Defendants estimate over ▇▇▇ tables contain U.S. user data across their various systems. Schnell Decl. ¶ 19.

Searching these repositories for every piece of data associated with a single user is not possible. Data is organized by business use, not individual user. Louisma Decl. ¶¶ 4-7; Wang Decl. ¶ 8. A user's data is distributed across tables by function. Wang Decl. ¶ 8. For example, ▇▇▇ ▇▇▇ ▇▇▇ *Id.* New tables with new data combinations are continuously created, ▇▇▇ *Id.* ¶ 12. This means information is

---

[4] Plaintiffs' stonewalling raises questions about their own preservation efforts. Defendants intend to investigate those efforts and, if appropriate, raise any resulting spoliation issues with the Court.

[5] An exabyte is 1 million terabytes—an inconceivably large and complex amount of data. *See* Declaration of Ron Schnell ("Schnell Decl.") ¶ 14.

replicated across numerous tables, no given table contains all of a user's data. ██████ *Id.* ¶¶ 11-12.

No tool or search bar exists to search for one person's data across all systems. Wang Decl. ¶¶ 9-10; Louisma Decl. ¶ 9. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Searching all tables for all of a user's data would require repeating this process ████████████ would take ████████, and could never be completed with the tools available to Defendants today. *Id.*

Despite these constraints, through more than 1,000 hours of dedicated work from data scientists,[6] Defendants have preserved and/or produced comprehensive data sets for banned under-13 users, the named plaintiffs, and 68 random accounts. *Id.* ¶¶ 3-5. Defendants are preserving data for ████████ banned under-13 accounts (and counting), totaling ██ petabytes. *Id.* ¶ 5. Defendants have also produced data for more than 100 accounts, including DYD pulls and data from ██ Hive tables containing more than ██ data fields. *Id.* ¶ 4. Despite receiving all this information, Plaintiffs identify only *two* data points they believe are missing. Mot. 10, 13. First, Plaintiffs contend that, even though Defendants preserved the field ██████████████████████████████████ for banned under-13 users and produced it for the named plaintiffs and random users, Defendants should have preserved that field for *all* U.S. users. *Id.* at 13. Defendants have now done that. Wang Decl. ¶ 21. Second, Plaintiffs contend Defendants should have produced Hive table data on

---

[6] This does not account for the hours other teams have spent on this issue, nor does it account for the cost of all this time spent and the tools necessary to complete the tasks.

DEFS.' OPP. TO PLS.'
MOT. TO ENFORCE
NO. 2:25-ML-03144-GW-RAO

███████████████████████████████████████████████████ Mot. 10.

Defendants will produce that data in coming weeks. Wang Decl. ¶ 19.

### B. The Parties' Disputes Over Data Preservation & Production.

#### 1. *Plaintiffs Suggest, But Fail to Pursue, Preservation of a Limited 30-Day Snapshot of User Data.*

Disputes over data preservation began over a year ago. On March 14, 2025, Defendants asked Plaintiffs for their account information so they could preserve Plaintiffs' data, and explained that Plaintiffs could preserve their own data using DYD. Ex. A, Mar. 14, 2025 email from A. Formella. Plaintiffs refused, insisting Defendants preserve all data collected from "*every* TikTok account." Dkt. 41-3 at 6. At an initial status conference, the Court stated that because Plaintiffs "ha[d] not identified" their accounts, "they [were] going to have to preserve [them] themselves" unless they disclosed their information to Defendants. Ex. B, Apr. 28, 2025 Hr'g Tr., 21:7-22. The Court also stated it would only "order the preservation [by Defendants] insofar as specifically requested documents, not a blunderbuss, but specific[] request of documents," *id.* at 16:6-11, and "presume[d]" the "order [it] issu[ed]" would "be changed or modified somewhat in the future, once some more of the dust settles down," *id.* at 20:9-15.

The Court then ordered Defendants to "preserve data until the Court orders further unless the parties make a request on an ex parte basis." Dkt. 11 at 2. Shortly thereafter, Defendants applied *ex parte* seeking clarity on the scope of preservation being ordered. Dkt. 19 at 2. The Court denied the request but clarified: "If Defendants ultimately cannot preserve some data within the scope of the preservation order *because of technical or other practical limitations*, they [would] not face sanctions." Dkt. 25 at 2. Defendants were required to "do their best to comply with the preservation order, but [were] not expected to accomplish something *truly infeasible.*" *Id.* The Court invited Defendants to submit a

"preservation proposal" and granted Plaintiffs' request to depose two company witnesses on TikTok's user data and preservation efforts. *Id.*

Defendants explained their preservation efforts in a proposal submitted May 21, 2025. Dkt. 41. After briefing, the Court considered ordering preservation of a "representative period" of "three months," but declined to definitively rule because it was unfamiliar with TikTok's systems. Ex. C, May 29, 2025 Hr'g Tr., 11:16-23, 19:15-18. To assist in its understanding, the Court ordered briefing and a tutorial on TikTok's technology. *Id.* at 7:5-9. When asked whether they needed an immediate ruling, Plaintiffs responded, "I don't think anything specific." *Id.* at 32:17-33:3. Notably, the minute order contained no ruling on preservation scope. Dkt. 62 at 1.

Over the next month, the parties conferred. Defendants disclosed what data they were preserving, and for each new type Plaintiffs identified, Defendants confirmed they were preserving it or added it to their preservation pipelines. *See* Dkt. 78 at 2-9. By June 20, 2025, Plaintiffs indicated they were no longer seeking preservation of the entire platform, but insisted TikTok "should preserve a *limited snapshot* of all account level data and metadata for all current TikTok users in the United States *for a 30 day period." Id.* at 13-14. The Court ordered the parties to "attempt to resolve [any] outstanding issues, and any further preservation issues, among themselves," and propose a schedule for motions practice on anything remaining. Dkt. 79 at 1-2. On July 9, 2025, the parties submitted an additional joint statement in which Defendants clarified that a snapshot of "*all* data for *all* users" would not be feasible, but they could provide a snapshot of preserved categories if Plaintiffs bore the cost. Dkt. 93 at 3-5.

At the July 14, 2025 tutorial, the Court recognized



[REDACTED] The Court's resulting order contained no conclusion on preservation issues or requirement that Defendants preserve data for every TikTok user. Dkt. 95 at 1.

Since last summer, Plaintiffs have not reengaged on how to prepare the snapshot. Other than [REDACTED] Plaintiffs have never identified any additional data they claim should be preserved. Powers Decl. ¶ 9.

2.    *The Court Orders Plaintiffs to Provide Their Account Information, and Defendants to Provide Data Exemplars—But Not All Data—for Plaintiffs and Random Users.*

After the tutorial, the parties conferred over the exemplars and whether COPPA required parental consent. Dkt. 122-1 ¶¶ 4-14. On October 10, 2025, Plaintiffs moved to compel preservation and production of "the data associated with the named plaintiffs and 34 random users" to use as exemplars. Dkt. 114-1. Defendants explained that without account information, which Plaintiffs had refused to provide, they could not complete the exemplar pulls. Dkt. 122 at 3. Defendants also reiterated that producing "all data" for each account was not possible. *Id.* at 14-16. Notably, Plaintiffs did not move to compel preservation of all data on the platform, or any sample or snapshot—their motion was limited to data from named plaintiffs' and random users' accounts. *See generally id.*

On November 10, 2025, the Court "agree[d] with Defendants that Defendants must have access to Plaintiffs' account information if they are to ensure their specific information among the millions of TikTok accounts is preserved, and certainly if such information is to be produced." Dkt. 134 at 10-11. The Court ordered Plaintiffs to provide account information and Defendants to "immediately preserve information associated with Plaintiffs' accounts, and if there have been

deletions during the pendency of this litigation, provide Plaintiffs with information concerning the dates of those deletions to the extent such information is available." *Id.* The Court also ordered Plaintiffs to provide parental consent forms. Ex. E, Nov. 10, 2025 Hr'g Tr., 29:20-23.

Once again, the Court did not order production of "all data." In addressing Defendants' argument that "Plaintiffs' request for all user data … is not reasonable or proportionate to their needs," the Court recognized the "chicken and the egg problem" in data privacy cases where defendants argue not all data is relevant, but plaintiffs argue they cannot understand available data without discovery. Dkt. 134 at 11. The Court concluded it "require[d] a better understanding of the information Defendants collect, how they get that information, how they store it, and how it is shared before concluding that Plaintiffs' request [was] unreasonable or disproportionate." *Id*.

Plaintiffs failed to provide their account information for *months*, even though it takes only minutes to obtain. Powers Decl. ¶¶ 11-13. At a status conference on January 30, 2026, the Court ordered Plaintiffs to complete production of account information by February 5, 2026 and Defendants to "provide Plaintiffs every document referencing Plaintiffs and their data within 30 days." Dkt. 178 at 1. Plaintiffs provided additional account information by the deadline, informed Defendants they intended to dismiss 11 named plaintiffs, and agreed to additional time to complete the account identification process. Powers Decl. ¶¶ 13-14. Defendants then identified additional accounts potentially belonging to named plaintiffs. *Id.* ¶ 14. Plaintiffs did not confirm which accounts belonged to them until March 6, 2026. *Id.* ¶ 16.

Following Plaintiffs' confirmation of the additional account information, Defendants immediately began identifying and producing data. *Id.*¶¶ 16-18. On March 13, 2026, the Court ordered Defendants to "provide Plaintiffs' remaining documents concerning the named plaintiffs or an explanation of why doing so

DEFS.' OPP. TO PLS.'
MOT. TO ENFORCE
NO. 2:25-ML-03144-GW-RAO

would be impossible by March 19, 2026." Dkt. 191 at 1. By the deadline, Defendants produced additional data for the named plaintiffs and a letter explaining why producing "all" data was "impossible." Ex. J, Mar. 19, 2026 Ltr. from M. Powers. In March and April, Defendants also produced data for 68 random accounts. Powers Decl. ¶¶ 21, 24.

> 3.    *Plaintiffs Reverse Course and Claim Defendants Should Produce All of Plaintiffs' Data and Preserve the Entire Platform.*

After Defendants completed the named plaintiff and random user exemplar pulls, Plaintiffs took issue with their completeness. Plaintiffs contended Defendants' productions violated the November 10, 2025 order, Dkt. 134, and the January and March 2026 follow-on orders, Dkt. 178 and 191, because Defendants did not produce "all data" for each account, even though Defendants explained repeatedly that doing so was impossible. Powers Decl. ¶ 22; Ex. J, Mar. 19, 2026 Ltr. from M. Powers.

About a month later, Plaintiffs argued for the first time that Defendants also violated the April 28, 2025 order because they had not preserved "unbanned [*i.e.*, live] accounts"—despite prior briefing on preservation scope. Powers Decl. ¶ 26. Defendants reiterated they had preserved data for millions of banned accounts. Throughout, Defendants asked Plaintiffs to work toward a more specific approach to preservation, as the named plaintiff and random user exemplar pulls were intended to do. *Id.* ¶¶ 27, 29. Plaintiffs refused, insisting Defendants should already understand what to preserve, despite Plaintiffs' months of silence and prior admission that sampling was sufficient. *Id.* ¶ 29.

Additionally, Plaintiffs claimed Defendants violated the November 10, 2025 order to provide "information concerning the dates of … deletions" before the named plaintiffs provided their account information. Ex. M, Plaintiffs' Apr. 28, 2026 letter. Defendants provided that information in a subsequent email exchange. Ex. O, Email from H. Stodder. Plaintiffs then filed the instant motion.

DEFS.' OPP. TO PLS.'
MOT. TO ENFORCE
NO. 2:25-ML-03144-GW-RAO

## III.    LEGAL STANDARD

Rule 37(b) authorizes "further just orders" to address a party's failure to comply with a discovery order. Fed. R. Civ. P. 37(b). A motion to enforce must be denied where the plaintiff "has not demonstrated that [the] [d]efendant failed to comply with the Court's order." *Wright v. Old Gringo, Inc.*, 2019 WL 5685203, at *6 (S.D. Cal. Nov. 1, 2019). Such motions are bounded by "the principles under Rules 26 and 37 … governing proportionality in civil discovery." *Martinez v. Optimus Properties*, 2018 WL 11323387, at *1 (C.D. Cal. Mar. 20, 2018). Where parties reasonably disagree, the Court may "exercise its authority to resolve the parties' disagreement over the order." *Marti v. Manning*, 2025 WL 708515, at *7 (E.D. Cal. Mar. 5, 2025).

## IV.    ARGUMENT

### A.    Defendants Have Fully Complied With the Court's Orders on Data for the Named plaintiffs and Random Users.

Plaintiffs' motion to enforce the Court's orders on named plaintiff and random user data, Dkts. 134, 178, and 191, should be denied for the simple reason that Defendants have not violated them.

#### 1.    *The Court Only Ordered Defendants to Provide Data Exemplars, Not "All Data."*

Plaintiffs claim the Court required Defendants to produce literally "all data associated with" the named plaintiffs and random users, Mot. 7, but that is not what the orders say. Plaintiffs primarily rely on the November 10, 2025 order, where the Court considered Defendants' argument that "Plaintiffs' request for all user data … is not reasonable or proportionate." Dkt. 134 at 11. Contrary to Plaintiffs' suggestion, the Court did not reject that position. Rather, it declined to rule, stating it "require[d] a better understanding of the information Defendants' collect, how they get that information, how they store it, and how it is shared *before concluding* that Plaintiffs' request is unreasonable or disproportionate." *Id*.

Nor did subsequent orders resolve this issue or reach a different outcome. On January 30, 2026, the Court set deadlines: Plaintiffs were to provide the named plaintiffs' account information by February 5, 2026, and Defendants were to provide the exemplar data by March 1, 2026. Dkt. 178 at 1. On March 13, 2026, the Court reiterated Defendants must "provide Plaintiffs remaining documents concerning the named plaintiffs or an explanation of why doing so would be impossible by Thursday, March 19, 2026." Dkt. 191 at 1. Together, the orders required Defendants to produce a comprehensive set within the limits of feasibility—not literally "all," which was not possible. This is precisely why no motion for reconsideration was necessary. Mot. 8.

Defendants have complied with these orders by producing comprehensive data sets and explaining why producing literally "all data" would be impossible. Powers Decl. ¶¶ 20, 26; Ex. J, March 19, 2026 Ltr. from M. Powers at 1-2. Despite having received more than one terabyte of data covering every typical activity on the U.S. platform, Wang Decl. ¶ 4, Plaintiffs identify only one new data type they claim should be produced: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mot. 14-15, which Defendants have agreed to provide.[7] If Plaintiffs identify other data types, Defendants will consider producing those materials if relevant, proportionate, and reasonably possible. But the Court should decline to order Defendants to produce literally "all

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ssible inference from ambiguous circumstances." *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 609 (9th Cir. 2018)▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

DEFS.' OPP. TO PLS.'
MOT. TO ENFORCE
NO. 2:25-ML-03144-GW-RAO

data," for the reasons below.

2. *Providing Literally "All Data" For a Given User Is Not Possible.*

Defendants cannot provide "all data" for the named plaintiffs' and random users' accounts. Because the platform does not organize data by individual user, no tables contain all data for these accounts. Wang Decl. ¶ 8; Louisma Decl. ¶ 7; Schnell Decl. ¶11. To extract data for a particular user, Defendants must identify which tables, ███████████████████, have their data. This cannot be done with a single search for "all data" associated with a user identification number or "UID" across all systems. Wang Decl. ¶¶ 8-9; Schnell Decl. ¶¶ 10-22. ██████████ ████████████████████████████████████████ ████████████████████████████████████

Since a centralized search is impossible on TikTok's systems, Defendants' teams use a table-by-table, multi-step approach to find data associated with a particular user:

- ████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████

████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████

This process—

—is time-consuming, laborious, and must be repeated *for every single table Defendants produce. Id.* ¶ 16.

Completing this process for even a fraction of the tables is practically impossible. *Id.* And data is not static: Plaintiffs have disclosed new accounts and are dropping from the case; users generate new data every time they use the platform; and business teams constantly refresh and analyze data. Powers Decl. ¶¶ 13, 28; Wang Decl. ¶ 17. Even if Defendants spent years combing through tables for the current named plaintiffs, they would have to restart for each newly identified account. *Id.* Remarkably, some named plaintiffs are still active on the platform, despite their claims that Defendants are improperly collecting their data. Continuing to use the platform generates more data Defendants would have to

14

collect—creating a perpetual deficit.

None of Plaintiffs' cited evidence refutes this. For example, Plaintiffs cite a declaration from their expert, Dr. Zubair Shafiq, who asserted that because TikTok maintains identifiers associated with each account, TikTok can "query and reconstruct user-specific records across its data ecosystem." Mot. 8 (quoting Dkt. 125-1 ¶ 22). But a conclusory line from an expert who has never worked at TikTok or any other social media company is not credible evidence of how TikTok's systems operate. Dr. Shafiq's speculation is also wrong. As multiple detailed explanations from TikTok employees demonstrate, it is not possible to simply "query" TikTok's massive "data ecosystem" for a specific user's data. Wang Decl. ¶¶ 8-9; Louisma ¶ 9; *see* Schnell Decl. ¶¶ 10-22.

Second, Plaintiffs claim former data scientist Ethan Spector's testimony shows Defendants are "fully capable of identifying and preserving the data Plaintiffs requested." Mot. 8. That is false. Mr. Spector testified that "Hive" permits "the collection of multiple databases and the querying of them in ways where you can link and compare and that sort of thing." Dkt. 56-1 at 20:19-22. That merely describes how Hive operates, not that all Hive tables can be queried by UID. Plaintiffs also cite Mr. Spector's agreement with a characterization by counsel: that "there may be separate tables or some [] information may be in the same other table, but you basically, you know, cross-referenced the user ID across other tables to try and pull it all back together." *Id.* at 65:11-17. The question from counsel was unclear. But to the extent Plaintiffs interpret this as an admission that all tables stored in Hive could be searched for particular UIDs, any ambiguity is resolved by Mr. Spector's later declaration clarifying Defendants cannot run such a search. Dkt. 122-4 ¶¶ 5-11.

Next, Plaintiffs cite testimony from data engineer Tianyu Zhao to claim TikTok can "identify, preserve, and produce specific data on particular users." Mot. 9. While true (and is what Defendants have done), Plaintiffs' suggestion that this

DEFS.' OPP. TO PLS.'
MOT. TO ENFORCE
NO. 2:25-ML-03144-GW-RAO

means TikTok can easily identify *all* such data is false. Mr. Zhao testified only that Defendants have "a data inventory infrastructure" that "tries to capture all the data assets … that contain TikTok related data, and aggregate that information into this one platform." Dkt. 56-1 at 30:9-23. But the data inventory is just an index—it does not contain the underlying data, and one cannot search for an individual's data across the entire system. Schnell Decl. ¶ 19.

Plaintiffs also cite three documents they claim show TikTok employees use Coral to "identify and map data," which should allow production of all user data. Mot. 9 (citing Exs. 10, 11, 12). Each document proves Defendants' point. Exhibit 10 says ████████████████████████████████████████████████████████████████ Ex. 10, TTI-AG-LIT-005998114, at '116. That is correct: ████████████████████████████████████████████████████████████████████████████████████████████████████████████

Exhibit 11 is even more helpful to Defendants. It provides ████████████████████████████████████████████████████████████████████████████████████████████████████████████ Ex. 11, TTI-AG-LIT-001970609, at '611. The slide Plaintiffs cite from Exhibit 12 ████████████████

None of these exhibits show Defendants can query the entire storage system by UID. And as Defendants' employees and data expert have testified, that is not possible. Wang Decl. ¶¶ 8-9; Louisma ¶ 9, Schnell Decl. ¶¶ 10-22; Dkt. 122-4 ¶¶ 5-11.

Plaintiffs also assert Defendants' inability to readily produce all data means they cannot delete data for users under 13. Mot. 9 n.2. That too is wrong. While Defendants have built tools to delete data associated with a banned account, those tools cannot *collect and produce* the same data. Schnell Decl. ¶¶ 23-30. Deletion and extraction are distinct: deletion merely requires locating and cutting data, whereas extraction requires locating, copying, and moving data. *Id.* ¶ 26. Defendants do not have a tool that extracts "all" data, and building one would take thousands of hours with dozens of employees. *Id.* ¶ 28.

In short, Defendants have submitted extensive evidence that searching for, pulling, and producing "all data" for a single user, much less all users, is virtually impossible, and Plaintiffs' supposed evidence does not demonstrate otherwise.

>            3.    *Providing "All Data" Is Not Reasonable or Proportional to the Needs of the Case.*

Requiring "all data" for the named plaintiffs or random users is also not remotely reasonable or proportional. *See* Fed. R. Civ. P. 26(b)(1). Plaintiffs have not cited a single case requiring production at this scale. To the contrary, the matters Plaintiffs previously identified as related—including the *Musical.ly* action, DOJ's COPPA case, the Social Media Addiction MDL, the New Hampshire AG's case, and the New Jersey AG's case—did not require production of all data for any users. Dkt. 78 at 15-21. For instance, in the Social Media Addiction MDL, user data productions for the plaintiffs were limited to what was available through the defendant-platform DYD features: "a download of information associated with a User Account substantially similar to those available using the public tools provided by each [d]efendant for [that] purpose." User Account Information Order,

DEFS.' OPP. TO PLS.'
MOT. TO ENFORCE
NO. 2:25-ML-03144-GW-RAO

*In re: Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, No. 4:22-MD-03047-YGR (N.D. Cal. Jan. 29, 2024), Dkt. 616 at 1-2. Here, Defendants have produced Plaintiffs' DYD files *plus* ███████ additional fields from Hive tables. Wang Decl. ¶¶ 3-4.

Nor have Plaintiffs explained why *all* data is relevant, especially given that much is redundant and iterative. Wang Decl. ¶ 18. Plaintiffs have made vague and circular assertions that user data is relevant because this is a case about collecting user data. Mot. 2. But at a recent hearing, Plaintiffs resisted Defendants' request for discovery of Plaintiffs' accounts on other social media platforms by claiming production of an "entire account" is not necessary or proportional. Ex. P, June 3, 2026 Hr'g Tr., 70:4-8; *see also id.* at 62:11-13, 67:8-20. Likewise, last year Plaintiffs recognized "there may be data … we realize we don't need." Ex. D, July 14, 2025 Hr'g Tr., 22:21-23:23. And in the recent source code dispute, Plaintiffs stated "[t]he answer" to their theory of the case is "TikTok's source code" that processes all this data, not specific data points about a particular user. Dkt. 198 at 1, 5.

Plaintiffs have deposed company witnesses, obtained ███████ data fields, examined source code, and received and presumably reviewed millions of documents. It is unclear why they need every last scrap of user data given the voluminous materials they already have. *See In re Google RTB Consumer Priv. Litig.*, 2025 WL 28641, at *6 (N.D. Cal. Jan. 3, 2025) (discussing order "declin[ing] to order Google to produce 'all information [it] maintains about an account holder,'" instead requiring "Google to produce documents sufficient to show, for each named plaintiff, what information specific to that plaintiff" was involved). Defendants have more than met their discovery obligations and obligations under the Court's orders. The Court should confirm as much and deny Plaintiffs' unwarranted request for "all" of their account data.

**B.    Defendants Have Complied With the Court's Preservation Orders.**

Plaintiffs' motion to enforce the Court's preservation orders, Dkts. 11, 25, should likewise be denied. The Court ordered Defendants to "preserve data," Dkt. 11 at 2, but clarified that preservation obligations were not limitless. Defendants are required to "do their best," but are "not expected to accomplish something truly infeasible." Dkt. 25 at 2. In line with both orders, Defendants "preserve[d] data" from ███ suspected under-13 accounts and more than 100 accounts belonging to named plaintiffs and 68 random users, totaling ███. Wang Decl. ¶ 4. Plaintiffs' motion should be denied on that basis alone. *See Wright*, 2019 WL 5685203, at *6.

Plaintiffs appear to contend the orders required Defendants to preserve the entire U.S. platform. Mot. 11-12 ("For avoidance of doubt, Plaintiffs would not agree to TikTok deleting *any* user data, absent a court order."). That is "truly infeasible." Dkt. 25 at 2. Preserving the entire platform would require turning off all deletion policies, impeding platform functioning and preventing compliance with privacy laws, Louisma Decl. ¶¶ 10-13; building an entirely new data center to accommodate ███ of data, *id.* ¶¶ 14-15; and ███ ███ *id.* ¶ 16. None of that is reasonable, proportionate, or even possible. *See Doe LS 340 v. Uber Techs., Inc.*, 710 F. Supp. 3d 794, 804 (N.D. Cal. 2024) (suspension of defendant's company-wide document destruction policies was not "proportionate to the needs of the case").

Plaintiffs further claim the orders required Defendants to preserve some unspecified subset of "other user data." Mot. 1, 11-13. They did not. Although Plaintiffs feign "surprise[]" at Defendants' conduct, *id.* 11-13, Defendants repeatedly disclosed the nature and extent of their efforts in at least five court filings, making clear they were only preserving data for banned suspected under-13

accounts, in addition to data for named plaintiffs and random users.[9] Plaintiffs themselves acknowledged this numerous times.[10] ██████████████

███████████████████████████████████████████

██████████████████████████████

Last summer the parties discussed a sampling approach and worked toward agreeing on parameters based on exemplar data. *Supra* at 7-8. The entire point of the exemplar pulls (from a preservation perspective) was for Plaintiffs to identify a narrow subset of data that could be preserved as a sample. Plaintiffs themselves told the Court that if Defendants disclosed the fields of data they collected, Plaintiffs would be able to narrow further preservation efforts. *E.g.*, Ex. D, July 14, 2025 Hr'g Tr. at 22:21-23:23. Despite having access to that data for months, Plaintiffs never made concrete proposals for a preservation snapshot of live accounts. Powers Decl. ¶ 24. Instead, Plaintiffs told Defendants they would seek immediate relief from the Court because Defendants were not saving anything beyond what they disclosed. *Id.* ¶ 26. Such a "blunderbuss" preservation request was never contemplated by the Court. Dkt. 19-1 at 16:6-11; *see Rodriguez v. Google LLC*, 2021 WL 8085492, at *2 (N.D. Cal. Dec. 1, 2021) (declining to require "Google to start saving petabytes of data per day, indefinitely, without a more compelling showing of need").

Plaintiffs' other arguments lack merit. Plaintiffs contend their sampling proposal was not a "final agreement" and did not "authorize[]" Defendants to

---

[9] *See, e.g.*, Dkt. 41 at 1-15 (describing Defendants' preservation proposal for banned suspected under-13 accounts); Dkt. 56 at 3-4 (explaining preservation of "*unidentified* under-13 data makes no sense" and defending preservation proposal); Dkt. 78 at 3-5 (providing list of data being preserved for banned under-13 accounts); Dkt. 93 at 3-4 (providing additional list of data being preserved for banned under-13 accounts); Dkt. 162-1 at 116-23 (again describing Defendants' preservation efforts).

[10] *See, e.g.*, Dkt. 51 at 1 (recognizing Defendants' preservation proposal "is limited to the preservation of 'identified under-13 users'"); Dkt. 78 at 11 (recognizing "the categories of data currently being preserved" were "only for 'users that Defendants have identified as under-13'").

DEFS.' OPP. TO PLS.'
MOT. TO ENFORCE
NO. 2:25-ML-03144-GW-RAO

"delete relevant user data." Mot. 12. As explained, Defendants cannot preserve the entire platform because it is technologically infeasible, and repeatedly told Plaintiffs exactly what they were preserving. *Supra* at 19-20. Given Plaintiffs' statements and conduct, Defendants acted reasonably by producing exemplar pulls and waiting for Plaintiffs to discuss what else should be preserved.

Plaintiffs also wrongly claim that Defendants' supposed "delay in producing all the data for the [n]amed [p]laintiffs and … random users has hindered meaningful discussion" about preservation. Mot. 12-13. Plaintiffs wasted more than a year before providing *any* account information, and then took an additional *four months* to confirm a complete set. *Supra* at 8-9. Even then, the information provided was incomplete—just weeks ago, Plaintiffs disclosed two new accounts that should have been identified by the Court's February 5, 2026 deadline. Powers Decl. ¶ 28. Plaintiffs have only themselves to blame for any purported delay, and this alone warrants denial of their motion. *Cf. Sabadash v. SARL Brevent*, 2025 WL 2019936, at *5 (C.D. Cal. June 17, 2025) (declining to "reward Plaintiff for its own lack of diligence" through a 37(b) motion because, "while Plaintiff may be frustrated by the paucity of responsive documents," the Court could not "conclude that [the opposing party's] document production [was] deliberately deficient").

### C. Defendants Have Complied With the Court's Order on Providing the "Dates of Data Deleted."

Defendants have also "provide[d] Plaintiffs with information concerning the dates of … deletions." Dkt. 134 at 10-11. Plaintiffs brought this suit anonymously, meaning unless and until they provided their account information, Defendants had no way of knowing which, among hundreds of millions of accounts, belonged to Plaintiffs and, by extension, no way of ensuring their account data was not deleted. Wang Decl. ¶¶ 22-23. Defendants explained this to Plaintiffs in May 2026, including how any "deletions during the pendency of the litigation" for named plaintiffs' accounts would have been limited to information deleted in the ordinary

21

course before Defendants received Plaintiffs' account information and conducted the data pulls. Ex. O, May 8, 2026 email from H. Stodder. Since there are ▮▮▮ ▮▮▮ tables in Defendants' systems, *supra* at 4-5, and Defendants cannot determine whether and when named plaintiffs' data was in each table, *id*, it is impossible to provide a more specific list of the particular dates any data may have been deleted.

## V.    CONCLUSION

The Court should deny Plaintiffs' motion to enforce in full.

Dated: June 11, 2026                          Respectfully submitted,


By:  /s/ *Daniel M. Petrocelli*
        Daniel M. Petrocelli

DANIEL M. PETROCELLI
dpetrocelli@omm.com
DREW E. BREUDER
dbreuder@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California 90067-6035
Telephone:  +1 310 553 6700
Facsimile:   +1 310 246 6779

MATTHEW D. POWERS
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3832
Telephone: +1 415 984-8700
Facsimile: +1 415 984-8700

SID MODY (*pro hac vice*)
smody@omm.com
O'MELVENY & MYERS LLP
2801 North Harwood Street, Suite 1600
Dallas, TX 7501
Telephone:  +1 972-360-1900
Facsimile:   +1 972-360-1901

*Attorneys for Defendants ByteDance Ltd., ByteDance Inc., TikTok Ltd., TikTok Inc., TikTok LLC, TikTok Pte. Ltd., and TikTok USDS Joint Venture LLC*

DEFS.' OPP. TO PLS.'
MOT. TO ENFORCE
NO. 2:25-ML-03144-GW-RAO

**CERTIFICATE OF SERVICE**

I hereby certify that on June 11, 2026, a true and correct copy of Defendants' Opposition to Plaintiffs' Motion to Enforce Compliance with Court Orders Pursuant to Federal Rule of Civil Procedure 37(b) were served upon the following via the CM/ECF system:

DEREK W. LOESER
dloeser@kellerrohrback.com
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101
(206) 623-1900
(206) 623-3384 (fax)

ERIC A. KAFKA
ekafka@cohenmilstein.com
COHEN MILSTEIN SELLERS AND TOLL PLLC
88 Pine Street, 14th Floor
New York, NY 10005
212-838-7797
212-838-7745 (fax)

Dated: June 11, 2026                        */s/ Daniel M. Petrocelli*
                                            Daniel M. Petrocelli

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants ByteDance Ltd., ByteDance Inc., TikTok Ltd., TikTok Inc., TikTok LLC, TikTok Pte. Ltd., and TikTok USDS Joint Venture LLC, certifies that Defendants' Opposition to Plaintiffs' Motion to Enforce Compliance with Court Orders Pursuant to Federal Rule of Civil Procedure 37(b) contains 6,998 words, which complies with the word limit of L.R. 11-6. I declare under the penalty of perjury that the foregoing is true and correct.

Executed on this 11th day of June, 2026 in Los Angeles, California.


*/s/ Daniel M. Petrocelli*
Daniel M. Petrocelli

DEFS.' OPP. TO PLS.'
MOT. TO ENFORCE
NO. 2:25-ML-03144-GW-RAO