Derek W. Loeser (*pro hac vice*)
dloeser@kellerrohrback.com
Cari Campen Laufenberg (*pro hac vice*)
claufenberg@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101
(206) 623-1900, Fax: (206) 623-3384

Eric Kafka (*pro hac vice*)
ekafka@cohenmilstein.com
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
(212) 838-7797, Fax: (212) 838-7745

*Interim Lead Counsel*

Steven Bloch (*pro hac vice*)
sbloch@sgtlaw.com
**SILVER GOLUB & TEITELL LLP**
One Landmark Square, 15th Floor
Stamford, CT 06901
(203) 325-4491
sbloch@sgtlaw.com

*Executive Committee*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| IN RE: TIKTOK, INC., MINOR PRIVACY LITIGATION | MDL NO. 3144 |
| | 2:25-ml-03144-GW-RAO |
| | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO ENFORCE COMPLIANCE WITH COURT ORDERS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37(B)** |
| | **REDACTED** |

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT.........................................................................................................2

      A.    This Court Should Not Tolerate TikTok's Disregard for The
            Court's Order to Produce All Data for Named Plaintiffs and
            68 Random Users...............................................................................3

            1.    TikTok Misrepresents the Court's Previous Orders: The
                  Court Granted Plaintiffs' Motion to Compel TikTok to
                  Produce All Data for Named Plaintiffs and Dozens of
                  Random Users...................................................................3

            2.    TikTok Falls Far Short of the Impossibility Standard:
                  TikTok Is Able to Produce All Data for the Named
                  Plaintiffs and Random Users.............................................4

            3.    TikTok's New Challenges to Relevancy and
                  Proportionality Are Procedurally Improper, But Also
                  Incorrect on Their Merits ..................................................9

      B.    TikTok Has Been Deleting Relevant Data for Years: The
            Court Should Stop the Bleeding and Enforce Order for TikTok
            to Preserve User Data.........................................................................11

      C.    The Court Should Enforce Its Order for TikTok to Identify the
            Scope of Its Deletion of Users' Data Since This Action
            Commenced .......................................................................................13

III.  CONCLUSION ...................................................................................................14

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.A. v. ByteDance Inc.*,
No. 2:24-cv-06784-GW-RAO, Dkt. No. 1 (C.D. Cal. Aug. 9, 2024)................11

*Colonies Partners, L.P. v. Cnty. of San Bernardino*,
2020 WL 1496444 (C.D. Cal. Feb. 27, 2020).....................................................11

*Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.*,
2023 WL 6866273 (9th Cir. Oct. 18, 2023)........................................................11

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
589 U.S. 178 (2020)............................................................................................10

*RG Abrams Ins. v. L. Offs. of C.R. Abrams*,
342 F.R.D. 461 (C.D. Cal. 2022) .......................................................................11

*Sali v. Corona Reg'l Med. Ctr.*,
884 F.3d 1218 (9th Cir. 2018)...............................................................................3

*United States v. United Mine Workers*,
330 U.S. 258 (1947)...............................................................................................2

*Walker v. City of Birmingham*,
388 U.S. 307 (1967)...............................................................................................2

**Rules**

Fed. R. Civ. P. 37(e) ........................................................................................11

**Regulations**

16 C.F.R. § 312.3................................................................................................10

## I.    INTRODUCTION

TikTok refuses to follow this Court's orders regarding the production and preservation of data that Plaintiffs are entitled to in order to prosecute this action. Even worse, TikTok refuses to admit the existence of this Court's orders.

In October 2025, Plaintiffs first moved to compel TikTok to "produce all data for the [N]amed Plaintiffs and 34 randomized additional users…" Dkt. No. 114-1 at 15. In November 2025, the Court granted the motion. Dkt. No. 134 at 1. Incredibly, TikTok denies this occurred.

TikTok has also come up with a new story: that TikTok possesses ███████ ██████ of user data, and so it impossible for TikTok to produce data from all of them for the Named Plaintiffs. It is noteworthy how different TikTok's new story is from what it said just a few months ago when it was pretending to comply with the Court's orders. On March 19, 2026, TikTok told Plaintiffs that it had conducted an "████████████ ██████████████████████████████████████ ████████████████" Dkt. No. 240-2. And, on March 27, 2026, TikTok told Plaintiffs that Plaintiffs' RFP No. 7 (requesting "[f]or each named plaintiff, the data in TikTok's possession that TikTok has collected from them, inferred about them, or associated with their account") was *moot* because "[t]he Court has already ordered Defendants to produce, and Defendants have already produced to Plaintiffs, non-privileged data for the named plaintiffs' TikTok accounts that Defendants were able to identify…." Dkt. No. 224-5 (TikTok's Responses and Objections to Plaintiffs' First Set of RFPs) at 19–20. However, on May 1, 2026, ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████. Dkt. No. 240-3. That document production demonstrated that TikTok had not come close to complying with the Court's orders and precipitated the need for motion practice.

In any event, Plaintiffs' expert Dr. Zubair Shafiq dispels TikTok's new story and explains how TikTok's burden arguments rest on conflation, distortion, and misleading

1

information about TikTok's technical capabilities. In short, as explained in Dr. Shafiq's accompanying declaration, TikTok has the necessary tools to identify all tables with user data and to extract and produce all data for the Named Plaintiffs. Dr. Shafiq exposes TikTok's claims of burden for what they are—simple machinations.

Second, TikTok has a legal obligation to preserve relevant data and the Court instructed TikTok to "preserve data until the Court orders further unless the parties make a request on an ex parte basis." Dkt. No. 11 at 2. Now, TikTok has been caught deleting the highly relevant user data that is at the heart of this action, including ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. See Plaintiffs' Motion to Enforce (Dkt. No. 240) ("Mot.") at 10, 13. Plaintiffs were surprised to learn during the parties' May 5, 2026 meet-and-confer that TikTok had failed to preserve such patently relevant data. Id. at 1, 6. The Court should stop TikTok from violating its preservation obligations and enforce its order. Otherwise, relevant data will continue to be destroyed on a daily basis.

Third, the Court ordered TikTok to provide "information concerning the dates of … deletions … to the extent such information is available." Dkt. No. 134 at 12. Yet TikTok refuses to abide by even this simple Court order.

In sum, the Court should enforce its extant orders and require TikTok's immediate compliance so that TikTok cannot continue to flout its court-ordered obligations in this action.

## II.    ARGUMENT

A party may not ignore a court order because it believes compliance is difficult, mistaken, or simply unnecessary. The law is clear: court orders must be obeyed unless and until they are modified or reversed, and parties cannot "determine for themselves" whether compliance is required. *United States v. United Mine Workers*, 330 U.S. 258, 306 (1947); *Walker v. City of Birmingham*, 388 U.S. 307, 320–21 (1967). And in the discovery context, the Ninth Circuit has made equally clear that a party cannot refuse to comply first and then offer post hoc justification later—there is "no justification" for failing even to

attempt compliance with a court's directive. *Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1225 (9th Cir. 2018). TikTok cannot rewrite that rule now. It was required to comply with the Court's orders at the time they were made, not decide for itself what aspects it would follow and then seek forgiveness after the fact.

### A. This Court Should Not Tolerate TikTok's Disregard for The Court's Order to Produce All Data for Named Plaintiffs and 68 Random Users

#### 1. TikTok Misrepresents the Court's Previous Orders: The Court Granted Plaintiffs' Motion to Compel TikTok to Produce All Data for Named Plaintiffs and Dozens of Random Users

TikTok posits that "[t]he Court never ordered Defendants to produce 'all data' for Plaintiffs' accounts or any other accounts.'" TikTok's Response in Opposition, Dkt. No. 252 ("Opp.") at 2. That is false, and there is no ambiguity. On October 10, 2025, Plaintiffs filed a motion requesting that the Court order Defendants to "produce all data for the [N]amed Plaintiffs and 34 randomized additional users…." Dkt. No. 114-1 at 15; 114-2 at 2.[1] And, on November 10, 2025, the Court granted Plaintiffs' motion to compel. Dkt. No. 134 at 1; *see also* Dkt. No. 137 (minute order adopting the Court's tentative order and stating that the Court "grants the Plaintiffs' motion to compel"). TikTok's position—that the Court somehow denied Plaintiffs' motion to compel, when, in reality, the Court clearly granted it—is belied by the record and the Court's orders and should not be countenanced.

At the status conferences that followed, the Court left no ambiguity that it had ordered TikTok to produce all the data for the Named Plaintiffs and randomized additional users. At the January 30, 2026 status conference, the Court set a 30-day deadline for TikTok to comply with its November 10 order:

> By February 20th, I want the defendant to provide to the plaintiffs *every* document that the defendant has, which names or otherwise references, any of the named plaintiffs or *any of the dat[a] that would be associated with*

---

[1] TikTok understood at the time that "Plaintiffs [were] ask[ing] the Court to compel Defendants to preserve and produce 'all data' for the 17 named Plaintiffs, 'all data' for 34 random TikTok users, and a 'data dictionary' that explains it all." Dkt. No. 122 at 1.

*them*, for example, device data, anything of that sort. *All those documents are to be produced to –*

…

[Plaintiffs within] 30 days. And *produce all that stuff.*

Ex. 20, Jan. 30, 2026 Hrg. Tr. at 12:21–13:7 (emphasis added). The subsequent minute order similarly and unambiguously required TikTok to provide "every document referencing Plaintiffs and their data." Dkt. No. 178 at 1.

When TikTok failed to comply, the Court revisited the issue at the Parties' March 13, 2026 hearing. The Court stated that TikTok was meant to have already produced "every document that referenced the [P]laintiffs." Ex. 21, Mar. 13, 2026 Hrg. Tr. at 6:14–7:10. The Court ordered that TikTok must either produce the remaining data or establish that doing so would be "impossible"—making clear that TikTok must "establish the impossibility before you say that you can't do it." *Id.* at 8:25–9:7; 9:20–21. Following the hearing, on March 19, 2026, ███████████████████████████████ ████████████████████████████████████ ████████████████████████ Dkt. No. 240-2 (citing Minutes of March 13, 2026 Status Conference, Dkt. No. 191 at 1).

Given the Court's clear orders, TikTok's position that the "Court never ordered Defendants to produce 'all data' for Plaintiffs' accounts or any other accounts," Opp. at 2, is demonstrably false. TikTok's refusal to acknowledge, let alone abide by, the Court's requirements, has already caused substantial delay in this litigation.

### 2.    TikTok Falls Far Short of the Impossibility Standard: TikTok Is Able to Produce All Data for the Named Plaintiffs and Random Users

In its opposition, TikTok now comes up with a new story about how it is supposedly impossible to produce all data for a given user, submitting two employee declarations and an expert declaration. Opp. at 13–17. TikTok's concoction is incorrect: the evidence demonstrates that TikTok can produce all data for the Named Plaintiffs and random users by using its own tools.

4

Plaintiffs' expert Dr. Zubair Shafiq explains that there is a feasible two-step process for TikTok to produce user data using TikTok's own systems. Reply Declaration of Zubair Shafiq (Ex. 17) ("Shafiq Reply Decl.") ¶¶ 3–8. First, "TikTok can identify tables that contain user or device identifiers using Coral and Data Inventory systems." *Id.* at ¶ 4. Second, TikTok can then "query those tables for records associated with specific user and device identifiers…using TikTok's existing data processing infrastructure, ███████████ ████████████████████" *Id.* at ¶ 5.

As for the first step, TikTok's own declarants confirm its feasibility: TikTok can use its tools to identify tables that contain user data. *See* Shafiq Reply Decl. ¶¶ 9–10; 14–17. TikTok's declarants admit that TikTok maintains extensive data indexing systems, such as Coral and Data Inventory, that are capable of identifying data associated with unique user identifiers. *See* Wang Decl. (Dkt. No. 253-3) ¶ 9; Louisma Decl. (Dkt. No. 253-4) ¶ 8; Schnell Decl. (Dkt. No. 253-5) ¶ 18. Moreover, TikTok's declarants go a step further and show that they can identify the tables with specific user identifiers. Schnell Decl. ¶¶ 13 (█████████████████████████████████████ ██████████████████████████████████); *Id.* at ¶ 19 (████████████ █████████████████████████)

To try to discredit Dr. Shafiq and the capabilities of Coral/Data Inventory, TikTok conflates the first and second steps for producing user data. Opp. at 15–17. TikTok suggests that Coral cannot be used to extract and produce the user data, *i.e.*, Coral cannot be used for the second step. TikTok's argument is a strawman: Dr. Shafiq "did not opine that Coral or Data Inventory can themselves extract records from tables. Those systems are relevant to the first step: identifying tables, fields, and other metadata. Extraction is a separate second step that occurs after relevant tables are identified in the first step." Shafiq Reply Decl. ¶ 6.

As for the second step, TikTok can use its existing data processing infrastructure, ████████████████████████, to query, extract, and produce user data. Shafiq

5

Reply Decl. ¶¶ 5, 18–29.[2] TikTok likewise affirms the feasibility of the second step, extraction of the data. Its declarants acknowledge that, ███████████████ ████████████████████████████████████ ████████████████████████████. Louisma Decl. ¶ 9; Wang Decl. ¶¶ 13, 15. Indeed, TikTok has already performed this type of targeted extraction in the course of this litigation. Wang Decl. ¶ 16. The dispute is thus not about whether TikTok can retrieve user-level data—it plainly can and does—but rather about whether it chooses to do so.

TikTok puts forth a series of misdirections about its ability to extract and produce all data for fewer than 100 users. TikTok insists that the absence of a single unified search makes querying its data tables unduly burdensome. Opp. at 13 ("This cannot be done with a single search…."). But as Dr. Shafiq makes clear, it is neither necessary nor appropriate to undertake a single, centralized query across hundreds of thousands of tables. Shafiq Reply Decl. ¶¶ 23–24. Instead, a reasonable approach would run table-specific queries for user identifiers and then aggregate the results. *Id.* at ¶ 24. TikTok's insistence on framing the issue as relying only on a single search misstates the capabilities of modern data systems.

TikTok's public documents confirm that TikTok's available query tools, ██████ ██████, are more powerful than TikTok admits here. ████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ██████████████████████ Shafiq Reply Decl. ¶ 12. ██ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████

---

[2] TikTok calls ███████████████████████. But these are better conceptualized as the second step out of two. Shafiq Reply Decl. ¶¶ 3–8, 10–11.

████████████████████████████████████████ *Id.* Dr. Shafiq explains that TikTok's ████████████████ ██████ ████████████████████ ████████████████████████████████████ ████████████████████████. *Id.* at ¶¶ 12–13. The described functionality ████████████████ is far from limited to executing a single query at a time, undercutting TikTok's overall depiction of a laborious and serial process. *Id.*

Most crucially, Dr. Shafiq demonstrates that TikTok's narrative about burden ignores a key feature of its own infrastructure, namely, the ability to execute parallel queries. Shafiq Reply Decl. ¶ 25. In part by examining TikTok's own publicly available documents regarding its data processing capacities, Dr. Shafiq points out that TikTok's systems employ massive parallel processing, which utilizes frameworks such as Krypton and Apache Spark, with tens of millions of CPU cores and the ability to process enormous volumes of data efficiently. *Id.* at ¶¶ 26–27. TikTok's own expert acknowledges the existence and function of parallel processing tools. *Id.* at ¶ 27 (citing Schnell Decl. ¶ 21 n.7). ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████ *Id.* at ¶ 28.

This is critical because, as Dr. Shafiq explains, TikTok's burden estimates are premised on machine time figures that assume a serialized, sequential workflow. ██ ████████████████████████████████████████ ████████ Wang Decl. ¶ 16. But as Dr. Shafiq explains, those figures are fundamentally misleading: if the workload is parallelized, a task that requires several hours, days, or weeks of cumulative machine time can, when distributed across multiple machines, be completed in a fraction of that time in real world terms. Shafiq Reply Decl. ¶ 25. By

---

[3] ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████.

omitting a basic principle used to manage big data environments, TikTok presents an artificially inflated picture of the effort required.

Nor is TikTok's reliance on the limitations posed by internal access constraints convincing. As per Dr. Shafiq, the access limitations described by TikTok are policy choices, not technical barriers.[4] Shafiq Reply Decl. ¶ 21. ███████████████████ ███████████████████████████████. *Id.* at ¶ 22 (citing Wang Decl. ¶ 13, Lousima Decl. ¶ 9, Schnell Decl. ¶¶ 24–26). As Dr. Shafiq makes clear, organizations routinely grant controlled, purpose-specific access for litigation and compliance functions, and TikTok is no exception. *Id.* at ¶ 21. TikTok's "access" argument is not a claim of technical inability but an admission that it has chosen not to deploy its existing capabilities for discovery purposes.

Finally, Dr. Shafiq highlights an additional inconsistency: TikTok already operates systems ███████████████████████████████. Shafiq Reply Decl. ¶¶ 30–33. Those systems necessarily perform the same function of identifying records linked to specific user or device identifiers across multiple data sources. *Id.* While it is true that data deletion and data identification and extraction are distinct operations, they share the same basic functionality: cross-table identification of user data. *Id.* at ¶ 30 TikTok's ability to carry out such operations at scale further undermines its claim that comparable extraction for discovery purposes is infeasible or unduly burdensome.

In sum, the evidence establishes that TikTok's "burden" narrative rests on a series of mischaracterizations. TikTok can identify the relevant data; it can query and extract

---

[4] Publicly available sources cast doubt on meaningful access limitations to TikTok's data ecosystems. In a report made to Senator Josh Hawley's office, a TikTok whistleblower warned that ███████████████ █████████ "easy access to U.S. data," only requiring employees to have approval from a manager before being able to "backup, aggregate, and analyze data." *TikTok Whistleblower: Hawley Demands Thorough Review of Explosive New Allegations*, Sen. Josh Hawley (Mar. 8, 2023); https://www.hawley.senate.gov/tiktok-whistleblower-hawley-demands-thorough-review-explosive-new-allegations/.

that data; and it operates precisely the kind of distributed, parallelized infrastructure that renders modern large-scale data processing workable.

### 3. TikTok's New Challenges to Relevancy and Proportionality Are Procedurally Improper, But Also Incorrect on Their Merits

TikTok contends that Plaintiffs' request for all data for the Named Plaintiffs and random users is not relevant or proportional. Opp. at 17–18. As an initial matter, TikTok's arguments here are procedurally improper because the Court already granted Plaintiffs' motion to compel. Dkt. No. 134 at 1; Dkt. No. 137. And the Court already found that all data from the Named Plaintiffs and dozens of random users is relevant. Dkt. No. 134 at 12 (citing *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 929 (N.D. Cal. 2023)).

TikTok claims that Plaintiffs have not articulated why the user data is relevant. Opp. at 18. But TikTok ignores that Plaintiffs provided a detailed explanation of relevancy in their October 2025 motion to compel this data. *See* Dkt. No. 114-1 at 9–11. Plaintiffs explained that:

> This data will show the nature and extent of TikTok's data collection, the ways in which TikTok used or monetized that information, the child-directed nature of TikTok's platform, and proof that TikTok's own systems and employees were on notice of the named Plaintiffs' ages based on their activities on the platform. Discovery into TikTok user data will be necessary to demonstrate TikTok's knowledge, intent, and conduct, as well as to quantify and qualify the scope of TikTok's unlawful data collection and use. Put simply, TikTok user data is not just relevant; it is the central to the claims and defenses in this action. *See* Fed. R. Civ. P. 26(b)(1).

*Id.* at 10. Plaintiffs also cited caselaw that found that plaintiff data is highly relevant to allegations in privacy class actions. *Id.* at 10–11 (citing *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 2021 WL 10282172, at *8 (N.D. Cal. Oct. 11, 2021); *In re TikTok, Inc. In-App Browser Priv. Litig.*, 2024 WL 4367849, at *5 (N.D. Ill. Oct. 1, 2024); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1040 (S.D. Cal. 2023)).

Furthermore, in Plaintiffs' current motion to enforce, Plaintiffs explained that data about users' ▮▮▮▮▮▮▮▮▮▮ (which TikTok neither preserved or produced) is

9

relevant for two reasons: (1) it provides evidence of TikTok's knowledge of under-13 users and (2) it provides evidence that TikTok, or at least a portion thereof, is a child-directed platform. Mot. at 9–10. As the Court is aware, both "actual knowledge" of age and a child-directed platform can establish COPPA violations. 16 C.F.R. § 312.3.

TikTok attempts to minimize ███████ as the "only [ ] new data type." Opp. at 12. In a similar attempt at dodging its obligations, during the parties' May 5, 2026 meet-and-confer, TikTok demanded that Plaintiffs identify the tables and fields that Plaintiffs assert TikTok is withholding from its production. Kafka Decl. ¶ 4. TikTok misses the point. Because TikTok has unilaterally withheld ████████ tables, Plaintiffs cannot identify the exact names of the data fields that TikTok has not produced. And there is a broad array of user data that that is relevant to proving TikTok's knowledge and that TikTok (or a portion thereof) is directed to children. Shafiq Reply Decl. ¶¶ 35–36. ████████████████████████████████████████████████████████████████ ██████████████████" Opp. at 12 n.7. But user data can provide direct knowledge of age, and, at any rate, the Supreme Court has identified a breadth of evidence that can used to prove actual knowledge in other statutory contexts: "actual knowledge can be proved through inference from circumstantial evidence" and "evidence of willful blindness supports a finding of actual knowledge." *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 189–90 (2020) (cleaned up). Plaintiffs deserve the opportunity to analyze user data and make their case.[5] Shafiq Reply Decl. ¶¶ 35–36.

---

[5] In addition, TikTok mischaracterizes other aspects of discovery. *See* Opp. at 18. To address some: Plaintiffs have agreed to produce the DYD files for their TikTok accounts; Plaintiffs objected to producing DYD files for their other social media platforms. Plaintiffs' request for source code is not undermined by the fact that user data is also necessary. Moreover, TikTok has yet to produce custodial documents that were not produced in other litigation, and since discovery commenced, there have not been any depositions. Kafka Decl. ¶ 9.

**B.    TikTok Has Been Deleting Relevant Data for Years: The Court Should Stop the Bleeding and Enforce Order for TikTok to Preserve User Data**

TikTok "ha[s] a duty to preserve evidence that kick[ed] in once [TikTok] ha[d] 'some notice' that evidence will be 'potentially relevant to the litigation.'" *Dickinson Frozen Foods, Inc. v. FPS Food Process Sols. Corp.*, 2023 WL 6866273, at *2 (9th Cir. Oct. 18, 2023) (quoting *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 766 (9th Cir. 2015)). TikTok's obligation to preserve evidence arose no later than August 9, 2024, when the first private plaintiffs filed their class action complaint. *See A.A. v. ByteDance Inc.*, No. 2:24-cv-06784-GW-RAO, Dkt. No. 1 (C.D. Cal. Aug. 9, 2024). As soon as TikTok received notice of the allegations in that complaint, it was under an obligation to investigate the relevant evidence, including how its own systems work, and to ensure "the suspension of document destruction policies" through "[a] litigation hold, or preservation order." *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 342 F.R.D. 461, 505 (C.D. Cal. 2022); *Colonies Partners, L.P. v. Cnty. of San Bernardino*, 2020 WL 1496444, at *8 (C.D. Cal. Feb. 27, 2020). A party seeking destruction of relevant evidence is "required to show good cause before destruction is permitted." Manual Complex Lit. §11.442 (4th ed.). TikTok's duty to preserve evidence also includes taking "reasonable steps to preserve it," Fed. R. Civ. P. 37(e), which "extends to the suspension of document destruction policies." *RG Abrams Ins.*, 342 F.R.D. at 505; *Colonies Partners*, 2020 WL 1496444, at *8.

In sum, TikTok has an obligation to preserve relevant evidence unless the Court (or the Plaintiffs) relieve TikTok of that obligation. Despite TikTok's distortions, there is one unassailable fact that TikTok cannot deny: neither the Court nor Plaintiffs have *ever* authorized TikTok to delete user data. In fact, the Court has repeatedly told TikTok to continue preserving user data. *See* Dkt. No. 11 at 2 ("Defendants will preserve data until the Court orders further unless the parties make a request on an ex parte basis"); Dkt. No. 25 at 2 ("Defendants have not established that they cannot comply with the Court's preservation order, only that they are unsure if they can and anticipate potential technical and other difficulties. This does not justify setting aside the preservation order,

particularly given the risk of prejudice to Plaintiffs of lost evidence."); Dkt. No. 134 at 10 (Court declining to narrow TikTok's preservation obligations).

From the start, Plaintiffs' goal has been to litigate this case on the merits rather than litigate spoliation. Plaintiffs have repeatedly explained that one of the reasons TikTok needs to produce all user data for the Named Plaintiffs is that it will enable the parties to have informed negotiations regarding which user data TikTok can stop retaining. As Dr. Shafiq explains, "[i]f provided with all data for the named plaintiffs and 34 random users along with data dictionaries sufficiently describing the data in each table, I can identify the names of the data tables and fields that are relevant to my analysis. This would enable me to make targeted requests for some data from additional users, and then complete my analysis." Shafiq Reply Decl. ¶ 37. Unfortunately, TikTok still has not produced all data for the Named Plaintiffs and random users and thus has blocked meaningful negotiations from commencing.

Every day, TikTok deletes relevant evidence. Incredibly, TikTok has not preserved a single data point for all users on the TikTok platform. Mot. at 10–11. And now, TikTok's spoliation is not theoretical. There is data that TikTok should have preserved for the whole platform, ███████████████████████████████, which TikTok has not preserved. *See id.* at 10, 13. Plaintiffs are deeply concerned that, unless the Court enforces its order on preservation, TikTok will delete the necessary evidence for Plaintiffs to prove their case. The Court should put an end to TikTok's prejudicial conduct.

TikTok's excuses for continuing to delete user data are unavailing. First, TikTok raises burden arguments. But, as discussed above, TikTok's burden arguments are misplaced and disproven by the evidence in the record. *See generally* Shafiq Reply Decl. And, notably, even if credited, one of TikTok's declarants does not conclude that it is impossible to preserve all user data. Rather, the declarant states that, "TikTok's systems are not capable of preserving all user data for an extended, much less indefinite, period of time." Louisma Decl. ¶ 10. If TikTok worked with Plaintiffs to produce all data for the

12

Named Plaintiffs and dozens of random users, TikTok would not need to preserve all user data indefinitely. This is precisely why it is so disappointing that TikTok will not produce all data for the Named Plaintiffs.

TikTok also attempts to blame Plaintiffs, asserting that Plaintiffs did not follow up on their previous offer to narrow preservation through a snapshot. Opp. at 20. This criticism is misplaced, as TikTok needs *first* to produce all data from the Named Plaintiffs so that Plaintiffs can *then* work with TikTok to narrow preservation. TikTok also bizarrely contends that Plaintiffs caused the delay in TikTok producing all data for the Named Plaintiffs. Opp. at 21. This is wrong. TikTok omits critical information about why the Named Plaintiffs did not provide their account information earlier: TikTok told Plaintiffs that, unless Plaintiffs signed a consent form waiving Plaintiffs' claims, relevant portions of Plaintiffs' data could be destroyed once Plaintiffs provided their account information to TikTok. Dkt. No. 114-1 at 7. Furthermore, unless Plaintiffs signed TikTok's inappropriate consent form, TikTok would not even produce the Named Plaintiffs' data to them. Dkt. No. 114-1 at 7. Of course, Plaintiffs did not provide TikTok with their account information after learning TikTok would use that information to delete Plaintiffs' data. This further demonstrates how Plaintiffs have zealously protected their ability to get their user data while TikTok has engaged in machinations to try to destroy it.

Accordingly, Plaintiffs ask the Court to enforce its orders that TikTok preserve data and stop TikTok's ongoing destruction of relevant evidence.

### C. The Court Should Enforce Its Order for TikTok to Identify the Scope of Its Deletion of Users' Data Since This Action Commenced

Defendants now contend that it is "impossible" to provide more specific information about deletion dates because, absent Plaintiffs' account identifiers, they could not track where Plaintiffs' data resided and therefore cannot determine whether or when such data existed or was deleted in any given table. That argument misstates both the Court's order and TikTok's own technical capabilities.

To begin, the Court did not limit TikTok's obligation to an individualized accounting of data deletion. It required TikTok to provide "information concerning the

dates of … deletions … to the extent such information is available." Dkt. No. 134 at 11. The relevant inquiry, therefore, is not whether TikTok can reconstruct an account-specific deletion history for each Named Plaintiff but whether TikTok possesses system-level information identifying what data was deleted and when during the pendency of this action. TikTok's own systems demonstrate that it does.

Contrary to its assertions, TikTok is fully capable of identifying the specific date on which particular information was deleted. ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮. Schnell Decl. ¶¶ 24–25. ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮ Shafiq Reply Decl. ¶ 31.

Taken together, these admissions foreclose TikTok's attempt to frame Plaintiffs' request as requiring impracticable data extraction. TikTok needs merely to disclose the scope of what has already been deleted. TikTok's own systems and deletion infrastructure necessarily identify (1) the tables containing user-associated data and (2) the tables from which such data is deleted.

## III.    CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion to Enforce.

14

DATED this 18th day of June, 2026.

KELLER ROHRBACK L.L.P.


By: */s/ Derek W. Loeser*
    Derek W. Loeser (*pro hac vice*)
    dloeser@kellerrohrback.com
    Cari Campen Laufenberg (*pro hac vice*)
    claufenberg@kellerrohrback.com
    1201 Third Avenue, Suite 3400
    Seattle, WA 98101
    (206) 623-1900, Fax: (206) 623-3384

    *Interim Lead Counsel*

COHEN MILSTEIN SELLERS AND TOLL PLLC


By: */s/ Eric A. Kafka*
    Eric A. Kafka (*pro hac vice*)
    ekafka@cohenmilstein.com
    88 Pine Street, 14th Floor
    New York, NY 10005
    212-838-7797, Fax: (212) 838-7745

    *Interim Lead Counsel*

SILVER GOLUB & TEITELL LLP


    Steven L. Bloch (*pro hac vice*)
    sbloch@sgtlaw.com
    One Landmark Square, 15th Floor
    Stamford, CT 06901
     (203) 325-4491

    *Executive Committee*

15

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-4.3.4(a)(2)**

I, Eric A. Kafka, attest that all other signatories listed, and on whose behalf the filing is submitted, have concurred in the filing's content and have authorized the e-filing of the foregoing document in compliance with Local Rule 5-4.3.4(a)(2).

Executed this 18th day of June, 2026, at New York, New York.

*/s/ Eric A. Kafka*
Eric A. Kafka

16

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 5,059 words, which:

x  complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order.


Executed this 18th day of June, 2026, at New York, New York.


/s/ *Eric A. Kafka*
Eric A. Kafka

17

## CERTIFICATE OF SERVICE

I, Derek W. Loeser, hereby certify that on June 18, 2026, I electronically filed the foregoing with the Clerk of the United States District Court for the Central District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

/s/ Derek W. Loeser
Derek W. Loeser

18