Derek W. Loeser (*pro hac vice*)
dloeser@kellerrohrback.com
Cari Campen Laufenberg (*pro hac vice*)
claufenberg@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101
Tel: (206) 623-1900, Fax: (206) 623-3384

Eric Kafka (*pro hac vice*)
ekafka@cohenmilstein.com
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Tel: (212) 838-7797, Fax: (212) 838-7745

Steven Bloch, (*pro hac vice*)
sbloch@sgtlaw.com
**SILVER GOLUB & TEITELL LLP**
One Landmark Square, 15th Floor
Stamford, CT 06901
Tel: (203) 325-4491

*Attorneys for Plaintiffs and Putative Classes*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| IN RE: TIKTOK, INC., MINOR PRIVACY LITIGATION | MDL NO. 3144 |
| | 2:25-ml-03144-GW-RAO |
| | **PLAINTIFFS' MOTION FOR CASE MANAGEMENT ORDER RE FOREIGN DEPONENTS** |
| | Date: July 16, 2026 |
| | Time: 8:30 am |
| | Judge: Honorable George H. Wu |
| | Location: Courtroom 9D |
| | [REDACTED] |

PLEASE TAKE NOTICE that on July 16, 2026, at 8:30 a.m., or as soon thereafter as this matter may be heard in the Courtroom of the Honorable George H. Wu of the above-titled Court, located at 350 West First Street, 9th Floor, Los Angeles, California 90012, Plaintiffs will move the Court for a case management order regarding foreign deponents.

This motion is based on the Notice of Motion, the Memorandum of Points and Authorities in support thereof, the Declaration of Christopher L. Springer, the pleadings and records on file in this action, and such further evidence and argument that may be presented at the hearing for this motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on May 29, 2026.

DATED this 18th day of June, 2026.

KELLER ROHRBACK L.L.P.

By /s/ Derek W. Loeser
      Derek W. Loeser (*pro hac vice*)
      dloeser@kellerrohrback.com
      Cari Campen Laufenberg (*pro hac vice*)
      claufenberg@kellerrohrback.com
      1201 Third Avenue, Suite 3400
      Seattle, WA 98101
      (206) 623-1900, Fax (206) 623-3384

      *Interim Lead Counsel*

COHEN MILSTEIN SELLERS AND TOLL PLLC

By: /s/ Eric A. Kafka
      Eric A. Kafka (*pro hac vice*)
      ekafka@cohenmilstein.com
      Cohen Milstein Sellers and Toll PLLC
      88 Pine Street, 14th Floor

i

New York, NY 10005
212-838-7797
212-838-7745 (fax)

*Interim Lead Counsel*

SILVER GOLUB & TEITELL LLP

Steven L. Bloch (*pro hac vice*)
sbloch@sgtlaw.com
One Landmark Square, 15th Floor
Stamford, CT 06901
(203) 325-4491

*Executive Committee*

ii

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................2

II.     BACKGROUND .............................................................................................3

    A.     TikTok's Global Operations.................................................................3

    B.     Procedural History ...............................................................................5

        1.   Plaintiffs Raised the Issue in the Joint 26(f) Report, and the
           Court Ordered the Parties to Meet and Confer. ...........................5

        2.   TikTok Delays and Refuses to Engage on the Issue. .....................6

        3.   The Parties Meet and Confer, But There Is No Agreement, Thus
           Necessitating the Court's Intervention. ..........................................8

III.    LEGAL STANDARD........................................................................................9

IV.     ARGUMENT...................................................................................................10

    A.     The Federal Rules Presumptively Govern the Depositions of
        High-Level Employees and TikTok Cannot Meet its Burden to
        Apply the Hague Conventions. ..........................................................11

        1.   The importance of the discovery requested to the litigation. ........13

        2.   The degree of specificity of the request.......................................14

        3.   Whether the information originated in the United States..............15

        4.   The unavailability of alternative means of securing the
           information. ..................................................................................15

        5.   The balance of national interests of the United States outweigh
           those of foreign states. ................................................................17

        6.   Extent and nature of the hardship to the responding party. ...........19

        7.   Extent to which compliance can be expected. .............................19

    B.     Plaintiffs' Disclosure Procedure is Necessary and Reasonable..........20

    C.     Plaintiffs' Proposed Provisions Governing the Translation and
        Interpretation of Depositions are Appropriate and Uncontested. .......21

V.      CONCLUSION ..............................................................................................22

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Actos Antitrust Litig.*,
639 F. Supp. 3d 453 (S.D.N.Y. Nov. 5, 2022) ...................................................20

*Botell v. United States*,
2013 WL 360410 (E.D. Cal. Jan. 29, 2013) .......................................................10

*Cabinets To Go, LLC v. Qingdao Haiyan Real Est. Grp. Co.*,
2023 WL 3922640 (M.D. Tenn. May 30, 2023) ............................................9, 16

*Calderon v. Experian Info. Sols., Inc.*,
287 F.R.D. 629 (D. Idaho 2012), *aff'd*, 290 F.R.D. 508 (D. Idaho 2013)..........17

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
2014 WL 5462496 (N.D. Cal. Oct. 23, 2014) ...................................................13

*Connex R.R. LLC v. AXA Corp. Sols. Assurance*,
2017 WL 3433542 (C.D. Cal. Feb. 22, 2017) .................................................8, 19

*Crawford-El v. Britton*,
523 U.S. 574 (1998)...............................................................................................9

*Faigin v. Kelly*,
184 F.3d 67 (1st Cir. 1999).................................................................................20

*Feindt v. United States*,
2024 WL 5344431 (D. Haw. July 17, 2024) .......................................................9

*Glob. Music Rights, LLC v. Radio Music License Comm., Inc.*,
2020 WL 10692695 (C.D. Cal. Aug. 3, 2020) ...................................................10

*Inventus Power v. Shenzhen Ace Battery*,
339 F.R.D. 487 (N.D. Ill. 2021).....................................................................*passim*

*Loops LLC v. Phoenix Trading, Inc.*,
2010 WL 786030 (W.D. Wash. Mar. 4, 2010)...................................................13

*McKesson Corp. v. Islamic Republic of Iran*,
185 F.R.D. 70 (D.D.C. 1999).............................................................................17

*MGI Digit. Tech. S.A. v. Duplo U.S.A. Corp.*,
2023 WL 6814579 (C.D. Cal. Aug. 24, 2023) ..............................................14, 18

*Munoz v. China Expert Tech., Inc.*,
2011 WL 5346323 (S.D.N.Y. Nov. 7, 2011)..................................................9, 13

*Perceptix Techs. LLC v. Meta Platforms, Inc.*,
2026 WL 413589 (C.D. Cal. Feb. 10, 2026) ......................................................11

*In re Photochromic Lens Antitrust Litig.*,
2012 WL 12904331 (M.D. Fla. May 2, 2012) ....................................................14

*Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLP*,
2017 WL 4287205 (N.D. Ill. Sep. 27, 2017) ....................................................17

*Richmark Corp. v. Timber Falling Consultants*,
959 F.2d 1468 (9th Cir. 1992) ...............................................................*passim*

*Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. S.D. Iowa*,
482 U.S. 522 (1987)...............................................................................*passim*

*Swapalease, Inc. v. Sublease Exchange.com, Inc.*,
2008 WL 11355018 (S.D. Ohio Sep. 19, 2008) ..................................................14

*U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*,
641 F.3d 1126 (9th Cir. 2011) ........................................................................8

*Wang v. Hull*,
2020 WL 4734930 (W.D. Wash. June 22, 2020) ...............................................17

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*,
2023 WL 7726411 (N.D. Cal. Nov. 15, 2023) ...................................................14

*Wu v. Sushi Nomado of Manhattan, Inc.*,
2021 WL 7186735 (S.D.N.Y. Oct. 29, 2021).....................................................17

*Wultz v. Bank of China Ltd.*,
910 F. Supp. 2d 548 (S.D.N.Y. 2012) .........................................................15, 18

*Yowie N. Am., Inc. v. Candy Treasure, LLC*,
2013 WL 6061945 (S.D. Cal. Nov. 14, 2013).....................................................10

**Rules**

Fed. R. Civ. P. 16 ...........................................................................................8

iii

Fed. R. Civ. P. 30 ...............................................................................................9, 10, 11, 19

Fed. R. Civ. P. 37 .............................................................................................................19

**Other Authorities**

Am. Bar Ass'n, Int'l Litig. Comm., Section of Int'l L. & Prac., *Report on Survey of Experience of U.S. Lawyers with the Hague Evidence Convention Letter of Request Procedures* ("ABA Report") .............................15

## I.    INTRODUCTION

TikTok[1] is a global company with employees who reside around the world. Many employees who live abroad work on the platform directed to users in the United States. Plaintiffs anticipate they will need to depose some of these individuals on critical topics, such as what TikTok knew and when about the underage users on its platform; the data it collects from underage users; its age gate; its recommendation algorithms, including recommendations pertaining to child-directed content; and its content moderation policies.

The challenge is that Plaintiffs do not yet know the identity of every one of these individuals and may not know until they have an opportunity to review the documents TikTok is required to produce by September 11, 2026. The parties and the Court will have just three months between then and when Plaintiffs must move for class certification in December to resolve any disputes *and* take the depositions of foreign residents, among others.

To minimize the burdens on the parties, the Court, and the witnesses, Plaintiffs proposed a straightforward protocol to address the law that would govern such depositions, their location, interpretation, and translation. Specifically, Plaintiffs proposed TikTok agree that the Federal Rules govern the depositions of its directors, officers, and managing agents, without resorting to the procedures set forth in the Hague Service Convention or the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters (collectively, the "**Hague Conventions**"). For other employees or former employees, Plaintiffs proposed a disclosure process by which TikTok has a finite amount of time to decide whether to invoke the Hague Conventions after Plaintiffs identify the prospective deponent(s). TikTok refuses and, instead, insists it will confer only regarding specific individuals. That piecemeal process is inefficient, unnecessary, and could leave Plaintiffs unable to obtain critical testimony before class

---

[1] "**TikTok**" refers to Defendants ByteDance Ltd.; ByteDance, Inc.; TikTok Inc.; TikTok LLC; TikTok Ltd.; TikTok Pte. Ltd.; and TikTok U.S. Data Security Inc.

certification. Therefore, Plaintiffs move the Court to enter the [Proposed] Case Management Order prescribing the procedures for deposing witnesses who reside abroad.

## II.   BACKGROUND

### A.   TikTok's Global Operations.

By its own admission, TikTok conducts operations around the world.



Plaintiffs have further reasons to believe that information from foreign residents

---

[2] Declaration of Christopher L. Springer in Support of Plaintiffs' Motion for Case Management Order re Foreign Deponents ("**Springer Decl.**"), Ex. 6 (TTI-AG-LIT-004805444).

[3] *Id.*

[4] *Id.* at TTI-AG-LIT-004805445.

[5] Springer Decl., Ex. 7 (TTI-AG-LIT-011985568) at slide 2.

[6] *See* Springer Decl., Ex. 8 (TTI-AG-LIT-009720270) at 274.

[7] Springer Decl., Ex. 9 (TTI-AG-LIT-011164017) at slide 5.

[8] Springer Decl., Ex. 10 (TTI-AG-LIT-011222943) at slide 8.

[9] *See* Springer Decl., Ex. 8 at TTI-AG-LIT-009720277.

2

will be essential in this action. First, discovery produced thus far already indicates that key individuals with relevant information are located outside the United States.



Second, key TikTok witnesses in the Social Media Addiction litigation were located abroad and ultimately deposed, providing pivotal information for that litigation. These witnesses included Julie De Bailliencourt, TikTok's former Head of Product Policy, EMEA, from April 2020 to July 2021, and former Global Head of Product Policy from June 2021 to June 2024, who was deposed in Ireland;[13] Yue Fu, team lead providing training data for ByteDance's self-developed large language model ("LLM"), who was deposed in Singapore;[14] Cormac Keenan, former Global Head of Trust and

_____

[10] *See* Springer Decl., Ex. 11 (TIKTOK-0072151) (███████████████ ███████████).

[11] *See* Springer Decl., Ex. 12 (TTI-AG-LIT-011088520) (███████████ ████████████████ ████████████).

[12] *See* Springer Decl., Ex. 13 (TIKTOK-0070048) (███████████████ ████████████████).

[13] *See* Springer Decl., Ex. 14 (excerpt de Bailliencourt Dep., Mar. 27, 2025, Plaintiffs' Opposition to Motion for Summary Judgment, *In Re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.* ("*Social Media MDL*"), No. 4:22-md-03047-YGR, ECF No. 2877-3) at 2, 10.

[14] *See* Springer Decl., Ex. 15 (excerpt Fu Dep., May 21, 2025, *Social Media MDL*, ECF No. 2877-48) at 2, 4.

Safety, who was deposed in Ireland;[15] Rosie King, former Community Moderator and Head of Trust and Safety, who was deposed in England;[16] and Wenjia Zhu, former CEO of Toutiao (TikTok's news aggregator) and leader of TikTok's product and recommendation team, who was deposed in Singapore.[17] The global sweep of these witnesses demonstrates that important decisions affecting users in the United States are made around the world.

At TikTok's insistence, Plaintiffs sent TikTok a list of potential deponents they have identified to date whom they believe to reside abroad.[18] As made clear to TikTok, the list is not complete as discovery is ongoing, nor is a complete list necessary for the negotiation of a protocol since the protocol would apply generally to all foreign deponents.

**B.      Procedural History**

      **1.      Plaintiffs Raised the Issue in the Joint 26(f) Report, and the Court Ordered the Parties to Meet and Confer.**

On March 9, 2026, the Parties filed their Joint Rule 26(f) Report.[19] Plaintiffs informed the Court that "efficient progression of discovery in this case necessitates" a protocol to address the depositions of foreign residents.[20] Plaintiffs explained that "[r]equiring Plaintiffs to comply with the Hague Convention . . . will potentially cause substantial delays in discovery given that current service timelines for Ireland and Singapore . . . range from 4 to 18 months and 3 to 8 months, respectively," and that a

---

[15] *See* Springer Decl., Ex. 16 (excerpt Keenan Dep., Mar. 24, 2025, *Social Media MDL*, ECF No. 2877-2) at 2, 4.

[16] *See* Springer Decl., Ex. 17 (excerpt King Dep., Apr. 29, 2025, *Social Media MDL*, ECF No. 2875-66) at 2, 9–10.

[17] *See* Springer Decl., Ex. 18 (excerpt of Zhu Dep., May 24, 2025, *Social Media MDL*, ECF No. 2875-21) at 2, 31–32.

[18] Springer Decl., Ex. 5 (potential deponents believed to reside outside the U.S., as of June 10, 2026).

[19] ECF No. 187.

[20] *Id.* at 4.

protocol was necessary to maintain the Parties' proposed case schedule.[21] The Court subsequently adopted that schedule.[22] TikTok nonetheless dismissed Plaintiffs' request for a protocol as "premature and overbroad."[23]

On March 13, 2026, the Court held a status conference where it discussed the Hague Convention issues with the parties.[24] Plaintiffs noted that "[t]he reason why the parties normally work out and around the Hague issues on service, [is that] it takes so many months, like eight months in some places just to serve the document."[25] Plaintiffs also noted that "[i]n [the] social media [addiction] litigation, the parties stipulated to procedures, so they didn't have to wait. That's what we would like to do."[26] The Court responded, "In that case, pitch that here and we will see what happens."[27] Ultimately, the Court ordered the Parties "to meet and confer in an effort to resolve the Hague Convention issues."[28]

**2.    TikTok Delays and Refuses to Engage on the Issue.**

On March 19, 2026, Plaintiffs reminded TikTok that "the parties must also meet and confer on the Hague Convention" and stated that "Plaintiffs will follow up regarding that shortly."[29] On March 25, Plaintiffs proposed times for the Parties to meet and confer.[30] Having received no response from TikTok to either email, on March 28, Plaintiffs again requested a meet-and-confer.[31] On March 30, TikTok announced its refusal to meet and confer as the Court had ordered.[32] Instead, TikTok stated that it

---

[21] *Id.*
[22] ECF No. 191 at 2.
[23] ECF No. 187 at 8.
[24] Springer Decl., Ex. 1 (excerpt of Hr'g Tr., Mar. 13, 2026), at 28:15–30:18.
[25] *Id.* at 29:22–24.
[26] *Id.* at 30:13–15; *see* Plaintiffs' & the TikTok Defendants' Stipulated Translation Protocol, *Social Media MDL*, ECF No. 1268.
[27] Springer Decl., Ex. 1 at 30:16–17.
[28] ECF No. 191 at 1.
[29] Springer Decl., Ex. 2 at 3.
[30] *Id.* at 2.
[31] *Id.* at 1–2.
[32] *Id.* at 1.

would meet only "once Plaintiffs have identified deposition targets and Defendants can assess the propriety of those targets and their locations"—a prerequisite that was not imposed or endorsed by the Court.[33]

To encourage TikTok's compliance with the Court's directive, Plaintiffs drafted a proposed protocol for deposing individuals who reside outside of the United States and shared it with TikTok for its consideration.[34] The proposed stipulation also included common sense provisions to govern the translation of exhibits; interpretation, when needed; and the location of the depositions, if they are not permitted where the deponent resides.[35] Many of those provisions were adapted from a similar protocol TikTok agreed to in the Social Media Addiction litigation. *See Social Media MDL*, ECF No. 1268 (N.D. Cal. Oct. 24, 2024). Plaintiffs followed up with TikTok after hearing nothing for more than a week and invited a discussion.[36] TikTok finally responded to those overtures on May 22, only to reaffirm its refusal to discuss the Hague Convention without a list of potential deponents.[37] On May 25, Plaintiffs explained that "[w]e cannot litigate the depositions of foreign residents in piecemeal fashion," because "[t]here isn't time for it in the case schedule[.]"[38] On May 28, Plaintiffs pointed out that the parties are still negotiating search terms and custodians.[39] Plaintiffs went on to explain that if they proceeded in that fashion:

> Plaintiffs would be forced to identify every foreign resident they may wish to depose on a rolling basis or risk running out of time to resolve any disputes and depose them. That would result in the parties negotiating and possibly litigating the propriety of deposing each of the tens if not dozens of individuals Plaintiffs may identify, some of whom Plaintiffs may

---

[33] *Id.*

[34] Springer Decl., Ex. 4 at 10, Ex. 3 (Proposed Stipulation).

[35] Springer Decl., Ex. 3 §§ II, III.

[36] Springer Decl., Ex. 4 at 9–10.

[37] *Id.* at 9.

[38] *Id.* at 8–9.

[39] *Id.* at 6–7.

ultimately elect not to depose. That's inefficient and consumes party and Court resources without providing a durable solution.[40]

TikTok finally acquiesced to Plaintiffs' request to meet-and-confer that week.[41]

### 3. The Parties Meet and Confer, But There Is No Agreement, Thus Necessitating the Court's Intervention.

On May 29, 2026, the Parties met and conferred by video conference.[42] While TikTok reiterated its desire for a list of specific out-of-country deponents, Plaintiffs explained in detail why any such list would necessarily be incomplete at this time and how proceeding in that piecemeal fashion would be inefficient and unnecessary.[43] The Parties discussed and Plaintiffs followed up via email regarding potential compromises: TikTok would agree to waive the Hague Conventions for certain categories of individuals (e.g., directors, officers, and managing agents) and for others, Plaintiffs would disclose those individuals they wished to depose and TikTok would have a limited time (e.g., a week) to either waive or invoke the Hague Conventions.[44]

Plaintiffs also offered during the meet-and-confer and in correspondence to discuss the other provisions of the protocol, "such as those addressing the notice, service, interpretation, translation, and location of foreign resident depositions."[45] TikTok demurred and Plaintiffs later confirmed that "TikTok has raised only an issue with the provisions concerning the application of the Hague Conventions."[46]

On June 4, 2026, TikTok rejected Plaintiffs' compromise proposal for addressing the applicability of the Hague Conventions.[47] TikTok indicated Plaintiffs should instead "identify all *potential* deponents they have identified," and it would "review Plaintiffs'

---

[40] Springer Decl., Ex. 4 at 7.

[41] *See id.* at 6.

[42] Springer Decl. ¶ 7.

[43] *See* Springer Decl., Ex. 4 at 6.

[44] Springer Decl. ¶ 7, Ex. 4 at 6.

[45] Springer Decl. ¶ 8, Ex. 4 at 6.

[46] Springer Decl. ¶ 8, Ex. 4 at 6.

[47] Springer Decl., Ex. 4 at 4–5.

narrowed list and promptly meet and confer, including on whether Defendants will invoke any applicable Hague Convention protocols for deponents Plaintiffs identify."[48]

Plaintiffs sent TikTok a list of potential deponents "in the interest of narrowing any disputes later," while also reiterating it was not exhaustive and could not be at this stage.[49] TikTok then repudiated its offer, complaining the list was overinclusive and incomplete, just as Plaintiffs had repeatedly warned TikTok it would have to be.[50]

Plaintiffs, having sought to collaborate with TikTok on a practical solution for months, only to have the goal posts moved once again, informed TikTok that Plaintiffs could not and would not wait any longer and would seek relief from the Court, consistent with the Court's guidance.[51]

## III.    LEGAL STANDARD

The Court possesses broad discretion to manage discovery and oversee the course of pretrial litigation. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion.") (citation omitted). When enumerating the test for whether to resort to the Hague Conventions, the Supreme Court "emphasized that the district court has *complete* discretion to determine the most appropriate manner of producing evidence in the case before it." *Connex R.R. LLC v. AXA Corp. Sols. Assurance*, 2017 WL 3433542, at *11 (C.D. Cal. Feb. 22, 2017) (emphasis added) (citation omitted).

"Federal Rule of Civil Procedure 16 gives courts broad discretion to take appropriate action on, among other things, (1) 'controlling and scheduling discovery,'

---

[48] *Id.* at 5 (emphasis added).

[49] Springer Decl., Ex. 4 at 3, Ex. 5.

[50] Springer Decl., Ex. 4 at 1; *see also id.* at 7 (warning that "negotiating and possibly litigating the propriety of deposing each of the tens if not dozens of individuals Plaintiffs may identify, some of whom Plaintiffs may ultimately elect not to depose" would be "inefficient . . . without providing a durable solution").

[51] Springer Decl., Ex. 19 at 1, Ex. 1 at 29:10 ("If you can't resolve it, then come back to me[.]").

(2) 'adopting special procedures for managing potentially difficult or protracted actions' that may involve multiple parties, and (3) 'facilitating in other ways the just, speedy, and inexpensive disposition of the action.' " *Feindt v. United States*, 2024 WL 5344431, at *1 (D. Haw. July 17, 2024); *see also Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"). Requests to manage discovery, including deposition protocols, should be "reasonable and proportionate" to the needs of the case, consistent with prior court orders governing discovery and depositions, and provide built-in flexibility to permit parties to seek relief when circumstances require it. *Feindt*, 2024 WL 5344431, at *2.

## IV.    ARGUMENT

Plaintiffs respectfully request the Court enter an order governing the depositions of foreign residents. Plaintiffs move for an order that would require the depositions of TikTok's directors, officers, and managing agents ("**High-Level Employees**") to proceed under the Federal Rules, without application of the Hague Conventions, and consistent with the caselaw. *See, e.g.*, *Inventus Power v. Shenzhen Ace Battery*, 339 F.R.D. 487, 501–06 (N.D. Ill. 2021) (concluding Federal Rules should apply and compelling depositions of managing agents); *Munoz v. China Expert Tech., Inc.*, 2011 WL 5346323, at *3 (S.D.N.Y. Nov. 7, 2011) (adopting order requiring residents of China, other than third parties, to be deposed "according to the laws and practices of the Federal Rules of Civil Procedure and Local Rules of Court"); *Cabinets To Go, LLC v. Qingdao Haiyan Real Est. Grp. Co.*, 2023 WL 3922640, at *3–6 (M.D. Tenn. May 30, 2023) (finding Federal Rules should apply to deposition of defendant's employee).

Plaintiffs propose a simple disclosure process for TikTok's lower-level employees and former employees not subject to deposition under Rule 30 ("**Other Foreign Deponents**"). Under that process, Plaintiffs would disclose the names of potential deponents to TikTok. Within seven days, counsel for Defendants would confirm whether they represent the Other Foreign Deponent and will accept service of a

9

subpoena or invoke the application of the Hague Conventions. The parties may ultimately dispute whether the Hague Conventions apply, but that is not at issue here.[52] The protocol aims only to describe the process and timing for the parties to identify disputes so that they can raise them with the Court or comply with the Conventions.

Plaintiffs also ask the Court to adopt common sense provisions governing the location of foreign resident depositions, the translation of exhibits, and the interpretation of testimony, including the time needed to accommodate said interpretation. TikTok stipulated to similar provisions in the Social Media Addiction litigation and has not raised any dispute with the provisions Plaintiffs propose here.

**A.    The Federal Rules Presumptively Govern the Depositions of High-Level Employees and TikTok Cannot Meet its Burden to Apply the Hague Conventions.**

"Generally, when one party to a U.S. federal litigation seeks evidence from another party, the Federal Rules of Civil Procedure govern, even when the evidence is located in a foreign jurisdiction." Fed. Judicial Ctr., Discovery in International Civil Litigation: A Guide for Judges (2015); *see also Yowie N. Am., Inc. v. Candy Treasure, LLC*, 2013 WL 6061945, at *1 (S.D. Cal. Nov. 14, 2013) ("The Federal Rules are the

_____

[52] Plaintiffs anticipate that the parties might disagree as to whether certain High-Level Employees are "managing agents" under Rule 30(b)(1). The law is clear that for purposes of Rule 30(b)(1), an individual may be considered a managing agent and subject to a deposition so long as they "retain[] some role in the corporation or at least maintain[] interests consonant with rather than adverse to its interests[]" even where those individuals no longer hold a position of authority or exercise authority over the actions at issue. *Glob. Music Rights, LLC v. Radio Music License Comm., Inc.*, 2020 WL 10692695, at *3 (C.D. Cal. Aug. 3, 2020) (quoting *Founding Church of Scientology of Washington, D.C., Inc. v. Webster*, 802 F.2d 1448, 1456 (D.C. Cir. 1986)); *see also Botell v. United States*, 2013 WL 360410, at *6 (E.D. Cal. Jan. 29, 2013) (even where a witness "may not be a higher-up managing agent in the course of his everyday duties for defendant, he is a managing agent for the purpose of providing testimony regarding [subject matter] which is extremely relevant to this litigation"). Whether Rule 30(b)(1) applies to a particular witness is not the issue before the Court and can be addressed if there is a dispute about whether a particular individual is a High-Level Employee.

10

'normal method[] for federal litigation involving foreign national parties[.]' ") (quoting *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 300 (3d Cir. 2004)); *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. S.D. Iowa*, 482 U.S. 522, 524, 541–43 (1987) (holding the Hague Convention is not a rule of first resort). Under Federal Rule 30, High-Level Employees are subject to deposition by notice. *Inventus Power*, 339 F.R.D. at 507–08 ("a party may compel a corporate officer, director, or managing agent to give testimony pursuant to a notice of deposition").

The Hague Convention procedures are supplemental, optional, and the party invoking them bears the burden to demonstrate they apply. The "text of the [Hague] Evidence Convention, as well as the history of its proposal and ratification by the United States, unambiguously supports the conclusion that it was intended to establish optional procedures that would facilitate the taking of evidence abroad." *Société Nationale*, 482 U.S. at 538. The party invoking the Hague Convention procedures bears the burden of demonstrating they apply in lieu of the Federal Rules. *Perceptix Techs. LLC v. Meta Platforms, Inc.*, 2026 WL 413589, at *2 (C.D. Cal. Feb. 10, 2026) .

Whether the principles of international comity require the application of the Hague Conventions depends upon the particular facts of a case, including the intrusiveness of discovery requests, sovereign interests, and likelihood that employing those procedures would effectively yield relevant discovery balanced against the danger of unnecessary or unduly burdensome discovery to foreign litigants. *Société Nationale*, 482 U.S. at 544–46. The Supreme Court enumerated the following non-exhaustive factors for courts to consider in employing the comity analysis:

1. the importance to the . . . litigation of the documents or other information requested;
2. the degree of specificity of the request;
3. whether the information originated in the United States;
4. the availability of alternative means of securing the information; and
5. the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Id.* at 544 n.28.

The Ninth Circuit analyzes two additional factors: "the extent and the nature of the hardship that inconsistent enforcement would impose upon the person, . . . [and] the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992) (citation modified) (citation omitted). "Ultimately, district courts have complete discretion in resolving conflicts between the application of the Federal Rules and the Hague Convention." *Inventus Power*, 339 F.R.D. at 498 (citation modified) (citation omitted).

The comity factors here overwhelmingly weigh in favor of proceeding under the Federal Rules because the depositions of High-Level Employees are crucial to this litigation; the knowledge they possess is derived from or concerns underage users in the United States; American interests in vindicating those users' rights outweigh any speculative interest of other sovereigns; there is no other practical means to obtain this testimony under the case schedule; and TikTok has not suggested it would refuse to comply if the Court adopted the proposed order or proffered evidence that it would suffer any hardship if compelled to comply.

### 1. The importance of the discovery requested to the litigation.

"Where the evidence is directly relevant" to the outcome of litigation, courts weigh this factor in favor of the Federal Rules. *Richmark*, 959 F.2d at 1475. The testimony of TikTok's High-Level Employees is at the crux of this case.

Plaintiffs need to be able to depose witnesses who made decisions or were responsible for age gating and age assurance, algorithm recommendations, including recommendations pertaining to child-directed content, content moderation, or who knew or should have known TikTok was collecting data from underage users. *See, e.g.*, Springer Decl., Ex. 18 at 44:6–45:16, 47:8–48:17 (overseeing and leading TikTok's global product and technologies, including in the United States, from Singapore); Ex. 14 at 42:15–43:18; 250:7–255:12 (duties as Ireland-based global head of product policy

12

including content moderation in the United States); Ex. 17 at 19:21–24:22; 56:7–58:3 (describing role as United Kingdom-based community guidelines and content moderator, including United States content and minor users); *also supra* § II.A (describing other areas of important testimony, including Defendants' collection and use of data in the Full Access Platform versus Kids Mode, the efficacy of Defendants' age-gate, and decision-making related to tools and measures used or not used to restrict underage users' access to the Full Access Platform and certain content).

Courts routinely weigh this factor in favor of applying the Federal Rules when the depositions are anticipated to have information similarly at the center of a case. *See e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 5462496, at *1, *5 (N.D. Cal. Oct. 23, 2014) (holding Federal Rules applied to depositions of four former employees in France who were identified as potential participants in meetings related to alleged price-fixing conspiracy); *Munoz*, 2011 WL 5346323, at *3 (order applying Federal Rules to deposition of party's employees who resided in China); *Loops LLC v. Phoenix Trading, Inc.*, 2010 WL 786030, at *3–4 (W.D. Wash. Mar. 4, 2010) (declining to apply Convention procedures to deposition of witness who was "key point of contact" and resided in China). Given the vital nature of this discovery, the first factor weighs heavily in favor of allowing the depositions to proceed under the Federal Rules.

**2.      The degree of specificity of the request.**

The second factor prescribed by *Société Nationale*, the specificity of the request, is not at issue here. The factor is aimed at evaluating "how burdensome it will be to respond" to the request. *Richmark*, 959 F.2d at 1475. Unlike the "[g]eneralized searches for information" *Richmark* "discouraged," TikTok will not have to guess at what information is being sought; Plaintiffs will specify the individuals they intend to depose (once they have had an opportunity to make that determination). *Id.* There is no reason to believe the depositions of these High-Level Employees will be any more burdensome than other depositions. On the contrary, Plaintiffs have proposed this protocol to minimize the burden on all and remain willing to confer to further reduce any burden,

including the location of the deposition. As such, this factor weighs in favor of applying the Federal Rules. *Inventus Power*, 339 F.R.D. at 502 (collecting cases applying Federal Rules where requests, including "depositions are appropriately tailored" to the scope of discovery). At worst, this is a nonfactor because TikTok has not asserted any burden. *Richmark*, 959 F.2d at 1475 (finding factor does not favor application of the Hague Convention when party did not make burden an issue); *MGI Digit. Tech. S.A. v. Duplo U.S.A. Corp.*, 2023 WL 6814579, at *4 (C.D. Cal. Aug. 24, 2023) (same).

### 3.   Whether the information originated in the United States.

Plaintiffs seek to depose individuals who reside abroad. Some courts have interpreted this factor to refer to where the testimony is given. *See, e.g.*, *Swapalease, Inc. v. Sublease Exchange.com, Inc.*, 2008 WL 11355018, at *4 (S.D. Ohio Sep. 19, 2008) (finding an Argentine's "testimony obviously originates in Argentina"). Other courts have looked at where the information was derived from. *See, e.g.*, *In re Photochromic Lens Antitrust Litig.*, 2012 WL 12904331, at *3 (M.D. Fla. May 2, 2012) (compelling a French citizen to be deposed in the U.S. under the Federal Rules because his "information originated in the United States"). Plaintiffs seek deposition testimony about what information TikTok collects from underage users in the United States, how it gathers and use that information, what it knows about those users, and the decision-making related to tools and measures used or not used to restrict said underage users' access to the Full Access Platform and certain child-directed content. Under the latter standard, the information Plaintiffs seek necessarily originates in the United States. Under the former, the information could be construed to originate abroad, but that is not dispositive. *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 2023 WL 7726411, at *5 (N.D. Cal. Nov. 15, 2023) (agreeing that foreign origin of discovery is not a bar).

### 4.   The unavailability of alternative means of securing the information.

The inability to secure this information through alternative means under the current case schedule—if ever—weighs heavily in favor of applying the Federal Rules to the depositions of Defendants' High-Level Employees.

14

"The U.S. Supreme Court has recognized that where the Hague Convention process 'would be unduly time consuming and expensive,' requiring the parties to submit to the process is inconsistent with the 'overriding interest in the just, speedy, and inexpensive determination' of litigation in our courts." *Wultz v. Bank of China Ltd.*, 910 F. Supp. 2d 548, 558 (S.D.N.Y. 2012) (quoting *Société Nationale*, 482 U.S. at 542–43). "In other words," as *Wultz* explained, "the ease of obtaining documents through the Hague Convention process is relevant to this Court's analysis of the 'alternative means' factor." 910 F. Supp. 2d at 558 (citation omitted). If "the information cannot be *easily obtained* through alternative means, this factor is said to counterbalance the previous factor—the location of the documents and information[.]" *Wultz*, 910 F. Supp. 2d at 558 (citation omitted). Courts find this factor weighs against applying the Hague Convention procedures when they would "not serve as an effective or timely alternative method for discovery in [a] case." *Inventus Power*, 339 F.R.D. at 503.

The Hague Convention procedures are not a practical solution here. Plaintiffs must move for class certification in less than six months. ECF No. 191 at 2. Yet, the parties have not agreed on custodians and document production—through which Plaintiffs expect to identify other potential deponents—will not be finished for months. *Id*. An empirical survey of the Hague Convention deposition requests found more than 87% took more than two months to fulfill, and that was in 2003. *See* Am. Bar Ass'n, Int'l Litig. Comm., Section of Int'l L. & Prac., *Report on Survey of Experience of U.S. Lawyers with the Hague Evidence Convention Letter of Request Procedures* ("ABA Report"), at 10–11, n.16, U.S. Dep't of State (Oct. 9, 2003), https://assets.hcch.net/docs/be59770a-4eec-4c58-ad36-11d9f5734fdd.pdf. As of last year, the execution of requests in China, where many of TikTok's employees reside, took 6–12 months.[53] That is merely to process the request. As one court observed, "in more than 30 years under the Consular Convention and 13 years under the Hague

---

[53] *China – Central Authority (Art. 2) and practical information*, HCCH, https://www.hcch.net/en/states/authorities/details3/?aid=490 (Nov. 5, 2025).

Convention, China has granted permission for a deposition on only one occasion." *Inventus Power*, 339 F.R.D. at 503 (citation omitted).

Plaintiffs do not have months to wait to depose key witnesses under the current case deadlines and may never be able to depose said witness through the Hague Conventions. The lack of feasible alternative means for Plaintiffs to gain information known exclusively by Defendants' High-Level Employees weighs in favor of employing the Federal Rules in this case.

**5.     The balance of national interests of the United States outweigh those of foreign states.**

The balancing of national interests similarly weighs in favor of applying the Federal Rules. Foreign state interests may be indicated by "expressions of interest by the foreign state," "the significance of disclosure in the regulation. . . of the activity in question," and "indications of the foreign state's concern for confidentiality prior to the controversy." *Richmark*, 959 F.2d at 1476 (quoting Restatement (Third) of Foreign Relations Law § 442 cmt. c (Am. Law Inst. 1987)) (citation modified). To Plaintiffs' knowledge, there has been no interest expressed by any foreign state authorities regarding this litigation. *Cf. Richmark*, 959 F.2d at 1476–77 (finding balance weighed in favor of disclosure despite People's Republic of China State Secrecy Bureau directly expressing an interest in the outcome of the litigation). As such, any concern would be speculative and outweighed by the United States' interests. *See, e.g.*, *Cabinets To Go*, 2023 WL 3922640, at *6 (ordering the deposition in the United States of a Chinese national and resident after finding China's general "interest in preventing citizens from 'potentially' violating a Chinese law" to be speculative and outweighed by the United States' interests "in securing just, speedy, and inexpensive determinations of all actions").

Contrary to the speculative interests of others, if any, the United States has a substantial interest in protecting the privacy of American children that significantly outweighs any foreign interests, including but not limited to the People's Republic of

16

China and Singapore.[54] The "United States' interests in vindicating the rights of American plaintiffs," such as those of the minor children in this litigation, has been described as "substantial," *Richmark*, 959 F.2d at 1477 (citation omitted), and there is an "overriding interest in the just, speedy, and inexpensive determination of litigation in [its] courts." *Société Nationale*, 482 U.S. at 542–43 (citation modified) (citation omitted); *see also Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLP*, 2017 WL 4287205, at *5 (N.D. Ill. Sep. 27, 2017) ("[T]he courts of the United States undoubtedly have a vital interest in providing a forum for the final resolution of disputes[.]") (citation omitted); *see also Calderon v. Experian Info. Sols., Inc.*, 287 F.R.D. 629, 635 (D. Idaho 2012), *aff'd*, 290 F.R.D. 508 (D. Idaho 2013) (finding U.S. interests prevailed in a dispute concerning laws "designed to protect the rights of consumers doing business in the United States"). In the absence of any identified interests of another sovereign that will be hurt, "the interests of the United States must prevail." *Richmark*, 959 F.2d at 1477.

Plaintiffs anticipate TikTok may argue Chinese law prohibits attorneys from taking depositions in China for use in foreign courts. Courts routinely "order a party subject to its jurisdiction to proceed with discovery," notwithstanding such prohibitions. *Wu v. Sushi Nomado of Manhattan, Inc.*, 2021 WL 7186735, at *9 (S.D.N.Y. Oct. 29, 2021), *report and recommendation adopted in part*, 2022 WL 597280 (S.D.N.Y. Feb. 28, 2022) (collecting cases). Further, Plaintiffs' proposal to depose deponents in a location that permits the application of the Federal Rules avoids any infringement on Chinese or another country's sovereignty. *See Wu*, 2021 WL 7186735, at *7–12 (ordering remote deposition of plaintiff from mainland China or elsewhere after weighing the *Société Nationale* factors which included, among other things, plaintiff's refusal to comply with a U.S. discovery order); *Wang v. Hull*, 2020 WL 4734930, at *1–2 (W.D. Wash. June 22, 2020) (concluding Chinese law prohibited remote deposition

---

[54] There is no need to analyze the interests of Ireland, where some of TikTok's employees reside, because it is not a signatory to the Hague Convention. *See McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 78–79 (D.D.C. 1999).

from mainland China and ordering virtual deposition from location other than mainland China upon removal of coronavirus travel restrictions).

### 6. Extent and nature of the hardship to the responding party.

"The effect that a discovery order is likely to have on the foreign company is another factor to be considered." *Richmark*, 959 F.2d at 1477. However, if the hardship is self-imposed, or if it could have been avoided, the fact that an entity or person finds themself in an undesirable position will not weigh against application of the Federal Rules. *MGI Digit. Tech. S.A.*, 2023 WL 6814579, at *5.

Here, there is no basis to believe TikTok or its High-Level Employees will face any significant hardship if compelled to sit for depositions in their country of residence, or at some other lawful agreed-upon location, in accordance with the Federal Rules. TikTok may argue that depositions may expose them or their High-Level Employees to sanctions if doing so could violate a local law. First, courts do not countenance such speculation. *See, e.g.*, *Wultz*, 910 F. Supp. 2d at 559 (rejecting argument where there was "no evidence that [the party] has been meaningfully sanctioned by the Chinese government for complying with the two previous U.S. court orders to produce documents in contravention of China's bank secrecy laws"); *MGI Digital Tech. S.A.*, 2023 WL 6814579, at *5 (collecting cases discounting any hardship where there was no "realistic" or "minimal" risk of prosecution). Moreover, TikTok and its employees can mitigate—if not avoid entirely—any risk by sitting at a convenient location that has no laws prohibiting such depositions.

### 7. Extent to which compliance can be expected.

The final factor for consideration in the Ninth Circuit also weighs in Plaintiffs' favor. "If a discovery order is likely to be unenforceable, and therefore to have no practical effect, that factor counsels against requiring compliance with the order[.]" *Richmark*, 959 F.2d at 1478. Court orders will likely be enforceable where the entity resisting discovery is a party to the action. *Société Nationale*, 482 U.S. at 539–40, 544 n.29 ("It is well settled that ["blocking"] statutes do not deprive an American court of

18

the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute."). Here, TikTok is a named party to the action, and has specifically directed its business to the United States. *See* Fed. R. Civ. P. 37; *Richmark*, 959 F.2d at 1478 ("[F]oreign corporations which avail themselves of business opportunities in the United States must abide by United States laws[.]"). There is no reason to expect noncompliance with a discovery order by this Court. *Connex R.R. LLC*, 2017 WL 3433542, at *18 (finding there is no reason to expect noncompliance from a party, over which the court has jurisdiction). As such, this factor also weighs in favor of deposing Defendants' employees under the Federal Rules.

In sum, the comity factors largely weigh in Plaintiffs' favor and, for the others, there is no evidence to support the application of the Hague Conventions over the general prescription that the "Federal Rules of Civil Procedure govern" such discovery. *Fed. Judicial Ctr., Discovery in International Civil Litigation: A Guide for Judges* (2015). Plaintiffs respectfully request the Court enter an order requiring Defendants' High-Level Employees to be deposed in accordance with the Federal Rules of Civil Procedure. *See Inventus Power*, 339 F.R.D. at 505–06 (granting request for depositions where all but one factor weighed in favor of discovery).

## B.    Plaintiffs' Disclosure Procedure is Necessary and Reasonable.

Plaintiffs may identify employees or former employees of TikTok they wish to depose but who are not amenable to deposition by notice under Rule 30 (i.e., Other Foreign Deponents). Plaintiffs propose a process for identifying those Other Foreign Deponents to TikTok. Counsel for TikTok would then have a limited period of time (e.g., seven days) to advise Plaintiffs whether they represent those individuals and will accept service of a subpoena or contend the procedures set forth in the Hague Conventions apply.

Plaintiffs' proposal is necessary and reasonable to promptly identify any disputes about the law applicable to specific deponents. Plaintiffs are doing what they can to identify potential deponents with the limited information TikTok has made available to

19

date. Plaintiffs anticipate identifying additional individuals and, possibly, prioritizing others to depose based on the documents TikTok produces in response to Plaintiffs' discovery requests in this action. But the parties are still negotiating custodians and search terms and are months away from the deadline to complete their productions. Plaintiffs are concerned they will have a short window to identify *and* depose individuals before class certification. Plaintiffs seek only a streamlined process for determining whether the parties have any disputes regarding these deponents so that they may seek judicial intervention in a timely fashion, if necessary, or attempt to comply with the Hague Conventions.

**C. Plaintiffs' Proposed Provisions Governing the Translation and Interpretation of Depositions are Appropriate and Uncontested.**

The Court should utilize its inherent powers to manage pretrial litigation to minimize the potential for individualized disputes. *See Faigin v. Kelly*, 184 F.3d 67, 84 (1st Cir. 1999) *(*"A district court's case-management powers apply with particular force to the regulation of discovery and the reconciliation of discovery disputes."). Specifically, Plaintiffs ask the Court to enter an order governing logistics like interpretation and translation services and the duration of depositions where an interpreter is needed. An order is appropriate now because retaining qualified interpreters, who may have to travel, and having documents translated can be a time-consuming process.

Plaintiffs' proposal is reasonable and proportionate to the needs of this case, as multi-lingual depositions require additional time beyond a typical deposition in order to provide for translations of testimony and objections between all parties. *See, e.g.*, *In re Actos Antitrust Litig.*, 639 F. Supp. 3d 453, 458 (S.D.N.Y. Nov. 5, 2022) (recognizing the need for additional deposition length beyond the presumptive time afforded by the Federal Rules and ordering a 12-hour time limit). Moreover, Plaintiffs' proposal is modeled off, and consistent with the stipulation TikTok agreed to in similar litigation. *Compare Social Media MDL*, ECF No. 1268, Plaintiffs and the TikTok Defendants'

Stipulated Translation Protocol, § I.A–C (setting forth procedures for selecting interpreters, who bears the costs, and dealing with disputes about interpretation), D (setting forth the procedure governing the time limit for any deposition where an interpreter is used) and E–H (setting forth the procedures for translating exhibits), *with* [Proposed] Order § IV (same). To Plaintiffs' knowledge, there is no dispute about these provisions. *See supra* II.B.3 ("TikTok has raised only an issue with the provisions concerning the application of the Hague Conventions.").[55]

## V.   CONCLUSION

To streamline the depositions and minimize the burdens on the witnesses, the parties, and the Court, Plaintiffs respectfully request the Court grant their motion and adopt Plaintiffs' Case Management Order Regarding Foreign Deponents.

DATED this 18th day of June, 2026.

KELLER ROHRBACK L.L.P.

By */s/ Derek W. Loeser*
    Derek W. Loeser (*pro hac vice*)
    dloeser@kellerrohrback.com
    Cari Campen Laufenberg (*pro hac vice*)
    claufenberg@kellerrohrback.com
    1201 Third Avenue, Suite 3400
    Seattle, WA 98101
    (206) 623-1900, Fax (206) 623-3384

    *Interim Lead Counsel*

COHEN MILSTEIN SELLERS AND TOLL PLLC

By: */s/ Eric A. Kafka*
Eric A. Kafka (*pro hac vice*)
ekafka@cohenmilstein.com

---

[55] Springer Decl., Ex. 4 at 6.

21

Cohen Milstein Sellers and Toll PLLC
88 Pine Street, 14th Floor
New York, NY 10005
212-838-7797
212-838-7745 (fax)

*Interim Lead Counsel*

SILVER GOLUB & TEITELL LLP


Steven L. Bloch (*pro hac vice*)
sbloch@sgtlaw.com
One Landmark Square, 15th Floor
Stamford, CT 06901
(203) 325-4491

*Executive Committee*

22

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,960 words, which [choose one]:

  X  complies with the word limit of L.R. 11-6.1.

  __  complies with the word limit set by court order dated [date]."

Executed this 18th day of June, 2026, at Seattle, Washington.

*Derek W. Loeser*
Derek W. Loeser

23