DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
DREW E. BREUDER (S.B. #198466)
dbreuder@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California 90067-6035
Telephone:  +1 310 553 6700
Facsimile:   +1 310 246 6779

MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
San Francisco, CA 94111
Telephone:  +1 415 984 8700
Facsimile:   +1 415 984 8701

SID MODY (*pro hac vice*)
smody@omm.com
O'MELVENY & MYERS LLP
2801 North Harwood Street, Suite 1600
Dallas, TX 75201
Telephone:  +1 972-360-1900
Facsimile:   +1 972-360-1901

*Attorneys for Defendants ByteDance Ltd.,
ByteDance Inc., TikTok Ltd., TikTok Inc.,
TikTok LLC, TikTok Pte. Ltd., and
TikTok USDS Joint Venture LLC*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TIKTOK, INC. MINOR PRIVACY LITIGATION | MDL No. 3144 |
| | Case No. 2:25-ml-03144-GW-RAO |
| | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CASE MANAGEMENT ORDER RE FOREIGN DEPONENTS** |
| | Courtroom:  9D (9th Floor) |
| | Date:         July 16, 2026 |
| | Time:         8:30 a.m. |

DEFS.' OPP'N TO
MOT. FOR CASE MGMT. ORDER
NO. 2:25-ML-03144-GW-RAO

# TABLE OF CONTENTS

|  |  | **Page** |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND | 2 |
| | A. The Parties' Joint Rule 26(f) Report and Conference. | 2 |
| | B. The Parties' Correspondence After the Rule 26(f) Conference. | 3 |
| | C. Plaintiffs' Draft Stipulation and the Parties' Related Meet-and-Confers. | 4 |
| III. | LEGAL STANDARDS | 6 |
| IV. | ARGUMENT | 7 |
| | A. Plaintiffs' Proposal to Waive Hague Convention Procedures for Depositions of All "High-Level Employees" Is Improper and Unnecessary. | 7 |
| | 1. Plaintiffs' request for a blanket waiver of Hague Convention protocols is unprecedented and contrary to settled law. | 7 |
| | 2. The Richmark factors further undercut Plaintiffs' proposal. | 9 |
| | 3. Plaintiffs' proposal is premature and not proportional to the needs of the case. | 17 |
| | B. Plaintiffs' Proposed Disclosure Procedure for Foreign Deponents Not Subject to Rule 30 Is Unwarranted. | 19 |
| | C. Defendants Have Not Agreed to Plaintiffs' Proposed Translation Protocol. | 21 |
| V. | CONCLUSION | 21 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adde Issagholi v. McLaren Auto., Inc. et al.*,
2021 WL 4352297 (C.D. Cal. July 9, 2021) .......................................................23

*Bella+Canvas, LLC v. Fountain Set Ltd.*,
2022 WL 3697358 (C.D. Cal. June 29, 2022).....................................................23

*Cabinets To Go, LLC v. Qingdao Haiyan Real Est. Grp. Co.*,
2023 WL 3922640 (M.D. Tenn. May 30, 2023) ...........................................10, 19

*Calderon v. Experian Info. Sols., Inc.*,
287 F.R.D. 629 (D. Idaho 2012).................................................................19, 23

*Elasticsearch, Inc. v. GmbH*,
2021 WL 1753796 (N.D. Cal. May 4, 2021) ......................................................23

*Feindt v. United States*,
2024 WL 5344431 (D. Haw. July 17, 2024) .......................................................10

*Hunt v. Cnty. of Orange*,
672 F.3d 606 (9th Cir. 2012) ..............................................................................10

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
2014 WL 5462496 (N.D. Cal. Oct. 23, 2014) .....................................................14

*In re Photochromic Lens Antitrust Litig.*,
2012 WL 12904331 (M.D. Fla. May 2, 2012) ..............................................16, 17

*Inventus Power v. Shenzhen Ace Battery*,
339 F.R.D. 487 (N.D. Ill. 2021) ...........................................................10, 15, 20

*Kaiser Found. Health Plan Inc. v. Merck & Co. Inc.*,
2026 WL 898263 (N.D. Cal. Mar. 30, 2026).....................................................10

*Landis v. North American Co.*,
299 U.S. 248 (1936) ...........................................................................................22

*Laydon v. Mizuho Bank, Ltd.*,
183 F. Supp. 3d 409 (S.D.N.Y. 2016).................................................................12

*Loops LLC v. Phoenix Trading, Inc.*,
2010 WL 786030 (W.D. Wash. Mar. 4, 2010).....................................................14

*Madanes v. Madanes*,
186 F.R.D. 279 (S.D.N.Y. 1999).........................................................................18

**TABLE OF AUTHORITIES**
(continued)

**Page**

*MGI Digital Tech. S.A. v. Duplo U.S.A.*,
2023 WL 6814579 (C.D. Cal. Aug. 24, 2023) .................................. 12, 13, 15, 16

*Miller v. Rykoff-Sexton, Inc.*,
845 F.2d 209 (9th Cir. 1988) ................................................................................ 21

*Milliken & Co. v. Bank of China*,
758 F. Supp. 2d 238 (S.D.N.Y. 2010) .................................................................. 15

*Munoz v. China Expert Tech., Inc.*,
2011 WL 5346323 (S.D.N.Y. Nov. 7, 2011) ....................................................... 14

*NML Cap. Ltd. v. Republic of Argentina*,
2014 WL 3898021 (D. Nev. Aug. 11, 2014) ........................................................ 23

*Orlich v. Helm Bros., Inc.*,
160 A.D.2d 135, 143 N.Y.S.2d 10 (N.Y.A.D. 1990) ........................................... 23

*Reino De Espana v. Am. Bureau of Shipping*,
2005 WL 1813017 (S.D.N.Y. Aug. 1, 2005) ....................................................... 14

*Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLP*,
2017 WL 4287205 (N.D. Ill. Sep. 27, 2017) ....................................................... 19

*Rice v. Experian Info. Sols., Inc.*,
2025 WL 1921959 (C.D. Cal. July 9, 2025) ........................................................ 10

*Richmark Corp. v. Timber Falling Consultants*,
959 F.2d 1468 (9th Cir. 1992) ........................................................................ passim

*Salt River Project Agric. Improvement & Power Dist. v. Trench France SAS*,
303 F. Supp. 3d 1004 (D. Ariz. 2018) ...................................................... 13, 15, 20

*Société Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*,
482 U.S. 522 (1987) ........................................................................................ passim

*St. Jude Med. S.C., Inc. v. Janssen-Counotte*,
104 F. Supp. 3d 1150 (D. Or. 2015) ............................................................... 12, 17

*Swapalease, Inc. v. Sublease Exchange.com, Inc.*,
2008 WL 11355018 (S.D. Ohio Sept. 19, 2008) ............................................ 13, 17

# TABLE OF AUTHORITIES
(continued)

**Page**

*Tulip Computers Int'l B.V. v. Dell Comp. Corp.*,
254 F. Supp. 2d 469 (D. Del. 2003) ................................................................23

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*,
2023 WL 7726411 (N.D.Cal. Nov. 15, 2023)....................................................16

*Wu v. Sushi Nomado of Manhattan, Inc.*,
2021 WL 7186735 (S.D.N.Y. Oct. 29, 2021), *report and
recommendation adopted in part*, 2022 WL 597280 (S.D.N.Y. Feb.
28, 2022) ...............................................................................................12, 19

*Zhao v. Kelly*,
2017 WL 1591818 (C.D. Cal. Apr. 27, 2017)....................................................22

## I.   INTRODUCTION

Plaintiffs ask this Court to bypass international protocols for overseas deponents and to enter a blanket order requiring an unspecified number of unidentified foreign witnesses to submit to depositions before Plaintiffs have even noticed any depositions. Their requested relief is unprecedented, improper, and unnecessary.

First, Plaintiffs ask the Court to allow them to sidestep Hague Evidence Convention procedures for every overseas "High-Level Employee" of Defendants as a category—that is, for every overseas director, officer, or managing agent, without reference to any particular person. But Plaintiffs cite no case in which a court has decided sight unseen that all such foreign witnesses must be deposed under the Federal Rules, regardless of their circumstances and country of residence. And for good reason: the case law unambiguously requires courts to undertake a particularized analysis to determine whether foreign depositions should proceed under the Hague Convention, taking into account the facts of the case and the details of the requested discovery. Nor have Plaintiffs demonstrated the proposal is proportional to the needs of the case. While they hypothesize that the current deadline for class certification could tie their hands if they later discover a crucial overseas witness, Plaintiffs have yet to notice depositions for *any* of the 20 "potential" overseas deponents they have proposed. The proper course is for Plaintiffs to notice their depositions and meet and confer with Defendants about application of the Hague Convention in those particular cases.

Second, Plaintiffs' proposed disclosure protocol for unspecified "Other Foreign Deponents"—any current or former employees who are not "High-Level"—is similarly unwarranted. Their proposal would require Defendants to confirm within seven days whether it will invoke the Hague Convention for those witnesses, a hurried timeline that would supposedly allow Plaintiffs to quickly raise disputes over the Hague Convention's application to those depositions. But the case

-1-

law is again clear: depositions of those employees can be compelled only via the Convention (or other applicable treaties) because those overseas, foreign witnesses cannot be noticed under Rule 30 (by Plaintiffs' own definition), and are outside the Court's subpoena power under Rule 45. Plaintiffs cite no contrary decision.

Lastly, contrary to Plaintiffs' suggestion, Defendants have not agreed to Plaintiffs' proposed translation and interpretation protocol. Nor is that protocol substantively identical to the protocol Defendants stipulated to in the Social Media Addiction MDL ("SMA MDL"), which Plaintiffs claim they used as a model. Setting such a protocol before any foreign depositions have been noticed is premature. To the extent the Court disagrees, it should enter the interpretation and translation protocol used in the SMA MDL.

For all these reasons, the Court should deny Plaintiffs' Motion.

## II.    BACKGROUND

### A.    The Parties' Joint Rule 26(f) Report and Conference.

The Parties filed their Joint Rule 26(f) Report on March 9, 2026. *See* Dkt. 187 (Mar. 9, 2026 Joint 26(f) Report). It previewed Plaintiffs' position that Defendants should waive compliance with Hague Convention protections for depositions of all "witnesses located outside the United States," irrespective of any country's requirements or the witness's circumstances. *Id*. at 3. According to Plaintiffs, the case schedule "necessitate[d]" such a waiver because "[r]equiring Plaintiffs to comply with the Hague Convention to depose witnesses located overseas will potentially cause substantial delays in discovery." *Id.* In response, Defendants explained why this proposal was both premature and overbroad: they had no basis to evaluate which overseas witnesses, if any, would be deposed, and they could not be expected to waive substantive rights that unidentified potential deponents may hold under the laws of their respective jurisdictions. *Id.* at 7. To the extent Plaintiffs identified specific overseas witnesses for deposition, Defendants

offered to "meet and confer at that time regarding the appropriate procedures for obtaining such testimony." *Id.*

The Rule 26(f) Report also included Plaintiffs' proposal to increase their "presumptive limit on fact depositions" to "twenty-five (25), with leave to conduct additional depositions upon a showing of good cause." *Id.* at 16. Defendants responded that this proposal, too, was premature "before initial disclosures have been made and before Plaintiffs have identified any proposed deponents." *Id.*

At the Rule 26(f) conference on March 13, 2026, the Court instructed the parties to meet and confer on "what the Hague Conventions issues are" and whether waiver of Hague Convention protocols was even possible. Rodriguez Decl., Ex. A (Tr. of March 13, 2026 Status Conf. at 29:8-9). As the Court observed: "I know, for example, for certain countries, if the parties agree, you can somehow waltz around the particular restrictions of the Hague Convention, although, there are other countries where you cannot, no matter what happens, waltz around those conventions, and then you are stuck." *Id.* at 29:1-7. The Court did not address Plaintiffs' proposal to increase the number of depositions they may take (*see generally id.*), nor have Plaintiffs raised the issue again.

**B.     The Parties' Correspondence After the Rule 26(f) Conference.**

Following the Rule 26(f) conference, Plaintiffs' counsel emailed Defendants' counsel on March 28, 2026, requesting to "meet and confer regarding the Hague Convention in connection with discovery." Dkt. 266-1 ("Springer Decl."), Ex. 2 at 3. Plaintiffs, however, once again failed to identify any overseas witnesses they intend to depose. Instead, they sought to "discuss whether there are witnesses with knowledge and relevant documents/information located outside of the US," and if so, "in which country(ies), and whether it will be necessary for the parties to reach agreement under Fed. R. Civ. P. 29 or otherwise with respect to conducting discovery of those witnesses and materials." *Id*. Defendants responded by reiterating that they are "unable to agree to waive the protections of the Hague

-3-

Convention in the abstract" as well as their offer to meet and confer on this issue "once Plaintiffs have identified deposition targets and Defendants can assess the propriety of those targets and their locations." *Id*. Plaintiffs' counsel never responded to this email. Rodriguez Decl. ¶ 4; *see also* Springer Decl., Ex. 2.

### C. Plaintiffs' Draft Stipulation and the Parties' Related Meet-and-Confers.

Six weeks later, on May 12, 2026, Plaintiffs' counsel emailed a draft stipulation for depositions of foreign deponents. Rodriguez Decl. ¶ 5 & Ex. B at 14. The draft stipulation contained the same broad waiver of the Hague Convention protections for *all deponents*, not only "High-Level" employees. *See* Springer Decl., Ex. 3 at 3:22-25. The draft stipulation also contained the interpretation and translation protocol Plaintiffs now propose, but lacked a disclosure protocol for any set of foreign deponents. *See generally id*. In response, Defendants reiterated that "until Plaintiffs identify deposition targets, Defendants cannot assess the propriety of those targets, their locations, and the substantive and procedural rights those deponents might have under the Hague Convention." Rodriguez Decl., Ex. B at 13.

The parties exchanged further emails in late May. Plaintiffs insisted that they cannot "litigate" the depositions of foreign residents "in piecemeal fashion" given the case schedule. *Id.* at 12. Defendants disagreed that the schedule requires blanket waiver, particularly since Plaintiffs have had "ample opportunity to identify potential deponents who live abroad." *Id*. at 11. As Defendants noted, they had produced to Plaintiffs material from the U.S. DOJ's lawsuit over two months earlier, and from the SMA MDL earlier that month. *Id*. Defendants asked Plaintiffs to promptly propose any potential overseas deponents gleaned from those materials, so that the parties could meet and confer on Hague Convention issues for those deponents. *Id*. Plaintiffs confirmed they had assembled such a list and stated "we can send you that list." The parties agreed to meet and confer on May 29. *Id*. at 10.

In the May 29 conferral, Defendants asked Plaintiffs to provide their promised list of out-of-country deponents. *Id.* ¶ 7. Plaintiffs' counsel reneged, claiming that any discussion of individual depositions would cause significant delays. *Id.* Defendants once again explained that to make an informed decision on whether Hague Convention protocols are necessary, they would need to know who the deponents are and where they reside. *Id.* Defendants further explained that in the SMA MDL, several foreign witnesses were deposed without resort to Hague Convention procedures. *Id.*

On June 10, Plaintiffs finally sent a list of 20 "potential" deponents, which they indicated was "not exhaustive." *Id.* at 5; *id.*, Ex. C. Responding on June 16, Defendants noted the list was double the presumptive limit for depositions under Rule 30—and close to the limit of 25 fact depositions that Plaintiffs previously proposed—without even accounting for domestic witnesses including any of the defense document custodians Plaintiffs would presumably seek to depose. *Id.*, Ex. B at 2. Defendants further explained the list would force them to go through the make-work of contacting nearly two dozen individuals across the globe—roughly half of whom are former TikTok employees—about hypothetical depositions that Plaintiffs have not noticed and may never ultimately pursue. *Id.* at 3. As a result, Defendants proposed that Plaintiffs notice the depositions of the foreign deponents they actually seek to depose so that the parties could then "meet and confer over (a) the appropriate number of depositions Plaintiffs can take, (b) whether Defendants will agree to make the individuals noticed for deposition available to testify, and (c) the appropriate procedures for these depositions." *Id.* Defendants reiterated they are not necessarily "unwilling" to make foreign witnesses available for deposition without resort to Hague Convention procedures, noting "Plaintiffs' current list includes many individuals deposed in the SMA MDL outside those procedures"

and "Defendants currently see no reason why the result would be any different here for those witnesses." *Id.*

Plaintiffs declined Defendants' proposal and filed their Motion on June 18.

**III.   LEGAL STANDARDS**

Rule 16 provides district courts with broad discretion "to manage discovery and to control the course of litigation." *Hunt v. Cnty. of Orange*, 672 F.3d 606, 616 (9th Cir. 2012). In exercising this discretion, courts must ensure that parameters they set on discovery are "proportionate to the needs of the case." *Kaiser Found. Health Plan Inc. v. Merck & Co. Inc.*, 2026 WL 898263, at *3 (N.D. Cal. Mar. 30, 2026); *accord Feindt v. United States*, 2024 WL 5344431, at *2 (D. Haw. July 17, 2024) (entering proposed deposition protocol only after finding it was "reasonable and proportionate to the needs of this case at this stage in the litigation").

In cases involving depositions of overseas witnesses, courts must also assess whether resort to the Hague Convention is warranted. The Hague Convention "prescribes certain procedures by which a judicial authority in one contracting state may request evidence located in another contracting state." *Société Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 524 (1987). These procedures must be followed for depositions of "overseas" witnesses who do "not qualify as an officer, director, or managing agent" of a corporate party. *Rice v. Experian Info. Sols., Inc.*, 2025 WL 1921959, at *3 (C.D. Cal. July 9, 2025). They may also be necessary based on international comity concerns—including where the deponent is an officer, director, or managing agent of a corporate defendant. *See Inventus Power v. Shenzhen Ace Battery*, 339 F.R.D. 487, 501-08 (N.D. Ill. 2021) (conducting comity analysis for employees the court determined to be officers, directors, or managing agents); *cf. Cabinets to Go, LLC v. Qingdao Haiyan Real Est. Grp. Co.*, 2023 WL 3922640, at *3-6 (M.D. Tenn. May 30, 2023) (same, for Rule 30(b)(6) witness).

## IV.   ARGUMENT

### A.   Plaintiffs' Proposal to Waive Hague Convention Procedures for Depositions of All "High-Level Employees" Is Improper and Unnecessary.

The Court should reject Plaintiffs' request that they be allowed to depart from Hague Convention procedures for depositions of "High-Level Employees," regardless of the circumstances. Proposed Order at 2. First, such relief would be unprecedented, as determining whether those procedures are appropriate requires consideration of the particular facts of the case and requested discovery. Second, the multi-factor test prescribed by the Ninth Circuit weighs against Plaintiffs' proposal, to the extent those factors can even be applied in the abstract. Finally, the requested relief is premature and disproportionate to the needs of the case, as Plaintiffs' concern about having time to complete depositions may be addressed by a modification to the case schedule, if not remedied by Plaintiffs' diligence in deposing already identified foreign witnesses.

### 1.   Plaintiffs' request for a blanket waiver of Hague Convention protocols is unprecedented and contrary to settled law.

Plaintiffs concede that whether the Hague Convention procedures should apply to a discovery request "depends upon the particular facts" at issue, including the specific discovery sought and "sovereign interests" implicated. Mot. at 11 (citing *Aerospatiale*, 482 U.S. at 544-46). Plaintiffs' request for an order giving them license not to "follow" these procedures for *any* deposition of *any* overseas High-Level Employee completely ignores the highly "particularized" assessment *Aerospatiale* mandates. The Motion should be denied for that reason alone. Plaintiffs cite no case in which a court has entered the type of blanket order they seek prospectively waiving Hague Convention procedures for all potential overseas deponents en masse. Nor are Defendants aware of any. In conducting the comity analysis required by *Aerospatiale*, courts in the Ninth Circuit apply a multi-factor test to determine:

-7-

(1) "the importance to the investigation or litigation of the documents or other information requested";

(2) "the degree of specificity of the request";

(3) "whether the information originated in the United States";

(4) "the availability of alternative means of securing the information";

(5) "the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located";

(6) "the extent and the nature of the hardship that inconsistent enforcement would impose upon" a foreign person or entity; and

(7) "the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state."

*Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992).

Courts uniformly acknowledge that analyzing these factors, and determining whether they necessitate use of Hague Convention procedures, requires a "case-by-case analysis of the interests at stake." *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 104 F. Supp. 3d 1150, 1164 (D. Or. 2015); *Laydon v. Mizuho Bank, Ltd.*, 183 F. Supp. 3d 409, 426 (S.D.N.Y. 2016) (same).[1] Plaintiffs' proposal is at fundamental odds with this settled law. In essence, Plaintiffs ask the Court to assess the *Richmark* factors in the dark and conclude there is no possible set of circumstances for any deponent in this litigation that could ever require use of Hague Convention

---

[1] Plaintiffs' cases are in accord. *See, e.g.*, *MGI Digit. Tech. S.A. v. Duplo U.S.A.*, 2023 WL 6814579, at *2 (C.D. Cal. Aug. 24, 2023) (to determine whether to utilize Hague Procedures, federal courts must conduct a "particularized analysis" of the "particular facts" of the case); *Wu v. Sushi Nomado of Manhattan, Inc.*, 2021 WL 7186735, at *7 (S.D.N.Y. Oct. 29, 2021), *report and recommendation adopted in part*, 2022 WL 597280 (S.D.N.Y. Feb. 28, 2022) (court must engage in a "particularized analysis").

procedures. No court has taken that approach, and the Court should decline Plaintiffs' invitation to become the first.

>              **2.      The *Richmark* factors further undercut Plaintiffs' proposal.**

***The requested discovery will not decide the litigation***. Contrary to Plaintiffs' suggestion, this factor does not merely ask whether the testimony sought is "'directly relevant' to the outcome of the litigation." Mot. at 12. In fact, courts "have generally been unwilling to override foreign laws" despite the relevance of the discovery sought where "the outcome of litigation does not stand or fall" on it, or where "the evidence sought is cumulative of existing evidence." *MGI Digital Tech. S.A.*, 2023 WL 6814579, at *3 (quoting *Richmark*, 959 F.2d at 1475).

Plaintiffs do not explain how the testimony of *any* particular High-Level Employee would drive "the outcome" of this litigation or be non-cumulative of other evidence available to them, including through written discovery, document productions, and depositions of U.S.-based witnesses. Nor could Plaintiffs, of course, make that showing for *every single* overseas High-Level Employee. Instead, Plaintiffs ask the Court to assume that every such employee has unique testimony to offer that "is at the crux of this case." Mot. at 12. Plaintiffs provide no basis for the Court to make this leap. *See Salt River Project Agric. Improvement & Power Dist. v. Trench France SAS*, 303 F. Supp. 3d 1004, 1008 (D. Ariz. 2018) (factor weighed "in favor of utilizing Hague procedures" where court had "no basis at this point for concluding" requested documents in France "are critically important to the resolution of this case"); *Swapalease, Inc. v. Sublease Exchange.com, Inc.*, 2008 WL 11355018, at *4 (S.D. Ohio Sept. 19, 2008) (same where Argentine witness's testimony was "less important" due to potential unreliability and because "contemporaneous documents" were the "best corroborating evidence").

The snippets of deposition testimony that Plaintiffs cite do not change the result. Plaintiffs cite testimony taken in the SMA MDL from three overseas TikTok employees that Plaintiffs believe illustrates their "need to be able to depose

witnesses who made decisions or were responsible for age gating and age assurance." Mot. at 12-13. Even assuming that Plaintiffs are correct about the importance of those employees' testimony to this case, it does not follow that *all* other overseas High-Level Employees whom Plaintiffs might later identify also "have information . . . at the center of" this case. Mot. at 13.

Plaintiffs' authority is similarly unpersuasive. Unlike here, two of Plaintiffs' cases involved motions to compel the depositions of specific individuals—allowing the court to assess the importance and necessity of those particular witnesses' testimony. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 5462496, at *1 (N.D. Cal. Oct. 23, 2014) (motion involving four former employees potentially present in meetings related to the alleged conspiracy at issue); *Loops LLC v. Phoenix Trading, Inc.*, 2010 WL 786030, at *3 (W.D. Wash. Mar. 4, 2010) (motion involving oversees witness that the court deemed "necessary to fill in informational gaps created by the lack of document production"). And although the court in Plaintiffs' third case ordered that discovery "proceed under the Federal Rules" rather than Hague Convention procedures, it set a conference to discuss the specific "witnesses whose depositions are to be taken" and emphasized that the parties could "exercis[e] their rights to seek [rulings] regarding specific discovery issue[s]." *Munoz v. China Expert Tech., Inc.*, 2011 WL 5346323, at *2 (S.D.N.Y. Nov. 7, 2011). None of these cases involved a court assuming that testimony from large swaths of unidentified overseas employees is sufficiently important to circumvent Hague Convention procedures for all of them.

***The request lacks specificity.*** Courts consider "how burdensome it will be to respond" to a discovery request and whether the request involves "[g]eneralized searches for information." *Richmark*, 959 F.2d at 1475. Courts applying this factor therefore consider whether the request is for "a specific, discrete source of information," or if it amounts to a "fishing expedition." *Reino De Espana v. Am. Bureau of Shipping*, 2005 WL 1813017, at *9 (S.D.N.Y. Aug. 1, 2005). Plaintiffs'

-10-

request to forgo Hague Convention procedures for all overseas High-Level Employees is anything but "specific" or "narrowly tailored." *See Milliken & Co. v. Bank of China*, 758 F. Supp. 2d 238, 247 (S.D.N.Y. 2010) (factor favors Federal Rules if requests are "narrowly tailored").

Attempting to mask the inherently non-specific nature of their request, Plaintiffs state that eventually they "will specify the individuals they intend to depose (once they have had an opportunity to make that determination)." Mot. at 13. But this factor requires specificity now; without it, Plaintiffs' request to depose an unspecified number of undetermined overseas witnesses is necessarily "generalized" and raises the specter of significant burden. *See Salt River,* 303 F. Supp. at 1008 (factor weighed against request for all French documents that "may be relevant" to claims); *cf. Richmark*, 959 F.2d at 1475 (factor weighed in favor of requests for information "directed at identifying [foreign party's] current assets in order to execute" judgment). Plaintiffs' lone case on this issue, *Inventus Power v. Shenzhen Ace Battery*, does not say otherwise. There, the plaintiff propounded requests for production and noticed depositions specifically targeted to jurisdictional discovery, leading the court to conclude that this discovery was "appropriately tailored." *Inventus*, 339 F.R.D. at 502. By contrast, Plaintiffs concede they have yet to "determin[e]" which, or even how many, High-Level Employees "they intend to depose." Mot. at 13.

Equally unavailing is Plaintiffs' assertion that this factor "is not at issue here" because "TikTok has not asserted any burden." *Id.* at 13-14. To start, Plaintiffs have not served any deposition notices to which Defendants might assert objections on the grounds of burden. That distinguishes this case from those Plaintiffs rely on, where the requesting parties had served discovery requests and the responding parties failed to object to them as burdensome. *See Richmark*, 959 F.2d at 1475 (defendant had "not objected to the burdensome nature of the discovery request"); *MGI Digit. Tech.*, 2023 WL 6814579, at *4 (plaintiff had "not made this factor an

issue for" its employees). Moreover, Plaintiffs strain credulity in suggesting that "[t]here is no reason" to believe the depositions of overseas High-Level Employees "will be any more burdensome than other depositions." Mot. at 13. Leaving aside the (unknown) specific circumstances of any given deponent, Defendants will at minimum need to coordinate international travel for their counsel or employees to prepare for and attend the depositions. "The additional cost of transportation of documents or witnesses to or from foreign locations may increase the danger that discovery may be sought for the improper purpose of motivating settlement, rather than finding relevant and probative evidence." *Aerospatiale*, 482 U.S. at 546.

**The deponents reside in a foreign country**. Where "the people who will be deposed" are "located in a foreign country," as here, this factor "weighs against" circumventing Hague Convention procedures "since those people . . . are subject to the law of that country in the ordinary course of business." *Richmark*, 959 F.2d at 1475; *see also MGI Digit. Tech.*, 2023 WL 6814579, at *4 (factor weighed against depositions of French citizens located in France).

Plaintiffs suggest this factor weighs in their favor because some courts "have looked at where the information was derived from," not where the deponent is located, and they will seek testimony "about what information TikTok collects from underage users in the United States."[2] Mot. at 14 (citing *In re Photochromic Lens Antitrust Litig.*, 2012 WL 12904331, at *3 (M.D. Fla. May 2, 2012)). But *Photochromic Lens* is an out-of-circuit district court decision; this Court must apply the standard set for this factor by the Ninth Circuit in *Richmark*.

---

[2] In the alternative, Plaintiffs urge that this factor is not "dispositive" of the comity analysis. Mot. at 14 (citing *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 2023 WL 7726411, at *5 (N.D.Cal. Nov. 15, 2023)). That much is true: no one factor is dispositive. But as the *WhatsApp* decision reflects, the more the factors collectively favor the resisting party, the greater the onus on the requesting party to show the discovery it seeks is "sufficiently specific and important to the asserted claims in [the] case." 2023 WL 7726411, at *5.

-12-

Moreover, *Photochromic Lens* is readily distinguishable. There, the French deponent had "worked out of" his company's Dallas headquarters at the "times relevant to" the litigation, before returning to France. 2012 WL 12904331, *1. Plaintiffs have not suggested that any overseas witness they intend to depose ever worked at one of Defendants' U.S. offices. This situation is thus more like *Swapalease, Inc. v. Sublease Exchange.com, Inc.*, also cited by Plaintiffs, where the court reasoned that the testimony of an Argentine witness living in Argentina "obviously originates in Argentina." Mot. at 14 (quoting 2008 WL 11355018, at *4 (S.D. Ohio Sep. 19, 2008)).

***Plaintiffs have alternative means for securing the information.*** The test is not, as Plaintiffs suggest, whether they could timely secure testimony of overseas witnesses "through the Hague Conventions." Mot. at 16. Instead, the test focuses on whether the evidence sought "can easily be obtained elsewhere"; if it can, this factor weighs against disregarding Hague Convention procedures. *Richmark*, 959 F.2d at 1475. For instance, "[i]f the party seeking discovery can easily obtain what it seeks using alternative *domestic* means, this factor weighs in favor of requiring Convention procedures for international discovery." *St. Jude Med. S.C.*, 104 F. Supp. 3d at 1167 (emphasis added).

Plaintiffs have not identified any critical evidence that can be obtained only by deposing any overseas High-Level Employee abroad, rather than through written discovery, document productions, or the deposition of U.S.-based witnesses. Indeed, Plaintiffs do not even address the possibility that the information sought from these employees could be had through domestic means. At best, Plaintiffs suggest that discovery thus far "indicates" that three potential witnesses in China and Singapore may have "relevant information." *See* Mot. at 3. That is a far cry from establishing that "alternative means have already proven futile" for securing the information Plaintiffs believe these particular witnesses—let alone all other High-Level Employees—can provide. *St. Jude Med. S.C.*, 104 F. Supp. 3d at 1167.

-13-

***The requests disregard foreign interests.*** The balance-of-interests factor requires courts to "assess the interests of each nation in requiring or prohibiting disclosure" of the information sought, and to determine whether its disclosure would "affect substantive policies or interests" of either the United States or the foreign deponent's country. *Richmark*, 959 F.2d at 1476. "This is the most important factor," *id.*, as it exemplifies the need to conduct a "particularized analysis of the respective interests of the foreign nation and the requesting nation[.]" *Aerospatiale*, 482 U.S. at 543-44. Yet Plaintiffs all but ignore one side of this analysis, focusing on the "substantial interest" the United States has in "vindicating the rights of American plaintiffs" and ensuring "the just, speedy, and inexpensive determination of litigation" in American courts. Mot. at 16-17. Even if generally applicable, those interests are "not so strong that they would compel disclosure in all cases." *Richmark*, 959 F.2d at 1477. Otherwise, there would be no need for a comity analysis in the first place. *See Aerospatiale*, 482 U.S. at 542-43.

Plaintiffs also misleadingly downplay the potential foreign interests at stake. They claim that "there has been no interest *expressed* by any foreign state authorities regarding this litigation." Mot. at 16 (emphasis added). But because Plaintiffs have yet to identify any foreign deponents let alone notice their depositions in this case, it is not clear what occasion a foreign state would have to communicate its disapproval to this Court about a deposition. More importantly, whether a foreign dignitary comments directly on the discovery at issue is not dispositive; courts also assess more generally "the significance of disclosure in the regulation ... of the activity in question" by the foreign state. *Richmark*, 959 F.2d at 1476; *see, e.g., Madanes v. Madanes*, 186 F.R.D. 279, 285-86 (S.D.N.Y. 1999) (considering Argentina's interest in recognition of its constitution's privilege against self-incrimination, without reference to any formal communication from the Argentine government). Plaintiffs' broad-brush request to circumvent Hague

-14-

Convention procedures for unspecified foreign deponents on yet-to-be-identified topics handicaps the Court's and Defendants' ability to conduct that assessment.

This also renders Plaintiffs' cases inapposite. *See* Mot. at 16-17. In each of those cases, the parties and the courts analyzed the competing interests of the United States and the foreign states in the context of specific depositions that were sought and with an understanding of the foreign states' interests, if any, in permitting those depositions to proceed. For example, in *Wu*, the plaintiff-deponent "made no showing … as to why his submission to a deposition for use in [his] wage-and-hour case (which does not, for instance, implicate matters of national security) would actually undermine China's important interests." 2021 WL 7186735, at *10 (S.D.N.Y. Oct. 29, 2021).[3] Here, Defendants are entitled to the same opportunity to confirm whether conflicting sovereign interests exist once Plaintiffs identify specific deponents. If those interests remain "speculative" at this stage (Mot. at 16), it is because Plaintiffs are not yet seeking to compel the deposition of any overseas employee in particular, and have not noticed any such depositions.

Plaintiffs also cannot bypass consideration of "another country's sovereignty" with their proposal to depose all overseas High-Level Employees outside their home countries, "in a location that permits the application of the Federal Rules." Mot. at 17. Plaintiffs make that proposal recognizing that in countries like China, the law prohibits attorneys from taking depositions for use in foreign courts, even where the witness is willing to testify, instead requiring use of

---

[3] *See also Cabinets to Go*, 2023 WL 3922640, at *5 (same for party resisting depositions of their foreign employees located in China); *Calderon v. Experian Info. Sols., Inc.*, 287 F.R.D. 629, 631, 635 (D. Idaho 2012) (finding no conflict of sovereign interests for the "depositions of several individuals" in Chile because conducting depositions on Chilean soil "via notice as opposed to subpoena" would "not violate Chilean law"); *Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLP*, 2017 WL 4287205, at *4 (N.D. Ill. Sep. 27, 2017)) (plaintiff had "not presented any evidence of the nature of France's sovereign interests").

the Hague Convention procedures. *See* Mot. at 17.[4] Plaintiffs simply assume that all High-Level Employees living abroad are able—legally and practically—to travel internationally for deposition. That is not always the case. *See Inventus*, 339 F.R.D. at 507 n. 21) (court would consider evidence that Chinese employees were unable to attend depositions in Macau due to travel restrictions).

***Foreign deponents face potential hardship.*** If a deponent's country has an interest in prohibiting the discovery sought (or at least in requiring Hague Convention procedures), the court must also consider the hardship that complying with a discovery order compelling disclosure "is likely to have on the foreign [deponent]." *Richmark*, 959 F.2d at 1477. As the Supreme Court instructed in *Aerospatiale*, "American courts should . . . take care to demonstrate due respect for any special problem confronted by" a foreign party "on account of its nationality or the location of its operations." 482 U.S. at 546; *see, e.g.*, *Salt River*, 303 F. Supp. 3d at 1009-10 (factor weighed in favor of Hague procedures because of "possibility of criminal prosecution" under French statute).

If Plaintiffs demand to depose TikTok employees abroad, Defendants have a responsibility to carefully investigate whether those employees' countries would assert an interest in preventing or limiting the depositions, and if so, what the consequences might be for the TikTok employee if they testified against the wishes of their government. For any given TikTok employee and set of deposition topics, this would involve a review of the country's law, as well as discussions with the employee that would allow them to raise any concerns.

Where another country's sovereign interests would not be implicated or a TikTok employee would face no hardship from testifying, Defendants are amenable to depositions proceeding under the Federal Rules, subject to ordinary objections

---

[4] *See also Inventus*, 339 F.R.D. at 499-500 (undisputed that the "law of China prohibits" depositions – voluntary or compelled – for use in foreign courts "within the borders of People's Republic of China without permission" from Chinese authorities through the Hague Convention procedures) (collecting cases).

-16-

including burden and relevance. Indeed, as Plaintiffs recognize, in the SMA MDL Defendants facilitated the depositions of several overseas employees (or former employees) in Ireland, the United Kingdom, and Singapore. *See* Mot. at 3-4. But Defendants should have the opportunity to verify whether any conflicts do exist.

***Compliance may be difficult to enforce.*** "If a discovery order is likely to be unenforceable, and therefore to have no practical effect, [this] factor counsels against requiring compliance with the order." *Richmark*, 959 F.2d at 1478. Defendants intend to comply with any order this Court issues in discovery or otherwise, subject to appeal. Nonetheless, individual TikTok employees may be unwilling to testify voluntarily, and Defendants will need to review the law of each foreign deponent's country to ensure that TikTok can properly compel its employees to give testimony outside the Hague Convention procedures. *Cf. Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 212 (9th Cir. 1988) (presuming employer had "a measure of control over" its employees as witnesses, but could "present proof of its unsuccessful efforts to produce" employee before adverse inference drawn).

### 3. Plaintiffs' proposal is premature and not proportional to the needs of the case.

Plaintiffs' own delays undermine their argument that the current schedule for discovery and class certification briefing justifies their proposal. They contend that they will not know the identity of every foreign TikTok employee they wish to depose until after Defendants complete their document productions by the Court-ordered deadline of September 11, 2026. Mot. at 1. And by that point, there are "just three months between then and when Plaintiffs must move for class certification in December to resolve any disputes and take the depositions of foreign residents, among others." *Id*. Plaintiffs further note that Hague Convention procedures often take many months to fulfill, and that requests made to China under the Convention are rarely fulfilled at all. *Id.* at 15-16.

-17-

Any such concerns are of Plaintiffs' own making. Following the parties' discussions in March, Plaintiffs took six weeks to resume meet-and-confers on the applicability of Hague Convention procedures to foreign deponents. Rodriguez Decl. ¶ 4. Plaintiffs then prolonged the parties' discussions by waffling on whether they would identify the foreign deponents they intend to depose—first refusing to do so, then agreeing to share a list with Defendants, only to renege on that promise before ultimately providing a list of 20 "potential deponents" and demanding Defendants' position within four business days. Rodriguez Decl, Ex. B at 5 & Ex. C. Not only was the list "not exhaustive," it was also overinclusive—Plaintiffs have been noncommittal on whether they will pursue the depositions of these individuals and refused to start noticing any such depositions. *See supra at 3-6*. If Plaintiffs had simply done so, concrete disputes (if any exist) about following the Hague Convention procedures for those deponents could already have been teed up for the Court's resolution, providing the parties with guidance on any similar disagreements arising later in discovery.

With six months remaining before Plaintiffs' class certification brief is due, their concerns are also speculative and premature. This Court has broad discretion to manage discovery and to control the course of litigation, *supra* at 6, as well as "the inherent authority to control its own docket and calendar." *Zhao v. Kelly*, 2017 WL 1591818, at *4 (C.D. Cal. Apr. 27, 2017) (citing *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936)). Should Plaintiffs come to learn the identity of a critical overseas witness this fall by reviewing documents, and need additional time to depose that witness and litigate any objections, Plaintiffs may meet and confer with Defendants about a continuance of the class certification motion deadline, and if necessary, move the Court for relief.

-18-

**B.     Plaintiffs' Proposed Disclosure Procedure for Foreign Deponents Not Subject to Rule 30 Is Unwarranted.**

Plaintiffs' proposal for "Other Foreign Deponents" is equally unwarranted. For these deponents, Plaintiffs propose a process by which they would disclose individuals they "wish to depose" and Defendants must then advise within seven days whether they represent those individuals and, if so, whether they will contend the Hague Convention procedures apply. Proposed Order at 3. Contrary to Plaintiffs' suggestion, this proposal is neither "necessary" nor "reasonable" to ascertain "any disputes about the law applicable" to specific witnesses falling in the Other Foreign Deponents category. Mot. at 19-20. Indeed, it is black-letter law that to compel the deposition of an overseas witness who is "not an officer, director, or managing agent of" a corporate party, "the procedures of the Hague Convention or other applicable treaty *must* be utilized." *Calderon*, 287 F.R.D. at 517 (collecting cases) (emphasis added).[5] Such employees are "treated as a non-party under Rule 45," *Issagholi v. McLaren Auto., Inc. et al.*, 2021 WL 4352297, at *1 (C.D. Cal. July 9, 2021), and a court's subpoena power under that Rule does not extend to "foreign nationals residing in a foreign country," *NML Cap. Ltd. v. Republic of Argentina*, 2014 WL 3898021, at *9 (D. Nev. Aug. 11, 2014) (collecting cases).[6] Plaintiffs cite no cases to the contrary.

While Defendants are willing to consider facilitating the depositions of such employees on a case-by-case basis once Plaintiffs identify who specifically they intend to depose and there is clarity on the appropriate number of depositions Plaintiffs can take, Plaintiffs' proposal is unworkable for that endeavor. In meet-

---

[5] *See also, e.g.*, *Bella+Canvas, LLC v. Fountain Set Ltd.*, 2022 WL 3697358, at *8 (C.D. Cal. June 29, 2022) (similar); *Elasticsearch, Inc. v. GmbH*, 2021 WL 1753796, at *1 (N.D. Cal. May 4, 2021) (same).

[6] *See also Tulip Computs. Int'l B.V. v. Dell Comp. Corp.*, 254 F. Supp. 2d 469, 474 (D. Del. 2003) ("When discovery is sought from a non-party in a foreign jurisdiction, application of the Hague Evidence Convention . . . is virtually compulsory." (quoting *Orlich v. Helm Bros., Inc.*, 160 A.D.2d 135, 143, 560 N.Y.S.2d 10 (N.Y.A.D.1990)).

-19-

and-confer correspondence, Defendants repeatedly requested that Plaintiffs identify out-of-country individuals they intend to depose. Springer Decl., Ex. 2 at 1; Rodriguez Decl., Ex. B at 3, 7, 11, 13. Plaintiffs seesawed for several weeks, before eventually sending Defendants a list of 20 "potential" overseas deponents and asking Defendants to confirm whether they were willing to waive Hague Convention procedures for those witnesses within four business days. Rodriguez Decl, Ex. B at 5 & Ex. C.

Plaintiffs' proposed protocol would allow them to attempt a similar maneuver for Other Foreign Deponents, creating an unnecessary and disproportionate burden on Defendants to formulate a quick response. As Defendants have explained to Plaintiffs, it is not productive for Plaintiffs to identify large numbers of "potential" deponents and force Defendants to quickly "go through the make-work of contacting" many individuals across the globe about "hypothetical depositions that Plaintiffs have not noticed and may never ultimately pursue." Rodriguez Decl., Ex. B at 3.

As with High-Level Employees, the proper course is for Plaintiffs to simply notice their depositions at their earliest convenience,[7] and for the parties to meet and confer on both the acceptable number of depositions and the appropriate procedures for those depositions. *See id.* Defendants reiterate that in other litigations, other overseas witnesses were deposed without the plaintiffs resorting to Hague Convention procedures. Indeed, that was the case for seven of the eight potential witnesses discussed by Plaintiffs in their brief. Rodriguez Decl. ¶ 9. Defendants currently see "no reason why the result would be any different here for those witnesses." Rodriguez Decl., Ex. B at 3.

---

[7] As with High-Level Employees, if Plaintiffs happen to discover the identity of a truly critical Other Foreign Deponent late into discovery, Plaintiffs may seek relief from the Court for sufficient time to depose that witness and litigate any objections. *See supra* at 18-19.

### C.      Defendants Have Not Agreed to Plaintiffs' Proposed Translation Protocol.

Plaintiffs incorrectly assert "there is no dispute about" their proposed translation protocol for depositions of foreign deponents. *See* Mot. 21. At no point did Defendants agree to that protocol. Rather, Defendants have maintained from the parties' joint Rule 26(f) statement until the latest meet-and-confer correspondence that the most sensible path is to meet and confer over "the appropriate procedures for" foreign depositions after Plaintiffs "identify specific overseas witnesses for deposition" and/or "notice their depositions." Dkt. 187 at 7; Rodriguez Decl., Ex. B at 3.

That continues to be Defendants' position. Take, for example, Plaintiffs' proposal providing for an automatic 50% increase in time per deposition if an interpreter is used at all. Proposed Order at 4. This would be excessive for witnesses whose English-speaking skills do not require an interpreter for all or nearly all of the deposition.[8] Rather than set procedures like these in a vacuum, the parties should wait until deponents are identified to negotiate and agree on sensible procedures.

## V.      CONCLUSION

For all of these reasons, the Court should deny Plaintiffs' Motion.

---

[8] The stipulated translation protocol in the SMA MDL—which Plaintiffs misleadingly claim their "proposal is modeled off, and consistent with" (Mot. at 20)—accounts for this nuance. It states: "To the extent an interpreter is not used for all or nearly all of a deposition, the time limit for that deposition will not be increased by 50%, but rather, by an amount agreed to by the parties to account for the use of the interpreter." [Case No. 4:22-MD-3047 (N.D. Cal.), Dkt. No. 1268, at 2-3]. If the Court is inclined to enter an order on the translation and interpretation of depositions, it should enter a protocol that is substantively identical to that used in the SMA MDL.

-21-

Dated: June 25, 2026

Respectfully submitted,

By: /s/ *Daniel M. Petrocelli*
       Daniel M. Petrocelli

DANIEL M. PETROCELLI
dpetrocelli@omm.com
DREW E. BREUDER
dbreuder@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California 90067-6035
Telephone:  +1 310 553 6700
Facsimile:   +1 310 246 6779

MATTHEW D. POWERS
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3832
Telephone: +1 415 984-8700
Facsimile: +1 415 984-8700

SID MODY (*pro hac vice*)
smody@omm.com
O'MELVENY & MYERS LLP
2801 North Harwood Street, Suite 1600
Dallas, TX 75201
Telephone:  +1 972-360-1900
Facsimile:   +1 972-360-1901

*Attorneys for Defendants ByteDance Ltd., ByteDance Inc., TikTok Ltd., TikTok Inc., TikTok LLC, TikTok Pte. Ltd., and TikTok USDS Joint Venture LLC*

-22-

# CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2026, a true and correct copy of Defendants' Opposition to Plaintiffs' Motion for Case Management Order Re Foreign Deponents was served upon the following via the CM/ECF system:

DEREK W. LOESER
dloeser@kellerrohrback.com
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101
(206) 623-1900
(206) 623-3384 (fax)

ERIC A. KAFKA
ekafka@cohenmilstein.com
COHEN MILSTEIN SELLERS AND TOLL PLLC
88 Pine Street, 14th Floor
New York, NY 10005
212-838-7797
212-838-7745 (fax)

Dated: June 25, 2026                          /s/ Daniel M. Petrocelli
                                              Daniel M. Petrocelli

-23-

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants ByteDance Ltd., ByteDance Inc., TikTok Ltd., TikTok Inc., TikTok LLC, TikTok Pte. Ltd., and TikTok USDS Joint Venture LLC, certifies that Defendants' Opposition to Plaintiffs' Motion for Case Management Order Re Foreign Deponents contains 6785 words, which complies with the word limit of L.R. 11-6. I declare under the penalty of perjury that the foregoing is true and correct.

Executed on this 25th day of June, 2026 in Los Angeles, California.

*/s/ Daniel M. Petrocelli*
Daniel M. Petrocelli

-24-