UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
# [FOR PUBLIC VIEW]
**CIVIL MINUTES - GENERAL**

| Case No. | MDL 3144-GW-RAOx | Date | July 1, 2026 |
|---|---|---|---|
| Title | *In Re: Tiktok, Inc., Minor Privacy Litigation* | | |

Present: The Honorable    GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | None Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:                Attorneys Present for Defendants:

None Present                              None Present

**PROCEEDINGS:**    **IN CHAMBERS - TENTATIVE RULING ON PLAINTIFFS' MOTION TO ENFORCE COMPLIANCE WITH COURT ORDERS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37(B) [233]**

Attached is the Court's *redacted* Tentative Ruling on Plaintiffs' Motion [233] set for hearing on July 1, 2026 at 8:30 a.m.

                                                                    :

                                    Initials of Preparer    JG

CV-90 (06/04)                    **CIVIL MINUTES - GENERAL**                    Page 1 of 1

***In Re: Tiktok, Inc., Minor Privacy Litigation***; 2:25-ml-03144-GW-(RAOx)
Tentative Ruling on Motion to Enforce Compliance with Court Orders

Before the Court is the Motion to Enforce Compliance with Court Orders pursuant to Federal Rule of Civil Procedure 37(b) (the "Motion") filed by Plaintiffs J.C., A.J., B.M., L.F., D.M., D.G., A.B., A.L., M.G., V.M., Z.B., I.B., K.F., J.W., S.T., I.T., and E.B. (collectively, "Plaintiffs").[1]  *See* Motion, Docket No. 240.  The Motion concerns a long-running evidentiary dispute between Plaintiffs and Defendants ByteDance Inc., ByteDance Ltd., TikTok Inc., TikTok Ltd., TikTok LLC, TikTok Pte. Ltd., and TikTok U.S. Data Security Inc. (collectively, "Defendants").  The Court has considered the Motion, Defendants' opposition ("Opp.," Docket No. 259), and Plaintiffs' reply ("Reply," Docket No. 264-1).  The Court has also considered the subsequently filed Supplemental Declaration of William Wang in Support of Defendants' Opposition.  *See* Declaration of Matthew Powers ("Powers Decl."), Ex. A ("Wang Supp. Decl."), Docket No. 283-2.  For the reasons stated herein, the Court would **GRANT IN PART** and **DENY IN PART** the Motion.

I.    **Background**[2]

The parties have been conferring about preservation and production of user data for over a year.  In the April 24, 2025 Joint Status Report filed within weeks of the creation of this multi-district litigation, Plaintiffs explained that they sent a letter to Defendants "identifying categories of evidence for Defendants to preserve," but learned that Defendants were "deleting" data

---

[1] Upon receipt of the parties' Stipulation to Modify Sealing Procedure, *see* Docket No. 250, the Court adopted for the purposes of the instant Motion the following procedure for the submission of documents containing confidential material under seal: "(1) the procedures set forth in C.D. Cal. L.R. 79-5.2 are superseded; (2) the initial motion document, the opposition and reply will be lodged with the court (in normal sequence/timetable) with the confidential (to be sealed) portions highlighted and a concomitant index delineating the bases for sealing those portions; (3) within three days of the filing of the reply, counsel will meet and confer and lodge with the court a joint document which designates whether any party has any objections to the highlighted portion of any lodged document and the bases for each objection; and (4) at the hearing on the motion(s), the Court will rule on whether the highlighted portions of any documents will remain sealed or will be filed on the docket and open to the public." *See* Docket No. 257.  On June 22, 2026, the parties submitted a joint report on sealing the briefing related to the instant Motion pursuant to this procedure.  The report indicates that neither party has any objections to the Court's sealing the requested portions of the briefing.  After reviewing the documents and concomitant redactions plus considering the applicable law, the Court grants the parties' request to seal the selected portions of the briefing in accordance with the joint report.

[2] For the purposes of the instant Motion, the Court recounts only the parties' preservation dispute.  A more fulsome explanation of the TikTok platform, the substantive allegations at issue in this case, and the procedural history of this case as well as related litigation history involving TikTok can be found in the Court's tentative ruling on Defendants' motion to stay and motion to dismiss, which was subsequently adopted as its final ruling.  *See* Docket Nos. 128 (at 1-4 of 40) and 133.

1

Plaintiffs consider to be "important evidence" – *i.e.* evidence that would "demonstrate the breadth of Defendants' collection and use of children's personal information and the unjust enrichment that Defendants earned."[3]  *See* Docket No. 10 at 5 of 32.  Defendants' position was that Plaintiffs were seeking "virtually all data from every TikTok account," which they asserted would be "technically inconceivable" and overly burdensome.  *Id.* at 6 of 32.  Accordingly, Defendants indicated that "[a]bsent an order by this Court, [they did] not intend to modify their existing account deletion practices."  *Id*. The Court subsequently ordered that "Defendants will preserve data until the Court orders further unless the parties make a request on an ex parte basis."  Docket No. 11 at 2.

On April 30, 2025, Defendants moved *ex parte* to temporarily suspend the Court's preservation order to investigate technological feasibility issues associated with pausing overlapping deletion policies and preserving/storing large amounts of user data.  *See* Docket No. 19.  The Court denied the *ex parte* application on May 5, 2025, finding that Defendants' potential technical difficulties did "not justify setting aside the preservation order, particularly given the risk to Plaintiffs of lost evidence," but noted that "[i]f Defendants ultimately cannot preserve some data within the scope of the preservation order because of technical or other practical limitations, they will not face sanctions," as they were "not expected to accomplish something truly infeasible."  *See* Docket No. 25 at 2.

Per the Court's order, Defendants then filed a brief identifying the existing technological means by which they were preserving data, anticipated further technological challenges, and a proposed plan.  *See* Docket No. 41.  Plaintiffs objected to Defendants' preservation proposal, arguing that it excluded data relevant to Plaintiffs' case and that neither Plaintiffs nor the Court could evaluate its reasonableness without further understanding of Defendants' technological capabilities.  *See* Docket No. 51.  As the nature of the disputed information and preservation issues evolved, and in an effort to clarify the technological issues for both the Court and the parties, the Court ordered a technology tutorial.  *See* Docket No. 62.  On June 23, 2025, the Court further "direct[ed] the parties to continue to confer on the categories and scope of preserved information consistent with Defendants' technological and economic capacity and Plaintiffs' reasonable and proportionate need to access relevant records."  *See* Docket No. 79.

---

[3] Plaintiffs indicated that they expected: "Defendants to preserve the data regarding what it collected from each TikTok account and the revenue that TikTok earned from each account."  *See* Docket No. 10 at 5 of 32.

In the parties' July 9, 2025 status report, the parties appeared closer to agreeing upon the categories of information to be preserved; the primary outstanding issues were: (1) Plaintiffs' proposal for a "30-day snapshot" of all user data within the United States, which Defendants would "agree to implement" but the parties disputed which of them should pay for, and (2) Plaintiffs' request of a list of all categories of data Defendants preserve and collect from users, which Defendants contended was technologically infeasible, a position Plaintiffs disputed. *See* Docket No. 93. Defendants indicated that they "[did] not believe that further modification to the Court's preservation order [to be] necessary at this time," while Plaintiffs indicated that they intended to file motions on preservation of the two disputed issues identified in the joint report. *Id*. at 9-10.

Unable to resolve the issue, the parties filed dueling motions. Defendants moved for a protective order limiting their preservation obligations, and Plaintiffs moved to compel production of exemplar data for the named Plaintiffs and 34 randomized additional users.[4] *See* Docket Nos. 113, 114. On November 10, 2025, the Court denied Defendants' motion for a protective order and granted Plaintiffs' motion to compel. *See* Docket Nos. 134, 137. As relevant here, the Court ordered Plaintiffs to provide Defendants with username information sufficient to identify their accounts and ordered Defendants, "[t]o the extent they were not preserving such information previously under the Court's prior orders," to immediately preserve information associated with Plaintiffs' accounts. *See* Docket No. 134 at 11. The Court further ordered that, if there had been deletions during the pendency of this litigation, Defendants were to provide Plaintiffs with information concerning the dates of those deletions to the extent such information was available. *Id.*

The parties' dispute over production continued after the November 2025 order. At the January 30, 2026 status conference, the Court ordered Defendants to provide Plaintiffs with "every document referencing Plaintiffs and their data" within 30 days. *See* Docket No. 178. On March 12, 2026, Defendants produced data associated with Plaintiffs' TikTok accounts. *See* Motion at 4. At the March 13, 2026 status conference, however, Plaintiffs raised an issue with Defendants' production of user data. The Court then directed Defendants to "provide Plaintiffs remaining documents concerning the named Plaintiffs or an explanation of why doing so would be impossible by Thursday, March 19, 2026." *See* Docket No. 191 at 1. At the hearing, the Court explained that

---

[4] The current Motion refers to 68 random users based on the later random-user productions at issue in this dispute.

Defendants had to "establish the impossibility before" refusing to produce the remaining materials. *See* Declaration of Eric Kafka ("Kafka Decl."), Ex. 4 ("Mar. 13, 2026 Tr."), Docket No. 233-6, at 8:25-9:7, 9:20-21. On March 19, 2026, Defendants produced additional data and sent Plaintiffs a letter explaining why Defendants could not guarantee production of every document or data point associated with each user. *See* Kafka Decl., Ex. 5 ("Mar. 19, 2026 Letter from M. Powers"), Docket No. 240-2.

Plaintiffs now bring this Motion, seeking an order enforcing the Court's prior orders and requiring Defendants to: (1) produce all data associated with the named plaintiffs and selected random users, (2) preserve user data, and (3) provide Plaintiffs with information concerning the dates of any deletions of user data during the pendency of this litigation. *See* Docket Nos. 233-1, 240.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 37(b) authorizes "further just orders" to address a party's failure to comply with a discovery order. Fed. R. Civ. P. 37(b). "[W]hen required disclosures aren't made or cooperation breaks down, Federal Rule of Civil Procedure 37 allows a party to move for an order compelling disclosures or discovery." *Sali v. Corona Reg'l. Med. Ctr.*, 884 F.3d 1218, 1219 (9th Cir. 2018). A further order issued pursuant to Rule 37 may direct the responding party to comply with the original discovery order. *Id.* at 1223 (explaining that a court's power under Rule 37 extends broadly to "issue orders enforcing a party's discovery obligations"). Where a court opts to enforce its discovery orders, rather than issue sanctions, pursuant to Rule 37(b), it need not reach the issue of whether a party has acted in good faith in failing to meet its discovery obligations. *See, e.g.*, *Marti v. Manning*, No. 2:21-cv-01829-DAD-SCR, 2025 WL 708515, at *7 (E.D. Cal. Mar. 5, 2025) (declining to issue sanctions or hold defendants in contempt under 37(b) but instead to "enforce compliance" with the court's discovery orders).

## III.    DISCUSSION

The Court finds itself yet again confronted with a dispute as to the extent of data production and preservation required of Defendants in this consolidated action. Defendants maintain that technological constraints make it impossible for them to produce the entirety of the data associated with Plaintiffs and the 68 random users, and that it is overly burdensome to require preservation of all user data until such production is complete. *See* Opp. at 13. Defendants also argue that the Court's orders never required them to do so. *Id.* at 11. Plaintiffs contend that this Court has been

4

clear that in the absence of a showing of technical impossibility, all user data associated with Plaintiffs and the random users must be produced, and that Defendants have not shown a sufficient technical limitation. *See* Motion at 10-11. Further, Plaintiffs argue that broad existing preservation orders are still appropriate, as Plaintiffs can only establish the extent of data that must be preserved once they have a deeper understanding of the nature of the information Defendants collect and how it is used. *Id.* at 12.

### A.  Production of User Data

The Court has previously ordered that Defendants must produce all documents and data associated with Plaintiffs and the selected random users. First, on November 10, 2025, the Court granted Plaintiffs' motion to compel the production of all data for the Named Plaintiffs and the then-34 randomized additional users. *See* Docket No. 134 at 2; Docket No. 114-2. The Court considered and rejected Defendants' argument that "Plaintiffs' request for all user data (and for the random account user data) is not reasonable or proportionate to their needs." *See* Docket No. 134 at 11. The Court then reiterated this position in a subsequent status conference. On January 30, 2026, the Court ordered Defendants to "provide Plaintiffs every document referencing Plaintiffs and their data within 30 days." *See* Docket No. 178. And at that status conference the Court explicitly spelled out its order, stating that Defendants must "provide to the plaintiffs *every document* that the defendant has, which names or otherwise references, any of the named plaintiffs or *any of the dat[a]* that would be associated with them, for example, device data, anything of that sort." *See* Kafka Decl., Ex. 20 ("Jan. 30, 2026 Tr."), Docket No. 265-5, at 12:21-25 (emphasis added).

The Court, however, has also recognized that Defendants need not accomplish what is truly impossible or technically infeasible, and has allowed Defendants to explain why particular remaining production cannot be completed. On March 13, 2026, the Court ordered Defendants "to provide Plaintiffs remaining documents concerning the named Plaintiffs or an explanation of why doing so would be impossible by Thursday, March 19, 2026." *See* Docket No. 191. Defendants have subsequently explained that the user data production process is a "time-consuming" and "laborious" ███████ process. *See* Opp. at 13-14. The Court agrees with Defendants that because of the vastness of its data repository, ████████████████████ ████████████████████ would not be feasible. *Id.* at 13. That then leaves ████████████ ████████████████ Defendants describe ████████████████

5



*Id.*

First, Defendants appear to have ███████████████████████████████████

████████████████████████████████████████████████████████

██████████████████ Defendants acknowledge in their opposition ████████████

████████████████████████████████████████████████████████

██████████ *Id.* at 16.  Additionally, as Plaintiffs point out, Defendants already have a mechanism for deleting all data associated with a given user.  *See* Motion at 9 n.2.  While the Court understands that deletion of data is different from selection of that data for download, ███████████████

████████████████████████████████████████████████████████

██████████████

As to the remaining steps involved with querying – rather than merely identifying – the relevant user data, Defendants' opposition and supplemental explanation sufficiently clarify that there are practical limits to producing literally all user data for Plaintiffs and the selected random users.  Defendants explain that user data is distributed across numerous systems and approximately ██████ tables.  *See* Opp. at 13-16.  They further explain that ██████ tables queried for Plaintiffs took ███████████████████████, that the overall data extraction took approximately ██ ████████████████████████████, and that querying every table with user data could require ████████████████████████████ *See* Wang Supp. Decl. ¶¶ 3-7.  Therefore, the production ordered by the Court cannot reasonably be understood as requiring Defendants to guarantee capture of literally every data point associated with each user across every table.

Defendants' showing, however, does not establish that they have complied with the Court's prior production orders.  Plaintiffs identify at least one concrete category of relevant user data that Defendants have not produced: data reflecting users' assigned ██████ or ██████ including ██████████ which Plaintiffs contend TikTok uses to ████████████████████ *See* Motion at 9-10.  Defendants respond that this omission is minor in comparison to the substantial volume of data already produced and represent that they will produce ████████ ██ *See* Opp. at 12.  But Plaintiffs can only point to examples of data they have later come to understand was missing from Defendants' initial production; Plaintiffs cannot expressly request data they do not know exists.  "The first step in getting to the bottom of [COPPA] accusations [is] to figure out what information [Defendants] collected on the named plaintiffs."  *In re Facebook,*

*Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 929 (N.D. Cal. 2023). "Without knowing the universe of named plaintiff data that exist[s], it would be difficult (if not impossible) to verify [Defendants'] representations" as to the nature of the data they collect from Plaintiffs and how it is used, not to mention the ongoing dispute regarding the technological feasibility of locating, extracting, and preserving that data. *Id.*

Accordingly, Defendants remain obligated to comply with the Court's prior orders requiring production of data associated with Plaintiffs and the 68 random users. The Court will not require Defendants to conduct a technically infeasible, brute-force search across ███████ ███████████████ – so long as they adequately establish beforehand that the requested search is in fact technically infeasible and/or overwhelmingly burdensome as compared to its proportionality to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1); *Pizzuto v. Tewalt*, 136 F.4th 855, 868 n.6 (9th Cir. 2025). However, Defendants may not rely on generalized assertions to avoid production of user-associated data that can be identified and extracted through reasonable efforts. Thus, to the extent Defendants contend that any category of user data cannot reasonably be searched for or produced, Defendants must provide Plaintiffs with an accounting of that category. The accounting must identify for each such category: (1) a description of the category of data at issue, including the relevant table and fields where that information is known or reasonably ascertainable; (2) an explanation of the targeted search process that would be required; and (3) the specific technical or practical reason Defendants contend the data cannot reasonably be searched for or produced. Defendants must also state whether a narrower sample or other alternative is feasible. At the hearing, the Court will discuss with the parties the deadline for this production and any required accounting.

As outlined above, the Court would therefore GRANT IN PART the Motion as to data production. The Court would DENY IN PART the Motion to the extent it seeks to enforce an order that requires production of literally every byte of user data stored in Defendants' systems. *See, e.g.*, footnote 3, *supra*

## B. Preservation of Data

Plaintiffs also seek enforcement of the Court's prior preservation orders. Plaintiffs argue that Defendants have been ordered by the Court to preserve all user data for their U.S. platform. *See* Motion at 12 ("For avoidance of doubt, Plaintiffs would not agree to TikTok deleting any user data, absent a court order."). Plaintiffs contend that Defendants have violated this order by

indicating during the parties' May 5, 2026 meet-and-confer that Defendants were "only preserving three types of data for this litigation: (1) the data that TikTok has produced that is associated with the Named Plaintiffs; (2) the data that TikTok has produced that is associated with the 68 random users; and (3) data for under-13 accounts that TikTok has banned from the platform." *Id.* at 11. For example, Plaintiffs contend that Defendants should have preserved ███████████ for all users, including ████████████████████████████ *See* Motion at 13. Defendants respond that the Court never ordered platform-wide preservation of all user data, and that preservation of every item of data for every user would be technically infeasible and disproportionate. *See* Opp. at 19.

The Court agrees with Plaintiffs in part. The Court's prior preservation orders were not limited to data associated with the named Plaintiffs, the random users, and banned under-13 accounts. The Court's November 10, 2025 order did not narrow Defendants' preservation obligations to those categories. Instead, the Court recounted that it had previously ordered Defendants to "preserve data until the Court orders further" and denied Defendants' motion for a protective order seeking to limit preservation. *See* Docket No. 134 at 3, 9-11. The Court also ordered Defendants, "[t]o the extent they were not preserving such information previously under the Court's prior orders," to immediately preserve information associated with Plaintiffs' accounts. *Id*. That account-specific directive supplemented, rather than replaced, Defendants' broader preservation obligations. Accordingly, Defendants were not permitted to unilaterally limit preservation to only the named Plaintiffs, the random users, and banned under-13 accounts.[5]

At the same time, the Court does not read its prior orders to require Defendants to preserve every item of data for every user indefinitely and without regard to technical feasibility. The Court has already recognized that Defendants are not required to accomplish what is truly infeasible. In denying Defendants' May 5, 2025 *ex parte* application seeking to limit preservation, the Court explained that Defendants' anticipated technical difficulties did "not justify setting aside the preservation order, particularly given the risk to Plaintiffs of lost evidence," but also stated that

---

[5] Additionally, the parties' prior discussions regarding a possible 30-day snapshot did not modify the Court's preservation orders or authorize Defendants to delete otherwise relevant user data. Those discussions may inform a future preservation limitation, but no agreement or Court order narrowed Defendants' preservation obligations. The Court also notes that Plaintiffs' ability to evaluate a narrower preservation protocol has been impeded by the ongoing dispute over whether Defendants have produced comprehensive data associated with Plaintiffs and the random users. *See* Motion at 12-13; Reply at 12-13.

Defendants would not face sanctions if they ultimately could not preserve some data because of technical or practical limitations. *See* Docket No. 25 at 2.

Although Defendants' interpretation of the preservation orders was too narrow, the Court need not presently decide whether any specific deletion violated those orders or warrants sanctions. Further, the current record does not allow the Court to determine which deletion processes affect relevant user data, which of those processes could feasibly have been suspended, what data has been lost, or when any such deletion occurred. The Court will therefore clarify and enforce Defendants' preservation obligations but will not at this stage make a finding of a violation.

Defendants are ordered to preserve, to the extent technically feasible, user data relevant to the claims and defenses in this action beyond the three categories identified during the May 5, 2026 meet-and-confer. Defendants must suspend, to the extent feasible, deletion processes that are reasonably likely to affect such relevant user data. *See In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1070 (N.D. Cal. 2006) (holding that under the duty to preserve, a litigant is "required to suspend any existing policies related to deleting or destroying files"). For any deletion processes affecting relevant user data that Defendants contend cannot feasibly be suspended, Defendants must provide Plaintiffs with an accounting of that process. The accounting must identify for each deletion process: (1) the category of data affected, including specific tables and fields where that information is available, and the user population affected; (2) what triggered the deletion; (3) the time period(s) during which the process operated and the frequency of deletion; and (4) the specific technical or practical reason Defendants contend the process cannot feasibly be suspended. Defendants may not satisfy this obligation merely by stating that ███████ ████████████████████████████ After Defendants complete the production and any accounting described in this Tentative Order, the parties are ordered to meet and confer regarding whether a snapshot or other narrower preservation protocol would adequately preserve evidence going forward. Unless and until the Court approves a stipulated preservation protocol or otherwise orders, Defendants' preservation obligations remain as set forth in this Tentative Order.

Accordingly, the Motion is GRANTED IN PART as to preservation. The Court reaffirms and clarifies that Defendants' preservation obligations are not limited to data concerning Plaintiffs, the 68 random users, and banned under-13 accounts. The Motion is DENIED IN PART to the extent Plaintiffs seek a definitive finding, on the present record, that any specific deletion violated the preservation orders or warrants sanctions.

**IV.      Conclusion**

Based on the foregoing discussion, the Court would **GRANT IN PART** and **DENY IN PART** the Motion.  The Motion is granted and denied as to production and preservation on the terms set forth above.  At the hearing, the Court will discuss with the parties the deadlines for any further production, production and preservation accounting, and the meet-and-confer regarding a narrower preservation protocol.