DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
**O'MELVENY & MYERS LLP**
1999 Avenue of the Stars, Suite 800
Los Angeles, California 90067-6035
Telephone:  +1 310 553 6700
Facsimile:  +1 310 246 6779

STEPHEN D. BRODY (*pro hac vice*)
sbrody@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone:  +1 202 383 5300
Facsimile:  +1 202 383 5414

MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center
San Francisco, CA 94111
Telephone:  +1 415 984 8700
Facsimile:  +1 415 984 8701

*Attorneys for Defendants ByteDance Ltd.,*
*ByteDance Inc., TikTok Ltd., TikTok Inc.,*
*TikTok LLC, TikTok Pte. Ltd., and*
*TikTok U.S. Data Security Inc.*

Derek W. Loeser (*pro hac vice*)
dloeser@kellerrohrback.com
Cari Campen Laufenberg (*pro hac vice*)
claufenberg@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101
Telephone:  (206) 623-1900
Facsimile:  (206) 623-3384

Eric Kafka (*pro hac vice*)
ekafka@cohenmilstein.com
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Telephone:  (212) 838-7797
Facsimile:  (212) 838-7745

*Plaintiffs' Interim Co-Lead Counsel*

Steven Bloch (*pro hac vice*)
sbloch@sgtlaw.com
**SILVER GOLUB & TEITELL LLP**
One Landmark Square, 15th Floor
Stamford, CT 06901
Telephone:  (203) 325-4491
Facsimile:  (203) 325-3769

*Plaintiffs' Executive Committee*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TIKTOK, INC., MINOR PRIVACY LITIGATION | Case No. 2:25-ml-03144-GW-RAO<br><br>**JOINT STATUS REPORT FOR JULY 29, 2026 INFORMAL DISCOVERY CONFERENCE**<br><br>Hon. Rozella A. Oliver<br>Courtroom: 590 |

1

Pursuant to the Court's Order, ECF No. 277, and the Parties' agreement, the Parties submit this Joint Status Report on issues discussed during the June 26, 2026 Informal Discovery Conference, any other discovery disputes arising out of the Court's June 4, 2026 Order, and any additional or new discovery disputes.

The Parties have agreed to submit a separate joint statement regarding custodians and search terms on Monday, July 27, 2026 so that the Court can resolve the Parties' disputes regarding search terms and custodians at the July 29 status conference.

## I.    PLAINTIFFS' DISCOVERY

**A.    Agreed Issues**

- **End date for ESI Production:** The parties have agreed that TikTok will search for and produce ESI generated on or before May 26, 2026. Plaintiffs reserve the right to make specific requests for documents generated after May 26, 2026. TikTok also has an obligation to supplement its document production as required by Federal Rule of Civil Procedure 26.

- **Plaintiffs' Interrogatory No. 1**: The parties have agreed that TikTok will further supplement its June 30, 2026 Response by (a) providing each individual's dates of employment for the job title identified in the Response and (b) providing an explanation for why a given category is that individual's primary responsibility. TikTok will make every effort to provide this information in letter form by July 24, 2026.

- **Plaintiffs' RFP No. 12**: This dispute has been resolved because TikTok has confirmed it is not aware of any responsive documents in its possession, custody, and control, and does not believe such documents exist. Defendants reserve their right to supplement their production should such documents become known.

- **Plaintiffs' RFP No. 16**: The parties have agreed that TikTok will provide written confirmation regarding whether any revenue exists from Kids Mode by July 31, 2026.

- **Non-Custodial/Other Search Methodologies**: The parties have agreed that TikTok will provide an explanation of the "noncustodial databases" or "other noncustodial search methodologies" TikTok is using to search for and collect noncustodial "go get" documents.

2

- **Mapping of Bates Numbers to Table Names.** Plaintiffs requested that, "for each Bates numbered file" in TT-MP-003, 005, 006, and 007, [Defendants] identify the name of the table the file corresponds to." Defendants agreed to Plaintiffs' request and will provide a crosswalk that maps table names to Bates numbers for each table produced in TT-MP-003, 005, 006, and 007.

- **Additional Information to Interpret DYD Files.** Plaintiffs requested that Defendants provide "an updated User Data Source Overlay that contains sufficient information for Plaintiffs to determine the type of data contained in each file in volume TT-MP-001." Defendants agreed to the request and will provide such an overlay.

- **Minor AED Model + Minor Multmodel model:** TikTok has agreed to produce the repository or the change logs for the Minor AED Model + Minor Multmodel model.

## B.    Disputed Issues at Impasse

### 1.    Plaintiffs' Requests for Admission Nos. 18–21, 41, 45, 47, 57–58, 73, and 109–112.

#### a.    Plaintiffs' Statement

On March 24, 2026, Plaintiffs served on Defendants their First Set of Requests for Admission, which address a range of subjects relevant to this litigation. Following Defendants' initial responses and objections on April 23, 2026, the Parties have met and conferred multiple times and exchanged correspondence regarding these Requests. Defendants have agreed to amend responses to some Requests by July 29, 2026.[1] Defendants maintain the accuracy of their response to other Requests.[2] Plaintiffs disagree and believe many of Defendants' responses to these Requests are inaccurate, and Plaintiffs reserve the right to seek relief under Rule 37(c)(2) at the appropriate time.

Plaintiffs raise here the insufficiency of Defendants' answers to RFA Nos. 18–21, 41, 45, 47, 57–58, 73, and 109–112, which ask Defendants to admit representations they expressly made in the Joint Operations Report, *see* ECF No. 162-1, or in correspondence

---

[1] Specifically, Plaintiffs RFA Nos. 6–7, 9–12, 22, 25–30, 35–38, 40, 42–44, 46, 48, 56, 60–62, 64, 66–71, 82–86, 88, 93–95, 101–104, 106, 113, and 116.

[2] Specifically, Plaintiffs RFA Nos. 4–5, 17, 23–24, 31–33, 50–55, 63, 65, 72, 74–76, 78, 81, 87, 89–90, 92, 96, 99–100, 105, 107–108, and 114.

ordered by the Court at the January 30, 2026 status conference, as well as public allegations or evidence in other legal proceedings involving TikTok. Defendants' objections are meritless (e.g., it strains credulity for Defendants to object now that TikTok's own statements are vague, ambiguous, and overbroad, or to contest the relevance of issues at the core of this case, such as the design of the age gate; the details of age-based restrictions; the implementation and collection of data from users in "Kids Mode"; who decides whether a user is underage; and TikTok's advertising business and technology).

Nonetheless, Defendants wrote in a June 29, 2026 letter that they were "stand[ing] on their objections" to these Requests. Defendants now state that they are considering amending their answers to these Requests but have not indicated which ones or how they might amend their answers. Plaintiffs will assess any amendments and let the Court know if they resolve the parties' dispute.

Currently, the Parties are at impasse on these Requests, and Plaintiffs respectfully request the Court set a briefing schedule to address Defendants' insufficient responses.

### b.    Defendants' Statement

Defendants responded to 116 of Plaintiffs' Requests for Admission on April 23, 2026.  Since then, the Parties have met and conferred in good faith, and Defendants have already agreed to amend 51 of those responses by July 29, 2026.  Defendants have not foreclosed the possibility of amending additional responses beyond those 51.  Throughout these discussions, Defendants have made clear that their review remains ongoing.  One June 29, Defendants confirmed via letter that they would serve amended responses by July 29 in light of the Court's June 26 rulings, while expressly reserving the right to make further amendments as their investigation continues by the July 29 deadline.

Despite this, Plaintiffs now ask the Court to intervene, challenging the purported insufficiency of Defendants' answers to RFA Nos. 18–21, 41, 45, 47, 57–58, 73, and 109–112.  That request is premature.  Defendants have not yet served their amended responses, and asking the Court to set a briefing schedule before that process concludes runs directly

contrary to the good-faith negotiations that produced the Parties' July 29 agreement in the first place. Defendants remain committed to finalizing their review and serving amended responses by that deadline. If any genuine dispute remains afterward, it will involve, at most, a handful of discrete Requests—and Defendants are willing to meet and confer on those at that time. The Court need not expend its resources setting a briefing schedule for a dispute that may resolve itself, in large part, within days.

**2.      Plaintiffs' Interrogatory No. 2**

**a.      Plaintiffs' Statement**

As previewed in Plaintiffs' Motion for Reconsideration, ECF No. 307, TikTok's Supplemental Response to Interrogatory No. 2 ("Response") is deficient. "A party answering interrogatories has an affirmative duty to furnish ***any and all*** information available to the party." *SEC v. Mazzo*, 2013 WL 12172628, at *4 (C.D. Cal. Oct. 24, 2013) (quoting 7 James Wm. Moore et al., *Moore's Federal Practice*, § 33.102[1], at 33–72) (emphasis added).

Interrogatory No. 2 asks TikTok to "Describe how TikTok uses data from TikTok users for content recommendation, advertising, algorithm training, engagement optimization, and other internal purposes." ECF No. 307-8 at 15. TikTok's Supplemental Response only describes the fact that TikTok uses data, not *how*, and it draws that description solely from public materials. *See* ECF No. 307-8 at 17–27; *see also U.S. ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 646, 650 (C.D. Cal. 2007) ("It is well established that an answer to an interrogatory must be responsive to the question.") (internal citation and quotation marks omitted). Rather than answer Interrogatory No. 2, the Response recites information from TikTok's public website, and it cites TikTok's public help center and support pages as the "underlying source(s) of the information." *See* ECF No. 307-8 at 25–27; ECF No. 247 at 8. This is plainly deficient. *See Jefferson v. Austin*, 345 F.R.D. 249, 256 (D.D.C. 2024) (interrogatory response where a defendant merely "point[ed] to the time and attendance policy already provided to Plaintiff" was insufficient). To add insult to injury: most of those website links are dead. That TikTok

did not even bother to test whether nine of the 17 URLs it proffered in its Response actually function[3] is yet another indicator of how seriously TikTok took its obligation to the Court.

In the **overview** section, TikTok rattles off a long list of purposes for which TikTok uses user data, ECF No. 307-8 at 19–21, but fails to describe *how* user data is used for each purpose TikTok includes on its list. Likewise, while TikTok provides a bit more detail on **age content and age moderation** by actually describing the methods for detecting under-13 accounts, it still does not describe *how* user data is used. *See id.* at 21–22.

On **advertising**, TikTok's Response describes data use for the general Full Access Platform population and for the separate "Under 13 Experience." *Id.* at 23–24. The Response describes the fact that TikTok uses user data for advertising but not *how* TikTok does so. *Id.* For instance, TikTok states that "ad targeting is based on different types of user information," but fails to describe how; that "[i]nterests, behaviors, and characteristics are created over time based on data about people's interactions with the platform," but fails to describe how; that "TikTok's inference models may also be used to ascertain age and gender data," but fails to describe how; and that "TikTok may also use data from advertisers (via Pixel or other data sharing tools) . . . to receive data to measure and report on the effectiveness of an advertiser's ad campaign" but fails to

---

[3] The following URLs provided by TikTok in its Response were inaccessible as of July 19, 2026: https://ads.tiktok.com/help/article/appactivity?lang=en (landing page that says "Sorry! The article you are looking for no longer exists or failed to load."); https://ads.tiktok.com/help/article/interesttargeting?redirected=1 (same result); https://ads.tiktok.com/help/article/age-andgender-targeting?lang=en (same result); https://ads.tiktok.com/help/article/behaviortargeting?redirected=1 (same result); https://ads.tiktok.com/help/article/shopretargeting?lang=en ("404 Page Not Found. Sorry, but the page you were trying to view does not exist."); https://www.tiktok.com/legal/page/global/ageappropriate-experiences/en ("404 Couldn't find this page."); https://www.tiktok.com/communityguidelines/en/youth-safety (same result); https://www.sensical.tv/press/common-sense-networks-launches-three-fastchannels ("Page Not Found. Sorry, but the page you are looking for doesn't exist or has been moved"); "https://ads.tiktok." is missing the top-level domain.

describe how. *Id.* at 23. Nor does TikTok address how it uses the data of accounts its own systems have flagged as suspected under-13 users while those accounts remain on the Full Access Platform. *See id.* The Response also advances assertions that cannot be tested against the interrogatory alone, such as that the ad-targeting system is "separate from the algorithmic system used to identify users who may be under 13." *Id.* at 22.

On **content recommendation**, the Response describes only that TikTok's recommendation system "sorts and ranks content based on a variety of factors, including user activity and engagement on the platform," and lists signals such as likes, comments, watch history, and search history. *Id.* at 22–23. It does not describe how those signals are weighted or used to rank content, how the recommendation system treats the data of suspected under-13 users on the Full Access Platform, or how recommendation interacts with the age-based content filtering. As with advertising, the description tracks TikTok's public Terms of Service and Privacy Policy rather than any internal record. *Id.* at 25–27.

On **algorithm training**, the Response states that "TikTok relies on user data to train various algorithms used to operate the Full Access Platform, including their age-assessment algorithms, content-moderation algorithms, recommendation system algorithms, and advertising algorithms," but says nothing about how under-13 users' data is used to train those algorithms. *Id.* at 22. It instead simply asserts that "the algorithmic system for identifying traits for ad targeting is separate from the algorithmic system used to identify users who may be under 13." *Id.*

On **engagement optimization**, the Response does not describe the practice at all. TikTok objects to the term "engagement optimization" and disputes its premise, then recharacterizes the use as recommending content it "believes people will find relevant, interesting and enjoyable." *Id.* at 24–25. An objection to Plaintiffs' terminology is not a description of how TikTok uses data to optimize engagement.

Finally, on **other internal purposes**, TikTok lists out types of user information it uses, but not *how* that information is used for "providing personalized content in the Full Access Platform, troubleshooting glitches, safeguarding the integrity and security of the

service, and complying with legal obligations," *Id.* at 25, or whether there are other internal purposes not enumerated in that list.

In sum, TikTok's Response provides a superficial, policy-level narrative rather than the operational detail that internal documents would reflect. *See* ECF No. 307-8 at 17–27. That is why TikTok did not even bother to designate any of the Response as confidential. *See id.* A recitation of publicly available policies is insufficient for an interrogatory response—let alone one that the Court expressly ordered ***in lieu of producing internal documents for RFP No. 36***. *See* ECF No. 247 at 8.

Notwithstanding this facially deficient Response, Plaintiffs proposed the following compromise: if TikTok produces documents responsive to RFP No. 36, as it was written, by September 11, 2026, then TikTok need not supplement its answer to Interrogatory No. 2 until after it has had a chance to review the underlying documents, or by September 18, 2026, whichever comes first. To date, TikTok has not accepted Plaintiffs' offer. Plaintiffs respectfully request that the Court order TikTok to produce documents responsive to RFP No. 36 and provide a "robust and complete response" to Interrogatory No. 2. *See* ECF No. 247 at 8.

          **b.    Defendants' Statement**

Rog No. 2 asks for a description of "how TikTok uses data from TikTok users for content recommendation, advertising, algorithm training, engagement optimization, and other internal purposes." In the context of this case, that is an incredibly broad question about very complex systems and essentially asks for every aspect of how a social media company uses data. Nevertheless, Defendants provided a nine-page response that described with substantive, non-public detail how TikTok uses specific pieces of information for each of the requested data uses.

In their Motion for Reconsideration and JSR Statement regarding Rog No. 2, Plaintiffs contend that Defendants' R&O to Rog No. 2 "only describes the fact that TikTok uses data, not *how*" and "draws that description solely from public materials." But, first, Defendants did not draw the information provided in response to Rog No. 2

solely from public materials.  Defendants list both individual employees at TikTok as well as public policy documents as included in the "sources of information" used to respond to Rog No. 2.  And, of course, the fact that some aspects of Defendants' *nine-page* response include public information is irrelevant—what is relevant is whether Defendants' answer is responsive to the incredibly broad question Plaintiffs asked (and it is).  Plaintiffs rely on *Jefferson v. Austin*, 345 F.R.D. 249, 256 (D.D.C. 2024), for the proposition that Defendants' use of public information in its response makes the response "plainly deficient."  But in *Jefferson*, the defendant's response was not found deficient because it "merely pointed to the time and attendance policy already provided to Plaintiff" but because the defendant directed the plaintiff to the policy to ascertain what is absent from that policy, rather than articulating what isn't absent from that policy itself.  *See id.* Here, Defendants' use of public language as part of a directly responsive interrogatory answer is a far cry from the conduct at issue in *Jefferson*.

Second, Defendants answered the question that Plaintiffs posed in Rog No. 2.  For example, with respect to content recommendation, Defendants explained that "TikTok's recommendation system sorts and ranks content based on a variety of factors, including user activity and engagement on the platform that TikTok collects from people on the platform such as likes, comments, watch history, search history, creators a user chooses to follow, created content, direct messages, and user activity.  This curated content appears in each person's 'For You' feed.  Defendants also rely on information collected from people on the platform to filter out content that may not be appropriate for them." In their section above, Plaintiffs contend that Defendants should have included even more granular details, such as how signals are weighted, how the system treats under-13 users' data, and how recommendation interacts with age-based filtering.  But, again, Plaintiffs should not be able to use a broad, open-ended question like Rog No. 2 to manufacture endless new interrogatories under the guise of asking "follow-up" questions.  In short, Defendants' R&O to Rog No. 2 is explicitly responsive to the actual question Plaintiffs originally asked.

Finally, Plaintiffs propose a "compromise" by allowing Defendants to supplement their response to Rog No. 2 by September 18, 2026 if Defendants produce documents responsive to RFP No. 36 as it was written.  However, the Court already found RFP No. 36 to be "overbroad on its face" because its catch-all "other internal purposes" was limitless, and instructed Defendants to instead response to Rog No. 2.  To the extent that Plaintiffs want more specific information, they can serve additional interrogatories with more specific questions.

### 3. ESI Start Date for Defendants' ESI Productions

#### a. Plaintiffs' Statement

This Court already ordered that Defendants "may **not** limit their responses to the time period of January 1, 2022 to the present." ECF No. 277 at 1 (emphasis in original). Plaintiffs requested an ESI start date of March 28, 2017. ECF No. 224-3 at 7. Defendants now assert that the appropriate start date for ESI should be the day the Class Period starts: March 28, 2019. Plaintiffs disagree. TikTok's unlawful behavior dates back to the very beginning of the TikTok platform, in 2017, and Plaintiffs need to understand the practices and policies in place at the company that undergird years of TikTok's COPPA violations. This is why courts routinely order discovery periods to begin years prior to the start of the class period. *See e.g., In re Toyota Motor Corp. Secs. Litig*., 2012 WL 3791716, at *2-3 (C.D. Cal. Mar. 12, 2012) (ordering that the applicable time period for discovery begin more than four years prior to beginning on class period); *Zamora v. D'Arrigo Bros. Co. of Cal.*, 2006 WL 931728, at *1 (N.D. Cal. Apr. 11, 2006) (3-year pre-class discovery period was appropriate to establish background evidence).

Moreover, "[t]he statute of limitations is not a rigid barrier separating discoverable information from information outside the scope of discovery," and courts routinely grant discovery that predates the statute of limitations. *Gottesman v. Santana*, 2017 WL 5889765, at *5 (S.D. Cal. Nov. 29, 2017); *see also Universal Dyeing & Printing, Inc. v. Zoetop Bus. Co.*, 2023 WL 9004983, at *5 (C.D. Cal. June 23, 2023) (Oliver, Mag. J.) (same). For example, in *Ogden v. Bumble Bee Foods, LLC*, the court held that the

defendant's "reliance on the statute of limitations is misplaced" because while it "restricts the time period for consumers to bring claims for their purchases[,] it does not limit the time to bring claims for [defendant's] marketing decisions." 292 F.R.D. 620, 628 (N.D. Cal. 2013). Further, the fact "that the decisions may have occurred outside of the limitations period does not change [defendant's] potential liability for selling allegedly falsely labeled products within the statute of limitations." *Id.* The same logic applies here. TikTok's decisions surrounding its COPPA obligations occurred before the class period and are highly relevant to Plaintiffs' claims.

However, in an effort to compromise, Plaintiffs suggested that the Parties meet halfway and set the start date for ESI at March 28, 2018. To date, TikTok has not agreed. Given TikTok's record of violating COPPA before 2019 (documented in the DOJ action), and consistent with the case law, Plaintiffs ask that the Court order TikTok's ESI productions to start on March 28, 2018. *See In re Toyota Motor Corp. Secs. Litig.*, 2012 WL 3791716, at *2-3; *Zamora*, 2006 WL 931728, at *1.

### b.     Defendants' Statement

TikTok has already agreed to search for and produce ESI going back to March 28, 2019—years before the 2022 settlement and fully encompassing even Plaintiffs' overbroad class definition.  Plaintiffs' demand that TikTok go back even further should be rejected.  Documents predating the Class Period are not relevant to any party's claims or defenses, and searching for, reviewing, and producing them would impose a burden disproportionate to the needs of the case under Federal Rule of Civil Procedure 26(b)(1).

Plaintiffs' newest proposal—March 28, 2018—fares no better.  Plaintiffs themselves define the "Class Period" as "March 28, 2019 to the present."  ECF No. 157 ¶ 566.  Every named Plaintiff's claims, and every proposed nationwide and state class definition, are expressly tied to conduct "during the class period."  *See, e.g.*, *id.*  ¶¶ 22-53, 143, 169, 236, 268, 270-71.  That start date is not arbitrary.  It tracks the March 27, 2019 stipulated order and permanent injunction in *United States v. Musical.ly*, the very order on which Plaintiffs' theory of liability rests.  Plaintiffs cannot define a class period

beginning March 28, 2019 and simultaneously demand custodial document discovery reaching back before it. Nor do the statutes of limitations save any earlier discovery; every one of Plaintiffs' claims falls within the seven-year class window, and the longest limitations period—six years, applicable only to Minnesota's unjust enrichment claim— still does not reach 2018. Indeed, no Plaintiff even claims to have used the platform that year. Documents predating the Class Period are thus irrelevant. They bear on no claim or defense, and any claim they might touch is time-barred. Either way, that discovery falls outside the scope of Rule 26(b)(1), and compelling Defendants to search, review, and produce it would impose an undue burden and unnecessarily delay completion of Defendants' productions.

Plaintiffs' fallback theory—that TikTok's alleged COPPA violations ran uninterrupted from 2017 forward—does not change the analysis. No class member has a claim arising from conduct that predates the Class Period, and Plaintiffs themselves fixed March 28, 2019 as its start. Having made that choice, they cannot now reach back into 2017 and 2018 to search for conduct that is not actionable here. Even accepting, solely for argument's sake, that a continuing course of conduct exists, documents from within the Class Period already establish it. A continuing-violation theory supplies no license to force TikTok to shoulder the disproportionate burden of searching, reviewing, and producing custodial documents from years before any class member's claim could have arisen.

For these reasons, and consistent with the June 26 Order, Defendants will run their ESI searches and produce responsive, non-privileged documents beginning March 28, 2019—the start of the Class Period as Plaintiffs themselves defined it—without waiving any objections.

### 4. TikTok's Production of Compliance Reports Pursuant to Its 2019 Settlement with the DOJ.

#### a. Plaintiffs' Statement

In 2019, Musical.ly (TikTok's predecessor) entered a Stipulated Order with the

Department of Justice to resolve the DOJ's lawsuit alleging that Musical.ly violated COPPA. *See United States v. Musical.ly*, No. 2:19-cv-1439, (C.D. Cal. Feb. 27, 2019), ECF No. 1-1. As part of the Stipulated Order, Musical.ly agreed to submit Compliance Reports to the Department of Justice. *Id.* § VII. These Compliance Reports are covered by TikTok's agreement for RFP No. 2, which requests "[d]ocuments addressing TikTok's compliance with the terms of the 2019 Stipulated Order." ECF No. 224-3 at 8. After Plaintiffs filed a motion to compel, TikTok agreed to "produce Documents regarding TikTok's compliance with the terms of the 2019 Stipulated Order…" ECF No. 237-3 at 3.

At the parties' July 2 hearing, Judge Wu specifically mentioned that TikTok should produce the Compliance Reports:

> But let me just ask, by the way, did you guys get the reports that were filed in the [Musical.ly] case? Under the injunction there was supposed to be reports that was filed under … section 7(a)(4) and 7(a)(6) and things of that sort. I presume you guys got copies of that.

July 2, 2026 Hrg. Tr., at 27:14-28:4. It will not be burdensome for TikTok to identify and produce the Compliance Reports that it has already submitted to the DOJ.

Plaintiffs are asking for Compliance Reports on an expedited basis (by July 31, 2026) because they are a discrete sub-set of documents highlighted explicitly by Judge Wu. Furthermore, the Compliance Reports should provide a short and clear explanation of what TikTok believed it was doing to comply with COPPA and thus could help focus the parties' future discovery efforts.

Defendants also complain that they are burdened by having "already produced millions of pages of documents as well as source code." This is deeply misleading. TikTok is referring to documents that it re-produced from other litigation. Other than documents re-produced from other litigation, TikTok has produced incomplete user data (in violation of a court order to produce all user data for the named plaintiffs and certain random users) and incomplete source code (as discussed below, in violation of this court's

order regarding source code). The only complete productions that TikTok produced specifically for this litigation are copies of settlement agreements from prior litigation that TikTok seeks to (inappropriately) use to defeat some of plaintiffs' claims. Defendants' stonewalling is particularly prejudicial to Plaintiffs due to the fast-moving case schedule.

### b.    Defendants' Statement

While the deadline to substantially complete document production is not until mid-September, and while Plaintiffs have not committed to the expedited production schedule Defendants have requested (*see* Section III.C.1.b), Plaintiffs have asked Defendants to search for, identify, and produce various "compliance reports" within the next 10 days. Plaintiffs have not yet explained why these documents warrant such an expedited timeline.  Defendants also note that they have already produced millions of pages of documents as well as source code, which bears on the burden of undertaking an additional expedited search.  That said, Defendants are looking into whether it is feasible to identify and produce these documents on an expedited schedule without undue burden, and will follow up with Plaintiffs once they have more information.

### *Source Code Disputes*

### 5.    Location of Source Code Review

### a.    Plaintiffs' Statement

Plaintiffs' deadline for filing their motion for class certification (and experts' reports in support of the class certification motion) is December 11, 2026. Given the impending deadlines, the Court cannot permit TikTok to delay, particularly with respect to source code productions.  As Plaintiffs told the Court in the March 9, 2026 Joint Rule 26(f) Report, "Production of source code late in the discovery period is one of the most acute causes of delay in cases of this type." ECF No. 187 at 12. As discussed below, TikTok has produced deficient source code, which has delayed Plaintiffs' source code review.

Another substantial source of delay is that TikTok will only make its source code available at its own Los Angeles office, which it calls the Los Angeles Transparency

Center. The Protective Order states that the source code will be produced "only in Defendant's Los Angeles Transparency Center, *subject to the selection of a mutually agreeable alternative location should a Party raise a good faith basis for such*." ECF No. 149 § 7.4.1 (emphasis added). Because of the problems that have arisen with reviewing the source code at the Los Angeles Transparency Center, Plaintiffs have requested that TikTok make its source code available at O'Melveny & Myers' Dallas, Texas office. Unfortunately, TikTok refuses to make the source code available at its outside counsel's office.

There is good cause to move the source code review from TikTok's Los Angeles Transparency Center to O'Melveny & Myers' Dallas, Texas office. *First*, Plaintiffs have experienced issues scheduling source code review at the Los Angeles Transparency Center. Pursuant to Section 7.4.2 of the Protective Order, Plaintiffs requested to review the source code from July 6 to 10. TikTok denied Plaintiffs' request, telling Plaintiffs that the source code would not be available until after July 15 because of power spikes near the Los Angeles Transparency Center.[4] TikTok has tried to downplay the significance of this disruption. However, Plaintiffs are deeply concerned that they have requested to review source code for 6 days at the Los Angeles Transparency Center, and TikTok only made the code available for part of 1 day.

*Second*, while reviewing the source code at the Los Angeles Transparency Center, Plaintiffs' expert Dr. Hashmi heard distracting noises that inhibited his ability to efficiently review the source code. The distracting noises continued intermittently throughout the day. Dr. Hashmi has reviewed source code for litigation purposes at many law firms and never encountered this problem.

*Third*, because TikTok has produced incomplete source code, Plaintiffs' expert Dr. Hashmi (who resides in the Dallas, Texas metropolitan area) will need to make repeated,

---

[4] Plaintiffs also requested to review the source code on May 22 from 9:00 am to 5:00 pm. The day before the source code review, TikTok limited the hours to 10:30 am to 5:00 pm due to a last-minute "conflict" at the Los Angeles Transparency Center.

iterative trips to Los Angeles to review the source code. This will cause needless delays, which are incompatible with the parties' accelerated schedule.

Finally, Plaintiffs note that it is standard practice in litigation for a party to produce source code at the office of the Producing Party's counsel. For example, in the Northern District of California, the general rule is that the source code is produced at an office of the Producing Party's counsel, although accommodations are considered "if the Producing Party and/or its counsel are located in a different jurisdiction than counsel and/or experts for the Receiving Party."[5] Here, the Producing Party's counsel (O'Melveny & Myers) has an office in the metropolitan area where Plaintiffs' expert lives (Dallas, TX). This makes O'Melveny & Myers' Dallas, Texas office the fairest location for the source code review in this matter.

TikTok claims that there are supposed security advantages of its Los Angeles Transparency Center. But all the source code protections from the parties Protective Order can be implemented at O'Melveny & Myers' Dallas, Texas office. Defendants do not deny that TikTok has previously produced source code in litigation at its outside counsel's offices or that O'Melveny & Myers has previously hosted source code reviews for litigation.

TikTok also puts forth a misleading timeline to somehow suggest that Plaintiffs are causing delay. That is not true. Plaintiffs sought to review the source code for RFP Nos. 50 and 51 at the same time and then raise any problems after that review. On June 19, TikTok made the source code for RFP No. 51 available. Three business days later (on June 24), Plaintiffs requested to review the source code.

---

[5] *Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets*, U.S. District Court for the Northern District of California, https://cand.uscourts.gov/sites/default/files/documents/ND_Cal_Patent_Highly_Sensitive_Model_Prot_Ord_Revised.pdf

### b.    Defendants' Statement

In December 2025, the parties agreed, *and the Court ordered*, that Plaintiffs shall review all source code at TikTok's Los Angeles Transparency Center ("TC"). ECF No. 149 (Stipulated Protective Order ("PO") § 7.4.1). The TC is a secure facility in Culver City that TikTok established for external source code review in order to protect its most confidential and valuable assets. The only way for the source code to be reviewed elsewhere is if a party raises a "good faith basis" to change locations and the parties mutually agree on an alternative location. *Id.* Plaintiffs now want the source code review to occur at O'Melveny's Dallas, Texas, office, apparently to make things more convenient for their Dallas-based expert. That is not a "good faith basis" to move the review location, and Defendants do not agree to it.

TikTok has policies and best practices regarding its source code and the review of it. One of the key protections is having source code be reviewed at the TC. The TC provides secure rooms that do not have access to Wi-Fi or cellular service, which protects the source code from various threats—e.g., unauthorized disclosure or malicious actors. Prior to review, the source code is transferred to the TC following secure transfer protocols. That code is uploaded to an air-gapped computer that has no access to the internet or unauthorized devices. The review then occurs in the secure room. People who enter the review room cannot bring in recording devices or Wi-Fi or cellular-enabled devices. Reviewers are permitted to bring in note pads and pens or pencils. They are also provided a separate computer to take notes electronically, if preferred.

TikTok did exactly what the Court's April 20, 2026, Source Code Order required, *see* ECF No. 216 at 9, promptly making the RFP No. 49 code available for review on May 21, the RFP No. 50 code on June 5, and the RFP No. 51 code on June 19. *See* Status Report, ECF No. 222. Plaintiffs simply did not act. They reviewed the RFP No. 49 source code just once, on May 22, and then went silent. Despite TikTok's repeated reminders that the RFP No. 50 and RFP No. 51 productions remained unreviewed, Plaintiffs did nothing—no review, no requests, and not a single complaint about the RFP No. 49 code

or anything else.

On June 24—19 days after RFP 50 was made available, and 33 days after Plaintiffs' last review of source code—Plaintiffs reappeared and requested to review code *at the TC* from July 6 to July 10.  Once again, Plaintiffs did not raise any issues with the TC or the code they previously reviewed.

On June 29, TikTok notified Plaintiffs that it could not reasonably accommodate their review request because, on June 23, the Culver City power grid experienced a power spike that disrupted the TC's operations.  PO § 7.4.2 (review "requests shall not be unreasonably refused").  TikTok also informed Plaintiffs that it worked diligently to resolve the issue, and Plaintiffs could review code on or after July 15.

On June 30, despite ignoring the source code for over a month, Plaintiffs claimed "disappoint[ment]" at being unable to review code "during the first half of July" and demanded all future reviews be conducted at O'Melveny's Dallas office.  At the time, their only basis for the request was this one-time disruption.  On July 2, TikTok reiterated the electrical grid power spike caused a one-off issue that is unlikely to occur again, so a location change was unwarranted.  Plaintiffs replied by vaguely stating they "found the [TC] to be a poor location for code review for additional reasons before the electrical grid issue" and requested a conferral.  Again, Plaintiffs did not indicate any issues with the RFP No. 49 code they reviewed on May 22 or additional reasons for the move in locations.

On July 7, the parties conferred.  *Two minutes before* the conferral, Plaintiffs sent an initial letter listing new reasons why they wanted to move the review location to Dallas and alleging  various deficiencies with the RFP 49 code that are discussed below.  Their purported list of deficiencies grew during the conferral, but aside from their power-spike disappointment, this was the first time Plaintiffs raised these new issues about the TC.  Plaintiffs' ostensible reasons to remove code from the secure TC are:

1.    Litigants in other lawsuits review source code at the producing party's counsel's office;

2.    They were distracted by noise during their first review at the TC;

3.    Their first source code review was delayed by 1.5 hours due to an unanticipated, one-off conflict;

4.    The dates they requested for their second review were impacted by a power spike to the Culver City electrical grid outside of TikTok's control that affected TC operations;

5.    Source code review is an iterative process and their expert has alleged production deficiencies; and

6.    Their failure to diligently pursue source code needs to be accommodated because of the class certification schedule.

These reasons are flawed. Plaintiffs' first reason for wanting to move the review location—that review in other cases can happen at outside counsel's office—is not compelling. Defendants' source code review facility is uniquely secure and advanced, so Plaintiffs are not in the same position as parties in other lawsuits. The fact that litigants in other cases use different review arrangements—because they don't have access to a facility like the TC—does not justify moving the source code out of the TC in this case. Moreover, Plaintiffs agreed to review source code at the TC, so what other litigants do is irrelevant.

Plaintiffs' next three reasons involve noise and scheduling problems that could have happened at any location, not just the TC, and Defendants have shown that these problems have either already been fixed or are unlikely to happen again.

Plaintiffs' fourth reason—claimed problems with the source code itself—is not enough to justify moving the review out of the TC. In fact, Plaintiffs admitted, during the parties' conferral, that they understood source code review is a back-and-forth process— review, raise issues, discuss, and review again if needed—when they agreed to review the code at the TC.

Finally, the class certification schedule does not require moving the review location for Plaintiffs' convenience. Any time pressure Plaintiffs now feel is a result of their own delay. They did not look at the source code between their May 22 review and their June

19

24 request for further review.  Plaintiffs then made things worse by waiting until July 7 to explain their supposed problems with the TC and the code that had been produced.

The most expeditious means of reviewing source code is to do so at the TC.

### 6.    Start and End Date of Source Code Production

#### a.    Plaintiffs' Statement

As discussed above, Plaintiffs' have proposed that TikTok produce documents generated from March 28, 2018 to May 26, 2026. Plaintiffs request that TikTok use the same timeframe for its source code production. *See also supra* Section II.B.1.a (explaining March 28, 2018 ESI start).

#### b.    Defendants' Statement

On May 22, 2026, Plaintiffs reviewed the RFP 49 source code at the TC.  They did not raise any alleged deficiencies until July 7, when they sent a letter two minutes before the parties conferred on the source code review location.  They alleged the produced source code had four deficiencies and demanded a response within a week by July 14.

Plaintiffs' first issue is temporal scope.  Plaintiffs initially insisted TikTok must produce code from March 28, 2017 to present, but now demand March 28, 2018 to May 26, 2026.  That time period begins one year before the class period and ends after the first source code production.  Plaintiffs have articulated no rationale for reviewing code that predates the March 28, 2019 start of the Class Period—i.e., why they are entitled to review source code that may not have been used during the Class Period.

On July 12, TikTok agreed to produce responsive code as it is stored in the usual course from March 28, 2019—i.e., the code from the Class Period—to the date of collection. *See also supra* Section I.B.1.b. (explaining the March 28, 2019 ESI start date).

### 7.    TikTok violated the Court's source code order by producing incomplete source code.

#### a.    Plaintiffs' Statement

As the Court is aware, Plaintiffs asked for the parties' dispute regarding RFP Nos. 49 to 51 (which request certain source code) to be briefed on an expedited basis. The

20

parties briefed the dispute, ECF Nos. 199-2, 207, 213, and the Court ordered TikTok to produce:

- **For RFP No. 49:** The "source code responsive to RFP No. 49 in its entirety," which is "[t]he source code (in repository form where versions of the source code can be extracted), including revision/version history and commit logs, used to detect, identify, or infer users under the age of 13";[6]
- **For RFP No. 50:** The source code relating to "age-gating/age-validating/age-inferring models for any age group that encompasses 13 and under users"; and
- **For RFP No. 51:** "The source code relating to serving, filtering, and/or restricting of advertisements for under 18 users…[and] the 18-24 age group."[7]

ECF No. 216.

TikTok admits below that it did not comply with the Court's order. TikTok argues that it should not be required to produce the source code responsive to Plaintiffs' RFP Nos. 49 to 51. But the Court already ordered that TikTok must produce the responsive source code (as modified by the Court's limitations) despite TikTok's burden objections. TikTok never filed a motion for reconsideration and instead unilaterally violated the Court order.

Based on Dr. Hashmi's source code review, TikTok produced source code in response to RFP No. 49 that is missing key source code functions. In layman's terms, TikTok produced Swiss cheese source code in which portions of the source code are missing. On July 7, Plaintiffs provided six *examples* of source code functions that were missing in the source code responsive to RFP No. 49 and made clear to TikTok that these were only examples of a broader problem of TikTok unilaterally withholding responsive source code.

---

[6] With respect of RFP No. 49, TikTok agreed to produce the responsive source code.

[7] With respect to RFP No. 51, the parties held a meet-and-confer in which TikTok agreed to produce its full advertising source code and all source code associated with the advertising model. TikTok agreed that it will not make any limitations to the advertising source code production based on age.

21

TikTok's excuses for violating the Court are invalid. But, as an initial matter, TikTok is not permitted to ignore this Court's order because it believes compliance is difficult, mistaken, or simply unnecessary. The law is clear: court orders must be obeyed unless and until they are modified or reversed, and parties cannot "determine[] for themselves" whether compliance is required. *United States v. United Mine Workers*, 330 U.S. 258, 306-07 (1947); *see also Walker v. City of Birmingham*, 388 U.S. 307, 320–21 (1967). And in the discovery context, the Ninth Circuit has made equally clear that a party cannot refuse to comply first and then offer post hoc justification later—there is "no justification" for failing even to attempt compliance with a court's directive. *Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1225 (9th Cir. 2018). TikTok cannot rewrite that rule now. It was required to comply with the Court's orders at the time they were made, not decide for itself what aspects it would follow and then seek forgiveness after the fact.

TikTok's first attempt to evade the Court order is to suggest that there is a difference between implementation source code and other source code. That is a false distinction, and TikTok does not, and cannot, dispute that implementation source code is a type of source code.

TikTok then suggests that it is sufficient to produce the source code for the six identified functions, and TikTok will consider producing the other missing source code that Plaintiffs identify. TikTok gaslights and claims that it does "not know what Plaintiffs want to review." That is not true. TikTok knows what Plaintiffs want to review: the source code that the Court ordered that TikTok produce. TikTok cannot be allowed to re-write the Court's order so that TikTok can produce only curated self-selected source code, along with other source code that Plaintiffs can find specific references to within TikTok's productions.

TikTok's conduct is outrageous. It is TikTok's obligation to produce complete source code responsive to RFP Nos. 49 to 51, and TikTok cannot shift that burden onto the Plaintiffs. *TikTok must produce the source code responsive to RFP Nos. 49 to 51 without missing source code functions.* Plaintiffs reserve all rights to seek relief and

sanctions to remedy TikTok's intentional violation of the Court's orders.

Furthermore, TikTok has not explained why source code was missing from its production. Plaintiffs are concerned that source code was removed as a result of TikTok's "disentangle[ment] process," where TikTok inappropriately splices its own source code. *See* ECF No. 213 at 5. Plaintiffs have thus asked TikTok to also tell Plaintiffs why TikTok produced incomplete source code with missing functions in response to RFP No. 49.

Once again, the schedule is a factor. TikTok has fought Plaintiffs every step of the way to try to withhold discovery. Now, TikTok violates this Court's source code order, resulting in further delay. Plaintiffs and their experts will run out of time if they are forced to fly to Los Angeles repeatedly, identify the missing elements of the source code each time, and then fly back to Los Angeles repeatedly hoping that TikTok will have fixed the problem.

### b.    Defendants' Statement

Plaintiffs' next issue is their insistence that TikTok produce implementation code for every function found within the code that is responsive to RFP Nos. 49-51.  Plaintiffs have never explained why they delayed until July 7 to raise this issue, but their position fails for two reasons.  First, Plaintiffs' RFPs did not request the implementation code for the functions.  *See* Source Code Order, ECF No. 216 at 2-3.[8]  Second, an "all" functions is unreasonable, disproportionate to the needs of the case, and unduly burdensome because there are numerous functions.

---

[8] RFP No. 49: The source code (in repository form where versions of the source code can be extracted), including revision/version history and commit logs, used to detect, identify, or infer users under the age of 13.

RFP No. 50: The source code (in repository form where versions of the source code can be extracted), including revision/version history and commit logs, relating to any age-gating processes, including date-of-birth validation, and age-inference models.

RFP No. 51: The source code (in repository form where versions of the source code can be extracted), including revision/version history and commit logs, relating to the serving, filtering, and/or restricting of advertisements to users on the Full Access and Kids Mode Platforms to users, including users identified or inferred as being under the age of 13.

In programming, a function is its own self-contained block of code that is designed to perform a specific task. Other code models can then be programmed to call upon a function—i.e., have the function be performed.

Defendants' produced the code requested by RFP Nos. 49-51, which do not request the implementation code for the functions. Those RFPs requested the primary code that can be programmed to call upon a function. Defendants produced that code without holes. To be sure, Plaintiffs were able to identify the "key functions" they want to review by providing Defendants with the file path and exact line of code containing the function— e.g., pinpointing a function on line 94 of produced code.

Next, Plaintiffs' position concedes there are "key functions," meaning other functions are not needed for their lawsuit. Even though Plaintiffs' RFPs do not request the functions, on July 15, Defendants agreed to produce the implementation code for the five "key functions" that Plaintiffs listed in their July 7 letter.[9] Defendants also explained that Plaintiffs need to provide a reasonable list of functions that they would like Defendants collect and produce, if they want more.[10] Without that list, Defendants do not know what implementation code Plaintiffs want collected and produced. Plaintiffs also must provide that list because this lawsuit does not entitle Plaintiffs to go on a fishing expedition through Defendants' most valuable and protected assets.

**8.     TikTok failed to produce the source code that shows whether (and how) the source code models produced by TikTok are used in TikTok's system.**

**a.     Plaintiffs' Statement**

Plaintiffs request that Defendants produce the source code that shows when, whether, and how the source code models responsive to RFPs 49-51 are used in TikTok's system. In response to RFP No. 49, TikTok produced partial models used to detect,

---

[9] Plaintiffs' "sixth" function is not a function but the repository and commit log for the Minor AED Model + Minor Multmodel model raised elsewhere.

[10] Defendants reserved all rights, objections, and arguments regarding the list, but noted they will confer with Plaintiffs on any issues.

24

identify, or infer the ages of users without showing whether, when, and how those models are used in TikTok's systems. Based on the source code produced by TikTok, there is no way for Plaintiffs' expert to determine whether these age models were used in TikTok's systems at all. Furthermore, the source code produced does not show *how* the age models were used in TikTok's systems, e.g., to remove users from the platform, to serve targeted advertisements, or simply ignored. This is a critically important aspect of the source code. TikTok cannot hide whether its source code for identifying underage users was used to kick children off the TikTok platform or not.

TikTok refuses to produce the source code that shows whether, when, and how the source code models responsive to RFPs 49-51 are used in TikTok's system. TikTok has two objections, both of which are unavailing.

First, TikTok asserts that this source code was not requested by Plaintiffs' RFP Nos. 49 to 51. That is incorrect. RFP No. 49 specifically asks for the source code "**used to detect, identify, or infer users under the age of 13**", and RFP Nos. 50 to 51 both request source code "**relating to**" age-gating/age-validating/age-inferring models and advertising source code respectively. ECF No. 216 at 2 (emphases added). It is not a good-faith reading of Plaintiffs' requests, or the Court's order, to exclude the source code that shows when, whether, and how the source code models responsive to RFP Nos. 49 to 51 were used in TikTok's systems. Furthermore, the parties' Protective Order specifies that the code must be produced in in its "original and native format," ECF No. 149 § 7.4.7. To comply with this provision, TikTok must produce the source code that shows whether, when, and how the source code models produced by TikTok are used in TikTok's systems.

Second, TikTok re-raises its rejected arguments that Plaintiffs do not need source code because some other unspecified documents will provide the necessary information. Below, TikTok cites a portion of the Court's order summarizing TikTok's position rather than citing the Court's holding. In reality, the Court analyzed the parties' arguments and accepted "Plaintiffs' need for the source code instead of the proposed alternative forms

of discovery" and that "Plaintiffs are entitled to review the underlying source code to determine whether it supports their allegations and claims." ECF No. 216 at 8. TikTok's position has become even more untenable as TikTok has never identified the supposed alternative documents that eliminate the need for source code. Finally, TikTok's statement that it is "Plaintiffs' expert's burden to analyze the produced code…" is a non-sequitur. The issue is that TikTok is withholding relevant source code that provides definitive answers.

### b.    Defendants' Statement

Plaintiffs concede Defendants produced the code responsive to RFP No. 49.  *See also* Source Code Order, ECF No. 216 at 2-3; PO, ECF No. 149 § 7.4.7.  They now vaguely demand more code based on their unsupported belief that more exists.  But what Plaintiffs, or their expert, fail to understand is that they received the code in its "original and native" format.

On July 15, Defendants told Plaintiffs that it is unclear why anything more is needed or why the produced source code is insufficient for the purposes of this case.  It is Plaintiffs' expert's burden to analyze the produced code and the documents that describe it to formulate opinions as to how the code is used in TikTok's system.  *See* Source Code Order, ECF No. 216 at 5 (noting how other materials "describe what a particular algorithm or model is, how it works, its goal, the data it uses, the situations in which it applies, and its historic iterations").  Plaintiffs have not explained why their expert cannot do so.  They have only asserted as much without support.  Plaintiffs do not have free rein to review large swaths of highly sensitive source code that is irrelevant to the case.

## II.    DEFENDANTS' DISCOVERY

### A.    Agreed Issues

- **Plaintiffs' Responses to Defendants' First Set of RFPs:** Plaintiffs confirmed they are not withholding documents based on objections other than privilege and those that were sustained or resolved by agreement. In addition, a plaintiff's "use of and experience on TikTok" means and includes, but is not limited to, the four subjects enumerated in the Parties' agreement: (i) about Plaintiff's past and current TikTok accounts; (ii)

mentioning the age gate, Plaintiff's date of birth, or how Plaintiff managed to access the 13+ platform; (iii) relating to TikTok's privacy policies; and (iv) relating to parental knowledge or consent that Plaintiff was on the platform.

- **Other Online Services DYD Data:** Plaintiffs have agreed to collect all available DYD files for each of the 10 Online Services identified by Defendants, to the extent the respective Plaintiff used that service. Plaintiffs have also agreed to make reasonable efforts to search for and produce responsive information from those files. The parties are continuing to confer on an appropriate search methodology given the unique nature of DYD files. If a Plaintiff's DYD file or files are inaccessible or unavailable, Plaintiffs will promptly notify Defendants.

- **RFA No. 7:** Plaintiffs agreed to amend their response to this Request as soon as possible, and no later than July 27.

- **RFA Nos. 25–30:** Plaintiffs agreed to amend their response to these Requests as soon as possible, and no later than July 27.

**B.    Disputed Issues at Impasse**

1.    **RFA No. 3**

a.    **Plaintiffs' Statement**

RFA No. 3 asks Plaintiffs to "admit that YOU did not tell or notify DEFENDANTS that YOU were under the age of 13 when you created each account." Plaintiffs interpreted this request as asking about the age entered in the age gate during the account creation process and answered accordingly. Plaintiffs maintain that their responses are proper, other than an inadvertent typographical error that Plaintiffs have agreed to correct (i.e., Plaintiffs original answer admitted whether they entered an age of "13 or younger" and will revise the answer to admit whether they entered "an age of 12 or younger," consistent with the RFA). Plaintiffs maintain that their responses are otherwise proper.

Defendants contend that the phrase "tell or notify" is much broader and includes anything Plaintiffs may have communicated to Defendants "verbally, in writing, or by their conduct." Plaintiffs dispute that the request asks about such conduct. Further, Defendants have not defined the scope of what constitutes notice by writing or "conduct,"

leaving Plaintiffs to speculate as to what actions, behavior, or activity Defendants contend could amount to a notification that a user was under the age of 13 when creating an account. Plaintiffs asked Defendants to clarify what actions, behavior, or activity they contend could amount to a notification that a user was under the age of 13 when creating an account. Defendants have provided examples like, "if Plaintiffs spoke to someone at TikTok, if they wrote an email or letter to TikTok" or "if during the account creation process Plaintiffs acted in a manner that conveyed they were under 13." However, Plaintiffs are unaware of a process by which they would contact TikTok during the account creation process and have asked Defendants to identify any such process and actions that could "convey[] they were under 13," as Defendants request.

Plaintiffs also asked Defendants to clarify the temporal scope of the phrase "when you created each account." For example, it is unclear whether account creation is limited to the period during which the account sign-up page is open, or whether it extends to communications or conduct occurring hours, days, or some other period before the account was created. Defendants did not provide any meaningful answer.

Plaintiffs also dispute Defendants' contention that whether Plaintiffs' "parents reached out to request deletion of their child's accounts" falls within the scope of RFA No 3. As an initial matter, RFA No. 3 asks whether the Plaintiff "told or notified" TikTok of their age, not whether Plaintiff's parent did so. Additionally, Defendants have already confirmed that conduct after account creation is not within the scope of this RFA. That Defendants suggest a request for account deletion (which necessarily occurs after an account is already created) further confirms Plaintiffs' point that the temporal scope of "tell or notify" is undefined.

Without clear definitions as to "tell or notify" and the relevant time period encompassed by "when you created each account," Plaintiffs cannot reasonably determine the full scope of RFA No. 3 or conduct the inquiry necessary to admit or deny it under Defendants' attempted broadening of the request.

### b. Defendants' Statement

Plaintiffs' current answer to Defendants' RFA No. 3 is evasive and improper. That RFA asked Plaintiffs to admit that, "[f]or each of YOUR past or current TikTok accounts, … YOU did not tell or notify DEFENDANTS that YOU were under the age of 13 when you created each account." Plaintiffs answered by admitting they "did not enter an age of 13 or younger during the account sign up process for all TikTok accounts." That is non-responsive for two reasons: first, RFA No. 3 asks whether Plaintiffs told or notified Defendants that they were *under 13*, yet Plaintiffs cabined their answer to whether they were *13 or younger*; and second, Plaintiffs unilaterally limited their answer to information they provided in TikTok's age gate. While Plaintiffs have agreed to amend their response with respect to the first deficiency, Plaintiffs have refused to cure the second deficiency because they claim the phrase "tell or notify" is overbroad and ambiguous. Plaintiffs' position lacks merit for multiple reasons.

As an initial matter, Plaintiffs agreed months ago to provide full and complete responses to Defendants' RFAs. They have therefore waived any argument that RFA No. 3 is purportedly overbroad and ambiguous. *See* ECF 227-7, April 21, 2026 D. Loeser Letter to D. Breuder at 9 ("Plaintiffs agree to amend in good faith their responses to Defendants' RFAs.").

Second, and as Defendants explained during the meet and confer, the words "tell or notify" are self-explanatory, commonly understood terms. Put simply, RFA No. 3 asks whether Plaintiffs ever told, notified, or communicated to Defendants in any way during the account creation process that they were under 13. This is clearly relevant information; indeed, Plaintiffs have conceded its relevance by agreeing to respond. And while the information Plaintiffs provided in the age gate may be one manner in which they could have told or notified Defendants about their age, it is by no means the only way they could have done so.

Third, Plaintiffs claim that Defendants failed "to clarify what actions, behavior, or activity they contend could amount to a notification that a user was under the age of 13."

29

This is inaccurate.  Defendants refer to the examples they provided at the July 20 meet and confer and otherwise point to the plain language of RFA No. 3.

Finally, Plaintiffs now claim they also do not understand "the relevant time period encompassed by" the phrase "when you created each account." Again, Plaintiffs waived any such objection by agreeing in April to provide full and complete responses.   Plaintiffs must admit or deny the request based on the plain meaning of when they created their accounts.  Plaintiffs' claim that they "cannot reasonably determine the full scope of RFA No. 3" is meritless—the request uses clear and unambiguous language, and Defendants have now provided ample clarification to the extent any was needed.  Plaintiffs' response to RFA No. 3 is plainly inadequate and nonresponsive.  The Court should order Plaintiffs to admit or deny RFA No. 3 as written.

**C.    Unresolved Issues**

**1.    Deposition and Document Production Schedule**

**a.    Plaintiffs' Statement**

Plaintiffs, like TikTok, are eager to begin depositions. Beforehand, the Parties recognize the need for a reasonable opportunity to review the documents responsive to their written discovery requests. The Parties are discussing a schedule for the production of documents that are identified without search terms and a separate schedule for documents identified with search terms. Depositions would then be keyed off of the production schedules. Plaintiffs believe it is important for there to be parity with the timing of Defendants' productions and depositions in order to accommodate both Parties' needs in the limited time remaining in the Court-ordered schedule.

Plaintiffs have been working diligently to respond to all outstanding discovery requests as soon as possible. Plaintiffs have already made important foundational productions, including the vast majority of DYD files for each of the Plaintiffs' accessible TikTok accounts, as well as individual go-get documents like birth certificates and other documents establishing the age of the Plaintiffs, spanning more than 146,000 pages. Plaintiffs have also made substantial additional custodial collections from the Plaintiffs,

and are conducting additional collections of the DYD files responsive to the requests for Other Online Services as clarified by the Court and subsequently confirmed by TikTok on June 26, 2026. Still, these collections are an enormous undertaking that requires significant time and resources. Moreover, negotiations over the scope of production and search terms are still underway, with the Parties agreed to submit a statement on those issues on July 27, 2026; production for those requests will necessarily be tied to the resolution of those terms.

In contrast, TikTok has made almost no document productions beyond documents already produced in the Social Media Addiction MDL and the DOJ pre-suit investigation. And many of Plaintiffs' discovery requests are the subject of still-pending discovery disputes, as noted in this Report. Without a fulsome production from TikTok, Plaintiffs are unable to conduct their own depositions in a timely manner and in parity with Defendants.

Therefore, for discovery requests that do not require search terms, Plaintiffs anticipate making substantial productions on a rolling basis beginning in mid-August and concluding on or before the September 11, 2026 deadline for substantial production. To the extent there are minimal productions that extend beyond that deadline, Plaintiffs will identify them to TikTok as required by the Court. *See* ECF No. 191.

For discovery requests that require search terms, Plaintiffs anticipate requiring several weeks, after search terms are agreed to or ordered, to review documents responsive to those terms and categories of scope, as well as to assess those documents for privilege. At this time, Plaintiffs anticipate completing those productions on or before the September 11, 2026 deadline for substantial production.

Finally, for plaintiff depositions, Plaintiffs have told TikTok they are ready and willing to meet and confer about a feasible schedule that accommodates both Parties' need for depositions. In order to formulate a proposal, Plaintiffs have asked TikTok to tell them (a) how long TikTok will need to review documents prior to conducting depositions; (b) whether TikTok intends to take depositions in person given the additional scheduling

constraints that may arise due to counsel travel needs and other logistical issues; and (c) how many depositions it wants to schedule in a given time period (e.g., 2-3 a week, is it able to double track depositions, and does that contemplate the taking of depositions of TikTok's employees). The night before filing this Report, TikTok informed Plaintiffs for the first time that it needs three weeks to review documents after the productions are completed before taking any deposition and that it intends to take all depositions in person. These parameters are TikTok's demands, not Plaintiffs' choice; satisfying those parameters in conjunction with a feasible production schedule will mean depositions are unlikely to begin until October. How many depositions can be scheduled then and when will depend on TikTok's ability to staff depositions over a given time period—which TikTok has not yet answered. Plaintiffs are willing to meet and confer with Defendants on these issues and any others to fashion a deposition schedule that works for all.

### b.    Defendants' Statement

As the Court knows, this case is on an expedited schedule.  Document productions must be substantially complete by September 11, 2026, and Plaintiffs' Motion for Class Certification is due December 11, 2026.  Given this schedule, Defendants propounded RFPs, interrogatories, and RFAs in February 2026, the day after discovery opened. Expecting Plaintiffs to diligently respond to that discovery, on May 15, 2026, Defendants also served deposition notices for some of the Plaintiffs' parents for dates in July.

To date, however, Defendants have received virtually no discovery from Plaintiffs.  For example, despite claiming they have made "important foundational productions," Plaintiffs have in fact made only one document production.  And that production is woefully deficient.  Among other deficiencies, the production contains *zero* documents from 14 of the 19 plaintiffs remaining in the case, and for the handful of plaintiffs for whom documents were produced, the production  (which consists of fewer than 1,000 documents total) was limited to materials like birth certificates and DYD files, the latter of which Plaintiffs have since attempted to claw back.  Further, Plaintiffs have provided no interrogatory responses and only recently provided RFA responses,

32

some of which were also deficient as discussed above.  Plaintiffs' counsel also recently indicated—after weeks of delay—that Defendants will not be able to proceed with the depositions Defendants noticed for July due to unresolved discovery disputes of Plaintiffs' own making.

Given this state of affairs, Defendants wrote to Plaintiffs on July 13, 2026 and proposed that Plaintiffs produce documents on July 31, 2026 and August 31, 2026,  and that the parties start scheduling depositions for the named plaintiff's parents' depositions as follows:

| Date | Deponent |
|---|---|
| September 3 | Samuel Tsou (CA) |
| September 3 | Jody Villanueva (CA) |
| September 4 | Shirley Reed-Stallings (TX) |
| September 4 | Ebony Baker (GA) |
| September 8 | Christina Middleton (MO) |
| September 9 | Kiara Dennis (IL) |
| September 10 | Leyna Midkiff (IN) |
| September 11 | Steven Burda (PA) |

Defendants met and conferred with Plaintiffs concerning this proposal on July 16, but Plaintiffs have refused to commit to any schedule, much less provide a counter-schedule.  Instead, Plaintiffs claimed they needed to know (a) how long Defendants will need to review documents prior to depositions, and (b) whether Defendants intend to conduct depositions in person before they could propose a schedule for document completion and depositions.  To permit an orderly taking of Plaintiffs' depositions,

Plaintiffs should be required to produce their documents at least three weeks before the noticed depositions.  Further, and that those depositions should take place in-person absent a different agreement.  These are critical depositions that Defendants are entitled to take in person.  Plaintiffs have offered no reasons (nor are we aware of any) requiring these depositions to be taken remotely.  There is no reason to let these or any other logistical issues further delay matters.  Accordingly, Defendants request that the Court enter the proposed document production and deposition schedule set forth above so the parties can do their best to adhere to the existing schedule for class certification briefing.

### 2.    Scope of Review for DYD Data

### a.    Plaintiffs' Statement

Defendants provided Plaintiffs with their proposal regarding the scope of DYD data review for RFP Nos. 21, 22, 27, 28, and 46 on July 2, 2026. Plaintiffs responded with counterproposals on July 14, 2026. The Parties met and conferred on July 21, 2026.

Defendants proposed 12 categories for RFPs that relate to (1) Plaintiffs' use and experience of TikTok and the ten agreed upon Other Online Services (RFP Nos. 21, 27) (2) the use and disclosure of Plaintiffs' Personal Information in connection with those services (RFP Nos. 22, 28) and (3) documents sufficient to show Plaintiffs' Apple App Store or Google Play Store downloads and purchases (RFP No. 46). Defendants did not identify which of the 12 categories purported to fall within which RFP, with the exception of RFP No. 46. Those categories were as follows:

1. Category 1: Documents, including data and communications, relating to Plaintiffs' and/or Plaintiffs' parents' knowledge, awareness, or understanding of and consent to the privacy policies and terms of service of TikTok and the Other Online Services.

2. Category 2: Documents, including data and communications, relating to Plaintiffs' and/or Plaintiffs' parents' knowledge, awareness, or understanding of whether online platforms or websites track and/or save and/or use their personal information as defined under COPPA.

3.    Category 3: Documents, including data and communications, relating to any use or disclosure of Plaintiffs' and/or Plaintiffs' parents' personal information as defined under COPPA with TikTok.

4.    Category 4: Documents, including data and communications, relating to any use or disclosure of Plaintiffs' personal information as defined under COPPA with any Other Online Services.

5.    Category 5: Documents, including data and communications, relating to how Plaintiffs gained access to the 13+ Experience and the Other Online Services, including discussions about evading age gates or similar security measures.

6.    Category 6: Documents, including data and communications, relating to the TikTok age gate or any age gate or similar security measures on any Other Online Services, including discussions about what age or date of birth Plaintiffs entered in any such age gate or similar security measures, evasion of the age gate or similar security measures, how to avoid detection, and similar subjects.

7.    Category 7: Documents, including data and communications, relating to Plaintiffs' parents' knowledge, awareness, or understanding of the fact that Plaintiffs had access to and were using TikTok's 13+ Experience and/or relating to Plaintiffs' parents' permission for Plaintiffs to be on the 13+ Experience.

8.    Category 8: Documents, including data and communications, relating to Plaintiffs' parents' knowledge, awareness, or understanding of the fact that Plaintiffs had access to and were using the Other Online Services and/or relating to Plaintiffs' parents' permission for Plaintiffs to be on those Other Online Services.

9.    Category 9: Documents, including data and communications, relating to Plaintiffs' parents' knowledge, awareness, or understanding of parental privacy control features on TikTok and the Other Online Services, including documents relating to any attempts to enable or disable such features.

10.    Category 10: Documents, including data and communications, relating to any attempt to sell or license any of Plaintiffs' personal information for monetary compensation.

11.    Category 11: Documents, including data and communications, relating to any attempt to monitor or limit Plaintiffs' access to TikTok or the Other Online Services.

35

12.    Category 12: Documents sufficient to show Plaintiffs' Apple App Store or Google Play Store purchases or downloads on any device during the Class Period (RFP No. 46).

Plaintiffs raised a number of concerns about the overbreadth of the categories, as drafted, and whether they were properly within the scope of RFP Nos. 21-22, 27-28, and 46, some of which have been resolved.

As a general matter, the parties agreed, for all categories to which it applies (Categories 1–11), to replace "relating to" with "regarding."  With that change, the parties were able to reach agreement on Categories 1, 5, 6, 7, and 11. The parties also came to agreement on Category 2 by replacing the  phrase "online platforms or websites" with "TikTok and the Other Online Services."

Plaintiffs also raised that the categories, as drafted, sought information outside the scope of the DYD files. While Plaintiffs understand that RFP Nos. 21-22, 27-28, and 46 may require search of additional data sources—and have agreed to conduct such searches—the categories at issue here are in response to the Court's order directing the parties to agree upon the scope of DYD data to be produced.

Unresolved issues remain with respect to Categories 3, 4, 8, 10 and 12.

Category 3 seeks documents Plaintiffs' and/or Plaintiffs' parents' personal information with TikTok. As an initial matter, whether Plaintiffs' parents' shared their own personal information is not at issue in this case, and is not within the scope of RFP Nos. 22 and 28, which are limited to *Plaintiffs'* Personal Information. Even striking the portion regarding parents, this request is still impermissibly overbroad, encompassing virtually the entirety of the TikTok DYD files because any use of an online service could reflect the use or disclosure of Plaintiffs' personal information. The same issue of overbreadth exists with respect to Category 4, which would encompass virtually the entirety of the Other Online Services DYD files, because any use of an online service could reflect the use or disclosure of Plaintiffs' personal information. The Court has already rejected requests of that scope. Plaintiffs are willing to work with Defendants on

a narrower scope, but cannot agree to the category, as drafted.

With respect to Category 8, Plaintiffs' position is that it falls outside the scope of RFPs 21-22 and 27-28. Those requests are limited to Plaintiffs' use and experience of TikTok and the Other Online Services, and to the use, collection, or disclosure of Plaintiffs' personal information in connection with those services. Category 8, however, seeks documents relating to parent's awareness of, and permission for, Plaintiffs' use of the Other Online Services, which is not at issue here. While the Court has ordered discovery relating to Plaintiffs' use of these Other Online Services, whether the parents consented is irrelevant and falls outside the scope of the five RFPs at issue.

With respect to Category 10, Plaintiffs sought confirmation from Defendants on the RFP(s) the category relates to. Defendants' response that it pertains to RFP Nos. 21-22 and 27-28 is insufficient. Plaintiffs' position is that a broad request that the sale or license of any of Plaintiffs' personal information for monetary compensation is outside the scope of these RFPs, which are limited to Plaintiffs' use and experience of TikTok and the Other Online Services and to the use, collection, or disclosure of Plaintiffs' personal information in connection with those services.

Finally, with respect to Category 12, Plaintiffs objected to the breadth of a request that seeks the history of all Plaintiffs' downloads and purchases on Apple App Store and Google Play Store. Defendants' proposal to narrow the category to all "apps" purchased and downloaded is still too broad. There is no reason why Defendants need to know whether a plaintiff downloaded a calculator app, for example. Plaintiffs request that Defendants limit this category to TikTok and the Other Online Services at issue.

Although issues remain unresolved, Plaintiffs hope that, with further discussion, the Parties can reach agreement on the remaining categories.

### b.    Defendants' Statement

On June 4, the Court overruled Plaintiffs' objections and ordered them to "provide further responses and documents with respect to the minor plaintiffs' use of other online and/or streaming services for the reasons set forth by Defendants." ECF No. 247 at 12

37

(referring to RFP Nos. 21-22, 27-28, and 46) (the "Disputed RFPs"), and in light of Plaintiffs' counsel's position that minor plaintiffs should not be deposed.   Given Plaintiffs' parents' privacy concerns related to collection of their DYD files, the Court ordered the parties to "meet and confer on the types of communications and documents Defendants are seeking and agree upon search terms." *Id.*  Defendants complied, and on July 2, transmitted a letter to Plaintiffs laying out twelve narrowly tailored scope categories, closely tracking the types of documents Defendants had described to the Court.  Plaintiffs did not object to these categories on relevance grounds.  The twelve categories are:

- Documents, including data and communications, relating to Plaintiffs' and/or Plaintiffs' parents' knowledge, awareness, or understanding of and consent to the privacy policies and terms of service of TikTok and the Other Online Services.[11]

- Documents, including data and communications, relating to Plaintiffs' and/or Plaintiffs' parents' knowledge, awareness, or understanding of whether online platforms or websites track and/or save and/or use their personal information as defined under COPPA.

- Documents, including data and communications, relating to any use or disclosure of Plaintiffs' and/or Plaintiffs' parents' personal information as defined under COPPA with TikTok.

- Documents, including data and communications, relating to any use or disclosure of Plaintiffs' personal information as defined under COPPA with any Other Online Services.

- Documents, including data and communications, relating to how Plaintiffs gained access to the 13+ Experience and the Other Online Services, including discussions about evading age gates or similar security measures.

---

[11] "Other Online Services" means Snapchat; YouTube (including YouTube Kids); Netflix (including Netflix Kids); Disney+; Instagram; Hulu; Roblox; Amazon Prime Video; Discord; and Facebook.  Plaintiffs previously agreed that they would not limit their search for documents responsive to RFP Nos. 21, 22, 27, 28, and 46 to Plaintiffs' and their parents' DYD files.  See June 22, 2026 email from C. Springer.

- Documents, including data and communications, relating to the TikTok age gate or any age gate or similar security measures on any Other Online Services, including discussions about what age or date of birth Plaintiffs entered in any such age gate or similar security measures, evasion of the age gate or similar security measures, how to avoid detection, and similar subjects. For example,

  - Documents or communications saying things like, "Hey, I just got on TikTok, here's an easy way to get on, just put a different age or just put age 18."

  - Documents or communications saying things like, "I got on Snapchat, here' how you can get on TikTok."

  - Documents or communications saying things like, "I got a normal TikTok account so that I can message" or "I'm using my parent's account."

- Documents, including data and communications, relating to Plaintiffs' parents' knowledge, awareness, or understanding of the fact that Plaintiffs had access to and were using TikTok's 13+ Experience and/or relating to Plaintiffs' parents' permission for Plaintiffs to be on the 13+ Experience. For example,

  - Documents or communications between Plaintiffs and their parents sharing TikTok content outside the TikTok platform (e.g., sending a TikTok video via text message).

  - Documents or communications between Plaintiffs and their parents on the TikTok platform (e.g., direct messages between accounts on the TikTok platform).

- Documents, including data and communications, relating to Plaintiffs' parents' knowledge, awareness, or understanding of the fact that Plaintiffs had access to and were using the Other Online Services and/or relating to Plaintiffs' parents' permission for Plaintiffs to be on those Other Online Services. For example,

  - Documents or communications between Plaintiffs and their parents sharing Other Online Services' content outside the respective Other Online Service's platform (e.g., sending an Instagram reel via text message).

39

- ▪ Documents or communications between Plaintiffs and their parents on the Other Online Services platforms (e.g., direct messages between accounts on Instagram).

- Documents, including data and communications, relating to Plaintiffs' parents' knowledge, awareness, or understanding of parental privacy control features on TikTok and the Other Online Services, including documents relating to any attempts to enable or disable such features.

- Documents, including data and communications, relating to any attempt to sell or license any of Plaintiffs' personal information for monetary compensation.

- Documents, including data and communications, relating to any attempt to monitor or limit Plaintiffs' access to TikTok or the Other Online Services.

- Documents sufficient to show Plaintiffs' Apple App Store or Google Play Store purchases or downloads on any device during the Class Period (RFP No. 46).

July 2, 2026 Letter from D. Breuder.

Now however, Plaintiffs effectively seek reconsideration of the Court's ruling and attempt to undermine it by: (i) pushing back on the twelve categories Defendants provided and contending that not all categories should apply to each of the Disputed RFPs, (ii) disavowing their prior agreement that they would search all document sources and types—not limited to DYD files—for anything responsive to these RFPs; and (iii) effectively rewriting the Disputed RFPs to carve out important subsets of documents, including ones that would reflect the parents' knowledge and awareness that their minor children were sharing their PII with Other Online Platforms. None of these positions has merit, and each should be rejected.

***Plaintiffs' Parents' Awareness of "Other Online Services" Is Within the Scope of This Discovery***

Plaintiffs are attempting to limit Defendants' ability to obtain discovery about Plaintiffs' parents' knowledge of the Other Online Services and Plaintiffs' use and

experience on Other Online Services, but such discovery was clearly contemplated by the Court's June 4 order, the discussions before the Court, and the RFPs themselves. Specifically, Defendants' RFP No. 27 seeks Plaintiffs' parents' documents and communications "relating to [Plaintiffs'] use of any online service or streaming service" and RFP 28 seeks Plaintiff parents' communications with anyone "relating to the use or disclosure of [Plaintiffs'] personal information by any online service or streaming service, including defendants." These RFPs clearly contemplate discovery related to what Plaintiffs' parents knew about these Other Online Services, and how Plaintiffs interacted with these Other Online Services.

Further, during the June 3 hearing, Defendants provided clear examples of the types of information Defendants seek from the Plaintiffs' parents DYD files, which included Plaintiffs parents' knowledge regarding Other Online Services and Plaintiffs use and experience on these other platforms.  At the June 26 hearing, the Court acknowledged that Plaintiffs' parents' knowledge of Other Online Services was discussed as a starting point for scope discussions.  The Court stated, "I was looking at my notes from the last hearing, and when we were talking about this with respect to the DYD files for the parents and guardians.  Things like whether they accepted the privacy policy and whether they were communicating with their minor children, what they knew about the privacy policies and the terms and conditions as a way to start defining, refining categories." June 26 Hr'g Tr. at 39:7-11.  Defendants provided categories tailored to hit on these very issues, which Plaintiffs rejected claiming that "Parents' awareness of Plaintiffs' use of Other Online Services is not at issue in this litigation."  The Court further acknowledged the relevance of this discovery when it ordered Plaintiffs to answer Rog No. 10, which specifically relates to "[Plaintiffs'] parent(s)' knowledge, awareness, understanding, or review of any online service or streaming service privacy policies, terms of service, community guidelines, account settings information, privacy controls, content controls, advertising . . . ."  Rog No. 10.  Plaintiffs' position flouts the Court's prior orders and the lengthy discussions before the Court and should be rejected.

### *Scope Statements Should Apply to All RFPs Related to Other Online Services*

Plaintiffs also complain that Defendants' scope statements were not separated RFP by RFP.  However, Plaintiffs' suggestion is nonsensical makework.  RFP Nos. 21-22 and 27-28 are mirror images of each other and seek the same discovery—albeit one set for documents in the minors' files, and one set of responsive documents in the parents' files.  For example, RFP No. 22 asks from the perspective of Plaintiffs for "All documents, including all communications with your parent(s) or any other person, relating to the use or disclosure of your personal information by any online service or streaming service, including defendants," while RFP No. 28 seeks "all of your parent(s)' documents, including all communications with any person, relating to the use or disclosure of your personal information by any online service or streaming service, including defendants."  Defendants' provided a scope category that is equally applicable to Plaintiffs and their parents:  "Documents, including data and communications, relating to Plaintiffs' and/or Plaintiffs' parents' knowledge, awareness, or understanding of whether online platforms or websites track and/or save and/or use their personal information as defined under COPPA."  Plaintiffs' parents' knowledge regarding whether Other Online Services track or use personal information is equally relevant and thus it is appropriate to seek this information from both Plaintiffs and their parents.  The same is true of Defendants other scope statements.  As such, there is no need to provide different scope categories for each request.

### *Scope Statements Should Not Differ Across Document Sources*

Plaintiffs object that Defendants' categories do not differ across document sources: (1) parent/guardian TikTok data; (2) minor Plaintiffs' TikTok data; (3) minor Plaintiffs' data from Other Online Services; and (4) other custodial documents, such as text messages and emails, and assert that "the Court's orders, and Defendants' stated justifications for these categories, do not apply uniformly across these sources."  However, the scoping exercise was meant to narrow these categories given privacy concerns related to the parents' TikTok accounts, and Defendants propose using this

narrowed scope across Plaintiffs review of all sources, including emails and text messages. Defendants continue to object to privacy concerns being a method of limiting discovery, especially in light of the Parents' Stipulated Protective Order (ECF No. 149) and the fact that Plaintiffs never raised such concerns over the privacy of the 68 random users they have received discovery regarding. Thus, Plaintiffs would now have the narrowed scope contemplated by the most sensitive category dictate review of all sources. Further, the categories suggested by Defendants should apply regardless of where the conversations are found because the substance of the conversation is what matters, not the forum of that discussion. For example, whether communications about these subjects occurred by Plaintiffs in their Instagram account, their TikTok account or via text or email should not matter if the substance is within scope and responsive. As such, this objection should be overruled.

Plaintiffs now claim with respect to Category 9, that Plaintiffs raised the concern that "the category, as drafted, sought information outside the scope of review of parents' TikTok DYD files," but in Plaintiffs' July 14th letter, Plaintiffs stated "it appears to exceed the scope of discovery ordered by the Court, which is limited to Plaintiffs' parent's use of TikTok, and not Other Online Services." If Plaintiffs position is that the scope of responsiveness for these requests should be limited to Plaintiffs' parents' use of TikTok and not include "Other Online Services," Defendants disagree for the reasons stated above. Plaintiffs now seem to be saying that this request is outside the bounds of permissible discovery because the scope of review is limited to the parents' TikTok accounts. Similarly, Defendants do not agree to limit review to only the parent's TikTok accounts, Plaintiffs should also search their parents' other documents such as email and text messages. The Court's June 26, 2026 Order states, "With respect to the scope of materials to be produced from DYD files (from Plaintiffs' other online and streaming services and the TikTok accounts of the parents/guardians), Defendants will provide a letter to Plaintiffs with specific categories of documents. Defendants shall provide that letter as soon as practicable and no later than July 2, 2026." ECF 277 at ¶ 4. However,

the Court's order simply confirmed that the scope exercise is applicable to DYD files, not that no other files of Plaintiffs' parents are within the bounds of discovery.  The RFPs in question specifically seek documents and communications and are not limited to Plaintiffs' DYD files.  Further, Plaintiffs already agreed to search emails and text messages for RFP Nos. 21-22, 27-28 and 46.  On June 22, Plaintiffs confirmed "With respect to Defendants' RFP Nos. 21, 22, 27 28, and 46, Plaintiffs can confirm that Plaintiffs do not intend to limit their search and production for materials responsive to these RFPs to DYD files."  June 22, 2026 Email from C. Springer Re: Joint Status Report.  Further, while the scope category discussion was limited to DYD files given privacy concerns, Defendants view is that all document sources should be governed by this narrowed scope.  As such, Defendants do not agree that Category 9, should be treated differently from other requests.

### *RFP No. 46 Should Not Be Limited to Only 10 Other Online Services*

Plaintiffs have limited the scope of RFP No. 46, seeking "documents sufficient to show your Apple App Store or Google Play store purchases or downloads on any device during the class period" to only the 10 other online services.  Defendants limited the list of Other Online Services to 10 because of burden concerns related to collecting DYD files.  The term "Other Online Services" is not used in RFP No. 46, which is a separate request from RFP Nos. 21-22, 27 and 28.  The Court's order did not limit Defendants' ability to seek other discovery related to Plaintiffs' use of Other Online Platforms, nor should it, given the relevance of those activities to this case.  What Defendants seek with respect to this RFP is simply a list of the apps that each Plaintiff has downloaded to his or her devices from the Apple App Store and Google Play Store.  Plaintiffs should be ordered to provide the full list of apps they downloaded.

DATED this 22nd day of July, 2026.

KELLER ROHRBACK L.L.P.


By: */s/ Derek W. Loeser*
    Derek W. Loeser (*pro hac vice*)
    dloeser@kellerrohrback.com
    Cari Campen Laufenberg (*pro hac vice*)
    claufenberg@kellerrohrback.com
    1201 Third Avenue, Suite 3400
    Seattle, WA 98101
    (206) 623-1900, Fax (206) 623-3384

    *Interim Lead Counsel for Plaintiffs*

COHEN MILSTEIN SELLERS AND TOLL PLLC


By: */s/ Eric A. Kafka*
    Eric A. Kafka (*pro hac vice*)
    ekafka@cohenmilstein.com
    Cohen Milstein Sellers and Toll PLLC
    88 Pine Street, 14th Floor
    New York, NY 10005
    212-838-7797
    212-838-7745 (fax)

    *Interim Lead Counsel*

SILVER GOLUB & TEITELL LLP


    Steven L. Bloch (*pro hac vice*)
    sbloch@sgtlaw.com
    One Landmark Square, 15th Floor
    Stamford, CT 06901
    (203) 325-4491

*Executive Committee*


By: */s/ Daniel M. Petrocelli*
     DANIEL M. PETROCELLI (S.B. #97802)
     dpetrocelli@omm.com
     O'MELVENY & MYERS LLP
     1999 Avenue of the Stars, Suite 800
     Los Angeles, California 90067-6035
     Telephone: (310) 553-6700
     Facsimile: (310) 246-6779

     STEPHEN D. BRODY (*pro hac vice*)
     sbrody@omm.com
     O'MELVENY & MYERS LLP
     1625 Eye Street, NW
     Washington, D.C. 20006-4001
     Telephone: (202) 383-5300
     Facsimile: (202) 383-5414

     MATTHEW D. POWERS (S.B. #212682)
     mpowers@omm.com
     O'MELVENY & MYERS LLP
     Two Embarcadero Center
     San Francisco, CA 94111
     Telephone: (415) 984-8700
     Facsimile: (415) 984-8701

     *Attorneys for Defendants ByteDance Ltd., ByteDance Inc., TikTok Ltd., TikTok Inc., TikTok LLC, TikTok Pte. Ltd., and TikTok U.S. Data Security Inc.*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-4.3.4(a)(2)**

I, Derek W. Loeser, attest that all other signatories listed, and on whose behalf the filing is submitted, have concurred in the filing's content and have authorized the e-filing of the foregoing document in compliance with Local Rule 5-4.3.4(a)(2).

Executed this 22nd day of July, 2026, at Seattle, Washington.

*/s/ Derek W. Loeser*
Derek W. Loeser

## CERTIFICATE OF SERVICE

I, Sarah Skaggs, hereby certify that on July 22, 2026, I electronically filed the foregoing with the Clerk of the United States District Court for the Central District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

/s/ Sarah Skaggs
Sarah Skaggs