DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
DREW E. BREUDER (S.B. #198466)
dbreuder@omm.com
**O'MELVENY & MYERS LLP**
1999 Avenue of the Stars, Suite 800
Los Angeles, California 90067-6035
Telephone:  +1 310 553 6700
Facsimile:   +1 310 246 6779

MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center
San Francisco, CA 94111
Telephone:  +1 415 984 8700
Facsimile:   +1 415 984 8701

SID MODY (*pro hac vice*)
smody@omm.com
**O'MELVENY & MYERS LLP**
2801 North Harwood Street, Suite 1600
Dallas, TX 7501
Telephone:  +1 972-360-1900
Facsimile:   +1 972-360-1901

*Attorneys for Defendants ByteDance Ltd.,
ByteDance Inc., TikTok Ltd., TikTok Inc.,
TikTok LLC, TikTok Pte. Ltd., and
TikTok USDS Joint Venture LLC*

Derek W. Loeser (*pro hac vice*)
dloeser@kellerrohrback.com
Cari Campen Laufenberg
(*pro hac vice*)
claufenberg@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101
Telephone:  (206) 623-1900
Facsimile:   (206) 623-3384

Eric Kafka (*pro hac vice*)
ekafka@cohenmilstein.com
**COHEN MILSTEIN SELLERS &
TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Telephone:  (212) 838-7797
Facsimile:   (212) 838-7745

*Plaintiffs' Interim Co-Lead Counsel*

Steven Bloch (*pro hac vice*)
sbloch@sgtlaw.com
**SILVER GOLUB & TEITELL LLP**
One Landmark Square, 15th Floor
Stamford, CT 06901
Telephone:  (203) 325-4491
Facsimile:   (203) 325-3769

*Plaintiffs' Executive Committee*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TIKTOK, INC., MINOR PRIVACY LITIGATION | Case No. 2:25-ml-03144-GW-RAO |
| | **JOINT STATUS REPORT PURSUANT TO COURT'S JULY 29, 2026 ORDER** |
| | Hon. Rozella A. Oliver<br>Courtroom: 590 |

Pursuant to the Court's Minute Order of July 29, 2026 (ECF No. 337), the Parties submit this Joint Status Report.

## I.      DEFENDANTS' STATEMENT

### A.      Background and Agreed-Upon Issues

On June 4, the Court granted "Category 3" of Defendants' motion to compel: "Discovery Regarding Plaintiffs' and Their Parents' Use of TikTok and Other Online Services (RFP Nos. 21, 22, 27, 28, 46; Interrogatory Nos. 2, 4-6)." *See* ECF 247 at 12 ("The Court will order Plaintiffs to provide further responses and documents with respect to the minor plaintiffs' use of other online and/or streaming services for the reasons set forth by Defendants, including the discussion with Judge Wu at the April 13, 2026 hearing where Plaintiffs' counsel stated that they would answer certain written discovery in light of their position that they do not want the minor plaintiffs to be personally deposed."). With respect to RFP Nos. 21, 22, 27, 28, and 46 (the "Online Service RFPs"), the Court ordered the parties to "meet and confer on the types of communications and documents Defendants are seeking and agree upon search terms."[1] *Id*. (noting the "parties should refer back to the Court's comments during the hearing about what it would consider relevant as guidance."). The Court issued a similar ruling with respect to Defendants' Interrogatory Nos. 2 and 4. *Id*. ("Pursuant to the discussion during the hearing

---

[1] RFP No. 21 sought "All DOCUMENTS, including all COMMUNICATIONS with YOUR PARENT(S) or any other PERSON, RELATING TO YOUR use of any ONLINE SERVICE or STREAMING SERVICE." RFP No. 22 sought " All DOCUMENTS, including all COMMUNICATIONS with YOUR PARENT(S) or any other PERSON, RELATING TO the use or disclosure of YOUR PERSONAL INFORMATION by any ONLINE SERVICE or STREAMING SERVICE, including DEFENDANTS." RFP Nos. 27 and 28 were mirror images of RFP Nos. 21 and 22, except that they sought responsive documents from the Plaintiffs' parents, as opposed to the Plaintiffs. RFP No. 46 sought "DOCUMENTS sufficient to show YOUR Apple App Store or Google Play Store purchases or downloads on any DEVICE during the CLASS PERIOD." Interrogatory Nos. 2 and 4 sought various details and information about Plaintiffs' parents' TikTok accounts.

regarding Interrogatory Nos. 2 and 4, the Court will direct Plaintiffs to provide the user IDs and usernames of their parents' TikTok accounts, but the parties must meet and confer on the scope of information Defendants may review from those accounts.").

On June 26, 2026, the parties participated in an additional informal discovery conference ("IDC") and engaged in further discussion with the Court about the types of documents and information Defendants maintain should be provided in response to this discovery. *See* ECF 277 at 2 ("With respect to the scope of materials to be produced from DYD files (from Plaintiffs' other online and streaming services and the TikTok accounts of the parents/guardians), Defendants will provide a letter to Plaintiffs with specific categories of documents…no later than July 2, 2026."). On July 2, 2026, and consistent with their prior discussions with the Court and the Court's statements about what is relevant, Defendants sent Plaintiffs a letter identifying 12 categories of documents and information. To date, and following multiple meet and confer discussions, the parties have reached agreement with respect to 7 of the 12 categories, as set forth below:

- **Category 1:** Documents, including data and communications, regarding Plaintiffs' and/or Plaintiffs' parents' knowledge, awareness, or understanding of and consent to the privacy policies and terms of service of TikTok and the Other Online Services.

- **Category 2:** Documents, including data and communications, regarding Plaintiffs' and/or Plaintiffs' parents' knowledge, awareness, or understanding of whether TikTok and the Other Online Services track and/or save and/or use their personal information as defined under COPPA.

- **Category 5:** Documents, including data and communications, regarding how Plaintiffs gained access to the 13+ Experience and the Other Online Services, including discussions about evading age gates or similar security measures.

- 3 -

- **Category 6:** Documents, including data and communications, regarding the TikTok age gate or any age gate or similar security measures on any Other Online Services, including discussions about what age or date of birth Plaintiffs entered in any such age gate or similar security measures, evasion of the age gate or similar security measures, how to avoid detection, and similar subjects.

- **Category 7:** Documents, including data and communications, regarding Plaintiffs' parents' knowledge, awareness, or understanding of the fact that Plaintiffs had access to and were using TikTok's 13+ Experience and/or relating to Plaintiffs' parents' permission for Plaintiffs to be on the 13+ Experience.

- **Category 9:** Documents, including data and communications, regarding Plaintiffs' parents' knowledge, awareness, or understanding of parental privacy control features on TikTok and the Other Online Services, including documents regarding any attempts to enable or disable such features.

- **Category 11:** Documents, including data and communications, regarding any attempt to monitor or limit Plaintiffs' access to TikTok or the Other Online Services.

### B.    Remaining Disputed Issues

Notwithstanding multiple meet and confers, the parties have been unable to resolve several remaining disputes with respect to the language of Categories 3-4, 8, 10, and 12.  As described below, these categories seek the same type of documents and information Defendants identified at the prior hearings and which the Court indicated were relevant and thus should be provided.

**Categories 3-4.**  Category 3 asks for "Documents, including data and communications, relating to any use or disclosure of Plaintiffs' and/or Plaintiffs' parents' personal information as defined under COPPA with TikTok."  Category 4 is similar to Category 3, except that it seeks "Documents, including data and communications, relating to any use or disclosure of Plaintiffs' [but not their

parents'] personal information as defined under COPPA with any Other Online Services."

As an initial matter, Plaintiffs' claim that Defendants refused to clarify and explain what types of documents and information these and other categories seek is wrong.  Defendants have repeatedly explained—both at the prior IDC hearings, in correspondence, and during multiple meet and confer discussions—what these and other categories are directed to.  For example, Categories 3 and 4 would require production, among other things, of (i) direct messages, emails, and other communications on TikTok, Instagram, or any of the other Online Services between Plaintiffs and others discussing how they are sharing their personal information with those or other platforms; (ii) direct messages, emails, and other communications on TikTok, Instagram, or any of the other Online Services where Plaintiffs discuss the types and categories of data those platforms collect; (iii) direct messages, emails, and other communications TikTok, Instagram, or any of the other Online Services where Plaintiffs discuss the terms of service or privacy policies for those platforms; and (iv) data or other documents reflecting that Plaintiffs reviewed, accepted, or approved the terms of service or privacy policies for those platforms.  Plaintiffs are represented by sophisticated counsel who know and understand the issues in this case, and Plaintiffs' assertion that "they don't know what documents Defendants are seeking" is designed solely to delay and frustrate Defendants' access to this highly relevant discovery.

Category 3

With respect to Category 3, Plaintiffs previously complained that inclusion of the word "disclosure" supposedly rendered that category overbroad.  In this Joint Report, however, Plaintiffs appear to have conceded this issue and now agree that Category 3 should include "Documents, including data and communications, regarding any use or disclosure of Plaintiffs' personal information as defined under

COPPA with TikTok."[2]  As a result, the only remaining dispute appears to be whether "use or disclosure of Plaintiffs' *parents'* personal information as defined under COPPA with TikTok" should also be included in Category 3.

Specifically, Plaintiffs argue that Defendants should omit "use or disclosure of Plaintiffs' parents' personal information" on TikTok from Category 3 because "whether Plaintiffs' parents shared their own personal information is not at issue in this case."  Defendants disagree.  While Plaintiffs' parents have not asserted their own state law claims based on use and disclosure of their own personal information, discovery about the nature and extent of parental use of TikTok is still relevant for a variety of reasons.  For instance, Plaintiffs have alleged state law intrusion upon seclusion claims which require, among other things, proof of a reasonable expectation of privacy in their personal information and that Defendants' conduct was highly offensive.  E.g., ECF 157 ("Compl.") ¶¶ 17, 591, 594, 598.  If the parents—who are the individuals who brought this lawsuit and will be deposed—were on TikTok, voluntarily shared and consented to disclosure of their personal information to the platform, and knew their child was on TikTok, that information bears directly on whether it was reasonable to assume their child's data would be private on TikTok and whether Defendants' purported collection of that data was highly offensive.

Similarly, Plaintiffs have alleged Defendants' conduct caused them to lose control, and diminished the value of, their personal data.  *See, e.g.*, Compl. ¶¶ 228-30.  As the Court previously noted, discovery reflecting the sharing of personal information on other platforms bears directly on these damages theories.  *See* ECF 248 ("June 3, 2026 Hearing Tr.") at 78:18-19 (". . . *I do see the relevance here on damages*.") (emphasis added).  Obviously, personal information that has been widely disclosed and shared across the internet cannot reasonably be considered

---

[2] Plaintiffs still appear to contend that inclusion of "disclosure" in Category 4 renders that category overbroad. *See infra*.

- 6 -

private and has far less, if any, value than information that has been kept private. And if the parents, like their children, agreed to share their personal information with TikTok for free, that information is relevant to damages, including whether the value of their children's data—which is presumably less valuable than their parents' data, given the formers' status as children—was somehow diminished by Defendants' conduct. *Id.*; *see also id.* at 51:10-18 ("I mean it seems to me if some of the examples, it's obviously the ones -- you know, they've identified ones that I think are relevant, interactions with their own children which I think is relevant. I mean, it goes beyond I think the way you've narrowly defined it under COPPA, did they give written consent. There are other issues here, damages, the unjust enrichment, negligence, the state law claims that are also involved here.").

Moreover, these categories establish the parents' knowledge of and familiarity with how the platform works. For example, if a parent is a TikTok super user and knew their child was on the 13+ platform, then the parent would know that their child lied at the age gate and, by extension, that their child had agreed to share his or her personal information with the platform, all of which is relevant to Defendants' various defenses, including laches, lack of actual knowledge, estoppel, waiver, notice, and unclean hands. *See* ECF 305 (Defs.' Amd. Answer) at 166-179.

Plaintiffs also assert that Category 3 is overbroad because the Online Services RFPs do not specifically seek documents regarding the use or disclosure of the parents' personal information on TikTok. This is misdirection. The Court ordered the parties to meet and confer not only about the Online Services RFPs, but also about the categories of information Defendants may review from the parents' TikTok accounts now that the Court has required the parents to provide their TikTok account credentials to Defendants. *See* ECF 247 at 12 ("Pursuant to the discussion during the hearing regarding Interrogatory Nos. 2 and 4, the Court will direct Plaintiffs to provide the user IDs and usernames of their parents' TikTok

accounts, but the parties must meet and confer on the scope of information Defendants may review from those accounts.").  Interrogatory Nos. 2 and 4 seek a broad variety of information about the parents' use of TikTok, and the whole point of this exercise is to reach agreement and align on what types of documents and information Defendants may review from the parents' TikTok accounts now that Defendants have access to those accounts.  As explained above, documents reflecting the use and disclosure of the parents' personal information on TikTok is squarely relevant, and the Court should overrule Plaintiffs' sole remaining objection to Category 3.

Category 4

Plaintiffs assert Category 4 is overbroad because they claim it would require them to produce direct messages where a Plaintiff discloses his or her name, or other personal information, on Instagram or any of the other Online Services.  To remedy this, Plaintiffs previously proposed striking the word "disclosure" from Category 4, but there is no reason to do so because that term directly tracks and appears in the Children's Online Privacy and Protection Act ("COPPA") statute and regulations, which "prohibits unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure of personal information from and about children on the internet."  16 C.F.R. § 312.1; *see also* 15 U.S.C. § 6501(4) (definition of "disclosure" of personal information).  As the Court knows, this case involves various state law claims, each of which is expressly predicated on Defendants' alleged collection, use, and disclosure of Plaintiffs' personal information.  *See generally* Compl.  Documents reflecting Plaintiffs' disclosure of their personal information to others on TikTok or the other Online Services are thus directly relevant.

For example, and as Defendants explained in their prior briefing and at the IDC hearings, if Plaintiffs voluntarily shared and disclosed their name and other personal information on TikTok, Instagram, Snapchat, and other social media

platforms, that information is directly relevant to and would undermine their allegation that it was reasonable to believe TikTok would not collect and use that same information or that doing so was highly offensive.  The same holds true with respect to Plaintiffs' negligence claims—if Plaintiffs shared their personal information with third parties on TikTok and provided their data to other Online Services, that bears on whether TikTok owed a duty of care to Plaintiffs and whether Defendants' conduct in collecting and disclosing Plaintiffs' data was negligent.  As explained above, this discovery is also relevant to damages.  *See* June 3, 2026 Hearing Tr. at 78:18-19 (". . . I do see the relevance here on damages.").  There is simply no basis to carve out "disclosure" of personal information from Category 4.

Plaintiffs also raise the strawman that Category 4 would supposedly require production of "all DYD files containing the first and last name or username of a Plaintiff, entitling Defendants to every post, message, or interaction that reflects that information."  That is incorrect.  As demonstrated by the examples provided, Defendants are not insisting that Plaintiffs produce every email or direct message in their DYD files mentioning or disclosing their personal information.  Rather, Defendants are seeking documents, communications, and information reflecting Plaintiffs' acknowledgement or awareness that their personal information was being collected by those platforms, that they knew this was happening, that they consented to it, that they did not suffer any damages or injury by virtue of that conduct, and that the platforms did not know Plaintiffs were under the age of 13, either because they lied on an age gate or otherwise evaded the platform's security measures.  Plaintiffs' assertions of overbreadth lack merit and should be rejected.

**Category 8.**  The Court should also overrule Plaintiffs' relevance objection to Category 8, which asks for "Documents, including data and communications, relating to Plaintiffs' parents' knowledge, awareness, or understanding of the fact that Plaintiffs had access to and were using the Other Online Services and/or

relating to Plaintiffs' parents' permission for Plaintiffs to be on those Other Online Services." For example, Category 8 would require Plaintiffs to provide, among other things, (i) direct messages, emails, and other communications on Instagram or any of the other Online Services where Plaintiffs discuss how their parents know they are using the platform; (ii) direct messages, emails, and other communications on Instagram or any of the other Online Services where Plaintiffs discuss parental permission or consent to their use of those platforms; and (iii) direct messages, emails, and other communications on Instagram or any of the other Online Services where Plaintiffs exchange communications with or message their parents on the platform, thus reflecting awareness of the child's use of the platform.

Plaintiffs' relevance objection is unexplained, unsubstantiated, and plainly wrong, as demonstrated by the Court's prior rulings. For instance, and as explained above, the Court has already determined that Plaintiffs' use of other Online Services is relevant. *See* ECF 247 at 12. The Court has also already determined that parental knowledge and understanding of the other Online Services' privacy policies and terms of service is relevant, as well. *See id.* at 13 (granting Defendants' motion to compel responses to Interrogatory No. 10, which asked Plaintiffs to describe "YOUR PARENT(S)' knowledge, awareness, understanding, or review of any ONLINE SERVICE…privacy policies [or] terms of service," because "Plaintiffs represented to Judge Wu that they would answer this written discovery" and the discovery is "tailored to certain policies and materials related to the collection of personal information on other online services and therefore does not involve the same breadth and privacy concerns as the requests in the prior sub-categories.").[3] Similarly, the Court granted Defendants' motion as to Interrogatory

---

[3] Plaintiffs concede that "the Court has ordered discovery relating to Plaintiffs' use of these other Online Services," but claim discovery about "whether their parents consented to the use" is out of bounds because it "impermissibly broadens the RFPs." Defendants disagree. Discovery about Plaintiffs' use of the other Online Services is sufficiently broad enough to include whether their parents knew about

No. 5, which in part asked Plaintiffs to describe "the date YOUR PARENT(S) learned about YOUR use or access of each service; and whether YOUR PARENT(S) took any steps or action to prevent YOUR use of each service." *See id.* at 11-12. Given these prior rulings, there is no principled basis to conclude that Defendants can obtain discovery about the children's use of other Online Services and parental knowledge of those services' privacy policies, but that Defendants are precluded from obtaining discovery about parental knowledge of their children's use of the other Online Platforms.

For example, Plaintiffs contend that Defendants violated COPPA because they did not obtain parental consent to collect and use the children's data. Discovery reflecting that the parents knew about and allowed their children's use of other Online Services like Snapchat, Instagram, and others—including collection, use, and disclosure of their children's data to those platforms—is squarely relevant because it directly refutes and undermines Plaintiffs' assertion that their parents did not and would not agree to collection and use of their children's data on TikTok. For the same reasons explained above, discovery concerning parental knowledge and awareness of their children's use of other platforms is also relevant to reasonable expectation of privacy, damages, and Defendants' defenses, among other issues.

**Category 10.** Category 10 asks for "Documents, including data and communications, regarding any attempt to sell or license any of Plaintiffs' personal information for monetary compensation." This category would require Plaintiffs to provide, among other things, direct messages on TikTok or other Online Services discussing whether to sell or license Plaintiffs' personal information.

Plaintiffs do not contest the relevance of this information, nor could they given their "diminished value" and "loss of control" damages theories. *See supra.*

and consented to such use. Moreover, and as explained above, the Court has already granted discovery on this identical subject. *See* ECF 247 at 12.

Instead, Plaintiffs object that Category 10 is not directly requested by and falls outside the scope of the Online Services RFPs, but that is wrong.  For example, RFP Nos. 21 sought "All DOCUMENTS, including all COMMUNICATIONS with YOUR PARENT(S) or any other PERSON, RELATING TO YOUR use of any ONLINE SERVICE," which necessarily includes and subsumes documents reflecting attempts to monetize the data Plaintiffs shared with those platforms.  Moreover, and even assuming Category 10 does not squarely fall within the scope of RFP No. 21, the Court separately granted Defendants' motion to compel as to RFP Nos. 67, 68, and 77 and Interrogatory No. 7, which separately sought information about any "actual or proposed sale…or license" of their personal information to any other person, which means Plaintiffs have no basis to complain here.  *See* ECF 247 at 18.  Put differently, because the Court has already separately determined that Defendants are entitled to documents relating to any attempt by Plaintiffs to sell or license their personal information, it follows that the same discovery should be one of the Categories Plaintiffs must search for when reviewing their DYD files for the Online Services.

Plaintiffs also claim Category 10 is burdensome, and that they should not have to provide this discovery because they "have no reason to believe [these documents] exist" and because Plaintiffs have already served RFA responses admitting they have not attempted to sell or license their personal information.  But the Court has already overruled Plaintiffs' burden objections.  *See* ECF 247 at 12 ("Plaintiffs have not sufficiently supported their assertions of undue burden.").  Nor do Plaintiffs' RFA responses absolve them of their obligation to provide documents responsive to this category.  The discovery is clearly relevant, including because it bears directly on damages issues and Plaintiffs' allegation that their personal information "has massive economic value" and that Defendants' conduct caused a "loss of control over" and "diminished the value of" that data.  Compl. ¶¶ 228-231.  Moreover, Defendants are entitled to test the veracity of Plaintiffs' RFA responses

and determine whether documents exist that corroborate or undermine those responses. And if Plaintiffs' RFA responses are accurate, then they can simply say "none" in response to this Category. *See Louen v. Twedt*, 236 F.R.D. 502, 505 (E.D. Cal. 2006) ("Even if there are no documents responsive to a request for production, the requesting party is entitled to a response pursuant to Fed. R. Civ. P. 34(b)."). Finally, Plaintiffs have indicated they intend to amend their complaint and add new parties, which means it is possible future RFA responses for the new plaintiffs may be different compared to the responses served to date for the current Plaintiffs. The Court should overrule Plaintiffs' objections to Category 10 and require Plaintiffs to search for documents responsive to this category.

**Category 12.** Category 12 asks for "Documents sufficient to show the Apps Plaintiffs purchased or downloaded from Plaintiffs' Apple App Store or Google Play Store on any device during the Class Period." During the meet and confer, and in response to Plaintiffs' concerns, Defendants agreed to limit this category to Plaintiffs' app downloads, as opposed to downloads of content like songs or movies. Plaintiffs continue to object to Category 12, however, because they claim it is irrelevant, burdensome, and would supposedly invade their privacy, and instead propose that this category be limited to documents sufficient to show any app downloads from the ten Online Services.

The Court should overrule Plaintiffs' objections. First, the discovery is clearly relevant. Defendants are entitled to know what apps Plaintiffs have downloaded and whether they have shared their personal information with those apps, as that information bears directly on (i) Plaintiffs' reasonable expectation of privacy, (ii) whether TikTok's collection of Plaintiffs' personal information was highly offensive when juxtaposed against the widespread dissemination of that same information on multiple other apps, (iii) whether Plaintiffs truly lost control of their data or if its value was diminished if that data was shared all across the

internet (*i.e.,* damages), and (iv) Defendants' defenses of waiver, estoppel, laches, and others.

Nor can Plaintiffs credibly claim burden here. As explained, the Court already rejected and overruled Plaintiffs' burden objections. *See supra.* And providing this information is not remotely burdensome. For example, this information can be quickly and easily obtained on an iPhone device in a few steps by (1) going to the App Store icon on your phone, (2) clicking the account button in the top right corner, and (3) navigating to the "Apple & Purchase History" menu, which then provides a list of every app downloaded and purchased on the device.

Plaintiffs' "privacy concerns" also lack merit. The Court has already ordered and agreed that Defendants are permitted to inquire about Plaintiffs' activities on third party platforms, which was part of the calculus and exchange for the children largely being able to avoid depositions in this case. Moreover, there is nothing invasive about Plaintiffs having to open their phone and provide a copy of their app downloads, and the Court has already entered a stipulated protective order which is more than adequate to safeguard and address any privacy concerns. As for Plaintiffs' argument that "the fact that a Plaintiff downloaded or purchased an app does not mean that they ever used the app, much less disclosed any personal information thorough it," that goes to the weight, not the discoverability, of this evidence.

Nor is there any basis to limit Category 12 to the ten Online Services, as Plaintiffs suggest. Plaintiffs concede that "Category 12 essentially restates the language of RFP No. 46," which sought documents "sufficient to show YOUR Apple App Store or Google Play Store purchases or downloads on any DEVICE during the CLASS PERIOD." ECF 247 at 11. But RFP No. 46 does not mention "Online Services," which means there is no basis to impose that restriction or limit

this category to those ten platforms.[4]  Defendants have already confined RFP No. 46, and by extension, Category 12, to documents sufficient to show.  There is no reason to even further limit this discovery, particularly given the lack of any demonstrable burden in providing this information.

## II.      PLAINTIFFS' STATEMENT

### A.      Background

Following the Court's June 26, 2026 Order, Defendants provided Plaintiffs with their proposal regarding the scope of DYD data review for RFP Nos. 21, 22, 27, 28, and 46 on July 2, 2026.[5] The five RFPs at issue address (1) Plaintiffs' use and experience of TikTok and the ten agreed upon Other Online Services (RFP Nos. 21, 27), (2) the use and disclosure of Plaintiffs' Personal Information in connection with those services (RFP Nos. 22, 28), and (3) documents sufficient to show Plaintiffs' Apple App Store or Google Play Store downloads and purchases (RFP No. 46).

Defendants' proposal included 12 categories purportedly related to RFPs 21–22, 27–28, and 46:

- Category 1: Documents, including data and communications, relating to Plaintiffs' and/or Plaintiffs' parents' knowledge, awareness, or understanding of and consent to the privacy policies and terms of service of TikTok and the Other Online Services.

- Category 2: Documents, including data and communications, relating to Plaintiffs' and/or Plaintiffs' parents' knowledge, awareness, or

---

[4] Plaintiffs' assertion that "Defendants' position is inconsistent with the Court's orders" because the Court grouped RFP No. 46 under a header with the words "Other Online Services" (ECF 247 at 12) is frivolous.  The Court's header was merely for convenience and to help organize and frame the parties' discussion over the dozens of discovery requests which Plaintiffs objected to, and which the Court largely granted relief on.  Plaintiffs cannot rewrite the text of RFP No. 46 on this basis.

[5] The Court's June 26, 2026 Order required Defendants to provide a letter to Plaintiffs with "specific categories of documents" regarding "the scope of materials to be produced from DYD files (from Plaintiffs' other online and streaming services and the TikTok accounts of the parents/guardians)." Dkt. No. 277 at ¶ 4.

understanding of whether online platforms or websites track and/or save and/or use their personal information as defined under COPPA.

- Category 3: Documents, including data and communications, relating to any use or disclosure of Plaintiffs' and/or Plaintiffs' parents' personal information as defined under COPPA with TikTok.

- Category 4: Documents, including data and communications, relating to any use or disclosure of Plaintiffs' personal information as defined under COPPA with any Other Online Services.

- Category 5: Documents, including data and communications, relating to how Plaintiffs gained access to the 13+ Experience and the Other Online Services, including discussions about evading age gates or similar security measures.

- Category 6: Documents, including data and communications, relating to the TikTok age gate or any age gate or similar security measures on any Other Online Services, including discussions about what age or date of birth Plaintiffs entered in any such age gate or similar security measures, evasion of the age gate or similar security measures, how to avoid detection, and similar subjects.

- Category 7: Documents, including data and communications, relating to Plaintiffs' parents' knowledge, awareness, or understanding of the fact that Plaintiffs had access to and were using TikTok's 13+ Experience and/or relating to Plaintiffs' parents' permission for Plaintiffs to be on the 13+ Experience.

- Category 8: Documents, including data and communications, relating to Plaintiffs' parents' knowledge, awareness, or understanding of the fact that Plaintiffs had access to and were using the Other Online Services and/or relating to Plaintiffs' parents' permission for Plaintiffs to be on those Other Online Services.

- Category 9: Documents, including data and communications, relating to Plaintiffs' parents' knowledge, awareness, or understanding of parental privacy control features on TikTok and the Other Online Services, including documents relating to any attempts to enable or disable such features.

- Category 10: Documents, including data and communications, relating to any attempt to sell or license any of Plaintiffs' personal information for monetary compensation.

- Category 11: Documents, including data and communications, relating to any attempt to monitor or limit Plaintiffs' access to TikTok or the Other Online Services.

- Category 12: Documents sufficient to show Plaintiffs' Apple App Store or Google Play Store purchases or downloads on any device during the Class Period (RFP No. 46).

Plaintiffs responded with counterproposals on July 14, 2026, and the Parties met and conferred on July 21, 2026, and again on August 3, 2026. The Parties exchanged multiple rounds of correspondence.

With the substitution of "related to" for "regarding" in Categories 1–11, as well as the substitution of "online platforms or websites" for "TikTok and the Other Online Services" in Category 2, Plaintiffs agreed to Categories 1, 2, 5, 6, 7, 9, and 11—more than half of Defendants' proposed categories. Although Plaintiffs have acted in good faith to attempt to reach compromise on the categories remaining in dispute, Defendants have refused to provide the clarifications and explanations that Plaintiffs requested and that Defendants previously agreed to provide. Accordingly, the Parties have reached an impasse on Categories 3, 4, 8, 10, and 12, necessitating the Court's intervention.

### B.  **Disputed Issues**

**Category 3**

**Documents, including data and communications, regarding any use or disclosure of Plaintiffs' and/or Plaintiffs' parents' personal information as defined under COPPA with TikTok.**

Category 3 seeks documents regarding Plaintiffs' and/or *Plaintiffs' parents'* personal information with TikTok. As an initial matter, whether Plaintiffs' parents shared their own personal information is not at issue in this case. Nor does such information fall within the scope of RFP Nos. 22 and 28, which are expressly limited to *Plaintiffs'* Personal Information, or RFP Nos. 21 and 27, which concern *Plaintiffs'* use of the Other Online Services. None of the RFPs at issue seek information about

parents' disclosure of their own Personal Information, and Defendants' attempt to expand the scope of the RFPs to encompass such information should be rejected.

Defendants argue that this Category establishes "the parents' knowledge of and familiarity with how the platform works." That's not only beyond the scope of the RFPs, but also beyond the scope of Category 3, which is expressly limited to the use and disclosure of the parent's Personal Information, not their familiarity with how the platform works.

Defendants also contend that Category 3 could include information showing a parent was a TikTok "super user" and thus should have had knowledge about their child's sharing personal information with TikTok. It is unclear what that means or how that has any bearing on how Plaintiffs accessed TikTok and shared personal information with the platform, no less establishing verifiable consent. That theory is both speculative and untethered to the scope of this Category.

Defendants' contention that a parent's agreement to share their own personal information with TikTok is relevant to damages does not change this result. Parents' sharing of their own personal information is completely irrelevant to Plaintiffs' damages in this action. Defendants' assertion that a parent's sharing of their own personal information diminishes the value of their children's personal information lacks any basis in law or reason.  Regardless, parents' sharing personal information with TikTok falls outside the scope of the RFPs at issue in this Category.

Plaintiffs propose limiting Category 3 to the "use or disclosure" of *Plaintiffs'* "personal information as defined under COPPA with TikTok." Notably, Defendants are already receiving precisely that information through Plaintiffs' TikTok DYD files, which Plaintiffs have agreed to produce in full. But to the extent that there may be information concerning the disclosure or use of the *Plaintiffs'* Personal Information in the *parents'* TikTok DYD files, Plaintiffs are willing to review and produce any responsive documents located following a good-faith, reasonable search using the agreed-upon or, if necessary, ordered search terms. Similarly, Plaintiffs are

willing to review Plaintiffs' Other Online Services DYDs for this category for information—again located through the agreed-upon or ordered search terms—where Plaintiffs discuss that they have disclosed their Personal Information with TikTok.

To be clear, Plaintiffs have never proposed eliminating the word "disclosure" from Category 3. Rather, Plaintiffs have requested that Defendants provide examples of what they contend constitutes a "disclosure." In this JSR, Defendants for the first time articulate that documents responsive to Category 3 include, for example, direct messages on TikTok or Instagram between Plaintiffs and their friends discussing the sharing of personal information with TikTok. Examples like these help clarify that Defendants are not seeking production of every document that merely mentions Personal Information, which otherwise could encompass the entirety of a DYD file.

But other than those two examples, Defendants still have not circumscribed the scope of the Category.

### Category 4
**Documents, including data and communications, regarding any use or disclosure of Plaintiffs' personal information as defined under COPPA with any Other Online Services.**

Category 4, too, remains overbroad. As Plaintiffs have repeatedly raised to Defendants, Category 4 could be construed to encompass virtually the entirety of the Other Online Services DYD files, as any use of an online service could reflect the use or disclosure of Plaintiffs' "Personal Information," as defined under COPPA. For example, it would include all instances on the DYD files where Plaintiffs have shared their first and last name or username, entitling Defendants to every post, message, or interaction that reflects that information. The Court has already rejected requests of that scope.

Defendants' request is even broader because it encompasses all of Plaintiffs' DYD files containing an address, email address, telephone number, and other

identifiers and is ambiguous because it would require Plaintiffs to know, for example, the "information concerning the child . . . that the [Other Online Services] collect[] online from the child and combines with an identifier[.]" 15 U.S.C. § 16501 (8)(G). Plaintiffs requested on multiple occasions during the Parties' meet and confer discussions and in correspondence that Defendants simply provide examples of what they seek with respect to Category 4. K. Gancoss July 30, 2026 email ("Plaintiffs have asked TikTok to provide examples of what kinds of documents TikTok is looking for with these categories. TikTok has not provided those examples in its July 29 email or otherwise."); K. Gancoss July 22, 2026 email ("If Defendants wish to further clarify these categories or provide examples of the information they seek, Plaintiffs remain willing to meet and confer in good faith to narrow the requests and attempt to reach a resolution."); K. Gancoss July 14, 2026 letter (Category 4 "should be substantially narrowed and supported with specific examples of the information Defendants believe is relevant."). Defendants have failed to do so.

Instead, Defendants have relied on generalized relevance arguments, ignoring Plaintiffs' concerns about the category's overbreadth. Defendants' position in this JSR, which broadly references Plaintiffs' sharing or disclosure of "their name and other personal information on TikTok, Instagram, Snapchat, and other social media platforms," underscores the very issue Plaintiffs face: where is the line drawn? Without further narrowing, that formulation could sweep in an enormous volume of materials, potentially the entirety of Plaintiffs' DYD files. Plaintiffs therefore seek clarification regarding what Defendants consider responsive to the "disclosure" of Personal Information, along with concrete examples demonstrating the types of documents Defendants are seeking and circumscribing the outer limits. Such examples would help confirm that Defendants are not, consistent with their prior representations, seeking production of entire DYD files. June 26, 2026 Hr'ing Tr. at 39:23–24 (Mr. Breuder representing to the Court that Defendants "are not asking for the entire DYD file[s].")

- 20 -

Without that information, Plaintiffs cannot reasonably respond to Category 4.

## Category 8

**Documents, including data and communications, regarding Plaintiffs' parents' knowledge, awareness, or understanding of the fact that Plaintiffs had access to and were using the Other Online Services and/or relating to Plaintiffs' parents' permission for Plaintiffs to be on those Other Online Services.**[6]

Category 8 seeks documents relating to the parents' knowledge, awareness, and understanding of, or permission for, Plaintiffs' use of the Other Online Services.

As an initial matter, Plaintiffs' parents' permission, if any, for the minor Plaintiffs to be on Other Online Services is irrelevant to this litigation and to the subject RFPs, which pertain to Plaintiffs' use and experience of TikTok and the Other Online Services, and to the use, collection, or disclosure of Plaintiffs' personal information in connection with those services. Although the Court has ordered discovery relating to Plaintiffs' *use* of these Other Online Services, whether their parents *consented* to the use impermissibly broadens the RFPs.

Moreover, Plaintiffs reject Defendants' suggestion that a parent's awareness that their minor child was using Other Online Services would be relevant to the claims or defenses in this litigation.

Defendants contend that discovery reflecting that the parents' awareness and consent to their children's use of other Online Platforms "directly refutes and undermines Plaintiffs' assertion that their parents did not and would not agree to collection and use of their children's data on TikTok." Plaintiffs asked Defendants to

---

[6] Defendants provided two examples of documents encompassed by this category:
   (a) Documents or communications between Plaintiffs and their parents sharing Other Online Services' content outside the respective Other Online Service's platform (e.g., sending an Instagram reel via text message).
   (b) Documents or communications between Plaintiffs and their parents on the Other Online Services platforms (e.g., direct messages between accounts on Instagram).

D. Breuder July 2, 2026 letter.

provide any legal support for their argument—*i.e.,* that a parent's awareness of a Plaintiff using a different social media platform somehow could be interpreted as consent in this litigation. Defendants have not provided any. Nor does parental awareness or consent for Other Online Services go to the issue of damages.

At bottom, a parent's awareness of or consent to their child's use of the Other Online Services has no bearing on their consent to their child's use of TikTok, the child's expectation of privacy while on TikTok, damages, or any other issues in this litigation.

## Category 10

**Documents, including data and communications, regarding any attempt to sell or license any of Plaintiffs' personal information for monetary compensation.**

Plaintiffs have repeatedly asked Defendants to explain how Category 10 falls within the scope of RFP Nos. 21–22 and 27–28, as Defendants assert. RFP Nos. 21 and 27 involve Plaintiffs "use of any ONLINE SERVICE or STREAMING SERVICE" and RFP Nos. 22 and 28 are expressly limited to "the use or disclosure of YOUR PERSONAL INFORMATION by any ONLINE SERVICE or STREAMING SERVICE, including DEFENDANTS." But Category 10 is a general request for information about any attempt to sell or license personal information for monetary compensation untethered from TikTok or the Other Online Services. Thus, on its face, Category 10 exceeds the scope of RFP Nos. 21–22 and 27–28.

Even assuming that Defendants were willing to limit the category to "TikTok and the Other Online Services" (which Defendants have not offered), it would still exceed the scope of the RFPs. Moreover, to Plaintiffs' knowledge, there is no mechanism by which users can sell or license their Personal Information for monetary compensation directly to TikTok or the Other Online Services, and TikTok has not indicated otherwise. Put another way, Defendants demand Plaintiffs look for documents that Plaintiffs have no reason to believe exist.

More importantly, in their respective responses to Defendants RFA Nos. 31–32, each Plaintiff has already admitted that they did not attempt to, nor did they actually, sell, transfer, or license their Personal Information for monetary compensation. Confusingly, Defendants contend that "discussions of a potential sale or license that did not come to fruition would not be encompassed by the RFA responses served by Plaintiffs and thus should be produced." S. Mody August 3, 2026 email. But a potential sale or license that did not come to fruition (*i.e.,* an attempt) *would* be encompassed by RFA No. 31 ("Admit that YOU have not attempted to sell, transfer, or license YOUR PERSONAL INFORMATION to any PERSON.").

Defendants nevertheless contend that they are "entitled to test the accuracy" of Plaintiffs' admissions. Defendants have not articulated any basis for imposing the additional burden of searching for and producing documents concerning conduct that Plaintiffs have unequivocally denied occurred. Nor have Defendants explained how such a request, which is untethered to the RFPs at issue and the corresponding DYD searches authorized by the Court, is relevant or proportional to the needs of the case.

Instead, Defendants contend that Plaintiffs "have no basis to complain" about whether Category 10 falls squarely fall within the scope of the five RFPs at issue because the Court separately granted Defendants' motion to compel as to RFP Nos. 67, 68, and 77, and Interrogatory No. 7, which seek information about any "actual or proposed sale…or license" of their personal information. Plaintiffs disagree. The issue presented here is the scope of review of the DYDs for Other Online Services in connection with the RFPs 21–22, 27–28, and 46. If Category 10 does not fall within the scope of those requests, then it is not a proper DYD-review category for purposes of those RFPs.

**Category 12**

**Documents sufficient to show Plaintiffs' Apple App Store or Google Play Store purchases or downloads on any device during the Class Period (RFP No. 46).**

Category 12 essentially restates the language of RFP No. 46. *Compare* Category 12 *with* RFP No. 46, which seeks "DOCUMENTS sufficient to show YOUR Apple App Store or Google Play Store purchases or downloads on any DEVICE during the CLASS PERIOD."

Consistent with the Court's Orders directing the Parties to confer about a more limited request in light of privacy concerns, Plaintiffs proposed limiting Category 12 to purchases or downloads of TikTok and the ten Other Online Services. Defendants rejected that proposal and instead suggested revising the category to "Documents sufficient to show *the Apps* Plaintiffs purchases or downloaded from Plaintiffs' Apple App Store or Google Play Store on any device during the Class Period." N. Salem July 22, 2026 email (emphasis added). As Plaintiffs explained, however, Defendants' proposed revision fails to address Plaintiffs' concerns regarding relevance and overbreadth.

Defendants contend that Plaintiffs' complete app download and purchase history is relevant because it may show "where else Plaintiffs disclosed their personal information," and Defendants argue that there is "no conceivable burden" associated with producing documents reflecting that information. S. Mody Aug. 3, 2026 email; A. Wolter July 29 email ("Defendants do want to know all apps Plaintiffs downloads because it is relevant to show where Plaintiffs may have disclosed their data elsewhere on the internet.").

First, Defendants' generalized assertion that any downloaded app could bear on potential disclosures of personal information would justify discovery into virtually every aspect of minors' online activity. But the fact that a Plaintiff downloaded or purchased an app does not mean that they ever used the app, much less disclosed any personal information through it.

Second, Defendants ignore that burden is not the only consideration. The minor Plaintiffs' privacy considerations are equally—if not more—significant. As Plaintiffs have repeatedly explained, a complete history of every app that a minor Plaintiff downloaded or purchased during the Class Period would sweep in substantial amounts of information that has little, if any, information related to the claims and defenses in this action while creating substantial privacy concerns. Minor Plaintiffs' app download and purchase histories may disclose sensitive information about their interests, activities, health, education, family circumstances, religious practices, or other private matters that are entirely irrelevant to this litigation.

Finally, Defendants' position is inconsistent with the Court's Orders, which limit discovery into Plaintiffs' use of online and streaming services to TikTok and the ten Other Online Services identified in the case. *See, e.g.*, Dkt. No. 247 at 10 (identifying "***Discovery Regarding Plaintiffs' and Their Parents' Use of TikTok and Other Online Services***" as "RFP Nos. 21, 22, 27, 28, ***46***; Interrogatory Nos. 2, 4-6 (emphasis added)). Expanding Category 12 to encompass every App downloaded or purchased during the Class Period—as Defendants propose—would exceed those limits and revive the same overbroad request contained in RFP No. 46.

Accordingly, Plaintiffs propose that Category 12 be limited to: "Documents sufficient to show Plaintiffs' Apple App Store or Google Play Store purchases or downloads of TikTok and the Other Online Services on any device during the Class Period."

Dated:  August 5, 2026                By: */s/ Daniel M. Petrocelli*

DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
DREW E. BREUDER (S.B. #198466)
dbreuder@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, Suite 800
Los Angeles, California 90067-6035
Telephone: (310) 553-6700
Facsimile: (310) 246-6779

MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
San Francisco, CA 94111
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

SID MODY (*pro hac vice*)
smody@omm.com
O'MELVENY & MYERS LLP
2801 North Harwood Street, Suite 1600
Dallas, TX 75201
Telephone: (972) 360-1900
Facsimile: (972) 360-1901

*Attorneys for Defendants*
*ByteDance Ltd., ByteDance Inc.,*
*TikTok Ltd., TikTok Inc., TikTok*
*LLC, TikTok Pte. Ltd., and TikTok*
*USDS Joint Venture LLC*

KELLER ROHRBACK L.L.P.
By: */s/ Derek W. Loeser*
    Derek W. Loeser (*pro hac vice*)
    dloeser@kellerrohrback.com
    Cari Campen Laufenberg (*pro hac vice*)
    claufenberg@kellerrohrback.com
    1201 Third Avenue, Suite 3400
    Seattle, WA 98101
    (206) 623-1900, Fax (206) 623-3384

    *Interim Lead Counsel for Plaintiffs*

COHEN MILSTEIN SELLERS AND
TOLL PLLC
By: */s/ Erik A. Kafka*
    Eric A. Kafka (*pro hac vice*)
    ekafka@cohenmilstein.com
    Cohen Milstein Sellers and Toll
    PLLC
    88 Pine Street, 14th Floor
    New York, NY 10005
    212-838-7797
    212-838-7745 (fax)

    *Interim Lead Counsel*

SILVER GOLUB & TEITELL LLP

By: */s/ Steven L. Bloch*
    Steven L. Bloch (*pro hac vice*)
    sbloch@sgtlaw.com
    One Landmark Square, 15th Floor
    Stamford, CT 06901
    (203) 325-4491

    *Executive Committee*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-4.3.4(a)(2)**

I, Daniel M. Petrocelli, attest that all other signatories listed, and on whose behalf the filing is submitted, have concurred in the filing's content and have authorized the e-filing of the foregoing document in compliance with Local Rule 5-4.3.4(a)(2).

Executed this 5th day of August, 2026, at Los Angeles, California.

*/s/ Daniel M. Petrocelli*
signature

**CERTIFICATE OF SERVICE**

I, Daniel M. Petrocelli, hereby certify that on August 5, 2026, I caused to be electronically filed the foregoing with the Clerk of the United States District Court for the Central District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

*Daniel M. Petrocelli*
Daniel M. Petrocelli