O'Melveny

O'Melveny & Myers LLP
1999 Avenue of the Stars
8th Floor
Los Angeles, CA 90067-6035

T: +1 310 553 6700
F: +1 310 246 6779
omm.com

Drew Breuder
D: +1 310 246 6713
dbreuder@omm.com

November 4, 2026
**VIA ECF No.**

The Honorable Rozella A. Oliver
Edward R. Roybal Federal Building and
United States Courthouse, Los Angeles
255 East Temple Street
Courtroom 590, 5th Floor
Los Angeles, California 90012-3332

Re: *In re TikTok, Inc., Minor Privacy Litigation*, MDL No. 3144 (C.D. Cal.)
Defendants' Motion For Protective Order re Plaintiffs' RFP Nos. 58-59

To the Honorable Magistrate Judge Oliver:

Pursuant to the Court's directive (Dkt. 478 at 4-5), Defendants hereby move for a protective order from Plaintiffs' Requests for Production ("RFP") Nos. 58 and 59, which seek the production of various documents concerning the final judgments and settlements entered in *T.K., et al. v. Bytedance Technology Co., Ltd., et al.*, Case No. 1:19-cv-07915 (N.D. Ill. 2019) ("*T.K.*"), and *In re TikTok, Inc. Consumer Privacy Litigation*, MDL No. 2948 (N.D. Ill. 2020) ("Privacy MDL"), including settlement communications between counsel for the parties in those matters, confirmatory or informal discovery provided in those matters, and other materials.[1]

## I. The Court Should Issue A Protective Order Because It Lacks Jurisdiction to Entertain Challenges to the Enforceability of the *T.K.* and *Privacy MDL* Judgments.

RFP Nos. 58 and 59 are thinly veiled collateral attacks on the *T.K.* and *Privacy MDL* settlement agreements, which the Northern District of Illinois approved and entered as final judgments. This discovery seeks documents supporting Plaintiffs' unfounded assertions that the [redacted] Dkt. 470 at 71. But discovery into that question is prohibited in this forum, and a protective order should issue, because the Northern District of Illinois has sole jurisdiction over all matters relating to "enforcement" of those judgments:

- The *T.K.* final judgment states that "the [Northern District of Illinois] Court retains jurisdiction of *all matters relating to the* interpretation, administration, implementation,

[1] Defendants' September 28, 2026 amended responses and objections to RFP Nos. 58 and 59, as well as the *T.K.* and *Privacy MDL* Final Judgments and settlement agreements, are attached hereto as Exhibits A-E. References to Ex. C pages are to the ECF page, rather than the underlying page number available at the bottom of the document. Unless otherwise indicated, all emphases in this brief are added and all internal citations are omitted.

effectuation, and *enforcement of the Settlement*." Ex. A at 4, ¶ 16.

- The *Privacy MDL* final judgment similarly states "the [Northern District of Illinois] Court reserves continuing jurisdiction over *matters relating to* the Settlement, including … the administration, interpretation, effectuation and/or *enforcement* of the Settlement, the Settlement Agreement, and *this Final Order and Judgment*." Ex. B at 10, ¶ 27.

- The settlement agreements approved by the Northern District of Illinois in both cases confirm that court's jurisdiction is exclusive: "*No other court* or tribunal will have any jurisdiction over claims or causes of action arising under this Agreement." Ex. C at 32, ¶ 15.1 (*T.K.* settlement); Ex. D at 15, ¶ 16.1 (*Privacy MDL* settlement) (same).

Where, as here, settlement orders provide for retained jurisdiction, federal courts not only recognize and enforce those provisions, but "infer[]" the "exclusivity" of that jurisdiction. *Flanagan v. Arnaiz*, 143 F.3d 540, 545 (9th Cir. 1998) (collecting other appellate authority). In *Flanagan*, the parties agreed the Northern District of California "should retain jurisdiction for purposes of resolving future disputes" over their settlement, and the district court entered an order to that effect. *Id.* at 543. After the plaintiffs repeatedly tried to sue defendants in state court for breach of the settlement agreement, the district court enjoined plaintiffs' attempt "to evade their own agreement … to submit disputes and enforcement proceedings regarding their settlement to the federal district court," and the Ninth Circuit affirmed. *Id.* at 543-44, 546. District courts continue to routinely apply *Flanagan* to preclude challenges to the enforceability of federal court judgments in state court and in other federal courts. *See, e.g.*, *Pruco Life Ins. v. Cal. Energy Dev. Inc.*, 2022 WL 3718842, at *17 (S.D. Cal. Aug. 29, 2022) (enjoining plaintiff from "bringing any future claims related to the interpretation or enforcement of his settlement agreement … in any Court other than the Southern District of California or before any other judge other than the undersigned Magistrate Judge"); *Omnicell, Inc. v. Medacist Sols. Grp., LLC*, 272 F.R.D. 469, 475-77 (N.D. Cal. 2011) (applying *Flanagan*'s presumption of exclusive jurisdiction to construction of prior judgment by another federal court).

This rule is especially important for class settlements, given the settling court's role in reviewing, approving, and administering the settlement, and its interest in preventing collateral attacks on its judgment. *See In re VMS Sec. Litig.*, 103 F.3d 1317, 1322-23 & n.1 (7th Cir. 1996), (enjoining state court lawsuit alleging fraud and misrepresentation in federal class-settlement process; Northern District of Illinois "retained exclusive jurisdiction" and was "the only appropriate place" to bring "claims ar[ising] out of the settlement agreement process"), *abrogated on other grounds by Envision Healthcare, Inc. v. PreferredOne Ins.*, 604 F.3d 983 (7th Cir. 2010); *Tropp v. W.-S. Life Ins.*, 381 F.3d 591, 596 (7th Cir. 2004) (district court "properly dismissed" claims alleging "violations of" class settlement agreement over which Ohio state court retained exclusive jurisdiction). If the Court permits the discovery Plaintiffs seek here, it would encroach on the Northern District of Illinois' exclusive jurisdiction over "all matters relating to … enforcement of the settlement." Ex. A at 4, ¶ 16; Ex. B at 10, ¶ 27.

Plaintiffs cannot credibly contest that their discovery seeks to test whether the *T.K.* and *Privacy MDL* final judgments can be validly enforced against them. Plaintiffs have expressly said as much in their own briefing. In the most recent Joint Status Report, Plaintiffs argued that [redacted]

O'Melveny

[redacted]
Dkt. 470 at 71. And in opposition to Defendants' motion to dismiss, Plaintiffs claimed "there are factual issues as to whether the [*T.K.*] release is *unenforceable* due to mistake of fact," that "fraud is also a ground for *refusing to enforce* a contract," and that Defendants' supposed breach of the *Privacy MDL* final judgment "would *excuse Plaintiffs' performance* of the release." Dkt. 392 at 18-20. Such allegations squarely implicate "enforcement" of the *T.K.* and *Privacy MDL* final judgments, and thus can only be resolved by the Northern District of Illinois. *See Flanagan*, 143 F.3d at 543-44 (district court's ancillary "jurisdiction to *enforce* the settlement agreement" included claim that party "breach[ed] the settlement agreement"); *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994) (noting "[s]ettlement agreements are designed to, and usually do, end litigation, not create it" and describing claim that party "fraudulently induced [opponent] to enter into the various settlement agreements" as a "dispute … as to the … *enforceability* of the[ ] compacts"); *see also* Black's Law Dictionary (12th ed. 2024) ("Enforce" means "[t]o give force or effect to (a law, etc.)" or "to compel obedience to.").

Plaintiffs' discovery requests also make clear that they are designed to support Plaintiffs' theory that the *T.K.* and *Privacy MDL* final judgments are unenforceable. RFP No. 58 asks for, among other things, all documents exchanged between TikTok's counsel and plaintiffs' counsel in the *Privacy MDL* matter, including communications where TikTok "represented that" it (i) "was in compliance with the injunctive relief provided by the" *Privacy MDL* final judgment; (ii) "ceased engaging in the conduct alleged in" the *Privacy MDL* complaint; and (iii) was "in compliance with, and/or …intended to remain in compliance with, the 2019 Stipulated Order." Ex. E at RFP No. 58(c), (e), (f). This is plainly directed at Plaintiffs' assertion that Defendants "materially breached" the *Privacy MDL* final judgment and settlement. Similarly, RFP No. 59 seeks, *inter alia*, all documents sent to the *T.K.* plaintiffs' counsel in which TikTok said that (i) it had "ceased engaging in the conduct alleged in" *T.K.*; (ii) "following the 2019 Stipulated Order, TikTok acted in compliance with COPPA and took offline all videos made by children under the age of 13"; and (iii) it was "in compliance with, and/or…intended to remain in compliance with, the 2019 Stipulated Order." Ex. E at RFP No. 59(b)-(d). In other words, Plaintiffs want this discovery to convince this Court not to enforce the *T.K.* final judgment based on Defendants' supposed fraud. Plaintiffs' assertions are baseless, and the discovery they seek is a classic fishing expedition and would transform this already complex matter into a case, within a case, within a case. But even if the Court were to disagree, the *T.K.* and *Privacy MDL* final judgments make clear that any and all challenges to the settlements' enforceability—which, by definition, include any discovery designed to support such challenges—can only be addressed by the Northern District of Illinois.

This Court's lack of jurisdiction renders Plaintiffs' discovery irrelevant and warrants entry of a protective order. Under Rule 26, "[d]iscovery should not be granted if the information sought can have no possible bearing on the subject matter of the action." *U.S. E.E.O.C. v. ABM Indus. Inc.*, 2010 WL 1006401, at *2 (E.D. Cal. Mar. 5, 2010); *see United States v. Lake Cnty. Bd. of Comm'rs*, 2005 WL 8170554, at *1 (N.D. Ind. Nov. 9, 2005) (same). Federal courts routinely prohibit discovery on issues and remedies the court has no authority to resolve. For example, in *Prasoprat v. Benov*, 421 F.3d 1009 (9th Cir. 2005), the plaintiff challenged his pending extradition to Thailand and argued extradition would violate the United States's treaty with Thailand because the drug offense he was charged with "was punishable by death in Thailand but not in the United States." *Id.* at 1012-13. The plaintiff sought discovery from the United States regarding use of

the death penalty in Thailand for similar drug offenses, and the magistrate judge held, and the Ninth Circuit affirmed, that under the treaty "the executive branch holds the authority for determining extradition when the death penalty is involved." *Id.* at 1014. Accordingly, the magistrate judge's only role in certifying the extradition was "to determine whether the crime is extraditable and whether there is probable cause to support the charge." *Id.* The discovery sought by the plaintiff was thus "*not relevant* to the magistrate judge's inquiry" because "[e]ven if such evidence were in the government's exclusive possession, it would not be relevant to the magistrate judge's decision regarding whether to certify Prasoprat as extraditable." *Id.* at 1014-15.

Likewise, in *Columbia Gas Transmission, LLC v. 252.071 Acres, More or Less, in Baltimore County, Maryland*, 2016 WL 7167979 (D. Md. Dec. 8, 2016), the magistrate judge was tasked with determining whether plaintiff, which had won a series of easements to build a gas pipeline, was "entitled to any permanent land rights" and "the amount of any just compensation owed" to defendants. *Id.* at *1. The defendants sought to depose plaintiff's corporate representative regarding maintenance recommendations for both an existing pipeline in Baltimore County and the pipeline plaintiff sought to build. *Id.* at *6. The magistrate judge granted plaintiff's motion for protective order as to those deposition topics because "[t]he Natural Gas Act grants FERC *exclusive jurisdiction* to regulate the transportation and sale of natural gas in interstate commerce," and "enforcement of any failure by Columbia to adhere to pipeline maintenance recommendations falls to FERC." *Id.*; *see also Cole's Wexford Hotel, Inc. v. Highmark Inc.*, 209 F. Supp. 3d 810, 826, 833 (W.D. Pa. 2016) (barring discovery into base rates for healthcare services set by Pennsylvania agency because the "filed rate doctrine" prohibits antitrust suits "based on rates that have been filed and approved by federal agencies and state agencies," and plaintiff "failed to satisfy its burden" to show the information was "relevant to its claims and defenses"); *Moore v. LaSalle Corrections, Inc.*, 429 F. Supp. 3d 285, 292-93 (W.D. La. 2019) (finding financial information relating to barred punitive damages claim "irrelevant" and granting protective order).

For the same reasons, this Court lacks jurisdiction to address Plaintiffs' argument that the prior settlements are unenforceable, and discovery into that question has no bearing and is barred.

## II. Plaintiffs Cannot Evade the Exclusive Jurisdiction of the Northern District of Illinois By Arguing the Discovery Is Needed For Some Different Purpose.

None of Plaintiffs' counterarguments about RFP Nos. 58 and 59 have merit, much less warrant ignoring the plain language in the *T.K.* and *Privacy MDL* final judgments.

*First*, and despite their repeated assertions that the settlements are "unenforceable," Plaintiffs insisted at the October 29 IDC that [redacted] Ex. F at 108:19-109:3. This is sophistry. Plaintiffs are claiming the *T.K.* and *Privacy MDL* final judgments should not be enforced against them, and that they should be permitted to assert claims and seek damages for alleged COPPA violations from 2019 through August 2022 because Defendants committed fraud and/or breached the settlements. That is a direct challenge to the enforceability of those final judgments, and can only be decided by the Northern District of Illinois. Indeed, the Ninth Circuit has expressly rejected similar "artful pleading" attempts to sidestep another court's exclusive

jurisdiction to enforce its judgments. In *Treadaway v. Academy of Motion Picture Arts & Sciences*, 783 F.2d 1418, 1421 (9th Cir. 1986), the defendant asserted the District of Arizona lacked jurisdiction to relieve the plaintiff from a prior judgment of the Southern District of California bankruptcy court because the judgment was supposedly induced by fraud. *Id.* at 1419-20. The plaintiff argued the District of Arizona possessed jurisdiction because "her claims for relief [could not] be characterized as … seeking relief from a fraudulently-obtained judgment of another court." *Id.* at 1421. The Ninth Circuit disagreed, holding that even though the complaint alleged claims for replevin and conversion there was "no way [the] Court [could] get into the relief [ ] request[ed] without looking to the [prior] Federal Court judgment and making a determination whether or not there was a fraud." *Id.* That "truth [could not] be concealed by 'artful pleading.'" *Id.* So too here. This Court cannot determine whether the *T.K.* or *Privacy MDL* settlement orders are "unenforceable," as Plaintiffs request, without "determin[ing] whether or not there was a fraud," mistake, or breach with respect to the final judgments of the Northern District of Illinois.[2]

*Second*, Plaintiffs say [redacted] Dkt. 470 at 75-76. While Plaintiffs may contest Defendants' defense, this discovery has no bearing on that issue. The identical factual predicate inquiry asks whether the alleged conduct "arise[s] from the same common nucleus of operative fact" as another case. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1288 (9th Cir. 1992). That test thus depends on the nature of the claims alleged in the complaints—not what the parties may have said to each other during settlement communications. This is precisely why res judicata is routinely resolved at the pleading stage from the face of each complaint. *See Citizens for Free Speech, LLC v. County of Alameda*, 338 F. Supp. 3d 995, 1004 n.8 (N.D. Cal. 2018) ("A res judicata affirmative defense may be adjudicated on a motion to dismiss where … the bar is evident from the face of the pleadings and there are no factual disputes."), *aff'd*, 953 F.3d 655 (9th Cir. 2020). The Court does not need the parties' settlement communications to confirm that Plaintiffs have asserted the identical COPPA-based state law claims previously asserted in *T.K. See, e.g.*, Dkt. 371 (Defs.' Mot. to Dismiss) at 9-12 (identifying identical overlap in claims and allegations in both cases); Sept. 24, 2026 Hr'g Tr. at 17:20-23 (The Court: "[A]t some point in time there are going to be persons who are potential class here who will be barred, because of the consent decrees or judgments … that were rendered [in *T.K.*] …"), 18:22-25 ("[I]t seems to me since they are members of the [*T.K.*] class, they've already been notified of those particular practices that they're claiming are, you know, unlawful or improper."). Just the opposite. When it entertained Defendants' motion to dismiss, the only discovery the Court cited as necessary to adjudicate this issue was not from Defendants, but rather discovery *from Plaintiffs*, to establish whether they "used the applications before [the settlement effective] date while under the age of 13" as required to determine their

---

[2] [redacted] Dkt. 470 at 76-77 n.25. But *National Oilwell* addressed a different question: whether a "distinct tort" claim seeking damages for fraud in the inducement of the settlement agreement "fell outside of the [settlement] court's retained jurisdiction." 68 F.4th at 215. *National Oilwell* did not concern any challenge to the settlement's enforceability, and it does not support that this Court can determine the enforceability of a prior settlement against the parties or grant discovery directed to that question. To the contrary, *National Oilwell* expressly reaffirms that the settlement court "may decide 'whether and under what terms' to enforce the settlement." *Id.* (quoting *Vikas WSP, Ltd. v. Econ. Mud Prods. Co.*, 23 F.4th 442, 452 (5th Cir. 2022)).

membership in the prior settlement classes. *See* Dkt. 414 at 8-9.[3]

*Finally*, contrary to Plaintiffs' assertions at the last IDC, RFP Nos. 58 and 59 are also not relevant to whether a class should be certified. Privileged settlement communications between parties to prior litigation have no bearing on whether the named Plaintiffs in this case can satisfy Rule 23's commonality, typicality, numerosity, or adequacy requirements. Although the Court previously declined to grant Defendants' motion to dismiss and noted Defendants' res judicata defense was "more appropriately addressed at class certification," Dkt. 414 at 11-12, that was not a statement reflecting that discovery about the *T.K.* and *Privacy MDL* settlements was needed to decide class certification. Rather, that statement was a product of Plaintiffs' deliberate decision to omit their ages and dates of TikTok use from the complaint as required to demonstrate they were members of the *T.K.* class in the first instance. And while the Court also noted Defendants' motion raised "arguments for redefining the Class Period" and that "the temporal scope … is more appropriately addressed at class certification," Dkt. 414 at 11, that simply means if Defendants' motion is granted the Court will order that the Class Period commences in August 2022 rather than March 2019 as currently pled in the complaint. Nothing in the parties' settlement communications could possibly bear on the temporal impact of the prior releases on Plaintiffs' claims here, given the plain language of those agreements. *See Botefur v. City of Eagle Point*, 7 F.3d 152, 156-57 (9th Cir. 1993) (unambiguous settlement agreements are enforced according to their terms).

For all the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion for a Protective Order.[4]

Sincerely,

/s/ Drew E. Breuder
Drew E. Breuder
Of O'Melveny & Myers LLP

---

[3] [redacted] Ex. F at 107:2-19; *see also* Dkt. 470 (JSR) at 76 (citing June 29, 2026 order, Dkt. 285; *see* Dkt. 295 (adopting Dkt. 285 tentative order as final order)). The June 29, 2026 order cited by Plaintiffs *granted* Defendants leave to amend their answer, and clarified that they could not withhold pre-2022 discovery based on the *T.K.* and *Privacy MDL* final judgments. Dkt. 285 at 3; *see also* Dkt. 251 at 9 (Plaintiffs object to Defendants' attempt to "limit its responses to [Plaintiffs' First RFPs] to … January 1, 2022 and later on account of the" *T.K.* and *Privacy MDL* releases). The June 29 order did *not* hold that Defendants must respond to RFP Nos. 58 and 59. Nor could it have, given that the pre-2022 objection referenced in the June 29 order addressed Plaintiffs' First Set of RFPs, and RFP Nos. 58 and 59 were not served until more than one month later, on July 31, 2026, as part of Plaintiffs' Second Set of RFPs. *See* Ex. E at 2.

[4] Even if this Court were permitted to entertain discovery challenging the enforceability of the *T.K.* and *Privacy MDL* final judgments, much, if not all, of that discovery is independently barred by the mediation privilege. *See* Cal. Evid. Code §§ 1119(a) (any writing prepared "for the purpose of, in the course of, or pursuant to, a mediation" is not "subject to discovery"); 1119(c) (all "communications, negotiations, or settlement discussions" made in the course of a mediation remain confidential); 1126 (confidentiality protection continues after conclusion of mediation); *see also Foxgate Homeowners' Ass'n v. Bramalea Cal., Inc.*, 26 Cal. 4th 1, 14 (2001) (holding "confidentiality is essential to effective mediation"). Regardless, the threshold issue here is this Court's lack of jurisdiction to entertain challenges to the enforceability of the Northern District of Illinois' judgments.